# Exhibit 1

PUBLIC

**UNITED STATES OF AMERICA**
**BEFORE THE FEDERAL TRADE COMMISSION**

| | |
|---|---|
| In the Matter of | **PUBLIC** |
| Civil Investigative Demands dated June 30, 2022 to Amazon.com, Inc. and certain current and former Amazon employees | File No. 2123050, Amazon.com, Inc. |

**OMNIBUS PETITION TO QUASH OR LIMIT**
**CIVIL INVESTIGATIVE DEMANDS**

Pursuant to 16 C.F.R. § 2.10(a), Petitioner Amazon.com, Inc. ("Amazon") requests that the Federal Trade Commission ("FTC" or "Commission") quash or limit the Civil Investigative Demand issued on June 30, 2022 ("CID" or "June 2022 CID").  Certain current and former Amazon employees also petition to quash or limit the Civil Investigative Demands served on them individually ("Individual CIDs"),[1] not for the purpose of preventing their testimony from being taken, but rather (1) to prevent the improper limitations that staff seeks to place on counsel's obligations to its clients and the witness' right to counsel of his or her choice, and (2) to compel FTC staff ("staff") to negotiate reasonable alternative Investigational Hearing ("IH") dates that fit with the witness' schedule and permit adequate time for preparation rather than insisting upon dates that staff unilaterally selected.  Jeffrey Bezos and Andrew Jassy further

---

[1] The individuals petitioning to quash are:  Jeffrey Bezos, Christopher ("C.R.") Brown, Sharon Chiarella, Dave Clark, Nahshon Davidai, Jamil Ghani, Russ Grandinetti, Greg Greeley, Doug Herrington, Benjamin Hills, Sridhar Iyer, Andrew Jassy, Neil Lindsay, Dharmesh Mehta, Katey Muus, Cem Sibay, and Gloria Smuda.  To the extent that certain of these individuals have not been served with the CID properly, they do not waive any arguments related to that improper service.

petition to quash their Individual CIDs because staff has identified no legitimate reason for needing their testimony when it can obtain the same information, and more, from other witnesses and documents.[2]

Staff's handling of this investigation has been unusual and perplexing. The current impasse has been brought about by unexplained pressure placed on staff to complete the investigation hastily, by an arbitrarily chosen deadline. But staff's own behavior has exacerbated the breakdown in this investigation, with the most recent incident being the most egregious: staff has attempted to restrict, contrary to law and FTC practice, counsel's ability to jointly represent Amazon and the Individual CID recipients. Staff has gone so far as to demand that counsel leave a hearing for the first individual witness for failing to abide by this improper restriction. The Commission must step in.

For more than a year, Amazon worked diligently and cooperatively with staff to provide information relevant to the FTC's investigation of the sign-up and cancellation processes for the Amazon Prime program that started in March 2021 with service of a Civil Investigative Demand ("March 2021 CID"). In compliance with staff's requests, Amazon produced approximately 37,000 pages of documents, provided dozens of pages of interrogatory responses, identified and searched the files of agreed-upon custodians, repeatedly met with staff to answer its questions, and proactively followed up with staff to ensure it had the materials it needed. As Amazon continued producing responsive materials, staff inexplicably disengaged. By February 2022, staff had not communicated with Amazon about the Prime investigation for almost four months.

---

[2] This consolidated Petition is filed in accordance with staff's expressed preference for an omnibus Petition. To account for the additional material in this omnibus Petition, the moving parties are filing an unopposed motion to extend the word limit. Further, with the exception of two individuals, staff agreed to modify the filing date for the Petition to August 5, 2022. *See* July 22, 2022 Letter from J. Cohen to L. Kim *et al.*

PUBLIC

Then, in April 2022, about six months after staff fell silent on the investigation, staff abruptly notified Amazon that a new attorney would be taking over and that staff was under "tremendous pressure" to conclude the investigation and had received "unambiguous instruction" to recommend a course of action to the Commission before the fall.  No such deadline had ever before been suggested, nor did staff offer any explanation of the cause of this sudden directive. Moreover, despite the professed urgency, the new attorney acknowledged that staff members had not reviewed, or even downloaded, half of Amazon's previously produced materials.  At the same time, staff demanded that Amazon produce additional new materials as part of the Prime investigation, including significantly expanded search parameters and the addition of more than 10 new custodians, in a matter of approximately three weeks.  When Amazon pointed out the infeasibility of staff's unreasonable and inflexible new demands, while repeatedly offering reasonable alternatives, staff refused to accommodate those concerns and then served the June 2022 CID that made matters worse.

The June 2022 CID both *accelerated* staff's demands for compliance and *expanded* the scope of the investigation to include at least five additional non-Prime subscription programs. On top of this, at the same time and without warning, staff sought to serve nearly 20 Individual CIDs on current and former Amazon employees — at their homes — with unilaterally selected dates for testimony during the next several weeks.  Despite having discussed the investigation on numerous occasions with Amazon's counsel, staff bypassed Amazon's counsel in serving these Individual CIDs, leading to further confusion.  Staff then refused to provide the Individual CIDs to Amazon's counsel when requested and informed counsel that they would not be permitted to jointly represent Amazon and any of the individual employees, which is plainly contrary to law.

PUBLIC

The June 2022 CID is unworkable and unfair, reflecting less of a responsible effort to collect the facts about a variety of longstanding and highly popular subscription programs than a one-sided effort to force Amazon to meet impossible-to-satisfy demands.  The June 2022 CID goes beyond Prime sign-up and cancellation to sweep in at least five additional subscription programs, each with their own unique facts, history, and personnel.  Over five weeks, the CID demands answers to multiple complex interrogatories and IH testimony on extraordinarily broad topics for which no witness could responsibly be prepared to provide complete and accurate testimony.  Moreover, many of the requests are argumentative and vague, compounding the impossibility of responding in the required timeframe.

Amazon remains committed to continuing to cooperate with staff to provide the information it needs.  Amazon has consistently been willing to work towards reasonable agreement on prioritization, scope, and timing — as counsel operating in good faith do every day in American litigation to ensure fair and complete discovery of the facts — without reciprocation by staff.  But this overly broad and burdensome CID is unworkable as written, especially given the August 5, 2022 return date.  At a minimum, Amazon needs staff to further clarify its vague and argumentative requests and grant more time to comply with them, something staff has refused to do without explanation.

The Individual CIDs are likewise unworkable because staff has imposed improper limitations on the witnesses' right to counsel and refused reasonable scheduling accommodations to account for witnesses' schedules and to allow adequate time to prepare for the IH testimony.  In addition to these concerns, Jeffrey Bezos and Andrew Jassy petition to quash their Individual CIDs because staff has not identified a reason that their testimony as senior Amazon executives is necessary or reasonable given the substantial documentation that Amazon has already

produced and the abundance of other documents and IH testimony that Amazon remains willing to produce.

Amazon therefore respectfully moves the Commission to quash or limit the June 2022 CID, particularly with respect to the scope of the CID's IH testimony topics, staff's continued failure to identify topics with reasonable particularity, and its expansion into Amazon programs not previously part of the investigation.  At the very least, Amazon asks the Commission to extend the return date for documents to September 15, 2022, subject to all modifications to the CID proposed by Amazon, to give Amazon a fair opportunity to respond to the CID's new and expanded demands.  The Individual CID recipients petition to quash their Individual CIDs to the extent that staff refuses to provide a reasonable compliance schedule and seeks to impose an improper limitation on their right to counsel.

## BACKGROUND AND PROCEDURAL HISTORY

Amazon Prime is a paid subscription service that offers its members a wide array of benefits, including free and fast shipping, access to an extensive library of music and video content, and many other valuable benefits.  Amazon has operated Prime for nearly 20 years.  As anyone who has signed up for or cancelled a Prime membership already knows, the process is clear and straightforward under any reasonable definition.

## I.     Amazon Cooperated With Staff For More Than A Year.

On March 16, 2021, the FTC formally commenced an investigation with the issuance of the March 2021 CID that focused exclusively on Prime enrollment and cancellation.  The March 2021 CID included 14 interrogatories on topics such as "each step consumers must take to Enroll in Amazon Prime" and 10 document requests, such as a request for documents relating to "consumer perception or understanding of Enrolling in or Unsubscribing from Amazon Prime." See March 2021 CID Specifications A.1 and B.2.

Amazon worked cooperatively with staff to respond to the March 2021 CID by, for example, participating in multiple meetings with staff to understand staff's priorities, and to help staff understand the burdens associated with complying with certain specifications. These discussions were productive: Amazon reached an agreement with staff on the content and timeline for responsive productions, as evidenced by a series of emails between April and August 2021. Amazon made approximately 10 document productions encompassing approximately 37,000 pages of documents, plus additional spreadsheets and other data; responded to interrogatory requests; and proactively followed up with staff to ensure staff had necessary materials. In short, Amazon took all reasonable steps to comply with the Prime investigation.

Staff, on the other hand, had long since stopped engaging with Amazon about the investigation. In February 2022, after several months with no communication from the FTC, Amazon proactively reached out to staff. During a February 7, 2022 call, the then-lead staff attorney advised that she planned to turn her attention back to the Prime investigation a few months later.

## II.     Amazon Responded To Staff's New Requests.

On April 19, 2022, Amazon received a letter from a different member of staff, Jonathan Cohen, that made a series of new expansive requests related to Prime. *See* April 19, 2022 Letter from J. Cohen to L. Kim & Appendices A-C ("April 19 letter"). Without even consulting Amazon, the April 19 letter requested that Amazon apply more than 65 new search terms, resulting in over 1,500 search term combinations (on top of what Amazon had already completed after agreeing with staff); requested information from nine new individual custodians and seven vaguely-defined "team" custodians (on top of the eight custodians already included in response to the March 2021 CID); and added more than 30 additional information requests, many with

6

PUBLIC

multiple subparts.  *See* April 19 letter.  Despite the scope of these new requests, staff gave Amazon less than three weeks to respond.  Further, staff explained that it was under "tremendous pressure" to conclude the investigation swiftly, no later than the fall of 2022.

In the spirit of cooperation, Amazon met with staff to raise the burdens imposed by the April 19 letter and to request that staff clarify its priorities.  It became evident that, despite demanding additional materials from Amazon, the new staff attorney on the matter did not know what Amazon had already produced to staff.  On May 5, 2022, during Amazon's initial meeting with Mr. Cohen, he indicated that staff had not downloaded and was not aware of approximately half of Amazon's production.  *See* June 27, 2022 Letter from J. Graubert to J. Cohen, at 3.  (It is still not clear if the new staff team has reviewed these documents.)  Despite the additional burdens imposed by the April 19 letter, Amazon began making good faith efforts to respond to the new inquires to the extent possible in accordance with staff's communicated priorities.  Yet staff refused to modify any of the demands for electronically stored information ("ESI") or meaningfully consider Amazon's explanation of the burdens imposed by the April 19 letter.  *See id.*

Amazon continued to cooperate with the investigation despite the significant expansion of the March 2021 CID's scope, including arranging for an Amazon executive to make two presentations to staff to explain the Prime enrollment and cancellation processes, speaking with staff to further discuss staff's priorities, engaging in a two-hour in-person meeting to begin answering staff's questions and to attempt to negotiate a more reasonable ESI scope, and serving multiple production letters in response to the April 19 letter.

### III.    Staff Issued A New CID That Expanded The Investigation To Additional Subscription Programs And Issued Nearly Twenty Individual CIDs.

While Amazon continued gathering information to respond to the April 19 letter, the Commission issued the June 2022 CID that is the subject of this Petition. The June 2022 CID goes well beyond Prime sign-up and cancellation, newly sweeping in at least five additional subscription programs — four of which are separate businesses at Amazon and one of which is a third-party program not offered by Amazon.[3]  As modified, it requests IH testimony without any principled limitation or required specificity and requires answers to nine new interrogatories relating to Prime and at least five other subscription programs.  The new areas of inquiry include, but are not limited to, testimony on non-Prime programs Audible, Amazon Music, Kindle Unlimited, Subscribe & Save, and a third-party subscription program not offered by Amazon. None of these programs to date have been part of the investigation.

Staff's conduct has needlessly compounded the unworkability of the June 2022 CID and Individual CIDs.  Starting just before the July Fourth holiday weekend, staff bypassed Amazon's attorneys and served separate Individual CIDs at the homes of numerous current and former Amazon employees during a time when many of them were on vacation, causing delay and confusion about what the FTC was doing.  In all, Amazon is aware of 19 current and former employees who have received Individual CIDs in connection with the Prime investigation.  Staff

---

[3] *Compare* March 2021 CID Subject of Investigation ("Whether the 'Company'. . . has engaged in unfair or deceptive acts or practices in connection with its *Amazon Prime subscription service* by automatically enrolling consumers without their prior express informed consent or failing to provide a simple mechanism for a consumer to stop recurring charges[.]") (emphasis added), *with* June 2022 CID Subject of Investigation ("Whether the Amazon Parties and any individuals affiliated with the Amazon Parties violated laws and regulations the Commission enforces . . . by *promoting Negative Option programs* that, among other things, failed to provide consumers with clear and conspicuous disclosures, enrolled consumers without their express informed consent, or failed to provide consumers with a simple mechanism to cancel their subscriptions[.]") (emphasis added).

PUBLIC

then refused Amazon's repeated requests to provide copies of the Individual CIDs, even where

staff had failed to properly execute service.  Although the Individual CIDs are dated June 30,

2022, in many instances, the witnesses did not become aware of the CIDs until several weeks

later.  Staff also attempted — and failed — to properly serve Amazon with the June 2022 CID on

the Friday evening of the July Fourth holiday weekend, causing additional needless delay.

### IV.   Staff Has Refused To Reasonably Narrow The Scope Of The June 2022 CID Or Allow Reasonable Time For Amazon To Comply With Staff's Requests.

Despite radically expanding the scope of the investigation, the June 2022 CID demanded

that Amazon provide all documents and interrogatory responses by August 1, 2022 (now August

5) and prepare witnesses for IH testimony on September 20, 2022.  Such a timeframe is

unworkable.  Amazon has repeatedly offered constructive solutions, such as a rolling production

process extending until September 15, to provide staff the information it needs in a manner that

is efficient and feasible.  Staff has refused to engage in meaningful discussions, going so far as to

say, in a meet-and-confer call on July 28, 2022, that staff did not need to hear more about

Amazon's explanation of the specific burdens the June 2022 CID imposes despite asking for that

information in the July 22, 2022 email rejecting most of Amazon's proposed modifications.

After several meet-and-confer sessions, the parties are at an impasse on the critical issues raised

in this Petition.

On July 7, 2022, Amazon raised its concerns with the scope and burden of the June 2022

CID to staff.  *See* 16 C.F.R. § 2.7(k).  To continue those discussions, Amazon followed up with a

July 18 letter describing the issues in more detail.  Amazon repeatedly informed staff of the

burden of complying with the June 2022 CID, particularly in light of the exceedingly tight

timeline provided and the CID's expansion beyond Amazon Prime, the investigation's subject

for more than a year, to additional subscription programs.  Where appropriate, Amazon proposed

PUBLIC

reasonable modifications to the June 2022 CID to allow for a production schedule, including offering amended rolling responses that would extend beyond the August 1, 2022 return date by just 45 days.  *See* July 18, 2022 Letter from L. Kim to J. Cohen & Ex. A.

During follow-up calls on July 20 and 21, staff appeared willing to consider reasonable modifications.  That illusion soon evaporated, however.  On July 22 and August 2, staff sent letters proposing "modifications" to the June 2022 CID that failed to address the clear flaws in the CID.  Although staff did agree to extend the return date, it did so only by four days until August 5.  Furthermore, staff now seeks to require Amazon to prepare witnesses for three separate days of testimony — one on Amazon Prime cancellation, one on Amazon Prime enrollment, and one on "other topics," which encompasses details concerning at least four additional programs operated by various Amazon business units and one operated by a third party.  Each of these categories continues to include vague and overbroad requests (even as modified), including all "[t]esting, studies and surveys" related to Prime cancellation and "[c]ompliance with regulatory requirements in the . . . E.U.[] and Japan" (the latter request being outside of the FTC's jurisdiction).  The "other topics" testimony day is purportedly limited to five non-Prime programs, but the catch-all topic — "[a]ny additional topic or topics covered by the [June 2022 CID], which require no more than two hours of testimony during the day" that is identified two weeks before the IH date — erases any meaningful limitation.[4]

Moreover, even as modified, staff has refused to recognize the burden imposed by the requests related to five non-Prime programs in the short timeframe allotted to respond.  Each program has its own processes, employees, and data sources.  Identifying responsive information

---

[4] This is true even though the request is limited to at most five additional topics.  Based on the text of the June 2022 CID, additional topics could expand beyond Prime and the five non-Prime programs, meaning that Amazon must be prepared to address these as well.

PUBLIC

and documents for these programs, which again were not previously part of the investigation, takes time and resources.  These purported modifications do not address the unduly burdensome nature of the June 2022 CID particularly since Amazon was only given five weeks to respond.

Regarding the Individual CIDs, staff has refused to provide reasonable modifications to the IH schedule, including in instances where the witness was properly served only days before the scheduled IH date.  And with regard to Mr. Bezos and Mr. Jassy, staff has provided no justification for the need for their testimony.

## V.  Staff's Improper And Unlawful Attempts To Interfere With Witnesses' Choice Of Counsel.

Beginning in meet-and-confer discussions on July 7 and 11, 2022 staff began a campaign to prevent Amazon's counsel, Covington & Burling ("Covington") from representing both current and former Amazon employees in responding to their CIDs.  In two letters dated July 19 and 29, 2022, and a final email on August 2, counsel pointed out that courts had acknowledged and approved this widespread practice, that staff's attempt to amend and enlarge the phrase "counsel for the person being examined" in 16 C.F.R. § 2.7(f)(3) lacked any cognizable foundation, and that staff's attempts to impose limitations on counsel would improperly restrict counsel's ability to fully and effectively represent their clients and impinge on the witness' right to counsel of his or her choice.  Staff never changed its position, although the demand that Covington accept such limitations was re-framed several times.  Further, staff offered impractical and unhelpful solutions, such as Covington signing a nondisclosure agreement to proceed with the representation.  The matter came to a head in the first IH, on August 4, in which staff demanded that counsel leave the hearing after they refused, once again, to accept improper and unlawful limitations on their ability to represent their clients.

PUBLIC

Amazon has worked with staff to ensure that staff can obtain the information it needs, and Amazon remains willing to continue that cooperation.  But Amazon and the Individual CID recipients should not be punished by an artificial, rushed deadline imposed with no explanation — a deadline that seems all the more artificial after staff had been silent on the investigation for about six months.  The June 2022 CID — with its new overbroad scope and aggressive deadline — and staff's refusal to meaningfully compromise leave Amazon no choice but to seek the Commission's assistance.

## ARGUMENT

The FTC's "[s]ubpoena enforcement power is not limitless."  *FTC v. Ken Roberts Co.*, 276 F.3d 583, 586 (D.C. Cir. 2001).  As the Supreme Court has cautioned, "governmental investigation into corporate matters may be of such a sweeping nature and so unrelated to the matter properly under inquiry as to exceed the investigatory power."  *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950).  Compulsory process is proper only if the inquiry is within the Commission's authority, the demand is not too indefinite, and the information sought is reasonably relevant to the inquiry.  *See id.*  A demand will not be enforced if it is "unduly burdensome or unreasonably broad," which occurs where "compliance threatens to unduly disrupt or seriously hinder normal operations of a business."  *FTC v. Texaco*, 555 F.2d 862, 882 (D.C. Cir. 1977).

In evaluating the reasonableness of a Civil Investigative Demand, the Commission looks to whether it is self-limiting, *see In re Altmeyer Home Stores, Inc. Petition to Quash or Limit Civ. Investigative Demands*, 1997 WL 33483284, at *7 (F.T.C. Feb. 12, 1997), and the conduct of staff in responding to a petitioner's concerns.  *See Texaco*, 555 F.2d at 882 (clarifications by staff "alleviated [petitioner's] concerns to some extent"); *In re Civ. Investigative Demand to Beam Fin., Inc. Dated May 21, 2020*, 2020 WL 5037434, at *4 (F.T.C. Aug. 17, 2020)

(discussing favorably staff's offer to allow a rolling production of information in response to the Civil Investigative Demand).  The Commission may extend a Civil Investigative Demand's return date to facilitate compliance.  *Beam*, 2020 WL 5037434 at *4.

## I.    Staff Has Improperly Interfered With Witnesses' Selection Of Counsel In Connection With The Individual CIDs.

A crucial threshold issue to moving forward in this investigation is that staff has placed an unreasonable and unlawful restriction on Amazon's counsel's ability to jointly represent both Amazon and the Individual CID recipients.  Beginning in meet-and-confer discussions on July 7 and 11, staff began a wholly improper campaign to prevent Amazon's counsel, Covington, from representing current and former Amazon employees who desired Covington's representation in responding to the Individual CIDs.  Staff sought to justify its position not by alleging that Covington had a conflict that precluded such joint representation, but rather on the specious ground that 16 C.F.R. § 2.7(f)(3), which provides that IHs are non-public, gives staff the authority to decide on its own that an attorney representing other parties in the investigation (including the corporate respondent) does not qualify as "counsel for the person being examined" — even where (1) the person being examined has chosen that attorney as his counsel and (2) wishes for that attorney to be present for the examination.  Staff's novel and strained interpretation of Rule 2.7(f)(3) — which plainly is not about protecting the non-public nature of the hearing, but rather constitutes a back-door attempt by staff to interfere with a witness' selection of counsel — is wholly without merit, and a striking deviation from the universal practice not only in FTC matters but proceedings before other administrative agencies as well. The Commission must reverse staff's position.

In two letters, dated July 19 and July 29, 2022, Covington pointed out to staff that its position was not consistent with a plain reading of § 2.7(f)(3), that courts had recognized and

13

PUBLIC

approved joint representation of witnesses,[5] and that such restrictions impinged on the right of witnesses under the Administrative Procedure Act to "[a] lawyer of one's choice." *Csapo*, 533 F.2d at 10–11.[6]  Courts have gone so far as to say that in complex matters such as this one, in which new separate counsel would have difficulty getting sufficiently up to speed to represent an individual adequately, excluding corporate counsel from the choices available to a witness "has a second and impermissible effect; it bears directly and prejudicially upon the interests of the witness." *SEC v. Higashi*, 359 F.2d 550, 553 (9th Cir. 1966).

Staff has never articulated any legitimate basis for its attempts to impose these restrictions on counsel.  There has been no suggestion of any conflict here and there is none. Staff's position was obviously not well thought out as they eventually backed off from the most extreme position:  that joint representation would not be permitted at all.  After Covington's July 19 letter, staff acknowledged that Covington could appear on behalf of individuals but demanded that the firm sign nondisclosure agreements prohibiting discussion of any matters raised in an individual IH with other witnesses and parties.  In response, in Covington's July 29 letter, counsel again stressed that staff's position was groundless, that witnesses were entitled to full

---

[5] *See generally SEC v. Csapo*, 533 F.2d 7, 11–12 (D.C. Cir. 1976) ("The mere fact that a witness' counsel also represents others who have been or are later to be questioned, is no basis whatsoever for concluding that presence of such counsel would obstruct the investigation.  On the contrary, in many cases it is likely that such representation may facilitate and expedite the proceedings."); *Backer v. Commissioner*, 275 F.2d 141, 144 (5th Cir. 1960) ("the Commissioner cannot put limitations on the general authority to have counsel as granted by the statute by saying that the witness's choice cannot include one who also represents the taxpayer").  The Rules of Professional Conduct similarly recognize the appropriateness of joint representation of companies and their employees. *See* D.C. Rules of Professional Conduct § 1.13(d) & 4.2 (and their equivalents in other states).

[6] *See also SEC v. Whitman*, 613 F. Supp. 48, 50 (D.D.C. 1985) ("Congress determined that a witness testifying before an agency cannot be denied the accompaniment, representation and advice of counsel, regardless of the nonadjudicatory nature of the proceeding. That determination reflects the lawmakers' understanding of potential perils to the witness which accompany the act of testifying, and calls for the full potency of the right to counsel.") (footnote omitted).

and effective representation, and there was nothing in the rules compelling any party or its counsel to maintain the confidentiality of these proceedings.  Staff then formulated its next position, delivered during a meet-and-confer session on August 1 and confirmed by email from staff later that day, that "[t]o attend any investigational hearing at issue, Covington must agree, either in writing in advance or on the record, that its appearance and involvement in the investigational hearing is limited to its representation of the witness and the witness' interests." August 1, 2022 (6:49 p.m.) email from J. Cohen to L. Kim.  This carefully crafted language had the same purpose and effect as staff's earlier demands on this issue, which Covington promptly rejected as improperly attempting "to restrict our ability to fully and effectively represent our clients, and impinging on the witness' right to counsel of their choice."  August 2, 2022 (5:43 p.m.) email from J. Graubert to J. Cohen.  Staff accompanied these communications with a threat that if counsel refused to agree to this limitation, the hearing officer at any IH in which Covington appeared would ask counsel to leave the hearing, and that if counsel refused to leave, they would be removed from the hearing room for "trespassing" on government property.

During the first IH on August 4, staff demanded that Covington agree to its August 1 limitation.  When counsel rightly refused to do so, pointing out that they had made their position clear repeatedly without rebuttal from staff, staff demanded that counsel leave.  Not wishing to remain in the IH without his attorneys, the witness joined counsel in leaving the hearing room, thus ending the IH after only a few minutes.  *See* Declaration of J. Graubert, attached as Exhibit 1.  Staff's unreasonable and unlawful conduct is the sole reason the IH did not proceed as scheduled.

Counsel cannot agree to restrict its ethical duty to provide full and effective representation to all its clients.  As the authorities cited above demonstrate, there is no issue with

joint representation of a corporate respondent and its current and former employees, and interfering with the witness' choice of counsel can only weaken his or her ability to prepare for and provide testimony. Amazon also has legitimate interests in the individual IH proceedings because the company is not waiving or authorizing its employees to waive any privilege and it is appropriate for counsel to protect that privilege.

The effect of staff's position would be to complicate and cause unneeded confusion in complex matters such as this. It would also represent a major change in FTC practice that would be of concern to the entire regulated community and its counsel. Amazon and the Individual CID recipients therefore ask the Commission to clarify that, consistent with basic legal principles, Amazon's counsel may jointly serve as counsel for the Individual CID recipients without the artificial limitations imposed by staff.

## II. The June 2022 CID Is Unduly Burdensome and Unreasonably Broad In Light Of The Expansion And Vagueness Of The Topics And The Time Constraints.

### A. The June 2022 CID Remains Overbroad, Vague, And Argumentative.

As currently written (and as modified), the June 2022 CID's interrogatory and document requests are "unduly burdensome or unreasonably broad," making it unworkable for Amazon to discern the information staff demands and to respond in the timeframe allowed. *Texaco*, 555 F.2d at 882. Further, the June 2022 CID fails to identify matters for oral testimony with "reasonable particularity" as required by 16 C.F.R. § 2.7(h); *In re Civ. Investigative Demand to Intuit, Inc.*, 2020 WL 5037437, at *8 (F.T.C. Aug. 17, 2020) ("Reasonable particularity 'merely requires that the requesting party describe topics with enough specificity to enable the responding party to designate and prepare one or more deponents.'" (citation omitted)). And many requests are argumentative or call for legal conclusions that Amazon contests — making it impossible to reply without conceding staff's improper allegations.

*First*, the June 2022 CID, even as modified, sweeps in at least five additional subscription programs that Amazon operates as separate businesses or that are operated by a third party.  The FTC's imposition of deadlines of only a few weeks for production of information related to these additional programs — after Amazon had diligently worked to meet the FTC's request for similar material for Prime for more than a year — is unreasonable.  Prior to the June 2022 CID, over the course of more than a year, these programs were not part of the investigation.  Amazon has repeatedly informed staff about the differences between different Amazon programs.  These programs are run by different teams at Amazon (or by a third party), with different managers, senior executives, software designers, engineers, graphic designers, consumer research experts, and consumer response specialists.  They rely on different data sources.  For each program, Amazon will need to interview different sets of employees and collect and review different document sets.  There is not a common response that can be given for all of these programs and Amazon cannot rely on previous work it has done to comply with the investigation into Prime.  Amazon has indicated that it needs more time to provide staff the information that it requested on Prime, but particularly these newly identified non-Prime programs.  Staff has refused these reasonable requests and continues to insist that Amazon comply with the June 2022 CID in a matter of weeks.  Such an expansion of the investigation's scope makes it unworkable for Amazon to comply by August 5.

By way of example, Interrogatory 1 asks Amazon to identify "the number of consumers who became (a) Nonconsensual Enrollees; or (b) Diverted Cancels."  These terms are defined to include Prime, Audible, Amazon Music, Kindle Unlimited, Subscribe & Save, and a third-party subscription program not offered by Amazon.  Neither of these concepts was part of the March 2021 CID nor had they been the subject of discussions with staff.  And the terms themselves are

problematic:  because the request requires a subjective evaluation of customers' beliefs, there is no clear way to satisfy the request.  Moreover, the terms are argumentative and improperly ask for agreement on surely-to-be contested legal issues.  Given the expansion to an additional five subscription programs that automatically renew and the vagueness and argumentative nature of the request, Interrogatory 1 is unduly burdensome.

Another request that significantly expands the investigation's scope is Interrogatory 8.  It requires Amazon to query every "Covered Executive" regarding the use of "Ephemeral Messaging" in relation to "Enrollment and Cancellation Processes," "Nonconsensual Enrollees," or "Diverted Cancels," and to produce an "Ephemeral Messaging Log" and an image of the device used to send or receive such messages.  As Amazon explained to staff, to the extent any such messages were used, by their nature, they would have disappeared years ago and cannot be recovered.  Further, requiring Amazon to speak with every "Covered Executive" regarding the content of years-old messages is time-consuming and unlikely to be relevant to the investigation into Prime.  Not only is the subject of this interrogatory outside of the original investigation into Prime, it would also require significant resources to complete for little purpose and risks sweeping in private personal information (*e.g.*, private messages included on the "Ephemeral Messaging Log").  For these reasons, it is unduly burdensome, especially to complete by August 5.

*Second*, even as modified, the investigational hearing topics do not provide the reasonable particularity required by 16 C.F.R. § 2.7(h).  The July 22 modification letter requires Amazon to produce corporate witnesses over three days on three topic areas:  Prime enrollment, Prime cancellation, and "other topics."  Within each of those topic areas, the July 22

PUBLIC

modification letter lists a number of vague topics that the witness must be prepared to testify about:

- **Prime Enrollment**:  topics include (1) "Any topic addressed in an unsworn or unverified written discovery response; (2) "Any July 1 interrogatory fully and timely answered in writing"; (3) "[t]esting, studies, or surveys"; and (4) "The causes of Nonconsensual Enrollment."

- **Prime Cancellation**:  topics include numbers (1) through (3) above, as well as "Material changes to the flow that Amazon implemented or considered" and "Compliance with regulatory requirements in the U.S., E.U. and Japan."[7]

- **Other Topics**:  topics include (1) "Every action of any sort that the Amazon Parties took, in whole or in part, in response to the Insider Article"; (2) the enrollment and cancellation processes of Audible, Amazon Music, Kindle Unlimited, Subscribe & Save, and a third party's subscription program; and (3) the document retention policies for Prime and these other five Amazon programs.

Purported specifications that include the words "any" or "every" fail on their face to comply with Rule 2.7(h).  More significantly, however, each of the three topic areas contains a catch-all request that swallows any purported limitation.  Despite providing a list of topics for each of the three days, staff may also seek testimony on "[a]ny additional topic or topics covered by the [June 2022 CID], which require no more than two hours of testimony during the day, and that [staff identifies] with reasonable particularity two weeks before this portion [of the] examination."  Even with staff's concession on August 2 to limit this topic to five additional topics, this provision eliminates any limitation in the July 22 letter by allowing staff, with only two weeks' notice, to spring as many as five of the topics from the June 2022 CID on Amazon and demand that they prepare a witness on those topics.

The IH topics remain unworkable because it is still not clear what Amazon's witnesses have to be prepared for.  Staff's clarification, for example, regarding what types of "[t]esting,

---

[7] The FTC lacks authority to inquire into regulatory requirements in the E.U. and Japan, and, this aspect of the CID must be quashed as outside the FTC's authority.

studies or surveys" for Prime enrollment and cancellation it is interested in, demonstrates the confusion.  Staff states that the witness must be knowledgeable about the metrics behind such tests, the general conclusions from such tests, the results of such tests, and material changes to enrollment and cancellation stemming from such tests.  Amazon has conducted hundreds of tests on enrollment and cancellation for Prime, such that no witness could reasonably be prepared to testify about all of them.  The modification does not make it clear the level of detail that an individual must know on any specific test.  Nor has staff clarified what constitutes a "material change" to enrollment and cancellation processes, other than to exclude certain enrollment and cancellation flows from the definition.  Compounding the IH topics' unworkability, Amazon must prepare for testimony on Prime and five non-Prime programs, many of which (as explained) have different staff to consult (including managers, executives, engineers) and different data sources.  Even more egregiously, staff has given itself a loophole by allowing itself to add additional testimony topics at the last minute.  That is not reasonable particularity.  *Intuit*, 2020 WL 5037437 at *8.

Amazon is willing to comply with the IH topics, but needs more guidance from staff.  So far, staff has not come close to clarifying what it is looking for so Amazon can identify and prepare the proper witnesses on the IH topics.

B.    Staff's Purported Modifications Do Not Address Amazon's Reasonable Concerns.

As indicated in this Petition, Amazon has cooperated with staff throughout this investigation.  This cooperation included seeking reasonable modifications to the June 2022 CID to allow Amazon to understand what staff actually wants and to have time to produce the right material.  In response, staff's seeming attempts at modification — though appearing on the surface to be significant — do nothing to alleviate Amazon's reasonable concerns.

Amazon raised its concerns about the dozens of non-Prime programs that the June 2022 CID sweeps in.  In response, staff agreed to limit the IH testimony and interrogatory and document requests to five non-Prime programs — Audible, Amazon Music, Kindle Unlimited, Subscribe & Save, and a third party's subscription program.  While seemingly a meaningful modification, the reality is that Amazon's compliance with the June 2022 CID requires it to identify individuals within each of those additional programs who can respond to the interrogatory requests and prepare for IH testimony.  Again, these programs have not been part of the year-plus-long investigation.  Amazon has started from scratch identifying and interviewing individuals involved with these programs, and searching for and reviewing responsive information.  In short, the work to comply with requests for these non-Prime programs is just beginning.  It is unworkable to have it completed in a few weeks as staff has demanded.

Amazon also raised concerns with the scope of the IH topics in the June 2022 CID as written.  Staff's solution was to require testimony over three days on three topic areas.  But as indicated above, staff left itself the option to require testimony on as many as five topics from the June 2022 CID so long as it gives Amazon two weeks' notice.  Far from providing a limitation on the IH testimony, staff's "solution" puts any topic from the original June 2022 CID in scope.  Given the limited notice required to add new topics (two weeks), Amazon will need to be prepared in the event staff decides it wants to add new topics to one of the IH testimony days.  Specifically, Amazon will need to identify individuals who can testify to each of the June 2022 CID IH topics, notwithstanding staff's purported narrowing of those topics.

In short, staff has failed to meaningfully make any modifications to the June 2022 CID and continues to demand compliance with an unrealistic schedule based on vague "pressure" being placed on staff from above.

C.     Complying With The June 2022 CID Imposes An Undue Burden On Amazon.

Complying with the June 2022 CID will impose an undue burden.  *See* Declaration of M. England, attached as Exhibit 2.  Based on the breadth of subject matters and time periods covered by the IH topics, document requests, and interrogatories, Amazon estimates that it will need to consult dozens of witnesses — not including dozens more within the different businesses — in order to comply with the CID.  This point is worth emphasis:  Amazon estimates that it will need to work with dozens of witnesses by September 20, 2022, less than two months away. Even under the most favorable conditions, that is not possible.  And these are not the most favorable conditions:  in addition to having to identify witnesses on the numerous and oftentimes vague topics, Amazon will face inevitable scheduling challenges during a busy travel period for potential witnesses and the continuing effects of the COVID-19 pandemic, which may impact its ability to conduct in-person preparation and the ability of witnesses to travel to give in-person testimony.

The sweeping breadth of the topics will likely require Amazon to consult not only managers and senior executives, but also software designers, engineers, graphic designers, consumer research experts, and consumer response specialists.  Requiring this level of witness preparation in such a short time frame indeed threatens to disrupt normal operations by, for example, diverting resources away from Amazon's business units during a busy retail shopping period; it therefore is unreasonable.  *See Texaco*, 555 F.2d at 882.  It is particularly unreasonable where, as here, the urgency to conclude the investigation has been manufactured.

Staff refuses to meaningfully compromise on the scope and breadth of the CID. The discussion above demonstrates the burden facing Amazon, both in terms of the number of witnesses who will be required to testify, the number of Amazon programs involved, and, more fundamentally, the lack of clarity on what information staff is actually seeking. Absent clarity, witnesses might not possess the types of knowledge that staff is looking for, leading to further delay and waste of time during IHs. For these reasons, the Petition should be granted.

## III.    The Individual CIDs Are Unreasonable And Unduly Burdensome.

Staff's unreasonable demands and lack of cooperation extend to the Individual CIDs that it recently sprung on nearly twenty current and former Amazon employees and executives. Rather than coordinate service with Amazon or its counsel, staff tried to surprise the employees and executives, at their homes, including on the Friday of a holiday weekend. When Amazon learned of staff's actions and asked staff for copies of the CIDs, staff refused. As a result, staff prevented Amazon from working quickly to secure legal representation for those employees. Staff did not stop there. As discussed above, when many of those employees later chose to be represented by Amazon's counsel, Covington, staff tried to block that joint representation by saying that such representation was improper, only to concede on July 20 that the witnesses in fact had a right to their choice of counsel. (As explained above, however, staff has continued to interfere with witnesses' right to counsel, going so far as to halt the first IH in order to enforce its unlawful position.)

With no input from the witnesses or counsel, and no consideration for their personal and professional commitments, staff demanded that all of the individual IHs occur before September 20, with several of them set in the first two weeks of August. This timetable is apparently driven by an unexplained imperative to hurry up and finish the investigation (which itself is apparently based on some internal pressure, after ignoring the investigation for months). To meet this

arbitrary timeline, staff's schedule repeatedly stacks multiple IHs in a single day and crams

several back-to-back in a single week.  Despite these issues, counsel has been attempting to work

with staff on a reasonable schedule, but staff has refused in many instances to modify IH dates

absent a showing of extraordinary hardship.

Staff's proposed IH schedule is unreasonable and unduly burdensome.  The fact that

staff, after about six months of delay, now must respond to a deadline of the agency's own

making is no excuse for imposing unreasonable demands on Amazon or its executives and

employees.  Every one of these executives and employees has a right to counsel, and a

concomitant right to an adequate time to prepare for their testimony.  *See, e.g.*, *Csapo*, 533 F.2d

at 10–11.  That preparation takes time that staff's unilaterally imposed schedule does not permit.

Just one example illustrates the problem:  counsel for one of the Individual CID recipients was

alerted to the individual's CID on July 28, yet staff initially insisted on a scheduled IH date of

August 5, a mere five business days away.  Such a short time period does not give counsel or the

witness adequate time to prepare for the IH and permits no allowance for witnesses' scheduling

conflicts.  (Staff has since conceded that the IH can proceed the following week, which is still a

remarkably tight time for the witness to prepare.)  This is, again, a problem of staff's own

making:  caused by its decision to issue nearly twenty individual CIDs, dramatically expand the

scope of its investigation without warning, refuse to place meaningful limits on the IH topics,

and demand compliance in a two-month period.

The recipients of the Individual CIDs thus petition for relief from the IH schedule

imposed by staff.  There is no questioning the Commission's power to grant additional time to

comply with a CID.  *See, e.g.*, *In re Civil Investigative Demand to Beam Fin., Inc.*, 2020 WL

5037434 (F.T.C. Aug. 17, 2020) (granting a "modest extension" to the deadline to comply with a

CID).  Here, counsel merely requests that the Commission vacate the current IH schedule and

direct staff to make good faith efforts to work with counsel to reschedule the individual IHs, with

the expectation that the individual IHs will be completed no later than October 21, 2022.

## IV.   Staff Has Identified No Legitimate Reason For The Individual CIDs To Mr. Bezos and Mr. Jassy.

Mr. Bezos and Mr. Jassy further petition to quash or limit the Individual CIDs issued to

them in this matter.  Staff's demand that Mr. Bezos and Mr. Jassy testify at an IH on an open-

ended list of topics on which they have no unique knowledge is grossly unreasonable, unduly

burdensome, and calculated to serve no other purpose than to harass Amazon's highest-ranking

executives and disrupt its business operations.

Mr. Bezos and Mr. Jassy are Amazon's highest-level executives.  Mr. Bezos is Amazon's

Executive Chairman; Mr. Jassy is his successor as Amazon's President and CEO.  Together they

run a global company that is a significant employer in the United States.  Preparing either to

testify regarding the granular details of business operations for which they have no unique

knowledge and no day-to-day responsibilities would be a tremendous burden on them, on

counsel, and on Amazon.  *See United States ex rel. Galmines v. Novartis Pharms. Corp.*, 2015

WL 4973626, at *1 (E.D. Pa. Aug. 20, 2015) ("depositions of high-level officers severely

burdens those officers and the entities they represent," creating a danger that the proponent of the

discovery "might use this severe burden to their unfair advantage").  Given the disproportionate

burden and the risk of abuse, staff has a unique responsibility to justify its demand that Mr.

Bezos and Mr. Jassy both testify at an IH.  *See Celerity, Inc. v. Ultra Clean Holding, Inc.*, 2007

WL 205067, at *3 (N.D. Cal. Jan. 25, 2007) ("Virtually every court that has addressed deposition

notices directed at an official at the highest level . . . of corporate management has observed that

such discovery creates a tremendous potential for abuse or harassment.").

Staff has not justified that demand; in fact, it has refused to do so.  Staff has served nearly twenty CIDs on current and former executives and employees of Amazon, and has demanded days' more of testimony from corporate representatives in connection with the company CID. Staff is thus set to receive dozens of hours of testimony from numerous Amazon executives "who dealt with the relevant topics on a day-to-day basis" and who may be better placed to "testif[y] about them with a granular level of detail."  *Amazon.com, Inc. v. Commissioner*, 2014 WL 6980512, at *4 (T.C. Dec. 10, 2014).  "High-level testimony from Mr. Bezos [and Mr. Jassy] on these topics would add little."  *Id.*

Given the likelihood that any IH testimony from Mr. Bezos and Mr. Jassy would be unduly burdensome and unnecessarily cumulative, their IH testimony should at a minimum be postponed until such time as staff has completed all other individual and corporate IHs in this matter.  Only then, and only on a showing that, despite staff's reasonable efforts, Mr. Bezos and Mr. Jassy have unique knowledge on relevant topics that staff has been unable to obtain from other Amazon witnesses, should staff be permitted to proceed with an IH of Mr. Bezos or Mr. Jassy.  *See id.* at *3–4 (quashing an IRS subpoena seeking deposition testimony from Mr. Bezos because "[p]reparing him to testify in any detail on such a broad range of topics would be exceptionally time consuming," and those topics already had been, or would be, covered by numerous other Amazon executives).

**V.    Amazon's History Of Cooperation With The FTC Underscores The Burden And Lack Of Notice Imposed By The June 2022 CID's Unexplained Departure From The Course Of The Investigation.**

According to the FTC's Rules of Practice, parties are expected "to engage in meaningful discussions with staff to prevent confusion or misunderstanding regarding the nature and scope of the information and material being sought, in light of the inherent value of genuinely cooperative discovery." 16 C.F.R. § 2.4.  For over a year, Amazon has cooperated with staff in

its investigation into Prime.  Amazon has complied with the initial March 2021 CID through voluminous document productions and responses to interrogatories.  Staff's long silence on the investigation into 2022 suggested to Amazon that either staff had what it needed or that the investigation was not a priority.

The June 2022 CID's unexplained departure from the course of the investigation by, for example, expanding the scope of the investigation into programs beyond Prime, unduly burdens Amazon.  Whatever notice Amazon previously received about the nature and scope of this investigation has been undone by the June 2022 CID.  To be sure, "[w]here . . . no complaint has yet been formulated and the issues have therefore not yet been crystallized . . . . an investigating agency is under no obligation to propound a narrowly focused theory of a possible future case," *Texaco*, 555 F.2d at 873–74, and there is no doubt that the FTC may change the course of an investigation.  But here, where staff had proceeded for over a year with an investigation into Prime, it cannot, as the result of an emergency of its own creation, significantly expand the scope of the investigation into multiple new areas that do not overlap with the existing investigation while giving Amazon only five weeks to respond.  Such actions belie any attempt "to prevent confusion or misunderstanding" regarding the investigation.  16 C.F.R. § 2.4.

## CONCLUSION

Amazon remains willing to work with staff on this investigation.  But it must be given an adequate amount of time to process, receive clarification from staff, and respond to the new demands and subject areas of the CID.  It would be fundamentally unfair to expect Amazon to be able to respond to the June 2022 CID in the time allotted when staff has refused to adequately clarify its requests.  And its counsel must not be unlawfully prevented from engaging in joint representation of Amazon and its current and former employees.

PUBLIC

For the reasons stated above, Amazon respectfully asks the Commission to quash the June 2022 CID as currently written (and in the absence of the modifications proposed by Amazon), particularly with respect to the scope of the CID's IH testimony topics, its failure to identify IH topics with reasonable particularity, and its expansion into Amazon programs not previously part of the investigation. At the very least, Amazon asks the Commission to extend the return date for documents to September 15, 2022, subject to all modifications to the CID proposed by Amazon, to give Amazon a fair opportunity to respond to the CID's new and expanded demands. The Individual CID recipients further petition to quash as set forth above.

DATED:  August 5, 2022

Respectfully submitted,

COVINGTON & BURLING LLP

By: _____

LAURA KIM

JOHN GRAUBERT
JOHN HALL
LAURA FLAHIVE WU
STEPHEN ANTHONY
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Tel: (202) 662-6000
jgraubert@cov.com
lkim@cov.com
jhall@cov.com
lflahivewu@cov.com
santhony@cov.com

*Counsel for Amazon.com Inc.*

*Counsel for Jeffrey Bezos, Christopher ("C.R.") Brown, Sharon Chiarella, Dave Clark, Nahshon Davidai, Jamil Ghani, Russ Grandinetti, Greg Greeley, Doug Herrington, Benjamin Hills, Sridhar Iyer, Andrew Jassy, Neil Lindsay, Dharmesh Mehta, Katey Muus, Cem Sibay, and Gloria Smuda*

PUBLIC

## CERTIFICATE OF SERVICE

I hereby certify that, on August 5, 2022, the foregoing Omnibus Petition to Quash was served by electronic mail to the following:

Office of the Secretary
600 Pennsylvania Ave. NW
Washington, D.C. 20580
electronicfilings@ftc.gov

Secretary April Tabor
600 Pennsylvania Ave. NW
Washington, D.C. 20580
atabor@ftc.gov

Jonathan Cohen
600 Pennsylvania Ave. NW
Washington, D.C. 20580
Jcohen2@ftc.gov

Olivia Jerjian
600 Pennsylvania Ave. NW
Washington, D.C. 20580
ojerjian@ftc.gov

Max Nardini
600 Pennsylvania Ave. NW
Washington, D.C. 20580
tnardini@ftc.gov

_____
Laura Kim

PUBLIC

## UNITED STATES OF AMERICA
## BEFORE THE FEDERAL TRADE COMMISSION

|  |  |  |
|---|---|---|
| In the Matter of | ) | **PUBLIC** |
|  | ) |  |
| Civil Investigative Demands | ) | File No. 2123050, Amazon.com, Inc. |
| dated June 30, 2022 to Amazon.com, Inc. and | ) |  |
| certain current and former Amazon employees | ) |  |
|  | ) |  |

### STATEMENT OF COUNSEL PURSUANT TO 16 C.F.R. § 2.10(a)(2)

Counsel for petitioners, Covington & Burling LLP ("Covington"), respectfully submits this Statement of Counsel pursuant to 16 C.F.R. § 2.10(a)(2) in support of the Omnibus Petition to Quash filed August 5, 2022. This Statement addresses Covington's repeated efforts to obtain staff's agreement to reasonable modifications of the CID issued to Amazon.com, Inc. on June 30, 2022 ("Amazon CID") and the CIDs issued to seventeen other individuals in the same matter ("Individual CIDs").[1]

On Friday, July 1, 2022, without prior notice, staff emailed the Amazon CID to Covington. FTC staff proposed scheduling an initial meet and confer on July 7. Over the July 4 holiday weekend, Covington learned that FTC staff had begun attempting to serve individual CIDs at the homes of certain current and former Amazon employees. Covington called FTC counsel Jonathan Cohen and Olivia Jerjian on July 6 to inform them that Covington represented one of those former employees and requested reasonable accommodations to reschedule his Investigational Hearing that had been set for the same day. In response, Mr. Cohen informed

---

[1] Those individuals are: Jeff Bezos; Christopher ("C.R.") Brown; Sharon Chiarella; Dave Clark; Nahshon Davidai; Jamil Ghani; Russ Grandinetti; Greg Greeley; Doug Herrington; Benjamin Hills; Sridhar Iyer; Andrew Jassy; Neil Lindsay; Dharmesh Mehta; Katey Muus; Cem Sibay; and Gloria Smuda.

PUBLIC

Covington that, because Covington also represented Amazon, Covington was prohibited from attending the employee's Investigational Hearing.  Covington also requested that Mr. Cohen identify other CIDs issued to Amazon employees in this matter and the proposed dates for their testimony, which would have minimized burdens and saved time for everyone, but Mr. Cohen refused.

On Thursday, July 7 at noon ET, Covington, on behalf of Amazon, engaged in meet and confer discussions for over ninety minutes via videoconference with FTC staff pursuant to 16 C.F.R. § 2.7(k).  During that discussion, Covington raised numerous concerns with the Amazon CID, including the failure to describe with reasonable particularity the overbroad Investigational Hearing topics, the overbroad interrogatories and document requests, and the associated difficulties in providing thorough and complete responses for every request in the new CID as well as the 31 requests in the April 19, 2022 letter by August 1, then three-and-a-half weeks away.  Covington identified specific concerns with each of the twelve interrogatories and document requests as well as the four broad testimony topics.  Covington also raised fundamental issues that cut across a number of the specifications.  For example, the Amazon CID broadened the investigation from one focused for over a year on Prime to include every automatic renewal program offered by any Amazon entity and also encompassed every signup channel for those programs, regardless of size or significance.  With respect to the Investigational Hearing topics, Covington raised concerns about the breadth and lack of particularity of the topics, including one topic that required Amazon to testify about all "topics addressed in the outstanding discovery."  Staff further asserted that it could set the petition to quash deadline at whatever date it wished, notwithstanding the plain language of the statute authorizing civil investigative demands.  During this discussion, FTC staff declined to discuss

further its unilateral demand that Covington could not attend Investigational Hearings of individual witnesses that Covington represented.

On July 11 at 5:45 PM, Covington again met with FTC staff via conference call.  At this meeting, FTC staff reasserted its position that Covington would not be permitted to attend the Investigational Hearings of its clients, but agreed to reconsider if Covington signed a nondisclosure agreement that would prevent Covington from disclosing information learned in those Investigational Hearings to its client Amazon.  Staff conceded that its proposal might be unethical, but nevertheless demanded that Covington agree.  Staff also required Covington to certify that it would appear only as counsel for the witness.  To facilitate an efficient meet and confer process, including conferring about the scheduling for the many individual Investigational Hearings, Covington again requested that staff identify the Amazon employees who had received CIDs and further asked staff to provide all CIDs issued in this matter to Amazon employees, but staff continued to refuse.

On July 12, Covington repeated in writing its request that staff provide the individual CIDs issued to current Amazon employees.  Staff refused.  Over the next several weeks, Covington continued to learn about additional CIDs that staff had issued to Amazon employees, and those employees have retained Covington to represent them.  Staff's refusal to provide these CIDs to Covington needlessly delayed the meet and confer efforts for this growing list of witnesses.

On July 18, Covington sent a letter to FTC staff memorializing the July 7, 2022 meet and confer discussion and reiterated Amazon's requested modifications, including for narrower and clearer Investigational Hearing topics, interrogatories, and document requests, in particular for those requests that sought information for all of Amazon's dozens of automatic renewal

programs, as well as an extension of the return date by six weeks, to September 15, 2022.
Covington again requested copies of the CIDs issued to individuals represented by Covington.

On July 19, Covington asked staff to provide the CIDs for its clients a fourth time.

Covington also provided FTC staff with a letter outlining the clear legal authority allowing
Covington's participation in Investigational Hearings of its clients, regardless of who else it
represented.  Staff has never justified its position on this issue.

On July 20, FTC staff finally gave Covington copies of the CIDs for fifteen of its clients.
At 5:00 PM that afternoon, Covington and Amazon continued to meet and confer with staff via
conference call.  Covington again raised its concerns about the over-breadth of the topics for
testimony at the Amazon Investigational Hearing and requested an extension of the return date
for interrogatories and document requests in the Amazon CID.  Covington further explained why
it may represent its individual clients at their Investigational Hearings.  FTC staff, without
identifying any legal precedent, again disagreed and reiterated its demand that Covington certify
that it would attend any Investigational Hearing solely as counsel for the witness, and not
represent any Amazon interest.

On July 21 at 9:45 AM, Covington and Amazon continued their telephonic meet and
confer with staff regarding the Amazon CID and Individual CIDs.  Covington further explained
the concerns identified in its July 18 letter, including the breadth of the topics for Investigational
Hearing testimony and Amazon's proposed modifications to the interrogatories and document
requests and the return date. Covington also raised various concerns about the Individual CIDs,
including that the CIDs directed to Jeff Bezos and Andy Jassy improperly seek testimony from
senior officials.  Covington asked staff to explain why the FTC needed testimony from Mr.
Bezos and Mr. Jassy, but staff declined, instead asserting that it was entitled to take their

testimony unless Amazon could demonstrate that they have no information relevant to the investigation.

On July 22, FTC staff sent a letter to Covington extending the return date for all substantive responses to the Amazon CID and the petition to quash by four days to August 5. The letter offered only minor modifications to interrogatories and identified over 40 topics for the corporate Investigational Hearing testimony.  Among the reasons for rejecting Amazon's other requests, staff asserted that Covington must "provide a basis for the proposed modification beyond general and conclusory burden claims," even for specifications that are overbroad and vague on their face and that any reasonable factfinder would find unduly burdensome.

On July 26, Covington requested to continue meeting and conferring with FTC staff the next day, but staff responded that they were not available until July 28.  On July 28, the parties met via conference call to further discuss the Amazon and Individual CIDs.  Covington again addressed the burden and breadth of the Amazon CID, including by identifying numerous particularized concerns about specific Investigational Hearing topics, explaining that the expansion to automatic renewal programs beyond Amazon Prime would encompass significant amounts of new material, and providing a basis for why the deadline for the requests was not feasible.  Staff informed Covington that it understood Amazon's position that the requests were burdensome and expressed a lack of interest in hearing anything more about the burden posed by the requests.  Covington requested staff's feedback on its concerns, but Ms. Jerjian informed Covington that she was unable to provide feedback on any of the modifications proposed in Covington's July 18 letter or during the July 28 meeting without first discussing those further with Jonathan Cohen, the lead FTC attorney on this matter, who was out of the office and unavailable to confer or provide any response until August 1.  Covington also raised concerns

about the scheduling of individual Investigational Hearings, but FTC staff rejected any accommodations absent a reason that staff deemed good enough and could be substantiated with evidence.  Staff has since made clear that they will consider the schedule of witnesses as a valid reason only if counsel provides substantiation, such as in the form of nonrefundable plane tickets, and that neither a witness's personal circumstances or work obligations, nor conflicts with the schedules of counsel, constitutes a valid reason.  This blanket refusal to cooperate is contrary to FTC practice, as reflected by counsel's decades of experience with FTC staff. Furthermore, staff reasserted its demand that Covington agree to represent only the witnesses, not Amazon, at each Investigational Hearing.  Covington asked to continue the meet and confer discussion the next morning but because of Mr. Cohen's unavailability until August 1, staff declined.

On July 31 and August 1, Covington sent additional letters to FTC staff memorializing prior discussions and reiterating its concerns with the CIDs, including the breadth of testimony topics, subscription programs besides Amazon Prime, deadlines for compliance, demands that Jeff Bezos and Andy Jassy testify, and the breadth of the Individual CIDs.

On Monday, August 1 at 3:00 PM, Covington and FTC staff again met and conferred via conference call to discuss concerns with the individual CIDs and Amazon CID.  During this discussion, FTC staff stated that they would no longer require Amazon to sign an NDA—three weeks after Amazon first objected to it.  However, staff continued to assert that it would require Covington to make a statement on the record agreeing to limit its representation, and apparently its mental state during the hearing, to only that of the witness and the witness's interests at the individual Investigational Hearing.  FTC staff stated that if Covington failed to make that statement, Covington would be excluded from the Investigational Hearing.

PUBLIC

In addition, staff stated that if Covington refused to leave the room, the FTC would assert that Covington was trespassing on government property and, if necessary, remove Covington attorneys from the Investigational Hearings.  FTC staff also rejected Covington's requests with respect to deferring the individual testimony of Jeff Bezos and Andy Jassy until after additional testimony had been taken in this matter, with no explanation or justification.  The parties also discussed the breadth of the Investigational Hearing topics set forth in the July 22 letter, the burden imposed by the expansion beyond Prime to all automatic renewal programs, and the impossibility of responding to all of the interrogatories and document requests by August 5. After the meeting on August 1, FTC staff confirmed in writing that, "[t]o attend any investigational hearing at issue, Covington must agree, either in writing in advance or on the record, that its appearance and involvement in the investigational hearing is limited to its representation of the witness and the witness' interests."

On August 2, Covington sent an email to FTC staff rejecting this limitation on its representation of its clients.  Covington confirmed that it would make the first witness available at his scheduled Investigational Hearing on August 4.  Staff did not respond to this message.

That evening, FTC staff sent a letter to Covington modifying the Amazon CID, again in very limited respects that failed to resolve the vast majority of the concerns raised in the parties' discussions over the prior month, including the unreasonable deadline for compliance.  The letter affirmed that several requests had been expanded to wholly new subscription programs beyond Prime, and did not alleviate the breadth of the Investigational Hearing topics or the uncertainty resulting from staff's reservation of the right to add additional Investigational Hearing topics until shortly before the testimony is set to begin.

On August 3, staff sent further correspondence to Covington rejecting any scheduling accommodations.  Staff asserted that it was unwilling to agree to alternative testimony dates for a witness, because Covington had previously requested two scheduling accommodations for a separate witness—first, when staff served a CID on that witness for an Investigational Hearing in less than 24 hours, and second, when the witness expressed a desire to retain new counsel.  Staff further asserted that deferring proposed testimony by less than one month was "unreasonable in the context of this investigation"—even though the current investigation has been ongoing for more than 16 months—and ignoring Amazon's long history of cooperation before the FTC itself allowed the investigation to become dormant, as well as staff's subsequent arbitrary insistence on completing the investigation in a compressed timeline with no justification.

On August 4, staff sent a letter to Covington modifying the Individual CIDs in limited respects but did not address the scheduling concerns that Covington has repeatedly raised.  On August 4, Covington and an Amazon employee it represented appeared for the scheduled Investigational Hearing of that employee.  At the outset of the hearing, staff once again insisted that Covington state on the record that it would represent only the interests of the witness.  Covington repeated its position that it would not agree to this demand and FTC staff directed Covington to leave the Investigational Hearing.  Covington and the Amazon employee then left the building.

At this time, the issues identified in the Petition remain unresolved.

PUBLIC

Date: August 5, 2022

Laura Kim
Covington & Burling, LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
(202) 662-6000
lkim@cov.com

PUBLIC

# Exhibit 1

PUBLIC

**UNITED STATES OF AMERICA
BEFORE THE FEDERAL TRADE COMMISSION**

| | |
|---|---|
| In the Matter of ) | **PUBLIC** |
| ) | |
| Civil Investigative Demands ) | File No. 2123050, Amazon.com, Inc. |
| dated June 30, 2022 to Amazon.com, Inc. and ) | |
| certain current and former Amazon employees ) | |
| ) | |

**DECLARATION OF JOHN D. GRAUBERT IN SUPPORT OF OMNIBUS PETITION
TO QUASH OR LIMIT CIVIL INVESTIGATIVE DEMANDS**

I, John D. Graubert, declare the following:

1. I am over the age of 18 and am a senior counsel at Covington & Burling LLP. In that capacity, I represent Amazon.com, Inc. and certain current and former Amazon employees[1] in this matter.

2. My colleague John Hall from Covington and I appeared at the FTC's Regional Office in Seattle on Thursday morning, August 4, 2022, together with our client Christopher ("C.R.") Brown, for Mr. Brown's Investigational Hearing in this matter.

3. The FTC was represented by Jonathan Cohen, Olivia Jerjian, Max Nardini, and Elena Hoffman.

4. At the outset of the examination, FTC counsel Olivia Jerjian read into the record a statement repeating the Commission's position that as counsel for other parties in this matter, in addition to Mr. Brown, Covington would have to agree to limit our representation

---

[1] "Certain current and former Amazon employees" are: Jeffrey Bezos; Christopher ("C.R.") Brown; Sharon Chiarella; Dave Clark; Nahshon Davidai; Jamil Ghani; Russ Grandinetti; Greg Greeley; Doug Herrington; Benjamin Hills; Sridhar Iyer; Andrew Jassy; Neil Lindsay; Dharmesh Mehta; Katey Muus; Cem Sibay; and Gloria Smuda.

to the interests of "the witness" and could not consider the interests of any other party.  Ms. Jerjian asked us whether we agreed to that limitation.

5.      As we had explained to the FTC in writing on several occasions, most recently in an email from me to Mr. Cohen on August 2, 2022 (to which Mr. Cohen did not respond), Covington would not, and could not, agree to the condition staff was demanding, in that such a demand was not only unsupported by the rules, but that such a demand unlawfully attempted to restrict our ability to fully and effectively represent our clients, and impinged on the witness' right to counsel of their choice.

6.      Consistent with these prior explanations, Mr. Hall responded by stating that the witness was prepared to testify, but that we could not agree to the condition demanded by Ms. Jerjian, whereupon Ms. Jerjian declared that we were excluded from the hearing. Mr. Jerjian directed the court reporter to go off the record, and demanded that we (Mr. Brown's counsel) leave the FTC's offices.

7.      Mr. Hall responded, while still in the hearing room, that we had come to the FTC offices with the witness prepared to testify, and the Commission's unwillingness to proceed was wholly their decision.  Mr. Hall requested that the court reporter go back on the record in order to record this statement.  Mr. Cohen and Ms. Jerjian, however, instructed the court reporter to remain off the record, preventing the court reporter from transcribing a complete record of the events.

8.      Mr. Hall, Mr. Brown, and I then left the building.

PUBLIC

I declare that the foregoing is true and correct to the best of my knowledge.

Executed on August 5, 2022.

_John D. Graubert_
_(with permission MPC)_

_____

JOHN D. GRAUBERT

COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Tel: (202) 662-6000
jgraubert@cov.com

*Counsel for Amazon.com, Inc.*

*Counsel for Jeffrey Bezos, Christopher ("C.R.") Brown, Sharon Chiarella, Dave Clark, Nahshon Davidai, Jamil Ghani, Russ Grandinetti, Greg Greeley, Doug Herrington, Benjamin Hills, Sridhar Iyer, Andrew Jassy, Neil Lindsay, Dharmesh Mehta, Katey, Muus, Cem Sibay, and Gloria Smuda*

PUBLIC

# Exhibit 2

PUBLIC

**UNITED STATES OF AMERICA**
**BEFORE THE FEDERAL TRADE COMMISSION**

| | |
|---|---|
| In the Matter of ) | **PUBLIC** |
| ) | |
| Civil Investigative Demands ) | File No. 2123050, Amazon.com, Inc. |
| dated June 30, 2022 to Amazon.com, Inc. and ) | |
| certain current and former Amazon employees ) | |
| ) | |

**DECLARATION OF MARK ENGLAND IN SUPPORT OF OMNIBUS PETITION TO QUASH OR LIMIT CIVIL INVESTIGATIVE DEMANDS**

I, Mark England, declare the following:

1.  I am Senior Corporate Counsel at Amazon. I have held that position since April 2022. From February 2020 to March 2022, I was Corporate Counsel at Amazon.

2.  I have reviewed the June 30, 2022 CID ("June 2022 CID") served on Amazon.com, Inc. in its entirety.  I have also reviewed the July 22, 2022 and August 2, 2022 letters from FTC staff purporting to modify the June 2022 CID.

3.  The June 2022 CID, as modified, (1) requires three days of Investigational Hearing ("IH") testimony; (2) contains nine interrogatories; and (3) contains three document requests that incorporate by reference dozens of additional separate requests.

4.  The three days of IH testimony cover numerous broad subject matters.  The first day covers Amazon Prime Cancellation, including broad requests such as "[t]esting, studies and surveys"; "[m]aterial changes to the flow that Amazon implemented or considered"; and "[k]nowledge of Amazon, and individuals at Amazon, regarding concerns that the process was not simple."  The second day covers "other topics," including testimony on enrollment and cancellation processes for five separate non-Prime subscription programs; document retention policies for Prime and five non-Prime programs; "[e]very action of any sort that

the Amazon Parties took, in whole or in part, in response to the Insider Article"; and Ephemeral Messaging usage and policies.   The third day covers Amazon Prime Enrollment, including broad requests such as "[t]esting, studies and surveys"; "[m]aterial changes to the flow that Amazon implemented or considered"; and "[t]he causes of Nonconsensual Enrollment."  In addition, each day of testimony contains a catch-all topic allowing testimony on "[a]ny [five] additional topic or topics covered by the [June 2022 CID], which require no more than two hours of testimony during the day, and that [FTC staff identifies] with reasonable particularity two weeks before" the IH.

5.      The nine interrogatories are similarly broad.  They require information on topics including: (1) consumers who were automatically enrolled in Amazon programs that include, but are not limited to, Amazon Prime; (2) material changes to sign-up and cancellation policies of Amazon programs that include, but are not limited to, Amazon Prime; and (3) the Amazon Parties' policies regarding Ephemeral Messaging, including production of a log of any such messages and images of the devices used to send or receive the messages.

6.      Finally, the three document requests are exceedingly broad.  They require production of (1) all documents responsive to any outstanding CID requests; (2) all documents relating to the *Insider* article, including those on personal devices; and (3) all documents on document retention policies related to the subject(s) of the investigation.  Item No. 1 ("all documents responsive to any outstanding CID requests") encompasses dozens of separate document requests contained in the March 16, 2021 Civil Investigative Demand ("March 2021 CID") issued to Amazon.

7.      Given the breadth of the June 2022 CID's testimony and interrogatory topics and the volume of documentation it requests, I understand that Amazon will need to consult with

PUBLIC

numerous individuals with knowledge of each of the relevant topics in order to prepare a witness—or, likely, multiple witnesses—to competently testify during the three days of IH testimony.   This will likely include individuals from the following Amazon groups: Litigation Legal, NA Consumer Legal, NA Consumer Leadership, International Consumer Leadership, Global Media and Entertainment Leadership, WW Prime, Prime Membership Growth, Prime Benefits and Programs, Global Prime Experience Design Team, Corporate Business Development, Shopping Design Team, Books, Reading Subscriptions, Kindle Unlimited, Consumables, Product Replenishment, Subscribe and Save, Amazon Music, Amazon Music Unlimited, Music Growth and Marketing, Audible and Audible Tech. Amazon will also need to review a significant volume of background materials to prepare its witnesses, and additional materials to prepare responses to the nine interrogatory topics. Finally, Amazon will need to collect, review, and prepare for production documents in response to the three document requests.

8.      These estimates are given to the best of Amazon's knowledge and understanding based on the breadth and complexity of the issues raised in the June 2022 CID.  Further, while it is difficult to predict the precise number of hours that it would take to comply with the June 2022 CID, our projection of the burden that these requests would impose is informed by the extensive time and effort that was required to respond to the March 2021 CID.

9.      Over the past sixteen months, in order to respond to the March 2021 CID, Amazon and its agents collected and reviewed hundreds of thousands of pages of documents.  Amazon also had to consult with dozens of employees across the Prime organization and other organizations within Amazon to collect material for interrogatory answers and document requests.  These employees included vice presidents, directors, product managers, program

PUBLIC

managers, product managers, software engineers, software development managers, business intelligence engineers, business intelligence managers, content marketers, economists, employees who work on user experience and customer service, and legal personnel.

10.   These are all extremely busy individuals with substantial normal job responsibilities.  The additional burden of responding to these requests was substantial.  Further, many issues necessitated repeat or follow-up discussions.

11.   The June 2022 CID's requests are particularly complicated because they implicate five new subscription programs, each of which have different sign-up and cancellation processes for which different individuals are responsible.  Moreover, even within a single program, sign-up and cancellation might be the responsibility of different individuals.  The IH topics are further complicated by the catch-all provision that allows five additional topics to be added to the IHs with only two weeks' notice.  Amazon will need to identify and prepare witnesses on these vague yet-to-be-determined topics to be prepared in the event staff decides to add these topics to the IH.  Responding to the June 2022 CID therefore requires the specialized knowledge of numerous individuals across Amazon.

12.   For each program, Amazon would need to compile information on and educate witnesses about a vast number of many different issues spanning multiple years, including:  the multiple sign-up locations for each program; the customer journey across each location; customer experience (CX) variations based on plan type (e.g., Free Trial, Hard Offer, Student, Paid Trial, Monthly, Annual, etc.); additional sign-up CX variations (e.g., Desktop, Mobile, Apps); the cancellation CX (including for Desktop, Mobile, Apps); how these CXs changed throughout the Relevant Period; content tests and experiments relating

PUBLIC

to sign-up and cancellation; user studies relating to sign-up and cancellation; surveys relating to sign-up and cancellation; related policies; sign-up and cancellation data; internal projects relating to sign-up and cancellation; and the Standard Issue Codes that might identify customer complaints about sign-up or cancellation processes.  Gathering this information in a way that will be useful and responsive to the June 2022 CID will require substantial time and resources.

13. For the reasons described above, it is impracticable for Amazon to comply with the June 2022 CID by the compliance date of August 5, 2022.

I declare that the foregoing is true and correct to the best of my knowledge.

Executed on August 5, 2022.

_____

Mark England