# Exhibit 4

UNITED STATES OF AMERICA
BEFORE THE FEDERAL TRADE COMMISSION

COMMISSIONERS:   Lina M. Khan, Chair
                 Noah Joshua Phillips
                 Rebecca Kelly Slaughter
                 Christine S. Wilson
                 Alvaro Martín Bedoya

| | |
|---|---|
| In the Matter of | )<br>)<br>) |
| CIVIL INVESTIGATIVE DEMANDS<br>DATED JUNE 30, 2022, TO AMAZON.COM, INC.<br>AND CERTAIN CURRENT AND FORMER AMAZON<br>EMPLOYEES | )  File No. 212 3050<br>)<br>)<br>)<br>) |

ORDER GRANTING IN PART AND DENYING IN PART
OMNIBUS PETITION TO LIMIT OR QUASH
CIVIL INVESTIGATIVE DEMANDS

**By WILSON, Commissioner:**

Amazon.com, Inc. ("Amazon"), on behalf of itself and 17 individuals[1], has submitted an Omnibus Petition to Limit or Quash ("*Petition*") a series of Civil Investigative Demands ("CIDs") issued by the Commission on June 30, 2022, in connection with an investigation into whether Amazon has engaged in unfair or deceptive acts or practices in its use of recurring or negative option subscriptions to Amazon Prime and other Amazon services.[2]

Amazon raises multiple grounds on which it claims the CIDs directed to the company and the individual witnesses should be limited or quashed. These claims include that investigating FTC staff interfered with the witnesses' selection of counsel during investigational hearings; the CID to the company is unduly burdensome and vague; the schedule for testimony from

---

[1] The individuals petitioning to quash are Jeffrey Bezos, Christopher ("C.R.") Brown, Sharon Chiarella, Dave Clark, Nahshon Davidai, Jamil Ghani, Russ Grandinetti, Greg Greeley, Doug Herrington, Benjamin Hills, Sridhar Iyer, Andrew Jassy, Neil Lindsay, Dharmesh Mehta, Katey Muus, Cem Sibay, and Gloria Smuda.

[2] The CIDs at issue specifically provide that the FTC is investigating whether the conduct in question violates Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, Section 4 of the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. § 8403, Section 907(a) of the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693e(a), and Section 1005.10(b) of Regulation E, 12 C.F.R. §1005.10(b). *See also Resolution Directing Use of Compulsory Process in a Non-Public Investigation of Unauthorized Charges to Consumers' Accounts*, File No. 082 3247 (Oct. 22, 2018).

individual witnesses is unduly burdensome; and CIDs issued to Jeffrey Bezos and Andrew Jassy should be quashed as unduly burdensome given their positions with the company.

As set forth further below, we clarify the Commission's position on the rights of witnesses in investigational hearings. We do not accept that Amazon has sufficiently established as a general matter that the CIDs issued to the company or to individual witnesses present undue burdens in terms of scope or timing and we decline to limit the CID on these grounds. We do find, however, that certain "catch-all" provisions are not sufficiently particular under the Commission's Rules of Practice and we modify these. Moreover, consistent with Amazon's representations regarding issues in scheduling investigational hearings, we have set forth a protocol for efficiently establishing dates for future hearings. Accordingly, we grant the petition in part and deny it in part and order Amazon to comply consistent with the terms of the Order provided below.

**I.      Background.**

**A.      The investigation's initial phase.**

Amazon is one of the world's foremost companies. According to some authorities, Amazon is the sixth largest company in the world as well as the largest retailer. *See*, *e.g.*, Lauren Debter, *The World's Largest Retailers 2022: Pandemic Helps Amazon Cement Its Lead,* Forbes, (May 12, 2022), https://www.forbes.com/sites/laurendebter/2022/05/12/worlds-largest-retailers-2022-amazon-walmart-alibaba/?sh=7ac78a4859e3. As of December 2021, the company reported employing over 1.6 million people and receiving net revenue of over $32 *billion* dollars.[3] Amazon.com, Inc., Annual Report (Form 10-K), at 4, 38 (Feb. 3, 2022).

In March 2021, the Commission initiated an investigation into whether Amazon had engaged in violations of the FTC Act or the Restore Online Shoppers' Confidence Act ("ROSCA") in connection with its Amazon Prime subscription offering. Specifically, the Commission wanted to know whether Amazon violated these statutes "by automatically enrolling consumers without their prior express informed consent or failing to provide a simple mechanism for a consumer to stop recurring charges." Civil Investigative Demand Issued to Amazon.com, Inc., Matter No. 2123050, at 2 (Mar. 16, 2021) ("March 2021 CID").

According to Amazon, it sufficiently complied with this CID and ultimately produced a total of more than 37,000 pages of documents to the investigating FTC staff, along with interrogatory responses and additional information in the form of meetings and other follow-ups.[4] *Petition*, at 2. As Amazon describes it, by February 2022, staff had "inexplicably disengaged" only to "abruptly" reemerge in April 2022 with a new leading attorney and a broader and "accelerated" investigation. *Id.*, at 2-3.

---

[3]      By contrast, the FTC's 2021 budget topped out at only $351 million, or slightly more than 1% of Amazon's earnings. *See Budget and Strategy*, FED. TRADE COMM'N, https://www.ftc.gov/about-ftc/budget-strategy.

[4]      We understand that Amazon has not produced significantly more information since its responses to the March 2021 CID.

### B. The March 14, 2022, *Business Insider* article.

On March 14, 2022, the website *Business Insider* published an article titled, "Internal documents show Amazon has for years knowingly tricked people into signing up for Prime subscriptions."[5] The article's subtitle quoted a former Amazon employee as stating, "We have been deliberately confusing."

Relying on statements from current and former employees, as well as internal emails and documents, the article reported that, since 2017, Amazon itself had been concerned that its use of website design decisions may have led customers to feel as though the company manipulated them into signing up for Amazon Prime. *Insider* article, at 1. The article reported that "[i]n several cases, fixes for these issues were proposed and considered, but resulted in lower subscription growth when tested, and were shelved by executives." *Id.*, at 1.

For example, in 2017, an Amazon customer who was not a Prime member and who sought to purchase merchandise would see in the course of the check-out process a sign-up screen that offered two choices to click: a button labeled "Get fast, free shipping" or button labeled "No thanks, I do not want fast, free shipping." By clicking "Get fast, free shipping" the consumer would be automatically enrolled in a trial period for Amazon Prime. *Id.*, at 3. As the *Insider* article reported, prompts such as these led to "confusion and dissatisfaction" among consumers. *Id.* Indeed, according to the *Insider* article, one data point from August 2017 indicated that 17,131 of the 25,542 cancellation requests handled by the Prime team were related to such "accidental sign-ups." *Id.*, at 4.

Importantly, the article described how Amazon undertook a years-long "testing" process to measure the impact of different website design language approaches, or "prompts," and to clarify the sign-up process.[6] *Id.*, at 2-3. But the article also reported this process had not resolved all of the issues in the sign-up process. *Id.*, at 3. Moreover, the article also suggested that Amazon has identified similar issues relating to sign-up language for other subscription services, including Prime Video, Kindle Unlimited, and Amazon Music. *Id.*, at 2.

In addition to disclosing the issue relating to Amazon's awareness of potentially confusing or deceptive language with respect to sign-up processes, the *Insider* article also

---

[5] Eugene Kim, "Internal documents show Amazon has for years knowingly tricked people into signing up for Prime subscriptions. 'We have been deliberately confusing,' former employee says[,]" *Business Insider* (Mar. 14, 2022), https://www.businessinsider.com/amazon-prime-ftc-probe-customer-complaints-sign-ups-internal-documents-2022-3 ("*Insider* article").

[6] Among other approaches, in 2021, this testing process also included preparing a mock draft with "high-clarity" proposed language that included not only Prime but Amazon Music and Kindle Unlimited. *Insider* article, at 6. In 2021, Amazon conducted a study titled "Digital Subscriptions Workflow Consistency" that was intended to bring a more consistent look and procedure across Amazon's subscription services while also achieving clarity for consumers. The study noted that consumers were surprised and "displeased" by the existing workflow that allowed for automatic sign-ups without an additional confirmation. *Id.*, at 6-7.

addressed a concern regarding cancellation processes. As the article related, internal documents indicated that Amazon "intentionally drew out the process of canceling a Prime membership." *Id.*, at 6. Under a project bearing the evocative title of "Iliad" – the classical epic describing the ten-year siege of the city of Troy– "Amazon created multiple layers of questions and new offers before a Prime member could cancel their subscription, in the hopes of reducing member churn." *Id.* As with sign-ups, Amazon also received from Project Iliad data allowing definable and measurable results for Amazon. As one document reported, following the development of Project Iliad, "retention appears to be trending positively" as the number of cancellations dropped by 14% and fewer members navigated to the final cancellation page. *Id.*

        C.        **The Commission's Response and the June 2022 CIDs.**

On April 19, 2022, staff issued a letter to Amazon regarding its productions of information in response to the March 2021 CID. This letter reminded Amazon to sign its responses to interrogatory questions in the CID under oath. The letter also directed Amazon to run additional search terms and to do so across a broader range of custodians. Finally, the letter identified certain deficiencies or areas for supplementation in Amazon's interrogatory responses and requested that Amazon supplement these responses with additional information and document productions. *See* Letter from Jonathan Cohen, Counsel for the Federal Trade Commission, to Laura Kim, Counsel for Amazon (Apr. 19, 2022).

On June 30, 2022, the Commission issued the CIDs at issue in the instant petition, which consist of one CID to the company seeking testimony from one or more corporate representatives on four identified topics, answers to nine interrogatories, and productions in response to three requests for documents, plus seventeen CIDs to current and former Amazon employees for testimony. The subject matter of the June 2022 CID to Amazon sweeps more broadly across Amazon's services than the March 2021 CID and clearly responds to the *Insider* article.[7] *See* Civil Investigative Demand issued to Amazon.com, Inc., Matter No. 2123050 (June 30, 2022) ("June 2022 CID"). For instance, in the March 2021 CID, the subject of the investigation is defined as "Amazon Prime" but, consistent with the disclosures in the *Insider* article regarding potentially deceptive conduct in other subscription programs, the June 2022 CID defines the subject of the investigation more generally to include Amazon's "Negative Option" programs.[8] *Compare* March 2021 CID, at 2 *with* June 2022 CID, at 2. The June 2022 CID also includes

---

[7]    The June 2022 CID is also broader than the March 2021 CID because the June 2022 CID incorporates the earlier CID and April 2022 letter by reference. The June 2022, CID includes a defined term "Outstanding Discovery" that encompassed these earlier requests. *See* June 2022 CID, Definition D-21: "**Outstanding Discovery**" means: "(a) requests made pursuant to the March 16, 2021, CID to Amazon.com, Inc. (including the requests made therein, and through subsequent the FTC's April 19, 2022, correspondence to Amazon's counsel); and (b) the interrogatories and document requests herein." (Bold in original.)

[8]    *See* June 2022 CID, Definition D-20: "D-20. "**Negative Option**" means in "an offer or agreement to sell or provide any goods or services, a provision under which the consumer's silence or failure to take an affirmative action to reject goods or services or to cancel the agreement is interpreted by the seller as acceptance of the offer." (Bold in original.)

specifications seeking testimony, interrogatory responses, and documents relating to the *Insider* article. June 2022 CID, at 2, 3, 4.

### D. The July 2022 Modification Letter.

Following additional meet-and-confers, on July 22, 2022, staff modified and narrowed the June 2022 CID. *See* Letter from Jonathan Cohen, Counsel to the Federal Trade Commission, to Laura Kim and John Graubert, Counsel for Amazon (July 22, 2022) ("July 2022 Letter"). Among other modifications, staff extended the deadline for Amazon's compliance to August 5, 2022, extended the deadline by which Amazon or certain individual witnesses could file petitions to limit or quash their CIDs and altered certain interrogatories and definitions. *Id.*, at 1-2.

As particularly relevant here, the letter modified the topics for testimony by a corporate representative of Amazon. The letter replaced the four testimonial specifications in the June 2022 CID with three main topics that staff expected to address over three consecutive days of testimony: the Prime enrollment process, the Prime cancellation process, and "All issues other than Prime enrollment and cancellation." *Id.*, at 2. The letter then provided an expanded and detailed list of specific subtopics for testimony within each of these three main topics. *Id.*, at 2-5. Examples of these subtopics include "Testing, studies, and surveys" relating to both Prime enrollment and Prime cancellation, *see id.*, at 3, 4, and "Material changes to the flow that Amazon implemented or considered" relating to both Prime enrollment and cancellation. *See id.*, at 3, 4. In addition, for each main topic and day of testimony, staff included a "catch-all" subtopic that allowed staff to seek testimony on

> Any additional topic or topics covered by the [June 2022 CID], which require no more than two hours of testimony during the day, and that we identify with reasonable particularity two weeks before this portion of the examination.

*Id.*, at 3, 4, 5.

### E. Witness representation during investigational hearings.

Also in July 2022, a new issue developed with respect to Amazon's counsel Covington & Burling ("Covington") and investigational hearings. According to Amazon, starting with communications on July 7 and 11, 2022, the investigating FTC staff took issue with the fact that Covington represented both Amazon the corporation and individual employees of Amazon. *Petition*, at 13. Amazon states that staff premised this objection on the Commission's Rule of Practice 2.7(f)(3), which limits attendance at investigational hearings to certain specified individuals, including counsel for the person being examined. 16 C.F.R. § 2.7(f)(3); *see also Petition*, at 13. According to Amazon, staff stated that an attorney engaged in joint representation of other parties could not qualify as counsel for the person being examined, even if the witness identified that lawyer as his counsel and expressed a desire for the attorney to be present. *Id.*

Amazon further states that the company and staff had multiple discussions in-person, by letter, and by email, during which staff changed its positions. *Id.*, at 13-14. According to Amazon, after conceding that joint representation was permissible, staff then asked Covington lawyers representing both the company and individual witnesses to sign nondisclosure

agreements prohibiting discussion of testimony from individual hearings with other witnesses, a request Covington declined. *Id.*, at 14-15. Amazon alleges that staff then required Covington to agree as a condition of attendance "that its appearance and involvement in the investigational hearing is limited to its representation of the witness and the witness' interests." *Id.*, at 15. Amazon states that staff informed Covington that if it did not so agree, Covington lawyers would be asked to leave the hearing room and if they refused, would be removed for trespassing on government property. *Id.*

These discussions "came to a head" during an investigational hearing on August 4. Amazon states that as the hearing commenced, investigating staff asked Covington to commit to limiting its representation. *Id.*, at 11, 15. When Covington's lawyers refused to do so, Amazon alleges that staff demanded counsel leave the room, which they did. The witness also departed, and the hearing concluded shortly after. *Id.*, at 15.

     **F.**    **The instant petition.**

Amazon filed the instant petition the next day. The petition raises a bundle of claims arising from the June 2022 CIDs to the company and individual witnesses and staff's conduct of the investigation, including allegations that:

- Staff has employed a novel interpretation of Rule 2.7(f)(3) that improperly interferes with witnesses' selection of counsel. *Petition*, at 13-16.
- The June 2022 CID is unduly burdensome and overly broad. *Id.*, at 16-23.
    - Amazon points to the expansion of the investigation into additional subscription programs as evidence the CID is "unreasonable." *Id.*, at 17.
    - Amazon also takes issue with certain CID definitions that it claims are subjective and argumentative. *Id.*, at 17-18
    - Amazon argues that the specified topics for testimony from the entity are insufficiently specific. *Id.*, at 18-20. In particular, Amazon cites to the catch-all language described above as not providing Amazon sufficient notice to effectively prepare. Amazon also asserts that some of the identified topics – such as "testing, studies, and surveys" or "material changes" – are overly broad and insufficiently defined.
- Investigating staff has insisted on an unreasonable and unduly burdensome schedule for testimony from individual witnesses. *Id.*, at 23-25.
- Individual CIDs for testimony to Jeffrey Bezos and Andrew Jassy are unduly burdensome and unnecessarily cumulative. *Id.*, at 25-26. Amazon argues these CIDs should be quashed in their entirety or postponed to the end of the testimonial period, subject to a showing by staff that Mr. Bezos and Mr. Jassy have unique knowledge that staff has been unable to obtain from other witnesses despite reasonable efforts.

The petition attached two exhibits. The first is a declaration from John Graubert, one of Covington's counsel representing Amazon, attesting to the events at the investigational hearing on August 4. *Petition*, Ex. 1. The second is a declaration from Mark England, Senior Corporate Counsel for Amazon, attesting to the burden imposed on Amazon from having to respond to the June 2022 CID. *Petition*, Ex. 2.

For relief, Amazon asks the Commission to quash staff's interpretation of Rule 2.7(f)(3) and the witness's right to counsel in investigational hearings. Amazon also asks that the Commission quash or limit the June 2022 CID with respect to the scope and definitions of the investigational hearing topics and with respect to the CID's expansion into additional subscription programs. At a minimum, Amazon asks the Commission to grant it until September 15, 2022, to respond to the CID. On behalf of the individual witnesses, Amazon argues the Commission should quash their CIDs and establish a reasonable schedule for testimony. Finally, with respect to those CIDs issued to Messrs. Bezos and Jassy, Amazon asks they be quashed or delayed and limited based on a showing of need by staff. *Petition*, at 5, 28.

We address each of Amazon's arguments below.

## II. Analysis.

### A. The Witness in an Investigational Hearing is Entitled to Counsel of their Choice, Who Should Limit Their Involvement To That Representation.

Amazon begins its petition by arguing that the FTC's investigating staff has improperly interfered with the witnesses' selection of counsel in connection with the individual CIDs. *Petition*, at 13. Specifically, Amazon claims that staff's interpretation of Rule 2.7(f)(3) giving "staff the authority to decide on its own that an attorney representing other parties in the investigation (including the corporate respondent) does not qualify as 'counsel for the person being examined'" is incorrect and, if ratified, would amount to a major change in representation before the FTC and other administrative agencies. *Id*.

The Commission's authority regarding the rights of witnesses in investigational hearings is expressed both in the statute authorizing the Commission to issue CIDs, *see* 15 U.S.C. § 57b-1(c)(14), and in the Commission's Rules of Practice at Rules 2.7 and 2.9. Commission Rule 2.7(f)(3) states:

> For investigational hearings conducted pursuant to a CID for the giving of oral testimony, the hearing official shall exclude from the hearing room all persons other than the person being examined, counsel for the person being examined, Commission staff, and any stenographer or other person recording such testimony.

16 C.F.R. § 2.7(f)(3). In turn, rule 2.9 states:

> Any witness compelled to appear in person in a deposition or investigational hearing may be accompanied, represented, and advised by counsel[.]

16 C.F.R. § 2.9(b).

The Commission's authority flows from two separate sources. First, the Administrative Procedure Act ("APA") guarantees witnesses a right to representation in investigational hearings: "A person compelled to appear in person before an agency or representative thereof is

entitled to be accompanied, represented, and advised by counsel or, if permitted by the agency, by other qualified representative." 5 U.S.C. § 555(b). Courts have followed the APA by enabling and supporting witnesses' selection of counsel, even where that counsel may be jointly representing other clients or witnesses. *See*, *e.g., SEC v. Csapo*, 533 F.2d 7, 11-12 (D.C. Cir. 1976); *Backer v. Commissioner*, 275 F.2d 141, 144 (5th Cir. 1960). Consistent with these principles, the Commission's statute and rules plainly provide a right to "be accompanied, represented, and advised by counsel."

To be sure, the ability of a witness to select counsel for purposes of an investigational hearing is not unlimited. One potential limitation arises from the Rules of Professional Conflict and an attorney's ethical duty to avoid undisclosed conflicts of interest. Should such a conflict arise among an attorney's clients, that attorney must either disclose and seek the consent of the clients or withdraw from the representation.[9] *See*, *e.g.*, D.C. R. Prof. Conduct 1.7, 1.13.[10]

Second, the FTC's investigating staff has the ability to control attendance at investigational hearings in order to prevent delay or disruption and to promote reliable factfinding. The Commission's authority to issue CIDs is based on similar authority provided by Congress to the Department of Justice's Antitrust Division in the Antitrust Civil Process Act, 15 U.S.C. § 1311. *See* FEDERAL TRADE COMMISSION ACT OF 1979, S. REP. NO. 96-500, at 23 (Dec. 14, 1979) (directly citing 15 U.S.C. § 1311 and stating, "The scope of the commission's CID is to be the same as under the Antitrust Civil Process Act and is modeled after the criteria and procedures used by the Department of Justice in issuing a CID.").

As the legislative history to the Antitrust Civil Process Act evinces, Congress was concerned with protecting the integrity of investigational hearings and witness testimony from undue interference by parties, an outcome Congress avoided by allowing DOJ – and later the FTC – to limit attendance at investigational hearings. See ANTITRUST CIVIL PROCESS ACT AMENDMENTS OF 1976, H. R. REP. NO. 94-1343 at 12-13 (July 15, 1976) (stating that allowing parties to participate in hearings within nonparty witnesses would, among other things, "hopelessly compromise[]" the "confidentiality of the investigation," and expose witnesses "to economic retaliation from the targets of the investigation."); *see also* 15 U.S.C. § 57b-1(c)(14)(B)("Any Commission investigator before whom oral testimony is to be taken shall exclude from the place where the testimony is to be taken all other persons except the person giving the testimony, his attorney, the officer before whom the testimony is to be taken, and any stenographer taking such testimony.").

Absent evidence of an undisclosed and unconsented conflict of interest between or among Covington's corporate and individual clients, our rules require that a witness's selection of counsel should be given deference, even if that counsel jointly represents another entity in the

---

[9]  *See Guillen v. City of Chicago*, 956 F. Supp. 1416, 1426 (N.D. Ill. 1997) ("We hold that City counsel can continue its representation of the paramedics, but with one caveat: City counsel must fully inform its clients of the pros and cons of joint representation.").

[10] There is presently no evidence before the Commission suggesting that Covington faces a potential conflict of interest between Amazon and any of the individual Amazon employees providing testimony.

investigation. Any counsel selected by a witness for an investigational hearing must limit participation to those activities necessary for representation of the witness being examined, consistent with counsel's obligations under applicable rules of professional conduct. Of note, it would be inappropriate for counsel representing a witness to lodge objections on behalf of another party's or witness's interests, with one exception. The rules of professional conduct require both the questioning attorney and defending attorney to prevent the witness from intruding upon a third party's privilege. *See* D.C. R. Prof. Conduct 4.4, cmt. [1] ("Responsibility to a client requires a lawyer to subordinate the interests of others to those of the client, but that responsibility does not imply that a lawyer may disregard the rights of third persons. It is impractical to catalogue all such rights, but they include legal restrictions on methods of obtaining evidence from third persons and unwarranted intrusions into privileged relationships, such as the client-lawyer relationship."). It is consistent with the FTC's rules that a witness may be instructed not to answer any question that may intrude upon a third party's privilege. 16 C.F.R. § 2.9(b)(2) ("Counsel may instruct a witness not to answer only when necessary to preserve a claim of protected status.").

If counsel for the witness at an investigational hearing violates any of the Commission's rules – for example, by engaging in argumentative or speaking objections, instructing the witness to refuse to answer on grounds other than protected status, or purporting to object on behalf of a third party at the deposition – the Commission's rules provide the hearing official authority to address this conduct. *See* 16 C.F.R. § 2.9(b) (referencing 16 C.F.R. § 4.1(e)).[11] We admonish counsel for individual witnesses to adhere scrupulously to the limitations described in this section.

### B. Amazon has not sufficiently established its challenges to the scope of the June 2022 CID.

Amazon next raises several challenges to the scope and specifications of the June 2022 CID. Amazon asserts that some of the requests and specifications are unduly burdensome and overly broad, while others are vague or insufficiently specific. We address these in turn.

#### 1. Amazon has not established that the CID's document requests and interrogatories are unduly burdensome.

Amazon raises a general challenge to the scope of the June 2022 CID and its document requests and interrogatories. Specifically, Amazon claims that the expansion of the scope of the investigation to include additional subscription services is unreasonable and unduly burdensome and will require interviewing entirely different teams of professionals and reviewing entirely different documents and data sets for each of the services. *Petition*, at 17. As Amazon argues, this expansion of the CID's scope makes it "unworkable" for Amazon to comply by the modified deadline of August 5. *Id.*

---

[11] In addition to these provisions, staff may also seek judicial enforcement of the rules and regulations governing compulsory process. *See, e.g.*, *In re Oral Testimony of a Witness Subpoenaed Pursuant to Civil Investigative Demand No. 98-19*, 182 F.R.D. 196 (E.D. Va. 1998) (enforcing CID issued pursuant to False Claims Act to bar attendance of party counsel).

In support, Amazon proffers a declaration from Mark England, a Senior Corporate Counsel at Amazon. *Petition*, Ex. 2. Mr. England states that in order to respond to the June 2022 CID, Amazon will need to consult with numerous individuals from various internal groups. *Petition*, Ex. 2, ¶ 7. These groups will "likely" include individuals from 21 different internal units he identified. *Id.* Mr. England added that, "while it is difficult to predict the precise number of hours it would take to comply with the June 30, 2022, CID," Amazon's projection of the burden is shaped by the effort it supplied to respond to the March 2021 CID. *Id.*, ¶ 8. For that CID, Mr. England stated that Amazon reviewed "hundreds of thousands of pages" of documents and consulted with "dozens" of "extremely busy individuals with substantial normal job responsibilities," some multiple times. *Id.*, ¶¶ 9-10. As he describes, the scope of the CID is "complicated" because it adds new subscription programs and because the "catch-all" provisions for testimony are "vague [and] yet-to-be-determined." *Id.*, ¶ 11. As he stated, "For each program, Amazon would need to compile information on and educate witnesses about a vast number of many different issues spanning multiple years." *Id.*, ¶ 12. Mr. England did not specify, however, an estimate of the cost of the effort required to comply with the March 2021 CID; nor did he quantify the level of effort in terms of dollar cost or manhours required to contact and interview each of these witnesses. Mr. England ultimately concluded that responding to the June 2022 CID would "require substantial time and resources" but he did not describe any further impact on the company. *Id.* Instead, he declared that compliance with the June 2022 CID by the August 5, 2022, deadline would be "impracticable." *Id.*, ¶ 13.

With respect to the expanded scope of the June 2022 CID, Amazon cites no authority supporting the proposition that the FTC may not alter the scope of an investigation in mid-course in response to the information it receives, and we are aware of none. Indeed, in this case, the expanded scope of staff's investigation is particularly warranted based on the *Insider* article's descriptions of how Amazon employed potentially deceptive processes in subscription services other than Prime, including Amazon Music and Kindle Unlimited. To accept Amazon's argument that staff may not expand an investigation when alerted to broader concerns would prevent agencies from following the facts as they come to light, thus impeding their effectiveness.[12]

More generally, the fact that a CID may be broad does not by itself render a CID invalid. *FTC v. Texaco, Inc.*, 555 F.2d 862, 882 & n.51 (D.C. Cir. 1977) (*en banc*) (citing *Adams v. FTC*, 296 F.2d 861, 867 (8th Cir. 1961)). The expanded scope of the June 2022 CID – at least with respect to the March 2021 CID – is no basis by itself for the Commission to limit or quash it.

Nor is a CID unreasonably broad where the breadth of the inquiry is in large part attributable to the magnitude of the subject's business operations. *Texaco*, 555 F.2d at 882. It

---

[12] To the contrary, courts have concluded that the FTC should be accorded "extreme breadth" in conducting its investigations. "Even if one were to regard the request for information in this case as caused by nothing more than official curiosity, nevertheless law-enforcing agencies have a legitimate right to satisfy themselves that corporate behavior is consistent with the law and the public interest." *Genuine Parts Co. v. FTC*, 445 F.2d 1382, 1391 (5th Cir. 1971) (citing *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950)).

may be that the expanded scope of the June 2022 CID requires Amazon to consult many more offices and employees than it did in responding to the March 2021 CID, but this is a result of the scope of the operations related to the alleged practices at issue.

Relatedly, Amazon also protests the compliance obligation imposed by the CID, repeatedly describing it as "unduly burdensome." *Petition*, at 11, 16, 18. But compulsory process does not become unduly burdensome and thus subject to limitation unless compliance "threatens to unduly disrupt or seriously hinder normal operations" of the recipient's business. *Texaco*, 555 F.2d at 882. Indeed, "[s]ome burden on subpoenaed parties is to be expected and is necessary in furtherance of the agency's legitimate inquiry and the public interest[,]" *id*., and courts accept that "[t]ime must be taken from normal activities and resources must be committed to gathering the information necessary to comply. Nevertheless, the presumption is that compliance should be enforced to further the agency's legitimate inquiry into matters of public interest." *FTC v. Shaffner*, 626 F.2d 32, 38 (7th Cir. 1980). Accordingly, the test for undue burden "is not easily met." *Texaco*, 555 F.2d at 882.; *see also EEOC v. Maryland Cup Corp.*, 785 F.2d 471, 477 (4th Cir. 1986).

The responsibility for demonstrating undue burden falls on the party claiming it and must be established with more than conclusory or unsupported statements. *FTC v. Standard American, Inc.*, 306 F.2d 231, 235 (3d Cir. 1962) (appellants have the burden to show unreasonableness of the Commission's demand and make a record to show the "measure of their grievance rather than [asking the court] to assume it.") (citing *Oklahoma Press Publ'g Co. v. Walling*, 327 U.S. 186, 217-18 (1946); *Morton Salt*, 338 U.S.at 654); *see also FTC v. Jim Walter Corp.*, 651 F.2d 251, 258 (5th Cir. 1981) ("The subpoenaed party may not merely utter the claim; it must persuade us.").

Amazon has not met its burden. The arguments of counsel and the supporting declaration from Mr. England provide no specific or quantifiable information whatsoever about the burden imposed by the June 2022 CID. Even when attempting to draw a comparison to the effort it made in responding to March 2021 CID, the company still fails to provide any specific information about what that earlier compliance involved in terms of time or expense. In short, Amazon has done little more than assert that the June 2022 CID presents the type of burden expected from any form of compulsory process, without establishing that this burden has become undue.

More to the point, even if Amazon had provided more specific information about the expected cost or effort of complying with the June 2022 CID, the proper comparison is not to the March 2021 CID but rather to Amazon's "normal business operations" as a whole. *Maryland Cup Corp.*, 785 F.2d at 477; *see also Texaco*, 555 F.2d at 882. To establish a claim of undue burden, Amazon would have to show that compliance costs would unduly disrupt or seriously hinder its normal business operations. *Texaco*, 555 F.2d at 882. This Amazon has not done, or even attempted to do.[13] Instead, Amazon offers only the tepid assertion that compliance will be "impracticable." *Petition*, Ex. 2, ¶ 13.

---

[13] For a company the size and magnitude of Amazon, demonstrating that compliance with the FTC's CID would impact its normal business operations might be difficult. *See, e.g.*, *FTC v.*

In addition to a general challenge to the scope of the June 2022 CID, Amazon also raises two specific claims of burden. First, Amazon objects to Interrogatory 1's request for Amazon to identify the number of consumers who became "Nonconsensual Enrollees" and "Diverted Cancels," observing that these terms were not included in the March 2021 CID and arguing that the terms require a subjective analysis of consumer intent and are also "argumentative." For these reasons, Amazon asserts they present an undue burden, particularly in light of the expanded scope of the investigation. *Petition*, at 17-18.

Amazon's challenges to these terms cannot be sustained. Amazon has not shown how complying with these terms would detrimentally affect its normal business operations, or provided any support for its argument that the scope of the investigation could not permissibly be expanded to include these terms. Finally, as the *Insider* article shows, these concepts are not subjective, but rather are categories of customers familiar to Amazon from its ongoing processes of studying and testing nonconsensual enrollment and developing the "Iliad" program for the apparent – and successful – purpose of diverting consumers who wished to cancel their subscriptions. Indeed, the *Insider* article cites data suggesting that Amazon has these numbers readily available. *Insider* Article, at 4 (17,131 of 25,542 cancellations resulted from "accidental sign-ups") and 6 (cancellations dropped by 14%). Having employed these concepts for years in its regular course of business, we see no credible reason why Amazon cannot employ them for the FTC on behalf of the public interest.

Second, Amazon claims that interrogatory 8 of the CID – which asks for ephemeral messages and an ephemeral messaging log from certain covered executives – presents a burden because many of the messages cannot be recovered, consulting with each executive is time-consuming, and compliance creates a risk of disclosing purely private information.[14] *Petition*, at 18.

Here again, Amazon fails to substantiate the alleged burden with anything other than the most general and abstract terms. *Standard American, Inc.*, 306 F.2d at 235 (appellants have the burden to show unreasonableness of the Commission's demand and make a record to show the "measure of their grievance rather than [asking the court] to assume it."). To the extent relevant ephemeral messages or related information are no longer within Amazon's possession, custody, and control, Amazon of course has no obligation to produce them. *Williams v. UnitedHealth Grp.*, No. 2:18-CV-2096, 2020 WL 528604, at *2 (D. Kan. Feb. 3, 2020) (denying motion to compel ephemeral instant messages because they were not stored and "[a]ll responsive

---

*Dresser Industries, Inc.*, Misc. No. 77-44, 1977-1 Trade Cases ¶ 61,400 (D.D.C. Apr. 26, 1977) ("It may very well be that Dresser's burden is greater than that of the other subpoeneaed companies, but that is to be expected from the fact that Dresser is the dominant firm in the industry with by far the largest volume of sales.").

[14]   Ephemeral messages are "secure written communications between one or more parties that are generally considered dynamic, nonstatic, and 'lasting a very short time.'" The Sedona Conference, *Commentary on Ephemeral Messaging*, 22 SEDONA CONF. J. 435, 446 (2021) (footnotes omitted). Ephemeral messages are typically exchanged through specific messaging apps intended for this purpose.

documents that exist have been produced"). But to the extent Amazon or its employees have generated or retained records or information responsive to this interrogatory – including personal knowledge of such messages – they must produce those records and/or related information as directed. *Maryland Cup Corp.*, 785 F.2d at 479 (explaining that "all relevant information within the company's control is subject to the [agency's] subpoena power," including information that "exists in the minds of the supervisors and workers," and that the company must "seek[] out that information").

### 2. Staff's "catch-all" requests for testimony are not sufficiently particular in the context of this case.

Amazon next argues that the CID's requests for testimony from the corporation, as modified by the July 2022 Letter, are not "reasonably particular" in the way required by Rule 2.7(h), 16 C.F.R. § 2.7(h). Amazon specifically points to staff's inclusion of "catch-all" provisions allowing staff to identify additional topics for testimony within the scope of the June 2022 CID with two weeks' notice and upon the condition that such testimony on such late-added topics may not exceed two hours. *See Petition*, at 18-19, 21; *see also* July 2022 Letter, at 3, 4, 5.

We agree that a CID's specifications should be "sufficiently definite to provide guidance as to what is to be produced by standards or criteria that make clear the duty of the person subpoenaed." *Resolution Trust Corp. v. Greif*, 906 F. Supp. 1446, 1452 & n.2 (D. Kan. 1995) (*citing In re Grand Jury Proceedings*, 601 F.2d 162 (5th Cir.1979)). And while reasonable particularity does not require "painstaking specificity," *Putco, Inc. v. Carjamz Com Inc.*, No. 20-cv-50109, 2021 WL 492902, *2 (N.D. Ill. Feb. 10, 2021); *see also Greif,* 906 F. Supp. at 1452, the Commission must still provide sufficient information for a CID recipient to evaluate the request, prepare sufficiently, or otherwise seek an administrative remedy.

We do not believe that the "catch-all" requests as written here allow for those outcomes. Courts have also disallowed the use of "catch-all" provisions on procedural grounds. *See*, *e.g.*, *Woods v. Standard Fire Ins. Co.*, No. 5:18-CV-658-JMH-MAS, 2022 WL 677567, at *8 (E.D. Ky. Mar. 7, 2022). Accordingly, we limit the July 2022 modification to the CID to exclude those catchall requests. Of course, staff retains the authority to further modify, clarify, or narrow the existing topics identified in the June 2022 CID, including by identifying particular subtopics for examination.[15]

### 3. Amazon's other challenges to testimonial specifications cannot be sustained.

Amazon has not succeeded in proving its claim that several of the topics identified are overly broad. For instance, Amazon points to the inclusion of the modifiers "any," "all," and "every" on certain topics to argue these topics are not reasonably particular. *Petition*, at 19. It also asserts that topics such as "[t]esting, studies, and surveys" and "[m]aterial changes" to its

---

[15] Staff may also hold open investigational hearings and recall witnesses for further testimony to discuss written materials or documents produced by Amazon after the date of the testimony.

enrollment and cancellation processes are vague and not sufficiently specific, especially in view of the breadth of Amazon's operations.[16] *Id.*, at 19-20.

A review of the July 2022 Letter shows the term "any" is only used with specific requests intended to explore Amazon's compliance with the Commission's investigation, *e.g.*:

> Any topic addressed in an unsworn or uncertified written discovery response
>
> Any July 1 interrogatory not fully and timely answered in writing

July 2022 Letter. These topics are plainly limited in subject and they may be further limited by Amazon's own actions to swear or certify its discovery responses and answer interrogatories. Similarly, the only request involving the "every" modifier is also reasonably specific because it is tied to the *Insider* article:

> Identify every action of any sort that the Amazon Parties took, in whole or in part, in response to the Insider Article[.][17]

As for "[t]esting, studies, and surveys" or "[m]aterial changes" to its enrollment and cancellation processes, we find these are sufficiently particular in light of the information available to Amazon, including the overarching context of the *Insider* article, the Commission's authorizing resolution, the June 2022 CID's description of the subject of the investigation, the CID's effective date ranges, and the July 2022 Letter.[18] Amazon's suggestion that it has conducted "hundreds" of tests does not mean the topic is insufficiently specific; a topic can involve a large volume of material and still be reasonably particular. *Cf. MasterMine Software, Inc. v. Microsoft Corp.*, No. 13-cv-971, 2015 WL 12778417 at *6 (D. Minn. Aug. 5, 2015) ("While preparing to testify fully on Deposition Topic No. 6 may have involved reviewing a large volume of information, that does not mean that the topic was not described with reasonable particularity.").

---

[16] We have not identified a testimonial specification using the modifier "all."

[17] The July 2022 Letter states that certain interrogatories will also serve as identified topics for testimony. This specific topic is interrogatory B.9. in the June 2022 CID. *See* July 2022 Letter, at 3. Other interrogatories similarly incorporated into testimony ask for information about "every Covered Executive" but we do not understand Amazon to object to these topics on this ground.

[18] The term "material" is readily defined and commonly understood. *Material,* BLACK'S LAW DICTIONARY (6th ed. 1990) ("material" means "important"); *see also Thomas v. Chicago Park Dist.*, 227 F.3d 921, 925 (7th Cir. 2000) (rejecting First Amendment challenge based on the theory "that the word 'material' is excessively vague" and characterizing that position as "frivolous" given that "[t]he word is one of the elemental legal terms"), *aff'd*, 534 U.S. 316 (2002).

**C.     Amazon has not sufficiently supported its challenges to the CIDs for testimony from individual witnesses.**

    **1.     Amazon has not established that the schedule for testimony from witnesses other than Jeffrey Bezos and Andrew Jassy presents an undue burden.**

Turning to the CIDs issued to individual witnesses, Amazon raises a general claim that staff imposed an unreasonable burden by requiring that all of these hearings be completed before September 20, an accelerated schedule that, according to Amazon, did not allow sufficient time to prepare. *Petition*, at 23-25. For example, Amazon claims that in some cases, an individual's investigational hearing was scheduled only five days after counsel received notice. *Id.*, at 24. Amazon therefore asks for the schedule to be extended to allow the hearings to be completed no later than October 21, 2022. *Id.*, at 25.

To facilitate effective preparation of the witnesses, we will grant this portion of the petition and extend the deadlines for responses, and in Section III we provide guidelines to enable staff and counsel for Amazon and the witnesses to develop a hearing schedule that ensures staff can obtain the information it needs within an expeditious but reasonable time frame.

    **2.     Amazon has not supported limiting or quashing the CIDs issued to Messrs. Bezos and Jassy.**

Finally, Amazon argues that undue burdens are presented by CIDs for testimony issued to Mr. Bezos, Amazon's Executive Chairman and former CEO, and Mr. Jassy, Amazon's current President and CEO. *Petition*, at 25. In support, Amazon cites cases applying the "apex doctrine," a concept developed under the Federal Rules of Civil Procedure to limit depositions of high-ranking officers and executives based on concerns that such depositions are burdensome, are cumulative or duplicative of testimony from other witnesses, or are unnecessary because they call for detailed, first-hand knowledge these officers may lack. *Id.*, at 25-26 (citing *United States ex rel. Galmines v. Novartis Pharms. Corp.*, No. 06-3213, 2015 WL 4973626, at *1 (E.D. Pa. Aug. 20, 2015); *Celerity, Inc. v. Ultra Clean Holding, Inc*., No. C 05–4374 MMC, 2007 WL 205067, at *3 (N.D. Cal. Jan. 25, 2007)).[19] Based on the "apex doctrine," Amazon requests that these CIDs be quashed. In the alternative, Amazon asks that these hearings be postponed until after all other hearings, and that the testimony be limited to those subjects that staff can show

---

[19]     Amazon also cites *Amazon.com, Inc. v. Comm'r*, 108 T.C.M. (CCH) 588 (T.C. 2014). In that case involving tax deficiency claims against the company, the court applied logic similar to the "apex doctrine" to quash a *trial* subpoena issued to Mr. Bezos as cumulative and burdensome. As discussed above, the "apex doctrine" and this case are not controlling where the FTC is seeking information about Mr. Bezos' knowledge of and authority over the practices at the center of the investigation. Nor is a trial court's disposition of a trial subpoena in a different matter binding in this administrative investigation.

they have been unable to obtain from other witnesses despite their reasonable efforts.[20] *Petition*, at 26.

We do not find the "apex doctrine" applicable to this case. The "apex doctrine" arises out of the Federal Rules of Civil Procedure, which employ a narrower scope of discovery than that available to the Commission in administrative investigations. *Compare* Fed. R. Civ. P. 26(b)(1) (allowing discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case") *with Morton Salt Co.*, 338 U.S. at 652 (1950) (enforcing process provided that "the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant"); *see also FTC v. Invention Submission Corp.*, 965 F.2d 1086, 1090 (D.C. Cir. 1992) ("The standard for judging relevancy in an investigatory proceeding is more relaxed than in an adjudicatory one."); *In the Matters of Civil Investigative Demand to Johnson & Johnson Dated August 19, 2019, and Subpoena Duces Tecum to Johnson & Johnson Dated August 19, 2019*, FTC File No. 191-0152, 2019 FTC LEXIS 95, at *7-8 (Oct. 18, 2019) (noting that the standard for relevance is "broader and more relaxed" than would be in an adjudicatory discovery demand). The "apex doctrine" is not applicable where the FTC seeks information from executives about knowledge of and authority over practices at the center of the investigation. *See FTC v. Bisaro*, 757 F. Supp. 2d 1, 9 (D.D.C. 2010); *In re Bridgestone/Firestone, Inc., Tires Prod. Liab. Litig.*, 205 F.R.D. 535, 536 (S.D. Ind. 2002).

For similar reasons, Amazon's proposed alternative procedure is not acceptable. Amazon provides no reason why the Commission must accept anything less than all the relevant testimony it can obtain from these two witnesses. Moreover, the suggestion that the staff must first show a reasonable basis for an investigation or otherwise seek approval to proceed with an investigation has been soundly rejected by the courts. *See New Orleans Public Service Co. v. Brown*, 507 F.2d 160, 164 (5th Cir 1975) ("The argument that the Commission, in its investigation, must not ask any questions to which it does not already know the answers, has about it the aura of another, and bygone, legal era.") (cleaned up); *see also FTC v. Church & Dwight Co., Inc*. 747 F. Supp. 2d 3, 9 (D.D.C. 2010) (rejecting claim that "FTC [must show] like any litigant, that the documents demanded will lead to reasonably relevant and ultimately admissible evidence" as mischaracterizing the nature of the FTC's investigatory authority).

### III. Conclusion.

For the foregoing reasons, Amazon.com, Inc.'s petition to quash is granted in part and denied in part.

**IT IS HEREBY ORDERED THAT** Amazon.com, Inc.'s Omnibus Petition to Quash June 30, 2022, Civil Investigative Demands be, and hereby is, **GRANTED in part and DENIED in part.**

---

[20] Although Amazon cites the "apex doctrine," Amazon does not independently quantify or support the potential burden imposed by requiring Messrs. Bezos and Jassy to testify. Had Amazon done so, the Commission and its staff could have evaluated that claimed burden to determine if any requested modification was reasonable and warranted. *See* 16 C.F.R. § 2.4.

**IT IS FURTHER ORDERED THAT**, to the extent provisions in the CID have not been limited or quashed, these provisions remain valid and enforceable.

**IT IS FURTHER ORDERED THAT**, pursuant to Commission Rules of Practice 2.7(f)(3) and 2.9, 16 C.F.R. §§ 2.7(f)(3), 2.9, a witness in an investigational hearing is entitled to be accompanied by counsel, even if that counsel jointly represents other parties or witnesses, *provided that* selected counsel is not subject an undisclosed and unconsented conflict of interest, and that selected counsel limits participation in such hearings to the representation of the witness and fulfilment of ethical obligations with respect to attorney-client privilege.

**IT IS FURTHER ORDERED THAT** Amazon.com, Inc. shall comply in full with the Commission's June 30, 2022, Civil Investigative Demand no later than **October 7, 2022**, or at such later date, time, and location as Commission staff may determine. Such compliance will include provision of all required certificates pursuant to 15 U.S.C. § 57b-1(c) by **October 7, 2022**, or at later date, time, and location as Commission staff may determine.

**IT IS FURTHER ORDERED THAT** Amazon.com, Inc. and all individual Petitioners receiving CIDs seeking testimony shall comply and provide the specified testimony, except as otherwise limited by this opinion, on or before **January 20, 2023**.

**IT IS FURTHER ORDERED THAT** all investigational hearings pursuant to CIDs in this matter will take place in either Washington, D.C., or Seattle, WA, unless the witness resides in a different city, in which case the investigational hearing will occur at a location within 100 miles of the witness's residence or may be conducted virtually, at staff's discretion.

**IT IS FURTHER ORDERED THAT** Commission staff and counsel for Amazon.com also representing individual Petitioners receiving CIDs for testimony will follow this process in developing a schedule to complete all testimony by **January 20, 2023**:

(a) within two business days of this Order, Commission staff will propose two dates for each witness, each in a separate week, including start times and locations;

(b) within four business days of this Order, each Petitioner will select from those options; and

(c) if any Petitioner fails to make a selection, Commission staff may assign a date for testimony and notify the Petitioner accordingly.

By the Commission, Commissioner Phillips recused.

April J. Tabor
Secretary

SEAL:
ISSUED: September 21, 2022