# Exhibit 5

```
 1                    FEDERAL TRADE COMMISSION
 2
 3    In the Matter of:                  )
 4    AMAZON.COM, INC.                   ) No. 2123050
 5    _____ )
 6
 7                       October 21, 2022
 8
 9                     Investigational Hearing
10                         NEIL LINDSAY
11
12                    Federal Trade Commission
13            10990 Wilshire Boulevard, Suite 400
14                     Los Angeles, California
15
16
17
18
19
20
21
22
23
24    STENOGRAPHICALLY REPORTED BY:  DEBORAH R. MEYERS
                                     CSR No. 8569
25
```

```
 1   after your tenure at Prime began; right?
 2       A    Sounds about right.
 3       Q    And you requested a review of something called
 4   the Customer Frustrations Elimination program; correct?
 5       A    Possibly.
 6       Q    Do you remember one way or the other?
 7       A    Not specifically.
 8       Q    Did you request a review of, to put it more
 9   generally, frustrations that customers were expressing
10   about Prime?
11       A    I was new to the program.  I requested a review
12   of a great deal of things.  So that could be possible.
13       Q    Assuming you did it -- and we will get to it in
14   a moment -- but why would it have been important to you
15   as a new executive in Prime to understand what those
16   customer frustrations were?
17            MS. RODGERS:  Objection to form.
18            THE WITNESS:  It was four years ago.  I can't
19   speculate on what I was thinking at that time.
20            MR. COHEN:  Let's mark as NL-1 an email from
21   Mr. Jason Brightman to various parties, including
22   Mr. Lindsay, dated June 12, 2018.  I'm going to give a
23   copy to the witness as well as a copy to counsel.
24            MS. RODGERS:  Is it possible just to read the
25   Bates number into the record for clarity?
```

```
 1            MR. COHEN:  Sure.  It is AMZN_28700, and if I
 2    forget to do that in the future, please remind me.
 3            MS. RODGERS:  Thank you so much.
 4            And I just want to note I see that some of
 5    these documents have an Amazon privileged and
 6    confidential stamp on them.  I know there's been some
 7    back and forth on this, Jonathan, and I just want to
 8    make clear that we're not waiving any rights as to
 9    privilege, but I don't want to hold things up today.
10    So, please --
11            MR. COHEN:  I'll do better than that.  So we'll
12    stipulate on the record that the use of any document
13    that has any indication of privilege or confidential
14    during this investigational hearing waives nothing at
15    all on behalf of Amazon if all that is done is just sort
16    of ask the witness.
17            If we have some sort of further discussion
18    about it, then maybe there's a waiver, but as long as we
19    just move forward, ==absolutely, positively no waiver by==
20    ==virtue of the use of the document here.==
21            MS. RODGERS:  I appreciate that.
22            (FTC Exhibit NL-1 was marked for
23            identification.)
24    BY MR. COHEN:
25       Q    Mr. Lindsay, I'm going to direct you to the
```

```
 1   first page, and that's a meeting invitation; correct?
 2       A    Yes, it appears to be.
 3       Q    And the sentence says:
 4                 "In an April 19 review of the Customer
 5            Frustrations Elimination program, Neil asked a
 6            Deep Dive on status of Prime-related
 7            frustrations."
 8       A    Yes, I see that.
 9       Q    And does that refresh your recollection about
10   the fact that you did, in fact, review the Customer
11   Frustrations Elimination program?
12       A    It appears I did.
13       Q    And that you had asked for a deep dive on
14   status of Prime-related frustrations?
15       A    Yes.
16       Q    And then for the reasons you already testified,
17   it seems like a reasonably responsible thing for
18   somebody to do who's been there for a couple of months?
19            MS. RODGERS:  Objection to form.
20            THE WITNESS:  It's reasonable for me to
21   understand the Prime business in many different
22   dimensions, this being one of them.
23   BY MR. COHEN:
24       Q    You also asked for a deep dive.  This is the
25   next sentence.  I'll read it:
```

```
 1            Mr. Lindsay, you responded in part by
 2   requesting that Mr. Ghani prepare or cause to be
 3   prepared a memoranda; right?
 4        A    Yes.
 5        Q    And it's your understanding that a draft of
 6   that memoranda was subject to your review on or about
 7   February 11; correct?
 8        A    I reviewed on or about February 11.  I actually
 9   don't know if this is a response to that request
10   specifically as opposed to just an opportunity for me to
11   review.
12        Q    You would agree with me, though, that there's
13   at least some degree of alignment between the general
14   topics the memorandum that is Neil Lindsay-10 covers and
15   the questions that Mr. Ghani raises in Neil Lindsay-9?
16        A    The topics are related.
17        Q    So whether you know for sure, you would at
18   least give me that it's plausible that Neil Lindsay-10
19   is in some sense an outgrowth of Neil Lindsay-9?
20            MS. RODGERS:  Object to form.
21            THE WITNESS:  Again, the topics are related.
22   Whether it's a direct outgrowth or not of a rapid email
23   exchange, I'm not 100 percent sure.
24   BY MR. COHEN:
25        Q    And then in this we're getting into the
```

239
Lindsay
Amazon.com, Inc.                                                    10/21/2022

```
 1   somewhat more tricky part.  This document that is
 2   attached as part of Neil Lindsay-10 became in some form
 3   or another the basis for a meeting with Mr. Clark, and
 4   that's just a yes-or-no question.
 5            MS. RODGERS:  Well, there's some predicates
 6   baked in there about what was discussed at that meeting,
 7   which then does implicate privilege.  So can we just
 8   take a pause and go off the record and talk about it?
 9            MR. COHEN:  Yeah, go talk about it.  Go talk
10   about it.  If you want us to excuse ourselves, that's
11   fine, or if you want to go out in the hallway, that's
12   fine too.
13            MS. KIM:  Is there anyone in the office today
14   besides us?
15            MR. COHEN:  Maybe not.  Maybe we could find you
16   guys a better spot.
17            THE STENOGRAPHIC REPORTER:  Are we off the
18   record?
19            MR. COHEN:  We're off the record, sorry.
20            (Recess taken from 3:45 p.m. to 4:22 p.m.)
21            MR. COHEN:  Let's go back on the record.
22            And before we start question and answer,
23   counsel would like to make a statement.
24            MS. RODGERS:  Thank you.  I just wanted to note
25   that we have some concerns about privilege including
```

1    regarding Exhibits 9 and 10.  They're just going to take
2    a little time for us to kind of track down and get to
3    the bottom of.  We don't want to delay things today or
4    hold things up unnecessarily.
5           And in the interests of moving forward, I just
6    want to be clear, based on what you said at the outset,
7    that testimony about a document that we later withhold
8    as privileged isn't going to constitute waiver of that
9    privilege or prejudice us in any respect, including from
10   later asserting privilege over the document.
11          Also just note that this is another reason why
12   we do think that having in-house counsel present would
13   be helpful in this process.
14          MR. COHEN:  And let me respond just in one
15   limited respect because I think we're on the same page
16   here, and my understanding of what we not just suggested
17   but agreed to is that you will be in no way prejudiced.
18   You reserve all of your rights.  We will not argue that
19   the fact that you allowed the testimony to continue with
20   respect to those documents means that you cannot claw
21   them back or make any other arguments with respect to
22   those documents.
23          However, it does not necessarily mean that
24   whatever arguments you make we will necessarily agree
25   with, just you will not be prejudiced in any way by

1    virtue of what happened today.
2           So I don't know that we would say this, but if
3    we want to say your clawback request is no good because
4    of something that happened three months ago, we're
5    entitled to make that argument, and you're entitled to
6    respond.  We just won't argue that anything that
7    happened today in any way works against you.
8           MS. RODGERS:  I guess I just want to make sure
9    I'm clear.  Are you agreeing that both the testimony --
10   like if we claw back the document, the testimony about
11   it is also effectively clawed back and does not
12   constitute a waiver therefor of like what we're saying?
13   I know we might fight about whether that clawback is
14   valid, but to the extent it's upheld, we would, of
15   course, expect you to respect that.
16          MR. COHEN:  I agree with the principle that if
17   the clawback is upheld, that testimony that is
18   appropriately or sufficiently connected to the document
19   is also sort of clawed back.  We may disagree about
20   exactly which lines of testimony, and we would have to
21   work that out, and that kind of thing happens
22   periodically.
23          We may take the position that we're willing to
24   accept the clawback but, as a result, we're entitled to
25   ask something else or have some other limited additional

| | | 336 |
|---|---|---|
| | Lindsay | |
| Amazon.com, Inc. | | 10/21/2022 |

```
 1                REPORTER'S CERTIFICATE
 2
 3         I, DEBORAH R. MEYERS, CSR NO. 8569, a Certified
 4    Shorthand Reporter in and for the State of California,
 5    do hereby certify:
 6         That said Reporter's Transcript of
 7    Investigational Hearing was taken by me in stenographic
 8    shorthand at the time and place herein named and was
 9    thereafter transcribed into printed format under my
10    direction, said transcript being a true and correct
11    transcription to the best of my ability.
12         I further certify that I have no interest in
13    the outcome of this action.
14         The dismantling, unsealing, or unbinding of the
15    original transcript will render the Reporter's
16    Certificate null and void.
17         Dated this 2nd day of November, 2022.
18
19
20
21                           s/Deborah R. Meyers
                             DEBORAH R. MEYERS
22                              CSR NO. 8569
23
24
25
```