# Exhibit 1

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

FEDERAL TRADE COMMISSION,

    Plaintiff,

v.

AMAZON.COM, INC.

    Defendant.

Case No. 2:23-cv-0932-JHC

**DECLARATION OF ADAM ROTTNER**

(Pursuant to 28 U.S.C. § 1746)

I, Adam Rottner, hereby state that I have personal knowledge of the facts set forth below. If called as a witness, I could and would testify as follows:

1. I am a United States citizen and am over eighteen years of age.  I am employed by the Federal Trade Commission ("FTC" or the "Commission") as a Senior Investigator in the Division of Enforcement, Bureau of Consumer Protection.  My office address is 600 Pennsylvania Avenue, NW, Washington, DC 20580.

2. Consistent with Local Rule 10(e)(10), highlighting has been added to the attachments to indicate excerpts referenced in this declaration or the accompanying motion.

**CLAWED BACK DOCUMENTS**

3. On August 2, 2023, I reviewed the transcript of the October 21, 2022 investigational hearing of Neil Lindsay.  During that hearing, Mr. Lindsay's counsel (who also represented Amazon) never requested that the FTC return, destroy, or sequester Lindsay

1

1      Exhibits 9 and 10. Instead, counsel said "we have some concerns about privilege issues regarding Exhibits 9 and 10. They're just going to take a little time for us to kind of track down and get to the bottom of." Dkt. #51-5 at 7-8.

4. I also reviewed the January 13, 2023 letter from Laura Kim to Jonathan Cohen. Dkt #4-1 at 74-75. That letter does not refer to Lindsay Exhibits 9 and 10.

5. I then reviewed all correspondence between Amazon and the FTC relating to clawed back documents and confirmed that there was no request from Amazon clawing back Exhibits 9 and 10 from the investigational hearing of Neil Lindsay.

**OTHER DOCUMENTS**

6. Attached hereto as **Attachment A** is a true and correct copy of an email from Amazon outside counsel Laura Kim to FTC attorney Jonathan Cohen dated February 21, 2023.

7. Attached hereto as **Attachment B** is a true and correct copy of the complete transcript of the February 21, 2023 Meet and Confer between counsel for Amazon and counsel for the FTC. Both the FTC and Amazon previously filed excerpts from this transcript. Dkt. #4-1 at 197-205; Dkt. #51-6 at 2-6.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 4, 2023.

_____
Adam Rottner

2

# Attachment A

# Rottner, Adam

| | |
|---|---|
| **From:** | Kim, Laura <LKim@cov.com> |
| **Sent:** | Tuesday, February 21, 2023 10:17 AM |
| **To:** | Cohen, Jonathan |
| **Cc:** | Graubert, John; Flahive Wu, Laura; Anthony, Stephen; Hall, John; Remick, Ali; Siegel, Andrew; Hoffman, Elena; Frech, Jacob; Cole, Margaret; Rottner, Adam; Nardini, Thomas; Jerjian, Olivia |
| **Subject:** | RE: Confidential: Amazon.com, Inc., FTC Matter No. 2123050 |

Confidential Treatment Requested

Thanks, Jonathan. We'll send you a Zoom link for our meeting today.

Laura

**From:** Cohen, Jonathan <jcohen2@ftc.gov>
**Sent:** Friday, February 17, 2023 2:31 PM
**To:** Kim, Laura <LKim@cov.com>
**Cc:** Graubert, John <jgraubert@cov.com>; Flahive Wu, Laura <lflahivewu@cov.com>; Anthony, Stephen <santhony@cov.com>; Hall, John <jhall@cov.com>; Remick, Ali <ARemick@cov.com>; Siegel, Andrew <ASiegel@cov.com>; Hoffman, Elena <ehoffman@ftc.gov>; Frech, Jacob <jfrech@ftc.gov>; Cole, Margaret <mcole@ftc.gov>; Rottner, Adam <arottner@ftc.gov>; Nardini, Thomas <tnardini@ftc.gov>; Jerjian, Olivia <ojerjian@ftc.gov>
**Subject:** RE: Confidential: Amazon.com, Inc., FTC Matter No. 2123050

[EXTERNAL]

Let's meet at Constitution Center, or virtually – your choice. As you know, we want to discuss your new privilege claims. Some particular questions include:

- What is the basis for your view that, pursuant to 16 C.F.R. 2.11(d)(1), we must return or destroy the materials at issue, rather than sequester them? (To provide you an assurance: to the best of our ability to ascertain this, no disputed materials are being used, and everything is either sequestered or being sequestered.)

- What is the difference, if any, between correspondence covering privilege-related issues coming from Ben and correspondence coming from you? Relatedly, who is responsible for Amazon's production within the meaning of 16 C.F.R. 2.11(a)(1), including the privilege claims in particular?

- Please explain your concerns about the Commission's handling of "categories" of documents that Amazon currently considers privileged. What are the categories? It's one thing if we see something that looks privileged. In a couple of instances, we've brought such documents to your attention. But it feels like Amazon wants us to conduct a privilege review on its behalf. In any event, if you want to ask us to be "on the lookout," so to speak, for things that slipped through your review and fall within "categories" (yet do not appear facially privileged), we need to know what categories you mean.

1

- What are the "additional facts" that Amazon learned that ostensibly "confirm" that certain documents you reference in your February 7 correspondence are, in fact, privileged? When did Amazon learn these facts and why? Do those additional confirmatory facts explain on only the clawbacks in Section I of that letter, or also those in Section II? And why did Amazon not investigate the potential for privilege further based on whatever prior suspicions of privilege it harbored yet only recently "confirm[ed]"? We don't understand Amazon's narrative as to how this happened.

- Amazon produced various significant documents to the FTC multiple times, with redactions, and following a supposedly painstaking – and certainly time-consuming – privilege review. We then conducted a substantial portion of our investigation (including numerous IHs) reasonably assuming that we could use what Amazon produced. We made strategic and practical decisions accordingly. To provide one small example, we would have questioned certain witnesses differently had you withheld this material initially. Now, after the previously-scheduled IHs have concluded, and both sides have done much work, Amazon has clawed things back. What remedy does Amazon propose?

Thanks,

**Jonathan Cohen**
Enforcement Division | Bureau of Consumer Protection | Federal Trade Commission
600 Pennsylvania Avenue, N.W., CC-9528  Washington, D.C.  20580
(202) 326-2551  |  jcohen2@ftc.gov

---

**From:** Kim, Laura <LKim@cov.com>
**Sent:** Wednesday, February 15, 2023 10:33 AM
**To:** Cohen, Jonathan <jcohen2@ftc.gov>
**Cc:** Graubert, John <jgraubert@cov.com>; Flahive Wu, Laura <lflahivewu@cov.com>; Anthony, Stephen <santhony@cov.com>; Hall, John <jhall@cov.com>; Remick, Ali <ARemick@cov.com>; Siegel, Andrew <ASiegel@cov.com>; Hoffman, Elena <ehoffman@ftc.gov>; Frech, Jacob <jfrech@ftc.gov>; Cole, Margaret <mcole@ftc.gov>; Rottner, Adam <arottner@ftc.gov>; Nardini, Thomas <tnardini@ftc.gov>; Jerjian, Olivia <ojerjian@ftc.gov>
**Subject:** RE: Confidential: Amazon.com, Inc., FTC Matter No. 2123050

Confidential

Dear Jonathan, We are available to meet with you on Tuesday, February 21 at 3:15 – either in person or by phone. Given that this meeting appears to be focused on issues and questions you plan to raise with Amazon, we do not see a need to have a court reporter present but we are not opposed to having one. To facilitate a productive meeting, please let us know in advance what issues you would like to discuss.

Please let us know once you can confirm the logistics for next week's meeting.

Best,
Laura

**From:** Cohen, Jonathan <jcohen2@ftc.gov>
**Sent:** Monday, February 13, 2023 6:11 PM
**To:** Kim, Laura <LKim@cov.com>
**Cc:** Graubert, John <jgraubert@cov.com>; Flahive Wu, Laura <lflahivewu@cov.com>; Anthony, Stephen <santhony@cov.com>; Hall, John <jhall@cov.com>; Remick, Ali <ARemick@cov.com>; Siegel, Andrew <ASiegel@cov.com>; Hoffman, Elena <ehoffman@ftc.gov>; Frech, Jacob <jfrech@ftc.gov>; Cole, Margaret <mcole@ftc.gov>; Rottner, Adam <arottner@ftc.gov>; Nardini, Thomas <tnardini@ftc.gov>; Jerjian, Olivia <ojerjian@ftc.gov>
**Subject:** RE: Confidential: Amazon.com, Inc., FTC Matter No. 2123050

**[EXTERNAL]**

The below should be Tuesday, February 21.

Jonathan

---

**From:** Cohen, Jonathan <jcohen2@ftc.gov>
**Sent:** Monday, February 13, 2023 6:06 PM
**To:** Kim, Laura <LKim@cov.com>
**Cc:** Graubert, John <jgraubert@cov.com>; Flahive Wu, Laura <lflahivewu@cov.com>; Anthony, Stephen <santhony@cov.com>; Hall, John <jhall@cov.com>; Remick, Ali <ARemick@cov.com>; Siegel, Andrew <ASiegel@cov.com>; Hoffman, Elena <ehoffman@ftc.gov>; Frech, Jacob <jfrech@ftc.gov>; Cole, Margaret <mcole@ftc.gov>; Rottner, Adam <arottner@ftc.gov>; Nardini, Thomas <tnardini@ftc.gov>; Jerjian, Olivia <ojerjian@ftc.gov>
**Subject:** RE: Confidential: Amazon.com, Inc., FTC Matter No. 2123050

We want to discuss the issues and questions your new privilege assertions raise before we confer with you regarding other outstanding matters. We propose Tuesday, February 15, at 3:15 or 4:15.

Per our prior indications, we'll need to have a court reporter present. Alternatively, Amazon can agree that no agreements will be reached at the meeting and that Amazon won't attempt to characterize what transpired.

Thanks,

**Jonathan Cohen**
Enforcement Division | Bureau of Consumer Protection | Federal Trade Commission
600 Pennsylvania Avenue, N.W., CC-9528  Washington, D.C.  20580
(202) 326-2551  |  jcohen2@ftc.gov

---

**From:** Cohen, Jonathan
**Sent:** Wednesday, February 8, 2023 10:19 AM
**To:** Kim, Laura <LKim@cov.com>
**Cc:** Graubert, John <jgraubert@cov.com>; Flahive Wu, Laura <lflahivewu@cov.com>; Anthony, Stephen <santhony@cov.com>; Hall, John <jhall@cov.com>; Remick, Ali <ARemick@cov.com>; Siegel, Andrew <ASiegel@cov.com>; Hoffman, Elena <ehoffman@ftc.gov>; Frech, Jacob <jfrech@ftc.gov>; Cole, Margaret <mcole@ftc.gov>; Rottner, Adam <arottner@ftc.gov>; Nardini, Thomas <tnardini@ftc.gov>; Jerjian, Olivia

<ojerjian@ftc.gov>
**Subject:** RE: Confidential: Amazon.com, Inc., FTC Matter No. 2123050

In light of your correspondence later in the day yesterday, we're not in a position to respond.

We're reviewing that correspondence and we'll get back to you.

**Jonathan Cohen**
Enforcement Division | Bureau of Consumer Protection | Federal Trade Commission
600 Pennsylvania Avenue, N.W., CC-9528  Washington, D.C.  20580
(202) 326-2551  |  jcohen2@ftc.gov

---

**From:** Kim, Laura <LKim@cov.com>
**Sent:** Tuesday, February 7, 2023 11:03 AM
**To:** Cohen, Jonathan <jcohen2@ftc.gov>; Jerjian, Olivia <ojerjian@ftc.gov>; Nardini, Thomas <tnardini@ftc.gov>; Rottner, Adam <arottner@ftc.gov>; Cole, Margaret <mcole@ftc.gov>; Frech, Jacob <jfrech@ftc.gov>; Hoffman, Elena <ehoffman@ftc.gov>
**Cc:** Graubert, John <jgraubert@cov.com>; Flahive Wu, Laura <lflahivewu@cov.com>; Anthony, Stephen <santhony@cov.com>; Hall, John <jhall@cov.com>; Remick, Ali <ARemick@cov.com>; Siegel, Andrew <ASiegel@cov.com>
**Subject:** Confidential: Amazon.com, Inc., FTC Matter No. 2123050

Confidential Treatment Requested

Jonathan, Olivia, Max,

We would like to arrange a call this week to touch base about the investigation.  Could you please let me know if you are available to speak on Wednesday between 10 and 11:30 or Thursday between 10 and 11?  If one of those times works for your team, I can send a link, or please suggest some other times.

Best,
Laura


**Laura Kim**
Pronouns: She/Her/Hers

Covington & Burling LLP
One CityCenter, 850 Tenth Street, NW
Washington, DC 20001-4956
T +1 202 662 5333 | lkim@cov.com
www.cov.com

**COVINGTON**

This message is from a law firm and may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply e-mail that this message has been inadvertently transmitted to you and delete this e-mail from your system. Thank you for your cooperation.

# Attachment B

# In the Matter of:

# Amazon.com, Inc.

*February 21, 2023*
*Meet and Confer*

**Condensed Transcript with Word Index**



For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

                                                              1
```
 1              FEDERAL TRADE COMMISSION
 2
 3
 4   In the Matter of:      ) File No. 2123050
 5   AMAZON.COM, INC.,      )
 6   --------------------------)
 7
 8
 9
10
11             Tuesday, February 21, 2023
12
13                       Via Zoom
14
15                   Meet & Confer
16
17
18
19
20
21
22
23
24
25
```

                                                              2
```
 1   APPEARANCES:
 2
 3   ON BEHALF OF THE FEDERAL TRADE COMMISSION:
 4       JONATHAN COHEN, ESQUIRE
 5       OLIVIA JERJIAN, ESQUIRE
 6       THOMAS NARDINI, ESQUIRE
 7       Federal Trade Commission
 8       600 Pennsylvania Avenue, N.W.
 9       Washington, D.C. 20580
10       (202) 326-2551
11       jcohen2@ftc.gov
12
13   ON BEHALF OF AMAZON:
14       LAURA KIM, ESQUIRE
15       LAURA FLAHIVE WU, ESQUIRE
16       JOHN GRAUBERT, ESQUIRE
17       STEPHEN ANTHONY, ESQUIRE
18       ANDREW SIEGEL, ESQUIRE
19       Covington & Burling
20       850 Tenth Street, N.W.
21       Washington, D.C. 20001
22       (202) 662-5333
23       lkim@cov.com
24
25
```

                                                              3
```
 1   ALSO PRESENT:
 2       Mike Macko, Amazon
 3       Ryan Zwonik FTC Paralegal
 4       Jacob Frech, FTC Paralegal
 5       Maggie Cole, FTC Paralegal
 6       Elena Hoffman, FTC Paralegal
 7       Adam Rottner, FTC Investigator
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

                                                              4
```
 1              P R O C E E D I N G S
 2             MR. COHEN:  Laura, I received your
 3   letter.  Unfortunately, because I was in another
 4   meeting, I only received it a couple of minutes
 5   ago.  So I'm kind of looking through it as
 6   quickly as I can.  But just note that we did
 7   receive this letter -- excuse me -- we received
 8   it, I think, 90 minutes ago, but I didn't have an
 9   opportunity to look at it until just a couple of
10   minutes ago.  Nevertheless, I think it provides
11   some helpful information in terms of kind of
12   structuring the discussion.
13             I thought it would make sense to sort
14   of move through the questions and at least kind
15   of skim the answers here to help us understand
16   your position a little bit better, and then I
17   have some additional, smaller questions at the
18   end.
19             Does that make sense in terms of a way
20   to proceed?
21             MS. KIM:  Sure.  That sounds great.
22             MR. COHEN:  And I think it's okay, as
23   happens sometimes, there may just be an agreement
24   to disagree.  It's more a matter of are we
25   understanding your position correctly, especially
```

1 (Pages 1 to 4)

##### Page 5

 1   with respect to the first -- the first one.
 2           So you indicate, and I'm paraphrasing,
 3   that we shouldn't diverge from our customary
 4   practice of returning or destroying inadvertently
 5   disclosed material.  So am I right that it's
 6   Amazon's view that it's customary and may not
 7   make sense to sequester, although we might
 8   disagree about that, but it's customary to return
 9   or destroy rather than sequester?  You're not
10   saying we have no right to sequester, are you?
11           MS. KIM:  Yeah.  As I said in the
12   letter, it's been our understanding based on, you
13   know, multiple investigations with the FTC that
14   upon such a request, that staff does return or
15   destroy inadvertently disclosed materials, and
16   that's been my long-standing understanding.
17           In this case, it didn't make sense to
18   us, also because there's no pending action or
19   proceeding, and you also haven't -- you said, I
20   think, that there are -- that disputed materials
21   are either being sequestered or -- are either
22   sequestered or being sequestered, and it wasn't
23   clear to us whether that was the -- that you have
24   actually completed the sequestration for any
25   prior clawbacks.

##### Page 6

 1           So our question was really whether the
 2   Commission has in fact taken a sequestration
 3   approach to all of the clawbacks, and we're
 4   looking for confirmation that you have in fact
 5   sequestered the documents, not just that you're
 6   in the process of doing that.
 7           MR. COHEN:  So I'll address the issue
 8   you raised in a moment.  Let me go back to this,
 9   which is that you're not contending that it's
10   inappropriate to sequester, even if you don't
11   think there's a point to the sequestration,
12   right?
13           MS. KIM:  Yeah.  I -- I don't believe
14   that sequestration makes sense in this instance,
15   and I didn't -- I was surprised that you said you
16   were sequestering the documents or planned to in
17   light of where we are procedurally.  But really,
18   if you plan to sequester the documents, I would
19   simply like confirmation that that has actually
20   been done.
21           MR. COHEN:  Okay.  It's helpful.  My
22   understanding is, again, you don't think it's a
23   good choice to sequester the documents.  I mean,
24   I don't know that there will ever be any judicial
25   review of any of this.  But I'm not sure how it

##### Page 7

 1   would be -- how could we really even obtain such
 2   a review if we didn't sequester the materials.
 3           It seems to me that under the rules,
 4   we have a right to potentially seek judicial
 5   review, and I don't know how we could really do
 6   that if we destroyed them all.  I'm not sure
 7   there's an answer to that question.  I don't know
 8   if that's the reason why -- why sequestration is
 9   appropriate.
10           In terms of what we doing, we've told
11   you that we are sequestering the materials, and
12   we're going to comply with both our obligations
13   under the rules, under the law, and under the
14   applicable legal -- legal ethics principles that
15   apply here as well.  We're not going to say
16   anything further than that.
17           MS. KIM:  Jonathan, can I ask before
18   you move on, as to the clawback request that
19   we've made previously, have you already
20   sequestered those materials?
21           MR. COHEN:  Again, I'm not going --
22   we've complied with the rules.  We've complied
23   with our ethical obligation.  I have to go back.
24   We may have even told you the status of some
25   things along the way.  But we are -- we are not

##### Page 8

 1   going to do anything other than assure you that
 2   we have complied with the rules, the law, and our
 3   ethical obligations.
 4           MS. KIM:  I think it would be -- I
 5   think it would be very helpful if you could
 6   confirm that the materials are in fact being --
 7   you know, have in fact been sequestered, if that
 8   is the approach you are taking.  And if you're
 9   confirming that now, that's helpful to know if
10   that's the approach you're taking with respect to
11   all of the clawbacks or not.
12           And it's been -- that's, I think, the
13   expectation is that Amazon would be at least
14   given information about how you are discharging
15   your obligations rather than just us assuming
16   that you are doing one of those two things,
17   either returning and -- or destroying or
18   sequestering.  I just make that request again, if
19   you can please confirm that.
20           MR. COHEN:  I think I've already
21   answered your question.  I've already told you
22   I'm not providing further information.
23           What is the basis for your expectation
24   that that is something that we are obligated to
25   do or your understanding that's something we are

Page 9

1  obligated to do at this point in time?
2         MS. KIM:  It's based on your
3  professional responsibilities in terms of being
4  informed that there was an inadvertent
5  production.  I think that's all we really need to
6  say about that.  That would be my expectation
7  that you would confirm how you are discharging
8  your obligations, and I'm just asking you to
9  confirm what path you are actually taking under
10 the regulations.
11        MR. COHEN:  We already told you,
12 again, in an e-mail that we are in the process of
13 sequestering materials and have sequestered
14 materials.  But if there's something that you
15 think you're even entitled to that is greater
16 than what we already told you, let me know what
17 the basis is.  And you can do it now, but you can
18 also follow-up with a writing explaining what the
19 basis is.
20        I do -- we always want to comply with
21 rules, laws, and our ethical duties.  But -- and
22 I may be ignorant potentially of some obligation
23 that we have at the moment to provide you with
24 additional information.  If we have such an
25 obligation, we will provide you with that

Page 10

1  additional information.
2         MS. KIM:  Okay.  Did you want to move
3  on to the next topic?
4         MR. COHEN:  Yeah.  The next topic is
5  the 211A1, and I think this is something that's
6  come up before.  But nevertheless, it is clear to
7  me from your answer that there is -- and it's
8  clear to me from your answer that to -- this is
9  the February 21st, 2023, correspondence, which is
10 responding to our second question.
11        It's clear to me from your answer that
12 there's no difference between a communication
13 that is on letterhead from Amazon, let's say
14 signed by Ben, and a communication that's on
15 letterhead from Covington on Amazon's behalf
16 signed by -- signed by, let's say, you or one of
17 your colleagues.
18        MS. KIM:  I think what I said in the
19 letter is slightly different than that, Jonathan.
20        MR. COHEN:  Okay.
21        MS. KIM:  What we said is Amazon is
22 represented by both in-house counsel and its
23 outside counsel, Covington.  Some of the letters
24 that have been submitted on Amazon's letterhead
25 have contained certain attestations, and those

Page 11

1  are coming from the company directly.  So I don't
2  think that would be the same import as if it were
3  on Covington letterhead.  But it doesn't mean the
4  fact -- it doesn't mean that Amazon isn't
5  represented by both its in-house and outside
6  counsel.
7         MR. COHEN:  Well, okay.  So the
8  difference in the import -- and I think maybe I
9  didn't use the right language.  The difference in
10 the import is who is making the representation to
11 the FTC.  I don't mean representation in such a
12 strong way, but who is making the statements to
13 the FTC.
14        So there's -- from your perspective,
15 Ben is making the statements when Ben signs the
16 letters.  Covington is making the statements on
17 Amazon's behalf when Covington signs the letter.
18        MS. KIM:  When I submit a letter to
19 you on behalf of Amazon, yes, I'm submitting that
20 on behalf of Amazon.  I'm only writing to you in
21 my capacity as outside counsel to Amazon.  I'm
22 actually -- I'm not sure where you're going with
23 this.  I mean, I'm just curious -- I'm curious
24 why you're probing this actually.
25        MR. COHEN:  Well, I guess a couple of

Page 12

1  reasons.  So one is that I don't -- I mean, I
2  don't think we really have a problem with getting
3  letters from Ben and some letters from Covington.
4  It's not an issue.  It's just curious because I
5  have not noticed a pattern, and there may be a
6  pattern that I just haven't detected as to why
7  some letters come from Covington but some come
8  from Ben.
9         This also relates to two other
10 questions.  One of them has to do with the
11 attestation requirement.  I know that we
12 disagree.  Our position is that you need to tell
13 us who the lead attorney is who is responsible
14 for privilege claims, and your position is that
15 the -- in fact you don't need to do that.
16        Because the communications, or at
17 least some of the communications that you have
18 identified as containing the attestation -- I
19 actually don't think they do contain it, but
20 you've identified them as satisfying the 211A1
21 requirement are coming from Ben.
22        Are we to infer that Ben is the lead
23 attorney that is responsible or ultimately
24 responsible for the protected status claims?
25        MS. KIM:  Let me just back up for a

                                                              13

1   moment, Jonathan.  You said that the letters do
2   not contain the attestation?
3         MR. COHEN:  That's our position.
4         MS. KIM:  Why is that?
5         MR. COHEN:  Because the rule says --
6   and maybe I misread the letters.  But the rule
7   says its the lead attorney or attorney
8   responsible for supervising the review of the
9   material and who made the determination to assert
10  the claim.
11        You need to identify that person, and
12  possibly you have.  That's why I'm asking whether
13  is that -- if you point us to a letter from Ben
14  that you say satisfies that obligation, are we to
15  infer that Ben is the lead attorney or attorney
16  responsible for supervising the review of the
17  material and who made the determination to assert
18  the claim?
19        MS. KIM:  We've already told you
20  multiple times that we have provided the
21  attestation consistent with 211A1 in various
22  letters, and we cited them again in the letter
23  from today: October 7th, November 22nd, and
24  December 12th.  And those were submitted by
25  Amazon with the appropriate attestation.

                                                              14

1         I'm not -- again, I'm really confused
2   as to what remaining questions there really are
3   at this point.
4         MR. COHEN:  Okay.  Well, maybe I can
5   ask it a little bit more -- on a little different
6   way.
7         Who is the attorney responsible for
8   supervising the review of the material, and who
9   made the determination to assert the protected
10  status claims at issue?
11        MS. KIM:  So just to be absolutely
12  clear, Ben Langner submitted the letters that
13  contain the attestation consistent with 211A1
14  which says the attestation shall be by the lead
15  attorney or attorney responsible for supervising
16  the review of the material who made the
17  determination to assert the claim.
18        MR. COHEN:  Therefore, you want us to
19  take, and I am now taking, that the attorney
20  responsible within the meaning of 211A is Mr.
21  Langner?
22        MS. KIM:  He's the lead attorney or
23  the attorney responsible for supervising the
24  review of the material and who made --
25        MR. COHEN:  And he made --

                                                              15

1         MS. KIM:  Correct.
2         MR. COHEN:  That's Mr. Langner, okay.
3   Thank you.
4         Let's go to the number 3, and number 3
5   is one where actually -- by the way, clarifying
6   that it's Mr. Langner is very helpful to us.  So
7   I appreciate that.
8         In terms of number 3, we disagree with
9   some of the characterizations, and you probably
10  would disagree with how we characterize some
11  things.  But the -- I guess I have a couple of
12  questions.  So let's set side the May 2021
13  meeting.
14        There's a paragraph kind of midway
15  down the page that says, for example, you've
16  mentioned privilege issues, raised privilege
17  issues concerning that meeting.  But are there
18  other categories beyond the May 2021 meeting that
19  you feel we should -- and I'm using this term
20  loosely -- like be on guard?
21        I don't know what we would do.  But,
22  Laura, you told me that like there's also this
23  meeting in August of 2018 and we feel that
24  meeting is privileged even though we didn't
25  always necessarily think that way and if you see

                                                              16

1   anything, you should call.  We would take that
2   under advisement.
3         What other than the May 2021 meeting
4   is -- is in the categories of things we should
5   kind of take under advisement as potentially
6   privileged?
7         MS. KIM:  So I don't think I can relay
8   all of that just extemporaneously, Jonathan,
9   during this particular phone call.  But the
10  letter itself gives you -- and this is not new
11  material.  It gives you a number of different
12  factors that we think should help you make that
13  determination.
14        So the paragraph preceding that
15  paragraph you just cited provides you a number of
16  guidelines for you to consider.  I'm not going to
17  be able to put that all together just, you
18  know -- like I said, extemporaneously.
19        MR. COHEN:  Well, I don't fault you
20  for that.  But can you follow-up with a list of
21  other categories?  I mean, there's a difference,
22  I think, that is really important between
23  identifying categories that we should be on the
24  lookout for and identifying considerations.
25        So for instance, one of the

Page 17

1  considerations you identify is privileged and
2  confidential.  But privileged and confidential
3  appears on thousands of documents that Amazon has
4  produced, yet not clawed back.  Attorneys are
5  copied on thousands of documents that Amazon has
6  produced but not clawed back.
7       So clearly, these considerations don't
8  require us to -- I mean, if you're telling us
9  that they are and that any document with
10 privileged and confidential on it we should
11 sequester, I mean, make that clear, and we'll
12 figure out how to do address that.  I don't think
13 you mean that.
14      And so the reason that we're hoping
15 for categories, besides the fact that you -- you
16 use that approach in the initial letter, the
17 earlier letter, is that telling us to consider
18 things that would ordinarily be considered
19 doesn't -- is often not dispositive in this
20 instance.
21      MS. KIM:  Well, Jonathan, the
22 paragraph also gives you other guidelines, and
23 these should not be a surprise.  They, you know,
24 for example, include references to the documents'
25 legal purpose, communications that involve

Page 18

1  attorneys, individuals that, you know, are
2  attorneys based on our privilege logs, and the
3  required appendix.
4       So there's -- we're trying to be
5  responsive to what you raised in your e-mail, but
6  I think -- I think you know what your ethical
7  obligations are, and we have given you some
8  additional clues for how to help discharge that.
9       MR. COHEN:  Okay.  Just as to wrap
10 this up, to the extent there are other categories
11 beyond the May 2021 meeting that you want us to
12 be on the lookout for, will you send them to us?
13      MS. KIM:  I will take that request
14 back to the client, but I'll also point out, in
15 the meantime, that you have repeatedly tried to
16 use documents produced in the competition
17 investigation which were withheld and known to be
18 privileged in our investigation.
19      So I'm not sure that I have to give
20 you the categories of documents when we have
21 already provided to you our privilege logs and
22 withheld materials appropriately in our matter.
23      MR. COHEN:  Amazon didn't cross-check
24 the logs before producing it to us?  For
25 instance, when you produced materials to us, we

Page 19

1  should not -- we shouldn't have assumed that
2  Amazon had made any judgment about its prior
3  assessment or was relying in any way on its prior
4  assessment of those same documents that it had
5  previously reviewed?  It was sort of doing a
6  review -- a new review and reaching potentially
7  new conclusions?
8       MS. KIM:  I'm not -- I'm not going
9  to -- I'm not going to get into the details of
10 what Amazon did or didn't do.  Amazon made
11 appropriate privilege claims, and the question
12 now is whether you have repeatedly made attempts
13 to use documents from a different pending
14 investigation that were claimed privileged in our
15 investigation.  That's -- those are the facts
16 here.
17      MR. COHEN:  With respect to the May
18 2021 meeting, and I don't agree those are the
19 facts, but we'll move on to the May 2021 meeting.
20      May 2021 meeting you have -- we may
21 disagree about, you know, when the issues related
22 to the May 2021 meeting kind of arose, but
23 regardless, it's clear to us that Amazon is
24 asserting various claims with respect to that
25 meeting now.

Page 20

1       And the -- is it your view that it's
2  just the content of that meeting and what was
3  discussed and the memoranda that was discussed or
4  memorandum that was discussed at that meeting
5  that is privileged or just anything that's
6  connected to that meeting at all?
7       MS. KIM:  It's not our position that
8  anything at all that's connected in any possible
9  way to that meeting is privileged.  No, that's
10 not the position we're taking.  I think our
11 letters make that clear, and our privilege logs
12 make that clear.
13      MR. COHEN:  The mere fact that
14 something is somewhat connected to the May 2021
15 meeting or basically -- I'll go further than that
16 -- discloses information related to the May 2021
17 meeting or things that happened at the May 2021
18 meeting, if that's not information that is either
19 legal advice or was conveyed to obtain legal
20 advice, we need not be concerned about reviewing
21 such information?
22      MS. KIM:  No.  I wouldn't say that,
23 Jonathan.  Here's my suggestion.  My suggestion
24 is that if you have questions about particular
25 documents that implicate the May 2021 meeting,

5 (Pages 17 to 20)

21
1  you should feel free to raise those with us, and
2  in fact, before any of the IHs began in this
3  investigation, at least the ones where we were
4  representing the witnesses, we sought to have an
5  orderly process to do that.
6         Now at this point, you're going back
7  and asking questions about things that we could
8  have clarified in advance.  I'm not going to
9  answer a question in -- like a hypothetical
10 question when there are actual documents that are
11 at issue in this matter and where you might be
12 questioning whether it was inadvertently
13 produced.  And I'm happy to take those questions
14 from you and give you an informed answer after
15 reviewing the document.
16        I'm not going -- I can't sit here and
17 answer things hypothetically when we can actually
18 have an orderly process where you raise
19 particular documents and question them.  I'm
20 happy to take those and respond to you.
21        MR. COHEN:  We'll take that under
22 advisement.  Obviously we're reluctant to tell
23 you which documents we think are particularly
24 interesting.  But you know, if what you're saying
25 is that the way -- the situation we're in with

22
1  respect to these privilege issues is the only way
2  we can get clarification is to just tell you
3  which documents we think are interesting to us --
4         MS. KIM:  No.
5         MR. COHEN:  -- or important to us.
6         MS. KIM:  That's not what I'm asking
7  you to do.  I'm not asking you to choose any
8  document that you think is interesting and reveal
9  that to us.  I'm not asking that, Jonathan.
10        MR. COHEN:  All right.  Well, you're
11 asking me to choose some document and discuss it
12 with you.
13        MS. KIM:  You've asked about the May
14 2021 meeting, and you've asked whether documents
15 that relate to that meeting are necessarily
16 privileged or not.  And what I'm saying is that
17 if you have particular questions about whether
18 there are documents that have been inadvertently
19 produced, I would welcome the opportunity to
20 review the document and provide you with more
21 information about that.  That's what I'm saying.
22        I'm not asking you to share with me
23 what documents you find interesting.  We all --
24 we all know that we're talking about the May 2021
25 meeting.  At least that's what I thought was the

23
1  subject of the discussion right now.
2         MR. COHEN:  We're talking about the
3  May 2021 meeting.  So I understand the procedure
4  that you would like is for if we have a question
5  as to whether a document is available for us to
6  use, we need to have a conversation with you
7  about it.  Is that right?
8         MS. KIM:  Yes, and in particular if it
9  implicates the sorts of issues that we layout in
10 some detail in our response to question number 3
11 of my letter from earlier today.
12        MR. COHEN:  Okay.  But that covers
13 almost everything that you have produced.  I
14 think this is getting to what is troubling us.
15 So -- I mean, if I put these things together,
16 which you've said in response to number 3 and
17 what you're telling me now, then essentially any
18 time we want to make use of a document that
19 triggers some of these considerations, whether or
20 not it relates to the May 2021 meeting, you
21 believe the proper course of action is for us to
22 have a conversation with -- not rely on the fact
23 that you produced it to us after a painstaking
24 review, but instead have a conversation with you,
25 and we would move on a document by document basis

24
1  to determine which documents are available for
2  the Commission to consider in this investigation.
3         MS. KIM:  Jonathan, I have laid out --
4  I tried to resolve this in a productive manner by
5  giving you the guidelines that would help you
6  discharge your ethical obligation here to protect
7  Amazon's privilege, and I'm not -- I'm trying to
8  help us move forward productively on those
9  points.
10        If you want to -- if you have
11 particular questions about documents, I'm happy
12 to answer those and review the documents in
13 greater detail.  But I don't know what -- what
14 more that I can say when there are some very
15 clear guidelines here that should put you on --
16 you know, on alert about potential -- potentially
17 inadvertently produced documents.
18        MR. COHEN:  All right.  I have -- I'm
19 a little -- I'm still hazy on whether you intend
20 for us to rely on or to what extent you intend
21 for us to rely on the fact that a particular
22 document hasn't been clawed back.
23        What I hear you saying is the fact
24 that a particular document hasn't been clawed
25 back is not good enough if it has any of the

6 (Pages 21 to 24)

25

1   indications of privilege or potential privilege
2   that you have articulated on page 2, the third
3   paragraph down of your letter.
4           So for instance, if a document says
5   privileged and confidential on it, you haven't
6   clawed it back, we should have a conversation
7   with you to be sure that that document is
8   available for our consideration.
9           MS. KIM:  I think the letter is clear
10  that we mention multiple different indicia,
11  indications of a document's privileged nature.
12  So I'm -- I would just invite you to review that
13  and follow-up with us if you have questions about
14  particular documents that based on your extensive
15  investigation, including 35-plus investigational
16  hearings, puts you on notice that it could be
17  inadvertently produced.
18          MR. COHEN:  I guess what I'm
19  struggling with is there's a difference between
20  the -- I agree that if we are on notice that
21  something might be inadvertently produced, we may
22  have obligations.  But the fact that even
23  multiples of the considerations on page 2 are
24  present doesn't seem to give us that indication
25  at least in this context.  But we're going to

26

1   have to figure out what to do.  Let me move on.
2           MS. KIM:  Jonathan.
3           MR. COHEN:  Yeah.
4           MS. KIM:  I'm happy to move on.  I do
5   want to just clarify your position.  Is it your
6   position then that those -- those indications of
7   the privileged nature are -- are not helpful in
8   terms of determining whether something might have
9   been inadvertently produced?
10          MR. COHEN:  No.  That's not -- that's
11  not our position, with one exception.  I'm not --
12  well, I mean, I'm not sure that -- I need to
13  think about the use of the phrase privileged and
14  confidential in this context, whether that is
15  helpful and bears upon the analysis that we're
16  discussing.  I certainly agree that some of the
17  other considerations are relevant to that
18  determination.
19          But again, we're faced with a
20  situation where many documents -- I don't mean a
21  dozen, but many documents that you have produced
22  but not yet clawed back have elements that are
23  present here as well.  And I don't know the --
24  you know, whether -- I mean that especially with
25  respect to the privileged and confidential stand.

27

1   Some of other things I think are maybe a little
2   bit more valuable in terms of reaching the
3   conclusion that you want us to be thinking about.
4           But hopefully you can appreciate why
5   it's problematic to tell us to look for
6   indications like privileged and confidential when
7   that indication is on so many documents, often in
8   conjunction with -- at least some other
9   theoretical or maybe minor indication that might
10  counsel in favor of the material being
11  privileged, coupled with many, many other
12  considerations pointing in the other direction,
13  including the fact that you produced it to us
14  after a painstaking review.  But we are thinking
15  carefully about how to address this problem.
16          MS. KIM:  Okay.  So I see we just have
17  eight minutes left.  I do want to reserve at
18  least a few minutes at the end for a couple of
19  things I wanted to cover with you.  So if you
20  want to move on to another topic, that might be
21  helpful at this point.
22          MR. COHEN:  Yeah.  I do have some
23  things about the -- with respect to the privilege
24  log, and I can also stay a little bit longer.  If
25  you can't, you can't -- that maybe we're not

28

1   going to get to.  I didn't know you were going to
2   raise other things, but I'll do the best that I
3   can.
4           I don't need to spend a lot of time on
5   number 4 because my interpretation is that you
6   will not provide us any information with respect
7   to the additional facts that were learned to
8   confirm or establish that these materials were
9   privileged.  Maybe we can sort of skip past it
10  because am I right you're not going to provide us
11  any of that information?  Not when it was
12  discovered, who discovered it, what it was,
13  something like that?
14          MS. KIM:  Not at this point, but if
15  there are particular questions you have, I can
16  check with the client.
17          MR. COHEN:  Well, I mean, it would be
18  worth it for you to go back to the client because
19  again -- and maybe this was not done on purpose.
20  I suspect -- well, I don't think it was done on
21  purpose.  But this sort of late stage clawbacks
22  have put us in a tricky position, and it would be
23  helpful to know what exactly happened so that we
24  could understand why it was that this wasn't
25  ascertained earlier and what it was exactly that

                                                                              29

1   was even ascertained in the first place.
2          Likewise, with respect to 5, I took
3   your position to be just that we haven't been
4   prejudiced; therefore, there's no remedy for us
5   from your perspective.
6          MS. KIM:  So starting with number 5, I
7   don't -- I don't understand what the basis would
8   be for a remedy at this point.  So it really
9   wasn't clear to me from the question as written
10  in your e-mail, Jonathan, what the -- what you
11  would have done differently or what should have
12  happened.  It was confusing, the questions.  So
13  we tried to answer your question the best that we
14  could in our letter to try to move things
15  forward.
16         In terms of going back to number 4, we
17  do -- we did produce to you a privilege log.  I'm
18  not able to share with you the particular, you
19  know, what investigation I undertook in detail or
20  share with you other privileged information,
21  although you might want to know the answers to
22  those questions.  So no, that's -- that's not
23  something that I could provide in greater detail.
24         MR. COHEN:  Okay.  So we just need to
25  take at face value that that's what happened?

                                                                              30

1          MS. KIM:  In connection -- in
2   conjunction with the privilege -- the privilege
3   log that we provided to you as well.
4          MR. COHEN:  Well, specifically in
5   conjunction to the late discovery of the
6   privileged or allegedly protected status of these
7   materials.
8          MS. KIM:  I mean, I've given you a
9   letter that lays out our basis for making the
10  claims.  I'm not really sure what more I can give
11  you.  So yes, that's -- that's my work.
12         MR. COHEN:  I guess we disagree as to
13  whether the letter actually lays out the basis
14  for making the claims or explains why it is that
15  the claims were made as late as they were.
16         But just turning back to the number 5,
17  I mean, some of these things are -- are fairly
18  rudimentary.  There was a clawback in the last IH
19  and, you know, we -- there was a lot of back and
20  forth with counsel.  I think sort of in the
21  moment everything was handled well by both sides.
22         But nevertheless, you know, we --
23  we're anticipating being able to question that
24  witness about that particular document and then
25  weren't able to do that.  So I don't think it's

                                                                              31

1   unusual for attorneys to develop a strategy based
2   on the information they think is available to
3   them.  And if that information then materially
4   changes, that would have affected what we -- we
5   would have done.
6          But I mean, there's -- we're obviously
7   not before a judge, and I get all that.  So
8   there's probably not a lot further to really
9   discuss because I don't hear you saying that
10  you're going to be willing to make additional
11  witnesses available for IHs or additional time on
12  existing IHs to address some things differently
13  than they were actually addressed at the time or
14  some other remedy that might -- that might, you
15  know, ameliorate the prejudice.
16         MS. WU:  Jonathan, this is Laura Wu,
17  and I believe you've referenced the interchange
18  we had in Lisa Leung's corporate IH.  I agree I
19  think we handled it the best way possible under
20  the circumstances.
21         As we laid out in our written
22  correspondence, no remedy is necessary because
23  there's no prejudice.  You had the opportunity to
24  fully question the witness as to non-privileged
25  matters, and as you know, off the record, I let

                                                                              32

1   you know that you had the ability to question the
2   witness as to actual changes made to the
3   enrollment flow, and you elected not to do that.
4          I think one other point that's
5   critical to underscore is there were about 10
6   minutes left in the deposition when you
7   identified this document.  So I think those are
8   all things that are relevant to consideration
9   here.  We want to be reasonable, but we don't
10  believe any remedy is necessary given the
11  clawback and the way it was handled, which is
12  consistent with our ethical obligations and also
13  the strategic decisions that you made, which are
14  well within your decision-making power.
15         If there's something specific you want
16  to articulate, we could consider it, of course.
17  We always want to be reasonable.  But we're not
18  in a position to offer a remedy that simply isn't
19  necessary under the circumstances.
20         MR. COHEN:  All right.  Well, I'm a
21  little frustrated.  I don't agree with your
22  characterization, Laura Wu, of what took place in
23  the hallway, and I'm a little frustrated by
24  taking I think what I understood to be an
25  off-the-record conversation intended to

                                                                 8 (Pages 29 to 32)

33

1  facilitate sort of things moving forward in a
2  professional way and placing them on the record
3  here.  So I'm not going to comment any further
4  about that.
5          In terms of what actually happened on
6  the record, I think that it's normal for people
7  to plan examinations based on the documents they
8  think will be available to them and then finding
9  out at the last minute that that document might
10 not be available or isn't available affects the
11 approach or would have affected the approach had
12 that information been available earlier.  But
13 that's okay.  We'll leave it at that.
14         I appreciate, Laura Wu, you saying
15 you'll consider some things that we might
16 propose, and we will get back to you with some
17 suggestions or we will endeavor to do that
18 anyway.  I have to deal with some particular
19 things that may have arisen as a result of these
20 late clawbacks.  We're going to give that some
21 consideration as well.
22         But I am at least somewhat buoyed by
23 your indication that you're not absolutely
24 closing the door, and if there's something or
25 some things that we might be interested in,

34

1  you're willing to at least listen, unless I'm
2  hearing that wrong.
3          MS. WU:  I think what I have said is
4  we are reasonable.  We believe no remedy is
5  necessary and that it would be on staff to
6  propose something crisply so we can consider it.
7  We don't believe anything has been proposed to
8  this date.  So we aren't in a position to address
9  a hypothetical.
10         MR. COHEN:  Okay.  But you're not
11 ruling it out?
12         MS. WU:  We keep an open mind.
13         MR. COHEN:  Okay.  Laura, because you
14 didn't indicate -- this is back to Laura Kim.
15 Because you didn't indicate anything you wanted
16 to talk about in today's meet and confer, we will
17 follow-up with -- because we're out of time or at
18 least in terms of -- I'm not sure we're
19 completely at the end of the privilege issues,
20 which are complex.  But I'll do the best I can to
21 handle whatever you want to talk about now.
22         MS. KIM:  Yeah.  I just wanted to take
23 this opportunity during today's call just to
24 touch base about process going forward.  I
25 recognize that, just as you said, you're still

35

1  looking at some of the privilege issues, and you
2  may still be reviewing materials that Amazon's
3  produced and testimony that's been taken in the
4  matter.  But we believe the investigation should
5  be closed and recognize you may not have come to
6  that conclusion yet because you might still be
7  reviewing materials.
8          Nevertheless, before more time had
9  passed, I did want to relay to you that if you do
10 disagree with the notion that the case should be
11 closed and you do have questions or issues that
12 you are still considering, we would very much
13 like the chance to address those with you and to
14 meet with you to talk those through.  So I wanted
15 to just make that clear and relay that to you.
16         I know this is being transcribed, but
17 I will follow-up by e-mail just to let you know
18 that that's something the company would like to
19 request, the opportunity to engage with you on
20 those questions if you do have any.  So just
21 wanted to let you know that.
22         I don't know if you are in a position
23 to respond at this point but would welcome any
24 reactions you have.
25         MR. COHEN:  I'm not in a position to

36

1  respond.  I'll leave it at that.  I think we
2  still have some work to do.  So I'll say that.
3  But nevertheless, I understand what the company
4  is requesting.
5          MS. KIM:  Okay.  Appreciate you taking
6  that under advisement.
7          MR. COHEN:  Okay.  All right.  I think
8  there will be some further exchanges back and
9  forth on a bunch of things, so we'll get back to
10 you.  Thanks.
11 (Whereupon, the proceedings concluded at 4:04
12 p.m.)

9 (Pages 33 to 36)

```
                                                              37
 1              CERTIFICATE OF REPORTER
 2         I, Tammy S. Newton, do hereby certify
 3    that the foregoing proceedings were taken by me
 4    in stenotype and thereafter reduced to
 5    typewriting under my supervision; that I am
 6    neither counsel for, related to, nor employed by
 7    any of the parties to the action in which these
 8    proceedings were taken; and further, that I am
 9    not a relative or employee of any attorney or
10    counsel employed by the parties hereto, nor
11    financially or otherwise interested in the
12    outcome of the action.
13
14
15                    s/Tammy S. Newton
16                    Tammy S. Newton
17                    Notary Public
18
19
20
21
22
23
24
25
```