The Honorable John H. Chun

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FEDERAL TRADE COMMISSION,

                Plaintiff,

    v.

AMAZON.COM, INC., *et al.*,

                Defendants.

**No. 2:23-cv-0932-JHC**

**DEFENDANTS NEIL LINDSAY'S, RUSSELL GRANDINETTI'S, AND JAMIL GHANI'S MOTION TO DISMISS AMENDED COMPLAINT**

**NOTE ON MOTION CALENDAR:  December 8, 2023**

ORAL ARGUMENT REQUESTED

DEFENDANTS NEIL LINDSAY'S, RUSSELL GRANDINETTI'S, AND JAMIL GHANI'S MOTION TO DISMISS AMENDED COMPLAINT
(2:23-cv-0932-JHC)

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................................... 1

II.    BACKGROUND ................................................................................................. 5

    A.    The Statutory Landscape ............................................................................ 5

    B.    The Regulatory Landscape ......................................................................... 6

    C.    Amazon and the Underlying Litigation .................................................... 7

III.    LEGAL STANDARD ......................................................................................... 7

IV.    ARGUMENT ...................................................................................................... 8

    A.    The FTC Fails to Plead an Underlying Corporate Violation ................... 8

    B.    The FTC Fails to Plead Individual Liability under ROSCA ................... 9

        1.    Count IV (All Individuals): The FTC Fails to Plead Any Individual Participated in or Controlled Prime's Cancellation Flow ....................... 9

        2.    Counts I-IV (Grandinetti): The FTC Fails to Plead That Grandinetti Participated in Illegal Conduct ........................................... 10

    C.    This Action Violates the Individuals' Due Process Rights ................... 12

    D.    Civil Penalties Are Unavailable Because the Individuals Lacked Actual Knowledge of Illegality ................................................................ 15

V.    CONCLUSION ................................................................................................ 18

DEFENDANTS NEIL LINDSAY'S, RUSSELL GRANDINETTI'S, AND JAMIL
GHANI'S MOTION TO DISMISS AMENDED COMPLAINT
(2:23-cv-0932-JHC) - i

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Arroyo v. Int'l Paper Co.*,
   611 F. Supp. 3d. 824 (N.D. Cal. 2020) ...............................................................18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).............................................................................................7

*Belle Maer Harbor v. Charter Twp. Of Harrison*,
   170 F.3d 553 (6th Cir. 1999) ............................................................................13

*Bittner v. United States*,
   598 U.S. 85 (2023) (plurality opinion) ........................................................12, 14

*BMW of N. Am., Inc. v. Gore*,
   517 U.S. 559 (1996)...........................................................................................13

*Cheek v. United States*,
   498 U.S. 192 (1991)...........................................................................................16

*Comm'r v. Acker*,
   361 U.S. 87 (1959).......................................................................................12, 13

*Coro, Inc. v. FTC*,
   338 F.2d 149 (1st Cir. 1964).............................................................................11

*Daniels-Hall v. Nat'l Educ. Ass'n*,
   629 F.3d 992 (9th Cir. 2010) ...........................................................................16

*Dixon v. Green Tree Servicing, LLC*,
   2015 WL 2227741 (N.D. Ind. May 11, 2015) .................................................16

*F.C.C. v. Fox Television Stations, Inc.*,
   567 U.S. 239 (2012).....................................................................................12, 15

*FTC v. Am. Fin. Benefits Ctr.*,
   324 F. Supp. 3d 1067 (N.D. Cal. 2018) .............................................................8

*FTC v. Cantkier*,
   767 F. Supp. 2d 147 (D.D.C. 2011) ...................................................................8

*FTC v. Com. Planet, Inc.*,
   815 F.3d 593 (9th Cir. 2016) ....................................................................3, 9, 12

DEFENDANTS NEIL LINDSAY'S, RUSSELL GRANDINETTI'S, AND JAMIL
GHANI'S MOTION TO DISMISS AMENDED COMPLAINT
(2:23-cv-0932-JHC) - ii

Davis Wright Tremaine LLP
L᾿ᴀᴡ Oꜰꜰɪᴄᴇꜱ
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*FTC v. Credit Bureau Ctr., LLC,*
    937 F.3d 764 (7th Cir. 2019) ....................................................................14, 15

*FTC v. DIRECTV, Inc.,*
    2018 WL 3911196 (N.D. Cal. Aug. 16, 2018) .............................................2

*FTC v. FleetCor Techs., Inc.,*
    620 F. Supp. 3d 1268 (N.D. Ga. 2022) ...................................................11, 12

*FTC v. Grant Connect, LLC,*
    763 F.3d 1094 (9th Cir. 2014) ..................................................................3, 8

*FTC v. Health Formulas, LLC,*
    2015 WL 2130504 (D. Nev. May 6, 2015) ...................................................6

*FTC v. Hornbeam Special Situations, LLC,*
    308 F. Supp. 3d 1280 (N.D. Ga. 2018) ......................................................15

*FTC v. Lights of Am., Inc.,*
    760 F. Supp. 2d 848 (C.D. Cal. Dec. 17, 2010) ...........................................8

*FTC v. Quincy Bioscience Holding Co., Inc.,*
    389 F. Supp. 3d 211 (S.D.N.Y. 2019) ......................................................9, 10

*FTC v. Swish Mktg.,*
    2010 WL 653486 (N.D. Cal. Feb. 22, 2010) .............................................4, 10

*FTC. v. Wellness Support Network, Inc.,*
    2011 WL 1303419 (N.D. Cal. Apr. 4, 2011) ...............................................10

*Gershfeld v. TeamViewer US, Inc.,*
    2023 WL 334015 (9th Cir. Jan. 20, 2023) ...................................................8

*In re Heraeus Kulzer GmbH,*
    2012 WL 1493883 (N.D. Ind. Apr. 26, 2012) .............................................17

*Karem v. Trump,*
    960 F.3d 656 (D.C. Cir. 2020) ............................................................4, 14, 15

*Keeffe v. Libr. of Cong.,*
    777 F.2d 1573 (D.C. Cir. 1985) .................................................................15

*Lightfoot v. D.C.,*
    355 F. Supp. 2d 414 (D.D.C. 2005) ...........................................................14

*Luck v. McMahon,*
    2021 WL 4248887 (D. Conn. Sept. 17, 2021) ...........................................5, 17

DEFENDANTS NEIL LINDSAY'S, RUSSELL GRANDINETTI'S, AND JAMIL
GHANI'S MOTION TO DISMISS AMENDED COMPLAINT
(2:23-cv-0932-JHC) - iii

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Marsh v. First Bank of Delaware*,
    2014 WL 554553 (N.D. Cal. Feb. 7, 2014) ................................................3, 6, 8, 12

*Safeco Ins. Co. of Am. v. Burr*,
    551 U.S. 47 (2007)........................................................................................16

*U.S. ex rel. Decesare v. Americare in Home Nursing*,
    2011 WL 607390 (E.D. Va. Feb. 10, 2011)...........................................................4, 11

*United States v. AMC Ent., Inc.*,
    549 F.3d 760 (9th Cir. 2008) ............................................................................12

*United States v. Corinthian Colleges*,
    655 F.3d 984 (9th Cir. 2011) ............................................................................17

*United States v. Dish Network L.L.C.*,
    954 F.3d 970 (7th Cir. 2020) ............................................................................16

*United States v. Dish Network LLC*,
    256 F. Supp. 3d 810 (C.D. Ill. 2017) ................................................................5, 16

*United States v. FMFG, Inc.*,
    2006 WL 2639366 (D. Nev. Sept. 13, 2006) .........................................................8, 9

*United States v. MyLife.com, Inc.*,
    499 F. Supp. 3d 751 (C.D. Cal. 2020) ............................................................14, 15

*United States v. Struckman*,
    2007 WL 9701174 (W.D. Wash. Apr. 27, 2007).......................................................16

*United States v. United Healthcare Ins. Co.*,
    848 F.3d 1161 (9th Cir. 2016) ...........................................................................10

*Walkingeagle v. Google LLC*,
    2023 WL 3981334 (D. Or. June 12, 2023) ...........................................................3, 8

**Federal Statutes**

15 U.S.C.
    § 45(m)(1)(A)..............................................................................................16
    § 8403......................................................................................................5
    § 8403(1)...................................................................................................8
    § 8403(2)...................................................................................................8
    § 8403(3)...................................................................................................9
    § 8404(a)..................................................................................................16

Fair Credit Reporting Act ....................................................................................16

Federal Trade Commission Act .......................................................................2, 8, 12, 16

DEFENDANTS NEIL LINDSAY'S, RUSSELL GRANDINETTI'S, AND JAMIL
GHANI'S MOTION TO DISMISS AMENDED COMPLAINT
(2:23-cv-0932-JHC) - iv

Davis Wright Tremaine LLP
L A W   O F F I C E S
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Restore Online Shoppers' Confidence Act ............................................................... *passim*

**Rules**

Rule 8(a).................................................................................................................7

Rule 9(b) ....................................................................................................3, 8, 9, 10

DEFENDANTS NEIL LINDSAY'S, RUSSELL GRANDINETTI'S, AND JAMIL
GHANI'S MOTION TO DISMISS AMENDED COMPLAINT
(2:23-cv-0932-JHC) - v

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

## I.    INTRODUCTION

Applying legal requirements that do not actually exist, the Federal Trade Commission seeks to punish three individuals for allegedly deceiving consumers in connection with the popular Prime membership program—even though none of the individuals created or controlled the enrollment and cancellation flows for that program, and despite those individuals' demonstrated efforts to make Prime even more consumer friendly.  As discussed in Amazon's motion to dismiss, the Complaint fails on its face because its exhibits confirm that Prime's flows comply with the law.  The FTC's attempt to allege otherwise relies on an untenable interpretation of the Restore Online Shoppers' Confidence Act ("ROSCA")—a statute that does not prohibit the Prime flows, let alone support the unconstitutionally vague "dark patterns" theory the FTC seeks to develop through this lawsuit.  Through this campaign to hold Amazon to a brand new and vague theory of liability, and to impose personal liability against individuals with neither knowledge nor culpability, the FTC stretches the law past its breaking point.

The FTC's baseless pursuit of Amazon is deeply troubling.  But the FTC's decision to also pursue its unfounded theories by suing three individuals—Neil Lindsay, Russell Grandinetti, and Jamil Ghani (the "Individuals")—is shocking.  To begin with, this is an unwarranted and unannounced departure from agency practice.  The FTC has in certain narrow circumstances charged individual defendants in "cases against small companies," but the agency "rarely—if ever—does so in the case of large, publicly traded companies" like Amazon.  Ex. 12 at 6.[1]  And with good reason: whereas individual employees at small companies can exert plenary control of the company operations and finances, that is not the case at large, decentralized corporations.  The FTC's departure from this century-old practice is unprincipled and improper.

More importantly, the Individuals have done nothing wrong.  The FTC does not allege— because it cannot allege—that any of the Individuals created the Prime flows at issue or possessed independent authority to control the Prime flows.  Instead, the FTC acknowledges that authority

---

[1] Exhibits 1–13 are attached to the Declaration of Joseph A. Reiter in Support of Defendants' Request for Judicial Notice, filed contemporaneously herewith.

DEFENDANTS NEIL LINDSAY'S, RUSSELL GRANDINETTI'S, AND JAMIL
GHANI'S MOTION TO DISMISS AMENDED COMPLAINT
(2:23-cv-0932-JHC) - 1

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1   was divided among numerous "Prime Organization leaders" and "high-level representatives" of

2   "the Prime and Shopping Design Organization."  Dkt. 67, First Amended Complaint ["Compl."]

3   ¶¶ 203, 204, 216.  For the first time, the FTC seeks to hold individuals from a large public

4   company liable based on their involvement in a multi-department and years-long corporate

5   initiative.

6           Far from showing unlawful conduct, the FTC's allegations show that the Individuals acted

7   in good faith and adhered to Amazon's goal of being earth's most customer-centric company,

8   including by supporting the investment of substantial time and resources to making the Prime

9   flows even more consumer friendly.  As the Complaint shows, the Individuals' involvement

10  related to the commendable goal of resolving potential consumer "frustrations."  Compl. ¶¶ 188,

11  192.  Lindsay, for example, "direct[ed]" researchers to conduct a "deep dive" and supported the

12  "team's push for clarity," (*id.* ¶¶ 17, 213); Grandinetti "directed the preparation of" a

13  memorandum summarizing customer "frustrations," (*id.* ¶ 21); and Ghani "approved" a

14  memorandum discussing possible clarity improvements, (*id.* ¶¶ 211–13.)  While the FTC

15  mischaracterizes these actions, what they reflect is the Individuals' involvement in a robust

16  debate about how best to design Prime's processes and balance different viewpoints and

17  considerations—an iterative years-long process that culminated in several "changes to [Prime's]

18  enrollment and [cancellation] flows."  *Id.* ¶¶ 187, 228.  This shows the very opposite of legal

19  violations.  *See FTC v. DIRECTV, Inc.*, 2018 WL 3911196, at *18 (N.D. Cal. Aug. 16, 2018)

20  (defendant's "investment of substantial resources in analyzing its operations, candidly identifying

21  areas for improvement, and following through on a number of improvements does not support

22  a . . . violat[ion of] the FTC Act").

23          Indeed, the facts here show precisely how the FTC should *want* companies and their

24  employees to respond to potential customer issues:  actively seeking to understand the issues'

25  scope, encouraging the organization to brainstorm and implement data-driven solutions, and

26  consulting with in-house counsel and other internal resources.  Yet the FTC has contorted these

27  Individuals' good-faith efforts and protected attorney-client communications into a supposed

DEFENDANTS NEIL LINDSAY'S, RUSSELL GRANDINETTI'S, AND JAMIL
GHANI'S MOTION TO DISMISS AMENDED COMPLAINT
(2:23-cv-0932-JHC) - 2

basis for holding them legally responsible for alleged misdeeds that are not even supported by the facts alleged.  While this raises questions concerning the FTC's motives, the Court need not address those issues because the Complaint fails at its core—its own exhibits show that Prime's flows satisfy ROSCA as a matter of law.  *See Walkingeagle v. Google LLC*, 2023 WL 3981334, at *3 (D. Or. June 12, 2023) (granting motion to dismiss after "assess[ing] the [attached] disclosures through the reasonable consumer prism" and finding any other facts were irrelevant).

Even worse, the FTC seeks to prosecute purported legal violations that the Individuals could not have known about at the time because the law, as the FTC now describes it, did not then exist.  At this moment, the FTC is in the midst of proposed rulemaking to define and prohibit the very practices it seeks to punish in this litigation.  During that rulemaking, the FTC has repeatedly conceded that current law "does not provide clarity" and that "more specificity" is required to provide guidance regarding "the deceptive use of so-called 'dark patterns.'"  Ex. 1 at 24718, 24727–28.  Thus, even if the Individuals were lawyers (they are not), and even if so-called "dark patterns" had been defined and proscribed by the FTC (they were not), the Individuals could not have known that the Prime flows allegedly violated ROSCA.  The law does not allow the FTC to hold businesses, let alone individual employees, to a standard that the FTC had not even articulated.

The Complaint should thus be dismissed in its entirety for the reasons explained in Amazon's motion to dismiss, *see FTC v. Grant Connect, LLC*, 763 F.3d 1094, 1101 (9th Cir. 2014) (no individual liability absent underlying "corporate entity violations"), and for the additional reasons discussed below.

<u>First</u>, even if the FTC could establish an underlying corporate violation by Amazon (it cannot), liability cannot be imputed to the Individuals.  To maintain a claim against the Individuals, the FTC must satisfy Rule 9(b)'s heightened pleading standards and allege particular facts demonstrating that each Individual "participated directly in, or had the authority to control, the unlawful acts or practices at issue."  *FTC v. Com. Planet, Inc.*, 815 F.3d 593, 600 (9th Cir. 2016).  The FTC fails to satisfy this intentionally high bar.  There are no well-pleaded allegations

DEFENDANTS NEIL LINDSAY'S, RUSSELL GRANDINETTI'S, AND JAMIL GHANI'S MOTION TO DISMISS AMENDED COMPLAINT (2:23-cv-0932-JHC) - 3

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

that any Individual had any role in designing, modifying, or controlling Prime's cancellation flows. *See FTC v. Swish Mktg.*, 2010 WL 653486, *5–6 (N.D. Cal. Feb. 22, 2010) (dismissing individual liability claims where FTC failed to allege sufficient facts "to tie [the individual] to the debit card scheme"). In fact, the FTC admits that the cancellation flows predate the Individuals' alleged oversight of Prime. Compl. ¶¶ 14, 20, 24, 130. Accordingly, the Complaint cannot support liability against any of the Individuals on Count IV, which targets Prime's cancellation process. Compl. ¶ 278. Moreover, the FTC fails to allege facts to support liability on any claim against Grandinetti. The sole substantive allegation against Grandinetti is that he attended a *single* meeting—before he is even alleged to have assumed any responsibility for Prime, (Compl. ¶ 19)—during which the FTC admits he "directed the Prime Organization to *improve* the checkout enrollment flow as much as it could . . . [without] hurting signups." Compl. ¶ 208 (emphasis added). While the FTC faults Grandinetti for not directing even more sweeping improvements, such allegations—even if true—do not satisfy the standards for individual liability. *Cf. U.S. ex rel. Decesare v. Americare in Home Nursing*, 2011 WL 607390, at *3, *8 (E.D. Va. Feb. 10, 2011) (allegation that CEO "attend[ed] a meeting" where "legality of [company's] arrangements" was discussed did "not even come close" to the allegations in cases where the FTC's individual claims survived dismissal).

Second, the FTC's unprecedented pursuit of the Individuals violates their constitutional right to due process. As detailed in Amazon's motion, and as the FTC has itself conceded, no one had fair notice that the Prime flows were unlawful because the governing law (as the FTC now seeks to apply it) leaves regulated parties "without guidance." Amazon MTD § III.C. In a case where the FTC has never even stated what specific changes are needed to make the Prime flows legally compliant, the Individuals cannot possibly have acted "so outrageous[ly] as to bring into fair contemplation the unprecedented sanction visited on [them]." *Karem v. Trump*, 960 F.3d 656, 665 (D.C. Cir. 2020). Nor could the Individuals have anticipated the FTC's unprecedented theory of individual liability—i.e., that during a multi-department effort, the Individuals were required to re-design Prime flows that they did not create or exercise independent authority over.

DEFENDANTS NEIL LINDSAY'S, RUSSELL GRANDINETTI'S, AND JAMIL GHANI'S MOTION TO DISMISS AMENDED COMPLAINT (2:23-cv-0932-JHC) - 4

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    Because it is fundamental to due process that the regulated party knows what the regulator

2    demands, the FTC's own admissions require dismissal of its claims against the Individuals.

3        Third, the FTC fails to plausibly plead an essential prerequisite for civil penalties:  that the

4    Individuals knew their alleged conduct violated ROSCA.  *See United States v. Dish Network*

5    *LLC*, 256 F. Supp. 3d 810, 929 (C.D. Ill. 2017).  The FTC seeks an inference that the Individuals

6    knowingly violated the law because they "routinely conferred with [Amazon's] in-house

7    counsel." Compl. ¶ 259.  That is absurd.  No negative inference can be drawn from corporate

8    employees regularly conferring with counsel, let alone an inference of deliberate lawbreaking.

9    *See Luck v. McMahon*, 2021 WL 4248887, at *14 (D. Conn. Sept. 17, 2021) ("[Plaintiff's]

10   allegations that Defendants 'gave information to' or 'sought the advice of their attorneys' for the

11   purpose of terminating [plaintiff] do not provide a basis on which to draw a 'reasonable

12   inference' that Defendants terminated [plaintiff] for a 'dishonest purpose.'").

13       At bottom, the FTC's Complaint ignores the plain language of the statutes it purports to

14   apply, defies a century of the FTC's own standards, and improperly seeks to expand the law

15   outside the required rulemaking process. The FTC's further attempt to retroactively impose its

16   unconstitutional theories on Individuals who acted in good faith should be denied. This lawsuit

17   against the Individuals must be dismissed in its entirety.

18                              **II.      BACKGROUND**

19   **A.      The Statutory Landscape**

20       This lawsuit arises under ROSCA, a 2010 law enacted to address third-party upsells in

21   internet transactions.  *See* Ex. 1 at 24717-24718.  ROSCA imposes three requirements on

22   companies using negative option features:[2]  (1) to "clearly and conspicuously disclose[] all

23   material terms of the transaction before obtaining the consumer's billing information"; (2) to

24   "obtain[] a consumer's express informed consent before charging the consumer[]"; and (3) to

25   "provide[] simple mechanisms for a consumer to stop recurring charges. 15 U.S.C. § 8403.

26   _____

27   [2] While Prime does not use any "negative option" feature, the Court need not resolve that issue for purposes of this motion.  (*See* Amazon MTD §§ III.A-C.)

DEFENDANTS NEIL LINDSAY'S, RUSSELL GRANDINETTI'S, AND JAMIL
GHANI'S MOTION TO DISMISS AMENDED COMPLAINT
(2:23-cv-0932-JHC) - 5

### B.   The Regulatory Landscape

ROSCA has no implementing regulations and was historically litigated in precisely the context in which it arose.  *See, e.g.*, *Marsh v. First Bank of Delaware*, 2014 WL 554553, at *1 (N.D. Cal. Feb. 7, 2014) (alleging "Defendants . . . 'lured' people into applying [for] payday loans on Internet websites" and surreptitiously "enroll[ed] the applicants in online coupon membership programs"); *FTC v. Health Formulas, LLC*, 2015 WL 2130504, at *2 (D. Nev. May 6, 2015) (involving allegations that defendants advertised special offers "designed to entice customers into [providing] their credit or debit card information" and then enrolled customers in "continuity programs" without consent).

In November 2021—more than ten years after ROSCA was passed—the FTC issued a policy statement regarding negative option marketing.  The agency observed that "[n]egative option programs are widespread in the marketplace and can provide substantial benefits for sellers and consumers," but consumers suffer "when marketers fail to make adequate disclosures, bill consumers without their consent, or make cancellation difficult or impossible."  Ex. 3 at 60823. The FTC's policy statement did not reference "dark patterns" in any way.

In September 2022, the FTC issued a staff report entitled "Bringing Dark Patterns to Light."  For the first time, the agency formally addressed the use of so-called "dark patterns," which were then described as "design practices that trick or manipulate users into making choices they would not otherwise have made and that may cause harm."  Ex. 13 at 2.  Examples included "advertisements deceptively formatted to look like independent, editorial content" and "burying key [terms] in dense Terms of Service."  *Id.* at 4, 7.  The report avoided providing specific guidance.  *See id.* at 14 ("How can a company obtain express informed consent from consumers before charging them?  The answer depends on the circumstances.").

Finally, in March 2023, the FTC issued a Notice of Proposed Rulemaking to "improve its existing regulations for negative option programs."  Ex. 1 at 24716.  Conceding that "the existing patchwork of laws and regulations" did not provide "a consistent legal framework"; that ROSCA did not provide "specific steps marketers must follow to comply with [its] requirements"; and that

DEFENDANTS NEIL LINDSAY'S, RUSSELL GRANDINETTI'S, AND JAMIL GHANI'S MOTION TO DISMISS AMENDED COMPLAINT (2:23-cv-0932-JHC) - 6

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    "the current framework [lacked] clarity about how to avoid deceptive negative option disclosures

2    and procedures"—"even for marketers trying to comply with the law"—the FTC proposed such

3    guidance for the first time.  *Id.* at 24718, 24727.  The comment period for the FTC's proposed

4    rule closed on June 23, 2023.  The rule has still not issued.

5         **C.    Amazon and the Underlying Litigation**

6         The events underlying this lawsuit predate the FTC's "dark patterns" report and proposed

7    rulemaking by years.  On June 21, 2023, before the FTC's comment period had even closed, the

8    agency filed this lawsuit accusing Amazon of violating ROSCA.  Dkt. 1.  Shifting focus away

9    from the plainly written requirements of ROSCA, the FTC alleged that in the years leading up to

10   the Complaint, Amazon violated ROSCA by using "manipulative, coercive, or deceptive user-

11   interface designs known as 'dark patterns' to trick consumers into enrolling in automatically-

12   renewing Prime subscriptions."  Compl. ¶ 2.  The Complaint noted that the FTC's investigation

13   had begun in March 2021 (*id.* ¶ 227), predating even the initial (non-binding) staff report.

14        On September 20, 2023, the FTC amended its Complaint to add the Individuals.  Dkt. 67.

15   The agency's allegations against the Individual Defendants amount to (1) generic assertions of

16   "responsibility" over Prime, (*e.g.*, Compl., ¶¶ 14, 20, 24); (2) improper group pleading lumping

17   all Defendants together, (*e.g., id.* ¶¶ 235–38, 259–60); and (3) descriptions of alleged events that

18   predated any relevant guidance by years and, in any event, only demonstrate the Individuals'

19   commitment to resolving customer concerns, (*e.g.*, *id.* 16, 21, 24–25; *see also* ¶ 188 (describing

20   corporate effort, beginning in 2014 to "resolve 'customer frustrations,' or consumer experience

21   issues").)  Notably, the FTC's allegations against the Individuals focus on design decisions that

22   the agency now retroactively alleges are dark patterns, and not on compliance with the actual

23   terms of ROSCA as written or interpreted during the relevant period.  These allegations do not

24   support any claim against the Individuals and should be dismissed.

25        **III.    LEGAL STANDARD**

26        Under Rule 8(a), a complaint must allege "enough facts to state a claim to relief that is

27   plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).  Because the claims

DEFENDANTS NEIL LINDSAY'S, RUSSELL GRANDINETTI'S, AND JAMIL
GHANI'S MOTION TO DISMISS AMENDED COMPLAINT
(2:23-cv-0932-JHC) - 7

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

against the Individuals sound in fraud, the FTC must also satisfy Rule 9(b)'s heightened "particularity" pleading standard.  *See FTC v. Am. Fin. Benefits Ctr.*, 324 F. Supp. 3d 1067, 1080 (N.D. Cal. 2018) (applying Rule 9(b) to allegations of individual liability under the FTC Act); *FTC v. Lights of Am., Inc.*, 760 F. Supp. 2d 848, 852-53 (C.D. Cal. Dec. 17, 2010) (applying Rule 9(b) to claims under Sections 5 of the FTC Act).  The protections of Rule 9(b) serve a particularly "important safeguarding function" where, as here, "an agency of the federal government, with all of its concomitant force, brings an accusation of implicit dishonesty against an individual."  *FTC v. Cantkier*, 767 F. Supp. 2d 147, 155 (D.D.C. 2011).

## IV.      ARGUMENT

### A.      The FTC Fails to Plead an Underlying Corporate Violation

The FTC cannot maintain a claim against an individual without first pleading an underlying "corporate violation." *Grant Connect*, 763 F.3d at 1101; *United States v. FMFG, Inc.*, 2006 WL 2639366, at *3 (D. Nev. Sept. 13, 2006) ("To hold an individual liable for violations of the FTC Act, the FTC must first prove an underlying corporate violation.").[3]  The FTC failed to do so for the reasons explained in Amazon's motion, and the Individuals join those arguments. Amazon MTD §§ III.A-B.  Viewed through the objective "reasonable consumer prism," *Walkingeagle v. Google LLC,* 2023 WL 3981334, at *3 (D. Or. June 12, 2023), the Prime flows easily satisfy ROSCA's requirements, *see Gershfeld v. TeamViewer US, Inc.*, 2023 WL 334015, at *1 (9th Cir. Jan. 20, 2023) (affirming dismissal based on subscription purchase and renewal processes incorporated in complaint).  First, the enrollment flows "clearly and conspicuously" disclose all terms alleged to be material, 15 U.S.C. § 8403(1), in a manner consistent with the FTC's own guidance, (Amazon MTD § III.A.1).  Second, after receiving those clear and conspicuous disclosures and acknowledging agreement to the Prime Terms and Conditions, every consumer provides "express informed consent," 15 U.S.C. § 8403(2), by affirmatively clicking a button to enroll, (Amazon MTD § III.A.2).  Third, members are offered multiple "simple

---

[3] Counts II, III and IV allege ROSCA violations.  Because Count I (the FTC Act claim) is based on the ROSCA standard underlying Count III, it fails for the same reasons.  *See* Amazon MTD § III.A.2, n.9.

DEFENDANTS NEIL LINDSAY'S, RUSSELL GRANDINETTI'S, AND JAMIL
GHANI'S MOTION TO DISMISS AMENDED COMPLAINT
(2:23-cv-0932-JHC) - 8

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

mechanisms" to stop recurring charges, 15 U.S.C. § 8403(3), including by phone and a straightforward online process, (Amazon MTD § III.B).  Lacking an "underlying corporate violation," the FTC's claims against the Individuals necessarily fail.  *FMFG*, 2006 WL 2639366, at *3.

### B.   The FTC Fails to Plead Individual Liability under ROSCA

In any event, the Complaint fails on the merits as to the Individuals.  The FTC must plead particular facts demonstrating that each Individual "participated directly in, or had the authority to control, the unlawful acts or practices at issue."  *Com. Planet, Inc.*, 815 F.3d at 600.  The FTC fails to do so in at least two ways: (1) Count IV fails as to every Individual because the FTC does not allege any facts showing their involvement in, much less direct participation in or control over, Prime's cancellation flows; and (2) Counts I-IV fail as to Grandinetti because his alleged attendance at a single meeting cannot possibly constitute direct participation in the design of the Prime flows, which are not even alleged to have then been in his purview.  *Id.*

### 1.   Count IV (All Individuals): The FTC Fails to Plead Any Individual Participated in or Controlled Prime's Cancellation Flow

Count IV charges that the Individuals violated ROSCA by failing to provide a "simple cancellation method."  Compl. ¶ 278.  Yet none of the Individuals is alleged to have any meaningful role in the Prime cancellation flows, either by creating those flows, modifying them, or directing others to do so.  *See FTC v. Quincy Bioscience Holding Co., Inc.,* 389 F. Supp. 3d 211, 221 (S.D.N.Y. 2019) (dismissing individual liability claim where FTC failed to adequately allege defendant "had knowledge of and participated in the alleged deceptive scheme").  The only purported basis for individual liability under Count IV is a generic allegation—repeated in substantially identical form as to each Individual—that the Individuals "oversaw . . . Amazon employees who studied the Iliad Flow, including the complications it presented to subscribers attempting to cancel, and who developed simpler alternatives, which [the Individuals] did not implement."  Compl. ¶¶ 17, 21, 25.  This generalized allegation, no matter how often repeated, is insufficient to meet the FTC's burden under Rule 9(b), which "does not allow a complaint to

DEFENDANTS NEIL LINDSAY'S, RUSSELL GRANDINETTI'S, AND JAMIL GHANI'S MOTION TO DISMISS AMENDED COMPLAINT (2:23-cv-0932-JHC) - 9

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

merely lump multiple defendants together but requires plaintiffs to differentiate their allegations" and "inform each defendant separately of the allegations surrounding his alleged participation." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016).

Even if Rule 9(b) did not apply to the FTC's claims, the FTC's cancellation-related allegations amount to little more than conclusory assertions of the Individuals' status as executives, which is insufficient to plead individual liability.  *Swish Mktg.*, 2010 WL 653486, at *5–6 (individual's status as CEO, standing alone, failed to demonstrate control); *FTC. v. Wellness Support Network, Inc.*, 2011 WL 1303419, at *11 (N.D. Cal. Apr. 4, 2011) ("boilerplate allegations that simply restate the legal standard" coupled with allegation that defendant "was an officer" were insufficient); *see also Quincy Bioscience Holding Co.,* 389 F. Supp. 3d at 221 (allegations that defendant "[gave] media interviews, signed research agreements, pre-approved research proposals, and reviewed Defendants' advertising" were insufficient).

### 2.     Counts I-IV (Grandinetti): The FTC Fails to Plead That Grandinetti Participated in Illegal Conduct

The FTC's claims are especially lacking as to Grandinetti, who is not alleged—much less with the particularity required by Rule 9(b)—to have controlled or participated in designing the allegedly unlawful Prime flows.  *Swish Mktg.*, 2010 WL 653486, at *5–6 ("The Commission's conclusory assertions of authority—untethered to virtually any supportive facts—do not support an inference of [Individual's] involvement.").  The Complaint alleges that, during the relevant period, Grandinetti was "a member of Amazon's S-Team, which runs the entire company and reports directly to the CEO," and that Grandinetti *now* is an "Amazon Senior Vice-President with a portfolio that includes Prime."[4]  Compl. ¶ 19.  But the only factual allegations tying Grandinetti to the allegations underlying this case are that (1) he attended a single, multi-organizational meeting in 2019 in which he is not alleged to have made or directed any changes to the Prime flows, and (2) following the meeting, Grandinetti advised the Prime Organization to "improve the

---

[4] Grandinetti did not have any authority over Amazon Prime during the period at issue, a fact which the FTC knows but misleadingly omits from the Amended Complaint.  Compl. ¶ 19 (alleging only that Grandinetti currently "oversees Amazon's Prime subscription program").

DEFENDANTS NEIL LINDSAY'S, RUSSELL GRANDINETTI'S, AND JAMIL GHANI'S MOTION TO DISMISS AMENDED COMPLAINT (2:23-cv-0932-JHC) - 10

checkout enrollment flow as much as it could—but only 'while not hurting signups.'"  Compl. ¶¶ 21, 208.  Neither remotely supports the imposition of individual liability.

"[O]verall corporate responsibility" is an insufficient basis to impose individual liability.  *Coro, Inc. v. FTC*, 338 F.2d 149, 154 (1st Cir. 1964).  And courts have specifically rejected personal liability based on executives' "attending [of] a meeting" where it was "unclear what impact, if any, [the executive's] presence at that meeting had on [the company's] future actions" and there were no specific allegations about what "actions [*the executive*] took that were fraudulent or that led to fraud."  *U.S. ex rel. Decesare v. Americare in Home Nursing*, 2011 WL 607390, at *8 (E.D. Va. Feb. 10, 2011) (emphasis in original).  Here, the FTC's allegations against Grandinetti are even weaker because the FTC concedes that Grandinetti encouraged "the Prime Organization to *improve* the checkout flow as much as it could . . . while not hurting signups"—(Compl. ¶ 208 (emphasis added))—an instruction that does not implicate ROSCA in any way.

The Complaint's only other allegations concerning Grandinetti are conclusory and insufficient.  *See*, e.*g.*, Compl. ¶ 20 (alleging without supporting facts that "Grandinetti formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Amazon"); *id.* ¶¶ 21(b), 21(c), 175, 202, 208.  Such allegations are plainly insufficient to state a claim, particularly in the context of a large, public company like Amazon.  *Cf. FTC v. FleetCor Techs., Inc.*, 620 F. Supp. 3d 1268, 1341–43 (N.D. Ga. 2022) (sustaining personal liability of executive in "apex position" with extensive involvement in the challenged practices, who denounced their unlawfulness as "stupid" and "fake news").[5]  As the FTC

---

[5] *FleetCor Technologies* is the sole case Defendants are aware of in which the FTC sued an executive of a public company, and it involved extraordinary factual circumstances where the executive had both intimate involvement in *and* ultimate control over the challenged practices.  In *FleetCor*, the named individual was the CEO, president, and board chairman—the person in the "apex position" who had the "final say on" and was "ultimately responsible" for day-to-day decisions, including the challenged practices.  *Id.* at 1340, 1341.  Further, the CEO closely supervised the challenged sales practices and, among other things, personally approved specific fee implementations.  *Id.* at 1332; *see also id.* at 1347 (stressing "expansive, detailed" and "overwhelming" nature of the evidence of "pervasive and long-lasting" violations).  The court emphasized "there [was] unrefuted evidence in the record that the conduct was intentional—and that it came straight from the top."  *Id.* at 1345.

DEFENDANTS NEIL LINDSAY'S, RUSSELL GRANDINETTI'S, AND JAMIL GHANI'S MOTION TO DISMISS AMENDED COMPLAINT (2:23-cv-0932-JHC) - 11

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

acknowledges, the Prime flows are developed by numerous departments and working groups within Amazon's 1.5-million-employee corporate structure.  *See, e.g.*, Compl. ¶¶ 21, 204, 216. To hold Grandinetti liable for alleged inaction in this context would radically expand the scope of individual liability under the FTC Act and ROSCA, permitting the FTC to prosecute any corporate executive whom the FTC later believes failed to correct a deficiency—regardless of whether he or she was actually in a position to realistically do so.  No court has endorsed such an expansive approach to individual liability, which requires that the individual "participate directly in" the alleged unlawful act.  *Com. Planet, Inc.*, 815 F.3d at 600.

### C.     This Action Violates the Individuals' Due Process Rights

The FTC's claims against the Individuals also violate the fundamental constitutional principle that laws "must give fair notice of conduct that is forbidden."  *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012).  "Due process requires that the government provide citizens and other actors with sufficient notice as to what behavior complies with the law." *United States v. AMC Ent., Inc.*, 549 F.3d 760, 768 (9th Cir. 2008).

These protections apply with particular force to individuals.  Applying "the rule of lenity, [the Supreme] Court has long held [that] statutes imposing [civil] penalties are to be 'construed strictly' against the government and in favor of individuals."  *Bittner v. United States*, 598 U.S. 85, 101 (2023) (plurality opinion); *see also Comm'r v. Acker*, 361 U.S. 87, 91 (1959) (applying "settled [law] that 'penal statutes are to be construed strictly'" where tax regulation "impose[d] a penalty" against individual taxpayer).  The FTC's claims against the Individuals fail constitutional scrutiny.

<u>First</u>, as discussed in Amazon's motion, the Individuals could not possibly have known that their alleged conduct supposedly violated the law.  *See* Amazon MTD § III.C.  The FTC's "dark patterns" theory is fatally vague and inherently subjective—which is to say nothing of the fact that the agency did not even *attempt* to define what a "dark pattern" is until long after virtually all the alleged conduct had already occurred.  *Id.*  Even today, the "design elements" that the FTC retroactively deems to be "dark patterns" are entirely consistent with all existing FTC

DEFENDANTS NEIL LINDSAY'S, RUSSELL GRANDINETTI'S, AND JAMIL GHANI'S MOTION TO DISMISS AMENDED COMPLAINT (2:23-cv-0932-JHC) - 12

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

guidance and indistinguishable from longstanding, traditional, and legal marketing techniques. *See* Amazon MTD § III.A.1. As the FTC itself acknowledges, the design elements it now characterizes as "dark patterns" are "ubiquitous" in ecommerce. Ex. 4 at 2 (FTC news release discussing the prevalence of "dark patterns"). Consequently, even an attentive and diligent attorney—to say nothing of the Individuals, who are laypeople not trained in the law—would have been unable to decipher what the FTC considers to be an unlawful "dark pattern," identify any "dark patterns" within the Prime flows, or figure out how to resolve them to the FTC's satisfaction. *See, e.g.*, *Belle Maer Harbor v. Charter Twp. Of Harrison*, 170 F.3d 553, 557 (6th Cir. 1999) (explaining that the "vagueness doctrine . . . reflects the common sense understanding that the average citizen does not read, at his leisure, every federal, state, and local statute to which he is subject").

Second, even if the FTC's complaint articulated a sufficiently clear "dark patterns" theory (it does not), no such theory finds any support in current law. ROSCA's three simple tenets say nothing about the "visual imbalances" or "manipulative design elements" alleged by the FTC. Congress enacted ROSCA more than a decade before the FTC began even contemplating "dark patterns" and to address an entirely different issue: the then-common practice of "third-party upsells of products or services made during check-out for an initial purchase" that resulted in the "transfer of [consumers'] billing information to a third-party." Ex. 1 at 24739; *see also* Amazon MTD at p. 2. Thus, even if the Individuals had known about ROSCA during the relevant period (the FTC does not so allege), they could not have then known that their alleged conduct supposedly violated ROSCA as now retroactively interpreted by the FTC. *See BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 n.22, 584 (1996) (explaining that the due process "protection against judgments without notice . . . is implicated by civil penalties" and reversing damages award where neither the existing caselaw nor statutes provided "fair notice" of a potential "multimillion dollar penalty").

The FTC effectively admits this. As recently as April 2023—two months before the FTC initiated this lawsuit—the FTC conceded it must pass new regulations because ROSCA "*does not*

DEFENDANTS NEIL LINDSAY'S, RUSSELL GRANDINETTI'S, AND JAMIL GHANI'S MOTION TO DISMISS AMENDED COMPLAINT (2:23-cv-0932-JHC) - 13

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*provide clarity* about how to avoid deceptive negative option disclosures and procedures," "*lacks specificity* about cancellation procedures and the placement, content, and timing of cancellation-related disclosures," and "requires marketers to provide 'simple mechanisms' for the consumer to stop recurring charges *without guidance* about what is simple." Ex. 1 at 24718 (emphasis added). Because the law must be "'construed strictly' against the [FTC] and in favor of [the] individuals," the FTC's firm acknowledgement of regulatory uncertainty is dispositive in the Individuals' favor. *Bittner*, 598 U.S. at 101; *Lightfoot v. D.C.*, 355 F. Supp. 2d 414, 429 (D.D.C. 2005) (rejecting argument that individual claimants should be "charged with knowledge" of caselaw decisions "found largely in electronic legal research databases and not practically accessible to [them]").

Third, even if the Individuals could have known that the Prime flows violated ROSCA, they did not have fair warning that the ordinary performance of their jobs could subject them to personal liability. Because "elementary notions of fairness . . . dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that the government may impose," the government's singling out of an individual for an "unprecedented sanction" operates as a near *de facto* violation of the "essential protection of fair notice." *Karem v. Trump*, 960 F.3d 656, 664-665 (D.C. Cir. 2020) (cleaned up). That is precisely what has occurred here. In the rare instance in which the FTC has sought individual liability under ROSCA, it has premised its claims on allegations that the defendant either personally created the offending website or exercised ultimate control of the offending business. *E.g.*, *FTC v. Credit Bureau Ctr., LLC*, 937 F.3d 764, 770 (7th Cir. 2019) (claims against the "sole owner and operator" of the defendant business who "controlled the [offending] websites"); *United States v. MyLife.com, Inc.*, 499 F. Supp. 3d 751, 755 (C.D. Cal. 2020) (claims against "Founder, Chief Executive Officer, and Chairman"). Here, the FTC alleges nothing of the sort. The FTC concedes that the Individuals did not create the flows at issue. *See* Compl. ¶¶ 130, 185 (alleging that infringing flows have been in existence since 2016, before the Individuals are alleged to have overseen Prime). Moreover, the FTC admits that responsibility for the Prime flows was

DEFENDANTS NEIL LINDSAY'S, RUSSELL GRANDINETTI'S, AND JAMIL GHANI'S MOTION TO DISMISS AMENDED COMPLAINT
(2:23-cv-0932-JHC) - 14

distributed across multiple working groups and shared with numerous other executives.  Compl.

¶¶ 204, 216; *see also id.* ¶ 202 (alleging that Grandinetti was consulted to "break [a] tie[]" across

organizations); *id.* ¶ 219 (alleging a working group asked Ghani to revisit the decision "with the

right decision-makers").

None of the Individuals could have anticipated this radical change in policy, which—if

one accepts the FTC's theory—follows an inexplicable period of widespread impunity.  The FTC

claims that "dark patterns" are and have been "ubiquitous" in the online economy.  Ex. 4 at 2.  So,

under the theory now advanced by the FTC—in which some shared authority over a portion of a

website is sufficient for individual liability—an immeasurably large number of employees have

long been unwittingly liable for ROSCA violations.  Yet the FTC did not seek to prosecute any of

those employees, or declare its intent to do so, until it initiated this action.  These circumstances

are fundamentally incompatible with fair notice.  *See Karem*, 960 F.3d at 667 (lack of fair notice

for punishment where similar conduct had "long been tolerated without punishment"); *Fox*

*Television*, 567 U.S. at 254 (regulated parties must have fair notice that their specific conduct will

be treated as a violation of law "as interpreted *and enforced* by the agency" (emphasis added));

*Keeffe v. Libr. of Cong.*, 777 F.2d 1573, 1583 (D.C. Cir. 1985) ("What the Library *must* do is give

loud and clear advance notice when it [decides] to interpret a particular regulation as a prohibition

or limitation on an employee's outside activity.  Without this notice, an employee is entitled to

read the Library's overly long silence as assent.").[6]

### D.  Civil Penalties Are Unavailable Because the Individuals Lacked Actual Knowledge of Illegality

ROSCA permits an award of civil penalties only if the FTC can prove that a defendant

violated the statute with "actual knowledge or knowledge fairly implied on the basis of objective

---

[6] The unprecedented nature of the FTC's action does not end with the public-versus-private employee distinction. Even in cases against private companies, the FTC has never brought individual ROSCA claims against any non-owner/non-apex employees.  *See FTC v. Credit Bureau Ctr., LLC*, 937 F.3d 764, 769 (7th Cir. 2019) (claims against "sole owner and operator"); *United States v. MyLife.com, Inc.*, 499 F. Supp. 3d 751, 755 (C.D. Cal. 2020) (claims against "Founder, Chief Executive Officer, and Chairman"); *FTC v. Hornbeam Special Situations, LLC*, 308 F. Supp. 3d 1280, 1289 (N.D. Ga. 2018) (claims against company's current "president" and prior owners of corporate parent).

DEFENDANTS NEIL LINDSAY'S, RUSSELL GRANDINETTI'S, AND JAMIL
GHANI'S MOTION TO DISMISS AMENDED COMPLAINT
(2:23-cv-0932-JHC) - 15

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

circumstances" that his conduct was illegal.  15 U.S.C. § 45(m)(1)(A); 15 U.S.C. 8404(a).  To meet this requirement, the FTC must prove a defendant's knowledge "of the existence of the rule" *and* that his conduct "violated the rule."  *United States v. Dish Network LLC*, 256 F. Supp. 3d 810, 929 (C.D. Ill. 2017); *see also United States v. Dish Network L.L.C.*, 954 F.3d 970, 978 (7th Cir. 2020) (noting that this requirement creates an "ignorance-of-the-law defense").  In this context, the government's burden "requires negating a defendant's claim of ignorance of the law or a claim that because of a misunderstanding of the law, he had a good-faith belief that he was not violating [it]." *Cheek v. United States*, 498 U.S. 192, 202 (1991) (discussing analogous willfulness requirement); *United States v. Struckman*, 2007 WL 9701174, at *1 (W.D. Wash. Apr. 27, 2007) (same).  Any "reasonable reading" of a statute—even a "misreading"—is sufficient to foreclose the imposition of penalties.  *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 50, 71 (2007).

The Complaint does not plead facts sufficient to meet this high bar.  For starters, the Individuals could not have known that the Prime flows violated ROSCA for all the reasons discussed in § IV.C, *supra*, including because the FTC admits ROSCA's requirements are unclear.  *See Dixon v. Green Tree Servicing, LLC*, 2015 WL 2227741, at *3-4 (N.D. Ind. May 11, 2015) (plaintiff could not show that defendant "knew it was violating the FCRA" because "the law was ambiguous").  Although the Complaint avers that the Individuals had the requisite "knowledge," (Compl. ¶ 260), this conclusory assertion must be disregarded.  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

The FTC pleads only a single fact aimed at showing "actual knowledge":  that the Individuals "routinely conferred with [Amazon's] in-house counsel . . . regarding obligations under the FTC Act, ROSCA, and other consumer protection laws and regulations."  Compl. ¶ 259.  In other words, the FTC's civil-penalty demand relies entirely on the cynical, speculative, and baseless inference that because the Individuals consulted with counsel, they must have been advised that their conduct was illegal.  But communications with counsel are legally protected— not vilified—and are plainly not evidence of wrongdoing.  *See Luck*, 2021 WL 4248887, at *14 (defendants' consultation with lawyer about terminating an employee did not support "inference

DEFENDANTS NEIL LINDSAY'S, RUSSELL GRANDINETTI'S, AND JAMIL GHANI'S MOTION TO DISMISS AMENDED COMPLAINT (2:23-cv-0932-JHC) - 16

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

that Defendants terminated [employee] for a dishonest purpose"); *In re Heraeus Kulzer GmbH*, 2012 WL 1493883, at *6 (N.D. Ind. Apr. 26, 2012) (party's evidence "[t]hat two Biomet employees sought legal advice from Biomet's counsel" about trade-secret issue did not "support an inference" that those employees "conspired with counsel to further a scheme to use [those] trade secrets").  Accordingly, when presented with similar facts, courts draw the exact opposite conclusion:  that "employees [seek] legal advice" because they want to "*properly* conduct [company] business."  *Heraeus Kulzer GmbH*, 2012 WL 1493883, at *6; *see also United States v. Corinthian Colleges*, 655 F.3d 984, 997 (9th Cir. 2011) (affirming dismissal where pleading did not "clearly allege sufficient facts to support an inference" that the defendant "acted while knowing that its [conduct] fell outside of the Safe Harbor Provision on which it was entitled to rely").

But even if the FTC's allegations plausibly established that the Individuals knew that *Amazon's* conduct was illegal, the FTC cannot show as a matter of law that the Individuals understood *their own* conduct to be unlawful.  As discussed above, the FTC concedes that the Prime flows predate the Individuals' alleged management of Prime, and the FTC fails to specify what each Individual would have needed to do to bring their conduct into compliance with the law as the FTC now interprets it.  *See supra* § IV.B, C.  Moreover, the Complaint alleges that the Individuals took repeated good-faith actions that render implausible any allegation that they knowingly violated the law.  According to the FTC's allegations, for years, the Individuals repeatedly commissioned research into the "Nonconsensual Enrollment Problem," discussed findings with colleagues, and instructed other to continue developing solutions.  Compl. ¶¶ 17, 21, 193, 213.  In doing so, the Individuals created an extensive written record of Amazon's attempts to understand the relevant issues and correct them, which now form the basis of the FTC's claims.  *Id.* ¶¶ 177–230.  Because this is the *opposite* of what a deliberate lawbreaker would be expected to do, the FTC cannot (mis)use these allegations to satisfy its pleading burden.  *Cf. Arroyo v. Int'l Paper Co.*, 611 F. Supp. 3d 824, 842–43 (N.D. Cal. 2020) (defendant's purchase of payroll textbooks, review of newsletters regarding payroll requirements, and internal

DEFENDANTS NEIL LINDSAY'S, RUSSELL GRANDINETTI'S, AND JAMIL GHANI'S MOTION TO DISMISS AMENDED COMPLAINT (2:23-cv-0932-JHC) - 17

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

audit of wage statement requirements demonstrated "good faith" and that defendant's alleged violation of law was not "knowing and intentional").

## V.     CONCLUSION

Even if the FTC's claims against Amazon were meritorious, there is no basis to impose liability on the Individuals.  To survive a motion to dismiss, the FTC must plead particular facts demonstrating that individual liability is appropriate, and it has not done so.  To overcome this legal deficiency, the FTC relies on an inappropriately broad theory of individual liability, of which none of the Individuals received constitutionally required fair notice.  Compounding these issues, the FTC admits that the law, as it seeks to apply it, is uncertain and does not yet provide the rules by which companies, much less individuals, should abide.  The Complaint should be dismissed.

I certify that this memorandum contains 6,532 words, in compliance with the Local Civil Rules.

DATED this 18th day of October, 2023.

DAVIS WRIGHT TREMAINE LLP


By s/ *Kenneth E. Payson*
    Kenneth E. Payson, WSBA #26369
    James Howard, WSBA #37259
    920 Fifth Avenue, Suite 3300
    Seattle, WA  98104-1610
    Telephone: (206) 622-3150
    Fax: (206) 757-7700
    E-mail: kenpayson@dwt.com
          jimhoward@dwt.com

DEFENDANTS NEIL LINDSAY'S, RUSSELL GRANDINETTI'S, AND JAMIL GHANI'S MOTION TO DISMISS AMENDED COMPLAINT (2:23-cv-0932-JHC) - 18

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

HUESTON HENNIGAN LLP

By s/ *Moez M. Kaba*
 John C. Hueston*
 Moez M. Kaba*
 Joseph A. Reiter*
 523 West 6th Street, Suite 400
 Los Angeles, CA  90014
 Telephone: (213) 788-4340
 E-mail: jhueston@hueston.com
   mkaba@hueston.com
   jreiter@hueston.com

COVINGTON & BURLING LLP

 Stephen P. Anthony*
 Laura Flahive Wu*
 Laura M. Kim*
 John D. Graubert*
 850 Tenth Street, NW
 Washington, DC  20001
 Telephone: (206) 662-5105
 E-mail: santhony@cov.com
   lflahivewu@cov.com
   lkim@cov.com
   jgraubert@cov.com

 John E. Hall*
 415 Mission Street, Suite 5400
 San Francisco, CA  94105
 Telephone: (415) 591-6855
 E-mail: jhall@cov.com

 Megan L. Rodgers*
 3000 El Camino Real
 Palo Alto, CA  94306
 Telephone: (650) 632-4734
 E-mail: mrodgers@cov.com

*Pro hac vice application forthcoming on behalf of Defendants Lindsay, Grandinetti, and Ghani*

Attorneys for Defendants
LINDSAY, GRANDINETTI, AND GHANI

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax