The Honorable John H. Chun

1

2

3

4

5

6                    UNITED STATES DISTRICT COURT
            WESTERN DISTRICT OF WASHINGTON
7                             AT SEATTLE

8   FEDERAL TRADE COMMISSION,

9                         Plaintiff,              **No. 2:23-cv-0932-JHC**

10        v.                                      **DEFENDANT AMAZON.COM,
                                                  INC.'S MOTION TO DISMISS
11   AMAZON.COM, INC., *et al.*,                  AMENDED COMPLAINT**

12                        Defendants.             **NOTE ON MOTION
                                                  CALENDAR:  December 8, 2023**

13                                                ORAL ARGUMENT REQUESTED

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS AMENDED COMPLAINT
(2:23-cv-0932-JHC)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   LEGAL STANDARD........................................................................................... 5

III.  ARGUMENT ....................................................................................................... 6

    A.    Counts I-III Fail: Prime's Enrollment Flows Do Not Violate ROSCA ............... 6

        1.    Amazon Clearly and Conspicuously Discloses All Material Terms ........ 7

        2.    Amazon Obtains Express Informed Consent as a Matter of Law........... 14

    B.    Count IV Fails: Prime's Cancellation Flows Do Not Violate ROSCA ............. 16

    C.    Counts I-IV Fail: This Action Violates Amazon's Due Process Rights............. 20

        1.    The FTC's Proposed "Dark Patterns" Theory Is Unconstitutionally
            Vague ...................................................................................................... 21

        2.    The FTC Admits the Current Laws Fail to Provide Fair Notice ........... 24

    D.    Civil Penalties Are Unavailable as a Matter of Law............................................ 27

IV.   CONCLUSION.................................................................................................... 29

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS AMENDED COMPLAINT
(2:23-cv-0932-JHC) - i

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1

2

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

3

**Federal Cases**

*Adams v. Amazon.com, Inc.*,
  2023 WL 4002534 (W.D. Va. June 14, 2023) .......................................................15

*Allen v. Shutterfly, Inc.*,
  2020 WL 5517172 (N.D. Cal. Sept. 14, 2020) .................................................7, 13

*Arena v. Intuit Inc.*,
  444 F. Supp. 3d 1086 (N.D. Cal. Mar. 12, 2020) .................................................12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...............................................................................................20

*In re Bassett*,
  285 F.3d 882 (9th Cir. 2002) ....................................................................................6

*Brown v. Natures Path Foods, Inc.*,
  2022 WL 717816 (N.D. Cal. Mar. 10, 2022) ...........................................................5

*Butcher v. Knudsen*,
  38 F.4th 1163 (9th Cir. 2022) ..........................................................................20, 23

*Bynum v. U.S. Capitol Police Bd.*,
  93 F. Supp. 2d 50 (D.D.C. 2000) .....................................................................23, 26

*Capps v. JPMorgan Chase Bank, N.A.*,
  2023 WL 3030990 (E.D. Cal. Apr. 21, 2023) ........................................................10

*Cliffdale Assocs., Inc.*,
  103 F.T.C. 110 (1984).............................................................................................15

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
  173 F.3d 725 (9th Cir. 1999) ..................................................................................22

*Dohrmann v. Intuit, Inc.*,
  823 F. Appx. 482 (9th Cir. 2020).............................................................................11

*Ebner v. Fresh, Inc.*,
  838 F.3d 958 (9th Cir. 2016) ....................................................................................7

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
  751 F.3d 990 (9th Cir. 2014) ....................................................................................4

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS AMENDED COMPLAINT
(2:23-cv-0932-JHC) - i

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Ekin v. Amazon Servs.,*
  LLC, 84 F. Supp. 3d 1172 (W.D. Wash. Dec. 10, 2014)......................................14

*Expressions Hair Design v. Schneiderman,*
  581 U.S. 37 (2017)..............................................................................................21

*Fanning v. FTC,*
  821 F.3d 164 (1st Cir. 2016)...............................................................................16

*FCC v. Fox Television Stations, Inc.,*
  567 U.S. 239 (2012).................................................................................. *passim*

*Fed. Trade Comm'n v. DIRECTV, Inc.,*
  2018 WL 3911196 (N.D. Cal. Aug. 16, 2018) ....................................................28

*FTC v. Cardiff,*
  2020 WL 6540509 (C.D. Cal. Oct. 9, 2020).......................................................23

*FTC v. Credit Bureau Ctr. LLC,*
  No. 17-cv-00194, ¶¶ 12–16, 21 (N.D. Ill. 2017)...............................................23

*FTC v. Elite IT Partners, Inc.,*
  No. 2:19-cv-00125-RJS, ¶¶ 12–13 (D. Utah 2019) ...........................................23

*FTC v. Indiana Federation of Dentists,*
  476 U.S. 447 (1986).............................................................................................14

*FTC v. One Technologies, LP,*
  No. 3:14-cv-05066 (N.D. Cal. 2014) ..................................................................23

*FTC v. Pact, Inc.,*
  No. 2:17-cv-01429 (W.D. Wash. 2017)...............................................................23

*General Elec. Co. v. EPA,*
  53 F.3d 1324 (D.C. Cir. 1995) ............................................................................21

*Gershfeld v. TeamViewer US, Inc.,*
  2023 WL 334015 (9th Cir. Jan. 20, 2023) .............................................3, 6, 7, 13

*Gonzalez v. Planned Parenthood of Los Angeles,*
  759 F.3d 1112 (9th Cir. 2014) ...............................................................................6

*Groeneveld Transp. Efficiency, Inc. v. Lubecore Int'l, Inc.,*
  730 F.3d 494 (6th Cir. 2013) .................................................................................7

*Hall v. Time, Inc.,*
  857 Fed. Appx. 385 (9th Cir. May 24, 2021) ....................................... *passim*

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS AMENDED COMPLAINT
(2:23-cv-0932-JHC) - ii

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Heinz v. Amazon.com, Inc.*,
   2023 WL 4466904 (E.D. Cal. July 11, 2023) ...................................................9

*Hooper v. Jerry Ins. Agency, LLC*,
   2023 WL 3992130 (N.D. Cal. June 1, 2023) ..................................................12

*Humanitarian L. Project v. Reno*,
   205 F.3d 1130 (9th Cir. 2000) .....................................................................24

*Hunt v. City of Los Angeles*,
   638 F.3d 703 (9th Cir. 2011) ..................................................................21, 22

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*,
   559 U.S. 573 (2010)......................................................................................27

*Karem v. Trump*,
   960 F.3d 656 (D.C. Cir. 2020) ...............................................................21, 26

*Keeffe v. Libr. of Cong.*,
   777 F.2d 1573 (D.C. Cir. 1985) ..................................................................26

*Loewen v. Lyft, Inc.*,
   129 F. Supp. 3d 945 (N.D. Cal. Sept. 15, 2015) .........................................12

*Luck v. McMahon*,
   2021 WL 4248887 (D. Conn. Sept. 17, 2021) .............................................28

*Lundbom v. Schwan's Home Serv., Inc.*,
   2020 WL 2736419 (D. Or. May 26, 2020) ....................................................7

*McCarthy v. Amazon.com, Inc.*,
   2023 WL 5793316 (W.D. Wash., Sept. 7, 2023) ...........................................6

*Nanut v. Kimberly-Clark Corp.*,
   89 F.3d 846 (9th Cir. 1996) .....................................................................7, 13

*Nicosia v. Amazon.com, Inc.*,
   384 F. Supp. 3d 254 (E.D.N.Y. June 24, 2019), *aff'd*, 815 F. Appx. 612 (2d Cir. 2020) ..........7

*Oberstein v. Live Nation Ent., Inc.*,
   2021 WL 4772885 (C.D. Cal. Sept. 20, 2021) .............................................11

*Oberstein v. Live Nation Ent., Inc.*,
   60 F.4th 505 (9th Cir. 2023) ..............................................................9, 11, 14

*OSO Grp., Ltd. v. Bullock & Assocs., Inc.*,
   2009 WL 2422285 (N.D. Cal. Aug. 6, 2009) ..............................................16

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS AMENDED COMPLAINT
(2:23-cv-0932-JHC) - iii

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Perkins v. New York Times Co.*,
  2023 WL 3601489 (S.D.N.Y. May 23, 2023) ................................................................6, 13, 17

*Ramsey v. Custom Tree Serv., Inc.*,
  2007 WL 2827560 (M.D. Fla. Sept. 27, 2007) ................................................................21, 24

*Rutter v. Apple Inc.*,
  2022 WL 1443336 (N.D. Cal. May 6, 2022) ..................................................................3, 7, 13

*S.S. v. Microsoft Corp. Welfare Plan*,
  2015 WL 11251744 (W.D. Wash. Feb. 11, 2015) ..................................................................26

*Smith v. Check–n–Go of Illinois, Inc.*,
  200 F.3d 511 (7th Cir. 1999) ..................................................................................................13

*Sorrell v. IMS Health Inc.*,
  564 U.S. 552 (2011) ...........................................................................................................21, 22

*In re Tam*,
  808 F.3d 1321 (Fed. Cir. 2015), *aff'd sub nom. Matal v. Tam*, 582 U.S. 218 (2017) ............27

*In the Matter of Telebrands Corp., TV Sav., LLC, & Ajit Khubani*,
  140 F.T.C. 278 (2005) ..............................................................................................................16

*United States v. AMC Ent., Inc.*,
  549 F.3d 760 (9th Cir. 2008) ..............................................................................................20, 22

*United States v. Dish Network L.L.C.*,
  954 F.3d 970 (7th Cir. 2020) ....................................................................................................27

*United States v. Dish Network LLC*,
  256 F. Supp. 3d 810 (C.D. Ill. 2017) ........................................................................................27

*United States v. Hopkins Dodge, Inc.*,
  849 F.2d 311 (8th Cir. 1988) ....................................................................................................28

*United States v. Mylife.com, Inc.*,
  567 F. Supp. 3d 1152 (C.D. Cal. Oct. 19, 2021)......................................................................24

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) ......................................................................................................5

*United States v. Schaefer*,
  2019 WL 5197552 (D. Or. Oct. 15, 2019)................................................................................21

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*,
  455 U.S. 489 (1982)..................................................................................................................21

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS AMENDED COMPLAINT
(2:23-cv-0932-JHC) - iv

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*In re Vistaprint Corp Mktg. & Sales Pracs. Litig.*,
    2009 WL 2884727 (S.D. Tex. Aug. 31, 2009) ...........................................................6, 8, 13

*Walkingeagle v. Google LLC*,
    2023 WL 3981334 (D. Or. June 12, 2023) ...................................................................... *passim*

*William H. Morris Co. v. Group W*,
    66 F.3d 255 (9th Cir. 1995) ...................................................................................16

*Wollschlaeger v. Governor, Fla.*,
    848 F.3d 1293 (11th Cir. 2017) ...............................................................................22

**Federal Statutes**

15 U.S.C.
    § 5.........................................................................................................14, 15, 27
    §§ 41-58 (FTC Act) ............................................................................................ *passim*
    § 45(m).........................................................................................................27
    § 45(m)(1)(A)................................................................................................27, 28
    § 8401.............................................................................................................2
    §§ 8401-8405 (ROSCA) ...................................................................................... *passim*
    § 8403..........................................................................................................16
    § 8404(a) ....................................................................................................27, 28

**Rules**

Local Civil Rule 5(g)(2)(A) ...............................................................................15

**Regulations**

16 C.F.R. § 310.2(w) ........................................................................................5

**Constitutional Provisions**

U.S. Const., amend. I .........................................................................................21

**Other Authorities**

Kallen Dimitroff, *Organized Prime: Should Amazon Be Responsible for Its Sellers' Criminal
    Activity?*, 100 Tex. L. Rev. Online 127 (2022)........................................................16

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS AMENDED COMPLAINT
(2:23-cv-0932-JHC) - v

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## I.    INTRODUCTION

The Federal Trade Commission attacks an immensely popular consumer service—Amazon Prime—by disregarding the plain language of the statutes it invokes and ignoring the exhibits attached to its own Complaint.  Even a cursory review of Prime's enrollment and cancellation processes, or "flows," confirms that they comply with current law—including by prominently and repeatedly disclosing key terms like Prime's price and automatic renewal feature.  The FTC thus seeks to establish an entirely new theory of legal liability based on misleading and subjective characterizations of unremarkable marketing techniques.  Under basic principles of due process, however, any modification of the law must occur through legislation or regulation, and not through enforcement actions seeking to impose massive and retroactive civil liability.

Under existing law, this Court need only review the Prime flows attached to the Complaint to confirm that the Complaint fails in its entirety.  Those flows do not contain—and the FTC does not allege they contain—a single false statement or material omission.  To the contrary, as the Complaint's exhibits show, when consumers sign up for Prime, they are presented with the material terms of enrollment in clear and conspicuous language, they provide their informed consent to being charged for the membership, and they are given multiple simple mechanisms to cancel.  Courts in the Ninth Circuit and across the country routinely grant motions to dismiss where, as here, an objective review of the challenged webpages show their legality.  *See*, *e.g.*, *Hall v. Time, Inc.*, 857 Fed. Appx. 385, 386 (9th Cir. May 24, 2021) (on motion to dismiss, the "district court correctly concluded that the Automatic Renewal Notice appearing on the checkout page satisfies the 'clear and conspicuous' and 'visual proximity' requirements under [California's Automatic Renewal Law]").

Seeking to avoid such a dismissal in this case, the FTC announces in the Complaint a new "dark patterns" theory, which relies on vague and undefined concepts such as "visual imbalances" and "manipulative design elements."  In a case supposedly about clarity, the FTC's purported standards are unconstitutionally opaque.  What font size and colors are required to comply with

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS AMENDED COMPLAINT
(2:23-cv-0932-JHC) - 1

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

the FTC's view of "balance"?  How many clicks on a website is too many for the FTC?  What amount of persuasive messaging does the FTC consider lawful marketing and what amount does the FTC deem unlawful "manipulation"?  The FTC does not even endeavor to answer such questions.  Even worse, outside this litigation, the FTC admits that current law "does not provide clarity" about how to avoid liability and fails to "address the deceptive use of so-called dark patterns." Ex. 1[1] at 24718, 24727–28.  Instead of promulgating such rules, the FTC has adopted an improper sue-first-and-create-rules-later tactic.  This "we know it when we see it" approach should be rejected and the Complaint should be dismissed.

Nor can the FTC shoehorn its remarkable new theory into the decidedly unremarkable and plainly written statute at issue: the Restore Online Shopper Confidence Act ("ROSCA").  Enacted in 2010, ROSCA was passed to prohibit conduct entirely different from that alleged in the Complaint: the then-common practice of "third-party upsells of products or services made during check-out for an initial purchase" (*e.g.*, enrolling a consumer in Company B's magazine subscription when she was buying sneakers from Company A).  (*Id.* at 24739.)  Any other applications are "ancillary to the intent of the statute," (*id.*), and no types of marketing other than third-party upsells are even referenced in the congressional findings.  15 U.S.C. § 8401.  Before this case, both the FTC and the courts treated ROSCA as limited—just like Congress intended.  The statute was rarely invoked, was cited in only a handful of opinions, and resulted in no significant judgments against legitimate businesses.  *See infra* at § III.C.1.

Despite ROSCA's clear purpose, the FTC seeks to use ROSCA to revamp online commerce and upend longstanding marketing practices.  ROSCA underlies each of the FTC's causes of action.  And each fails for sound, simple reasons.

<u>First</u>, the Prime flows satisfy ROSCA's requirements.  This is an issue of law governed by the objective "reasonable" consumer standard.  *See Walkingeagle v. Google LLC*, 2023 WL 3981334, at *3 (D. Or. June 12, 2023) (granting motion to dismiss after "assess[ing] the

---

[1] Exhibits 1–13 are attached to the Declaration of Joseph A. Reiter in Support of Defendants' Request for Judicial Notice, filed contemporaneously herewith.

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS AMENDED COMPLAINT
(2:23-cv-0932-JHC) - 2

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

[attached] disclosures through the reasonable consumer prism"). The Court can view the Prime flows—which are attached to the Complaint—and find that they objectively satisfy ROSCA's plain text. Courts in the Ninth Circuit routinely do just that when granting motions to dismiss involving similar statutes, including state automatic-renewal laws that the FTC has acknowledged are stricter than the current federal rules. *See*, *e.g.*, *Gershfeld v. TeamViewer US, Inc.*, 2023 WL 334015, at *1 (9th Cir. Jan. 20, 2023) (affirming dismissal based on subscription purchase and renewal processes incorporated by reference into the complaint); *Hall*, 857 Fed. Appx. at 386–87 (same); *see also Rutter v. Apple Inc.*, 2022 WL 1443336, at *5–*7 (N.D. Cal. May 6, 2022) (granting motion to dismiss).

A review of the Complaint's exhibits shows the FTC's claims fail. Dkt. 67, First Amended Complaint [hereinafter, "Compl."]. Every enrollment flow attached to the Complaint conspicuously discloses—often multiple times, in multiple places, in bolded or uniquely colored font, and in close proximity to the enrollment button—the two terms the FTC identifies as material: Prime's monthly price and auto-renewal feature. *See*, *e.g.*, *id.*, Attachment A. As explained below, the FTC itself recommends using these same practices to ensure compliance with the law. Ex. 2 at 8; Ex. 3 at 60825. Moreover, the Prime flows objectively establish that consumers provide their express informed consent to enroll. Consumers must affirmatively click a button to enroll, and can do so only after receiving the clear and conspicuous disclosures described above and after they are separately informed that "By signing up, you acknowledge that you have read and agree to the Amazon Prime Terms and Conditions," or words to that effect. *See*, *e.g.*, Compl., Attachment A. Finally, Amazon offers multiple cancellation options, including by phone (an independently sufficient cancellation method ignored by the FTC) and by using a simple online process that, again, the Court can view itself in the Complaint's exhibits. *See*, *e.g.*, *id.*, Attachment Q.

The FTC spends much of the Complaint ignoring the lawful Prime flows and focusing instead on internal Amazon documents and meetings. These allegations cannot save the Complaint. What matters are the "screenshots of the [relevant] pages" and the applicable statutory

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS AMENDED COMPLAINT
(2:23-cv-0932-JHC) - 3

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

text.  *Walkingeagle*, 2023 WL 3981334, at *3.  Because the Prime flows themselves show no ROSCA violation, there is no "need for further facts" to dismiss the Complaint in full.  *Id.*  Even if the Court considered those allegations, however, they do not support liability.  The FTC's allegations show that Amazon engaged in debate on how best to present enrollment and cancellation processes (Compl., ¶¶ 174, 175, 183–187, 199–213); considered the views of many different groups and individuals (*id.*); regularly studied alternatives in an environment in which the online-consumer experience was rapidly evolving (Compl., ¶¶ 165–168, 178, 187–230); and dedicated extensive time and resources to achieving an appropriate balance (*id.*).  That the FTC might assign some nefarious motive to these discussions does not make them improper—let alone evidence of a ROSCA violation—particularly where the flows themselves are plainly legal.  *See Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (courts must consider an obvious alternative explanation for defendant's behavior when assessing plausibility).  Indeed, the documents cited by the FTC demonstrate that Amazon looked for and implemented ways to improve the customer experience.  The FTC should encourage such dialogue, not punish it.

Second, given the above, the only way the FTC can allege that the Prime flows are unlawful is through a new "dark patterns" theory that violates Amazon's due process rights.  "A fundamental principle in our legal system is that laws . . . must give fair notice of conduct that is forbidden."  *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012).  Amazon had no such notice of the FTC's "dark patterns" theory because it is vague, highly subjective, and has never been established in any federal statute, rule, or case.  The Complaint seeks to make illegal any design element that the FTC believes may "trick users into making decisions they would not otherwise have made," even where, as here, the advertising is indisputably truthful.  Compl. ¶ 8.  This unconstitutionally vague standard fails to draw a discernable line between traditional advertising—a primary function of which is to persuade consumers—and illegal practices.  Tellingly, the FTC has never identified what changes to the Prime flows would make them lawful.

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS AMENDED COMPLAINT
(2:23-cv-0932-JHC) - 4

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1   Moreover, the FTC has repeatedly admitted that the law does not provide necessary

2   guidance on the "dark patterns" theory that the FTC is aggressively prosecuting here.  As recently

3   as April 2023, the FTC conceded that the law (as the FTC interprets it) "does not provide clarity"

4   about processes central to the FTC's claims, "lacks specificity" about those processes, and leaves

5   businesses and courts "without guidance."  Ex. 1 at 24718.  For these reasons, the FTC has

6   admitted it must promulgate new rules to define the "negative option marketing" covered by

7   ROSCA because the current laws are problematically unclear, even for businesses "trying to

8   comply with the law."[2]  *Id.* at 24716, 24727.  At bottom, the FTC seeks to retroactively impose its

9   interpretation of as-yet unpromulgated rules on Amazon in clear violation of Amazon's due

10  process rights.  *See Fox*, 567 U.S. at 258 (the agency must provide "fair notice" of its standards

11  "prior to the [conduct] in question") (emphasis added).

12      Third, for related reasons, the FTC fails to plead an essential prerequisite for civil

13  penalties: that Amazon had "actual" or "fairly implied" knowledge that its alleged conduct

14  violated ROSCA.

15      The Complaint should be dismissed in its entirety.

16              **II.     LEGAL STANDARD**

17      When deciding a motion to dismiss, a court may consider, in addition to the complaint

18  itself, (1) "documents attached to the complaint," (2) "documents incorporated by reference," and

19  (3) "matters of judicial notice."  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  Such

20  matters of judicial notice include "publicly available guidance documents from a federal agency

21  whose authenticity is uncontested."  *Brown v. Natures Path Foods, Inc.*, 2022 WL 717816, at

22  *2 n.3 (N.D. Cal. Mar. 10, 2022).  A court need not accept conclusory allegations that contradict

23

24

25  [2] The FTC appears to use "negative option" to broadly refer to all services that automatically renew.  But a negative
    option feature is defined as "an offer or agreement to sell or provide any goods or services, a provision under which
26  the customer's silence or failure . . . to cancel the agreement is interpreted by the seller as acceptance of the offer."
    16 C.F.R. § 310.2(w).  While Amazon disputes that Prime fits this definition, the Court need not resolve that question
27  at this time because Prime satisfies ROSCA's requirements.

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS AMENDED COMPLAINT
(2:23-cv-0932-JHC) - 5

1   documents attached to or incorporated in the complaint, or matters subject to judicial notice.

2   *Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1115 (9th Cir. 2014).

3                           **III.    ARGUMENT**

4       **A.    Counts I-III Fail: Prime's Enrollment Flows Do Not Violate ROSCA[3]**

5                Whether an enrollment flow provides clear and conspicuous disclosures or obtains express

6   informed consent is a question of law.  *See Gershfeld*, 2023 WL 334015, at *1 (affirming

7   dismissal and holding that plaintiff "consented to the terms of the purchase, which were presented

8   in a clear and conspicuous manner"); *cf. In re Bassett*, 285 F.3d 882, 885 (9th Cir. 2002) (whether

9   terms are "conspicuous" under bankruptcy code is "a matter of law"—"subjecting

10  conspicuousness to fact-finding would introduce too much uncertainty").  Because the relevant

11  inquiry is objective, courts routinely dismiss cases like this on the pleadings.  *In re Vistaprint*

12  *Corp Mktg. & Sales Pracs. Litig.*, 2009 WL 2884727, at *8 (S.D. Tex. Aug. 31, 2009)

13  (dismissing claims when a "review of the webpages . . . described and quoted in the Complaint"

14  showed "clear, prominent, and conspicuous" disclosures); *McCarthy v. Amazon.com, Inc.*, 2023

15  WL 5793316, at *4 (W.D. Wash., Sept. 7, 2023) (dismissing complaint under "reasonable

16  consumer" standard where screenshots showed that plaintiff received "a free [book] title and a

17  trial membership," "exactly as" described "in Amazon's promotional language"); *Walkingeagle*,

18  2023 WL 3981334, at *3 (dismissing claims concerning auto-renewed subscriptions based on

19  complaint's screenshots); *Perkins v. New York Times Co.*, 2023 WL 3601489, at *2 (S.D.N.Y.

20  May 23, 2023) (same).  In fact, the Ninth Circuit has recently and repeatedly affirmed dismissal

21  of complaints brought under California's automatic-renewal law—a law the FTC has identified as

22  "[n]otable" for already requiring the kind of disclosures the FTC would enact through its future

23

24

25  _____

26  [3] Because the lone claim under the FTC Act simply borrows part of ROSCA's substantive standard and adds no additional basis of liability, for clarity and brevity's sake, the FTC Act claim (Count I) is analyzed concurrently with the equivalent ROSCA claim (Count III) and is generally referenced together with the ROSCA claims in this motion. However, the FTC Act claim also fails for additional reasons not raised on this motion.

27

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

proposed rule.[4]  *See Gershfeld*, 2023 WL 334015, at *1 (affirming dismissal); *Hall*, 857 Fed.

Appx. at 386–87 (same); *see also Rutter*, 2022 WL 1443336, at *7 (granting motion to dismiss).

This Court can and should do the same here.  Prime's enrollment flows not only

objectively satisfy ROSCA's plain text, but also utilize design features the FTC expressly

endorses.  Any further inquiry or fact-finding, including discovery, is unnecessary.  *See Allen v.

Shutterfly, Inc.*, 2020 WL 5517172, at *7 (N.D. Cal. Sept. 14, 2020) (denying discovery to

determine whether disclosures were conspicuous because "[t]he [defendant's] TOS and the

undisputed appearance of [defendant's] website speak for themselves").

### 1.    Amazon Clearly and Conspicuously Discloses All Material Terms

Count II alleges that Prime's enrollment flows do not clearly and conspicuously disclose

Prime's material terms.  To assess such claims, courts consider the "reasonable consumer."

*Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016); *see also* Ex. 3 at 60825 (terms are clear

and conspicuous if they are easily noticeable and understood by "ordinary consumers").  This

standard is "purely objective."  *Nanut v. Kimberly-Clark Corp.*, 89 F.3d 846, at *2 (9th Cir.

1996); *Lundbom v. Schwan's Home Serv., Inc.*, 2020 WL 2736419, at *5 (D. Or. May 26, 2020)

("Ninth Circuit precedent demonstrates that the 'reasonable consumer' standard is an objective

standard.").

"[T]he focus is on 'the typical buyer exercising ordinary caution,' not 'the most obtuse

consumer.'"  *Groeneveld Transp. Efficiency, Inc. v. Lubecore Int'l, Inc.*, 730 F.3d 494, 509

(6th Cir. 2013) (citations omitted).  In this case, the ordinary consumer is someone familiar with

e-commerce.  *See Nicosia v. Amazon.com, Inc.*, 384 F. Supp. 3d 254, 278 (E.D.N.Y. June 24,

2019), *aff'd*, 815 F. Appx. 612 (2d Cir. 2020) (ordinary internet users "know that there are terms

and conditions attached when they . . . order merchandise on Amazon . . . not because a loud,

---

[4] *See* Ex. 1 at 24722 ("Notable among these is California's negative option statute, which addresses disclosures, consent, and accessible and cost-effective cancellation.").  Indeed, the FTC has argued its proposed rule should not "have a significant economic impact" because "many state laws already require the same or similar disclosures" and has noted that California is thought to have the "most burdensome" of these laws.  *Id.* at 24731–32, 24722.

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS AMENDED COMPLAINT
(2:23-cv-0932-JHC) - 7

brightly-colored notice on the screen tells them so, but because it would be difficult to exist in our technological society without some generalized awareness of the fact").

The FTC alleges that Amazon failed to disclose two material terms: (1) the price of a Prime subscription; and (2) "the fact that it renews automatically."  Compl. ¶ 107.  Even a cursory review of the enrollment flows refutes the FTC's allegations.  As seen below, the flows clearly and conspicuously disclose Prime's material terms in at least six distinct ways:

<u>First</u>, each enrollment flow discloses the price and auto-renewal features on the same page where users click to enroll in Prime:



Compl., Attachment D; *see also id.*, Attachments A-C, E-F, G at 6, H at 6, I at 5, J at 9, K at 4, L at 7, M, N at 8, O at 5, P at 2, U at 5, V at 6.

Both the FTC and courts acknowledge that presenting terms on the same screen as the offer reflects a clear and conspicuous disclosure.  *See* Ex. 2 at 8 ("A disclosure is more likely to be effective if consumers view the disclosure and the claim that raises the need for disclosure . . . together on the same screen."); *In re Vistaprint*, 2009 WL 2884727, at *6 (terms being "provided on the same webpage in close proximity to the location where the consumer indicates his agreement" prevent those webpages from being deceptive as a matter of law); *Walkingeagle*, 2023 WL 3981334, at *4 (dismissing claims where "both checkout pages contain the offer terms").

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS AMENDED COMPLAINT
(2:23-cv-0932-JHC) - 8

Second, in each enrollment flow, the price and auto-renewal terms are located "directly on top of or below each [enrollment] button."  *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 517 (9th Cir. 2023); *see also Walkingeagle*, 2023 WL 3981334, at *4 ("[T]he terms are in visual proximity to request for consent to the offer.").



Compl., Attachment A; *see also id.*, Attachments B-F, G at 6, H at 6, I at 5, J at 9, K at 4, L at 7, M, N at 8, O at 5, P at 2, U at 5, V at 6.

This follows another best practice expressly recommended by the FTC.  *See* Ex. 2 at 14 ("In general, disclosures are more likely to be effective if they are provided in the context of the ad, when the consumer is considering the purchase.").  When considering comparable Amazon sign-up flows, courts have had no difficulty finding Amazon provided conspicuous notice.  *Heinz v. Amazon.com, Inc.*, 2023 WL 4466904, at *2 (E.D. Cal. July 11, 2023) (Amazon's terms were "conspicuous" where they were "contained in language directly below" action buttons).[5]

---

[5] Although *Heinz* involved a motion to transfer venue, the *Heinz* court made legal determinations that Amazon's webpages contained "conspicuous" disclosures and required the user's assent—the same issues in this case.  2023 WL 4466904, at *2.

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS AMENDED COMPLAINT
(2:23-cv-0932-JHC) - 9

1       <u>Third</u>, Prime's price and auto-renewal terms are disclosed "in regular sized, bold font"

2   against a white backdrop, making them easily viewable to the "reasonable user."  *Capps v.*

3   *JPMorgan Chase Bank, N.A.*, 2023 WL 3030990, at \*4 (E.D. Cal. Apr. 21, 2023).



16   Compl., Attachment H at 6; *see also id.*, Attachments A-B, D-F, G at 6, I at 5, J at 9, K at 4, L at

17   7, M, N at 8, O at 5, P at 2, U at 5, V at 6.

18       Again, this is exactly what the FTC recommends.  Ex. 3 at 60825 ("A visual disclosure,

19   by its size, contrast, location, the length of time it appears, and other characteristics, should stand

20   out from any accompanying text.").

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS AMENDED COMPLAINT
(2:23-cv-0932-JHC) - 10

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1       <u>Fourth</u>, Prime's price and auto-renewal terms are often disclosed not just once, but

2   multiple times before a consumer enrolls, giving users several opportunities to see the

3   information (Prime's price is highlighted in blue and auto-renewal term in green):



12  Compl., Attachment D; *see also id.*, Attachments A-C, E-F, G at 6, H at 6, I at 5, J at 9, K at 4, L

13  at 7, M, N at 8, O at 5, P at 2, U at 5, V at 6.

14      <u>Fifth</u>, Prime's price and auto-renewal terms are disclosed in terms and conditions that are

15  hyperlinked in distinct, blue font against a white backdrop.  *Id.*  Even if this hyperlink was

16  Amazon's only disclosure, that would satisfy the law.  In *Oberstein*, for instance, the plaintiffs

17  argued that Ticketmaster "employed 'dark patterns' in designing their TOUs to make them less

18  conspicuous," including by using inconspicuous hyperlinks and "text with reduced opacity."

19  2021 WL 4772885, at *2 (C.D. Cal. Sept. 20, 2021).  Based on a review of Ticketmaster's

20  website, the district court held that the terms were conspicuously disclosed even though, unlike

21  here, users had to click a hyperlink to view them.  *Id.* at *6.  The Ninth Circuit affirmed, holding

22  that providing hyperlinked terms of use on the same page where the consumer manifests assent

23  constitutes an objectively conspicuous disclosure.  *Oberstein*, 60 F.4th at 516–17

24  ("[A] reasonable user would have seen the notice and been able to locate the Terms via

25  hyperlink."); *see also Dohrmann v. Intuit, Inc.*, 823 F. Appx. 482, 484 (9th Cir. 2020) (material

26  terms accessible only by hyperlink were conspicuous, even when the hyperlink was the lightest

27  font on the screen and was clicked by less than .55% of users); *Arena v. Intuit Inc.*, 444 F. Supp.

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS AMENDED COMPLAINT
(2:23-cv-0932-JHC) - 11

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

3d 1086, 1092–93 (N.D. Cal. Mar. 12, 2020) (describing disclosures in Dohrmann that the Ninth Circuit deemed conspicuous).  The Prime flows are even clearer than this, as they not only provide a hyperlink, but also directly disclose each material term.

Sixth, in each enrollment flow (*see*, *e.g.*, Compl., Attachments A-F, G at 6, H at 6, I at 5, J at 9, K at 4, L at 7, M, N at 8, O at 5, P at 2, U at 5, V at 6), Prime's price and auto-renewal features are disclosed in simple and "plainly readable" text.  *Hooper v. Jerry Ins. Agency, LLC*, 2023 WL 3992130, at *3 (N.D. Cal. June 1, 2023).  Again, the FTC encourages this practice.  Ex. 3 at 60825 ("The disclosure should use diction and syntax understandable to ordinary consumers.").

Any one of these six features shows that Prime's enrollment flows satisfy the clear and conspicuous standard.  *See*, *e.g.*, *Hall*, 2020 WL 2303088, at *3 ("[B]ecause [the disclosure] was placed directly above the 'checkout now' button, . . . it was conspicuous."); *Walkingeagle*, 2023 WL 3981334, at *4 ("The disclosures also satisfy the clear and conspicuous requirement by using text with contrasting type as the surrounding text.").  Taken together, they conclusively demonstrate Prime's compliance with ROSCA and show that Count II fails as a matter of law.[6]

The Complaint ignores all of this.  Rather than focus on the Prime flows themselves—as the law requires—the FTC focuses on internal Amazon discussions about potential changes to the sign-up process that were either not implemented or implemented only temporarily.  *E.g.*, Compl. ¶¶ 201, 216.  Although the FTC spends nearly 20 pages of the Complaint establishing a step-by-step timeline of these changes, those allegations are categorically irrelevant.  For one thing,

---

[6] Prime's mobile enrollment flows are largely identical to the desktop versions and thus comply with ROSCA for the same reasons. The FTC argues otherwise because mobile device users must sometimes scroll to see Prime's terms. Compl. ¶ 78.  But the FTC's apparent anti-scrolling position—which would require miniscule text to be packed to fit the few square inches of a phone screen—has no basis in the law, let alone in the text of ROSCA.  Any reasonable mobile-device user knows about the limited space on a smartphone screen and the need to scroll.  *Cf. Loewen v. Lyft, Inc.*, 129 F. Supp. 3d 945, 957 (N.D. Cal. Sept. 15, 2015) (enforcing terms where consumers "had the opportunity to scroll through the terms prior to assent").  As the FTC has readily acknowledged, the need to scroll on mobile devices is practically unavoidable. Ex. 2 at 10 ("Optimizing a website for mobile devices . . . will not necessarily address the need for vertical scrolling.").  Moreover, when scrolling is required, Prime's mobile-device flows use "visual cues to encourage consumers to scroll to view the disclosure" – another practice the FTC encourages.  *Id.* at ii.  And even without scrolling, mobile users are shown a conspicuous blue link to Prime's terms and conditions.  *See* Compl., Attachment O at 5.

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS AMENDED COMPLAINT
(2:23-cv-0932-JHC) - 12

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

neither Amazon's subjective comments about the flows nor data about some consumers' subjective experiences have any bearing on the objective inquiry conducted on a motion to dismiss—which looks to the disclosure itself.  *Nanut*, 89 F.3d at *2; *Allen*, 2020 WL 5517172, at *7 (data "regarding the percentage of users that clicked the Terms and Conditions" was irrelevant to the "conspicuousness" inquiry, since the disclosures and "website speak for themselves").

Moreover, even if Amazon could have made the Prime terms even more conspicuous by adopting the changes that the FTC criticizes Amazon for rejecting, that would not establish that prior iterations of the flow were legally deficient.  *See Smith v. Check–n–Go of Illinois, Inc.*, 200 F.3d 511, 515 (7th Cir. 1999) ("No matter what a lender [does], a borrower could say that to his eyes the combination of color, typeface, spacing, size, style, underlining, capitalization, border, and placement . . . emphasized one disclosure over another.").  Allegations like the FTC's have been rejected many times over, often at the motion to dismiss stage.  Like the FTC, the plaintiff in Perkins alleged that the defendant's renewal terms were not clear and conspicuous because the terms were "not presented in an offsetting size, color or font from the surrounding text."  2023 WL 3601489 at *4.[7]  After reviewing screenshots of the disclosures, the court dismissed the claim.  Acknowledging that the newspaper could have implemented additional design features, the court found no legal requirement to do so.  *Id.* at *4 ("Perkins's argument would read, as a matter of law, certain typeface and design elements into the definition of 'conspicuous' that the legislature opted not to incorporate.").  In so ruling, Perkins added to the already extensive case law holding that dismissal is proper when screenshots demonstrate compliance with the plain language of consumer protection statutes—notwithstanding that additional design changes could have been made.  *See, e.g.*, *Hall*, 857 Fed. Appx. at 386–87; *Gershfeld*, 2023 WL 334015 at *1; *Rutter*, 2022 WL 1443336 at *6; *In re Vistaprint Corp Mktg. & Sales Pracs. Litig.*, 2009 WL

---

[7] *Perkins* involved North Carolina's Automatic Renewal Statute, which like ROSCA requires "clear and conspicuous" disclosures.  *Id.* at *1.  Moreover, like ROSCA, the North Carolina statute does not define "clear and conspicuous," requiring courts to apply the "natural and ordinary" meaning of that requirement.  *Id.* at *3.

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS AMENDED COMPLAINT
(2:23-cv-0932-JHC) - 13

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

2884727, at *8; *Walkingeagle*, 2023 WL 3981334, at *3.  This Court should dismiss Count II for the same reasons.

### 2.     Amazon Obtains Express Informed Consent as a Matter of Law

Counts I and III allege that Prime's enrollment flows fail to obtain consumers' "express informed consent."  Compl. ¶¶ 263, 275.[8]  The Ninth Circuit has held that "an unambiguous manifestation of assent" occurs when a website calls upon "the consumer [to] take[] some action, such as clicking a button or checking a box" after being told that "[b]y continuing past this page and clicking [the button], you agree to our Terms of Use."  *Oberstein*, 60 F.4th at 515–16.

Prime's enrollment flows easily satisfy this standard.  As a precondition to enrollment, every enrollment flow requires users to affirmatively click a button to enroll.  *See*, *e.g.*, Compl., Attachments A-F.  And on every page where this button appears, consumers are informed that clicking the button will enroll them in Prime and/or begin a free trial period.  *Id.*  Nearly every action button itself includes the words "Prime" and/or "Free Trial."  *Id.*  In addition, users can click that button only after viewing the disclosures discussed above and after being informed that "[b]y signing up, you acknowledge that you have read and agree to the Amazon Prime Terms and Conditions," or words to that effect.  *Id.*; *Walkingeagle*, 2023 WL 3981334, at *5 ("Given that a consumer is presented with the automatic renewal terms in a clear and conspicuous manner before having the option to start the trial . . . Defendants have satisfied the ARL's affirmative consent requirement.").

Indeed, federal courts have repeatedly affirmed that various iterations of Prime's enrollment flows obtain informed consent from consumers.  *Ekin v. Amazon Servs.*, LLC, 84 F. Supp. 3d 1172, 1173, 1177 (W.D. Wash. Dec. 10, 2014) (finding Amazon had "secure[d]

---

[8] As noted above, while Count I nominally arises under Section 5 of the FTC Act, it incorporates ROSCA's substantive "express informed consent" standard.  *Compare* Compl. ¶ 263 (alleging lack of "express informed consent" under Section 5 for Count I) *with id.* ¶ 275 (same under ROSCA for Count III).  The FTC Act claim (Count I) therefore cannot survive independent of Count III (ROSCA).  *See FTC v. Indiana Federation of Dentists,* 476 U.S. 447, 455 (1986) ("Once the Commission has chosen a particular legal rationale for holding a practice to be unfair . . . its decision must stand or fall on that basis."); Ex. 3 at 60825 ("[T]he FTC's cases for failure to disclose under Section 5 of the FTC Act are generally consistent with ROSCA.").

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS AMENDED COMPLAINT
(2:23-cv-0932-JHC) - 14

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

meaningful consent" to the Prime terms and conditions because the plaintiff "click[ed] a button next to text that state[d] 'you acknowledge that you have read and agree to the Amazon Prime Terms and Conditions'" (compelling arbitration)); *see also Adams v. Amazon.com, Inc.*, 2023 WL 4002534, at *1 (W.D. Va. June 14, 2023) (finding that user "agreed to Amazon's Conditions of Use" "by clicking on the continue button" to sign-in to Prime, when "underneath that button" the page disclosed that "By continuing, you agree to Amazon's Conditions of Use" (granting transfer)).  This Court should hold the same here for the same reasons.[9]

Unable to show that the Prime flows objectively violate the law, the FTC again attempts to short-circuit its pleading burden with citations to Amazon internal documents.  Specifically, the FTC alleges that Amazon estimated "███████████ Prime subscribers were 'unaware' that they had signed up for Prime" in 2020.  Compl. ¶ 178.[10]  Again, under the governing "objective" standard, such statistics are irrelevant when the flows are objectively compliant.  *Walkingeagle*, 2023 WL 3981334, at *3 ("[C]onsumer survey data is not required to evaluate the sufficiency of Defendants' disclosures.").  But even if that were relevant, the FTC tellingly declines to provide any of the necessary context for this estimate to be meaningful, such as the number of Prime subscribers who were aware of their membership during the same period.  By the FTC's own admission, it must prove that "a significant minority of reasonable customers" were misled.[11]  *See* FTC's Policy Statement on Deception at 1, 10, n.20, appended to *Cliffdale Assocs., Inc.*, 103

---

[9] The FTC's allegations concerning Prime Video fail for all the same reasons.  As the Complaint's exhibits show, and contrary to the FTC's conclusory allegations, consumers who enroll in Prime from the Prime Video homepage are informed they are enrolling in Prime, not just Prime Video.  Compl., Attachments P, U, V.  The flows also expressly identify the subscription "Plan" as "Prime," and describe the various benefits of a Prime membership beyond video streaming.  *Id.*  These flows, like the others at issue, conspicuously disclose Prime's price and auto-renewal terms and provide a hyperlink to Prime's full terms and conditions.  *Id.*  In addition, as the FTC acknowledges, Amazon provides a button labeled "change" that the user can click to subscribe to Prime Video instead of Prime.  *Id.; see also* Compl. ¶ 116(c).

[10] Amazon has applied limited redactions only to specific highly confidential information that the Court previously ordered to be kept under seal.  Dkt. 79.  Amazon is concurrently filing an unredacted copy of this motion under seal pursuant to Local Civil Rule 5(g)(2)(A).

[11] Although the "significant minority" standard is most commonly cited in deception cases under Section 5, the FTC has made clear that the same "ordinary" and "reasonable" consumer standards that govern deception cases also govern ROSCA.  Ex. 3 at 60825.

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS AMENDED COMPLAINT
(2:23-cv-0932-JHC) - 15

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

F.T.C. 110, 175 n.4 (1984); *see also Fanning v. FTC*, 821 F.3d 164, 171 (1st Cir. 2016).  But the FTC fails to allege facts showing this to be true.

If the FTC had pleaded the facts providing the necessary context, that context would show its claims to be legally deficient.  Considering Prime has tens of millions of subscribers in the United States and hundreds of millions of subscribers worldwide, an estimate of ███████ mistakenly enrolled members would show, at most, a low-single-digit percentage of confused consumers.[12]  Such low percentages, which are not a "significant minority," would only undermine the FTC's claims.  *See In the Matter of Telebrands Corp., TV Sav., LLC, & Ajit Khubani*, 140 F.T.C. 278, 291, 325 (2005) (concluding that "10.5% to 17.3%" of consumers being misled qualified as a "significant minority" under the FTC Act); *see also William H. Morris Co. v. Group W*, 66 F.3d 255, 258 (9th Cir. 1995) (nearly 3% misled is not a "significant portion" of consumers; reversing Lanham Act liability).

In sum, under an objective analysis of Prime's enrollment flows, Counts I-III fail as a matter of law.

## B.   Count IV Fails: Prime's Cancellation Flows Do Not Violate ROSCA

Count IV alleges that Prime's cancellation flows violate ROSCA.  But ROSCA does not require any particular cancellation method or require any specific number of "clicks" or "pages" for users to complete their cancellation.  All that ROSCA requires is the provision of a "simple mechanism[]" for consumers to stop recurring charges.  15 U.S.C. § 8403; *see also* Ex. 3 at 60826.  The Complaint acknowledges that Amazon does this in multiple ways, and each provides an independent basis for dismissing Count IV.

***Cancellation by Phone***.   The FTC concedes that Prime members can cancel their subscription "by contacting customer service," and does not allege that doing so is difficult.  Compl. ¶ 127.  Indeed, the FTC has recognized that, under current law, phone cancellation is inadequate

---

[12] Kallen Dimitroff, *Organized Prime: Should Amazon Be Responsible for Its Sellers' Criminal Activity?*, 100 Tex. L. Rev. Online 127, 133 (2022) ("Nearly half of all Americans have an Amazon Prime account."); *OSO Grp., Ltd. v. Bullock & Assocs., Inc.*, 2009 WL 2422285, at *2 n.3 (N.D. Cal. Aug. 6, 2009) (in deciding a motion to dismiss, courts may consider law review articles without taking judicial notice of them).

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS AMENDED COMPLAINT
(2:23-cv-0932-JHC) - 16

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

only when a company imposes certain "obstacles" not alleged here.  Ex. 1 at 24725; *see also id.* *(*"long telephone hold times"); *id.* at 24728 (telephone cancellation would not be "simple" under proposed rule if seller failed to provide consumers "a telephone number" to call or did not answer calls "during normal business hours").

       ***Online Cancellation.***  Prime members can also cancel their subscription online.  Although the FTC asserts in conclusory fashion that Prime's cancellation flows are not simple, its factual allegations and exhibits do not support that contention.  *See Walkingeagle*, 2023 WL 3981334, at *5 (granting motion to dismiss when "[f]rom the face of the complaint, it [was] apparent that [defendant's] mechanism for cancellation satisfies" statute's cancellation requirements).  Specifically, the FTC claims the cancellation flows are "labyrinthine" merely because they allegedly require up to six clicks and involve multiple webpages.  Compl. ¶ 127.  But any ordinary consumer is familiar with and can easily navigate a multi-click cancellation process.  *Perkins*, 2023 WL 3601489, at *8 (plaintiff's allegations that she was required to click through pages to determine how to cancel did "not describe a deception or the concealment of renewal policies").

       Again, the Court can review the cancellation flow for itself and see that it is objectively simple.  <u>First</u>, a Prime member can start the cancellation process by typing "Cancel Prime" or "Cancel Membership" in the search bar (Compl., Attachment T at 1), or by clicking a button titled "Manage Membership – End Membership" from the member's account page:



DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS AMENDED COMPLAINT
(2:23-cv-0932-JHC) - 17

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Id.*, Attachment Q at 1-2.[13]

Second, Amazon reminds members of their Prime benefits, informs them of their benefit usage, and identifies potential cost-saving alternatives to keep their membership.  *Id.* at 3-4. This information ensures that members cancel with complete and accurate information, rather than by mistake or misunderstanding.  Members who choose to cancel simply click the prominently labeled "Continue to Cancel" buttons:





[13] The FTC implausibly claims that these ingresses into Prime's cancellation flows are difficult to find.  Compl. ¶ 131.  Few online tools are more intuitive and commonly used than a search bar, which appears at the very top Amazon's home page and provides a direct ingress into Prime's cancellation flow.  *See id.,* Attachment T at 1.  And even if these ingresses were difficult to find, Prime members can use others.  To give just one example, members can also initiate the cancellation process by using Amazon's online chat feature.  *See* Compl. ¶ 139.

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS AMENDED COMPLAINT
(2:23-cv-0932-JHC) - 18

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Id.*  Such pre-cancellation offers are not only commonplace, but are also in consumers' best interest.  Indeed, outside of this litigation, the FTC agrees such practices are pro-consumer.  *See* Ex. 3 at 60826 & n.2 (noting that the FTC's enforcement policy "preserve[d] the opportunity for a business to make an offer to induce a consumer to stay" and that "[t]he moment at which a consumer is about to cancel may be the moment when they can get the best deal.").

Third, Amazon gives members the option to keep, cancel, or pause their membership. Compl., Attachment Q at 5.[14]

The FTC fails to articulate how this straightforward cancellation process, which reflects the FTC's own recommendations and widespread and widely understood industry practice, is not "simple" under ROSCA.  And that is because it is objectively easy.  The Court can (and should) disregard the FTC's conclusory allegations in favor of the clear and objective cancellation flows attached to the Complaint.  *Walkingeagle*, 2023 WL 3981334, at *6 (granting motion to dismiss where plaintiff's own complaint demonstrated defendant's compliance with statute's cancellation requirements).

Once more, the FTC attempts to substitute irrelevant, cherry-picked Amazon documents for the objective analysis that is required.  This time, the FTC rests on the allegation that ███ of Prime members who start the online cancellation process do not finish.  Compl. ¶ 163.  Again, the FTC fails to allege any of the necessary context to understand this claim, including the reasons *why* those members did not finish the cancellation flow.  This lack of explanation is particularly glaring because the Complaint itself establishes multiple reasons why those Prime members might legitimately choose to maintain their memberships.  *E.g.*, Compl. ¶ 143 (special offers).  To provide just a few examples, some members might reasonably change their mind about cancelling, and others may not have ever intended to cancel at all, and instead started the cancellation flow out of curiosity, or in the hope of receiving a discounted deal to stay on as a member.  Even accepting the Complaint's allegations as true, all the FTC has shown is that ███

---

[14] Prime's mobile cancellation flows are substantially similar to the desktop flows, (*see* Compl., Attachments R-S), and therefore comply with ROSCA for these same reasons.

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS AMENDED COMPLAINT
(2:23-cv-0932-JHC) - 19

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

members who *might* have considered cancelling their Prime membership decided not to. *Id.* ¶ 163. This allegation is entirely "consistent with," and thus cannot possibly undermine, the fact that Amazon provides simple cancellation procedures. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

\* \* \*

The Court does not need to indulge the FTC's unprecedented and self-contradictory claims and embark on a long legal struggle that will not change the legal determination this case requires. The analysis starts and ends with the Prime flows themselves. Because those flows clearly satisfy (if not greatly exceed) ROSCA's requirements, the Court can and should dismiss the Complaint.

## C.     Counts I-IV Fail: This Action Violates Amazon's Due Process Rights

Because Amazon satisfies ROSCA's plain terms, the FTC improperly seeks to rewrite those terms through litigation. Although no federal statute, rule, or case states that ROSCA or the FTC Act prohibits so-called "dark patterns," the Complaint assumes that such a prohibition exists, and baselessly charges that Amazon failed to comply. Compl. ¶¶ 2, 8, 176, 231. But "[a] fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden." *Fox*, 567 U.S. at 253. "[D]ue process requires that the government provide citizens and other actors with sufficient notice as to what behavior complies with the law." *United States v. AMC Ent., Inc.*, 549 F.3d 760, 768 (9th Cir. 2008); *see also id.* ("[T]hose regulated by an administrative agency are entitled to know the rules by which the game will be played.").

The FTC's effort to enforce a supposed prohibition against "dark patterns" violates Amazon's due process rights for two reasons: (1) the FTC's proposed "dark patterns" standard is unconstitutionally vague, *Butcher v. Knudsen*, 38 F.4th 1163, 1169 (9th Cir. 2022) ("Vague laws thus stand in basic opposition to the rule of law."); and (2) the FTC's sudden attempt to impose new legal obligations through litigation—after the FTC admitted its interpretation of the current

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS AMENDED COMPLAINT
(2:23-cv-0932-JHC) - 20

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

legal framework does not provide clarity—violates the due process "principle of fair warning," *Karem v. Trump*, 960 F.3d 656, 666 (D.C. Cir. 2020).

### 1.     The FTC's Proposed "Dark Patterns" Theory Is Unconstitutionally Vague

The FTC cannot maintain an enforcement action unless "a regulated party acting in good faith would be able to identify, with 'ascertainable certainty,' the standards with which the agency expects parties to conform." *General Elec. Co. v. EPA*, 53 F.3d 1324, 1328–29 (D.C. Cir. 1995); *Hunt v. City of Los Angeles*, 638 F.3d 703, 712–13 (9th Cir. 2011) (holding ordinance unconstitutional where "the line between allowable and prohibited sales [was] murky"); *United States v. Schaefer*, 2019 WL 5197552, at *3–*4 (D. Or. Oct. 15, 2019) (dismissing count charging possession of "explosives" given the "difficulty—and lack of clarity—in determining which electric matches are regulated and which are not"). These rules are even "more stringent" where—as here—agency action implicates "the right of free speech." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 499 (1982).[15] "When speech is involved, rigorous adherence to [these Due Process] requirements is necessary." *Fox*, 567 U.S. at 253–54. When the government's case fails this standard, dismissal at the pleading stage is warranted. *Ramsey v. Custom Tree Serv., Inc.,* 2007 WL 2827560, at *1 (M.D. Fla. Sept. 27, 2007) (granting motion to dismiss when statute was "unconstitutionally vague").

---

[15] Indeed, beyond its unconstitutional vagueness, the FTC's "dark patterns" theory raises serious questions under the First Amendment. The Complaint reveals that under the banner of prohibiting "dark patterns," the FTC actually seeks to restrict the content and manner of companies' communications with customers – even when those communications are not false or deceptive. *See* Compl. ¶ 231(b) (describing "interface interference" and faulting Amazon for "privileg[ing] certain specific information relative to other information"). Indeed, the FTC seems to target Amazon's speech *because* it may have a persuasive effect. *See id.* ¶ 231(f) (defining "Confirmshaming" as "emotive wording" that may "guilt users into selecting [a company's] favored option"); *see also id.* ¶ 257 (faulting the Prime cancellation flow for attempting "to persuade consumers to keep their Prime subscriptions"). But even in the commercial context, "the fear that speech might persuade provides no lawful basis for quieting it." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 576 (2011). Nor does the First Amendment allow the Government to force Amazon to adopt the Government's preferred mode or manner of speech. *See Expressions Hair Design v. Schneiderman*, 581 U.S. 37, 47 (2017) (holding that law posed "First Amendment problem" because it "regulate[d] *how* sellers may communicate their prices" to consumers, since a merchant's right to "convey [his] price[s] any way he pleases" was speech) (emphasis added). The Court can avoid these First Amendment problems here because Amazon's processes plainly comply with ROSCA (*see supra* §§ III.A-B) and because the FTC's theory violates due process (*see infra* § III.C).

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS AMENDED COMPLAINT
(2:23-cv-0932-JHC) - 21

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    That is precisely the situation here.  According to the Complaint, the term "dark patterns"

2  describes any "manipulative design elements that trick users into making decisions they would

3  not otherwise have made."  Compl. ¶ 8.  Putting aside the pejorative terms "dark" and "trick," this

4  definition implicates the entire practice of marketing.  A primary function of *any* commercial

5  advertising is to persuade consumers to purchase the products advertised—often through

6  strategically placed textual and visual displays or attention-grabbing fonts and colors.  *See*

7  *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.,* 173 F.3d 725, 735 (9th Cir. 1999)

8  (defining "commercial advertising or promotion" as speech made "for the purpose of influencing

9  consumers").  The same could be true of "campaigning with slogans, picketing with signs,"

10  public health initiatives (including COVID-19 vaccination campaigns), and a host of other

11  activities.  *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 577 (2011).

12    Indeed, it is unclear how the FTC could ever draw a discernible line between supposedly

13  unlawful "dark patterns" and permissible run-of-the-mill advertisements.  As the FTC

14  acknowledges, the design elements it characterizes as "dark patterns" are "ubiquitous" throughout

15  commercial websites.  Ex. 4 at 2.  The FTC itself promotes an email subscription service by

16  touting its benefits, without disclosing all of the terms of that subscription up front.  *See, e.g.*, Ex.

17  5.  The Complaint unsurprisingly does not specify what changes, if any, the FTC believes

18  Amazon must make to the Prime flows – a particularly telling failure given the FTC's request for

19  an injunction.  *See Hunt*, 638 F.3d at 711 (holding ordinance unconstitutional where it

20  "provid[ed] no limiting examples to illustrate" compliance).

21    Even if the FTC had adequately explained its theory, that would make no difference.

22  "Dark patterns" is significantly vaguer than standards that have been found void for vagueness.

23  *See, e.g.*, *AMC*, 549 F.3d at 767, 770 (finding that a requirement that theaters maintain full "lines

24  of sight" for disabled patrons was subject to multiple interpretations and violated due process

25  absent prior, additional agency clarification);  *Wollschlaeger v. Governor, Fla.*, 848 F.3d 1293,

26  1323 (11th Cir. 2017) (finding unconstitutionally vague a statute prohibiting doctors'

27

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS AMENDED COMPLAINT
(2:23-cv-0932-JHC) - 22

"unnecessary harassment" of patients, as "nothing in th[e] statute" offered "physician[s] any guidance" on how to comply with that "ambiguous" standard).

The fact that the term "dark patterns" does not appear in any statute or regulation further evidences this constitutional violation.  When a government's proposed standard turns on a "phrase [that] appears nowhere in any [current] statute or regulation," its enforcement "is of even *greater* concern from a due process perspective."  *Butcher*, 38 F.4th at 1175 (emphasis added); *see also Bynum v. U.S. Capitol Police Bd.*, 93 F. Supp. 2d 50, 59 (D.D.C. 2000) (finding unconstitutionally vague "an unwritten interpretation of [an agency] regulation" where "neither the statute *nor* the regulation expressly prohibit[ed]" the sanctioned conduct).  As evidenced by prior FTC enforcement actions, the existing ROSCA framework focuses on objectively false or misleading practices, including: (1) making affirmatively false or misleading statements to induce subscription,[16] (2) omitting entirely material facts about the subscription,[17] (3) hiding the identity of the business or subscription program the consumer is signing up for,[18] and (4) imposing substantial, unjustified hurdles to cancellation.[19]  The rare cases in which a court has found a ROSCA violation have similarly involved plainly misleading or coercive practices such as "enroll[ing consumers] by default in an auto-ship program despite no notice of enrollment"[20] and forcing consumers to navigate a telephone-only "six-part 'retention' sales script," in which they were told "that the subscriptions were non-refundable" and never "ask[ed] if they want [auto-

---

[16] *E.g.*, Complaint, *FTC v. Elite IT Partners, Inc.*, No. 2:19-cv-00125-RJS, ¶¶ 12–13 (D. Utah 2019) (falsely telling consumers their computers were infected with viruses to trick them into signing up for the defendants' ongoing computer technical support services).

[17] *E.g.*, Complaint, *FTC v. One Technologies, LP*, No. 3:14-cv-05066, ¶ 38 (N.D. Cal. 2014) ("[T]he mobile sign-up path did not contain any disclosures about the recurring charge.").

[18] *E.g.*, Complaint, *FTC v. Credit Bureau Ctr. LLC*, No. 17-cv-00194, ¶¶ 12–16, 21 (N.D. Ill. 2017) (using fake ads for rental properties and sending emails from a fake landlord to induce consumers to navigate to the defendant's website offering "free" credit scores to enroll consumers in an auto-renewing credit monitoring plan).

[19] *E.g.*, Complaint, *FTC v. Pact, Inc.*, No. 2:17-cv-01429, ¶ 29 (W.D. Wash. 2017) (to obtain information on how to stop recurring charges, consumers "had to click on a link to obtain the app's terms of service and then scroll through 4,400 words (or 43 screens on an iPhone 5S) of dense text").

[20] *FTC v. Cardiff*, 2020 WL 6540509, at *17 (C.D. Cal. Oct. 9, 2020).

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS AMENDED COMPLAINT
(2:23-cv-0932-JHC) - 23

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

renew] disabled."[21]  None of those practices is at issue in this case—the FTC does not and cannot allege that Amazon made any false statements or concealed any material information.  Rather, the FTC seeks to establish its "dark patterns" allegations through untested and unprecedented concepts such as "visual imbalance[s]" and "confirmshaming."  *See* Compl., ¶¶ 42, 64, 85, 87, 92, 195, 257.

At bottom, the FTC's vague gloss on an otherwise clear statute invites constitutional error. Statutes should be construed "in such a way as to *avoid* constitutional" vagueness questions, not insert them.  *Humanitarian L. Project v. Reno*, 205 F.3d 1130, 1137 (9th Cir. 2000) (emphasis added).  Because the Complaint rests on a fatally vague standard, it should be dismissed. *Ramsey,* 2007 WL 2827560, at *1 (granting motion to dismiss when statute was "unconstitutionally vague").

### 2.    The FTC Admits the Current Laws Fail to Provide Fair Notice

Even if the concept of "dark patterns" was not unconstitutionally vague, the FTC's enforcement here would still violate Amazon's due process rights.  Due process requires an agency to provide "fair notice" of its standards—even facially clear standards—"prior to the [conduct] in question."  *Fox*, 567 U.S. at 258; *id.* at 254 (finding agency enforcement unconstitutional due to lack of "fair notice," even "leaving aside any concerns about facial invalidity").  The FTC's effort to penalize the use of "dark patterns" violates Amazon's right to fair notice for at least three reasons.

<u>First</u>, the current legal framework—as the FTC wants to interpret it—is unclear.  Indeed, the FTC has admitted as much.  In an April 2023 notice of proposed rulemaking, the FTC asserted that ROSCA "*does not provide clarity* about how to avoid deceptive negative option disclosures and procedures," "*lacks specificity* about cancellation procedures and the placement, content, and timing of cancellation-related disclosures," and "requires marketers to provide 'simple mechanisms' for the consumer to stop recurring charges *without guidance* about what is

---

[21] *United States v. Mylife.com, Inc.*, 567 F. Supp. 3d 1152, 1160, 1169 (C.D. Cal. Oct. 19, 2021).

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS AMENDED COMPLAINT
(2:23-cv-0932-JHC) - 24

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

simple." Ex. 1 at 24718 (emphasis added).  The FTC specifically acknowledged that its proposed new rules—not existing law—will "address the deceptive use of so-called 'dark patterns'" "[b]y providing more specificity regarding the steps sellers must take to ensure they obtain consumer consent." *Id.* at 24727.  In the absence of these new rules, the FTC wrote, "gray areas in current statutes and regulations" render the current "rules of the road" unclear.  *Id.*

The FTC has known about this lack of clarity for many years.  In December 2019, over a dozen state attorneys general wrote to the FTC emphasizing that "ROSCA *lacks specificity* as to how informed consent should be obtained or how clear and conspicuous disclosures should be made" and urging that "[n]ew regulatory provisions are necessary to establish specific requirements [to] put companies on notice of the requirements they must follow." Ex. 6 at 2, 8 (emphasis added).  Likewise, in June 2021, FTC Commissioner Noah Joshua Philips explained that the FTC has "given *no guidance* to businesses about what to disclose."  Ex. 7 at 3 (emphasis added).

In fact, the FTC did not even try to define "dark patterns" until long after virtually all the conduct at issue had occurred and the Commission had begun investigating Amazon.  In February 2021, the FTC announced that it intended to hold its first-ever "Dark Patterns Workshop," where it would "*examine what dark patterns are.*"  Ex. 8 at 1 (emphasis added).  Ahead of this workshop, the FTC sought public comment on "[t]he definition of dark patterns."  Ex. 9 at 1.  It was not until late April 2021—over a month after the FTC issued the first civil investigative demand to Amazon—that the FTC ultimately held the workshop.  Ex. 10 at 1.[22]  Staff then did not release its report on the workshop until September 19, 2022.  Ex. 13.

In short, the FTC admits that the regulatory landscape—even to this day—does not provide fair notice of what "dark patterns" are, or of the proposition that "dark patterns" are prohibited by law.  *See Fox*, 567 U.S. at 257 (finding due process violation where agency could

---

[22] At the workshop itself, Acting Chair Slaughter defined "dark patterns" even more broadly than the Complaint does, as "user interface designs that manipulate consumers into taking unintended actions that may not be in their interest."  (Ex. 11 at 1.)

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS AMENDED COMPLAINT
(2:23-cv-0932-JHC) - 25

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

"point to nothing that would have given [the regulated party] affirmative notice" that its conduct was actionable "prior to being sanctioned"); *see also S.S. v. Microsoft Corp. Welfare Plan*, 2015 WL 11251744, at \*8 (W.D. Wash. Feb. 11, 2015) (dismissing claims because the "scope" of the statute "was not clarified until after" the alleged conduct).

Second, litigation is not a permissible way for an agency to enact new standards. It is the FTC's *proposed, future* rule—assuming it is legally adopted and upheld by courts—that would "address the deceptive use of so-called 'dark patterns.'" Ex. 1 at 24727. The FTC's premature attempt to legislate through litigation against Amazon deprives Amazon of fair notice. *See Bynum*, 93 F. Supp. at 59 (agency provided "neither fair notice nor fair warning" when it sought to enforce "an unwritten interpretation of [its] regulation, apparently announced for the first time in this litigation"); *see also Karem*, 960 F.3d at 666 ("[T]he principle of fair warning requires that novel standards announced in adjudications must not be given retroactive effect where they are unexpected and indefensible by reference to the law which had been expressed *prior to the conduct in issue*." (cleaned up) (emphasis in original)).

Third, that the FTC discovered "dark patterns" only a few years ago—several decades into the modern Internet era, 18 years after Amazon launched Prime, and 13 years after ROSCA was enacted—raises its own constitutional problems. As the FTC itself asserts, the basic negative-option marketing practices that it now attacks as unlawful have long been a mainstay of many lawful industries. Ex. 1 at 24733 (estimating that "approximately 106,000 business entities (20% [of all relevant businesses]) offer negative option features"). Moreover, in the FTC's estimation, "dark patterns" are "ubiquitous." Ex. 4 at 2. This widespread industry use of negative options and so-called "dark patterns" reinforces the importance of issuing formal rules *before* the FTC initiates enforcement actions. There is simply no way that any company, including Amazon, could possibly have had "fair notice" that such longstanding and everyday features of online commerce—be it traditional advertising or subscription enrollment processes—would have been unlawful. *See Keeffe v. Libr. of Cong.*, 777 F.2d 1573, 1583 (D.C. Cir. 1985) (holding that party could interpret government's "overly long silence as assent" absent "loud and clear advance

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS AMENDED COMPLAINT
(2:23-cv-0932-JHC) - 26

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

notice" of government's new interpretation of regulation); *see also In re Tam*, 808 F.3d 1321, 1341-42 (Fed. Cir. 2015), *aff'd sub nom. Matal v. Tam*, 582 U.S. 218 (2017) (the "public would have a hard time drawing much reliable guidance" where the law was "uncertain[]" on its "face" and in light of inconsistent agency action).

* * *

In sum, because the Prime enrollment and cancellation flows comply with the law, the FTC has been forced to premise its case on exceedingly broad and novel interpretations of ROSCA and Section 5—of which the FTC effectively concedes Amazon lacked constitutionally required notice. The agency improperly seeks to impose liability for conduct that the FTC's own guidance at the time did not address—much less prohibit. Accordingly, the claims must be dismissed.

### D.      Civil Penalties Are Unavailable as a Matter of Law

ROSCA's penalty provision (borrowed from the FTC Act) permits civil penalties only where a defendant violates ROSCA with "actual knowledge or knowledge fairly implied on the basis of objective circumstances." 15 U.S.C. § 45(m)(1)(A); 15 U.S.C. § 8404(a). This "actual knowledge" requirement creates a variation of the "ignorance-of-the law defense." *United States v. Dish Network L.L.C.*, 954 F.3d 970, 978 (7th Cir. 2020); *see also Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 583–84 (2010) (describing § 45(m) as providing "a mistake-of-law defense"). Thus, the FTC must allege facts demonstrating that Amazon knew of the specific prohibitions the FTC alleges here and that Prime's flows specifically violated them. *United States v. Dish Network LLC*, 256 F. Supp. 3d 810, 929 (C.D. Ill. 2017) (requiring knowledge both "of the existence of the rule" and that the party's "acts or omissions violated the rule").

The Complaint does not and cannot plead such facts. As discussed, no company could have known the Prime flows violated ROSCA's requirements as the FTC now interprets them. *See supra* § III.C. Moreover, the FTC cannot identify any then-existing administrative guidance or case law that addressed the specific "abusive practice" alleged by the FTC here. *United States*

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS AMENDED COMPLAINT
(2:23-cv-0932-JHC) - 27

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*v. Hopkins Dodge, Inc.*, 849 F.2d 311, 314 (8th Cir. 1988) (affirming summary judgment for defendant in FTC action).

The FTC's allegations regarding Amazon's supposed knowledge are woefully deficient. The FTC alleges that Amazon's "in-house and outside counsel [have] expertise with the FTC Act [and] ROSCA" and that "key decisionmakers . . . routinely conferred with such in-house counsel."  Compl. ¶ 259.  As an initial matter, no lawful, reasonable negative inference can be drawn from corporate employees regularly conferring with counsel, let alone an inference of deliberate lawbreaking.  *See Luck v. McMahon*, 2021 WL 4248887, at *14 (D. Conn. Sept. 17, 2021) (refusing plaintiff's requested "inference that Defendants [acted] for a dishonest purpose" based on allegation that defendants "sought the advice of their attorneys" prior to action).  Moreover, even accepting these allegations as true, they fall well short of the specificity demanded by ROSCA's penalty provision.  *See Dodge*, 849 F.2d at 314.  After all, no amount of "expertise" in the FTC Act or ROSCA could have provided "actual" knowledge of standards the FTC has never clearly articulated.  *See supra* § III.C.  In fact, the FTC's allegations support the conclusion that Amazon did *not* believe the Prime flows violated ROSCA.  *See Fed. Trade Comm'n v. DIRECTV, Inc.*, 2018 WL 3911196, at *18 (N.D. Cal. Aug. 16, 2018) (defendant's "investment of substantial resources in analyzing its operations, candidly identifying areas for improvement, and following through on a number of improvements does not support a finding that the company violated the FTC Act").

\* \* \*

Even if ROSCA could be fairly interpreted to prohibit the Prime enrollment and cancellation flows (it cannot), and even if ROSCA's requirements provided "fair notice" of this prohibition (they did not), considerable regulatory uncertainty forecloses any argument that Amazon actually knew or should have known that the Prime flows violated ROSCA.  For this reason alone, the FTC cannot obtain civil penalties.  15 U.S.C. § 45(m)(1)(A); 15 U.S.C. 8404(a).

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS AMENDED COMPLAINT
(2:23-cv-0932-JHC) - 28

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1

### IV.   CONCLUSION

2          Prime's enrollment and cancellation flows speak for themselves, objectively satisfy

3   ROSCA's requirements, squarely undermine the FTC's allegations, and are dispositive to this

4   Court's analysis.  Ignoring the actual Prime flows, the FTC relies on a vague theory to allege an

5   interpretation of law the FTC itself admits lacks specificity and fails to provide necessary

6   guidance to businesses.  Imposing civil liability in these circumstances would violate Amazon's

7   right to due process and fair notice.  The Complaint should be dismissed.

8

9          DATED this 18th day of October, 2023.

10

11          I certify that this memorandum contains 9,847 words, in compliance with the Local Civil

12   Rules.

13                                          DAVIS WRIGHT TREMAINE LLP

14                                          By s/ *Kenneth E. Payson*
                                                Kenneth E. Payson, WSBA #26369
15                                              James Howard, WSBA #37259
                                                920 Fifth Avenue, Suite 3300
16                                              Seattle, WA  98104-1610
                                                Telephone: (206) 622-3150
17                                              Fax: (206) 757-7700
                                                E-mail: kenpayson@dwt.com
18                                                      jimhoward@dwt.com

19

20                                          HUESTON HENNIGAN LLP

21                                          By s/ *Moez M. Kaba*
                                                John C. Hueston*
22                                              Moez M. Kaba*
                                                Joseph A. Reiter*
23                                              523 West 6th Street, Suite 400
                                                Los Angeles, CA  90014
24                                              Telephone: (213) 788-4340
                                                E-mail: jhueston@hueston.com
25                                                      mkaba@hueston.com
                                                       jreiter@hueston.com
26

27

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS AMENDED COMPLAINT
(2:23-cv-0932-JHC) - 29

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

COVINGTON & BURLING LLP

Stephen P. Anthony*
Laura Flahive Wu*
Laura M. Kim*
John D. Graubert*
850 Tenth Street, NW
Washington, DC  20001
Telephone: (206) 662-5105
E-mail: santhony@cov.com
          lflahivewu@cov.com
          lkim@cov.com
          jgraubert@cov.com


John E. Hall*
415 Mission Street, Suite 5400
San Francisco, CA  94105
Telephone: (415) 591-6855
E-mail: jhall@cov.com


Megan L. Rodgers*
3000 El Camino Real
Palo Alto, CA  94306
Telephone: (650) 632-4734
E-mail: mrodgers@cov.com

*Admitted pro hac vice

Attorneys for Defendant
AMAZON.COM, INC.

DEFENDANT AMAZON.COM, INC.'S
MOTION TO DISMISS AMENDED COMPLAINT
(2:23-cv-0932-JHC) - 30

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax