# EXHIBIT 7

**Dissenting Statement of Commissioner Noah Joshua Phillips**

*In the Matter of MoviePass, Inc.*
Commission File No. 1923000
June 7, 2021

The Commission's decision in this case to plead a novel theory of liability under the Restore Online Shoppers' Confidence Act of 2010 ("ROSCA") accomplishes nothing for consumers and reduces clarity for businesses seeking to follow the law. I respectfully dissent.

Congress enacted ROSCA to protect consumers from aggressive sales tactics on the Internet. In so doing, it expressed particular concern about the practice of reputable online retailers sharing their customers' information with third party sellers ("post-transaction third party sellers"), who in turn "used aggressive, misleading sales tactics" to charge millions of unwitting American consumers for goods and services.[1] Consumers didn't know what they were being charged for, and had no way to stop recurring charges. Congress found that these sales tactics undermined consumer confidence in the Internet and harmed the American economy.[2]

The crux of the statutory regime set forth in ROSCA is to require disclosures in two particular circumstances. The first deals specifically with post-transaction third party sellers that, unbeknownst to consumers, receive consumers' financial information and charge them for goods or services, making it impossible for consumers to figure out what they were being charged for or how to stop it.[3] Accordingly, under Section 8402, these post-transaction third party sellers cannot charge or attempt to charge a consumer's financial account for any good or service sold in an Internet transaction unless, before obtaining the consumer's billing information, they clearly and conspicuously disclose all material terms of the transaction. The statute defines these terms to include: a description of the goods or services being offered; the fact that such seller is not affiliated with the initial merchant; and the cost of such goods or services.[4] The post-transaction third party seller must also obtain express informed consent from the consumer. That scenario is not at issue here.

The second circumstance is when *any* seller uses a negative option feature, one of the aggressive tactics that Congress found third-party sellers employed. Here ROSCA also requires specific upfront disclosures. Under Section 8403, before charging a consumer for goods or services sold through a negative option feature,[5] the seller must: (i) clearly and conspicuously disclose "all

---

[1] 15 U.S.C. § 8401(4).

[2] 15 U.S.C. § 8401(3).

[3] As set forth in ROSCA's Findings and Declaration of Policy section, in exchange for "bounties" and other payments, hundreds of reputable online retailers and websites shared their customers' billing information, including credit card and debit card numbers, with third party sellers through a process known as "data pass". 15 U.S.C. § 8401. This practice is not at issue here.

[4] 15 U.S.C. § 8402(a).

[5] ROSCA incorporates the definition of negative option feature from the Telemarketing Sales Rule, 16 C.F.R. § 310.2(w):

1

material terms of the transaction" before obtaining the consumer's billing information; (ii) obtain express informed consent from the consumer before charging the consumer's financial account; and (iii) provide a simple mechanism for the consumer to stop the recurring charges.[6] Section 8403 does not define which terms must be disclosed, or make clear whether the disclosure obligation applies to the negative option feature or that feature as well as the underlying product.

In selling its services to consumers, MoviePass used a negative option feature. Consumers interacted directly with MoviePass and were aware that they were purchasing a service from MoviePass and were agreeing to recurring charges. The complaint does not allege that MoviePass failed to provide a simple mechanism to cancel the recurring charge or that any ROSCA violation took place for the majority of its consumers.

Liability here is instead predicated on the fact that, when it became apparent its business model was not working because some customers were going to too many movies, MoviePass began throttling high-volume users of its service and potentially reducing their ability to screen movies on a truly "unlimited" basis and failed to disclose this to new consumers. This is deception, and it violates Section 5 of the FTC Act. But the complaint also fashions MoviePass's failure to disclose affirmatively that it would throttle certain high-volume users of its service as a failure to clearly and conspicuously disclose all material terms of the transaction before obtaining the consumer's billing information under ROSCA.[7]

The novelty here is that, for the first time, the Commission is treating a deception about the characteristics of the underlying product—not the negative option feature—as a violation of ROSCA. To date, all the complaints filed by the Commission that allege ROSCA violations in the negative option context with a first party seller have involved defendants hiding a negative option feature, not obtaining express informed consent before charging the consumer, or failing to provide a simple mechanism for cancelling the recurring charge.[8] Instead of examining whether consumers understood the negative option feature, had given consent to that, or were able to cancel in a simple way, this complaint instead looks to the characteristics of the product that MoviePass sold to its some of its consumers.

The Commission is thus announcing that it may seek civil penalties against all businesses that use online negative option features where the Commission determines that there has been any material deception, whether relating to the negative option feature or a characteristic of the underlying product. I have several concerns with this approach.

---

Negative option feature means, in an offer or agreement to sell or provide any goods or services, a provision under which the customer's silence or failure to take an affirmative action to reject goods or services or to cancel the agreement is interpreted by the seller as acceptance of the offer.

[6] 15 U.S.C. § 8403.

[7] Likewise, this means that MoviePass did not obtain express informed consent.

[8] For example, in *FTC v. Triangle Media Corporation*, consumers were offered a free trial but were charged as much as $98.71 for the trial shipment, and also were enrolled in a negative-option continuity plan without their consent. Defendants also used deceptive order confirmation pages to trick consumers into ordering additional products, for which the defendants similarly charged consumers full price and enrolled them in negative-option plans. The defendants then made it difficult to cancel the continuity plan, stop or avoid the recurring charges, or obtain a refund. *FTC v. Triangle Media Corp.,* No. 18cv1388-MMA (NLS), 2018 WL 4051701 (S.D. Cal. Aug. 24, 2018).

*First*, pleading this new theory accomplishes nothing here. One benefit of establishing liability for rule violations is to obtain a penalty. But the corporate respondents are in bankruptcy and the individual respondents are settling these allegations in a no-money order. The relief we obtain today is no different than if we proceeded without a ROSCA count. Including a ROSCA count does nothing for consumers in terms of monetary or injunctive relief. That makes our announcement of sweeping new liability and introduction of a lack of clarity to the market about required disclosures, discussed below, ill-advised.

*Second*, while not facially-implausible, the statutory interpretation pushed by the Commission in this case is far from obvious. Section 8403 concerns "negative option marketing" and speaks specifically to, *inter alia*, "goods or services sold in a transaction effected on the Internet through a negative option feature". The negative option is the aggressive tactic that Congress was concerned about, and the statutory requirements of disclosure of terms, consent to collection of financial information, and simple cancellation protect specifically against its abuse. But there is nothing in the statute—and little, for that matter, in the legislative history—to suggest congressional intent to regulate disclosures about the products or services being sold, as opposed to disclosures about the negative option.

Section 8402, concerning third-party post-transaction sellers, provides an important contrast. There, Congress specifically delineated the terms that sellers were obligated to disclose, including defining "material terms" to include "a description of the goods or services". Section 8403, addressing negative options, does not include that language. (So the Commission reads the words into the statute.) A heightened requirement for post-transaction third party sellers makes sense. Where the consumer is not aware of the transaction at all, disclosures about the product are essential. But where the consumer is aware they are buying the product—but not the negative option that will continue charging them over time—the justification for compelling disclosure about the product is less clear.[9] What is more, because Congress specifies certain material terms in Section 8402 but not Section 8403, the scope of the obligation the Commission adopts—regarding "*all* material terms", whatever a majority of FTC Commissioners might deem those to be—would impose fewer disclosure obligations on post-transaction third party sellers than on businesses that use negative options. There is simply no justification for that.

*Third*, the Commission fails to announce today precisely what it believes are the "material terms", reducing clarity for businesses about their disclosure obligations. ROSCA creates affirmative disclosure obligations, but we have given no guidance to businesses about what to disclose.[10] Instead, the Commission now declares—in a settlement with two bankrupt companies and two individuals, none of whom will pay anything—that failing to disclose a product characteristic that the Commission later deems material exposes a business to substantial civil

---

[9] Other than in specific congressionally-delineated contexts, the FTC does not have civil penalty authority in the first instance for deception in the sale of products or services.

[10] In fact, the Commission did not even raise this issue in its recent rulemaking proposal concerning negative options. *See* Rules Concerning the Use of Prenotification Negative Option Plans, Advance Notice of Proposed Rulemaking and Request for Public Comment, 84 Fed. Reg. 52393, Oct. 2, 2019.

penalties. At the very least, before putting this new theory into action, the Commission should issue guidance to companies as to their disclosure obligations.

The Commission's decision dramatically to re-interpret ROSCA and expand liability comes just weeks after the Supreme Court's decision in *AMG Capital Management, LLC v. FTC*, which held that equitable monetary relief is not available under Section 13(b) of the FTC Act.[11] I believe Congress should amend the statute. But I do not agree that our loss of authority under one statute somehow creates authority elsewhere. While equitable relief is not intended to be penal, my colleagues have touted the triggering of rule penalties as an alternative because they deprive the defendant of money.[12] But even to the extent one takes the view that a rule violation occurred here, and leaving aside the lack of clarity the Commission today creates, the reader should keep in mind that the respondents are not paying any money here at all.

I therefore dissent.

---

[11] *See AMG Capital Mgmt., LLC v. FTC*, No. 19-508, 593 U.S. ___, slip op. (Apr. 22, 2021), https://www.supremecourt.gov/opinions/20pdf/19-508_l6gn.pdf.

[12] *See, e.g., The Consumer Protection and Recovery Act: Returning Money to Defrauded Consumers*, Hearing on H.R. 2668 Before the Subcomm. on Consumer Prot. and Com. of the H. Comm. on Energy and Com., 117th Cong. 3 (2021) (statement of Rebecca Kelly Slaughter, Acting Chairwoman, Fed. Trade Comm'n).