# Exhibit A

The Honorable John H. Chun

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>                          Plaintiff,<br><br>     v.<br><br>AMAZON.COM, INC., *et al.*,<br><br>                          Defendants. | No. 2:23-cv-0932-JHC<br><br>BRIEF *AMICI CURIAE* OF COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION, NETCHOICE, LLC, AND CHAMBER OF PROGRESS IN SUPPORT OF DEFENDANTS' MOTIONS TO DISMISS |

CCIA, *ET AL*. BRIEF *AMICI CURIAE*
IN SUPPORT OF MOTS. TO DISMISS
(2:23-cv-0932-JHC)

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

ARGUMENT ..........................................................................................................................1

    I.   THE AMENDED COMPLAINT ATTEMPTS TO IMPOSE CIVIL LIABILITY FOR ALLEGED FAILURE TO COMPLY WITH STANDARDS THAT ARE NOT BINDING LAW. ...................................................................................1

    II.  THE AMENDED COMPLAINT ATTEMPTS TO PUNISH AMAZON FOR ITS ONGOING EFFORTS TO STUDY AND ENHANCE THE CUSTOMER EXPERIENCE. ........................................................................................................4

CONCLUSION .......................................................................................................................5

CCIA, *ET AL*. BRIEF *AMICI CURIAE*
IN SUPPORT OF MOTS. TO DISMISS
(2:23-cv-0932-JHC) - i

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

# TABLE OF AUTHORITIES

**Cases**

*Black v. Arthur*
   18 F. Supp. 2d 1127, 1131 (D. Ore. 1998) ................................................................................ 2

*King v. Cty. of L.A.*
   885 F.3d 548, 555 (9th Cir. 2018) ............................................................................................ 2

*Nw. Envtl. Advocates v. U.S. E.P.A.*
   537 F.3d 1006, 1026-27 (9th Cir. 2008) .................................................................................. 2

*Tovar v. Midland Credit Mgmt.*
   Case 3:10-cv-02600-MMA-MDD, 2011 WL 1431988 (S.D. Cal. Apr. 13, 2011) .................... 2

**Statutues**

15 U.S.C. § 45(n) ........................................................................................................................ 3

**Rules**

*Negative Option Rule*
88 Fed. Reg. at 24716, 24718 (Apr. 24, 2023)(to be codified at 16 CFR Part 425) ................... 1, 2

Fed. R. Civ. P. 12(b)(6) ............................................................................................................ 1, 3

CCIA, *ET AL.* BRIEF *AMICI CURIAE*
IN SUPPORT OF MOTS. TO DISMISS
(2:23-cv-0932-JHC) - ii

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

# INTRODUCTION

COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION ("CCIA"),[1] NETCHOICE, LLC ("NetChoice"),[2] and CHAMBER OF PROGRESS[3] hereby respectfully submit this brief *amici curiae* in support of the Motion to Dismiss of Defendant Amazon.com, Inc. (Dkt. #84) and the Motion to Dismiss of Defendants Lindsay, Grandinetti, and Ghani (Dkt. #83).

# ARGUMENT

## I. THE AMENDED COMPLAINT ATTEMPTS TO IMPOSE CIVIL LIABILITY FOR ALLEGED FAILURE TO COMPLY WITH STANDARDS THAT ARE NOT BINDING LAW.

The Amended Complaint alleges a number of grievances but fails to lodge a claim for relief. The standards under which the Federal Trade Commission ("FTC") wishes, for purposes of this litigation, to hold Defendants liable are not codified in any statute or regulation. This case typifies the reason Fed. R. Civ. P. 12(b)(6) was created: it fails to set forth a legal theory by which the Court could find that any Defendant violated the law.

The conduct alleged in the Amended Complaint is the subject of an FTC rulemaking that commenced April 24, 2023.[4] Public comment on new proposed rules intended "to improve [the

---

[1] CCIA is an international, not-for-profit trade association representing a broad cross section of communications and technology firms. For more than 50 years, CCIA has promoted open markets, open systems, and open networks. CCIA members employ more than 1.6 million workers, invest more than $100 billion in research and development, and contribute trillions of dollars in productivity to the global economy. A list of CCIA members is available at https://www.ccianet.org/members.

[2] NetChoice is a national trade association of online businesses that share the goal or promoting free enterprise and free expression on the internet. NetChoice's members operate a variety of popular websites, apps, and inline services, including Meta, YouTube, and Etsy. NetChoice's guiding principles are promoting consumer choice, continuing the successful policy of "light-touch" internet regulation, and fostering online competition to provide consumers with many choices. A list of NetChoice's members is available at https://netchoice.org/about/#association-members.

[3] Chamber of Progress is a tech-industry coalition devoted to a progressive society economy, workforce, and consumer climate. Chamber of Progress backs public policies that build a fairer, more inclusive country in which the tech industry operates responsibly and fairly, and in which all people benefit for technological leaps. Chamber of Progress seeks to protect internet freedom and free speech, to promote innovation and economic growth, and to empower technology customers and users. A list of Chamber of Progress' partners is available at https://progresschamber.org/partners/.

[4] *Negative Option Rule*, 88 Fed. Reg. 24716 (Apr. 24, 2023) (to be codified at 16 CFR Part 425) (the "NPRM").

CCIA, *ET AL.* BRIEF *AMICI CURIAE*
IN SUPPORT OF MOTS. TO DISMISS
(2:23-cv-0932-JHC) - 1

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

FTC's] existing regulations for negative option programs," *id.*,[5] were due two calendar days ***after*** this lawsuit was filed. Dkt. #1.  In seeking comment on these proposed rules, the FTC admitted that "[t]he existing patchwork of laws and regulations does not provide industry and consumers with a consistent legal framework across media and offers." NPRM, 88 Fed. Reg. at 24718. The FTC also admitted, with regard to the Restore Online Shoppers' Confidence Act, 15 U.S.C. §§ 8401-8405 ("ROSCA"), which forms the legal predicate for every Count of the Amended Complaint, that "ROSCA lacks specificity about cancellation procedures and the placement, content, and timing of cancellation-related disclosures." *NPRM*., 88 Fed. Reg. at 24718. And yet the Amended Complaint seeks civil penalties, monetary relief, and a permanent injunction, Dkt. #67 p.91, for the alleged failure to appropriately place, explain, and plan the disclosure of how consumers may cancel Prime and Prime Video service. *E.g.*, Dkt. #67 ¶¶ 127-176.

The FTC also acknowledged in the NPRM that ROSCA "requires marketers to provide 'simple mechanisms' for the consumer to stop recurring charges ***without guidance about what is simple***." *Id.*, 88 Fed. Reg. 24718 (emphasis added). But in the Amended Complaint, the FTC alleges that the cancellation process for Prime and Prime Video is "not simple," Dkt. #67 ¶¶ 17, 22, despite having acknowledged just weeks earlier in the NPRM that "simple" is a statutory term that the agency has not explicated in any rule implementing ROSCA.

The cart is decidedly before the horse in this lawsuit. A potential liability clock—the possible accrual of civil penalties and other monetary relief (Dkt. #67 p.91)—has been started without the necessary legal predicate having been established. The *Negative Option Rule* proceeding is only partly underway.  Meantime, the Court and all parties are devoting significant

---

[5] The Court can take notice of the content of the NPRM as it considers the Motions to Dismiss, because it is a document in the public record that is not disputed as to its veracity. *E.g.*, *Black v. Arthur*, 18 F. Supp. 2d 1127, 1131 (D. Ore. 1998) ("courts are allowed to take judicial notice of matters in the general public record, including records and reports of administrative bodies and records of prior litigation, without converting a motion to dismiss into a motion for summary judgment"); *see also King v. Cty. of L.A.*, 885 F.3d 548, 555 (9th Cir. 2018) (taking notice of "undisputed and publicly available information displayed on government websites"); *Tovar v. Midland Credit Mgmt.*, Case 3:10-cv-02600-MMA-MDD, 2011 WL 1431988 (S.D. Cal. Apr. 13, 2011) (taking notice of, *inter alia*, FCC NPRM) (citing *Nw. Envtl. Advocates v. U.S. E.P.A.*, 537 F.3d 1006, 1026-27 (9th Cir. 2008) (taking judicial notice of statements in EPA "request for comments")).

CCIA, *ET AL.* BRIEF *AMICI CURIAE*
IN SUPPORT OF MOTS. TO DISMISS
(2:23-cv-0932-JHC) - 2

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

resources to litigating claims that as yet are unformed. In addition, permitting this case to proceed will create uncertainty for all online subscription arrangements, because it could embolden regulators to impose any substantive decision reached here on absent parties—regulation by way of litigation. The more prudent path—the result likely required by Fed. R. Civ. P. 12(b)(6)—is for the agency to complete its rulemaking and, if the resultant rules are adopted in accordance with prevailing administrative law, revisit the practices challenged in the Amended Complaint for determination whether the agency should pursue civil remedies.

It bears mention that the new, proposed rules under consideration in the *Negative Option Rule* proceeding fail to acknowledge that subscription plans, as well as the special offers that many companies offer in response to cancellation inquiries, provide considerable benefits to consumers. This failure imperils the agency's statutory authorization to seek redress for subscription plans and cancellation processes that it finds unsalutary. Section 5 of the FTC Act states that the FTC "shall have no authority … to declare unlawful an act or practice" unless it finds that the practice is "not outweighed by countervailing benefits to consumers or to competition." 15 U.S.C. § 45(n). The NPRM does not discuss the benefits of online retailers' practices—including the very practices denounced in the Amended Complaint—when they verify a consumer's intent to cancel a subscription and offer a sweetened deal, in the form of additional discounts or gifts, to dissuade a consumer from cancelling.[6] The NPRM likewise omits discussion of how subscription plans make provisioning cycles predictable and enable retailers to offer lower prices. The Amended Complaint makes the same omissions. The question arises whether the agency is attempting to obtain a ruling from the Court that its own record could not support. In any event, the Defendants are being held to an aspirational standard that is not codified in applicable law. Forcing Amazon and the three new, individual Defendants to defend these unformed claims seems both unjust and wasteful for the Court and all parties.

*Amici* therefore support the dismissal of the Amended Complaint as to all Defendants.

---

[6] The Amended Complaint alleges that, for example, "Amazon presented consumers with alternative or discounted pricing," Dkt. #67 ¶ 143, but fails to acknowledge that such offers can render challenged conduct lawful under Section 5. 15 U.S.C. § 45(n) ("not outweighed by countervailing benefits").

## II. THE AMENDED COMPLAINT ATTEMPTS TO PUNISH AMAZON FOR ITS ONGOING EFFORTS TO STUDY AND ENHANCE THE CUSTOMER EXPERIENCE.

This lawsuit rests in large part upon a misapprehension of a regulated entity's attempts to improve its retail transaction flows, creating an unfortunate precedent that could deter companies from cooperating with regulators and delivering better customer service. Both the apparent intent and the inevitable consequences of this effort should be rejected by the Court. Not only is this case devoid of applicable law, but it also might erode confidence in the nation's executive agencies.

The Amended Complaint lodges several allegations to the effect that Amazon often revised its webpages to make the subscription and cancellation processes clearer. *E.g.*, Dkt. #67 ¶¶ 53, 62, 118-19, 127. Perversely, the agency presents this conduct in a nefarious light, as if these improvements are grounds for imposing liability. If the FTC is attempting to obtain relief from Defendants on the basis that they took action to make the consumer experience ***better***, this case is an unfortunate instance of misplaced executive action. The aim of regulators should never be to sacrifice earnest improvement in the search for the nominal value of filing a lawsuit.

Even if some of the acknowledged improvements were made in response to an FTC inquiry, which is not true of every improvement, the Court is being asked to try Defendants for the offense of acceding to the advice of a federal agency. However the Amended Complaint may characterize the Amazon-FTC interactions ("substantial pressure", Dkt. #67 ¶ 127), the allegations include several instances in which Amazon voluntarily acted in the interests of consumers. And the Amended Complaint highlights three separate initiatives at the company to make the subscription and cancellation operations easier.[7] Not only do these allegations serve the balancing exercise that Section 5 requires prior to a finding of wrongdoing, they also raise concerns that Defendants are facing civil liability ***because*** they took ameliorative action. These concerns further support dismissal of this case.

The digital economy is the greatest engine for economic growth in perhaps a century. The technology and online services industry, like any industry, depends on regulatory certainty and a

---

[7] Dkt. #67 ¶¶ 188 ("Customer Frustrations Elimination Program"), 194 ("Project Lucent") 218 ("Clarity Working Group").

CCIA, *ET AL.* BRIEF *AMICI CURIAE*
IN SUPPORT OF MOTS. TO DISMISS
(2:23-cv-0932-JHC) - 4

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

stable legal rubric in order to succeed, innovate, and grow. Consumer confidence is a crucial component of stability. This lawsuit, for the reasons described herein, introduces uncertainty and discord to the online ecosystem, making companies second-guess the way that they interact with regulators and build their compliance programs. The risk of uncertainty is heightened when it appears that an agency intends to apply an adjudicated result as if it were an administrative rule of general application. The Court should be mindful of these unfortunate consequences on review of the Motions to Dismiss.

## CONCLUSION

For all these reasons, the Court should dismiss this case as to all Defendants.

DATED this 25th day of October 2023.

*I certify that this memorandum contains 1,755 words, in compliance with LCR 7(e)(3).*

By: */s/ Duncan C. Turner*
Duncan C. Turner, Esq., WSBA No. 20597
BADLEY MULLINS TURNER, PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
Tel. 206.621.6566
dturner@badgleymullins.com
***Liaison Counsel for Prospective Amicus Curiae***

Stephanie A. Joyce, Esq.*
Senior Vice President and Chief of Staff
COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION
25 Massachusetts Ave., NW, Suite 300C
Washington, DC 20001
Tel. 202.838.3173
stephaniejoyce@ccianet.org

*Application for Admission Pro Hac Vice Pending

CCIA, *ET AL*. BRIEF *AMICI CURIAE*
IN SUPPORT OF MOTS. TO DISMISS
(2:23-cv-0932-JHC) - 5

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686