HONORABLE JOHN H. CHUN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>      Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC., *et al.*,<br><br>      Defendants. | Civil Action No. 2:23-cv-0932-JHC<br><br>**MOTION OF THE CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA FOR LEAVE TO FILE A BRIEF AS AMICUS CURIAE**<br><br>NOTE ON MOTION CALENDAR: November 10, 2023 |

MOTION FOR LEAVE TO PARTICIPATE AS
AMICUS CURIAE
Case No. 2:23-cv-00932

Eimer Stahl LLP
224 S. Michigan Ave. Suite 1100
Chicago, IL 60604
(312) 660-7600

Pursuant to Local Rule 7 and Rule 7 of the Federal Rules of Civil Procedure, the Chamber of Commerce of the United States of America respectfully moves for leave to file a brief as *amicus curiae* in the above-captioned case in support of Defendants' Motion to Dismiss the Amended Complaint. The proposed *amicus* brief is attached as Exhibit A. In support of this motion, the Chamber states as follows:

1. The Chamber of Commerce of the United States of America ("Chamber") is the world's largest business federation. It represents approximately 300,000 direct members and indirectly represents the interests of more than three million businesses and professional organizations of every size, in every industry sector, and from every region of the country. An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts. To that end, the Chamber regularly files *amicus curiae* briefs in cases, like this one, that raise issues of concern to the business community.

2. The Federal Trade Commission ("FTC") alleges in this case that Defendants violated the Restore Online Shoppers' Confidence Act ("ROSCA") through their use of unlawful negative option features. *See* Amended Compl. ¶¶ 267–80. The Chamber proposes the attached brief because it has a strong interest in ensuring that businesses can continue lawfully using widespread marketing practices to fairly compete in the marketplace, as is consistent with ROSCA policy. *See* 15 U.S.C. §§ 8401(1)–(2).

3. "District courts may consider *amicus* briefs from non-parties concerning legal issues that have potential ramifications beyond the parties directly involved or if the *amicus* has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide." *Macareno v. Thomas*, 378 F. Supp. 3d 933, 940 (W.D. Wash. 2019) (quotation marks and citation omitted). "The 'classic role' of amicus curiae is to assist a court in a case of public interest by 'supplementing the efforts of counsel.'" *California v. U.S. Dep't of Interior,*

MOTION FOR LEAVE TO PARTICIPATE AS
AMICUS CURIAE
Case No. 2:23-cv-00932

Eimer Stahl LLP
224 S. Michigan Ave. Suite 1100
Chicago, IL 60604
(312) 660-7600

2

381 F. Supp. 3d 1153, 1163–64 (N.D. Cal. 2019) (citing *Miller-Wohl Co. v. Comm'r of Labor & Indus.*, 694 F.2d 203, 204 (9th Cir. 1982)). "There are no strict prerequisites that must be established prior to qualifying for amicus status; an individual seeking to appear as amicus must merely make a showing that his participation is useful or otherwise desirable to the court." *Id.* at 1164. "[G]enerally, courts have 'exercised great liberality' in permitting amicus briefs." *Id.* (citing *Woodfin Suite Hotels, LLC v. City of Emeryville*, No. C 06-1254 SBA, 2007 WL 81911, at *3 (N.D. Cal. Jan. 9, 2007)).

4. In this case, the legal issues surrounding dark patterns have tremendous "ramifications beyond the parties directly involved." *Macareno*, 378 F. Supp. 3d at 940. In fact, the FTC estimates that "106,000 entities currently offer[] negative option features," 88 Fed. Reg. 24716, 24733 (Apr. 24, 2023), all of which would be subjected to potential liability based on the same theories of unlawful conduct alleged here.

5. Moreover, and as explained more fully in the proposed brief, the FTC commenced rulemaking on negative option features four years ago. *See* 84 Fed. Reg. at 52393. Since the FTC initiated rulemaking, it has received more than 1,000 comments from the regulated community, including from entities collectively supporting hundreds of thousands of businesses. *See, e.g.*, International Franchise Association, Comment ID FTC-2023-0033-0856, at 1 (2023) (submitting comments in support of "approximately 790,492" franchised businesses), *available at* https://www.regulations.gov/comment/FTC-2023-0033-0856. There is thus no question that the ramifications of this case extend well beyond the parties directly named in this lawsuit.

6. As the world's largest business federation, the Chamber has "unique information and perspective" about negative option features that will assist this Court in resolving Defendants' Motion to Dismiss. *Macareno*, 378 F. Supp. 3d at 940. The Chamber provides this information mindful about the proper function of an *amicus* brief, "presenting ideas, arguments, theories, insights, facts, or data that are not

MOTION FOR LEAVE TO PARTICIPATE
AS AMICUS CURIAE
Case No. 2:23-cv-00932

Eimer Stahl LLP
224 S. Michigan Ave. Suite 1100
Chicago, IL 60604
(312) 660-7600

3

found in the briefs of the parties." *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 976 F.3d 761, 763 (7th Cir. 2020) (granting the Chamber's motion to file *amicus* brief because it had "provide[d] insight"). In its attached brief, the Chamber "provide[s] practical perspectives" and "empirical data" to this Court on the "consequences of potential outcomes" here. *Id.*

7.  In particular, if this Court accepts the FTC's novel theories of prohibited "dark pattern" practices, then hundreds of thousands of businesses would have no means to conform their conduct to the law. As a result of this tremendous uncertainty, and as explained more fully in the brief, a ruling in favor of the FTC would (1) inhibit investments and jobs, (2) discourage innovation, and (3) upend numerous business models. The Chamber provides this Court with academic analysis and practical perspectives from the business community to show why these outcomes would occur if the FTC's theories of prohibited conduct are accepted.

8.  In addition, and although these adverse effects would plague businesses of all sizes, small businesses would bear the brunt of these costs because they have fewer resources to devote to ensuring that they could comply with the vague standards of prohibited "dark patterns" proposed by the FTC. The Chamber provides this Court with information from the U.S. Small Business Administration and practical perspectives from the business community to show why this outcome would occur if the FTC's theories of prohibited conduct are accepted.

9.  Another consequence would be increased consumer costs and decreased consumer choices. The Chamber explains why in its brief by analyzing comments submitted to the FTC during its relevant rulemaking alongside an important analysis from the consulting firm McKinsey & Company.

10. Finally, the Chamber seeks to assist this Court by explaining the fair-notice concerns to the entire regulated community if this Court allows the FTC to sidestep

MOTION FOR LEAVE TO PARTICIPATE
AS AMICUS CURIAE
Case No. 2:23-cv-00932

Eimer Stahl LLP
224 S. Michigan Ave. Suite 1100
Chicago, IL 60604
(312) 660-7600

4

ongoing notice-and-comment processes. More specifically, numerous businesses have followed, studied, and submitted comments on the FTC's four-year-old rulemaking to amend its Negative Option Rule. *See* 88 Fed. Reg. at 24717 (amending 16 C.F.R. § 425.1). But rather than follow this mandatory process to give the regulated community fair notice of prohibited conduct, the FTC purports to ban so-called "dark patterns" with its vague definitions alleged in this lawsuit. The Chamber explains in its brief why this Court should not adopt an interpretation of ROSCA through the FTC's enforcement-by-litigation strategy here that effectively seeks a nationwide ban over indeterminate "dark patterns" or "manipulative design elements."

11.  Given its perspective and deep understanding of the issues involved in this case, the Chamber regularly files briefs as *amicus curiae* in cases involving the FTC. *See, e.g.*, *Axon Enterprise, Inc. v. Fed. Trade Comm'n*, 598 U.S. 175 (2023); *Fed. Trade Comm'n v. Microsoft Corp., et al.*, No. 23-15992, Dkt. 63 (9th Cir. 2023); *Illumina, Inc. et al. v. Fed. Trade Comm'*, No. 23-60167, Dkt. 118 (5th Cir. 2023); *Fed. Trade Comm'n v. Walmart, Inc.*, No. 1:22-cv-03372, Dkt. 32-1 (N.D. Ill. Sept. 6, 2022); *Fed. Trade Comm'n et al., v. Amgen Inc., et al.*, No. 1:23-cv-03053, Dkt. 148-1 (N.D. Ill. Aug. 28, 2023).

12.  The Chamber requested consent from the parties to filing a brief as *amicus curiae* in this case. Defendants consent. The FTC does not consent at this time.

13.  The Chamber thus respectfully requests that this Court grant it leave to file the proposed *amicus* brief submitted with this motion.

MOTION FOR LEAVE TO PARTICIPATE
AS AMICUS CURIAE
Case No. 2:23-cv-00932

Eimer Stahl LLP
224 S. Michigan Ave. Suite 1100
Chicago, IL 60604
(312) 660-7600

Dated:  October 25, 2023

Respectfully submitted,

s/ *Daniel D. Birk*
Daniel D. Birk
 *pro hac vice application pending*
John K. Adams
 *pro hac vice application pending*
EIMER STAHL LLP
224 South Michigan Ave.,
Suite 1100
Chicago, IL 60604
(312) 660-7600
dbirk@eimerstahl.com
jadams@eimerstahl.com

*Counsel for Amicus Curiae the
Chamber of Commerce of the United
States of America*

Jackson Wilder Maynard, Jr.
WSBA No. 43481
Maynard Law PLLC
111 21st Ave SW
Olympia, WA 98501
(850) 519-3495

*Local Counsel for Amicus Curiae the
Chamber of Commerce of the United
States of America*

MOTION FOR LEAVE TO PARTICIPATE
AS AMICUS CURIAE
Case No. 2:23-cv-00932

Eimer Stahl LLP
224 S. Michigan Ave. Suite 1100
Chicago, IL 60604
(312) 660-7600

6