The Honorable John H. Chun

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>　　Plaintiff,<br><br>　v.<br><br>AMAZON.COM, INC., *et al.*,<br><br>　　Defendants. | Case No. 2:23-cv-0932-JHC<br><br>**PLAINTIFF'S CONSOLIDATED OPPOSITION TO MOTIONS FOR LEAVE TO FILE AMICUS CURIAE BRIEFS** |

### INTRODUCTION

This consolidated opposition responds to the four motions for leave to file amicus curiae briefs, filed on October 25, 2023 (Dkt. Nos. 96, 98, 106, 107). As set forth below, because amici merely repeat Defendants' arguments, mischaracterize the Complaint, and are generally unhelpful to resolving Defendants' Motions to Dismiss, all four motions should be denied. Nonetheless, if the Court were to grant any motion, the amicus brief should be afforded little or no weight.

PLAINTIFF'S OPPOSITION TO MOTIONS
FOR LEAVE TO FILE AMICUS CURIAE BRIEFS
Case No. 2:23-cv-0932-JHC

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320

1

## ARGUMENT

"There is no inherent right to file an *amicus curiae* brief." *Long v. Coast Resorts, Inc.*, 49 F. Supp. 2d 1177, 1178 (D. Nev. 1999). Because the "vast majority of *amicus curiae* briefs are filed by allies of litigants and duplicate the arguments made in the litigants' briefs," courts may freely reject them. *Id.* Courts have discretion to accept amicus briefs "concerning legal issues that have possible ramifications beyond the parties directly involved in the case" or "if the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide." *Gabriel Techs. Corp. v. Qualcomm Inc.*, 2012 WL 849167, at *4 (S.D. Cal. Mar. 13, 2012) (citation and internal quotation marks omitted). However, an amicus brief should be rejected if it merely serves to "extend the length of the litigant's brief," *id.*, or "attempt[s] to bolster" a party's "existing positions," *United States v. Microsoft Corp.*, 2016 WL 11782815, at *2 (W.D. Wash. Nov. 14, 2016). Furthermore, amici should not raise arguments "unrelated to issues raised by" the parties. *Rocky Mountain Farmers Union v. Goldstene*, 2010 WL 1949146, at *2 (E.D. Cal. May 11, 2010). Ultimately, because an amicus curiae "participates solely for the benefit of the court," the "touchstone is whether the amicus is helpful." *Ashker v. Pfeiffer*, 2023 WL 4906766, at *2 (E.D. Cal. Aug. 1, 2023) (citations omitted); *see also Washington v. DeVos*, 2020 WL 12834538, at *1 (E.D. Wash. July 24, 2020) (denying motion for leave to file amicus brief because it "does not develop helpful argument beyond the parties' briefing").

**I.    The Motions for Leave to File Amicus Curiae Briefs Should All Be Denied.**

The motions for leave should be denied because the amicus briefs are not helpful. They fail to provide any "unique information or perspective" that is both relevant to the Court's consideration of the Motions to Dismiss and beyond what Defendants already argue. *Qualcomm*

PLAINTIFF'S OPPOSITION TO MOTIONS
FOR LEAVE TO FILE AMICUS CURIAE BRIEFS
Case No. 2:23-cv-0932-JHC

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320

2

1  *Inc.*, 2012 WL 849167, at *4. Defendants—Amazon, one of the world's largest companies, and
2  three high-level company executives—are represented by sophisticated counsel from three
3  separate law firms, all fully capable of advocating on Defendants' behalf. *Microsoft Corp.*, 2016
4  WL 11782815, at *2 (denying motion for leave because Defendants "have more than adequate
5  counsel and resources"). Instead of providing any helpful information, the proposed amici
6  merely regurgitate Defendants' existing arguments. Tellingly, Amazon is a member of or
7  otherwise associated with multiple amici, further supporting that they are not helpful. *See, e.g.,*
8  *Long*, 49 F. Supp. 2d at 1178 ("The term '*amicus curiae*' means friend of the court, not friend of
9  a party.") (citation omitted). Nor do the amicus briefs raise any genuine "legal issues" with
10 "ramifications beyond the parties directly involved in the case." *Qualcomm Inc.*, 2012 WL
11 849167, at *4.
12    Relatedly, amici are particularly unhelpful at the motion to dismiss stage because they
13 fail to provide any "unique information" to help the Court resolve the only live issue: the
14 sufficiency of the FTC's pleadings. *See Abadia-Peixoto v. U.S. Dep't of Homeland Sec.*, 277
15 F.R.D. 572, 576 (N.D. Cal. 2011) ("Because the motion to dismiss presents purely legal issues as
16 to the sufficiency of the pleadings, any unique perspectives or information the proposed *amici*
17 might have to offer are not especially pertinent at this juncture."). For these reasons, and the
18 reasons discussed below, the motions for leave should be denied.
19    **A.  CCIA, NetChoice, and Chamber of Progress (together, "CCIA") (Dkt. #96)**
20    CCIA's brief duplicates Defendants' arguments in an obvious attempt to "extend the
21 length" of the Motions to Dismiss. *Microsoft Corp.*, 2016 WL 11782815, at *2. This alignment
22 is hardly surprising, as Amazon is a member of both CCIA and NetChoice, and a "corporate
23

PLAINTIFF'S OPPOSITION TO MOTIONS  
FOR LEAVE TO FILE AMICUS CURIAE BRIEFS  
Case No. 2:23-cv-0932-JHC  

Federal Trade Commission  
600 Pennsylvania Avenue NW  
Washington, DC 20580  
(202) 326-3320  

3

partner" of Chamber of Progress.[1]  Because CCIA makes no arguments Defendants have not already, or that are otherwise helpful to resolving the Motions to Dismiss, the brief should be rejected.

First, CCIA argues the Complaint should be dismissed because the "standards" by which the FTC seeks "to hold Defendants liable are not codified in any statute or regulation," and the FTC purportedly "admitted" in the April 2023 notice of proposed rulemaking for the negative option rule that the legal framework is not always consistent.  *See* Dkt. #96-1 at 1-3.  This merely copies Defendants' incorrect argument that they lacked "fair notice" of the FTC's theory of liability.  *See, e.g.*, Dkt. #85 at 24 (referencing FTC statements from the April 2023 notice of proposed rulemaking).[2]  Furthermore, in apparent attempt to manufacture a "legal issue" with "possible ramifications" beyond this case, CCIA asserts "permitting this case to proceed will create uncertainty for all online subscription arrangements" because it may "embolden regulators to impose any substantive decision reached here on absent parties."  Dkt. #96-1 at 3.  But CCIA fails to explain how "regulators" could "impose" the denial of Defendants' Motions to Dismiss on "absent third parties," nor is this conclusory assertion at all helpful to determining whether the

---

[1] CCIA and NetChoice concede that Amazon is a member.  *See* Dkt. #96 at 2.  Chamber of Progress does not disclose its association with Amazon in the court filings, but lists Amazon as a "corporate partner" on its website.  *See Partners*, ProgressChamber.org, https://progresschamber.org/partners/ (last visited Nov. 3, 2023).

[2] CCIA also asserts "the *Negative Option Rule* proceeding fail[s] to acknowledge that subscription plans, as well as the special offers that many companies offer in response to cancellation inquiries, provide considerable benefits to consumers."  Dkt. # 96-1 at 3.  An amicus brief in litigation that does not involve the as-yet-incomplete negative option rule is not the appropriate place for the CCIA to advance its critiques of the proposed rule.  CCIA's contention that the "Complaint makes the same omissions"—i.e., failing to discuss the benefits of subscription plans—as the rulemaking is unrelated to any issue before the Court, because there is no requirement the Complaint make allegations about any such benefits to state a claim for relief.

PLAINTIFF'S OPPOSITION TO MOTIONS
FOR LEAVE TO FILE AMICUS CURIAE BRIEFS
Case No. 2:23-cv-0932-JHC

4

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320

FTC has plausibly alleged claims for relief.  In any case, as the FTC will further explain in its Opposition to the Motions to Dismiss, all of this is beside the point because Amazon concedes that ROSCA is clear.  *See* Dkt. #85 at 24 (asserting ROSCA is a "clear statute").

Second, CCIA argues the FTC is attempting to "punish" Defendants for "efforts to study and enhance the customer experience."  Dkt. #96-1 at 4.  This mischaracterizes the pleadings—in fact, the FTC alleges Defendants studied the problems, confirmed they existed, and then chose not to fix them because the violations generated too much revenue.  However, Defendants again already make this infirm argument.  *See* Dkt. #83 at 2.  CCIA's unsupported assertion that the lawsuit "creat[es] an unfortunate precedent that could deter companies from cooperating with regulators and delivering better customer service" and may "erode confidence in the nation's executive agencies" is similarly incorrect and unsupported (enforcing the law is hardly an unfortunate precedent), but, more importantly, irrelevant to whether the Complaint plausibly states claims for relief.  Dkt. #96-1 at 4.

**B.  Interactive Advertising Bureau ("IAB") (Dkt. #106)**

IAB's brief should be rejected for several reasons.  First, IAB spends the bulk of its brief ticking through various "manipulative design elements" and explaining why these are in fact "entirely legitimate, not nefarious."  Dkt. #106-1 at 4-5.  In doing so, IAB tries to position itself as an expert on user interface design.  But IAB is not presenting an expert report; rather, it is a

PLAINTIFF'S OPPOSITION TO MOTIONS
FOR LEAVE TO FILE AMICUS CURIAE BRIEFS
Case No. 2:23-cv-0932-JHC

5

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320

trade association of which Amazon Ads and Amazon Web Services are "General Members,"[3] a fact IAB tellingly fails to disclose.[4]

Second, IAB duplicates an argument already extensively made by Defendants. Specifically, in the face of substantial evidence demonstrating otherwise, they attempt to argue the Complaint fails to plausibly allege the Prime Enrollment and Cancellation flows violate the FTC Act or ROSCA. See Dkt. #106-1 at 7-8, 11.

Third, IAB spends several pages discussing "real-world examples" of online interfaces—but, critically, not Amazon's enrollment or cancellation flows—in an attempt to explain why various manipulative elements are not problematic *in other contexts*. See Dkt. #106-1 at 5-10. However, because these examples are entirely different from the Amazon interfaces at issue (two of three examples do not even involve negative option features), they are of no help in evaluating whether the FTC sufficiently pled that Amazon's specific flows violate the FTC Act and ROSCA.

Finally, IAB asserts the "FTC appears to seek to punish, ban, and regulate speech that it has not—and cannot—allege is untruthful by applying the label "dark patterns." Dkt. #106-1 at 12. This is simply false. The FTC is enforcing two federal law enforcement statutes (the FTC Act and ROSCA). However, no matter how infirm the argument, Amazon raised it already. See Dkt. #85 at 21 n.5 (asserting "the FTC's 'dark patterns' theory raises serious questions under the First Amendment").

---

[3] *See Member Directory*, IAB.com, https://www.iab.com/member-directory/#general (last visited Nov. 3, 2023).

[4] It is unclear what, if any, association Amazon has with the other amici, the Chamber of Commerce and Association of Corporate Counsel, because these entities do not publicize their member rolls.

PLAINTIFF'S OPPOSITION TO MOTIONS
FOR LEAVE TO FILE AMICUS CURIAE BRIEFS
Case No. 2:23-cv-0932-JHC

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320

6

**C. Association of Corporate Counsel ("ACC") (Dkt. #107)**

ACC's principal argument is the Complaint alleges, in essence, "Defendants must have known that their conduct was illegal" because they "talked with counsel." Dkt. #107-1 at 3. ACC further asserts, "[t]he fact that corporate employees confer with counsel thus cannot support any negative inference, let alone an inference of knowing and deliberate law violations." *Id.* There are two problems with this.

First, Defendants make the same argument in their Motions to Dismiss (relying on the same caselaw). *See* Dkt. #85 at 28 ("[N]o lawful, reasonable negative inference can be drawn from corporate employees regularly conferring with counsel, let alone an inference of deliberate lawbreaking"); Dkt. #83 at 16 ("[T]he FTC's civil-penalty demand relies entirely on the cynical, speculative, and baseless inference that because the Individuals consulted with counsel, they must have been advised that their conduct was illegal."). Thus, ACC adds nothing.

Second, and critically, ACC's argument is unhelpful because it mischaracterizes the pleadings to set up an argument the FTC did not make. The FTC did not and will not, either in opposition to the Motion to Dismiss or later in this case, argue that Defendants' having met with counsel establishes "actual knowledge of illegal conduct." Dkt. #107-1 at 1. The Complaint actually alleges Amazon "has extensive legal resources including in-house and outside counsel with expertise in the FTC Act, ROSCA, and the company's other consumer protection obligations" and "key decisionmakers Defendants Lindsay, Ghani, and Grandinetti routinely conferred with such in-house counsel," Dkt. #67 at ¶ 259—all of which plausibly supports, at the pleading stage, that Defendants knew or should have known of the *existence of ROSCA*. Knowledge of ROSCA is an element of civil penalties. *See* 15 U.S.C. § 45(m)(1)(A); *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 139 (4th Cir. 1996) ("A defendant is responsible

PLAINTIFF'S OPPOSITION TO MOTIONS
FOR LEAVE TO FILE AMICUS CURIAE BRIEFS
Case No. 2:23-cv-0932-JHC

7

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320

where a reasonable person under the circumstances *would have known of the existence of the provision* and that the action charged violated that provision.") (emphasis added). The Complaint appropriately alleges such knowledge of ROSCA based on Defendants' access to, and consultations with, counsel. *See, e.g.*, *United States v. Dish Network LLC*, 954 F.3d 970, 978 (7th Cir. 2020) ("A large national corporation with the ability to hire sophisticated counsel is deemed to know basic principles of agency law.").

Ultimately, to obtain civil penalties, the FTC must also prove Defendants had "actual knowledge or knowledge fairly implied on the basis of objective circumstances" that their actions violated ROSCA. 15 U.S.C. § 45(m)(1)(A). Many other Complaint allegations, including Defendants' repeated decisions to not fix Prime despite knowledge of nonconsensual enrollment and diverted cancellations, *see, e.g.*, Dkt. #67 at ¶¶ 177-231, demonstrate that Defendants knew their actions were illegal.

ACC also asserts the FTC has shown "broader hostility to the attorney-client relationship in the investigation and prosecution of this case." Dkt. #107-1 at 6. ACC's arguments are patently incorrect, but, more importantly, they have nothing to with whether the FTC has stated a plausible claim for relief and are therefore unhelpful.

**D. The Chamber of Commerce ("Chamber") (Dkt. #98)**

The Chamber of Commerce devotes nearly fifteen pages to a parade of horribles that will purportedly befall businesses and consumers if the Court adopts the FTC's supposed "theory that existing law incorporate an unarticulated ban on . . . 'dark patterns'"—including that such a "dark patterns" prohibition would create "tremendous market uncertainty, consumer harm, and fair-notice concerns." Dkt. #98-1 at 1. Two fundamental problems doom the Chamber's brief.

PLAINTIFF'S OPPOSITION TO MOTIONS
FOR LEAVE TO FILE AMICUS CURIAE BRIEFS
Case No. 2:23-cv-0932-JHC

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320

8

First, the Complaint does not assert a "theory" that dark patterns are prohibited by law. Rather, the Complaint alleges Defendants violated the FTC Act and ROSCA by failing to clearly and conspicuously disclose Prime's material terms, obtain consumers' express informed consent before charging, and provide simple cancellation mechanisms. The fact that Amazon used, among other strategies, manipulative design elements that are sometimes called "dark patterns" as instrumentalities to perpetrate these violations does not support the Chamber's assertion the Complaint "seeks to establish a nationwide ban on purported dark patterns." Dkt. #98-1 at 3.

Second, the Chamber's assertion that the Complaint seeks to impose a standard banning dark patterns is lifted directly from Defendants' Motions to Dismiss. *See, e.g.*, Dkt. #85 at 20; Dkt. #83 at 12-13. Thus, setting aside the gross mischaracterization of the FTC's position, the Chamber's amicus brief "merely extend[s] the length" of Defendants Motions to Dismiss, and so should be rejected. *Long*, 49 F. Supp. 2d at 1178.

## II. CONCLUSION

For the foregoing reasons, the FTC respectfully requests the Court deny the motions for leave to file amicus curiae briefs.

PLAINTIFF'S OPPOSITION TO MOTIONS
FOR LEAVE TO FILE AMICUS CURIAE BRIEFS
Case No. 2:23-cv-0932-JHC

9

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320

## LOCAL RULE 7(e) CERTIFICATION

I certify that this memorandum contains 2,352 words, in compliance with the Local Civil Rules.

Dated: November 6, 2023    /s/ Thomas Maxwell Nardini

EVAN MENDELSON (DC Bar #996765)
OLIVIA JERJIAN (DC Bar #1034299)
THOMAS MAXWELL NARDINI
(IL Bar #6330190)
Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320; emendelson@ftc.gov (Mendelson)
(202) 326-2749; ojerjian@ftc.gov (Jerjian)
(202) 326-2812; tnardini@ftc.gov (Nardini)

COLIN D. A. MACDONALD (WSBA # 55243)
Federal Trade Commission
915 Second Ave., Suite 2896
Seattle, WA 98174
(206) 220-4474; cmacdonald@ftc.gov (MacDonald)

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

PLAINTIFF'S OPPOSITION TO MOTIONS
FOR LEAVE TO FILE AMICUS CURIAE BRIEFS
Case No. 2:23-cv-0932-JHC

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320

10