The Honorable John H. Chun

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FEDERAL TRADE COMMISSION,

Plaintiff,

v.

AMAZON.COM, INC. *et al.*,

Defendants.

No. 2:23-cv-0932-JHC

**AMAZON'S REPLY ISO MOTION TO DISMISS AMENDED COMPLAINT**

**NOTED ON MOTION CALENDAR: December 8, 2023**

**ORAL ARGUMENT REQUESTED**

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................................... 1

II. ARGUMENT ............................................................................................................. 4

  A. Count II Fails: Prime's Terms Are Clearly and Conspicuously Disclosed ......... 4

    1. Courts Dismiss Cases Involving Less Conspicuous Disclosures ............ 6

    2. The FTC's Cases Are Facially Inapposite ............................................. 11

    3. The FTC's Novel Interpretation of ROSCA's "Billing
      Information" Requirement Lacks Merit ................................................ 14

  B. Counts I and III Fail: Amazon Obtains Informed Consent ................................ 14

  C. The FTC Cannot Save Its Claims Based on Subjective Commentary by
    Amazon Employees ......................................................................................... 19

  D. Count IV Fails: Prime's Cancellation Mechanisms Are Objectively Simple ..... 21

  E. Counts I–IV Fail: This Action Violates Amazon's Due Process Rights ............ 22

    1. The FTC's Disavowal of Its "Dark Patterns" Theory Exacerbates
      the Due Process Violations ................................................................... 23

    2. No Matter How Labeled, the FTC's Theory Is Unconstitutionally
      Vague ................................................................................................... 24

    3. The FTC Deprived Amazon of Fair Notice ........................................... 24

  F. Civil Penalties Are Unavailable as a Matter of Law .......................................... 27

III. CONCLUSION ....................................................................................................... 27

AMAZON'S REPLY ISO MOTION TO DISMISS
(2:23-cv-0932-JHC) - i
4869-7509-4422v.10 0051461-005818

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Adams v. Amazon.com, Inc.*,
  2023 WL 4002534 (W.D. Va. June 14, 2023) ...........................................................14, 15, 16

*Allen v. Shutterfly*,
  2020 WL 5517172 (N.D. Cal. Sept. 14, 2020) ...........................................................19

*Applebaum v. Lyft, Inc.*,
  263 F. Supp. 3d 454 (S.D.N.Y. 2017)...........................................................18

*Arizona State Bd. For Charter Sch. v. U.S. Dep't of Educ.*,
  464 F.3d 1003 (9th Cir. 2006) ...........................................................14

*BBK Tobacco & Foods LLP v. Cent. Coast Agric. Inc.*,
  615 F. Supp. 3d 982 (D. Ariz. 2022) ...........................................................20

*Berger v. City of Seattle*,
  569 F.3d 1029 (9th Cir. 2009) ...........................................................24

*Berman v. Freedom Fin. Network*,
  30 F.4th 849 (9th Cir. 2022) ...........................................................2, 11, 12, 17

*Bernardino v. Barnes & Noble Booksellers, Inc.*,
  2017 WL 7309893 (S.D.N.Y. Nov. 20, 2017)...........................................................24

*Butcher v. Knudsen*,
  38 F.4th 1163 (9th Cir. 2022) ...........................................................3, 22

*Chabolla v. ClassPass Inc.*,
  2023 WL 4544598 (N.D. Cal. June 22, 2023) ...........................................................4, 18, 19

*Cole v. U.S. Cap.*,
  389 F.3d 719 (7th Cir. 2004) ...........................................................12, 13

*Crown Pac. v. Occupational Safety & Health Rev. Comm'n*,
  197 F.3d 1036 (9th Cir. 1999) ...........................................................24

*Cullinane v. Uber Techs., Inc.*,
  893 F.3d 53 (1st Cir. 2018)...........................................................18

*Desertrain v. City of Los Angeles*,
  754 F.3d 1147 (9th Cir. 2014) ...........................................................26

AMAZON'S REPLY ISO MOTION TO DISMISS
(2:23-cv-0932-JHC) - ii
4869-7509-4422v.10 0051461-005818

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Ebner v. Fresh, Inc.*,
  838 F.3d 958 (9th Cir. 2016) ....................................................................................20

*Ekin v. Amazon Servs., LLC*,
  84 F. Supp. 3d 1172 (W.D. Wash. 2014) ...................................................2, 14, 15

*F.C.C. v. Fox Television Stations, Inc.*,
  567 U.S. 239 (2012) ...........................................................................................22, 25

*Fanning v. FTC*,
  821 F.3d 164 (1st Cir. 2016) ...................................................................................2, 3

*FTC v. DIRECTV, Inc.*,
  2018 WL 3911196 (N.D. Cal. Aug. 16, 2018) .......................................................19

*FTC v. Dluca*,
  2018 WL 11373184 (S.D. Fla. May 3, 2018) ..........................................................26

*FTC v. Wyndham*,
  799 F.3d 236 (3d Cir. 2015) .............................................................................25, 26

*Gaker v. Citizens Disability, LLC*,
  2023 WL 1777460 (D. Mass. Feb. 6, 2023) .........................................................8, 13

*Gershfeld v. Teamviewer*,
  2021 WL 3046775 (C.D. Cal. June 24, 2021) .........................................................10

*Gershfield v. Teamviewer*,
  2023 WL 334015 (9th Cir. Jan. 20, 2023) ...........................................................6, 10

*Hall v. Time, Inc.*,
  857 Fed. Appx. 385 (9th Cir. May 24, 2021) .............................................................6

*Hoffman Const. Co. v. Occupational Safety & Health Rev. Comm'n*,
  546 F.2d 281 (9th Cir. 1976) ...................................................................................24

*Hunt v. City of Los Angeles*,
  638 F.3d 703 (9th Cir. 2011) ...................................................................................24

*In re Ring LLC Privacy Litig.*,
  2021 WL 2621197 (C.D. Cal June 24, 2021). .........................................................19

*In re Vistaprint Corp. Mktg. & Sales Practices*,
  2009 WL 2884727 (S.D. Tex. Aug. 31, 2009) ....................................................4, 5, 6

*In the Matter of Telebrands Corp., TV Sav., LLC, & Ajit Khubani*,
  140 F.T.C. 278 (2005) ..............................................................................................20

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Karem v. Trump*,
    960 F.3d 656 (D.C. Cir. 2020) ................................................................26

*Keebaugh v. Warner Bros. Ent. Inc.*,
    2022 WL 7610032 (C.D. Cal. Oct. 13, 2022) ............................................4

*Keeffe v. Libr. of Cong.*,
    777 F.2d 1573 (D.C. Cir. 1985) ..............................................................22

*Lee v. Intelius Inc.*,
    737 F.3d 1254 (9th Cir. 2013) ..........................................................14, 18

*Lopez v. Dave Inc.*,
    2022 WL 17089824 (N.D. Cal. Nov. 21, 2022) ......................................8, 18

*Nguyen v. Barnes & Noble Inc.*,
    763 F.3d 1171 (9th Cir. 2014) ..........................................................8, 18

*Nw. Immigrant Rts. Project v. Sessions*,
    2017 WL 3189032 (W.D. Wash. July 27, 2017) ......................................3, 23

*Oberstein v. Live Nation Ent., Inc.*,
    60 F.4th 505 (9th Cir. 2023) ..............................................................6, 9

*PMD Produce Brokerage Corp. v. USDA*,
    234 F.3d 48 (D.C. Cir. 2000) ..........................................................26, 27

*Price v. Stevedoring Servs. of Am., Inc.*,
    697 F.3d 820 (9th Cir. 2012) ................................................................26

*Rubio v. Capital One*,
    613 F.3d 1195 (9th Cir. 2010) ..............................................................19

*S.S. v. Microsoft Corp. Welfare Plan*,
    2015 WL 11251744 (W.D. Wash. Feb. 11, 2015) ......................................25

*Skilling v. United States*,
    561 U.S. 358 (2010).............................................................................23

*United States v. AMC Ent., Inc.*,
    549 F.3d 760 (9th Cir. 2008) ..........................................................22, 27

*United States v. Anzalone*,
    766 F.2d 676 (1st Cir. 1985) ................................................................25

*United States v. Approximately 64,695 Pounds of Shark Fins*,
    520 F.3d 976 (9th Cir. 2008) ..........................................................24, 25

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*United States v. Dish Network LLC*,
    256 F. Supp. 3d 810 (C.D. Ill. 2017) ........................................................27

*United States v. Moss*,
    872 F.3d 304 (5th Cir. 2017) ...................................................................25

*United States v. MyLife.com, Inc.*,
    567 F. Supp. 3d 1152 (C.D. Cal. 2021) ................................................3, 22

*United States v. Sattar*,
    272 F. Supp. 2d 348 (S.D.N.Y. 2003)........................................................23

*United States v. Trident Seafoods Corp.*,
    60 F.3d 556 (9th Cir. 1995) ...............................................................23, 26

*Viveros v. Audible*,
    2023 WL 6960281 (W.D. Wash. Oct. 20, 2023) .............................1, 6, 7, 8

*Walkingeagle v. Google*,
    2023 WL 3981334 (D. Or. June 12, 2023) ...................................... *passim*

*William H. Morris Co. v. Group W*,
    66 F.3d 255 (9th Cir. 1995) .......................................................................20

**Federal Statutes**

15 U.S.C. § 8403(1) ...........................................................................................1

15 U.S.C. § 8403(2) ...........................................................................................2

15 U.S.C. § 8403(3) .......................................................................................3, 21

18 U.S.C. § 1464 .........................................................................................22, 25

**Regulations**

84 Fed. Reg. 52393 ............................................................................................3

84 Fed. Reg. 52395 .......................................................................................3, 26

84 Fed. Reg. 52396 ..........................................................................................25

**Constitutional Provisions**

U.S. Const., amend. I .......................................................................................21

**Other Authorities**

156 Cong. Rec. S8053-01 .................................................................................14

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# I.   INTRODUCTION

Just months before filing this lawsuit, the FTC publicly acknowledged that ROSCA fails to "address the deceptive use of so-called 'dark patterns,'" "does not provide clarity," "lacks specificity," and leaves businesses "without guidance." Dkt. 87-1 at 24718, 24723, 24727–28. The FTC then brought this case, alleging Amazon used "dark patterns" to violate ROSCA, Dkt. 1 ¶ 2; Dkt. 67 ¶ 2, and touting this action as the latest to "challenge alleged dark digital patterns."[1] After being confronted with the due process violations shown by the conflict between its litigation position and prior public statements, the FTC now says it has "*not* asserted a 'dark patterns' theory." Dkt. 126 ("Opp.") 44 (emphasis added).  Regardless of how labeled, the FTC's theories fail to overcome what the screenshots show: Prime's flows easily satisfy ROSCA's three objective requirements.

First, Amazon "clearly and conspicuously" disclosed Prime's material terms.  15 U.S.C. § 8403(1).  The FTC fails to distinguish multiple cases that applied the same standard and held similar disclosures were legally compliant, including Judge Robart's order granting a motion to dismiss just months ago.  *Viveros v. Audible*, 2023 WL 6960281, at *7 (W.D. Wash. Oct. 20, 2023).  These cases expose the FTC's opposition arguments for what they are: subjective critiques and attempts to impose unpromulgated rules with no basis in ROSCA.  For example, the FTC contends that Prime's terms are disclosed in "small-print boilerplate," Opp. 9, but Judge Robart found that identical disclosure language, in similarly sized font and positioned near the bottom of a webpage, "plainly satisfie[d]" the same "clear and conspicuous" disclosure requirement that is in ROSCA.  *Viveros*, 2023 WL 6960281, at *7.  The FTC also complains that Prime's disclosures are "below" the enrollment button instead of "above," but the court in *Walkingeagle v. Google* held that disclosures like Prime's "on the same page" as the enrollment button "satisfy the legal requirements."  2023 WL 3981334, at *4, 6 (D. Or. June 12, 2023). This Court can compare Prime's disclosures to those held lawful in these cases and see the

---

[1] https://www.ftc.gov/business-guidance/blog/2023/06/ftc-alleges-amazon-enrolled-people-prime-without-consent-thwarted-members-attempts-cancel.

AMAZON'S REPLY ISO MOTION TO DISMISS
(2:23-cv-0932-JHC) - 1
4869-7509-4422v.10 0051461-005818

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

similarities for itself.  *See* § II.A.1 *infra*.  By contrast, the FTC cites inapposite cases involving arbitration terms provided *only* via hyperlink, *see* p. 6, 13–15 *infra*, and disclosures "barely legible to the naked eye."  *Berman v. Freedom Fin. Network,* 30 F.4th 849, 859 (9th Cir. 2022).

Recognizing the lack of support for its position, the FTC argues that Prime's disclosures are inconspicuous not because of their words or presentation, but instead because the "context" makes it unlikely consumers will read them.  This argument is untethered from the objective review prescribed by law and omits context.  Customers have ample "reason to read" Prime's terms during checkout because that is when customers weigh shipping options and could benefit from Prime's fast and free shipping.  Opp. 9.  The flows are also replete with large and bolded references to "Prime" and "Free Trial"; enrollment boxes that say "Sign up for Prime," "Start Your 30-Day Prime Free Trial," or words to that effect; and prominent disclosures of Prime's terms.  No reasonable consumer would interpret the flows as anything other than offers to become a Prime member.

Second, Amazon obtained customers' "express informed consent" by requiring them to click an enrollment button next to text stating that doing so meant they agreed to Prime's terms. 15 U.S.C. § 8403(2).  Again, the Court can compare Prime's flows to those found sufficient as a matter of law, including Amazon webpages that used similar features.  *See, e.g.*, *Ekin v. Amazon Servs.*, *LLC*, 84 F. Supp. 3d 1172, 1173, 1177 (W.D. Wash. 2014) (Amazon "secure[d] meaningful consent" because the plaintiff "click[ed] a button next to text that state[d] 'you acknowledge that you have read and agree to the Amazon Prime Terms and Conditions'").

In response, the FTC claims that anecdotes and unverified estimates suggest some customers mistakenly signed up for Prime.  But the FTC cannot defeat an indisputably objective test with subjective and cherry-picked assumptions.  *See, e.g.*, *Walkingeagle*, 2023 WL 3981334, at *3 ("Without the need for further facts, I am able to assess the disclosures through the reasonable consumer prism.").  Regardless, the estimates cited by the FTC—even if credited— show that no more than single-digit percentages of customers were confused.  The FTC must allege much more:  that a "significant minority" of reasonable consumers were misled.  *Fanning*

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*v. FTC*, 821 F.3d 164, 171 (1st Cir. 2016).  Because it has not done so, the FTC claims this element does not apply to ROSCA claims.  But that is not the law.  The significant minority element is a well-established, direct corollary of the reasonable consumer standard, and ROSCA nowhere says that companies must eliminate *all* confusion.

Third, Amazon provides not one but multiple "simple" cancellation methods.  15 U.S.C. § 8403(3).  The FTC responds again with subjective criticism that Amazon's online cancellation process requires more than one click.  But no law, rule, or case requires one-click cancellation— and reasonable consumers understand that a few steps are usually necessary to cancel a subscription or membership.  The sole case cited by the FTC has no application here: the defendant offered cancellation by phone only and during calls tried to thwart customers' cancelation efforts.  *United States v. MyLife.com, Inc.*, 567 F. Supp. 3d 1152, 1159 (C.D. Cal. 2021).

Not only did the FTC fail to allege a claim, its theories violate Amazon's due process rights.  In its opposition, the FTC tries to run from its "dark patterns" theory but in doing so only exacerbates the constitutional violations.  Not only are the FTC's theories a "moving target," *Nw. Immigrant Rts. Project v. Sessions*, 2017 WL 3189032, at *5 (W.D. Wash. July 27, 2017), it continues to rely on newly invented hyper-technical rules concerning the timing, location, size, and color of Prime's disclosures that are found nowhere in ROSCA or elsewhere.  The FTC cannot dispute this—it has conceded that ROSCA contains only "general provisions" and "no details regarding steps marketers must follow to comply."  84 Fed. Reg. 52393, 52395.  Thus, the FTC resorts to arguing that its application of ROSCA is somehow immune from constitutional scrutiny and Amazon cannot bring a due process claim at all.  That position violates binding precedent and must be rejected.  *See, e.g., Butcher v. Knudsen*, 38 F.4th 1163, 1170 (9th Cir. 2022) (law that was "precise enough" to survive "facial challenge" was "unconstitutionally vague as applied").  The Complaint should be dismissed in its entirety.

AMAZON'S REPLY ISO MOTION TO DISMISS
(2:23-cv-0932-JHC) - 3
4869-7509-4422v.10 0051461-005818

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## II.   ARGUMENT

### A.   Count II Fails: Prime's Terms Are Clearly and Conspicuously Disclosed

Because fast and free shipping is a popular Prime benefit, Amazon offers Prime to customers during the checkout process.  The FTC mischaracterizes this appropriately-timed offer as a "strategy" to make it "unlikely many ordinary consumers would notice" Prime's terms.  Opp. 6.  This "context" argument fails.

The court in *In re Vistaprint Corp. Mktg. & Sales Practices*, 2009 WL 2884727, at *1 (S.D. Tex. Aug. 31, 2009), rejected a similar argument.  The plaintiffs alleged that "during the process of completing their purchases online," they were "tricked into enrolling in membership programs."  The court held this was "clearly and unequivocally refuted by the website pages themselves," which disclosed the trial membership and its terms.  *Id.* at *4.

The same is true here.  The UPDP is an entire webpage specific to Prime—not a mere blip in the checkout process as misdescribed by the FTC—and it uses bolded font and large text referring to Prime at the top or center of the page (*e.g.*, "Start your 30-day free trial of Amazon Prime" or "we're giving you a 30-day FREE Trial of Prime").  The other flows use the same or similar phrases—again, prominently positioned in a bright orange or blue box.  And in the box containing the enrollment button, Amazon uses the words "Sign up for Prime," "Start Your 30-Day Prime FREE Trial," or words to that effect.  Dkt. 67 ("Compl.") Ex. A–F, G at 4, H at 4–5, I at 3–4, J at 6–8, K at 4, L at 7, M, O at 5.

No reasonable consumer viewing a Prime flow would overlook the clear disclosures of Prime's monthly price and auto-renewal terms.  The FTC cites cases involving arbitration terms provided *only* via hyperlink.  *See, e.g.*, Opp. 5–6 (citing *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 516–17 (9th Cir. 2023); *Chabolla v. ClassPass Inc.*, 2023 WL 4544598, at *2 (N.D. Cal. June 22, 2023); *Keebaugh v. Warner Bros. Ent. Inc.*, 2022 WL 7610032, at *2 (C.D. Cal. Oct. 13, 2022).  By contrast, Prime's terms are disclosed on the *same* page and immediately below the enrollment button using bolded black font against a light background that says: "**Your Amazon Prime membership continues until cancelled. If you do not wish to continue for**

**$12.99/month + any taxes, you may cancel any time by visiting Your Account**."  Most flows disclose Prime's material terms again on the same page (*e.g.*, "After your FREE trial, Prime is just $12.99/month"),[2] and contain a blue hyperlink to Prime's full terms.  Compl. Ex. A–F, G at 6, I at 3, J at 6, K at 4, L at 7, M, N at 7, O at 5.  Far from "small-print boilerplate," Opp. 9, these disclosures are noticeable and "understandable by anyone capable of making an online purchase."  *In re Vistaprint*, 2009 WL 2884727, at *6.

The FTC claims that the SPC makes these disclosures only after a customer enrolls in Prime.  Opp. 11.  That is false.  The customer is enrolled *only* after they place an order on a webpage where Prime's terms are disclosed multiple times:



Fig. 1, Compl. Ex. H at 6.

---

[2] Although the FTC claims this language does not mention auto-renewal, Opp. 10, that is the only reasonable takeaway.  In fact, the FTC concedes that Audible disclosed its auto-renewal term using similar language that did not expressly mention auto-renewal.  Opp. 22 n.14; *see also* Fig. 2.  Regardless, ROSCA is satisfied even if Prime's terms were disclosed only once.  *See, e.g.*, *Walkingeagle*, 2023 WL 3981334, at *3 (single disclosure sufficient).

AMAZON'S REPLY ISO MOTION TO DISMISS
(2:23-cv-0932-JHC) - 5
4869-7509-4422v.10 0051461-005818

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

The screenshots likewise refute the FTC's argument that a reasonable consumer would think they have no "choice" but to enroll in Prime.  Opp. 8.  In the SPC above, the user must click a button to place Prime in their cart and the next page provides a bright blue "delete" button.  Other flows provide a blue link or button immediately next to the enrollment button that says "No thanks," "Continue without the Amazon Prime benefits," or "Not right now."  Compl. Ex. A–F, G at 6, I at 3, J at 6, K at 4, L at 7, M, O at 5; *see also In re Vistaprint*, 2009 WL 2884727, at *12 (granting motion to dismiss where enrollment page provided "No Thanks" link).

### 1.    Courts Dismiss Cases Involving Less Conspicuous Disclosures

Courts in the Ninth Circuit addressing state auto-renewal laws—which the FTC admits "like ROSCA, contain clear-and-conspicuous disclosure requirements," Opp. 20—routinely grant motions to dismiss in similar cases.  *See, e.g.*, *Hall v. Time, Inc.*, 857 Fed. Appx. 385, 386 (9th Cir. May 24, 2021) (affirming dismissal because the "district court correctly concluded that the Automatic Renewal Notice appearing on the checkout page [is] 'clear and conspicuous'"); *Viveros*, 2023 WL 6960281, at *7 (same); *Walkingeagle*, 2023 WL 3981334, at *3; *Gershfield v. Teamviewer*, 2023 WL 334015, at *1 (9th Cir. Jan. 20, 2023).[3]

Judge Robart dismissed a case involving a webpage that shares the same features as the Prime flows, including an identical disclosure near the bottom of the page in similarly sized font ("Membership continues until cancelled for $14.95/mo."), a header that said "30-day free trial," and an enrollment button noting the free price ("Try for $0.00.").  *See* Fig. 2.  The FTC bases its claims on those same features, implausibly arguing they provide "no indication" of Prime's material terms.  Opp. 9.  But Judge Robart held Audible had "plainly satisfie[d]" its clear and conspicuous disclosure requirements.  *Viveros*, 2023 WL 6960281, at *7–8.  Here, Prime's disclosures (*see, e.g.*, Fig. 3) are at least as noticeable:

---

[3] The FTC argues that other cases Amazon cited—*e.g.*, *Oberstein*, 60 F.4th 505—are "contract cases" and thus inapplicable.  The FTC is inconsistent and wrong; as it relies on some of the same cases, Opp. 9, and the state auto-renewal cases, which the FTC concedes applied the same standard as ROSCA, provide more than sufficient basis to dismiss.

AMAZON'S REPLY ISO MOTION TO DISMISS
(2:23-cv-0932-JHC) - 6
4869-7509-4422v.10 0051461-005818

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Fig. 2.  *Viveros*, 2:23-cv-00925-JLR, Dkt. 1-2, ¶ 41.

AMAZON'S REPLY ISO MOTION TO DISMISS
(2:23-cv-0932-JHC) - 7
4869-7509-4422v.10 0051461-005818

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Fig. 3.  Compl., Ex. D.[4]

The FTC's entire discussion of *Viveros* is a footnote arguing that Audible's disclosures were "above" the enrollment button and "reiterated" in the "upper left" of the page.  Opp. 22 n.14.  But Prime's flows typically do the same thing by disclosing Prime's terms above *and* below the enrollment button.  Fig. 1, 3, 5, 7; Compl. Ex. G at 6, I at 3, J at 6, K at 4, L at 7, O at 5.  Regardless, the FTC is mischaracterizing cases to create new and arbitrary rules.  ROSCA does not require disclosures in any particular place.  The FTC derives this supposed rule from *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014), *Gaker v. Citizens Disability, LLC*, 2023 WL 1777460 (D. Mass. Feb. 6, 2023), and *Lopez v. Dave Inc.*, 2022 WL 17089824 (N.D. Cal. Nov. 21, 2022), but omits that the disclosures in each case were available *only* through hyperlinks (*Nguyen* & *Lopez*) or miniscule and barely legible text (*Gaker*, *see* Fig. 12). The disclosures were inconspicuous for these reasons, not because of their location relative to the

---

[4] The FTC argues the Exhibit D "disclosures start on the far-left side of the page, while the orange enrollment button is on the right."  Opp. 15.  But people read from left to right, and Exhibit D's disclosures are directly above and below the enrollment button.  The FTC's critiques are untethered to any objective standards.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

enrollment button.  Not even the FTC's non-binding guidance contains such a requirement.

Dkt. 87-2 at 8 (recommending disclosures appear "on the same screen").

*Walkingeagle* rejected a similar argument and held that YouTube TV's disclosures (Fig. 4) were clear and conspicuous as a legal matter because they were "on the same page" as the enrollment button "without the need to scroll."  2023 WL 3981334, at *4.  Although the plaintiff argued the disclosures must be "immediately above the final checkout button," the statute did not "require immediate adjacency."  *Id.*; *see also Oberstein*, 60 F.4th at 516–17 (terms "located directly on top of or below each action button" were conspicuous).  Here, Prime's disclosures (*see, e.g.*, Fig. 5) are even more conspicuous because they are in bolded font:



Fig. 4.  *Walkingeagle*, 2023 WL 3981334, at *4.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax



Fig. 5.  Compl. Ex. F.

Prime's flows are also more conspicuous than the webpage found legally sufficient in *Gershfeld v. Teamviewer*, 2021 WL 3046775, at *4 (C.D. Cal. June 24, 2021), which contained one disclosure using "bold letters":



Fig. 6. *Gershfield*, 23-cv-0058, Dkt. 30-3 at 2.

AMAZON'S REPLY ISO MOTION TO DISMISS
(2:23-cv-0932-JHC) - 10
4869-7509-4422v.10 0051461-005818

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1

2

3

4

5

6

7

8

9

10

11

12

13



Fig. 7, Compl., Ex. E.

14      Because Prime's disclosures are at least as conspicuous as disclosures courts have found

15 legally compliant, the Court should dismiss Count II.

16          **2.      The FTC's Cases Are Facially Inapposite**

17      Unlike the foregoing motion-to-dismiss cases, the FTC cites cases involving disclosures

18 that look nothing like Prime's flows.  The disclosures in *Berman* (Fig. 8), were the "antithesis of

19 conspicuous," "printed in a tiny gray font considerably smaller than the font used in the

20 surrounding website elements," and "barely legible to the naked eye."  30 F.4th at 856–57.

21 Prime's disclosures (*see, e.g.,* Fig. 9), by contrast, use bolded font to disclose the terms multiple

22 times, and are not smaller than other marketing text on the page:

23

24

25

26

27

AMAZON'S REPLY ISO MOTION TO DISMISS
(2:23-cv-0932-JHC) - 11
4869-7509-4422v.10 0051461-005818

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

 

*Compare* Fig. 8 (*Berman,* 30 F.4th at 861) *with* Fig. 9 (Compl., Ex. M).

The disclosures in *Cole v. U.S. Cap.*, were packed into "nine lines of text that occupy, generously speaking, one inch of space."  389 F.3d 719, 731 (7th Cir. 2004).  "The font size [was] no larger than six-point and is the smallest font on the page by several sizes" and was *not* differentiated "through color, emphasis or font style."  *Id.*  There is no comparison between those disclosures (Fig. 10) and Prime's (*see*, *e.g.*, Fig. 11):

AMAZON'S REPLY ISO MOTION TO DISMISS
(2:23-cv-0932-JHC) - 12
4869-7509-4422v.10 0051461-005818

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax




*Compare* Fig. 10 (*Cole*, 1:02-cv-1858, Dkt. 84 at Ex. A) *with* Fig. 11 (Compl., Ex. U at 5).

And in *Gaker*, the disclosures (Fig. 12) were printed on "blue font against a blue background," "at the very bottom of the page," making them nearly impossible to read:




*Compare* Fig. 12 (*Gaker*, 1:20-cv-11031, Dkt. 71-7) *with* Fig. 13 (Compl., Ex. H at 6).

AMAZON'S REPLY ISO MOTION TO DISMISS
(2:23-cv-0932-JHC) – 13
4869-7509-4422v.10 0051461-005818

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

3.      **The FTC's Novel Interpretation of ROSCA's "Billing Information" Requirement Lacks Merit**

In a single paragraph with no supporting authority, the FTC argues that Amazon violated ROSCA by obtaining customer's billing information before disclosing Prime's terms.  Opp. 18. But the examples cited by the FTC show that customers provided their billing information to purchase a product.  ROSCA did not prohibit Amazon from offering those customers a Prime subscription.  ROSCA was intended to prevent something different: "the kind of fraudulent transactions . . . where a consumer intentionally purchases products or services *from one company* and ends up unknowingly purchasing products or services *from a different, unrelated company*."  156 Cong. Rec. S8053-01 (emphasis added); *see also Lee v. Intelius Inc.*, 737 F.3d 1254, 1261 (9th Cir. 2013) (ROSCA prohibits "sharing customers' credit card information with third-party sellers").  Here, the customers transacted with one company (Amazon).  And unlike the unintentional transactions that ROSCA was designed to prevent, Amazon obtains informed consent.  *Before* the customers were enrolled in Prime, Amazon disclosed Prime's terms, gave the customer an opportunity to confirm or change their billing information, and the customer had to click a button to enroll.  Compl., Ex. G at 5–7, N at 6–9.  The FTC's contrary interpretation would unnecessarily require customers to re-enter their billing information even if they had already chosen to save that information to make future transactions more convenient.  *Arizona State Bd. For Charter Sch. V. U.S. Dep't of Educ.*, 464 F.3d 1003, 1008 (9th Cir. 2006) ("[S]tatutory interpretations which would produce absurd results are to be avoided.").

B.      **Counts I and III Fail: Amazon Obtains Informed Consent**[5]

Customers cannot enroll in Prime unless they (1) click a button on a webpage (2) that discloses Prime's terms and (3) informs the customer that clicking the button will enroll them in Prime.  Compl., Exs. A–O.  As courts have held when reviewing similar Amazon webpages, that is more than enough to obtain informed consent.  *See, e.g., Ekin*, 84 F. Supp. 3d at 1173 (Amazon "secure[d] meaningful consent" to Prime's terms); *Adams v. Amazon.com, Inc.*, 2023

---

[5] The FTC concedes that Count I (FTC Act) completely overlaps with Count III (ROSCA).  Opp. 22 n.15.

AMAZON'S REPLY ISO MOTION TO DISMISS
(2:23-cv-0932-JHC) - 14
4869-7509-4422v.10 0051461-005818

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

WL 4002534, at *1 (W.D. Va. June 14, 2023) (user consented "by clicking on the continue button" to sign-in to Prime, when "underneath that button" the page disclosed that "By continuing, you agree to Amazon's Conditions of Use" (granting transfer)).

The FTC argues the disclosures in these cases were "next to" the enrollment button and "explicitly referenced that consumers agreed to terms by continuing." Opp. 28. Again, the screenshots refute the FTC's mischaracterizations: (1) Prime's disclosures are often closer to the enrollment button than those in *Ekin* and *Adams* (*compare* Fig. 14–15 *with* Fig. 16–17), (2) Prime's terms are typically disclosed multiple times on the same webpage, and (3) the enrollment button itself often indicates the consequences of clicking (*e.g.*, "Sign Up for Prime" or "Enjoy Prime Free for 30 Days").



Fig. 14. *Ekin*, 2:14-cv-00244, Dkt. 25 at Ex. D.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1
2
3
4
5
6
7
8
9
10



Fig. 15.  *Adams*, 7:23-cv-0121, Dkt. 14-1 at 3.

11
12
13
14
15
16
17
18
19



Fig. 16.  Compl., Ex. F.

20
21
22
23
24
25
26
27

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Fig. 17.  Compl., Ex. D.

Despite these screenshots, the FTC argues Amazon does not inform consumers of the consequences of clicking Prime's enrollment button.  The primary case the FTC relies on—*Berman*, 30 F.4th at 853—disproves the FTC's argument.  There, although the flows stated, "I understand and agree to the Terms & Conditions," they did not indicate that pressing "continue" would constitute assent.  Critically, however, *Berman* held this "defect could easily have been remedied by including language such as, 'By clicking the Continue >> button, you agree to the Terms & Conditions.'"  *Id.* at 858.  Prime's flows do that by informing users that "*by signing up*" they agree to Prime's terms, which are conspicuously disclosed in the same place on the webpage—not in a hyperlink, as in *Berman*.

AMAZON'S REPLY ISO MOTION TO DISMISS
(2:23-cv-0932-JHC) - 17
4869-7509-4422v.10 0051461-005818

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax



Fig. 18.  Compl., Ex. V.

Fig. 19.  Compl., Ex. A.

The FTC argues some Prime flows (*e.g.*, Fig. 19) use buttons referencing shipping benefits, so it is unclear that clicking the button enrolls the customer in Prime.  Opp. 26.  But every enrollment button except one includes the words "Prime," "Free Trial," and/or "Sign Up"—all of which denote the user is signing up for Prime.[6]  The flows also include references throughout to Prime's name and logo, benefits, and Free Trial.  And again, the flows specifically inform customers they are "signing up" for an "Amazon Prime membership."  *See, e.g.*, Fig. 18– 19 ("By signing up . . . Your Amazon Prime membership continues until cancelled.").

None of the FTC's cases are even remotely similar.  Many involved terms accessible *only* via hyperlink.  *See Nguyen*, at 1177 (hyperlink "without more—is insufficient"); *Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454, 467–68 (S.D.N.Y. 2017) (same); *Lopez*, 2022 WL 17089824, at *2 (same).  The FTC cites *dicta* from *Lee* where, unlike here, "[t]he critical text on the [webpage] was written in small, light-colored print."  737 F.3d at 1260.  Similarly, in *Cullinane v. Uber Techs., Inc.*, the disclosure "was displayed in a dark gray small-sized non-bolded font against a black background."  893 F.3d 53, 64 (1st Cir. 2018).  In *Chabolla*, the webpage made

---

[6] Compl., Ex. M is the *only* flow with an enrollment button that does not contain the specific words "Prime" or "Free Trial."  But it still conspicuously uses the words Prime and Free Trial on the page.

AMAZON'S REPLY ISO MOTION TO DISMISS
(2:23-cv-0932-JHC) - 18
4869-7509-4422v.10 0051461-005818

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

no connection between hyperlinked terms and ambiguous "Continue" and "Redeem Now" buttons.  2023 WL 4544598.  And in *In re Ring LLC Privacy Litig.*, the court noted that terms in close proximity to the enrollment button—what Prime provides—was sufficient.  2021 WL 2621197, at *5–6 (C.D. Cal June 24, 2021).

### C.   The FTC Cannot Save Its Claims Based on Subjective Commentary by Amazon Employees

In another attempt to avoid the objective clarity of Prime's flows, the FTC mischaracterizes internal Amazon documents and commentary by a small number of employees. Opp. 16–17.

First, these materials are neither relevant nor necessary under the objective standard because the Prime flows "speak for themselves."  *See, e.g.*, *Allen v. Shutterfly*, 2020 WL 5517172, at *7 (N.D. Cal. Sept. 14, 2020) (data "regarding the percentage of users that clicked the Terms and Conditions" was irrelevant to the "conspicuousness" inquiry, because the disclosures and "website speak for themselves"); *Walkingeagle*, 2023 WL 3981334, at *3 ("[C]onsumer survey data is not required to evaluate the sufficiency of Defendants' disclosures.").

Second, the estimates and commentary relied upon by the FTC are not the kind of "empirical evidence" discussed in *Rubio v. Capital One*—evidence gathered by a professional research firm that was "so pervasive" the Federal Reserve Board revised its regulations in response.  613 F.3d 1195, 1201 (9th Cir. 2010).  What the FTC relies on was the product of Amazon's internal efforts to brainstorm ways to make the Prime flows even clearer.  It is unsurprising—much less evidence of a ROSCA violation—that some Amazon employees proposed what they perceived to be improvements during this process.  *See, e.g.*, *FTC v. DIRECTV, Inc.*, 2018 WL 3911196, at *18 (N.D. Cal. Aug. 16, 2018) ("DIRECTV's investment of substantial resources in analyzing its operations, candidly identifying areas for improvement, and following through on a number of improvements does not support a finding that the company violated the FTC Act.").

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Third, these materials show, at most, that *some* small percentage of customers might have mistakenly signed up for Prime.  Amazon has never claimed that customer confusion is "implausible."  Opp. 10.  Rather, as the governing standard itself reflects, some amount of customer confusion is *inevitable*.  Thus, "the reasonable consumer standard requires a probability that a *significant portion* of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled."  *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (emphasis added).  The FTC's allegations fail this standard.  It cites a preliminary and unverified estimate that approximately ▇▇▇▇ people might be unaware of their Prime membership.  Opp. 28.  Even if that estimate were assumed accurate—and it is not, as Amazon will demonstrate, if necessary, at the appropriate time—it does not support the FTC's claims. The FTC concedes the number is an overestimation because it includes members who were enrolled through flows not at issue here, Opp. 29, and the FTC alleges no facts regarding the percentage of Prime members enrolling through the challenged flows.  In any event, this overestimation represents only a single digit percentage of total Prime members, Mot. 16, which falls well short of a "significant minority."  *See, e.g.*, *In the Matter of Telebrands Corp., TV Sav., LLC, & Ajit Khubani*, 140 F.T.C. 278, 291, 325 (2005) (concluding that "10.5% to 17.3%" of consumers being misled is a "significant minority" under FTC Act); *William H. Morris Co. v. Group W*, 66 F.3d 255, 258 (9th Cir. 1995) (nearly 3% is not a "significant portion"); *BBK Tobacco & Foods LLP v. Cent. Coast Agric. Inc.*, 615 F. Supp. 3d 982, 1021 n.26 (D. Ariz. 2022) ("confusion rate[] between 3.7% and 8.3%" insufficient).

Recognizing this, the FTC tries to disavow the "significant minority" standard.  However, as explained in *Ebner*, *supra*, the "significant minority" standard is a direct corollary of the "reasonable consumer" standard, which the FTC concedes governs ROSCA, Dkt. 87-3 at 60825 (disclosures should be "easily understandable by ordinary consumers").  The FTC cites no case holding that ROSCA replaced the significant minority standard—and nowhere does ROSCA say that companies must eliminate all confusion.  Further, the FTC's assertion that the significant minority standard does not apply where a defendant "intentionally attempt[s] to deceive," is not

only false as a matter of FTC law but also inapplicable; the FTC does not and cannot allege that Amazon made "false representations."  Opp. 30.

### D.      Count IV Fails: Prime's Cancellation Mechanisms Are Objectively Simple

Amazon provides multiple cancellation options and access points.  Mot. 16–20.  Each option satisfies ROSCA's "simple" cancellation requirement.  15 U.S.C. § 8403(3).

The online flows use a three-point progress bar and conspicuous buttons labeled "End Your Prime Membership," "Continue to Cancel," and "End Now."  *See, e.g.,* Compl. Exs. Q & T.  The Court should view the flows itself, apply the reasonable consumer standard, and reject the FTC's conclusory assertions.  *See Walkingeagle*, 2023 WL 3981334, at *5 (granting motion to dismiss; "face of the complaint" showed statute's cancellation requirement satisfied).

First, the FTC argues Amazon makes it difficult to access the online flow.  But it is hard to imagine something simpler than typing "End Membership" into a search bar, which is all a user needs to do.  *See* Compl., Ex. T at 1.  Nor is it difficult for users to locate the Account Management tab on Prime Central.

Second, the FTC complains that clicking the "End Membership" button does not immediately end a Prime membership.  Opp. 35.  But the user merely needs to click the prominently labeled "Continue to Cancel" and "End Now" buttons on the following screens.  Neither ROSCA nor the FTC's proposed rule require one-click cancellation.  *See* Dkt. 87-1 at 24735.  All ROSCA requires is a "simple" cancellation method.  15 U.S.C. §8403(3).  Amazon did not violate that requirement by informing users of their Prime benefits, usage, or special offers—factual information that is not misleading—before they cancel.  The FTC has recognized this is permissible.  *See* Dkt. 87-3 at 60826 & n.2 (Comm'r Phillips concurring statement).[7]

The FTC does not cite a single case in which a comparable cancellation flow was held unlawful.  Instead, the FTC relies on one distinguishable case, where the defendant offered

---

[7] The FTC's argument that Amazon cannot include truthful information in the cancellation flow not only violates Amazon's Due Process rights, *see* below, but also raises serious First Amendment issues.  *See* Mot. at 21 n.15.  The FTC asserts that misleading commercial speech is not entitled to First Amendment protection, Opp. 47 n.31, but does not allege that the factual information in the flow is misleading.

AMAZON'S REPLY ISO MOTION TO DISMISS
(2:23-cv-0932-JHC) - 21
4869-7509-4422v.10 0051461-005818

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

cancellation by phone only.  *MyLife.com*, 567 F. Supp. 3d at 1159.  Moreover, when consumers called, they were frequently unable to reach an agent, and when they did, they were faced with a six-part "retention" sales script aimed at convincing them not to cancel.  *Id.*  Nothing about Prime's online process even comes close to these qualities.

Third, the FTC speculates based on an estimate that ████ of members who start the online process do not complete it.  As Amazon's motion explained, the FTC does not identify the reasons why those members did not cancel, and the Complaint omits reasons having nothing to do with the flow (*e.g.*, members changing their minds).  That some members did not finish is probative of nothing and cannot alter the objectively simple process reflected in the Complaint's own screenshots.

Finally, there is nothing complex about cancelling by phone.  Although the FTC alleges that Amazon encourages members to cancel online, the FTC does not and cannot allege that Amazon forces members to cancel online or refuses to process a phone cancellation.

### E.    Counts I–IV Fail: This Action Violates Amazon's Due Process Rights

The FTC contends Amazon's due process arguments "fail[] for the straightforward reason that no Defendant actually asserts the relevant statutes are unconstitutionally vague." Opp. 2.  This misconstrues Amazon's position and the law.

Amazon challenges ROSCA's constitutionality as interpreted and applied by the FTC. *See Butcher*, 38 F.4th at 1170 (law "precise enough" to survive "facial challenge" was "unconstitutionally vague as applied").  Amazon is not required to assert that ROSCA is facially vague.  Irrespective of "any concerns about facial invalidity," the Due Process Clause prohibits the FTC from enforcing vague or unprecedented *interpretations* of ROSCA.  *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 254 (2012) (agency's "interpretation" of 18 U.S.C. § 1464 was unconstitutional where agency failed to provide fair notice that defendant's conduct was "a violation of § 1464 as interpreted and enforced"); *United States v. AMC Ent., Inc.*, 549 F.3d 760, 769 (9th Cir. 2008) ("DOJ's interpretation" was unconstitutional); *Keeffe v. Libr. of*

AMAZON'S REPLY ISO MOTION TO DISMISS
(2:23-cv-0932-JHC) - 22
4869-7509-4422v.10 0051461-005818

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Cong.*, 777 F.2d 1573, 1582 (D.C. Cir. 1985) (regulation had "no ambiguity" but did not provide "fair notice" as applied).

That ROSCA is facially clear only makes the FTC's unprecedented application more problematic. *See Skilling v. United States*, 561 U.S. 358, 408 (2010) (rejecting government's interpretation because "[r]eading the statute to proscribe a wider range of offensive conduct . . . would raise the due process concerns underlying the vagueness doctrine"); *United States v. Trident Seafoods Corp.*, 60 F.3d 556, 559 (9th Cir. 1995) (rejecting agency's "litigation position;" finding defendant "should not be subject to a . . . penalty that is not clearly applicable either by statute or by regulation to [defendant's] conduct").

**1.    The FTC's Disavowal of Its "Dark Patterns" Theory Exacerbates the Due Process Violations**

The FTC's opposition tries to escape the consequences of its reliance on a theory that is nowhere defined nor proscribed in the law, but the fact is the FTC's complaint identifies dark patterns as the primary basis for Amazon's alleged liability.  Dkt. 67 ¶ 2.  And although the FTC now says it has "not asserted a 'dark patterns' theory," Opp. 44, the FTC said the opposite in its press statements, describing this case as the latest to "challenge alleged dark digital patterns,"[8] and touting that the "complaint charges that Amazon used so-called 'dark patterns' to cause consumers to enroll in Prime without their consent."[9]  This "moving target" only reinforces that the allegations are "impermissibly vague."  *Nw. Immigrant Rts. Project*, 2017 WL 3189032, at *5; *see also United States v. Sattar*, 272 F. Supp. 2d 348, 358 (S.D.N.Y. 2003) (government's "evolving definition" of statute showed defendant "could not be expected to know that the conduct alleged was prohibited").

---

[8] https://www.ftc.gov/business-guidance/blog/2023/06/ftc-alleges-amazon-enrolled-people-prime-without-consent-thwarted-members-attempts-cancel.

[9] https://www.ftc.gov/news-events/news/press-releases/2023/06/ftc-takes-action-against-amazon-enrolling-consumers-amazon-prime-without-consent-sabotaging-their.

AMAZON'S REPLY ISO MOTION TO DISMISS
(2:23-cv-0932-JHC) - 23
4869-7509-4422v.10 0051461-005818

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

2.        **No Matter How Labeled, the FTC's Theory Is Unconstitutionally Vague**

Whether labelled as "dark patterns" or not, the FTC proposes subjective and arbitrary rules that violate due process.  The agency faults Amazon for using disclosures that start "on the left side of the page," Opp. 20, but ignores that "most English-language readers naturally read from left to right."  *Bernardino v. Barnes & Noble Booksellers, Inc.*, 2017 WL 7309893, at *9 (S.D.N.Y. Nov. 20, 2017) ("left-aligned" disclosure was even "more conspicuous").  The FTC claims the "context" in which Amazon offers Prime—during the checkout process when customers stand to benefit from Prime's free shipping—is somehow improper.  Opp. 6.  And the FTC places seeming dispositive weight on the (incorrect) assertion that Prime's disclosures are "located *below* the enrollment to which they apply" rather than in "text *above* [that] button." Opp. 14, 20.  In short, the FTC seeks unfettered discretion to declare ROSCA violations based on the "totality of the circumstances"—an ad hoc and "highly fact-specific analysis" that "clearly fails to give a person of ordinary intelligence a reasonable opportunity to know what is prohibited."  *Hunt v. City of Los Angeles*, 638 F.3d 703, 712 (9th Cir. 2011); *Berger v. City of Seattle*, 569 F.3d 1029, 1047–48 (9th Cir. 2009) (government's ability to weigh a "myriad of factors" was unconstitutionally vague).

3.        **The FTC Deprived Amazon of Fair Notice**

Even if the FTC's proposed rules were not arbitrary and vague, Amazon had no notice of them.  The FTC asserts it is merely enforcing ROSCA's "plain terms," Opp. 45, but none of the FTC's proposed rules have any basis in ROSCA's text.  *United States v. Approximately 64,695 Pounds of Shark Fins*, 520 F.3d 976, 979, 982 (9th Cir. 2008) (finding due process violation when "nothing in the [statute's] plain language" provided notice the statute "extended to [defendant's] activities"); *Crown Pac. v. Occupational Safety & Health Rev. Comm'n*, 197 F.3d 1036, 1040 (9th Cir. 1999) (agency did not provide "fair warning of the [prohibited] conduct" when its interpretation did not derive from "the plain language of the regulation"); *Hoffman Const. Co. v. Occupational Safety & Health Rev. Comm'n*, 546 F.2d 281, 283 (9th Cir. 1976) (rejecting agency interpretation when regulation's text "created no specific standard").

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

The FTC has conceded this.  Despite invoking ROSCA's "plain terms" here, Opp. 45, the FTC has elsewhere conceded that ROSCA merely "contains *general* provisions related to disclosures, consent, and cancellation" and "provides *no details* regarding steps marketers must follow to comply."  84 Fed. Reg. 52396.  And contrary to its representation that "existing law" is sufficient, Opp. 45, the FTC concluded that "existing authorities fall short because there is no uniform legal framework."  Dkt. 87-1 at 24732.  In fact, the FTC has proposed a new rule to "remove[] ambiguity for marketers" and to meet the "need for clearer guardrails in this area."  *Id.* at 24727–28.  Given the FTC's own statements that "nothing on the face of [ROSCA]" compels the specific rules it seeks to enforce here, the Court "need not go far" to find Amazon lacked "fair warning."  *United States v. Anzalone*, 766 F.2d 676, 681–82 (1st Cir. 1985) (where "the government itself [had] admitted" that "the regulations were silent on the propriety" of defendant's conduct, adopting the agency's litigation position would "foment lawlessness instead of compliance").  The FTC's proposed rulemaking on these same issues ends the inquiry.  *United States v. Moss*, 872 F.3d 304, 314 (5th Cir. 2017) (finding particularly "revealing" that the agency had "gone out of its way to specifically include [the disputed conduct] within the regulatory purview" when it "promulgated recent regulations").

The FTC cites a single case in response: the Third Circuit's opinion in *FTC v. Wyndham*, which held the "fair notice doctrine" does not "apply where it is a *court* announcing an *interpretation* of a *statute*."  799 F.3d 236, 254 n.18 (3d Cir. 2015) (emphasis in original). But this carveout from "fair notice" is inconsistent with precedent.  *See Shark Fins*, 520 F.3d at 981–82 ("the statutory provision . . . does not give fair notice that [the defendant's conduct] is prohibited"); *Fox*, 567 U.S. 254 (parties lacked "fair notice" of "§ 1464 [the federal obscenity statute] as interpreted and enforced by the agency"); *S.S. v. Microsoft Corp. Welfare Plan*, 2015 WL 11251744, at *7 (W.D. Wash. Feb. 11, 2015) (rejecting application of statute that was "ambiguous and [was not] clarified until after the conduct occurred").

Applying *Wyndham* here would also violate the Ninth Circuit's rule that "the responsibility to promulgate clear and unambiguous standards *is on the agency*."  *Trident*

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Seafoods*, 60 F.3d at 559 (emphasis added).  The FTC's suggestion that fair notice is triggered only when an agency interprets its regulations "would create a danger that agencies would avoid promulgating regulations altogether."  *Price v. Stevedoring Servs. of Am., Inc.*, 697 F.3d 820, 830–31 (9th Cir. 2012).  The FTC cannot avoid its obligation to provide fair notice by not taking actions that could provide it.  *See Trident Seafoods*, 60 F.3d at 559 ("reliance on policies underlying a statute cannot be treated as a substitute for the agency's duty to promulgate clear and definitive regulations"); *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1157 (9th Cir. 2014) (ordinance was unconstitutionally vague because enforcement memo provided "no more guidance than the statute itself").

Even under *Wyndham*'s narrow reading of "fair notice," this case is barred.  Years prior to the action in *Wyndham*, the FTC had "issued a guidebook" that "counsel[ed] against many of the specific practices alleged" there.  799 F.3d at 256.  Thus, as the FTC has elsewhere explained, the *Wyndham* defendant had "fair notice" of the FTC's standards because—unlike Amazon—it "could have obtained guidance from the FTC's public complaints, consent decrees, and business guidance."[10]  Here, in stark contrast, the FTC *admits* that "none of th[e] practices challenged in . . . other ROSCA cases is at issue" and does not dispute the practices challenged here are "widespread [in] industry."  Opp. 47.  This case is a textbook violation of fair notice. *See, e.g.*, *PMD Produce Brokerage Corp. v. USDA*, 234 F.3d 48, 53 (D.C. Cir. 2000) (party lacked "fair notice" where the agency could "point[] to no action, such as public statements or pre-enforcement efforts, that would have informed [the party] of the [agency's] interpretation"); *Karem v. Trump*, 960 F.3d 656, 665 (D.C. Cir. 2020) (finding due process violation where defendant's actions were "at least arguably similar" to actions "that elicited no punishment at all).

For more than a decade, the FTC has allowed ROSCA to sit dormant with "*no details regarding steps marketers must follow to comply*."  84 Fed. Reg. 52395.  The law does not

---

[10] FTC Opposition to Motion to Dismiss, *FTC v. Dluca*, 2018 WL 11373184, at *12 (S.D. Fla. May 3, 2018).

AMAZON'S REPLY ISO MOTION TO DISMISS
(2:23-cv-0932-JHC) - 26
4869-7509-4422v.10 0051461-005818

1  "require [Amazon] to have determined the precise meaning of the regulation when the

2  government did not do so." *AMC Ent.*, 549 F.3d at 769.

3  ### F.    Civil Penalties Are Unavailable as a Matter of Law

4  The FTC cannot obtain civil penalties.  The FTC argues Amazon knew of "ROSCA's

5  existence."  Opp. 49–50.  But the FTC must allege more:  that each defendant knew their conduct

6  *violated* ROSCA.  *United States v. Dish Network LLC*, 256 F. Supp. 3d 810, 929 (C.D. Ill. 2017).

7  Defendants could not have known their conduct violated rules the FTC had never articulated.

8  *See PMD Produce*, 234 F.3d at 53 (party had no notice, much less knowledge, where

9  government had not articulated its interpretation of rule).

10  The FTC further argues Defendants knew that some customers mistakenly signed up for

11  Prime.  Opp. 50–51.  But knowledge of mistaken sign-ups does not equal knowledge that

12  ROSCA has been violated, as some amount of customer confusion is inevitable and permissible

13  under the "significant minority" standard.  *See supra* II.C.

## III.   CONCLUSION

15  The Complaint should be dismissed in its entirety.

17  DATED this 8th day of December, 2023.

19  I certify that this memorandum contains 6,673 words, in compliance with the Local Civil

20  Rules.

DAVIS WRIGHT TREMAINE LLP

By s/ *Kenneth E. Payson*
Kenneth E. Payson, WSBA #26369
James Howard, WSBA #37259
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
Telephone: (206) 622-3150
Fax: (206) 757-7700
E-mail: kenpayson@dwt.com
         jimhoward@dwt.com

AMAZON'S REPLY ISO MOTION TO DISMISS
(2:23-cv-0932-JHC) - 27
4869-7509-4422v.10 0051461-005818

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

HUESTON HENNIGAN LLP

John C. Hueston*
Moez M. Kaba*
Joseph A. Reiter*
523 West 6th Street, Suite 400
Los Angeles, CA  90014
Telephone: (213) 788-4340
E-mail: jhueston@hueston.com
        mkaba@hueston.com
        jreiter@hueston.com

COVINGTON & BURLING LLP

Stephen P. Anthony*
Laura Flahive Wu*
Laura M. Kim*
John D. Graubert*
850 Tenth Street, NW
Washington, DC  20001
Telephone: (206) 662-5105
E-mail: santhony@cov.com
        lflahivewu@cov.com
        lkim@cov.com
        jgraubert@cov.com

John E. Hall*
415 Mission Street, Suite 5400
San Francisco, CA  94105
Telephone: (415) 591-6855
E-mail: jhall@cov.com

Megan L. Rodgers*
3000 El Camino Real
Palo Alto, CA  94306
Telephone: (650) 632-4734
E-mail: mrodgers@cov.com

*admitted pro hac vice

Attorneys for Defendants AMAZON.COM, INC.,
NEIL LINDSAY, RUSSELL GRANDINETTI,
AND JAMIL GHANI

AMAZON'S REPLY ISO MOTION TO DISMISS
(2:23-cv-0932-JHC) - 28
4869-7509-4422v.10 0051461-005818

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax