# Exhibit A

1
2

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

3
4

FEDERAL TRADE COMMISSION,

**Case No. 2:23-cv-0932-JHC**

5

Plaintiff,

6

v.

7

AMAZON.COM, INC., *et al.*,

8

Defendants.

9

10

**DECLARATION OF ADAM ROTTNER**

11

(Pursuant to 28 U.S.C. § 1746)

12

13

I, Adam Rottner, hereby state that I have personal knowledge of the facts set forth below.

14

If called as a witness, I could and would testify as follows:

15    1.    I am a United States citizen and am over eighteen years of age.  I am employed by the

16    Federal Trade Commission ("FTC" or the "Commission") as a Senior Investigator in the

17    Division of Enforcement, Bureau of Consumer Protection.  My office address is 600

18    Pennsylvania Avenue, NW, Washington, DC 20580.

19    2.    A number of attachments are included with this declaration.  In accordance with FTC

20    procedures and this Court's rules, information from some of these attachments may have

21    been redacted in order to protect sensitive information such as financial account numbers,

22    personally identifiable information, and FTC undercover identities.

23    3.    Consistent with Local Rule 10(e)(10), orange highlighting has been added to the

attachments to indicate excerpts referenced in this declaration or the accompanying

1

1    motion.  Blue highlighting represents material that is being filed under seal and will be

2    redacted in the public version of this declaration.

3    **THE MAY 4, 2021 MEMO AND MAY 6, 2021 MEETING**

4    4.    As stated in the June 18, 2023 Declaration of Adam Rottner (Dkt. #90-2 at 26-332), I

5    refer to document "IC-1" in the *in camera* document set provided by the FTC to the

6    Court as the "May 4 Memo" (Amazon-FTC-CID_09246136).

7    5.    Based on a review of documents produced by Amazon, it is my understanding that the

8    file name for the May 4 Memo is "Prime Account CX Satisfaction – Privileged &

9    Confidential."  I searched Amazon's productions and found that the latest version of that

10   document produced by Amazon was dated April 29, 2021.  That copy, which contained

11   no redactions, was attached to an April 29, 2021 Chime chat with the title, "Chat with

12   'Maheshwari, Siddharth' mahesidd@amazon.com and 25 more addresses, Pre-Clark

13   Review: Prime Account CX Satisfaction (Privileged & Confidential) – Chat."  A true and

14   correct copy of the April 29, 2021 Chime chat and attached version of the May 4 Memo

15   is attached hereto as **Attachment 1**.

16   6.    The following documents, found in the *in camera* document set, have been identified by

17   Amazon as versions of what Amazon has described as a "presentation" prepared for a

18   July 14, 2021 meeting—IC-5, IC-18, IC-19, IC-20, IC-21.  Dkt. #52 ¶¶ 19, 23.  Based on

19   my prior declaration (Dkt. #90-2 at 326-32), all of these documents were originally

20   produced by Amazon, without redactions, in the investigation leading to this case.

21   7.    On November 22, 2022, during the course of its investigation, FTC counsel sent an email

22   to Amazon counsel identifying three messages in AMZN_00102776 (IC-9) as potentially

23   privileged.  Dkt. #90-2 at 247.  Amazon clawed back the document and provided a

2

1   replacement version with 19 messages redacted.  On January 12, 2024 Amazon produced

2   another version of IC-9 that unredacted six of the messages previously redacted, leaving a

3   total of 13 messages redacted.  A true and correct copy of the January 12, 2024 version of

4   IC-9 is attached hereto as **Attachment 2**.

5   8.   On October 24, 2023, FTC counsel sent an email to Amazon counsel that, among other

6   things, asked who authored the documents described as the "July 14 Memo" and "July 14

7   Presentation"  in the FTC's Motion to Compel.  I reviewed Amazon's November 17,

8   2023 letter response and confirmed that it did not answer the question of authorship.  A

9   true and correct copy of the October 24, 2023 FTC email and November 17, 2023

10   Amazon letter response are attached hereto as **Attachments 3 and 4**, respectively.

11   9.   On January 17, 2023, the FTC conducted an investigational hearing of Amazon employee

12   Omar Kalim.  Counsel for the FTC marked an April 21, 2022 email (AMZN_00143228,

13   IC-27) as exhibit 13 and questioned Mr. Kalim about the paragraphs in the email labeled

14   CX Satisfaction Upsell and CX Satisfaction Cancel.   There were six attorneys who also

15   represented Amazon that were present at the hearing on behalf of Mr. Kalim.  None of

16   those attorneys raised a privilege objection to IC-27.

17   10.   On February 7, 2023 Amazon clawed back AMZN_00143228, which was Exhibit 13 at

18   the Kalim investigational hearing.  Amazon later reproduced that document with

19   redactions applied to the same "CX Satisfaction Cancel" paragraph about which FTC

20   counsel had questioned Mr. Kalim.  A true and correct copy of a re-produced version of

21   this document, bearing Bates number AMZN-PRM-FTC-000000190, is attached hereto

22   as **Attachment 5**.

23

3

1    11.    My previous declaration attached an email chain that included an email from Nahshon

2           Davidai dated October 27, 2020.  Dkt. #90-2 at 193.  Based on his LinkedIn profile, at the

3           time Mr. Davidai sent the email, he was Amazon's Director of Prime Member Growth.

4           Other than the attorney (Susan Kremer) added to the email chain by Mr. Davidai, none of

5           the other email recipients have been identified by Amazon as attorneys.

6    12.    On February 7, 2023, Amazon clawed back Amazon-FTC-CID_09389533 (IC-37), which

7           originally had been produced without redactions.  My understanding is that on February

8           14, 2023, Amazon produced a new copy of this document, with privilege redactions.

9                                    **OTHER DOCUMENTS**

10   13.    Attached hereto as **Attachment 6** is a true and correct copy of Amazon's Objections and

11          Responses to Plaintiff's First Set of Requests for Production of Documents, dated

12          September 5, 2023.

13   14.    Attached hereto as **Attachment 7** is a true and correct excerpt of an email chain between

14          the FTC and Amazon's counsel with the title, "RE: FTC v. Amazon.com, Inc., et al., No.

15          2:23-cv-00932-JHC (W.D. Wash.)."  The most recent email in this chain excerpt is dated

16          January 19, 2024.

17   15.    Attached hereto as **Attachment 8** is a true and correct excerpt of an email chain between

18          the FTC and Amazon's counsel with the title, "Re: FTC v. Amazon.com, Inc., et al., No.

19          2:23-cv-00932-JHC (W.D. Wash.)."  The most recent email in this chain excerpt is dated

20          January 23, 2024.

21   16.    Attached hereto as **Attachment 9** is a true and correct copy of a document produced by

22          Amazon to the FTC beginning with Bates number AMZN_00022853.

23

4

17. Attached hereto as **Attachment 10** is a true and correct copy of a document produced by Amazon to the FTC beginning with Bates number AMZN_00045704.

18. Attached hereto as **Attachment 11** is a true and correct copy of a document produced by Amazon to the FTC beginning with Bates number AMZN_00045916.  Amazon has not identified the sender of Attachment 11 as an attorney.  Amazon has only identified two of Attachment 11's 30 recipients as attorneys.  Attachment 11 also includes a list of people invited to the July 14, 2021 meeting.  Amazon has only identified two of the 22 invitees as attorneys.

19. Attached hereto as **Attachment 12** is a true and correct copy of a document produced by Amazon to the FTC beginning with Bates number AMZN_00099452.

20. Attached hereto as **Attachment 13** is a true and correct excerpt of a document produced by Amazon to the FTC beginning with Bates number AMZN_00103138.  The excerpt begins at page AMZN_00103141.

21. Attached hereto as **Attachment 14** is a true and correct copy of a document produced by Amazon to the FTC beginning with Bates number AMZN_00103325.

22. Attached hereto as **Attachment 15** is a true and correct copy of a document produced by Amazon to the FTC beginning with Bates number AMZN_00107862.

23. Attached hereto as **Attachment 16** is a true and correct copy of a document produced by Amazon to the FTC beginning with Bates number AMZN_00171492.

24. Attached hereto as **Attachment 17** is a true and correct copy of a document produced by Amazon to the FTC beginning with Bates number AMZN-PRM-FTC-000000001.  Attachment 17 is a July 14, 2021 chat thread that appears to attach copies of the July 14

5

1        Memo and July 14 Presentation.  My understanding is that neither participant in the chat

2        thread is an attorney.

3   25.    Attached hereto as **Attachment 18** is a true and correct copy of a document produced by

4        Amazon to the FTC beginning with Bates number Amazon-FTC-CID_09389533.

5   26.    Attached hereto as **Attachment 19** is true and correct copy of transcript excerpts from the

6        August 16, 2022 investigational hearing of Reid Nelson.

7   27.    Attached hereto as **Attachment 20** is true and correct copy of transcript excerpts from the

8        January 17, 2023 investigational hearing of Omar Kalim.

9

10

11  I declare under penalty of perjury that the foregoing is true and correct.

12

13

14  Executed on January 25, 2024

15                                                         Adam Rottner

16

17

18

19

20

21

22

23

6

# Attachment 1

# Chat with "Maheshwari, Siddharth" <mahesidd@amazon.com> and 25 more addresses

Pre-Clark Review: Prime Account CX Satisfaction (Privileged & Confidential) - Chat
Earliest item: 2021-04-29 12:59:03
Latest item: 2021-04-29 14:16:01

All Parties:
Leung, Lisa <lileung@amazon.com>
England, Mark <marengl@amazon.co.uk>
Coleman, Taft <taftcole@amazon.com>
Srinivasan, Bharath <bharaths@amazon.com>
Baidwan, Nikki <nikbai@amazon.com>
Balakrishnan, Sanjay <bsanjay@amazon.co.uk>
Filippis, Tommaso <tomfil@amazon.lu>
Boulis, Anthony <boulis@amazon.com>
Singh, Manish <singm@amazon.com>
Soni (Finance), Shraddha <sdsoni@amazon.com>
Davidai, Nahshon <ndavidai@amazon.com>
Hills, Benjamin <bhills@amazon.com>
Goeltz, Benjamin <bgoeltz@amazon.com>
Tuladhar, Praju <tuladhar@amazon.com>
Amazon Chime <chime+meeting-bot-2@chime.aws>
Monachese, Raffaela <raffamon@amazon.it>
Meeting (Bot) <meeting@chime.bot>
Muus, Katey <kateymuu@amazon.com>
Schmitz, Erik <eschmitz@amazon.lu>
Maheshwari, Siddharth <mahesidd@amazon.com>
Gotschall, Mary Pat <marypat@amazon.com>
Ghani, Jamil <ghanijam@amazon.com>
Hankin, Jediah <jediahh@amazon.com>
Moeller, Caroline <cmmoell@amazon.com>
Nelson, Reid <reidn@amazon.com>
Mason, Llew <llmason@amazon.com>

### Thursday 29 April 2021

**Hankin, Jediah <jediahh@amazon.com>**
MEMBER ADD

12:59:03

**Maheshwari, Siddharth <mahesidd@amazon.com>**
MEMBER ADD

12:59:03

**Singh, Manish <singm@amazon.com>**
MEMBER ADD

12:59:03

**Balakrishnan, Sanjay <bsanjay@amazon.co.uk>**
MEMBER ADD

12:59:03

**Moeller, Caroline <cmmoell@amazon.com>**
MEMBER ADD

12:59:03

**Ghani, Jamil <ghanijam@amazon.com>**
MEMBER ADD

12:59:03

**Davidai, Nahshon <ndavidai@amazon.com>**
MEMBER ADD

12:59:03

**Nelson, Reid <reidn@amazon.com>**
MEMBER ADD

12:59:03

CONFIDENTIAL TREATMENT REQUESTED

AMZN_00092943

**Boulis, Anthony <boulis@amazon.com>**
MEMBER ADD

12:59:03

**Srinivasan, Bharath <bharaths@amazon.com>**
MEMBER ADD

12:59:03

**Monachese, Raffaela <raffamon@amazon.it>**
MEMBER ADD

12:59:03

**Muus, Katey <kateymuu@amazon.com>**
MEMBER ADD

12:59:03

**Filippis, Tommaso <tomfil@amazon.lu>**
MEMBER ADD

12:59:03

**Tuladhar, Praju <tuladhar@amazon.com>**
MEMBER ADD

12:59:03

**Baidwan, Nikki <nikbai@amazon.com>**
MEMBER ADD

12:59:03

**Schmitz, Erik <eschmitz@amazon.lu>**
MEMBER ADD

12:59:03

**Leung, Lisa <lileung@amazon.com>**
MEMBER ADD

12:59:03

**Hills, Benjamin <bhills@amazon.com>**
MEMBER ADD

12:59:03

**Coleman, Taft <taftcole@amazon.com>**
MEMBER ADD

12:59:03

**Mason, Llew <llmason@amazon.com>**
MEMBER ADD

12:59:03

**England, Mark <marengl@amazon.co.uk>**
MEMBER ADD

12:59:03

**Meeting (Bot) <meeting@chime.bot>**
MEMBER ADD

12:59:04

**Soni (Finance), Shraddha <sdsoni@amazon.com>**
MEMBER ADD

12:59:04

**Gotschall, Mary Pat <marypat@amazon.com>**
MEMBER ADD

12:59:04

**Goeltz, Benjamin <bgoeltz@amazon.com>**
MEMBER ADD

13:00:45

**Balakrishnan, Sanjay <bsanjay@amazon.co.uk>**
morning nikki! would you happen to have a word version ?

13:00:56

**Balakrishnan, Sanjay <bsanjay@amazon.co.uk>**
much appreciated!

13:01:40

**Mason, Llew <llmason@amazon.com>**
Hey

13:02:33

**Mason, Llew <llmason@amazon.com>**
Reading nwo

AMZN_00092944

13:02:37

**Baidwan, Nikki <nikbai@amazon.com>**
Word version attached here
Prime Account CX Satisfaction-Privileged & Confidential.docx
Prime Account CX Satisfaction-Privileged & Confidential.docx - This file type is not supported for embedded threading.
See attached child.

13:04:32

**Balakrishnan, Sanjay <bsanjay@amazon.co.uk>**
thank you

13:08:53

**Ghani, Jamil <ghanijam@amazon.com>**
yes pls

13:26:09

**Balakrishnan, Sanjay <bsanjay@amazon.co.uk>**
2 mins pls

13:26:10

**Ghani, Jamil <ghanijam@amazon.com>**
ready

13:28:09

**Mason, Llew <llmason@amazon.com>**
Ready

13:28:16

**Amazon Chime <chime+meeting-bot-2@chime.aws>**
MEMBER ADD

13:31:35

**Amazon Chime <chime+meeting-bot-2@chime.aws>**
Gotschall, Mary Pat raised a hand.

13:31:35

**Amazon Chime <chime+meeting-bot-2@chime.aws>**
Gotschall, Mary Pat lowered a hand.

13:32:47

**Amazon Chime <chime+meeting-bot-2@chime.aws>**
Balakrishnan, Sanjay raised a hand.

13:37:32

**Amazon Chime <chime+meeting-bot-2@chime.aws>**
Tuladhar, Praju raised a hand.

13:37:54

**Amazon Chime <chime+meeting-bot-2@chime.aws>**
/md **Raise hand queue**
Balakrishnan, Sanjay
Tuladhar, Praju
*Listed by Tuladhar, Praju*

13:37:59

**Hills, Benjamin <bhills@amazon.com>**
+1 to that, agree

13:38:02

**Hills, Benjamin <bhills@amazon.com>**
agree to that as well

13:40:21

**Amazon Chime <chime+meeting-bot-2@chime.aws>**
Leung, Lisa raised a hand.

13:40:42

**Amazon Chime <chime+meeting-bot-2@chime.aws>**
/md **Raise hand queue**
Balakrishnan, Sanjay
Tuladhar, Praju
Leung, Lisa
*Listed by Hills, Benjamin*

13:42:32

**Hills, Benjamin <bhills@amazon.com>**
agree

13:44:18

**Amazon Chime <chime+meeting-bot-2@chime.aws>**
Leung, Lisa lowered a hand.

13:50:27

**Amazon Chime <chime+meeting-bot-2@chime.aws>**
Nelson, Reid raised a hand.

13:51:43

**Gotschall, Mary Pat <marypat@amazon.com>**
+1 on both comments (trust and NPS isn't a reliable indicator)

13:52:38

**Nelson, Reid <reidn@amazon.com>**
(I did see "I love this membership program" for Non-Prime customers in XCM brand tracker btw)

13:55:05

**Amazon Chime <chime+meeting-bot-2@chime.aws>**
Nelson, Reid lowered a hand.

13:56:14

**Mason, Llew <llmason@amazon.com>**
+1

13:57:11

**Amazon Chime <chime+meeting-bot-2@chime.aws>**
/md **Raise hand queue**
Balakrishnan, Sanjay
Tuladhar, Praju
*Listed by Balakrishnan, Sanjay*

13:57:42

**Amazon Chime <chime+meeting-bot-2@chime.aws>**
Balakrishnan, Sanjay lowered a hand.

13:57:44

**Amazon Chime <chime+meeting-bot-2@chime.aws>**
Balakrishnan, Sanjay raised a hand.

13:57:45

**Amazon Chime <chime+meeting-bot-2@chime.aws>**
Balakrishnan, Sanjay lowered a hand.

13:57:47

**Nelson, Reid <reidn@amazon.com>**
One final thought: How does Prime Tenet 9 inform these debates? "Prime doesn't impede innovation or improvements for non-Prime customers."
https://w.amazon.com/bin/view/AmazonPrime/Prime_Tenets/

14:04:32

**Hills, Benjamin <bhills@amazon.com>**
we have EU in the benchmarking

14:11:57

**Ghani, Jamil <ghanijam@amazon.com>**
i need to drop. Thank you. sent my notes by email

14:12:59

**Srinivasan, Bharath <bharaths@amazon.com>**
I need to drop too

14:15:25

**Schmitz, Erik <eschmitz@amazon.lu>**
MEMBER REMOVE

14:16:00

**Leung, Lisa <lileung@amazon.com>**
MEMBER REMOVE

14:16:00

**Maheshwari, Siddharth <mahesidd@amazon.com>**
MEMBER REMOVE

14:16:00

**Singh, Manish <singm@amazon.com>**
MEMBER REMOVE

14:16:00

**Baidwan, Nikki <nikbai@amazon.com>**
MEMBER REMOVE

14:16:00

CONFIDENTIAL TREATMENT REQUESTED

AMZN_00092946

**Mason, Llew <llmason@amazon.com>**
MEMBER REMOVE

14:16:00

**Davidai, Nahshon <ndavidai@amazon.com>**
MEMBER REMOVE

14:16:00

**Ghani, Jamil <ghanijam@amazon.com>**
MEMBER REMOVE

14:16:00

**Boulis, Anthony <boulis@amazon.com>**
MEMBER REMOVE

14:16:00

**Meeting (Bot) <meeting@chime.bot>**
MEMBER REMOVE

14:16:00

**Srinivasan, Bharath <bharaths@amazon.com>**
MEMBER REMOVE

14:16:00

**Filippis, Tommaso <tomfil@amazon.lu>**
MEMBER REMOVE

14:16:00

**Hankin, Jediah <jediahh@amazon.com>**
MEMBER REMOVE

14:16:00

**Gotschall, Mary Pat <marypat@amazon.com>**
MEMBER REMOVE

14:16:00

**Hills, Benjamin <bhills@amazon.com>**
MEMBER REMOVE

14:16:00

**Goeltz, Benjamin <bgoeltz@amazon.com>**
MEMBER REMOVE

14:16:00

**Tuladhar, Praju <tuladhar@amazon.com>**
MEMBER REMOVE

14:16:00

**Moeller, Caroline <cmmoell@amazon.com>**
MEMBER REMOVE

14:16:00

**Soni (Finance), Shraddha <sdsoni@amazon.com>**
MEMBER REMOVE

14:16:01

**Nelson, Reid <reidn@amazon.com>**
MEMBER REMOVE

14:16:01

**Coleman, Taft <taftcole@amazon.com>**
MEMBER REMOVE

14:16:01

**England, Mark <marengl@amazon.co.uk>**
MEMBER REMOVE

14:16:01

**Amazon Chime <chime+meeting-bot-2@chime.aws>**
MEMBER REMOVE

14:16:01

**Muus, Katey <kateymuu@amazon.com>**
MEMBER REMOVE

14:16:01

**Monachese, Raffaela <raffamon@amazon.it>**
MEMBER REMOVE

14:16:01

**Balakrishnan, Sanjay <bsanjay@amazon.co.uk>**
MEMBER REMOVE

AMZN_00092947

14:16:01

**End Thread**

**Thread Statistics**

Thread Item Count 86

Participation Event Count 52

Instant Message Count 34



CONFIDENTIAL TREATMENT REQUESTED



CONFIDENTIAL TREATMENT REQUESTED

AMZN_00092950



CONFIDENTIAL TREATMENT REQUESTED

AMZN_00092951



CONFIDENTIAL TREATMENT REQUESTED

AMZN_00092952



CONFIDENTIAL TREATMENT REQUESTED



CONFIDENTIAL TREATMENT REQUESTED

AMZN_00092954



CONFIDENTIAL TREATMENT REQUESTED   AMZN_00092955



CONFIDENTIAL TREATMENT REQUESTED

AMZN_00092956



CONFIDENTIAL TREATMENT REQUESTED

AMZN_00092957



CONFIDENTIAL TREATMENT REQUESTED
AMZN_00092958



CONFIDENTIAL TREATMENT REQUESTED



AMZN_00092960

CONFIDENTIAL TREATMENT REQUESTED

AMZN_00092961

CONFIDENTIAL TREATMENT REQUESTED

AMZN_00092962

CONFIDENTIAL TREATMENT REQUESTED

AMZN_00092963

CONFIDENTIAL TREATMENT REQUESTED

AMZN_00092964

CONFIDENTIAL TREATMENT REQUESTED

AMZN_00092965

CONFIDENTIAL TREATMENT REQUESTED

AMZN_00092966

CONFIDENTIAL TREATMENT REQUESTED

# Attachment 2

IC Demonstrative
CONFIDENTIAL

# Chat with "Moeller, Caroline" <cmmoell@amazon.com> on October 5, 2020

cmmoell@amazon.com & reidn@amazon.com
Earliest item: 2020-10-05 14:58:34
Latest item: 2020-10-05 17:24:32
All Parties:

**Nelson, Reid <reidn@amazon.com>**
Moeller, Caroline <cmmoell@amazon.com>

**Monday 05 October 2020**

**Nelson, Reid <reidn@amazon.com>**
Hey! Heads up!

14:58:34

**Nelson, Reid <reidn@amazon.com>**
We're moving our VP review to later in Nov

14:58:40

**Nelson, Reid <reidn@amazon.com>**
Totally screwed up and scheduled it THE DAY AFTER THE ELECTION

14:58:55

**Moeller, Caroline <cmmoell@amazon.com>**
hahah

14:58:58

**Moeller, Caroline <cmmoell@amazon.com>**
understandable!!

14:59:05

**Nelson, Reid <reidn@amazon.com>**
Can you imagine??

14:59:10

**Nelson, Reid <reidn@amazon.com>**
I mean, people are either going to be really bummed, or really happy, and many people likely hungover

14:59:28

**Moeller, Caroline <cmmoell@amazon.com>**
the day after the 2016 election was so depressing at work... you would not have people in a good headspace

14:59:36

**Nelson, Reid <reidn@amazon.com>**
Soooooooo depressing

14:59:42

**Moeller, Caroline <cmmoell@amazon.com>**
fingers crossed it'll be happy / hangovers this year! but either way, not a great day for a meeting where you want to get people to take action on a tough topic

15:00:10

**Nelson, Reid <reidn@amazon.com>**
Totally

15:00:18

**Nelson, Reid <reidn@amazon.com>**
My miss... Slash the EA who was scheduling

15:00:27

**Nelson, Reid <reidn@amazon.com>**
But we're addressing it

15:00:38

**Moeller, Caroline <cmmoell@amazon.com>**
its a good call, i should block off my cal that morning at least

15:00:52

**Nelson, Reid <reidn@amazon.com>**
We only worked it out, because the Books org reached out saying "FYI Naggar is asking us to decline all meetings on Nov3-4"

AMZN_00102776

Ex. A, Page 34 of 164

IC Demonstrative
CONFIDENTIAL

**Nelson, Reid <reidn@amazon.com>**
Thank goodness they reached out as soon as they did, so we weren't reacting to this

15:01:19

**Moeller, Caroline <cmmoell@amazon.com>**
right and you have a bit of time

15:01:32

**Nelson, Reid <reidn@amazon.com>**
Exactly

15:01:36

**Nelson, Reid <reidn@amazon.com>**
I'm gonna ask to move the Katey review as well

15:01:41

**Moeller, Caroline <cmmoell@amazon.com>**
sounds good

15:01:49

**Nelson, Reid <reidn@amazon.com>**
So we have more breathing room, just wanted to give you a heads up.

15:01:55

**Moeller, Caroline <cmmoell@amazon.com>**
appreciate it!

15:02:00

**Nelson, Reid <reidn@amazon.com>**
Also… realllly would love to get research insights / videos in that UPDP launch announcement… Do we need to influence anyone to get some content in there?

15:02:25

**Moeller, Caroline <cmmoell@amazon.com>**
nope! i am working with the launch owner

15:03:22

**Moeller, Caroline <cmmoell@amazon.com>**
going to include related customer frustrations tickets, and the next steps on the pan amazon review

15:04:03

**Moeller, Caroline <cmmoell@amazon.com>**
do you have the new date on that ?

15:04:08

**Nelson, Reid <reidn@amazon.com>**
Not yet, but targeting Nov 30-Dec 4 as of now

15:04:23

**Moeller, Caroline <cmmoell@amazon.com>**
ok thanks

15:04:32

**Nelson, Reid <reidn@amazon.com>**
Perhaps we could just say Q4?

15:04:52

**Nelson, Reid <reidn@amazon.com>**
Keep it vague?

15:05:00

**Moeller, Caroline <cmmoell@amazon.com>**
yeah ill keep it vague

15:05:12

**Nelson, Reid <reidn@amazon.com>**
Sounds great, thanks

15:05:21

**Nelson, Reid <reidn@amazon.com>**
Any chance for a video link?

15:05:28

**Nelson, Reid <reidn@amazon.com>**
If there's one thing that people click on, it's one of the more powerful ones — to watch a real customer getting exposed to the old flows

15:06:13

**Nelson, Reid <reidn@amazon.com>**

AMZN_00102777

| Just a thought :) | IC Demonstrative<br>CONFIDENTIAL |
|---|---|

15:06:24

**Nelson, Reid <reidn@amazon.com>**
Thanks for including us in this

15:06:35

**Moeller, Caroline <cmmoell@amazon.com>**
the bulk of the email is focused on reverting back to BAU, but ill see what makes sense

15:07:05

**Nelson, Reid <reidn@amazon.com>**
Kk thanks!

15:07:32

**Moeller, Caroline <cmmoell@amazon.com>**

15:54:49

**Nelson, Reid <reidn@amazon.com>**

15:55:07

**Nelson, Reid <reidn@amazon.com>**

15:55:20

**Moeller, Caroline <cmmoell@amazon.com>**

15:55:42

**Moeller, Caroline <cmmoell@amazon.com>**

15:56:02

**Nelson, Reid <reidn@amazon.com>**

16:00:23

**Nelson, Reid <reidn@amazon.com>**

16:00:33

**Moeller, Caroline <cmmoell@amazon.com>**

16:00:49

**Nelson, Reid <reidn@amazon.com>**

16:00:52

**Moeller, Caroline <cmmoell@amazon.com>**

16:00:55

**Nelson, Reid <reidn@amazon.com>**

16:01:45

**Moeller, Caroline <cmmoell@amazon.com>**

16:02:23

**Moeller, Caroline <cmmoell@amazon.com>**

16:02:29

**Nelson, Reid <reidn@amazon.com>**
Sounds good. I'm happy to follow whatever the guidance is.

16:02:38

**Moeller, Caroline <cmmoell@amazon.com>**
i agree to treat it as p&c

16:02:40

**Nelson, Reid <reidn@amazon.com>**

IC Demonstrative
CONFIDENTIAL

If I have to P&C less things, that's easier

16:02:45

**Moeller, Caroline <cmmoell@amazon.com>**

no i think just keep doing it

16:02:47

**Nelson, Reid <reidn@amazon.com>**

Cool, will do.,

16:02:51

**Moeller, Caroline <cmmoell@amazon.com>**

thats what prime leadership expects now anyways

16:02:57

**Nelson, Reid <reidn@amazon.com>**

Yup, I'd guess as much.

16:03:06

**Nelson, Reid <reidn@amazon.com>**

Thanks for getting our links in there! And the call out to the pan-Amazon initiative

16:48:41

**Moeller, Caroline <cmmoell@amazon.com>**

:)

16:48:57

**Nelson, Reid <reidn@amazon.com>**

I forwarded it (retaining privilege) to Llew and Sharon, and some other key folks in CE. Llew replied:
"Those are some really nice clarity improvements!"

16:49:03

**Nelson, Reid <reidn@amazon.com>**

Big day!! So excited!

16:49:26

**Moeller, Caroline <cmmoell@amazon.com>**

awesome! are you able to fwd me llew's feedback ? would love to have that saved, since we reviewed the neil clarity doc with him as well

16:49:53

**Nelson, Reid <reidn@amazon.com>**

There ya go!

16:51:05

**Nelson, Reid <reidn@amazon.com>**

Re- [Privileged & Confidential] Update- US UPDP Shipping Upsells - Clarity Updates.eml

Re- [Privileged & Confidential] Update- US UPDP Shipping Upsells - Clarity Updates.eml - This file type is not supported for embedded threading. See attached child.

16:51:15

**Moeller, Caroline <cmmoell@amazon.com>**

thanks!

16:52:02

**Nelson, Reid <reidn@amazon.com>**

I thought about replying all, but figured I'd just keep it tight to CE

16:52:20

**Moeller, Caroline <cmmoell@amazon.com>**

yeah that works

16:52:58

**Nelson, Reid <reidn@amazon.com>**

Are we thinking we're going to go back to digital-only?

16:53:01

**Nelson, Reid <reidn@amazon.com>**

With Peak?

16:53:05

**Nelson, Reid <reidn@amazon.com>**

Trying to understand Jamil's reply just now

16:53:12

**Nelson, Reid <reidn@amazon.com>**

DEX promises gonna go crazy again?

16:53:25

**Moeller, Caroline <cmmoell@amazon.com>**

CONFIDENTIAL TREATMENT REQUESTED

he's talking about the delivery messaging side

IC Demonstrative
CONFIDENTIAL
16:53:35

**Moeller, Caroline <cmmoell@amazon.com>**
so no implications for clarity

16:53:50

**Moeller, Caroline <cmmoell@amazon.com>**
but yeah based on our framework for when we message 'fast free delivery' or when we dont based on the delays dex experiences

16:54:24

**Nelson, Reid <reidn@amazon.com>**
Ohhh gotcha

16:54:41

**Nelson, Reid <reidn@amazon.com>**
So like, flip to "Free delivery, no threshold"

16:54:52

**Nelson, Reid <reidn@amazon.com>**
When we're in slow periods?

16:54:56

**Nelson, Reid <reidn@amazon.com>**
*slow promise periods

16:55:10

**Moeller, Caroline <cmmoell@amazon.com>**
right, basically

16:55:19

**Nelson, Reid <reidn@amazon.com>**
Makes sense

16:55:23

**Moeller, Caroline <cmmoell@amazon.com>**
which was why we had to put a weblab takeover based on the digital upsells in the first place

16:55:34

**Nelson, Reid <reidn@amazon.com>**
Totally makes sense

16:55:58

**Nelson, Reid <reidn@amazon.com>**
Well, digital toast to you.

16:56:10

**Nelson, Reid <reidn@amazon.com>**
Seriously, 4+ years in the making on this

16:56:17

**Moeller, Caroline <cmmoell@amazon.com>**
haha - ive only been on it this year and it felt like it took long enough!

16:56:33

**Nelson, Reid <reidn@amazon.com>**
Probably a few gray hairs for me with Greg Greely reviews, Neil reviews, Russ, etc.

16:56:36

**Moeller, Caroline <cmmoell@amazon.com>**
im sure

16:56:43

**Nelson, Reid <reidn@amazon.com>**
Lots of comments like "this is clickbait…don't do clickbait…but still hit your numbers"

16:56:59

**Moeller, Caroline <cmmoell@amazon.com>**
glad we can have these updates rolled out ahead of our subscription review, so we can focus on other topics

16:57:01

**Moeller, Caroline <cmmoell@amazon.com>**
/md
In reply to message:
>Lots of comments like "this is clickbait…don't do clickbait…but still hit your numbers"
yep … business goals need to incentivize us to make clarity changes, not make it a yearlong battle to change a single element

16:57:33

AMZN_00102780

IC Demonstrative
CONFIDENTIAL

**Nelson, Reid <reidn@amazon.com>**
Soooo glad for these updates

16:57:35

**Nelson, Reid <reidn@amazon.com>**
It helps make this a precedent

16:57:48

**Nelson, Reid <reidn@amazon.com>**
I can now go to Amazon Music and say "It needs to be a BUTTON"

16:57:58

**Moeller, Caroline <cmmoell@amazon.com>**
hahah

16:58:03

**Moeller, Caroline <cmmoell@amazon.com>**
we aligned with our leadership on 'UX standard button with equal weight'

16:58:27

**Nelson, Reid <reidn@amazon.com>**
Jamil was in the first VP meeting where I showed videos of customers being tricked, not seeing that link, in 2017

16:59:07

**Nelson, Reid <reidn@amazon.com>**
So you can imagine how stoked I am to see him 180

16:59:20

**Moeller, Caroline <cmmoell@amazon.com>**
hahah

16:59:29

**Moeller, Caroline <cmmoell@amazon.com>**
it's been a long journey, and we're still on it!

16:59:43

**Nelson, Reid <reidn@amazon.com>**
Glad to have your help in all this

16:59:52

**Moeller, Caroline <cmmoell@amazon.com>**
but yeah im really happy with the alignment and support we've gotten this year

16:59:57

**Nelson, Reid <reidn@amazon.com>**
It was way too adversarial with past teams

17:00:00

**Nelson, Reid <reidn@amazon.com>**
The Pranav era was a rough one

17:00:15

**Moeller, Caroline <cmmoell@amazon.com>**
yeah, and constant escalations are no fun for anyone

17:00:23

**Moeller, Caroline <cmmoell@amazon.com>**
haha i have heard

17:00:26

**Nelson, Reid <reidn@amazon.com>**
Exactly, it was not the way we wanted to do this

17:00:32

**Nelson, Reid <reidn@amazon.com>**
But here we are, it's all good, and now we've got the right chess pieces in play to make more moves

17:01:07

**Moeller, Caroline <cmmoell@amazon.com>**
yes - a lot more is happening as well

17:01:20

**Nelson, Reid <reidn@amazon.com>**
Gonna go get some fresh air and frolick around in excitement lol

17:01:27

**Moeller, Caroline <cmmoell@amazon.com>**
remind me later emails, enhanced subscription summary widgets, better confirmation of prime membership ...

17:01:48

**Moeller, Caroline <cmmoell@amazon.com>**

CONFIDENTIAL TREATMENT REQUESTED                                          AMZN_00102781

enjoy!

IC Demonstrative
CONFIDENTIAL

17:01:54

**Nelson, Reid <reidn@amazon.com>**
Yes!!

17:01:55

**Nelson, Reid <reidn@amazon.com>**
All those things!

17:01:58

**Nelson, Reid <reidn@amazon.com>**
And a big spotlight on Ilyiad

17:02:06

**Moeller, Caroline <cmmoell@amazon.com>**
yes - that is a big focus for 2021

17:02:21

**Nelson, Reid <reidn@amazon.com>**
And thanks! Have a great afternoon :)

17:02:25

**Moeller, Caroline <cmmoell@amazon.com>**
can connect w you separately but essentially our vision is for prime central (the page before) to have all membership
solutions 1 click away

17:02:47

**Moeller, Caroline <cmmoell@amazon.com>**
plan switching, new benefits ,cancelling, pausing, etc

17:03:06

**Nelson, Reid <reidn@amazon.com>**
auto-renew toggle?

17:03:12

**Nelson, Reid <reidn@amazon.com>**
;)

17:03:16

**Moeller, Caroline <cmmoell@amazon.com>**
haha - maybe not that yet

17:03:24

**Moeller, Caroline <cmmoell@amazon.com>**
but we'll see

17:03:26

**Nelson, Reid <reidn@amazon.com>**
We'll put it in our north star mocks

17:03:32

**Nelson, Reid <reidn@amazon.com>**
Sometimes it helps to see this stuff

17:03:44

**Moeller, Caroline <cmmoell@amazon.com>**
on that topic - do any other subscription programs do that ?

17:03:56

**Nelson, Reid <reidn@amazon.com>**
Don't think so!

17:04:02

**Moeller, Caroline <cmmoell@amazon.com>**
i am trying to think of my subscriptions and cant think of any

17:04:07

**Nelson, Reid <reidn@amazon.com>**
Though I haven't done a deep dive on HBO, Netflix, etc, etc

17:04:19

**Moeller, Caroline <cmmoell@amazon.com>**
they dont

17:04:28

**Moeller, Caroline <cmmoell@amazon.com>**
but maybe a provocative north star for the most customer obsessed company

17:04:44

**Nelson, Reid <reidn@amazon.com>**

CONFIDENTIAL TREATMENT REQUESTED

AMZN_00102782

IC Demonstrative
CONFIDENTIAL

I did get tricked with Bumble where I had to do one of those stupid subscription Add Ons because I didn't reach someone before the timer expired

**Nelson, Reid <reidn@amazon.com>**
17:05:07

And then had a hell of a time figuring out where to turn auto-renew off
17:05:20

**Moeller, Caroline <cmmoell@amazon.com>**
haha
17:05:32

**Moeller, Caroline <cmmoell@amazon.com>**
yeah i just had to call disney plus today
17:05:39

**Nelson, Reid <reidn@amazon.com>**
It's a legitimate customer need
17:05:41

**Moeller, Caroline <cmmoell@amazon.com>**
they make it annoying
17:05:44

**Nelson, Reid <reidn@amazon.com>**
We should set the bar for the industry
17:05:46

**Moeller, Caroline <cmmoell@amazon.com>**
thats a great vision for the doc
17:05:56

**Nelson, Reid <reidn@amazon.com>**
Or at least, that'll be the provocation / north star ;)
17:05:59

**Moeller, Caroline <cmmoell@amazon.com>**
have that be the bar instead of "what's legally required"
17:06:12

**Nelson, Reid <reidn@amazon.com>**
And "What do other subscriptions do?"
17:06:26

**Nelson, Reid <reidn@amazon.com>**
"I don't think Netflix does that…"
17:06:34

**Nelson, Reid <reidn@amazon.com>**
It's like, the bar is already low
17:06:42

**Nelson, Reid <reidn@amazon.com>**
But yeah, what I like about this doc is that we can go big with our proposals
17:06:59

**Nelson, Reid <reidn@amazon.com>**
I really like the idea of "We set the bar for the industry"… I'm going to suggest that AmyLeigh and Laurence add that as a tenet
17:07:30

**Nelson, Reid <reidn@amazon.com>**
We have something close to that, about not doing just the legal minimum, but I think we actually need something about competitors
17:07:56

**Moeller, Caroline <cmmoell@amazon.com>**
yeah
17:08:28

**Moeller, Caroline <cmmoell@amazon.com>**
in the same way that we've set the bar for customer service
17:08:37

**Nelson, Reid <reidn@amazon.com>**
Updated the tenet. It's a little wordy, but a start. We can all review as a group on Wednesday
17:24:14

**Nelson, Reid <reidn@amazon.com>**
Alright, finally going outside lol

IC Demonstrative
CONFIDENTIAL

**Nelson, Reid <reidn@amazon.com>**

Have a good one!!

17:24:23

**Moeller, Caroline <cmmoell@amazon.com>**

you too!

17:24:32

**End Thread**

**Thread Statistics**

Instant Message Count 153

# Attachment 3

**Rottner, Adam**

| | |
|---|---|
| **From:** | Capuano, Marc <MCapuano@cov.com> |
| **Sent:** | Friday, December 8, 2023 12:31 PM |
| **To:** | Mendelson, Evan; Jerjian, Olivia; Nardini, Thomas; Hoffman, Elena; Zwonik, Ryan; Frech, Jacob; Mejia-Portillo, Johana; Awad, Yara |
| **Cc:** | Howard, Jim; Payson, Kenneth; jreiter@hueston.com; mkaba@hueston.com; Flahive Wu, Laura; Kelly, Kevin; Kim, Laura; Graubert, John; Anthony, Stephen; Hall, John; Rodgers, Megan; jhueston@hueston.com |
| **Subject:** | RE: FTC v. Amazon - Document Request 1 |

Counsel,

Given the scope of various CID productions across different matters, we are continuing to investigate the harmonization of redactions.  Please continue to segregate the documents sent earlier this week.  We will follow up with you next week.

Thanks,

**Marc Capuano**
Pronouns: He/Him/His

Covington & Burling LLP
One CityCenter, 850 Tenth Street, NW
Washington, DC 20001-4956
T +1 202 662 5440 | mcapuano@cov.com
www.cov.com

# COVINGTON

This message is from a law firm and may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply e-mail that this message has been inadvertently transmitted to you and delete this e-mail from your system. Thank you for your cooperation.

**From:** Mendelson, Evan <emendelson@ftc.gov>
**Sent:** Thursday, December 7, 2023 1:35 PM
**To:** Capuano, Marc <MCapuano@cov.com>; Jerjian, Olivia <ojerjian@ftc.gov>; Nardini, Thomas <tnardini@ftc.gov>; Hoffman, Elena <ehoffman@ftc.gov>; Zwonik, Ryan <rzwonik@ftc.gov>; Frech, Jacob <jfrech@ftc.gov>; Mejia-Portillo, Johana <jmejiaportillo@ftc.gov>; Awad, Yara <yawad@ftc.gov>
**Cc:** Howard, Jim <JimHoward@dwt.com>; Payson, Kenneth <KennethPayson@dwt.com>; jreiter@hueston.com; mkaba@hueston.com; Flahive Wu, Laura <lflahivewu@cov.com>; Kelly, Kevin <Kkelly@cov.com>; Kim, Laura <LKim@cov.com>; Graubert, John <jgraubert@cov.com>; Anthony, Stephen <santhony@cov.com>; Hall, John <jhall@cov.com>; Rodgers, Megan <mrodgers@cov.com>; jhueston@hueston.com
**Subject:** RE: FTC v. Amazon - Document Request 1

[EXTERNAL]
Marc,

Could you please let us know by noon tomorrow whether Amazon is asserting that any of the unredacted portions of the documents sent on Wednesday night reveal information that is attorney-client privileged or attorney work product?  In the meantime, we are not reviewing the documents.

1

Thanks,
Evan

Evan M. Mendelson
Federal Trade Commission
Bureau of Consumer Protection
Enforcement Division
600 Pennsylvania Avenue, NW, CC-9528
Washington, DC  20580
Phone: (202) 326-3320
Fax:  (202) 326-3197

---

**From:** Capuano, Marc <MCapuano@cov.com>
**Sent:** Thursday, December 7, 2023 12:19 PM
**To:** Mendelson, Evan <emendelson@ftc.gov>; Jerjian, Olivia <ojerjian@ftc.gov>; Nardini, Thomas <tnardini@ftc.gov>; Hoffman, Elena <ehoffman@ftc.gov>; Zwonik, Ryan <rzwonik@ftc.gov>; Frech, Jacob <jfrech@ftc.gov>; Mejia-Portillo, Johana <jmejiaportillo@ftc.gov>; Awad, Yara <yawad@ftc.gov>
**Cc:** Howard, Jim <JimHoward@dwt.com>; Payson, Kenneth <KennethPayson@dwt.com>; jreiter@hueston.com; mkaba@hueston.com; Flahive Wu, Laura <lflahivewu@cov.com>; Kelly, Kevin <Kkelly@cov.com>; Kim, Laura <LKim@cov.com>; Graubert, John <jgraubert@cov.com>; Anthony, Stephen <santhony@cov.com>; Hall, John <jhall@cov.com>; Rodgers, Megan <mrodgers@cov.com>; jhueston@hueston.com
**Subject:** RE: FTC v. Amazon - Document Request 1

Counsel,

We had a technical issue with some of the redactions in the informal production that we provided you on Tuesday.  We will be following up with an updated production set and ask that you please disregard and destroy the previous informal production.  We anticipate providing the updated documents by early next week.

Thank you,
Marc

**Marc Capuano**
Pronouns: He/Him/His

Covington & Burling LLP
One CityCenter, 850 Tenth Street, NW
Washington, DC 20001-4956
T +1 202 662 5440 | mcapuano@cov.com
www.cov.com

# COVINGTON

This message is from a law firm and may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply e-mail that this message has been inadvertently transmitted to you and delete this e-mail from your system. Thank you for your cooperation.

---

**From:** Mendelson, Evan <emendelson@ftc.gov>
**Sent:** Tuesday, December 5, 2023 4:19 PM
**To:** Capuano, Marc <MCapuano@cov.com>; Jerjian, Olivia <ojerjian@ftc.gov>; Nardini, Thomas <tnardini@ftc.gov>; Hoffman, Elena <ehoffman@ftc.gov>; Zwonik, Ryan <rzwonik@ftc.gov>; Frech, Jacob <jfrech@ftc.gov>; Mejia-Portillo, Johana <jmejiaportillo@ftc.gov>; Awad, Yara <yawad@ftc.gov>

2

**Cc:** Howard, Jim <JimHoward@dwt.com>; Payson, Kenneth <KennethPayson@dwt.com>; jreiter@hueston.com; mkaba@hueston.com; Flahive Wu, Laura <lflahivewu@cov.com>; Kelly, Kevin <Kkelly@cov.com>; Kim, Laura <LKim@cov.com>; Graubert, John <jgraubert@cov.com>; Anthony, Stephen <santhony@cov.com>; Hall, John <jhall@cov.com>; Rodgers, Megan <mrodgers@cov.com>; jhueston@hueston.com
**Subject:** RE: FTC v. Amazon - Document Request 1

[EXTERNAL]

Thanks, Marc.  Assuming we receive the Kiteworks link today, we anticipate responding to your letters on Thursday or Friday.

Evan M. Mendelson
Federal Trade Commission
Bureau of Consumer Protection
Enforcement Division
600 Pennsylvania Avenue, NW, CC-9528
Washington, DC  20580
Phone: (202) 326-3320
Fax:  (202) 326-3197

---

**From:** Capuano, Marc <MCapuano@cov.com>
**Sent:** Tuesday, December 5, 2023 2:10 PM
**To:** Mendelson, Evan <emendelson@ftc.gov>; Jerjian, Olivia <ojerjian@ftc.gov>; Nardini, Thomas <tnardini@ftc.gov>; Hoffman, Elena <ehoffman@ftc.gov>; Zwonik, Ryan <rzwonik@ftc.gov>; Frech, Jacob <jfrech@ftc.gov>; Mejia-Portillo, Johana <jmejiaportillo@ftc.gov>; Awad, Yara <yawad@ftc.gov>
**Cc:** Howard, Jim <JimHoward@dwt.com>; Payson, Kenneth <KennethPayson@dwt.com>; jreiter@hueston.com; mkaba@hueston.com; Flahive Wu, Laura <lflahivewu@cov.com>; Kelly, Kevin <Kkelly@cov.com>; Kim, Laura <LKim@cov.com>; Graubert, John <jgraubert@cov.com>; Anthony, Stephen <santhony@cov.com>; Hall, John <jhall@cov.com>; Rodgers, Megan <mrodgers@cov.com>; jhueston@hueston.com
**Subject:** RE: FTC v. Amazon - Document Request 1

Counsel,

Please see the attached letter.  We will follow up separately with a Kiteworks link with the documents.

Additionally, we are reviewing IC-3 and will follow up separately.

Thank you,
Marc

**Marc Capuano**
Pronouns: He/Him/His

Covington & Burling LLP
One CityCenter, 850 Tenth Street, NW
Washington, DC 20001-4956
T +1 202 662 5440 | mcapuano@cov.com
www.cov.com

# COVINGTON

This message is from a law firm and may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply e-mail that this message has been inadvertently transmitted to you and delete this e-mail from your system. Thank you for your cooperation.

3

**From:** Mendelson, Evan <emendelson@ftc.gov>
**Sent:** Friday, December 1, 2023 2:53 PM
**To:** Capuano, Marc <MCapuano@cov.com>; Flahive Wu, Laura <lflahivewu@cov.com>; Kelly, Kevin <Kkelly@cov.com>; Kim, Laura <LKim@cov.com>; Graubert, John <jgraubert@cov.com>; Anthony, Stephen <santhony@cov.com>; Hall, John <jhall@cov.com>; Rodgers, Megan <mrodgers@cov.com>; jhueston@hueston.com; mkaba@hueston.com; jreiter@hueston.com; Payson, Kenneth <KennethPayson@dwt.com>; Howard, Jim <JimHoward@dwt.com>; Powar, Olivia (OliviaPowar@dwt.com) <OliviaPowar@dwt.com>
**Cc:** Jerjian, Olivia <ojerjian@ftc.gov>; Nardini, Thomas <tnardini@ftc.gov>; Hoffman, Elena <ehoffman@ftc.gov>; Zwonik, Ryan <rzwonik@ftc.gov>; Frech, Jacob <jfrech@ftc.gov>; Mejia-Portillo, Johana <jmejiaportillo@ftc.gov>; Awad, Yara <yawad@ftc.gov>
**Subject:** RE: FTC v. Amazon - Document Request 1

[EXTERNAL]
Counsel,

We are following up to check on when you anticipate providing the less-redaction versions of the documents listed in my email below.

Additionally, could you please take a second look at IC-3 (which we did not flag in our emails below) and confirm that you intend to assert the document is fully privileged?  We are flagging it because your log states that it is a Headwinds document, which you generally have not fully withheld, and because Mr. England's description (Dkt. #52, para. 27) appears to describe only certain sections of the document as privileged.  The privilege log entry ("draft document conveying information to assist counsel provide legal advice . . .") also does not appear to match Mr. England's description ("document reflects legal advice").

Thanks,
Evan

Evan M. Mendelson
Federal Trade Commission
Bureau of Consumer Protection
Enforcement Division
600 Pennsylvania Avenue, NW, CC-9528
Washington, DC  20580
Phone: (202) 326-3320
Fax:  (202) 326-3197

**From:** Mendelson, Evan
**Sent:** Monday, November 20, 2023 12:13 PM
**To:** Capuano, Marc <MCapuano@cov.com>; Flahive Wu, Laura <lflahivewu@cov.com>; Kelly, Kevin <Kkelly@cov.com>; Kim, Laura <LKim@cov.com>; Graubert, John <jgraubert@cov.com>; Anthony, Stephen <santhony@cov.com>; Hall, John <jhall@cov.com>; Rodgers, Megan <mrodgers@cov.com>; jhueston@hueston.com; mkaba@hueston.com; jreiter@hueston.com; Payson, Kenneth <KennethPayson@dwt.com>; Howard, Jim <JimHoward@dwt.com>; Powar, Olivia (OliviaPowar@dwt.com) <OliviaPowar@dwt.com>
**Cc:** Jerjian, Olivia <ojerjian@ftc.gov>; Nardini, Thomas <tnardini@ftc.gov>; Hoffman, Elena <ehoffman@ftc.gov>; Zwonik, Ryan <rzwonik@ftc.gov>; Frech, Jacob <jfrech@ftc.gov>
**Subject:** RE: FTC v. Amazon - Document Request 1

Counsel,

Thank you for your letter, which we are reviewing.  In response to your offer at the top of page 7, we confirm that we will not argue that Amazon's removal of redactions from IC-7, IC-8, IC-10, IC-11, IC-12, IC-14, IC-16, IC-23, IC-24, IC-25, IC-

4

26, IC-27, IC-28, IC-32, IC-33, IC-38, IC-41, IC-42, IC-43, IC-44, IC-45, IC-47, and IC-49 operates as a subject matter waiver of other communications made at or related to the May 6 Meeting.

Please produce the less-redacted versions of these documents as soon as possible, so that we can determine whether there remains any dispute as to them.

Our email from the morning of November 17 listed three other documents (IC-13, IC-15, IC-29) that may fall into the same category as those listed above.  It appears from Mr. England's declaration as though IC-13 and IC-15 are copies of IC-7.  For these three documents, we agree to the same condition as above—Amazon's production of a less-redacted version of the documents will not operate as a waiver.

Evan

Evan M. Mendelson
Federal Trade Commission
Bureau of Consumer Protection
Enforcement Division
600 Pennsylvania Avenue, NW, CC-9528
Washington, DC  20580
Phone: (202) 326-3320
Fax:  (202) 326-3197

---

**From:** Capuano, Marc <MCapuano@cov.com>
**Sent:** Friday, November 17, 2023 7:21 PM
**To:** Mendelson, Evan <emendelson@ftc.gov>; Flahive Wu, Laura <lflahivewu@cov.com>; Kelly, Kevin <Kkelly@cov.com>; Kim, Laura <LKim@cov.com>; Graubert, John <jgraubert@cov.com>; Anthony, Stephen <santhony@cov.com>; Hall, John <jhall@cov.com>; Rodgers, Megan <mrodgers@cov.com>; jhueston@hueston.com; mkaba@hueston.com; jreiter@hueston.com; Payson, Kenneth <KennethPayson@dwt.com>; Howard, Jim <JimHoward@dwt.com>; Powar, Olivia (OliviaPowar@dwt.com) <OliviaPowar@dwt.com>
**Cc:** Jerjian, Olivia <ojerjian@ftc.gov>; Nardini, Thomas <tnardini@ftc.gov>; Hoffman, Elena <ehoffman@ftc.gov>; Zwonik, Ryan <rzwonik@ftc.gov>; Frech, Jacob <jfrech@ftc.gov>
**Subject:** RE: FTC v. Amazon - Document Request 1

Counsel,

Please see the attached correspondence.  Have a nice weekend.

Marc

**Marc Capuano**
Pronouns: He/Him/His

Covington & Burling LLP
One CityCenter, 850 Tenth Street, NW
Washington, DC 20001-4956
T +1 202 662 5440 | mcapuano@cov.com
www.cov.com

**COVINGTON**

This message is from a law firm and may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply e-mail that this message has been inadvertently transmitted to you and delete this e-mail from your system. Thank you for your cooperation.

**From:** Mendelson, Evan <emendelson@ftc.gov>
**Sent:** Friday, November 17, 2023 9:55 AM
**To:** Flahive Wu, Laura <lflahivewu@cov.com>; Kelly, Kevin <Kkelly@cov.com>; Kim, Laura <LKim@cov.com>; Graubert, John <jgraubert@cov.com>; Anthony, Stephen <santhony@cov.com>; Hall, John <jhall@cov.com>; Rodgers, Megan <mrodgers@cov.com>; Capuano, Marc <MCapuano@cov.com>; jhueston@hueston.com; mkaba@hueston.com; jreiter@hueston.com; Payson, Kenneth <KennethPayson@dwt.com>; Howard, Jim <JimHoward@dwt.com>; Powar, Olivia (OliviaPowar@dwt.com) <OliviaPowar@dwt.com>
**Cc:** Jerjian, Olivia <ojerjian@ftc.gov>; Nardini, Thomas <tnardini@ftc.gov>; Hoffman, Elena <ehoffman@ftc.gov>; Zwonik, Ryan <rzwonik@ftc.gov>; Frech, Jacob <jfrech@ftc.gov>
**Subject:** RE: FTC v. Amazon - Document Request 1

<mark>[EXTERNAL]</mark>
Counsel,

You asked, during our October 30 meet-and-confer, that we follow up regarding documents responsive to the FTC's Request 1 as to which we were seeking additional information regarding the validity of Amazon's privilege claims (setting aside the FTC's waiver arguments).

Prior to that call, our October 24 email (below) identified questions regarding the July 14 Memo and July 14 Presentation, which have the following *in camera* exhibit numbers:  IC4, IC5, IC16, IC17, IC18, IC19, IC20, IC21, IC22, IC31, and IC48.  *See* Questions 6, 7.  In the same email, we asked Amazon to unredact information concerning the company's "determinations" in the following documents:  IC24, IC,25, IC44, IC45, IC23, IC28, IC14, IC26, IC32, IC38, IC41, IC42, IC42, IC49, IC33, IC47, IC8, IC10, IC11, IC12, IC16, and IC27.  *See* Question 10.  Finally, we also asked for information regarding IC2.  *See* Question 11.

You agreed on our October 30 call to follow-up in writing in response to our October 24 email, but have yet to do so.  We reiterate our request for a written response.

In addition to the questions we already have raised, we have one additional question regarding Amazon's underlying privilege claims:

12. Although omitted from Question 10 of our October 24 email, IC7, IC13, IC15, and IC29 appear to be additional documents where Amazon redacted its business "determinations" or "decisions."  We ask that you reevaluate these privilege claims for the same reasons stated in Question 10.

The fact that we do not have questions at this time regarding additional documents should not necessarily be taken as an indication that we accept Amazon's privilege determinations.

Finally, in an effort to narrow the disputes for the Court, we are proposing Amazon agree, for either some or all the Clawed Back Documents, to the use of a "quick peek" procedure akin to that described in the 2006 advisory committee notes to Rule 26.  In particular, Amazon could agree to let FTC counsel conduct a one-time review of certain Clawed Back Documents.  This would allow the FTC both to evaluate Amazon's privilege claims and to decide whether, even if it disagrees with the claims, the documents are not worth bringing to the Court.  This might be most effective for the documents listed in Questions 10-12.  The FTC's review would not amount to a waiver of Amazon's privilege claims, and the FTC would not be permitted to use the documents unless Amazon withdraws its privilege claim or the Court rejects it.  Of course, Amazon has no obligation to agree to this procedure, but we do think it could help narrow the issues.

If any issues relating to Request 1 are not resolved by Tuesday, November 28, we will request a conference with the Court in advance of filing a motion to compel.  As always, we are also available to discuss by phone.

Thanks,

Evan

Evan M. Mendelson
Federal Trade Commission
Bureau of Consumer Protection
Enforcement Division
600 Pennsylvania Avenue, NW, CC-9528
Washington, DC  20580
Phone: (202) 326-3320
Fax:  (202) 326-3197

---

**From:** Mendelson, Evan
**Sent:** Wednesday, October 25, 2023 11:54 AM
**To:** Flahive Wu, Laura <lflahivewu@cov.com>; Kelly, Kevin <Kkelly@cov.com>; Kim, Laura <LKim@cov.com>; Graubert, John <jgraubert@cov.com>; Anthony, Stephen <santhony@cov.com>; Hall, John <jhall@cov.com>; Rodgers, Megan <mrodgers@cov.com>; Capuano, Marc <MCapuano@cov.com>; jhueston@hueston.com; mkaba@hueston.com; jreiter@hueston.com; Payson, Kenneth <KennethPayson@dwt.com>; Howard, Jim <JimHoward@dwt.com>; Powar, Olivia (OliviaPowar@dwt.com) <OliviaPowar@dwt.com>
**Cc:** Jerjian, Olivia <ojerjian@ftc.gov>; Nardini, Thomas <tnardini@ftc.gov>; Hoffman, Elena <ehoffman@ftc.gov>; Zwonik, Ryan <rzwonik@ftc.gov>; Frech, Jacob <jfrech@ftc.gov>
**Subject:** RE: FTC v. Amazon - Document Request 1

Thanks, we'll send an invite for 11 on Monday.

Evan M. Mendelson
Federal Trade Commission
Bureau of Consumer Protection
Enforcement Division
600 Pennsylvania Avenue, NW, CC-9528
Washington, DC  20580
Phone: (202) 326-3320
Fax:  (202) 326-3197

---

**From:** Flahive Wu, Laura <lflahivewu@cov.com>
**Sent:** Wednesday, October 25, 2023 11:34 AM
**To:** Mendelson, Evan <emendelson@ftc.gov>; Kelly, Kevin <Kkelly@cov.com>; Kim, Laura <LKim@cov.com>; Graubert, John <jgraubert@cov.com>; Anthony, Stephen <santhony@cov.com>; Hall, John <jhall@cov.com>; Rodgers, Megan <mrodgers@cov.com>; Capuano, Marc <MCapuano@cov.com>; jhueston@hueston.com; mkaba@hueston.com; jreiter@hueston.com; Payson, Kenneth <KennethPayson@dwt.com>; Howard, Jim <JimHoward@dwt.com>; Powar, Olivia (OliviaPowar@dwt.com) <OliviaPowar@dwt.com>
**Cc:** Jerjian, Olivia <ojerjian@ftc.gov>; Nardini, Thomas <tnardini@ftc.gov>; Hoffman, Elena <ehoffman@ftc.gov>; Zwonik, Ryan <rzwonik@ftc.gov>; Frech, Jacob <jfrech@ftc.gov>
**Subject:** RE: FTC v. Amazon - Document Request 1

Evan,

Counsel for Amazon will be available to confer on Monday between 11 am and 1 pm ET.

Best regards,

Laura

**Laura Flahive Wu**

7

Covington & Burling LLP
One CityCenter, 850 Tenth Street, NW
Washington, DC 20001-4956
T +1 202 662 5982 | lflahivewu@cov.com
www.cov.com

## COVINGTON

This message is from a law firm and may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply e-mail that this message has been inadvertently transmitted to you and delete this e-mail from your system. Thank you for your cooperation.

**From:** Mendelson, Evan <emendelson@ftc.gov>
**Sent:** Tuesday, October 24, 2023 6:41 PM
**To:** Kelly, Kevin <Kkelly@cov.com>; Flahive Wu, Laura <lflahivewu@cov.com>; Kim, Laura <LKim@cov.com>; Graubert, John <jgraubert@cov.com>; Anthony, Stephen <santhony@cov.com>; Hall, John <jhall@cov.com>; Rodgers, Megan <mrodgers@cov.com>; Capuano, Marc <MCapuano@cov.com>; jhueston@hueston.com; mkaba@hueston.com; jreiter@hueston.com; Payson, Kenneth <KennethPayson@dwt.com>; Howard, Jim <JimHoward@dwt.com>; Powar, Olivia <OliviaPowar@dwt.com> <OliviaPowar@dwt.com>
**Cc:** Jerjian, Olivia <ojerjian@ftc.gov>; Nardini, Thomas <tnardini@ftc.gov>; Hoffman, Elena <ehoffman@ftc.gov>; Zwonik, Ryan <rzwonik@ftc.gov>; Frech, Jacob <jfrech@ftc.gov>
**Subject:** FTC v. Amazon - Document Request 1

[EXTERNAL]
Counsel,

Please let us know when you are available to meet and confer regarding the FTC's Document Request 1, which requested that Amazon produce documents it clawed back on privilege grounds during the FTC's investigation (the "Clawed Back Documents").  Amazon stated that it was withholding all documents responsive to Request 1 as privileged.  We are generally available on October 26, 27, and 30 (outside of 1:00-2:00 Eastern).  If the meet-and-confer does not resolve Amazon's privilege objections, we intend to request a conference with the Court in advance of filing a motion to compel or asking the Court to resolve any remaining disputes based on the parties' prior briefing.

As you know, our position is that Amazon either waived privilege as to the Clawed Back Documents or that, in the alternative, *in camera* review is warranted because there are sufficient questions about whether the documents were ever privileged.  Those arguments are laid out in our Motion to Desequester (Dkt. #4) and Reply in support thereof (Dkt. #59).   Additionally, for some documents (identified below in Items 6, 7, 10, 11), we do not believe Amazon has met its burden of supporting its privilege claim; for those documents, we intend to argue that *in camera* review is not necessary to compel production even if the Court finds no waiver.

Below is a non-exhaustive list of the topics we would like to cover:

1.  When, and how, did Amazon discover its purportedly inadvertent productions of the Clawed Back Documents?  It is difficult to see how the Court can evaluate the "promptness" requirement of Rule 502(b) without knowing the answer to these questions.

2.  For which documents did Amazon "learn[] of the privileged nature of the material only after it had conducted its initial review" (Dkt. #50 at 18)?  When, and how, did Amazon learn the documents were privileged?

3.  Does Amazon contend it acted promptly in clawing back what our Motion describes as the May 4 Memo (IC1)?  If so, what facts support that contention, given the 40-day delay between the memo's use as an IH exhibit and your privilege assertion?

8

4. What reasonable steps did Amazon take to prevent the January 5, 2023 production of IC4 (a copy of what our Motion describes as the "July 14 Memo")?  Relatedly, why did Amazon tell the FTC on January 5 that it had determined IC4 was only "partially privileged"?

5. Does Amazon contend it acted promptly in clawing back all other copies of the July 14 Memo 18 days after the January 20 investigational hearing at which Amazon declared the memorandum to be privileged?  If so, what facts support that contention?

6. Who drafted the July 14 memo (IC4) and July 14 presentation (IC5), and to whom were they distributed?  *See* England Decl. (Dkt. #52) ¶ 19 (stating documents "were prepared"—by an unidentified author—and sent to Mark England and Praju Tuladhar, but not identifying other recipients).  Does Amazon contend that the primary purpose of the documents was to request legal advice?

7. On IC31 and IC48, does Amazon contend that Jamil Ghani's handwritten notes are privileged?  *See* England Decl. ¶ 21.  If so, what is the basis for that assertion?

8. Does Amazon contend it acted promptly in clawing back IC40 on February 7, 2023—49 days after the document was marked as an exhibit at the investigational hearing of Dharmesh Mehta?  If so, what facts support that contention?

9. Does Amazon contend it acted promptly in clawing back IC27 on February 7, 2023—21 days after the document was marked as an exhibit at the investigational hearing of Omar Kalim?  If so, what facts support that contention?

10. For the following documents, or certain excerpts thereof, the only privilege justifications included in the Declaration of Mark England (Dkt. #52) are that the documents reflect "determinations made during the May 6 Meeting as the result of legal advice discussed during that meeting":  IC10, IC11, IC12, IC16, and IC27.  We do not see how Amazon's determinations (particularly about its public-facing user flows) could be privileged, even if Amazon considered legal advice in making those determinations.  *See, e.g., Upjohn v. United States*, 449 U.S. 383, 395 ("The privilege only protects disclosure of communications . . . ."); *In re MacBook Keyboard Litig.*, 2020 WL 1265629, at *3 (N.D. Cal. Mar. 17, 2020) ("[S]tanding alone, the fact that Apple determined [Redacted] is not privileged, even if that decision was informed by advice by legal counsel." (alteration in original)).   There are several other documents for which one basis for Amazon's redactions was to protect the same "determinations."  *See* England Decl. ¶¶ 31-32.  We ask that Amazon unredact any redactions made solely to protect Amazon's "determinations."

11. Does Amazon contend that the primary purpose of IC-2 was to seek legal advice?  Did either Mr. England or Mr. Tuladhar respond to the email?  Although not dispositive, the latter question is relevant to whether the email's primary purpose was to obtain legal advice.

Thanks,
Evan

Evan M. Mendelson
Federal Trade Commission
Bureau of Consumer Protection
Enforcement Division
600 Pennsylvania Avenue, NW, CC-9528
Washington, DC  20580
Phone: (202) 326-3320
Fax:  (202) 326-3197

# Attachment 4

# COVINGTON

BEIJING  BOSTON  BRUSSELS  DUBAI  FRANKFURT
JOHANNESBURG  LONDON  LOS ANGELES  NEW YORK
PALO ALTO  SAN FRANCISCO  SEOUL  SHANGHAI  WASHINGTON

Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC  20001-4956
T  +1 202 662 6000

**Via Electronic Mail**                                    November 17, 2023

Evan Mendelson
Division of Enforcement
Federal Trade Commission
600 Pennsylvania Ave., N.W., Suite CC-9528
Washington, D.C. 20580

> **Re:  FTC v. Amazon.com, Inc., No. 2:23-cv-0932-JHC (W.D.
> Wash.) October 30, 2023 Follow-Up**

Counsel:

      Amazon.com, Inc. ("Amazon") writes in response to your October 24 and November 17, 2023 emails and in follow-up to the parties' October 30, 2023 meet-and-confer regarding documents subject to Amazon's privilege claims, raised in response to the FTC's first Request for Production of Documents.  The same documents were the subject of the FTC's Motion to Desequester, which the Court denied on October 23, 2023.  The purpose of this correspondence is to respond to the FTC's inquiries by providing additional information about Amazon's privilege claims, and to clarify the scope of any remaining points of disagreement.  Nothing in this letter is intended to or should be construed to constitute a waiver of Amazon's attorney-client privilege or work product protection asserted in its privilege logs.

      In its Motion to Desequester, the FTC sought full access to 54 documents, 31 of which were produced with minimal redactions.  Amazon documented the clawback of these documents in five letters over the course of the FTC's multi-year investigation.  For the reasons described below, Amazon maintains that its assertions of privilege are valid, that its clawbacks were proper and reasonable, and that no waiver has occurred.  Nonetheless, in the interest of reaching a compromise and avoiding further motion practice, Amazon agrees to revisit certain document redactions, subject to your agreement regarding subject matter waiver.[1]

## I.      Amazon Took Reasonable Steps to Protect Its Privileged Materials

      In its October 24 and November 17 emails, the FTC asked Amazon to provide detailed information regarding the process by which Amazon determined that it had inadvertently produced the privileged documents that it identified in its letters dated January 5, January 13,

---

[1] The FTC has not raised any specific concerns regarding the documents identified in Amazon's November 29, 2022 and April 12, 2023 letters, IC-9 and IC-30, respectively.  Please notify Amazon if the FTC has any concerns about IC-9 or IC-30.

**COVINGTON**

Evan Mendelson
November 17, 2023
Page 2

and February 7, 2023.  While certain details regarding Amazon's review, including the specific steps Amazon's counsel took and the specific information they considered, are protected attorney work product, Amazon is sharing a high-level chronology of relevant events, which underscores the reasonableness of Amazon's actions.

As an overarching matter, and as we stated on the October 30 meet-and-confer, Amazon's actions with respect to the clawbacks were objectively reasonable.  Given the context of the investigation — and the document productions and clawbacks made during it — it is meritless to suggest that clawbacks made within several weeks of Amazon becoming aware of a potential privilege issue constitute a privilege waiver.  *See Transamerica Computer Co. v. Int'l Bus. Machines Corp.*, 573 F.2d 646, 651 (9th Cir. 1978) (affirming order finding no waiver, despite inadvertent production of privileged documents, where defendant had been ordered "to produce a large number of documents . . . in a relatively short time").  As set out below, Amazon followed a prompt and rigorous process upon learning of the potential inadvertent production of privileged materials during the course of investigational hearings ("IHs").  The speed with which Amazon completed its review was affected by the competing demands of a condensed schedule of dozens of IHs; the voluminous nature of Amazon's document productions to the FTC; and the mechanics of dealing with materials produced to the FTC in connection with unrelated matters.

The FTC has not identified any problems with Amazon's clawback process, with the possible exception of it not being quick enough.[2]  Any such suggestion is wrong.  And moreover, the FTC has identified no prejudice it suffered by the clawbacks.  Amazon's clawbacks were objectively reasonable.  It did not waive privilege.

A.      Overview of the Process Behind the January 5, January 13, and February 7 Letters

Amazon made clawbacks within several weeks of becoming aware of the potential inadvertent production of privileged material during IHs.  Those actions are objectively reasonable, particularly given the scale of production and time pressure imposed by FTC staff.

As to each clawed back document, Amazon engaged in a diligent internal review process that reasonably took, at most, several weeks to complete.  Upon discovering potentially privileged documents, Amazon's counsel worked to understand the factual bases for and evaluate potential privilege claims by speaking with additional witnesses and in-house counsel.  Based on these conversations, Amazon was then able to determine that certain documents had been improperly coded as "not privileged."  Shortly after Amazon made this determination, it worked to formally claw back the privileged material and provide updated privilege logs to the FTC.  Because production was ongoing, this process required Amazon to not only investigate whether other similar documents had been improperly coded and produced, but also update its process for reviewing upcoming productions.

---

[2] Amazon does not understand the FTC's November 17, 2023 email to raise any process issues with Amazon's clawbacks.

**COVINGTON**

Evan Mendelson
November 17, 2023
Page 3

Adding to the complexity of this review process, there are often different versions of a single document with different contributors across time. Accordingly, in order to properly protect privileged information, while also giving the FTC the greatest access possible to non-privileged documents, Amazon had to search for different versions and implement privilege calls across multiple versions of documents.

Amazon promptly completed this extensive review process despite an ongoing production of significant scale and time pressure imposed by FTC staff. *See United States v. Wells Fargo Bank, N.A.*, 2015 WL 5051679, at *2 (S.D.N.Y. Aug. 26, 2015) (clawback that occurred "more than six weeks" after party was notified that it had produced privileged documents was not "unreasonable" given "the scale of discovery" in the case). Staff required Amazon to complete dozens of IHs and additional document productions over the course of four months, from October 2022 through January 2023. In order to comply with the FTC's tight schedule in the investigation, Amazon issued documents in rolling productions. Throughout this process, Amazon took reasonable steps to evaluate potential privilege claims and apply privilege determinations systematically despite having to quickly prepare these large, complex productions. At the same time that Amazon was making large, rolling document productions, the FTC was engaged in a significant number of IH hearings on a condensed schedule. While preparing for and participating in these IHs, Amazon raised privilege concerns with the FTC. However, Amazon did not halt its productions or the IH process while it investigated these concerns because it relied on the FTC's representation that Amazon could later claw back inadvertently produced documents even after they were permitted to be used in IHs.[3]

B.      January 5 Letter

The summary above demonstrates the reasonableness of Amazon's conduct with respect to the documents clawed back in Amazon's January 5 letter. The five documents that were clawed back in the January 5 letter — IC-7, IC-11, IC-12, IC-13, and IC-15 — were produced with partial redactions, while Amazon was continuing to collect information from witnesses. This conduct is reasonable, as explained above. It is Amazon's understanding that the FTC has questions regarding the "determinations made during the May 6 meeting as the result of legal advice discussed during that meeting" for IC-11 and IC-12. Amazon addresses these questions below in Section II.B.

———————————————

[3] In the first IH of the investigation that Covington was permitted to attend, the FTC gave Amazon assurance that the use of a document in an IH would not constitute a waiver of privilege. Oct. 21, 2022 Lindsay Tr. 23:11-20 ("So we'll stipulate on the record that the use of any document that has any indication of privilege or confidential during this investigational hearing waives nothing at all on behalf of Amazon if all that is done is just sort of ask the witness . . . absolutely, *positively no waiver by virtue of the use of the document here*."); *Id.* 240:18-21 ("We will not argue that the fact that you allowed the testimony to continue with respect to those documents means that you cannot claw them back or make any other arguments with respect to those documents.").

**COVINGTON**

Evan Mendelson
November 17, 2023
Page 4

If the FTC believes that Amazon has waived privilege protection over IC-7, IC-11, IC-12, IC-13, or IC-15, please explain the objection and the basis for that objection. Additionally, if the FTC has any objection to the redactions in IC-7, IC-11, IC-12, IC-13, or IC-15 outside of those applying to what the FTC calls "determinations" about the May 6 meeting, please explain the objection and the basis for the objection. Please clarify the FTC's position with regard to these redactions in writing.

C.     January 13 Letter

The summary above also demonstrates the reasonableness of Amazon's conduct with respect to the documents clawed back in the January 13 letter. The three documents at issue in that letter — IC-1, IC-34 and IC-36 — were all produced from unrelated investigations. In the Prime investigation, Amazon had clearly asserted privilege over the May 6, 2021 meeting and related documents. During Amazon's corporate IH on January 11, 2023, it became clear that, despite this clear privilege claim, staff had nonetheless searched for documents regarding the May 6, 2021 meeting in productions made by Amazon in separate FTC investigations. This action was surprising and offensive to the Federal Rules.

Amazon's first step following the FTC's action was to claw back the three documents that were introduced. IC-1, IC-34 and IC-36 were used in Amazon's corporate IH on January 11, 2023. All three were clawed back on the record during the IH. Amazon then sent a follow-up letter on January 13 formalizing the claw back of these documents.

The FTC raised that IC-1 was used as an exhibit in Russ Grandinetti's IH on December 2, 2022. Each witness has different factual knowledge and so not every witness has the factual knowledge to raise privilege concerns from looking at a document. Mr. Grandinetti was not in a position to raise privilege concerns from briefly seeing the document in his IH.

If the FTC believes that Amazon has waived privilege protection over IC-1 for any reason besides prompt action, please explain the objection and the basis for that objection. Amazon is unaware of concerns from the FTC with the claw back of IC-34 and IC-36. If the FTC has any objection to the privilege protection of IC-34 or IC-36, please explain the objection and the basis for that objection. Please clarify the FTC's position with regard to these documents in writing, including explaining why the FTC did not raise potential privilege issues about these documents in advance of IHs in which they were used and why (if at all) the FTC's assurance that a document used during an IH could later be clawed back does not apply.

D.     February 7 Letter

Following the FTC's decision to use its access to other investigative databases to undermine Amazon's privilege protection, Amazon's second step was to undertake a comprehensive re-review of its privilege coding across all of these additional investigations. This was a significant undertaking. The team working on this re-review needed to understand the coding and collection decisions made in two other investigations. This required discussion with additional witnesses, outside counsel teams, and in-house counsel teams. During this re-review, IHs continued without delay.

**COVINGTON**

Evan Mendelson
November 17, 2023
Page 5

During the January 20, 2023 Amazon corporate IH, Amazon's counsel clawed back IC-31 — a document pertaining to the July 14, 2021 meeting discussed in Section II.A — when it was introduced. Following the January 20 IH, Amazon further investigated this document, meeting, and related documents. As part of that investigation, which included speaking with meeting attendees, Amazon learned about the full privileged nature of this meeting and related documents.

Documents clawed back as part of the February 7 letter and following further factual investigation included:

      1.    IC-27

This document, used during the IH of Omar Kalim, was clawed back and redacted following additional factual investigation. It is subject to Section II.B below.

      2.    IC-31

As discussed above, this document was clawed back during the corporate IH on January 20 and formalized in writing as part of the February 7 letter.

      3.    IC-40

IC-40 is a document that Amazon clawed back during Dharmesh Mehta's IH. Amazon was prompt in its reaction to the FTC's use of the documents during Mr. Mehta's IH.

Amazon raised privilege concerns to staff during the IH and followed up by investigating the privileged nature of this document and any associated testimony. Staff found the document through a merger investigation with a completely different subject matter. Mr. Mehta's role at the company was tangentially, if at all, related to the FTC's Prime investigation. As a result, outside counsel was not familiar with or aware of the teams that contributed to the document. Nevertheless, counsel immediately raised the concern that the document could be privileged and consulted with the witness.

In order to understand if any lawyers contributed to or authored this document, outside counsel needed to discuss with teams beyond the Prime program. Coordinating between these teams and interviewing the proper employees were further complicated by the fact that the document was introduced a week before Christmas.

If the FTC believes that Amazon has waived privilege protection over IC-40 for any reason besides prompt action please explain the objection and the basis for that objection in writing.

      4.    IC-37, IC-46, IC-50, IC-51, IC-52, IC-53, IC-54, and IC-55

Amazon is unaware of concerns from the FTC with the claw back of IC-37, IC-46, IC-50, IC-51, IC-52, IC-53, IC-54, and IC-55. If the FTC has any objection to the privilege protection of

**COVINGTON**

Evan Mendelson
November 17, 2023
Page 6

IC-37, IC-46, IC-50, IC-51, IC-52, IC-53, IC-54, or IC-55, please explain the objection and the basis for that objection in writing.

## II.    Amazon Has Properly Substantiated Its Privilege Claims on Its Privilege Log and through the Declaration of Mark England

Amazon's privilege logs confirm the privileged nature of the documents that were clawed back.  Mark England's declaration gives additional background to substantiate Amazon's privilege claims.  To date, the FTC has not identified any deficiencies in Amazon's privilege logs.  If the FTC believes any log to be deficient, please explain the purported deficiency.

The FTC has raised questions about whether privilege extends to the July 14 memo and related presentations (*e.g.*, IC-4, IC-5, IC-17) (the "July 14 Memo"), and the outcome of legal guidance given at the May 6 meeting.[4]  Amazon is unaware of any other specific privilege objections to the rest of the document set.  If the FTC believes that any additional document or set of documents are not protected by privilege, please explain the basis for that belief in writing.

### A.    July 14 Memo

The July 14 Memo was prepared in order to obtain legal advice and has been properly logged as privileged.  *AT&T Corp. v. Microsoft Corp.*, 2003 WL 21212614, at \*3 (N.D. Cal. Apr. 18, 2003) ("Communications containing information compiled by corporate employees for the purpose of seeking legal advice and later communicated to counsel are protected by attorney-client privilege.") (citing *Upjohn v. United States*, 449 U.S. 383, 394-95 (1981)).  These meeting materials, some of which contain Jamil Ghani's handwritten notes while receiving advice, have also been properly logged as privileged.  *Branch v. Umphenour*, 936 F.3d 994, 1005–06 (9th Cir. 2019) ("The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice ... as well as an attorney's advice in response to such disclosures.").  The July 14 Memo was prepared to provide two Amazon attorneys "with information about specific changes that the Prime team was contemplating, so that [the attorneys] could provide legal advice during the July 14 Meeting regarding those contemplated changes."  England Declaration ¶ 21.  As such, Amazon's privilege claim over this memo is valid.

### B.    May 6 Meeting Redactions

Contrary to the FTC's suggestion, Amazon has not redacted or claimed privilege over the non-privileged implementation of changes to Prime's enrollment flows.  Instead, Amazon has redacted references to the timing of advice provided by legal counsel, which is properly logged as privileged.  The court in *In re MacBook Keyboard Litig.*, a citation offered by the FTC, held that while plaintiffs were "entitled to discover what Apple decided" . . . "[p]laintiffs may not inquire about what advice Apple's legal counsel gave or how that advice informed Apple's decision." 2020 WL 1265629, at \*4 (N.D. Cal. Mar. 17, 2020).  Nonetheless, Amazon has further reviewed

---

[4] Regarding IC-2, Amazon directs the FTC to the England Declaration (¶ 26), which substantiates the privilege claim.  Amazon has not located a response to the email shown in IC-2.

**COVINGTON**

Evan Mendelson
November 17, 2023
Page 7

its redactions to IC-7, IC-8, IC-10, IC-11, IC-12, IC-14, IC-16, IC-23, IC-24, IC-25, IC-26, IC-27, IC-28, IC-29, IC-32, IC-33, IC-38, IC-41, IC-42, IC-43, IC-44, IC-45, IC-47, and IC-49 and is willing to narrow its redactions if the FTC agrees that it will not argue that Amazon's production of the previously redacted information acts as a subject matter waiver of other communications made at or related to the May 6 meeting.  Please let us know if the FTC agrees to this condition.

## III.    Quick Peek Procedure

In the FTC's November 17, 2023 email, it asked whether Amazon would consider agreeing to a "quick peek" procedure to allow FTC staff a one-time look — without any privilege waiver — at some or all of the clawback documents to assess Amazon's privilege claims.  Given that this letter addresses and responds to the FTC's privilege arguments and questions, Amazon does not agree to the "quick peek" procedure.

Sincerely,

Laura Kim
John Graubert
John Hall
Laura Flahive Wu
Stephen Anthony
Megan Rodgers

# Attachment 5

**From:** King, Jason [/O=AMAZON/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=ECEC0F51B81B4298AE27E8DA7D113EF6-JASKNGZ]
**Sent:** 4/21/2022 1:38:54 PM
**To:** Kalim, Omar [okalim@amazon.com]
**Subject:** FW: [Confidential] Prime Hexagon Update Week of 18 April 2022

Hi Omar,

The most updated information on headwinds is in the update below. I mixed the base definitions with current status. There is more information in the update below this thread. I am meeting with Taft and Jonny shortly to assess the way ahead on HWs.

* EU MFA is a multi-factor authentication program driven by European Union regulation. EU MFA is one of three currently impacting headwind, enforced in 12 Prime EU locales. : As of 4/4, twelve EU locales are at 10% enforcement for Prime (IT 4/12, NL 4/21, ES 4/30, DE 5/3, FR 5/19, AT 3/14, LU, BE, PT 5/21, SE, PL and IE 7/1) which represent ▮▮▮ of EU Prime transactions subject to MFA. As of 3/14 UK is fully enforced with all banks presenting an MFA challenge to 100% of transactions (recurring and IAP). We continue solving enforcement issues, launching new products/features and partnering with Outreach team to improve CX and mitigate MFA.

* Android IAP (Bishop) originates from Android In App Purchasing (IAP) initiatives in response to changes in Google's IAP policies that have a direct impact on in app purchases and subscriber revenue. Previously, Google required that Google Play-distributed apps must use Google Play's Billing system (GPB) for any transactions involving in-app purchases (IAP) of digital content, including subscriptions from 4/1 (the only exception being IN, which has a 10/31 enforcement date). On 3/25, Prime and mShop app received a two-month extension to the previous 4/1 enforcement date, now effective 6/1. Tech scoping indicates that IAP integration will be an extra-large tech effort (570 SDE weeks for IAP MLP integration in 24 locales) with cross-dependencies across Amazon (DEP, DCCS and mShop) and therefore not feasible to be completed by 6/1. Therefore, to comply with this Google policy, Prime will suppress all upsells on the Android mShop app and customers will not be able to sign up for Prime on the app from 6/1.

* TrueSPC is a work-stream designed to mitigate the impact of migrating to a new Checkout Desktop CX, which is coupled with the Amazon wide goal of deprecating Gurupa (a legacy system) in favor of Chewbacca to provide a more robust, flexible, and secure architecture. The mitigation target for Prime TrueSPC is now set to achieve ▮▮▮igation by 9/30. This includes i) launching Panel, Modal and OSU in top 8 locales (US, UK, DE, FR, IT, ES, JP, & CA), ii) complete first round of content testing, iii) launch UPDP coexistence, iv) launch 80% of tech latency improvements, and v) launch TrueSPC baseline in remaining 10 low-impact locales. TrueSPC baseline is launched in 2 marketplaces (PL, SE), and will launch in EG on 5/16. We have completed final prelaunch testing for TrueSPC baseline in 5 locales (AU, BR, MX, NL, SG). We are executing final prelaunch testing for baseline in 8 locales (US, EU6, JP, CA). TCM work for baseline is in progress in 5 locales (AE, SA, TR, IN, CN). We dialed-up experiment for Panel/Modal in FRITES on 4/14. Panel/Modal is completed in US, UK, DE, FRITES, and CA, and in-progress for JP. The Prime Seattle team is also partnering with the MENA team to launch Panel/Modal in EG by 5/16, and enable Panel/Modal in SA and AE by end of May. We have an interim milestone goal to dial-up TrueSPC in one locale for non-Prime customers by 7/29. We are currently finalizing the plan to dial-up 5-8 low-impact locales plus 1 high-impact locale by end Q2. This plan will be shared at 5/4 PLT meeting with decision to be finalized by 5/6.

*Mobile Ingress is a subset of TruSPC. On 2/28, Hexagon Finance team learned about the Mobile Ingress headwind, and based on 7 days of data post the 50% dial-up of Mobile Ingress on 3/3, the estimated annualized impact to Prime ▮▮▮Mar'22 to Feb'23 that excludes Bishop impacts). The 100% dial-up

AMZN-PRM-FTC-000000190

for Mobile Ingress in all locales has been delayed from 3/9 due to significant negative impact to GCCP and the Customer Journey team is performing additional deep dives and present to leadership to make a launch decision.  Mobile Ingress impacts UPDP on Mobile devices therefore, there is an overlap with CX Upsell Headwind to the extent of Mobile devices. As we include Mobile Ingress impact in the total Hexagon impact, we would further need to dedupe CX Upsell impact ▆▆▆▆▆▆ o avoid double counting of the impact on Mobile UPDP. Therefore, CX Upsell revised estimates in this scenario will be ▆▆▆▆▆▆ ▆▆▆▆▆ because of a) Impact deduped due to Mobile Ingress and Android IAP overlaps, b) Tailwind from Android IAP, and c) CX Upsell Mitigations on the roadmap.

* CX Satisfaction Upsell originates from a Prime Account CX Satisfaction document C-team reviewed in Q2 2021 and is currently impacting in the US. We are modifying Prime upsells to surface plan information like price and duration outside the T&Cs, updating the Accept and Decline CTAs to ensure customers are even clearer about the actions they are taking and ensuring that the positive CTA clearly mentions Prime to further improve the CX. The CX Satisfaction upsell work-stream is being addressed in 2 tracks (formerly phases): 1) the short-term changes necessary to ensure our existing CX meets the CX Satisfaction bar, and 2) long-term capabilities necessary to safeguard against CX Satisfaction regression and support easier content management across all use cases.

* CX Satisfaction Cancel also originates from the Prime Account CX Satisfaction document C-team reviewed on May 6, 2021 and is impacting in the EU. ▆▆▆▆▆▆ Our revised member impac ▆▆▆▆ with the variance being driven by two primary factors. First, we launched an initial round of changes in the EU on Dec 8, 2021 (removing content that appears more than once in the cancel flow, rationalizing CTAs, and shortening/simplifying verbiage), which have resulted in larger negative impact than originally estimated. The CX Satisfaction-Cancel workstream is focused on 2 phases. ▆▆▆▆▆▆ Phase 2 has two primary goals: introduce personalized content to Prime Central to address cancel intent; and launch a new cancel flow that allows the length and content of the flow to be targeted per member segment.

DE Law on Fair Consumer Contracts is a subset of CX Cancel.  Germany is confronted with the DE-specific law on Fair Consumer Contracts which contains two provisions impacting Prime. Provision 1 introduces a 2-button cancellation process which changes how Prime members cancel their membership going forward (enforcement in July 2022) while Provision 2 regulates the maximum duration of consumer contracts (enforcement began on March 1st 2022).

Respectfully,
Jason

Slack me
Jaskngz@Amazon.com

**From:** King, Jason
**Sent:** Wednesday, April 20, 2022 2:46 PM
**To:** 'prime-hexagon-distro@amazon.com' <prime-hexagon-distro@amazon.com>
**Subject:** [Confidential] Prime Hexagon Update Week of 18 April 2022



prime

| Prime Headwinds (Hexagon) Bi-Weekly Status Report | Report Published Date |
|---|---|

AMZN-PRM-FTC-000000191

20 April 2022

**Program Overview**

**North Star Vision Statement:** Risks to Prime memberships are identified and mitigated prior to impacting the member experience.

The Prime Headwind (Hexagon) Program consolidates and communicates forecasted and impacting risks to Prime Memberships across Prime WW. The ultimate goal of this program is to unite the knowledge, experience, and technical capability of Prime WW to identify, prioritize and mitigate known and emerging headwinds.

**Note:** We would like to thank Alnoor Dhani for his hard work and dedication to the Hexagon cause for the last seven months. Alnoor created the financial estimates we continue to build upon. We also welcome Jonny Tam in as the headwinds finance lead. Jonny will be helping us align on estimates through a monthly Hexagon review going forward. The first review is scheduled for 11 May. Due to this additional ask from all Hexagon team members, this bi-weekly update will be published once a month and offset two weeks from the Hexagon MBR going forward.

Prime Headwind Wiki (TBP) | Contact us | Subscribe for Updates

**Headwind PLT Schedule**

| 4/27/2022 | 5/4/2022 | 5/11/2022 | 5/18/2022 |
|---|---|---|---|
| CNX due to LTS | 0800-0900<br>Gurupa / TruSPC<br>0900-1000<br>Project Seven | 0800-0900<br>Hexagon MBR | 0800-0900<br>CX Satisfaction |

**Bishop [Kingpin Goal]**

PM: Van Ha, Tech leader: Chander Viswanathan

The Bishop team focuses on Android In App Purchasing (IAP) initiatives in response to changes in Google's IAP policies that have a direct impact on in app purchases and subscriber revenue. Previously, Google required that Google Play-distributed apps must use Google Play's Billing system (GPB) for any transactions involving in-app purchases (IAP) of digital content, including subscriptions from 4/1 (the only exception being IN, which has a 10/31 enforcement date). As of 3/25, Prime and mShop app has received a two-month extension to the previous 4/1 enforcement date, now effective 6/1.

Tech scoping indicates that IAP integration will be an extra-large tech effort (570 SDE weeks for IAP MLP integration in 24 locales) with cross-dependencies across Amazon (DEP, DCCS and mShop) and therefore not feasible to be completed by 6/1. Therefore, to comply with this Google policy, Prime will suppress all upsells on the Android mShop app and customers will not be able to sign up for Prime on the app from 6/1.

At this time, we are driving towards a P0 Compliance MLP (free trial / hard offer signup on non-checkout locations + basic data and accounting req.) launch in the first locale in 12/22 (assuming we can start ASAP) followed by MLP expansion to all marketplaces by Q4 2023. In subsequent IAP launch iterations, we will prioritize (1) launching in checkout locations, (2) streamlining dependency on accounting and QA with automation techniques, and (3) launching additional mitigators such as enabling auto-plan transitions for Segment plans, FTRE for GPB acquired customers and other Prime subscription management features. While the IAP integration is not expected to have any member impact for 2022 given its launch in 12/22, we expect the MLP to mitig▇▇▇ the headwind in 202▇ ▇▇▇▇▇▇▇▇ ▇▇▇▇ ▇▇▇▇ in parallel, the team is also building and scaling additional initiatives that will help mitigate the headwind impact for the duration of the upsell suppression. With the near-term initiatives, we expect to mitiga▇ ▇▇▇ of the total headwind ▇▇▇▇▇▇▇ 2022. Region-specific brainstorm sessions were conducted in April), and some net new ideas were generated and will be implemented based on imp▇▇▇ ▇▇▇ ▇▇▇▇ ▇▇▇▇▇▇, ▇▇▇raging region-specific Tech Centers of Excellence in away-team models where possible, to further mitigate Google IAP impact.

**TruSPC (Goals in-line with Subsets)**

AMZN-PRM-FTC-000000192

**PM:** Michael Bruhancov, **TPM:** Phillip Magnay, **Tech leader:** Vivek V

**TrueSPC Migration [Kingpin Goal]:** The mitigation target for Prime TrueSPC is now set to achieve ▮ mitigation by 9/30. This includes i) launching Panel, Modal and OSU in top 8 locales (US, UK, DE, FR, IT, ES, JP & CA), ii) complete first round of content testing, iii) launch UPDP coexist ▮ iv) launch 80% of tech latency improvements, and v) launch TrueSPC baseline in remaining 10 low-impact locales. TrueSPC baseline is launched in 2 marketplaces (PL, SE), and will launch in EG on 5/16. We have completed final prelaunch testing for TrueSPC baseline in 5 locales (AU, BR, MX, NL, SG). We are executing final prelaunch testing for baseline in 8 locales (US, EU6, JP, CA). TCM work for baseline is in progress in 5 locales (AE, SA, TR, IN, CN). We dialed-up experiment for Panel/Modal in FRITES on 4/14. Panel/Modal is completed in US, UK, DE, FRITES, and CA, and in-progress for JP. The Prime Seattle team is also partnering with the MENA team to launch Panel/Modal in EG by 5/16, and enable Panel/Modal in SA and AE by end of May. We have an interim milestone goal to dial-up TrueSPC in one locale for non-Prime customers by 7/29. We are currently finalizing the plan to dial-up 5-8 low-impact locales plus 1 high-impact locale by end Q2. This plan will be shared at 5/4 PLT meeting with decision to be finalized by 5/6.

**Chewbacca Migration:** There are currently 5 active projects in the Chewbacca migration track: i) Mobile UPDP migration to Chewbacca, ii) Rewrite UPDP trigger logic in Chewbacca mobile ingress, iii) Prime signup endpoint development in Java, iv) Desktop UPDP migration and v)Panel/Modal migration to Chewbacca. The foundation work developed in these projects will then support the migration to Chewbacca of the remaining checkout upsells. Mobile UPDP bug fixes are complete and we have handed over QA on 4/18 for testing. Dev complete for the rewrite the the UPDP trigger logic in Chewbacca is green for 5/12. Development for the Chewbacca migration of remaining checkout WW (SOSP ISOA Mobile, SPC Stripe Mobile/Desktop, SPC ISOA Mobile/Desktop, SPC Popover Mobile/Desktop) have now been finalized to 6/25.

**Gurupa Migration [Kingpin Goal]:** This workstream is split into non-checkout and checkout end-points and is focused on migrating all Prime dependencies from Gurupa to an Infosec approved solution. We have completed migration of 52 % of the current scope. This includes 13 partner tickets and 45 prime owned endpoints. We were on target to complete 62% by end of Q1'22 but we will not be able to meet this milestone due to the delays in completing Embu, Amabot and Ms3DynamicWidgetWrapper. By Q2'2022, we plan to complete 71% of migration. We are still tracking GREEN to complete the Gurupa migration for Prime by 3/31/2023 with an ETA to complete non-checkout migration by 9/30/22 and checkout migration by 3/31/23.

**Mobile Ingress PM:** Deepak Ramanathan

On 2/28, Hexagon Finance team learned about the Mobile Ingress headwind, and began working with CX Upsell Headwind to the extent of Mobile devices. As we include Mobile Ingress impact in the total Hexagon impact, we would further need to dedupe CX Upsell Impact ▮ to avoid double counting of the impact on Mobile UPDP. Therefore, CX Upsell revise ▮ because of a) Impact ▮ ▮ess and Android IAP overlaps, b) Tailwind from Android IAP, and c) CX Upsell Mitigation ▮ ▮

Mobile Ingress impacts UPDP on Mobile devices therefore, there is an overlap with CX Upsell Impact ▮ ▮

To Prime is -1.4MM AMB (Mar'22 to Feb'23 that excludes Bishop impacts). The 100% dial-up for Mobile Ingress in all locales has been delayed from 3/9 due to significant negative impact to GCCP and the Customer Journey team is performing additional deep dives and present to leadership to make a launch decision.

**CX Satisfaction (Goals in-line with Subsets)**

**Signup [Kingpin Goal]**
**PM:** Emily Ikeda-Flowers **Tech leader:** Ashwin Bhargav Balakrishna

The CX Satisfaction upsell work-stream is being addressed in 2 tracks (formerly phases): 1) the short-term changes necessary to ensure our existing CX meets the CX Satisfaction bar, and 2) long-term capabilities necessary to safeguard against CX Satisfaction regression and support easier content management across all use cases.

Track 1 – Under development: Track 1 covers the short-term CX enhancements necessary to ensure our existing experience meets our CX satisfaction bar. ▮ For remaining locales, we reviewed our new roadmap with estimated impact with PLT on 5/18, and have set up follow-up meetings with locale leads (JP, EU) to discuss next steps ahead of planned Q3'22-Q1'23 implementation.

Track 2 – Under development: Track 2 covers the long-term capabilities we need to develop to safeguard against CX Satisfaction regression. We aligned on broad categories of changes to be made in Track 2 (scalable content management, bulk template updates, content maintenance via QA automation, monitoring) and are currently breaking each category into immediate actions and north star approach, which will be reviewed with PLT on 5/18.

**Cancel [Kingpin Goal]**
**PM:** Benjamin Goeltz, **TPM:** Sumedh Dandge, **Tech leader:** Ankit Goyal (Prime)

CONFIDENTIAL

AMZN-PRM-FTC-000000193

The CX Satisfaction-Cancel workstream is focused on 2 phases. Phase 1 █████ Phase 2 has two primary goals: introduce personalized content to Prime Central to address cancel intent; and launch a new cancel flow that allows the length and content of the flow to be targeted per member segment.

**Phase 1** Phase 1 scope is the following three changes: 1) standardize the navigation button CTA to "continue to cancel" on page one and two of Iliad; 2) ensure the "Items tied to your membership" widget only exists on page three of Iliad. We launched these changes on Dec 8 in the EU (DE/FR/IT/ES/NL/SE/PL), and based on actual results since launch █████████████ We met with PLT on Feb 2 to discuss opportunities to claw back members, and aligned on a number of short-term experiments (e.g., updating the header and content on the first and second pages of the cancel flow). We have run 12 experiments in the cancel flow across DE/FR/IT/ES ███████ and are continuing to experiment in Q2'22 ahead of Phase 2 launch.

**Phase 2** is made up of two parts. Part 1 covers two changes to Prime Central. 1) We launched experiments of the Benefits Tracker widget in EU/UK/US/JP, and dialed up in IT/ES/MX/UK given positive results. For locales that we didn't dial up, we saw positive impact for specific cohorts (notably HO), and will deep dive with Finance in Apr'22 into what additional targeting we can implement to drive better/positive results (e.g., targeting members who have more than a minimum threshold of benefit usage), and expand our launch to additional locales. We have also tested this widget in the cancel flow (part of claw back experiments, referenced above). 2) We launched the Member Since widget in the US, and saw flat results. Next steps are to: a) evaluate if specific cohorts responded positively (ETA 4/29), and re-launch with additional targeting; and b) experiment with the widget in EU (ETA 4/29).

Part 2 aims to reduce the length of Iliad flow (from 3-pages to 2-pages), and provide targeted content within the flow based on member's cancel intent. We will be delivering phase 2 in multiple iterations throughout Q1 and Q2 2022 with each iteration delivering the 2-page flow in different EU locales. The first iteration of the basic 2-page cancel flow experiment (Baseline June) The page and New Cancel page) launched in SE and PL locales on April 14. Subsequent iterations will include launching these experiments in FR, ES, IT, NL, DE and UK locales (ETA early June). The team has started development for these locales and expects to start QA on May 2.

**Risk**: Departure of one SDE from the VCR team has created a resource risk on Café. Additionally, two other SDE resources working on the program were assigned to fulfil another headwind in DE (DE Law on Fair Consumer Contracts – see details below). Mitigation: In Q2, in addition to delivering the 2-page flow in EU, the Café team will only be able to include those experiments that do not require SDE support and can be handled by the TCM.

Finally, as part of ongoing mitigation efforts, we met with the European Commission (EC) on 3/23 and shared additional details about our 2 page flow, and our plans to launch the new flow in EU by 6/30. We plan to meet again with the EC in mid-June, ahead of our Phase 2 launch, to share final versions of our 2 page cancel flow CX.

**DE Law on Fair Consumer Contracts (Kingpin Goal)**
PM: Nina Hetzner, TPM: @Prashant Pandey, Tech leader: Chander Viswanathan

Germany is confronted with the DE-specific law on Fair Consumer Contracts which contains two provisions impacting Prime. Provision 1 introduces a 2-button cancellation process which will change how Prime members can cancel their membership going forward while Provision 2 regulates the maximum duration of consumer contracts.

**Provision 1 on 2-button cancellation process** ███████████ requires the introduction of a permanently available as well as directly and easily accessible first cancellation button leading to a cancellation page where customers can █████████████████████ then cancellation and submit it by clicking a second button. Thus, we have to establish a second cancellation (phase 1) and will in our existing cancellation flow ('Iliad') covering for all Amazon subscriptions. The provision will come into force in July 2022. To address this, we formed a team of loaned SDEs (phase 1) and will in parallel hire and set up a more permanent team (funded by partner subscriptions and Prime) which will continue building and owning the solution post July'22 (phase 2). Status update: YELLOW driven by resource constraints – we scoped the project with 6 SDEs but only had 5 SDEs from January until end of March. On-calls further reduced total effective SDE bandwidth. While the TIGER team is now fully staffed following reduction of on-calls until July 1 to further increase bandwidth, the project and timely regulatory compliance remain at risk. Path to GREEN: We are in discussion with Customer Service (CS) to deprioritize cancellation automation from initial launch scope while maintaining compliance. At launch, all cancellation requests would be handled by CS and the TIGER team will focus on cancellation automation for TIGER team subscriptions (Prime, PV, Music, Audible, Kindle) as a fast follow by 07/30. Approval received from Consumer & Audible CS, Digital pending (ETA: 4/22). Longer-term funding remains RED as we have only been able to open two requisitions (Prime + Prime Video) as of now, discussions open with Music and SnS.

**Provision 2 on maximum duration of contract** ███████████ Under this provision, Prime members on annual plan must be able to cancel at any time with one month notice once their initial contract has renewed. We will address this by offering a renewing annual Prime plan which can be canceled with immediate effect from second membership year onwards. Effectively this means we will change our reimbursement policy for customers on annual plan to pro-rated from year 2 onwards, independent of benefit usage. The provision will become effective starting 3/1/2022 and will impact renewing customers from 3/1/2023. Existing Prime members are excluded from the new provision but we will monitor media and CS feedback closely with the option to include existing members in the new policy quickly in case of negative PR or customer sentiments. Status update: LAUNCHED on 3/1.

AMZN-PRM-FTC-000000194

EUMFA Weekly Update [Kingpin goal]

PM: Ranjot Singh/Juan Carlos Perez Navarro, TPM: Vinod Kostka/Ankit Kumar, Tech leader: Ankit Goyal [Prime]

**1. Enforcement status:** As of 4/4, twelve EU locales are at 100% enforcement for Prime (IT 4/12, NL 4/21, ES 4/30, DE 5/3, FR 5/19, AT 3/14, LU, BE, PT 5/21, SE, PL and IE 7/1) which represents ▮▮▮ f EU Prime transactions subject to MFA. As of 3/14 UK is fully enforced with all banks presenting an MFA challenge to 100% of transactions (recurring and ALC). We continue solving enforcement issues, launching new products/features and partnering with Outreach team to improve CX and mitigate MFA.

**3. Upcoming Launches:**
- Challenge/AuthN indicator flexibility (In dial up). Feature to configure Authentication and Challenge indicator codes to all three plugins (Cardinal, Payline and CA). These values will be configurable by Market Place ID, Card Network and Bank Name.
- Conditional payment preference update (4/30). Customers are allowed to update their payment preference in PC Wallet only after completing MFA challenge (when required).
- Update Everywhere for MIT (4/30). Enable MFA token collection for customer that want to default their retail card for Prime subs.
- Auto-defer (4/30). Selective MFA declines moving to deferral CX, these customers can complete the MFA challenge at a later, more convenient time via 30 days of existing on-site risk messages with CTAs for MFA resolution.
- EBPM II (5/5). Prompt customers to verify and even update backup payment methods that are MFA ready to Primary payment method for prime there by helping with higher ASR/PSR.

**The Team of Teams**

| | Team Members |
|---|---|
| Prime Leadership | Jamil Ghani, Lisa Leung, Noah Borun, Dhaval Parmar, Paul Davis |
| Bishop | Van Ha, Chander Viswanathan |
| TruSPC | Michael Bruhanov, Phillip Magnay, Deepak Ramanathan, Vivek V. |
| CX Satisfaction Upsell | Emily Ikeda-Flowers, Ashwin Bhargav Balakrishna |
| CX Satisfaction Cancel | Ben Goeltz, Sumedh Dandge, Ankit Goyal, Nina Hetzner, Prashant Pandey, Chander Viswanathan |
| EUMFA | Ranjot Singh, Juan Carlos Perez Navarro, Vinod Kostka, Ankit Kumar, Ankit Goyal |
| Hexagon PM | Jason King |

CONFIDENTIAL

AMZN-PRM-FTC-000000195

# Attachment 6

The Honorable John H. Chun

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>    Plaintiff,<br><br> v.<br><br>AMAZON.COM, INC.,<br><br>    Defendant. | No. 2:23-cv-0932-JHC<br><br>**DEFENDANT'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS** |

Pursuant to Federal Rule of Civil Procedure 26 and 34, Defendant Amazon.com, Inc. ("Amazon") hereby provides the following objections and responses to Plaintiff's First Set of Requests for Production of Documents, dated August 4, 2023, as follows.

## I.  PRELIMINARY STATEMENT

1. Amazon makes the following responses without prejudice to its rights to rely on or use, at trial or other judicial proceedings in this action, subsequently discovered facts, documents, or information, or facts, documents, and information omitted from these responses as a result of mistake, error, oversight, or inadvertence.

2. In responding to these Requests, Amazon neither waives nor intends to waive, and instead expressly reserves, any and all objections it may assert now or in the future, including objections to the relevance, competence, materiality, admissibility, or use (including introduction at trial or any hearing in this action) of any document or information produced in response to any Request.  Amazon's representations concerning whether it is withholding documents pursuant to

AMAZON'S OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF RFPS
(2:23-cv-0932-JHC) - 1

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Ex. A, Page 69 of 164

1  any specific objection are based on its current understanding and the information reasonably

2  available to it at this time.

3  **II.      OBJECTIONS TO INSTRUCTIONS**

4  1.      Amazon objects to Plaintiff's instructions to the extent that they purport to impose

5  obligations or burdens on Amazon that go beyond those imposed by the Federal Rules of Civil

6  Procedure and the Local Civil Rules.  Amazon will comply with the Federal Rules of Civil

7  Procedure and the Local Civil Rules, but assumes no further obligations in responding to these

8  requests.

9  **III.      OBJECTIONS AND RESPONSES TO REQUESTS**

10  **REQUEST FOR PRODUCTION NO. 1:**

11  All 54 documents listed in Attachment 37 to the June 18, 2023 Declaration of Adam

12  Rottner (Dkt. #4-1 at 302-08) without redactions.

13  **RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

14  Amazon objects to the Request because it seeks documents and information that are

15  protected from discovery by the attorney-client privilege, the work product doctrine, and other

16  applicable privileges, immunities, and protections.  *See, e.g.*, *United States v. ChevronTexaco*

17  *Corp.*, 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002) (protecting "communications between

18  corporate personnel and their in-house counsel made for the purpose of securing legal advice are

19  protected by the privilege."); *United States v. Nobles*, 422 U.S. 225, 237-38 (1975); *see also*

20  Def.'s Opp'n to Pl.'s Mot. to Desequester, ECF No. 50.  Amazon further objects to the Request

21  because it calls for documents that are not relevant to any party's claims or defenses.  Separate

22  from and in addition to the above objections, Amazon objects to producing any confidential

23  materials until an appropriate protective order is entered by the Court.

24  Subject to and without waiving these objections, Amazon responds that all documents

25  responsive to the Request are protected from discovery either wholly or in part by the attorney-

26  client privilege and/or the work product doctrine.  Amazon will provide a privilege log with

27

AMAZON'S OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF RFPS
(2:23-cv-0932-JHC) - 2

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Ex. A, Page 70 of 164

1   entries for each of the responsive documents.  Amazon has previously produced to Plaintiff

2   redacted versions of the documents responsive to the Request that are privileged in part.

3

4          DATED this 5th day of September, 2023.

5

6

7                                        DAVIS WRIGHT TREMAINE LLP

8          By _s/ Kenneth E. Payson_
                                        Kenneth E. Payson, WSBA #26369
9                                        James Howard, WSBA #37259
                                        920 Fifth Avenue, Suite 3300
10                                       Seattle, WA  98104-1610
                                        Telephone: (206) 622-3150
11                                       Fax: (206) 757-7700
                                        E-mail: kenpayson@dwt.com
12                                                jimhoward@dwt.com

13
                                        COVINGTON & BURLING LLP
14
                                        Stephen P. Anthony*
15                                       Laura Flahive Wu*
                                        Laura M. Kim*
16                                       John D. Graubert*
                                        850 Tenth Street, NW
17                                       Washington, DC  20001
                                        Telephone: (206) 662-5105
18                                       E-mail: santhony@cov.com
                                                 lflahivewu@cov.com
19                                                lkim@cov.com
                                                 jgraubert@cov.com
20

21                                       John E. Hall*
                                        415 Mission Street, Suite 5400
22                                       San Francisco, CA  94105
                                        Telephone: (415) 591-6855
23                                       E-mail: jhall@cov.com

24
                                        Megan L. Rodgers*
25                                       3000 El Camino Real
                                        Palo Alto, CA  94306
26                                       Telephone: (650) 632-4734
                                        E-mail: mrodgers@cov.com
27

AMAZON'S OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF RFPS                              Davis Wright Tremaine LLP
(2:23-cv-0932-JHC) - 3                                        LAW OFFICES
                                                         920 Fifth Avenue, Suite 3300
                                                           Seattle, WA  98104-1610
                                                 206.622.3150 main · 206.757.7700 fax

HUESTON HENNIGAN LLP

1

2

John C. Hueston*
Moez M. Kaba*
Joseph A. Reiter*

3

523 West 6th Street, Suite 400
Los Angeles, CA  90014

4

Telephone: (213) 788-4340
E-mail: jhueston@hueston.com

5

mkaba@hueston.com
jreiter@hueston.com

6

7

*admitted pro hac vice

Attorneys for Defendant

8

AMAZON.COM, INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

AMAZON'S OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF RFPS
(2:23-cv-0932-JHC) - 4

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1

**CERTIFICATE OF SERVICE**

2       I hereby certify that I caused a true and correct copy of the document to which this

3  Certificate of Service is attached to be served in the manner as indicated below:

4

5       EVAN MENDELSON (D.C. Bar #996765)        ☐  Messenger
        OLIVIA JERJIAN (D.C. Bar #1034299)        ☐  U.S. Mail, postage prepaid

6       THOMAS MAXWELL NARDINI                    ☐  Federal Express
        (IL Bar #6330190)                        ☐  Facsimile

7       Federal Trade Commission                 ☒  Email
        600 Pennsylvania Avenue NW

8       Washington, DC 20580                     ☐  ECF
        (202) 326-3320; emendelson@ftc.gov

9       (202) 326-2749; ojerjian@ftc.gov
        (202) 326-2812; tnardini@ftc.gov

10

11      *Attorneys for Plaintiff*

12

13      Declared under penalty of perjury under the laws of the State of Washington.

14      DATED this 5th day of September, 2023.

15

16                                *s/ Kenneth E. Payson*
                                  Kenneth E. Payson, WSBA #26369

17

18

19

20

21

22

23

24

25

26

27

AMAZON'S OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF RFPS
(2:23-cv-0932-JHC) - 5

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

# Attachment 7

**Rottner, Adam**

| | |
|---|---|
| **From:** | Mendelson, Evan |
| **Sent:** | Friday, January 19, 2024 5:42 PM |
| **To:** | Flahive Wu, Laura; Joseph Aronsohn; Jerjian, Olivia; Nardini, Thomas; Hoffman, Elena; Zwonik, Ryan; Frech, Jacob |
| **Cc:** | John C. Hueston; Moez M. Kaba; Joseph A. Reiter; Vicki Chou; Kelly, Kevin; Kim, Laura; Graubert, John; Anthony, Stephen; Hall, John; Rodgers, Megan; Capuano, Marc; Payson, Kenneth; Howard, Jim; SEA Docket; Chan, Gina; Green, Jennifer; Mejia-Portillo, Johana; Awad, Yara; MacDonald, Colin; kristinachin@dwt.com |
| **Subject:** | RE: FTC v. Amazon.com, Inc., et al., No. 2:23-cv-00932-JHC (W.D. Wash.) |
| **Attachments:** | FTC Scanned Document_12062023105305.pdf |

In addition to the materials cited below, we also plan on filing or describing:

18. AMZN_00171492
19. Nelson IH Tr. 111
20. The attached document (which you provide to us in hard copy during the investigation)

Evan M. Mendelson
Federal Trade Commission
Bureau of Consumer Protection
Enforcement Division
600 Pennsylvania Avenue, NW, CC-9528
Washington, DC  20580
Phone: (202) 326-3320
Fax:  (202) 326-3197

---

**From:** Flahive Wu, Laura <lflahivewu@cov.com>
**Sent:** Wednesday, January 17, 2024 7:15 PM
**To:** Mendelson, Evan <emendelson@ftc.gov>; Joseph Aronsohn <jaronsohn@hueston.com>; Jerjian, Olivia <ojerjian@ftc.gov>; Nardini, Thomas <tnardini@ftc.gov>; Hoffman, Elena <ehoffman@ftc.gov>; Zwonik, Ryan <rzwonik@ftc.gov>; Frech, Jacob <jfrech@ftc.gov>
**Cc:** John C. Hueston <jhueston@hueston.com>; Moez M. Kaba <mkaba@hueston.com>; Joseph A. Reiter <jreiter@hueston.com>; Vicki Chou <vchou@hueston.com>; Kelly, Kevin <Kkelly@cov.com>; Kim, Laura <LKim@cov.com>; Graubert, John <jgraubert@cov.com>; Anthony, Stephen <santhony@cov.com>; Hall, John <jhall@cov.com>; Rodgers, Megan <mrodgers@cov.com>; Capuano, Marc <MCapuano@cov.com>; Payson, Kenneth <KennethPayson@dwt.com>; Howard, Jim <JimHoward@dwt.com>; SEA Docket <SEADocket@dwt.com>; Chan, Gina <GinaChan@dwt.com>; Green, Jennifer <JenniferGreen@dwt.com>; Mejia-Portillo, Johana <jmejiaportillo@ftc.gov>; Awad, Yara <yawad@ftc.gov>; MacDonald, Colin <cmacdonald@ftc.gov>; kristinachin@dwt.com
**Subject:** RE: FTC v. Amazon.com, Inc., et al., No. 2:23-cv-00932-JHC (W.D. Wash.)

Counsel,

We will review the materials you have identified.  We can be available for a call on Monday, January 22 between 2 and 4 pm ET.

Regards,

Laura

**Laura Flahive Wu**

Covington & Burling LLP
One CityCenter, 850 Tenth Street, NW
Washington, DC 20001-4956
T +1 202 662 5982 | lflahivewu@cov.com
www.cov.com

# COVINGTON

This message is from a law firm and may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply e-mail that this message has been inadvertently transmitted to you and delete this e-mail from your system. Thank you for your cooperation.

**From:** Mendelson, Evan <emendelson@ftc.gov>
**Sent:** Wednesday, January 17, 2024 4:10 PM
**To:** Flahive Wu, Laura <lflahivewu@cov.com>; Joseph Aronsohn <jaronsohn@hueston.com>; Jerjian, Olivia <ojerjian@ftc.gov>; Nardini, Thomas <tnardini@ftc.gov>; Hoffman, Elena <ehoffman@ftc.gov>; Zwonik, Ryan <rzwonik@ftc.gov>; Frech, Jacob <jfrech@ftc.gov>
**Cc:** John C. Hueston <jhueston@hueston.com>; Moez M. Kaba <mkaba@hueston.com>; Joseph A. Reiter <jreiter@hueston.com>; Vicki Chou <vchou@hueston.com>; Kelly, Kevin <Kkelly@cov.com>; Kim, Laura <LKim@cov.com>; Graubert, John <jgraubert@cov.com>; Anthony, Stephen <santhony@cov.com>; Hall, John <jhall@cov.com>; Rodgers, Megan <mrodgers@cov.com>; Capuano, Marc <MCapuano@cov.com>; Payson, Kenneth <KennethPayson@dwt.com>; Howard, Jim <JimHoward@dwt.com>; SEA Docket <SEADocket@dwt.com>; Chan, Gina <GinaChan@dwt.com>; Green, Jennifer <JenniferGreen@dwt.com>; Mejia-Portillo, Johana <jmejiaportillo@ftc.gov>; Awad, Yara <yawad@ftc.gov>; MacDonald, Colin <cmacdonald@ftc.gov>; kristinachin@dwt.com
**Subject:** RE: FTC v. Amazon.com, Inc., et al., No. 2:23-cv-00932-JHC (W.D. Wash.)

==[EXTERNAL]==
Counsel,

==With our Motion to Compel documents in response to the FTC's RFP 1, we are planning to file certain documents, testimony, and information (listed below) that Amazon has marked Confidential under the Court's Protective Order (Dkt. #124).==  Pursuant to Section 5.4 of the Protective Order and Local Rule 5(g), please let us know if you will withdraw any of your confidentiality designations or will propose redactions to any of the documents.  Assuming that you are not fully withdrawing your confidentiality designations, **please let us know your availability for a meet-and-confer tomorrow (Jan 18), Friday (Jan 19), or Monday (Jan 22).**  In advance of the meet-and-confer, please state which documents or portions of documents you are asking to be filed under seal, so that we are prepared for the call.

Here are the documents and testimony marked confidential we are planning to file:

1. AMZN_00045916
2. AMZN_00107862
3. AMZN_00022853
4. AMZN_00099452
5. IC-9 (demonstrative version provided by Amazon on January 12, 2024)
6. Nelson IH Ex. 10
7. AMZN_00103138
8. AMZN_00045704 (all emails in this chain before April 28, 2021 were already filed, with redactions, at Dkt. #90-2 at 252; we will apply the same redactions here)
9. AMZN_00092943
10. AMZN_00092949
11. AMZN_00103325
12. ==Amazon-FTC-CID_09389533==

2

13. AMZN-PRM-FTC-000000001
14. AMZN-PRM-FTC-000000190
15. Kalim IH Tr. pp. 193-199
16. Nelson IH Tr. pp. 71-72, 180-182
17. Amazon privilege log entries associated with IC-1, IC-36, IC-4, IC-5, IC-6, IC-17, IC-18, IC-19, IC-20, IC-21, IC-22, IC-31, IC-48, IC-9, IC-27, and IC-40

Thanks,
Evan

Evan M. Mendelson
Federal Trade Commission
Bureau of Consumer Protection
Enforcement Division
600 Pennsylvania Avenue, NW, CC-9528
Washington, DC  20580
Phone: (202) 326-3320
Fax:  (202) 326-3197

# Attachment 8

**Rottner, Adam**

| | |
|---|---|
| **From:** | Mendelson, Evan |
| **Sent:** | Tuesday, January 23, 2024 6:19 PM |
| **To:** | Flahive Wu, Laura; Joseph Aronsohn; Jerjian, Olivia; Nardini, Thomas; Hoffman, Elena; Zwonik, Ryan; Frech, Jacob |
| **Cc:** | John C. Hueston; Moez M. Kaba; Joseph A. Reiter; Vicki Chou; Kelly, Kevin; Kim, Laura; Graubert, John; Anthony, Stephen; Hall, John; Rodgers, Megan; Capuano, Marc; Payson, Kenneth; Howard, Jim; SEA Docket; Chan, Gina; Green, Jennifer; Mejia-Portillo, Johana; Awad, Yara; MacDonald, Colin; kristinachin@dwt.com |
| **Subject:** | Re: FTC v. Amazon.com, Inc., et al., No. 2:23-cv-00932-JHC (W.D. Wash.) |

The document being clawed back was produced in the investigation (in February 2023), not this litigation.  The Rule 502(d) Order only applies to documents produced "in this proceeding."  The document is also responsive to RFP 1, which is the subject of our motion to compel.  We will note in the Motion that Amazon did not provide a basis for its clawback request because the parties have not reached agreement on a privilege log protocol.  (To be clear, we don't think that fact relieves Amazon of the burden to justify its privilege claim.).  We don't see how the prior privilege log could describe redactions that weren't added until last night.

Evan

---

**From:** Flahive Wu, Laura <lflahivewu@cov.com>
**Sent:** Tuesday, January 23, 2024 6:05 PM
**To:** Mendelson, Evan <emendelson@ftc.gov>; Joseph Aronsohn <jaronsohn@hueston.com>; Jerjian, Olivia <ojerjian@ftc.gov>; Nardini, Thomas <tnardini@ftc.gov>; Hoffman, Elena <ehoffman@ftc.gov>; Zwonik, Ryan <rzwonik@ftc.gov>; Frech, Jacob <jfrech@ftc.gov>
**Cc:** John C. Hueston <jhueston@hueston.com>; Moez M. Kaba <mkaba@hueston.com>; Joseph A. Reiter <jreiter@hueston.com>; Vicki Chou <vchou@hueston.com>; Kelly, Kevin <Kkelly@cov.com>; Kim, Laura <LKim@cov.com>; Graubert, John <jgraubert@cov.com>; Anthony, Stephen <santhony@cov.com>; Hall, John <jhall@cov.com>; Rodgers, Megan <mrodgers@cov.com>; Capuano, Marc <MCapuano@cov.com>; Payson, Kenneth <KennethPayson@dwt.com>; Howard, Jim <JimHoward@dwt.com>; SEA Docket <SEADocket@dwt.com>; Chan, Gina <GinaChan@dwt.com>; Green, Jennifer <JenniferGreen@dwt.com>; Mejia-Portillo, Johana <jmejiaportillo@ftc.gov>; Awad, Yara <yawad@ftc.gov>; MacDonald, Colin <cmacdonald@ftc.gov>; kristinachin@dwt.com <kristinachin@dwt.com>
**Subject:** RE: FTC v. Amazon.com, Inc., et al., No. 2:23-cv-00932-JHC (W.D. Wash.)

Counsel,

The Stipulated Rule 502(d) Order (Dkt. 123), which the parties agreed to and the Court approved, governs challenges to clawbacks made in the litigation.  To the extent you intend to challenge Amazon's clawback and reproduction of IC-37, you must follow the challenge procedures in the Rule 502(d) Order (Dkt. 123 ¶ 4.2).  The challenge procedures do not permit a clawback challenge to be made through a motion to compel.  Instead, the Order sets forth a procedure for a meet-and-confer and letter submission.

Amazon has already provided a privilege log for IC-37, *see* Amazon's Objections and Responses to Plaintiff's First Set of Requests for Production of Documents, but once again notes that the parties have still not reached an agreed-upon privilege logging protocol in the litigation.

Regards,

Laura

**Laura Flahive Wu**

Covington & Burling LLP
One CityCenter, 850 Tenth Street, NW
Washington, DC 20001-4956
T +1 202 662 5982 | lflahivewu@cov.com
www.cov.com

# COVINGTON

This message is from a law firm and may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply e-mail that this message has been inadvertently transmitted to you and delete this e-mail from your system. Thank you for your cooperation.

**From:** Mendelson, Evan <emendelson@ftc.gov>
**Sent:** Tuesday, January 23, 2024 11:22 AM
**To:** Flahive Wu, Laura <lflahivewu@cov.com>; Joseph Aronsohn <jaronsohn@hueston.com>; Jerjian, Olivia <ojerjian@ftc.gov>; Nardini, Thomas <tnardini@ftc.gov>; Hoffman, Elena <ehoffman@ftc.gov>; Zwonik, Ryan <rzwonik@ftc.gov>; Frech, Jacob <jfrech@ftc.gov>
**Cc:** John C. Hueston <jhueston@hueston.com>; Moez M. Kaba <mkaba@hueston.com>; Joseph A. Reiter <jreiter@hueston.com>; Vicki Chou <vchou@hueston.com>; Kelly, Kevin <Kkelly@cov.com>; Kim, Laura <LKim@cov.com>; Graubert, John <jgraubert@cov.com>; Anthony, Stephen <santhony@cov.com>; Hall, John <jhall@cov.com>; Rodgers, Megan <mrodgers@cov.com>; Capuano, Marc <MCapuano@cov.com>; Payson, Kenneth <KennethPayson@dwt.com>; Howard, Jim <JimHoward@dwt.com>; SEA Docket <SEADocket@dwt.com>; Chan, Gina <GinaChan@dwt.com>; Green, Jennifer <JenniferGreen@dwt.com>; Mejia-Portillo, Johana <jmejiaportillo@ftc.gov>; Awad, Yara <yawad@ftc.gov>; MacDonald, Colin <cmacdonald@ftc.gov>; kristinachin@dwt.com
**Subject:** RE: FTC v. Amazon.com, Inc., et al., No. 2:23-cv-00932-JHC (W.D. Wash.)

[EXTERNAL]
Counsel,

We write regarding Amazon's clawback from last night of the version of IC-37 (Amazon-FTC-CID_09389533) produced on February 14, 2023.   Based on the facts outlined in this paragraph, it appears Amazon last night added redactions related to determinations made at the May 6, 2021 meeting.  Specifically, based on Mr. England's July 24, 2023 declaration, Amazon did not previously redact from IC-37 determinations made during the May 6 meeting.   (Mr. England did, however, state that Amazon had redacted such determinations from approximately 20 other documents.  Amazon subsequently agreed to remove some of those redactions during our written exchanges.)  Now, in the new version of IC-37 you provided last night, Amazon has redacted the indicated portions of the following sentence on lines 44-47 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.   We are sequestering the February 14, 2023 version of IC-37 and therefore cannot compare that version to the version you sent last night, but **we infer, based on the facts outlined here, that Amazon last night added the redactions in lines 44-47 and that those redactions reflect determinations made during the May 6 meeting.**  Please let us know as soon as possible if either of those inferences are incorrect.

We are planning to add the February 14 version of IC-37 to our Motion to Compel.  Determinations made during the May 6, 2021 meeting are not privileged for the reasons stated in our October 24 email and our Reply in Support of the Motion to Desequester.  Additionally, because Amazon is unable to satisfy the requirements of Fed. R. Evid. 502(b), the February 14, 2023 production operated as a privilege waiver as to any redactions added last night.  We only plan to challenge the redactions that Amazon added to IC-37 last night.  We are not arguing that Amazon has waived privilege over the material it redacted on February 14, 2023.  **Please identify, by line number, which redactions you added last**

2

night so that we can tell the Court which redactions we are challenging.  Please also provide the basis for your privilege claim as to those redactions.

As I stated above, we plan to add our challenge to IC-37 to the Motion to Compel we are planning to file tomorrow.  Therefore, **please provide your response by 5:00pm Eastern today, January 23.**  If you are standing by your clawback claim, we believe we have already met our meet-and-confer obligations given our October 30 phone call (during which we discussed determinations made during the May 6 Meeting and the requirements of Rule 502(b)) and extensive written correspondence about the clawbacks.  Nevertheless, if you believe that an additional call would be productive or is required by the Local Rules, please provide times tomorrow when you are available.


Evan


Evan M. Mendelson
Federal Trade Commission
Bureau of Consumer Protection
Enforcement Division
600 Pennsylvania Avenue, NW, CC-9528
Washington, DC  20580
Phone: (202) 326-3320
Fax:  (202) 326-3197

---

**From:** Flahive Wu, Laura <lflahivewu@cov.com>
**Sent:** Monday, January 22, 2024 9:52 PM
**To:** Mendelson, Evan <emendelson@ftc.gov>; Joseph Aronsohn <jaronsohn@hueston.com>; Jerjian, Olivia <ojerjian@ftc.gov>; Nardini, Thomas <tnardini@ftc.gov>; Hoffman, Elena <ehoffman@ftc.gov>; Zwonik, Ryan <rzwonik@ftc.gov>; Frech, Jacob <jfrech@ftc.gov>
**Cc:** John C. Hueston <jhueston@hueston.com>; Moez M. Kaba <mkaba@hueston.com>; Joseph A. Reiter <jreiter@hueston.com>; Vicki Chou <vchou@hueston.com>; Kelly, Kevin <Kkelly@cov.com>; Kim, Laura <LKim@cov.com>; Graubert, John <jgraubert@cov.com>; Anthony, Stephen <santhony@cov.com>; Hall, John <jhall@cov.com>; Rodgers, Megan <mrodgers@cov.com>; Capuano, Marc <MCapuano@cov.com>; Payson, Kenneth <KennethPayson@dwt.com>; Howard, Jim <JimHoward@dwt.com>; SEA Docket <SEADocket@dwt.com>; Chan, Gina <GinaChan@dwt.com>; Green, Jennifer <JenniferGreen@dwt.com>; Mejia-Portillo, Johana <jmejiaportillo@ftc.gov>; Awad, Yara <yawad@ftc.gov>; MacDonald, Colin <cmacdonald@ftc.gov>; kristinachin@dwt.com
**Subject:** RE: FTC v. Amazon.com, Inc., et al., No. 2:23-cv-00932-JHC (W.D. Wash.)

Counsel,

Thank you for your time on today's meet-and-confer, and for advising that we may have agreement on sealing at least some materials.

We are following up to confirm Amazon's position regarding public filing of the documents listed below.  Attached please find versions of documents 2, 8, and 14, highlighting in blue the text that is to be sealed/redacted.  Please let us know your position on the material Amazon seeks to seal as well as your plan for filing excerpts of Amazon's privilege logs.

Due to the inadvertent production of privileged material and to harmonize privilege redactions, Amazon is clawing back document number 12 on the list below (IC-37 / Amazon-FTC-CID_09389533) and replacing it with the attached demonstrative version of the document with updated privilege redactions. We will follow up with a formal production and overlay production to correct your records.  As stated in the chart below, Amazon's position is that this updated version of the document should be sealed in its entirety.

| Document Number in FTC List | Bates Number | Amazon's Position |
|---|---|---|
| 1. | AMZN_00045916 | Amazon consents to the public filing of this document. |
| 2. | AMZN_00107862 | Amazon consents to the public filing of the attached redacted copy of this document.  Such redactions are necessary to protect highly sensitive commercial information. |
| 3. | AMZN_00022853 | Amazon does not consent to the public filing of this document.  This entire document should be sealed because it is filled with highly sensitive commercial information. |
| 4. | AMZN_00099452 | Amazon consents to the public filing of this document. |
| 5. | IC-9 (demonstrative version provided by Amazon on January 12, 2024) | Amazon consents to the public filing of the redacted version of this document that was provided to the FTC on January 12, 2024. |
| 6. | Nelson IH Ex. 10 | We understand the FTC is no longer planning to file this document. Please let us know if that is incorrect. |
| 7. | AMZN_00103138 | Amazon consents to the public filing of this document. |
| 8. | AMZN_00045704 | Amazon consents to the public filing of the attached redacted copy of this document.  Such redactions are necessary to protect personal information of Amazon survey participants. |
| 9. | AMZN_00092943 | Amazon consents to the public filing of this document. |
| 10. | AMZN_00092949 | Amazon does not consent to the public filing of this document.  This entire document should be sealed because it is filled with highly sensitive commercial information. |
| 11. | AMZN_00103325 | Amazon consents to the public filing of this document. |
| 12. | Amazon-FTC-CID_09389533 | Amazon does not consent to the public filing of this document.  This entire document should be sealed because it is filled with highly sensitive commercial information.

In addition, Amazon is clawing back the previous version of IC-37 and replacing it with the attached version. |
| 13. | AMZN-PRM-FTC-000000001 | Amazon consents to the public filing of this document. |
| 14. | AMZN-PRM-FTC-000000190 | Amazon consents to the public filing of the attached redacted copy of this document.  Such redactions are necessary to protect highly sensitive commercial information.  The document also contains privilege redactions. |
| 15. | Kalim IH Tr. pp. 193-199 | Amazon consents to the public filing of this document. |
| 16. & 19. | Nelson IH Tr. pp. 71-72, 180-182, 111 | Amazon consents to the public filing of this document. |
| 17. | Amazon privilege log entries | Amazon does not consent to the public filing of the privilege log entries. |
| 18. | AMZN_00171492 | Amazon consents to the public filing of this document. |

| 20. | List of litigation hold notices | Amazon does not consent to the public filing of this document.  This entire document should be sealed to protect the privacy of Amazon employees cited herein.<br><br>We understand that you now plan to "describe the list at a high level, by stating the number of recipients of the litigation hold on various dates, without naming any specific hold notice recipients." Amazon does not object to that plan. |
|---|---|---|

We will follow up separately concerning the proposed stipulation language you have requested.

Regards,

Laura

**Laura Flahive Wu**

Covington & Burling LLP
One CityCenter, 850 Tenth Street, NW
Washington, DC 20001-4956
T +1 202 662 5982 | lflahivewu@cov.com
www.cov.com

**COVINGTON**

This message is from a law firm and may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply e-mail that this message has been inadvertently transmitted to you and delete this e-mail from your system. Thank you for your cooperation.

# Attachment 9



CONFIDENTIAL TREATMENT REQUESTED                                                                AMZN_00022853



CONFIDENTIAL TREATMENT REQUESTED

AMZN_00022854



CONFIDENTIAL TREATMENT REQUESTED

CONFIDENTIAL TREATMENT REQUESTED

AMZN_00022856



CONFIDENTIAL TREATMENT REQUESTED

AMZN_00022857

CONFIDENTIAL TREATMENT REQUESTED



CONFIDENTIAL TREATMENT REQUESTED

AMZN_00022859



CONFIDENTIAL TREATMENT REQUESTED
AMZN_00022860

Attachment 10

| | |
|---|---|
| **From:** | Nelson, Reid [/O=AMAZON/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=REIDN] |
| **Sent:** | 4/28/2021 11:52:35 AM |
| **To:** | Muus, Katey [kateymuu@amazon.com]; Baidwan, Nikki [nikbai@amazon.com]; Gotschall, Mary Pat [marypat@amazon.com]; Hills, Benjamin [bhills@amazon.com]; Dunn, Marla [mpdunn@amazon.com] |
| **Subject:** | Re: Shopper frustration examples (Privileged & Confidential) |
| **Attachments:** | Prime Account CX Satisfaction - Privileged & Confidential_BH RN.docx |

Nikki/Ben,

Given that there is a VP pre-review tomorrow, would like to get aligned on the following:

1.      We provided document feedback several weeks ago with edits/comments/questions, primarily focused on Page 1 of the narrative, and the Customer Insights appendix. If the edits/comments have been addressed in the latest doc version, then we're good. If the latest version is not addressing the feedback, we would like to go through the feedback and discuss it. Reattaching the feedback to this thread (I set up a meeting for tomorrow to discuss, but that's not leaving us much time given the VP review is tomorrow afternoon – Should we huddle today?).

2.      Here is the Design Recommendations doc that Rio put together and shared w/ Prime (which Katey is referring to) – hopefully it's snackable enough for an Appendix.

3.      Sounds like we're including early results from the most recent Rio-inspired Clarity Experiment. Would like to go through the framing of those results and ensure we are caveating the "freshness" of the experiment, given that subscription CX experiments take several months to show impacts on sign up quality metrics.

Let us know if a sync today is possible to get everyone aligned. Thanks.

---

**From:** "Muus, Katey" <kateymuu@amazon.com>
**Date:** Wednesday, April 28, 2021 at 11:44 AM
**To:** "Baidwan, Nikki" <nikbai@amazon.com>, Mary Pat Gotschall <marypat@amazon.com>, "Nelson, Reid" <reidn@amazon.com>, "Hills, Benjamin" <bhills@amazon.com>, "Dunn, Marla" <mpdunn@amazon.com>
**Subject:** Re: Shopper frustration examples (Privileged & Confidential)

Thanks for the clarification and helping us be added.

---

**From:** "Baidwan, Nikki" <nikbai@amazon.com>
**Date:** Wednesday, April 28, 2021 at 11:40 AM
**To:** "Muus, Katey" <kateymuu@amazon.com>, "Gotschall, Mary Pat" <marypat@amazon.com>, "Nelson, Reid" <reidn@amazon.com>, "Hills, Benjamin" <bhills@amazon.com>, "Dunn, Marla" <mpdunn@amazon.com>
**Subject:** RE: Shopper frustration examples (Privileged & Confidential)

No objection – we have tested the design recommendations and are including the results.

---

**From:** Muus, Katey <kateymuu@amazon.com>
**Sent:** Wednesday, April 28, 2021 11:33 AM
**To:** Baidwan, Nikki <nikbai@amazon.com>; Gotschall, Mary Pat <marypat@amazon.com>; Nelson, Reid <reidn@amazon.com>; Hills, Benjamin <bhills@amazon.com>; Dunn, Marla <mpdunn@amazon.com>
**Subject:** Re: Shopper frustration examples (Privileged & Confidential)

CONFIDENTIAL TREATMENT REQUESTED

Hi Nikki,

Since we took an action item from leadership on this, I'd like the design recommendations that we partnered with you team on to be included in the appendix, please let me know if you have any concern or objection to doing so.

---

**From:** "Baidwan, Nikki" <nikbai@amazon.com>
**Date:** Wednesday, April 28, 2021 at 11:19 AM
**To:** "Gotschall, Mary Pat" <marypat@amazon.com>, "Nelson, Reid" <reidn@amazon.com>, "Hills, Benjamin" <bhills@amazon.com>, "Dunn, Marla" <mpdunn@amazon.com>
**Cc:** "Muus, Katey" <kateymuu@amazon.com>
**Subject:** RE: Shopper frustration examples (Privileged & Confidential)

Mary Pat & Reid, yes – we are including inputs from the documents that Ulrich and Reid have shared. There is a pre-review scheduled for tomorrow where I see that Llew is invited but your team is not  - asking to include you now.

---

**From:** Gotschall, Mary Pat <marypat@amazon.com>
**Sent:** Wednesday, April 28, 2021 10:25 AM
**To:** Baidwan, Nikki <nikbai@amazon.com>; Nelson, Reid <reidn@amazon.com>; Hills, Benjamin <bhills@amazon.com>; Dunn, Marla <mpdunn@amazon.com>
**Cc:** Muus, Katey <kateymuu@amazon.com>
**Subject:** Re: Shopper frustration examples (Privileged & Confidential)

Quick follow up on this as I haven't heard back. Are you planning to incorporate the SF team inputs or are you not planning to include them? Also, will we see the doc prior to the meeting?

---

**From:** "Gotschall, Mary Pat" <marypat@amazon.com>
**Date:** Tuesday, April 20, 2021 at 5:35 PM
**To:** "Baidwan, Nikki" <nikbai@amazon.com>, Reid Nelson <reidn@amazon.com>, "Hills, Benjamin" <bhills@amazon.com>, "Dunn, Marla" <mpdunn@amazon.com>
**Cc:** "Muus, Katey" <kateymuu@amazon.com>
**Subject:** Re: Shopper frustration examples (Privileged & Confidential)

<span style="color:red">**Highlighting above is original; highlighting below was added by the FTC**</span>

Hi Nikki –
Thanks for this update. I understand that the goal is to present a balanced POV of the situation – but I believe the inputs we provided help to accomplish this goal.

Can you clarify if you are planning to incorporate the SF team inputs OR are you planning to not include them?
Thanks,
Mary Pat

---

**From:** "Baidwan, Nikki" <nikbai@amazon.com>
**Date:** Monday, April 12, 2021 at 9:52 PM
**To:** Reid Nelson <reidn@amazon.com>, "Gotschall, Mary Pat" <marypat@amazon.com>, "Hills, Benjamin" <bhills@amazon.com>, "Dunn, Marla" <mpdunn@amazon.com>
**Cc:** "Muus, Katey" <kateymuu@amazon.com>
**Subject:** RE: Shopper frustration examples (Privileged & Confidential)

Hi Reid, Thank you – I emailed Ulrich as well, so hopefully between us, we will get the data we need. For the larger document, as you know, we have gone through multiple reviews with Llew, Jamil and Neil at this stage and are working

---

CONFIDENTIAL TREATMENT REQUESTED

==highlight== on incorporating their feedback and direction into the document. ==highlight== As discussed previously, we are aiming to present a balanced view of the situation based on inputs from both teams and our options moving forward. We will share the most up to date version prior to the meeting.

Thanks,

Nikki

**Highlighting below is original; highlighting above was added by the FTC**

---

**From:** Nelson, Reid <reidn@amazon.com>
**Sent:** Monday, April 12, 2021 6:27 PM
**To:** Baidwan, Nikki <nikbai@amazon.com>; Gotschall, Mary Pat <marypat@amazon.com>; Hills, Benjamin <bhills@amazon.com>; Dunn, Marla <mpdunn@amazon.com>
**Cc:** Muus, Katey <kateymuu@amazon.com>
**Subject:** Re: Shopper frustration examples (Privileged & Confidential)

Hi Nikki,

I just sent an email to Ulrich requesting that he share the excel files.

As per Mary Pat's reply below, there were additional content updates in the first 1.5 pages of the narrative section as well as Appendix C. Can you review these changes and let us know your thoughts?

Thanks,
Reid

---

**From:** "Baidwan, Nikki" <nikbai@amazon.com>
**Date:** Monday, April 12, 2021 at 10:09 AM
**To:** "Nelson, Reid" <reidn@amazon.com>, Mary Pat Gotschall <marypat@amazon.com>, "Hills, Benjamin" <bhills@amazon.com>, "Dunn, Marla" <mpdunn@amazon.com>
**Cc:** "Muus, Katey" <kateymuu@amazon.com>
**Subject:** RE: Shopper frustration examples (Privileged & Confidential)

Hi Reid, we do have a table summarizing the impacts from these experiments in the document – do you have an Excel version of the table you can share as I see some metrics here that we did not have previously. Thanks,

Nikki

---

**From:** Nelson, Reid <reidn@amazon.com>
**Sent:** Friday, April 2, 2021 10:20 AM
**To:** Gotschall, Mary Pat <marypat@amazon.com>; Baidwan, Nikki <nikbai@amazon.com>; Hills, Benjamin <bhills@amazon.com>; Dunn, Marla <mpdunn@amazon.com>
**Cc:** Muus, Katey <kateymuu@amazon.com>
**Subject:** Re: Shopper frustration examples (Privileged & Confidential)

--retaining privilege--

Hi Nikki and Ben,

In addition to the edits/suggestions Mary Pat shared (attached again for convenience), please also note that Ulrich updated the table from our UPDP weblab meta-analysis. It now includes CS impacts from the 2018 experiments, which were missing previously. The trends are similar to what we observed in the 2020 experiments. Note that we see the biggest improvements when we make meaningful changes to the opt in / opt out CTAs. Price prominence also had a

large impact, though to a lesser degree than the CTAs. Attaching an updated version of the meta-analysis doc that includes these new figures.

Please chime in with your perspectives at your earliest convenience. Or if it would be helpful we can certainly meet to discuss over a call.

Thanks,
Reid

---

**From:** Mary Pat Gotschall <marypat@amazon.com>
**Date:** Wednesday, March 31, 2021 at 3:52 PM
**To:** "Baidwan, Nikki" <nikbai@amazon.com>, "Hills, Benjamin" <bhills@amazon.com>, "Dunn, Marla" <mpdunn@amazon.com>
**Cc:** "Muus, Katey" <kateymuu@amazon.com>, "Nelson, Reid" <reidn@amazon.com>
**Subject:** Re: Shopper frustration examples (Privileged & Confidential)

Hi Nikki and Ben –
Since the CWG meeting to review the Prime Account CX Satisfaction has been rescheduled, I'd love to revisit this conversation. Re-attaching the doc for your convenience.

Thanks,
Mary Pat

---

**From:** "Baidwan, Nikki" <nikbai@amazon.com>
**Date:** Friday, March 19, 2021 at 2:51 PM
**To:** "Gotschall, Mary Pat" <marypat@amazon.com>, "Hills, Benjamin" <bhills@amazon.com>, "Dunn, Marla" <mpdunn@amazon.com>
**Cc:** "Muus, Katey" <kateymuu@amazon.com>, Reid Nelson <reidn@amazon.com>
**Subject:** RE: Shopper frustration examples (Privileged & Confidential)

Hi Mary-Pat, we just heard from Jamil that the meeting next week is likely to be postponed. I don't know the reasons or when it will be moved to. Will update you as we know more.

Nikki

---

**From:** Gotschall, Mary Pat <marypat@amazon.com>
**Sent:** Friday, March 19, 2021 2:15 PM
**To:** Hills, Benjamin <bhills@amazon.com>; Dunn, Marla <mpdunn@amazon.com>; Baidwan, Nikki <nikbai@amazon.com>
**Cc:** Muus, Katey <kateymuu@amazon.com>; Nelson, Reid <reidn@amazon.com>
**Subject:** Re: Shopper frustration examples (Privileged & Confidential)

Hi Ben and Nikki – following up to see if you had any questions or feedback on the updated language we provided last week on the Prime Account CX Satisfaction doc. I do feel strongly that it's important to include the following two points in the document 1) communicate the breadth of data sources around the customer problem and 2) help shine the light on the recent analysis that Ulrich did (hits on quantity but meaningful improvements on quality of sign-ups). Would love to hear your perspective and hopefully align prior to the meeting next week.

Thanks,
Mary Pat

**From:** "Gotschall, Mary Pat" <marypat@amazon.com>
**Date:** Thursday, March 11, 2021 at 3:54 PM
**To:** "Hills, Benjamin" <bhills@amazon.com>, Reid Nelson <reidn@amazon.com>, "Dunn, Marla" <mpdunn@amazon.com>
**Cc:** "Baidwan, Nikki" <nikbai@amazon.com>, "Muus, Katey" <kateymuu@amazon.com>
**Subject:** Re: Shopper frustration examples (Privileged & Confidential)

+ Katey (& Marla)

Hi Ben and Nikki,

Chiming in on this thread. First off, thank you again for giving us the opportunity to participate in the authorship of this document. We're all excited to have this discussion with leadership.

Reid and I took a spin at some edits in a couple paragraphs in the first 1.5 pages of the doc. The goal here was to help us get aligned on how we are framing the customer data/insights, and also the learnings from Ulrich's recent meta-analysis. As per ongoing feedback in this thread and others, 1) we believe the doc needs to demonstrate the breadth of data sources around this customer problem (e.g., it's more than simply UX research insights and the cancel survey), and 2) we wanted to highlight early in the doc that that although past clarity experiments have resulted in in large hits to the "quantity" of members, the data are showing meaningful improvements in the "quality" of those who sign up. Based on the data, we don't agree with the current framing in the document that these experiments *"resulted in significant headwinds to the business in terms of signups and paid members* **without a direct measure that we have improved trust for members".**

We also went through Appendix C and streamlined it to make it more scannable – e.g., removing the frustration ticket tables, and making the customer profile images a little smaller. At the same time, we removed one theme (around the confirmation CX) and added what we believe is a more impactful theme related to brand impact – including an extract from a JeffB email. The Appendix has now been trimmed down to 2 pages, instead of 3.5 pages. We'd like to keep the length and content as is – as we believe it is easily scannable while adding unique value and insight.

Track changes are on, along with some comments. While it may seem like a lot of 'red', some of this is just minor editing and not major content changes. Please do take a look at the comments as well, and let us know your thoughts for those, as we think they are important questions.

Lastly, Shopping Design and GPX met today to review the mocks that we've been collaborating on. Some concerns were voiced about the Hard Offer CTA language, so would appreciate that your team review the mocks appendix with us before they go up to leadership (should we move forward with mocks in this doc at all).

Thanks,
Mary Pat

---

**From:** "Hills, Benjamin" <bhills@amazon.com>
**Date:** Wednesday, March 10, 2021 at 10:52 AM
**To:** Reid Nelson <reidn@amazon.com>
**Cc:** "Baidwan, Nikki" <nikbai@amazon.com>, "Gotschall, Mary Pat" <marypat@amazon.com>
**Subject:** RE: Shopper frustration examples

My sense is they get it.  They are super seasoned executives that understand subscriptions and marketing practices (more than most in the world), and how customers react to them. I also get the sense that they want to make sure we do have this discussion because they've (Dave C. Doug H) been asking Jamil for benchmarking, which is part of the reason we're having this meeting although the teams are aligned on how to move forward, so will be judgement. We've

AMZN_00045708

captured the magnitude of the customer frustration, and the verbatim from the studies, I'm trying to think of what would be missing to which they won't get it.  Perhaps (since Liew requested) you can ask Liew if there's something specific (and different) he'd suggest to add if it's not coming through.

---

**From:** Nelson, Reid
**Sent:** Wednesday, March 10, 2021 9:13 AM
**To:** Hills, Benjamin <bhills@amazon.com>
**Cc:** Baidwan, Nikki <nikbai@amazon.com>; Gotschall, Mary Pat <marypat@amazon.com>
**Subject:** Re: Shopper frustration examples

It's a great question. Can you take a dig in the Quip I pulled together, and let me know if you think leaders are feeling that pain? Do we know if Dave Clark has seen these emails that were sent to Jeff, for example? The one I just transcribed at the top of the quip pretty eloquently describes the problem and the ickyness it creates for the customer. I don't know if Dave, Doug, etc are feeling that pain as I haven't been in a discussion with them about it.

I've only been in the room with one SVP when we talked about this topic (Russ). I was the notetaker, and sat there quietly observing. This was the tone of the room: Folks mostly seemed to agree with the descriptor 'clickbait', even if apprehensively. Russ chuckled at the phrase 'confirmshaming', because he likes puns. Neil seemed embarrassed by the CX. Cem was a bit defensive about it. Llew made the argument he's made in the past that customers probably just need two buttons. The general guidance from Russ was "Fix these transparency numbers, and still hit your numbers" (but as you know from discussions with myself, with Ulrich, and I'm sure in your own internal team discussions – it's going to be very hard to hit these numbers by taking away some of those anti-patterns).

One of the requests from Llew in our December review was that we ensure that the C-team feels the pain these non-Prime customers are feeling, as he doesn't believe they are experiencing it enough. He even suggested having them all shop as non-Prime for a month...

So I'll pass the question back to you. You all were in the meeting with Doug last December where the UPDP clarity launch decision was reversed. The document Caroline shared from that Doug review was a bit light on the "customer" (in fairness, it sounds like y'all had to pull it together pretty quickly). At any rate, I don't know if these folks are truly feeling the customer impact in the way we'd like them to. What are your thoughts having been in the room with some of them more recently?

---

**From:** "Hills, Benjamin" <bhills@amazon.com>
**Date:** Wednesday, March 10, 2021 at 8:57 AM
**To:** "Nelson, Reid" <reidn@amazon.com>
**Cc:** "Baidwan, Nikki" <nikbai@amazon.com>, Mary Pat Gotschall <marypat@amazon.com>
**Subject:** RE: Shopper frustration examples

I guess, taking a step back, are we sure they don't feel the pain of those with pain (given the escalation they, themselves receive).  I'm not sure we need to point out any more than we are that there are some upset customers. If there's something specific that you think will sway the decision from a judgement call that is imperative for them, happy to figure that out, else, It thinks it's pretty obvious (certainly for me, an Liew, Jamil, and Neil) that we have a big judgement call to make.

---

**From:** Nelson, Reid
**Sent:** Wednesday, March 10, 2021 8:33 AM
**To:** Hills, Benjamin <bhills@amazon.com>
**Cc:** Baidwan, Nikki <nikbai@amazon.com>; Gotschall, Mary Pat <marypat@amazon.com>
**Subject:** Re: Shopper frustration examples

CONFIDENTIAL TREATMENT REQUESTED

AMZN_00045709

Hey Ben/Nikki,

Let me have a look at this and come back with something. I think we can make screenshots smaller, and maybe do some trimming on the quote length.

I did want to reach out about our other thread, on how we get leaders to feel the pain. There are other VOC channels outside of UX research that were represented in our original Jamil/Llew doc in December, which aren't being included in the CWG doc. E.g., The emails to JeffB, social media posts, anti-patterns blogs, app reviews, etc.

I took a swim through Heartbeat yesterday to focus on some keywords that would hone in on customers complaining about CX issues specifically (as opposed to general complaints about unknown charges). Please have a look at this Quip where I gathered examples. I'm wondering how we can help leaders understand that some customers are taking to more public avenues to complain about this stuff – and the general sentiment they're expressing ("you've lost a loyal customer", etc)? There's a brand impact here that is hard to capture in any quantitative weblab metric. This feels like an important input when we ask leaders if they're willing to tolerate status quo.

Keen to hear your thoughts on how to weave this in. Could we include an example or two, then provide a link to the quip for the fuller set, should they be interested in taking a look?

---

**From:** "Hills, Benjamin" <bhills@amazon.com>
**Date:** Wednesday, March 10, 2021 at 6:20 AM
**To:** "Nelson, Reid" <reidn@amazon.com>
**Cc:** "Baidwan, Nikki" <nikbai@amazon.com>
**Subject:** Shopper frustration examples

Good morning Reid,

I took out the references to the tickets per Liews feedback, we're still at almost 2 pages.  Per the request to simplify the appendix, can you trim to 1 page (presuming we keep the pictures, that'd be about 5).  Let me know which 5 and I'll keep/put in.

Thanks,

Ben

**Appendix C: Shopper frustrations tagged to theme 'Prime Account CX Satisfaction**
**Theme: Calls to Actions (CTAs)**
CTAs provide customers with "critical path" buttons or links to move through and make key decisions in a subscription flow.

CONFIDENTIAL TREATMENT REQUESTED

Customers sometimes click on these buttons not reading or understanding their labels and/or have trouble discovering the CTA to opt out of a subscription.



"Honestly I'm indifferent to the 3 euro shipping cost. So, No...(clicks)...Oh wait I clicked the wrong one...(Sighs)...**Usually the button that is marked in yellow is the one to continue without doing anything else. But in this case it was to continue AND make you Prime. And the 'No Thank You' was not highlighted**. You should highlight both, because they're equally important. It's like I fell into a trap for stupid people, because I hadn't read it. I was just clicking it thinking it was the way to continue." - ▮▮ Madrid, 2016, **Video**

### Theme: Difficulty comprehending that this is a paid, auto-renewing subscription

Even when customers understand they're signing up for a subscription trial, not all are doing so with the understanding that these trials will automatically renew. This is because key details are presented in legal T&Cs, typically at the bottom of a page in small print. Customers, moving quickly, frequently overlook or ignore those T&Cs (or if they have Accessibility/zoom settings enabled, this information can show up outside of their viewport).

"I didn't have any idea of what Prime was. I didn't read this well. I'm going through the order process, and then there's a surprise 500 pesos at the end of the month. Or something that I wasn't aware of, that I wasn't asking for. This small print really bothers me. **It should be clearer in saying 'You are using the Prime Service, and if you don't cancel in a month, they'll charge you 500 pesos.'** Not everyone is going to read this condition, that's the truth. They just say 'Yes, I want it, I accept, I accept, I accept'." - ▮▮ Mexico City, 2017, **Video**

### Theme: Issues related to confusing and/or misleading language in marketing content

Customers are sometimes confused by phrases in Prime upsells like *"Why pay for shipping?"* or *"No thanks, I don't want free shipping"*. These can make customers incorrectly conclude that they must be Prime to get free shipping (when they can already get core free shipping as a non-Prime customer with a minimum order threshold).

"They keep telling me and telling me (to get Prime)! **And this tiny link, 'No thanks, I don't want free shipping', Ayyy! (Rolls eyes)**" – ▮▮ Mexico City, **Video**

### Theme: Issues with confirmation messages and emails

Customers sometimes overlook or misinterpret subscription confirmations, like 'Welcome to Prime' messages in checkout, post-sign-up emails., etc.

"[Reading welcome e-mail after an unintentional sign up] So...'your 30-day trial'...'try Amazon benefits for 30 days'...'free delivery'...So I think you can get those benefits starting now, if you just subscribe now...(Moderator: Did you already sign up?)...No, I don't think so" - ▮▮ Toulouse, 2016, **Video** (starts at 53sec)

### Theme: Customers not feeling in control of their renewal

Unwanted auto-renewals is a common frustration for any subscription service (not just Amazon subscriptions). Customers like to be in control over their decisions, and are frustrated when they don't receive proactive renewal reminders and/or when it's difficult to disable auto-renew. The fear of forgetting to cancel can sometimes lead prospective customers to avoid signing up to begin with.

"That's how Amazon links you in to their service, you know. You get a free 30 days. What happens? Most people forget the 30 days. I'm one of those people, if I don't write it down - it's forgotten. The 30 days passes, two months go by and you look at your credit card and you say 'What am I being charged for?' You call Amazon and they say 'oh you had the free 30 days and it expired 3 months ago. I ain't going to remember something 30 days from now ." - ▮▮ Atlanta, 2017, **Video**

AMZN_00045711



**Theme: Difficulty finding a way to undo or cancel a subscription**
Customers are frustrated when they cannot instantly "undo" an unwanted membership sign up within the context of that sign up. These customers must go through self-service cancellation, but this is sometimes difficult for them to find. For example, there is no path to self-service cancellation when customers click on "Prime" within the mobile hamburger menu. Customers must instead open Your Account > Manage Prime membership (or by searching for "Cancel Prime" in a product search). Once they find their way to the Manage Prime Membership page, the cancellation option is hidden behind a "Manage membership" drop down.

"Let's have a look under 'My Prime'…(Scrolling through benefits)…blah blah blah…(Scrolls to footer)…There it is, 'Manage my Membership'. You [Amazon] put that at the very bottom of the screen. That was already clear to me, you rascals…It's very time-consuming, you have to go all the way down first (to find the ingress)". ▮▮▮ Munich, 2019, **Video** (starts at 2min 0sec)



**Theme: Difficulties finishing the cancellation workflow**
Customers are frustrated by the number of steps involved in cancellation, and the clarity of whether they've finished the process or not. We have observed some customers click "End membership", and then abandon the flow prematurely, not realizing there are additional steps to finalize the cancellation.

"That's not great, that was misleading. You click on 'Cancel' and I assume it's cancelled. Then I must confirm it again and this ad appears again. Then you think it is cancelled and they offer to extend it." – ▮▮▮ Vienna, 2019, **Video**
**Theme: Frustration related to partial refunds**
Partial refunds are especially frustrating when the customer did not want a subscription to begin with.



"I already cancelled it. But it got cancelled with a charge that is weird. They say that they are going to refund me just a part of the money, but not all of it. They said that they were going to refund 10 dollars, and that's a little less, it's not the whole amount ($12.99 x 3). And that's just bad! Because…it's simply something that I didn't want." ▮▮▮ Santiago de Chile, 2018, **Video**

**Theme: Negative downstream impacts caused by subscription CX issues**
Unexpected sign ups / renewals can erode customer trust, making customers re-evaluate their relationship with Amazon. Frustration is exacerbated when customers go through multiple billing cycles before discovering there is a problem.

So it's saying they are charging me $12.99/month for Prime. I didn't notice this (on my credit card bill) because ▮'s such a small amount of money. If you didn't tell me about this (I would have never known). We're looking at an ▮fringement from Amazon. I think it's serious because they charge you without letting you know….I'm ▮isappointed. I would expect something different from Amazon." – ▮▮▮ Santiago de Chile, 2018, **Video**

AMZN_00045712

# Attachment 11

| | |
|---|---|
| **From:** | Moeller, Caroline [/O=AMAZON/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=CMMOELLB49] |
| **Sent:** | 7/14/2021 7:43:13 AM |
| **To:** | Sundaram, Swami [swamina@amazon.com]; Ghani, Jamil [ghanijam@amazon.com]; Dinani, Alnoor [dalnoor@amazon.com]; Hills, Benjamin [bhills@amazon.com]; Agnihotri, Ishan [agnishan@amazon.com]; Sharma, Prabhat [prabshar@amazon.com]; Kalim, Omar [okalim@amazon.com]; Bruhanov, Michael [bruham@amazon.com]; Earley, Brennan [brennae@amazon.com]; England, Mark [marengl@amazon.co.uk]; Tuladhar, Praju [tuladhar@amazon.com]; Boulis, Anthony [boulis@amazon.com]; Brown, C.R. [crbrow@amazon.com]; Viswanathan, Chander [cviswa@amazon.com]; Choubal, Pranali [choubalp@amazon.com]; Goeltz, Benjamin [bgoeltz@amazon.com]; Mendoza, Isaac [imendoz@amazon.de]; Martinez Higes, Alvaro [alvhiges@amazon.es]; Akula, Srilekha [srileka@amazon.com]; Ikeda-Flowers, Emily [ikeemily@amazon.com]; Magnay, Phillip [magnap@amazon.com]; Baidwan, Nikki [nikbai@amazon.com]; Srinivasan, Bharath [bharaths@amazon.com]; Bharghav Balakrishna, Ashwin [ashwinb@amazon.com]; V, Vivek [vivekva@amazon.com]; King, Jason [jaskngz@amazon.com]; Parmar, Dhaval [dparmar@amazon.com]; Rai, Krishna Kumar [kkrai@amazon.com] |
| **CC:** | Davidai, Nahshon [ndavidai@amazon.com]; Leung, Lisa [lileung@amazon.com]; meet@chime.aws; pin+8842988038@chime.aws |
| **Subject:** | RE: Privileged and Confidential - Prime Headwinds |
| **Attachments:** | Privileged & Confidential - Prime Checkout Upsell CX Satisfaction.pdf; Prime Upsells in Checkout CX.pdf |

Seeking legal guidance

Hi all, please find the document and CX deck for today's discussion of CX Satisfaction in checkout.

Thanks,
Caroline

-----Original Appointment-----
**From:** Sundaram, Swami <swamina@amazon.com>
**Sent:** Tuesday, July 13, 2021 1:25 PM
**To:** Sundaram, Swami; Ghani, Jamil; Dinani, Alnoor; Moeller, Caroline; Hills, Benjamin; Agnihotri, Ishan; Sharma, Prabhat; Kalim, Omar; Bruhanov, Michael; Earley, Brennan; England, Mark; Tuladhar, Praju; Boulis, Anthony; Brown, C.R.; Viswanathan, Chander; Choubal, Pranali; Goeltz, Benjamin; Mendoza, Isaac; Martinez Higes, Alvaro; Akula, Srilekha; Ikeda-Flowers, Emily; Magnay, Phillip; Baidwan, Nikki; Srinivasan, Bharath; Bharghav Balakrishna, Ashwin; V, Vivek; King, Jason; Parmar, Dhaval; Rai, Krishna Kumar
**Cc:** Davidai, Nahshon; Leung, Lisa; meet@chime.aws; pin+8842988038@chime.aws
**Subject:** Privileged and Confidential - Prime Headwinds
**When:** Wednesday, July 14, 2021 8:00 AM-9:30 AM (UTC-08:00) Pacific Time (US & Canada).
**Where:** Meeting ID: 8842 98 8038

| | |
|---|---|
| <span style="color:red">**DO NOT FORWARD THIS MEETING INVITE**</span><br>*NOTE:  The beginning of the meeting will be devoted to reading time.* | |
| **Meeting Purpose:** | |
| Contacts | |
| **Questions/Changes:** Ishan Agnihotri / Ericha Roberts | |
| **Doc/Topic Owner:**  Topics & agenda will be shared closer to date of each occurrence | |
| **Note Taker ( If applicable):**  N/A | |
| **Invitees**<br>(sort alphabetically by last name) | **Conference Room & Chime Meeting Information** |
| **Required:**<br>1.     Ghani, Jamil<br>2.     Hills, Benjamin<br>3.     Baidwan, Nikki<br>4.     Agnihotri, Ishan | **PIN**<br>•      8842 98 8038<br><br>**Phone:**<br>•      US:  +1- 206-266-2000 |

| | |
|---|---|
| 5.    Sharma, Prabhat | •    US Toll Free:  +1-855-552-4463 |
| 6.    Srinivasan, Bharath | •    International: https://chime.aws/dialinnumbers/ |
| 7.    Kalim, Omar | |
| 8.    Bruhanov, Michael | |
| 9.    Earley, Brennan | |
| 10.   England, Mark | |
| 11.   Tuladhar, Praju | |
| 12.   Boulis, Anthony | |
| 13.   Dinani, Alnoor | |
| 14.   Brown, C.R. | |
| 15.   Bharghav Balakrishna, Ashwin | |
| 16.   Viswanathan, Chander | |
| 17.   Choubal, Pranali | |
| 18.   Goeltz, Benjamin | |
| 19.   Mendoza, Isaac | |
| 20.   Martinez Higes, Alvaro | |
| 21.   Akula, Srilekha | |
| **Optional:** | |
| 1.    Davidai, Nahshon | |

| Updates to Invite |
|---|
| •    6/17 – Invite Sent |
| •    7/12 – Updated occurrence end time |

CONFIDENTIAL TREATMENT REQUESTED

AMZN_00045916.0001

# Attachment 12

| | |
|---|---|
| **From:** | Gotschall, Mary Pat [/O=AMAZON/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=MARYPAT] |
| **Sent:** | 9/30/2020 4:04:52 PM |
| **To:** | Nelson, Reid [reidn@amazon.com]; Edelstein, David [edelstei@amazon.com]; Teska, Danielle [teskad@amazon.com] |
| **Subject:** | Re: Before/after screenshots of UPDP |

Hi David,
Are you able to free up at least 1 UXD to hop in and help get us over the finish line? Your help here is much appreciated!
Thanks,
Mary Pat

**From:** Reid Nelson <reidn@amazon.com>
**Date:** Tuesday, September 29, 2020 at 9:57 AM
**To:** "Edelstein, David" <edelstei@amazon.com>, "Teska, Danielle" <teskad@amazon.com>
**Cc:** "Gotschall, Mary Pat" <marypat@amazon.com>
**Subject:** FW: Before/after screenshots of UPDP

Hi David/Danielle,

Looks like Azmina (from Audible) is dropping out of the workstream, so as far as designers go who can help us with mocks, we're down to Nathan, Ryan, and Mokryun (with AmyLeigh helping on the copy side).

I don't have a good sense for how much work would be involved to get through the list of mock requests below – and whether the designers above can support given other things on their place.

You all probably have a better idea of the amount of work involved here. Do you think we'll be able to get these cranked out with the resources we have, before the Katey draft review in two weeks (Oct 14)? If not, are there some additional designers in GPX or Shopping Design who we can enlist for support?

Apologies for bringing this to you with somewhat short notice. I had Kristen Miller assigned to managing this mocks generation process, but she just dropped out due to the Gurupa migration fire, so I'm picking this up now.

Appreciate your guidance/support,
~Reid

**From:** "Karimi, Azmina" <azmina@audible.com>
**Date:** Tuesday, September 29, 2020 at 9:39 AM
**To:** "Nelson, Reid" <reidn@amazon.com>
**Subject:** Re: Before/after screenshots of UPDP

Hi Reid,

Thanks for reaching out. I would SO love to help with this but unfortunately we recently lost a designer on our team, leaving us super strapped for capacity. It looks like it will be that way for the rest of 2020 but if we end up getting more help we can reassess our involvement.

These are some great solutions and I love that exploring opt-in instead of opt-out is on table from our brainstorm! Would love to stay posted on how things are panning out in the meantime.

CONFIDENTIAL TREATMENT REQUESTED

AMZN_00099452

Best,
Azmina

---

**From:** "Ogborn, Ryan" <ogborn@amazon.com>
**Date:** Monday, September 28, 2020 at 7:54 PM
**To:** "Nelson, Reid" <reidn@amazon.com>, "Morgan, AmyLeigh" <amyleigh@amazon.com>, "Baik, Mokryun" <mokryun@amazon.com>, "Karimi, Azmina" <azmina@audible.com>, "Edelstein, David" <edelstei@amazon.com>
**Subject:** Re: Before/after screenshots of UPDP

Grabbed a slot for 7-Oct
https://w.amazon.com/bin/view/ShoppingDesign/RocketBoosters/Signup/

---

**From:** "Nelson, Reid" <reidn@amazon.com>
**Date:** Monday, September 28, 2020 at 4:35 PM
**To:** "Ogborn, Ryan" <ogborn@amazon.com>, "Morgan, AmyLeigh" <amyleigh@amazon.com>, "Baik, Mokryun" <mokryun@amazon.com>, "Karimi, Azmina" <azmina@audible.com>, "Edelstein, David" <edelstei@amazon.com>
**Subject:** Re: Before/after screenshots of UPDP

[Copying AmyLeigh, Nathan, Mokryun, Azmina and David]

Thank you!! Timeline = the sooner the better. We've got a Katey review mid-Oct. Let's do Rocketboosters if we can get a slot in soon-ish, but if they're booked out, I think we have enough research inputs to pull together some high judgment mocks. We've also got AmyLeigh who is willing to provide copy inputs on the CTAs and marketing content. She just needs help with the actual visual mocks themselves. I'm sure Nathan can get eyeballs on the copy as well.

To the other designers I just added: This is described in the thread below, but I lost Kristen Miller in this workstream due to conflicting priorities, so I will now be coordinating the mock generation activities leading up to our VP review. Ryan has kindly agreed to take on some UPDP "re-imagining".  Beyond UPDP, there are some other CXs along the Subscription Journey that I'd like to get some "best-in-class high clarity" mocks for. Namely the following:

- **Detail page upsells** (e.g., buy box upsells for Kindle Unlimited, Audible, Prime, etc... Where CTAs like "Read for Free" or "Get Free One-Day Shipping" are a bit misleading, and don't adequately tease out the cost or auto-renewing aspect of those memberships...Or in the case of Audible, I think it just says "Continue" in some cases... Similarly Prime's BBOP upsell doesn't always help NPAs understand that they can already get free slower shipping with orders over $25...How might we improve all this?)
- **Interstitial upsells** (e.g., UPDP, FTUE...See the live Amazon Music FTUE upsell as another example of a relatively poor CX, where opt-out is a small link rather than an equally prominent button)
- **Post sign up confirmations** (e.g., The welcome to Prime message on SPC should be very obvious, not confused with another ad/upsell for Prime, should have an 'Undo' button, and maybe should even have a line item added to the Order Summary box that a trial/renewing membership has been added to the order)
- **Post sign up emails** (e.g., The welcome to Prime email...price and auto-renew should be more prominent then simply showing up in fine-print T&Cs)
- **Proactive renewal reminder** (Currently customers must initiate the cancellation flow to turn on reminders. Let's show an example email that we just send X days in advance, automatically, without them opting into this)
- **Opt-in renewal, rather than opt-out.** This was one of the more controversial ideas in our Brainstorm Day, but I do think it's worth doing some design thinking on. If we were to get rid of auto-renew, and make it an opt-in experience on Day 30, what would that look like?

AMZN_00099453

- **Auto-renew toggle** (Currently customers must initiate the cancellation flow to turn off renewal. Let's give them a toggle on the Manage subscription page?)
- **More obvious cancellation ingress** (historically customers must open drop downs, click unintuitive strings like 'update settings'…How could we make this easier? Also, we should make this as easy to do on the Slash Prime page as it is from Prime Central.
- **Easier cancellation flow** (historically customers had to do like 4 clicks to get through this. What strikes a better balance between attempting to retain them, and making it easy to finish? Fewer steps. More obvious indication of progress / bread crumbs. Guaranteeing that buttons show up above the fold on all pages. Clear CTA labels and colors).
- **One harmonized page to see all active memberships, and toggle renewal vs. cancel**. I believe the current CX is a bit random with different teams owning the different flavors of their own subscription management CX.
- **Inactive member reminder & auto-cancel**. Similar to Netflix, some teams are sending out communications and letting them know they haven't used benefits. Then auto-cancelling them if they don't hear back. I don't believe ALL Amazon subscriptions are doing this currently. What's a best-in-class version of this?

This is definitely a non-trivial amount of design work, but I think having rich mocks for these, showing the "before/current" state, and the "proposed/after" state, will be instrumental to getting leaders excited and onboard. Ideally with some call-outs about what is different about the proposal (perhaps with links to frustrations). I can help with the iteration of each of these by providing UX inputs, and frustration tickets, but like AmyLeigh, I'm lacking the actual mock generation skills.

How are you all feeling about your current workloads, and what you could realistically commit to from a design perspective? Does this seem doable with the designers we have available in the working group? Or should we recruit more peeps (and if so, do you have any go-to folks in mind?) Also, which of the above concepts would you be willing to sign up for?

I can set up time for us to have a quick huddle, but please chime in if you have thoughts! Thanks!!

---

**From:** "Ogborn, Ryan" <ogborn@amazon.com>
**Date:** Monday, September 28, 2020 at 3:40 PM
**To:** "Nelson, Reid" <reidn@amazon.com>
**Subject:** Re: Before/after screenshots of UPDP

I think so. We just had to dial down our True SPC for Non Prime weblab for negative Prime sign-ups so it would be a good time to get a best-in-class option ready since migration hinges on moving off of multi-page pipeline/Gurupa.
https://sim.amazon.com/issues/CPX-EXPRESS-243

I'd like to get this in Rocketboosters and in front of Prime designers, what's your timeline?

---

**From:** "Nelson, Reid" <reidn@amazon.com>
**Date:** Monday, September 28, 2020 at 3:24 PM
**To:** "Ogborn, Ryan" <ogborn@amazon.com>
**Subject:** Re: Before/after screenshots of UPDP

Thanks man!

Eventually I'll come back up for air, but since I've lost Kristen Miller on this workstream, I think I'll be the one who is managing the "Design/mock inputs" process for our dock. One of the mocks I'd like is a North Star / best-in-class high clarity UPDP mock. Do you think you would be willing to take a stab at creating it, using some of the bullets below for the additional things we need to tweak to get us there? (In addition to other clarity improvements I may have been missing)?

**From:** "Ogborn, Ryan" <ogborn@amazon.com>
**Date:** Monday, September 28, 2020 at 1:20 PM
**To:** Mary Pat Gotschall <marypat@amazon.com>, "Nelson, Reid" <reidn@amazon.com>, "Teska, Danielle" <teskad@amazon.com>
**Subject:** Re: Before/after screenshots of UPDP

This is great news, Reid!

**From:** "Gotschall, Mary Pat" <marypat@amazon.com>
**Date:** Monday, September 28, 2020 at 1:07 PM
**To:** "Nelson, Reid" <reidn@amazon.com>, "Teska, Danielle" <teskad@amazon.com>
**Cc:** "Ogborn, Ryan" <ogborn@amazon.com>
**Subject:** Re: Before/after screenshots of UPDP

Good suggestions on the improvements; especially wrt to Prime not needing the minimum order threshold. We don't tout that one – but it is an important factor for non-prime customers to consider when thinking about converting to Prime. Can you work with Caroline to see if they'd be willing to consider?

**From:** Reid Nelson <reidn@amazon.com>
**Date:** Monday, September 28, 2020 at 11:45 AM
**To:** "Teska, Danielle" <teskad@amazon.com>
**Cc:** "Gotschall, Mary Pat" <marypat@amazon.com>, "Ogborn, Ryan" <ogborn@amazon.com>
**Subject:** FW: Before/after screenshots of UPDP

==FYI that there have been major strides for UPDP (more than I described in my previous email). Caroline's last reply summarizes the changes.==

Still room for further improvement, including:

• Get rid of shadow button treatment. It's a known confusing pattern that has been escalated multiple times.
• Put price and auto-renew details next to the sign up CTA, where customers' attention will likely be focused.
• Use Yellow button for continuing normally without Prime. Use a different color button to continue with Prime (e.g., Blue). In case people don't read, and are using button colors as a sign post to proceed to checkout.
• Use natural language to describe benefits, rather than isolated branded program names like "Prime Video", "Amazon Music Prime".
• Maybe we should mention the fact that Prime gets rid of the minimum order threshold? Seems like an important benefit to educate customers about.

At any rate, this might be a good one to bring up in the Fireside Chat! So many years of effort from multiple teams to get to this state, with Shopping Design being a key contributor.

Sounds like Caroline will be sending out a launch announcement this week. We should forward it to Llew/Katey once it goes out (if they're not already on the thread).

**From:** "Moeller, Caroline" <cmmoell@goodreads.com>
**Date:** Monday, September 28, 2020 at 11:24 AM
**To:** "Nelson, Reid" <reidn@amazon.com>
**Subject:** RE: Before/after screenshots of UPDP

AMZN_00099455

Right, here's a summary of the changes:

-made decline CTA a button instead of a link
-reduced decline copy to say "No thanks"
-added price prominence outside of ts&cs
-updated positive CTA to be less confusing / mention Prime
-mentioned multiple core benefits, not just delivery benefits

**From:** Nelson, Reid <reidn@amazon.com>
**Sent:** Monday, September 28, 2020 11:23 AM
**To:** Moeller, Caroline <cmmoell@goodreads.com>
**Subject:** Re: Before/after screenshots of UPDP

Awesome thanks for the prompt reply!!

**So just to clarify, this is the new control treatment now, right? (A simple "No thanks" button)**




**And this was the previous control treatment? (A link w/ misleading language "No thanks, I do not want FREE delivery")**




## firstName, we're giving you a 30-day FREE trial of Prime.

**No minimum order threshold for FREE One-Day Delivery**

Your top Prime eligible item in cart:

Your Prime benefits include:

| Delivery Speed | prime |
|---|---|
| Same-Day Delivery (in select cities) | FREE |
| One-Day Delivery | FREE |
| Two-Day Delivery | FREE |

**Save $5.99** on your Prime eligible items with FREE One-Day Delivery on this order.

No thanks, I do not want FREE delivery

**Get FREE One-Day Delivery**
Enjoy Prime FREE for 30 days

By signing up, you acknowledge that you have read and agree to the Amazon Prime Terms and Conditions and authorize us to charge your default payment method () or another available payment method on file after your 30-day free trial. Your Amazon Prime membership continues until cancelled. If you do not wish to continue for $12.99/month plus any applicable taxes, you may cancel anytime by visiting Your Account and adjusting your membership settings. For customers in Hawaii, Puerto Rico, and Alaska please visit the Amazon Prime Shipping Benefits page to check various shipping options.

BTW, do we have any initiatives on the horizon to fix the shadow button?

**From:** "Moeller, Caroline" <cmmoell@goodreads.com>
**Date:** Monday, September 28, 2020 at 11:15 AM
**To:** "Nelson, Reid" <reidn@amazon.com>
**Subject:** RE: Before/after screenshots of UPDP

Hi Reid,

Before and Afters in this folder: https://drive.corp.amazon.com/folders/Prime-Marketing-Screenshots/200915%20US%20UPDP%20BAU%20Clarity%20Updates

**From:** Nelson, Reid <reidn@amazon.com>
**Sent:** Monday, September 28, 2020 10:07 AM
**To:** Moeller, Caroline <cmmoell@goodreads.com>
**Subject:** Before/after screenshots of UPDP

Hey Caroline,

Any chance I could get a screenshot of the old (No Thanks link) vs. new (No Thanks button) CX for UPDP?

Thanks so much!

--
Reid Nelson | Principal UX Researcher | Shopping Design | 253.241.8864 (Mobile)

# Attachment 13

dm-reidn--tracymcn

Oh of course, don't sweat it.

Instant Message : Amazon Slack
14:56:32
From
reidn <W017T2RDPGC>
dm-reidn--tracymcn

Yeah, good on her!

Instant Message : Amazon Slack
14:56:49
From
tracymcn <W017LC46NNR>
dm-reidn--tracymcn

But that's Pat, right? And he's so into customer anecdotes.

Instant Message : Amazon Slack
14:57:02
From
reidn <W017T2RDPGC>
dm-reidn--tracymcn

Muthu, Pat, Coleen it sounds like...

Instant Message : Amazon Slack
14:57:09
From
reidn <W017T2RDPGC>
dm-reidn--tracymcn

She's meeting with all of them

Instant Message : Amazon Slack
14:57:16
From
reidn <W017T2RDPGC>
dm-reidn--tracymcn

Or that's what I thought I heard.

Instant Message : Amazon Slack
14:58:02
From
reidn <W017T2RDPGC>
dm-reidn--tracymcn

We're working on what is the most important doc I think I have ever been involved with at Amazon - this Prime thing. And Katey has not taken the time to get close to the details... it's a bit of a bummer

Instant Message : Amazon Slack
14:58:48
From
tracymcn <W017LC46NNR>
dm-reidn--tracymcn

Hmm. So it's either that she trusts you so implicitly that she doesn't feel that she needs to get close to it, OR she doesn't realize how important it is, or...???

Instant Message : Amazon Slack
14:58:49

From
reidn <W017T2RDPGC>
dm-reidn--tracymcn

It goes to the C-Team in a week, and we continually give them feedback that the framing of the problem and our customer insights needs some tweaking, and they (Prime) completely ignore us

Instant Message : Amazon Slack
14:59:05
From
reidn <W017T2RDPGC>
dm-reidn--tracymcn

I need Katey to lean in and throw some muscle down, but she isn't

Instant Message : Amazon Slack
14:59:17
From
tracymcn <W017LC46NNR>
dm-reidn--tracymcn

Have you asked her explicitly to do that?

Instant Message : Amazon Slack
14:59:30
From
tracymcn <W017LC46NNR>
dm-reidn--tracymcn

(I mean that in a non-judgey way.)

Instant Message : Amazon Slack
14:59:40
From
reidn <W017T2RDPGC>
dm-reidn--tracymcn

I haven't...I'm leaning on Mary Pat for guidance there, but she sorta says that Katey is just overwhelmed with other stuff

Instant Message : Amazon Slack
14:59:46
From
tracymcn <W017LC46NNR>
dm-reidn--tracymcn

Like, we need you to come in guns blazing on this.

Instant Message : Amazon Slack
14:59:56
From
tracymcn <W017LC46NNR>
dm-reidn--tracymcn

Ohhh

Instant Message : Amazon Slack
15:00:17
From
reidn <W017T2RDPGC>
dm-reidn--tracymcn

There's a pre-review with Llew tomorrow that we weren't even invited to, and they're only adding us last minute because we have been nagging them.

CONFIDENTIAL TREATMENT REQUESTED

Instant Message : Amazon Slack
15:00:28
From
reidn <W017T2RDPGC>
dm-reidn--tracymcn

It's all fucked up... Sorry I'm venting but this is so aggravating

Instant Message : Amazon Slack
15:00:43
From
tracymcn <W017LC46NNR>
dm-reidn--tracymcn

Hmm. Well, I can understand with such a big org, but still, this seems like an andon cord situation of sorts, doesn't it?

Instant Message : Amazon Slack
15:01:03
From
reidn <W017T2RDPGC>
dm-reidn--tracymcn

I mean...how many C-team docs is Katey's org contributing to??

Instant Message : Amazon Slack
15:01:09
From
reidn <W017T2RDPGC>
dm-reidn--tracymcn

Like probably not that many, right??

Instant Message : Amazon Slack
15:01:11
From
tracymcn <W017LC46NNR>
dm-reidn--tracymcn

(what is C-team btw?)

Instant Message : Amazon Slack
15:01:18
From
reidn <W017T2RDPGC>
dm-reidn--tracymcn

David Clark and all his cronies

Instant Message : Amazon Slack
15:01:21
From
reidn <W017T2RDPGC>
dm-reidn--tracymcn

*Dave

Instant Message : Amazon Slack
15:01:25
From
reidn <W017T2RDPGC>
dm-reidn--tracymcn

The top of the top

CONFIDENTIAL TREATMENT REQUESTED

AMZN_00103143

Instant Message : Amazon Slack
15:01:44
From
reidn <W017T2RDPGC>
dm-reidn--tracymcn

I guess Andy/JeffB would be the top, but this is as top as we're ever gonna get

Instant Message : Amazon Slack
15:01:48
From
tracymcn <W017LC46NNR>
dm-reidn--tracymcn

yeah so in that case, i think it takes priority over almost anything else?

Instant Message : Amazon Slack
15:01:54
From
reidn <W017T2RDPGC>
dm-reidn--tracymcn

One would think!

Instant Message : Amazon Slack
15:02:34
From
tracymcn <W017LC46NNR>
dm-reidn--tracymcn

Ugh this makes me uncomfortable.

Instant Message : Amazon Slack
15:02:36
From
reidn <W017T2RDPGC>
dm-reidn--tracymcn

I don't feel like I can ping Katey about this, because I feel like it's stepping over Mary Pat

Instant Message : Amazon Slack
15:03:08
From
tracymcn <W017LC46NNR>
dm-reidn--tracymcn

Well, it's also the kind of thing where after the fact, Katey could be like, "I don't understand why you wouldn't pull me in on something like this."

Instant Message : Amazon Slack
15:03:23
From
tracymcn <W017LC46NNR>
dm-reidn--tracymcn

So it's a bit of a rock/hard place situation, isn't it...

Instant Message : Amazon Slack
15:03:49
From
reidn <W017T2RDPGC>
dm-reidn--tracymcn

I want to send them both a message saying "We're not happy with where the doc is at, and this team's

lack of transparency and partnership working with us on this doc/meeting...and considering that Shopping Design's year-long 2020 workstream is the reason why this C-team review is happening in the first place, we feel like we need a more prominent seat at the table"

Instant Message : Amazon Slack
15:04:06
　　From
　　tracymcn <W017LC46NNR>
dm-reidn--tracymcn

(sorry - who is both of them? MP and Katey?)

Instant Message : Amazon Slack
15:04:15
　　From
　　reidn <W017T2RDPGC>
dm-reidn--tracymcn

Yeah, Katey and MPG

Instant Message : Amazon Slack
15:04:48
　　From
　　tracymcn <W017LC46NNR>
dm-reidn--tracymcn

Do it. Can you shoot MP a slack or email as a heads-up that you want to give Katey more visibility into this?

Instant Message : Amazon Slack
15:05:01
　　From
　　reidn <W017T2RDPGC>
dm-reidn--tracymcn

I have been

Instant Message : Amazon Slack
15:05:02
　　From
　　tracymcn <W017LC46NNR>
dm-reidn--tracymcn

(I assume she's in the Llew review tomorrow, but maybe not)

Instant Message : Amazon Slack
15:05:06
　　From
　　reidn <W017T2RDPGC>
dm-reidn--tracymcn

MPG is swamped with QBR

Instant Message : Amazon Slack
15:05:28
　　From
　　reidn <W017T2RDPGC>
dm-reidn--tracymcn

Katey's QBR is scheduled at the same time as the Llew review...to make matters worse

Instant Message : Amazon Slack
15:05:35
　　From

CONFIDENTIAL TREATMENT REQUESTED

tracymcn <W017LC46NNR>
dm-reidn--tracymcn

Dammit.

Instant Message : Amazon Slack
15:05:40
From
reidn <W017T2RDPGC>
dm-reidn--tracymcn

Yeah it's all fucked

Instant Message : Amazon Slack
15:06:08
From
reidn <W017T2RDPGC>
dm-reidn--tracymcn

MPG and Katey both don't have any brainwaves left to spend on this

Instant Message : Amazon Slack
15:06:15
From
tracymcn <W017LC46NNR>
dm-reidn--tracymcn

so in the llew review, it's you and then the prime people?

Instant Message : Amazon Slack
15:06:16
From
reidn <W017T2RDPGC>
dm-reidn--tracymcn

And it's a battle that is uncomfortable to have to begin with

Instant Message : Amazon Slack
15:06:54
From
reidn <W017T2RDPGC>
dm-reidn--tracymcn

Looks like they just moved Katey's QBR meeting to the hour after, so that must be directly related.

Instant Message : Amazon Slack
15:07:03
From
tracymcn <W017LC46NNR>
dm-reidn--tracymcn

ahhh!

Instant Message : Amazon Slack
15:08:11
From
tracymcn <W017LC46NNR>
dm-reidn--tracymcn

So in that case, maybe MP and Katey can attend the Llew doc review tomorrow?

Instant Message : Amazon Slack
15:09:11
From

tracymcn <W017LC46NNR>
dm-reidn--tracymcn

I feel like you (and really, our whole team) doesn't ask for much, so if we're asking for support, it's because we really need it.

Instant Message : Amazon Slack
15:09:39
From
reidn <W017T2RDPGC>
dm-reidn--tracymcn

I hope so! But the thing that kills me is that we provided specific feedback on their doc 6 weeks ago to Prime, pinged them multiple times, and have been given two run-around responses that they'll get back to us. Then we find out TODAY that there's a Llew review tomorrow. And I just got a sneak peek of their doc; they made ZERO of the edits/updates we requested.

Instant Message : Amazon Slack
15:10:06
From
reidn <W017T2RDPGC>
dm-reidn--tracymcn

We don't ask for hardly anything

Instant Message : Amazon Slack
15:10:35
From
reidn <W017T2RDPGC>
dm-reidn--tracymcn

And maybe that was my bad... Maybe I should have been louder about this to Katey (although she has been all the email threads where we provided feedback)

Instant Message : Amazon Slack
15:11:02
From
tracymcn <W017LC46NNR>
dm-reidn--tracymcn

WTF.

Instant Message : Amazon Slack
15:11:14
From
tracymcn <W017LC46NNR>
dm-reidn--tracymcn

That team sounds like a bunch of a-holes.

Instant Message : Amazon Slack
15:11:24
From
tracymcn <W017LC46NNR>
dm-reidn--tracymcn

and that is shady.

Instant Message : Amazon Slack
15:12:22
From
tracymcn <W017LC46NNR>
dm-reidn--tracymcn

CONFIDENTIAL TREATMENT REQUESTED



(I knew it was a tricky situation with them, but holy hell that is BAD.)

Instant Message : Amazon Slack
15:17:19
    From
        reidn <W017T2RDPGC>
dm-reidn--tracymcn

I want to share the doc with you. It starts out with how amazing and loved Prime is.

Instant Message : Amazon Slack
15:17:39
    From
        reidn <W017T2RDPGC>
dm-reidn--tracymcn

A document, whose sole purpose is to talk about the pain we're causing customers.

Instant Message : Amazon Slack
15:17:54
    From
        reidn <W017T2RDPGC>
dm-reidn--tracymcn

Fuck it.

Instant Message : Amazon Slack
15:20:49
    From
        reidn <W017T2RDPGC>
dm-reidn--tracymcn

Their latest version (which I was only able to get this morning through a backchannel...they've literally kept it from us)

attachment_prime_account_cx_satisfaction_-_privileged___confidential.docx - This file type is not supported for embedded threading. See attached child.
Instant Message : Amazon Slack
15:21:04
    From
        reidn <W017T2RDPGC>
dm-reidn--tracymcn

And here's the version we sent to them 6 weeks ago with a bunch of edits/comments to Page 1 of the narrative (and an updated customer anecdotes Appendix). Looking at the latest version, they've not taken any of the feedback.

attachment_prime_account_cx_satisfaction_-_privileged___confidential_3-11-21_rn-mpg.docx - This file type is not supported for embedded threading. See attached child.
Instant Message : Amazon Slack
15:24:20
    From
        reidn <W017T2RDPGC>
dm-reidn--tracymcn

I just sent this to Mary Pat...I had to say something. Sorry this turned into such a vent sesh!

_Hey so, just an FYI that I'm going to be dialing into that meeting from the road tomorrow as I have to pick up my girlfriend from the airport at 1PM. So aggravating to find out about this meeting the day prior._

_I've been venting to Tracy about this whole ordeal. I don't want to keep pointing fingers as I don't think that gets us to a solution. But I feel like we need a little Katey muscle right now to get the needed edits/updates taken seriously by Prime BEFORE we all convene tomorrow with leadership. I haven't

AMZN_00103148

heard a peep from Nikki/Ben, so unless you've had any backchanneling since our email thread today, can we have a huddle with Katey about this?_

_Perhaps my litmus is off, but I'm trying to get a handle on what document or workstream within Shopping Design has more relative importance right now than a document that goes to C-Team next week to talk about one of the most critical shopper frustrations in the Amazon shopping experience. I actually need Katey to get into the details on this._

**End Thread**

Thread Statistics

**Instant Message Count**

83

# Attachment 14

**Chat with "reidn" <W017T2RDPGC> and another address on April 6, 2022**

dm-hulmes--reidn
    hulmes <W018829415E>
    reidn <W017T2RDPGC>

**Earliest item: 2022-04-06 14:07:24**
**Latest item: 2022-04-06 14:30:38**

**Wednesday 06 April 2022**

Instant Message : Amazon Slack
14:07:24
    From
    reidn <W017T2RDPGC>
dm-hulmes--reidn

Hey Colin! Thanks for the email. Wanted to let you know that the "team who shall not be named" did something VERY similar to what you described in your email.

Edited
Instant Message : Amazon Slack
14:09:37
    From
    reidn <W017T2RDPGC>
dm-hulmes--reidn

When we had that Clarity initiative (a document and work stream that went up to the C-Team), we wanted to own the document. But the other "team" _insisted_ to own it. It was extremely challenging to partner with them, and ensure that all the necessary inputs be presented in a balanced, customer-centric way for leadership. Our team (up to my director, Katey) ended up being uninvited from the meeting in the final hour, and legal took over the document.

Instant Message : Amazon Slack
14:09:55
    From
    reidn <W017T2RDPGC>
dm-hulmes--reidn

If doing it over again, I would insist that the customer advocacy team own the doc.

Instant Message : Amazon Slack
14:10:34
    From
    reidn <W017T2RDPGC>
dm-hulmes--reidn

Doesn't mean you couldn't provide a section for that team to provide their perspective.

Instant Message : Amazon Slack
14:11:18
    From
    reidn <W017T2RDPGC>
dm-hulmes--reidn

But if they take over the document, I'd be concerned that we'll have a repeat of what happened last time. It was a painstakingly frustrating experience that marked a "low" of my career at Amazon.

Instant Message : Amazon Slack
14:13:02
    From
    reidn <W017T2RDPGC>
dm-hulmes--reidn

Anyway, just my two cents on the matter! I hope you have a better experience than I did, and that the team actually behaves like a good partner this time around.

Instant Message : Amazon Slack

CONFIDENTIAL TREATMENT REQUESTED

AMZN_00103325

14:14:23
From
reidn <W017T2RDPGC>
dm-hulmes--reidn

Please let me know how I can help with all this.

Edited
Instant Message : Amazon Slack
14:25:47
From
reidn <W017T2RDPGC>
dm-hulmes--reidn

P.S.: It may be worth adding an "Accessibility" component to the doc/discussion. <https://quip-amazon.com/aaRcAws2WTaZ/Recent-complaints-from-customer-service-regarding-accessibility-trust|Some great CS contacts and screenshots here>. These CX issues obviously impact all customer types, but it's especially problematic for folks with visual and cognitive impairments. These CS anecdotes are fairly "fresh" as well. Would be a good complement to the <https://quip-amazon.com/12BVA8O9a1S7/Thematic-shopper-frustrations-related-to-Subscription-Clarity|Thematic Frustrations quip> you were thinking about Appendicizing. See also the attached doc with abridged Appendix content that we synthesized from that larger Quip (we sent this to the team for inclusion in the C-Team doc, but not sure it ever made it in since we were ultimately uninvited and never saw the final doc)

attachment_abridged_appendix_for_c-team_doc.docx - This file type is not supported for embedded threading. See attached child.
Instant Message : Amazon Slack
14:27:51
From
reidn <W017T2RDPGC>
dm-hulmes--reidn

P.S.: It may be worth adding an "Accessibility" component to the doc/discussion. <https://quip-amazon.com/aaRcAws2WTaZ/Recent-complaints-from-customer-service-regarding-accessibility-trust|Some great CS contacts and screenshots here>. These CX issues obviously impact all customer types, but it's especially problematic for folks with visual and cognitive impairments. These CS anecdotes are fairly "fresh" as well. Would be a good complement to the <https://quip-amazon.com/12BVA8O9a1S7/Thematic-shopper-frustrations-related-to-Subscription-Clarity|Thematic Frustrations quip> you were thinking about Appendicizing. See also the attached doc with abridged Frustrations Appendix content (we sent this to the team for inclusion in the 2021 C-Team doc...I'm not sure the Appendix ever made it into the final doc since we were un-invited from the meeting :confused:)

Instant Message : Amazon Slack
14:30:38
From
reidn <W017T2RDPGC>
dm-hulmes--reidn

When we had that 2020-21 Clarity initiative (a document and work stream that went up to the C-Team), we wanted to own the document. But the other "team" _insisted_ to own it. It was extremely challenging to partner with them, and ensure that all the necessary inputs be presented in a balanced, customer-centric way for leadership. Our team (up to my director, Katey) ended up being uninvited from the meeting in the final hour, and legal took over the document.

**End Thread**

Thread Statistics

**Instant Message Count**

10

CONFIDENTIAL TREATMENT REQUESTED

AMZN_00103326

# Attachment 15

| | |
|---|---|
| **From:** | Baidwan, Nikki [/O=AMAZON/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=NIKBAI6DB] |
| **Sent:** | 2/17/2021 11:43:54 AM |
| **To:** | Moeller, Caroline [cmmoell@goodreads.com]; Hankin, Jediah [jediahh@amazon.com]; Kremer, Susan [skremer@amazon.com]; Trivedi, Piyush [piyusht@amazon.com]; Sundaram, Swami [swamina@amazon.com] |
| **Subject:** | RE: Privileged & Confidential - Clarity doc and meeting request |

Maintaining privilege and adding Swami & Piyush
Hi Piyush and Swami,
Both of you request some details on the work we have done for clarity to date. Please find a comprehensive view below and let us know follow up questions. Thanks,

Nikki

---

**From:** Moeller, Caroline <cmmoell@goodreads.com>
**Sent:** Thursday, January 14, 2021 9:30 AM
**To:** Baidwan, Nikki <nikbai@amazon.com>; Hankin, Jediah <jediahh@amazon.com>; Kremer, Susan <skremer@amazon.com>
**Subject:** RE: Privileged & Confidential - Clarity doc and meeting request

Maintaining Privilege

As I mentioned on our call yesterday, here is an overview of the clarity conversations, docs, and actions taken in 2020.

## Timeline and Docs:
- January 2020: Monique walked Nahshon and Omar through this PPT with an overview of the CX  across international UPDP templates, and also ran 2 UPDP clarity experiments (Tracker of 2020 clarity experiments)
- February 2020: Nikki Erik and I wrote this early clarity document
- March 2020: Covid, clarity efforts put on hold
- **3/20/20:** US Suppressed FT checkout upsells due to Covid concerns, increased delivery lead times. Significant impact to Prime signups but minimal impact on demand.
- **4/22/20:** US FT checkout upsells reintroduced, using Order Agnostic templates under a Weblab takeover
- May 2020: alignment with Nahshon that when we 'go back to pre Covid BAU templates, we should do so with something that meets our clarity bar'. Began working on docs for Jamil and Neil alignment.
- 6/3/20: Jamil Clarity Review Doc
- **7/27/20:** Neil Lindsay Review Doc
- 8/12/20: Shared Neil Lindsay doc with Llew Mason and Jody Biggs
- 8/19/20: Started a monthly working clarity group to ensure rapid progress coming out of the Neil review
- Quip that tracked agenda topics / alignment, includes action items from Neil review
- **9/17/20:** Removal of Order Agnostic template weblab takeover & US clarity enhancements made to UPDP,
- We updated both the control and the best performers for each use case. This did not impact content goals, which track lift vs baseline, but it did cause a significant YoY impact that started to no longer be offset by other 2020 tailwinds (such as increase in digital, Up beat vs Op2)
- Screenshots of UPDP before and after 9/17 changes
- Tracker for making the 9/17 updates to UPDP
- Impact of changes WoW of the 9/17 changes – we saw flat to mildly positive WoW trends, as we had been using order agnostic templates since April.
- User Testing results for these changes
- US was the only locale to make these updates to reset the baseline – EU was continuing to test to identify a less impactful option.
- Summer / Fall: worked with finance on clarity score (latest document). Discussed implications for other scores like Nostradamus (details here). This is still in progress.

CONFIDENTIAL TREATMENT REQUESTED

AMZN_00107862

- 11/15/20: Rex flagged concerns with US on track to miss plan once he and finance looked at 30 day conversion post Prime Day. US did not have any input goals to OP2 (such as signups, presentations), so it was difficult to isolate or predict trends from various headwinds and tailwinds.
- 11/25/20: US added specific delivery speeds into UPDP upsells, but maintained the clarity bar. Because we did not also reintroduce the delivery speed variable in the cta "Get FREE One-Day Delivery", and kept the cta "Start My Free Trial", we saw a very small uplift in signups that was not sufficient to help clawback the overall US gap to plan.
- **12/3/20:** US Prime Performance Update (review with Doug Herrington, Jamil, Neil – doc is attached)
- We reverted US UPDP changes to pre-COVID best performers on 12/3
- We shifted focus to an enhanced confirmation CX, rather than presupposing clarity at signup
- 12/16/20: Creating high-clarity subscription CX  Doc [owned by Reid and Katey Muus]
- Reid's working quip
- Subscription clarity highlight reel
- Enhanced subscription mocks
- 12/17/20: Customer Trust Charter Review (clarity is a part of member trust, but we aligned to operate them independently for now)
- Apoorva's Doc

### Ongoing Meetings:
- Biweekly Clarity Sync – currently owned by Ben's calendar, I sent you the series.
- Monthly Clarity Meeting – I owned this series in 2020, and the next occurrence is scheduled for 1/27. Happy to repurpose it for a CWG prereview as needed.

### Main Clarity POCs:
- EU Content: Erik Schmitz, Fede Maceretesi
- Finance: Anthony Boulis (formerly Fang, who has rotated)
- Legal: Susan and Praju
- Product: Neel Malhotra (confirmation CX)
- US: Rex Morey

### Other:
- User Testing Results for Clarity experiments
- Misc other clarity documents
- Blurb for CWG US pricing doc summarizing changes and impact in 2020
- We have experienced tailwinds in Prime due to COVID related increase in traffic                           and increase in retention attributed to increased benefit usage                          However, these tailwinds were offset                         by (1) suppression of Free Trial upsells and BuyBox and Order Pipeline upsells from 3/20 until 4/22, and (2) lower performing order agnostic upsells. These lower performing order agnostic upsells focused on digital benefits instead of fast free shipping to protect the supply chain                          from 3/20 until 9/17, and we only returned to upsell messaging with specific shipping speed promises on 11/25.


Let me know if you need anything else!

---

**From:** Baidwan, Nikki <nikbai@amazon.com>
**Sent:** Wednesday, January 13, 2021 11:14 PM
**To:** Hankin, Jediah <jediahh@amazon.com>; Kremer, Susan <skremer@amazon.com>
**Cc:** Moeller, Caroline <cmmoell@goodreads.com>
**Subject:** RE: Privileged & Confidential - Clarity doc and meeting request

+Caroline

AMZN_00107863

Thanks Jediah. You may want to ping Susan separately to understand if we can keep at least the document related conversations non P&C and if she needs to be in the meetings  leading up to final review as well as the working group meetings.

The next working group meeting is Friday AM and we should plan to align on a direction for the clarity score. If you can clean up the last document I sent on clarity score, we can focus the discussion on whether we are going to benefit usage as the measurement and decide next steps from there.

For the Quip, if you can work with Caroline and start plugging in data from previous docs, we can aim to look at a draft by mid next week to assess where we need more information.

Thanks,

Nikki

---

**From:** Hankin, Jediah <jediahh@amazon.com>
**Sent:** Wednesday, January 13, 2021 11:38 AM
**To:** Baidwan, Nikki <nikbai@amazon.com>; Kremer, Susan <skremer@amazon.com>
**Subject:** RE: Privileged & Confidential - Clarity doc and meeting request

Thanks Nikki – updated the stakeholders chart and will check with Mary Pat.

For the workback, I was thinking draft reviews with the working group (Participants + Owner). I had initially marked attendees based on OARPI (ex. if just O and P are marked, I would include those listed under Owner + Participant). I can still add actual attendees if it will help – I was initially trying to make it easy to read.

Taking the below structure of the doc, I started a draft Quip. Also added Susan to the Quip permissions to this folder.

Best,
Jediah

---

**From:** Baidwan, Nikki <nikbai@amazon.com>
**Sent:** January 12, 2021 11:39 PM
**To:** Hankin, Jediah <jediahh@amazon.com>; Kremer, Susan <skremer@amazon.com>
**Subject:** Privileged & Confidential - Clarity doc and meeting request

Adding Susan and marking Privileged & Confidential to request privilege

Thanks for jumping on this. Left some comments in the stakeholders charts. For the workback, are you thinking draft reviews with the working group? Let's add suggested attendees at each draft review stage as well.

We may want to give Jamil an email preview of the structure and content we plan to cover a bit early and also plan for a review with him, even if WIP, before we meet with him and Llew. Was thinking through the structure of the doc a bit (below). I'm hopeful you can get most of the content from previous docs

1.      Background and context – this has been a long standing issue for Prime. We have anecdotal data from customers, but the business impact of changes is high and our current metrics do not support this change. See attached doc intro – we may need to build on this.

2.      I'm debating if we should include the insights section we have in this document and if we should include tenets from the Reid doc. Let's discuss.

3.      Experiments and Impact – We can list the various initiatives and project cost of these changes, based on past experiments and projections from those

4.      Approach moving forward

a.      Clarity guidelines

b.      Clarity score and other metrics – we may need to reach out to CBA for this
c.      Surveys?
5.      HDT –
a.      Should clarity focus on pre signup or post signup
b.      How do we tackle legacy issues?
6.      Next steps?

Thanks,
Nikki

---

**From:** Hankin, Jediah <jediahh@amazon.com>
**Sent:** Tuesday, January 12, 2021 5:29 PM
**To:** Baidwan, Nikki <nikbai@amazon.com>
**Subject:** FW: Baidwan, Nikki has shared 'Lindsay Org Meeting Request form-041020'

Hey Nikki –
When you have a chance, can you look at the initial work backwards timeline and OARPI? I'm interested to know 1) does this capture all stakeholders 2) based on previous CWG reviews, do you think this timeline seems appropriate? In particular, setting only one pre-review with Jamil/Llew/Neil (ideally 1 week before first review).

Stakeholders: https://quip-amazon.com/pFDxASKaNpa0/OARPI#EQX9CAfRFYI
Workback Dates: https://quip-amazon.com/pFDxASKaNpa0/OARPI#EQX9CAbtICH

Best,
Jediah

---

**From:** Baidwan, Nikki <nikbai@amazon.com>
**Sent:** January 12, 2021 2:56 PM
**To:** Munnich, Kerry <munnichk@amazon.com>; Hankin, Jediah <jediahh@amazon.com>
**Subject:** RE: Baidwan, Nikki has shared 'Lindsay Org Meeting Request form-041020'

Thanks Kerry. Adding Jediah who will be driving this process moving forward. We will need to work backwards from this date and schedule at least 1 pre-review with Jamil, Llew and possibly Neil. I also realized we need Legal on this call, so would like to add Praju and Jediah to the meeting invite.  Pasted the updated tables below.

-Nikki

### AVAILABILITY REQUEST

| Purpose | |
|---|---|
| Meeting Title | Steam Review: Clarity in Prime Subscription Communications  (Privileged & Confidential) |
| Expected Outcome | Decide on approach for driving clarity in customer communications |
| Did Neil request this meeting?  *If yes, please provide context.   If no, please explain reason for the request* | No. This meeting has been requested by Jamil as a follow up to previous discussions we |

| | | |
|---|---|---|
| | | have had within and outside Prime to drive clarity in our communications. |
| Are you working against a deadline?  *If yes, please elaborate.* | | No |
| Provide any additional information that could be used by the EA to prioritize this meeting request. ( Please include if this is a Decision meeting, an Informative meeting, a Brainstorm, etc.) | | |
| **Duration** *Doc page count includes main body of the doc plus FAQ & Appendices* | | |
| 1-3 page doc* | 1 hour | |
| 4-6 page doc* | 1.5 hours | |
| 6+ page doc* | 1.5+ hours *(note time needed if greater than 90 minutes)* | We will likely need 2 hours with the mocks and appendices in this document. |
| **Regional Timing** | | |
| NA, EU/UK, or Asia | | NA & EU |
| **Dates** | | |
| Absolute Soonest Date | | 2/10/21 |
| Absolute Latest Date | | 2/28/21 |
| Blackout Dates - *(for all key participants)* | | |

**Highlighting above is original; highlighting below was added by FTC**

### MEETING INVITE TEMPLATE

| | |
|---|---|
| **DO NOT FORWARD THIS MEETING INVITE** *NOTE:  The beginning of the meeting will be devoted to reading time.* | |
| **Meeting Purpose:**   To align on approach for clarity in Prime communications | |
| **Contacts** | |
| **Questions/Changes:** | |
| **Doc/Topic Owner:**  Nikki Baidwan | |
| **Note Taker ( If applicable):**  Caroline Moeller | |

| Invitees (sort alphabetically by last name) | Conference Room & Chime Meeting Information |
|---|---|
| **Required:** 1.      Nikki Baidwan 2.      Anthony Boulis 3.      Dave Clark 4.      Russ Grandinetti 5.      Jamil Ghani 6.      Doug Herrington 7.      Benjamin Hills 8.      Neil Lindsay 9.      LLew Mason 10.    Caroline Moeller 11.    Katey Muus 12.    Reid Nelson 13.    Erik Schmitz 14.    Praju Tuladhar 15.    Jediah Hankin  **Optional:** 1. | **PIN** •      XXXX XX XXXX  **Phone:** •      US:  +1- 206-266-2000 •      US Toll Free: +1-855-552-4463 •      International: https://chime.aws/dialinnumbers/   **Conference Room Info** •      XXXX XX XXXX |

| Updates to Invite |
|---|
| • XXXX – Invite Sent |

---

**From:** Munnich, Kerry <munnichk@amazon.com>
**Sent:** Tuesday, January 12, 2021 1:47 PM
**To:** Baidwan, Nikki <nikbai@amazon.com>
**Subject:** RE: Baidwan, Nikki has shared 'Lindsay Org Meeting Request form-041020'

Hi Nikki,
FYI, we have Feb 11, 9-11am PT on hold for this meeting. This was all that Dave C has available. I'll send the meeting invite tomorrow.

Thank you,
Kerry

---

**From:** Munnich, Kerry
**Sent:** Tuesday, January 5, 2021 3:55 PM
**To:** Baidwan, Nikki <nikbai@amazon.com>
**Subject:** RE: Baidwan, Nikki has shared 'Lindsay Org Meeting Request form-041020'

Thank you!
I'll work with Nicole on availability and get back to you.
Going forward, please copy and paste the form directly into the email. Due to the amount of meeting requests we receive his is much easier and more efficient process on our end.
Cheers,
Kerry

---

**From:** Baidwan, Nikki <nikbai@amazon.com>
**Sent:** Tuesday, January 5, 2021 3:51 PM
**To:** Moeller, Caroline <cmmoell@goodreads.com>; Munnich, Kerry <munnichk@amazon.com>
**Cc:** Baidwan, Nikki <nikbai@amazon.com>
**Subject:** Baidwan, Nikki has shared 'Lindsay Org Meeting Request form-041020'

HI Kerry, here is the meeting request form I filled out. I left the Chime and Conference Room info out as I assume you will use Jamil's Chime for this. I suspect more folks may want to get added, but wanted to get this to you to get the dates locked in and we can add other people if needed later. Let  me know if this works and thanks for your help!

# Open Lindsay Org Meeting Request form-041020.docx

Follow this document to get updates in your newsfeed.

AMZN_00107867

# Attachment 16

**From:**      Hankin, Jediah [/O=AMAZON/OU=EXCHANGE ADMINISTRATIVE GROUP
(FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=6D8A7E7FD51B4C61A80716923BFEB52C-JEDIAHH]
**Sent:**      1/20/2021 4:21:16 PM
**To:**        Malhotra, Neel [neelmal@amazon.com]; Gotschall, Mary Pat [marypat@amazon.com]; Cunningham, Ivy
[ivycunni@amazon.com]; Baidwan, Nikki [nikbai@amazon.com]; Nelson, Reid [reidn@amazon.com]; Moeller,
Caroline [cmmoell@goodreads.com]; Schmitz, Erik [eschmitz@amazon.lu]; Boulis, Anthony [boulis@amazon.com];
Dunn, Marla [mpdunn@amazon.com]
**Subject:**   RE: Draft Reviews: Clarity Working Group for Clark Review on 11-Feb (Privileged & Confidential)

Thanks all for the input.

For now, I am opting to include in the narrative since we discussed this morning about needing leadership feedback on
our overall approach moving forward (ie with the initiatives including key customer journey redesigns, is this sufficient
to raise the bar on CX?). This approach with initiatives listed would cover all three classes of problems.

An alternative is that we keep clarity in signups and renewal reminders (both to be measured through benefit
engagement and Nostradamus) and move clarity in cancellation to an FAQ appendix.

**From:** Malhotra, Neel <neelmal@amazon.com>
**Sent:** January 20, 2021 3:19 PM
**To:** Gotschall, Mary Pat <marypat@amazon.com>; Cunningham, Ivy <ivycunni@amazon.com>; Baidwan, Nikki
<nikbai@amazon.com>; Hankin, Jediah <jediahh@amazon.com>; Nelson, Reid <reidn@amazon.com>; Moeller, Caroline
<cmmoell@goodreads.com>; Schmitz, Erik <eschmitz@amazon.lu>; Boulis, Anthony <boulis@amazon.com>; Dunn,
Marla <mpdunn@amazon.com>
**Cc:** Malhotra, Neel <neelmal@amazon.com>
**Subject:** Re: Draft Reviews: Clarity Working Group for Clark Review on 11-Feb (Privileged & Confidential)

Just to be clear, agree on including it but the question is that should it be in the main narrative for specific inputs from
senior leaders, or in the FAQs to raise visibility? My recommendation is for the later. ███████████████████████
████████████████████████████████████████████ Additionally, we already have simplification of cancel
flow as part of 2021 roadmap so that should help further improve member CX. Given clarity is a P&C topic, we can also
bring forward the same level of details as part of this doc as needed. So we don't necessarily need any decision from the
intended audience of this review, and for visibility purpose a FAQ could answer any questions that may arise due to
recent news coverage]. Hope this helps, happy to discuss further.

Neel

**From:** "Gotschall, Mary Pat" <marypat@amazon.com>
**Date:** Wednesday, January 20, 2021 at 2:44 PM
**To:** "Malhotra, Neel" <neelmal@amazon.com>, "Cunningham, Ivy" <ivycunni@amazon.com>, "Baidwan,
Nikki" <nikbai@amazon.com>, "Hankin, Jediah" <jediahh@amazon.com>, "Nelson, Reid"
<reidn@amazon.com>, "Moeller, Caroline" <cmmoell@goodreads.com>, "Schmitz, Erik"
<eschmitz@amazon.lu>, "Boulis, Anthony" <boulis@amazon.com>, "Dunn, Marla" <mpdunn@amazon.com>
**Subject:** Re: Draft Reviews: Clarity Working Group for Clark Review on 11-Feb (Privileged & Confidential)

While I like the suggestion to lead/focus on one class of problem for the review (e.g. sign up clarity), I believe we should
also include the cancel flow is important right now esp. due to the recent news (plus cancellation should be crystal clear
if a customer didn't mean to sign up).
**Amazon faces legal challenge over Prime cancellation policy**
Consumer watchdogs say the manipulative "dark pattern" design makes it hard for people to end membership.

Read in BBC News: https://apple.news/AkxUbuHs4Tz68rhhZ9XSGaw

Consumer Groups Target Amazon Prime's Cancellation Process
https://www.nytimes.com/2021/01/14/world/europe/amazon-prime-cancellation-complaint.html?referringSource=articleShare

---

**From:** "Malhotra, Neel" <neelmal@amazon.com>
**Date:** Wednesday, January 20, 2021 at 2:11 PM
**To:** "Cunningham, Ivy" <ivycunni@amazon.com>, "Baidwan, Nikki" <nikbai@amazon.com>, "Hankin, Jediah" <jediahh@amazon.com>, Reid Nelson <reidn@amazon.com>, "Moeller, Caroline" <cmmoell@goodreads.com>, "Schmitz, Erik" <eschmitz@amazon.lu>, "Boulis, Anthony" <boulis@amazon.com>
**Cc:** "Gotschall, Mary Pat" <marypat@amazon.com>, "Malhotra, Neel" <neelmal@amazon.com>
**Subject:** Re: Draft Reviews: Clarity Working Group for Clark Review on 11-Feb

+1 to the proposed structure, and good discussion this morning. One suggestion to further simplify would be to lead / focus on <u>only one</u> class of problem for this review (i.e., sign up clarity). This can help tighten the narrative and what we actually want to get alignment on. Other known frustrations (e.g., cancel flow, could be covered as FAQs (e.g., what other areas or frustration we are paying attention to ?), in case we want to raise visibility (else these could be left out  for this review if no urgent input from senior leaders is needed at this point).

---

**From:** "Cunningham, Ivy" <ivycunni@amazon.com>
**Date:** Wednesday, January 20, 2021 at 10:53 AM
**To:** "Baidwan, Nikki" <nikbai@amazon.com>, "Hankin, Jediah" <jediahh@amazon.com>, "Nelson, Reid" <reidn@amazon.com>, "Moeller, Caroline" <cmmoell@goodreads.com>, "Schmitz, Erik" <eschmitz@amazon.lu>, "Boulis, Anthony" <boulis@amazon.com>, "Malhotra, Neel" <neelmal@amazon.com>
**Cc:** "Gotschall, Mary Pat" <marypat@amazon.com>
**Subject:** RE: Draft Reviews: Clarity Working Group for Clark Review on 11-Feb

Thanks Nikki. Copying in my notes from your comments on the call because I think they're spot-on:

[Intro needs to set up the problem]: This (subscription clarity) is an Issue, we've known about it, but the metrics we use today don't show a comprehensive (negative) customer impact. So we have these ad hoc anecdotes and metrics that make us concerned, but when we attempt to solve it – the business impact is too large.

[plan] We have a proposed approach moving forward – clarity score, other things we are planning (Ava efforts to proactively find and send to cancel flow), redo cancel flow. Checkout redesign with grupa. [this is one class of things we want feedback on.]

Second area we want feedback is HTD – how quickly do we move? Do we take a one time hit (to our baseline) and develop a new baseline to improve/innovate against? Or are we okay to let it linger and tackle with Grupa (1 yr out)? Risk here is we don't know when/if this could erupt.

Also thought the conversation around the previous JAW discussion was helpful – here are my notes on that:
Previous feedback in Dec 2019 (1 yr ago) – don't pull the bandaid off. Don't do a one-way door. JAW guidance was do it slowly, and test our way to into it. However, in contrast to that [dec 2019 proposal], some of what we are proposing are two-way doors. Different than back-stop CX. We should call out that this is not just one template that we can slowly test into. It's 1000s of templates worldwide. We could incrementally test into all of those, but will take time and effort away from innovation. There is a resource/innovation cost to doing it incrementally – and from what we know, we can't test out of these patterns.

CONFIDENTIAL TREATMENT REQUESTED

AMZN_00171493

A summary of the challenge we are looking for feedback on that I found helpful on the call:

The friction we face [that we want leadership feedback on]: we know the paid member impact [of implementing clarity changes], but don't know the customer value/benefit [can't measure the clarity impact and associated impact to long term customer trust]. We can do more [to improve clarity], but can't measure the upside. Do we lean in (customer obsessed) or wait until we can measure?

---

**From:** Baidwan, Nikki <nikbai@amazon.com>
**Sent:** Wednesday, January 20, 2021 8:55 AM
**To:** Hankin, Jediah <jediahh@amazon.com>; Nelson, Reid <reidn@amazon.com>; Cunningham, Ivy <ivycunni@amazon.com>; Moeller, Caroline <cmmoell@goodreads.com>; Schmitz, Erik <eschmitz@amazon.lu>; Boulis, Anthony <boulis@amazon.com>; Malhotra, Neel <neelmal@amazon.com>
**Subject:** RE: Draft Reviews: Clarity Working Group for Clark Review on 11-Feb

Here is my proposed structure for the document

1. Intro
2. Class of problems
a. Clarity at signup
b. Renewal reminders
c. Problems cancelling
3. Efforts and Insights
a. Efforts have been adHoc, alternating between content only and product only solves
i. Lucent
ii. ASINization
iii. 2020 content experiments again
iv. Other product initiatives
b. We've relied on business metrics only, hoping that a decline in signups would balance out by improved yield. This has not been the case and changes have not stuck. Indicate the need for better / different metrics
c. Need a revolutionary vs evolutionary approach
i. UPDP experiments
4. Approach moving forward
a. North Star
b. Initiatives
i. Automated enforcement of clarity guidelines
ii. Tracking clarity through benefit engagement and Nostradamus
iii. Redesigning key customer journeys
   1. Checkout with Gurupa is being planned
   2. Cancel flow and Ava
   3. Renewal emails, if any
5. HDT
a. Signup clarity – How quickly do we want to tackle signup clarity? One time hit with estimated WW impact? Do it slowly over time? Tackle as part of Gurupa redesign?

-----Original Appointment-----
**From:** Hankin, Jediah <jediahh@amazon.com>
**Sent:** Friday, January 15, 2021 12:04 PM
**To:** Hankin, Jediah; Baidwan, Nikki; Nelson, Reid; Gotschall, Mary Pat; Cunningham, Ivy; Moeller, Caroline; Schmitz, Erik; Boulis, Anthony; Malhotra, Neel
**Cc:** Hills, Benjamin
**Subject:** Draft Reviews: Clarity Working Group for Clark Review on 11-Feb

CONFIDENTIAL TREATMENT REQUESTED

AMZN_00171494

**When:** Wednesday, January 20, 2021 8:00 AM-9:00 AM (UTC-08:00) Pacific Time (US & Canada).
**Where:** 2594 67 1251

Hi team,

Scheduling an initial draft review in preparation for our Clark review on 2/11. I will send the draft Quip prior to the meeting.

Reference information
- Workback Schedule (Note: Meeting Dates that have been confirmed are noted in column F)
- OARPI


You have been invited to an online meeting, powered by Amazon Chime.

Attendees joining this meeting must be registered and signed in to Amazon Chime.

Click to join the meeting: https://chime.aws/2594671251
Meeting ID: 2594 67 1251
A headset is recommended or you may use your computer's microphone and speakers.

Call in using your phone:
United States Toll-Free (1): +1 855-552-4463
Meeting ID: 2594 67 1251
One-click Mobile Dial-in (United States (1)): +1 206-462-5569,,,2594671251#
United States (1): +1 206-462-5569
International: https://chime.aws/dialinnumbers/
Dial-in attendees must enter *7 to mute or unmute themselves.

To connect from an in-room video system, use one of the following Amazon Chime bridges:
SIP video system: 2594671251@meet.chime.in or meet.chime.in
H.323 system: 13.248.147.139 or 76.223.18.152
If prompted enter the Meeting PIN: 2594671251#

Download Amazon Chime at https://aws.amazon.com/chime/download
For information about creating an Amazon Chime account, see https://aws.amazon.com/chime/getting-started

AMZN_00171495

# Attachment 17

# Chat with "Moeller, Caroline" <cmmoell@amazon.com> and 2 more addresses on July 14, 2021

Moeller, Caroline and Baidwan, Nikki
Earliest item: 2021-07-14 06:57:15
Latest item: 2021-07-14 17:22:18

All Parties:
Moeller, Caroline <cmmoell@amazon.com>
Baidwan, Nikki <nikbai@amazon.com>

**Wednesday 14 July 2021**

**Baidwan, Nikki <nikbai@amazon.com>**
Morning - is the doc still called document? Was looking for the latest version

06:57:15

**Moeller, Caroline <cmmoell@amazon.com>**
yes, heres the link:
https://share.amazon.com/sites/ContentTesting/Shared%20Documents/True%20SPC%20CX%20Implementation/Document.docx?web=1

07:04:46

**Moeller, Caroline <cmmoell@amazon.com>**
im seeing two different versions from that link and the one you shared

07:06:36

**Baidwan, Nikki <nikbai@amazon.com>**
Thanks - renamed this one - here is the link I am now working on
https://share.amazon.com/sites/ContentTesting/Shared%20Documents/True%20SPC%20CX%20Implementation/Priviliged%20&%20Confidential%20-%20Prime%20Checkout%20Upsells%20CX.docx?web=1

07:06:38

**Moeller, Caroline <cmmoell@amazon.com>**
👍

07:07:36

**Moeller, Caroline <cmmoell@amazon.com>**
i would like to discuss the plan to socialize with locale leads, as that's where there will be a lot of pushback / requests to experiment

07:27:12

**Baidwan, Nikki <nikbai@amazon.com>**
Want to see doc and deck before I share? feel free to lead the discussion

07:27:25

**Moeller, Caroline <cmmoell@amazon.com>**
sure

07:27:40

**Baidwan, Nikki <nikbai@amazon.com>**
Priviliged & Confidential - Prime Checkout Upsells CX.pdf
Priviliged & Confidential - Prime Checkout Upsells CX.pdf - This file type is not supported for embedded threading. See attached child.

07:29:13

**Baidwan, Nikki <nikbai@amazon.com>**
Prime Upsells in Checkout 7.14.21.pdf
Prime Upsells in Checkout 7.14.21.pdf - This file type is not supported for embedded threading. See attached child.

07:29:17

**Moeller, Caroline <cmmoell@amazon.com>**
is that the same ppt i sent last night? looks like slide 16 got cut off again but i thought i had updated

07:31:06

**Baidwan, Nikki <nikbai@amazon.com>**
Yeah I think its the same one. Let me send the ppt version

07:31:34

**Baidwan, Nikki <nikbai@amazon.com>**
Prime Upsells in Checkout 7.15.21.pptx
Prime Upsells in Checkout 7.15.21.pptx - This file type is not supported for embedded threading. See attached child.

07:32:05

**Baidwan, Nikki <nikbai@amazon.com>**
Feel free to pdf and send once you're done. I saved versions to my hard disk but we should keep a record of these on SP somewhere too so we can track decisions made and dates

07:33:15

**Moeller, Caroline <cmmoell@amazon.com>**
saved a pdf of my version - lmk if you made other edits

07:33:54

**Moeller, Caroline <cmmoell@amazon.com>**
but its not cut off now

07:33:57

**Moeller, Caroline <cmmoell@amazon.com>**
Prime Upsells in Checkout.pdf
Prime Upsells in Checkout.pdf - This file type is not supported for embedded threading. See attached child.

07:34:09

**Baidwan, Nikki <nikbai@amazon.com>**
I added a text box with changes that were addressed on the TrueSPC mocks - do you see those?

07:36:10

**Moeller, Caroline <cmmoell@amazon.com>**
ok - added

07:37:57

**Moeller, Caroline <cmmoell@amazon.com>**
Prime Upsells in Checkout CX.pdf
Prime Upsells in Checkout CX.pdf - This file type is not supported for embedded threading. See attached child.

07:38:06

**Moeller, Caroline <cmmoell@amazon.com>**
and made some small formatting changes here
Privileged & Confidential - Prime Checkout Upsell CX Satisfaction.pdf
Privileged & Confidential - Prime Checkout Upsell CX Satisfaction.pdf - This file type is not supported for embedded threading. See attached child.

07:40:00

**Baidwan, Nikki <nikbai@amazon.com>**
Ok let's send

07:40:18

**Moeller, Caroline <cmmoell@amazon.com>**
are you sending ? or want me to

07:40:29

**Baidwan, Nikki <nikbai@amazon.com>**
Go ahead and send

07:40:36

**Moeller, Caroline <cmmoell@amazon.com>**
kk

07:40:40

**Moeller, Caroline <cmmoell@amazon.com>**
did you want to set context to kick things off, or anything specific i should call out ?

07:49:56

**Baidwan, Nikki <nikbai@amazon.com>**
I think just indicate that this is to get alignment on plan and timing of changes we have already agreed on. we are trying to keep things as simple as possible to get the CX to par and mainly want to get feedback on approach and timing.

07:53:38

**Moeller, Caroline <cmmoell@amazon.com>**
ok

07:54:08

**Baidwan, Nikki <nikbai@amazon.com>**
Let's try to wrap early of we can :-) Not sure we need the full 90 mins

07:55:20

**Moeller, Caroline <cmmoell@amazon.com>**
agreed

07:55:53

**Baidwan, Nikki <nikbai@amazon.com>**
So annoying

AMZN-PRM-FTC-000000002

08:44:45

**Baidwan, Nikki <nikbai@amazon.com>**
Sabotaging this for Sleeve

08:45:06

**Moeller, Caroline <cmmoell@amazon.com>**
is sleeve compatible w snare yet ?

08:46:19

**Baidwan, Nikki <nikbai@amazon.com>**
we are literally debating Sleeve vs CC in a separate meeting

08:46:59

**Moeller, Caroline <cmmoell@amazon.com>**
??

08:58:37

**Moeller, Caroline <cmmoell@amazon.com>**
what is he even saying

08:58:41

**Baidwan, Nikki <nikbai@amazon.com>**
🥲

08:59:00

**Baidwan, Nikki <nikbai@amazon.com>**
Let's push to wrap - we are just dragging now

09:16:38

**Baidwan, Nikki <nikbai@amazon.com>**
Good job on the review today

12:45:36

**Baidwan, Nikki <nikbai@amazon.com>**
Was going to ping you on Erik

12:46:07

**Moeller, Caroline <cmmoell@amazon.com>**
thanks

12:46:15

**Moeller, Caroline <cmmoell@amazon.com>**
the intl expansion piece ?

12:46:20

**Moeller, Caroline <cmmoell@amazon.com>**
or cc vs sleeve

12:46:30

**Baidwan, Nikki <nikbai@amazon.com>**
International

12:46:46

**Moeller, Caroline <cmmoell@amazon.com>**
im fine to have fede drive that, jsut want to be looped in so i make sure its done

12:47:25

**Baidwan, Nikki <nikbai@amazon.com>**
Yes let's be clear that they are taking responsibility for specific locales and Fede needs to report back progress to you as he goes

12:49:36

**Baidwan, Nikki <nikbai@amazon.com>**
I'll tell Erik Fede is dotted line to you for the duration of this project

12:50:34

**Moeller, Caroline <cmmoell@amazon.com>**
does llew spend all his time clicking on prime CXs ?

15:45:43

**Moeller, Caroline <cmmoell@amazon.com>**
pretty sure thats christy or juans team, ill reach out to them and ive asked mckenzie if she can figure out who owns through symphony

15:46:02

**Baidwan, Nikki <nikbai@amazon.com>**
:-) I told rex the card on Gateway was our team

15:58:41

**Moeller, Caroline <cmmoell@amazon.com>**
Talked to Ryan and Madison, and it went well - they're both really excited

CONFIDENTIAL

AMZN-PRM-FTC-000000003

16:47:27

**Baidwan, Nikki <nikbai@amazon.com>**
Good. I was thinking through the name of the team - naming it right/exciting but not invalidating for the broader team is important I think 🫤

17:13:42

**Baidwan, Nikki <nikbai@amazon.com>**
I was trying to make it the EAT team but couldn't think of an A instead of Opportunities

17:14:29

**Moeller, Caroline <cmmoell@amazon.com>**
Hahah

17:22:18

**End Thread**

**Thread Statistics**

Instant Message Count 54

# Attachment 18



CONFIDENTIAL TREATMENT REQUESTED / FOIA EXEMPT   Amazon-FTC-CID_09389533

CONFIDENTIAL TREATMENT REQUESTED / FOIA EXEMPT

Amazon-FTC-CID_09389536

# Attachment 19

1                    FEDERAL TRADE COMMISSION

2

3    In the Matter of:              )

4    AMAZON.COM, INC.               )   No. 2123050

5    ---------------------------------)

6

7                         August 16, 2022

8

9                    Investigational Hearing

10                        REID NELSON

11

12                  Federal Trade Commission

13              Henry M. Jackson Federal Building

14               915 Second Avenue, Suite 2896

15                     Seattle, Washington

16

17

18

19

20

21

22

23

24   REPORTED BY:  Wade J. Johnson, RPR

25                CCR No.:  2574

Nelson

Amazon.com, Inc.                                              8/16/2022

1    it being the same design, is what called our attention to
2    this being a global issue.
3              Further, in 2017, our team ran follow-up research
4    in the U.S. specifically with non-Prime customers and
5    observed customers critiquing some of the ways that that page
6    was designed in terms of how the contractual obligations were
7    presented, the no thanks was presented, and the upsell CTA
8    designs.
9         Q.   To what extent, if at all, were the concerns that
10   you had about consumers not appreciating the terms and
11   conditions relayed to SVPs?
12        A.   In 2019, we presented -- when I say we, Sara
13   Kleiner, and Masuma -- presented a document to Russ.  And in
14   that document, it spoke to some of the challenges around
15   people clicking on things without having fully read what was
16   on the page.
17        Q.   Were there other instances in which you made SVPs
18   aware of this issue, besides the 2019 meeting?
19        A.   Me personally?
20             MS. VANDRUFF:  Objection.  Misstates --
21        Q.   Let me withdraw question.
22             Were there other instances in which you were aware
23   that executives were made aware of this issue, other than one
24   you've just identified for me?
25        A.   Yes.

For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

Nelson

Amazon.com, Inc.                                              8/16/2022

1     Q.   What are those?

2     A.   You're saying SVPs, specifically?

3     Q.   SVPs specifically.

4     A.   In 2021, there was a review at the Dave Clark

5   level, the C Team, that Llew Mason was in attendance, Jamil

6   Ghani was in attendance, and Dave Clark -- and I cannot speak

7   to who else was there -- but those were kind of the primary

8   content sponsors, so to speak, and Dave Clark being the

9   primary reviewer.

10        And the goal of -- the objective of that

11  conversation was to present some of the challenges related to

12  design and business impact pertaining to the UPDP upsells.

13    Q.   What's the C Team?

14    A.   The C Team, as I understand it, was sort of top

15  SVP, CEO level, key leaders.  I can't speak more to what it

16  is beyond that.  I just heard it referenced as C Team, and I

17  know it was a lot of the bigwigs.

18    Q.   Other than the 2019 meeting that you testified

19  about with Mr. Grandinetti and the 2021 meeting with

20  Mr. Clark, are there other instances?

21             MS. VANDRUFF:  Object to form.  Vague.

22             You may answer the question.

23    A.   Yes.  Not by my team, not by me personally.

24    Q.   What are the other instances that you are referring

25  to?

For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

Nelson

Amazon.com, Inc.                                            8/16/2022

1       A.   That would be the Dave Clark C Team review in 2021.

2       Q.   Is it your understanding that the Dave Clark C Team

3  review in 2021 was an outgrowth of what took place in the

4  summer of 2019, or are they separate escalations?

5       A.   It is an outgrowth continuation of what started in

6  2016.

7       Q.   And by the time it reached -- well, at the time --

8  when it reached Mr. Clark in 2021, it's your understanding

9  that Mr. Clark did have the authority to direct Prime to do

10  various things?

11       A.   It is.

12       Q.   Let me direct to you page 9 on, and then we're

13  going to go to kind of the top here.  And let me see if I can

14  short-circuit this a little bit.

15            This is reporting some of the results from the

16  Project Lucent test, correct?

17       A.   Correct.

18       Q.   And even though you didn't conduct those tests

19  yourself, you were familiar with them at around the time this

20  document was prepared?

21       A.   Oh, yes.

22       Q.   You've reviewed the results and studied them?

23       A.   Yes.

24       Q.   I think we said this, but CTA stands for call to

25  action?

For The Record, Inc.

(301) 870-8025 - www.ftrinc.net - (800) 921-5555

Nelson

Amazon.com, Inc.                                              8/16/2022

1        A.   Yeah.  Heartbeat --

2        Q.   Yes.

3        A.   -- is a tool within the customer service

4   organization whereby, if you have permissions as an analyst,

5   you can type in certain keywords and select certain customer

6   feedback channels and search for relevant, potentially

7   relevant, verbatims and chats, phone calls.  You could search

8   social media.  You can search customer service contacts.  You

9   can search customer reviews, even like product reviews, app

10  reviews, for like the app store, any number of VOC channels.

11       Q.   So Heartbeat is a database or compilation of VOC

12  channels?

13       A.   Correct.

14       Q.   Is Heartbeat available to everyone at Amazon?

15       A.   You have to request permissions.  I don't know if

16  there's limitations to getting those permissions.

17       Q.   Back to two other things before I lose track of

18  this.  Do you have an understanding of approximately when the

19  Dave Clark meeting occurred?

20       A.   It was probably in May.

21       Q.   I'm not trying to sort of challenge you.

22       A.   Yeah.

23       Q.   Do you know that it occurred based on conversations

24  you had with people, or are you assuming it occurred?

25       A.   It occurred.

Nelson

Amazon.com, Inc.                                              8/16/2022

1       Q.   Tell me how --

2       A.   Based on we asked for an update from that team, not

3    from Dave Clark, but from Nikki.  We wanted to know what

4    happened in the meeting.

5       Q.   And what did Nikki tell you?

6       A.   She set up time to give us an update, and we met as

7    a group with Mary Pat and myself.  I don't remember who else

8    was in that meeting, other than Nikki, Nikki and -- I don't

9    think Ben was there, maybe Caroline.  And the specifics of

10   exactly what she gave us -- she didn't go into a great deal

11   of detail, but there seemed to be alignment from Dave that

12   they should not use confirmshaming-type of language in the no

13   thanks CTA.  And that price and auto renew were fair game to

14   show in primary body content, not just in fine print.  And

15   that Dave and/or other leaders -- there was consensus that

16   the button text need to still have a benefit in it, such as

17   like getting free shipping.  Like I remember a quote that she

18   was citing -- of course, this is sort of second handled, of

19   course -- but something along the lines of, Why wouldn't we

20   state a benefit near that button?  In this case, shipping

21   being the primary benefit that's being offered in UPDP.

22           So there seemed -- she didn't directly state that

23   he didn't want the no thanks to become a button or anything

24   like that, but it seemed like the focus from Dave was, you

25   know, we'll still make sure the button has a benefit in it

Nelson

Amazon.com, Inc.                                                8/16/2022

1    and that the no thanks at least doesn't use somewhat

2    misleading language and that price and auto renew are

3    visible.

4         Q.    To your knowledge, were those changes implemented?

5         A.    The changes that have been implemented that I've

6    seen are basically those.  They've add the word "with Prime,"

7    to the button, to the yellow button, to attempt to help

8    convey what that's doing.

9         Q.    But changes beyond the ones that you just

10   enumerated as having been approved by Dave Clark have not

11   been implemented?

12        A.    And I should say I don't know that Dave Clark

13   approved those, but that's what Nikki sort of indicated as

14   having been discussed in that meeting with Dave Clark.  So I

15   don't know who said what, and I don't know what decisions

16   were made, but that was her summary to us.

17              What other changes?

18        Q.    No, I said that other changes though were not made,

19   as far as you know?

20        A.    Other changes have not been made.

21        Q.    Just in general, do you know approximately what

22   percentage of -- in let's say 2022 -- what percentage of

23   worldwide Prime members are American Prime members?

24        A.    Don't know.

25        Q.    Ballpark?

For The Record, Inc.

(301) 870-8025 - www.ftrinc.net - (800) 921-5555

# Attachment 20

```
 1                    FEDERAL TRADE COMMISSION

 2

 3   In the Matter of:            )

 4   AMAZON.COM, INC.,            ) File No. 212-3050

 5              a corporation. )

 6   ----------------------------)

 7                               Tuesday, January 17, 2023

 8

 9                               Via Zoom Videoconference

10

11

12        The above-entitled matter came on for

13   investigational hearing, pursuant to civil

14   investigative demand, at 8:09 a.m. Eastern Time.

15

16

17

18

19

20

21

22

23

24

25
```

193

Kalim

Amazon.com, Inc.                                      1/17/2023

1      Q.  And do you remember who the, quote, driver of
2  the project was?
3      A.  I believe it was Neel Malhotra.
4      Q.  And you said Neel Malhotra?
5      A.  Neel Malhotra.
6      Q.  Okay.  Thank you.
7          And who is Mr. Malhotra?
8      A.  So he was -- at the time, he was a senior
9  product manager, part of the, you know, engagement and
10  retention team.
11     Q.  Did you attend the meeting referenced in
12  Exhibit 12?
13     A.  Maybe -- I don't remember.  I may have.  I
14  don't -- I can't recall.
15     Q.  What do you recall about the topic discussed at
16  this meeting if you attended?
17     A.  I -- I can't comment unless I see the doc.
18         (Exhibit Number 13, AMZN_00143228-00143233,
19  4-21-2022 email from Jason King to Omar Kalim, was
20  marked for identification.)
21         BY MS. JERJIAN:
22     Q.  Mr. Kalim, I'm going to show you what's been
23  marked as Exhibit 13.
24         Let me know when you see the exhibit.
25     A.  Yes, I see it.

For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

194

Kalim

Amazon.com, Inc.                                    1/17/2023

```
1      Q.  This is an email from Jason King to you, dated
2  April 21, 2022; is that correct?
3      A.  Correct.
4      Q.  Who is Jason King?
5      A.  So Jason King was a program manager in
6  Amazon Prime.
7      Q.  The subject line reads "Forward: [Confidential]
8  Prime Hexagon Update."
9          What is Prime Hexagon?
10      A.  "Prime Hexagon" is basically referring to those
11  headwinds that we just discussed.  And it was
12  specifically -- it was specifically referring to six
13  headwinds, if I recall, that Prime was facing.
14      Q.  What were the six headwinds?
15      A.  It's been a while.
16          I think one of them was this Gurupa
17  deprecation, so the TrueSPC one.
18          Another one was -- there was a project called
19  Autobahn.  I forget what it was about.
20          Then -- what else -- there was one on Google,
21  Google IAP, if I recall.
22          And there were three others.  I don't recall
23  which ones they were.
24      Q.  Okay.  I just want to go over I think two of
25  the ones you mentioned because I had a hard time
```

For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

195

Kalim

Amazon.com, Inc.                                              1/17/2023

1    catching them.

2           The second one you mentioned was

3    Aliban (phonetic)?  Can you spell that out for me,

4    please.

5       A.  Autobahn.

6       Q.  Oh.

7       A.  Autobahn, so A-U-T-O-B-A-H-N.

8       Q.  Thank you.

9           And the third one was Google IEP; is that

10   correct?

11      A.  IAP.

12      Q.  IAP.  Understood.

13          What does "IAP" stand for?

14      A.  In-app purchase.

15      Q.  What does "Autobahn" reference or mean?

16      A.  I don't remember, but I remember it was

17   related to some payments projects, project, if I

18   recall.  Yeah.

19      Q.  Aside from Project Gurupa/TrueSPC, Autobahn and

20   Google IAP, do you remember any of the other six

21   headwinds?  I think there are three that we're

22   missing.

23      A.  Yeah.  I'm trying to recall.

24          I don't remember -- I remember these three.

25   There were a total of six, but there were three other

196
Kalim
Amazon.com, Inc.                                          1/17/2023

1    projects as well.  It's slipped my mind.
2        Q.  Okay.
3            Looking at the email that Mr. King sent you, he
4    actually forwarded you an email that starts on the
5    second page of Exhibit 13; correct?
6        A.  Yes.
7        Q.  What is your understanding of the reason
8    Mr. King forwarded you this email?
9            MR. ANTHONY:  Objection.  Foundation.
10           THE WITNESS:  Sorry.  I'm just -- give me just
11   a minute to go through that email.
12           BY MS. JERJIAN:
13       Q.  Sure.
14           (Document review.)
15       A.  Yeah, I don't know exactly why he sent me this
16   email.
17       Q.  Did you ask him to forward you this email?
18       A.  I don't remember.
19       Q.  Did you work with Mr. King?
20       A.  Yes, I worked with Jason.
21       Q.  How did you work with Jason, in what capacity?
22       A.  So there were -- in a couple of capacities.
23           One was, when it came to Hexagon, I was asked
24   by Ben to basically put together like a view of all the
25   different headwinds and a status update for Jamil.

For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

197

Kalim

Amazon.com, Inc.                                    1/17/2023

1         So I remember I had reached out to Jason
2    because he was -- I remember like he was looking at
3    those headwinds and -- but I don't specifically
4    remember like him asking to forward me an email, like
5    this email.  But generally speaking, I do remember like
6    engaging with him on that, because he was close to it.
7    That was the first capacity.
8         And the second capacity in which I engaged with
9    him was more with regards to the OP cycle of Prime,
10   which is basically operating planning for the upcoming
11   year.
12        So those are the two capacities in which I
13   worked with him.
14        Q.  Okay.  Looking at the first email, dated
15   April 21, in Exhibit 13, you -- strike that.
16        Looking at Exhibit 13, do you see the first
17   sentence that states, "Hi Omar, The most updated
18   information on headwinds is in the update below"?
19        A.  Yes.
20        Q.  Do you see that?
21        A.  I see it.
22        Q.  And earlier you testified that there were six
23   headwinds; is that correct?
24        A.  Correct.
25        Q.  Do you notice that there are six paragraphs

For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

198

Kalim

Amazon.com, Inc.                                           1/17/2023

1   marked by asterisks in Mr. King's email?

2        A.   Correct.

3        Q.   Does each paragraph marked with an asterisk

4   represent a headwind?

5        A.   So I'm not sure about CX satisfaction upsell

6   and cancel being two separate headwinds or whether they

7   were one.  That part I don't remember.

8        Q.   Understood.

9             Do you -- if they're not each -- strike that.

10            If CX satisfaction upsell and CX satisfaction

11   cancel are not separate headwinds, they are

12   nevertheless a headwind of some kind, as you understand

13   it; correct?

14            MR. ANTHONY:  Object to the form.

15            THE WITNESS:  I understood them to be

16   categorized as headwinds.

17            BY MS. JERJIAN:

18       Q.   Why -- strike that.

19            Why is a customer satisfaction -- strike that,

20   too.

21            Why is the customer experience satisfaction

22   upsell considered a headwind to Prime?

23       A.   So I honestly don't even remember what the

24   project was.  Maybe if I can read it -- it was managed

25   by a different PM.  Maybe if I read it I can understand

For The Record, Inc.

(301) 870-8025 - www.ftrinc.net - (800) 921-5555

199
Kalim
Amazon.com, Inc.                                                    1/17/2023

1    what it was.
2         Q.  Do you have any knowledge outside of this email
3    on customer experience satisfaction upsell being a
4    headwind?
5         A.  I don't recall what that project was.  I
6    remember it was discussed, but I don't specifically
7    remember what it was.  As I said, it wasn't -- like I
8    wasn't managing it.
9         Q.  You can go ahead and read that paragraph if it
10   refreshes your recollection.
11        A.  Sorry.  Do you mean the CX satisfaction upsell
12   or the CX satisfaction cancel?
13        Q.  Let's start with the upsell.  But I will also
14   be asking you about the cancel.
15        A.  Okay.
16            (Document review.)
17            Okay.  I've read it.
18        Q.  Did reading it refresh your recollection as to
19   what the customer experience satisfaction upsell
20   headwind is?
21        A.  Yes.  But I was -- even then like I didn't -- I
22   wasn't involved and I didn't know all the full details
23   of those projects, both of them actually.
24        Q.  So just to be clear, you didn't do any work
25   with respect to the customer experience satisfaction