The Honorable John H. Chun

1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8  FEDERAL TRADE COMMISSION,

9              Plaintiff,

10       v.

11  AMAZON.COM, INC., *et al.*

12              Defendants.

13

14

No. 2:23-cv-00932-JHC

**DECLARATION OF LAURA FLAHIVE WU IN SUPPORT OF AMAZON.COM, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DOCUMENTS CLAWED BACK DURING INVESTIGATION**

15       I, Laura Flahive Wu, hereby state that I have personal knowledge of the facts set forth

16  below.  If called as witness, I could and would testify as follows:

17       1.       I am a United States citizen and am over eighteen years of age.  I am a partner in

18  the law firm of Covington & Burling LLP and one of Amazon.com, Inc.'s counsel.  My office

19  address is 850 10th Street NW, Washington, DC 20001.

20       2.       Some of the documents at issue in the FTC's Motion were produced by Amazon

21  in another FTC investigation.  I understand from reviewing correspondence and conferring with

22  counsel on that investigation that Amazon produced over 1.7 million documents to the FTC in

23  that matter.

24       3.       Attached as Exhibit 1 to this declaration is a true and correct copy of an email

25  chain between counsel for Amazon and counsel for the FTC with the last email in the chain

26  dated October 18, 2022.

27

DECLARATION OF LAURA FLAHIVE WU
IN SUPPORT OF AMAZON'S
OPP'N TO MOT. TO COMPEL - 1
(2:23-cv-00932-JHC)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

4.      Attached as Exhibit 2 to this declaration is a true and correct copy of the excerpted transcript of the November 16, 2022 Investigational Hearing of Jamil Ghani.

5.      Attached as Exhibit 3 to this declaration is a true and correct copy of an email from counsel for Amazon to counsel for the FTC dated January 12, 2024.

6.      Attached as Exhibit 4 to this declaration is a true and correct copy of a letter from counsel for Amazon to counsel for the FTC dated November 17, 2023.

7.      Attached as Exhibit 5 to this declaration is a true and correct copy of a letter from counsel for Amazon to counsel for the FTC dated January 18, 2024.

8.      Attached as Exhibit 6 to this declaration is a true and correct copy of a letter from counsel for Amazon to counsel for the FTC dated February 7, 2023.

9.      Attached as Exhibit 7 to this declaration is a true and correct copy of a letter from counsel for Amazon to counsel for the FTC dated December 5, 2023.

10.     Attached as Exhibit 8 to this declaration is a true and correct copy of a letter from counsel for Amazon to counsel for the FTC dated December 22, 2023.

11.     Attached as Exhibit 9 to this declaration is a true and correct copy of an email from counsel for Amazon to counsel for the FTC dated January 22, 2024.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.  Executed on February 5, 2024 at Washington, D.C.

LAURA FLAHIVE WU

DECLARATION OF LAURA FLAHIVE WU
IN SUPPORT OF AMAZON'S
OPP'N TO MOT. TO COMPEL - 2
(2:23-cv-00932-JHC)

# EXHIBIT 1

**From:** Cohen, Jonathan <jcohen2@ftc.gov>
**Sent:** Tuesday, October 18, 2022 5:57 PM
**To:** Kim, Laura <LKim@cov.com>
**Cc:** Anthony, Stephen <santhony@cov.com>; Hall, John <jhall@cov.com>; Flahive Wu, Laura <lflahivewu@cov.com>; Siegel, Andrew <ASiegel@cov.com>; Remick, Ali <ARemick@cov.com>; Nardini, Thomas <tnardini@ftc.gov>; Capuano, Marc <MCapuano@cov.com>; Moran, Jordan <JMoran@cov.com>; Kelly, Kevin <Kkelly@cov.com>; Rottner, Adam <arottner@ftc.gov>; Cole, Margaret <mcole@ftc.gov>; Hoffman, Elena <ehoffman@ftc.gov>; Frech, Jacob <jfrech@ftc.gov>; Zwonik, Ryan <rzwonik@ftc.gov>; Graubert, John <jgraubert@cov.com>; Jerjian, Olivia <ojerjian@ftc.gov>
**Subject:** RE: Confidential: Amazon.com, Inc., FTC Matter No. 2123050

[EXTERNAL]

We are similarly optimistic that the IH process will unfold smoothly. Regarding your specific questions:

1. Counsel for the witness may attend in person or telephonically. You may also use this dial in: (833) 568-8864/ID: 161 0348 6900. To coordinate with security, please let us know who will attend this week's IH in person. We will let you know if similar information is necessary for the Seattle IHs, but probably not.

2. We will not provide potential exhibits in advance. Subject to our obligations if we identify something that appears inadvertently produced, or if Amazon properly requests that we return inadvertently produced material, we are entitled to treat, and will treat, everything that Amazon produced as nonprivileged. The unfortunate effect of Amazon's improper practice of labelling substantive material as "privileged" without regard to its content is that the label loses its meaning. If you attempt to frustrate or delay examinations through privilege objections or instructions based on nonprivileged material that Amazon knowingly and properly produced, we will respond appropriately.

3. Although we expect most examinations that begin at 8:30 AM to conclude by 6:00 PM, witnesses must remain until we have completed at least seven hours of question-and-answer or we agree to something else. As we have already agreed in one instance, we will make specific arrangements on a case-by-case basis to accommodate preferences that examinations end by particular times. We don't anticipate any issues with the lighting, but if they arise, we'll evalutate them at the time.

We're happy to discuss other logistical considerations. As noted above, we share your interest in ensuring that everything unfolds smoothly.

**Jonathan Cohen**
Enforcement Division | Bureau of Consumer Protection | Federal Trade Commission
600 Pennsylvania Avenue, N.W., CC-9528 Washington, D.C. 20580
(202) 326-2551 | jcohen2@ftc.gov

**From:** Kim, Laura <LKim@cov.com>
**Sent:** Monday, October 17, 2022 10:45 PM
**To:** Jerjian, Olivia <ojerjian@ftc.gov>; Cohen, Jonathan <jcohen2@ftc.gov>; Nardini, Thomas <tnardini@ftc.gov>
**Cc:** Anthony, Stephen <santhony@cov.com>; Hall, John <jhall@cov.com>; Flahive Wu, Laura <lflahivewu@cov.com>; Siegel, Andrew <ASiegel@cov.com>; Remick, Ali <ARemick@cov.com>; Capuano, Marc <MCapuano@cov.com>; Moran, Jordan <JMoran@cov.com>; Kelly, Kevin <Kkelly@cov.com>; Rottner, Adam <arottner@ftc.gov>; Cole, Margaret <mcole@ftc.gov>; Hoffman, Elena <ehoffman@ftc.gov>; Frech, Jacob <jfrech@ftc.gov>; Zwonik, Ryan <rzwonik@ftc.gov>; Graubert, John <jgraubert@cov.com>
**Subject:** Confidential: Amazon.com, Inc., FTC Matter No. 2123050

Confidential

Counsel,

We wanted to raise a few administrative matters to ensure we are well coordinated and efficient during the upcoming IH events. We ask that you confirm the following procedures by Tuesday at 5:30 so that we may adequately prepare for Mr. Lindsay's deposition on Friday:

1.  Counsel from Covington will be permitted to attend IH testimony in person and remotely (by telephone or Zoom).
2.  Staff will disclose IH exhibits to Covington in advance of testimony for the sole purpose of allowing Covington to conduct privilege review. This will help avoid the delays experienced during the Nelson deposition to determine the privileged status of documents.
3.  In the case that you expect to question a witness beyond 6 pm, please advise in advance, so we can jointly consider the location of the deposition. (We understand certain FTC offices do not have lights in the evening.)

We are happy to have a call to discuss these points, and are optimistic that we can reach agreement on these logistical items.

Best,
Laura

**Laura Kim**
Pronouns: She/Her/Hers

Covington & Burling LLP
One CityCenter, 850 Tenth Street, NW
Washington, DC 20001-4956
T +1 202 662 5333 | lkim@cov.com
www.cov.com

COVINGTON

This message is from a law firm and may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply e-mail that this message has been inadvertently transmitted to you and delete this e-mail from your system. Thank you for your cooperation.

# EXHIBIT 2

```
 1                    FEDERAL TRADE COMMISSION

 2

 3   In the Matter of:              )

 4   AMAZON.COM, INC.               ) No. 2123050

 5

 6

 7                   Investigational Hearing

 8                     JAMIL A. GHANI

 9

10

                       Federal Trade Commission
11               Henry M. Jackson Federal Building
                   915 Second Avenue, Suite 2896
12                     Seattle, Washington

13

14

15

16

17

18

19

20

21

22

23   DATE:  November 16, 2022

24   REPORTED BY:  Wade J. Johnson, RPR
                     CCR No.:  2574
25
```

Ghani
Amazon.com, Inc.                                    11/16/2022

1   now a member of Prime, but they're unaware of it.
2   They're not lying about it, they're not buyer's
3   remorse, but they're unaware of it.  The population of
4   people who are genuinely unaware of membership, that
5   population, however big or small, has a conversion
6   rate, doesn't it?
7              MR. HALL:  Same objection.
8        A.  Like I said, before, the total self-reported
9   mistaken signup population is a small minority.  Those
10  individuals have affirmatively joined Prime.  Some
11  portion of them will then go on and convert from free
12  to paid.  Let's, just for simplicity's sake, say they
13  signed up for a free trial.  Some portion of them will
14  go on and convert to being paid members, just as is
15  true with any other population that might sign up.  So,
16  yes.  I mean, there's plenty of people who also cancel.
17             MR. COHEN:  This is probably a good
18  time -- I don't know how long we've been going -- a
19  good time to take a ten-minute break?
20             MR. HALL:  Is it a good time to take a
21  lunch break?
22             MR. COHEN:  Oh, a good time to take a
23  lunch break.  Okay.
24             MR. NARDINI:  We've been going about
25  2 hours, 50 minutes.

FTCAMZN_0004790

Ghani
Amazon.com, Inc.                                      11/16/2022

```
 1                MR. COHEN:  It's your preference,
 2    Mr. Ghani.  Do you want to take a lunch break?  This is
 3    early for me but, I'll defer for you.
 4                THE WITNESS:  I'm fine if we just take a
 5    short break.
 6                MR. COHEN:  Short break and then a lunch
 7    break like 12:30?
 8                MR. HALL:  Is lunch here?
 9                MR. CAPUANO:  It's been ordered, but --
10                MR. HALL:  Okay.  Let's take a break, and
11    then we'll come back.
12                     (A brief recess was taken.)
13                MR. COHEN:  Let's go back on the record.
14                Mr. Hall has requested to make a comment.
15                MR. HALL:  One of the exhibits that you
16    marked before the break has a privileged and
17    confidential designation, and it did concern a legal
18    matter.  And I simply wanted to note -- I know that
19    this has been stated in prior hearings -- that, by
20    permitting testimony to expedite matters, we're not
21    waiving or intending to waive any clawback rights that
22    we might have.  I am not saying that we do with respect
23    to document, but I simply want to preserve that on the
24    record.  Thank you.
25                MR. COHEN:  We acknowledge that with
```

FTCAMZN_0004791

Ghani

```
 1   respect to the materials that we might go over in
 2   today's examination.
 3                 Let's get back to the questioning.
 4                 Mr. Ghani, to the extent you're able -- I
 5   want to make sure you give complete answers -- but, to
 6   the extent you're able to keep your answers brief, that
 7   would be helpful.
 8                 Let's mark as Exhibit 4 (sic.) Bates No.
 9   AMZN-FTC-CID 05445270-1.
10                         (Exhibit 3 marked for
11                          identification.)
12       Q.  (By Mr. Cohen)  Before I give it to you,
13   Mr. Ghani, are you familiar with the voice of the
14   customer program within Prime?  And I'll hand it to you
15   and hand a copy to your counsel.
16       A.   There isn't a single voice of the customer
17   program, necessarily.  Voice of the customer is kind of
18   a general term for feedback and input that we might
19   receive from a variety of sources from customers.
20       Q.   I'll direct you to the bullet that begins on,
21   I guess it's the second page, line approximately 49.
22   At the top of the following page, the first full
23   sentence reads, "Two top frustration themes within the
24   Prime org are related to subscription clarity and
25   sitewide fluidity (e.g. multiple signup messages,
```

FTCAMZN_0004792

127
Ghani

1   forced interstitials that interrupt the customer's
2   flow.)"  Did I read that correctly?
3        A.  You read what's on the page correctly, yes.
4                  MR. HALL:  Mr. Cohen, could I interrupt
5   for just one moment.  I'm noting here that it looks
6   like identical documents were marked as Exhibit 2 and
7   Exhibit 3.
8                  MR. COHEN:  That's probably a mistake.
9   Let's go off the record and see if we can figure it
10  out.
11                  (A brief recess was taken.)
12                  MR. COHEN:  Let's go back on the record.
13                  Counsel for the witness correctly
14  informed me that I had skipped Exhibit 3.  And so what
15  I previously identified as Exhibit 4 is actually
16  Exhibit 3.  We've made that correction with respect to
17  the document that is in front of the witness.
18       Q.  So now we'll go back to our discussion of
19  Exhibit 3.  I read a sentence, and I'll just read it
20  again so that we get back to where we were before.
21  It's at the top of page 3, "Top two frustration themes
22  within the Prime org are related to subscription
23  clarity and sitewide fluidity," and then it goes on.
24                  Did I read that portion correctly, Mr. Ghani?
25       A.  You read it correctly, yes.

FTCAMZN_0004793

Ghani

Amazon.com, Inc.                                        11/16/2022

1        A.   I don't know for certain what my -- my
2   initials are Jamil Asad Ghani.  I don't know.  I
3   haven't checked my Word settings.
4        Q.   Can you spell your middle name, please.
5        A.   A-s-a-d.
6        Q.   That comment reads, "Unnecessary to state that
7   this that way (sic.) reads accusatory."
8             Have I read that correctly?
9        A.   That is what I wrote, yes.
10       Q.   And the line you've crossed out previously
11   said Consumer Engagement, CE, has actively tracked
12   these issues since 2016 through the shoppers
13   frustration program and has raised these issues to
14   Prime leadership."  Did I read that correctly?
15       A.   That is what the line says.
16       Q.   What do you believe was accusatory about the
17   line you removed?
18       A.   The impression that that line left with me was
19   that Consumer Engagement was raising these concerns to
20   Prime leadership and we weren't doing anything about
21   it, which was not true.
22       Q.   Who was the original author or the primary
23   author of this memo if you know?
24       A.   I believe it was authored between Nikki
25   Baidwan and Ben Hills, Benjamin Hills.

FTCAMZN_0004899

Ghani
Amazon.com, Inc.                                          11/16/2022

1        Q.   Let's set this aside.

2             When did the meeting with Mr. Clark occur?

3        A.   I don't know exactly the month.  It was

4   sometime later in the first half of 2021, to the best

5   of my recollection.

6        Q.   Who attended the meeting?  Just names.

7        A.   I was there, Neil was there, Llew was there,

8   Dave was there.

9        Q.   Sorry, Dave?

10       A.   Dave Clark.  Sorry.  My apologies.  And Doug

11  Herrington was there.  I can say that definitively.  I

12  don't know if Russ Grandinetti was there or if anyone

13  else was there.  Counsel was there, as well.

14       Q.   Who were the attorneys that were present?

15       A.   I can't remember specifically, but -- I can't

16  remember specifically, but Praju I believe was still in

17  the business at that time, so he would have been there.

18  My lead counsel would have been there.

19       Q.   With the exception of any legal advice that

20  may have been discussed or conveyed -- and I don't want

21  you to tell me that -- what was discussed at the

22  meeting?

23            MR. HALL:  I'm going to object.  I think

24  the entirety of the meeting which includes lawyers is

25  privileged.  And so I think the question is improper.

For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

FTCAMZN_0004900

Ghani

```
 1    It calls for the disclosure of attorney-client
 2    privileged information.
 3                   I instruct you not to answer.
 4       Q.   Are you going to follow your counsel's
 5    instruction?
 6       A.   I am.
 7       Q.   What was the purpose of the meeting?
 8       A.   It wasn't my meeting.  It was called by legal,
 9    and the document was prepared by legal.
10                        (Exhibit 15 marked for
11                         identification.)
12                   MR. COHEN:  Let's mark as 15.  I think
13    that's where we are.  Amazon-FTC-CID_07041674.
14                   THE WITNESS:  Thank you.
15                   MR. HALL:  Thank you.
16       Q.   The subject line of this document, Mr. Ghani,
17    is, "Re:  Pre-Clark review, Prime account CX
18    satisfaction, privileged and confidential."
19            Did I read that correctly?
20       A.   You did.
21       Q.   The document topic owner is Ms. Baidwan?
22       A.   Yes, according to this.
23       Q.   And there's an attached memo entitled, "Prime
24    account, CX satisfaction, privileged and confidential."
25            Did I read that correctly?
```

FTCAMZN_0004901

236

Ghani

1       A.   Yes, you did.

2       Q.   Was this memorandum discussed at the meeting

3   with Mr. Clark?

4       A.   I do not believe so, no.

5       Q.   Was this discussed at another meeting?

6       A.   I believe it was reviewed at the meeting

7   indicated here on February 18th.

8       Q.   That's a fair point.  I asked a bad question.

9            Was this review discussed at another meeting

10  subsequent to this review that is identified as

11  occurring --

12      A.   I don't know if it was reviewed at another

13  internal team meeting.

14      Q.   What I was confused about is that there

15  appears to be a document that's in front of us -- and

16  we could show you additional documents -- that refer to

17  pre-Clark review, but you've testified that the

18  memorandum that was discussed at the Clark meeting was

19  prepared by legal.  Can you help me understand the

20  discrepancy?

21           MR. HALL:  Object to the form.

22      A.   We were preparing a document from the point of

23  view of the team, and we ultimately consulted with

24  counsel, and we stopped preparation of a document.  And

25  they -- Praju and his team -- prepared their own

FTCAMZN_0004902

```
 1                    C E R T I F I C A T E

 2    STATE OF WASHINGTON )
                         )  ss
 3    COUNTY OF KING      )

 4

 5           I, the undersigned Washington Certified Court
      Reporter, pursuant to RCW 5.28.010, authorized to
 6    administer oaths and affirmations in and for the State
      of Washington, do hereby certify:  That the foregoing
 7    Investigational Hearing of the witness named herein was
      taken stenographically before me and reduced to a typed
 8    format under my direction;

 9           That I am not a relative or employee of any
      attorney or counsel or participant and that I am not
10    financially or otherwise interested in the action or
      the outcome herein;

11

12           That the Investigational Hearing, as
      transcribed, is a full, true and correct transcript of
      the testimony, including questions and answers and all
13    objections, motions and examinations and said
      transcript was prepared pursuant to the Washington
14    Administrative Code 308-14-135 preparation guidelines.

15

16                      Wade J. Johnson, Certified Court
                        Reporter 2574 for the State of
17                      Washington residing at Seattle,
                        Washington.
18                      My CCR certification expires on
                        09/18/23.

19

20

21

22

23

24

25
```

# EXHIBIT 3

**From:** Flahive Wu, Laura
**Sent:** Friday, January 12, 2024 4:19 PM
**To:** 'Mendelson, Evan' <emendelson@ftc.gov>; Joseph Aronsohn <jaronsohn@hueston.com>; Jerjian, Olivia <ojerjian@ftc.gov>; Nardini, Thomas <tnardini@ftc.gov>; Hoffman, Elena <ehoffman@ftc.gov>; Zwonik, Ryan <rzwonik@ftc.gov>; Frech, Jacob <jfrech@ftc.gov>
**Cc:** John C. Hueston <jhueston@hueston.com>; Moez M. Kaba <mkaba@hueston.com>; Joseph A. Reiter <jreiter@hueston.com>; Vicki Chou <vchou@hueston.com>; Kelly, Kevin <Kkelly@cov.com>; Kim, Laura <LKim@cov.com>; Graubert, John <jgraubert@cov.com>; Anthony, Stephen <santhony@cov.com>; Hall, John <jhall@cov.com>; Rodgers, Megan <mrodgers@cov.com>; Capuano, Marc <MCapuano@cov.com>; Payson, Kenneth <KennethPayson@dwt.com>; Howard, Jim <JimHoward@dwt.com>; SEA Docket <SEADocket@dwt.com>; Chan, Gina <GinaChan@dwt.com>; Green, Jennifer <JenniferGreen@dwt.com>; Mejia-Portillo, Johana <jmejiaportillo@ftc.gov>; Awad, Yara <yawad@ftc.gov>; MacDonald, Colin <cmacdonald@ftc.gov>; kristinachin@dwt.com
**Subject:** RE: FTC v. Amazon.com, Inc., et al., No. 2:23-cv-00932-JHC (W.D. Wash.)

Counsel,

Thank you for confirming your agreement to remove IC-3 from dispute and for agreeing that Amazon's downgrade of IC-2, IC-9, and IC-34 will not operate as a subject matter waiver over the topics covered in those documents. Subject to the parties' agreement on subject matter waiver, we attach demonstrative versions of the downgraded IC-2, IC-9, and IC-34. We agree there is no further dispute as to IC-2 and IC-34. Please confirm your agreement to remove IC-9 from dispute.

Regarding IC-1 and IC-36, Amazon disagrees with your substantive privilege and waiver arguments for the reasons articulated in our prior filings and correspondence, including the Declaration of Mark England and our November 17 letter. In addition, you baselessly assert that Amazon has "fail[ed] in this litigation to assert attorney-client privilege until your email below[.]" Amazon has claimed attorney-client privilege over these materials in this litigation. *See* Response to Mot. to Desequester (Dkt. 50) at 11 ("three of the documents pertain to legal advice prepared for or given during a May 6, 2021 meeting, the primary purpose of which was to discuss legal considerations involving the Prime sign-up and cancellation processes"); Decl. of Mark England (Dkt. 52) at ¶ 15 (IC-1 "reflects our legal advice"); ¶ 16 (IC-36 is "a copy of IC-1"). Moreover, as noted below, Amazon clearly asserted attorney-client privilege over these documents when it clawed them back during the investigation and logged similar versions of the May 6 meeting memo on its investigations-phase privilege logs as "attorney-client privileged." *See* Jan. 11, 2023 IH Tr. 280:22-281:3; Jan. 13, 2023 Amazon letter to FTC; AMZ_LOG02_000000454. If the FTC intends to bring this issue to the Court, Amazon will lay out this clear history of asserting attorney-client privilege over these documents and will argue that the FTC is intentionally ignoring Amazon's written privilege claims.

Regards,

Laura

**Laura Flahive Wu**

Covington & Burling LLP
One CityCenter, 850 Tenth Street, NW
Washington, DC 20001-4956
T +1 202 662 5982 | lflahivewu@cov.com
www.cov.com

**COVINGTON**

This message is from a law firm and may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply e-mail that this message has been inadvertently transmitted to you and delete this e-mail from your system. Thank you for your cooperation.

# EXHIBIT 4

# COVINGTON

BEIJING  BOSTON  BRUSSELS  DUBAI  FRANKFURT
JOHANNESBURG  LONDON  LOS ANGELES  NEW YORK
PALO ALTO  SAN FRANCISCO  SEOUL  SHANGHAI  WASHINGTON

Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC  20001-4956
T  +1 202 662 6000

**Via Electronic Mail**                                November 17, 2023

Evan Mendelson
Division of Enforcement
Federal Trade Commission
600 Pennsylvania Ave., N.W., Suite CC-9528
Washington, D.C. 20580

**Re:  FTC v. Amazon.com, Inc., No. 2:23-cv-0932-JHC (W.D.
Wash.) October 30, 2023 Follow-Up**

Counsel:

Amazon.com, Inc. ("Amazon") writes in response to your October 24 and November 17, 2023 emails and in follow-up to the parties' October 30, 2023 meet-and-confer regarding documents subject to Amazon's privilege claims, raised in response to the FTC's first Request for Production of Documents.  The same documents were the subject of the FTC's Motion to Desequester, which the Court denied on October 23, 2023.  The purpose of this correspondence is to respond to the FTC's inquiries by providing additional information about Amazon's privilege claims, and to clarify the scope of any remaining points of disagreement.  Nothing in this letter is intended to or should be construed to constitute a waiver of Amazon's attorney-client privilege or work product protection asserted in its privilege logs.

In its Motion to Desequester, the FTC sought full access to 54 documents, 31 of which were produced with minimal redactions.  Amazon documented the clawback of these documents in five letters over the course of the FTC's multi-year investigation.  For the reasons described below, Amazon maintains that its assertions of privilege are valid, that its clawbacks were proper and reasonable, and that no waiver has occurred.  Nonetheless, in the interest of reaching a compromise and avoiding further motion practice, Amazon agrees to revisit certain document redactions, subject to your agreement regarding subject matter waiver.[1]

## I.    Amazon Took Reasonable Steps to Protect Its Privileged Materials

In its October 24 and November 17 emails, the FTC asked Amazon to provide detailed information regarding the process by which Amazon determined that it had inadvertently produced the privileged documents that it identified in its letters dated January 5, January 13,

---

[1] The FTC has not raised any specific concerns regarding the documents identified in Amazon's November 29, 2022 and April 12, 2023 letters, IC-9 and IC-30, respectively.  Please notify Amazon if the FTC has any concerns about IC-9 or IC-30.

**COVINGTON**

Evan Mendelson
November 17, 2023
Page 2

and February 7, 2023.  While certain details regarding Amazon's review, including the specific steps Amazon's counsel took and the specific information they considered, are protected attorney work product, Amazon is sharing a high-level chronology of relevant events, which underscores the reasonableness of Amazon's actions.

As an overarching matter, and as we stated on the October 30 meet-and-confer, Amazon's actions with respect to the clawbacks were objectively reasonable.  Given the context of the investigation — and the document productions and clawbacks made during it — it is meritless to suggest that clawbacks made within several weeks of Amazon becoming aware of a potential privilege issue constitute a privilege waiver.  *See Transamerica Computer Co. v. Int'l Bus. Machines Corp.*, 573 F.2d 646, 651 (9th Cir. 1978) (affirming order finding no waiver, despite inadvertent production of privileged documents, where defendant had been ordered "to produce a large number of documents . . . in a relatively short time").  As set out below, Amazon followed a prompt and rigorous process upon learning of the potential inadvertent production of privileged materials during the course of investigational hearings ("IHs").  The speed with which Amazon completed its review was affected by the competing demands of a condensed schedule of dozens of IHs; the voluminous nature of Amazon's document productions to the FTC; and the mechanics of dealing with materials produced to the FTC in connection with unrelated matters.

The FTC has not identified any problems with Amazon's clawback process, with the possible exception of it not being quick enough.[2]  Any such suggestion is wrong.  And moreover, the FTC has identified no prejudice it suffered by the clawbacks.  Amazon's clawbacks were objectively reasonable.  It did not waive privilege.

    A.    Overview of the Process Behind the January 5, January 13, and February 7 Letters

Amazon made clawbacks within several weeks of becoming aware of the potential inadvertent production of privileged material during IHs.  Those actions are objectively reasonable, particularly given the scale of production and time pressure imposed by FTC staff.

As to each clawed back document, Amazon engaged in a diligent internal review process that reasonably took, at most, several weeks to complete.  Upon discovering potentially privileged documents, Amazon's counsel worked to understand the factual bases for and evaluate potential privilege claims by speaking with additional witnesses and in-house counsel.  Based on these conversations, Amazon was then able to determine that certain documents had been improperly coded as "not privileged."  Shortly after Amazon made this determination, it worked to formally claw back the privileged material and provide updated privilege logs to the FTC.  Because production was ongoing, this process required Amazon to not only investigate whether other similar documents had been improperly coded and produced, but also update its process for reviewing upcoming productions.

---

[2] Amazon does not understand the FTC's November 17, 2023 email to raise any process issues with Amazon's clawbacks.

**COVINGTON**

Evan Mendelson
November 17, 2023
Page 3

Adding to the complexity of this review process, there are often different versions of a single document with different contributors across time. Accordingly, in order to properly protect privileged information, while also giving the FTC the greatest access possible to non-privileged documents, Amazon had to search for different versions and implement privilege calls across multiple versions of documents.

Amazon promptly completed this extensive review process despite an ongoing production of significant scale and time pressure imposed by FTC staff. *See United States v. Wells Fargo Bank, N.A.*, 2015 WL 5051679, at *2 (S.D.N.Y. Aug. 26, 2015) (clawback that occurred "more than six weeks" after party was notified that it had produced privileged documents was not "unreasonable" given "the scale of discovery" in the case). Staff required Amazon to complete dozens of IHs and additional document productions over the course of four months, from October 2022 through January 2023. In order to comply with the FTC's tight schedule in the investigation, Amazon issued documents in rolling productions. Throughout this process, Amazon took reasonable steps to evaluate potential privilege claims and apply privilege determinations systematically despite having to quickly prepare these large, complex productions. At the same time that Amazon was making large, rolling document productions, the FTC was engaged in a significant number of IH hearings on a condensed schedule. While preparing for and participating in these IHs, Amazon raised privilege concerns with the FTC. However, Amazon did not halt its productions or the IH process while it investigated these concerns because it relied on the FTC's representation that Amazon could later claw back inadvertently produced documents even after they were permitted to be used in IHs.[3]

B.      January 5 Letter

The summary above demonstrates the reasonableness of Amazon's conduct with respect to the documents clawed back in Amazon's January 5 letter. The five documents that were clawed back in the January 5 letter — IC-7, IC-11, IC-12, IC-13, and IC-15 — were produced with partial redactions, while Amazon was continuing to collect information from witnesses. This conduct is reasonable, as explained above. It is Amazon's understanding that the FTC has questions regarding the "determinations made during the May 6 meeting as the result of legal advice discussed during that meeting" for IC-11 and IC-12. Amazon addresses these questions below in Section II.B.

---

[3] In the first IH of the investigation that Covington was permitted to attend, the FTC gave Amazon assurance that the use of a document in an IH would not constitute a waiver of privilege. Oct. 21, 2022 Lindsay Tr. 23:11-20 ("So we'll stipulate on the record that the use of any document that has any indication of privilege or confidential during this investigational hearing waives nothing at all on behalf of Amazon if all that is done is just sort of ask the witness . . . absolutely, *positively no waiver by virtue of the use of the document here*."); *Id.* 240:18-21 ("We will not argue that the fact that you allowed the testimony to continue with respect to those documents means that you cannot claw them back or make any other arguments with respect to those documents.").

**COVINGTON**

Evan Mendelson
November 17, 2023
Page 4

If the FTC believes that Amazon has waived privilege protection over IC-7, IC-11, IC-12, IC-13, or IC-15, please explain the objection and the basis for that objection. Additionally, if the FTC has any objection to the redactions in IC-7, IC-11, IC-12, IC-13, or IC-15 outside of those applying to what the FTC calls "determinations" about the May 6 meeting, please explain the objection and the basis for the objection. Please clarify the FTC's position with regard to these redactions in writing.

    C.       January 13 Letter

The summary above also demonstrates the reasonableness of Amazon's conduct with respect to the documents clawed back in the January 13 letter. The three documents at issue in that letter — IC-1, IC-34 and IC-36 — were all produced from unrelated investigations. In the Prime investigation, Amazon had clearly asserted privilege over the May 6, 2021 meeting and related documents. During Amazon's corporate IH on January 11, 2023, it became clear that, despite this clear privilege claim, staff had nonetheless searched for documents regarding the May 6, 2021 meeting in productions made by Amazon in separate FTC investigations. This action was surprising and offensive to the Federal Rules.

Amazon's first step following the FTC's action was to claw back the three documents that were introduced. IC-1, IC-34 and IC-36 were used in Amazon's corporate IH on January 11, 2023. All three were clawed back on the record during the IH. Amazon then sent a follow-up letter on January 13 formalizing the claw back of these documents.

The FTC raised that IC-1 was used as an exhibit in Russ Grandinetti's IH on December 2, 2022. Each witness has different factual knowledge and so not every witness has the factual knowledge to raise privilege concerns from looking at a document. Mr. Grandinetti was not in a position to raise privilege concerns from briefly seeing the document in his IH.

If the FTC believes that Amazon has waived privilege protection over IC-1 for any reason besides prompt action, please explain the objection and the basis for that objection. Amazon is unaware of concerns from the FTC with the claw back of IC-34 and IC-36. If the FTC has any objection to the privilege protection of IC-34 or IC-36, please explain the objection and the basis for that objection. Please clarify the FTC's position with regard to these documents in writing, including explaining why the FTC did not raise potential privilege issues about these documents in advance of IHs in which they were used and why (if at all) the FTC's assurance that a document used during an IH could later be clawed back does not apply.

    D.       February 7 Letter

Following the FTC's decision to use its access to other investigative databases to undermine Amazon's privilege protection, Amazon's second step was to undertake a comprehensive re-review of its privilege coding across all of these additional investigations. This was a significant undertaking. The team working on this re-review needed to understand the coding and collection decisions made in two other investigations. This required discussion with additional witnesses, outside counsel teams, and in-house counsel teams. During this re-review, IHs continued without delay.

**COVINGTON**

Evan Mendelson
November 17, 2023
Page 5

During the January 20, 2023 Amazon corporate IH, Amazon's counsel clawed back IC-31 — a document pertaining to the July 14, 2021 meeting discussed in Section II.A — when it was introduced.  Following the January 20 IH, Amazon further investigated this document, meeting, and related documents.  As part of that investigation, which included speaking with meeting attendees, Amazon learned about the full privileged nature of this meeting and related documents.

Documents clawed back as part of the February 7 letter and following further factual investigation included:

1. IC-27

This document, used during the IH of Omar Kalim, was clawed back and redacted following additional factual investigation.  It is subject to Section II.B below.

2. IC-31

As discussed above, this document was clawed back during the corporate IH on January 20 and formalized in writing as part of the February 7 letter.

3. IC-40

IC-40 is a document that Amazon clawed back during Dharmesh Mehta's IH.  Amazon was prompt in its reaction to the FTC's use of the documents during Mr. Mehta's IH.

Amazon raised privilege concerns to staff during the IH and followed up by investigating the privileged nature of this document and any associated testimony.  Staff found the document through a merger investigation with a completely different subject matter.  Mr. Mehta's role at the company was tangentially, if at all, related to the FTC's Prime investigation.  As a result, outside counsel was not familiar with or aware of the teams that contributed to the document.  Nevertheless, counsel immediately raised the concern that the document could be privileged and consulted with the witness.

In order to understand if any lawyers contributed to or authored this document, outside counsel needed to discuss with teams beyond the Prime program.  Coordinating between these teams and interviewing the proper employees were further complicated by the fact that the document was introduced a week before Christmas.

If the FTC believes that Amazon has waived privilege protection over IC-40 for any reason besides prompt action please explain the objection and the basis for that objection in writing.

4. IC-37, IC-46, IC-50, IC-51, IC-52, IC-53, IC-54, and IC-55

Amazon is unaware of concerns from the FTC with the claw back of IC-37, IC-46, IC-50, IC-51, IC-52, IC-53, IC-54, and IC-55.  If the FTC has any objection to the privilege protection of

**COVINGTON**

Evan Mendelson
November 17, 2023
Page 6

IC-37, IC-46, IC-50, IC-51, IC-52, IC-53, IC-54, or IC-55, please explain the objection and the basis for that objection in writing.

## II.   Amazon Has Properly Substantiated Its Privilege Claims on Its Privilege Log and through the Declaration of Mark England

Amazon's privilege logs confirm the privileged nature of the documents that were clawed back.  Mark England's declaration gives additional background to substantiate Amazon's privilege claims.  To date, the FTC has not identified any deficiencies in Amazon's privilege logs.  If the FTC believes any log to be deficient, please explain the purported deficiency.

The FTC has raised questions about whether privilege extends to the July 14 memo and related presentations (*e.g.*, IC-4, IC-5, IC-17) (the "July 14 Memo"), and the outcome of legal guidance given at the May 6 meeting.[4]  Amazon is unaware of any other specific privilege objections to the rest of the document set.  If the FTC believes that any additional document or set of documents are not protected by privilege, please explain the basis for that belief in writing.

### A.   July 14 Memo

The July 14 Memo was prepared in order to obtain legal advice and has been properly logged as privileged.  *AT&T Corp. v. Microsoft Corp.*, 2003 WL 21212614, at *3 (N.D. Cal. Apr. 18, 2003) ("Communications containing information compiled by corporate employees for the purpose of seeking legal advice and later communicated to counsel are protected by attorney-client privilege.") (citing *Upjohn v. United States*, 449 U.S. 383, 394-95 (1981)).  These meeting materials, some of which contain Jamil Ghani's handwritten notes while receiving advice, have also been properly logged as privileged.  *Branch v. Umphenour*, 936 F.3d 994, 1005–06 (9th Cir. 2019) ("The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice ... as well as an attorney's advice in response to such disclosures.").  The July 14 Memo was prepared to provide two Amazon attorneys "with information about specific changes that the Prime team was contemplating, so that [the attorneys] could provide legal advice during the July 14 Meeting regarding those contemplated changes."  England Declaration ¶ 21.  As such, Amazon's privilege claim over this memo is valid.

### B.   May 6 Meeting Redactions

Contrary to the FTC's suggestion, Amazon has not redacted or claimed privilege over the non-privileged implementation of changes to Prime's enrollment flows.  Instead, Amazon has redacted references to the timing of advice provided by legal counsel, which is properly logged as privileged.  The court in *In re MacBook Keyboard Litig.*, a citation offered by the FTC, held that while plaintiffs were "entitled to discover what Apple decided" . . . "[p]laintiffs may not inquire about what advice Apple's legal counsel gave or how that advice informed Apple's decision."  2020 WL 1265629, at *4 (N.D. Cal. Mar. 17, 2020).  Nonetheless, <mark>Amazon has further reviewed</mark>

---

[4] Regarding IC-2, Amazon directs the FTC to the England Declaration (¶ 26), which substantiates the privilege claim.  Amazon has not located a response to the email shown in IC-2.

**COVINGTON**

Evan Mendelson
November 17, 2023
Page 7

its redactions to IC-7, IC-8, IC-10, IC-11, IC-12, IC-14, IC-16, IC-23, IC-24, IC-25, IC-26, IC-27, IC-28, IC-29, IC-32, IC-33, IC-38, IC-41, IC-42, IC-43, IC-44, IC-45, IC-47, and IC-49 and is willing to narrow its redactions if the FTC agrees that it will not argue that Amazon's production of the previously redacted information acts as a subject matter waiver of other communications made at or related to the May 6 meeting.  Please let us know if the FTC agrees to this condition.

## III.  Quick Peek Procedure

In the FTC's November 17, 2023 email, it asked whether Amazon would consider agreeing to a "quick peek" procedure to allow FTC staff a one-time look — without any privilege waiver — at some or all of the clawback documents to assess Amazon's privilege claims.  Given that this letter addresses and responds to the FTC's privilege arguments and questions, Amazon does not agree to the "quick peek" procedure.

Sincerely,

Laura Kim
John Graubert
John Hall
Laura Flahive Wu
Stephen Anthony
Megan Rodgers

# EXHIBIT 5

# COVINGTON

BEIJING  BOSTON  BRUSSELS  DUBAI  FRANKFURT
JOHANNESBURG  LONDON  LOS ANGELES  NEW YORK
PALO ALTO  SAN FRANCISCO  SEOUL  SHANGHAI  WASHINGTON

Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
T +1 202 662 6000

**Via Electronic Mail**                                   January 18, 2024

Evan Mendelson
Division of Enforcement
Federal Trade Commission
600 Pennsylvania Ave., N.W., Suite CC-9528
Washington, D.C. 20580
emendelson@ftc.gov

Re:  *FTC v. Amazon.com, Inc.*, No. 2:23-cv-0932-JHC (W.D. Wash.)

Counsel:

On behalf of Amazon.com, Inc. ("Amazon"), we write in response to the FTC's January 3, 2024 letter regarding Amazon's Responses and Objections (the "Objections") to the FTC's First Set of Interrogatories (the "Interrogatories").

## I.      FTC Interrogatories 1 and 2

Your January 3 letter makes clear that the FTC's inquiries are overbroad and ill-suited to the interrogatory process.  These Interrogatories seek "*all* potential routes through the Amazon product checkout process" in which a customer may have been offered Prime for a six-year period.  We have previously objected to these Interrogatories with specificity pursuant to Fed. R. Civ. P. 33(b)(4), and maintain those objections.

Notwithstanding its objections, Amazon has reasonably construed these Interrogatories to only refer to the primary routes, and fully responded based on that reasonable interpretation. Amazon identified the primary ways a customer might be presented with an offer to sign up for Prime during the checkout process based on a reasonable search that is proportional to the needs of this case under Fed. R. Civ. P. 26(b)(1).  To the extent the FTC asks us to respond to a broader request for literally every potential route, that (hypothetical) interrogatory would be impermissibly overbroad.  As we have explained, a request for *all* potential routes is overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it requires Amazon to create a comprehensive catalogue of each and every possible permutation of the checkout process that any customer might have experienced at any point in time during the applicable time period.  The specific experience that is presented to each Amazon customer at checkout is personalized based on a variety of factors unique to that customer, and Amazon does not maintain a central repository of all historical potential routes through its checkout process. Although it would be extremely difficult to describe the details of every single potential customer experience, Amazon has endeavored to describe the "primary" routes that are representative of the overall customer experience.

**COVINGTON**

Evan Mendelson
January 18, 2024
Page 2

Your letter requests that Amazon "explain what steps it took both to determine all ways through the checkout process and to identify the 'primary ways." However, Amazon timely objected to the FTC's flawed interrogatory, and therefore no further explanation is required. An answer to an interrogatory is required *to the extent it is not objected to*. Fed. R. Civ. P. 33(b)(3) ("Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath."). The requirement that a party "set forth in detail the efforts made to obtain the information" responsive to an interrogatory *only* applies where the respondent has failed to make a "full, fair, and specific answer to an interrogatory." *See Storey v. Weyand*, 2020 WL 13662887, at *2 (W.D. Wash. May 22, 2020); *see also Essex Builders Grp., Inc. v. Amerisure Ins. Co.*, 230 F.R.D. 682, 685 (M.D. Fla. 2005). Without waiving its objection, Amazon discloses that it reviewed its internal data to identify the primary sources of customer sign ups for Prime and then engaged in a reasonably diligent process to collect the information necessary to describe these "primary ways by which a customer … might be presented with an offer to sign up for Prime during the checkout process."

Your letter also asks for additional information regarding "devices or platforms besides desktop and mobile web." Your request and this Interrogatory are cumulative and duplicative of your prior investigation requests, to which Amazon has previously responded by producing responsive documents or information. *See* Amazon's May 23, 2022 letter (addressing the Prime enrollment flow on mShop) and Amazon's September 30, 2021 letter (addressing the Prime enrollment flow on Fire TV). Without waiving this objection, based on a reasonable search that is proportional to the needs of this case, Amazon has determined that the vast majority of customers enroll in Prime through the desktop and mobile flows. While there are enrollment flows on Amazon's "mShop" Android app and Kindle devices, those enrollment flows constitute a small percentage of customer enrollment for Prime and requiring Amazon to provide a narrative description of all possible iterations of those flows is not proportional to the needs of the case.

Your letter also asks for information regarding SOSP prior to October 2022. During that period, after declining Prime on the SOSP, a customer might have seen the UPDP, but Amazon limited the number of times a customer would be presented with UPDP in a single day or session if they had previously declined to sign up for Prime. Prior to October 2022 on desktop and on the current mobile experience, customers for whom Amazon does not have billing and address information are first asked to provide billing and address information before they would be presented with UPDP. On the current desktop experience, customers with no saved billing and address information do not see the UPDP in the checkout flow.

Subject to and without waiver of Amazon's objections to the FTC's Interrogatories, Amazon provides the following additional information responsive to your January 3 inquiry:

The SPC Popover, as the term is used in AMZN_00040706 at -717, is a popup that will appear on top of the Single Page Checkout ("SPC") (see screenshot below) after the customer declines the Prime offer on the UPDP if that customer is not eligible for a Prime free trial and if the customer clicks on a Prime offer on the "Review your order" page. This popup provides information about Prime memberships. Amazon provides customers with all of the material terms of Prime membership on this popup, including the price of the Prime membership and

**COVINGTON**

Evan Mendelson
January 18, 2024
Page 3

the fact that the membership continues until cancelled.  This information is included in bold type of ease of identification.



Contemporaneous with these disclosures, there is a button labeled "Join Prime for Fast, FREE Delivery."  Customers that click this button are enrolled in Prime.  For customers who wish to continue their purchase without enrolling in Prime, customers simply select the option prominently labeled "No Thanks" to decline this offer and proceed with their order.

Immediately adjacent to these buttons, Amazon conspicuously discloses that "by signing up" customers authorize Amazon to charge their credit card for membership fees.  Amazon also links to Amazon Prime's Terms & Conditions, which reiterate Prime's material terms.  Because customers have saved both their default billing information and default address information with Amazon prior to checkout in order to facilitate their purchase of products from Amazon, Amazon does not require them to manually enter those same billing details again so that they can also become a Prime member.

Amazon never pre-selects an option that will sign a customer up for Prime.  This includes the SOSP page.  The option labeled "Today FREE Same-Day Delivery with a free trial of Amazon Prime" on the SOSP image on page 15 of Amazon's Objections and Responses was not preselected.  Instead, that image showed the option that customers must affirmatively select to

**COVINGTON**

Evan Mendelson
January 18, 2024
Page 4

sign up for Prime.  In SOSP, the default selection was the least expensive paid shipping option, aside from Prime free shipping.

Your letter also asks for Amazon to confirm that it has "adhered" to its "policies that information presented on mobile devices or other small screens should always include the price and duration of the plan 'above the fold' so that the customer can easily review them at the time the customer is asked to make a decision."  While Amazon has taken steps to ensure price and duration of plan information is included "above the fold" on mobile devices as set forth in its policies, given the sheer number of unique devices that might be used by customers to interact with Amazon's offers, Amazon cannot, at this time, confirm that *every* device that *ever* accessed Amazon's offers during the Applicable Time Period has displayed the price and duration of plan information "above the fold."

Lastly, in response to your question regarding the implementation date for the TrueSPC experience, the True SPC experience was implemented on the Amazon website on November 1, 2022.

## II.    FTC Interrogatory 3

Amazon maintains its objections to Interrogatory 3 as overly broad, unduly burdensome, and not proportional to the needs of the case.  In the context of the FTC's investigation, the FTC recognized that information relating to specific versions of the Prime sign-up flow is unnecessary.  *See* Apr. 19, 2022 letter from J. Cohen to L. Kim at 5 (requesting information about only "materially different" platforms or circumstances).  And the variations among these different versions of the Prime sign-up process are not relevant to the FTC's claims in this litigation.

As described above and as we explained to you nearly two years ago, the specific version of a particular page that is presented to each Amazon customer at checkout is personalized based on a variety of factors unique to that customer.  *See* May 23, 2022 letter from B. Langner to J. Cohen.  To illustrate just a few examples:

- Customers might be eligible for different delivery speeds based on the item that the customer purchases, the customer's address, or the date and time of the customer's order.  *See, e.g.*, AMZN_00003614 at 9 (same-day Prime delivery); AMZN_00003615 at 9 (two-day Prime delivery).

- Customers might be eligible for Prime delivery of different items depending on what they have decided to purchase.  *See, e.g.*, AMZN_00003614 at 18 (Echo Dot); AMZN_00003615 at 18 (Fire TV Stick Lite).

- Customers might receive different information about Prime benefits.  *See, e.g.*, AMZN_00003614 at 11 (delivery, music, and video benefits in a single table); AMZN_00003615 at 11 (music and video benefits in a separate column from delivery benefits).

**COVINGTON**

Evan Mendelson
January 18, 2024
Page 5

The FTC's demand that Amazon identify the most frequently presented treatments from all possible permutations of the sign-up process is unduly burdensome not reasonably calculated to obtain admissible information.  Demanding that Amazon identify the most frequently presented versions from among all possible permutations of the sign-up process serves no purpose other than to harass Amazon and impose an unnecessary burden.

Subject to and without waiver of Amazon's objections to the FTC's Interrogatory 3, Amazon advises the FTC that Amazon does not maintain data reflecting which "version" of each sign-up page was displayed most frequently.

## III.    FTC Interrogatory 4

Amazon maintains its objections to Interrogatory 4 as impermissibly seeking information that is protected from discovery by the attorney-client privilege, the work product doctrine, and other applicable privileges, immunities, and protections.  Interrogatory 4 constitutes an impermissible attempt to displace Amazon's privilege claims regarding the May 6, 2021 meeting ("May 6 meeting").

Subject to and without waiver of Amazon's objections, Amazon provides the following non-privileged information responsive to your January 3 inquiry:

Factual Basis for Privilege Claim:  You have asked Amazon to identify the factual bases for Amazon's claim that the May 6 meeting is privileged.  Amazon's Objections and the Declaration of Mark England ("England Decl.") [Dkt. No. 52] identify the bases for Amazon's privilege claim over this meeting.  For avoidance of doubt, Amazon reasserts that, following Amazon's receipt of the FTC's March 16, 2021 CID, the Prime team revised the purpose of the May 6 meeting to focus primarily on legal considerations involving the Prime sign-up and cancellation processes.  England Decl. ¶ 13.  Amazon attorneys Mark England and Praju Tuladhar substantially revised the materials prepared for that meeting to incorporate their legal advice.  *Id.*  Amazon attorneys introduced and ran the May 6 meeting.  The statements made and questions asked during the May 6 meeting flow directly from the privileged document prepared by Amazon's counsel and their advice.

Meeting Attendees:  You have asked Amazon to identify the steps it took to identify the attendees at the May 6 meeting.  The FTC is not entitled to a detailed recounting of steps that Amazon and its counsel took in responding to this ROG, and regardless, such steps are protected as attorney work product.  Nonetheless, and without waiving any applicable privilege, Amazon states that it reviewed calendar invitations for the May 6 meeting and sought additional attendance information from Amazon employees.  Given the passage of time since this meeting, these steps were reasonable to ascertain who likely attended.

Decisions Reached:  You have asked Amazon to provide additional details on decisions reached during the May 6 meeting.  Regarding the cancellation flow, generally speaking, the attendees reached consensus that actions should be taken with respect to Amazon's cancellation process. As Amazon stated in its Objections and above, the inputs and discussions from that meeting are privileged.  To the extent the FTC is asking Amazon to identify specific changes to the sign-up and cancellation flows that were discussed at the May 6 meeting, those discussions

**COVINGTON**

Evan Mendelson
January 18, 2024
Page 6

are privileged.  However, the ultimate changes to the flows were publicly available on the Prime site.  Amazon directs the FTC to AMZN_00037191 - AMZN_00037204 and Amazon's May 25, 2023 letter to the FTC, showing certain Prime flows in 2022 and 2023.

<u>Meeting Notes</u>:  A version of the notes from the May 6 meeting circulated by Ms. Baidwan have been properly logged on Amazon's investigations-phase privilege log as AMZ_LOG03_000000924.  Should Amazon identify additional versions of the notes from the May 6 meeting, it will address them as appropriate at that time.  As you know, the parties have not yet agreed on a privilege log protocol in the litigation.  We are awaiting the FTC's proposal in response to Amazon's request, which was most recently included in Amazon's correspondence of January 3.  (The FTC's January 10 letter continues to defer the privilege log issue.)

***

Please do not hesitate to contact me if you have any questions.  As always, we remain willing to meet-and-confer on these and other matters.

Sincerely,

*s/ Laura Flahive Wu*

Laura Kim
John Graubert
John Hall
Laura Flahive Wu
Stephen Anthony
Megan Rodgers

# EXHIBIT 6

# COVINGTON

BEIJING  BRUSSELS  DUBAI  FRANKFURT  JOHANNESBURG
LONDON  LOS ANGELES  NEW YORK  PALO ALTO
SAN FRANCISCO  SEOUL  SHANGHAI  WASHINGTON

Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC  20001-4956
T  +1 202 662 6000

February 7, 2023

**CONFIDENTIAL TREATMENT REQUESTED**

Jonathan Cohen
Division of Enforcement
Federal Trade Commission
600 Pennsylvania Ave., N.W., Suite CC-9528
Washington, D.C.  20580

Re:    FTC Matter No. 2123050

Dear Mr. Cohen:

Amazon.com, Inc. ("Amazon") writes to raise issues related to the inadvertent production of certain privileged documents.

## I.    **Documents clawed back during January 20, 2023 corporate IH.**

First, Amazon writes to follow up regarding the inadvertent production of privileged documents that came to Amazon's attention during the January 20, 2023 investigational hearing of Amazon's corporate designee, Lisa Leung.  As a preliminary matter, we confirm our oral request that pursuant to 16 C.F.R. § 2.11(d)(1)(i)-(ii), the FTC return, delete, or destroy the document bearing the following beginning Bates numbers, which was inadvertently produced in unrelated FTC investigations:

Amazon-FTC-CID_08427042 / AMZN-MGM-2R-003149387

In addition to the above document, which was the subject of Amazon's objection during Ms. Leung's investigational hearing, Amazon has identified five versions of the same (or a substantially similar) document that were inadvertently produced either in the instant investigation or in unrelated FTC investigations.  We therefore request that pursuant to 16 C.F.R. § 2.11(d)(1)(i)-(ii), the FTC return, delete, or destroy the documents bearing the following beginning Bates numbers:

Amazon-FTC-CID_09910965
AMZN_00045917
AMZN_00112860
AMZN_00137986
AMZN_00138070

The six above-referenced documents, which include a meeting memorandum, are protected by Amazon's attorney-client privilege and work product doctrine, and were inadvertently produced in this investigation or in response to separate investigations conducted by the FTC's Bureau of Competition.  Amazon has learned additional facts that confirm the

Jonathan Cohen
February 7, 2023
Page 2

privileged nature of these documents.  Under the FTC's rules of practice, staff is required to "promptly return or destroy" this material. 16 C.F.R. § 2.11(d)(1)(ii).

## II.   <u>Other clawbacks.</u>

Second, in addition to the documents listed above, Amazon has identified additional privileged documents that were inadvertently produced in this investigation and unrelated FTC investigations.  Accordingly, pursuant to 16 C.F.R. § 2.11(d)(1)(i)-(ii), Amazon requests that the FTC return, delete, or destroy the documents bearing the following beginning Bates numbers:

> AMZN_00045918
> AMZN_00160403
> AMZN_00067288
> AMZN_00126489
> AMZN_00117727
> AMZN_00138192
> AMZN_00140183
> AMZN_00140201
> AMZN_00143228
> AMZN_00154689
> AMZN_00026293
> AMZN_00026294
> AMZN_00137982
> AMZN_00137994
> AMZN_00138019
> AMZN_00138020
> AMZN_00138045
> AMZN_00141381
> AMZN_00118757
> Amazon-FTC-CID_09818779
> Amazon-FTC-CID_09389533
> Amazon-FTC-CID_09454557
> Amazon-FTC-CID_09839753
> Amazon-FTC-CID_09839018
> Amazon-FTC-CID_08784437
> Amazon-FTC-CID_09246136
> Amazon-FTC-CID_09840614
> Amazon-FTC-CID_09795274
> Amazon-FTC-CID_09795246
> Amazon-FTC-CID_09407590
> Amazon-FTC-CID_09839042
> Amazon-FTC-CID_08784408
> Amazon-FTC-CID_09929606
> Amazon-FTC-CID_04911366
> Amazon-FTC-CID_04910919
> Amazon-FTC-CID_04910933

Jonathan Cohen
February 7, 2023
Page 3

      Amazon-FTC-CID_04910969
      Amazon-FTC-CID_04910492
      Amazon-FTC-CID_04910496
      Amazon-FTC-CID_04910521

The above-referenced documents are protected by Amazon's attorney-client privilege and work product doctrine, and were inadvertently produced in this investigation or in response to separate investigations conducted by the FTC's Bureau of Competition.

***

Please promptly confirm, in writing, that you have deleted or destroyed the above-referenced documents and all existing data associated with these documents, including any copies of the documents and associated data contained on the original production media provided to you, as well as any copies that may exist on internal databases or networks, including all associated metadata, extracted text, or native files, or any materials derived from or incorporating the protected information.  Please also confirm you have destroyed or deleted any reference to these documents from other documents, including your work product.  After the clawed-back documents have been appropriately updated in your document review platform, we ask that you please ensure that your document review platform is re-indexed, if necessary, to account for any changes in searchable text.

Pursuant to 16 C.F.R. § 2.11(a)(1), Amazon will follow up shortly with a supplemental log of the withheld information based on a claim of protected status, as that term is defined in § 2.7(a)(4).  Amazon determined that the items identified on this forthcoming log are entitled to protected status according to governing legal principles. Amazon will also provide replacement copies of the documents that omit the protected information, along with the appropriate metadata.

We continue to have serious concerns about staff's conduct with respect to categories of documents over which Amazon has claimed privilege.  As we have previously requested, we ask that if staff identifies any other documents that are (or appear to be) privileged, that staff immediately stop review of those documents and alert us to this fact.

Sincerely,


/s/

Laura Kim
John Graubert
John Hall
Laura Flahive Wu
Stephen Anthony
Megan Rodgers

# EXHIBIT 7

# COVINGTON

BEIJING   BOSTON   BRUSSELS   DUBAI   FRANKFURT
JOHANNESBURG   LONDON   LOS ANGELES   NEW YORK
PALO ALTO   SAN FRANCISCO   SEOUL   SHANGHAI   WASHINGTON

Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
T  +1 202 662 6000

**Via Electronic Mail**                                             December 5, 2023

Evan Mendelson
Division of Enforcement
Federal Trade Commission
600 Pennsylvania Ave., N.W., Suite CC-9528
Washington, D.C. 20580

>          Re:  FTC v. Amazon.com, Inc., No. 2:23-cv-0932-JHC (W.D.
>                Wash.) Follow-up to November 17 Letter

Counsel:

          Amazon.com, Inc. ("Amazon") writes in follow-up to its November 17, 2023 letter and
the FTC's November 20, 2023 correspondence.  Specifically, this letter identifies (1) documents
that Amazon is downgrading, and (2) additional outstanding issues that Amazon raised in its
November 17 letter to which the FTC has not responded.  Nothing in this letter is intended to or
should be construed to constitute a waiver of Amazon's attorney-client privilege or work product
protection asserted in its privilege logs.

## I.       Downgrading Certain Documents

          Based on the FTC's confirmation that it will not argue that Amazon's removal of
redactions from certain documents constitutes a subject matter waiver, Amazon will amend the
privilege claims and accompanying redactions for certain documents.

          The FTC has raised concerns with certain redactions that Amazon made to documents
related to or discussing the May 6, 2021 meeting.  In its November 17 letter, Amazon did not
concede the FTC's contention that Amazon had redacted non-privileged information.  *See*
Nov. 17 Ltr. § II.B.  Nonetheless, after further review, Amazon agreed to narrow its redactions to
certain documents[1] if the FTC agreed that it would not argue that Amazon's production of
previously redacted information acted as a subject matter waiver of other communications made
at or related to the May 6 meeting.  *See id.*  Amazon asked for the FTC's agreement to this
condition.  On November 20, the FTC responded via email stating that "we confirm that we will
not argue that Amazon's removal of redactions from IC-7, IC-8, IC-10, IC-11, IC-12, IC-14, IC-16,

---

[1] The specific documents cited for this purpose in the November 17 letter were:  IC-7, IC-8,
IC-10, IC-11, IC-12, IC-14, IC-16, IC-23, IC-24, IC-25, IC-26, IC-27, IC-28, IC-29, IC-32, IC-33,
IC-38, IC-41, IC-42, IC-43, IC-44, IC-45, IC-47, and IC-49.

**COVINGTON**

Evan Mendelson
December 5, 2023
Page 2

IC-23, IC-24, IC-25, IC-26, IC-27, IC-28, IC-32, IC-33, IC-38, IC-41, IC-42, IC-43, IC-44, IC-45, IC-47, and IC-49 operates as a subject matter waiver of other communications made at or related to the May 6 Meeting." *See* Nov. 20 Email from E. Mendelson to Amazon. The FTC requested production of the "less-redacted versions of these documents as soon as possible[.]" *Id.* In addition, the FTC stated that it "agreed to the same conditions" related to subject matter waiver for IC-13, IC-15, and IC-29.[2] *Id.*

Subject to the FTC's agreement on subject matter waiver, and without waiving any applicable privilege, Amazon will reproduce less-redacted versions of the following documents:

- IC-7 (AMZN_00064610)

- IC-8 (AMZN_00067288)

- IC-10 (AMZN_00117727)

- IC-11 (AMZN_00118740)

- IC-12 (AMZN_00118757)

- IC-13 (AMZN_00120240)

- IC-14 (AMZN_00126489)

- IC-15 (AMZN_00126647)

- IC-16 (AMZN_00137982)

- IC-23 (AMZN_00138192)

- IC-24 (AMZN_00140183)

- IC-25 (AMZN_00140201)

- IC-26 (AMZN_00141381)

- IC-27 (AMZN_00143228)

- IC-28 (AMZN_00154689)

---

[2] IC-29 was specifically listed in Amazon's November 17 letter as one of the documents for which it was agreeing to review its privilege redactions. Regarding IC-13 and IC-15, Amazon is reproducing those documents with updated redactions consistent with the updated redactions to IC-7.

**COVINGTON**

Evan Mendelson
December 5, 2023
Page 3

- IC-29 (AMZN_00160403)

- IC-32 (Amazon-FTC-CID_08784408)

- IC-33 (Amazon-FTC-CID_08784437)

- IC-38 (Amazon-FTC-CID_09407590)

- IC-41 (Amazon-FTC-CID_09795246)

- IC-42 (Amazon-FTC-CID_09795274)

- IC-43 (Amazon-FTC-CID_09818779)

- IC-44 (Amazon-FTC-CID_09839018)

- IC-45 (Amazon-FTC-CID_09839042)

- IC-47 (Amazon-FTC-CID_09840614)

- IC-49 (Amazon-FTC-CID_09929606)

As a courtesy and to expedite matters, Amazon will post PDFs of the less-redacted documents to a Kiteworks file share site using the same Bates numbers listed above. Amazon will subsequently follow-up separately with a formal production of these documents. Amazon makes this production (both the initial PDF production and formal production) subject to all terms of the Protective Order (ECF No. 124) and Stipulated Rule 502(d) Order (ECF No. 123) entered in this matter.

The 26 documents that Amazon is downgrading represent nearly half of the 54 documents at issue in the FTC's First Set of Requests for Production to Amazon. Amazon is making these downgrades in the spirit of compromise and in the hopes that this will resolve the dispute.

## II.    Additional Outstanding Items from November 17 Letter

In addition to seeking the FTC's agreement on subject matter waiver, discussed above, Amazon's November 17 letter asked for the FTC's response on a number of additional topics:

- Whether the FTC has any concerns with the clawbacks of IC-9 and IC-30. *See* Nov. 17 Ltr. n.1.

**COVINGTON**

Evan Mendelson
December 5, 2023
Page 4

- The FTC's position regarding IC-7, IC-11, IC-12, IC-13, or IC-15, including the bases for any purported privilege waivers.[3]  *See id.* § I.B.

- The FTC's position regarding IC-1, IC-34, and IC-36, including the bases for any purported privilege waiver for IC-1, why the FTC did not raise privilege concerns about these documents in advance of investigational hearings ("IHs"), and why the FTC's assurances that a document used during an IH could later be clawed back does not apply.  *See id.* § I.C.

- The FTC's position regarding purported privilege waiver over IC-40. *See id.* § I.D.3.

- Whether the FTC has any concerns with the clawbacks of IC-37, IC-46, IC-50, IC-51, IC-52, IC-53, IC-54, and IC-55.   *See id.* § I.D.4.

- Whether the FTC has identified any deficiencies with Amazon's privilege logs or has any substantive privilege challenges *besides* those related to the July 14 memo and the outcome of legal guidance given at the May 6, 2021 meeting.  *See id.* § II.

To date, the FTC has not responded to these topics.  It is Amazon's hope that such silence indicates that there are no remaining disputes related to these documents.  However, to the extent that the FTC maintains that there are any remaining disputes related to these documents, Amazon requests that you promptly respond in writing to the items requested in the November 17 letter and reproduced above.  There will be no ripe dispute as to these documents absent your written response.

---

[3] Amazon recognizes that the FTC may need to evaluate the updated redactions to these documents before responding.

**COVINGTON**

Evan Mendelson
December 5, 2023
Page 5

*\*\**

    As always, we remain willing to meet-and-confer on these and other matters.


        Sincerely,


        Laura Kim
        John Graubert
        John Hall
        Laura Flahive Wu
        Stephen Anthony
        Megan Rodgers

# EXHIBIT 8

# COVINGTON

BEIJING  BOSTON  BRUSSELS  DUBAI  FRANKFURT
JOHANNESBURG  LONDON  LOS ANGELES  NEW YORK
PALO ALTO  SAN FRANCISCO  SEOUL  SHANGHAI  WASHINGTON

Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC  20001-4956
T  +1 202 662 6000

**Via Electronic Mail**                                    December 22, 2023

Evan Mendelson
Division of Enforcement
Federal Trade Commission
600 Pennsylvania Ave., N.W., Suite CC-9528
Washington, D.C. 20580
emendelson@ftc.gov

Re:  FTC v. Amazon.com, Inc., No. 2:23-cv-0932-JHC (W.D.
     Wash.) Production Volume 1

Counsel:

On behalf of Amazon.com, Inc. ("Amazon"), we are providing materials in connection with *FTC v. Amazon.com, Inc.*, No. 2:23-cv-0932-JHC (W.D. Wash.) ("Lawsuit") to the Federal Trade Commission ("FTC" or "Commission").  The materials are described below.

| Volume | Bates | Notes |
|--------|-------|-------|
| AMZN-PRM-FTC-VOL001 | AMZN-PRM-FTC-000000001 – AMZN-PRM-FTC-000000494 | |

This production is being made subject to the FTC's non-waiver agreement.  *See* Nov. 20, 2023 Email from E. Mendelson to Amazon.  Consistent with Amazon's representations during the Meet & Confer held on December 14, 2023, this production includes the further un-redaction of previously withheld material based on the FTC's non-waiver agreement (as well as a small number of additional redactions to harmonize redactions across Amazon productions).  Amazon will separately provide an overlay for the versions of these documents produced during the pre-Lawsuit investigation for your convenience and records.

We have produced these materials via FTP.  The materials are protected by a password, which will be shared separately via email.

***

Amazon makes this production subject to all terms of the Protective Order (ECF No. 124) and Stipulated Rule 502(d) Order (ECF No. 123) entered in this matter.

Amazon has made diligent efforts to identify and withhold or redact privileged documents as appropriate.  If this or any other submission on behalf of Amazon contains information or communications that are protected by the attorney-client privilege, the attorney

**COVINGTON**

Evan Mendelson
December 22, 2023
Page 2

work product doctrine, or any other privileges or protections, Amazon has produced those materials inadvertently.  Amazon does not waive its privileges and protections as to those materials, and requests that the Commission promptly return any such materials under the Protective Order (ECF No. 124) and Stipulated Rule 502(d) Order (ECF No. 123) entered in this Lawsuit, F.R.E. 502(b), F.R.C.P. 26(b)(5)(B), and any other applicable rules and regulations.

Both the information in this letter and the documents and other materials that Amazon is providing contain confidential information.  Amazon requests that the Commission keep this information confidential consistent with the requirements of the Protective Order entered in this Lawsuit and all other applicable statutes, regulations, and customary confidentiality policies, including applicable exemptions from disclosure under the Freedom of Information Act.  Amazon requests that all materials provided in connection with the Lawsuit be destroyed or returned to Amazon at the conclusion of the Lawsuit.

Please do not hesitate to contact me if you have any questions regarding this correspondence or the Lawsuit in general.  As always, we remain willing to meet-and-confer on these and other matters.

Sincerely,

Laura Kim
John Graubert
John Hall
Laura Flahive Wu
Stephen Anthony
Megan Rodgers

# EXHIBIT 9

**From:** Flahive Wu, Laura
**Sent:** Monday, January 22, 2024 9:52 PM
**To:** 'Mendelson, Evan' <emendelson@ftc.gov>; Joseph Aronsohn <jaronsohn@hueston.com>; Jerjian, Olivia <ojerjian@ftc.gov>; Nardini, Thomas <tnardini@ftc.gov>; Hoffman, Elena <ehoffman@ftc.gov>; Zwonik, Ryan <rzwonik@ftc.gov>; Frech, Jacob <jfrech@ftc.gov>
**Cc:** John C. Hueston <jhueston@hueston.com>; Moez M. Kaba <mkaba@hueston.com>; Joseph A. Reiter <jreiter@hueston.com>; Vicki Chou <vchou@hueston.com>; Kelly, Kevin <Kkelly@cov.com>; Kim, Laura <LKim@cov.com>; Graubert, John <jgraubert@cov.com>; Anthony, Stephen <santhony@cov.com>; Hall, John <jhall@cov.com>; Rodgers, Megan <mrodgers@cov.com>; Capuano, Marc <MCapuano@cov.com>; Payson, Kenneth <KennethPayson@dwt.com>; Howard, Jim <JimHoward@dwt.com>; SEA Docket <SEADocket@dwt.com>; Chan, Gina <GinaChan@dwt.com>; Green, Jennifer <JenniferGreen@dwt.com>; Mejia-Portillo, Johana <jmejiaportillo@ftc.gov>; Awad, Yara <yawad@ftc.gov>; MacDonald, Colin <cmacdonald@ftc.gov>; kristinachin@dwt.com
**Subject:** RE: FTC v. Amazon.com, Inc., et al., No. 2:23-cv-00932-JHC (W.D. Wash.)

Counsel,

Thank you for your time on today's meet-and-confer, and for advising that we may have agreement on sealing at least some materials.

We are following up to confirm Amazon's position regarding public filing of the documents listed below.  Attached please find versions of documents 2, 8, and 14, highlighting in blue the text that is to be sealed/redacted.  Please let us know your position on the material Amazon seeks to seal as well as your plan for filing excerpts of Amazon's privilege logs.

Due to the inadvertent production of privileged material and to harmonize privilege redactions, Amazon is clawing back document number 12 on the list below (IC-37 / Amazon-FTC-CID_09389533) and replacing it with the attached demonstrative version of the document with updated privilege redactions. We will follow up with a formal production and overlay production to correct your records.  As stated in the chart below, Amazon's position is that this updated version of the document should be sealed in its entirety.

| Document Number in FTC List | Bates Number | Amazon's Position |
|---|---|---|
| 1. | AMZN_00045916 | Amazon consents to the public filing of this document. |
| 2. | AMZN_00107862 | Amazon consents to the public filing of the attached redacted copy of this document.  Such redactions are necessary to protect highly sensitive commercial information. |
| 3. | AMZN_00022853 | Amazon does not consent to the public filing of this document.  This entire document should be sealed because it is filled with highly sensitive commercial information. |
| 4. | AMZN_00099452 | Amazon consents to the public filing of this document. |

| 5. | IC-9 (demonstrative version provided by Amazon on January 12, 2024) | Amazon consents to the public filing of the redacted version of this document that was provided to the FTC on January 12, 2024. |
|---|---|---|
| 6. | Nelson IH Ex. 10 | We understand the FTC is no longer planning to file this document. Please let us know if that is incorrect. |
| 7. | AMZN_00103138 | Amazon consents to the public filing of this document. |
| 8. | AMZN_00045704 | Amazon consents to the public filing of the attached redacted copy of this document.  Such redactions are necessary to protect personal information of Amazon survey participants. |
| 9. | AMZN_00092943 | Amazon consents to the public filing of this document. |
| 10. | AMZN_00092949 | Amazon does not consent to the public filing of this document.  This entire document should be sealed because it is filled with highly sensitive commercial information. |
| 11. | AMZN_00103325 | Amazon consents to the public filing of this document. |
| 12. | Amazon-FTC-CID_09389533 | Amazon does not consent to the public filing of this document.  This entire document should be sealed because it is filled with highly sensitive commercial information.

In addition, Amazon is clawing back the previous version of IC-37 and replacing it with the attached version. |
| 13. | AMZN-PRM-FTC-000000001 | Amazon consents to the public filing of this document. |
| 14. | AMZN-PRM-FTC-000000190 | Amazon consents to the public filing of the attached redacted copy of this document.  Such redactions are necessary to protect highly sensitive commercial information.  The document also contains privilege redactions. |
| 15. | Kalim IH Tr. pp. 193-199 | Amazon consents to the public filing of this document. |
| 16. & 19. | Nelson IH Tr. pp. 71-72, 180-182, 111 | Amazon consents to the public filing of this document. |
| 17. | Amazon privilege log entries | Amazon does not consent to the public filing of the privilege log entries. |
| 18. | AMZN_00171492 | Amazon consents to the public filing of this document. |
| 20. | List of litigation hold notices | Amazon does not consent to the public filing of this document.  This entire document should be sealed to protect the privacy of Amazon employees cited herein.

We understand that you now plan to "describe the list at a high level, by stating the number of recipients of the litigation hold on various dates, without naming any |

|  |  | specific hold notice recipients." Amazon does not object to that plan. |
|--|--|--|

We will follow up separately concerning the proposed stipulation language you have requested.

Regards,

Laura

**Laura Flahive Wu**

Covington & Burling LLP
One CityCenter, 850 Tenth Street, NW
Washington, DC 20001-4956
T +1 202 662 5982 | lflahivewu@cov.com
www.cov.com

## COVINGTON

This message is from a law firm and may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply e-mail that this message has been inadvertently transmitted to you and delete this e-mail from your system. Thank you for your cooperation.