# EXHIBIT 5

**COVINGTON**

BEIJING   BOSTON   BRUSSELS   DUBAI   FRANKFURT
JOHANNESBURG   LONDON   LOS ANGELES   NEW YORK
PALO ALTO   SAN FRANCISCO   SEOUL   SHANGHAI   WASHINGTON

Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
T +1 202 662 6000

**Via Electronic Mail**                                              January 3, 2024

Evan Mendelson
Division of Enforcement
Federal Trade Commission
600 Pennsylvania Ave., N.W., Suite CC-9528
Washington, D.C. 20580
emendelson@ftc.gov

      Re:    *FTC v. Amazon.com, Inc.*, No. 2:23-cv-0932-JHC (W.D. Wash.)

Counsel:

      We write on behalf of Amazon.com, Inc. ("Amazon"), as well as Neil Lindsay, Russell Grandinetti, and Jamil Ghani (together, the "Individuals" and, with Amazon, "Defendants"), in response to your letters dated December 6, 2023, December 22, 2023, and January 2, 2024, and in follow-up to the parties' December 14, 2023, meet and confer to address issues raised by the FTC regarding Amazon's discovery responses and the FTC's deficient responses to Defendants' discovery requests.

**I.    Exchange of Custodians and Search Terms**

      Your letter reflects a stark imbalance between your view of Amazon's discovery obligations and the FTC's discovery obligations. Your one-sided letter demands that Amazon "immediately" provide its proposed custodians and search terms, yet the FTC has not provided such information of its own. In fact, your letter states the FTC will not provide information about how it will search certain key FTC offices (the Bureau of Consumer Protection, individual Commissioner offices, and Bureau of Economics) until "mid-January" or later. FTC Dec. 22 Letter at 6.

      The FTC's explanation of how it will search the Enforcement Division is also incomplete and does not satisfy the FTC's discovery obligations. While you claim you will review "all potentially responsive documents," you propose only reviewing documents that certain Enforcement Division attorneys received. FTC Dec. 6 Letter at 3. That is inadequate for the reasons discussed during our meet and confer, which you ignored in your December 22 letter and again in your January 2 letter. For one thing, it is implausible that the FTC's non-lead attorneys "forwarded" "all responsive" communications to the "lead attorney," or that those attorneys "maintained Outlook archives/folders in which they placed all emails related to this investigation or litigation" over the course of nearly three years. Jan. 2 Letter at 2. These contentions overlook the inherent and inevitable human error in this purely manual process. Indeed, your letter admits that one such lead-attorney (Jonathan Cohen) did not use a consistent approach and instead "had some emails in a matter folder and other emails that were unsorted." *Id.* In addition, your protocol

would artificially restrict the FTC's collection to documents that the then-FTC staff subjectively viewed as "matter-related" rather than all emails responsive to Defendants' requests. *Id.* Your proposal would also improperly exclude what are likely to be the most unfiltered communications—those that the recipients or senders would *not* want the supervising "lead attorney" or others to see. *Id.* The FTC must conduct a search using reasonable and sufficient custodians and search terms—just as Amazon has agreed to do. If you are correct that the lead FTC attorney was copied on or forwarded every relevant email, then your burden of reviewing a de-duplicated set of such emails with additional custodians would be either minimal or non-existent.

Your January 2 disclosure of non-custodial data sources compounds these concerns and does not comply with the ESI Order. [Dkt. 129.] Specifically, your assertion that certain unidentified "Divisions and Offices with the FTC" store documents on unidentified "folders on FTC servers" is far too vague to satisfy the FTC's obligations or for Amazon to assess whether the FTC's search is reasonable. Jan. 2 Letter at 1. Please provide more information on what "folders" and "servers" the FTC has that are likely to contain discoverable ESI. Moreover, it appears that you do not intend to search for relevant information on any internal chat program (e.g., Skype, Slack). Please confirm that you will expand your search or, alternatively, that no such programs are used by the FTC.

In Amazon's letter dated January 2, 2024, Amazon provided a list of search terms, custodians, and custodial sources to the FTC. Amazon reiterates its request that the FTC provide equivalent information as soon as possible (the search term list should also identify which search terms are being used for which custodians or sources, to the extent they differ).

## II.     FTC's Requests for Production of Documents

### A.     Documents Relating Solely to Non-U.S. Flows or Consumers

During our meet and confer, in response to the FTC's argument that there is little burden to producing documents that relate solely to foreign flows, we explained that producing "all documents" that relate solely to non-U.S. flows could potentially require Amazon to search a large number of custodians and sources to identify documents related solely to non-U.S. jurisdictions, which are not the subject of the Amended Complaint. In order to avoid an undue and disproportionate burden on Amazon while addressing the FTC's request, Amazon offered to produce documents regarding foreign enrollment or cancellation flows to the extent they are located through a reasonable search of the custodial files of the custodians Amazon is already searching to respond to the FTC's requests. Amazon does not agree to identify or add custodians for the purpose of capturing even more such documents.

As such, we understand the statement in your December 22 letter to be consistent with our offered approach and we believe the parties are aligned on and have resolved this issue.

### B.     June 21, 2023 Production Cutoff Date

During our meet and confer, we discussed whether the parties would agree that, as a default rule, neither the FTC nor Amazon are required to produce documents that postdate June 21, 2023. The parties agreed that a June 21, 2023, cutoff date was generally appropriate, but that specific categories of documents that postdate June 21, 2023, might still need to be produced. Amazon agreed to put forth a proposal regarding the specific categories of documents. Amazon's approach is consistent with the offer you made in your December 6 letter. In that letter, you expressly noted that "specific documents, or categories of documents, that

post-date June 21, 2023" might need to be produced if relevant. The FTC's attempt in its December 22 letter to recast Amazon's identification of those specific categories as a "rejection" of the FTC's offer is disingenuous and incorrect.

In order to resolve this issue, and setting aside the FTC's changing positions, Amazon reiterates that it is willing to agree to a default production cutoff date of June 21, 2023, subject to the FTC producing the following specific categories of documents that postdate June 21, 2023:

- Documents regarding the FTC's ongoing Notice of Proposed Rulemaking regarding its Negative Option Rule, including, without limitation, analyses, memorandums, guidance, and planning documents; documents regarding the upcoming January 16, 2024 hearing; communications with third parties; and communications between Commissioners and FTC Staff.

These documents are of core relevance to Amazon's defenses, limited in scope, and their creation falls after the June 21, 2023 production deadline. Please let us know whether the FTC will agree to a June 21, 2023 production cutoff date, subject to the above exceptions. Consistent with the parties' prior discussions, we reserve the right to request the production of other categories of documents that post-date June 21, 2023.

### C. Prime Enrollment & Cancellation (FTC RFP Nos. 9 & 10)

These requests seek "[a]ll document relating to Prime enrollment [or] Prime cancellation." We explained to the FTC that Requests 9 and 10 are incredibly broad and vague and as written are impossible to comply with. We requested that the FTC provide additional information regarding the types of documents that the FTC is seeking with these requests, particularly any documents that the FTC believes are not captured by its other requests. The FTC agreed to provide additional information in writing about what documents it seeks.

Nevertheless, in your December 22 letter, you failed to provide *any* clarity regarding what documents you seek. Your refusal to explain your requests when we invited you to do so months ago in our initial responses, and again in recent correspondence and during the meet and confer, impedes Amazon's reasonable discovery efforts. You ask us what documents we are withholding, but refuse to provide any clarifying information on what documents you are requesting. We made this clear in our September responses, and yet you waited months to engage with us, and even now offer only that you are "amenable" to further discussions. Amazon is unable to conduct a reasonable search for documents responsive to FTC's Requests 9 and 10 as written, and the FTC has refused to provide any amendment or clarification. In light of this situation and in an effort to respond in good faith, Amazon will interpret these Requests as seeking non-privileged documents located after a reasonable search that discuss the processes ('flows') through which members enroll and/or cancel their Prime subscription.[1]

### D. Law Enforcement Comms & Documents (FTC RFP Nos. 48 & 49)

These requests seek documents relating to investigations or inquiries by any civil or criminal law enforcement or consumer protection agency. We explained that these documents

---

[1] Amazon intends to respond to Requests 9 and 10 primarily through its custodial productions.

November 17, 2023 letter, and will not be restated here. The documents at issue in Sections I, II, and III are privileged and Amazon has not waived that privilege.[3]

As for the documents described in Section IV of your December 22 letter, we trust that Amazon's December 22 updated production of the 26 documents at issue in that section of your letter resolves any remaining issues as to those documents. As stated in our December 22 production cover letter, we will provide you an overlay production for these updated documents so you can update your records from the investigation phase and ensure you are using the proper versions of the 26 documents. Please let us know if you disagree with anything in this paragraph.

### III.   Defendants' Discovery Requests

#### A.   The FTC Must Search All FTC Sources with Responsive Documents

Your December 22 letter confirmed you will now search the Bureau of Economics, in addition to the Enforcement Division, the Office of the Director of Bureau of Consumer Protection, and individual Commissioner Offices. FTC Dec. 22 Letter at 5-7. However, the FTC continues to refuse to search for and produce all responsive documents.

First, your letter suggests the FTC's search of the foregoing offices will be limited to "documents relating to the FTC's investigation or this litigation," which the FTC has narrowly interpreted to exclude categories of relevant documents it has agreed to produce, including in response to Amazon's RFP Nos. 15, 17, 18, 21, 23, 24, and 25. FTC Dec. 22 Letter at 5, 6-7. **Please confirm the FTC will search each of its offices that possess documents responsive to *any* RFP**.

Second, your December 22 letter disclosed for the first time that the FTC's Division of Financial Practices possesses responsive documents, however the FTC appears to have limited its search of that office to RFP Nos. 15, 17, 18, 21, 23, 24, and 25. FTC Dec. 22 Letter at 7. **Please confirm the Division of Financial Practices does not possess documents responsive to other RFPs. If it does, please confirm the FTC will produce them**.

Please confirm there are no other FTC offices that possess responsive documents. As you acknowledged during the December 14 meet and confer, it is the FTC's obligation to identify which of its offices, employees, and other sources contain responsive documents—not Defendants'.

Third, as we have explained previously, the FTC must expand its search to include documents held by the Office of Policy Planning ("OPP") and the Office of Public Affairs ("OPA"). You do not contest the fact that you have access to documents in these offices; rather, you state that neither office is "*likely* to have unique, responsive documents." FTC Dec. 22 Letter at 6 (emphasis added). As an initial matter, you told us during the December 14 meet and confer that the Bureau of Economics did not possess responsive documents, and your December 22 letter shows that was inaccurate. FTC Dec. 22 Letter at 6 (acknowledging a "BE economist assigned to work on this matter"). Whether you believe OPP and OPA are "likely" to have responsive documents is not a basis for your refusal to conduct a reasonable search to confirm. *See Albert v. Lab'y Corp. of Am.*, 536 F. Supp. 3d 798, 800 (W.D. Wash. 2020) ("[A] party has an obligation to

---

[3] With respect to IC-3, subject to the FTC's non-waiver agreement, *see* Nov. 20, 2023 Email from E. Mendelson to Amazon, Amazon is willing to downgrade the document and reproduce it with redactions. Please confirm that you agree that your non-waiver agreement applies to IC-3.

conduct a reasonable inquiry into the factual basis of [its] responses to discovery, and, based on that inquiry, a party responding to a Rule 34 production request is under an affirmative duty to seek that information reasonably available to it from its employees, agents, or others subject to its control.") (cleaned up); *Rhea v. Washington Dep't of Corr.*, 2010 WL 5395009, at *4 (W.D. Wash. Dec. 27, 2010) (compelling government to produce further documents based on failure to search all locations where responsive documents were stored).

Moreover, your assertion that OPP and OPA "likely" possess no responsive documents is based on your belief that both offices "did not work on this investigation or litigation." FTC Dec. 22 Letter at 6. As we have explained previously, and further below, that is not the test for relevance. Defendants' fair notice and selective enforcement defenses, and the FTC's burden of proving that Defendants had "actual knowledge" their alleged conduct violated ROSCA and the FTC Act, implicate FTC documents relating to ROSCA, dark patterns, and negative options regardless of whether the office possessing those documents worked on the investigation or litigation. It appears highly likely that both OPP and OPA possess such documents. OPP advises the FTC on "cases raising new or complex policy and legal issues" and "issues reports on cutting-edge competition and consumer protection topics,"[4] while OPA regularly communicates with the public and industry participants on these issues.[5] Moreover, OPA was involved in drafting press statements that characterized this action as a "challenge to alleged digital dark patterns," which is inconsistent with your recent assertions that the FTC has "not asserted a 'dark patterns' theory," Dkt. 126 at 44, and relevant to Defendants' fair notice defenses. *See Nw. Immigrant Rts. Project v. Sessions*, 2017 WL 3189032, at *5 (W.D. Wash. July 27, 2017) (regulation was impermissibly vague where government's interpretation was a "moving target"); Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or *defense*") (emphasis added). At the very least, the FTC must conduct an initial search to check for responsive materials at the OPP and OPA. *Lab'y Corp. of Am.*, 536 F. Supp. 3d at 800 (Fed. R. Civ. P. 24 requires "an initial, reasonable search for responsive documents [to] be conducted in the first place."). **Please confirm the FTC will do so**. If this issue is not resolved, we will raise it with the Court, including at the next informal discovery conference.

### B. The FTC Must Produce All Documents Relating to the Interpretation of ROSCA, Negative Options, and Dark Patterns

Based on your December 22 letter, we understand the FTC will expand its search for documents responsive to Amazon RFP Nos. 15, 17, 18, 21, 23, 24, and 25 to include documents that constitute: (1) communications between the FTC and third parties, (2) nonprivileged portions of FTC internal documents that reflect communications with third parties, and (3) the FTC's internal documents concerning a final decision as to the guidance the FTC may provide to third parties. FTC Dec. 22 Letter at 6-7. While we agree those documents must be produced, there are several issues with the FTC's proposal.

First, your letter does not define "third party." To be clear, "third parties" must include, without limitation, other governmental agencies, including without limitation the Consumer Financial Protection Bureau, state-based consumer protection agencies, and the Department of Justice. **Please confirm your agreement**.

---

[4] https://www.ftc.gov/about-ftc/bureaus-offices/office-policy-planning

[5] https://www.ftc.gov/about-ftc/bureaus-offices/office-public-affairs

Second, your letter appears to limit the FTC's production to documents concerning the "Negative Option Policy Statement, Negative Option Rulemaking, and Dark Patterns Workshop and Report." FTC Dec. 22 Letter at 7. None of those terms are defined in your letter. The FTC must produce documents concerning all guidance, publications, policy statements, workshops, and rulemaking efforts relating to ROSCA, negative options, and dark patterns, including, without limitation, documents concerning the FTC's Proposed Negative Option Rule published at 88 Federal Register 24716 and all related efforts and events, including the upcoming January 16, 2024 hearing to discuss that rule; the FTC's "Enforcement Policy Statement Regarding Negative Option Marketing" dated November 4, 2021; the FTC's September 2022 report titled, "Bringing Dark Patterns to Light"; the FTC's April 29, 2021 "Dark Patterns Workshop"; the FTC's 2009 report, titled "Negative Options – A Report by the staff of the FTC's Division of Enforcement" and the January 25, 2007 workshop discussed in the report; the FTC's Rule Concerning Use of Prenotification Negative Option Plans and the FTC's review of that rule discussed at 79 Fed. Reg. 44271; ROSCA; and the FTC's Telemarketing Sales Rule.[6] **Please confirm the FTC will do so**.

Moreover, Amazon requested documents beyond those relating to the foregoing guidance documents, workshops, reports, and rulemaking efforts. For example, our narrowed proposal for Amazon RFP No. 18 seeks "All Documents since January 1, 2013 in which You have described, discussed, or referred to what does or does not constitute a 'simple' cancellation method and all drafts thereof." Defs' Dec. 12 Letter at 6. Similarly, we are willing to further narrow the portion of RFP 15 that requests "any Communications Relating to the interpretation of Dark Patterns, Negative Options, or ROSCA and its requirements" to "All Documents since January 1, 2013 in which You have described, discussed, or referred to what does or does not constitute a 'clear and conspicuous' disclosure or 'express informed consent' and all drafts thereof." **Please confirm the FTC will produce documents responsive to these requests that fall within the categories of communications with third parties and FTC documents you have agreed to produce so far**. Otherwise, we intend to raise this issue with the Court at the next informal discovery conference.

Third, your letter states the FTC will use a starting date of January 1, 2015. Given other statements in your letter, we believe this is a typo and you intended to reflect a starting date of January 1, 2013 for RFP Nos. 15, 17, 18, 21, 23, 24, and 25 as we had proposed and discussed during the meet and confer. **Please confirm**. If not, there is no basis for a January 1, 2015 start date. ROSCA was enacted in 2010 and the FTC engaged in related rulemaking efforts long before January 1, 2015. Please confirm.

To be clear, our proposed January 1, 2013 start date does not apply to RFP 26, which expressly seeks documents concerning the FTC's 2009 report, titled "Negative Options – A Report by the staff of the FTC's Division of Enforcement," and January 25, 2007 workshop discussed in the report. **Please confirm the FTC will produce documents responsive to RFP 26**, or we will raise this issue with the Court at the next informal discovery conference.

Fourth, you have refused to produce any FTC communications and documents that do not involve or relate to guidance provided to third parties. There is no basis for that limitation. The FTC is the agency charged with enforcing ROSCA and is purporting to do so here. How the FTC has interpreted and enforced ROSCA in the past, and the FTC's understanding of dark patterns and negative options, are plainly relevant to whether Defendants had fair notice of the FTC's

---

[6] Contrary to your letter, the FTC's Telemarketing Sales Rule is relevant. ROSCA borrows the definition of "negative option feature" from the Telemarketing Sales Rule. 15 U.S.C. § 8403.

current interpretation of ROSCA, whether the FTC can satisfy its burden of proving Defendants had actual knowledge that their alleged acts violated ROSCA, and whether the FTC is selectively enforcing ROSCA. These are central issues in the case. Moreover, the FTC has already admitted publicly that ROSCA "does not provide clarity," "lacks specificity," and leaves businesses "without guidance" on how to comply with its provisions. Dkt. 87-1 at 24718, 24723, 24727–28. It is highly likely that the FTC's internal and unfiltered documents will contain further admissions that ROSCA is ambiguous; show the FTC itself does not have a clear, objective, and cognizable definition of what ROSCA requires or dark patterns; show the FTC's litigation positions in this case are unprecedented; and show the FTC has previously taken positions that demonstrate Amazon's compliance with the law. Amazon is entitled to this discovery. *See, e.g.*, *United States v. Naegele*, 468 F. Supp. 2d 150, 154 (D.D.C. 2007) (ordering government to produce its "internal guidance" that may show ambiguity in or compliance with legal obligations); *Poehling v. UnitedHealth Grp., Inc.*, 2018 WL 8459926, at *11 (C.D. Cal. Dec. 14, 2018) ("[D]ocuments showing that CMS's interpretations of 'applicable statutes, regulations, guidance documents and contractual requirements' mirrored [defendant's] own would 'bear directly on the objective reasonableness of [defendant's] interpretations'").[7] **Please confirm the FTC will expand its search to include all responsive documents**. If this issue is not resolved, we will raise it with the Court at the next informal discovery conference.

### C.    Other Requests

####    1.    *Lindsay RFP Nos. 4-6*

You assert that documents about the FTC's individual liability practices are not relevant because "the FTC need not prove that the individual defendants knew that they could be held liable." FTC Dec. 22 Letter at 7. This is simply incorrect. The FTC was required to provide fair notice of the groups against whom it may bring an enforcement action. *See United States v. Moss*, 872 F.3d 304, 314-15 (5th Cir. 2017) (where government had never enforced statute against "against contractors and subcontractors," court would not "countenance[] action" that

---

[7] *Tax Analysts v. I.R.S.*, 117 F.3d 607, 608-09, 617-18 (D.C. Cir. 1997) (requiring production of "Field Service Advice Memoranda … issued by the [agency's] Office of Chief Counsel" which, while "not formally binding" on agency staff," were used to "ensur[e] that field personnel apply the law correctly and uniformly"; rejecting government's "deliberative process privilege claim" because they "reflect[ed] the law the government is actually applying in its dealings with the … public," even if "eventually rejected by a field official"); *Washington v. United States Dep't of Homeland Sec.*, 2020 WL 4667543, at *7-8 (E.D. Wash. Apr. 17, 2020) (compelling disclosure of information about the "beliefs" of high-ranking officials that may have "influenced the rulemaking process" since such documents were relevant to plaintiffs' "constitutional claim" that agency acted with improper purpose and given the "broad standard" for civil discovery*); Ford Motor Co. v. United States*, 2008 WL 4483375, at *2-4 (Fed. Cl. Oct. 2, 2008) ("documents relating to [the agency's] construction of the statutory term at issue" that "contradict[ed]" the agency's application in that action were "relevant and potentially necessary to the just resolution of [the] action"; rejecting the agency's arguments that such interpretation was "purely a legal determination" and that "unpublished documents … authored by individual IRS employees" were not relevant); *Falcone v. Internal Revenue Serv.*, 479 F. Supp. 985, 986, 989 (E.D. Mich. 1979) (requiring disclosure of agency "General Counsel Memorandum" because, while "not … disclosed to the public," such memos "state[d] agency interpretations" and were consulted by the agency "to determine whether [a] proposed ruling [was] consistent with the interpretations and policies adopted by the agency").

broke "with a half century of agency policy").  Likewise, for the reasons stated above in section III.B, the FTC must search for and produce all relevant internal documents, not merely "public statements."  FTC Dec. 22 Letter at 7.  Nor is it sufficient for the FTC to limit its production to statements made by "current commissioners"—a limitation that would exclude statements from multiple Commissioners who served during the period alleged in the complaint.  *Id.*  Indeed, statements from <u>current</u> Commissioners—two of whom began serving after 2021—cannot satisfy the FTC's obligation to provide *prior* notice to the Individuals. Your contention that the FTC has no "reasonable way of doing so" is implausible and unsubstantiated. The FTC can collect custodial and non-custodial documents for these requests just like the others. **Please confirm the FTC will expand its search to include all responsive documents**. If this issue is not resolved, we will raise it with the Court at the next informal discovery conference.

2. Lindsay RFP No. 7

Thank you for confirming that you agree to produce complaints responsive to RFP No 7 dating back to November 2020. All rights are reserved.

3. *Lindsay/Grandinetti/Ghani RFP Nos. 1-3*

Thank you for confirming the FTC is not aware of documents in its possession relating to the Individuals that are unrelated to the investigation or litigation. To the extent the FTC learns of such documents, please produce them.

4. *Interrogatories*

Thank you for confirming that you will supplement your responses to Amazon's Interrogatories Nos. 1-2 in the manner Amazon proposed in its December 12 letter. Defs.' Dec. 12 Letter at 7-8. We also look forward to receiving your supplemental responses to Amazon's Interrogatories Nos. 7-8 by January 19, 2024.

Regarding your response to Lindsay Interrogatory No. 6, for the sake of compromise, we will accept your proposal to provide a list of cases in which the FTC has sued individuals since November 2020 and responsive public statements and speeches by FTC commissioners since January 1, 2015.

## IV. Privilege Logs

For over two months, we have requested information from the FTC on how it intends to comply with its burden of demonstrating that an applicable privilege applies given its refusal to produce a document-by-document level privilege log. *See* Defs' Oct. 30 letter at 3. The FTC still has not provided any information and now states it will not do so until sometime in January. Please do so immediately.

While we look forward to reviewing the FTC's proposal, we have serious doubts that a categorical log is appropriate for all privilege assertions in this case. The FTC has threatened to broadly invoke the deliberative process privilege. But that privilege has a "narrow scope"—it protects only deliberative and pre-decisional documents. *Poehling*, 2018 WL 8459926, at *13. It does not apply to post-decisional records, non-deliberative documents, or factual information. *See*, *e.g.*, *Gen. Elec. Co. v. Johnson*, 2006 WL 2616187, at *5 (D.D.C. Sept. 12, 2006) ("Documents that do not provide advice to a superior, suggest the disposition of a case, discuss the relative pros and cons of a specific approach, or constitute "one step of an established adjudicatory process," but rather constitute "straightforward explanations" of an agency's pre-

existing policy or regulations against the backdrop of specific or hypothetical factual situations, are not deliberative."); *Poehling*, 2018 WL 8459926, at *14 ("[P]ost-decisional records fall outside the deliberative process privilege if they follow a final decision and are designed to explain a decision already made."). Moreover, the privilege is qualified, *General Elec. Co. v Johnson*, 2006 WL 2616187, at *8. ("[T]he deliberative process privilege . . . is still only a qualified protection . . . and it yields in the face of a party's overriding need.").

We remain concerned that a categorical log will not provide sufficient information on the FTC's assertions of privilege, including the deliberative process privilege. During our meet and confer, we proposed a compromise whereby the parties would provide a document-level log for any documents for which a party claims a qualified privilege and a categorical log for other documents. We reserve the right to pursue that approach, including by raising this issue with the Court.

In addition, while you describe your categorical approach as "reciprocal," it is not. You appear to propose that the FTC use a categorical log for all withheld documents, however you suggest that Amazon use a categorical log only for "documents in the possession of Amazon's outside counsel." FTC's Dec. 22 letter at 8. The FTC's rationale for using a categorical log—that FTC attorneys are counsel for the FTC and FTC staff are working at their direction—apply equally to Amazon's in-house counsel and staff.

* * *

We look forward to receiving responses to the requests and proposals we include in this letter. We are available to meet and confer if you believe that would be helpful. We reserve the right to raise any of the issues discussed above with the Court if they are not resolved before the next informal discovery conference.

Sincerely,


*/s/ Laura Flahive Wu*  
Laura Flahive Wu  
Covington & Burling LLP

*/s/ Joseph A. Reiter*  
Joseph A. Reiter  
Hueston Hennigan LLP

*Counsel to Defendants*