# EXHIBIT 6



United States of America
FEDERAL TRADE COMMISSION
600 PENNSYLVANIA AVE. NW, CC-9528
WASHINGTON, DC 20580

Division of Enforcement
Bureau of Consumer Protection

**Evan Mendelson**
**(202) 326-3320; emendelson@ftc.gov**

**Max Nardini**
**(202) 326-2812; tnardini@ftc.gov**

**Olivia Jerjian**
**(202) 326-2749; ojerjian@ftc.gov**

January 10, 2024

## VIA ELECTRONIC MAIL

Laura Flahive Wu (lflahivewu@cov.com)
John D. Graubert (jgraubert@cov.com)
Laura M. Kim (lkim@cov.com)
Stephen P. Anthony (santhony@cov.com)
John E. Hall (jhall@cov.com)
Megan L. Rodgers (mrodgers@cov.com)
Marc Capuano (mcapuano@cov.com)
Kevin Kelly (kkelly@cov.com)
Covington & Burling LLP
One CityCenter, 850 Tenth Street NW
Washington, DC 20001-4956

John C. Hueston (jhueston@hueston.com)
Moez M. Kaba (mkaba@hueston.com)
Joseph A. Reiter (jreiter@hueston.com)
Hueston Hennigan LLP
523 West 6th St., Suite 400
Los Angeles, CA 90014

Kenneth E. Payson (kenpayson@dwt.com)
James Howard (jimhoward@dwt.com)
Davis Wright Tremaine LLP
920 5th Avenue, Suite 3300
Seattle, WA 98104

RE:  *FTC v. Amazon.com, Inc., et al.*, No. 2:23-cv-0932-JHC (W.D. Wash.)

Counsel:

We write in response to the portion of your January 3 letter that addressed the FTC's responses to Defendants' discovery requests.

**I.  Documents Relating to the FTC's Investigation or This Litigation (Amazon RFP Nos. 1-2, 4, 6-14, 28-30; Ghani RFP Nos. 1-3; Grandinetti RFP Nos. 1-3; Lindsay RFP Nos. 1-3)**

    **A.  Search of Enforcement Division Records**

We will not alter the method by which we are searching Enforcement Division emails.

Your email describes it as "implausible" that non-lead attorneys[1] forwarded all responsive communications to the lead attorney. We are not merely guessing that this occurred; we intentionally followed this procedure precisely so that we could comply with our preservation responsibilities and review and produce documents efficiently. You also express skepticism, without any basis, that the lead attorneys on the matter accurately filed responsive emails. That unfounded skepticism is insufficient to require a more resource-intensive email search and review process. In any event, your concerns regarding email filing also have little practical import. As we disclosed in our December 22 letter, we are conducting email searches on Jonathan Cohen's emails. Given that Mr. Cohen was the lead attorney during the most active period of the investigation (roughly April 2022-April 2023), the vast majority of responsive Enforcement Division emails will be located through the search terms we previously disclosed.

You also asked about the use of internal chat programs. FTC employees have access to the Microsoft Teams and Cisco Jabber chat features. The Enforcement Division does not use these features for matter-related communications, but we will double-check that Enforcement Division attorneys have no responsive chats. (Our understanding is that these chat services are also rarely, if ever, used by others at the agency for any substantive purpose, but we will confirm that understanding for all custodians and RFPs.)

Your confusion about our disclosure of noncustodial data sources seems to simply be a matter of terminology. The "servers" referenced in our January 2 letter are simply the FTC's on-premises data storage. Material saved in Windows Explorer folders (the "folders" referenced in our letter) are housed within those servers. Colloquially, these folders are referred to as the "K Drive." The Enforcement Division Amazon investigation/litigation team has a K Drive folder, and we are reviewing its contents for responsiveness and privilege. That folder almost exclusively contains attorney work product, but we already have produced hundreds of Prime enrollment and cancellation flow screenshots captured by our investigator that are also stored in the folder.

B.   **Search of Commissioner and Bureau Records**

As we stated in our December 22 letter, we are still in the process of determining how we will search Commissioner offices and the Office of the Director of the Bureau of Consumer Protection (the "Bureau"). As soon as we complete that process, we will provide you with the details. We anticipate that the following individuals will be document custodians, but this list is not yet final: Chair Lina Khan, Commissioner Rebecca Kelly Slaughter, Commissioner Alvaro Bedoya, former Commissioner Christine Wilson, Kevin Moriarty (attorney advisor to Chair Khan), Austin King (attorney advisor to Commissioner Slaughter), Aaron Rieke (chief of staff and attorney advisor to Chain Khan), Robin Spector (attorney advisor to former Commissioner Wilson), Samuel Levine (Director of the Bureau of Consumer Protection), Audrey Austin (Acting Deputy Director of the Bureau of Consumer Protection), and Thomas Harris (Counsel to Director of the Bureau of Consumer Protection). To the extent those offices also used noncustodial K Drive folders, we will also review the documents found therein for responsiveness and privilege.

---

[1] Until in or around April 2022, there was only one attorney assigned to this matter.

2

As to the Bureau of Economics ("BE"), we did not say on our December 14 call that BE did no work on this matter. In fact, while your letter treats as scandalous our December 22 reference to a BE economist who worked on this matter, we disclosed "Will Violette, Economist" in our initial disclosures five months ago. Although Mr. Violette is unlikely to have any unique, nonprivileged materials, we will search his emails and other materials, in addition to any BE noncustodial folders that may contain responsive materials.

### C.     Other FTC Offices and Divisions

We will not search the Office of Public Affairs ("OPA") or Office of Policy Planning ("OPP") for documents responsive to the requests identified above. Your letter treats our knowledge that these offices did not work on this matter as a speculative "belief." But we (the Enforcement Division) have run the Amazon investigation and litigation from the start, and therefore know who worked and did not work on this matter. As we stated previously, OPA did not do any work beyond the press release. OPP did not work on this matter. We also are not only relying on our own recollection; we have confirmed these facts with OPA and OPP, and our review of our own emails to date reveals no other OPA or OPP involvement. None of the cases you cite create an obligation for a party to search for responsive documents in places where there is no reason to believe that any will be found.

You also asked about the Division of Financial Practices ("DFP"). DFP does not possess documents responsive to the RFPs identified above because DFP did not work on the Amazon investigation or litigation. DFP's involvement in matters covered by your RFPs is limited to its management of the Dark Patterns Workshop and Report.

Finally, you asked us to "confirm there are no other FTC offices that possess responsive documents." Both for these RFPs and those discussed below, we, of course, cannot definitively say that there are absolutely no documents responsive to the RFPs in other offices. (Similarly, we assume that Amazon will not agree to include as custodians everyone—*i.e.*, all 500-plus employees—who worked on the Prime Enrollment and Cancellation flows even though they almost certainly all possess responsive documents.) We have, however, identified the primary people and offices likely to have responsive information, consistent with our obligation "to conduct a reasonable inquiry into the factual basis" of our discovery responses and to "seek information reasonably available" to us. *Albert v. Lab. Corp. of Am.*, 536 F. Supp. 3d 798, 801 (W.D. Wash. 2020).

## II.    Documents Regarding Negative Options and Dark Patterns (Amazon RFP Nos. 15, 17, 18, 21, 23, 24, 25, 26)

Your letter accurately states that we have agreed to search for documents that are responsive to the requests identified above (excluding RFP No. 26, as discussed below) and that fall into the following categories: (1) communications between the FTC and third parties, (2) nonprivileged portions of FTC internal documents that reflect communications with third parties, or (3) the FTC's internal documents concerning a final decision as to the guidance the FTC may provide to third parties. Your letter also requests clarification on the scope of that search. First,

3

we agree that we will treat other governmental agencies as third parties.[2]  Second, we agree that the references in our December 22 letter to the Negative Option Policy Statement, Negative Option Rulemaking, and Dark Patterns Workshop and Report (collectively, the "Guidance Documents") refer to the FTC's Proposed Negative Option Rule published at 88 Fed. Reg. 24716, the FTC's "Enforcement Policy Statement Regarding Negative Option Marketing" dated November 4, 2021; the FTC's September 2022 report titled, "Bringing Dark Patterns to Light"; and the FTC's April 29, 2021 "Dark Patterns Workshop."  For these subjects, we will search for responsive documents from January 1, 2013 through June 21, 2023.  Our prior offer to search from January 1, 2015 through June 21, 2023 was *not* a typo, but we will nevertheless agree to go back to 2013 (long before the date cutoff that Amazon is using for its own productions).

      We only agreed to search for these materials just before the holidays and therefore have not finalized the process by which we will do so.  We anticipate searching within the Enforcement Division (which has managed the Negative Option Rulemaking and Policy Statement), the Division of Financial Practices (which managed the Dark Patterns Workshop and Report), and the Bureau and Commissioner offices.  At this stage, we know that the Enforcement Division and Division of Financial Practices have K Drive folders in which we will search for responsive documents.  We are in the process of identifying the individual custodians most likely to possess responsive documents.  For the Bureau and Commission, there likely will be substantial overlap with the custodians identified above.  You also asked OPP and OPA.  OPP did not work on the Guidance Documents and also is unlikely to have any third-party-related communications otherwise responsive to your RFPs.  Specifically, although you note that OPP "issues reports on cutting-edge competition and consumer protection issues," we have determined that OPP has not issued any reports relating to matters covered by your RFPs. (Commission and staff reports, including OPP reports, can be found here: https://www.ftc.gov/policy/reports/commission-staff-reports.)  Outside of public press releases (and any related responses to media queries), OPA also did no work on the Guidance Documents.  Contrary to your letter, OPA communicates with the media, not industry participants.

      We will not search for documents concerning the 2009 report titled, "Negative Options – A Report by the staff of the FTC's Division of Enforcement" and the January 25, 2007 workshop discussed in the report, which are covered by your RFP 26.  Not only do these materials long predate the conduct covered by the Complaint, but they also predate ROSCA itself and therefore have no plausible connection to Defendants' ROSCA defenses.  Additionally, we will not search for any documents postdating June 21, 2023, including documents relating to the ongoing Negative Option Rulemaking.  Aside from your request creating a one-sided obligation on the FTC to search for post-Complaint documents, any such documents are very unlikely to bear on Defendants' defenses, which appear to rely on the state of the law and the FTC's enforcement efforts *as of the filing of the complaint.*  Beyond that, the FTC has not even alleged any violations of the Negative Option Rule here.  In any event, much of the rulemaking materials, including the upcoming workshop itself and any rulemaking comments, are publicly available.

---

[2] Any responsive documents involving communications with governmental agencies might be privileged or contain attorney work product.

4

We also will not expand our search in an attempt to locate responsive documents unrelated to the Guidance Documents. Specifically, in your letter, you ask us to locate other documents in which FTC employees have discussed the meaning of "simple" cancellation mechanism and of "clear and conspicuous" disclosures and "express informed consent." Other than discussions in the context of particular cases (which would be unduly burdensome to locate and in connection with which the FTC's positions are publicly known), any such third-party-related discussions almost certainly would have occurred in the context of the Guidance Documents—*i.e.*, in the documents we are already reviewing. If, in the course of our review, we locate nonprivileged, third-party-related documents responsive to your RFPs that somehow are not related to the Guidance Documents, we will produce them.

Additionally, we will not search for, produce, or log documents that relate solely to the FTC's internal discussions (as opposed to third-party communications) concerning the Guidance Documents. You justify your request for us to do so by saying that "[h]ow the FTC has interpreted and enforced ROSCA in the past" is relevant to Defendants' fair notice, selective enforcement, and knowledge defenses. Even assuming the potential viability of those defenses, the FTC's interpretations and enforcement actions are public. What you actually seem to be seeking are the internal deliberations among individual FTC employees or Commissioners about how the FTC will enforce ROSCA. But those deliberations are irrelevant to your contention that the FTC's "litigation positions" here are "unprecedented" and that the FTC lacks a clear definition of what ROSCA requires. In other words, if your arguments regarding notice to the public are viable, the FTC's prior litigation or other public positions are what matters, not internal conversations among FTC employees. Beyond that, the documents you seek are the type of documents that are at the core of the deliberative process privilege. *See, e.g.*, *United States Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 267 (2021) ("To protect agencies from being forced to operate in a fishbowl, the deliberative process privilege shields from disclosure documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and polices are formulated." (cleaned up)).

Much of the caselaw you cite focuses on more formal (but nonpublic) internal agency guidance documents. Your letter, however, ignores that we already agreed, in response to RFP 16, to search for these same types of documents: "internal guidelines or policies for enforcing or prosecuting the use of Dark Patterns or violations of ROSCA or any rule concerning Negative Options." Our objection is to going beyond that search by combing through internal emails and day-to-correspondence that is almost certain to be both irrelevant to any claim or defense and privileged.

### III.   Documents Relating to Individual Liability (Lindsay RFP Nos. 4-7)

Your claim that the FTC was required "to provide fair notice of the groups against whom it may bring an enforcement action" is incorrect as a matter of law and insufficient to justify your document demands. Through ROSCA and the FTC Act, Congress provided fair notice of individual liability. Defendants, in fact, appear not to dispute that individuals can be held liable for corporate ROSCA and FTC Act violations; Defendants merely challenge their own liability and the availability of civil penalties. In any event, the FTC has enforced the FTC Act against individuals for decades and ROSCA against individuals as far back as 2014.

Nevertheless, the FTC already has agreed to search for public statements by current commissioners on issues relating to individual liability. For the same reasons as described above, we will not search for internal deliberative communications. We separately have already stated in our RFP responses that we are not aware of any "guidelines" or "policies" regarding individual liability. We will not search for statements by former commissioners based on our previously stated objections and because the best way for us to do so is equally available to Amazon. In particular, any such statements are available on the FTC's website: https://www.ftc.gov/news-events/news/speeches. That link contains speeches going back to 1914. Another page on the FTC's website includes any statements on individual liability made by commissioners in the context of specific cases, again going back to 1914: https://www.ftc.gov/news-events/news/commission-actions.

### IV.     Privilege Logs

As we have already stated, we will follow-up separately with a proposal regrading privilege logs, once we are farther along in our document review and production process. At this point in our review, it is hard for us to assess the burden of logging various categories of documents. We only raised the issue in our RFP responses to ensure that we were being upfront about our intentions.

To address one statement in your letter, however, we will *not* be proposing a categorical log for all withheld documents. Again, our primary concern is the tremendous burden of logging thousands of emails primarily among the attorneys and paralegals that handled the FTC's investigation, and others working at their direction, almost all of which will be both attorney-client privileged and protected attorney work product. This particular burden is also one-sided, as Amazon apparently will not even be searching (much less reviewing and then logging or producing) its own in-house and outside attorneys' files for all documents relating to the FTC's investigation, notwithstanding that there are undoubtedly responsive documents (*i.e.*, documents relating to Prime enrollment and cancellation) in those files.

                                              Sincerely,

                                              /s/ Evan M. Mendelson
                                              Counsel to the Federal Trade Commission