The Honorable John H. Chun

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

FEDERAL TRADE COMMISSION,

    Plaintiff,

  v.

AMAZON.COM, INC., *et al*.

    Defendants.

Case No. 2:23-cv-0932-JHC

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF FTC COMMUNICATIONS AND INTERNAL DOCUMENTS**

NOTED ON MOTION CALENDAR:
March 1, 2024

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO COMPEL
Case No. 2:23-cv-0932-JHC

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

BACKGROUND ........................................................................................................................... 1

ARGUMENT ................................................................................................................................. 3

I.    Defendants' Document Requests Do Not Seek Relevant, Discoverable Information ........ 3

    A.    The FTC's Internal Discussions of ROSCA, Negative Options, and "Dark Patterns" Unrelated to This Litigation Are Not Relevant and Are Privileged ........ 3

        1.    The Materials Defendants Seek Are Irrelevant. .......................................... 4

        2.    The Materials Defendants Seek Are Protected by the Attorney-Client and Deliberative Process Privileges ...................................................................... 9

    B.    Post-Complaint Documents Relating to Negative Option Rulemaking Are Not Relevant. ........................................................................................................... 11

    C.    The 2009 Negative Options Report and 2007 Workshop Are Not Relevant. ....... 12

    D.    FTC Office of Public Affairs Documents Are Not Relevant ................................ 13

CONCLUSION ............................................................................................................................ 14

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO COMPEL
Case No. 2:23-cv-0932-JHC - i

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320

# TABLE OF AUTHORITIES

**Cases**

*Advocs. For the W. v. DOJ*, 331 F. Supp. 3d 1150 (D. Idaho 2018) ............................................. 9

*Berryhill v. Bonneville Power Admin.*, 509 F. Supp. 3d 1288 (D. Or. 2020) ........................... 9, 10

*Carter v. U.S. Dep't of Com.*, 307 F.3d 1084 (9th Cir. 2002) ..................................................... 10

*CFPB v. Navient Corp.*, 2018 WL 2088760 (M.D. Pa. May 4, 2018) ....................................... 4, 8

*City of Chicago v. DoorDash, Inc.*, 2023 WL 3654259 (N.D. Ill. May 25, 2023) ......................... 9

*Dragasits v. Rucker*, 2021 WL 4710854 (S.D. Cal. Oct. 8, 2021) ............................................ 3, 5

*FDIC v. Appleton*, 2012 WL 12891381 (C.D. Cal. Oct. 15, 2012) ............................................... 6

*FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015) ........................................ 4, 6, 7

*Fox News Network, LLC v. U.S. Dep't of Treasury*, 739 F. Supp. 2d 515 (S.D.N.Y. 2010) ........ 10

*Parneros v. Barnes & Noble, Inc.*, 332 F.R.D. 482 (S.D.N.Y. 2019) .......................................... 14

*Sea Shepherd Legal v. Nat'l Oceanic & Atmospheric Admin.*, 516 F. Supp. 3d 1217 (W.D. Wash. 2021) ............................................................................................................................................ 10

*SEC v. BankAtlantic Bancorp, Inc.*, 285 F.R.D. 661 (S.D. Fla. 2012) ...................................... 4, 8

*SEC v. Kovzan*, 2012 WL 4819011 (D. Kan. Oct. 10, 2012) ........................................................ 2

*SEC v. Kovzan*, 2013 WL 647300 (D. Kan. Feb. 21, 2013) ......................................................... 7

*SEC v. Lent*, 2006 WL 8434734 (N.D. Cal. Jan. 12, 2006) ..................................................... 6, 8

*United States v. Berkeley Heartlab, Inc.*, 2017 WL 2633500 (D.S.C. June 19, 2017) .................. 9

*United States v. Farley*, 11 F.3d 1385 (7th Cir. 1993) ............................................................. 4, 7

*United States ex rel. Poehling v. UnitedHealth Group, Inc.*, 2018 WL 8459926 (C.D. Cal. Dec. 14, 2018) ....................................................................................................................................... 6

*United States ex rel. Schroeder v. Medtronic, Inc.*, 2023 WL 4864983 (D. Kan. July 31, 2023) 14

*United States v. Wisconsin Bell*, *Inc.*, 2020 WL 13048895 (E.D. Wis. Oct. 29, 2020) ........ 4, 8, 12

**Rules**

Fed. R. Civ. P. 26(b)(1) .................................................................................................................. 3

PLAINTIFF'S OPPOSITION TO  
DEFENDANTS' MOTION TO COMPEL  
Case No. 2:23-cv-0932-JHC - ii

Federal Trade Commission  
600 Pennsylvania Avenue NW  
Washington, DC 20580  
(202) 326-3320

**Other Authorities**

Reply Mem. of Law in Supp. of Stephen M. Kovzan's Objections to Magistrate Judge Sebelius' July 31, 2012 Order Denying in Part Mr. Kovzan's Mot. to Compel, *SEC v. Kovzan*, Case No. 2:11-cv-2017 (D. Kan.), Dkt. #111 .................................................................................... 11

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO COMPEL
Case No. 2:23-cv-0932-JHC - iii

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320

# INTRODUCTION

Defendants move to compel the production of four categories of documents having nothing to do with this case. Critically, the FTC has already agreed to search for and produce a significant number of documents in response to Defendants' overly broad requests, including non-privileged documents relating to this action as well as the preceding FTC investigation, and numerous other categories of documents. Nonetheless, Defendants insist they are entitled to more.

Primarily, Defendants seek the FTC's "internal discussions" and other documents relating to the Restore Online Shoppers' Confidence Act ("ROSCA"), negative options, and "dark patterns" entirely unrelated to the FTC's investigation or this litigation. However, the FTC's internal materials are irrelevant to whether *Defendants* violated the law, or did so knowingly. Moreover, FTC internal discussions and deliberations are protected by the attorney-client and deliberative process privileges. The other documents sought by Defendants are also irrelevant for the reasons described below.

# BACKGROUND

Notwithstanding Defendants' overly broad and irrelevant document requests, the FTC has agreed to produce a significant number of documents, including all non-privileged documents relating to the FTC's investigation; final versions of FTC guidance, publications, policy statements, and workshops related to dark patterns, negative options, or ROSCA; and any non-privileged FTC "internal guidelines or policies for enforcing or prosecuting the use of Dark Patterns or violations of ROSCA or any rule concerning Negative Options." Dkt. #147-2 at 5.[1]

---

[1] Docket pincites reference the documents' internal pagination.

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO COMPEL
Case No. 2:23-cv-0932-JHC - 1

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320

Defendants continued, however, to press for irrelevant documents, including internal and external FTC documents and communications broadly relating to ROSCA, negative options, and "dark patterns"—even if unrelated to the FTC's investigation of Amazon (the "Subject Requests").  Therefore, in the interest of compromise and moving discovery forward, the FTC further agreed to produce non-privileged documents responsive to the Subject Requests analogous to those ordered to be produced in *SEC v. Kovzan*, 2012 WL 4819011 (D. Kan. Oct. 10, 2012), a primary discovery decision on which Defendants previously relied but now disclaim.  *See id.* at *2, 5; Dkt. #146 at 6 (faulting the FTC for relying on *Kovzan*).  In particular, the FTC agreed to produce, among other documents, the following materials relating to ROSCA, negative options, and "dark patterns": non-privileged communications between the FTC and third parties and non-privileged FTC internal documents concerning any final decision as to what guidance FTC staff may provide third parties.  Dkt. #147-4 at 6-7.  The FTC made clear, however, it would not produce *internal* FTC discussions regarding ROSCA, negative options, and "dark patterns," which are both irrelevant and privileged.  Dkt. #147-6 at 5.[2]

Apparently unsatisfied with the ample discovery already received, Defendants now seek production of: (1) "internal FTC documents" relating to ROSCA, negative options, and "dark patterns"; (2) documents post-dating June 21, 2023 relating to the FTC's ongoing Negative Option Rulemaking; (3) documents relating to the FTC's (pre-ROSCA) 2009 report titled

---

[2] Defendants misrepresent this exchange, claiming "the FTC acknowledged that documents reflecting its correspondence with *third parties* were relevant." *See* Dkt. #146 at 3.  That never happened.  The FTC clearly stated the exact opposite: that the materials were *irrelevant*, but the FTC would produce them with the hope that it would resolve the parties' dispute.  *See* Dkt. #147-4 at 6 ("[W]e disagree with your arguments that any documents sought by the requests identified below are in any way relevant to this case.  Nonetheless, for the sake of reaching an agreement, we will produce certain responsive documents . . . .").

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO COMPEL
Case No. 2:23-cv-0932-JHC - 2

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320

"Negative Options – A Report by the staff of the FTC's Division of Enforcement" and related workshop; and (4) documents in the custody of the FTC's Office of Public Affairs. *See* Dkt. #146 at 2.

## ARGUMENT

Parties may obtain discovery regarding nonprivileged matters "relevant to any party's claim or defense and proportional to the needs of the case," considering (among other factors) "the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "[T]he party seeking to compel discovery has the burden of showing that his request satisfies the relevance requirement of Rule 26." *Dragasits v. Rucker*, 2021 WL 4710854, at *2 (S.D. Cal. Oct. 8, 2021) (citation omitted).

**I.     Defendants' Document Requests Do Not Seek Relevant, Discoverable Information.**

    **A.     The FTC's Internal Discussions of ROSCA, Negative Options, and "Dark Patterns" Unrelated to This Litigation Are Not Relevant and Are Privileged.**

Defendants move to compel production of "internal FTC documents relating to the FTC's interpretation of ROSCA, negative options, and 'dark patterns,'" including the FTC's "internal discussions" and "internal deliberations" of these topics. Dkt. #146 at 4. Although Defendants assert these materials are "fundamental to the issues in dispute," they are irrelevant to the actual issue before the Court: whether Defendants violated the FTC Act and ROSCA or, as relevant to civil penalties, whether they did so knowingly. Moreover, in seeking "internal discussions" and "internal deliberations," Defendants target materials squarely protected under the attorney-client and deliberative process privileges.

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO COMPEL
Case No. 2:23-cv-0932-JHC - 3

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320

### 1. The Materials Defendants Seek Are Irrelevant.

Courts have repeatedly held the government's internal discussions are irrelevant to questions of statutory interpretation or "fair notice." *See, e.g.*, *United States v. Farley*, 11 F.3d 1385, 1390 (7th Cir. 1993) ("[S]uppositions of FTC staff members expressed in internal memoranda as to requirements of the Act are not pertinent to this task" of statutory interpretation); *id.* at 1391 (holding documents "for intra-agency use and not general distribution . . . reveal nothing about the adequacy of the public notice provided by the regulations"); *United States v. Wisconsin Bell, Inc.*, 2020 WL 13048895, at *4 (E.D. Wis. Oct. 29, 2020) ("non-public communications and reports are not" relevant to the courts' "interpretive efforts"). This is true for the straightforward reason that the Court is the sole arbiter of what the law means. *See FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236, 251 (3d Cir. 2015) ("[T]he court, not the agency, is the ultimate arbiter of the statute's meaning."). Similarly, numerous courts have acknowledged internal government documents are irrelevant to whether defendants' proffered interpretations of the law are "reasonable" or whether defendants "knowingly" violated the law. *See, e.g.*, *Wisconsin Bell, Inc.*, 2020 WL 13048895, at *2 ("Internal agency communications and internal agency interpretations of a rule cannot be relevant to whether the defendant knowingly violated the rule unless the defendant was aware of those internal communications and interpretations . . . ."); *SEC v. BankAtlantic Bancorp, Inc.*, 285 F.R.D. 661, 668 (S.D. Fla. 2012) ("[T]he SEC's internal policies and investigations of other entities have no bearing on the issue of scienter."); *see also CFPB v. Navient Corp.*, 2018 WL 2088760, at *4 (M.D. Pa. May 4, 2018) (rejecting defendant's argument that internal CFPB discussions would be "relevant because [they] bear[] on the reasonableness of Defendants actions" because such discussions are not "official agency positions").

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO COMPEL
Case No. 2:23-cv-0932-JHC - 4

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320

Even if internal government deliberative materials might be relevant in rare cases presenting unique circumstances, this is not such a case. Specifically, Defendants' relevance arguments are premised on their conclusory assertions the FTC has invented a "new legal standard" or advanced "novel statutory interpretations." *See* Dkt. #146 at 1-2. Tellingly, Defendants do not identify the purportedly new legal standards or novel interpretations.[3] Nor could they. The FTC alleges straightforward violations of clear statutes: the FTC Act and ROSCA. In fact, the parties' briefing makes clear that this case is not about statutory interpretation, but rather the application of the facts to clear law. Amazon's Motion to Dismiss, for example, argues at length why, in the company's view, the Prime enrollment and cancelation flows "clearly satisfy (if not greatly exceed) ROSCA's requirements." Dkt. #84 at 20; *see also id.* at 7 (Prime enrollment flows "objectively satisfy ROSCA's plain text"); *id.* at 16 (purporting to identify multiple "simple" ways to cancel Prime).[4] The FTC, of course, disagrees. *See* Dkt. #125 at 3-38. That factual dispute does not somehow make the FTC's internal materials relevant.

Moreover, Defendants fail to carry their burden to show these materials are relevant to any claim or defense. *See Dragasits*, 2021 WL 4710854, at *2.

*First*, Defendants claim the FTC's "internal discussions" are relevant "because they illuminate the standards alleged to have been violated." Dkt. #146 at 4-5. But as discussed, this

---

[3] Previously, Defendants argued that the FTC was attempting to ban "dark patterns," *see* Dkt. #84 at 20-21, which is false for the reasons the FTC explained in its Opposition to the Motions to Dismiss, *see* Dkt. #125 at 44-45. Defendants appear to have abandoned that argument.

[4] Defendants assert the FTC's Notice of Proposed Rulemaking ("NPRM") indicates the law is unclear, but this is contrary to their stated positions in the Motions to Dismiss, inaccurate, and irrelevant because Defendants do not identify any ambiguity relating to the conduct at issue. *See* Dkt. #125 at 43-48.

| | |
|---|---|
| PLAINTIFF'S OPPOSITION TO | Federal Trade Commission |
| DEFENDANTS' MOTION TO COMPEL | 600 Pennsylvania Avenue NW |
| Case No. 2:23-cv-0932-JHC - 5 | Washington, DC 20580 |
| | (202) 326-3320 |

is plainly incorrect: the sole arbiter of what the law means is the Court. *See Wyndham*, 799 F.3d at 251. The cases Defendants cite do not help them. For instance, Defendants cite *United States ex rel. Poehling v. UnitedHealth Group, Inc.* as "compelling production of 'any documents' showing agency's interpretations of 'applicable statutes, regulations, guidance documents and contractual requirements.'" Dkt. #146 at 5. But that decision—a False Claims Act case addressing the applicability of the deliberative process privilege—is, in fact, much narrower than Defendants contend. In *Poehling*, the government asserted the lawsuit "reduce[d] to the question of whether" defendant (a Medicare Advantage insurer) had failed to "delete unsupported diagnosis codes" before submitting claims for payment. 2018 WL 8459926, at *3 (C.D. Cal. Dec. 14, 2018). Defendants countered that the government had not actually overpaid them because of the allegedly wrongful conduct. The court primarily allowed discovery of "information concerning unsupported codes in [government] data," and other internal materials, to support defendant's defense that it was not overpaid. In doing so, the court twice referenced the case's "unique circumstances." *Id.* at *10, 16. Thus, *Poehling* is readily distinguishable from this case because Defendants, as discussed above, have not identified a disputed issue as to which government employees' non-binding discussions and interpretations of the law are necessary. In any event, *Poehling* is contrary to the well-established case law recognizing the irrelevance of internal government materials. *See supra* at 4.

Defendants' remaining cases are also inapposite because they involved requests for materials related to the specific action, which the FTC here has already agreed to produce. *See FDIC v. Appleton*, 2012 WL 12891381, at *2 (C.D. Cal. Oct. 15, 2012) ("[T]he Court finds that assessments by the FDIC and CDFI concerning the Bank's management, asset quality, and sensitivity to risk . . . are relevant."); *SEC v. Lent*, 2006 WL 8434734, at *5 (N.D. Cal. Jan. 12,

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO COMPEL
Case No. 2:23-cv-0932-JHC - 6

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320

1  2006) (addressing documents "reflecting [the government's] position on [defendants'

2  company's] securitization activities and accounts of Loans Held for Sale").

3       *Second*, Defendants assert their "fair notice" defense "will be proven at least in part

4  through internal FTC documents." Dkt. #146 at 5. However, when a "case involves ordinary

5  judicial interpretation of a civil statute," as is the case here, the "relevant question is not whether

6  [Defendants] had fair notice of the FTC's *interpretation* of the statute, but whether [Defendants]

7  had fair notice of what the *statute itself* requires." *Wyndham*, 799 F.3d at 253-54; *see also* Dkt.

8  #125 at 46. FTC staff's "interpretations" of the statutes at issues—the FTC Act and ROSCA—

9  are not relevant to whether Defendants had fair notice of these statutes. *See Farley*, 11 F.3d at

10  1391("To resolve this question [regarding the adequacy of notice], the court need look only to

11  the language of the regulation and any official, public interpretations of it.").

12       In any case, Defendants cannot plausibly claim to mount a "fair notice" defense in this

13  case because, in their Motions to Dismiss, they conceded ROSCA is a "clear statute." Dkt. #84

14  at 24; *see also* Dkt. #83 at 13 (acknowledging "ROSCA's three simple tenets").[5] Defendants'

15  caselaw does not address "fair notice" and does not hold Defendants are entitled to the FTC's

16  clearly privileged internal discussions. *See SEC v. Kovzan*, 2013 WL 647300, at *2 (D. Kan.

17  Feb. 21, 2013) (in SEC enforcement action alleging defendant failed to classify certain payments

18  to CEO as income, permitting discovery into "SEC's analogous practice of" reimbursing "high-

19  level officials" for travel).

---

[5] Even if Defendants had not conceded they had "fair notice" of ROSCA, it is plainly true. "[F]or civil statutes that regulate economic activities"—like ROSCA—"a party lacks fair notice when the relevant standard is so vague as to be no rule or standard at all." *Wyndham*, 799 F.3d at 250; *see* Dkt. #126 at 44 n.30.

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO COMPEL
Case No. 2:23-cv-0932-JHC - 7

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320

*Third*, Defendants assert *FTC* internal discussions are relevant to whether *Defendants* had "actual knowledge" of their ROSCA violations, which would support entry of a civil penalty judgment. Dkt. #146 at 5. Defendants contend they are entitled to internal "discussions about ROSCA's requirements" to show there is "more than one reasonable interpretation" of those requirements. *Id.*[6] This argument fails, however, because Defendants fail to put forth any actual alternative statutory interpretations for which they seek internal discussions. *See supra* at 5.

Additionally, internal FTC discussions, to which neither Defendants nor any members of the public were privy, have no possible bearing on Defendants' knowledge (or knowledge fairly implied) of their ROSCA violations. *See Wisconsin Bell, Inc.*, 2020 WL 13048895, at *2 ("Whether [defendant's] interpretation of the [law] was reasonable depends on the statutes, regulations, and the official, public statements regarding the rule," not on "[i]nternal and interagency communications."); *BankAtlantic Bancorp, Inc.*, 285 F.R.D. at 668; *Navient Corp.*, 2018 WL 2088760, at *4. If anything, it is the internal discussions of *Defendants and Defendants' counsel*, not FTC counsel or other employees, that would shed light on Defendants' knowledge. Notably, without conceding relevance, the FTC has already agreed to produce responsive, non-privileged *external* communications, so Defendants will already have any materials they, or anyone else, could have possibly "relied" on.

One of the two cases cited by Defendants to support their "actual knowledge" argument in fact undercuts their position because the court acknowledged undisclosed SEC "[i]nternal documents . . . would seem irrelevant to Defendants' state of mind" and that "[o]nly what was communicated to [defendants' company] would be probative." *Lent*, 2006 WL 8434734, at *4.

---

[6] The Motion to Compel includes quotation marks around the phrase "more than one reasonable interpretation," but this language does not appear in the cases cited following the sentence. *See* Dkt. #146 at 5.

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO COMPEL
Case No. 2:23-cv-0932-JHC - 8

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320

1  The court only required the SEC to produce certain internal communications because they may

2  have revealed whether the SEC made external assurances to the defendants. *Id.* Here, as

3  explained above, the FTC has already agreed to produce any such non-privileged materials

4  relating to Amazon's conduct.[7]

### 2. The Materials Defendants Seek Are Protected by the Attorney-Client and Deliberative Process Privileges.

Defendants request for FTC "internal discussions" and "internal deliberations" regarding ROSCA, negative options, and "dark patterns" also seeks to directly invade the FTC's attorney-client and deliberative process privileges. In fact, Amazon all but admits doing so is the purpose of the request. *See, e.g.*, Dkt. #146 at 5 (seeking FTC staff's—i.e., attorneys'—"interpretations" of ROSCA). The FTC cannot be required to search for materials that would squarely fall within the protection of these privileges. *See City of Chicago v. DoorDash, Inc.*, 2023 WL 3654259, at *3 (N.D. Ill. May 25, 2023) (denying motion to compel in part due to "the privileged nature of most [responsive] communications").

"The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *Berryhill v. Bonneville Power Admin.*, 509 F. Supp. 3d 1288, 1299 (D. Or. 2020) (quoting *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011)). The privilege "operates in the government context in the same manner" as for private parties. *Advocs. For the W. v. DOJ*, 331 F. Supp. 3d 1150, 1168 (D. Idaho 2018). Unsurprisingly, FTC employees involved in discussions of law are almost exclusively attorneys. Internal communications and deliberations regarding these matters would

---

[7] In Defendants' other cited case, unlike here, the defendant asserted the government had put its internal deliberations "at issue" by alleging the agency's prior "advisory opinions" put defendant on notice their conduct violated the law. *United States v. Berkeley Heartlab, Inc.*, 2017 WL 2633500, at *4, 6 (D.S.C. June 19, 2017).

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO COMPEL
Case No. 2:23-cv-0932-JHC - 9

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320

therefore be privileged.  *See Berryhill*, 509 F. Supp. 3d at 1300 (holding "intra-agency e-mail communications between BPA counsel and BPA employees" including "questions posed by attorneys" and "legal analyses" are "precisely the type of communication that is protected by the attorney-client privilege").

Furthermore, Defendants' request for the FTC's "internal deliberations" cuts to the core of the deliberative process privilege.  The deliberative process privilege "shields certain intra-agency communications from disclosure to allow agencies freely to explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny." *Berryhill*, 509 F. Supp. 3d at 1296 (D. Or. 2020) (citation omitted); *see also Carter v. U.S. Dep't of Com.*, 307 F.3d 1084, 1090 (9th Cir. 2002) ("The underlying purpose of the deliberative process privilege is to ensure that agencies are not forced to operate in a fishbowl.") (internal citation omitted).  This includes "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency or that inaccurately reflect or prematurely disclose the views of the agency." *Sea Shepherd Legal v. Nat'l Oceanic & Atmospheric Admin.*, 516 F. Supp. 3d 1217, 1233 (W.D. Wash. 2021) (citation omitted).  "Internal deliberation on a final agency rule clearly falls within the traditional scope of the deliberative process privilege." *Fox News Network, LLC v. U.S. Dep't of The Treasury*, 739 F. Supp. 2d 515, 549 (S.D.N.Y. 2010) (holding "drafts of the [agency] guidelines, as well as any communications regarding their drafting and revision, were properly withheld under the deliberative process privilege").  Thus, the very materials Defendants seek—the FTC's internal discussions regarding ROSCA, negative options, and "dark patterns"—are at the core of what the deliberative process privilege protects.

DEFENDANTS' MOTION TO COMPEL
Case No. 2:23-cv-0932-JHC - 10

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320

      Contrary to Defendants' assertion, the FTC has not "categorically refuse[d]" to search for and produce documents just because "a subset of those documents" could be privileged. *See* Dkt. #146 at 7. Rather, beyond the FTC's relevance objections (*see supra* at I.A.1.), the fact that Defendants target core privileged materials further demonstrates the inappropriateness of their requests. Indeed, although Defendants are correct that, in *Kovzan*, defendant—not the court—narrowed the request to third-party communications, *see* Dkt. #146 at 6, defendant did so expressly to avoid deliberative process concerns, *see SEC v. Kovzan*, Case No. 2:11-cv-2017 (D. Kan.), Dkt. #111 at 2 ("Mr. Kovzan voluntarily pared down his Document Requests to three narrow categories of documents that are . . . outside the scope of any plausible claim of deliberative process privilege").

      **B.**    **Post-Complaint Documents Relating to Negative Option Rulemaking Are Not Relevant.**

      Defendants also move to compel documents relating to the FTC's ongoing Negative Option Rulemaking that post-date June 21, 2023 (the date the FTC filed the Complaint). As explained above, the FTC has already agreed to produce non-privileged documents relating to third-party communications regarding the Negative Option Rulemaking (including consumer comments submitted to the FTC) dated January 1, 2013 to June 21, 2023.[8]

      Defendants yet again mischaracterize the parties' discovery negotiations. Specifically, they incorrectly assert the "FTC has never attempted to argue" that non-public materials such as "internal communications" regarding the Negative Option Rulemaking "are not relevant." Dkt. #146 at 9. To the contrary, the FTC has maintained all along that documents relating to the Negative Option Rule, including "non-public materials," are "irrelevant," particularly given the

---

[8] The parties reserved their rights to seek documents post-dating June 21, 2023, *see* Dkt. #147-4 at 3 n.1; Dkt. #147-5 at 3-4, but to date only Defendants have sought such materials.

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO COMPEL
Case No. 2:23-cv-0932-JHC - 11

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320

much wider scope of rulemaking than the allegations in this case, which are narrowly tailored to core, well-established ROSCA and FTC Act principles. Dkt. #147-2 at 9. Materials post-dating the Complaint, which could not possibly have influenced Defendants' understanding of the law at the time their violative conduct occurred, are even more attenuated. *See, e.g.*, *Wisconsin Bell, Inc.*, 2020 WL 13048895, at *2. Thus, Defendants' arguments that the Negative Option Rule materials are relevant all fail.

Ultimately, the fact the FTC is promulgating a new rule says nothing about ROSCA's existing requirements. Of course, an FTC rule and preexisting statute may address overlapping conduct. Just because an amended Negative Option Rule prohibits certain conduct does not mean it was not already prohibited under ROSCA or the FTC Act. In fact, for the reasons explained in the FTC's Opposition to Defendants' Motions to Dismiss, those statutes prohibit Defendants' conduct. *See* Dkt. #125 at 3-38.

C.      **The 2009 Negative Options Report and 2007 Workshop Are Not Relevant.**

Defendants also move to compel documents relating to the FTC's 2009 Negative Options Report and 2007 Workshop (the "Pre-ROSCA Materials"). The fact these materials predate ROSCA (a 2010 statute) and the conduct at issue in this litigation demonstrates they are irrelevant. Defendants assert the Pre-ROSCA Materials provide "background" for understanding ROSCA, emphasizing language that stands for the unremarkable proposition that the Report pre-dated ROSCA (Defendants omit the italicized language): "Following this guidance*, and years of FTC cases tackling negative option-related deception under the FTC Act and the Negative Option Rule,* Congress enacted [ROSCA]." Dkt. #147-7 at 11; *see* Dkt. #146 at 10. But this "background"—FTC materials from at least 15 years ago, before ROSCA was even enacted—is wholly irrelevant to understanding ROSCA, an act of Congress that is clear on its face. That is

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO COMPEL
Case No. 2:23-cv-0932-JHC - 12

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320

particularly true given that the 2009 Report itself is publicly available and the FTC has no objection to providing copies of the Workshop recording and transcript.

Defendants point out the FTC identified the Pre-ROSCA Materials in its response to an Amazon interrogatory—"Identify all publications, guidance, policy statements, speeches, conference[s], and rulemaking efforts relating to Dark Patterns or Negative Options"—as if doing so were somehow a concession. Dkt. #147-8 at 3-4. Tellingly, Defendants *omit* the FTC did so "[w]ithout waiving its prior objections," including that this information is "irrelevant." *Id.* at 2-3. The fact that the FTC provided some irrelevant material as a concession to move the case forward does not make similar material relevant.

### D. FTC Office of Public Affairs Documents Are Not Relevant.

Defendants also move to compel documents in the custody of the FTC's Office of Public Affairs ("OPA"), including documents relating to "press releases concerning this case." Dkt. #146 at 11. But press releases are clearly irrelevant to this litigation, and Defendants do not show otherwise. Defendants argue these documents are relevant based entirely on their futile attempt to manufacture a discrepancy between the FTC's press releases and its positions in this case. In fact, the FTC's press release accurately states the FTC challenges Amazon's use of "alleged digital dark patterns." Dkt. #147-10 at 1. The FTC in this case has reiterated, not "disclaim[ed]" (Dkt. #146 at 11-12), that statement, arguing Defendants used manipulative designs—sometimes called "dark patterns"—among other methods to violate ROSCA and the FTC Act. *See* Dkt. #125 at 45. In fact, it is Defendants who have attempted to create confusion by claiming the FTC has asserted the existence of a *per se* ban on the use of dark patterns, *see* Dkt. #84 at 20—a claim that finds no support in either the FTC's press releases or its filings.

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO COMPEL
Case No. 2:23-cv-0932-JHC - 13

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320

Even if there were any daylight between the FTC's press release and its litigation position, which of course there is not, Defendants do not explain why the press release would have any bearing on the outcome of this case.  Specifically, Defendants are wrong that OPA materials could be relevant to "Defendants' fair notice defenses."  *See* Dkt. #146 at 12.  The fact an FTC press release mentions "dark patterns" does not mean Defendants lacked fair notice of what ROSCA or the FTC Act require.  Indeed, as noted, Defendants concede ROSCA is "clear."

Additionally, neither of the cases Defendants cite stand for the proposition that these materials are relevant.  *See United States ex rel. Schroeder v. Medtronic, Inc.*, 2023 WL 4864983, at *2-3 (D. Kan. July 31, 2023) (compelling False Claims Act relator to produce communications with the media where defendant alleged "Relator disclosed to various media outlets documents relating to the case" including "deposition transcripts, confidential . . . data[,] marketing brochures" and other data) (citation omitted); *Parneros v. Barnes & Noble, Inc.*, 332 F.R.D. 482, 499 (S.D.N.Y. 2019) (ordering production of press releases withheld on the basis of the *work-product protection*, not relevance grounds).

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Compel should be denied.

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO COMPEL
Case No. 2:23-cv-0932-JHC - 14

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320

**LOCAL RULE 7(e) CERTIFICATION**

I certify this memorandum contains 4,113 words, in compliance with the Local Civil Rules.

Dated: February 26, 2024

/s/ Thomas Maxwell Nardini
EVAN MENDELSON (D.C. Bar #996765)
OLIVIA JERJIAN (D.C. Bar #1034299)
THOMAS MAXWELL NARDINI
(IL Bar #6330190)
Federal Trade Commission
600 Pennsylvania Avenue NW
Washington DC 20580
(202) 326-3320; emendelson@ftc.gov (Mendelson)
(202) 326-2749; ojerjian@ftc.gov (Jerjian)
(202) 326-2812; tnardini@ftc.gov (Nardini)

COLIN D. A. MACDONALD (WSBA # 55243)
Federal Trade Commission
915 Second Ave., Suite 2896
Seattle, WA 98174
(206) 220-4474; cmacdonald@ftc.gov (MacDonald)

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO COMPEL
Case No. 2:23-cv-0932-JHC - 15

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320