# ATTACHMENT 1

The Honorable John H. Chun

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| FEDERAL TRADE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> AMAZON.COM, INC., <br><br> Defendant. | Case No. 2:23-cv-0932-JHC <br><br> **PLAINTIFF'S THIRD SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS** |

Plaintiff Federal Trade Commission ("FTC" or the "Commission"), pursuant to Federal Rules of Civil Procedure 26 and 34, serves the following requests for production of documents ("RFPs") from Defendant Amazon.com, Inc.

Amazon's responses to these requests are due within 30 days of service. Please also produce for examination, copying, and inspection the Documents and things described below within 30 days of service, at the office of the Federal Trade Commission, 600 Pennsylvania Ave NW, Washington, DC 20580.

For purposes of these requests, the following instructions and definitions apply.

I.      **INSTRUCTIONS**

      A.      **Failure to Disclose**:  You are placed on notice that, to the extent that You fail to disclose responsive Documents (including ESI) in response to these RFPs, the FTC may move before or at trial or any other evidentiary hearing to preclude You from presenting evidence regarding or relating to this information.

      B.      **Ongoing Duty to Supplement**:  These RFPs are continuing in nature through the conclusion of this matter and require supplemental responses pursuant to Federal Rule of Civil Procedure 26(e).  Responsive Documents obtained or discovered after Your initial response and production must be produced promptly.

      C.      **Document Retention**:  Retain all documentary materials used in the preparation of responses to these RFPs.  The FTC may seek the production of additional Documents at a later time during this litigation.  Accordingly, You should have already suspended any routine procedures for Document destruction and taken other measures to prevent the destruction of Documents that are in any way relevant to this litigation during its pendency, regardless of whether You believe such Documents are protected from discovery by privilege or otherwise.

      D.      **Scope of Search**:  These RFPs require You to produce Documents in Your possession or under Your actual or constructive custody or control, including, but not limited to, Documents and information in the possession, custody, or control of Your attorneys, accountants, directors, officers, employees, and other agents and consultants, whether or not such Documents and information were received from or disseminated to any person or entity.

      E.      **Construction**:  In construing these requests, the singular shall be deemed to include the plural and vice versa, so as to make the requests inclusive rather than exclusive.  The

past tense shall be construed to include the present and future tenses and vice versa, so as to make the requests inclusive rather than exclusive.

  F. **Applicable Time Period**:  The applicable time period, unless otherwise specified, shall be from May 1, 2017, to the date of full and complete response.  This instruction shall not be read to limit Your duty to supplement Your responses pursuant to Rule 26(e).

  G. **Sharing of Information**:  The FTC often makes its files available to other civil and criminal federal, state, local, or foreign law enforcement agencies.  The Commission may make information supplied by You available to such agencies where appropriate pursuant to the Federal Trade Commission Act and 16 C.F.R. § 4.11 (c) and (j) and in compliance with any Protective Order entered by the Court.  Information You provide may be used in any federal, state, or foreign civil or criminal proceeding by the Commission or other agencies.

  H. **Privilege**:  If any document or portion of a document that would be responsive to a request below is not produced because of a claim of privilege or immunity, You shall serve upon the FTC counsel a written list that identifies each such document and the applicable claim (e.g., attorney-client privilege) and provides sufficient information for the FTC to assess the applicability of privilege or protection as required by Federal Rule of Civil Procedure 26(b)(5).  Such information includes, without limitation, (a) the name and position of each author, originator, and/or creator of the document; (b) the name and position of each addressee or recipient of the document; (c) the name and position of each other person who received or was shown the document or a copy thereof; (d) the nature of the document (e.g., a letter, a memorandum, an advertisement, hand-written notes, etc.); (e) the general subject matter of the document or portion of the document withheld; (f) the date of the document or, if the specific

creation date of the document is not known, Your best estimate of the date (i.e., month and year or, if the month is not known, the year) on which the document is believed to have been created; (g) the number of pages of the document or portion of the document withheld; (h) the specific privilege or exemption claimed for that document; and (i) an explanation of the grounds for claiming such privilege or exemption, with sufficient particularity to provide a basis for determination of the validity of the privilege or exemption claimed.  Any attachment to an allegedly privileged or immune document shall be produced unless You contend that the attachment is also privileged or immune, in which case the information specified above in this paragraph shall be separately provided for each such attachment.  If only some portion of any responsive material is privileged, all non-privileged portions of the material must be produced.

  I. **Objections**:  If there is an objection to any part of a request below, the grounds of the objection and the part to which the objection applies should be identified with specificity, and documents responsive to the remaining part(s) should be produced.

  J. **Translations:**  Where an identified document is in a language other than English, state whether an English translation of such document exists.  If an English translation exists, identify and provide both the document and the English translation.

  K. **Sensitive Personally Identifiable Information**:  If any material called for by these requests contains sensitive personally identifiable information or sensitive health information of any individual, please contact us before sending those materials to discuss ways to protect such information during production.  Contact us to discuss encrypting any electronic copies of such material with encryption software such as SecureZip and provide the encryption key in a separate communication.

For purposes of these Requests, sensitive personally identifiable information includes: an individual's Social Security number alone; or an individual's name or address or phone number in combination with one or more of the following: date of birth; Social Security number; driver's license number or other state identification number or a foreign country equivalent; passport number; financial account number; credit card number; or debit card number.  Sensitive health information includes medical records and other individually identifiable health information relating to the past, present, or future physical or mental health or conditions of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual.

## II. DEFINITIONS

A. "**And**," as well as "**or**," shall be construed both conjunctively and disjunctively, as necessary, in order to bring within the scope of any Request any Document that otherwise might be construed to be outside the scope of the Request.

B. "**Any**" shall be construed to include "**all**," and "**all**" shall be construed to include "**any**."

C. "**Cancellation Procedure**" and "**Cancellation Process**" means the online process, flow, or experience (including the "Iliad" flow and the "Project Café" flow) through which a consumer may temporarily or permanently stop recurring charges from being placed on the consumer's credit card, debit card, bank account, or other financial account, including all immediately preceding steps that form part of that online process, flow, or experience (such as elements that could influence the consumer's behavior during, or understanding of, the process, flow, or experience.)

D. "**Diverted Cancel**" means a consumer: (a) who was enrolled in Amazon Prime (b) for whom Amazon has any reason to believe intended to cancel their enrollment through (in whole or in part) a Cancellation Procedure (including any consumer to commence a Cancellation Procedure, either on the consumer's own initiative or at Your direction); and (c) who did not terminate their enrollment during the Cancellation Procedure.

E. "**Document**" means the complete original, all drafts, and any non-identical copy, whether different from the original because of notations on the copy, different metadata, or otherwise, of any item covered by Federal Rule of Civil Procedure 34(a)(1)(A), including ESI.

F. "**Each**" shall be construed to include "**every**," and "**every**" shall be construed to include "**each**."

G. "**Electronically Stored Information**" or "**ESI**" means the complete original and any non-identical copy (whether different from the original because of notations, different metadata, or otherwise), regardless of origin or location, of any information created, manipulated, communicated, stored, or utilized in digital form, requiring the use of computer hardware or software. This includes, but is not limited to, electronic mail, instant messaging (including WhatsApp), videoconferencing, other electronic correspondence (whether active, archived, or in a deleted items folder), word processing files, spreadsheets, databases, and video and sound recordings, whether stored on: cards; magnetic or electronic tapes; disks; computer hard drives, network shares or servers, or other drives; cloud-based platforms; cell phones, PDAs, computer tablets, or other mobile devices; or other storage media. "ESI" also includes such technical assistance or instructions as will enable FTC counsel to convert ESI into a reasonably usable form.

H.     **"Enrollment Process"** means the online process, flow, or experience through which a consumer accepts an offer or arrangement to receive a product or service, whether through silence, failure to take affirmative action to reject such offer or arrangement, or otherwise, including all immediately preceding or immediately subsequent steps that form part of that online process, flow, or experience (such as any elements that could influence the consumer's behavior during, or understanding of, the process, flow, or experience).

I.     **"Include"** and **"including"** mean "including without limitation," or "including but not limited to," to avoid excluding any Document that might otherwise fall within the scope of any Request.

J.     **"Negative Option Program"** means an offer or agreement to sell or provide any goods or services, a provision under which the consumer's silence or failure to take affirmative action to reject goods or services or to cancel the agreement is interpreted by the seller as acceptance of the offer.  Amazon's Negative Option Programs include Amazon Prime, Amazon Music, Amazon Video, Audible, Kindle Unlimited, and Subscribe & Save.

K.     **"Nonconsensual Enrollee"** or **"Nonconsensual Enrollment"** mean a consumer: (a) who was enrolled in Amazon Prime; (b) who You have any reason to believe was enrolled without the consumer knowing or realizing they had been enrolled; and (c) who You have no reason to believe was enrolled through identity theft or as a result of any other fraud by a third party.  Nonconsensual Enrollment includes "mistaken" enrollment and "accidental" enrollment.

L.     **"Product"** means products, goods, and services, and includes online memberships, subscriptions, and enrollments.

M.  "**Referring to**" or "**relating to**" means discussing, describing, reflecting, containing, analyzing, studying, reporting, commenting, evidencing, constituting, setting forth, considering, recommending, concerning, or pertaining to, in whole or in part.

N.  "**You**" and "**Your**" mean Amazon.com, Inc. and its wholly or partially owned subsidiaries, unincorporated divisions, joint ventures, operations under assumed names, and affiliates, and all current and former directors, officers, members, employees, agents, consultants, and other persons working for or on behalf of the foregoing, individually, collectively, or in any combination.

## III.  REQUESTS FOR PRODUCTION

55.  For every Amazon Prime member who enrolled in Prime on or after May 1, 2017, Documents or data sufficient to show:

   a.  the member's name, mailing address, email address, and telephone number;

   b.  the date(s) the person became a member;

   c.  for any "free trial" or "trial" offer accepted by the member at enrollment, the date the offer was accepted, and the date the trial period ended;

   d.  whether the member enrolled through a free trial, paid trial, "hard offer," or other enrollment offer;

   e.  the Enrollment Process or channel through which the member enrolled in Prime;[1]

   f.  the length of the member's trial period, if any;

   g.  the date and amount of all membership charges paid by, or billed to, the member, including any amount paid at the time of enrollment;

---

[1] Examples of Enrollment Processes or channels include UPDP (Mobile), UPDP (Desktop), SPC (Mobile), SPC (Desktop), SOSP (Mobile), SOSP (Desktop), other "Checkout" channels, First Time User Experience, /Prime (or "slashprime"), other "Non-Checkout" channels, Prime Video, and other "Digital" channels. *See, e.g.*, AMZN_00091287 (Table 1, listing example enrollment channels).

    h.  the dates and amounts of any refunds (including chargebacks) paid to the member and relating to a Prime membership charge;

    i.  the dates and amount of any customer service "concessions"[2] paid by You to the member and the reason for the concession (e.g., a refund of a member's bank overdraft fee resulting from a Prime membership charge);

    j.  the frequency with which the member's Prime membership automatically renewed (e.g., monthly or annually);

    k.  the date and "SICs" or "reason codes"[3] associated with all customer service contacts initiated by the member;

    l.  the member's Prime benefit usage by date and type of benefit used;[4]

    m.  the dates on which and number of times the Prime member visited "Prime Central";[5]

    n.  the dates on which and number of times the Prime member visited Amazon.com the Amazon "mShop" App, or Kindle App after enrolling in Prime;[6]

    o.  whether the member opened a Prime "welcome" email and whether the member clicked on a link within the "welcome" email;

    p.  each date on which the Prime member either entered the online Prime Cancellation Process or contacted customer service to request cancellation (even if the member did not complete cancellation at that time) and the duration of these interactions;

---

[2] "Concession" shall have the same meaning as in AMZN_00058595 at -600 (lines 155-156).
[3] "Reason code" shall have the same meaning as in AMZN_00080322 (line 10), and "SIC" shall have the same meaning as in AMZN_00080322 (line 29).
[4] Benefits types include Prime-eligible shipping and Prime Video streaming. *See, e.g.*, AMZN_00091287 at -289 (referencing analysis of different types of benefit usage).
[5] Prime Central has the same meaning as in AMZN_00091287 at -289.
[6] *See* AMZN_00091287, at -289 (analyzing visits to "Amazon.com, Mshop app, Kindle App," while excluding "[Prime Video] and other apps."

q. if applicable, the dates on which the Prime member cancelled their Prime membership (or turned Prime auto-renew off) and the date on which the membership terminated;[7]

r. if applicable, the means by which the member cancelled their Prime membership (i.e., online or by phone) and the duration of the cancellation interaction;

s. if applicable, the reason the Prime member's membership was terminated (e.g., member's voluntary cancellation as opposed to failure to pay or provide billing information);

t. whether the Prime member received a survey asking for the member's reason for cancellation; and

u. the member's reason for requesting cancellation (whether provided in a cancellation survey, to customer service, or in any other manner).

56. For every Amazon Prime member who cancelled, contacted customer service and expressed the intent to cancel, or entered the online Prime Cancellation Process on or after May 1, 2017, Documents or data sufficient to show:

a. the member's name, mailing address, email address, and telephone number;

b. the date(s) the person became a member;

c. the dates and amounts of all membership charges paid by, or billed to, the member, on or after May 1, 2017;

d. the dates and amounts of any refunds (including chargebacks) paid to the person and relating to a Prime membership charge on or after May 1, 2017;

e. the dates and amount of any customer service "concessions" paid by You and the reason for the concession (e.g., a refund of a member's bank overdraft fee resulting from a Prime membership charge);

---

[7] The termination and cancellation dates might be different where, for example, the member chose to end their membership at the end of the billing cycle (i.e., at a future date), rather than immediately upon cancellation.

f. the date and "SICs" or "reason codes" associated with all customer service contacts initiated by the member;

g. each date on which the member either entered the online Prime Cancellation Process or contacted customer service to request cancellation (even if the member did not complete cancellation at that time) and the duration spent in the Cancellation Process or contacting customer service;

h. each date on which an Amazon customer service representative directed the member to the online Prime Cancellation Process;

i. for each visit by the member to the online Prime Cancellation Process, the point at which the Prime member exited the flow without cancelling (e.g., the "Benefits Information" page, "Membership Options" page, or "Final Decision" page referenced in Your April 22, 2021 response to the FTC's March 16, 2021 Civil Investigative Demand) and the amount of time they were on each page of the flow;

j. for each time that the member contacted customer service to request cancellation of their membership, but did not cancel, the manner in which the call was resolved;

k. for each visit by the member to the online Prime Cancellation Process, the action, if any, by the member that terminated the Prime Cancellation Process (e.g., clicking a "Keep My Benefits "button");

l. if applicable, the date on which the Prime member cancelled their Prime membership (or turned auto-renew off) and the date on which the membership terminated;

m. if applicable, the means by which the member cancelled their Prime membership (i.e., online or by phone);

n.  for Prime members who cancelled their Prime memberships online, the date and time at which they accessed the Amazon.com homepage (or opened any Amazon App they used to cancel) at the start of the visit that included their cancellation, and the date and time at which they completed the Cancellation Process;

o.  whether the Prime member received a survey asking for the member's reason for cancellation; and

p.  the member's reason for requesting cancellation (whether provided in a cancellation survey, to customer service, or in any other manner).

57. Any data—including data relating to Prime enrollment, cancellation, or usage—that You will rely upon on this litigation or that supports, validates, or refutes any of Your arguments.

58. All Documents relating to any analysis or testing You have done regarding Prime members' ability to locate the online Cancellation Process.

59. All Documents relating to the following Weblab studies[8]: Prime_252596, Prime_255432, Prime_222408, Prime_CTA_Redesign_135644, Prime_146575, Prime_153956, Prime_179734; the "tests in the US to improve message clarity in the UPDP checkout interstitial," "further treatments on UPDP in 2018," and "[t]wo other Prime experiments," all referenced in AMZN_00127588 at -590-91; and the "clarity experiments in 2020" referenced in Amazon-FTC-CID_08426875 at -883.  Such Documents include, for each Weblab, images of the "control" and "treatment" user experiences or flows; all "Igraphs" associated with each study (as that term is used in Amazon-FTC-CID_01506206 at -221); emails describing each Weblab's results or design (including "Launch" and "Winner" emails sent to core-ww-prime-test-opt@amazon.com); and all Documents available at each study's "LabNotes Link," "SIM Link," "Weblab Link," and "Campaign Analyzer

---

[8] A "Weblab" or "Weblab study" is a "content experiment" (as described on pages 2-4 of Your June 21, 2021 response to the FTC's March 16, 2021 Civil Investigative Demand) conducted using Your "Weblab" tool.

Link" (as those terms are used in Exhibit A to Your August 6, 2021 response to the FTC's March 16, 2021 Civil Investigative Demand).

60. For each participant in each Weblab identified in Request 59, Documents or data sufficient to show:

   a. the participant's name, mailing address, email address, and telephone number;

   b. the Weblab number or description and the treatment (i.e., Control, Treatment 1, Treatment 2, etc.) in which the participant participated;

   c. the date(s) the participant was shown the Weblab Control or Treatment user flow;

   d. whether the participant enrolled in Prime and, if so, when;

   e. for any "free trial" or "trial" offer accepted by the member at enrollment, the date the offer was accepted, and the date the trial period ended;

   f. whether the participant enrolled through a free trial, paid trial, "hard offer," or other enrollment offer;

   g. the Enrollment Process or channel through which the participant enrolled in Prime;

   h. the length of the participant's trial period, if any;

   i. the date and amount of all membership charges paid by, or billed to, the participant, including any amount paid at the time of enrollment;

   j. the dates and amounts of any refunds (including chargebacks) paid to the participant and relating to a Prime membership charge;

   k. the dates and amount of any customer service "concessions" paid by You to the participant and the reason for the concession (e.g., a refund of a member's bank overdraft fee resulting from a Prime membership charge);

   l. the frequency with which the participant's Prime membership automatically renewed (e.g., monthly or annually);

Link" (as those terms are used in Exhibit A to Your August 6, 2021 response to the FTC's March 16, 2021 Civil Investigative Demand).

60. For each participant in each Weblab identified in Request 59, Documents or data sufficient to show:

   a. the participant's name, mailing address, email address, and telephone number;

   b. the Weblab number or description and the treatment (i.e., Control, Treatment 1, Treatment 2, etc.) in which the participant participated;

   c. the date(s) the participant was shown the Weblab Control or Treatment user flow;

   d. whether the participant enrolled in Prime and, if so, when;

   e. for any "free trial" or "trial" offer accepted by the member at enrollment, the date the offer was accepted, and the date the trial period ended;

   f. whether the participant enrolled through a free trial, paid trial, "hard offer," or other enrollment offer;

   g. the Enrollment Process or channel through which the participant enrolled in Prime;

   h. the length of the participant's trial period, if any;

   i. the date and amount of all membership charges paid by, or billed to, the participant, including any amount paid at the time of enrollment;

   j. the dates and amounts of any refunds (including chargebacks) paid to the participant and relating to a Prime membership charge;

   k. the dates and amount of any customer service "concessions" paid by You to the participant and the reason for the concession (e.g., a refund of a member's bank overdraft fee resulting from a Prime membership charge);

   l. the frequency with which the participant's Prime membership automatically renewed (e.g., monthly or annually);

m. the date and "SICs" or "reason codes" associated with all customer service contacts initiated by the participant;

n. the participant's Prime benefit usage by date and type of benefit used;

o. the dates on which and number of times the participant visited "Prime Central";

p. the dates on which and number of times the participant visited Amazon.com, the Amazon "mShop" App, or Kindle App after enrolling in Prime;

q. whether the participant opened an Amazon Prime "welcome" email and whether the participant clicked on a link within the "welcome" email;

r. each date on which the participant either entered the online Prime Cancellation Process or contacted customer service to request cancellation (even if the member did not complete cancellation at that time) and the duration of these interactions;

s. if applicable, the dates on which the participant cancelled their Prime membership (or turned Prime auto-renew off) and the date on which the membership terminated;

t. if applicable, the means by which the participant cancelled their Prime membership (i.e., online or by phone) and the duration of the cancellation interaction;

u. if applicable, the reason the participant's Prime membership was terminated (e.g., member's voluntary cancellation as opposed to failure to pay or provide billing information);

v. whether the participant received a survey asking for the member's reason for cancellation; and

w. the participant's reason for requesting cancellation (whether provided in a cancellation survey, to customer service, or in any other manner).

61. For any Weblab relating to the Prime Enrollment Process or Prime Cancellation Process, all emails sent to core-ww-prime-test-opt@amazon.com or partner-ww-prime-test-

62. opt@amazon.com relating to those Weblabs (including all "Launch," "Winner," and "Results" emails).

62. All Prime Content Experimentation and Optimization (CE&O) "Content Experiment Newsletters," "Weekly Content Testing Updates," and "Monthly Content Testing Updates." *See, e.g.*, AMZN_00003981; AMZN_00031590; AMZN_00042416.

63. All Documents relating to the meta-analysis described in AMZN_00080322 (lines 2-5) and the "UPDP weblab meta-analysis" referenced in AMZN_00100524 at -532, including the "table" referenced on the same page and the "excel files" referenced at -531.

64. All Documents relating to the "customer-centric treatments" launched in or around the fourth quarter of 2017, including all Documents relating to the "detailed analysis" of those changes, the "learnings" from those changes, and any Weblabs relating to those changes. *See* AMZN_00096144 (lines 49-52).

65. All Documents relating to the "further deep dive into the data to analyze the results" of the "7 potentially clearer treatments on UPDP [tested] [in 2018]." *See* AMZN_00096144 (lines 38-49).

66. The "Tracker of 2020 clarity experiments" referenced in Amazon-FTC-CID_08426875 at -883.

67. All Documents relating to the surveys described as "Survey 1" and "Survey 2" in Appendix 4 to AMZN_00080322, including Documents sufficient to identify all questions asked to each survey respondent, all answer options provided to each respondent, and each respondent's response to each question.

68. For each respondent to "Survey 1" and "Survey 2" in Appendix 4 to AMZN_00080322 (and without regard for the applicable time period), Documents or data sufficient to determine:

    a. the respondent's name, mailing address, email address, and telephone number;

b. the survey in which the respondent participated;

c. the date on which the respondent completed the survey;

d. the respondent's response to each survey question;

e. the date the respondent enrolled in Amazon Prime;

f. for any "free trial" or "trial" offer accepted by the respondent at enrollment, the date the offer was accepted, and the date the trial period ended;

g. whether the respondent enrolled through a free trial, paid trial, "hard offer," or other enrollment offer;

h. the Enrollment Process or channel through which the respondent enrolled in Prime;

i. the length of the respondent's trial period, if any;

j. the date and amount of all membership charges paid by, or billed to, the respondent, including any amount paid at the time of enrollment;

k. the dates and amounts of any refunds (including chargebacks) paid to the respondent and relating to a Prime membership charge;

l. the dates and amount of any customer service "concessions" paid by You to the respondent and the reason for the concession (e.g., a refund of a member's bank overdraft fee resulting from a Prime membership charge);

m. the frequency with which the respondent's Prime membership automatically renewed (e.g., monthly or annually);

n. the date and "SICs" or "reason codes" associated with all customer service contacts initiated by the respondent;

o. the respondent's Prime benefit usage by date and type of benefit used;

p. the dates on which and number of times the respondent visited "Prime Central";

q. the dates on which and number of times the respondent visited Amazon.com, the Amazon "mShop" App, or Kindle App after enrolling in Prime;

    r.  whether the respondent opened an Amazon Prime "welcome" email and whether the respondent clicked on a link within the "welcome" email;

    s.  each date on which the respondent either entered the online Prime Cancellation Process or contacted customer service to request cancellation (even if the member did not complete cancellation at that time) and the duration of these interactions;

    t.  if applicable, the dates on which the respondent cancelled their Prime membership (or turned Prime auto-renew off) and the date on which the membership terminated;

    u.  if applicable, the means by which the respondent cancelled their Prime membership (i.e., online or by phone) and the duration of the cancellation interaction;

    v.  if applicable, the reason the respondent's Prime membership was terminated (e.g., member's voluntary cancellation as opposed to failure to pay or provide billing information);

    w.  whether the respondent received a survey asking for the member's reason for cancellation; and

    x.  the respondent's reason for requesting cancellation (whether provided in a cancellation survey, to customer service, or in any other manner).

69.  For the "Prime Cancellation Survey" (as described in Amazon-FTC-CID_05445283 (lines 28-38)), Documents or data sufficient to determine, for each month since May 1, 2017:

    a.  the number of survey respondents;

    b.  the questions asked to the survey respondents;

    c.  for each question asked, the answer options provided; and

    d.  the number and percentage of respondents selecting each answer option to each question, broken down by country;

70. For the Prime Cancellation Survey (as described in Amazon-FTC-CID_05445283 (lines 28-38)), all responses (including identifying information for the respondent providing each answer) to any question asking for a narrative response, including any question regarding why a respondent cancelled or if there is anything the respondent would like to share.[9]

71. All Documents reporting or describing the results of the "experiments" with "Checkout ASINization" in Japan, Mexico, and "other interested locales" referenced in AMZN_00005251, at -253.

72. All draft and final copies of all versions of the "ASINization Playbook" referenced in AMZN_00005251, at -253.

73. Documents or data sufficient to determine, for each month since May 1, 2017, the volume and percentage of customer service contacts relating to each "SIC" or "reason code."

74. Without regard to the applicable time period, all Documents relating to (a) ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ analysis that determined that ▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (AMZN_00028480 at -526) and (b) any other analysis of consumers' reason for cancellation based on customer service contacts.

---

[9] *See, e.g.*, AMZN_00059693 at -697 (reporting sample responses to "Q8 – Is there anything else you'd like to share about Prime or why you cancelled?").

| | |
|---|---|
| Dated: September 8, 2023 | /s/ Thomas Maxwell Nardini<br>EVAN MENDELSON (DC Bar #996765)<br>OLIVIA JERJIAN (DC Bar #1034299)<br>THOMAS MAXWELL NARDINI<br>(IL Bar # 6330190)<br>Federal Trade Commission<br>600 Pennsylvania Avenue NW<br>Washington DC 20580<br>(202) 326-3320; emendelson@ftc.gov (Mendelson)<br>(202) 326-2749; ojerjian@ftc.gov (Jerjian)<br>(202) 326-2812; tnardini@ftc.gov (Nardini)<br><br>COLIN D. A. MACDONALD (WSBA # 55243)<br>Federal Trade Commission<br>915 Second Ave., Suite 2896<br>Seattle, WA 98174<br>(206) 220-4474; cmacdonald@ftc.gov (MacDonald)<br><br>Attorneys for Plaintiff<br>FEDERAL TRADE COMMISSION |