# ATTACHMENT 4



United States of America
FEDERAL TRADE COMMISSION
600 PENNSYLVANIA AVE. NW, CC-9528
WASHINGTON, DC 20580

Division of Enforcement
Bureau of Consumer Protection

**Evan Mendelson**
(202) 326-3320; emendelson@ftc.gov

**Max Nardini**
(202) 326-2812; tnardini@ftc.gov

**Olivia Jerjian**
(202) 326-2749; ojerjian@ftc.gov

December 22, 2023

**VIA ELECTRONIC MAIL**

Laura Flahive Wu (lflahivewu@cov.com)
John D. Graubert (jgraubert@cov.com)
Laura M. Kim (lkim@cov.com)
Stephen P. Anthony (santhony@cov.com)
John E. Hall (jhall@cov.com)
Megan L. Rodgers (mrodgers@cov.com)
Marc Capuano (mcapuano@cov.com)
Kevin Kelly (kkelly@cov.com)
Covington & Burling LLP
One CityCenter, 850 Tenth Street NW
Washington, DC 20001-4956

John C. Hueston (jhueston@hueston.com)
Moez M. Kaba (mkaba@hueston.com)
Joseph A. Reiter (jreiter@hueston.com)
Hueston Hennigan LLP
523 West 6th St., Suite 400
Los Angeles, CA 90014

Kenneth E. Payson (kenpayson@dwt.com)
James Howard (jimhoward@dwt.com)
Davis Wright Tremaine LLP
920 5th Avenue, Suite 3300
Seattle, WA 98104

RE:   *FTC v. Amazon.com, Inc., et al.*, No. 2:23-cv-0932-JHC (W.D. Wash.)

Dear Counsel:

We write in response to your December 12, 2023 letter and to follow up on our December 14, 2023 meet-and-confer and the FTC's December 6, 2023 letter (to which you have not provided a written response). Below, we first address our concerns about Amazon's responses to the FTC's discovery requests and then address Defendants' questions about the FTC's responses to Defendants' discovery requests.

After the holidays, we will be contacting the Court to request a discovery conference regarding any remaining dispute as to the FTC's RFP No. 1 (covering documents clawed back by Amazon during the FTC's investigation) and certain issues identified in Part I of this letter.

1

I.  **FTC's Requests for Production of Documents ("RFPs")**

   A.  **Amazon's Production Schedule & Custodians**

Rule 34(b)(2)(B) requires Amazon to complete its production in response to each of the FTC's document requests "no later than" a "reasonable time *specified in the response*." As you know, Amazon's September 29 and October 9 responses to the FTC's RFPs failed to specify when Amazon planned to respond to each document request. Amazon also failed to provide a production timeline in response to a follow-up request from the FTC, except to state that it planned to begin its productions by the end of 2023. During the December 14 meet-and-confer, you stated that Amazon plans to begin rolling document productions by the end of December, and substantially complete its productions by March 2024. Amazon has not stated when it plans to respond to any specific document requests. To date, Amazon also has not produced *any* documents in this litigation (outside of a set of approximately 20 documents that you previously produced during the investigation). Because Amazon has neither produced documents nor provided a meaningful production schedule, we are unable to evaluate whether Amazon will complete its production within a "reasonable" time, as required by Rule 34.

**Please begin producing documents immediately, and provide a schedule addressing when Amazon plans to produce documents responsive to each RFP**. *See, e.g.*, *Bielema v. Razorback Found., Inc.*, 2021 WL 50854, at *11 (W.D. Ark. Jan. 6, 2021) (ordering party to "supplement his response to all of the[] requests for production" to "identify a reasonable date for production of any responsive documents").

Relatedly, as noted, we understand Amazon plans to start rolling productions this month but has yet to share its proposed custodians and review methodology (*e.g.*, search terms or technology-assisted review) with the FTC. Instead, your December 12 letter takes the position that your disclosure of custodians and review methodology must occur "at the same time" as the FTC's disclosure. We do not understand on what basis you are withholding custodians and search terms in advance of your production, nor do we understand your demand for simultaneous exchange of this information. The FTC has already agreed to provide the same information, and in its December 6 letter, provided this information for many of Amazon's requests. (We will follow-up shortly to address questions you have raised about our December 6 letter.) When the FTC finalizes its custodian and search term lists for the remaining requests, it will promptly provide that information to Amazon. **Please immediately provide the names of your proposed custodians and describe any search terms or technology-assisted-review protocols.** If there are document requests for which you are not yet able to provide this information, please identify those requests and explain why you cannot provide this information.

If you do not provide the requested production schedule and custodian information, we intend to raise these issues with the Court at the discovery conference.

   B.  **Documents Relating to International Flows or Consumers**

Thank you for further discussing this issue during the December 14 meet-and-confer. From our conversation, we understand Amazon's position to be that it will produce responsive documents relating to international flows or consumers within the possession of the custodians or

other file storage location you are already otherwise reviewing to respond to the RFPs. In other words, Amazon will not be withholding documents that you are already reviewing solely on the basis that, in Amazon's judgment, such documents relate only to international flows. We understand that at this juncture you are not separately identifying custodians who work exclusively on non-U.S. Prime Enrollment or Cancellation issues. **Please let us know if this is correct.**

If so, that is acceptable to us, provided that we reserve the right to request international custodians and documents. Moreover, for the avoidance of doubt, the mere fact that an individual is based outside the United States is not alone grounds to exclude them as a custodian even within Amazon's initial searches and proposed custodians. (For instance, Russell Grandinetti and Omar Kalim are based outside the United States, but their work relates to the United States).

### C.     June 21, 2023 Production Cutoff Date

Amazon has stated that it will impose a June 21, 2023 production cutoff date for its own responsive documents. We wrote in our December 6 letter that the FTC would agree to this if Amazon agreed to the same cutoff date for the FTC's own document productions.[1] During the December 14 meet-and-confer, Amazon did not accept the FTC's proposal, instead asking the FTC to make certain exceptions to the date cutoff.

You have provided no justification for why the production cutoff date should not be reciprocal. Amazon assuredly continues to create documents that are relevant to this litigation, just as Amazon believes the FTC is doing. If this issue is not resolved by the time of the discovery conference, we intend to raise it with the Court at that time.

### D.     Prime Enrollment & Cancellation (FTC RFP Nos. 9 & 10)

RFP Nos. 9 and 10 request, respectively, "All Documents relating to Prime Enrollment" and "All Documents relating to Prime Cancellation." Contrary to Rule 34(b)(2)(C), you have not stated whether you are withholding documents, or which documents you are withholding, on the basis of your objections. Instead, you merely have asserted, in substance, that these requests are "too broad." The FTC disagrees with this assertion because the request is not meaningfully broader than the Complaint's allegations. The FTC is nevertheless amenable to discussing ways to narrow these requests, but it is Amazon, not the FTC, that is in the best position to determine which, if any, of its own documents or categories of documents are covered by this request but irrelevant to the Complaint or disproportional to the needs of the case. Similarly, if Amazon intends to limit its response through the use of custodians, search terms, or technology-assisted review (including by relying on the custodians and review methodology used to respond to other RFPs), **please disclose that methodology immediately and provide your justification for using it.** If this issue is not resolved by the upcoming discovery conference, we intend to raise it with the Court at that time.

---

[1] We also noted, and reiterate here, that Amazon's (and the FTC's) document-preservation responsibilities continue, and reserved the right to later seek specific documents, or categories of documents, that postdate June 21, 2023.

3

###     E.    Law Enforcement Communications & Documents (FTC RFP Nos. 48 & 49)

RFP Nos. 48 & 49 seek all documents relating to communications received from, or investigations or inquiries by, any civil or criminal law enforcement or consumer protection agency, or Better Business Bureau, relating to Prime Nonconsensual Enrollment or the Prime Cancellation Process. First, from the meet and confer, we understand Amazon objects to producing documents relating to international law enforcement or consumer protection agencies, but not US-based agencies or other entities. **Please confirm that you will produce any responsive materials relating to US law enforcement or consumer protection agencies or Better Business Bureaus.** Second, Amazon is incorrect that international materials are not relevant. For example, communications with or investigations by international regulators relating to problems with Prime Nonconsensual Enrollment or Cancellation, may be highly probative of Amazon's knowledge of these problems, especially given similarities between US and international Prime Enrollment and Cancellation flows.[2] We will raise this issue with the Court at the upcoming discovery conference.

###     F.    Social Media Posts & Amazon App Reviews (FTC RFP Nos. 13(c) & (d))

RFP Nos. 13(c) & (d) ask for "All communications with consumers (or other Documents containing Amazon customer statements) relating to Nonconsensual Enrollment in Prime, including": "(c) Social media posts" and "(d) Amazon app reviews." We confirm this request seeks all such social media posts or Amazon app reviews by Amazon or the Individual Defendants, or social media posts or Amazon app reviews by anyone outside of Amazon and that are within Amazon's possession, custody, or control. For example, we understand that Amazon maintains repositories of such social media posts and conducts related analyses (*e.g.*, Heartbeat) responsive to this document request. **Please confirm that Amazon will produce documents responsive to this request and disclose the methodology you plan to use to collect these documents.**

###     G.    Performance Reviews & Compensation (FTC RFP Nos. 52 & 53)

RFP No. 52 seeks "Performance reviews for all members of teams who worked on Nonconsensual Enrollment and Diverted Cancel issues, including Customer Frustrations, GPX, and CE&O, by whatever names those teams have been known." In the spirit of compromise, the FTC is willing to narrow this request to: "Performance reviews for all individuals who testified at an Investigational Hearing in the Amazon ROSCA Investigation, and all individuals who testify at depositions in this Action." **Please let us know if you agree to produce documents in response to this request as so modified.**

RFP No. 53 seeks "All Documents relating to Jamil Ghani, Russell Grandinetti, and Neil Lindsay's compensation, including documents justifying any compensation, including bonuses, paid by You to Ghani, Grandinetti, or Lindsay." We note the request is limited to the three Individual Defendants, and so we think should be manageable as written. Nonetheless, in further interest of compromise, we are willing for the time being to limit this request to: "Final

---

[2] *See, e.g.*, *ASA Ruling on Amazon Europe* (Apr. 5, 2023), https://www.asa.org.uk/rulings/amazon-europe-core-sarl-g19-1021643-amazon-europe-core-sarl-prime-trial.html.

4

memoranda or other documents reflecting, explaining, or justifying any compensation, including bonuses, paid by You to Jamil Ghani, Russell Grandinetti, or Neil Lindsay." **Please let us know if you agree to produce documents in response to this request as modified.** The FTC reserves the right to seek additional materials relating to the Individual Defendants' compensation.

      **H.**      **Data Requests (FTC RFP Nos. 55, 56, 60, 67, 68, 69, 70, 73)**

For the RFPs requesting data regarding Prime members, Amazon has agreed to produce a sample dataset in early January.

      **I.**      **Other Requests**

RFP No. 71 requests "All Documents reporting or describing the results of the 'experiments' with 'Checkout ASINization' in Japan, Mexico, and 'other interested locales' referenced in AMZN_00005251, at -253." We briefly discussed RFP No. 71 during the meet-and-confer, but to date you have not stated whether Amazon will produce documents responsive to the request. **Please confirm that Amazon will produce responsive documents, or we will raise this issue with the Court.**

Additionally, Sections II.B. & E. of the FTC's December 6 letter responded to, including by offering modifications regarding, Amazon's objections to several document requests relating to pre-May 1, 2017 documents as well as non-Prime negative option programs. On the meet-and-confer, the parties agreed that the most efficient path forward was for Amazon to respond in writing to the FTC's positions. We have not received your response. We may raise any unresolved matters during the upcoming discovery conference.

      **II.**      **Defendants' Document Requests**

      **A.**      **FTC's Search for Documents Relating to the FTC's Investigation or This Litigation**

**Amazon RFP Nos. 1-2, 4, 6-14, 28-30; Ghani RFP Nos. 1-3; Grandinetti RFP Nos. 1-3; Lindsay RFP Nos. 1-3.** In response to these requests, the FTC initially agreed to produce all documents relating to the investigation or this litigation that it located within the Enforcement Division, which is the division that has handled this investigation and litigation, and therefore would possess almost all of the FTC's responsive, nonprivileged documents. The FTC's initial productions (from October 5, November 16, and today) included what we expect are the vast majority of nonprivileged documents in the Enforcement Division's possession. In particular, those productions included all investigational hearing transcripts and exhibits, in addition all documents the FTC received from third parties. We, of course, are continuing to review other documents for responsiveness and privilege. We anticipate completing any remaining productions by the end of February. Additionally, as stated above, our December 6 letter explained how we are identifying responsive documents within the Enforcement Division.

Your October 30 letter asked us to expand our search to include the Bureau of Consumer Protection (the "Bureau"), the Office of General Counsel, the Office of Policy and Planning

5

("OPP"), and the individual Commissioner offices. In our November 20 response, we agreed to search the Bureau and individual Commissioner offices. We are finalizing the process by which we are conducting those searches, and will provide more information when we have done so, which we expect to be in mid-January. We anticipate producing all responsive, nonprivileged documents from these offices by mid-March. To be clear, we do not anticipate that these offices will possess any meaningful amount of unique, responsive non-privileged documents.

Your December 12 letter asked us to reconsider our refusal to search within OPP, while also adding requests for us to search the Bureau of Economics ("BE") and Office of Public Affairs ("OPA"). Neither OPP nor OPA are likely to have unique, responsive documents, much less documents that are in any way relevant to a party's claim or defense. OPP did not work on this investigation or litigation. OPA likewise did no substantive work on this investigation or litigation. OPA, as you note, worked on the FTC's press release, but your claim that the press release somehow conflicts with the FTC's arguments in this case is both incorrect and irrelevant to any claim or defense. As to BE, we did not plan to search for responsive documents because BE is unlikely to have any *unique* responsive documents—*i.e.*, documents not already in the possession of the Enforcement Division or other custodians. Nevertheless, for the sake of compromise, we will search BE for responsive documents. The BE economist assigned to work on this matter is currently on leave, so we may be delayed in providing our search methodology, but we nevertheless expect to complete the BE production (which, again, likely will include minimal unique, non-privileged documents) by the end of March.

**Amazon's RFP No. 22.** You proposed narrowing this request to seek: "Each and every Document You have relied on or consulted in this Investigation or the Action that was not produced to You by Amazon, including but not limited to Documents provided to You by third parties." We have already agreed to produce all such documents (in the manner described above), and indeed have produced most of them already.

On our meet-and-confer, but not in your letter, you asked the FTC to produce back to Amazon documents Amazon had produced to the FTC in other investigations and that we reviewed as part of this investigation. Based on our previously stated objections, including that Amazon clearly already possesses these documents, we will not be producing the documents back to Amazon.

**Lindsay/Grandinetti/Ghani RFP Nos. 1-3.** As discussed on our meet-and-confer, we do not believe there is any meaningful dispute regarding these requests. Our search described above will cover all documents relating to the Individual Defendants that are relevant to this litigation or investigation. We are not aware of any documents in the FTC's possession related to the Individual Defendants that are unrelated to this investigation or litigation.

**B.    Defendants' Requests for Documents Unrelated to the FTC's Investigation of Amazon or This Litigation**

For the reasons stated in our prior correspondence, we disagree with your arguments that any documents sought by the requests identified below are in any way relevant to this case. Nevertheless, for the sake of reaching an agreement, we will produce certain responsive documents, described below, analogous to those ordered to be produced in the primary discovery

6

decision you cite: *SEC v. Kovzan*, 2012 WL 4819011, at *5 (D. Kansas Oct. 10, 2012) (ordering SEC to produce certain "(1) communications between [the SEC] and third parties, (2) non-privileged portions of [SEC] internal documents that reflect communications between [the SEC] and third parties, and (3) [the SEC's] internal documents concerning a final decision, as to what guidance, if any, the SEC staff may provide to [third parties]").

**Amazon's RFP Nos. 15, 17, 18, 21, 23, 24, 25.**  For documents relating to the Negative Option Policy Statement, Negative Option Rulemaking, and Dark Patterns Workshop and Report, we will produce all communications (located in a reasonable search) between the FTC and third parties, all non-privileged portions of internal FTC documents that reflect communications between the FTC and third parties, and the FTC's internal documents concerning any final decision as to what guidance FTC staff may provide third parties.  We will use a date range of January 1, 2015 through June 21, 2023.  We plan to search the Enforcement Division (which was responsible for the Negative Option Policy Statement and is responsible for the Negative Option Rulemaking), the Division of Financial Practices (which was principally responsible for the Dark Patterns Workshop and Report), the Bureau, and the individual Commissioner offices.  OPP did no work on these projects, so we will not search OPP.  We anticipate providing additional information concerning our search and review methodology in January, and completing these productions by the end of March.

The Negative Option Policy Statement, Negative Option Rulemaking, and Dark Patterns Workshop and Report are effectively all post-2012 "guidance[s], publication[s], policy statement[s], workshop[s], or rulemaking effort[s] related to ROSCA, Negative Options, or Dark Patterns," as requested in RFP No. 15.[3]  Amazon also sought "any Communications Relating to the interpretation of ROSCA, Negative Options, or Dark Patterns and its requirements."  The search we are agreeing to conduct should identify the overwhelming majority of these communications (at least insofar as they fall within the three categories outlined in *Kovzan*), excluding communications made in the context of specific litigated cases (in which case the FTC's positions are public).

**Amazon's RFP No. 26.**  This request seeks Documents relating to the FTC's 2009 report, "Negative Options – A Report by the staff of the FTC's Division of Enforcement."  Given your proposed January 1, 2013 date cutoff, we do not plan to produce any documents responsive to this request.  If, in the course of searching for the documents described above, we encounter any documents responsive to this request, we will produce them.

**Lindsay RFP Nos. 4-6.**  These requests seek documents relating to FTC guidelines, policies, or positions concerning individual liability for violations of the FTC Act and ROSCA.  The documents are irrelevant to any claim or defense.  Specifically, the FTC need not prove that the individual defendants knew that they could be held liable for Amazon's unlawful acts; rather, to obtain civil penalties, the FTC need only prove that the Individual Defendants had actual knowledge or knowledge fairly implied that Amazon's acts (which the Individual Defendants participated in or had authority to control) were themselves "prohibited."  15 U.S.C. § 45(m).

---

[3] The FTC's Telemarketing Sales Rule ("TSR") also regulates negative option offerings, but is not implicated by the FTC's allegations here because it covers only telemarketing transactions.

7

Your December 12 letter appears to propose the FTC respond to these requests by producing "statements made by individual commissioners and staff" relating to the subject matter of the requests. We understand your proposed limitation as seeking statements made outside of litigation by individual commissioners or FTC staff. For the sake of compromise, we will conduct a reasonable search for, and produce, public statements made by current commissioners (while they were serving as commissioners). (Were we to search for statements by past commissioners, we would likely rely on the same publicly available sources of information that Amazon can use.) We will not search for any other "statements," nor do we have any reasonable way to do so. Unlike the Negative Option Rulemaking and Policy Statement and the Dark Patterns Workshop and Report, there is no division or team within the FTC tasked with handling matters involving individual liability. Additionally, as we previously stated, virtually all "position" statements have been made in the context of individual cases.

**Lindsay RFP No. 7.** This request seeks information that is clearly public: documents sufficient to identify all cases in which the FTC has sued an individual for violations of the FTC Act. Although the information is public—and Amazon can just as easily compile it as the FTC—we previously agreed, for the sake of compromise, to produce complaints from such cases dating back to November 2020. Because Amazon can just as easily locate this information as the FTC and because the information is of little, if any, relevance, we will not broaden that date range.

### C.   Privilege Logs

As we explained during the December 14 meet-and-confer, our objection to providing document-level privilege logs for many of the documents we are withholding as privileged stems from the fact that Enforcement Division attorneys are also litigating counsel for the FTC, and other FTC staff working on the case are working at the direction of litigating counsel. Because communications among FTC counsel and others working at their direction are almost certain to be privileged and/or protected work product, requiring a log of all such communications provides no benefit while imposing a high burden. We therefore will propose the use of a categorical privilege log for many withheld documents and anticipate describing that proposal in greater detail in January.

We intend for our proposal to be reciprocal—*i.e.*, we would agree that documents in the possession of Amazon's outside counsel, even if they are responsive (i.e., they relate to Prime enrollment or cancellation), need not be logged on a document-by-document basis. Nor would we seek a document-by-document log for communications between Amazon's outside counsel and the company.

### III. Defendants' Interrogatories

**Amazon Interrogatories 1-2.** We will supplement our responses in the manner you propose. We anticipate doing so by January 19.

**Amazon Interrogatories 7-8.** We anticipate providing our supplemental responses by January 19.

**Lindsay Interrogatory No. 6.** For the reasons stated in the above discussion of Lindsay RFP No. 7, we will not broaden the date range for our list of all cases in which the FTC has sued individuals. Similarly, for the reasons stated in the above discussion of Lindsay RFP No. 6, we will attempt to identify for all responsive public statements and speeches by FTC commissioners since January 1, 2015. We will not search for statements or speeches made by other FTC personnel, nor do we know how we would do so (outside of searching the same publicly available material that Amazon may search).

*   *   *   *

As always, we are available to discuss if you believe additional meet-and-confers would be productive.

Sincerely,

Evan Mendelson
Counsel to the Federal Trade Commission