UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC; NEIL LINDSAY, individually and as an officer of Amazon.com, Inc.; RUSSELL GRANDINETTI, individually and as an officer of Amazon.com, Inc.; JAMIL GHANI, individually and as an officer of Amazon.com, Inc.,<br><br>Defendants. | CASE NO. 2:23-cv-00932-JHC<br><br>ORDER |

# I

## INTRODUCTION

This matter comes before the Court on the FTC's motion to compel production of 17 documents that Amazon clawed back. Dkt. ## 139 (sealed), 140 (redacted). Amazon produced the documents at issue to the FTC either in the FTC's investigation underlying this case or in other investigations. *See* Dkt. ## 140-2 at 3–5; 90-2 at 27–28. Then, in the investigation

ORDER - 1

underlying this case, Amazon asserted privilege regarding the documents and clawed them back. *Id.*

Amazon argues that the attorney-client privilege and work-product doctrine protect the documents. Dkt. # 142 at 5. The FTC disputes this, and also says that Amazon waived any privilege. Dkt. # 140-1 at 3. The Court agrees that Amazon has waived its privilege regarding all but six of the documents at issue by producing some documents intentionally with redactions and by failing to promptly claw back some of the unintentionally produced documents. The Court concludes that the remaining documents warrant in camera review. Thus, the Court GRANTS the motion to compel as to 11 of the documents and GRANTS the FTC's request for in camera review of the remaining documents.

## II

### BACKGROUND

The FTC began investigating Amazon in this matter on March 16, 2021. Dkt. ## 90-2 at 27; 53 at 2. The FTC calls this investigation the Dark Patterns Investigation. Dkt. # 90-2 at 27. During this investigation, Amazon produced 29,998 documents. Dkt. ## 90-2 at 29; 53 at 2. Amazon produced 8,826 documents between April 15, 2021, and February 18, 2022, and 19,154 documents between October 7, 2022, and February 13, 2023. Dkt. # 90-2 at 29. The FTC also investigated Amazon in two matters unrelated to this case, which the FTC refers to as Investigations 1 and 2. Dkt. # 90-2 at 28. Amazon has produced more than 1.7 million documents across the three FTC investigations. Dkt. # 143 at 1. Amazon produced 11 of the documents at issue in the Dark Patterns Investigation and the remaining six in Investigations 1 and 2. Dkt. # 142 at 6.

The documents at issue are as follows:

- IC-1[1] and IC-36 are copies of the same memo prepared for a meeting on May 6, 2021.  Dkt. ## 90-2 at 31; 139-1 at 3.  The parties call this the "May 4 memo."  *Id.*

- IC-4, IC-6, IC-17, IC-22, IC-31, and IC-48, are copies of the same memo prepared for a meeting on July 14, 2021.  Dkt. ## 90-2 at 32–34; 140-2 at 3; 142 at 9.  IC-5, IC-18, IC-19, IC-20, and IC-21, are copies of the same presentation for the same meeting on July 14, 2021.  Dkt. # 142 at 13–14.  The parties call these two sets of documents the "July 14 memo and presentation."  *Id.*

- IC-37 is a document prepared for a meeting among members of the Amazon Prime team on May 10, 2021, which followed up on the discussion at the May 6 meeting.  Dkt. # 52 at 5.

- IC-9 is a chat thread between two Amazon employees.  *Id.* at 9.

- IC-27 is an "early draft" of an Amazon Prime update that "reflect[s] determinations made during the May 6 Meeting."  *Id.* at 7–8.

- IC-40 was used to prepare an Amazon employee for testimony before the FTC.  *Id.* at 9.

The FTC filed this case on June 21, 2023.  Dkt. # 1.  At the start of this case, the FTC moved to desequester 54 clawed-back documents.  Dkt. ## 4 at 3 (sealed); 90-2 at 6 (redacted).  The Court denied the motion "without prejudice to Plaintiff's ability to seek these documents through discovery in this matter."  Dkt. # 89 at 1.  The parties have resolved their dispute over some documents, and only 16 of the original 54 documents are now at issue.  Dkt. # 140-1 at 9.  The parties' dispute over IC-37 arose after the FTC's motion to desequester.  *Id.* at 10–11.

A.    May 4 Memo

---

[1] IC stands for "In Camera."

ORDER - 3

Amazon produced two copies of the May 4 memo with redactions in Investigations 1 and 2 (IC-1 and IC-36).[2]  The FTC used the May 4 memo at a December 2, 2022, hearing during the Dark Patterns Investigation, and Amazon's attorneys did not object.  Dkt. # 90-2 at 30.  The FTC then used the documents at a January 11, 2023, hearing during the same investigation, at which time Amazon's counsel claimed privilege and expressed their intention to claw back the documents.  *Id.* at 30–31.  Amazon clawed back these two documents on January 13, 2023.  *Id.* at 326, 332.  The FTC argues that the memo is not protected by attorney-client privilege, and even if it is, Amazon waived the privilege by producing the memo twice with redactions.  Dkt. # 140-1 at 10, 13–16.

B.      July 14 Memo and Presentation

Overall, Amazon produced six copies of the July 14 memo (IC-4, IC-6, IC-17, C-22, IC-31, IC-48) and five copies of the July 14 presentation (IC-5, IC-18, IC-19, IC-20, IC-21).  Dkt. # 90-2 at 34.  In the Dark Patterns Investigation Amazon produced one copy of the July 14 memo (IC-6) without redactions, and two copies of the memo with redactions (IC-17, IC-22).  *Id.*  In Investigation 1, Amazon produced one copy of the memo without redactions (IC-48).  *Id.*  In Investigations 1 and 2, Amazon produced one copy of the memo without redactions (IC-31).  *Id.*  Amazon first withheld IC-4 as privileged in the Dark Patterns Investigation.  *Id.* at 277.  But on January 5, 2023, Amazon produced a redacted version of IC-4, explaining that upon review of its production, it determined that "six previously withheld documents[,]" including IC-4, were "not privileged or partially privileged."  *Id.*  All five versions of the July 14 presentation—IC-5, IC-

---

[2] Amazon produced the documents in two separate investigations for a total of four productions.  Dkt. # 90-2 at 28.

18, IC-19, IC-20, IC-21—were produced without redactions in the Dark Patterns Investigation. Dkt. # 140-2 at 3.

At a hearing during the Dark Patterns Investigation on January 20, 2023, the FTC marked an unredacted version of the July 14 memo (IC-31) as an exhibit and Amazon claimed privilege. Dkt. # 90-2 at 33. Amazon clawed back the July 14 memo and presentation on February 7, 2023. Dkt. # 90-2 at 33. The FTC argues that the memo is not protected by attorney-client privilege, and even if it is, Amazon waived the privilege by producing the memo with redactions. Dkt. # 140-1 at 11, 13–16.

C.   IC-37

Amazon produced IC-37 once without redactions in Investigation 1. Dkt. ## 90-2 at 28, 330; 140-2 at 5. In the Dark Patterns Investigation, Amazon clawed the document back on February 7, 2023, and produced a redacted version on February 14, 2023. Dkt. # 90-2 at 35–36, 102. Then, in this matter, Amazon clawed back IC-37 again on January 22, 2024, and produced the document with more privilege redactions. Dkt. # 140-2 at 81. The FTC argues that Amazon waived its privilege in its second round of redactions to IC-37. Dkt. # 140-1 at 14–16. The FTC ask the Court to compel Amazon to produce the document as it was produced on February 14, 2023. *Id.* at 3, 17.

D.   Other documents

On November 22, 2022, in the Dark Patterns Investigation, the FTC identified three messages in IC-9 as potentially privileged, and informed Amazon. Dkt. ## 140-2 at 3; 90-2 at 247. Amazon clawed the document back on November 29, 2022, and then produced it with redactions. Dkt. # 90-2 at 35. Amazon redacted 13 messages from the chat. Dkt. # 140-2 at 4.

ORDER - 5

The FTC challenges the 10 redactions beyond those the FTC identified as proper. Dkt. # 140-1 at 13. The FTC says that it has reason to believe that Amazon redacted messages that are not privileged and asks the Court to conduct in camera review. *Id.*

Amazon produced IC-40 in Investigation 1. *See* Dkt. # 90-2 at 28, 330. The FTC marked IC-40 as an exhibit at a hearing in the Dark Patterns Investigation on December 20, 2022, and Amazon's attorney reserved the right to claw it back after review. *Id.* at 35. Amazon clawed the document back on February 7, 2023. *Id.* Amazon produced IC-27 in the Dark Patterns Investigation. *Id.* at 28, 328. The FTC marked IC-27 as an exhibit at a hearing in the Dark Patterns Investigation on January 17, 2023. Dkt. # 140-2 at 4. Amazon clawed the IC-27 back on February 7, 2023. *Id.* The FTC says that IC-40 and IC-27 are not privileged, and even if they are, Amazon waived the privilege by not promptly clawing the documents back. Dkt. # 140-1 at 3.

### III
#### DISCUSSION

A.    Waiver

Generally, a party waives privilege with respect to a document if they produce it. *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116–17 (9th Cir. 2020). Federal Rule of Evidence 502(b) provides an exception for inadvertent disclosures. And Federal Rule of Evidence 502(d) provides that a federal court may order that the privilege is not waived as a result of production. "[W]aiver of any privilege [i]s the threshold issue" when determining whether a clawed back document is privileged. *In re Qualcomm Litig.*, No. 3:17-CV-108-GPC-MDD, 2018 WL

6617294, at *4 (S.D. Cal. Dec. 18, 2018).  The party asserting privilege bears the burden of proving that privilege is not waived.  *Id.*

The FTC says that Amazon waived its privilege for some documents at issue here because it did not satisfy any of the three elements of Rule 502(b).  Dkt. ## 140-1 at 13; 145 at 6.  First, the FTC says that production was intentional.  *Id.*  Second, the FTC says that even if the production were unintentional, Amazon did not take "reasonable steps to prevent" the production and it did not "promptly" remedy the production.  Dkt. ## 140-1 at 15; 145 at 6–7.

Amazon responds that it did not waive privilege because all the documents at issue are protected by the stipulated order that the Court entered under Federal Rule of Evidence 502(d) at Dkt. # 123.  Dkt. # 142 at 15.  Amazon also argues that even if that order does not apply, under Rule 502(b), it took reasonable steps to prevent production where it has produced more than 1.7 million documents across two cases with the FTC and attempted to remedy the disclosures as soon as it learned about them.  Dkt. # 142 at 16–17.

1.  The stipulated Rule 502(d) order

Rule 502(d) provides that a "federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court."  The order at issue provides:

> [P]ursuant to Fed. R. Evid. 502(d), the production of any documents, electronically stored information (ESI) or information, whether inadvertent or otherwise, *in this proceeding* shall not, for the purposes of this proceeding or any other federal or state proceeding, constitute a waiver by the producing party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law.

Dkt. # 123 at 1 (emphasis added).

ORDER - 7

The documents at issue were produced during the FTC's investigation underlying this case and other FTC investigations.[3]  Amazon argues that the order applies to documents produced during the pre-suit investigation, and thus Amazon's production of these documents does not waive privilege.  Dkt. # 142 at 15.  The FTC argues that, by its plain terms "this proceeding" refers to documents produced during this lawsuit and not to documents produced during the investigation.  Dkt. # 145 at 4.

The Court agrees with the FTC.  The order applies to documents produced during this lawsuit, and not documents produced during the pre-suit investigation.[4]  Neither side cites legal authority on what constitutes a "proceeding" under a Rule 502(d) order.  Black's Law Dictionary provides as its primary definition of the term: "[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment." *Proceeding*, *Black's Law Dictionary* (12th ed. 2024).  It does not provide a definition that would cover a lawsuit and its underlying investigation.  *Id.*  The order applies to documents produced during this litigation and does not apply to documents produced in the underlying investigation

---

[3] The parties seem to disagree as to whether the redacted version of IC-37 was produced before this litigation.  Dkt. ## 142 at 15 n.7; 145 at 4 n.2.  The FTC says that Amazon produced IC-37 in February 2023, before this lawsuit was filed.  Dkt. ## 145 at 4 n.2; 140-1 at 6.  FTC investigator Adam Rottner says, "On February 7, 2023, Amazon clawed back Amazon-FTC-CID_09389533 (IC-37), which originally had been produced without redactions. My understanding is that on February 14, 2023, Amazon produced a new copy of this document, with privilege redactions."  Dkt. # 140-2 at 5.  Amazon says that "IC-37 was clawed back and produced to the FTC on January 22, 2024—after the start of this case."  Dkt. # 142 n.7; Dkt. # 143 at 50.  This case was filed on June 21, 2023.  *See* Dkt. # 1.  While Amazon is correct that the current redacted version of the document was clawed back during this litigation, the document was produced, clawed back, and produced with redactions during the Dark Patterns Investigation, and thus the order under Rule 502(d) does not apply to IC-37.

[4] Even if the Rule 502(d) order applied to documents produced in the Dark Patterns Investigation, it clearly does not apply to documents produced in Investigations 1 and 2.  Some versions of the May 4 memo, the July 14 memo, IC-37, and IC-40 were produced in Investigations 1 and 2.  The only categories of documents that were produced solely in the Dark Pattern Investigation were IC-27, IC-9, and the July 14 presentation.

ORDER - 8

or in other proceedings. This tracks the Court's intention with respect to the order. Thus, the order does not protect Amazon's disclosures from waiver.

2.  Rule 502(b) Exception to Waiver

When a party inadvertently discloses a document, that "disclosure does not operate as a waiver" if "(1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error." Fed. R. of Evid. 502(b). Each of the requirements of Rule 502(b) "are separate and should not be conflated in the analysis." *Datel Holdings Ltd. V. Microsoft Corp.*, No. C-09-05535 EDL, 2011 WL 866993, at *2 (N.D. Cal. Mar. 11, 2011). "The disclosing party has the burden of proving that the elements of the rule have been met." *Columbia Cmty. Credit Union v. Chicago Title Ins. Co.*, No. C09-5290RJB, 2009 WL 10688219, at *4 (W.D. Wash. Dec. 22, 2009).

Amazon says that in determining whether privilege was waived, the Court should apply a "totality of the circumstances" test, under which courts consider: "(1) the reasonableness of the precautions to prevent inadvertent disclosure; (2) the time taken to rectify the error; (3) the scope of the discovery; (4) the extent of the disclosure; and (5) the 'overriding issue of fairness.'" *U.S. ex rel. Bagley v. TRW, Inc.*, 204 F.R.D. 170, 177 (C.D. Cal. 2001) (quoting *Hartford Fire Insurance Co. v. Garvey,* 109 F.R.D. 323, 332 (N.D. Cal. 1985)). This test derives from cases pre-dating the adoption of Rule 502(b) in 2008. Rule 502(b) takes the same "middle of the road" approach as the "totality of the circumstances" test pre-dating the Rule and "the pre–2008 case law remains pertinent to application of this rule." 8 Charles Alan Wright & Arthur R. Miller, *Privileged Matter—Inadvertent Production of Privileged Material in Discovery*, Federal Practice & Procedure § 2016.3 (3d ed. 2024). But the Advisory Committee Notes for Rule 502(b)

ORDER - 9

caution that "[t]he rule does not explicitly codify [the totality of the circumstances] test, because it is really a set of non-determinative guidelines that vary from case to case." Fed. R. Evid. 502, Explanatory Notes. Thus, while the Court may consider the factors laid out in the "totality of the circumstances" test, it must first consider whether disclosure was in fact inadvertent. *See Hanson v. Wells Fargo Home Mortg., Inc.*, No. C13-0939JLR, 2013 WL 5674997, at *6 (W.D. Wash. Oct. 17, 2013) ("The court will apply the standard codified in Federal Rule of Evidence 502(b) and also utilize some of the factors from the 'totality of the circumstances approach' in its analysis.").

          a.     Whether the disclosures were inadvertent

The FTC says that the disclosures of the May 4 memo (IC-1 and IC-36), the July 14 memo and presentation (IC-4, IC-5, IC-6, IC-17, IC-18, IC-19, IC-20, IC-21, IC-22, IC-31, and IC-48), and IC-37 were not inadvertent because Amazon produced some of these documents multiple times and produced the documents with redactions.[5] Dkt. # 139 at 13–14.

Rule 502(b) does not define "inadvertent." Courts have developed two approaches to the issue. *See T&W Holding Co., LLC v. City of Kemah, Texas*, 641 F. Supp. 3d 378, 382 (S.D. Tex. 2022); *Thermoset Corp. v. Bldg. Materials Corp. of Am.*, No. 14-60268-CIV, 2015 WL 1565310, at *8 (S.D. Fla. Apr. 8, 2015). Under the first, the court simply looks to "whether the party intended a privileged or work-product protected document to be produced or whether the production was a mistake.'" *T&W Holding Co., LLC*, 641 F. Supp. 3d at 382. Under the second, the court looks at factors along with a party's subjective intent, "including the total number of

---

[5] The FTC does not dispute that Amazon inadvertently produced IC-9, IC-27, and IC-40. Dkt. # 140-1 at 14 n.8.

ORDER - 10

documents reviewed, the procedures used to review the documents before production, and the actions of the producing party after discovering that the documents had been produced." *Id.*

District courts in the Ninth Circuit take the first approach. *See, e.g.*, *B&G Foods N. Am., Inc. v. Embry*, No. 2:20-CV-0526 KJM DB, 2024 WL 922900, at *2 (E.D. Cal. Mar. 4, 2024) ("An 'inadvertent disclosure' is simply where the work-product protected document was produced as the result of a mistake."); *Datel Holdings Ltd.*, 2011 WL 866993, at *2 ("[I]nadvertence under the first prong does not turn on the reasonable steps taken to prevent mistaken disclosure addressed in the second prong."). The Court adopts this approach because it aligns with other courts in the Circuit as well as the structure and purpose of Rule 502(b). *See Coburn Grp., LLC v. Whitecap Advisors LLC*, 640 F. Supp. 2d 1032, 1038 (N.D. Ill. 2009) ("[T]he structure of Rule 502 suggests that the analysis under subpart (b)(1) is intended to be much simpler, essentially asking whether the party intended a privileged or work-product protected document to be produced or whether the production was a mistake.").

The FTC says that under the first approach, "a party's having produced a document with redactions is evidence of an intentional production." Dkt. # 140-1 at 14 (citing *ePlus Inc. v. Lawson Software, Inc.*, 280 F.R.D. 247, 255 (E.D. Va. 2012)). The Court agrees. In *Brown v. Google LLC*, the court determined that Google's production was intentional, and not inadvertent, when it "initially claim[ed] a document as privileged, then determine[d] part of the document [was] not privileged and produce[d] the document in redacted form," and later tried to claw the document back. No. 20CV03664YGRSVK, 2022 WL 12039375, at *5–6 (N.D. Cal. Oct. 20, 2022). In *ePlus Inc. v. Lawson Software, Inc.*, the court determined that disclosure of privileged documents was not inadvertent for several reasons, including that at least one of the documents was redacted. 280 F.R.D. at 255 ("The record shows that Lawson intentionally produced these

ORDER - 11

documents after reviewing them, and then realized it had mistakenly produced them."). When a party makes a strategic decision that it later regrets, such as redacting a document rather than withholding it completely as privileged, it cannot later claim inadvertence to shield itself from the consequences of its own judgment call. *See T&W Holding Co., LLC*, 641 F. Supp. 3d at 383 ("Kemah's lawyers made a conscious decision to identify certain documents as those they may rely on in this case, and they cannot now run away from that decision claiming mistake or inadvertence.").

Amazon produced three copies of the July 14 memo with redactions (IC-4, IC-17, IC-22). Dkt. # 90-2 at 326–31. In one case, Amazon first withheld IC-4 completely before identifying it as a document that was improperly withheld and producing it with redactions. *Id.* at 32–33, 277. It then clawed back IC-4, along with other versions of the July 14 memo and presentation. *Id.* at 33. These actions show that Amazon's production of this memo was purposeful.

Similarly, Amazon clawed back IC-37 and produced it again with redactions on February 14, 2023. Dkt. # 140-2 at 5. Amazon then clawed back IC-37 again on January 22, 2024, and produced the document with more privilege redactions. *Id.* at 81. Amazon's production of IC-37 with redactions on February 14, 2023, was purposeful. Indeed, Amazon's actions show that it specifically reviewed IC-37 for privilege a second time, and made additional redactions; this second production with redactions cannot be characterized as inadvertent.

As to the May 4 memo, Amazon produced it four times with redactions. Dkt. # 90 at 326–332. Amazon says that it has "claimed privilege over almost *20 copies* of identical or near-identical versions of the" the May 4 memo in this litigation. Dkt. # 142 at 8 (emphasis in original). But Amazon cites no case in which a court considered how many versions of a

document were withheld when determining whether the document was produced inadvertently.[6]
In fact, Amazon does not spend any time in its brief addressing or rebutting the FTC's arguments that its disclosures were inadvertent, instead focusing on factors laid out in the totality of the circumstances test.

Given that these documents were produced with redactions, the Court cannot determine that these disclosures were merely an accident. If the party asserting privilege fails to show that it meets any of the elements of Rule 502(b), then it is not entitled to the protection of Rule 502(b). *In re Qualcomm Litig.*, 2018 WL 6617294, at *4. Thus, Amazon has waived its privilege over the previously produced redacted versions of the May 4 memo (IC-1, IC-36), the July 14 memo (IC-4, IC-17, IC-22), and IC-37.

Amazon produced three copies of the July 14 memo without redactions (IC-6, IC-31, IC-48). Dkt. # 90-2 at 326–31. Similarly, Amazon produced all five copies of the July 14 presentation without redactions (IC-5, IC-18, IC-19, IC-20, IC-21). *Id.* at 326–28. The FTC says that "a party that produces the same document multiple times generally cannot establish inadvertence." Dkt. # 140-1 at 13–14 (citing *T&W Holding Co., LLC*, 641 F. Supp. 3d at 380). But Rule 502(b) was intended to allow for some mistakes, especially with the large volume of documents produced with the rise of electronic discovery. *See* Fed. R. Evid. 502, Explanatory

---

[6] The Court identified one case, *In re Zetia (Ezetimibe) Antitrust Litigation*, in which a court determined that disclosure of redacted documents was inadvertent because the party "withheld as entirely privileged several other documents that were identical or similar to the [clawed back documents at issue]." No. 2:18MD2836, 2019 WL 6122012, at *8 (E.D. Va. July 16, 2019). There, the court noted that "it is logically inconsistent to conclude that [the party] both intentionally produced and withheld the same document." *Id.* "[B]ecause [the party] withheld all but one such copy, the most reasonable explanation is that the single production was contrary to [the party's] intent – or inadvertent." *Id.* But this case explicitly takes the second approach to the inadvertence analysis, which courts in the Ninth Circuit do not use. In addition, Amazon, as the party asserting privilege bears the burden of proving that its disclosures were inadvertent under Rule 502(b). Amazon does not meet its burden of showing that its disclosures of the May 4 memo was inadvertent.

Notes; *see also Amobi v. D.C. Dep't of Corr.*, 262 F.R.D. 45, 53 (D.D.C. 2009) (defining "inadvertent" "to mean an unintended disclosure," but declining to determine that a disclosure was intentional just because the disclosure was reviewed by an attorney because attorneys can make mistakes). In this case, where more than 1.7 million documents were produced, the mere fact that a document was produced more than once does not show that the disclosure was purposeful.

           b.        Whether Amazon took reasonable steps to prevent the disclosures

The FTC says that Amazon did not take reasonable steps to prevent production of one copy of July 14 memo, IC-31, and IC-37. Dkt. # 145 at 6, Dkt. # 139 at 15.

The FTC says that Amazon did not take reasonable steps to prevent disclosure of IC-31 because Amazon produced the document in a set of six documents. Dkt. # 140-1 at 15. The FTC argues that because this production was small, Amazon cannot show that it took reasonable steps to prevent inadvertent disclosure. *Id.* (citing *Williams v. D.C.*, 806 F. Supp. 2d 44, 49 (D.D.C. 2011)).

But courts look at the overall context of production when determining whether the disclosing party took reasonable steps to prevent disclosure. *See* Fed. R. Evid. 502, Explanatory Notes ("Other considerations bearing on the reasonableness of a producing party's efforts include the number of documents to be reviewed and the time constraints for production."); *Datel Holdings Ltd.*, 2011 WL 866993, at *4 ("Inadvertent production of a relatively low proportion of documents in a large production under a short timetable due to mistake should be and usually is excused.").

Amazon explains that it "'implemented a thorough, multi-step review process' to review documents for responsiveness and privilege, and followed a 'holistic approach to assessing privilege' that 'did not rely on any single indicia of privilege, such as the inclusion of the words 'privileged and confidential,' to determine whether to withhold or redact a document.'" Dkt. # 142 at 16 (quoting Dkt. # 53 at 2). Further, Amazon produced IC-31 in Investigations 1 and 2, where it produced over a million documents. Dkt. # 90-2 at 34. Given the overall scope of this production and Amazon's description of its efforts to review each document for privilege, Amazon demonstrates that it took reasonable steps to prevent the disclosure of IC-31.

As for IC-37, the Court has already determined that Amazon's disclosure was not inadvertent, so it need not consider whether Amazon took reasonable steps to prevent disclosure of that document. The FTC does not argue that Amazon did not take reasonable steps to prevent disclosure of IC-9, IC-27, IC-40, and the July 14 presentation (IC-5, IC-18, IC-19, IC-20, IC-21).

        c.      Whether Amazon took prompt action

The FTC says that Amazon waived privilege over IC-31, IC-40, and IC-27 by waiting too long to claw the documents back after it became aware that the materials had been produced.[7] Dkt. # 140-1 at 16.

Rule 502(b)(3) requires the party asserting privilege to "promptly take reasonable steps to rectify the error." The party must "follow up on any obvious indications that a protected

---

[7] The FTC also argues that Amazon did not claw back the July 14 presentation quickly enough. Dkt. # 140-1 at 16. Amazon waited 18 days to claw back the memo after the FTC used IC-31 at an investigational hearing. *Id.*; Dkt. # 90-2 at 33–34. Amazon says that during its review process of the July 14 memo, it discovered that the July 14 presentation had also been produced. Dkt. # 142 at 10. Amazon says that its review to determine whether other privileged documents were inadvertently disclosed "took, at most, several weeks to complete." Dkt. # 143 at 23. Thus, although the Court does not know the exact date that Amazon discovered that it disclosed the July 14 presentation, Amazon has met its burden of showing that it "promptly took reasonable steps to rectify the error" in disclosing the July 14 presentation. Fed. R. of Evidence 502(b).

ORDER - 15

communication or information has been produced inadvertently." *AdTrader, Inc. v. Google LLC*, 405 F. Supp. 3d 862, 866 (N.D. Cal. 2019) (quoting Fed. R. Evid. 502, Explanatory Notes).

Courts in the Ninth Circuit "have emphasized that claw back requests should be made immediately, with delays of even a few weeks determined to be too long." *Skansgaard v. Bank of Am., N.A.*, No. C11-0988 RJB, 2013 WL 828210, at *3 (W.D. Wash. Mar. 6, 2013) (determining that a two-month delay was not prompt); *see also AdTrader, Inc. v. Google LLC*, 405 F. Supp. 3d 862, 866 (N.D. Cal. 2019) (determining that a seven-month delay was not prompt); *Contreraz v. City of Tacoma*, No. 3:22-CV-5106, 2023 WL 4174659, at *5 (W.D. Wash. June 26, 2023) (determining that 175-day delay was not prompt); *Xu v. FibroGen, Inc.*, No. 21-CV-02623-EMC, 2023 WL 3475722, at *3 (N.D. Cal. May 15, 2023) (determining that an 11-day delay was not prompt); *Mycone Dental Supply Co Inc v. Creative Nail Design Inc*, No. C-12-00747-RS (DMR), 2013 WL 4758053, at *3 (N.D. Cal. Sept. 4, 2013) (determining that a 49-day delay was not prompt).

But the "waiver analysis is not mechanical; rather, it considers the entire circumstances surrounding the inadvertent disclosure." *Xu*, 2023 WL 3475722, at *3. Further, courts "d[o] not consider the time period in a vacuum," and instead consider the circumstances surrounding the time it takes a party to claw back a document, including whether the other party has relied on the document when making its case. *Weir v. United Airlines, Inc*, No. 19 CV 7000, 2021 WL 1517975, at *15 (N.D. Ill. Apr. 16, 2021).

As for IC-31, Amazon waited 18 days after learning about the production at an investigational hearing to claw the document back. Dkt. # 90 at 33–34. For IC-40, Amazon waited 49 days after learning about the production at an investigational hearing to claw the document back. Dkt. # 90-2 at 35. For IC-27, Amazon waited 21 days after learning about the production at an investigational hearing to claw the document back. Dkt. # 140-2 at 4. Amazon

says that the time it took to claw back the documents was reasonable given the scale of discovery—1.7 million documents across the various FTC investigations—and the condensed timeline imposed by the FTC during the investigations. Dkt. # 142 at 18.

But the size of the overall production across multiple cases does not explain Amazon's long delays in clawing back IC-31, IC-40, and IC-27 since Amazon clawed back other documents in this case within a few days. *See* Dkt. # 90-2 at 31 (clawing back the May 4 memo within two days of learning that it was produced). Amazon also argues that the FTC did not allow counsel to screen documents used at the hearings for privilege before the hearings. Dkt. # 142 at 18. But this would not have changed the timing for the claw back, it would only have changed the date that the attorneys learned about the inadvertent disclosure. Thus, Amazon has not met its burden of showing that delays of 18, 49, and 21 days were reasonable under the circumstances. *See Mycone Dental Supply Co Inc v. Creative Nail Design Inc*, No. C-12-00747-RS (DMR), 2013 WL 4758053, at *3 (N.D. Cal. Sept. 4, 2013) ("[A]t the least, Gel should have recalled the document that was used in the deposition immediately after the deposition and then conducted a more thorough and timely investigation into the rest of the production after the initial clawback request."). Because "[a]ll three elements set forth in Rule 502(b) must be met to prevent a waiver of a privilege," Amazon has waived its privilege over IC-31, IC-40 and IC-27. *In re Qualcomm Litig.*, 2018 WL 6617294, at *4 (quoting *Liles v. Stuart Weitzman*, LLC, No. 09-61448-CIV, 2010 11505149, at *2 (S.D. Fla June 15, 2010)).[8]

---

[8] Amazon's waiver of privilege for IC-31 extends to IC-6 and IC-48. When Amazon clawed these unredacted versions of the July 14 memo back, it characterized IC-6 and IC-48 as "the same (or a substantially similar) document" to IC-31. Dkt. # 90-2 at 101.

ORDER - 17

B.     In Camera Review

The only documents for which Amazon did not waive privilege are IC-9 and the July 14 presentation (IC-5, IC-18, IC-19, IC-20, IC-21).

The FTC argues that the Court should conduct an in camera review of the documents to determine whether they are privileged. Dkt. # 140-1 at 12–13. The Ninth Circuit "has [] found that *in camera* review is an acceptable means to determine whether disputed materials fit within the privilege." *In re Grand Jury Investigation*, 974 F.2d 1068, 1074 (9th Cir. 1992). Courts have discretion to conduct an in camera review if the non-moving party shows a factual basis to support "a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged." *Id.* at 1075.

As for IC-9, at issue are 10 messages that Amazon redacted from a chat between two non-attorneys. Dkt. ## 140-2 at 3; 52 at 9. Both sides agree that at least some messages in this chat are privileged because the individuals are discussing legal advice that they received from Amazon's attorneys. Dkt. # 140-1 at 8. The FTC originally identified this document as containing potentially privileged information and flagged to Amazon that it thought three of the messages contained privileged information. *Id.* Amazon later redacted 13 messages. *Id.* Amazon challenges these redactions based on its earlier assessment that those 10 messages were not privileged. *Id.* at 9, 13. Amazon describes IC-9 as a chat between two non-lawyer Amazon employees discussing "legal advice that [they] received from Amazon attorneys . . . relating to the scope of the attorney-client privilege." Dkt. # 52 at 9. Neither party devotes much briefing to whether IC-9 is privileged.

The FTC has examined the chat and determined that some, but not all, of the messages contain privileged materials. The FTC has shown a factual basis for a good-faith belief that at

ORDER - 18

least some of the messages that Amazon redacted from IC-9 are not privileged. The Court will thus exercise its discretion to conduct an in camera review of the unredacted version of IC-9 to determine whether the messages are privileged.

As for the July 14 presentation, the FTC says that the document's primary purpose was to make a business decision. Dkt. # 140-1 at 11. Amazon responds that the primary purpose was to solicit legal advice. Dkt. # 142 at 13–14. Mark England, one of Amazon's in-house attorneys, says that the presentation was prepared to provide him and another attorney "with information about specific changes that the Prime team was contemplating, so that we could provide legal advice during the July 14 Meeting regarding those contemplated changes." Dkt. # 52 at 4. But the presentation was sent to 28 non-attorneys and two attorneys, and 20 non-attorneys and two attorneys attended the meeting. Dkt. # 140-2 at 6. In an electronic chat between two Amazon employees leading the meeting, one employee said that the purpose of the meeting was to "get alignment on plan and timing of changes we have already agreed on. [W]e are trying to keep things as simple as possible to get the [customer experience] to par and mainly want to get feedback on approach and timing." Dkt. # 140-2 at 140. These facts show a reasonable, good-faith belief that, while two attorneys attended the meeting and may have offered legal advice, the primary purpose of the meeting may not have been to solicit legal advice. *See In re Grand Jury*, 23 F.4th 1088, 1094 (9th Cir. 2021) (holding "that the 'primary purpose' test applies to dual-purpose communications" when determining whether a document is protected by attorney-client privilege). The Court will exercise its discretion to conduct an in camera review of the July 14 presentation to determine whether the document is privileged (IC-5, IC-18, IC-19, IC-20, IC-21).

## IV

## CONCLUSION

The Court GRANTS the FTC's Motion to Compel as to the May 4 memo, the July 14 memo, IC-37, IC-40, and IC-27.  The Court GRANTS the FTC's request for in camera review as to IC-9 and the July 14 presentation.  The Court ORDERS Amazon to produce, by August 9, 2024:

    A. The May 4 memo (IC-1 and IC- 36) with the redactions that Amazon originally applied when it produced those documents;

    B. The July 14 memo (IC-4, IC-6, IC-17, IC-22, IC-31, IC-48) with the redactions that Amazon originally applied when it produced those documents;

    C. IC-37 with the redactions that Amazon applied when it produced the document on February 14, 2023; and

    D. IC-40 and IC-27 as Amazon originally produced the documents.

The Court further ORDERS Amazon to submit IC-9 without redactions, and the July 14 presentation (IC-5, IC-18, IC-19, IC-20, IC-21), to the Court for in camera review by Wednesday August 8, 2024.

Dated this 1st day of August, 2024.

*John H. Chun*
John H. Chun
United States District Judge