```
1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
```

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC; NEIL LINDSAY, individually and as an officer of Amazon.com, Inc.; RUSSELL GRANDINETTI, individually and as an officer of Amazon.com, Inc.; JAMIL GHANI, individually and as an officer of Amazon.com, Inc.,<br><br>Defendants. | CASE NO. 2:23-cv-00932-JHC<br><br>ORDER |

# I

## INTRODUCTION

This matter comes before the Court on Defendants' Motion to Compel Production of FTC Communications and Internal Documents. Dkt. # 146. The Court has considered: the materials filed in support of, and in opposition to, the motion; pertinent portions of the record; and the applicable law. Being fully advised, the Court DENIES the motion.

ORDER - 1

## II

### BACKGROUND

The FTC brought this case against Amazon and three Amazon executives, alleging that certain Amazon Prime sign up and cancellation methods violated Section 4 of the Restore Online Shoppers' Confidence Act (ROSCA), 15 U.S.C. § 8403, and Section 5(a) of the Federal Trade Commission Act (FTC Act), 15 U.S.C. § 45(a).  During discovery, the FTC declined to produce certain internal documents as not relevant and privileged.  Dkt. # 147 at 2.  Defendants seek four categories of documents:

(1) "Internal FTC documents reflecting the FTC's interpretation over time of ROSCA, negative options, and 'dark patterns.'"  Dkt. # 146 at 6.

(2) "Documents post-dating June 21, 2023 (the date the FTC filed its complaint) that relate to the FTC's ongoing negative option rulemaking."  *Id.* (citing 88 Fed. Reg. 24716).

(3) "Documents relating to the FTC's 2009 report titled, 'Negative Options – A Report by the staff of the FTC's Division of Enforcement' and the related workshop discussed in the report."  *Id.*

(4) "Documents in the custody of the FTC's Office of Public Affairs ('OPA'), including documents relating to the FTC's press releases about this litigation."  *Id.*

In the negotiations leading up to the motion, the FTC agreed to produce "all non-privileged documents relating to the FTC's investigation; final versions of FTC guidance, publications, policy statements, and workshops related to dark patterns, negative options, or ROSCA; and any non-privileged FTC 'internal guidelines or policies for enforcing or prosecuting the use of Dark Patterns or violations of ROSCA or any rule concerning Negative

ORDER - 2

Options.'" Dkt. # 148 at 5 (citing Dkt. #147-2 at 6). Also, the FTC has produced "non-privileged communications between the FTC and third parties and non-privileged FTC internal documents concerning any final decision as to what guidance FTC staff may provide third parties." *Id.* at 6 (citing Dkt. #147-4 at 6–7). The FTC declined to search for or produce the remaining documents. Dkt. # 147-4 at 8. Defendants now seek to compel production of these documents. Dkt. # 146 at 5. Defendants say that these documents are relevant to their defenses that:

- ROSCA is a narrow statute that does not prohibit the legitimate marketing practices described in the FTC's Complaint (Dkt. 84 at 9; Dkt. 83 at 11-12);

- The Prime flows do not violate ROSCA (Dkt. 84 at 13-27);

- The FTC's "dark patterns" allegations are unconstitutionally vague (Dkt. 84 at 28-31);

- The FTC has not provided "fair notice" of the novel statutory interpretations it is attempting to enforce in this case (Dkt. 84 at 31-34; Dkt. 83 at 18-21); and

- Civil penalties are unavailable because Defendants lacked "actual knowledge" of illegality (Dkt. 84 at 34-35; Dkt. 83 at 21-24).

Dkt. # 146 at 6. After the parties submitting briefing on the motion to compel, the Court addressed these defenses in its Order denying Defendants' Motions to Dismiss. Dkt. # 165.

### III
#### LEGAL STANDARDS

Federal Rule of Civil Procedure 26 governs discovery. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26 (b)(1). Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action." Fed. R. Evid. 401. "The relevance standard is commonly recognized as one that is necessarily

ORDER - 3

broad in scope in order 'to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Doherty v. Comenity Cap. Bank & Comenity Bank*, No. 16CV1321-H-BGS, 2017 WL 1885677, at *2 (S.D. Cal. May 9, 2017) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

"The court has broad discretion in determining relevancy for discovery purposes." *Doe v. Trump*, 329 F.R.D. 262, 270 (W.D. Wash. 2018) (citing *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005)). The party who seeks to compel discovery bears the burden of establishing relevance. *Mi Familia Vota v. Hobbs*, 343 F.R.D. 71, 81 (D. Ariz. 2022); *Doe*, 329 F.R.D. at 270–71. A "minimal showing" is required to demonstrate relevance. *O. L. v. City of El Monte*, No. 220CV00797RGKJDE, 2021 WL 926392, at *2 (C.D. Cal. Feb. 1, 2021).

## IV
### DISCUSSION

A.   Internal FTC Documents that Reflect the Agency's Interpretation of ROSCA

As to documents related to the FTC's internal discussions regarding its interpretation of ROSCA, the FTC objects on the grounds of relevance, attorney-client privilege, and deliberative process privilege. Dkt. # 148 at 7.

Defendants say that the documents are relevant to its defenses for three reasons. Dkt. # 146 at 9. First, they say that the FTC's internal discussions about ROSCA "illuminate the standards alleged to have been violated." *Id.* Second, they say that the documents are relevant to the "actual knowledge" of illegality standard required for civil penalties; and thus that they "are [] entitled to discovery of documents indicating that there is 'more than one reasonable interpretation' of ROSCA's requirements." *Id.* And third, they say that the documents are relevant to their "fair notice" defense, which "requires an objective inquiry that turns on whether a 'person of ordinary intelligence' would know what the law prohibits." *Id.* (quoting *United*

ORDER - 4

*States v. AMC Ent., Inc.*, 549 F.3d 760, 768 (9th Cir. 2008)).  Defendants contend that "documents reflecting uncertainty about what ROSCA means (or differing interpretations of ROSCA) *within the FTC*—the very agency charged with enforcing the statute" are relevant to this defense.  *Id.* (emphasis in original).

       1.       Interpretation of ROSCA

Defendants say that the FTC's internal discussions about ROSCA are relevant to "illuminate the standards alleged to have been violated." Dkt. # 146 at 9.  The FTC responds that internal agency discussions of the agency's interpretation of a statute "are irrelevant to questions of statutory interpretation." Dkt. # 148 at 8.  The Court agrees with the FTC.  The FTC's internal discussions about the meaning of ROSCA are not relevant to whether ROSCA proscribes Defendants' conduct.  *Cf. United States v. Farley*, 11 F.3d 1385, 1390 (7th Cir. 1993) ("[t]he suppositions of FTC staff members expressed in internal memoranda as to requirements of the [Hart-Scott-Rodino Antitrust Improvement] Act are not pertinent to" determining whether Defendant's action fell within an exception in the HSR Act, thus were not relevant).

Defendants argue that they "do not seek these documents for 'statutory interpretation,'" and instead "the documents are relevant to [(1)] contradict the FTC's litigation theories and [(2)] show its claims are predicated on not-yet-promulgated standards that appear nowhere in ROSCA's text." Dkt. # 150 at 2.

Parties are entitled to obtain information in discovery that "will impeach or contradict an opponent's case." *Jones v. Hawley*, 255 F.R.D. 51, 52 (D.D.C. 2009); *see also In re Packaged Seafood Prod. Antitrust Litig.*, No. 15-MD-2670 JLS (MDD), 2018 WL 4327876, at *3 (S.D. Cal. Sept. 10, 2018) ("Defendants contend that discovery is relevant because it contradicts one of Plaintiffs' theories: whether a jury should infer collusion based on innocuous competitor

ORDER - 5

communications. This is not an attention-shifting defense; rather, it seeks to counter Plaintiffs' theory of the case."). But the theory of the case that Defendants wish to "impeach or contradict" is the FTC's interpretation of ROSCA in this litigation. The Court interprets the statute using the tools of statutory construction. Internal agency interpretations of a statute "have no legal significance because they [are not] official agency positions"; if they were relevant, "these predecisional communications would possess de-facto official status." *Consumer Fin. Protection Bureau v. Navient Corp.*, No. 3:17-CV-101, 2018 WL 2088760, at *4 (M.D. Pa. May 4, 2018).

Second, to the extent that Defendants wish to argue that the internal discussions "are relevant to show the FTC manufactured a legal standard here that does not exist in the law," Dkt. # 150 at 2, "[t]his defense requires only that the district court interpret" ROSCA to determine whether the legal standards that the FTC argues apply are cognizable under the statute, *Farley*, 11 F.3d at 1390. Thus, internal FTC documents about the meaning of ROSCA are not relevant.

2. "Actual knowledge"

Defendants say that the FTC's internal discussions about ROSCA are relevant to their argument that civil penalties are not appropriate because they did not have "actual knowledge." Dkt. # 146 at 9. They say that they "are thus entitled to discovery of documents indicating that there is 'more than one reasonable interpretation' of ROSCA's requirements." *Id.* (quoting *Sec. & Exch. Comm'n v. Lent*, No. C-04-4088 CW (EMC), 2006 WL 8434734, at *4 (N.D. Cal. Jan. 12, 2006)). The FTC responds that "internal FTC discussions, to which neither Defendants nor any members of the public were privy, have no possible bearing on Defendants' knowledge (or knowledge fairly implied) of their ROSCA violations." Dkt. # 148 at 12 (citing *United States v. Wisconsin Bell, Inc.*, No. 08-C-0724, 2020 WL 13048895, at *2 (E.D. Wis. Oct. 29, 2020)

ORDER - 6

("[w]hether [defendant's] interpretation of the [law] was reasonable depends on the statutes, regulations, and the official, public statements regarding the rule," not on "[i]nternal and interagency communications")).

The FTC may seek civil penalties against any person or corporation who violated ROSCA "with actual knowledge or knowledge fairly implied on the basis of objective circumstances that such act is unfair or deceptive and is prohibited by such rule." 15 U.S.C. § 45(m)(1)(A). In its Order Denying Defendants' Motions to Dismiss, the Court said that a defendant violates ROSCA with actual knowledge or knowledge fairly implied "where a reasonable person under the circumstances would have known of the existence of the provision and that the action charged violated that provision." Dkt. # 165 at 446 (quoting *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 139 (4th Cir. 1996)).

Defendants point out that district courts are divided on whether internal agency documents are relevant to the reasonable person standard. *See* Dkt. # 150 at 4. Some district courts in the Ninth Circuit have determined that internal agency communications are relevant to the reasonableness of a person's interpretation of a statute or regulation. *See Lent*, 2006 WL 8434734, at *4; *United States ex rel. Poehling v. UnitedHealth Grp., Inc.*, No. CV 16-8697 MWF (SSX), 2018 WL 8459926, at *11 (C.D. Cal. Dec. 14, 2018).

But in *Lent,* which is easily distinguishable, the defendants sought internal agency communications to show that they were "affirmatively mislead" by the agency. 2006 WL 8434734, at *4. The court determined that the documents were relevant because "[w]hether these assurances were in fact given by [agency employees] may be informed by the [agency's] position at or about the time of these alleged representations." *Id.*

In *Poehling*, the court determined that "any documents showing that [the agency's] interpretations of 'applicable statutes, regulations, guidance documents and contractual requirements' mirrored" defendant's interpretation were relevant because they "would 'bear directly on the objective reasonableness of [defendant's] interpretations.'" 2018 WL 8459926, at *11. But the court provided no additional reasoning as to the why internal agency documents were relevant. *Id.* at *2. Thus, the Court does not find *Poehling* persuasive.

On the other hand, in *Wisconsin Bell, Inc.*, the defendant sought to compel production of internal documents from the Federal Communications Commission (FCC) and the Universal Service Administration Company (USAC) about the meaning of certain regulatory terms. 2020 WL 13048895, at *1. The defendant argued that those documents were relevant because the agencies had not defined the operative terms of the regulation that the defendant had allegedly violated, and internal documents would "be relevant to whether Wisconsin Bell knowingly violated the requirement." *Id.* The court denied the motion to compel, reasoning that "[i]nternal agency communications and internal agency interpretations of a rule cannot be relevant to whether the defendant knowingly violated the rule unless the defendant was aware of those internal communications and interpretations at the time the rule was violated." *Id.* at *2 ("Whether Wisconsin Bell's interpretation of the LCP rule was reasonable depends on the statutes, regulations, and the official, public statements regarding the rule.").

The Court finds the reasoning in *Wisconsin Bell* persuasive. Defendants seek "[i]nternal FTC documents reflecting the FTC's interpretation over time of ROSCA, negative options, and 'dark patterns'" to show that Defendants' interpretation of ROSCA was objectively reasonable. Dkt. # 146 at 6. The FTC has already agreed to produce all documents communicating its interpretations to third parties. Dkt. # 147-4 at 6–8. But the FTC's internal interpretations of

ORDER - 8

ROSCA, negative options, and dark patterns over time has no bearing on the objective reasonableness of Defendants' interpretation of ROSCA. Thus, these documents are not relevant.

### 3. "Fair notice" defense

Defendants say that the FTC's internal discussions about ROSCA are relevant to their "fair notice" defense. Dkt. # 146 at 9. They say that this "defense requires an objective inquiry that turns on whether a 'person of ordinary intelligence' would know what the law prohibits." Dkt. # 146 at 9 (quoting *AMC Ent.*, 549 F.3d at 768).

The Court rejected Defendants' fair notice argument in its Order Denying Defendants' Motions to Dismiss. Dkt. # 165 at 43–44. The Court reasoned that the FTC's "'dark pattern' theory of ROSCA" used in this litigation does not violate Defendant's due process right to fair notice of an agency's interpretation of ROSCA because such "[f]air notice concerns arise when an agency explicitly changes its official interpretation of a statute and a regulated party relied on the prior interpretation," Dkt. # 165 at 42. And Defendants did not point to a prior public interpretation of ROSCA by the FTC. *Id.* at 43.

Further, while laws that impose civil penalties must "provide a person of ordinary intelligence fair notice of what is prohibited," *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012), "regulated parties have no access to an agency's internal deliberations; thus, these communications should have no bearing upon whether the agency has given fair notice," *Exxon Mobil Corp. v. Mnuchin*, 430 F. Supp. 3d 220, 235 (N.D. Tex. 2019); *see also United States v. Weitzenhoff*, 35 F.3d 1275, 1289 (9th Cir. 1993) ("A defendant is deemed to have fair notice of an offense if a reasonable person of ordinary intelligence would understand that his or her conduct is prohibited by the law in question." (internal citation omitted)). As this order

discusses in Section IVA.2., internal agency interpretations are not relevant to the "reasonable person" standard required for civil penalties.  That same logic applies here and the Court concludes that internal agency interpretations are also not relevant to whether a "person of ordinary intelligence," or "a reasonable person of ordinary intelligence," would have fair notice of what ROSCA prohibits.[1]

B.   Documents Related to the FTC's Ongoing Negative Option Rulemaking

The FTC produced "non-privileged documents relating to third-party communications regarding the Negative Option Rulemaking (including consumer comments submitted to the FTC) dated January 1, 2013 to June 21, 2023." Dkt. # 148 at 15.  The FTC maintains that these documents are not relevant even though it produced them.  *Id.*  Defendants seek to compel production of documents that post-date the FTC's filing of this lawsuit—June 21, 2023—related to the FTC's ongoing Negative Option Rulemaking.  Dkt. # 146 at 11–12.

Defendants assert that these recent documents are relevant to show that "the current law 'does not provide clarity.'"  Dkt. # 146 at 11.  Defendants say, "When an agency 'has gone out of its way to specifically include [the disputed conduct] within its regulatory purview,' that is particularly 'revealing' evidence that prior law failed to provide adequate notice." Dkt. # 150 at 4 (quoting *United States v. Moss*, 872 F.3d 304, 314 (5th Cir. 2017)).  In *Moss*, the Department of Interior's Bureau of Safety and Environmental Enforcement (BSEE) criminally charged contractors and subcontractors of an offshore oil platform for violating the Outer Continental Shelf Lands Act (OCSLA) after a fatal accident in the Gulf of Mexico.  872 F.3d at 305.  At the time, contractors and subcontractors of offshore oil platforms had never been criminally charged

---

[1] Because these documents are not relevant, the Court need not address the FTC's arguments that attorney-client privilege and deliberative process privilege apply.  *See* Dkt. # 148 at 13.

ORDER - 10

under OCSLA, which was enacted in 1953, and defendants argued that they did not have fair notice that their conduct was subject to criminal penalties. *Id.* at 314. In determining that the contractors and subcontractors did not have fair notice, the court found it relevant that, after charging the defendants, BSEE promulgated regulations that "specifically include contractors and subcontractors within the regulatory purview." *Id.*

But *Moss* involved criminal penalties, not civil. 872 F.3d at 315. The requirements of due process are less exacting in civil cases, and "standards are especially lax for civil statutes that regulate economic activities." *FTC. v. Wyndham Worldwide Corp.*, 799 F.3d 236, 250 (3d Cir. 2015); *FTC v. Kochava Inc.*, 671 F. Supp. 3d 1161, 1177 (D. Idaho 2023) ("[T]he standard for fair notice is especially low in cases, like this one, involving civil statutes regulating economic activities.'").[2] Further, *Moss* is distinguishable because "the agency explicitly disclaimed imposing direct regulatory control on" contractors and subcontractors and later changed its position. 872 F.3d at 315. Here, in rejecting Defendants' fair notice argument, the Court noted that the FTC has not changed its public position because there are no "regulations or policy statements that reflect an official, prior interpretation of ROSCA." Dkt. # 165 at 43. Thus, *Moss* does not support Defendants' argument that the agency's later rulemaking, which is not at issue in this case, is relevant to its defense that the FTC's civil enforcement of ROSCA violates Defendants' right to due process.

---

[2] Defendants also cite *Exxon Mobil Corp. v. Mnuchin*, in which the court determined that an agency's decision to later clarify a regulation "lends 'at least some support' to the Court's conclusion that the Regulations' text fails to provide ascertainable certainty." 430 F. Supp. 3d at 233. But the "ascertainable certainty" standard does not apply here; courts in the Fifth Circuit rely on this standard in determining whether to give *Auer* deference to an agency's interpretation of its own regulation. *See Emp. Sols. Staffing Grp. II, L.L.C. v. Off. of Chief Admin. Hearing Officer*, 833 F.3d 480, 490 (5th Cir. 2016). The FTC does not argue that the Court should afford any deference to its interpretation of ROSCA.

Defendants also say that "documents about the FTC's ongoing rulemaking and proposed final rule are relevant because they will show that the standards the FTC is attempting to preemptively apply in this case did not exist during the Complaint's relevant period and are only now being promulgated." Dkt. # 146 at 13. But as discussed above in Section A.1., the FTC's interpretation of ROSCA is irrelevant to the Court's interpretation of the statute.

C.  Documents Related to 2009 Report and 2007 Workshop

Defendants seek to compel production of "all documents relating to the 2009 Negative Options Report (the 'Report') and the 2007 Workshop cited therein (the 'Workshop')." Dkt. # 146 at 14. The FTC says that these documents are not relevant because the "materials predate ROSCA (a 2010 statute) and the conduct at issue in this litigation." Dkt. # 148 at 16. But the FTC stated that it "has no objection to providing copies of the Workshop recording and transcript" and that the 2009 Report is publicly available. Dkt. # 148 at 17. Thus, the Court need not address whether these materials are relevant.

As to other documents related to the Report and Workshop, Defendants say that the documents are relevant "[b]ecause the Report and Workshop provide background for understanding the primary statute at issue." Dkt. # 146 at 14. Defendants cite no case—nor is the Court aware of any—in which a court determined that internal agency documents that pre-date the enactment of a statute are relevant to "understand" the statute at issue. Thus, Defendants do not meet their burden of showing that other documents related to the Report and the Workshop are relevant.

D.     OPA Documents

Defendants seek to compel production of documents from the FTC's OPA, "including documents and communications that relate to press releases concerning this case." Dkt. # 146 at 15.  Defendants say that these documents are relevant because "OPA was involved in drafting press statements characterizing this action as a 'challenge to alleged digital dark patterns,' a position which the FTC has now attempted to disclaim." *Id.* at 15–16.  But such materials are not relevant to whether Prime sign up and cancellation processes violate ROSCA.  As the Court noted in its Order Denying Defendants' Motions to Dismiss, "Amazon characterizes the FTC's use of the term 'dark patterns' as the announcement of a new strategy for enforcing ROSCA." Dkt. # 165 at 44 n.9.  But, the Court said, the question of whether ROSCA prohibits the practices that the FTC calls "dark patterns" has nothing to do with how the FTC labels these practices. *Id.* Thus, the FTC's litigation strategy is not relevant to Defendants' defenses that ROSCA "does not prohibit [Amazon's] legitimate marketing practices" and that "[t]he Prime flows do not violate ROSCA."  Dkt. # 146 at 6.

Defendants also say that "the press releases demonstrate ongoing shifts in the FTC's interpretations, [so] discovery of documents relating to the press releases are squarely relevant to Defendants' fair notice defenses." *Id.* at 15–16.  But they cite a case that is inapt. *See id.* at 16 (citing *Nw. Immigrant Rts. Project v. Sessions*, No. C17-716 RAJ, 2017 WL 3189032, at *5 (W.D. Wash. July 27, 2017) (determining that a regulation was "impermissibly vague" because it "created a moving target" that restricted speech)).  In the Court's Order Denying Defendants' Motions to Dismiss, the Court rejected Defendants' argument that the FTC's "dark patterns" theory of its case is unconstitutionally vague because Defendants do not argue that the *statute* is unconstitutionally vague.  Dkt. # 165 at 41 ("Defendants offer no legal authority, and the Court

ORDER - 13

cannot find any, to support their assertion that the vagueness doctrine applies to an agency's litigation strategy. Thus, the Court concludes that the vagueness doctrine does not apply here."). The Court also rejected Defendants' focus on the FTC's changing litigation strategy as a basis for their fair notice theory, reasoning that, when there is no prior agency interpretation of a statute "[t]he relevant question is not whether [Defendants] had fair notice of the *FTC*'s *interpretation* of the statute, but whether [Defendants] had fair notice of what the *statute itself* requires." Dkt. # 165 at 43 (quoting *Wyndham*, 799 F.3d at 253–54 (emphasis in original)). The FTC's press releases about this litigation and related documents are not relevant to whether ROSCA "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Fox Television Stations*, 567 U.S. at 253.

## IV
### CONCLUSION

For the reasons above, the Court DENIES Defendants' motion to compel.

Dated this 22nd day of August, 2024.

                                             John H. Chun
                                             United States District Judge