The Honorable John H. Chun

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

FEDERAL TRADE COMMISSION,

        Plaintiff,

    v.

AMAZON.COM, INC. *et al.*,

        Defendants.

No. 2:23-cv-0932-JHC

DEFENDANTS' MOTION TO COMPEL RULE 30(b)(6) DEPOSITION REGARDING THE FTC'S OFFICIAL, PUBLIC STATEMENTS ABOUT ROSCA

NOTE ON MOTION CALENDAR: January 21, 2025

ORAL ARGUMENT REQUESTED

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## I.     INTRODUCTION

Defendants seek a narrowly tailored Rule 30(b)(6) deposition on topics that should be routine for any litigation and that are at the core of this case. Over the last five years, the FTC has published official statements about the primary statute asserted in this case—ROSCA—and what that statute does and does not require. Each of these statements about ROSCA was written by FTC staff, approved by the FTC's commissioners, publicized by the FTC for the regulated community to rely on, and published either before or during the time when the FTC alleges Defendants violated ROSCA. Moreover, several of these statements specifically discuss this lawsuit and the alleged conduct. Despite this, the FTC contends that the factual bases for its public, official statements are categorically irrelevant and has stonewalled Defendants' requests for discovery. Because the FTC's official, public statements are directly relevant to central issues in dispute—*i.e.*, whether Amazon and the individual defendants knowingly violated ROSCA— Defendants move to compel a Rule 30(b)(6) deposition about those statements.

Rule 30(b)(6) depositions are a textbook discovery device to "inquire into any public statements that [a party] has made" and "the basis of those statements." *Burgess v. Daimler Truck N. Am., LLC*, 2024 WL 407476, at *4 (E.D. Wash. Feb. 2, 2024). "A Rule 30(b)(6) deponent must explain the organization's interpretation of the documents, give the reasons for the interpretation, and stand subject to cross-examination." *F.D.I.C. v. 26 Flamingo, LLC*, 2013 WL 3975006, at *6 (D. Nev. Aug. 1, 2013). Federal agencies are not exempt from this routine— but important—form of civil discovery. *See, e.g.*, *Ressler v. United States*, 2012 WL 3231002, at *1, *3 (D. Colo. Aug. 6, 2012) (ordering FAA to sit for Rule 30(b)(6) deposition regarding "proposed [] change to the FAA Air Traffic Control Handbook," including about "the factual information gathered by the FAA" and "the fact gathering process utilized by the FAA," because "inquiry about the [FAA's] fact gathering process ... may lead to the discovery of admissible evidence"); *S.E.C. v. Kovzan*, 2013 WL 653611, at *3 (D. Kan. Feb. 21, 2013) (ordering SEC to sit for 30(b)(6) deposition topics regarding "the interpretation and meaning of certain regulatory

terms and guidance and any confusion regarding the same" where the SEC had "set forth public guidance and communicated with third parties about these topics").

The FTC's public statements at issue are relevant for four reasons. *First*, the FTC's public statements about ROSCA, Defendants, and this lawsuit are relevant to the FTC's allegations in this lawsuit that Defendants violated ROSCA. *See infra* section IV(A). *Second*, the FTC's public statements—which contradict themselves, prior official FTC statements, and the FTC's positions in this lawsuit—are relevant for impeachment. *See infra* section IV(B). *Third*, the FTC's public statements about ROSCA's requirements are relevant to whether Defendants had knowledge of ROSCA's requirements, which is an essential element of the FTC's request for civil penalties. *See infra* section IV(C). *Fourth*, the FTC's public statements about ROSCA's requirements, lack of clarity, and failures to provide guidance are relevant to the as-applied due process challenge that Defendants pleaded in their answer—specifically, that finding ROSCA liability on these allegations would violate Defendants' constitutional right to fair notice. *See infra* section IV(D).

In bringing this narrow motion, Defendants have adhered to the Court's guidance. Consistent with the Court's prior orders, Defendants seek testimony related only to the FTC's "official, public statements"—not internal or informal interpretations. Dkt. 180 [MTC Order] at 7, 8. Defendants likewise seek testimony on topics showing how the FTC has changed its "prior interpretation[s] of ROSCA." Dkt. 165 [MTD Order] at 43. Defendants should be permitted discovery of these topics, which are relevant to both their defenses and the FTC's allegations. *See In re 650 Fifth Ave. & Related Properties*, 934 F.3d 147, 159–60 (2d Cir. 2019) (reversing judgment of month-long trial where court had earlier denied discovery related to "potentially dispositive affirmative defense").

## II.    BACKGROUND

ROSCA applies to marketing that uses certain "negative option feature[s]." 15 U.S.C. § 8403. The FTC statements at issue arise out of its recent rulemaking to amend its Rule Concerning Use of Prenotification Negative Option Plans ("Negative Option Rule" or "Rule").

DEFENDANTS' MOTION TO COMPEL DEPOSITION
(2:23-cv-0932-JHC) - 3

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

The FTC has long stated that the Negative Option Rule and ROSCA work together to regulate certain conduct. In amending the Negative Option Rule, the FTC thus made frequent public statements about ROSCA that are relevant to this case.

### A.    The FTC's "Negative Option Rule" and ROSCA

The FTC issued the Negative Option Rule in 1973. 38 Fed. Reg. 4896. For the next fifty years, the Rule regulated only the use of "prenotification plans"—where "consumers receive periodic announcements of upcoming merchandise shipments," "have a set period to decline," and, if they fail to affirmatively do so, "the company sends them the merchandise." 79 Fed. Reg. 44271 at 44272. In 2009, the FTC requested comments on whether to pass amendments to "expand the Rule's scope." 79 Fed. Reg. at 44272.

The FTC "decline[d] to expand the Rule" "because [of] the intervening passage of ROSCA" in December 2010. 79 Fed. Reg. at 44273. Instead, recognizing the "uncertainty regarding how ROSCA will affect the marketplace," the FTC would "continue to look at negative option practices" and "then consider, based on a more complete record, whether and how to amend the Rule." 79 Fed. Reg. at 44273-76.

### B.    The FTC Recognizes ROSCA's Vagueness

In 2019, the FTC renewed efforts to amend the Negative Option Rule through an advanced notice of proposed rulemaking. 84 Fed. Reg. 52393 [hereinafter, "ANPR"] at 52396. Therein, the FTC provided its views on the "limitations of existing regulatory requirements" and sought "comments on ways to improve" those existing requirements. ANPR at 52394, 52396 (capitalization omitted).

The FTC singled out ROSCA for special criticism. ROSCA was the only cited example to support the FTC's conclusion that existing law did "not provide clarity about how to avoid deceptive negative option disclosures and procedures." ANPR at 52396. The FTC explained that ROSCA "lacks specificity about cancellation procedures" by "requir[ing] marketers to provide a 'simple mechanism' for the consumer to stop recurring charges" without explaining "what methods would satisfy this requirement." ANPR at 52396. The FTC characterized ROSCA as

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

containing only "general provisions," but "provid[ing] no details regarding steps marketers must follow to comply with these provisions." ANPR at 52395.

### C.    The FTC Proposes a New Rule to Address ROSCA's Lack of Clarity

In April 2023, after determining that the "record demonstrate[d] that existing authorities fall short," the FTC proposed a new rule. 88 Fed. Reg. 24716 [hereinafter, "Proposed Rule" or "NPRM"] at 24732. In describing the shortcoming of existing law, the FTC renewed its statements from the ANPR about ROSCA's failure to provide "clarity" and added new criticisms of ROSCA. NPRM at 24718; *see also id.* at 24729 ("while ROSCA's cancellation provision is laudable, it has failed."). The FTC acknowledged the "unique challenges ... even for marketers trying to comply with [existing] law." NPRM at 24727. The NPRM also highlighted the views expressed by a group of 23 state attorneys ("State AGs") who commented that because ROSCA failed to provide any "concrete, bright line requirements," a new rule was "necessary to establish specific, clear rules to help businesses' compliance efforts and to allow states to easily identify nonconforming practices." NPRM at 24723.

Ultimately, the FTC proposed a new rule with "additional requirements" aimed at resolving this uncertainty. NPRM at 24725. The new standards would, among other things: make "the rules of the road clear" by eliminating "gray areas in current statutes" and addressing "ambiguity" in ROSCA; provide "more certainty" to sellers about "the type[] of information" they must disclose; and "reduce potential confusion among sellers ... regarding their compliance obligations." NPRM at 24727, 24732.

### D.    Two Months Later, the FTC Sues Amazon for ROSCA Violations

In June 2023, just two months after publicly describing the need to clarify ROSCA's requirements, the FTC filed this ROSCA suit against Amazon. *See* Dkt. 1 ¶ 1.[1] When Defendants sought discovery about the rulemaking, the FTC did not dispute that the requirements it seeks to enforce here are substantively identical to requirements proposed in the rulemaking. *See* Dkt.

---

[1] The FTC has acknowledged that its FTC Act claim restates its ROSCA theories: "The FTC admits its allegation that Amazon's conduct violates Section 5 of the FTC Act is based on the same conduct it contends also violates ROSCA." *See* Reiter Decl. Ex. 4, FTC Response to RFA 17.

DEFENDANTS' MOTION TO COMPEL DEPOSITION
(2:23-cv-0932-JHC) - 5

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

148 [MTC Opp.] at 15. Nonetheless, the FTC argued that "[u]ltimately, the fact that the FTC is promulgating a new rule says nothing about ROSCA's existing requirements." *Id.* at 16. That is incorrect—the FTC made many public statements during the rulemaking that concern ROSCA's existing requirements.

### E. An ALJ Finds the FTC Had Failed to Analyze the Rule's Incremental Impacts

During the rulemaking, as it did in this litigation, the FTC resisted providing any meaningful analysis of the proposed Rule's impacts to existing law. *See supra* sections II(C)-(D). As a result, groups of commenters invoked their rights under the FTC Act for an "informal hearing." *See* Declaration of Joseph Reiter [hereinafter, "Reiter Decl."], Ex. 5 [hereinafter, "Final Rule"] at 19 & n.48.

After multiple hearings and written submissions, Administrative Law Judge Carol Foelak agreed with the commenters. Although the FTC attempted to show that the "existing regulatory scheme" minimized the Rule's incremental impact, Judge Foelak found that the Rule would impose "several *new* requirements ... that would require changes in existing practices." *See* Reiter Decl., Ex. 6 [hereinafter, "ALJ Order"] at 7 (emphasis added.)[2] Judge Foelak also noted the inconsistency between the FTC's assertion that the Proposed Rule would not impose significant new impacts and the FTC's statements in the NPRM about "widespread problems and abuses" and "gaps in the existing laws and regulations." ALJ Order at 7.

### F. The FTC's Final Rule Imposes Requirements Invoked by the FTC in this ROSCA Case

The Final Negative Option Rule was published in October 2024 with the express purpose of "clarif[ying] existing requirements," "provid[ing] a consistent legal framework," and "provid[ing] clarity about how to avoid deceptive negative option disclosures and procedures." Final Rule at 157. The FTC wrote that the Final Rule *now* provides clear standards for sellers"

---

[2] *See also* ALJ Order at 7 (listing as "new" the requirements of "understandable clear and conspicuous display of disclosures in plain language; express informed consent to the negative option feature separately from the rest of the transaction; simple cancellation mechanism ('click to cancel'); a simple 'yes' or 'no') means to allow customers to decline to receive any additional offers ('saves') during the cancellation process.").

DEFENDANTS' MOTION TO COMPEL DEPOSITION
(2:23-cv-0932-JHC) - 6

about their disclosure obligations "and what constitute 'simple mechanisms'" for cancellation. Final Rule at 157 (emphasis added).

The Final Rule enacted many *new* requirements that the FTC has claimed in this case are already imposed by ROSCA, including:

- A new definition of "Clear and Conspicuous" that requires all disclosures to be "easily noticeable (*i.e.*, difficult to miss)" and online disclosures to be "unavoidable" (Final Rule at 223-24);

- A requirement to "[o]btain the consumer's unambiguously affirmative consent to the Negative Option Feature offer separately from any other portion of the transaction" (Final Rule at 227);

- A requirement that certain "Important Information" be disclosed "immediately adjacent to the means of recording the consumer's consent" (Final Rule at 225-26); and

- Requirements that the "simple mechanism" to cancel "be at least as easy to use as the mechanism the consumer used to consent to the Negative Option Feature" and be provided "through the same medium" as enrollment (Final Rule at 228).

Each of these new requirements mirror the FTC's criticisms of Amazon's flows in this case.[3]

## G. The FTC's Final Rule Describes ROSCA's Limited Reach and Cites Repeatedly to this Litigation

Given Judge Foelak's findings, the Final Rule included a "final regulatory analysis" that analyzed the Rule's effects "relative to the *existing regulatory baseline*." Final Rule at 159 (emphasis added). "For consumers enrolling in negative option plans online," that "existing regulatory baseline [is] ROSCA." Final Rule 164. Thus, for the first time, the FTC was forced to

---

[3] *See* Dkt. 125 [MTD Opp.] at 4 ("The FTC's Complaint more than plausibly alleges ordinary consumers would not readily notice and understand three material terms of the Prime enrollment transaction ...."); *id.* at 6 ("Here, the relevant context—primarily, Amazon's strategy of embedding its Universal Prime Decision Page ('UPDP') and Single Page Checkout ('SPC') Prime enrollment pages within the product checkout process—made it unlikely many ordinary consumers would notice Amazon had enrolled them in a Prime free trial or that the Prime free trial automatically converted to a paid membership after 30 days"); *id.* at 26 ("SPC *only* displays Prime's terms and conditions far below, rather than immediately below, the SPC 'Place your order' button."); Ex. 8 [FTC Suppl. R&Os to Amazon ROGs – Set 1] at ROG No. 8 ("Although consumers may have enrolled in Prime through devices other than computers and smartphones, such as through the Prime Video application on the Amazon FireStick and Fire TV, they could not cancel via these same technologies.").

DEFENDANTS' MOTION TO COMPEL DEPOSITION
(2:23-cv-0932-JHC) - 7

define the scope of ROSCA's requirements and compare those existing requirements to the Final Rule. "ROSCA matter[ed] for the purposes of assessing the incremental benefits of the final Rule relative [to the] regulatory baseline." Final Rule at 180 n.581.

Through this analysis, the FTC acknowledged that ROSCA does not impose the requirements reflected in the Rule. For instance, while a "ROSCA-compliant online cancellation" must already be "simple," the Final Rule mandates even "*simpler* cancellation" than "the existing regulatory baseline [in] ROSCA." Final Rule at 162–64 (emphasis added). Additionally, the FTC provided a 180-day "grace period" for companies "to come into full compliance" with the Rule's enrollment and cancellation requirements. Final Rule at 152. This contrasted with the shorter 60-day compliance period for standards in the Final Rule that the FTC believed were "already require[d]" by "existing law." Final Rule at 152-53. While the FTC's analysis did not identify each incremental change compared to ROSCA, the FTC did acknowledge that those changes in aggregate were substantial. For instance, the FTC calculated that only "18.75% of online sellers" are in "compliance" with the Final Rule's new cancellation requirements, and that newly imposed "faster cancellations" would generate billions in consumer savings compared to ROSCA's "baseline." Final Rule at 159, 161, 193.

Also for the first time, the FTC acknowledged the applicability of the rulemaking to *this litigation*. To support the requirements imposed by the Final Rule, the FTC repeatedly cited this case. Final Rule at 86 n.305 & 137 n.454; *see also id.* at 7-8 n.10; *id.* at 22-23 n.60; *id.* at 26 n.74; *id.* at 92 n.314. For example, in response to "concern[s] regarding the timing of the disclosures where a consumer previously elected to save billing information with the seller," the FTC— citing solely to this Court's May 2024 motion to dismiss order —"now clarifie[d]" that sellers "must make the required disclosures prior to obtaining the consumer's consent to use saved account information." Final Rule at 86 n.305. The FTC also cited other information about Amazon Prime as a basis for the Final Rule's requirements. *E.g.*, Final Rule at 110 n.374; *id.* at 192 n.601. In fact, to estimate the average cancellation time for "ROSCA-*Compliant* Online

DEFENDANTS' MOTION TO COMPEL DEPOSITION
(2:23-cv-0932-JHC) - 8

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Cancellation" methods, the FTC relied on a study that assessed the Prime cancellation flow. Final Rule at 165-66 & nn.544-45 (emphasis added); *see also id.* at 192 n.601.

### H.    Defendants Seek Rule 30(b)(6) Testimony About the Rulemaking

Defendants served a 30(b)(6) notice in June 2024. For over a month—including after Defendants significantly narrowed their topics—the FTC maintained it would "seek a protective order precluding the entire deposition." *See* Reiter Decl., Ex. 1 at 2. The parties subsequently agreed to proceed with an initial deposition on certain topics, while holding the remainder (including those specifically about the rulemaking) in abeyance. *See* Reiter Decl., Ex. 2 [hereinafter, "Defs.' Oct. 30 Ltr."] at 1.

The FTC designated Assistant Director of the Enforcement Division, Amanda Basta, as its witness for the initial 30(b)(6) deposition. *E.g.*, Reiter Decl., Ex. 7 [hereinafter, "Basta Dep."] at 7:13-19, 39:6-11. While the ANPR and Proposed Rule were relevant to several topics for which Ms. Basta had been designated, she explicitly stated she was "not the designee for the Commission" on the rulemaking. Basta Dep. 440:14-441:11. The FTC also consistently lodged "scope" objection to questions about the rulemaking. Basta Dep. 182:16-185:2, 187:22-193:22. Ms. Basta stated she could not provide information about the ANPR or Proposed Rule beyond what could be learned "by reading the FTC's rationale as articulated" in those documents, including because the Final Rule had not at that time been published. Basta Dep. 193:8-11, 194:17-195:2. In fact, rather than explain the FTC's rulemaking statements, Ms. Basta disagreed with some of them verbatim. Basta Dep. 180:7-14; *see also infra* section IV(B).

After that deposition, Defendants followed up with the FTC regarding the remaining topics. Defs.' Oct. 30 Ltr. at 1. In light of the recently published Final Rule, Defendants sought additional testimony on the FTC's public statements about ROSCA made during the rulemaking, including:

- <u>Topic 30</u>: Whether and to what extent the requirements promulgated in the rulemaking are inconsistent with or different from the requirements the FTC has asserted under ROSCA in this case. Defs.' Oct. 30 Ltr. at 6. As noted above, the FTC has made multiple

DEFENDANTS' MOTION TO COMPEL DEPOSITION
(2:23-cv-0932-JHC) - 9

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

public statements contrasting the Rule to "existing law" and to what is required for "ROSCA-compliant" marketing. Final Rule 152-53, 165-66. These statements, moreover, have been inconsistent throughout the rulemaking.[4]

- <u>Topic 32</u>: The factual support for and meaning of the FTC's public statements about ROSCA in the 2019 ANPR, including statements that ROSCA "provides no details regarding steps marketers must follow to comply with [ROSCA's] provisions" and fails to "specify what methods would satisfy [ROSCA's cancellation] requirement." Defs.' Oct. 30 Ltr. at 6-7.

- <u>Topic 33</u>: The factual support for and meaning of the FTC's public statements about ROSCA in the 2023 Proposed Rule, including statements about the shortcomings of "existing law" (*e.g.*, that existing law "does not provide clarity" and contains "ambiguity" and "gray areas") and statements about the ways in which the Proposed Rule's new standards would improve upon existing requirements (*e.g.*, that the Proposed Rule will "mak[e] the rules of the road clear," provide "more certainty" to sellers, and "reduce potential confusion among sellers" about "their compliance obligations"). Defs.' Oct. 30 Ltr. at 7-8.

In response, the FTC refused "to make a Rule 30(b)(6) designee available." Reiter Decl., Ex. 3 at 1. The parties conferred telephonically but were unable to reach agreement, thus Defendants informed the FTC that they would file this motion. Reiter Decl., ¶ 6.

## III.    LEGAL STANDARDS

"Rule 30(b)(6) expressly applies to a government agency and provides neither an exemption from Rule 30(b)(6) nor special consideration concerning the scope of discovery." *S.E.C. v. Kramer*, 778 F. Supp. 2d 1320, 1327 (M.D. Fla. 2011). "[T]he deposition-discovery rules are to be accorded a broad and liberal treatment." *In re Phenylpropanolamine (PPA) Prod.*

---

[4] *Compare* Final Rule at 39 ("In fact, all the substantive requirements in the Rule are already extant under Section 5 of the FTC Act, ROSCA, or the TSR."), *with* Final Rule at 159-61 (calculating "between $6.1 and $49.3 billion" in "incremental" benefits of the Rule, as measured "against the existing regulatory baseline that consists primarily of ROSCA, the TSR, and Section 5 enforcement"), *and with* NPRM at 24732 ("[T]he proposed amendments contain certain provisions that are similar to or expand on requirements in the TSR as well as ROSCA.").

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Liab. Litig.*, 2006 WL 8436386, at *1 (W.D. Wash. Mar. 13, 2006). It therefore "is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error." *Kramer*, 778 F. Supp. 2d at 1327. "[T]he party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections with competent evidence." *Doe v. Trump,* 329 F.R.D. 262, 270 (W.D. Wash. 2018) (cleaned up).

## IV.    ARGUMENT

The FTC's public statements about ROSCA and Defendants are relevant: (1) to the FTC's allegations that Defendants violated ROSCA; (2) as potential impeachment material; (3) to defend against the FTC's civil penalties demand; and (4) to substantiate the affirmative defenses pleaded in Defendants' answer.

### A.    The FTC's Official Public Statements About ROSCA Are Relevant to the FTC's ROSCA Claims

When a party makes public statements that even "arguably relate to the subject of a lawsuit, information about such statements" is generally "discoverable." *Chambers v. Cap. Cities/ABC*, 159 F.R.D. 429, 430 (S.D.N.Y. 1995). Thus, as the FTC has acknowledged, agencies are often ordered to produce information "related to the specific action" in discovery. Dkt. 148 [MTC Opp.] at 10 (citing, e.g., *FDIC v. Appleton*, 2012 WL 12891381, at *2 (C.D. Cal. Oct. 15, 2012) and *SEC v. Lent*, 2006 WL 8434734, at *5 (N.D. Cal. Jan. 12, 2006)); *see also Ressler*, 2012 WL 3231002, at *1 (compelling Rule 30(b)(6) deposition of the FAA about an NTSB safety recommendation briefly referenced in a proposed "change to the FAA Air Traffic Control Handbook," even where the NTSB recommendation was not itself "admissible").

The Rulemaking Topics all concern the FTC's public statements about the subject matter of this lawsuit. (*See supra* section II(H).) Given the multiple public references in the Final Rule to Defendants, this lawsuit, Prime, and ROSCA, there should be no dispute that the Rulemaking Topics relate to discoverable facts. *See supra* sections II(F)-(G). Defendants must be permitted to explore the statements made about them, including, for instance, the FTC's inclusion of the

Prime cancellation flow to calculate the average time for a "ROSCA-compliant cancellation" method. Final Rule at 165-66 & nn. 544-45; *see also id.* at 192 n. 601. The Rule 30(b)(6) deposition would, at minimum, be relevant to confirm that the FTC's statements lack further factual support and to obtain the FTC's sworn positions on these topics. *See Ressler*, 2012 WL 3231002, at *3 (the noticing party "might inquire about whether there has been any fact gathering"; "where it is reported, if at all"; and "why the inquiry has taken so long"); *United States v. Holland*, 2017 WL 1354178, at *6 (E.D. Mich. Apr. 13, 2017) ("[T]o the extent that [the government], as it claims, has no further information to provide regarding the certificates other than the information on the face of the documents, [the government's] Rule 30(b)(6) witness may state so on the record at the deposition.").[5]

### B.    The FTC's Public Statements About ROSCA and Defendants Are Potential Impeachment

The Rulemaking Topics are also relevant for impeachment. The FTC has taken positions in this case that contradict the FTC's official positions as reflected in public rulemaking. For example, when the FTC's prior 30(b)(6) witness was asked if she agreed "that the current framework does not provide clarity about how to avoid deceptive negative option disclosures and procedures"—a statement that appeared verbatim in both the 2019 ANPR and 2023 Proposed Rule—she "disagree[d]." Basta Dep. at 181:6-13. Similarly, in this case, the FTC has criticized Amazon for stating that "the FTC agrees that attempts to retain consumers by offering them deals just prior to, rather than just after, cancellation is 'pro-consumer.'" Dkt. 125 [MTD Opp.] at 44 n.23. But in the Final Rule, the FTC *declined* to restrict save offers "prior to cancellation" because pre-cancellation offers "provide necessary and valuable information about cancellation" to consumers. Final Rule at 57, 134.

---

[5] The FTC has asserted that "[a]nything beyond [the public] documents ... would necessarily be [privileged]." Reiter Decl. Ex. 3 at 2. But facts underlying the FTC's public statements are not privileged. *See Valley Forge Ins. Co. v. Washington Square Hotel Holdings LLC*, 2022 WL 17716518, at *1 (W.D. Wash. Dec. 15, 2022) (noting that the work product doctrine "does not protect facts ... contained within the work product."). Regardless, the proper way for the FTC to assert any privileges is to object on the record. *See, e.g. Ressler*, 2012 WL 3231002, at *3 (rejecting privilege objections to 30(b)(6) topics because the government "may object and instruct a witness not to answer where inquiry crosses the line from permissible discovery to seeking privileged information").

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

The Court has recognized that parties are broadly "entitled to obtain information in discovery that 'will impeach or contradict an opponent's case.'" Dkt. 180 [MTC Order] at 5. But the Court rejected Defendants' impeachment argument in Defendants first motion to compel because: (i) "the theory of the case that Defendants [sought] to 'impeach or contradict' [was] the FTC's interpretation of ROSCA"; and (ii) "[i]nternal agency interpretations"—unlike "official agency positions"—"have no legal significance" to the "statutory construction" conducted by courts. (*Id.* at 6.) Neither exception applies to this motion.

*First*, Defendants seek facts, not legal interpretations. The FTC statements underlying the Rulemaking Topics contain factual assertions about how the regulated community has understood ROSCA's requirements and how certain marketing practices have impacted consumers. What facts did the FTC rely on to conclude that existing law did "not provide clarity about how to avoid" liability? ANPR at 4. How did the FTC decide that "the average time for consumers to read required disclosures and provide consent to a negative option plan online is 30 seconds to one minute"? Final Rule at 164. Why did the FTC conclude that "even marketers trying to comply with the law" have faced "unique challenges"? NPRM at 24727. What was the FTC's basis for stating that "many marketers" had taken "advantage of [ROSCA's] ambiguity"? NPRM at 24728. What "substantial evidence" supported the FTC's claim that providing cancellation through "web-based chat" was not an appropriate cancellation method? Final Rule at 125 n. 429. Understanding whether "any fact gathering" supports these assertions may undermine the FTC's positions on similar topics in this litigation. *Ressler*, 2012 WL 3231002, at *3.

*Second*, the Rulemaking Topics target the FTC's "official, public statements." Dkt. 180 [MTC Order] at 7. As the FTC has acknowledged, FTC rulemaking documents are drafted by FTC staff, voted on and approved by FTC Commissioners, and published under the Commission's name. Basta Dep. 187:18-188:2, 190:17-191:10. Even under the FTC's restrictive reading of relevance, these "official agency positions" are fair game for discovery. Dkt. 148 [MTC Opp.] at 8.

DEFENDANTS' MOTION TO COMPEL DEPOSITION
(2:23-cv-0932-JHC) - 13

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Courts permit discovery of potential impeachment material far less relevant than that sought by Defendants here. In *S.E.C. v. Goldstone*, 2014 WL 4349507, at *40 (D.N.M. Aug. 23, 2014), the SEC alleged that defendants had misrepresented their "intent and ability to hold" onto purchased securities through financial crisis "until [the securities'] value recovered." *Id.* The defendants sought a Rule 30(b)(6) deposition of the SEC about "public statements and interpretations from[] SEC employees," including "the SEC's expression of surprise" about "the downturn in [financial] markets." *Id.* While the SEC argued that these topics had "marginal or no relevance" to assessing defendants' alleged conduct, "[t]he Court disagree[d]." *Id.* The defendants were permitted to ask about those statements "to discredit the SEC" and to support a potential defense that "[i]f the SEC could not predict the downturn," "the SEC should not criticize the Defendants for not foreseeing certain things." *Id.* Even if seemingly attenuated, the defendants' "purpose [met] the relevance standard, because [their] strategy [would be] appropriate for trial and is fair game for litigation." *Id.*[6]

### C.    The Rulemaking Topics Are Relevant to the FTC's Demand for Civil Penalties

Because the FTC is seeking civil penalties, it bears the burden to show that Defendants acted "*with actual knowledge* or *knowledge fairly implied on the basis of objective circumstances.*" Dkt. 165 [MTD Order] at 46 (emphasis in original). In ruling on Defendants' first motion to compel, the Court acknowledged that "some district courts in the Ninth Circuit have determined that internal agency communications are relevant to" this inquiry, but found more persuasive the reasoning of courts within the Seventh Circuit that have restricted discovery to the agency's "official, public statements regarding the rule[s]"at issue. Dkt. 180 [MTC Order] at 7, 8 (quoting *United States v. Wisconsin Bell, Inc.*, 2020 WL 13048895, at *2 (E.D. Wis. Oct.

---

[6] *See also, e.g.*, *United States v. Holland*, 2017 WL 1354178, at *6 (E.D. Mich. Apr. 13, 2017) (ordering 30(b)(6) deposition about government's "issuance of [] certificates" regarding certain tax liabilities that the government was not "attempting to collect through this action" because such information may "undermine[]" the government's allegations about plaintiff's intent); *Fed. Deposit Ins. Corp. v. Hutchins*, 2013 WL 12109446, at *7 (N.D. Ga. Oct. 25, 2013) (ordering 30(b)(6) deposition of the FDIC about "former co-defendants in this case" because defendant was "entitled to pursue questions ... to attack" the FDIC's allegations that defendant's own actions caused certain losses, even if that defense "in the end may not stand legally" and "the information garnered [at the deposition may] not be admissible at trial").

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

29, 2020).[7] Consistent with the Court's prior reasoning, Defendants seek to compel testimony about the FTC's "official, public statements." *Id.*[8] The Rulemaking Topics seek testimony related to at least three categories of relevant "official, public statements." Dkt. 180 [MTC Order] at 7, 8.

(1) <u>Statements regarding regulatory confusion</u>: In many instances, the FTC's public statements go to the core of Defendants' civil penalties argument: that ROSCA does not provide sufficient guidance to regulated entities—let alone to individual defendants—and Defendants thus could not have known that their alleged conduct violated ROSCA. *E.g.*, NPRM at 24718 ("the current framework does not provide clarity about how to avoid deceptive negative option disclosures and procedures"); *id.* at 24727 (describing the "unique challenges presented by negative option offers, even for marketers trying to comply with the law"); *id.* at 24738 (describing "the need for clearer guardrails in this area"). The information underlying the FTC's admissions about lack of legal clarity is directly relevant to whether the law was sufficiently clear. *See United States v. Anzalone*, 766 F.2d 676, 681 (1st Cir. 1985) (defendant lacked notice of legal requirement where "the government itself [had] admitted" that "the regulations were silent on the propriety" of the practice at issue); *see also United States v. AMC Ent., Inc.*, 549 F.3d 760, 769 (9th Cir. 2008) ("We decline to require AMC to have determined the precise meaning of the regulation when the government did not do so.").

(2) <u>Explanations of particular ROSCA requirements</u>: In deciding whether to supplement ROSCA's provisions, the FTC repeatedly attempted to explain what ROSCA's existing provisions do and do not require. For instance, the FTC's new cancellation requirements would remedy the "ambiguity" in ROSCA's "cancellation provision" with a "clearer guardrail":

---

[7] While Defendants contend that *Wisconsin Bell* is wrong, even that case does not excuse the FTC's positions here. *Wisconsin Bell* was an FCA case where the government entities were "third parties [to the] litigation," which greatly reduces their discovery obligations compared to the FTC as plaintiff. *See* 2020 WL 13048895, at *1. Moreover, in response to a subpoena requesting "nearly two decades" of "internal information or communications relating to the interpretation and enforcement" of relevant requirements, the government <u>*did*</u> produce "most of the documents requested" by the defendants. *Id.*

[8] Defendants believe discovery should be permitted on broader topics, including the FTC's internal communications concerning ROSCA and the rulemaking, but respect the Court's prior order. Dkt. 180 [MTC Order] at 7, 8.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

namely, that cancellation mechanisms "be at least as simple as the one used to initiate the charge." NPRM at 24728. In other words, the FTC proposed a "clearer" requirement specifically because ROSCA had *not* provided such clarity. *Id.* The Final Rule also contains descriptions of "ROSCA-compliant" marketing, including using "an average of two minutes and 4 seconds" as an estimated average time to complete a "ROSCA-Compliant Online Cancellation" (Final Rule at 165-66) and stating that an online marketer could comply with ROSCA without offering any online cancellation method. Final Rule at 164 ("A facially ROSCA-compliant, 'simple' telephonic cancellation may ... require more time and effort from consumers than was expended" to "enroll[] in the negative option plan[] [o]nline").

(3) <u>Acknowledgements of new requirements not in existing law</u>: The FTC seeks to hold Defendants liable for violating multiple legal requirements that were clarified through the rulemaking completed years *after* the conduct at issue. *See supra* sections II(C)-(D) & (F). Defendants are entitled to explore the FTC's public statements to show they cannot be charged with knowledge of a "requirement added" to the law after the alleged conduct occurred. *Ruangswang v. Immigr. & Naturalization Serv.*, 591 F.2d 39, 44-46 (9th Cir. 1978).[9]

In sum, the FTC's "official, public statements" about ROSCA are the principal focus of the proposed Rulemaking Topics. Dkt. 180 [MTC Order] at 7. As the Court has recognized, an agency's official statements about the governing law are relevant to assessing a defendant's "knowledge" of the law. *Id.* at 7-8. Defendants will have a "right to present [such] circumstantial evidence of [their] lack of knowledge" at trial. *United States v. Rahm*, 993 F.2d 1405, 1414 (9th

---

[9] The Court previously distinguished two of the cases that the Defendants cited that applied this principle in fair notice cases. Dkt. 180 [MTC Order] at 10-11 (citing *United States v. Moss*, 872 F.3d 304, 314 (5th Cir. 2017) and *Exxon Mobil Corp. v. Mnuchin*, 430 F. Supp. 3d 220, 235 (N.D. Tex. 2019). But the basic logic that an agency should not be able to enforce standards that have been proposed but not yet enacted extends beyond fair notice and has been invoked in many cases. *See, e.g.*, *Patel v. Immigr. & Naturalization Serv.*, 638 F.2d 1199, 1202 & n.2 (9th Cir. 1980) (agency abused discretion by attempting to enforce in adjudication "a requirement ... which had been expressly discarded during [earlier] rulemaking proceedings" but later enacted as an "express requirement" in a "subsequently amended regulation"); *Lara v. Cinemark USA, Inc.*, 207 F.3d 783, 788 (5th Cir. 2000) (rejecting DOJ interpretation of existing regulation where new "proposed regulations" showed that "additional language will be necessary to codify the DOJ's litigating position"); *see also Olesh v. Dreyfus Corp.*, 1994 WL 780179, at *13 (E.D.N.Y. Aug. 15, 1994) ("If companies were legally required to disclose this information as material, there would be no need for a change in the SEC's disclosure rules.").

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Cir. 1993). But even if Defendants' arguments were to ultimately fail on the merits, Defendants must have the chance to fully develop their theories. *See, e.g.*, *Kovzan*, 2013 WL 647300, at *3 (explaining relevance for discovery purposes does not turn on whether "the information [a party] seeks will ultimately be admissible or that the [factfinder] will find that this information does indeed bear upon the issues for which [the party] seeks it").

### D.    The Rulemaking Topics Are Relevant to Defendants' Due Process Defense

The FTC's public statements about ROSCA are also relevant to Defendants' due process defense. *See* Dkt. 171 at 65-69. At the motion to dismiss stage, the Court rejected an argument that "the FTC's dark pattern [litigation] theory" was facially unconstitutional. Dkt. 180 [MTD Order] at 9. But Defendants have now pleaded a traditional as-applied challenge to ROSCA. *See* Dkt. 171 at 65-69. Defendants' as-applied challenge to ROSCA relies on settled law and requires the development of case-specific facts about whether ROSCA can fairly be applied against these Defendants in these circumstances. *See Fed. Trade Comm'n v. LendingClub Corp.*, 2020 WL 2838827, at *27 (N.D. Cal. June 1, 2020) (denying FTC motion to dismiss "as applied" fair notice affirmative defense, which relied on "the specific facts of this case").

The Rulemaking Topics are relevant to Defendants' due process defense for several reasons:

*First*, as the Court previously recognized, the fundamental inquiry for this due process defense is whether a person of ordinary intelligence, looking at the relevant "statutes, regulations, and the [agency's] official, public statements," would know what the law prohibits. Dkt. 180 [MTC Order] at 8-9; *see also* Dkt. 165 [MTD Order] at 41). As explained in section IV(A) above, the Rulemaking Topics address these very issues by seeking information about and the factual support for the FTC's official public statements about ROSCA's lack of clarity. *See* Dkt. 180 [MTC Order] at 10 (reasoning that the "same logic applies" to determining relevance for due process as for civil penalties); *see also Kovzan*, 2013 WL 653611, at *1 (ordering SEC to sit for deposition on "topics concern[ing] the interpretation and meaning of certain regulatory terms and guidance and any confusion regarding those terms and guidance").

DEFENDANTS' MOTION TO COMPEL DEPOSITION
(2:23-cv-0932-JHC) - 17

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Second*, the FTC's statements show that it is attempting to retroactively apply the Rule's new requirements in this case without fair notice. For certain parts of the Rule, the FTC explicitly acknowledged that a particular requirement was not imposed by ROSCA, such as the requirement that cancellation "be at least as simple" as enrollment. NPRM at 24728. But even when the FTC did not explicitly admit that ROSCA did not impose a given requirement, the simple fact that the FTC went through onerous notice-and-comment rulemaking is relevant to showing that ROSCA did not already provide sufficient notice of that requirement. *See Ford Motor Co. v. FTC*, 673 F.2d 1008, 1010 (9th Cir. 1981) (agency failed to provide sufficient notice when "pending rulemaking proceeding [sought] to remedy, more or less, the same credit practices" at issue in the action); *United States v. Exxon Corp.*, 87 F.R.D. 624, 633 (D.D.C. 1980) (refusing to allow the DOE to "enforce, retrospectively, new regulations that clarify a situation unaddressed by the prior regulatory scheme"); *see also supra* note 8 (compiling cases).

*Third*, the FTC's public statements about ROSCA's failure to provide clear standards demonstrate the potential for "arbitrary" and "discriminatory" enforcement. *Butcher v. Knudsen*, 38 F.4th 1163, 1175, 1178 (9th Cir. 2022). In the Final Rule, for instance, the FTC stated that while ROSCA provides sufficient guidance to catch "blatant violations," the statute's lack of specificity "makes law enforcement actions much more difficult for closer calls, even when these practices cause significant harm." Final Rule at 14. This echoed the State AG comments highlighted in the Proposed Rule that ROSCA fails to provide the sort of "concrete bright line requirements that allow enforcement agencies to readily identify violations" and that new standards were "necessary to establish specific, clear rules." NPRM at 24723. Due process precludes the attempted enforcement of laws that "provide sufficiently specific limits on [officials'] enforcement discretion." *Butcher*, 38 F.4th at 1175.

*Fourth*, the FTC's public statements about ROSCA during the rulemaking evince conflicting views about ROSCA at the FTC, including by the Enforcement Division attorneys leading this litigation. *See supra* section IV(B). This sort of intra-agency conflict is relevant to whether Defendants would have had fair notice of ROSCA's requirements. *See Desertrain v.*

DEFENDANTS' MOTION TO COMPEL DEPOSITION
(2:23-cv-0932-JHC) - 18

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*City of Los Angeles*, 754 F.3d 1147, 1152 (9th Cir. 2014) (sustaining vagueness challenge, relying on deposition testimony that "revealed conflicting views among the enforcing officers as to what [the relevant statute] means"); *Lloyd C. Lockrem, Inc. v. United States*, 609 F.2d 940, 944 (9th Cir. 1979) (finding due process violation in light of "confusion" within the agency, since a private party "should not be held to standards, the application of which cannot be agreed upon by those charged with their enforcement"); *Gen. Elec. Co. v. U.S. E.P.A.*, 53 F.3d 1324, 1332 (D.C. Cir. 1995) ("[I]t is unlikely that regulations provide adequate notice when different divisions of the enforcing agency disagree about their meaning").

## V.    CONCLUSION

Even when the government is the plaintiff, it is "fundamentally unjust" for discovery to be treated as a "one-way proposition." *S.E.C. v. McCabe*, 2015 WL 2452937, at *3 (D. Utah May 22, 2015). The FTC "voluntarily brought an action ... making serious allegations," and Defendants "are entitled to broad discovery to understand and prepare a defense against these allegations." *Id.* One of the primary areas of discovery that Defendants anticipated would support their defenses has already been foreclosed. *See* Dkt. 180. This narrow motion is consistent with the Court's prior order and seeks a Rule 30(b)(6) deposition on topics that should be routine for any litigation. Defendants respectfully request that the motion be granted.


DATED this 31st day of December, 2024.


I certify that this memorandum contains 6,674 words, in compliance with the Court's December 9, 2024 order (Dkt. 207).

DEFENDANTS' MOTION TO COMPEL DEPOSITION
(2:23-cv-0932-JHC) - 19

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

DAVIS WRIGHT TREMAINE LLP

By _s/ Kenneth E. Payson_
   Kenneth E. Payson, WSBA #26369
   James Howard, WSBA #37259
   920 Fifth Avenue, Suite 3300
   Seattle, WA 98104-1610
   Telephone: (206) 622-3150
   Fax: (206) 757-7700
   E-mail: kenpayson@dwt.com
          jimhoward@dwt.com

HUESTON HENNIGAN LLP

   John C. Hueston*
   Moez M. Kaba*
   Joseph A. Reiter*
   523 West 6th Street, Suite 400
   Los Angeles, CA 90014
   Telephone: (213) 788-4340
   E-mail: jhueston@hueston.com
          mkaba@hueston.com
          jreiter@hueston.com

COVINGTON & BURLING LLP

   Stephen P. Anthony*
   Laura Flahive Wu*
   Laura M. Kim*
   John D. Graubert*
   850 Tenth Street, NW
   Washington, DC 20001
   Telephone: (206) 662-5105
   E-mail: santhony@cov.com
          lflahivewu@cov.com
          lkim@cov.com
          jgraubert@cov.com

   John E. Hall*
   415 Mission Street, Suite 5400
   San Francisco, CA 94105
   Telephone: (415) 591-6855
   E-mail: jhall@cov.com

   Megan L. Rodgers*
   3000 El Camino Real
   Palo Alto, CA 94306
   Telephone: (650) 632-4734
   E-mail: mrodgers@cov.com

DEFENDANTS' MOTION TO COMPEL DEPOSITION
(2:23-cv-0932-JHC) - 20

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1
2
3

Anders Linderot*
620 Eighth Avenue
New York, NY 10018
Telephone: (212) 841-1000
Email: alinderot@cov.com

4

*admitted pro hac vice

5
6

Attorneys for Defendants AMAZON.COM, INC.,
NEIL LINDSAY, RUSSELL GRANDINETTI,
AND JAMIL GHANI

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax