UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC; NEIL LINDSAY, individually and as an officer of Amazon.com, Inc.; RUSSELL GRANDINETTI, individually and as an officer of Amazon.com, Inc.; JAMIL GHANI, individually and as an officer of Amazon.com, Inc.,<br><br>Defendants. | CASE NO. 2:23-cv-00932-JHC<br><br>ORDER |

# I
### INTRODUCTION

This matter comes before the Court on Defendants Amazon.com, Inc., Neil Lindsay, Russell Grandinetti, and Jamil Ghani's Motion to Compel Rule 30(b)(6) Deposition Regarding the FTC's Official Public Statements About ROSCA. Dkt. # 214. The Court has considered the materials filed in support of and in opposition to the motion, the rest of the record, and the

ORDER - 1

applicable law. The Court finds oral argument unnecessary. For the reasons below, the Court DENIES the motion.

## II
### BACKGROUND

The Federal Trade Commission (FTC) sued Amazon.com, Inc. and three Amazon executives, Neil Lindsay, Russell Grandinetti, and Jamil Ghani, alleging that they violated Section 5(a) of the Federal Trade Commission Act (FTC Act), 15 U.S.C. § 45(a), and Section 4 of the Restore Online Shoppers' Confidence Act (ROSCA), 15 U.S.C. § 8403. Dkt. # 67 at 1–2 ¶ 1. The FTC alleges that Amazon tricked, coerced, and manipulated consumers into subscribing to Amazon Prime by failing to disclose the material terms of the subscription clearly and conspicuously and by failing to obtain the consumers' informed consent before enrolling them. *Id.* at 2 ¶ 2. It also contends that Amazon did not provide simple mechanisms for subscribers to cancel their Prime memberships. *Id.* at 3 ¶ 7.

On June 12, 2024, Defendants served a Federal Rule of Civil Procedure 30(b)(6) deposition notice on the FTC. *See* Dkt. # 221-1 at 2. The parties then discussed the notice and narrowed the list of deposition topics. *See* Dkts. ## 215-1, 215-7, 221-1, 221-2. They also agreed to pause their dispute over specific topics until an initial Rule 30(b)(6) deposition was taken. *Id*. The FTC designated Amanda Basta, Assistant Director of the Enforcement Division in the Bureau of Consumer Protection, as its witness for the deposition. *See* Dkts. ## 215-3, 215-7; 223 at 11. Defendants deposed Ms. Basta for about 8.5 hours on September 10, 2024. *Id*.

Following the deposition, the parties kept discussing the remaining disputed topics without reaching a resolution. *See* Dkts. ## 215-2, 215-3. Defendants now seeks to compel the FTC to produce a deponent to provide testimony on statements the FTC made about ROSCA during the Negative Option Rulemaking, including testimony on the Topics below:

- Topic 30: Whether and to what extent the FTC contends that the rules contained in the Proposed or Final Negative Option Rule are in any way inconsistent with or different from the FTC's application of and positions regarding ROSCA's requirements that the FTC has asserted in this case, and the FTC's statements in the proposed Federal Register publication announcing the final Negative Option Rule.

- Topic 32: The reasons for, factual support for, and meaning of the FTC's statements relating to ROSCA and Section 5 of the FTC Act in the Advance Notice of Proposed Rulemaking published on October 2, 2019 (84 Fed. Reg. 52393), including (i) that ROSCA "provides no details regarding steps marketers must follow to comply with [ROSCA's] provisions"; and (ii) that ROSCA "requires marketers to provide a 'simple mechanism' for the consumer to stop recurring charges, but does not specify what methods would satisfy this requirement."

- Topic 33: The FTC's public statements relating to ROSCA and Section 5 of the FTC Act in the Proposed Negative Option Rule published on April 24, 2023 (88 Fed. Reg. 24716), including (i) that "[t]he existing patchwork of laws and regulations does not provide industry and consumers with a consistent legal framework across different media and types of plans"; (ii) that "the current framework does not provide clarity about how to avoid deceptive negative option disclosures and procedures"; (iii) that "ROSCA lacks specificity about cancellation procedures and the placement, content, and timing of cancellation-related disclosures"; (iv) those regarding "the unique challenges presented by negative option offers, even for marketers trying to comply with the law"; (v) that the Proposed Negative Option Rule "specifies the types of information sellers must provide so that they have more certainty"; (vi) that the Proposed Negative Option Rule "make[s] the rules of the road clear"; (vii) that ROSCA "has failed to eliminate the barriers many marketers have erected to keep consumers from canceling," including by "tak[ing] advantage of [ROSCA's] ambiguity"; (viii) that "it is likely the substantial majority of sellers routinely provide [required] disclosures in the ordinary course of good business practice"; (ix) that "existing authorities fall short because there is no uniform legal framework, which leaves entire sectors of the economy under-regulated and constrain the relief that the Commission may obtain for law violations"; and (x) that the Proposed Negative Option Rule "will facilitate compliance and reduce potential confusion among sellers and consumers regarding their compliance obligations for sales involving negative option offers."

*See* Dkts. ## 214 at 9–10; 215-2 at 7–9.

ORDER - 3

# III

## DISCUSSION

A.     Legal Standards

Federal Rule of Civil Procedure 26 governs discovery. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26 (b)(1). Under Rule 30(b)(6),

> [A] party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. . . The persons designated must testify about information known or reasonably available to the organization.

This discovery device allows a party to obtain testimony that is binding on an organization, government agency, or other entity. *See* Fed. R. Civ. P. 30(b)(6); *Snapp v. United Transp. Union*, 889 F.3d 1088, 1103 (9th Cir. 2018) (stating that "a Rule 30(b)(6) designee testifies on behalf of the entity") (internal quotation omitted). Thus, a deposition under Rule 30 (b)(6) is "a powerful and important discovery tool." *Hosseinzadeh v. Bellevue Park Homeowners Ass'n*, No. C18-1385-JCC, 2020 WL 4901674, at *3 (W.D. Wash. Aug. 20, 2020) (internal quotation omitted).

But a party must also comply with the requirements of Rule 26 by, among other things, proposing deposition topics that are relevant. *See* Fed. R. Civ. P. 26 (b)(1). Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence . . . and the fact is of consequence in determining the action." Fed. R. Evid. 401(a)–(b). For discovery purposes, relevance is construed broadly "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). District courts have broad

discretion in determining relevance for discovery purposes. *Doe v. Trump*, 329 F.R.D. 262, 270 (W.D. Wash. 2018) (citing *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005)). The party who seeks to compel discovery bears the burden of establishing that its request satisfies relevancy requirements. *Mi Familia Vota v. Hobbs*, 343 F.R.D. 71, 81 (D. Ariz. 2022); *Doe*, 329 F.R.D. at 270–71. A "minimal showing" is required to demonstrate relevance. *Arch Ins. Co. v. M.V.C. Enters., Inc.*, No. 5:21-CV-01876-JDE, 2023 WL 2558393, at *3 (C.D. Cal. Jan. 27, 2023).

B.   Relevance of the Negative Option Rulemaking Topics

Defendants contend that testimony about the FTC's statements during the Negative Option Rulemaking is relevant (1) to the FTC's ROSCA claims; (2) for potential impeachment purposes; (3) to the FTC's request for civil penalties; and (4) to Defendants' due process defense. *See generally* Dkt. # 214. The Court addresses each argument below.

   1.   The FTC's ROSCA claims

A "negative option feature" is "in an offer or agreement to sell or provide any goods or services, a provision under which the customer's silence or failure to take an affirmative action to reject goods or services or to cancel the agreement is interpreted by the seller as acceptance of the offer." 16 C.F.R. § 310.2(w). The FTC recently published the Final Negative Option Rule (Final Rule), 16 C.F.R. § 425 *et seq*. Defendants seek "additional testimony on the FTC's public statements about ROSCA made during the [Negative Option] [R]ulemaking." Dkt. # 214 at 9. They characterize these as "statements about the subject matter of this lawsuit." *Id.* at 11. They say that a Rule 30(b)(6) deposition is necessary "to confirm that the FTC's statements lack further factual support and to obtain the FTC's sworn positions on these topics." *Id.* at 12. They also assert that Defendants "must be permitted to explore the statements made about them." *Id.* at 11.

ORDER - 5

The FTC responds that Defendants are seeking facially irrelevant testimony. The agency notes that Topic 30 seeks testimony about the "inconsistencies" and "differences" between the FTC's Final Rule's requirements and ROSCA's requirements. Dkt. # 220 at 7. It points out that it is enforcing ROSCA, not the Final Rule. It contends that "[t]he fact that the FTC has promulgated a new rule says nothing about ROSCA's existing requirements." *Id.* (internal citation omitted). The FTC also states that Topics 32 and 33, which seek the "the factual support for and meaning of the FTC's public statements about ROSCA" in the 2019 Advance Notice of Proposed Rulemaking, 84 Fed. Reg. 52393, and 2023 Notice of Proposed Rulemaking, 88 Fed. Reg. 24716, are far removed from the Court's interpretation of ROSCA. *Id.* at 9. It says that many of the "statements" for which Defendants seek factual support are third-party comments that the FTC has already provided to Defendants in discovery and "[t]he basis for the [FTC's] statements is simply the ROSCA statute itself." *Id.* at 9–10 (internal quotations and citations omitted).

This Court, in rejecting Defendants' fair notice argument in the May 28, 2024 Order resolving Defendants' Motions to Dismiss, noted that the "there are no controlling regulations or policy statements that reflect an official, prior interpretation of ROSCA." Dkt. # 165 at 43.[1] Further, in the August 22, 2024 Order denying Defendants' Motion to Compel FTC Communications and Internal Documents, the Court rejected Defendants' request for internal documents related to the FTC's Negative Option Rulemaking. Dkt. # 180 at 10–11. The Court

---

[1] Defendants say that when the Court issued its order resolving Defendants' motions to dismiss, the Court "lacked the full rulemaking history, which shows that the FTC issued official policy statements interpreting ROSCA before or during Defendants' alleged violations." Dkt. # 222 at 5. Defendants contend that the FTC's analysis of ROSCA in the Final Rule constitutes an "official prior interpretation of ROSCA." *Id.* But Defendants point to no official policy or regulation purportedly promulgated by the FTC "before or during Defendants' alleged violations." *See* Dkt. # 222 at 5. Nor do they explain why the recently published Final Rule would constitute an "official prior interpretation" of ROSCA when the FTC has stated that it is enforcing ROSCA and not the Final Rule.

ORDER - 6

observed that the Negative Option Rulemaking was "not at issue in this case" and irrelevant to Defendants' defense that the FTC's civil enforcement of ROSCA violates their right to due process. *Id.* at 11. Similarly, Rule 30(b)(6) testimony about the FTC's statements during the Negative Option Rulemaking is irrelevant to the FTC's ROSCA claims. The FTC is alleging that Defendants violated ROSCA, not the Negative Option Rule. And the Negative Option Rule does not affect ROSCA's current requirements. *See generally* 16 C.F.R. § 425 *et seq*.

Defendants cite *Ressler v. United States*, No. 10-CV-03050-REB-BNB, 2012 WL 3231002, at *1 (D. Colo. Aug. 6, 2012), to support their contention that agencies can be compelled to produce information "related to the specific action in discovery." Dkt. # 214 at 11 (internal quotation and citations omitted). There, the plaintiff moved to compel a Rule 30(b)(6) deposition of the Federal Aviation Administration (FAA) on topics concerning "all information the FAA has gathered" and "all activities and efforts the FAA has undertaken to date" to assess NTSB Safety Recommendation A-10-107. *Ressler*, 2012 WL 3231002, at *1. The court determined that "the factual information gathered by the FAA responsive to the question of whether to provide pilots with maximum wind gusts may be relevant and inquiry about the fact gathering process utilized by the FAA may lead to the discovery of admissible evidence." *Id.* at *3. Unlike the plaintiff in *Ressler*, Defendants are seeking more than specific factual information from the FTC. For example, one of the deposition topics requests that the FTC identify the "inconsistencies" and "differences" between ROSCA and the Final Rule. *See* Dkts. # 214 at 9–10; # 215-2 at 7–9.

Defendants also contend that they should be permitted to "explore the statements made about them." Dkt. # 214 at 12. To support this argument, they cite a portion of the Final Rule that describes a published third-party experiment titled, "How Companies Make It Difficult to Unsubscribe." *See* Dkt. # 215-5 at 167–68, n. 544-45. But testimony from the FTC on a

ORDER - 7

publicly available third-party experiment about online cancellations is irrelevant to whether ROSCA proscribes Defendants' conduct.

2.  Potential Impeachment

Defendants assert that testimony about the Negative Option Rulemaking is relevant for potential impeachment purposes because "[t]he FTC has taken positions in this case that contradict the FTC's official positions as reflected in public rulemaking."  Dkt. # 214 at 12. Defendants contend that they are targeting the FTC's "official, public statements." *Id.*  They say that these statements "contain factual assertions about how the regulated community has understood ROSCA's requirements and how certain marketing practices have impacted consumers." *Id.* (internal quotation omitted).

The FTC counters that "Defendants cannot take deposition testimony regarding the FTC's statements about ROSCA to 'impeach' the FTC's legal positions in this case."  Dkt. # 220 at 13.  The agency says that "the Court previously rejected Defendants' request for 'internal agency discussions' of ROSCA, which Defendants claimed were relevant to 'contradict the FTC's litigation theories.'" *Id.* (citing Dkt. # 180 at 5).  It argues that the Court should likewise reject Defendants' argument that the Negative Option Rulemaking topics are relevant for potential impeachment purposes.  *Id.* at 13–14.  The FTC also points out that its public statements are irrelevant to the Court's interpretation of ROSCA.  *Id.* at 13–14 n. 8.

Discovery rules do not exempt from disclosure information to be used for impeachment purposes.  *See Derouin v. Kenneth L. Kellar Truck Line, Inc.*, No. C08-1049-JCC, 2010 WL 11684278, at *2 (W.D. Wash. Nov. 8, 2010) ("[I]nformation that could be used to impeach a likely witness, although not otherwise relevant to the claims or defenses, might be properly discoverable.") (internal quotation and citation omitted) (alteration in original).  Thus, parties are entitled to obtain information in discovery that "will impeach or contradict an opponent's case."

ORDER - 8

*Jones v. Hawley*, 255 F.R.D. 51, 52 (D.D.C. 2009); *see also In re Packaged Seafood Prod. Antitrust Litig.*, No. 15-MD-2670 JLS (MDD), 2018 WL 4327876, at *3 (S.D. Cal. Sept. 10, 2018) ("Defendants contend that discovery is relevant because it contradicts one of Plaintiffs' theories: whether a jury should infer collusion based on innocuous competitor communications. This is not an attention-shifting defense; rather, it seeks to counter Plaintiffs' theory of the case.").

Here, Defendants purportedly seek to "impeach or contradict" the "official, public statements" of the FTC. But as the Court previously observed, "there are no controlling regulations or policy statements that reflect an official, prior interpretation of ROSCA." *See* Dkt. # 165 at 43. And the Court interprets ROSCA using the tools of statutory construction. *See* Dkt. # 180 at 6; *see also Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 392 (2024) ("[A]gency interpretations of statutes . . . are not entitled to deference."). Thus, testimony on the FTC's statements about ROSCA during the Negative Option Rulemaking is irrelevant for potential impeachment purposes.[2]

### 3. The FTC's Demand for Civil Penalties

Defendants contend that they are seeking testimony to support their argument that "ROSCA does not provide sufficient guidance to regulated entities—let alone to individual defendants—and Defendants thus could not have known that their alleged conduct violated

---

[2] Defendants cite *S.E.C. v. Goldstone*, No. CIV 12-0257 JB/LFG, 2014 WL 4349507, (D.N.M. Aug. 23, 2014), to support their contention that they may ask questions about the FTC's public statements to "discredit" the agency. *Id.* at *40. In *Goldstone*, the court permitted the defendants to ask questions about the "relationship between the repurchase agreement markets and the financial crisis, and about the SEC's expressions of surprise on its failure to foresee the downturn in the credit or repurchase agreement markets." *Id.* The court reasoned that the questions were "fair game for litigation" because "[i]f the SEC could not predict the downturn, the [d]efendants may argue that the SEC should not criticize the [d]efendants for not foreseeing certain things." *Id.* In *Goldstone*, the defendants' proposed topics concerned the Securities and Exchange Commission's knowledge of specific factual circumstances germane to the agency's claims against the defendants. Here, unlike in *Goldstone*, Defendants are seeking testimony to impeach the FTC's interpretation of ROSCA.

ORDER - 9

ROSCA." Dkt. # 214 at 15. They assert that the FTC is attempting "to hold [them] liable for violating legal requirements that were clarified through rulemaking completed *years* after the conduct at issue." *Id.* at 16 (emphasis in original). They also say that testimony on the FTC's statements during the Negative Option Rulemaking is relevant to show regulatory confusion under the current framework and the lack of clarity about the specific requirements under ROSCA. *Id.* at 15–16.

The FTC responds that "[o]nly information known to Defendants at the time of their violative conduct is potentially relevant to whether they had 'actual knowledge.'" Dkt. # 220 at 16. The agency asserts that testimony about its public statements during the Negative Option Rulemaking is irrelevant because "any internal FTC views were never communicated to Defendants." *Id*. It also says that the FTC is enforcing ROSCA, not the Final Rule. *Id.* at 17. It points out that the Final Rule "largely does not even take effect until May 2025." *Id.* at 17 (citing 89 Fed. Reg. at 90476). The FTC contends that what ROSCA requires is a legal issue for this Court to decide, and the Court's inquiry is not affected by rulemaking that occurred more than decade after the statute's enactment. *Id.*

The FTC may seek civil penalties against any person or corporation who violated ROSCA "with actual knowledge or knowledge fairly implied on the basis of objective circumstances that such act is unfair or deceptive and is prohibited by such rule." 15 U.S.C. § 45(m)(1)(A). A defendant violates ROSCA with actual knowledge or knowledge fairly implied when "a reasonable person under the circumstances would have known of the existence of the provision and that the action charged violated that provision." *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 139 (4th Cir. 1996); *see also United States v. Dish Network L.L.C.*, 954 F.3d 970, 978 (7th Cir. 2020) ("§ 45(m)(1)(A) includes a variation on an ignorance-of-the-law

defense; a business can be liable only if it either knew that the act was unlawful or if it should have known the act was unlawful[.]").

Defendants previously sought to compel the FTC to produce "'[i]nternal FTC documents reflecting the FTC's interpretation over time of ROSCA, negative options, and dark patterns' to show that Defendants' interpretation of ROSCA was objectively reasonable." *See* Dkt. # 180 at 9 (quoting Dkt. # 146 at 6) (internal quotation omitted). The Court determined that these documents were irrelevant because "the FTC's internal interpretations of ROSCA, negative options, and dark patterns over time has no bearing on the objective reasonableness of Defendants' interpretation of ROSCA." *Id.* at 10. Although Defendants say that the testimony they now seek to compel includes "relevant official, public statements," Dkt. # 214 at 15 (internal quotation omitted), the Court has already stated that "there are no controlling . . . policy statements that reflect an official prior interpretation of ROSCA." Dkt. # 165 at 43. Thus, testimony about statements the FTC made during the Negative Option Rulemaking is irrelevant to whether Defendants acted reasonably under the circumstances. *See, e.g.*, *United States v. Wisconsin Bell, Inc.*, No. 08-C-0724, 2020 WL 13048895, at *2 (E.D. Wis. Oct. 29, 2020) ("Whether Wisconsin Bell's interpretation of the LCP rule was reasonable depends on the statutes, regulations, and the official, public statements regarding the rule.").

Defendants rely on *United States v. Anzalone*, 766 F.2d 676, 681 (1st Cir. 1985), to support their argument that "the information underlying the FTC's admissions about lack of legal clarity is directly relevant to whether the law was sufficiently clear." Dkt. # 214 at 15. In that case, the court reversed the defendant's *criminal conviction* because the statute and regulations under which he was convicted were silent on the conduct at issue. *Anzalone*, 766 F.2d at 681–82. In reaching its conclusion, the court relied on a report to Congress by the Comptroller General of the United States that said that "the regulations were silent on the propriety" of the

ORDER - 11

kind of conduct at issue in the case. *Id.* at 682. But the case says nothing about allowing a party to conducting further discovery into an agency's public statements to show whether "a reasonable person" would have fair notice of what a statute prohibits. And the requirements for fair notice are far less exacting in civil cases. *See FTC v. Kochava Inc.*, 671 F. Supp. 3d 1161, 1177 (D. Idaho 2023) ("[T]he standard for fair notice is especially low in cases, like this one, involving civil statutes regulating economic activities.'"); *see also United States v. Stratics Networks Inc.*, 721 F. Supp. 3d 1080, 1112 (S.D. Cal. 2024) ("In the context of civil statutes regulating economic activity, the standard [for fair notice] is sufficiently low that statutes are unconstitutionally vague only where they are 'so vague and indefinite as really to be no rule or standard at all.'") (quoting *Boutilier v. INS*, 387 U.S. 118, 123 (1967)).

Defendants also cite *United States v. AMC Entertainment, Inc.*, 549 F.3d 760, 769 (9th Cir. 2008), to support its argument. There, the Ninth Circuit held that AMC did not have fair notice of what was required under the American with Disabilities Act (ADA) when it built its movie theaters because there was a circuit split on the interpretation of the ADA for movie theaters and the government did not clarify its position on the interpretation of the statute until after the theaters were built. *Id.* at 770. The court also noted that the government had represented that the Department of Justice would be issuing new guidance to resolve the circuit split and, after more than four years, still had not done so. *Id.* at 769. Circuit courts had interpreted the ADA regulation at issue differently and AMC relied on these interpretations. *Id.* at 768–70. Here, there is no prior interpretation of ROSCA by a court or agency that regulated parties have relied on.[3]

---

[3] Defendants assert that a potential split exists in this district regarding whether Amazon Prime's enrollment and cancellation flows comply with ROSCA. Dkt. # 222 at 6. They contend that in *Daly v. Amazon.com, Inc.*, 718 F. Supp. 3d 1378, 1386–88 (W.D. Wash. 2024), another court determined "that Prime flows similar to those at issue [in this case] complied with a statute that imposes *higher* standards

### 4. Defendants' Due Process Defense

Defendants say that the Negative Option Rulemaking topics are relevant to their due process defense because they are "seeking information about and the factual support for the FTC's official public statements about ROSCA's lack of clarity." Dkt. # 214 at 17 (internal citations omitted). They assert that the FTC's statements show that the agency is trying to retroactively apply the Final Rule's new requirements without providing fair notice to Defendants. *Id.* at 18. Defendants contend that the FTC's public statements show that ROSCA fails to provide clear standard which could lead to "arbitrary" and "discriminatory" enforcement. *Id.* (quoting *Butcher v. Knudsen*, 38 F.4th 1163, 1175, 1178 (9th Cir. 2022)). They also say that the FTC's statements during the rulemaking process show that the agency has "conflicting views about ROSCA." *Id.*

The FTC responds that testimony about its statements during the Negative Option Rulemaking is irrelevant to Defendants' due process defense. Dkt. # 220 at 20. It says that Defendants already obtained Rule 30(b)(6) testimony on multiple topics related to "fair notice." *Id.* (citing Dkts. # 221-2 at 2) (listing agreed upon topics for the Rule 30(b)(6) deposition). It also says that Defendants do not explain "why ROSCA is purportedly unconstitutionally vague as applied to them, or why they purportedly lacked fair notice of the [*sic*] ROSCA's requirements." *Id.* at 20–21. The FTC asserts that the fact that it has recently promulgated a new rule says nothing about ROSCA's existing requirements." *Id.* at 22.

---

than ROSCA." *Id.* (emphasis in original). But there, the plaintiffs alleged that they had incurred unauthorized fees for the renewal of their Amazon subscriptions in violation of the common law, Oregon's Unlawful Trade Practices Act, and various California consumer protection statutes. *Daly*, 718. F. Supp. 3d at 1381. The court, in resolving Amazon's motion to dismiss, concluded that Amazon's subscription cancellation policies contained the information required under California's and Oregon's Automatic Renewal Laws (ARLs) and that Amazon obtained the plaintiffs' affirmative consent as required by California's and Oregon's ARLs. *Id.* at 1387-88. The court otherwise denied Amazon's motion. *Id.* at 1378–91. The case says nothing about ROSCA or the FTC Act. *See id.*

ORDER - 13

As stated above, Defendants previously sought internal documents related to the FTC's Negative Option Rulemaking. *See* Dkt. # 180 at 10 (citing Dkt. # 146 at 11–12). The Court rejected "Defendants' argument that the agency's later rulemaking, which is not at issue in this case, is relevant to its defense that the FTC's civil enforcement of ROSCA violates Defendants' right to due process." *Id.* at 11. The same reasoning applies here. Rule 30(b)(6) testimony about statements made during the FTC's Negative Option Rulemaking, which is not at issue here, is irrelevant to Defendants' due process defense.

Defendants rely on *S.E.C. v. Kovzan*, No. 11-2017-JWL, 2013 WL 653611, at *1 (D. Kan. Feb. 21, 2013) to support their contention that they can ask questions of the FTC about its "interpretation and [the] meaning of certain regulatory terms and guidance or confusion regarding those terms and guidance." Dkt. # 214 at 17 (quoting *Kovzan*, 2013 WL 653611, at *1). But there, the court's order did not indicate whether the "regulatory terms and guidance" at issue reflected the official, public position of the Securities and Exchange Commission. And Defendants are seeking testimony about later rulemaking that is not at issue here.

As the Court previously stated, "[t]he relevant question is not whether [Defendants] had fair notice of the *FTC*'s *interpretation* of the statute, but whether [Defendants] had fair notice of what the *statute itself* requires." Dkt. # 165 at 43 (emphasis in original) (quoting *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236, 251–52 (3d Cir. 2015)). And as already noted, "the FTC has not changed its official position because there are no "regulations or policy statements that reflect an official, prior interpretation of ROSCA." *Id.* at 43 ("[T]his case differs from cases in which courts have determined that parties lacked "fair notice" of an agency interpretation of a statute when the official interpretation changed.").[4]

---

[4] Defendants also say that, following the Court's order rejecting their argument that the FTC's "dark patterns' theory" violates due process as a matter of law, Dkt. # 165 at 40–41, they then pleaded

Defendants also contend that FTC's statements show that it is "attempting to retroactively apply" the Final Rule. But as the FTC has repeatedly stated, and this Court has acknowledged, the FTC is bringing claims under ROSCA, not the Negative Option Rule. *See* Dkts. # 180 at 11; # 220 at 7. Thus, Rule 30(b)(6) testimony about statements the FTC made during the Negative Option Rulemaking is irrelevant to whether Prime sign up and cancellation processes violate ROSCA.

## IV
### CONCLUSION

For the reasons above, the Court DENIES Defendants' motion to compel.

Dated this 24th day of February, 2025.

John H. Chun
United States District Judge

---

"as-applied" challenges to ROSCA itself. Dkt. #222 at 9 (citing Dkt. # 171 at 65-66). Defendants contend that they are "entitled to discovery related to them." *Id.* (internal citation omitted). But Defendants do not explain how testimony about later agency rulemaking, that says nothing about ROSCA's current requirements, is relevant to whether ROSCA "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *See FCC v. Fox Television Stations*, 567 U.S. 239, 253 (2012).