UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC; NEIL LINDSAY, individually and as an officer of Amazon.com, Inc.; RUSSELL GRANDINETTI, individually and as an officer of Amazon.com, Inc.; JAMIL GHANI, individually and as an officer of Amazon.com, Inc.,<br><br>Defendants. | CASE NO. 2:23-cv-00932-JHC<br><br>ORDER |

# I

### INTRODUCTION

This matter comes before the Court on the FTC's Motion to Compel Production of Documents and Information Relating to May 6, 2021 Meeting. Dkts. # 217 (sealed), # 218-1 (redacted). Previously, the Court granted the FTC's request for in camera review. Dkt. # 242. Upon such review, the Court GRANTS in part and DENIES in part the FTC's Motion to Compel as to MTC-1. The Court also GRANTS the FTC's Motion to Compel as to the documents

ORDER - 1

labeled MTC-2, MTC-3, MTC-4, MTC-5, MTC-6, MTC-7, and MTC-9.[1]  Lastly, the Court GRANTS the FTC's Motion to Compel as to Interrogatory No. 4.

## II

### BACKGROUND

*The FTC's Claim.*  The FTC sued Amazon and three of the company's executives, Neil Lindsay, Russell Grandinetti, and Jamil Ghani, alleging that they violated Section 5(a) of the Federal Trade Commission Act (FTC Act), 15 U.S.C. § 45(a), and Section 4 of the Restore Online Shoppers' Confidence Act (ROSCA), 15 U.S.C. § 8403.  Dkt. # 67 at 1–2 ¶ 1.  The FTC alleges that Amazon tricked, coerced, and manipulated consumers into subscribing to Amazon Prime by failing to disclose the material terms of the subscription clearly and conspicuously and by failing to obtain the consumers' informed consent before enrolling them.  *Id.* at 2 ¶ 2.  It also contends that Amazon did not provide simple mechanisms for subscribers to cancel their Prime memberships.  *Id.* at 3 ¶ 7.

*The May 6, 2021 Meeting.*  In January 2021, Amazon's Prime team scheduled a meeting to "align on an approach for clarity" in Prime subscription communications.  Dkt. # 218-1 at 5 (quoting Dkt. # 140-2 at 130).[2]  The FTC began investigating Amazon in connection with this matter on March 16, 2021.  Dkts. # 90-2 at 27; # 53 at 2.  The Prime team meeting took place on May 6, 2021 (May 6 Meeting).  Dkt. # 218-1 at 3.  In-house attorneys Praju Tuladhar and Mark England attended the meeting as did Defendants Jamil Ghani and Neil Lindsay.  Dkt. # 224 at 7 (citing Dkt. # 218-2 at 117, 267).  Amazon has withheld documents related to the May 6 meeting

---

[1] Amazon informed the Court that MTC-8 was downgraded to "Not Privileged" and produced at AMZN-PRM-FTC-002702723.  Thus, the Court need not review this document for privilege.

[2] The FTC described the Amazon Prime team's preparation for the May 6, 2021 meeting in its January 2024 Motion to Compel Production of Documents Clawed Back During Investigation.  *See generally* Dkt. # 140 (redacted).

ORDER - 2

and declined to provide a complete response to the FTC's interrogatory about the meeting. *See generally* Dkts. # 218-1; # 224. Amazon says that information about the meeting is privileged.[3]

*The Motion.* The FTC now asks the Court to compel Amazon to produce documents related to the May 6 meeting. *See generally* Dkts. # 217 (sealed), # 218-1 (redacted). The FTC also requests that the Court compel Amazon to respond to an interrogatory concerning the May 6 meeting. *Id.* On March 3, 2025, the Court granted the FTC's request for in camera review of the documents labeled MTC-1–MTC-9. *See generally* Dkt. # 242.

### III
#### DISCUSSION

A.    Legal Standards

The attorney-client privilege "protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011). When a communication has more than one potential purpose, a court considers "whether the primary purpose of the communication is to give or receive legal advice." *In re Grand Jury*, 23 F.4th 1088, 1091 (9th Cir. 2021); *see also TCL Commc'n Tech. Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson*, No. SACV1400341JVSDFMX, 2016 WL 6922075, at *2 (C.D. Cal. May 26, 2016) ("Courts generally agree that the privilege applies only if the primary or predominate purpose of the communication is to seek legal advice or assistance.").

The work-product doctrine "is not a privilege but a qualified immunity protecting from discovery documents and tangible things prepared by a party or [their] representative in anticipation of litigation." *Admiral Ins. Co. v. U.S. Dist. Ct. for Dist. of Ariz.*, 881 F.2d 1486,

---

[3] Amazon has withheld the documents as attorney-client communications. In its privilege log, Amazon also asserted that it withheld MTC-5 under the work-product doctrine. *See* Dkt. # 218-2 at 5–6.

ORDER - 3

1494 (9th Cir. 1989) (citing Fed. R. Civ. P. 26(b)(3)). The doctrine "protects 'certain materials prepared by an attorney acting for [their] client in anticipation of litigation.'" *Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010). When a document serves a "dual purpose" (i.e., where it was not prepared solely for litigation), the court considers whether "'the document can be fairly said to have been prepared or obtained because of the prospect of litigation.'" *Richey*, 632 F.3d at 568 (quoting *In re Grand Jury Subpoena, Mark Torf/Torf Envtl. Mgmt. (Torf)*, 357 F.3d 900, 907 (9th Cir. 2004). Under the "because of" standard, the court looks at the totality of the circumstances to determine whether the "'document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of litigation.'" *Id.* (quoting *Torf*, 357 F.3d at 908).

B.    May 6 Meeting Notes (MTC-1)

Amazon says that MTC-1 is privileged because the main purpose of the May 6 meeting was to provide legal advice related to the FTC's investigation. Dkt. # 224 at 12. The company asserts that the email summarizes "the legal advice discussed during the meeting." *Id.*

The email, sent by a non-attorney Amazon employee, summarizes the Prime team's global strategic goals and potential design changes to Prime's upsell and cancellation flows. This business information is not protected by the attorney-client privilege. *See Stirratt v. Uber Techs., Inc.*, No. 19-CV-06361-RS (DMR), 2024 WL 1723710, at *5 (N.D. Cal. Apr. 19, 2024) ("'An attorney's involvement in, or recommendation of, a transaction does not place a cloak of secrecy around all the incidents of such a transaction.' The party asserting privilege must show that the documents 'directly or indirectly reveal communications of a confidential nature by the client to the attorney.' In other words, the party must show that the documents are 'so interwoven with the privileged communications that disclosure of the former leads irresistibly to disclosure of the latter.'" (quoting *Matter of Fischel*, 557 F.2d 209, 212 (9th Cir. 1977)); *Dolby*

ORDER - 4

*Lab'ys Licensing Corp. v. Adobe Inc.*, 402 F. Supp. 3d 855, 866 (N.D. Cal. 2019) ("Communications with in-house counsel may relate to business rather than legal matters, and in-house counsel's business advice is not protected by attorney-client privilege.").

The Court also determines that the first sentence in the second email dated March 30, 2021, is privileged because it reflects the advice Defendant Ghani received from an attorney. Privilege "may attach to communications between nonlegal employees where: (1) the employees discuss or transmit legal advice given by counsel; and (2) an employee discusses her intent to seek legal advice about a particular issue." *Dolby Lab'ys Licensing Corp.*, 402 F. Supp. 3d at 866 (internal quotation omitted).

Thus, Amazon must produce MTC-1 to the FTC and may redact only the first sentence of the March 30, 2021 email.

C.  May 6 Group Chat (MTC-2)

Amazon contends that Chime group chat messages from the May 6 meeting are privileged because the main purpose of the meeting was to obtain legal advice about the FTC's investigation. Dkt. # 224 at 12–13. Many messages are adding and removing people from the group chat. The three messages from Tuladhar, an in-house attorney, provide links to documents to be discussed during the meeting. The messages from other attendees describe Prime's operational or business information. No legal advice or request for legal advice appears in any of the messages. Thus, this group chat cannot be shielded from discovery just because an in-house attorney provided other meeting attendees with links to documents. *See Oracle Am., Inc. v. Google, Inc.*, No. C-10-03561-WHA DMR, 2011 WL 3794892, at *4 (N.D. Cal. Aug. 26, 2011) ("When attempting to demonstrate that an internal communication involving in-house counsel deserves privileged status, a party therefore 'must make a clear showing that the speaker made the communication[ ] for the purpose of obtaining or providing *legal* advice.'") (quoting

ORDER - 5

*United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002) (alteration and emphasis in original)).

D.   May 6 Meeting Memorandum and Addendum (MTC-3, MTC-4)

During the May 6 meeting, in-house attorney Tuladhar shared a memorandum and addendum (Benchmarking presentation) with the attendees. Dkt. # 218-1 at 12. Amazon says that while the materials were originally prepared by non-attorneys on the Prime team, in-house attorney Tuladhar revised the documents to reflect his legal advice. Dkt. # 224 at 12.

The May 6 meeting memorandum was drafted by non-attorneys Nikki Baidwan, Ben Hills, Bharath Srinivasan, and Reid Nelson. *See* Dkt. # 218-1 at 5–6 (citing Dkt. # 218-2 at 71–75) (series of electronic messages between non-attorneys Baidwan, Hills, and Srinivasan discussing drafting the memorandum). The memorandum provides background information about the issues the Prime team was facing at that time. It includes information about customer concerns and feedback, compares Prime's upsell experience to comparable programs, and describes the teams recommendations for design changes to the sign-up and cancellation flows. Other than a "PRIVILEGED AND CONFIDENTIAL – ATTORNEY-CLIENT WORK PRODUCT" header, the document itself gives no indication that it is connected to Amazon's in-house counsel. A request for legal advice does not appear in the memorandum. Nor does there appear to be legal analysis or advice in the document.

Similarly, the Benchmarking presentation compares Prime's signup and cancellation flows to other subscription services in the global market. The authors of the presentation are not identified in the slide deck. Further, a request for legal advice does not appear in the presentation. Nor does there appear to be any legal analysis or advice in the document. Thus, this presentation is not protected by the attorney-client privilege. *See, e.g.*, *Munoz v. 7-Eleven, Inc.*, No. CV183893RGKAGRX, 2019 WL 2610955, at *2 (C.D. Cal. May 1, 2019) ("The

attorney client privilege does not attach to requests for business advice – as opposed to legal advice – from in-house counsel.") (citing *United States v. Rowe*, 96 F.3d 1294, 1297 (9th Cir. 1996)).

E.  Draft of May 6 Meeting Memorandum (MTC-5)

Amazon asserts that the draft memorandum is privileged because it embodies the "legal advice and business considerations" of its in-house counsel. Dkt. # 224 at 13. But the draft memorandum, like the final memorandum, focuses on business issues the Prime team was facing at the time. The draft memorandum discusses customer concerns and feedback, compares Prime to other subscription programs in the market, and examines the Prime team's recommendations for design changes to the upsell and cancellation flows. There is no discernable request for legal advice in this document. Nor does there appear to be legal analysis or advice in the document. And the memorandum does not identify who left comments or edited the document (other than the comments being left by someone with the initials "JAG").

In its privilege log, Amazon also asserts that the work-product doctrine protects MTC-5. *See* Dkt. # 218-2 at 5–6. Amazon does not make any arguments in its briefing under the work-product doctrine. *See* Dkt. # 224 at 12–14. But the Court notes that there are no discernable legal strategies or impressions in this document. The document also does not indicate that it was prepared in anticipation of litigation. And based on the totality of the circumstances, it cannot be said that the document was created because of the prospect of litigation. *See, e.g.*, *Visa U.S.A., Inc. v. First Data Corp.*, No. C-02-1786JSW(EMC), 2004 WL 1878209, at *7 (N.D. Cal. Aug. 23, 2004) ("[T]he fact that the documents were reviewed and subject to revisions by counsel does not necessarily make them privileged or protected by the work product doctrine.").

F.  May 4 Meeting Emails (MTC-6, MTC-7)

These two documents are copies of the same email chain and contain notes from a meeting on May 4, 2021 (May 4 meeting) to prepare for the Prime team meeting on May 6, 2021.  MTC-7 contains one extra email in the chain.  Non-attorney employees Baidwan, Hills, and Srinivasan met with Defendants Lindsay and Ghani, among others, to prepare for the team meeting on May 6.  Dkts. # 218-1 at 13; # 218-2 at 91.  Amazon's in-house attorneys, Tuladhar and England, were also present at the May 4 meeting.  *Id.*  Amazon contends that these emails are privileged because the focus of the meeting was to obtain legal advice.  Dkt. # 224 at 13.

In the email chain, non-attorney Jediah Hankin drafted a summary of the May 4 meeting and sent it to non-attorney Baidwan and in-house attorney Tuladhar.  Hankin's meeting notes center on proposed edits to the May 6 meeting memorandum.  Non-attorney Baidwan responded to Hankin's message with a link to the document including her comments and edits.  The email subject line includes the phrase "Privileged and Confidential," and the non-attorneys in the email chain use language like "retaining privilege" and "the document should be treated as legal strategy."  But the meeting notes concern proposed structural edits to the meeting memorandum and thoughts about including more operational and business information in the document.  While in-house attorney Tuladhar is copied on the emails and participated in the May 4 meeting (and is even called out by name with a vague request that he add "changes" to the document), there is no discernable request for or providing of legal advice in these emails.  *See Garner v. Amazon.com, Inc.*, No. C21-0750RSL, 2024 WL 4266665, at *2 (W.D. Wash. Sept. 23, 2024).

G.  "Headwinds" Document (MTC-9)

The parties say that this document describe various "headwinds"—challenges Prime was facing because of potential changes to the enrollment and cancellation flows.  *See* Dkts. # 218-1 at 14; # 224 at 14.  Amazon says that it viewed the FTC's investigation as an important

ORDER - 8

"headwind" and its in-house counsel advised "on legal and regulatory issues confronting the business." Dkt. # 224 at 14.

The "headwind" document describes Prime enrollment numbers, in-app payment methods, and customer satisfaction with Prime. Other than a "Privileged & Confidential" header, the document gives no indication that it was in any way connected to anyone on Amazon's legal team. The authors of the document are not identified, and the memorandum does not include information about who left the comments or edited the memorandum (other than comments being left by persons with the initials "JAG" and "HB"). Further, the substance of the document is about operational and business considerations for the Prime team. There does not appear to be a request for legal advice or legal analysis in the document. Even if in-house counsel had input on this document, it concerns Prime's business and operations. *See ChevronTexaco Corp.*, 241 F. Supp. 2d at 1076 (reasoning that the attorney-client privilege "does not protect an attorney's business advice. Corporations may not conduct their business affairs in private simply by staffing a transaction with attorneys.").

H.     Response to Interrogatory No. 4

The FTC requests that the Court compel Amazon to provide a complete response to Interrogatory No. 4. Dkt. # 218-1 at 11. Interrogatory No. 4 asks that Amazon "[d]escribe in detail what happened at the May 6, 2021 meeting . . . including who attended the meeting, the viewpoints expressed, facts provided, and questions asked by meeting participants (which may be reflected, for example, in notes from the meeting), who took notes at the meeting, and any decisions made at or as a result of the meeting." Dkt. # 218-2 at 266. In response, Amazon stated that the "contents of the May 6, 2021 meeting, including viewpoints expressed and questions asked, are privileged." *Id.* The company also said that it "withheld documents pertaining to this meeting as privileged, and direct[ed] the FTC to its various privilege logs on

this matter for further explanation of those privilege claims." *Id.* at 267. The only information Amazon provided was the names of people who attended the meeting, the name of the meeting notetaker, and that "the attendees reached consensus that actions should be taken with respect to Amazon's sign-up process." *Id.*

The FTC asserts that Amazon's "blanket privilege claim" fails because advice concerning "regulatory investigations and strategy . . .does not create a 'giant fog bank of privilege or 'cloak of secrecy' around the entire meeting." Dkt. # 218-1 at 11 (quoting *Epic Games, Inc. v. Apple Inc.*, No. 20-CV-05640-YGR (TSH), 2024 WL 4947269, at *1 (N.D. Cal. Dec. 2, 2024); *Stirratt*, 2024 WL 1723710, at *5)). The Court agrees with the FTC. Based on the Court's review of contemporaneous documents,[4] including the May 6 meeting memorandum and notes describing the meeting, Amazon's objection that everything discussed during the meeting is privileged lacks merit. Thus, the Court orders Amazon to file an amended interrogatory response that provides relevant, non-privileged facts responsive to Interrogatory No. 4. *See Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981) (reasoning that the attorney-client privilege "only protects disclosure of [the] communications [themselves]; it does not protect disclosure of the underlying facts by those who communicated with the attorney.").

## IV
### CONCLUSION

For the above reasons, the Court GRANTS in part and DENIES in part the FTC's Motion to Compel.

The Court ORDERS Amazon to produce the documents at issue by March 21, 2025. For MTC-1, Amazon may redact the first sentence of the March 30, 2021 email.

---

[4] *See supra* Secs. III B–F; *see also* Dkt. # 242 at 4–7 (describing circumstances of the May 6 Prime team meeting).

ORDER - 10

     The Court ORDERS Amazon to serve its amended answer to Interrogatory No. 4 by March 28, 2025. In preparing its answer, Amazon must ask each witness it instructed, at an investigational hearing or deposition, not to answer questions regarding the May 6 Meeting for that witness's recollection of the meeting and must include any responsive information provided by the witness in Defendant's response to Interrogatory No. 4. The response must also state, for each witness, what information they provided or that they provided no information.

     Dated this 14th day of March, 2025.

*John H. Chun*
John H. Chun
United States District Judge

ORDER - 11