The Honorable John H. Chun

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

FEDERAL TRADE COMMISSION,

    Plaintiff,

  v.

AMAZON.COM, INC., *et al*.

    Defendants.

Case No. 2:23-cv-0932-JHC

**PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS RELATING TO 2019 AND 2022 BENCHMARKING SURVEYS**

NOTE ON MOTION CALENDAR:
April 16, 2025

PLAINTIFF'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS RE:
2019 AND 2022 SURVEYS
Case No. 2:23-cv-0932-JHC

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

In a 2019 survey conducted by Amazon's "Benchmarking" organization, ▮ of Prime members who had joined in the prior year reported they did so "without realizing." An additional ▮ of recent enrollees could not remember how they enrolled. The Benchmarking team informed Individual Defendants Jamil Ghani, Neil Lindsay, and Russell Grandinetti of these results, explaining that consumers felt "tricked" by Amazon. In April 2022—just two months after Amazon implemented clarity improvements to its "UPDP" enrollment page in response to the FTC's year-old investigation—Amazon redid the survey and obtained purportedly improved results. Upon discovering these surveys, the FTC issued document requests seeking all documents relating to these 2019 and 2022 surveys, which plainly relate to the central question of whether Prime's enrollment flows violate ROSCA. For three months, however, Amazon refused to use *any* search terms to locate responsive documents, relying on boilerplate objections and unsupported assertions that there somehow were no responsive documents beyond the very small handful Amazon already had located. Then, two nights ago, Amazon made a belated attempt to head off this motion by finally proposing search terms and custodians. Amazon's offer was inadequate and left no time for further conferral. The FTC therefore files this motion to compel Amazon to take specific steps to locate and produce documents relating to the 2019 and 2022 surveys.

I.   **BACKGROUND**

   A.   **Amazon's 2019 Benchmarking Study Confirms Users' Nonconsensual Enrollment in, and Difficulty Cancelling, Prime.**

In 2019, Amazon's Benchmarking organization set out to study Japanese consumers' experiences with Amazon Prime. *See, e.g.*, Declaration of Evan Mendelson ("Mendelson Decl."), Att. 11. The study started with a "qualitative phase," including 16 interviews with Japanese customers. *Id.* at 1. During those interviews, participants, mirroring the FTC's allegations in this case, "explained how they felt 'tricked' by Amazon, having signed up to Prime involuntarily by thinking they were simply clicking to progress with their purchase." *Id.* at 12. (The Japanese version of Amazon's UPDP enrollment page was similar to the US version.

PLAINTIFF'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS RE:
2019 AND 2022 SURVEYS
Case No. 2:23-cv-0932-JHC - 1

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

*Compare* Mendelson Decl., Att. 15 at 9, *with* Dkt. No. 67-2.)  One interviewee reported:  "I made the mistake, I am to blame too, but it should be clearer . . . 'if you press here you become a member,' it should have been clearly stated in an easy to understand manner."  Mendelson Decl. Att. 11 at 12  (ellipses original).  Either that same interviewee or another one explained:  "I was in a rush and wanted to order the item right away.  I thought I was clicking on the right button, it looked like the normal proceed button, but signed me up to Prime instead." *Id.* at 13.  Another interviewee, who had previously cancelled Prime, "actually signed up by mistake *for a second time* during our interview." *Id.* at 12 (emphasis added).  That individual tried to undo the sign-up but was unable to do so. *Id.*  Yet another interviewee explained:  "I always have to be extra careful when I am buying something to not accidentally sign up for Prime.  This is a bit of a hassle and not something that I have to worry about on other sites." *Id.* at 13.  To make matters worse, as the Benchmarking team explained, some nonconsensual enrollees "only [became] aware [of the sign-up] months after their initial trial had ended and they noticed bank statement charges." *Id.*

      Again mirroring the FTC's allegations, interviewees also struggled to cancel their memberships.  One Prime member stated:  "I wasn't sure where to go and cancel.  I looked on the site to try and figure out who to talk to cancel [sic] but I couldn't find anything useful right away." *Id.*  In response to these complaints, the Benchmarking team conducted a "first-hand analysis" of Amazon's Iliad cancellation flow that "showed a minimum of 12 actions were required from the Amazon homepage to cancel Prime membership." *Id.*

      After completing the interviews, the Benchmarking team conducted a "nationally representative survey in [Japan]" of about 1,200 Amazon shoppers and "replicated the survey in the US" with about 1,100 Amazon shoppers in order to "to provide a comparison benchmark" for the Japanese survey. *Id.* at 1.  An external vendor handled the US survey.  Mendelson Decl., Att. 33.  The US survey reaffirmed the well-understood fact within Amazon that people buying products on Amazon routinely sign up for Prime by mistake.  Specifically, among US shoppers,

■ of people who had joined Prime in the last year said they "joined Prime without realizing during a purchase." Mendelson Decl., Att. 11 at 12. An additional ■ "joined Prime without realizing while browsing the site." *Id.* Another ■ could not remember how they joined. *Id.*[1]

B.  **Colin Hulmes Reports the 2019 Benchmarking Survey Results to the Individual Defendants.**

In advance of a November 2019 meeting, Colin Hulmes, a member of Amazon's Benchmarking team, reported the results of the team's 2019 interviews and survey to all three Individual Defendants: Jamil Ghani, Neil Lindsay, and Russell Grandinetti. Mendelson Decl., Att. 10; *see also id.*, Att. 4. Hulmes took notes at the ensuing meeting, which all three Individual Defendants likely attended. *See* Mendelson Decl., Att. 4 ("We reviewed this doc with . . . Neil Lindsay and Russ Grandinetti. I'm pretty sure Jamil attended also, but not 100% certain!"). Hulmes's meeting notes describe "mistaken sign ups" as "a clear call out" from the survey. Mendelson Decl., Att. 13. Meeting attendees raised "concern" over the "number of actions needed to cancel Prime" and agreed on "need[ing] an action to reduce this number." *Id.* Hulmes was assigned the task of working with the Prime organization to "address CX [customer experience] gaps called out in research." *Id.*

C.  **In 2022, Hulmes Informs Defendant Ghani of His Plan to Update Defendant Grandinetti on the Unresolved Nonconsensual Enrollment Issues Flagged in 2019.**

In March 2022, Hulmes wrote an email to Ghani revisiting the above-described 2019 study and explaining that he planned to re-raise the nonconsensual enrollment issue with Grandinetti. *See* Mendelson Decl., Att. 18 at AMZN-PRM-FTC-002711062 ("Benchmarking provides a quarterly update to Russ Grandinetti . . . . Within these updates, we call out hotly debated topics on areas where we see long standing CX concerns, and have highlighted Prime sign ups in our upcoming update." ). Hulmes added that the unintentional sign-up topic had

---

[1] Notably, the survey does not appear to have been limited to the enrollment methods challenged by the FTC. Therefore, the figures reported in this paragraph likely underestimate the extent of nonconsensual enrollment from the relevant enrollment methods.

PLAINTIFF'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS RE:
2019 AND 2022 SURVEYS
Case No. 2:23-cv-0932-JHC - 3

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

"been raised during previous discussions with Russ [Grandinetti], and we have decided to resurface this as we believe this CX issue still exists." *Id.* Troublingly, Hulmes also explained that although the Prime organization had formed "initial plans" to send "reminders to consumers on Prime subscriptions post-signup," the organization had reversed course because of "negative [profitability] impacts." *Id.*

Ghani responded the same day, immediately noting that Hulmes had failed to mark his email "P&C," or privileged and confidential. *Id.* (Hulmes's email plainly neither sought nor relayed legal advice.) Ghani also added attorney Mark England "for legal counsel." *Id.* (Ghani's email contains no request for legal advice.) Ghani directed Hulmes to speak with his direct report, Lisa Leung, before providing a written update to Grandinetti. Hulmes, after speaking with Leung or others in the Prime organization, amended his write-up to include discussion of recent changes to Amazon's UPDP enrollment page made in response to the FTC's investigation, but added: "Our Benchmarking view is that the CX gap still remains . . . as the visual nature of the latest accept and decline CTA boxes (big yellow 'Get FREE One-Day Delivery with Prime' button and small font 'No thanks' link) still increases the likelihood of unintentional sign-ups." *Id.* at AMZN-PRM-FTC-002711059. Hulmes concluded that Amazon "need[ed] to move more quickly to address this trust buster for our customers." *Id.* Leung answered, claiming to be "seeking legal council [sic]," but instead merely insisted that Amazon "do[es] not trick [its users] and should avoid using that to describe the CX [customer experience]." *Id.* at AMZN-PRM-FTC-002711058. Hulmes's Benchmarking team colleague disagreed: "I think that exactly is the hot debate." *Id.*

**D.   The Benchmarking Team Redoes the 2019 Survey.**

Building on the above-described March 2022 email exchange, the Benchmarking team set an April 2022 meeting—featuring Ghani, Grandinetti, and Hulmes, among others—to discuss the unresolved issue of Prime nonconsensual enrollment. *See* Mendelson Decl., Att. 7. Hulmes was the "owner" of the memorandum to be prepared for the meeting. *Id.* Amazon took unusual

PLAINTIFF'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS RE:
2019 AND 2022 SURVEYS
Case No. 2:23-cv-0932-JHC - 4

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

steps to protect the confidentiality of Hulmes's memorandum.  Specifically, the memorandum was not made "available for download or printing to avoid being shared beyond the intended audience."  *Id.*  Hulmes's memorandum explained that, after the March 2022 email exchange described above, Amazon reran its 2019 US survey on approximately 300 respondents and found that ▮ of US respondents enrolled in Prime "without realizing," while an additional ▮ could not remember how they enrolled.  *See* Mendelson Decl., Att. 15 at 4.  The FTC will prove at trial that these results underestimate the 2022 rate of unintentional enrollment, and Amazon has said it cannot locate the underlying data used to arrive at the ▮ and ▮ figures.  Even accepting the 2022 survey's unrealistically favorable results, however, the Benchmarking team reiterated that the then-current enrollment experience still "increases the likelihood of unintentional sign-ups."  *Id.* at 3.

        **E.**     **Amazon Refuses, Until the Last Possible Moment, to Search for, and Produce, Relevant Documents.**

Last November—within weeks of learning of the 2019 and 2022 Benchmarking surveys—the FTC served Amazon with document requests seeking, among other things, "all documents" relating to the 2019 and 2022 Benchmarking surveys of US consumers (RFPs 93 and 95, respectively).  Mendelson Decl., Att. 3 at 6, 12.  In late December, Amazon agreed to produce responsive documents, but only based on a search of sources "Amazon has already agreed to search."  *Id.* at 8, 13.  This approach did not make sense; the set of existing Amazon document custodians included nobody from the Benchmarking team, meaning that those custodians were unlikely to have any meaningful number of survey-related documents.  In a January 31, 2025 letter, the FTC raised this issue with Amazon:  "[W]hy does Amazon expect that this will reveal responsive documents, given that, as far as we can tell, the individuals responsible for the 2019 and 2022 surveys are not currently custodians?"  Mendelson Decl., Att. 35 at 4-5.

PLAINTIFF'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS RE:
2019 AND 2022 SURVEYS
Case No. 2:23-cv-0932-JHC - 5

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

Amazon did not directly answer the FTC's question, instead conclusorily stating, on February 12, that it had "conducted supplemental diligence to identify additional documents responsive to RFPs 93 and 95." Mendelson Decl., Att. 36 at 4. Based on the unspecified "reasonably diligent search process," Amazon claimed it had "not located any unique, responsive, non-privileged materials beyond those already produced." *Id.* Again, that answer did not make sense; it is implausible that there are *no* internal discussions—aside from a few memoranda and notes from a single meeting—of the 2019 and 2022 surveys. On February 14, the FTC again asked Amazon to specify the "supplemental diligence" it had undertaken to locate responsive documents, including what custodians it had searched. Mendelson Decl., Att. 41 at 6. On February 28, Amazon again refused, instead repeating that it had "conducted a reasonably diligent search to identify responsive materials." Mendelson Decl., Att. 6 at 4.

On March 4, the FTC gave in and proposed a set of search terms and custodians to be used to locate responsive documents. Under the Cour's ESI Order, this was Amazon's, not the FTC's, responsibility. *See* Dkt. #128 at 2 ("The producing party shall disclose the data sources (including custodians), search terms and queries, any file type and date restrictions, and the use of technology-assisted review. . . . After disclosure, the parties will engage in a meet and confer process regarding additional terms sought by the non-producing party."). Finally, at 11:00 pm on March 24—just two nights before the deadline for filing this Motion and two months after the parties started conferring—Amazon proposed search terms and custodians it would use to locate responsive documents. *See* Mendelson Decl., Att. 37 at 4. Amazon's proposal was inadequate, and the parties were out of time to negotiate a resolution in advance of filing this motion.[2]

## II.     ARGUMENT

The scope of discovery under Rule 26(b) is "extremely broad." *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995); *see also Garner v. Amazon.com, Inc.*, 2023 WL 6038011, at *1 (W.D. Wash. Sept. 15, 2023) ("Relevance under Rule 26(b)(1) is defined broadly and

---

[2] The FTC remains willing to discuss an agreed-upon resolution with Amazon before this Motion is fully briefed.

PLAINTIFF'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS RE:
2019 AND 2022 SURVEYS
Case No. 2:23-cv-0932-JHC - 6

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

remains so even after the 2015 amendments of the Federal Rules of Civil Procedure.") The FTC "may obtain discovery regarding any nonprivileged matter that is relevant to [its] claim . . . and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

When a party fails to produce requested documents or other materials, Rule 37 allows the opposing party to "move for an order compelling disclosures or discovery." *Sali v. Corona Reg'l Med. Ctr.*, 884 F.3d 1218, 1219 (9th Cir. 2019). Once the moving party has made its showing of relevance, the party opposing discovery "has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections with competent evidence." *Doe v. Trump*, 329 F.R.D. 262, 270 (W.D. Wash. 2018) (cleaned up); *see also Whitman v. State Farm Life Ins. Co.*, 2020 WL 5526684, at *2 (W.D. Wash. Sept. 15, 2020) ("The Ninth Circuit has held that there are 'liberal discovery principles' under the Federal Rules and that the party resisting discovery thus carries a 'heavy burden of showing' why a request for discovery should be denied." (quoting *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975))). Here, the FTC easily clears the relevance bar, and Amazon's objections are inadequate to bar the FTC's requested relief.

### A.   The Evidence Sought by the FTC Is Relevant.

Amazon has not, and cannot, dispute that evidence regarding the 2019 and 2022 Benchmarking group surveys is relevant. As detailed above, the surveys examined one of the core questions in this case: whether consumers unintentionally enroll in Prime while shopping on Amazon. *See supra* pp. 1-5. Beyond that, all three Individual Defendants received a briefing on the 2019 survey, and two of the three received a briefing on the 2022 survey. *Id.* Finally, documents relating to the survey also discuss Prime members' difficulty cancelling Prime.

### B.   Amazon Has Not Met Its Burden to Substantiate Its Objections.

Until 11:00 pm on March 24, Amazon had refused to conduct—or, at a minimum, disclose that it had conducted—any meaningful search for the highly relevant materials sought in

PLAINTIFF'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS RE:
2019 AND 2022 SURVEYS
Case No. 2:23-cv-0932-JHC - 7

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

RFPs 93 and 95. Amazon has not articulated any basis for its refusal to do so beyond its largely boilerplate, unsubstantiated objections to the FTC's RFPs.

Amazon, for example, objects that the FTC's request is "cumulative and duplicative" of the FTC's investigation requests (Mendelson Decl., Att. 3 at 7, 12), but Amazon did not, as far as we can tell, produce a single document mentioning the 2019 and 2022 surveys during the FTC's investigation. In neither the litigation nor investigation, moreover, has Amazon included Colin Hulmes or any other member of the Benchmarking team that conducted the 2019 and 2022 surveys as documents custodians. Documents responsive to RFPs 93 and 95 are therefore unlikely to be duplicative of earlier discovery. Amazon also objects that the FTC's requests are "overbroad" and "unduly burdensome." *See id.* Without a specific articulation of the burden, that objection cannot prevail. *See, e.g.*, *In re Application of Bloomfield Inv. Res. Corp.*, 315 F.R.D. 165, 168 (S.D.N.Y. 2016) (party claiming undue burden must supply "particularized evidence" such as "an affidavit of a person with knowledge of the record keeping system explaining in detail the basis of the objection"); *Treemo, Inc. v. Flipboard, Inc.*, 2014 WL 12029197, at *2 (W.D. Wash. Jan. 14, 2014) (citing *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981)).

Even setting aside that Amazon bears the burden of justifying its objections, the FTC's requests are plainly proportional to the needs of the case. The proportionality factors are the "importance of the issues at stake at in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expenses of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). These factors all favor the FTC. The FTC's allegations involve extensive misconduct by the operators of the country's largest subscription program,

PLAINTIFF'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS RE:
2019 AND 2022 SURVEYS
Case No. 2:23-cv-0932-JHC - 8

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

causing at least $1 billion in consumer harm. The FTC has no independent access to the information it seeks, and Amazon's resources are, for all practical purposes, unlimited.[3]

### C. The Search Terms and Custodians Sought by the FTC Are a Reasonable and Proportional Method of Locating Responsive Documents.

Amazon's refusal to meaningfully engage with the FTC regarding its responses to RFPs 93 and 95 not only violated the Court's ESI Order, but also deprived the parties of an opportunity to meaningfully confer regarding how Amazon can best gather responsive documents. Nevertheless, the FTC has done its best to tailor an appropriate search protocol for Amazon's response to RFPs 93 and 95. The complete relief the FTC seeks is described in the attached Proposed Order and summarized below:

- Amazon must search the following Amazon employee custodians, all but one of whom Amazon proposed as custodians in its belated "compromise" proposal (Mendelson Decl., Att. 37 at 4): Colin Hulmes, Sebstian Koch, Ryu Iwasare, Neha Kashyap, Erik Grant, Noah Borun, Russell Grandinetti, Neil Lindsay, Jamil Ghani, Lisa Leung, and Keisuke Takagi;
- In addition to the search terms included in Amazon's proposal (*id.*), Amazon must apply certain additional search terms, including "12 actions," "UPDP," and ("Prime" w/10 "CX");
- Amazon must also include as a search term the name of the vendor who conducted the 2019 and 2022 surveys, in addition to the email domain of that vendor;
- Amazon must search for documents dated between April-December 2019 or February 1, 2022-June 21, 2023;

---

[3] Amazon's most recent annual report states it has approximately $101,200,000,000 in cash, cash equivalents, and marketable securities as of December 31, 2024. Amazon, Inc., Annual Report (Form 10-K), at 22 (Feb. 7, 2025), *available at* https://d18rn0p25nwr6d.cloudfront.net/CIK-0001018724/e42c2068-bad5-4ab6-ae57-36ff8b2aeffd.pdf.

- Amazon must treat Colin Hulmes as a "full" document custodian,[4] applying the complete set of search terms it used on all prior document custodians;
- Amazon must also collect all documents from the files of its external vendor who conducted the 2019 and 2022 surveys; and
- In reviewing documents located using the specified search terms and custodians, Amazon must produce documents responsive to any of the FTC's RFPs, not solely those responsive to RFPs 93 and 95.

## LOCAL RULE 7(e) CERTIFICATION

I certify that this memorandum contains 3,189 words, in compliance with the Local Civil Rules.

## LOCAL RULE 37(a)(1) CERTIFICATION

I certify that counsel for the FTC has in good faith conferred with counsel for Defendants in an effort to resolve this dispute without court action. In addition to substantial written conferral, counsel for the parties met and conferred by phone on March 20, 2025, with the following attorneys, among others present: Evan Mendelson (FTC), Jonathan Cohen (FTC), Jonathan Ware (FTC), Anthony Saunders (FTC), Laura Flahive Wu (Amazon), Marc Capuano (Amazon), Joseph Reiter (Amazon), Joseph Aaronson (Amazon), and James Howard (Amazon).

---

[4] Notably, Hulmes's work relating to the issues of consensual enrollment was not limited to the 2019 and 2022 surveys. *See* Mendelson Decl., Att. 2 (December 2020 email identifying Hulmes as someone who "has been trying to drive actions" to improve the clarity of Prime enrollment). In a separate, concurrently filed motion, the FTC seeks leave to take Hulmes's deposition.

PLAINTIFF'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS RE:
2019 AND 2022 SURVEYS
Case No. 2:23-cv-0932-JHC - 10

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

Dated: March 26, 2025

/s/ Evan Mendelson
JONATHAN COHEN (DC Bar #483454)
EVAN MENDELSON (DC Bar #996765)
JONATHAN W. WARE (DC Bar #989414)
SANA CHAUDHRY (NY Bar #5284807)
ANTHONY SAUNDERS (NJ Bar #008032001)
OLIVIA JERJIAN (DC Bar #1034299)
Federal Trade Commission
600 Pennsylvania Avenue NW
Washington DC 20580
(202) 326-2551; jcohen2@ftc.gov (Cohen)
(202) 326-3320; emendelson@ftc.gov (Mendelson)
(202) 326-2726; jware1@ftc.gov (Ware)
(202) 326-2679; schaudhry@ftc.gov (Chaudhry)
(202) 326-2917; asaunders@ftc.gov (Saunders)
(202) 326-2749; ojerjian@ftc.gov (Jerjian)

COLIN D. A. MACDONALD (WSBA # 55243)
Federal Trade Commission
915 Second Ave., Suite 2896
Seattle, WA 98174
(206) 220-4474; cmacdonald@ftc.gov (MacDonald)

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

PLAINTIFF'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS RE:
2019 AND 2022 SURVEYS
Case No. 2:23-cv-0932-JHC - 11

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551