1 | The Honorable John H. Chun

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FEDERAL TRADE COMMISSION,

　　Plaintiff,

　v.

AMAZON.COM, INC., *et al*.

　　Defendants.

Case No. 2:23-cv-0932-JHC

**PLAINTIFF'S MOTION FOR SANCTIONS DUE TO DEFENDANT AMAZON.COM., INC.'S SYSTEMATIC ABUSE OF PRIVILEGE CLAIMS**

NOTE ON MOTION CALENDAR:
May 27, 2025

PLAINTIFF'S MOTION FOR SANCTIONS
Case No. 2:23-cv-0932-JHC

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

**TABLE OF CONTENTS**

I.   BACKGROUND ................................................................................................................. 4

    A.   Amazon's Privilege Log Is Almost Entirely Wrong ............................................... 4

    B.   The Documents Amazon Improperly Withheld Are Nowhere Close to Privileged and Contain Highly Probative and Inculpatory Information. ................................ 4

        1.   June 3, 2020 Meeting Notes ....................................................................... 4

        2.   December 3, 2020 Meeting Notes .............................................................. 5

        3.   UPDP for Repeat Prime Nonconsensual Enrollees .................................... 6

        4.   July 14, 2021, Meeting Notes ..................................................................... 7

    C.   Amazon Conducted a "Thorough Pre-Production Review" of the Documents in the Litigation and Preceding Investigation. ............................................................ 7

    D.   Amazon's Use of Privilege Designations to Hide Inculpatory Evidence Is Part of a Pattern. ................................................................................................................. 8

    E.   Amazon Employees Marked Non-Privileged Documents Related to Prime Enrollment and Cancellation as "Privileged and Confidential." .......................... 10

II.  LEGAL STANDARD ..................................................................................................... 11

III. ARGUMENT ................................................................................................................... 12

IV.  CONCLUSION ................................................................................................................ 14

PLAINTIFF'S MOTION FOR SANCTIONS
Case No. 2:23-cv-0932-JHC - 1

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

Amazon has engaged in a systematic and abusive effort to wrongfully withhold tens of thousands of inculpatory documents by asserting specious privilege claims. Following orders compelling it to re-review its privilege claims in *Frame-Wilson v. Amazon* and *Garner v. Amazon*[1]—and this Court's orders compelling Amazon to produce wrongfully withheld documents (Dkts. 179, 248)—Amazon reluctantly agreed to re-review all 76,500 documents for which it claimed privilege in full or in part. *See Frame-Wilson v. Amazon*, No. 20-cv-00424-JHC (Dkt. 256), at 2 (W.D. Wash. Feb. 3, 2025) (Chun, J.) (ordering Amazon to re-review "every document withheld" on privilege grounds). As discussed below, the overwhelming majority of Amazon's privilege claims were baseless; it is now apparent that Amazon purposefully abused privilege claims to keep inculpatory documents from the FTC.

For five reasons, this conduct demonstrates bad faith—rather than reflecting error or even negligence—and significantly prejudiced the FTC. **First**, between March 19 and April 28, 2025, Amazon withdrew **92%** of its privilege claims and produced approximately **70,000** documents previously withheld in whole or in part. Of those documents, approximately 58,000 were fully withheld (around 75% of Amazon's privilege claims). In essence, Amazon's privilege log—on which the FTC has relied throughout discovery—was almost entirely wrong. It is impossible to square a 92% error rate across tens of thousands of documents with a mere mistake.

**Second**, it is now clear many of the withheld documents were ***nowhere close*** to privileged. Rather, they contain probative, inculpatory, and entirely nonprivileged statements. For example, one document reveals that, during a December 3, 2020, meeting Doug Herrington, currently the CEO of the Amazon retail business, stated "subscription driving is a bit of a shady world" and referred to then-Amazon CEO Jeff Bezos as Amazon's "chief dark arts officer" in that regard. Stunningly, Amazon withheld this portion of the document from the FTC as "privileged," even though it did not contain any attorney-client communications.

---

[1] 2:21-cv-00750-RSL, 2024 WL 4266665, at *3-4 (W.D. Wash. Sept. 23, 2024).

PLAINTIFF'S MOTION FOR SANCTIONS
Case No. 2:23-cv-0932-JHC - 2

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

**Third**, Amazon's attorneys conducted, in their own words, a "thorough pre-production review" to produce documents in this matter and the investigation leading up to it. The December 3, 2020 document, for instance, was produced *with redactions* (including the probative, non-privileged statements quoted above) on October 7, 2022, during the investigation. The fact that Amazon's lawyers placed eyes on the documents they wrongfully withheld and logged them demonstrates this was not a mere misunderstanding, but instead an intentional attempt to hide probative material.

**Fourth**, the conduct here reflects a pattern of Amazon's misuses of privilege designations to manipulate discovery. As recent court rulings *in other matters* show, at least two courts—including this one—have found Amazon to have misapplied privilege designations to the majority of documents, which the Court reviewed *in camera*. *See Frame-Wilson*, 2:21-cv-00424-JHC (Dkt. 294), at 14-15, 20 (Mar. 25, 2025 W.D. Wash) (finding that about 63% of the 85 documents had to be produced due to overbroad privilege designations); *Garner*, 2024 WL 4266665, at *3-4 (W.D. Wash. Sept. 23, 2024) (same with respect to almost 80% of 76 documents). Even if such gross over-designation can be cast as a mistake once; three times cannot.

**Fifth**, Amazon had a clear internal practice of marking non-privileged documents as "privileged and confidential" or including in-house counsel on communications where legal advice was neither sought nor provided to expressly shield those documents from production. These widespread and wrongful practices make the company's bad faith clear.

In short, Amazon deprived the FTC of some of the most important evidence in this matter until just weeks before discovery closed and after the bulk of the FTC's fact depositions had taken place. As a result, Defendants have gained an enormous, entirely unfair strategic advantage. Accordingly, this motion seeks sanctions to put the FTC back in the position it would have been but for Amazon's substantial misconduct, at least to the extent possible.

PLAINTIFF'S MOTION FOR SANCTIONS
Case No. 2:23-cv-0932-JHC - 3

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

I. BACKGROUND

A. Amazon's Privilege Log Is Almost Entirely Wrong.

Amazon produced the bulk of its privilege log on August 16, 2024. *See* Jerjian Decl. ¶ 29. The FTC relied on this privilege log throughout discovery. It turned out to be nearly entirely incorrect. Indeed, Amazon only stands by 8% of the privilege claims it made in its log (*i.e.*, claims that deprived the FTC of information). By comparison, Amazon has made a *de minimis* number of inadvertent productions in the course of this litigation. *Id.* ¶ 26. The significant discrepancy between these numbers indicates a fundamental problem with Amazon's privilege logging protocol and reflects the extent of the prejudice it has inflicted on the FTC, which now has to process tens of thousands of documents with new information after the close of discovery.

B. The Documents Amazon Improperly Withheld Are Nowhere Close to Privileged and Contain Highly Probative and Inculpatory Information.

Even a cursory review of the approximately 70,000 documents Amazon produced after March 19, 2025 reveals the majority were never privileged and contained highly probative and inculpatory information. Amazon produced nine of these documents only following the Court's order to produce documents wrongfully withheld on privilege claims. *See* Dkt. 248 at 10. After *in camera* review, the Court determined just a *single* sentence from these 9 documents was privileged. *Id.* Unsurprisingly, the documents below, produced as part of the re-review of the privilege log, contain undisputably non-privileged, highly probative, and inculpatory information.

1. June 3, 2020 Meeting Notes

Amazon withheld Caroline Moeller's notes from a meeting with Defendant Ghani on June 3, 2020. *See* Jerjian Decl., Att. 13 at -424. The notes show that the Prime "[g]roup was aligned that we need to make changes to enhance clarity, and we have identified the right clarity CX guidelines to focus on." Moeller also wrote that "metrics" should not be "the reason why we don't take action on clarity. It is the right thing to do by the customer, so we should act. But we need to balance that with not creating a massive impact to the business all at once." *Id.* Later

PLAINTIFF'S MOTION FOR SANCTIONS
Case No. 2:23-cv-0932-JHC - 4

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

that year, Amazon ignored this advice.  Specifically, Amazon improved the clarity of its "UPDP" enrollment page, only to reverse course, at the December 3, 2020 meeting described below, because of the hit to Prime signups.  *See* Dkt. 139 at 4.

Amazon claimed this document "[discussed] or [related] to legal and regulatory risks related to features of Amazon subscription enrollment or cancellation flows." Jerjian Decl., Att. 19 (AMZN-PRM-FTC-LOG-000001265).  The document contains neither legal advice nor a request for such advice; it is simply inculpatory.

### 2. December 3, 2020 Meeting Notes

Amazon withheld part of the December 3, 2020 meeting notes from the FTC.  Amazon executives, including Defendants Lindsay and Ghani, met and decided to "lean away from" making Prime's enrollment process clearer to consumers and instead "focus more on driving overall members[hip enrollment]." *Id.*, Att. 1.  In addition to referring to Bezos as Amazon's "chief dark arts" officer, Herrington reminisced about a time when, apparently at Bezos's direction, consumers "used to have to call to cancel [their] subscription," a practice that frustrated many consumers.  *Id*.  Defendant Lindsay feared pro-consumer improvements would cause Prime to lose subscribers who *didn't* intend to sign up, but "end up being happy."[2]  *Id.*  Amazon should have produced these inculpatory statements years ago during the investigation.  With the discovery deadline passed, the FTC is severely prejudiced by the bad faith withholding of these documents.

Amazon initially produced a redacted version of the notes from the December 3, 2020, meeting because the redacted sections supposedly "[discussed] or [related] to legal and regulatory risks related to features of Amazon subscription enrollment or cancellation flows." *See id.*, Att. 19 (AMZN-PRM-FTC-LOG-000015423).  However, those sections do not reflect

---

[2] When the FTC asked Defendant Lindsay in his deposition if he "expressed an opinion where . . . customers might [have] accidentally or mistakenly signed up for Prime but then discovered the benefits of Prime and decide[d] to remain in Prime," he testified "No, I don't recall making a statement like that." Jerjian Decl., Att. 17 at 129:16-25.

PLAINTIFF'S MOTION FOR SANCTIONS  
Case No. 2:23-cv-0932-JHC - 5

Federal Trade Commission  
600 Pennsylvania Avenue NW  
Washington, DC 20580  
(202) 326-2551

*any* legal advice sought or provided. The FTC *specifically* requested these notes on August 30, 2023 but only received a version with the statements referenced above on March 19, 2025. *See id.* ¶ 27. The redactions were obviously not based on privilege, but rather were an attempt to hide inculpatory evidence.

### 3.     UPDP for Repeat Prime Nonconsensual Enrollees

Another previously withheld document reveals that nonconsensual enrollment was so widespread and widely known at Amazon that, in 2018, it developed a clearer UPDP[3]—not for *all* Amazon shoppers, but instead only for those at a heightened risk of repeated mistaken sign-ups. Specifically, the company "launched specific messaging (on both desktop/mobile) for the cohort of customers who 'signed up for multiple US Prime plans . . . and cancelled their plans at least twice through customer service.'" Jerjian Decl., Att. 15. The image attached to this email, titled "updp repeat customer," reflects a version of the UPDP with clearer buttons: "Join Amazon Prime" to subscribe to Prime and "No thanks, continue to checkout without Prime benefits" to decline. *Id.*, Att. 16; *compare id. with* Dkts. 67-1, 67-2, 67-4 (where the buttons do not refer to Prime).

Astonishingly, Amazon withheld the email and the image, claiming that it "[discussed] or [related] to legal and regulatory risks related to features of Amazon subscription enrollment or cancellation flows." *See* Jerjian Decl., Att. 19 (AMZN-PRM-FTC-LOG-000061697 and AMZN-PRM-FTC-LOG-000061696). However, yet again the document evidences neither legal advice nor a request for any. Because it was wrongfully withheld, the FTC was not able to explore this document further either through additional document requests or through deposition testimony, other than the Rule 30(b)(6) deposition of Amazon, which occurred on May 5 and 6.

---

[3] The UPDP (which stands for the "Universal Prime Decision Page") is a page that appears in Amazon's online checkout process requiring consumers to select a button to accept or decline a Prime subscription. Dkt. 69 (Am. Compl.) ¶ 38, Attachments A through D.

PLAINTIFF'S MOTION FOR SANCTIONS
Case No. 2:23-cv-0932-JHC - 6

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

### 4. July 14, 2021, Meeting Notes

Following the Court's order (Dkt. 248 at 10), Amazon produced the emails relating to the July 14, 2021 key meeting. These emails included Nikki Baidwan and Caroline Moeller's "rough notes." Jerjian Decl, Att. 26 at -896. Baidwan wrote that the Prime team had "benchmarked comparable programs" to Prime and found that "[o]n signups, we were not close to the middle of the pack amongst shopping and streaming programs." Changes discussed at the meeting would bring Amazon "closer to the middle of the pack" from near the bottom in terms of subscription clarity. Amazon withheld this document, claiming it "[discussed] or [related] to legal and regulatory risks related to features of Amazon subscription enrollment or cancellation flows" and preventing the FTC from using it in discovery. *See id.*, Att. 19 (AMZN-PRM-FTC-LOG-000017106). However, yet again, the document contained neither legal advice nor the request for such advice.

### C. Amazon Conducted a "Thorough Pre-Production Review" of the Documents in the Litigation and Preceding Investigation.

Amazon claimed it conducted a "thorough pre-production review" that "led to the production of thousands of documents with potential indicia of privilege." *Id.*, Att. 7 at 1. It stated the same during the investigation: attorneys "review[ed] documents before they are produced" to "prevent production of privileged materials and to avoid unnecessary disclosure of highly sensitive proprietary information." Dkt. 90-2 at 65. Furthermore, Amazon's in-house counsel certified (under penalty of perjury) that the company's logs "set[] forth the basis for withholding responsive information." Jerjian Decl., Att. 18. Of course, the logs did no such thing; the bases set forth—supposed privilege—were almost entirely wrong.

Moreover, Amazon's redactions reveal that attorneys reviewed the documents before adding them to the privilege log. Indeed, many of these documents, such as the December 3, 2020 meeting notes, were partially withheld, meaning they were produced with redactions that, presumably, Amazon's counsel applied. *See infra* at 9 n.5.

PLAINTIFF'S MOTION FOR SANCTIONS
Case No. 2:23-cv-0932-JHC - 7

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

Additionally, the volume of wrongfully withheld documents following Amazon's thorough review reveal a systemic issue with the manner in which the privilege log was constructed. Given the number of documents that Amazon had to review in creating the privilege log (approximately 76,500), multiple reviewers must have worked on the log with a set of instructions, versus a single reviewer who misapplied instructions. Therefore, the only plausible inference that can be drawn from the fact that 92% of Amazon's privilege designations were withdrawn (75% wholly) is that Amazon directed its reviewers to be grossly overbroad in their privilege claims, demonstrating bad faith.

### D. Amazon's Use of Privilege Designations to Hide Inculpatory Evidence Is Part of a Pattern.

Far from being a lone incident, this case is one of several in which Amazon has abused privilege designations. In *Garner*, 2:21-cv-00750-RSL (Dkt. 291), at *6, the Court found that "with regards to almost 80% of the [76] documents submitted" for an *in camera* review, "Amazon was unable to show, much less make a clear showing, that their withholdings or redactions covered only communications which had as a primary purpose the request for or provision of legal advice." The Court then ordered Amazon to "file a declaration of counsel indicating whether the expansive concept of what was privileged revealed in this exercise impacted all or part of the discovery process in this case." *Id.* at *11.

Similarly, in *Frame-Wilson*, 2:21-cv-00424-JHC (Dkt. 294), at 14-15, 20 (W.D. Wash Mar. 25, 2025), this Court determined that "about 63% of the [85] documents submitted for in camera review" had to be produced because the scope of the privilege designations "was too broad." Specifically, "Amazon improperly designated operational, business, and strategic documents" as privileged. The Court's privilege determinations in this matter, taken in

PLAINTIFF'S MOTION FOR SANCTIONS
Case No. 2:23-cv-0932-JHC - 8

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

conjunction with those in *Garner* and *Frame-Wilson*, demonstrate that Amazon's gross misuse of privilege designations is a systemic issue rather than a limited, isolated problem.[4]

Given these practices and Amazon's behavior in this case, two months ago, the FTC requested that Amazon re-review the approximately 80,000 documents withheld as privileged in this litigation or in the FTC's pre-suit investigation. Jerjian Decl., Att. 2 at 2-3. This was not the first time the FTC has asked Amazon to re-review its privilege logs. From January through April 2024, the FTC repeatedly requested that Amazon re-review the documents it withheld as privileged in the investigation. *See id.*, Atts. 3 at 1-2, 4, and 5 at 3. Amazon stalled. It claimed that the FTC needed to propose a "privilege log protocol" first, notwithstanding that Amazon had already logged the documents at issue. *See id.*, Atts. 6 and 7 at 2. It then reviewed only a subset of documents that the FTC had identified, instead of reviewing *all* withheld documents as requested. *See id.*, Atts. 7 at 1-2, 5 at 3, and 9 at 2. In response to the FTC's February 2025 request—and likely based on the Court's adverse rulings on Amazon's privilege claims in this matter, *Frame-Wilson*, and *Garner*—Amazon relented and produced approximately 70,000 documents from March 19, 2025 through April 28, 2025. *See id.* ¶ 28. When the FTC asked Amazon to agree to additional discovery arising out of the improperly withheld materials, Amazon initially refused, claiming 47% of the initial 1,233 privilege-downgraded documents it produced are "near duplicates" (90 percent similar) of documents that the FTC already had and 7% are exact duplicates.[5] *See id.*, Att. 12 at 4.

---

[4] Amazon's misuse of privilege designations to hide inculpatory information from the government is also apparent in another matter before this Court. *See Federal Trade Commission, et al. v. Amazon*, 2:23-cv-01495-JHC, Dkt. 432, at 11-13 (W.D. Wash. Mar. 26, 2025) (listing examples of non-privileged documents marked "privileged and confidential").

[5] This argument is a red herring. Documents Amazon now attempts to classify as "near duplicates" contain inculpatory information Amazon previously concealed from the FTC. For example, Amazon redacted a few lines from the December 3, 2020 meeting notes in the version it produced to the FTC in 2022, so the document looks near identical—but those lines contained the most probative information, including Herrington's inculpatory statements on Prime subscriptions being a "shady world" with Bezos as the "chief dark arts officer" and Defendant Lindsay's concerns of losing nonconsensual enrollees who "end up being happy." *Compare* Jerjian Decl., Att. 1 *with* Att. 14.

PLAINTIFF'S MOTION FOR SANCTIONS
Case No. 2:23-cv-0932-JHC - 9

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

Were it not for Amazon's false privilege claims, the FTC likely would have had those documents in May and June 2024, when Amazon produced the bulk of responsive documents in this litigation and prior to the FTC taking *any* fact depositions. Plainly speaking, Amazon has wrongfully withheld some of these documents for nearly a year, at best, and for years since the investigation, at worst.

### E. Amazon Employees Marked Non-Privileged Documents Related to Prime Enrollment and Cancellation as "Privileged and Confidential."

As the FTC explained in its Motion to Compel Production of Clawed Back Documents (Dkt. 140-1 at 3-4) and its Motion to Compel Production of Documents Relating to the May 6, 2021 Meeting (Dkt. 217 at 1-2), Amazon employees were instructed, as a practice, to label non-privileged documents as "privileged and confidential" and to include in-house counsel in communications, in a concerted effort to prevent the production of documents related to Prime's enrollment and cancellation mechanisms. *See, e.g.*, Dkt. 90-2 at 193; Dkt. 140-2 at 36-37; Dkt. 217-1 at 30. Recently produced documents reveal the ubiquitousness of this practice. In one document, an Amazon employee wrote that a non-privileged document was "P&C because of the subscription clarity issues. Anything involving accidental / uninformed signup […] All of that is P&C." Jerjian Decl., Att. 11 at -945. In another email, Defendant Ghani reminded everyone to keep "marking docs and emails"—an apparent reference to Amazon's practice of mislabeling clarity-related documents as "privilege and confidential." *Id.*, Att. 32 at -769. Amazon withheld this document in full because it "[d]iscuss[ed] or relat[ed] to legal advice regarding Amazon's company policies." Jerjian Decl., Att. 19 (AMZN-PRM-FTC-LOG-000039313). Notably, this email directly contradicts Ghani's prior testimony that he has "never told anyone . . . to mark a document as privilege without regard to whether they were actually seeking legal advice" and that "[t]he practice is to seek legal advice and mark documents and communications as such because you are seeking legal advice." *Id.*, Att. 21. Employees were also instructed to include in-house counsel in communications even where a legal request is not being made. *Id.*, Att. 8.

PLAINTIFF'S MOTION FOR SANCTIONS
Case No. 2:23-cv-0932-JHC - 10

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

Astonishingly, Amazon's in-house counsel even instructed employees to delete a non-privileged presentation regarding unintentional signups "because of its sensitive content and lack of Privileged & Confidential markings"—and multiple employees proceeded to delete the document. *Id.*, Att. 10. Despite its designation, the document was nowhere near privileged.[6] *Id.*, Att. 20. Amazon's privilege marking practice to prevent the production of those documents shows bad faith.

## II.   LEGAL STANDARD

The court has inherent power to sanction parties for improper conduct, at its discretion. *Chaudhry v. United States Citizenship & Immigr. Servs.*, 2019 WL 6341289, at *1 (W.D. Wash. Nov. 27, 2019) (citing *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001)). This is the case even "for discovery abuses that may not be a technical violation of the discovery rules." *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 380 (9th Cir. 1988) (citations omitted).[7] To sanction a party "under the court's inherent powers, the court must make a specific finding of "conduct tantamount to bad faith." *Chaudhry*, 2019 WL 6341289, at *1 (quoting *Fink*, 239 F.3d at 994). A party "demonstrates bad faith by delaying or disrupting the litigation." *Hernandez v. Vancouver City of*, 2017 WL 1957122, at *4 (W.D. Wash. May 11, 2017) (quoting *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997)).

"Sanctions are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Corus Realty Holdings v. Zillow Grp.*, 2020 WL 4041108, at *3 (W.D. Wash. July 17, 2020) (quoting *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1108 (9th Cir. 2002)). In determining bad faith, the court may consider the "totality of the circumstances, including conduct prelitigation." *Guerra v. United States*, 75 F. Supp. 3d 1276, 1281 (W.D. Wash. 2014) (quoting *Rodriguez v. United States,* 542 F.3d 704, 712 (9th Cir. 2008)).

---

[6] In fact, Amazon replaced this presentation with a version unchanged in any respect but the Privileged & Confidential markings.

[7] The FTC is also moving pursuant to Federal Rule of Civil Procedure 37(c)(1)(A) and (C).

PLAINTIFF'S MOTION FOR SANCTIONS
Case No. 2:23-cv-0932-JHC - 11

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

### III. ARGUMENT

Amazon's conduct demonstrates patently bad faith. First, the fact that **92%** of Amazon's privilege log is incorrect and that approximately 70,000 documents should have been produced in May and June 2024 but were not can only be attributed to bad faith. *See, e.g.*, *Epic Games, Inc. v. Apple Inc.*, 2025 WL 1260190, at *8 (N.D. Cal. Apr. 30, 2025) (finding that Apple violated an injunction, in part, where it delayed proceedings by "'offer[ing]' to re-review" 57,000 documents "for which is claimed privilege in full or in part," "[u]ltimately withdrew approximately 42.1% of its privilege claims," and "now tries to recast its re-review as 'of its own accord,' that framing belies the reality that the documents should have never been withheld in the first instance."); *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 655 F. Supp. 3d 899, 926 (N.D. Cal. 2023) (Facebook and its counsel "deserve to be sanctioned for their repeated use of frivolous legal arguments to delay the production of highly probative evidence"). Withholding such a large volume of documents until the cusp of the close of discovery has significantly disrupted this matter, as the FTC must now review over 70,000 documents, 75% of which it had not seen before. *See Hernandez*, 2017 WL 1957122, at *4.

Second, Amazon's privilege claims were so frivolous that an attorney, upon reviewing those documents or sections thereof, could not have had a good faith basis to withhold them on privilege grounds. *See supra* § I(B). Amazon's privilege calls were reckless and frivolous and likely demonstrate an improper purpose—to hide inculpatory documents from the government. *See Corus Realty Holdings*, 2020 WL 4041108, at *3.

Third, Amazon's attorneys redacted inculpatory portions of documents, even though there was no privilege-based reason for doing so. The blatant nature and ubiquity of these actions demonstrate beyond purview that doing so was part of a purposeful plan, and not simply a very long series of mistakes. *See Hernandez*, 2017 WL 1957122, at *4.

Fourth, Amazon's conduct in this case is not isolated. *See supra* § I(A)-(B). Amazon's practice of using the guise of frivolous privilege claims to shield non-privileged documents is

PLAINTIFF'S MOTION FOR SANCTIONS
Case No. 2:23-cv-0932-JHC - 12

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

part of a widespread pattern. Indeed, this Court has repeatedly ruled on Amazon's meritless privilege assertions. *See* Dkts. 179, 248.

Fifth, Amazon's own documents demonstrate that its employees were instructed to mark documents relating to Prime enrollment and cancellation as "privileged and confidential" regardless of whether they were seeking legal counsel or whether the document was attorney work product. *See supra* § I(E). It is hard to fathom a more purposeful abuse of the discovery process, demonstrating Amazon's bad faith beyond any doubt. *See Corus Realty Holdings*, 2020 WL 4041108, at *3; *Hernandez*, 2017 WL 1957122, at *4. Under similar circumstances, courts have sanctioned parties for abusing privilege designations to shield documents from future discovery. *See, e.g.*, *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 655 F. Supp. 3d at 923–24 ("[I]nternal documents from Facebook also suggest that its employees sought to shield communications from future discovery by 'privileging' them" and, for example, needlessly adding a lawyer in an email thread or marking a document "a/c priv").

Sixth, Amazon's actions have severely prejudiced the FTC. The FTC should have been able to use these documents in any deposition, including its depositions of Defendants Lindsay, Ghani, and Grandinetti. It could not. It should have been able to serve interrogatories regarding these documents. It could not. It should have been able to propound other document requests based on the contents of these documents. Again, it could not.

Even now, Amazon attempts to inject more delay into the process by falsely claiming it never rejected the FTC's efforts to resolve this dispute. However, its own correspondence shows that it rejected the FTC's offer and issued a counteroffer, which the FTC did not accept. Jerjian Decl., Att. 12 at 2-5. *See, e.g.*, *Williams v. Geico Gen. Ins. Co.*, 497 F. Supp. 3d 977, 983 (W.D. Wash. 2020).

Amazon's specious privilege claims and last-minute document productions have created extreme prejudice to the FTC, forcing it to file this instant motion after the close of discovery on

PLAINTIFF'S MOTION FOR SANCTIONS
Case No. 2:23-cv-0932-JHC - 13

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

April 25. Indeed, the FTC will need additional time to review these 70,000 documents to fully determine what additional discovery it requires.

## IV. CONCLUSION

For the foregoing reasons, the FTC respectfully requests that the Court enter the attached proposed order to put the FTC back in the position it would have been but for Amazon's substantial misconduct, including granting 90 days for the FTC to take discovery arising out of the wrongfully withheld documents, ordering Amazon to bear costs the FTC incurs, and precluding Amazon from making affirmative use of any wrongfully-withheld materials.

### LOCAL RULE 7(e) CERTIFICATION

I certify that this memorandum contains 4,191 words, in compliance with the Local Civil Rules.

### LOCAL RULE 37(a)(1) CERTIFICATION

I certify that counsel for the FTC has in good faith conferred with counsel for Defendants in an effort to resolve this dispute without court action. Counsel for the parties conferred by phone on April 8 and 23, 2025, and May 6, 2025 with the following attorneys present, among others: Olivia Jerjian (FTC), Jonathan Cohen (FTC), Laura Flahive Wu (Amazon). Counsel also exchanged written correspondence relating to this dispute at least the following dates: April 2, 3, 11, 21, and 29 and May 6, 2025. At the conference with the Court on April 30, 2025, the Court directed the FTC to file its Motion. (Dkt. 283).

Dated: May 7, 2025

/s/ Olivia Jerjian
JONATHAN COHEN (DC Bar # 483454)
EVAN MENDELSON (DC Bar #996765)
OLIVIA JERJIAN (DC Bar #1034299)
JONATHAN WARE (DC Bar #989414)
ANTHONY SAUNDERS (NJ Bar #008032001)
SANA CHAUDHRY (NY Bar #5284807)

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington DC 20580

PLAINTIFF'S MOTION FOR SANCTIONS
Case No. 2:23-cv-0932-JHC - 14

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

(202) 326-2551 (Cohen); -3320 (Mendelson); -2726 (Ware); -2749 (Jerjian); -2917 (Saunders); -2679 (Chaudhry)

JCohen2@ftc.gov; EMendelson@ftc.gov; JWare1@ftc.gov; OJerjian@ftc.gov; ASaunders@ftc.gov; SChaudhry@ftc.gov

COLIN D. A. MACDONALD (WSBA # 55243)
Federal Trade Commission
915 Second Ave., Suite 2896
Seattle, WA 98174
(206) 220-4474; CMacdonald@ftc.gov

RACHEL F. SIFUENTES
(IL Bar #6304016; CA Bar #324403)
Federal Trade Commission
230 S. Dearborn St., Room 3030
Chicago, IL 60604
(312) 960-5617; RSifuentes@ftc.gov

JEFFREY TANG (CA Bar #308007)
Federal Trade Commission
10990 Wilshire Boulevard, Suite 400
Los Angeles, CA 90024
(310) 824-4303; JTang@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

PLAINTIFF'S MOTION FOR SANCTIONS
Case No. 2:23-cv-0932-JHC - 15

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551