1 The Honorable John H. Chun

2
3
4
5

6 **UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
7 **AT SEATTLE**

8

9 FEDERAL TRADE COMMISSION, | Case No. 2:23-cv-0932-JHC

10     Plaintiff, | **PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY OF RONALD T. WILCOX, PH.D.**

11     v.

12 AMAZON.COM, INC., *et al*. | **NOTE ON MOTION CALENDAR: Tuesday, June 24, 2025**

13     Defendants. | **ORAL ARGUMENT REQUESTED**

14
15
16
17
18
19
20
21
22
23

PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY OF
RONALD T. WILCOX, PH.D.
Case No. 2:23-cv-0932-JHC - 1

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

**TABLE OF CONTENTS**

I. BACKGROUND ............................................................................................................. 3

    A. Wilcox's Unreliable Cancellation Survey. ........................................................... 4

        1. Wilcox Recruited Technology-Savvy Survey Takers ................................ 5

        2. Wilcox Used Only the Most Attentive Survey Panelists. ......................... 6

        3. Wilcox Failed to Determine Whether Any Panelists Had Cancelled Prime Before ...................................................................................................... 8

        4. Wilcox Failed to Ensure a Representative Sample of U.S. Amazon Prime Members. ................................................................................................... 9

    B. Wilcox's Irrelevant Free Trial Survey ................................................................ 10

II. LEGAL STANDARD .................................................................................................... 11

III. ARGUMENT ................................................................................................................. 12

    A. Wilcox's Cancellation Survey Is Unreliable ...................................................... 12

        1. Wilcox's Sample For An Online, Multi-Step Task Was Biased Towards Tech-Savvy, Attentive Respondents. ....................................................... 12

        2. Wilcox Failed to Show His Sample Was Representative of Average Amazon Prime Members Seeking to Cancel their Memberships. ............ 13

    B. Wilcox's Free Trial Survey is Irrelevant and Unhelpful to the Trier of Fact. ...... 15

IV. CONCLUSION .............................................................................................................. 17

PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY OF
RONALD T. WILCOX, PH.D.
Case No. 2:23-cv-0932-JHC - 2

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320

Plaintiff Federal Trade Commission ("FTC") moves, pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), to exclude the testimony of Ronald T. Wilcox, Ph.D., concerning two surveys he conducted for this litigation.[1] The first, a survey on Amazon's Iliad cancellation flow, is unreliable and therefore inadmissible. The second, a survey about consumers' experiences with other (mostly non-Amazon) free trials for subscription programs, is irrelevant.

## I.   BACKGROUND

The FTC alleges Defendant Amazon.com, Inc. ("Amazon"), and Individual Defendants Jamil Ghani, Neil Lindsay, and Russell Grandinetti, violated Section 5(a) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a), and Section 4 of the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. § 8403.  Specifically, Amazon tricked, coerced, and manipulated consumers into subscribing to Amazon Prime by failing to disclose the material terms of the subscription clearly and conspicuously and by failing to obtain the consumers' informed consent before enrolling them. Am. Compl., Dkt. #67, ¶ 2. Amazon also failed to provide simple mechanisms for cancelling Prime memberships. *Id.* ¶ 7.  As relevant here, Amazon has intentionally complicated the process for cancelling Prime online, for years, by imposing multi-page, multi-click, multi-option cancellation processes, known within Amazon as the "Iliad" flow.[2]

---

[1] Wilcox's opinions are set forth in his opening report, dated February 24, 2025, and referenced in his rebuttal report, dated April 23, 2025.  This motion is directed at all of Wilcox's opinions about his two surveys.

[2] The FTC's concurrently-filed motion for summary judgment more fully describes Amazon's illegal cancellation processes.

PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY OF  
RONALD T. WILCOX, PH.D.  
Case No. 2:23-cv-0932-JHC - 3

Federal Trade Commission  
600 Pennsylvania Avenue NW  
Washington, DC 20580  
(202) 326-3320

Defendants engaged Wilcox to design and conduct two surveys. His opinions on both should be excluded as methodologically unsound (the first survey) and irrelevant (the second).

### A. Wilcox's Unreliable Cancellation Survey.

First, Wilcox designed and conducted a "cancellation survey" that he claims shows a lack of confusion among Amazon Prime members who intend to cancel their membership and use the Iliad flow on desktop or laptop to do so. Att. 144 ¶¶ 19, 47-50; Att. 145 ¶¶ 40, 46-47, 49 n.96, 65.[3] His survey included an interactive online simulation containing a portion of the Amazon.com website, including three pages of the Iliad flow from around August 2022, when it was a four-page, six-click, fifteen-option cancellation process. *See* Att 144 ¶¶ 19, 26, 28 n.58; Am. Compl. ¶¶ 127-163. He vetted a panel of survey participants, screened them, subjected those he deemed qualified to the simulation, and assessed the panelists who completed the simulation.

However, Wilcox's survey sample was methodologically flawed. As Wilcox acknowledges, a non-representative survey sample calls into question the expert's research and the generalizability of the results. Att. 148 at 132:14-22, 242:1-10; *see also* Att. 144 ¶ 17 & n.26 ("[T]here may be systematic differences in the responses of members of the population and nonmembers."). Yet Wilcox's survey population was unrepresentative in four main respects: (1) Wilcox used a panel of technology-savvy online survey takers to study how the general population of Prime members would perform on an online task (cancellation); (2) Wilcox eliminated more than a quarter of his otherwise qualified panelists using decoy questions and

---

[3] All "Attachment" cites reference attachments to the Declaration of Evan Mendelson, filed concurrently herewith. All page number cites for Attachments refer to the ECF header information at the top of the page.

PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY OF
RONALD T. WILCOX, PH.D.
Case No. 2:23-cv-0932-JHC - 4

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320

attention checks, resulting in an unusually attentive panel performing a task that requires attention to quickly complete; (3) Wilcox obtained no information on whether his panelists had prior experiences cancelling Prime memberships online, despite recognizing that prior experience with the Iliad flow would enhance their performance in his survey; and (4) Wilcox failed to ensure his survey sample was socio-demographically representative of U.S. Amazon Prime members. The factual background of each of these flaws is explained below.

### 1. Wilcox Recruited Technology-Savvy Survey Takers.

Two entities recruited the panelists and ran the survey for Wilcox: GBK Collective ("GBK"), a survey research company, and Dynata, a market research firm. Att. 144 ¶ 21, n. 39. To obtain panelists, GBK recruited participants through an online survey panel provided by Dynata. Att. 144 ¶ 46. Dynata recruits participants through various channels, including via mobile apps, social media, and online advertising. Att. 146 at 6. The participants are generally compensated with a reward or incentive to complete the surveys. *Id.* at 5; *see also* Att. 148 at 263:21-264:7 (Dynata's online dashboard tells participants "how much money they're going to get" to complete a survey).

To become a paid survey respondent for Dynata, recruits must be relatively technology-savvy, as they must complete various online account set-up, validation, and profile questionnaire processes. For example, they must successfully answer over 100 pages of questions to build an online profile. Declaration of Adam Rottner ("Rottner Decl.")[4] ¶ 13; *see also* Att. 148 at 264:8-18 ("They have to provide [Dynata] with a bunch of information, demographic information….."). Potential panelists must also be capable of operating two-factor claim authentication to redeem

---

[4] Filed concurrently herewith, as a separate docket entry.

PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY OF
RONALD T. WILCOX, PH.D.
Case No. 2:23-cv-0932-JHC - 5

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320

rewards paid for surveys, and must provide "complex, unique, relevant answers to an open-ended question" during verification processes. Rottner Decl. ¶ 14 *see also* Att. 148 at 264:21-264:7 (describing online dashboard "app" participants operate for surveys). They must also be capable of self-uploading or transmitting content or material regarding survey completion, including photos and videos. Rottner Decl. ¶ 15.

1,645 of these vetted panelists were selected for Wilcox's cancellation survey. Att. 144 ¶ 46. Wilcox obtained no information on whether these incoming panelists had completed similar online surveys for Dynata prior to participating in his survey, or how many, or how recently—information readily available to him. Att. 148 at 282:6-283:3.

### 2.  Wilcox Used Only the Most Attentive Survey Panelists.

The vetted incoming panelists began Wilcox's first survey by responding to screening questions. Att. 144 ¶ 22. Initial screening questions eliminated panelists who did not use a desktop or laptop computer for the survey, and those with certain occupations. *Id.* ¶ 22. Next, Limited demographic information on age, gender, and the region where they lived from the screening questions was used to eliminate incoming panelists, so that the sample would roughly match 2020 U.S. census data respecting age (reported in brackets), gender, and region. *Id.*; *see also* Att. 147. Wilcox then screened the remaining panelists to eliminate those who did not shop online in the past 12 months, and those who did not own a Prime membership or share one with a household member. Att. 144 ¶ 22. As discussed below, although much more demographic and other information was available from Dynata, Wilcox did not ensure the panel was representative of U.S. Amazon Prime members. *See* Rottner Decl. ¶¶ 9, 11 (20 categories of available information; demographics available on income, ethnicity, race, languages, education, and other factors).

PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY OF
RONALD T. WILCOX, PH.D.
Case No. 2:23-cv-0932-JHC - 6

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320

The screening of qualified panelists did not stop there, however. More than a quarter of the qualified panelists were removed due to "failing" even one of several questions that checked for attentiveness. Specifically, Wilcox used some questions with decoy, or "trick," answer options, and some questions that required completing a task (called attention check questions) to ensure the panelists were paying attention. *See* Att. 144 ¶ 20. His first question, a multiple-choice question about online shopping habits, had two pitfalls—two fake shopping websites that seemed real ("BoardGameBin.com" and "UrbanOutpost.com"). *Id,* ¶ 22e. Picking either of those options eliminated the panelist. *Id.* Wilcox also placed a fake option in the next question about what memberships people thought they had (the fake being "eBay Premier"), and selecting that option eliminated the panelist. *Id.* ¶ 22f. A third question was an attention check task, requiring a correct answer be typed in (permitting some misspellings). *Id.* ¶ 22g & n.51. Panelists who passed those questions were then given instructions about the simulation. *Id.* ¶ 23. This was followed by the final attention-check question, which made sure the panelists reviewed the instructions. *Id.* ¶ 24. Panelists who successfully completed that question were given the instructions for Wilcox's simulation again before entering the simulation. *Id.* ¶ 25.

Wilcox's questions that checked for attentiveness resulted in nearly 30% of the otherwise qualified panelists being eliminated from his survey sample. Declaration of Eric Spurlino ("Spurlino Decl.") ¶ 4.[5] Of the 779 panelists who were Prime members (or shared a Prime membership) and made it to the attentiveness-check questions, 233 were eliminated by one of those questions. *See id*.

---

[5] Attached hereto as "Attachment A."

PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY OF
RONALD T. WILCOX, PH.D.
Case No. 2:23-cv-0932-JHC - 7

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320

### 3. Wilcox Failed to Determine Whether Any Panelists Had Cancelled Prime Before.

Notably, Wilcox did not screen for whether panelists had ever previously cancelled their Prime membership online. Att. 148 at 270:14-16. Wilcox admits that a person who had done so would have an easier time completing his survey. *Id.* at 269:23-13 ("[B]ecause they did it once, they seem to be able to navigate through things. They're more likely to navigate through it again."). Nevertheless, he failed to include any screening questions about this issue, despite acknowledging that he could have. *Id.* at 271:19-242:4. Wilcox has no idea how many panelists had previously cancelled Prime online. *Id.* at 271:21-24.

Wilcox's panel may have included people who have previously cancelled Prime recently, or even more than once. Amazon's data shows that some Prime subscribers have had more than one Prime membership sign-up during certain time periods, strongly suggesting that they previously cancelled a membership and then signed-up again. Spurlino Decl. ¶¶ 5-6. Indeed, from ▮▮▮▮▮ alone, an average of ▮▮▮▮▮ U.S. consumers cancelled or paused their Prime memberships each year. Att. 127 at 2. This level of "churn" shows many current Prime members must have cancelled their memberships online at least once before. And, of course, Wilcox could have obtained this information from Amazon. *See* Att. 144 ¶ 26 n.55 (Wilcox obtained information from Amazon regarding the Prime cancellation processes in August 2022); *see also* Att. 148 at 273:2-274:1 (Amazon provided Wilcox's staff access to a "high-level" Amazon employee to help him refine his survey design for accuracy).

Importantly, Amazon's data suggests that some active Prime members have cancelled Prime *multiple times*. As of ▮▮▮▮▮, ▮▮▮▮ of active Amazon Prime members have had ▮▮▮▮▮▮▮▮▮▮ (inferring at least ▮▮▮▮ cancellations). Spurlino Decl. ¶ 6. ▮▮▮

PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY OF
RONALD T. WILCOX, PH.D.
Case No. 2:23-cv-0932-JHC - 8

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320

1   of them have had ▮▮▮▮▮▮▮▮▮▮ (inferring at least ▮▮▮▮ cancellations). *Id*.

2   ▮▮▮ of them have had ▮▮▮▮▮▮▮▮▮▮ (inferring at least ▮▮▮▮ cancellations). *Id*.

3   And ▮▮▮ of them have had ▮▮▮▮▮▮▮▮▮▮ (inferring at least ▮▮▮▮ *cancellations*).

4   *Id.* Yet, Wilcox does not know whether any experienced online Prime-cancellers were in his

5   survey sample. Att. 148 at 270:14-16.

### 4. Wilcox Failed to Ensure a Representative Sample of U.S. Amazon Prime Members.

The only socio-demographic factors that Wilcox considered in his survey sample methodology was some limited age information, gender, and region. Att. 148 ¶ 22. He only screened on these issues near the beginning of his survey—before he even screened for whether the panelist had a Prime membership or shared one with a household member. *See id.* ¶ 22. He took into account no other socio-demographic information and did nothing else to ensure that he was testing his simulation of the Iliad flow on a representative sample of U.S. Amazon Prime members.

Wilcox knows nothing about any of his survey participants' education or reading levels. Att. 148 at 234:21-244:2, 246:5-7, 246:25-247:5. He also excluded panelists using mobile devices, purportedly for cost reasons. *Id.* at 70:21-71:9. This is a critical omission since research shows that 15% of U.S. adults only use a smartphone for internet access at home, and reliance on smartphones for internet access is especially common among Americans with lower household incomes and lower levels of formal education.[6] Wilcox also excluded anyone under the age of 18 from the survey panel. Att. 144 ¶ 21. Wilcox testified that he generally excludes

---

[6] *See* Pew Research Center, "Mobile Fact Sheet," dated Nov. 13, 2024, http://pewrsr.ch/2ik6Ux9 (last accessed May 27, 2025).

PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY OF
RONALD T. WILCOX, PH.D.
Case No. 2:23-cv-0932-JHC - 9

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320

minors because he finds it difficult—though not impossible—to include them in a survey. Att. 148 at 234:20-235:3. He also generally believes household decision-makers for the subject of the study are not minors, despite acknowledging that minors may use a parent's Amazon Prime account, with or without permission. *Id*. at 235:4-23. Wilcox does not know anything about the age of the panelists beyond the limited information that GBK provided; for example, he has no idea how many of the panelists were age 75 or older. *Id.* at 237:10-15.

Wilcox's study also included only those fluent in English. Att. 148 at 242:19-25. But he acknowledged this would limit the generalizability of his survey, because there are likely Prime members who are not fluent in English, and he cannot preclude that those people would have difficulties navigating his English-only survey. *Id.* at 239:12-240:11. Plainly, Wilcox ignored demographic criteria necessary for considering a representative sample of U.S. Prime members in his survey.

### B. Wilcox's Irrelevant Free Trial Survey

Second, Wilcox designed and conducted a "free trials survey," purporting to assess the extent to which consumers have experience with free trials of memberships or subscriptions, including whether they believe they have had a free trial membership or subscription that automatically converted to a paid one unless it was cancelled. Att. 144 ¶ 51; Att. 145 ¶¶ 4-5. This survey was not focused on Prime, but asks about a variety of services generally, such as streaming services and gym memberships. *Id.* ¶ 56. Wilcox offers no opinions concerning whether Amazon is enrolling people in Prime memberships without their express, informed consent; none on Prime's disclosures; and no opinion concerning Amazon's processes regarding when it collects billing information for Prime. Att. 144 at 62:13-64:10.

PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY OF
RONALD T. WILCOX, PH.D.
Case No. 2:23-cv-0932-JHC - 10

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320

## II. LEGAL STANDARD

In *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), the United States Supreme Court designated the courts as "gatekeepers" to ensure that expert testimony is "not only relevant, but reliable." *Id.* at 589; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (this gatekeeping function applies to all expert testimony, not only "scientific" testimony). Courts have "broad discretion" in making such evidentiary rulings. *Hyer v. City & Cnty. of Honolulu*, 118 F.4th 1044, 1055 (9th Cir. 2024) (citing *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1065 (9th Cir. 2017)).

The admissibility of a survey is a "threshold question that must be resolved by a judge." *M2 Software, Inc., v. Madacy Ent.*, 421 F.3d 1073, 1087 (9th Cir. 2005) (quoting *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1263 (9th Cir. 2001)). This requires the court to determine whether there is a proper foundation for admissibility. *Id.* "The proponent of [a] survey bears the burden of establishing its admissibility." *Keith v. Volpe*, 858 F.2d 467, 480 (9th Cir. 1988). "The proponent must show that the survey was conducted in accordance with generally accepted survey principles and that the results were used in a statistically correct manner." *Id.* Survey evidence will be excluded where it suffers from a "fatal flaw" showing that the results are unreliable. *Brighton Collectables v. RK Texas Leather Mfg.*, 923 F.Supp.2d 1245, 1257 (S.D. Ca. 2013) (citations omitted).

A survey is not relevant where it fails to engage with the legal issues of the case. *Roar Spirits, LLC v. Sutter Home Winery, Inc.*, No. 23-CV-04809-HSG, 2025 WL 523898, at *17 (N.D. Cal. Feb. 18, 2025). Such surveys are properly excluded as irrelevant and unhelpful to the trier of fact. *Ngethpharat v. State Farm Fire & Cas. Co.*, No. C20-454 MJP, 2021 WL 2823245, at *3 (W.D. Wash. July 7, 2021).

PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY OF
RONALD T. WILCOX, PH.D.
Case No. 2:23-cv-0932-JHC - 11

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320

### III. ARGUMENT

#### A. Wilcox's Cancellation Survey Is Unreliable.

Wilcox claims his cancellation survey provides reliable results about the number of Amazon Prime members who can locate the Iliad flow on Amazon.com using a desktop or laptop computer, pause or end their Prime membership, and how long these tasks take. Att. 144 ¶¶ 47-50. But as Wilcox admits, generally accepted principles of designing and conducting surveys require that the expert ensure a survey sample that accurately represents the target population. Att. 148 at 132:14-22, 242:1-10; Att. 144 ¶ 17 & n.26; *see also Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 516 n.14 (3d Cir.1998) (to meet generally accepted survey principles, "a representative sample must be chosen"). Wilcox has not done so here.

##### 1. Wilcox's Sample For An Online, Multi-Step Task Was Biased Towards Tech-Savvy, Attentive Respondents.

Nothing in Wilcox's report or testimony indicates that the cancellation survey panelists were representative of U.S. Amazon Prime members. Instead, the various vetting procedures used by GBK and Dynata, and screening questions Wilcox employed, likely ensured the panelists possessed relatively strong skills in online tasks. They may have also completed similar surveys before, but Wilcox did not find out. Att. 148 at 282:6-283:3. The professional online survey takers used by Wilcox are most likely to successfully navigate a website cancellation process, a bias that Wilcox fails to consider and address. *See Hurt v. Com. Energy, Inc.*, No. 1:12-CV-00758, 2015 WL 410703, at *5 (N.D. Ohio Jan. 29, 2015) (survey excluded where expert failed to account for possible biases from the survey design itself influencing the responses). This is particularly glaring where, as here, the purpose of the survey was to test through an online simulation whether people could successfully complete the cancellation

PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY OF
RONALD T. WILCOX, PH.D.
Case No. 2:23-cv-0932-JHC - 12

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320

process for a membership or subscription service.

Wilcox compounded this bias by piquing and verifying the panelists' attentiveness multiple times with attention-check questions. Right up to the moment the panelists proceeded to the simulation itself, they could be eliminated from the panel for failing to properly pass an attention check. And in fact, the attentiveness screening questions *did* eliminate about 29.91% of the panelists that otherwise qualified for the survey. Spurlino Decl. ¶ 4. Thus, those panelists who proceeded to the simulation were the most attentive in Wilcox's panel. Panelists who paid careful attention to the screening questions are also most likely to be focused and attentive in cancelling their Prime membership online, making this sampling unrepresentative of Prime members who seek to cancel their memberships generally.

Experts in survey methodology acknowledge that over-screening for attentiveness is methodologically problematic. For example, screening question researchers at the Massachusetts Institute of Technology have found that where "attentive and inattentive respondents are different types of people, removing all inattentive respondents may skew" a survey sample.[7] Wilcox fails to address this bias in his sample. Att. 148 at 255:16-22, 256:21-257:7.

### 2. Wilcox Failed to Show His Sample Was Representative of Average Amazon Prime Members Seeking to Cancel their Memberships.

To give relevant, reliable opinions about U.S. Prime members, Wilcox must have a sample representative of the socio-demographic populations that make up U.S. Prime members. "For the survey's results to be accurate, it must use a sampling method that ensures the sample is

---

[7] *See* Berinsky, et al., *Separating the Shirkers from the Workers? Making Sure Respondents Pay Attention on Self-Administered Surveys*" AMERICAN JOURNAL OF POLITICAL SCIENCE, Vol. 58, No. 3 (July 2014), 739, 748 (copy provided at Attn. 149 at 10).

PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY OF
RONALD T. WILCOX, PH.D.
Case No. 2:23-cv-0932-JHC - 13

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320

representative of the entire population ….." *Hurt*, 2015 WL 410703 at *5; *see also* Shari Seidman Diamond, *Reference Guide on Survey Research*, Fed. Judicial Ctr., *Reference Manual on Scientific Evidence* 359, 379-80 (3d ed. 2011) ("If the sampling frame does not include important groups in the target population, there is generally no way to know how the unrepresented members of the target population would have responded."). But by his own admission, Wilcox did not verify whether key demographics were appropriately represented in his survey.

For example, although Wilcox acknowledges that any recent experience with cancelling Prime online would make it easier to successfully complete his simulation, he failed to ensure that people who have previously cancelled Prime memberships online were not overrepresented in his sample. Since Amazon's data shows some active Prime members have previously cancelled their memberships one, two, three, or even four or more times in the past, this is a striking omission on a factor that Wilcox admits is relevant to having a representative, rather than biased, sample.

Similarly, Wilcox failed to verify whether the level of English-fluency in the sample is consistent with U.S. Amazon Prime members, despite designing an English-only simulation, in which English fluency must affect performance. He also failed to verify that the sample was representative in terms of education or reading level, despite literacy likely having an impact on whether the cancellation task could be completed (and how quickly). And although he considered some limited age-related information, he does not know if people over age 75 were included in his survey. Wilcox also excluded minors, despite admitting that minors could be in the relevant population.

Any one of these factors would raise concerns about whether Wilcox's first survey was conducted on an unrepresentative and unbiased sample, but the combined numerous flaws, gaps,

PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY OF
RONALD T. WILCOX, PH.D.
Case No. 2:23-cv-0932-JHC - 14

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320

1  and unexplained factors in his survey render it unreliable. Amazon may argue that these

2  challenges to the survey's design go to its weight, rather than its admissibility.  On the contrary,

3  showing that a representative sample was used for a survey is a necessary factor in showing the

4  survey was conducted according to generally accepted survey principles, and thus is Amazon's

5  burden to meet.  *M2 Software, Inc.*, 421 F.3d at 1087 (argument that flaws in the survey go to

6  weight are misplaced where the proponent "first failed to provide a proper foundation for

7  admissibility of its survey") (citing *Click Billiards*, 251 F.3d at 1263); *see also Kournikova v.*

8  *Gen. Media Commc'ns Inc.*, 278 F. Supp. 2d 1111, 1125 (C.D. Cal. 2003) (excluding a survey as

9  inadmissible where it generally sampled U.S. adults, not "the correct group").

10        In sum, Wilcox fails to show that the sample he used to form his opinions is

11  representative of and can be generalized to U.S. Amazon Prime members.  Rather, the available

12  evidence shows it is more likely that Wilcox conducted his cancellation survey, including his

13  website simulation, on a non-representative sample of the most attentive panelists who were also

14  skilled at online tasks.  His opinions and testimony regarding the cancellation survey should

15  therefore be excluded.  *E.g., Brighton Collectables*., 923 F.Supp.2d at 1257 (a "fatal flaw" in a

16  survey renders an expert's opinions inadmissible) (citations omitted).

17        **B.**    **Wilcox's Free Trial Survey is Irrelevant and Unhelpful to the Trier of Fact.**

18        In his free trial survey, Wilcox generalizes about whether U.S. adults who have recently

19  signed up for a free trial of a membership or subscription think that service would automatically

20  convert to a paid service if they had not cancelled it.  His survey is irrelevant as it asked the

21  respondents nothing about their understanding of Prime memberships, or anything else relevant.

22        Expert testimony is considered relevant and helpful under Rule 702 if it assists the "trier

23  of fact to understand or to determine a fact in issue." *Daubert*, 509 U.S. at 591 (quoting Rule

PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY OF
RONALD T. WILCOX, PH.D.
Case No. 2:23-cv-0932-JHC - 15

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320

1  702). Surveys that do not are irrelevant and inadmissible. *See Ngethpharat*, 2021 WL 2823245,
2  at *3 (excluding survey where it failed to ask any questions relevant to pertinent issues in the
3  case); *Roar Spirits, LLC*, 2025 WL 523898, at *17 (similar).
4        As this Court knows, this case concerns whether Amazon adequately disclosed the terms
5  for Prime memberships, enrolled consumers in Prime without their express, informed consent,
6  and provided simple mechanisms for cancelling Prime memberships as required by ROSCA.
7  Wilcox's free trial survey asks nothing about consumers' understandings of Prime memberships
8  or the terms thereof, Amazon's disclosures of Prime membership terms, or any other relevant
9  matter. Instead, Wilcox's survey generically asks about memberships and subscriptions for
10 mostly non-Prime services. Whatever someone may think about a free trial of a gym
11 membership, streaming service subscription, or any subscription service other than Prime has
12 absolutely no bearing on this case.
13       To the extent Wilcox seeks to opine that consumers who have some experience with a
14 free trial membership or subscription may be more likely to understand Prime's subscription
15 terms, such opinion is irrelevant. ROSCA's disclosures and cancellation requirements
16 nevertheless apply regardless of what consumers do or do not understand about subscription
17 programs generally. Moreover, Wilcox does not provide any evidence that connects the results
18 from the free trial survey to a consumer's understanding of Prime's enrollment process. *See*
19 *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (expert testimony inadmissible where "there
20 is simply too great an analytical gap between the data and the opinion proffered"). Because
21 Wilcox's free trials survey will not "aid the trier of fact to understand the evidence or determine

PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY OF
RONALD T. WILCOX, PH.D.
Case No. 2:23-cv-0932-JHC - 16

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320

a fact in issue," Fed. R. Evid. 702(a), his opinions should be excluded as irrelevant.[8]

## IV. CONCLUSION

For the foregoing reasons, the FTC respectfully requests that the Court preclude Wilcox from testifying about his two surveys. Should the Court be inclined to deny any part of this motion, the FTC respectfully requests a *Daubert* hearing.

### LOCAL RULE 7(e) CERTIFICATION

I certify that this memorandum contains 4,190 words, in compliance with the Local Civil Rules.

Dated: May 27, 2025

/s/ *Rachel F. Sifuentes*
JONATHAN COHEN (DC Bar # 483454)
EVAN MENDELSON (DC Bar #996765)
OLIVIA JERJIAN (DC Bar #1034299)
JONATHAN WARE (DC Bar #989414)
ANTHONY SAUNDERS (NJ Bar #008032001)
SANA CHAUDHRY (NY Bar #5284807)

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington DC 20580

(202) 326-2551 (Cohen); -3320 (Mendelson); -2726 (Ware); -2749 (Jerjian); -2917 (Saunders); -2679 (Chaudhry)

JCohen2@ftc.gov; EMendelson@ftc.gov; JWare1@ftc.gov; OJerjian@ftc.gov; ASaunders@ftc.gov; SChaudhry@ftc.gov

COLIN D. A. MACDONALD (WSBA # 55243)

---

[8] Wilcox also included no questions about consumers' experiences with various types of payment programs for membership or subscription services, such as pay-as-you-go payment structures. General knowledge about a free-to-paid trial program does not necessarily infer knowledge about which services follow which types of payment programs, let alone what payment structures are available to Prime members.

PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY OF
RONALD T. WILCOX, PH.D.
Case No. 2:23-cv-0932-JHC - 17

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320

Federal Trade Commission
915 Second Ave., Suite 2896
Seattle, WA 98174
(206) 220-4474; CMacdonald@ftc.gov

RACHEL F. SIFUENTES
(IL Bar #6304016; CA Bar #324403)
Federal Trade Commission
230 S. Dearborn St., Room 3030
Chicago, IL 60604
(312) 960-5617; RSifuentes@ftc.gov

JEFFREY TANG (CA Bar #308007)
Federal Trade Commission
10990 Wilshire Boulevard, Suite 400
Los Angeles, CA 90024
(310) 824-4303; JTang@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY OF
RONALD T. WILCOX, PH.D.
Case No. 2:23-cv-0932-JHC - 18

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320