The Honorable John H. Chun

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FEDERAL TRADE COMMISSION,

               Plaintiff,

   v.

AMAZON.COM, INC., *et al.*,

               Defendants.

No. 2:23-cv-0932-JHC

DEFENDANTS RUSSELL
GRANDINETTI, NEIL LINDSAY,
AND JAMIL GHANI'S MOTION
FOR SUMMARY JUDGMENT

NOTE ON MOTION CALENDAR:
June 24, 2025

ORAL ARGUMENT REQUESTED

INDIVIDUAL DEFENDANTS' MSJ
(2:23-cv-0932-JHC)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................... 1

II.   BACKGROUND ................................................................................................... 2

    A.    Procedural Background ................................................................................. 2

    B.    The Individual Defendants ........................................................................... 4

III.  LEGAL STANDARD .......................................................................................... 7

IV.   ARGUMENT ....................................................................................................... 7

    A.    The Individual Defendants Are Not Liable Because There Is No
           Underlying Corporate Violation. ................................................................. 7

    B.    The Individual Defendants Are Not Liable Because They Did Not Have
           the Knowledge and Control Required ......................................................... 8

         1.    None of the Individual Defendants Are Liable for Monetary Relief
               Because They Lacked Knowledge That the Prime Flows Were
               Deceptive or Fraudulent. .............................................................. 8

         2.    Grandinetti Did Not Control or Directly Participate in the Prime
               Enrollment and Cancellation Flows. ........................................... 11

    C.    Enforcing ROSCA Against the Individual Defendants Would Violate
           Their Due Process and First Amendment Rights ...................................... 13

         1.    Enforcing ROSCA Would Violate Due Process .................................... 14

         2.    Enforcing ROSCA Would Violate the First Amendment ...................... 16

         3.    These Objections Apply with Special Force to the Individual
               Defendants. .................................................................................. 18

    D.    The Evidence Cannot Support a Finding That Individual Defendants
           Acted with the Knowledge Required For Civil Monetary Penalties. ................ 19

V.    CONCLUSION ................................................................................................... 22

INDIVIDUAL DEFENDANTS' MSJ
(2:23-cv-0932-JHC) - i

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

# I.    INTRODUCTION

The FTC seeks to hold three individuals personally liable for Amazon's supposed violations of the Restore Online Shoppers' Confidence Act ("ROSCA") and to obtain crushing civil monetary penalties against them—penalties adding up, according to the FTC, to over a billion dollars. Summary judgment should be granted to the Individual Defendants because the evidence shows that neither they nor Amazon violated ROSCA, much less with knowledge of any such alleged violation. Indeed, the FTC seeks these penalties for conduct that no person, not even within the FTC, appears to have known was deceptive or unlawful before 2021. Nothing alerted the Individual Defendants of that possibility. There is no view of the evidence under which the Individual Defendants can be liable or subjected to devastating civil penalties.

The Court should grant the Individual Defendants summary judgment for four reasons.

*First*, the FTC has failed to prove that Amazon violated the law.

*Second*, even assuming Amazon's liability, to hold the Individual Defendants liable for monetary relief, the FTC would have to prove that each individual both knew that Amazon's conduct was deceptive or fraudulent and actually participated in or controlled that conduct. The evidence shows that none of the Individual Defendants knew that Amazon's sign up and cancellation processes were deceptive. To the contrary, each Individual Defendant testified that they found nothing deceptive or fraudulent about the Prime processes, and any reports of customer confusion showed at most that some limited amount of confusion is simply unavoidable. Moreover, despite the Prime processes having always been public, the FTC never communicated to Amazon that they were problematic in any way. In a particularly striking overreach, one Individual Defendant was not even a part of the Prime organization until 2021— seven years after that group adopted the enrollment flow and five years after it adopted the cancellation flow at issue here.

*Third*, enforcing ROSCA, as the FTC understands it, against the Individual Defendants would violate the Due Process Clause, because ROSCA does not "provide a person of ordinary intelligence fair notice" that it bars the conduct the FTC is now targeting, *FCC v. Fox Television*

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Stations, Inc*, 567 U.S. 239, 254 (2012), as well as the First Amendment, which imposes an even "more stringent vagueness test" on laws that restrict speech, *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc*., 455 U.S. 489, 499 (1982). Further, laws imposing monetary fines on individuals are "strictly construe[d]," *United States v. Boyd*, 991 F.3d 1077, 1085–86 (9th Cir. 2021), to ensure "that a fair warning [is] given … of what the law intends to do if a certain line is passed," *Bittner v. United States*, 598 U.S. 85, 102 (2023) (plurality) (internal quotation marks omitted). The Individual Defendants received no fair warning. As the FTC's 30(b)(6) witness conceded—consistent with the FTC's repeated claim that ROSCA's text provides no "guidance" and "lacks specificity"—"even those who would want to comply with ROSCA and intend to contend with ROSCA may find themselves noncompliant." Ex. 2 at 181:14–182:14; Ex. 3 at 503:22–504:2.[1]

*Finally*, at a minimum, civil monetary penalties cannot be awarded. For one, the FTC's demand for civil penalties is time-barred. Moreover, these "onerous" penalties are reserved for highly culpable defendants—those who did not act based on a "mistaken interpretation of the [law]," but "whose intentional actions reflected 'knowledge fairly implied on the basis of objective circumstances that the conduct was prohibited.'" *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 584 (2010). The FTC has developed no evidence that any Individual Defendant was aware that ROSCA was violated. And no evidence could support the conclusion that three non-lawyers somehow had knowledge, years before the FTC, that ROSCA barred Amazon's processes. Making clear now that civil monetary penalties cannot be awarded against the Individual Defendants would substantially narrow the issues at trial.

## II.     BACKGROUND

### A.     Procedural Background

As described in Amazon's Motion for Summary Judgment, which the Individual Defendants join, Prime is a membership subscription service that provides benefits and discounts.

---

[1] Ex." or "Exs." refer to exhibits attached to the Omnibus Declaration of Joseph Reiter unless stated otherwise.

INDIVIDUAL DEFENDANTS' MSJ
(2:23-cv-0932-JHC) - 2

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Prime has used sign up and cancellation "flows" to facilitate customer enrollment and cancellation since 2014 and 2016, respectively. Amazon Mot. § III.F.1.

ROSCA regulates the processes companies use to allow customers to enroll in and cancel services online. Under ROSCA, companies that use negative option features must: (1) "clearly and conspicuously disclose[] all material terms of the transaction before obtaining the consumer's billing information;" (2) "obtain[] a consumer's express informed consent before charging the consumer[];" and (3) "provide[] simple mechanisms for a consumer to stop recurring charges." 15 U.S.C. § 8403. Because a violation of ROSCA is a violation of the FTC Act, *id.* § 8404(a), a defendant found liable can be subject to civil monetary penalties of up to approximately $50,000 per violation, *id.* § 45(m)(1)(A); 16 C.F.R. § 1.98.

The FTC has recently sought to stretch ROSCA's text to cover commonplace marketing practices. But even the FTC recognizes that the text of ROSCA, on its face, does not address these practices. In two recent proposed rules, the FTC stated that ROSCA "lacks specificity about cancellation procedures," 84 Fed. Reg. 52393, 52396 (Oct. 2, 2019), and leaves businesses "without guidance about what is simple," 88 Fed. Reg. 24716, 24718 (Apr. 24, 2023). As for the phrase "clearly and conspicuously," the FTC says ROSCA neither "prescribe[s] specific steps marketers must follow" nor "provide[s] clarity about how to avoid deceptive negative option disclosures." *Id.* at 24718.

Discovery confirmed that the FTC's new interpretation of ROSCA is far removed from ROSCA's text. According to the FTC's 30(b)(6) witness, the meanings of ROSCA's requirements of "clear and conspicuous disclosures" and "simple cancellation mechanisms" are "context-specific," Ex. 2 at 157:6–10; Ex. 3 at 432:12–13, and that "context" consists of numerous "ingredients"—none of which are in ROSCA's text—that go into the "soup" of determining "whether or not there's a ROSCA violation." Ex. 2 at 209:12–211:9. With respect to cancellation, the FTC privately applies a 20-plus factor, unweighted test, *see id.* at 349:17–350:9, 363:1–2, which is not in the statute and has never been disclosed, *id.* at 353:8–20. To this day, "there's no checklist of things that one could look at and say … you comply with ROSCA," *id.* at

162:3–7, and "even those who would want to comply with ROSCA and intend to contend with ROSCA may find themselves noncompliant," Ex. 3 at 503:22–504:2.

The FTC has been aware of the Prime enrollment and cancellation processes since they were implemented. Amazon Mot. § III.F.2. Multiple FTC officials are Prime members. Ex. 2 at 40:3–7. Yet for nearly a decade the FTC raised no concerns about Amazon's processes to Amazon. *Id.* at 89:16–91:20.

Then the FTC filed this lawsuit in 2023, alleging that Amazon's sign up and cancellation flows have always violated ROSCA based on novel and atextual theories about ROSCA's reach. The FTC asserts that Amazon violated ROSCA by using "user interface designs known as 'dark patterns,'" Dkt. 69 ("Am. Compl.") ¶ 2, a concept not articulated in ROSCA and asserted by the FTC for the first time in this case. *See* Dkt. 84 at 28; Ex. 2 at 96:20–99:4, 106:18–107:20 (admitting the FTC accuses Amazon of using "dark patterns" when ROSCA does not expressly prohibit their use). The FTC asserts that Amazon does not "clearly and conspicuously" disclose the material terms of Prime, yet admits that the terms of a Prime subscription are visible to all users during the enrollment process. *See* Amazon Mot. § III.A.1. Similarly, the FTC claims some consumers may be frustrated or confused by Amazon's cancellation process but has developed no empirical evidence demonstrating that consumers struggle to cancel. *Id.* § III.D.

The FTC did not stop at asserting its new, expansive theories against Amazon. It went an unprecedented step further and named three Amazon executives—Russell Grandinetti, Jamil Ghani, and Neil Lindsay—as defendants, seeking to impose against them over $1,000,000,000 in civil monetary penalties. Am. Compl. ¶ 271; Ex. 38 at 10. The FTC claims "it is unlikely that Delaware law would permit Amazon to indemnify" the Individual Defendants. Dkt. 252 at 3.

## B.    The Individual Defendants

The Individual Defendants are Amazon executives, each of whom oversees thousands of employees and a diverse portfolio of work. Russell Grandinetti is Senior Vice President for Amazon International Stores and primarily manages Amazon's e-commerce business outside of the U.S. and Canada. Ex. 37 at 7:13–23. He has been an SVP at Amazon since 2016 and did not

assume responsibility for Prime until November 2021. *Id*. at 22:3–7. By then, Amazon had been using the challenged Prime enrollment and cancellation flows in substantially the same form for years. As a senior manager not only of Prime but also of Payments, Books, Marketing, Amazon Business, and other business units, Grandinetti estimates that 30,000 people worldwide "fall under the umbrella of [his] role." *Id*. at 7:19–23, 18:18–21.

Neil Lindsay worked as a Vice President for Prime and Marketing, Worldwide Consumer from February 2017 to July 2021, and as Senior Vice President for the same organization from July to November 2021. Ex. 31 at 15:11–16:8. Lindsay's role at Prime required him to manage a number of Amazon's "central functions, payments … books, marketing, Amazon business" and more. Ex. 37 at 7:13–23. Lindsay had responsibility for a wide variety of Prime operational matters, including pricing, benefits, and marketing. Ex. 31 at 17:6–18:6, 26:2–8. Since November 2021, Lindsay has been SVP for Amazon Health Services, which is not a part of Prime. *Id*. at 11:13–20. Lindsay and Grandinetti are also members of Amazon's 'S-Team'—a team of senior leaders that meets several times per year to assess hundreds of business objectives across all of Amazon's various businesses. Ex. 37 at 35:12–36:22, 37:11–38:1; Ex. 31 at 13:1–6, 14:17–23.

Jamil Ghani joined Amazon in 2017, after the Prime sign up and cancellation flows were implemented. Currently, he is Vice President of Amazon Prime—a title he has held since October 2019. Ex. 30 at 44:10–17. He manages global Prime operations and works with teams around the world on the Prime program. *Id*. at 44:18–20. Since November 2021, he has reported to Grandinetti. Ex. 37 at 19:1–6. Before assuming his current role, Ghani served as the Vice President for Prime and Marketing, International. Ex. 30 at 44:10–14.

In their Prime-facing roles, all of the Individual Defendants worked "constantly" to "improve the customer experience." Ex. 37 at 211:1–8. While they were aware that a "small percentage" of customers reported mistakenly enrolling in Prime, none of them believed the sign up flows were deceptive. Ex. 30 at 24:25–25:7; *see also* Ex. 37 at 88:6–13; Ex. 31 at 46:24–47:5. To the contrary, while some small percentage of sign-ups may have been inadvertent, the Individual Defendants believed the vast majority were intentional. *See, e.g*., *id*. at 83:25–84:6.

INDIVIDUAL DEFENDANTS' MSJ
(2:23-cv-0932-JHC) - 5

According to Lindsay, his team spent a "great deal of time, [over] years, trying to understand the extent" of any potential systemic mistaken-enrollment issue because they were "interested in understanding whether [they] can minimize any [customer] frustration." *Id.* at 48:1–7. After investigating the source of these frustrations, Lindsay's team concluded that mistaken sign ups were likely the result of "a natural variance"—in other words, that "in any experience or signup process, there will always be some confusion, you can never get 100 percent of people who find an experience perfect for them." *Id.* at 48:20–49:3.

All three Individual Defendants also testified that a core Amazon business objective was to promote customer trust, and that Amazon ran extensive experiments to test various flows' clarity. Ex. 30 at 10:20–11:11. Ghani's team worked to "reduc[e] the small number of members that then later report that they had some issue in the sign up experience" because Amazon's "business and long-term customer trust is predicated on … members … choosing to become Prime members, having gotten all the relevant information to that decision, and then going on and actually using their membership." *Id.* at 55:17–21; 65:1–7. Lindsay's team "pa[id] a lot of attention every day to listening for and looking for anything that might frustrate customers and to minimize those frustrations" and ran a "number of experiments" focused on improving the Prime sign up process. Ex. 31 at 81:22–25, 83:5–10. Per Grandinetti, Amazon has "no interest in customers signing up for Prime mistakenly." Ex. 37 at 130:11–12; *see also* Ex. 31 at 131:6–10 ("[T]here's no logic in any suggestion that I would want our customers to sign up unintentionally because they won't become happy customers.").

There is no evidence that the Individual Defendants knew about ROSCA before this litigation, much less knew Amazon was violating the law. The FTC did not develop evidence that any Individual Defendant had ever read ROSCA. *See* Ex. 2 at 133:1–4, 16–20. None of the Individual Defendants are lawyers. Ex. 30 at 133:17–18; Ex. 37 at 225:17–18; Ex. 31 at 77:19–21. And the FTC's limited questioning of the Individual Defendants about ROSCA elicited no evidence that they had the required knowledge. While Lindsay and Grandinetti were "aware of the term" ROSCA by their depositions, *id.* at 229:12–13; Ex. 37 at 226:7–12, they could not

recall when they first learned of ROSCA's existence, and the FTC elicited no testimony about whether and when they understood any of ROSCA's terms. The FTC did not even ask Ghani if he was aware of ROSCA. While Ghani testified that, during his time working with Prime, he has consulted with Amazon lawyers about "the legal requirements that Amazon must follow when enrolling consumers in Amazon Prime," there is no evidence or testimony indicating he knew about ROSCA or its legal requirements. Ex. 30 at 32:11–22.

All record evidence shows that the Individual Defendants believed Amazon had chosen a lawful course. Ghani testified that "[a]ny time [Amazon is] aware of specific [legal] requirements, we comply with them." *Id.* at 133:20–21. Lindsay was adamant that when "there are regulatory instructions … we will follow them." Ex. 31 at 125:8–19. And Grandinetti testified that while he "never … belie[ved] that the Prime sign-up process was misleading," he still "constantly ask[s] all the teams [he] work[s] with to improve the customer experience"—even if that means losing Prime members. Ex. 37 at 101:13–14, 178:8–11, 211:68.

## III.    LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## IV.    ARGUMENT

### A.    The Individual Defendants Are Not Liable Because There Is No Underlying Corporate Violation.

The Individual Defendants are entitled to summary judgment because Amazon did not violate ROSCA. Individual liability is predicated on proving "that the corporation committed" a violation. *FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1170 (9th Cir. 1997). The Individual Defendants join Amazon's arguments showing why Amazon did not violate the law. *See* Amazon MSJ §§ III.A–III.D. Because there is no underlying corporate violation, the Individual Defendants are entitled to summary judgment.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**B.    The Individual Defendants Are Not Liable Because They Did Not Have the Knowledge and Control Required.**

Even if the FTC could prove that Amazon violated ROSCA, it cannot make the additional showing required to hold the Individual Defendants liable. An individual may not be held personally liable unless the FTC proves that he participated directly in or had control over the violations. *Publ'g Clearing House*, 104 F.3d at 1170. And an individual cannot be held liable for monetary relief unless the FTC also shows that he knew of the violations. *Id*. at 1171. Following discovery, the FTC cannot make the case that any Individual Defendant met these requirements.

**1.    None of the Individual Defendants Are Liable for Monetary Relief Because They Lacked Knowledge That the Prime Flows Were Deceptive or Fraudulent.**

An individual is not liable for a corporation's violations of the FTC Act unless he participates in a scheme with "knowledge" that the corporation is engaging in fraudulent or deceptive conduct. *Id.* Knowledge, in this circumstance, means (1) "actual knowledge of" the conduct's deceptive nature; (2) "reckles[s] indifferen[ce] to" whether that conduct was deceptive; or (3) "awareness of a high probability of fraud along with an intentional avoidance of the truth," otherwise known as deliberate indifference. *FTC v. Grant Connect, LLC*, 763 F.3d 1094, 1101–02 (9th Cir. 2014); *FTC v. Moses*, 913 F.3d 297, 306 (2d Cir. 2019) (a defendant must have "knowledge of the deceptive nature of the scheme" to be personally liable).

This "three-part test largely tracks the traditional common-law scienter requirement for claims of fraud" and "focus[es] primarily on what [defendants] thought and believed." *U.S. ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 750–51 (2023). A person has "actual knowledge" that something is false or deceptive when they have "actual, subjective awareness" that it is false or deceptive. *Unicolors, Inc. v. H&M Hennes & Mauritz, L. P.*, 595 U.S. 178, 185 (2022). A person acts in "reckless disregard" when they are "conscious of a substantial and unjustifiable risk" of deception. *Schutte*, 598 U.S. at 751. And "'deliberate ignorance' encompasses defendants who are aware of a substantial risk that their" conduct is fraudulent or deceptive "but intentionally avoid taking steps to confirm" as much. *Id*.

Knowledge is required to impose monetary liability of any form. *FTC v. Garvey*, 383 F.3d 891, 902 (9th Cir. 2004) (restitution); *FTC v. Network Servs. Depot, Inc.*, 617 F.3d 1127, 1138 (9th Cir. 2010) (equitable monetary relief); *FTC v. Stefanchik*, 559 F.3d 924, 931 (9th Cir. 2009) (damages); *see also FTC v. Ross*, 743 F.3d 886, 892 (4th Cir. 2014) (collecting cases in other circuits).[2]

No reasonable jury could find that any of the Individual Defendants had "knowledge of the [supposedly] deceptive nature" of the Prime enrollment or cancellation flows. *Moses*, 913 F.3d at 306.

Grandinetti. There is no evidence that Grandinetti knew that Amazon's conduct was deceptive. On enrollment, "[i]t was never [his] belief that the Prime sign-up process was misleading." Ex. 37 at 101:13–14. Grandinetti had "no interest in customers signing up for Prime mistakenly," and encouraged teams to address the small number of consumer enrollment frustrations he was aware of. *Id*. at 130:11–12; *see also id*. at 144:19–24; Ex. 39 at 158:12–18 (Grandinetti was "customer-obsessed"); Ex. 40 at 239:12–14 (Grandinetti "agree[d] with" "objective" of improving customer clarity). As for cancellation, the FTC cannot even show that Grandinetti knew what the flow at issue was, let alone that it was deceptive. Ex. 37 at 76:5–77:13.

Further, the record is clear that Grandinetti had no knowledge of anything specific about Prime's processes going back to 2014 (for enrollment) and 2016 (for cancellation). The FTC must "establish that [Grandinetti] had knowledge of [Amazon's] wrongdoing during th[e] entire period … to hold him individually liable for [Amazon's conduct] during the same period." *Moses*, 913 F.3d at 308. Grandinetti did not oversee Prime until November 2021, when the enrollment and cancellation flows had been in place for years. *See* Ex. 37 at 22:3–7; Ex. 41 at 292:4–13.

Ghani. The evidence is unrebutted that the enrollment and cancellation flows were in place before Ghani joined Amazon and that Ghani believed the flows were not deceptive. He

---

[2] The FTC's prior argument to the contrary, *i.e.*, that a "knowledge" requirement applies only to its request for civil monetary penalties, was contrary to law. *See FTC v. Amazon.com*, 735 F. Supp. 3d 1297, 1326 n.8 (W.D. Wash. 2024) (accepting the FTC's argument); *see Montana Wildlife Fed'n v. Haaland*, 127 F.4th 1, 48 (9th Cir. 2025) (law-of-the-case doctrine does not apply to clear errors).

INDIVIDUAL DEFENDANTS' MSJ
(2:23-cv-0932-JHC) - 9

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

testified that Amazon presents "a clear, very straightforward articulation of the critical terms of what you're signing up for" and that "the standard is to have every member aware that they are signing up, and that's what I believe we do and have always done." Ex. 30 at 64:2–11. Customers "have the information" they need "and then make an informed choice." *Id*. at 66:6–8. Nor has Ghani turned a blind eye to the "small percentage of customers that later report having an issue with the signup experience." *Id*. at 62:22–63:1. Rather, his team has "consistently" been "trying to improve" those customers' experience. *Id*.; *see also* Ex. 33 at 99:7–8 (Ghani "support[ed]" "actions being taken to address clarity").

<u>Lindsay</u>. The evidence is also unrebutted that Lindsay did not know that the Prime enrollment process was deceptive. Lindsay testified that he believes Amazon's "disclosures are clear," that Amazon "provide[s] the information that is necessary to make a decision" about whether to sign up, and that he is "not aware of a time" when Amazon failed to provide that "necessary information." Ex. 31 at 76:25–77:23, 78:19–23; *accord id*. at 125:8 ("Our signup process is always clear."). When Lindsay encountered concerns that "customers did not always discern the price or auto renew information," he "worked … to understand [those] frustrations" because Amazon "do[es]n't want any customer to be frustrated, even though it's unrealistic to have zero frustrations." *Id*. at 81:3–11; *see also id*. at 148:11–20 ("[I]n spite of the fact that we know the vast majority of people purchasing Prime are satisfied with that purchasing experience, … my team spen[t] an enormous amount of time … to try to address customer frustrations."); Ex. 33 at 141:24–142:9. That Lindsay understood the steps in Prime's sign up and cancellation processes generally does not indicate that he believed such processes were in any way deceptive. *See* Ex. 31 at 33:5–34:22.

*    *    *

There is no evidence indicating that the Individual Defendants *knew* Prime's flows were misleading. Mere knowledge of the flows themselves would not alert the Individual Defendants that the flows were deceptive or fraudulent (even assuming that they were). As detailed in Amazon's motion, Amazon indisputably provides the terms of a Prime subscription to customers

INDIVIDUAL DEFENDANTS' MSJ
(2:23-cv-0932-JHC) - 10

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

during the enrollment process and provides multiple ways to cancel a Prime subscription. *See* Amazon MSJ §§ III.A–III.D. And despite its longstanding awareness of the flows, the FTC never communicated to Amazon, much less the Individual Defendants, that there was anything deceptive or fraudulent about them. *Id*. § III.E.3.

Nor does knowledge of anecdotes or customer surveys relating to isolated customer frustrations—the evidence the FTC nearly exclusively relies on—amount to knowledge of *deception*. Something "is not false and deceptive merely because [it] may be 'unreasonably misunderstood by an insignificant and unrepresentative segment of the class of persons ...' that may purchase" it. *Ebner v. Fresh, Inc.*, 838 F.3d 958, 966 (9th Cir. 2016). Even the FTC's 30(b)(6) witness acknowledged that some consumer confusion will arise "no matter how clear something is." Ex. 2 at 204:8–20; *see also* Ex. 30 at 54:22–59:16; 136:6–12 (explaining that an "irreducible minority" of Amazon's customers report difficulties regardless of steps Amazon takes to increase clarity). If anything, these isolated surveys and anecdotes show that Amazon holds itself to a "high bar" and is always "looking for ways to make [its] process as clear for customers as [it] could." Ex. 37 at 101:13–102:8; Ex. 30 at 23:3–26:7; *see also id*. at 58:3–7; Ex. 31 at 46:24–47:5, 48:8–16, 49:11–21. The Individual Defendants' awareness of, and serious efforts to address, frustrations from a small proportion of consumers hardly shows reckless indifference or intentional avoidance of deceptive or fraudulent conduct.

### 2. Grandinetti Did Not Control or Directly Participate in the Prime Enrollment and Cancellation Flows.

Grandinetti is entitled to summary judgment for a second, independent reason: He did not directly participate in or control the Prime enrollment and cancellation flows. *Publ'g Clearing House*, 104 F.3d at 1170.

No reasonable factfinder could find that evidence about Grandinetti satisfies this test. Instead, discovery confirmed that the FTC seeks to impermissibly proceed as to Grandinetti based on his "status" as a corporate officer, "standing alone." *FTC v. Swish Mktg.*, 2010 WL 653486, at *5 (N.D. Cal. Feb. 22, 2010) (finding status insufficient); *FTC v. Wellness Support Network, Inc.*,

INDIVIDUAL DEFENDANTS' MSJ
(2:23-cv-0932-JHC) - 11

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

2011 WL 1303419, at *11 (N.D. Cal. Apr. 4, 2011). Having failed to prove "substantial facts" showing Grandinetti's "relationship not only to the corporation but also to its [unlawful] scheme," *Swish Mktg.*, 2010 WL 653486, at *5, the FTC's claims against Grandinetti fail.

As an initial matter, the FTC cannot link Grandinetti to Amazon's adoption of the challenged flows. The FTC alleges that Prime enrollment and cancellation flows have violated ROSCA since 2014 and 2016, respectively. *See* Ex. 3 at 499:10–13, 501:18–21. Yet the FTC has never even *alleged* that Grandinetti was "involved in any way with the enrollment flows in 2014" or the cancellation flows in 2016. *Id.* at 501:12–502:17. Individual liability attaches when a defendant exercised control "*at the time the scheme was organized*, and directly participated in *establishing* the scheme." *Grant Connect*, 763 F.3d at 1103 (rejecting liability where defendant did not "control[] [the company] *at the time the … scheme was developed*" or "directly participate[] in the scheme") (emphasis added). Because Grandinetti was not even allegedly involved in establishing the flows alleged to violate ROSCA, the FTC seeks to punish Grandinetti solely for failing to change a practice implemented long before he had any say-so. The Individual Defendants are not aware of a court that has extended individual ROSCA liability so far; this Court should not be the first.

Even during the period the FTC does allege Grandinetti was involved with Prime, the FTC has failed to muster evidence linking Grandinetti to the flows. Prime did not report to Grandinetti until November 2021. Ex. 37 at 22:3–7; Ex. 31 at 100:19–102:5; Ex. 41 at 292:7–13. The FTC's unsupported allegations to the contrary can no longer be credited. *Cf. Amazon*, 735 F. Supp. 3d at 1328–29 (accepting as true, at the pleading stage, that Grandinetti "had authority to control and participate in the 'acts and practices set forth in [the] Amended Complaint'"). If any claims against any Individual Defendant survive, at a minimum they must be narrowed to the period of time during which they were both allegedly and demonstrably involved.

The FTC can demonstrate no such involvement by Grandinetti as to the cancellation flows. The *only* allegation in the Complaint purporting to connect Grandinetti to cancellation is that he "oversaw, and continues to oversee, Amazon employees who studied the Iliad Flow

including the complications it presented to subscribers attempting to cancel, and who developed simpler alternatives, which Grandinetti did not implement." Am. Compl. ¶ 21. After discovery, the FTC has identified no evidence that Grandinetti was involved in any cancellation decision. The FTC did not ask Grandinetti about any such evidence at his deposition. *See, e.g.*, Ex. 37 at 222:5–14. And the FTC's 30(b)(6) witness could not identify any such evidence. *See* Ex. 3 at 530:19–531:4 (identifying only Complaint paragraphs about enrollment as decisions over which Grandinetti allegedly exerted control); *id.* at 540:5–13 (unable to say whether Grandinetti was ever presented with a ROSCA compliant flow or ever rejected one); *id.* at 553:19–554:5 (unable to identify what authority Grandinetti had to make decisions regarding the cancellation flow); *see also* Ex. 35 at 116:6–17. Grandinetti is therefore entitled to summary judgment on Count IV of the Amended Complaint.

Evidence linking Grandinetti to the enrollment flows is also fatally lacking. The FTC's allegation that Grandinetti "directed the Prime Organization to improve the checkout enrollment flow … while not hurting signups" is not enough at summary judgment. *See Amazon*, 735 F. Supp. 3d at 1328. Discovery has shown that Grandinetti was not in charge of Prime when that statement was made, and that the language the Complaint cited was not even Grandinetti's, but rather *his* quote of someone else's goal. Ex. 37 at 147:2–149:1; *see also* Ex. 39 at 173:21–174:1 (at the time, Grandinetti had no "control" over Prime). Agreement that pushing for both clarity and sign ups was a sensible overarching goal is not evidence that Grandinetti directly participated in or controlled any flow design now alleged to violate ROSCA. Indeed, the FTC is not aware of Grandinetti ever being presented with but vetoing a ROSCA-compliant enrollment flow. Ex. 3 at 540:9–13. The FTC's conclusory allegation that Grandinetti "vetoed any changes that would reduce enrollment," Am. Compl. ¶ 208, lacks any evidentiary support. Grandinetti is therefore entitled to summary judgment on Count III of the Amended Complaint as well.

### C.    Enforcing ROSCA Against the Individual Defendants Would Violate Their Due Process and First Amendment Rights.

Courts should "interpret ambiguous statutes to avoid rendering them unconstitutional."

INDIVIDUAL DEFENDANTS' MSJ
(2:23-cv-0932-JHC) - 13

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*United States v. Davis*, 588 U.S. 445, 463 n.6 (2019). Accepting the FTC's interpretation of ROSCA would violate this instruction. In particular, even if it were possible to read the phrase "simple mechanism" to prohibit multipage cancellation processes and truthful save offers, and even if "clear and conspicuous" could be read to regulate fonts and color schemes, the Due Process Clause and First Amendment would prohibit such sweeping, atextual interpretations. *See United States v. Hansen*, 599 U.S. 762, 781 (2023) (court should adopt "narrower construction" to avoid "the prospect of unconstitutional applications").[3]

### 1.     Enforcing ROSCA Would Violate Due Process.

A law is unconstitutionally vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Fox Television Stations*, 567 U.S. at 254. ROSCA, as interpreted by the FTC, fails this test.

ROSCA's "simple mechanisms" requirement should be interpreted objectively, as Amazon argues. Amazon Mot. § III.D. If the Court rejects that interpretation in favor of the FTC's sweeping view, then the requirement is "entirely subjective," *Butcher v. Knudsen*, 38 F.4th 1163, 1175 (9th Cir. 2022), and that is a serious vagueness problem. Just as violation of campaign finance laws cannot depend on what counts "as a 'casual political act'" in the eyes of state officials, *id.*, and just as violation of local loitering ordinances cannot turn on "whether some purpose" for lingering "is 'apparent' to the officer on the scene," *City of Chicago v. Morales*, 527 U.S. 41, 62 (1999), violation of ROSCA cannot hinge on a consumer's (or the FTC's) subjective assessment of whether a cancellation mechanism is "simple" enough.

According to the FTC, the "simple mechanism" requirement is entirely subjective: whether a cancellation mechanism is "simple" turns on "a lot of facts," including entirely subjective ones like whether "consumers are actually confused when … presented with" the

---

[3] This Court has not yet addressed either of these constitutional defenses. Amazon's motion to dismiss argued that the FTC failed to give fair notice of its vague "dark patterns" theory, Dkt. 84 at 20–27, whereas here, Defendants argue that ROSCA itself violates the Due Process Clause, both facially and as applied. Amazon has not previously presented a First Amendment defense at all; it merely noted in its motion to dismiss that the Complaint's legal theory "raises serious questions under the First Amendment." Dkt. 84 at 21 n.15.

mechanism. Ex. 2 at 71:21–72:16; *cf. id.* at 204:17–18 ("[Y]ou certainly will have people that no matter how clear something is won't understand it."). Indeed, in the FTC's view, "what will be simple for one consumer may not be for another." *Id.* at 166:17–18. Because under the FTC's subjective standard regulated parties would have "no reasonable way to know" whether a cancellation mechanism is compliant, *Butcher*, 38 F.4th at 1175, and the court would be "at a loss as to how it would instruct any jury," *Posely v. Eckerd Corp.*, 433 F. Supp. 2d 1287, 1313 (S.D. Fla. 2006), ROSCA cannot be read as the FTC reads it.

The FTC itself knows that—if stretched to cover the conduct the FTC wants to penalize—ROSCA has a vagueness problem. The FTC says ROSCA provides no "guidance about what is simple," 88 Fed. Reg. at 24718; "lacks specificity about cancellation procedures," 84 Fed. Reg. at 52396; and "does not specify what methods" are sufficiently "simple," *id.* The FTC's 30(b)(6) witness agreed that "there's no checklist of things that one could look at and say … as long as you check these boxes, you comply with ROSCA," and that "the statute itself does not define a simple mechanism in any respect by reference to number of clicks, number of offers, length of time it takes, etc." Ex. 2 at 162:3–7, 376:11–16. The Court should not "require [Amazon] to have determined the precise meaning" of a statute when the agency responsible for enforcing the statute "did not"—and through two years has not be able to—"do so." *United States v. AMC Ent., Inc.*, 549 F.3d 760, 769 (9th Cir. 2008).

Nor are there judicial opinions providing notice about the meaning of "simple mechanisms." That is in part because ROSCA's penalties are so crushing that defendants rarely muster the courage to test the FTC's theories. *See* 89 Fed. Reg. 90476, 90505 & n.384 (Nov. 15, 2024) (citing 14 cases applying ROSCA, 13 of which settled before liability was determined). That reality has left the FTC to enforce ROSCA as it pleases, with little judicial oversight. And it has left the regulated public with just a few decisions on the topic, none of which provide any analysis of what "simple" means, merely concluding that the inaccessible or single cancellation methods at issue were not "simple." *See* Amazon Mot. § III.D (distinguishing those methods from the Prime cancellation methods). These cases change nothing. The Supreme Court has "squarely

INDIVIDUAL DEFENDANTS' MSJ
(2:23-cv-0932-JHC) - 15

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

contradict[ed] the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp." *Johnson v. United States*, 576 U.S. 591, 602 (2015).

ROSCA's mandate to "clearly and conspicuously" disclose material terms is, under the FTC's view, similarly standardless. The FTC's 30(b)(6) witness agreed that there is no "statute or rule that defines … clearly and conspicuously" and claimed the meaning is "context-specific." Ex. 2 at 141:18–142:2, 157:6–10. The "context" the FTC looks to consists of numerous, unstated "ingredients"—including "how consumers are interacting with" the disclosures—that go into the "soup" of determining "whether or not there's a ROSCA violation" in the FTC's eyes. *Id.* at 209:12–211:9.

Ultimately, as the FTC's 30(b)(6) witness conceded, as the FTC reads it, ROSCA is so unclear that "even those who would want to comply with ROSCA and intend to co[mply] with ROSCA may find themselves noncompliant." Ex. 3 at 503:22–504:4. That is the antithesis of due process. *See Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972) ("[B]ecause we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly."); *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926).

At a minimum, ROSCA fails to provide fair notice as applied to the commonplace marketing techniques the FTC targets here, including save offers and cancellation mechanisms more complex than sign up. Even if the term "simple" is not "infinitely elastic," one could "reasonably maintain" that a cancellation mechanism is "simple" even if it is not *as simple* as sign up or even if it includes save offers. *See Butcher*, 38 F.4th at 1173. Given ROSCA's text, structure, purpose, legislative history, and judicial and administrative interpretations, Amazon could only have "guess[ed]" that ROSCA would prohibit this conduct. *Connally*, 269 U.S. at 391. That is not sufficient notice.

### 2.    Enforcing ROSCA Would Violate the First Amendment.

"[L]aw[s]" that "interfere[] with the right of free speech" face an even "more stringent

INDIVIDUAL DEFENDANTS' MSJ
(2:23-cv-0932-JHC) - 16

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

vagueness test." *Vill. of Hoffman Ests.*, 455 U.S. at 499. That stringent test applies here because the FTC reads ROSCA to prohibit truthful commercial speech. The FTC's 30(b)(6) witness agreed that the agency takes "issue" with "the words that Amazon is using" and "how … those words are being presented." Ex. 2 at 106:20–107:8. For example, the FTC wants to prohibit Amazon from attempting to persuade customers to remain enrolled in Prime using save offers and reminders about the benefits of Prime. *See* Amazon Mot. § III.D. And the FTC wants to penalize Amazon for using truthful descriptions of Prime's benefits to persuade customers to enroll in Prime. *See id.* § III.A; Ex. 2 at 402:7–11 (agreeing that the FTC "do[es not] allege that" "Amazon make[s] a false statement about the terms of Prime, the benefits of Prime, etc." "in any of the enrollment flows").

These restrictions prohibiting truthful speech must satisfy First Amendment scrutiny. They must "directly and materially advanc[e] a substantial government interest" and be "not more extensive than necessary to further that interest." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 566 (1980). The FTC "cannot meet this high bar." *Junior Sports Mags. Inc. v. Bonta*, 80 F.4th 1109, 1113 (9th Cir. 2023).

There is no substantial government interest that could be directly and materially advanced by prohibiting Amazon's truthful communications with customers about Prime. The communications at issue help consumers by informing them about Prime's benefits and the possible negatives of cancellation. *See* Ex. 6 ¶¶ 212–15. As the FTC has recognized in the context of save offers, prohibiting this sort of speech can harm consumers by, for example, "prevent[ing] consumers from obtaining valuable concessions (*e.g.*, lower prices), which they would otherwise want." 89 Fed. Reg. at 90512; *see also* Enf't Policy Statement Regarding Negative Option Mkt'g, Concurring Statement of Comm'r Noah J. Phillips, 86 Fed. Reg. 60822 60826 n.2 (Nov. 4, 2021) ("The moment at which a consumer is about to cancel may be the moment when they can get the best deal."). Because the FTC cannot show that consumers are harmed by seeing true information about the pros and cons of enrollment and cancellation, the FTC asserts that these true statements somehow "shame" consumers into maintaining Prime memberships. *E.g.*, Am. Compl. ¶ 231(f).

INDIVIDUAL DEFENDANTS' MSJ
(2:23-cv-0932-JHC) - 17

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

But "fear that speech might persuade provides no lawful basis for quieting it." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 576 (2011).

Even if ROSCA, as interpreted by the FTC, did advance a substantial government interest, the FTC cannot show that the restrictions are "no more extensive than necessary." *Junior Sports*, 80 F.4th at 1113. The government fails this test if it can "achieve its interests in a manner that does not restrict speech, or that restricts less speech." *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 371 (2002). The Ninth Circuit, for example, has held that a law intended to reduce unlawful firearm use among minors failed this test because it would also ban advertisements promoting gun use. *Junior Sports*, 80 F.4th at 1120. The FTC fails for the same reason here: It cannot in the name of promoting consumer welfare ban truthful speech that helps consumers understand the bargain and obtain a better deal.

\*      \*      \*

Because the FTC's interpretation "raise[s] the prospect of unconstitutional applications" of ROSCA, the Court should adopt the "narrower construction" of ROSCA Amazon articulates. *Hansen*, 599 U.S. at 781. Indeed, "even if [Amazon's] reading were not the best one"—and it is—that "interpretation is at least fairly possible," and "so the canon of constitutional avoidance would still counsel [this Court] to adopt it." *Id.* (cleaned up).

### 3. These Objections Apply with Special Force to the Individual Defendants.

These objections apply with particular force to the Individual Defendants. The Ninth Circuit "strictly construes" statutes that impose monetary fines on individuals. *Boyd*, 991 F.3d at 1085–86 (civil tax penalty). That canon of construction ensures that "a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed." *McBoyle v. United States*, 283 U.S. 25, 27 (1931). In civil and criminal contexts alike, "the ordinary person" must be able to "intelligently choose, in advance, what course it is lawful for him to pursue." *Connally*, 269 U.S. at 393.[4] "[C]lear and precise"

---

[4] The Court previously "decline[d] to apply" the rule of lenity, holding that "the Ninth Circuit has stated that the rule … only applies to criminal statutes." *Amazon*, 735 F. Supp. 3d at 1332. The Supreme Court, however, has

INDIVIDUAL DEFENDANTS' MSJ
(2:23-cv-0932-JHC) - 18

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

notice is especially important in the context of the FTC Act given "the severity of possible penalties." *FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 392 (1965) (discussing Section 5(l) of the FTC Act, which imposes the same penalties as Section 5(m)(1)(A) imposes for knowing rule violations); *FTC v. Henry Broch & Co.*, 368 U.S. 360, 367–68 (1962) (same).

In short, an "ordinary person" must be able to "intelligently choose, in advance, what course it is lawful for him to pursue." *Connally*, 269 U.S. at 393. The Individual Defendants were not given that opportunity. To hold them liable would mean "trap[ping] the innocent" in a law that failed to "provid[e] fair warning." *Grayned*, 408 U.S. at 108.

### D.     The Evidence Cannot Support a Finding That Individual Defendants Acted with the Knowledge Required For Civil Monetary Penalties.

At a minimum, the Individual Defendants are entitled to summary judgment that civil monetary penalties cannot be awarded against them. To begin with, for the reasons outlined in Amazon's motion, the FTC's demand for civil penalties is time-barred. *See* Amazon Mot. § III.E.

Moreover, the evidence does not come close to showing that any Individual Defendant knew that Amazon was violating ROSCA. Civil monetary penalties are reserved for highly culpable defendants—those who did not act based on a "mistaken interpretation of the [law]," but who had "actual knowledge" that their conduct was prohibited, or "whose intentional actions reflected 'knowledge fairly implied on the basis of objective circumstances that the conduct was prohibited.'" *Jerman*, 559 U.S. at 574.

Thus, beyond proving the knowledge required to establish individual liability, *see supra* § IV.B, the FTC must satisfy an additional, higher "knowledge" bar to impose penalties. It must show that each Individual Defendant had "actual knowledge" or "knowledge fairly implied on the

---

"appli[ed]" the rule of lenity "to penalty provisions under a wide array of" non-criminal "statutes, including the Communications Act of 1934, a bankruptcy law, and the National Banking Act." *Bittner*, 598 U.S. at 102. The rule of lenity applies, at a minimum, when a defendant may be subjected "to civil penalties." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 297 (2012). The Court need not reach this question, as ROSCA cannot be enforced against the Individual Defendants under the strict construction canon that the Ninth Circuit applied to a civil tax penalty just a few years ago. *Boyd*, 991 F.3d at 1085–86. If the Court disagrees, however, it should reconsider its decision not to apply the rule of lenity. The Ninth Circuit case on which the Court relied applied the rule of lenity in the criminal context but did not reject its application in the civil context. *See United States v. Millis*, 621 F.3d 914 (9th Cir. 2010). And any such ruling would be inconsistent with Supreme Court precedent. *Bittner*, 598 U.S. at 102.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

basis of objective circumstances" that Amazon's acts were "unfair or deceptive" *and* "prohibited by [ROSCA]." 15 U.S.C. § 45(m)(1)(A). This high standard must be strictly enforced. *See Universal Health Servs., Inc. v. U.S. ex rel Escobar*, 579 U.S. 176, 192 (2016) ("strict enforcement of … scienter requirements" helps to avoid fair notice concerns). There is no evidence of knowledge in this case. The evidence shows that the Individual Defendants did not know that Amazon's actions were unlawful under ROSCA, particularly under the FTC's indisputably novel and expansive view of the statute.

First, there is no evidence that the Individual Defendants knew that Amazon's practices were "unfair or deceptive." 15 U.S.C. § 45(m)(1)(A). As explained above, the FTC cannot even make the threshold showing that the Individual Defendants acted with reckless disregard or deliberate indifference to the supposedly deceptive nature of Amazon's practices. *See supra* § IV.B. However, to obtain the onerous civil monetary penalties it seeks, the FTC must clear an even higher bar—that the Individual Defendants acted with "actual knowledge" or "knowledge fairly implied on the basis of objective circumstances." *See Consumer Fin. Prot. Bureau v. CashCall, Inc*., 2018 WL 485963, at *14 (C.D. Cal. Jan. 19, 2018), *rev'd in part on other grounds*, 35 F.4th 734 (9th Cir. 2022) (explaining that "knowledge fairly implied on the basis of objective circumstances" is a higher standard than "recklessness"). As the FTC fails to satisfy even the lower standard for individual liability, it surely cannot show that the Individuals acted with *knowledge* that Amazon's practices were unfair or deceptive.

Second, and even more glaring, there is no evidence that any Individual Defendant had knowledge that Amazon's actions were "prohibited by [ROSCA]." 15 U.S.C. § 45(m)(1)(A). At the motion to dismiss stage, the FTC relied on an assumption that a "reasonable executive" overseeing a large subscription service "would know that there are state and federal regulatory requirements for auto-renewal offers." Dkt. 165 at 49. But the FTC has since identified no evidence that any Individual Defendant in fact knew of a ROSCA violation. The FTC's unsupported assumptions about reasonable executives are plainly insufficient at the summary judgment stage. *Cf. Swish Mktg*., 2010 WL 653486, at *5 (an individual's "status" as a corporate

officer, "standing alone," is not enough even to support liability). A contrary view would allow the FTC to collect onerous penalties against *every* executive without any particularized evidence going to each individual executive's knowledge.

The FTC must identify evidence that each Individual Defendant had knowledge not only of ROSCA and its requirements, but that Amazon's conduct violated ROSCA. *See* 15 U.S.C. § 45(m)(1)(A); *FTC v. RCG Advances, LLC*, 695 F. Supp. 3d 368, 396 (S.D.N.Y. 2023) (denying summary judgment when, unlike here, there was evidence from which a factfinder could find that an individual knew the relevant law, its terms, and that it forbid his actions); *Unicolors, Inc.*, 595 U.S. at 185 (holding that "[i]f [a defendant] was not aware of the legal requirement that rendered the information in its application inaccurate, it did not include that information in its application 'with knowledge that it was inaccurate'").

That is an impossible burden for the FTC here. ROSCA does not clearly support the FTC's interpretation on its face (as the FTC has routinely, publicly recognized and confirmed in discovery); the FTC and the courts have not clarified ROSCA; and the FTC did not notify any Individual Defendant, or anyone at Amazon, of any concern about Amazon's long-standing practices prior to this case. A factfinder cannot assume the Individual Defendants somehow surmised independently that ROSCA meant what the FTC now says it does. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 70 n.20 (2007) ("Where … statutory text and relevant court and agency guidance allow for more than one reasonable interpretation, it would defy history and current thinking to treat a defendant who merely adopts one such interpretation as a knowing or reckless violator."). To prove otherwise, the FTC would have to show that the Individual Defendants somehow knew about the undisclosed "soup" and multi-factor balancing tests the FTC is privately relying on. *See supra* § IV.C. The FTC cannot make that showing.

<u>Grandinetti</u>. The FTC developed no evidence that Grandinetti, who is not a lawyer, knew that ROSCA existed in the relevant period, much less that he was familiar with its terms or even general prohibitions. *See* Ex. 37 at 222:25–228:4 ("The number of countries and areas my team spans is wide. I can't say with confidence that regulatory changes across those areas are things I

always know about.") ("I'm not a lawyer"); *see also* Ex. 2 at 133:1–4, 17–21. Grandinetti could not recall whether he was aware of ROSCA prior to this case, and the FTC did not ask whether he knew what ROSCA prohibited or whether he had even read ROSCA before this case. Ex. 37 at 226:7–227:6. In short, there is no evidence that Grandinetti knew that Amazon engaged in conduct that violated ROSCA at any point.

Ghani. Similarly, there is no evidence that Ghani, also a non-lawyer, knew of ROSCA or what it prohibited. Ex. 2 at 133:1–4, 17–21. The FTC failed to even ask Ghani about his awareness of ROSCA. Ghani consulted with Amazon lawyers about legal requirements for signing up and cancelling Prime membership throughout his time with Prime, Ex. 30 at 32:11–22, 33:7–23, 134:4–19, but "the retention of counsel does not show a party knew its conduct was prohibited," *see United States v. Stratics Networks Inc.*, 721 F. Supp. 3d 1080, 1101 (S.D. Cal. 2024). Indeed, the only evidence is that Ghani believed Amazon was fully compliant with all applicable requirements. *See* Ex. 30 at 133:15–21 ("Any time we are aware of specific requirements, we comply with them.").

Lindsay. Finally, there is no evidence that Lindsay, another non-lawyer, knew of ROSCA or what it prohibited at the relevant time. Ex. 2 at 133:1–4, 17–21. And again, the evidence is uncontroverted that Lindsay believed Amazon was compliant with applicable laws and regulations. *See* Ex. 31 at 124:25–125:19 ("If there are regulatory instructions or instructions that are made clear … we will follow them.").

In short, the FTC has identified no evidence that could support a finding that any of these individuals had knowledge of ROSCA, its requirements, or especially that ROSCA barred Amazon's practices. At a minimum, the Court should grant summary judgment that civil monetary penalties are not available against the Individual Defendants.

## V.    CONCLUSION

The Court should grant summary judgment to the Individual Defendants.

DATED this 27th day of May, 2025.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

I certify that this memorandum contains 8,357 words, in compliance with the Local Civil Rules.

DAVIS WRIGHT TREMAINE LLP

By *s/ Kenneth E. Payson*

Kenneth E. Payson, WSBA #26369
James Howard, WSBA #37259
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
Telephone: (206) 622-3150
Fax: (206) 757-7700
E-mail: kenpayson@dwt.com
            jimhoward@dwt.com

COVINGTON & BURLING LLP

Stephen P. Anthony*
Laura Flahive Wu*
Laura M. Kim*
John D. Graubert*
850 Tenth Street, NW
Washington, DC  20001
Telephone: (206) 662-5105
E-mail: santhony@cov.com
            lflahivewu@cov.com
            lkim@cov.com
            jgraubert@cov.com

John E. Hall*
415 Mission Street, Suite 5400
San Francisco, CA  94105
Telephone: (415) 591-6855
E-mail: jhall@cov.com

Megan L. Rodgers*
3000 El Camino Real
Palo Alto, CA  94306
Telephone: (650) 632-4734
E-mail: mrodgers@cov.com

Anders Linderot*
620 Eighth Avenue
New York, NY 10018
Telephone: (212) 841-1000
Email: alinderot@cov.com

HUESTON HENNIGAN LLP

John C. Hueston*
Moez M. Kaba*
Joseph A. Reiter*
523 West 6th Street, Suite 400
Los Angeles, CA  90014
Telephone: (213) 788-4340
E-mail: jhueston@hueston.com
        mkaba@hueston.com
        jreiter@hueston.com

*admitted pro hac vice

Attorneys for Defendants AMAZON.COM, INC.,
NEIL LINDSAY, RUSSELL GRANDINETTI,
AND JAMIL GHANI

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax