1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Hon. John H. Chun

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FEDERAL TRADE COMMISSION,

     Plaintiff,

  v.

AMAZON.COM, INC., *et al.*,

     Defendants.

No. 2:23-cv-0932-JHC

**PLAINTIFF'S MOTION TO
EXCLUDE EXPERT TESTIMONY
OF DR. DONNA L. HOFFMAN, PH.D.**

NOTE ON MOTION CALENDAR:
Tuesday, June 24, 2025

ORAL ARGUMENT REQUESTED

PLAINTIFF'S MOTION TO EXCLUDE EXPERT
TESTIMONY OF DONNA L. HOFFMAN, PH.D
Case No. 2:23-cv-0932-JHC

1

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-3320

1

## <u>TABLE OF CONTENTS</u>

I.     BACKGROUND .......................................................................................................... 3

  A.   Hoffman's Analysis of the Prime Enrollment and Cancellation Processes ...................... 4

  B.   Hoffman's Comparative Analysis of Non-Amazon Websites............................................ 4

  C.   Hoffman's Comparative Analysis of Government Websites............................................... 6

II.    LEGAL STANDARD................................................................................................... 6

III.   ARGUMENT ............................................................................................................... 7

  A.   Hoffman's Analysis of the Prime Enrollment and Cancellation Processes Is Irrelevant and
       Unreliable............................................................................................................................ 7

    i.   Hoffman's Analysis Is Irrelevant..................................................................................... 7

    ii.  Hoffman's Methodology for Her Analysis Is Non-Existent............................................ 8

  B.   Hoffman's Comparative Analyses of UI Design Elements Present in Non-Amazon
       Subscription Programs and Government Websites Are Irrelevant and Unreliable. ................ 12

    i.   Hoffman's Non-Amazon Analyses Are Irrelevant. ...................................................... 12

    ii.  Hoffman's Methodology for Her Comparative Analysis of Non-Amazon Programs Is
         Unreliable...................................................................................................................... 12

IV.    CONCLUSION........................................................................................................... 17

1

2      The FTC moves, pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow*

3  *Pharm., Inc*., 509 U.S. 579 (1993), to exclude certain opinions of Donna L. Hoffman, Ph.D

4  ("Hoffman") as inadmissible.  Specifically, Hoffman's analyses of (1) the "at-issue UI[1] design

5  elements" in the Amazon Prime enrollment and cancellation mechanisms, and (2) "commonly

6  used" UI design elements on non-Amazon "paid membership/subscription" websites and

7  government websites are irrelevant and methodologically unsound.

8      Hoffman's first—and irrelevant—opinion that the "at issue" UI design elements are

9  "legitimate" is unsupported by any methodology as she does not indicate any of the steps she

10  took to reach her conclusion. Hoffman's second—also irrelevant—opinion—is that "at issue"

11  design elements appear on non-Amazon websites, therefore consumers are familiar with those

12  designs and will not struggle with them when navigating the Prime enrollment or cancellation

13  processes.  Hoffman's methodology to reach this conclusion is wholly unreliable, as she made it

14  up for this litigation without any support in her field or other basis.

15      For the reasons set forth below, the Court should exclude Hoffman's expert report and

16  bar Hoffman from testifying in this matter as to her analyses.[2]

17  **I.      BACKGROUND**

18      As the Court is aware, the FTC alleges that Amazon (and three individual Defendants)

19  tricked, coerced, and manipulated consumers into subscribing to Amazon Prime by failing to

20  disclose the material terms of the subscription clearly and conspicuously and by failing to obtain

21  _____

[1] "UI" stands for "user interface."

22  [2] LCR 43(j) prohibits multiple experts on one subject. At least one of Defendants' other experts, Dr. Craig
Rosenberg, has opined on overlapping subjects, but this issue will not ripen until it is clear who is "first" to testify
23  on a subject. The FTC reserves the right to raise the issue when ripe.

the consumers' informed consent before enrolling them.  Am. Compl. (Dkt. 69), ¶ 2.  Amazon

also failed to provide simple mechanisms for cancelling Prime memberships.  *Id.* at ¶7.  These

practices violated the FTC Act, 15 U.S.C. § 45(a), and ROSCA, 15 U.S.C. § 8403.

At issue in this motion are Hoffman's analyses of 1) the Prime enrollment and

cancellation processes and 2) design elements present in non-Amazon websites.  Att. 104[3] ¶¶ 22,

25-30 (summarizing opinions).  Hoffman's opinions and testimony regarding these analyses

should be excluded as irrelevant and unreliable.

### A.  Hoffman's Analysis of the Prime Enrollment and Cancellation Processes

Hoffman is a Marketing Professor at George Washington University.  *Id.* ¶ 1. Amazon

asked Hoffman to analyze Prime's enrollment and cancellation processes and "assess the FTC's

allegations about UI design elements at issue in those flows." *Id.* ¶ 22(a).  In response, Hoffman

opined that the UI design elements that the FTC labelled "dark patterns" were "legitimate

marketing practices."  *Id.* ¶ 28.

### B.  Hoffman's Comparative Analysis of Non-Amazon Websites

Hoffman also "review[ed] current enrollment and cancellation flows" of non-Amazon

"popular paid digital membership/subscription programs" to assess whether the "UI design

elements at issue" in the Prime flows are "commonly used in online contexts and likely to be

familiar to online consumers." *Id.* ¶ 22(b).  Specifically, Hoffman did the following:

1)  She identified "the most subscribed categories of paid digital
    membership/subscription programs" relying on "the summary results from a survey
    conducted by Forbes Advisor." Att. 104 App. D ¶ 2.

---

[3] All "Attachment" cites reference attachments to the Declaration of Evan Mendelson, filed concurrently herewith.

PLAINTIFF'S MOTION TO EXCLUDE EXPERT
TESTIMONY OF DONNA L. HOFFMAN, PH.D
Case No. 2:23-cv-0932-JHC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-3320

4

2)  She reviewed categories subscribed to by "at least 10% of survey respondents" and identified 48 "non-Amazon-owned paid digital membership/subscription programs to evaluate under each category." *Id.* App. D ¶¶ 2-3.

3)  She organized the 48 programs into 3 categories: (1) companies that also sell products or services other than the paid digital membership/subscription programs iself; (2) companies that use a freemium[4] pricing model; and (3) companies that only offer paid digital membership/subscription programs for streaming content or the services they offer. *Id.* App. D ¶ 6, Exhibit D.4.  According to Hoffman, Amazon Prime would only be considered a Category 1 company.  Att. 142 at 232:21-233:1.

4)  She identified "UI design elements" in the FTC's Amended Complaint.  Att. 104 App. D  ¶ 5.

5)  She provided instructions to Cornerstone Research to "collect screenshots of the desktop enrollment process for each company" and code them for the presence or absence of the "UI design elements" based on Hoffman's coding instructions. *Id.* App. D ¶¶ 7, 19-20.

6)  The comparative analysis yielded a percentage of the presence of each "UI design element" in the 48 programs, which Hoffman uses to opine that the "at-issue UI design elements" (present in Prime enrollment and cancellation) are "commonly used online" in non-Amazon subscriptions.  Att. 104 ¶ 29.

---

[4] A freemium refers to a subscription program that offers a free version of their product or service alongside a paid subscription for premium content and services.

PLAINTIFF'S MOTION TO EXCLUDE EXPERT
TESTIMONY OF DONNA L. HOFFMAN, PH.D
Case No. 2:23-cv-0932-JHC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-3320

5

1

### C.  Hoffman's Comparative Analysis of Government Websites

2          Hoffman also analyzed the presence of UI design elements in U.S. government websites.

3    *See* Att. 104 App. D. ¶¶ 27-34. Hoffman considered only two "at issue UI design elements" in 30

4    government websites.  *Id.* App. D ¶¶ 28, 31.  The comparative analysis yielded a percentage of

5    the presence the two "UI design elements" in the government websites, which Hoffman uses to

6    opine that the "at-issue UI design elements" are "commonly used online" in government

7    websites.  Att. 104 ¶¶ 29, 34.

8    ## II.    LEGAL STANDARD

9          An expert witness may offer opinion testimony only if: "(a) the expert's scientific,

10   technical, or other specialized knowledge will help the trier of fact to understand the evidence or

11   to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the

12   testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects

13   a reliable application of the principles and methods to the facts of the case."  FRE 702.  "The

14   proponent of the expert testimony bears the burden of establishing admissibility by a

15   preponderance of the evidence."  *Erwin v. OBI Seafoods, LLC*, 2024 WL 553697, at *1 (W.D.

16   Wash. Feb. 12, 2024).

17         Courts have a gatekeeping responsibility to "ensur[e] that an expert's testimony both rests

18   on a reliable foundation and is relevant to the task at hand."  *Daubert*, 509 U.S. at 597.  "Expert

19   testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful."

20   *Daubert*, 509 U.S. at 591 (quotation marks omitted); *Elsayed Mukhtar v. California State Univ.,*

21   *Hayward*, 299 F.3d 1053, 1063 n.7 (9th Cir. 2002) ("Encompassed in the determination of

22   whether expert testimony is relevant is whether it is helpful to the jury, which is the 'central

23   concern' of Rule 702.").

1

2     To assess an opinion's reliability, the Court must consider whether (1) the reasoning or

3    methodology underlying the testimony is scientifically valid and (2) that reasoning or

4    methodology properly can be applied to the facts in issue. *Daubert*, 509 U.S. at 592-93. "The

5    reliability of an expert's methodology is evaluated using a wide range of factors, including: (1)

6    whether the expert bases their opinion on appropriate facts or data; (2) the degree to which the

7    expert's methodology is accepted within their profession; (3) whether the expert's methodology

8    can be tested or verified; (4) whether standards exist which govern the expert's methodology and,

9    if so, whether the expert adhered to those standards; (5) whether the expert considers or accounts

10   for alternative or contradictory information; and (6) whether the expert exercises the same degree

11   of care in applying the methodology that an expert in the field would exercise when conducting

12   professional work outside the context of paid litigation." *White v. Ethicon, Inc.*, 2021 WL

13   129818, at *3 (W.D. Wash. Jan. 14, 2021) (quotations omitted).

14   **III.    ARGUMENT**

15       **A.  Hoffman's Analysis of the Prime Enrollment and Cancellation Processes Is Irrelevant and Unreliable.**

16          ***i.  Hoffman's Analysis Is Irrelevant.***

17       Hoffman opines that the "UI deceptive design elements" in the FTC's Amended

18   Complaint are "standard" and "legitimate" marketing practices. Att. 104 ¶ 28(a)-(b). Whether

19   Amazon uses common marketing practices cannot help the factfinder determine whether

20   Amazon failed to (1) clearly and conspicuously disclose Prime's material terms, (2) obtain

21   informed consent from Prime subscribers, and (3) provide simple mechanisms to cancel Prime.

22   Hoffman admits she offers no direct opinion regarding whether (1) the Prime enrollment

23   disclosures were presented clearly and conspicuously or (2) the cancellation process for Prime is

simple. Att. 142 at 218:16-22, 219:6-15, 222:9-223:2; *see also* Att. 104 at ¶ 28.

PLAINTIFF'S MOTION TO EXCLUDE EXPERT
TESTIMONY OF DONNA L. HOFFMAN, PH.D
Case No. 2:23-cv-0932-JHC

7

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-3320

1

### ii.  Hoffman's Methodology for Her Analysis Is Non-Existent.

2          Remarkably, Hoffman does not describe a methodology for her opinion concerning the

3   supposed "legitimacy" of the "at issue" practices. With respect to this opinion, her report does

4   not even *refer* to a methodology and, when asked to identify the specific methodology for her

5   analysis, Hoffman testified that she "cannot point" to one.  Att. 142 at 70:14-17.  During her

6   deposition, Hoffman tried to solve this problem on the fly by suggesting at least nine different

7   methodologies:

8          1.  Hoffman claimed she conducted a "cognitive walkthrough" of the various

9              enrollment and cancellation flows. *Id.* at 67:9-14.  She did not.  A cognitive

10             walkthrough is a recognized methodological approach within the field of Human

11             Computer Interactions (HCI) used to evaluate how easy (or not) it is for a user to

12             use a system by simulating a user's problem solving process at each point in a set

13             of interaction flows within the system. *See, e.g.,* Att. 151 at 595-98.  Cognitive

14             walkthroughs follow a specific methodology. *See id.*  Researchers conducting

15             cognitive walkthroughs rely on heuristics (i.e., criteria focusing on the aesthetics

16             and functionality of a user interface) to ensure they are not substituting their own

17             subjective assessment of what constitutes good or bad user interface design for

18             recognized standards in the field. *Id.* at 587**.**  Both Hoffman's report and

19             deposition testimony make clear that, despite belatedly labelling her analysis as a

20             cognitive walkthrough, Hoffman did not follow the well-established standards for

21             such an analysis.  Att. 142 at 67:9-17, 70:12-25.

22

23

PLAINTIFF'S MOTION TO EXCLUDE EXPERT
TESTIMONY OF DONNA L. HOFFMAN, PH.D
Case No. 2:23-cv-0932-JHC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-3320

8

2.  She then attempted to clarify that she "feel[s] that what [she] did is equivalent" to a cognitive walkthrough, even rhetorically asking "what's the difference?" between a cognitive walkthrough and her analysis. *Id.* at 71:6-13. However, Hoffman's "feelings" are insufficient to demonstrate she applied a reliable methodology. *Cf. Erwin*, 2024 WL 553697 at *2 (experience alone is not enough; "[w]hen the expert witness relies solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts") (internal quotations omitted). In short, without an identified (let alone reliable) methodology, Hoffman's opinions should be excluded.

3.  She later claimed to have "applied a specific methodology, even though [she] didn't give it a fancy name," Att. 142 at 106:14-17, and did not identify the methodology.

4.  She attempted to characterize her entire report as presenting a methodology for her analysis. *Id.* at 69:14-15 ("[M]y entire report discusses, where it's appropriate, my particular methodology").

5.  She tried to point to the "stylized model of consumer experience" she presented in her report (which she, in part, created in 1996) as her "methodology." *Id.* at 78:1-13; *see also* Att. 104 ¶ 39, Ex. 1 (discussing the model). While that model, which shows what components "shape consumers' online experience," is possibly

PLAINTIFF'S MOTION TO EXCLUDE EXPERT
TESTIMONY OF DONNA L. HOFFMAN, PH.D
Case No. 2:23-cv-0932-JHC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-3320

9

1    relevant to a methodology, it is not *in itself* a methodology for the analysis of the

2    flows.

3    6.    Hoffman also claimed she conducted "an analysis applying marketing principles,

4    to understand the flows, and discuss why I don't believe, in my opinion, that they

5    contain so-called dark patterns."  Att. 142 at 78:10-13.  However, Hoffman does

6    not define what those "marketing principles" are in her report.  Indeed, the only

7    "marketing principles," she specifically references in her report are principles of

8    good design, which she admits she did not apply in conducting her review.  *Id.* at

9    342:2-8.

10   7.    Hoffman also claimed her methodology consisted of "review[ing] the research,

11   the extant research on online consumer behavior, both theoretical and empirical,"

12   "review[ing] the work in marketing," and "appl[ying] that knowledge to the

13   particular stimuli that I was evaluating." *Id.* at 106:17-22.  But, her report does not

14   identify these steps, let alone how she purported to apply them to the facts of this

15   case.  *See* Rule 26(a)(2)(B) (requiring expert report to contain a "complete

16   statement of all the opinions an expert will express and the *basis and reasons* for

17   them") (emphasis added).[5]

18   8.    Hoffman further claimed the methodology she used is "common knowledge at

19   this point, for any Ph.D. student, in pretty much any basic discipline" and she

20   "cannot, off the top of my head, give . . . a specific citation, but there are many,

---

[5] With respect to Hoffman's first opinion, her report highlights the lack of a methodology for her analysis of Amazon's enrollment and cancellation flows.  In contrast, with respect to her second opinion (the comparative analysis), her report includes a section entitled "methodology" outlining the specific process she undertook to review non-Amazon websites.  Att. 104 at ii-iii (Table of Contents).

many, very many." Att. 142 at 107:13-17. Then, Hoffman reversed herself, stating: "I don't believe I cite to a paper, which I don't even think there could be a paper I could cite to that would specifically talk about, here's how you should do this analysis in this particular situation." *Id.* at 107:25-108:6.

9. As a last resort, Hoffman falls back to relying on her general experience: "Since I'm an expert, I have applied my knowledge over all the work that I've done, over all of the work my colleagues have done, in this discipline I am in [marketing], as well as the related and adjacent disciplines" of HCI and psychometrics. *Id.* at 108:7-11. However, such generic appeals do not satisfy the requirements of Rule 702. *See, e.g., United States v. Valencia-Lopez*, 971 F.3d 891, 900-01 (9th Cir. 2020) (expert testimony inadmissible where expert "failed to link his general expertise" with his conclusion and failed to explain "*how* his expertise lent itself to that conclusion") (emphasis original); *Townsend v. Monster Bev. Corp.*, 303 F. Supp. 3d 1010, 1031-32 (N.D. Cal. 2018) (excluding expert opinion where proffering party provided no objective support for opinion and instead rested on "unsupported speculation").

Even if the Court accepts that Hoffman used a methodology to develop her first opinion, the methodology is unreliable because it turns on whether the design elements in Prime enrollment and cancellation reflect "legitimate marketing practice." Hoffman's report does not define "legitimate marketing practice" but she testified it means "something that's been established, both in the literature and in practice, as something that marketers would, as a standard, conduct." Att. 142 at 80:5-14. However, she could not point to any source for this

PLAINTIFF'S MOTION TO EXCLUDE EXPERT
TESTIMONY OF DONNA L. HOFFMAN, PH.D
Case No. 2:23-cv-0932-JHC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-3320

11

1    definition, *id.* at 81:5-82:21, nor could she testify that her definition is "widely accepted in the

2    field of marketing." *Id.* at 84:7-11; *see also id.* at 83:2-18; Att. 104 ¶ 52.

3               **B.  Hoffman's Comparative Analyses of UI Design Elements Present in Non-Amazon Subscription Programs and Government Websites Are Irrelevant and Unreliable.**

5                    *i.  Hoffman's Non-Amazon Analyses Are Irrelevant.*

6         Hoffman's comparative analyses are irrelevant because they are not focused on Prime

7    and therefore cannot assist the factfinder.  *See supra* §I(B).  Hoffman explicitly omitted  Amazon

8    programs from her analyses.  Att. 104 App. D ¶ 3(c)(i). What UI designs other programs and the

9    government use, and how prevalent they are, sheds no light on the FTC's claims regarding

10    Prime.  This fallacious line of thinking is akin to a driver who defends running a red light by

11    saying "others also run red lights."[6]  Regardless of what designs other subscription services, the

12    factfinder must consider Amazon's practices alone.

13                  *ii.  Hoffman's Methodology for Her Comparative Analysis of Non-Amazon Programs Is Unreliable.*

15         Hoffman offers no support showing that her methodology is well-accepted in the

16    marketing field, governed by existing standards, or conducted with the same level of care that an

17    expert in the field would outside of the context of paid litigation. *See Daubert*, 509 U.S. at 593-94.

18         **First**, Hoffman created her methodology specifically for this matter.  Att. 142 at 147:20-

19    25, 148:23-149:2.  *See Lin v. Solta Med., Inc.*, 2024 WL 5199905, at *2 (N.D. Cal. Dec. 23,

20    2024) ("The court should also consider whether an expert prepared his methodology for purposes

---

[6] This is particularly true of Hoffman's analysis of government websites which do not sell goods or services using a negative option mechanism, and, thus, are not subject to ROSCA's requirements.  Att. 104 ¶ 310.

PLAINTIFF'S MOTION TO EXCLUDE EXPERT                   Federal Trade Commission
TESTIMONY OF DONNA L. HOFFMAN, PH.D           600 Pennsylvania Avenue N.W.
Case No. 2:23-cv-0932-JHC                                Washington, DC 20580
12                         (202) 326-3320

of litigation or articulated the methodology before litigation and without any incentive to reach a

particular outcome.") (quoting *Daubert*, 43 F.3d at 1317).  Although Hoffman purports to have

based her method on "her experience," she could not identify any specific aspect of her

experience she used to create her novel methodology.  *See Moussouris v. Microsoft Corp.*, 311 F.

Supp. 3d 1223, 1246 (W.D. Wash. 2018) ("Experts that rely primarily on experience must

explain "how that experience leads to the conclusion reached, why that experience is a sufficient

basis for the opinion, and how that experience is reliably applied to the facts.").  The only

instance where Hoffman recalled analyzing elements on an interface was for a paper she wrote in

1994.  Att. 142 at 149:3-6, 168:7-169:21. Nor could Hoffman confirm that another marketing

expert would have followed the same steps as "[d]ifferent people are going to do different

things."  *Id.* at 154:20-22, 155:14-19.

**Second**, Hoffman's methodology lacks acceptable standards.[7]  Her selection of the "UI

design elements" to use in her comparative analysis is devoid of any objective methodology.

Hoffman describes "operationalizing" the FTC's allegations to identify the "at issue UI design

elements" for her analysis.  *Id.* at 195:12-197:4.[8]  Yet, her report only offers an exhibit

"summarizing the mapping between the allegations in the FTC's complaint and the UI design

elements."  Nowhere does Hoffman explain how she conducted this mapping.  Att. 104 at App.

D ¶5.  Hoffman also admitted this was her first time doing this kind of "operationalization" with

design elements.  Att. 142 at 193:25-194:2.

---

[7] This is not an exhaustive list.

[8] The term "operationalization" does not appear anywhere in her report with respect to this comparative analysis.

PLAINTIFF'S MOTION TO EXCLUDE EXPERT
TESTIMONY OF DONNA L. HOFFMAN, PH.D
Case No. 2:23-cv-0932-JHC                                  Federal Trade Commission
                                                           600 Pennsylvania Avenue N.W.
                                                           Washington, DC 20580
                                                           (202) 326-3320
13

1    Comparing the FTC's allegations with Hoffman's "UI design elements" highlights her

2    unreliable methodology.  Hoffman purportedly "mapped" "[a]n overlay is used to make an offer

3    for the paid digital membership/subscription program" from Paragraph 38 of the Amended

4    Complaint.  Hoffman does not explain how her review of Paragraph 38 led to her identified "UI

5    design element."  Paragraph 38 does not even contain the words "overlay," "offer," "paid,"

6    "digital," or "membership/subscription program."  Att. 104 App. D at Ex. D.2.

7    Hoffman's deposition confirmed the unreliability of her "operationalization."  Hoffman

8    testified that the process of "operationalizing" the FTC's Amended Complaint involved

9    "strip[ping] away subjective comments" and "think[ing] about . . . what is actually being

10    alleged."  Att. 142 at 196:10-15.  However, she could not explain how she "stripped the

11    subjective" from the FTC's Complaint—she simply stated the Complaint is subjective in her

12    opinion based solely on her "decades of experience and research," without identifying any

13    further basis for her process. Att. 142 at 204:1-205:5.  Furthermore, Hoffman does not explain

14    how she selected which allegations to "operationalize." For example, she did not consider the

15    number of steps it took to reach the cancellation flow or to complete the cancellation flow, even

16    though the FTC alleged there were too many steps.  Att. 142 at 216:11-14, 217:4-8; *but see* Am.

17    Compl. ¶ 128.  Hoffman admits her "operationalization" process itself is her opinion. Att. 142 at

18    204:15-16, 205:3.  Rather than point the Court to well-accepted principles in her field to support

19    her methodology's reliability, Hoffman simply asks the Court to take her word for it.  When an

20    expert's opinion is developed specifically for litigation, Rule 702 requires more.  *See Howard v.*

21    *Howmedica Osteonics*, 2008 WL 906585 (D. Ariz. Mar. 31, 2008) (expert must "explain

22    precisely how [she] went about reaching [her] conclusions and point to some objective source . .

23

PLAINTIFF'S MOTION TO EXCLUDE EXPERT
TESTIMONY OF DONNA L. HOFFMAN, PH.D
Case No. 2:23-cv-0932-JHC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-3320

14

1    . to show that [she has] followed the scientific method, as it is practiced by (at least a recognized

2    minority of scientists in [her] field").

3        Hoffman's process to identify programs for her analysis is likewise devoid of a well-

4    accepted methodology. To identify the 48 programs, Hoffman "relied on the summary results

5    from a survey conducted by Forbes Advisor . . . of 1,005 American consumers."  Att. 104 App.

6    D ¶ 2.  Though she states finding the Forbes Advisor survey "[p]robably through a Google

7    search," Att. 142 at 172:5-7, Hoffman does not explain *why* she selected this particular survey in

8    her report.  During her deposition, she testified that "[i]t's a well-established practice to consult

9    some sort of authority if you're trying to generate a sample from a population of interest. And

10   that's what I did here," without providing any support.  *Id.* at 157:12-18.  She further explained

11   Forbes Advisor is "an objective authority."  *Id.* at 157:24-158:5. When asked how she verified

12   the objectivity of the Forbes Advisor survey, Hoffman asserted "they did a survey. I mean, they

13   didn't make it up. It wasn't subjective."  *Id.* at 158:18-22. Hoffman was also unable to explain

14   why she did not check for other surveys she could have used instead: "I looked, and this one

15   looked good. And so this is what I used to generate the categories." *Id.* at 162:10-12.  Of

16   particular concern is that Hoffman did not have sufficient information to understand the context

17   of the Forbes Advisor survey.  For instance, she did not know whether the Forbes Advisor survey

18   respondents lived in the United States.  *Id.* at 171:8-17.

19       Hoffman also could not explain how she selected the 10% percentage threshold of the

20   number of survey respondents to identify the categories of programs for her analysis. Att. 104

21   App. D ¶ 2.  Hoffman simply testified that 10 percent "was reasonable . . . based on my

22   experience," though she was unable to identify a specific aspect of her experience on which she

23

PLAINTIFF'S MOTION TO EXCLUDE EXPERT
TESTIMONY OF DONNA L. HOFFMAN, PH.D
Case No. 2:23-cv-0932-JHC

15

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-3320

based that statement and "could not point to a specific neuronal connection in [her] brain which would tell you why [she] chose 10 percent." Att. 142 at 164:15-165:10. This is notable given that Hoffman eliminated categories based on this 10 percent threshold she arbitrarily selected.

**Third**, Hoffman provides no support for her assertion that the prevalence of the "at-issue UI design elements" on these websites makes consumers more familiar with navigating the Amazon Prime enrollment and cancellation mechanisms. Hoffman hypothesized that "consumers would be familiar with" the "specific at-issue general design elements" which they "would have encountered those sites" and, "given people are online about seven hours a day, it's very likely that they are familiar with these elements," which "would have an impact on their understanding and awareness as they navigated through the Amazon flow." *Id.* at 211:12-212:3, 281:20-282:1. The only support Hoffman provided for that inference was the same "stylized model of consumer experience" that she referred to (and created in 1996) in her first analysis of Prime's enrollment and cancellation processes. *See supra* III(A)(ii); Att. 142 at 272:23-274:2, 283:3-284:16. However, Hoffman could not further explain how this "model of consumer experience" specifically applied with respect to her comparative analysis. This is precisely the type of analytical gap between the expert's data and conclusion the Supreme Court found requires exclusion. *See Joiner*, 522 U.S. at 146.

To provide another example, Hoffman could not provide a threshold percentage of how prevalent a UI design had to be in order for consumers to be "familiar" with it. Att. 142 at 279:25-280:9. She even stated: "I did not determine a threshold. I am just letting the data speak for itself, and we can draw our conclusions from that. And I think it is a reasonable assumption that if a design element appears in a majority of websites, and to the extent that design element

PLAINTIFF'S MOTION TO EXCLUDE EXPERT
TESTIMONY OF DONNA L. HOFFMAN, PH.D
Case No. 2:23-cv-0932-JHC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-3320

16

appears in almost all of the websites, then that is something consumers are likely to be familiar with." *Id.* at 280:9-16.

Hoffman also could not explain how her findings applied in practice. When asked how a consumer navigating a specific UI design element—an "overlay"—on the Walmart+ enrollment process would render that consumer familiar with navigating the UPDP (another "overlay") in the Amazon checkout flow, Hoffman was unable to answer coherently: "I'm not comfortable with you specifically tying navigation on a specific site, for example Netflix or Walmart . . . with a specific UPDP . . . because I did not study specifically that issue of whether familiarity on one specific site or interaction on one site would transfer specifically to an interaction on a particular page." *Id.* at 267:3-19.

Given the fact that Hoffman created a new, unverified methodology with a shaky foundation, her opinions derived from her comparative analysis of non-Amazon programs are unreliable.

## IV.    CONCLUSION

For the foregoing reasons, the FTC respectfully requests that the Court preclude Hoffman from testifying about her opinions based on her above-referenced analyses.  The FTC respectfully requests an evidentiary hearing and oral argument, as the Court deems appropriate and necessary.

## **LOCAL RULE 7(e) CERTIFICATION**

I certify that this memorandum contains 4,139 words, in compliance with the Local Civil Rules.

PLAINTIFF'S MOTION TO EXCLUDE EXPERT
TESTIMONY OF DONNA L. HOFFMAN, PH.D
Case No. 2:23-cv-0932-JHC

17

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-3320

1   Dated:  May 27, 2025                    /s/ Olivia Jerjian
                                            JONATHAN COHEN (DC Bar # 483454)
2                                           EVAN MENDELSON (DC Bar #996765)
                                            OLIVIA JERJIAN (DC Bar #1034299)
3                                           JONATHAN WARE (DC Bar #989414)
                                            ANTHONY SAUNDERS (NJ Bar #008032001)
4                                           SANA CHAUDHRY (NY Bar #5284807)

5                                           Federal Trade Commission
                                            600 Pennsylvania Avenue NW
6                                           Washington DC 20580

7                                           (202) 326-2551 (Cohen); -3320 (Mendelson); -2726
                                            (Ware); -2749 (Jerjian); -2917 (Saunders); -2679
8                                           (Chaudhry)

9                                           JCohen2@ftc.gov; EMendelson@ftc.gov;
                                            JWare1@ftc.gov; OJerjian@ftc.gov;
10                                          ASaunders@ftc.gov; SChaudhry@ftc.gov

11                                          COLIN D. A. MACDONALD (WSBA # 55243)
                                            Federal Trade Commission
12                                          915 Second Ave., Suite 2896
                                            Seattle, WA 98174
13                                          (206) 220-4474; CMacdonald@ftc.gov

14                                          RACHEL F. SIFUENTES
                                            (IL Bar #6304016; CA Bar #324403)
15                                          Federal Trade Commission
                                            230 S. Dearborn St., Room 3030
16                                          Chicago, IL 60604
                                            (312) 960-5617; RSifuentes@ftc.gov
17
                                            JEFFREY TANG (CA Bar #308007)
18                                          Federal Trade Commission
                                            10990 Wilshire Boulevard, Suite 400
19                                          Los Angeles, CA 90024
                                            (310) 824-4303; JTang@ftc.gov
20
                                            Attorneys for Plaintiff
21                                          FEDERAL TRADE COMMISSION

22

23