The Honorable John H. Chun

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FEDERAL TRADE COMMISSION,

    Plaintiff,

    v.

AMAZON.COM, INC., *et al.*,

    Defendants.

No. 2:23-cv-0932-JHC

DEFENDANTS' RULE 702 MOTION TO EXCLUDE DR. MARSHINI CHETTY'S TESTIMONY

NOTE ON MOTION CALENDAR: JUNE 24, 2025

ORAL ARGUMENT REQUESTED

DEFS.' MOT. TO EXCLUDE DR.
MARSHINI CHETTY'S TESTIMONY
(2:23-cv-0932-JHC)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. LEGAL STANDARD ..................................................................................................... 3

III. ARGUMENT .................................................................................................................. 3

    A. Chetty's "Cognitive Walkthrough" Is Neither Relevant Nor Reliable ................. 3

        1. Chetty's Cognitive Walkthrough Opinions Are Unhelpful ...................... 3

        2. Chetty's Cognitive Walkthrough Opinions Are Not Premised on a Scientific Methodology ........................................................................... 4

    B. Chetty's "Think Aloud" Study Is Fundamentally Flawed and Inadmissible ........ 7

        1. Chetty's Opinions Regarding Her Fake Website Do Not Fit the Facts and Are Premised on Too Dissimilar a Comparator to Be Reliable ................................................................................................... 7

        2. Chetty's Fake Study Violated Scientific Norms .................................... 10

    C. Chetty's Testimony Must Be Excluded in Its Entirety if Either of Her Methodologies Is Determined to Be Improper .................................................. 12

IV. CONCLUSION ............................................................................................................. 12

DEFS.' MOT. TO EXCLUDE DR.
MARSHINI CHETTY'S TESTIMONY
(2:23-cv-0932-JHC) - i

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## I.    INTRODUCTION

This litigation centers on the FTC's allegation that Amazon used so-called "dark patterns"—a term not found in any federal law or regulation—to "trick" customers into signing up for Prime or to make it more difficult for customers to cancel. In support of this theory, the FTC proffers the testimony of Dr. Marshini Chetty, a first-time "expert" whose academic work focuses on Human-Computer Interaction ("HCI"), a field focused on the design and use of computer and mobile technology, focusing on the interfaces between people and systems. But Chetty's unreliable opinions fail at every step of the Rule 702 inquiry.

Chetty's opinions are derived from two flawed methodologies: (1) her own observation of Amazon's flows, which she dresses up as a "cognitive walkthrough," and (2) a "think aloud" test of how 30 people responded to a fake candy website. Neither passes muster under *Daubert*.

The "Cognitive Walkthrough": Chetty offers her own subjective and non-replicable impressions of Amazon's interfaces to ultimately conclude that (i) each of Amazon's enrollment flows "can confuse consumers into unintentionally enrolling in Prime" (Ex. 10[1] at 29), and that Amazon's cancellation flows are "difficult to find, ha[ve] too many steps, and use[] manipulative designs to prevent consumers from cancelling Prime" (*id.* at 60). Chetty's opinions are unhelpful and unreliable for two reasons.

*First*, Chetty's "cognitive walkthrough" opinions are nothing more than her own impressions of screenshots of Amazon's flows. *See id.* at 31–81. The jury will not benefit from an "expert" offered to provide her own subjective views and usurp jurors' own role of examining Amazon's flows and drawing their own conclusions about whether the subscription opt-out is sufficiently clear and conspicuous or whether the cancellation process is sufficiently simple.

*Second*, Chetty's "cognitive walkthrough" is not based on reliable principles and methods. To adorn her personal observations with a scientific gloss, Chetty resorts to a hodgepodge of vague and rudderless "heuristics," "taxonomies," "good design principles," "golden rules," and an "ontology" of "dark patterns" first published in 2024 (a year after the FTC filed its complaint).

---

[1] "Ex." or "Exs." refer to exhibits attached to the Omnibus Declaration of Joseph Reiter unless stated otherwise.

DEFS.' MOT. TO EXCLUDE DR.
MARSHINI CHETTY'S TESTIMONY
(2:23-cv-0932-JHC) - 1

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

But Chetty herself admits that the dark patterns she references are not defined by any uniform standard or consensus. Nor does Chetty identify data sufficient to support her own impressions. On the contrary, she fails to corroborate her conclusions with any review of data from actual Amazon users or any consideration of common offline or online marketing practices. Those multiple methodological flaws demonstrate that Chetty's "cognitive walkthrough" is unreliable and should be excluded.

The "Think Aloud Study": Chetty next offers opinions based on a flawed "think aloud" study she conducted using only 30 participants and a fictional "CandyForever" website she designed. Her flawed "think aloud" opinions are unreliable for two reasons.

*First*, rather than studying users' interactions *with the Amazon website* to draw conclusions about Amazon's enrollment and cancellation flows, Chetty equipped participants with prepaid gift cards and used a fake website, "CandyForever," that sold only candy and did not replicate Prime's value proposition, brand-recognition, or real-world design. While Chetty claims this is "as close to using Amazon in the real world as we could have gotten in a study environment" (*id.* ¶ 308), these design flaws render the study fundamentally irrelevant and unreliable for the stated purpose of "confirm[ing] how people interact with the Prime enrollment processes during online checkout and the Prime cancellation processes" (*id.* ¶ 28). Admitting Chetty's opinions on her study would only confuse the jury.

*Second*, Chetty's "think aloud" study violated scientific norms. Her sample size was too small to supply statistically significant data, and she rendered opinions based on anecdotal responses while ignoring countervailing responses. She also did not validate or check the reliability of her response coding and conducted no inter-coder reliability testing. Those deficiencies demonstrate that Chetty's approach was unreliable.

\* \* \*

The opinions Chetty derived from these unscientific methods and vague concepts should be excluded in their entirety not only because each methodology is independently unreliable but also because Chetty confirmed that her opinions depend on both flawed methods in combination.

DEFS.' MOT. TO EXCLUDE DR.
MARSHINI CHETTY'S TESTIMONY
(2:23-cv-0932-JHC) - 2

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Chetty's opinions are exactly the kind of unreliable and unhelpful testimony that courts exercise their gatekeeping function to exclude under Rule 702 and *Daubert*. The Court should do so here.

## II.   LEGAL STANDARD

Under Rule 702 and *Daubert*, a "district court must perform a 'gatekeeping role' to ensure that the testimony is both 'relevant' and 'reliable.'" *United States v. Valencia-Lopez*, 971 F.3d 891, 897-98 (9th Cir. 2020) (cleaned up). The proponent of the expert testimony bears the burden of proving both relevance and reliability. *Id.* at 900. "Maintaining *Daubert*'s standards" and screening out "junk science" is particularly important "considering the aura of authority experts often exude, which can lead juries to give more weight to their testimony." *Elsayed Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1063–64 (9th Cir. 2002), *overruled on other grounds by United States v. Bacon*, 979 F.3d 766 (9th Cir. 2020) (en banc). Expert testimony may also be excluded under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice or confusion. Because "[e]xpert evidence can be both powerful and quite misleading," the Court, in applying Rule 403, "exercises more control over experts than over lay witnesses." *United States v. Rincon*, 28 F.3d 921, 925 (9th Cir. 1994).

## III.   ARGUMENT

### A.   Chetty's "Cognitive Walkthrough" Is Neither Relevant Nor Reliable

#### 1.   Chetty's Cognitive Walkthrough Opinions Are Unhelpful

Expert testimony is relevant if it "will assist the trier of fact to understand or determine a fact in issue." *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007). "Encompassed in the determination of whether expert testimony is relevant is whether it is helpful to the jury, which is the 'central concern' of Rule 702." *Id.* Although an expert is not precluded from opining on an ultimate issue of fact, Fed. R. Evid. 704(a), "'when an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's.'" *Shirley v. Wash. State Dep't of Fish & Wildlife*, 2025 WL 1384803, at *4 (W.D. Wash. May 13, 2025) (quoting *United States v. Diaz*, 876 F.3d 1194, 1197

DEFS.' MOT. TO EXCLUDE DR.
MARSHINI CHETTY'S TESTIMONY
(2:23-cv-0932-JHC) - 3

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

(9th Cir. 2017)). "Expert testimony should be excluded" where it "invades the province of the jury." *United States v. Lukashov*, 694 F.3d 1107, 1116 (9th Cir. 2012).

Testimony premised on Chetty's "cognitive walkthrough" would defy these standards. That walkthrough amounts to nothing more than Chetty's personal observations. She was given "screenshots" and "videos" of Amazon's subscription and cancellation flows and "observed" those. Ex. 10 at 19, 26, 28, 52. That was the extent of her "inspection." *Id.* at 1, 23, 25, 28. Offering that testimony at trial would attempt to supplant, not assist, the jury.

Trademark cases involving expert testimony on the likelihood of confusion are instructive. Courts in this Circuit routinely exclude expert testimony based solely on "personal observations" of competing marks, recognizing that such testimony would "usurp the role of the jury as a factfinder." *Blue Bottle Coffee, LLC v. Liao*, 2023 WL 6850573, at *8 (N.D. Cal. Oct. 16, 2023); *see also Lanard Toys Ltd. v. Anker Play Products, LLC*, 2020 WL 6873647, at *6 (C.D. Cal. Nov. 12 2020) ("All of [the expert's] conclusions stem from his personal observations of the products, which are within the province of the jury."); *JIPC Mgmt., Inc. v. Incredible Pizza Co.*, 2009 WL 8591607, at *3 (C.D. Cal. July 14, 2009) (same). That same logic applies here. At a minimum, Chetty's opinions should be excluded under Rule 403 because the limited probative value of her subjective impressions is substantially outweighed by the risk of unfair prejudice.

### 2. Chetty's Cognitive Walkthrough Opinions Are Not Premised on a Scientific Methodology

Chetty's cognitive walkthrough is also methodologically deficient. Expert testimony must be "based on sufficient facts or data" and derived from "reliable principles and methods," and "reflect[] a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(b)-(d). It is not enough for an expert to simply assert a conclusion; courts need not "admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Moreover, "Rule 702 . . . does not include unsubstantiated speculation and subjective beliefs." *Cooper*, 510 F.3d at 942.

DEFS.' MOT. TO EXCLUDE DR.
MARSHINI CHETTY'S TESTIMONY
(2:23-cv-0932-JHC) - 4

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Chetty's cognitive walkthrough is exactly what Rule 702 prohibits—an exercise in subjective judgment unmoored from data, testing, or replicable standards. Her methodology consisted largely of adopting pejorative names—e.g., "nagging"; "roach motel"; "bait and switch"; "sneaking"; "confirmshaming"—for ill-defined web design elements and then subjectively assigning those pejoratives to Amazon's flows. Ex. 10 at 18–22, 40, 48, 49, 53, 54, 57, 59, 67, 73, 78. That is not expert analysis.

Chetty's deposition testimony only magnified her methodological deficiencies. She implicitly acknowledged that her approach is inherently subjective, agreeing that "opinions of dark patterns may also vary between and among experts and users" (Ex. 4 at 226:814), and that other experts could reach different conclusions using the same method (*id.* at 65:18–67:5, 285:8–287:6). She further admitted that even her co-authors have disagreed about whether particular designs are "good" or "bad" and that such disagreements extend to how consumers might interact with the design. *Id.* at 67:21–68:10. Her methodology was thus little more than a stylized articulation of personal preferences.

Far from denying the subjectivity, Chetty embraced it: "I also looked and took these principles of good design into account as I was evaluating each different screen in these flows." Ex. 4 at 272:8–11. She faulted Amazon for providing too much information in the cancellation flow (Ex. 10 at 65–66), while criticizing the enrollment flow for providing too little (*id.* at 55–60), without articulating any consistent or scientific principle governing these opposing conclusions. She further admitted that it "may be" acceptable for a business to use a dark pattern, depending on the context (Ex. 4 at 84:1–91:10), that even commonplace, truthful messages like "Only 10 left" or "No thanks" may or may not qualify as dark patterns depending on the context (*id.* at 180:9–184:9, 220:19–221:2, 303:3–304:15), and that there is no checklist or objective guidance a business can follow to avoid being labeled a violator (*id*. at 91:12–94:25). "Under *Daubert*'s testability factor, the primary requirement is that someone else using the same data and methods be able to replicate the results." *City of Pomona v. SQM N. Amer. Corp.*, 750 F.3d 1036,

DEFS.' MOT. TO EXCLUDE DR.
MARSHINI CHETTY'S TESTIMONY
(2:23-cv-0932-JHC) - 5

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1047 (9th Cir. 2014). Chetty's approach plainly defies that requirement. Ten individuals applying Chetty's *ipse dixit* methodology to the same screenshots would arrive at ten different conclusions.

Apart from constituting pure and prohibited "subjective beliefs," *Cooper*, 510 F.3d at 942, Chetty also formulated her opinions without "sufficient facts or data" or "reliable principles and methods." Fed. R. Evid. 702(b)–(c). In fact, she had *never* before applied her "cognitive walkthrough" approach to evaluate an online checkout or cancellation process. Ex. 4 at 54:21–60:13. The only other company for which she had ever conducted a cognitive walkthrough at all (in the subscription process only) was Netflix, but she could not even recall whether Netflix's subscription process used *any* dark patterns. *Id.* at 53:6–22, 154:25–156:1, 157:7–12. Lacking any prior comparator upon which to ground her approach, Chetty also did not use any present comparator. "[F]or purposes of work in this case," Chetty testified, "I did not look at any other cancellation processes from other companies other than Amazon." *Id.* at 149:18–20. In fact, despite claiming to be "an expert on the use of dark patterns by online companies," Chetty could not name a single online company that "does not use dark patterns." *Id.* at 151:10–15, 153:3–15, 157:14–23, 158:18–159:4.

The deficiencies did not stop there. While she professed to be evaluating the user experience, Chetty admitted she also did not test her opinions with users and did not request any user data about whether users were actually misled. *Id.* at 261:20–267:11. She had not spoken to a single actual subscriber who told her that they unintentionally enrolled in Prime or about their experience seeking to cancel Prime. *Id.* at 169:14–170:8. Chetty also had never analyzed whether "dark patterns" are used in offline marketing and, in fact, admitted to having *no* marketing expertise: "I'm not really a marketing expert," she testified, "So I don't really know what constitutes a traditional marketing technique in marketing." *Id.* at 241:8–10, 242:22–243:6. Without any knowledge of traditional, common, and lawful marketing techniques, Chetty lacks the necessary expertise to distinguish so-called "dark patterns" and deception from lawful online marketing and persuasion. These shortcomings demonstrate that Chetty's methodology lacks the

DEFS.' MOT. TO EXCLUDE DR.
MARSHINI CHETTY'S TESTIMONY
(2:23-cv-0932-JHC) - 6

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

"level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Cooper*, 510 F.3d at 949.

Bereft of any actual user testing, user behavior data, peer company benchmarks, or even prior comparable applications of her techniques, Chetty resorts to a hodgepodge of "heuristics," "taxonomies," and "ontologies." Ex. 10 at 1, 7, 12, 17–19, 23, 25, 26, 28, 29, 56. In effect, Chetty proposes to overwhelm the jury with jargon, but Rule 702 does not allow the admission of "unreliable nonsense opinions," *Sonneveldt v. Mazda Motor of America, Inc.*, 2024 WL 5242611, at *2 (9th Cir. Dec. 30, 2024) (unpublished), and expert testimony that risks confusing jurors and evading meaningful cross-examination is excludable under both Rules 702 and 403, *see, e.g.*, *United States v. Williams*, 2017 WL 3498694, at *13 (N.D. Cal. Aug. 15, 2017). Moreover, the only "ontology" that Chetty could identify as creating "a shared model for us to reason about and talk about dark patterns" was not published until 2024, and at least as of 2021, an article she relied upon explained that there was not even a "conceptual foundation" to determine what makes a user interface a dark pattern. Ex. 4 at 228:25–231:12; Ex. 10 at 108 n.52. Courts properly screen out expert techniques that have "not gained general acceptance in the scientific community." *Cooper*, 510 F.3d at 880.

That is what should happen here. Chetty's subjective opinions were not developed through scientific procedures or validated against real-world user behavior. She merely mirrors the FTC's allegations, attempting to emboss the government's claims with the patina of science. Her "cognitive walkthrough" testimony should be excluded.

**B.    Chetty's "Think Aloud" Study Is Fundamentally Flawed and Inadmissible**

Chetty's "think aloud" study opinions fare no better, and should also be excluded.

**1.    Chetty's Opinions Regarding Her Fake Website Do Not Fit the Facts and Are Premised on Too Dissimilar a Comparator to Be Reliable**

To be relevant, expert testimony must demonstrate "a valid scientific connection to the pertinent inquiry," *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 (1993), thereby "logically advanc[ing] a material aspect of the party's case," *Cooper*, 510 F.3d at 942.

DEFS.' MOT. TO EXCLUDE DR.
MARSHINI CHETTY'S TESTIMONY
(2:23-cv-0932-JHC) - 7

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

That requirement is one of "fit": the expert testimony must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 591. A court may exclude expert testimony where "there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec.*, 522 U.S. at 146. Expert opinions lacking "fit" are also excludable under Rules 402 and 403 for lack of relevance and their substantial risk of confusing and misleading the jury. *United States v. Scholl*, 166 F.3d 964, 971 (9th Cir. 1999).

      Chetty's "think aloud" opinions fail for lack of "fit." Chetty did not test Amazon's actual enrollment or cancellation flows—not on desktop, not on mobile, and not with real consumers. Ex. 4 at 43:8–44:25. Instead, she created a fake website for a dissimilar product, "CandyForever," recruited paid participants, and assigned them a scripted task to purchase regardless of their intent. Ex. 10 ¶¶ 291, 327; Ex. 4 at 351:4–14. CandyForever was unfamiliar to users and offered fabricated features rather than the wide array of tangible benefits associated with Amazon Prime. Ex. 4 at 316:12–317:8, 319:8–326:2. Unlike Amazon, where users can purchase a broad array of goods and services—including groceries, electronics, streaming content, and more—CandyForever sold only candy (which many users might not even want). *Id.* at 319:23–320:5. Even Chetty begrudgingly conceded that the limited and unusual nature of her fictional platform "probably had some effect" on user behavior. *Id.* at 348:6–349:21. In fact, the whole of Chetty's single-product study was dependent on whether a participant had any desire to purchase candy: "maybe they liked candy, maybe they didn't like candy so much." *Id.* at 349:19–20. It is no surprise that participants who "do not eat that much candy" would not subscribe. Ex. 10 at 95. Yet Chetty offers "no explanation supporting the logical leap from the underlying conclusions" she drew about fake candy subscriptions "to the ultimate conclusion" she draws about subscribing in a program through which real customers can access many hundreds of millions of products. *See Archie v. Pop Warner Little Scholars, Inc.*, 2021 WL 4130082, at *2 (9th Cir. Sept. 10, 2021) (unpublished). "Given this logical gap," her opinions should be excluded. *See id.*

      Furthermore, as multiple circuits have held, "experimental evidence" based on tests that purport to recreate real-world conditions require "conditions *substantially similar* to the actual

DEFS.' MOT. TO EXCLUDE DR.
MARSHINI CHETTY'S TESTIMONY
(2:23-cv-0932-JHC) - 8

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

conditions." *Dunn v. Nexgrill Indus., Inc.*, 636 F.3d 1049, 1055 (8th Cir. 2011) (affirming exclusion of experimental evidence where experiments were not substantially similar to conditions existing at time of subject house fire); *accord United States v. Baldwin*, 418 F.3d 575, 579–80 (6th Cir. 2005); *Four Corners Helicopters, Inc. v. Turbomeca, S.A.*, 979 F.2d 1434, 1442 (10th Cir. 1992); *Ramsey Products Corp. v. Morbark Indus., Inc.*, 823 F.2d 798, 804 (4th Cir. 1987); *Glick v. White Motor Co.*, 458 F.2d 1287, 1294–95 (3d Cir. 1972). "[S]ignificant departures" from real-world conditions should ordinarily result in the experiment's exclusion. *McKnight By & Through Ludwig v. Johnson Controls, Inc.*, 36 F.3d 1396, 1405 (8th Cir. 1994) (district court erred by admitting evidence of experiment). It is not enough for an expert to announce her "own conclusory opinion that the differences do not matter." *Grodzitsky v. Amer. Honda Motor Co.*, 2015 WL 2208184, at *5 (C.D. Cal. Apr. 22, 2015).

Despite Chetty's claim that CandyForever is "as close to using Amazon in the real world as we could have gotten in a study environment" (Ex. 10 ¶ 308), Chetty's fake CandyForever experiment is not even a rough approximation of the real Amazon experience. The single-product nature of CandyForever alone rendered Chetty's experiment substantially dissimilar from Amazon Prime. The payment method Chetty devised is another factor that, even standing alone, defeats any showing of substantial similarity. Participants in Chetty's experiment were paid at least $125 each and were provided with giftcards to use "instead of their own credit cards." *Id.* ¶¶ 309, 327. Chetty inaccurately describes the giftcards as enhancing "study realism" when, in fact, they had the opposite effect. *Id.* Chetty did not want her study participants to have to disclose their "personal credit card information" (*id.*), but that is exactly what users must do to enroll in Prime. As Chetty points out elsewhere in her report, customers enrolling in Prime are "*billed*," meaning there are real and "immediate financial consequences" (*id.* ¶ 127). Using a prepaid gift card has no real or ongoing financial consequences.

Those fundamental distinctions were compounded by numerous other dissimilarities. Chetty made no effort to replicate the demographics of Amazon's consumer group, admitting her participants were "not representative." Ex. 4 at 315:15–24. And unlike the fake CandyForever site

DEFS.' MOT. TO EXCLUDE DR.
MARSHINI CHETTY'S TESTIMONY
(2:23-cv-0932-JHC) - 9

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

participants had never heard of (*id.* at 323:2–17), Amazon has enormous real-world brand recognition, powerful consumer expectations, and subscription incentives. Testimony regarding an experiment that failed to replicate any of these factors "strays too far from the real-world conditions at issue" and fails to "fit" the facts. *Complaint of Borghese Lane, LLC*, 2023 WL 2356335, at *3 (W.D. Pa. Mar. 2, 2023) (cleaned up). Chetty's testimony on CandyForever is too irrelevant and unreliable to be admitted.

### 2. Chetty's Fake Study Violated Scientific Norms

Chetty's "think aloud" study also violated scientific norms. The final experiment included a mere 30 participants. Ex. 10 ¶¶ 334, 351–57; Ex. 4 at 101:21–24. Chetty knew that was not a statistically significant pool; she was "not trying to get to statistically significant findings." Ex. 4 at 316:4–7. She nevertheless extrapolated from a 30-person experiment to draw conclusions about a program with hundreds of millions of subscribers. The Ninth Circuit has explained that using such statistically insignificant micro-samples does not accord with scientific norms. *Grodzitsky v. Amer. Honda Motor Co.*, 957 F.3d 979, 985–86 (9th Cir. 2020) (expert's "methodological flaws" included examining 26 window regulators to prove a common defect in over 400,000); *see also Sonneveldt*, 2024 WL 5242611, at *2 (affirming exclusion where district court concluded, *inter alia*, that four failed water pipes "were not a sufficient basis" to support defect theory).

From her statistically insignificant sample, Chetty used isolated and anecdotal statements to support her conclusions. Ex. 10 at 95–103. Reliance on "merely anecdotal" evidence, however, renders expert testimony "unqualified." *United States v. Chao Fan Xu*, 706 F.3d 965, 984 (9th Cir. 2013); *see also Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012) ("Red flags that caution against certifying an expert include reliance on anecdotal evidence[.]"). What is more, Chetty avoided or failed to report anecdotal statements that might have undermined her conclusions. Although she reported the isolated statements of participants who allegedly had difficulty cancelling their fake CandyForever subscriptions, she did not document any statements by the 13 of 30 participants who had no trouble completing the cancellation process. Ex. 10 ¶ 355. That sort of "[r]esult-driven analysis, or cherry-picking,

DEFS.' MOT. TO EXCLUDE DR. MARSHINI CHETTY'S TESTIMONY (2:23-cv-0932-JHC) - 10

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

undermines principles of the scientific method and is a quintessential example of applying methodologies (valid or otherwise) in an unreliable fashion." *In re Lipitor (Atorvastatin Calcium) Marketing, Sales Practices & Prod. Liab. Litig.*, 892 F.3d 624, 634 (4th Cir. 2018). In fact, Chetty's approach not only violated general scientific methods but also defied the quintessential feature of the specific method she purported to apply. Although the whole point of a "think aloud" study is for participants to "think aloud and verbalize their thought processes as they navigate a website or interface" (Ex. 10 ¶ 70), Chetty based her findings on participant *responses to questions* posed by researchers *after* participants had completed their review of the fake CandyForever screens (Ex. 4 at 381:16–19), turning the "think aloud" study into a memory test. An expert who "deviate[s] from [her] own stated description" of their chosen methodology is not reliable. *See Brown v. Burlington N. Santa Fe Ry. Co.*, 765 F.3d 765, 773 (7th Cir. 2014).

Nor did Chetty use a reliable methodology to analyze study data. To draw conclusions about whether any study participant was confused, Chetty and her research assistant "developed a code book," watched videos of the participants interacting with the fake CandyForever screens, and assigned codes by "noting movements of the participant's onscreen cursor," evaluating "what they said," and "look[ing] for pauses in interactions and speaking." Ex. 10 ¶¶ 339–40. Chetty posited that she could then make determinations as to whether participants "read the [] fine print" or "had trouble finding the cancellation options." *Id.* ¶¶ 342, 346. Unsurprisingly, Chetty and her assistant had disagreements on how codes should be applied. Ex. 4 at 359:22–360:9. That divergence of views reveals the obvious: Chetty's coding process was an exercise in subjective judgment, rather than a reproducible analytical method. Indeed, Chetty offered no evidence that she and her assistant employed any formal criteria for their coding process, applied codes independently, validated their conflicting responses using any formal metric, conducted any inter-coder reliability testing, or employed any objective guardrails to protect against miscoding. That kind of unstructured, subjective interpretation is exactly what *Daubert* prohibits. Once again, expert analysis must be replicable and verifiable—not based on the expert's subjective opinions. *Gen. Elec.*, 522 U.S. at 146; *Cooper*, 510 F.3d at 942. Chetty's study fails the test.

DEFS.' MOT. TO EXCLUDE DR.
MARSHINI CHETTY'S TESTIMONY
(2:23-cv-0932-JHC) - 11

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

### C. Chetty's Testimony Must Be Excluded in Its Entirety if Either of Her Methodologies Is Determined to Be Improper

If either of Chetty's methodologies is deemed irrelevant or unreliable, her opinions must be excluded in their entirety. Chetty confirmed that if either of the evaluations she performed were removed from the equation she "would not have the opinions [she] expressed." Ex. 4 at 202:15–25. Both of the methodologies allowed her to form all of her opinions and she "can't separate them out." *Id.* at 201:2–204:21. Accordingly, her opinions must be excluded altogether unless both methodologies satisfy *Daubert*. Neither one does.

### IV.    CONCLUSION

Chetty's expert opinions and testimony should be excluded in their entirety.

DATED this 27th day of May, 2025.

I certify that this memorandum contains 4,172 words, in compliance with the Local Civil Rules.

DAVIS WRIGHT TREMAINE LLP

By s/ *Kenneth E. Payson*
Kenneth E. Payson, WSBA #26369
James Howard, WSBA #37259
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
Telephone: (206) 622-3150
Fax: (206) 757-7700
E-mail: kenpayson@dwt.com
           jimhoward@dwt.com

COVINGTON & BURLING LLP

Stephen P. Anthony*
Laura Flahive Wu*
Laura M. Kim*
John D. Graubert*
850 Tenth Street, NW
Washington, DC  20001
Telephone: (206) 662-5105
E-mail: santhony@cov.com
           lflahivewu@cov.com
           lkim@cov.com
           jgraubert@cov.com

John E. Hall*
415 Mission Street, Suite 5400
San Francisco, CA  94105

DEFS.' MOT. TO EXCLUDE DR. MARSHINI CHETTY'S TESTIMONY (2:23-cv-0932-JHC) - 12

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

| | |
|---|---|
| 1 | Telephone: (415) 591-6855<br>E-mail: jhall@cov.com |
| 2 | Megan L. Rodgers* |
| 3 | 3000 El Camino Real<br>Palo Alto, CA 94306 |
| 4 | Telephone: (650) 632-4734<br>E-mail: mrodgers@cov.com |

Telephone: (415) 591-6855
E-mail: jhall@cov.com

Megan L. Rodgers*
3000 El Camino Real
Palo Alto, CA 94306
Telephone: (650) 632-4734
E-mail: mrodgers@cov.com

Anders Linderot*
620 Eighth Avenue
New York, NY 10018
Telephone: (212) 841-1000
Email: alinderot@cov.com

HUESTON HENNIGAN LLP

John C. Hueston*
Moez M. Kaba*
Joseph A. Reiter*
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone: (213) 788-4340
E-mail: jhueston@hueston.com
    mkaba@hueston.com
    jreiter@hueston.com

*admitted pro hac vice

Attorneys for Defendants AMAZON.COM, INC., NEIL LINDSAY, RUSSELL GRANDINETTI, AND JAMIL GHANI

DEFS.' MOT. TO EXCLUDE DR.
MARSHINI CHETTY'S TESTIMONY
(2:23-cv-0932-JHC) - 13

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax