Hon. John H. Chun

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>　　　Plaintiff,<br><br>　v.<br><br>AMAZON.COM, INC., *et al.*,<br><br>　　　Defendants. | No. 2:23-cv-0932-JHC<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SANCTIONS DUE TO DEFENDANT AMAZON.COM, INC.'S SYSTEMATIC ABUSE OF PRIVILEGE CLAIMS**<br><br>NOTED ON MOTION CALENDAR:<br>Wednesday, May 28, 2025 |

PLAINTIFF'S REPLY ISO MOTION
FOR SANCTIONS
Case No. 2:23-cv-0932-JHC

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-3320

1

Amazon attempts to skirt a finding of bad faith for its systematic and abusive misuse of privilege designations and wrongful withholding of what it admits are 69,909 documents representing 91.17%.[1] of the documents on its privilege log. Amazon's silence on the FTC's evidence supporting an inference of bad faith speaks volumes. Instead, the crux of Amazon's argument, rife with mischaracterizations, is that the Court "need not" decide whether Amazon engaged in bad faith because it purportedly agreed to the relief the FTC seeks. Dkt. 302 at 2. It has not.

I. **AMAZON OFFERS NO EVIDENCE TO REBUT AN INFERENCE OF BAD FAITH.**

The insubstantial evidence in Amazon's response carries little weight against what the FTC presented. Additionally, the evidence shows that Amazon itself—rather than its counsel—had at least a heavy hand in the initial bad faith privilege review.

**First**, Amazon summarily states that it withheld 69,909 documents because some documents "included complex discussions between Amazon legal and business personnel about the legal risks of changing or not changing Prime enrollment and cancellation flows." Dkt. 302 at 2-3. However, Amazon fails to rebut a finding of bad faith. *See* Dkt. 286 at 4-10 (listing five bases supporting an inference of bad faith). Amazon only presents a declaration from Edward Rippey, a Covington & Burling LLP ("Covington") partner. *See* Dkt. 303 ¶1. Rippey offers general information regarding the initial privilege review, stating "many documents included complex discussions involving both business and legal personnel." *Id.* ¶7. He does not respond

---

[1] This updated percentage is based on the numbers provided in Paragraphs 8 and 11 of Dkt. 303, different from those in Paragraph 28 of Dkt. 288.

to the specific examples discussed in the FTC's brief, and he offers no examples to support his generalization.

Furthermore, regarding the examples referenced in the Motion, Amazon claims grounds existed "to support a reasonable determination that legal advice was 'one of the significant' purposes of the document." Dkt. 302 at 4-5. But Amazon does not, and cannot, explain *how* legal advice was a significant purpose of the documents. For example, in the first document, Moeller states "metrics" should not be "the reason why we don't take action on clarity. It is the right thing to do by the customer, so we should act. But we need to balance that with not creating a massive impact to the business all at once." This is unrelated to legal advice. Dkt. 286 at 5-6. In the second document, Herrington refers to Bezos as Amazon's "chief dark arts officer;" which is unrelated to legal advice. *Id.* at 6-7. Likewise, Defendant Lindsay's statement that improvements to the Prime enrollment process would cause Prime to lose subscribers who did not intend to sign up but "end up being happy" is not legal advice. *Id.* at 7. In the third document, the "updp repeat customer" enrollment flow with improved and "specific messaging . . . for the cohort of customers who 'signed up for multiple US Prime plans . . . and cancelled their Plans at least twice through customer service'" is unrelated to legal advice. *Id.* Fourth, Baidwan notes that Prime was "not close to the middle of the pack amongst shopping and streaming programs" on enrollment clarity as a result of a benchmarking analysis. *Id.* at 8. This is unrelated to legal advice.

Amazon also claims the FTC "pick[ed] out just four documents."[2] Dkt. 302 at 4. One brief can only cite to so many documents, and many others illustrate that Amazon routinely

---

[2] The 91.17% error rate reflects systematic, rather than isolated, problems.

PLAINTIFF'S REPLY ISO MOTION  
FOR SANCTIONS  
Case No. 2:23-cv-0932-JHC

3

Federal Trade Commission  
600 Pennsylvania Avenue N.W.  
Washington, DC 20580  
(202) 326-3320

withheld obviously nonpriviliged material.  For example, Amazon withheld in its entirety a February 5, 2021 email exchange where Defendant Ghani stated the pro-consumer "clarity" initiatives the Prime team experimented on should not be implemented because "the business hits we have seen with the experiments . . . are non-starters and should not be pursued.  If we find improvements that are neutral or only somewhat negative […] we should roll them out."  Att.[3] 14 at 3.  He confirmed: "I don't think anyone on the c-team is pushing us to be clearer at the cost of business."  *Id.*  Amazon withheld this email because it supposedly "[d]iscuss[ed] or relat[ed] to legal and regulatory risks related to features of Amazon subscription enrollment or cancellation flows."  Jerjian Decl. ¶16.  However, no attorney responded in the thread, and no legal advice was sought or provided.

Another series of emails on Prime's "Project Pheonix"—entirely withheld as privileged—provides another illustration.  An initiative from 2019, "Project Phoenix" meant to stop charging inactive monthly Prime subscribers who had not used any Prime benefit in over 12 months.  *See* Att. 5 at 3-4.  Removing those inactive subscribers would have cost Amazon ▮ in annual revenue in 2020 and reduced the number of Prime subscribers by ▮.  *See id.*  Defendant Grandinetti and other executives were "aligned" to implement Project Phoenix.  Att. 6 at 2.  Then-head of Amazon UK Doug Gurr believed that it was "obviously the right thing to do from a customer point of view."  Att. 13 at 3.  However, Jeff Wilke— then-CEO of Worldwide Consumer—decided against it.  *Id.* at 2.

Amazon wholly withheld *twelve* versions of this email chain.  *See* Jerjian Decl. ¶¶5-15, 17. Eleven of them were withheld in the investigation log because they "request[ed] legal advice

---

[3] All "Attachment" cites reference attachments to the Declaration of Olivia Jerjian, filed concurrently herewith.  All page number cites for Attachments and docket entries refer to the ECF header information at the top of the page.

PLAINTIFF'S REPLY ISO MOTION  
FOR SANCTIONS  
Case No. 2:23-cv-0932-JHC  
4  
Federal Trade Commission  
600 Pennsylvania Avenue N.W.  
Washington, DC 20580  
(202) 326-3320

regarding regulatory compliance requirements governing Prime cancellations." *Id.* ¶¶5-15. A single document was withheld in the litigation log because it "[d]iscussed or relat[ed] to legal advice regarding review of press releases, earnings reports, and/or other external communications." *Id.* ¶17. A cursory review of these twelve documents show that they did not contain any legal advice or request therefor. *See* Atts. 3-13, 15. However, they contain business information that paints Amazon unfavorably. The FTC had even asked Amazon to review AMZ_LOG03_000000902 (*id.* ¶ 6) in its January 2024 letter. *See* Att. 1 at 3. Amazon ignored this request.

In another example, Amazon entirely withheld an email chain where C.R. Brown (Prime UX Design Manager) insisted that the new design for the Iliad cancellation process contained confusing elements and a "dark pattern" that were not to the consumer's benefit, though Amazon proceeded with the new design regardless. Att. 16 at 6-14; *see* Jerjian Decl. ¶18.

**Second**, the evidence indicates Amazon was responsible for the privilege review. Rippey asserts he was "one of the senior attorneys who provided oversight of the privilege review and logging process in connection with this matter." Dkt. 303 ¶3. But, he does not state who had *ultimate* oversight over the initial privilege review process.[4] or whether he oversaw the initial review (the subject of this motion) or the subsequent review that undid the erroneous privilege determinations.

In contrast, during the investigation, Covington stated that Benjamin Langner, Amazon's in-house counsel, was ultimately responsible for the privilege review during the investigation. *See* Att. 2 at 14:7-15:7 (Covington counsel stating that Langner is "the lead attorney or the

---

[4] Rippey simply states "Amazon in-house and outside counsel provided training, guidance, and oversight to the lawyers performing the review." Dkt. 303 ¶7.

PLAINTIFF'S REPLY ISO MOTION
FOR SANCTIONS
Case No. 2:23-cv-0932-JHC

5

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-3320

attorney responsible for supervising the review of the material" and "**made the determination to assert the [privilege] claim[s]**") (emphasis added).  Indeed, Langner—not Rippey—submitted the Certification of Compliance under 28 U.S.C. § 1746 certifying that Amazon's responses (including its privilege determinations) to the FTC's Civil Investigative Demands were "complete and true and correct to the best of my knowledge, information, and belief" under penalty of perjury.  *See* Dkt. 288-18.  Moreover, Rippey's declaration seems to suggest that Amazon engaged the vendor that performed the initial review under Langner's ultimate oversight.  *See* Dkt. 303 at ¶5 (characterizing the vendor as "Amazon's ediscovery vendor").

Amazon's close involvement in the initial privilege review supports an inference that it was responsible for misusing privilege to hide a large volume of probative evidence from the FTC.

II. **AMAZON CANNOT SKIRT A FINDING OF CONDUCT TANTAMOUNT TO BAD FAITH.**

Amazon asserts it "has already agreed to the full relief the FTC requested, with two minor clarifications that the FTC has since accepted" and there is "no dispute before the Court." Dkt. 302 at 1, 6.  Amazon's assertions are wrong for two reasons.

**First**, the FTC did not accept the "two minor clarifications": that Amazon agrees to 1) "bear **reasonable** costs" and 2) "not . . . affirmatively use" any of the wrongfully withheld documents "**absent leave of court**."  *Id.* (Amazon's "minor clarifications" bolded).  Amazon plainly ignores the context of its discussions with the FTC.  On May 19, 2025, Amazon asked the FTC to submit what it would accept as an out-of-court resolution of this motion.  *See* Jerjian Decl. ¶20. The FTC did so, agreeing to the "minor clarifications" as part of an overall compromise containing other material terms, including an **admission of wrongdoing** and

PLAINTIFF'S REPLY ISO MOTION
FOR SANCTIONS
Case No. 2:23-cv-0932-JHC

6

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-3320

additional terms. *See* Dkt. 304 at 19 (FTC email), 24-25 (FTC proposed resolution). Amazon never accepted the deal. The fact that a party includes a term as part of a compromise containing other material provisions does not mean the party accepts that term unconditionally. As such, the FTC has not accepted the "two minor clarifications,"[5] meaning that Amazon has not accepted either the original proposed order or the out-of-court compromise that the FTC proposed at Amazon's solicitation.

**Second**, even if Amazon accepts the relief in Dkt. 286-1 in full, Amazon is wrong to claim "there is simply nothing to adjudicate at this time." Dkt. 302 at 2. On the contrary, the Court "**must** make a specific finding of 'conduct tantamount to bad faith'" to sanction Amazon. *See Chaudhry v. United States Citizenship & Immigr. Servs.*, 2019 WL 6341289, at *1 (W.D. Wash. Nov. 27, 2019) (internal quotations omitted) (emphasis added). Unless Amazon acknowledges its wrongdoing, it cannot prevent the Court from imposing the requested relief as a sanction.

Moreover, a *de facto* no contest plea—which is what Amazon seeks to do—is unacceptable here. Permitting Amazon to plead "no contest" provides Amazon a trapdoor to escape a situation of its own making at relatively little cost, encouraging the behavior the sanction is intended to deter. Companies could conduct bad faith privilege reviews and, if caught, it can simply provide the injured party the discovery it should have received in the first place.

Furthermore, Amazon ignores the extreme prejudice its bad faith inflicted on the FTC by withholding 69,909 documents until the last minute, on the eve of discovery's close and

---

[5] Amazon's mischaracterization of the FTC's acceptance of terms is a pattern in this matter. *See* Att. 17 at 3:17-6:14.

PLAINTIFF'S REPLY ISO MOTION  
FOR SANCTIONS  
Case No. 2:23-cv-0932-JHC

Federal Trade Commission  
600 Pennsylvania Avenue N.W.  
Washington, DC 20580  
(202) 326-3320

7

1  summary judgment motions, four months before trial.  Despite Amazon's claims that the

2  "significant volume of additional documents" was "no surprise," Dkt. 302 at 2, the FTC was very

3  surprised to receive 69,909 documents in the span of two months at the tail end of discovery and

4  even more surprised to discover that 91.17% of Amazon's privilege log was plainly wrong.[6]

5       As a last ditch effort, Amazon argues that this Court's recent rulings "clarif[ied] its view

6  on privilege in mixed legal and business communications."  Dkt. 302 at 3-4.  But the Court did

7  not suddenly manufacture new privilege jurisprudence in *Garner v. Amazon*, 2:21-cv-00750-

8  RSL, 2024 WL 4266665 (W.D. Wash. Sept. 23, 2024) and *De Coster v. Amazon*,[7] No. 20-cv-

9  00424-JHC (Dkt. 256) (W.D. Wash. Feb. 3, 2025) (Chun, J.).  It simply compelled Amazon to

10  comply with *existing* privilege obligations. Additionally, as the documents cited above and in the

11  Motion illustrate, these 69,909 documents often did not involve close calls on whether "a

12  primary purpose" of the documents, as opposed to "the primary purpose," was to obtain or

13  provide legal advice—they were plainly not privileged.  Tellingly, Amazon does not identify a

14  single "close call" it supposedly made.

15       Furthermore, even if the Court were to accept Amazon's argument, the Court issued its

16  *Garner* ruling on September 23, 2024—six months before Amazon's re-review. Simply put,

17  accepting Amazon's position and allowing a party to plead *nolo contendere* after getting caught

18  conducting a bad faith privilege review creates the wrong incentives.

---

[6] Amazon implies that it withheld 70,000 documents "to avoid inadvertently producing privileged documents." Amazon does not provide any further information. As stated previously, Amazon has clawed back a small number of documents in this matter, suggesting the purported danger of inadvertent production is low.  *See* Dkt. 288 ¶26.

[7] The FTC referred to this matter as *Frame-Wilson v. Amazon* in its Motion.  Dkt. 286 at 2.

PLAINTIFF'S REPLY ISO MOTION  
FOR SANCTIONS  
Case No. 2:23-cv-0932-JHC  
8  
Federal Trade Commission  
600 Pennsylvania Avenue N.W.  
Washington, DC 20580  
(202) 326-3320

1  **LOCAL RULE 7(e) CERTIFICATION**

2  I certify that this memorandum contains 2,097 words, in compliance with the Local Civil

3  Rules.

4

5  Dated: May 28, 2025  /s/ Olivia Jerjian
JONATHAN COHEN (DC Bar # 483454)
EVAN MENDELSON (DC Bar #996765)
6  OLIVIA JERJIAN (DC Bar #1034299)
JONATHAN WARE (DC Bar #989414)
7  ANTHONY SAUNDERS (NJ Bar #008032001)
SANA CHAUDHRY (NY Bar #5284807)
8
Federal Trade Commission
9  600 Pennsylvania Avenue NW
Washington DC 20580
10
(202) 326-2551 (Cohen); -3320 (Mendelson); -2726
11  (Ware); -2749 (Jerjian); -2917 (Saunders); -2679
(Chaudhry)
12
JCohen2@ftc.gov; EMendelson@ftc.gov;
13  JWare1@ftc.gov; OJerjian@ftc.gov;
ASaunders@ftc.gov; SChaudhry@ftc.gov
14
COLIN D. A. MACDONALD (WSBA # 55243)
15  Federal Trade Commission
915 Second Ave., Suite 2896
16  Seattle, WA 98174
(206) 220-4474; CMacdonald@ftc.gov
17
RACHEL F. SIFUENTES
18  (IL Bar #6304016; CA Bar #324403)
Federal Trade Commission
19  230 S. Dearborn St., Room 3030
Chicago, IL 60604
20  (312) 960-5617; RSifuentes@ftc.gov

21  JEFFREY TANG (CA Bar #308007)
Federal Trade Commission
22  10990 Wilshire Boulevard, Suite 400
Los Angeles, CA 90024

23

PLAINTIFF'S REPLY ISO MOTION                           Federal Trade Commission
FOR SANCTIONS                                          600 Pennsylvania Avenue N.W.
Case No. 2:23-cv-0932-JHC                              Washington, DC 20580
                          9                            (202) 326-3320

1  
2  
3  
4  
5  
6  
7  
8  
9  
10  
11  
12  
13  
14  
15  
16  
17  
18  
19  
20  
21  
22  
23  

(310) 824-4303; JTang@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

PLAINTIFF'S REPLY ISO MOTION
FOR SANCTIONS
Case No. 2:23-cv-0932-JHC

10

Federal Trade Commission
600 Pennsylvania Avenue N.W.
Washington, DC 20580
(202) 326-3320