The Honorable John H. Chun

1

2

3

4

5

6

7          UNITED STATES DISTRICT COURT
         WESTERN DISTRICT OF WASHINGTON
8                  AT SEATTLE

9   FEDERAL TRADE COMMISSION,                    No. 2:23-cv-0932-JHC

10                          Plaintiff,           DEFENDANTS' OPPOSITION TO
                                                 FTC'S MOTION TO EXCLUDE
11           v.                                  EXPERT TESTIMONY OF DR.
                                                 DONNA L. HOFFMAN, PH.D.
12   AMAZON.COM, INC., *et al.*,
                                                 NOTED ON MOTION CALENDAR:
13                          Defendants.          JUNE 24, 2025

14                                               ORAL ARGUMENT REQUESTED

15

16

17

18

19

20

21

22

23

24

25

26

27

DEFS.' OPP. TO FTC'S MOT. TO EXCLUDE
EXPERT TESTIMONY OF DR. HOFFMAN, PH.D.
(2:23-cv-0932-JHC)

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................................... 1

II.   BACKGROUND ........................................................................................... 3

III.  LEGAL STANDARD ................................................................................... 4

IV.   ARGUMENT ................................................................................................ 5

      A.    Hoffman's Analysis of the Prime Enrollment and Cancellation Processes
            Is Relevant and Reliable ................................................................... 5

            1.    Hoffman's Analysis Directly Addresses the FTC's Allegations .............. 5

            2.    Hoffman's Methodology Was Detailed in Her Report and at Her
                  Deposition ............................................................................. 6

      B.    Hoffman's Comparative Analysis Is Relevant and Reliable ................................ 8

            1.    Hoffman's Comparative Analysis Can Assist the Factfinder .................. 8

            2.    Hoffman's Comparative Analysis Methodology Is Properly Based
                  on Relevant Knowledge and Experience ................................... 9

V.    CONCLUSION ........................................................................................... 12

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

## I.     INTRODUCTION

Dr. Donna L. Hoffman is a Full Professor of Marketing at The George Washington University School of Business, with advanced degrees in psychometrics and marketing. She has authored over 89 papers, many of which have been published in leading academic journals, and spent more than two decades researching the online consumer experience. Her research has been cited over 40,000 times, and her marketing research articles are regularly among the most-cited in the discipline. With over 40 years of experience as an academic and researcher, Dr. Hoffman is one of the foremost experts in online consumer behavior and internet marketing strategy. Given Dr. Hoffman's sterling credentials and obvious expertise, the FTC cannot challenge her qualifications. Instead, the FTC attempts to exclude her opinions based on relevance and methodology. But neither challenge is sufficient to exclude any of Dr. Hoffman's opinions.

*First*, Dr. Hoffman's opinions—that many of the alleged at-issue design elements are established marketing techniques and are likely familiar to many consumers due to their ubiquity on the Internet—are squarely relevant in a case where one of the FTC's leading allegations is that "Amazon used manipulative, coercive, or deceptive user-interface designs known as 'dark patterns' to trick consumers ...." Dkt. 69 ¶ 2. Dr. Hoffman's opinions will assist a factfinder in determining whether Prime's enrollment and cancellation processes are deceptive to a reasonable consumer—the issue at the heart of this case. The FTC argues that Dr. Hoffman's opinions are irrelevant because they do not offer a "direct opinion" on "Amazon's practices alone." Dkt. 321 (Mot.) at 7, 12. Such an argument mischaracterizes Dr. Hoffman's testimony and overstates the bar for relevancy. Dr. Hoffman's opinions are entirely about Amazon's practices—she opines only on design elements of which the FTC has made an issue—and comparing them to other practices in the marketplace is the sort of context-setting testimony that is common for experts. *See, e.g.*, *Guild Mortg. Co. LLC v. CrossCountry Mortg. LLC*, 2022 WL 2801085, *1 (W.D. Wash. July 18, 2022) ("Expert testimony is a well-accepted way to establish industry standards.").

DEFS.' OPP. TO FTC'S MOT. TO EXCLUDE
EXPERT TESTIMONY OF DR. HOFFMAN, PH.D.
(2:23-cv-0932-JHC) – 1

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Second*, Dr. Hoffman provided a clearly delineated methodology for her opinions. To argue otherwise, the FTC relies on out-of-context quotations and the fact that Dr. Hoffman did not have a separate section titled "methodology" for one opinion because the methodology was described as part of the opinion. But when it comes to "non-scientific testimony," the "*Daubert* factors (peer review, publication, potential error rate, etc.) simply do not apply to this kind of testimony, whose reliability depends heavily on the *knowledge and experience* of the expert, rather than the methodology or theory behind it." *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) (emphasis in original) (internal citations and quotations omitted). That said, Dr. Hoffman explained her methodology for her challenged opinions. For her analysis of the Prime enrollment and cancellation processes, Dr. Hoffman evaluated the FTC's alleged "dark patterns" and, using citations to marketing constructs and principles, explained why the "dark patterns" were vague and ill-defined and why many of the at-issue design elements are consistent with legitimate marketing practices. For her comparative analysis, Dr. Hoffman used an objective survey as a starting point to determine the most popular paid digital membership/subscription programs. Then, she crafted a set of instructions describing the at-issue design elements in this case, which independent coders used to determine how many of those elements were present on each of the programs' websites. This methodology is reliable and replicable. Any argument otherwise goes to weight, not admissibility.

Even if Dr. Hoffman's only methodology was to apply her experience to the facts in the case, that would be sufficient. Experience-based expert testimony is admissible as long as "the knowledge underlying [the expert testimony] has a reliable basis in the knowledge and experience of the relevant discipline." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (internal quotation marks omitted). Dr. Hoffman's opinions are based on her knowledge and experience in marketing and online consumer behavior, as well as academic literature and marketing research.

DEFS.' OPP. TO FTC'S MOT. TO EXCLUDE
EXPERT TESTIMONY OF DR. HOFFMAN, PH.D.
(2:23-cv-0932-JHC) – 2

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

The FTC's motion to exclude Dr. Hoffman amounts to disagreements with her opinions. But a review of Dr. Hoffman's report and deposition testimony reveals that her opinions are relevant and reliable. Accordingly, the FTC's motion should be denied.

## II.    BACKGROUND

Dr. Hoffman holds a Ph.D. and an M.A. in Quantitative Psychology with a formal minor in Marketing. Dkt. 318-43 ¶ 2; App. A. Her primary research focus over the past two decades has been on the online consumer experience, which includes "[o]nline consumer behavior, internet marketing, internet marketing advertising, internet marketing strategy, online advertising, marketing communications, social media, [and] digital marketing strategy." Dkt. 320-32 at 27:5-9; Dkt. 318-43 ¶ 3. Dr. Hoffman has been retained as an expert in at least 16 cases involving marketing or online consumer behavior. Dkt. 318-43 App. A at 49.

Here, Dr. Hoffman submitted a 238-page affirmative report addressing the FTC's allegations that Amazon, as part of its enrollment and cancellation processes, employs "dark patterns" to manipulate consumers. Dkt. 318-43 ¶¶ 26-30. Of relevance to the FTC's motion, she opined that (1) the FTC's "dark patterns" are ill-defined and many of the allegedly problematic design elements are legitimate marketing techniques and (2) consumers are likely to be familiar with those same design elements due to their ubiquity on the internet, which influences their interactions on Amazon.

In forming these opinions, Dr. Hoffman relies on her 40 years of experience as a marketing professor and online consumer behavior expert, as well as marketing research and academic literature. Dkt. 320-32 at 153:6-12, 203:4-11. For her analysis of the Prime enrollment and cancellation processes, she began with the FTC's own allegations, then compared the purported dark patterns against various established marketing principles and constructs to provide an opinion about how the at-issue practices may align with consumer expectations. Dkt. 318-43 ¶ 28. For her comparative analysis, she examined the desktop enrollment and cancellation processes of 48 popular paid digital membership/subscription programs to determine whether the UI design elements at issue in this case were present. *Id.* ¶ 29. To conduct this

DEFS.' OPP. TO FTC'S MOT. TO EXCLUDE
EXPERT TESTIMONY OF DR. HOFFMAN, PH.D.
(2:23-cv-0932-JHC) – 3

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

examination, she compiled a list of the popular programs based on a survey and additional data from reliable sources, described the allegedly problematic design elements from the FTC's allegations, and then employed trained, independent coders to look for the presence or absence of these design elements in each of the popular programs' enrollment and cancellation flows. *Id.* App. D.

In addition to the challenged opinions, Dr. Hoffman also opines that (1) the FTC's allegations fail to consider consumers' goals, past experiences, and expectations; (2) so-called "dark patterns" are defined inconsistently and lack scholarly consensus; and (3) Amazon's clarity initiatives in 2018 and 2020 had methodological limitations that limited Amazon's ability to draw clean conclusions from the data. *Id.* ¶¶ 26-30. While the FTC writes that it is moving to "exclude Hoffman's expert report," Mot. at 3, it makes no reference as to these other opinions.

### III.    LEGAL STANDARD

If expert testimony is both relevant and reliable, it is admissible. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). "Rule 702 should be applied with a 'liberal thrust' favoring admission." *Nat'l Prods. Inc. v. Innovative Intelligent Prods. LLC*, 2024 WL 3582366, *2 (W.D. Wash. July 30, 2024) (internal quotations and citations omitted). A trial court's "gatekeeping function is meant to 'screen the jury from unreliable nonsense opinions, but not to exclude opinions merely because they are impeachable.'" *In re Roundup Prods. Liab. Litig.*, 390 F. Supp. 3d 1102, 1113 (N.D. Cal. 2018) (quoting *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013)).

Expert testimony is relevant if it will "help the trier of fact to understand the evidence or determine a fact in issue." Fed. R. Evid. 702.

Expert testimony "is reliable if the knowledge underlying it 'has a reliable basis in the knowledge and experience of [the relevant] discipline.'" *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006) (alteration in original) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999)). To determine reliability, "the court must assess the reasoning or methodology, using as appropriate such criteria as testability, publication in peer

DEFS.' OPP. TO FTC'S MOT. TO EXCLUDE
EXPERT TESTIMONY OF DR. HOFFMAN, PH.D.
(2:23-cv-0932-JHC) – 4

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

reviewed literature, and general acceptance." *Primiano*, 598 F.3d at 564. This inquiry, however, is a "flexible one" and the "factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of [their] testimony." *White v. Ford Motor Co.*, 312 F.3d 998, 1007 (9th Cir. 2002), *opinion amended on denial of reh'g*, 335 F.3d 833 (9th Cir. 2003) (cleaned up). Indeed, "some expert testimony is properly based on relevant knowledge and experience of a type that cannot be tested." *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 554 (C.D. Cal. 2014) (citing *Speicher v. Union Pac. R.R.*, 2009 WL 250026, *3 (W.D. Wash. Feb. 2, 2009)).

Even if expert testimony is "shaky," so long as it is "admissible[, it] is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano*, 598 F.3d at 564.

## IV.    ARGUMENT

### A.    Hoffman's Analysis of the Prime Enrollment and Cancellation Processes Is Relevant and Reliable

#### 1.    Hoffman's Analysis Directly Addresses the FTC's Allegations

Dr. Hoffman's first challenged opinion is that the design elements the FTC characterizes as "dark patterns" are actually consistent with legitimate marketing practices and consumer expectations. Dkt. 318-43 ¶ 28. The FTC argues such an opinion would not help the factfinder determine "whether Amazon failed to (1) clearly and conspicuously disclose Prime's material terms, (2) obtain informed consent from Prime subscribers, and (3) provide simple mechanisms to cancel Prime." Mot. at 7. This characterization oversimplifies the FTC's case, which alleges Amazon engaged in deceptive practices, using specific dark patterns identified in paragraph 231 (describing "forced action," "interface interference," "obstruction ('roach motel')," "misdirection," sneaking," and "confirm shaming"). Having placed specific dark patterns at issue, the FTC cannot now complain that Dr. Hoffman addresses them.

"The relevancy bar [for expert testimony] is low, demanding only that the evidence logically advances a material aspect of the proposing party's case." *Fair v. King Cnty.*, 2025 WL

1031274, *3 (W.D. Wash. Apr. 7, 2025) (alteration in original) (cleaned up). Dr. Hoffman's

testimony that many of the at-issue design elements are consistent with legitimate marketing

practices and consumer expectations would assist the trier of fact in understanding whether

Amazon's enrollment and cancellation practices are "dark patterns" that would deceive or

manipulate a reasonable consumer. Indeed, courts recognize that opinions on "common

marketing practices" and consumer perception are the kinds of evidence that could assist a

factfinder in this type of inquiry. *See Morales v. Kraft Foods Grp., Inc.*, 2016 WL 11743532,

*13 (C.D. Cal. Dec. 2, 2016) ("'Industry standard' or 'common industry marketing' has been

accepted as some evidence that a particular phrase or label is not misleading."); *Zeiger v.*

*WellPet LLC*, 526 F. Supp. 3d 652, 683 (N.D. Cal. 2021) (noting that a "jury may agree or

disagree about what a reasonable consumer would believe, but the advertising expert's opinions

are relevant and helpful").

## 2. Hoffman's Methodology Was Detailed in Her Report and at Her Deposition

The FTC next argues that Hoffman's methodology for her analysis of the Prime

enrollment and cancellation processes is "non-existent." Mot. at 8. The hook for the FTC's

argument is that Dr. Hoffman did not have a section specifically titled "methodology" for this

opinion. But the FTC's argument mischaracterizes Dr. Hoffman's testimony and ignores the text

of Dr. Hoffman's report, both of which detail her methodology. Dr. Hoffman repeatedly testified

that, in conducting her analysis of the relevant processes, she "reviewed the … extant research

on online consumer behavior, both theoretical and empirical[,]" then "reviewed the work in

marketing, and then [she] applied that knowledge to the particular stimuli that [she] was

evaluating." Dkt. 320-32 at 106:12-24; *see also id.* at 104:7-19. This methodology is also laid out

in her report. Dr. Hoffman methodically lists out the FTC's allegations and explains—with

citations to marketing research and academic literature—why the allegations are vague and why

many of the alleged "dark patterns" are consistent with legitimate marketing practices and

consumer expectations. Dr. Hoffman never testified that she "cannot point" to a methodology for

DEFS.' OPP. TO FTC'S MOT. TO EXCLUDE
EXPERT TESTIMONY OF DR. HOFFMAN, PH.D.
(2:23-cv-0932-JHC) – 6

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

her analysis. Mot. at 8. Rather, she plainly stated that "[she was] applying concepts and constructs from [her] discipline," which she has spent her career researching and analyzing, before applying those principles and constructs to "evaluate the flows." Dkt. 320-32 at 71:3-5.

Dr. Hoffman did what the Federal Rules permit an expert to do: she detailed how her "experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. Civ. R. P. 702 Committee Notes on Rules—2000 Amendment. As courts have explained, when it comes to "non-scientific" testimony, the reliability assessment of the "*Daubert* factors (peer review, publication, potential error rate, etc.) simply [is] not applicable to this kind of testimony, whose reliability depends heavily on the *knowledge and experience* of the expert, rather than the methodology or theory behind it." *Hangarter*, 373 F.3d at 1017 (emphasis in original). The FTC repeatedly references "methodology" deficiencies but makes no effort to engage with Dr. Hoffman's analysis. Courts have repeatedly endorsed marketing experts who, like Dr. Hoffman, rely on experience and academic literature. *See, e.g.*, *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 580 (N.D. Cal. 2020) (rejecting challenge to methodology in part because the marketing expert properly based his opinions on "many years of marketing experience and his review of [defendant's] own internal consumer research and other documents" (internal citations omitted)); *Smith v. Pfizer Inc.*, 714 F. Supp. 2d 845, 856 (M.D. Tenn. 2010) (rejecting challenge to methodology where expert "relie[d] on and frequently cite[d] scholarly articles and studies" and "employ[ed] this understanding" to form opinion); *Counts v. Gen. Motors*, LLC, 606 F. Supp. 3d 547, 589 (E.D. Mich. 2022) (holding expert report reliable where the report "cite[d] peer-reviewed literature, industry research, his education, and over 20 years of experience and expertise in the field of marketing—all of which other experts in marketing would rely on when rendering such opinions").

As an example, the FTC alleges that Amazon "knowingly complicated the cancellation process for Prime subscribers who sought to end their membership." Dkt. 69 ¶ 7. Dr. Hoffman takes this allegation and explains how the multiple screens in the Prime cancellation flow are

DEFS.' OPP. TO FTC'S MOT. TO EXCLUDE
EXPERT TESTIMONY OF DR. HOFFMAN, PH.D.
(2:23-cv-0932-JHC) – 7

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

consistent with legitimate marketing practices. Referencing a peer-reviewed, refereed journal article, she points out that the "practice of offering incentives to consumers, or similarly reminding consumers of the benefits of a company's service, is a standard marketing practice as doing so helps companies retain consumers." Dkt. 318-43 ¶ 189. Then, using a textbook on marketing management, she explains the steps of the consumer decision process and how additional information may affect a consumer's decision-making during the cancellation process. *Id.* ¶ 191. And finally, citing cognitive psychology literature, she describes how Prime's cancellation process follows progressive disclosure principles designed to "help users navigate complex user-interfaces." *Id.* ¶ 200.

Dr. Hoffman undertook this mode of analysis for each of the FTC's "dark pattern" allegations. In sum, Dr. Hoffman "used h[er] experience as a [marketing and consumer psychology professor] to opine on topics relating to that very subject area. [Sh]e arrive[d] at h[er] conclusions with this experience in hand and after reviewing the available facts." *Fed. Trade Comm'n v. Qualcomm Inc.*, 2018 WL 6460573, *4 (N.D. Cal. Dec. 10, 2018). Her expert opinions are "sufficiently reliable to be admissible even though they may not be founded in scientific data." *Id.* Any "challenges to [Hoffman]'s methodology and failure to consider specific issues go to weight, not admissibility." *Krommenhock*, 334 F.R.D. at 580.

### B. Hoffman's Comparative Analysis Is Relevant and Reliable

#### 1. Hoffman's Comparative Analysis Can Assist the Factfinder

The FTC characterizes Dr. Hoffman's comparative analysis as "irrelevant because [it is] not focused on Prime and therefore cannot assist the factfinder." Mot. at 12. Again, the FTC has defined relevance too narrowly. Dr. Hoffman's comparative analysis does not need to focus solely on Prime; if her opinion "logically advances a material aspect of the proposing party's case," it is relevant. *Fair*, 2025 WL 1031274, *3.

Dr. Hoffman's comparative analysis focuses exclusively on the design elements that the FTC has placed at issue and addresses the claim that Amazon's alleged "dark patterns … trick consumers." Dkt. 69 ¶¶ 2, 8, 231. As this Court has noted, these allegations are evaluated under a

DEFS.' OPP. TO FTC'S MOT. TO EXCLUDE
EXPERT TESTIMONY OF DR. HOFFMAN, PH.D.
(2:23-cv-0932-JHC) – 8

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

"reasonable consumer" standard, which assesses whether a consumer acting reasonably under the circumstances would be "trick[ed]" by Prime's design elements. Dkt. 165 at 17-18; Dkt 69 ¶ 8. Dr. Hoffman's comparative analysis establishes that "if a design element appears in a majority of websites, and to the extent that design element appears in almost all of the websites, then that is something consumers are likely to be familiar with," which could "have an impact on their understanding and awareness as they navigate[] through the Amazon flow." Dkt. 320-32 at 280:9-16, 212:1-3. Put differently, this analysis would assist a factfinder in determining which at-issue design elements a reasonable consumer may interact with on a consistent basis and whether a reasonable consumer would be manipulated, coerced, or deceived by design elements they are likely familiar with.

The FTC claims that Dr. Hoffman's comparative analysis is a "fallacious line of thinking akin to a driver who defends running a red light by saying 'others also run red lights.'" Mot. at 12. Not so. The FTC is alleging that Amazon Prime's enrollment and cancellation processes employ "dark patterns" that are confusing to consumers. Dr. Hoffman's comparative analysis demonstrates that, due to their prevalence on the Internet, these allegedly "confusing" elements are likely familiar to most consumers. In the realm of traffic lights, a more analogous situation would be counting how many foreign countries use red lights as a stop signal in response to a claim that red lights are confusing to non-Americans. In short, expert testimony that opines on how often a consumer might encounter the at-issue design elements on other websites would plainly assist the factfinder in determining whether those elements, when placed in the Amazon flows, would mislead a reasonable consumer—a material issue here. *See* Fed. R. Evid. 702 (expert testimony is relevant if it will "help the trier of fact to understand the evidence or to determine a fact in issue").

### 2. Hoffman's Comparative Analysis Methodology Is Properly Based on Relevant Knowledge and Experience

Dr. Hoffman included her comparative analysis methodology in her report, attached an appendix that described it in further detail, and testified about it at her deposition. Dkt. 318-43

DEFS.' OPP. TO FTC'S MOT. TO EXCLUDE
EXPERT TESTIMONY OF DR. HOFFMAN, PH.D.
(2:23-cv-0932-JHC) – 9

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

¶¶ 271-74; *Id.* App. D; Dkt. 320-32 at 151:9-152:10. As she explained, Dr. Hoffman first

identified the most popular paid digital membership/subscription programs and the most-visited

government websites, which she validated with subscriber data, market share, and monthly visit

data. Dkt. 318-43 ¶¶ 271, 309. She then crafted instructions that described the at-issue design

elements in plain language. *Id.* App. D ¶ 31. Using those instructions, two trained, independent

coders reviewed screenshots of the subscription programs and the government websites to assess

how often the at-issue design elements appeared. *Id.* App. D. ¶¶ 19-23. Finally, using well-

established statistical methods, Dr. Hoffman quantitatively evaluated the extent to which the

coders agreed in their assessments. *Id.* Courts have found this type of content analysis reliable.

*See, e.g.*, *Counts*, 606 F. Supp. 3d at 574 (rejecting reliability challenge in part because "the

coding technique that [expert] implemented for his content analysis, using three third-party

coders that independently reviewed and coded the ads, minimized the possibility of subjectivity

creeping into the analysis"). And as Dr. Hoffman testified, while "develop[ing] a methodology

for training multiple coders" and presenting the results of her comparative analysis, she followed

"commonly established and accepted approaches for this particular comparative analysis" and

that "someone else [could] reproduce [the] results if they were interested." Dkt. 320-32 at

151:13-152:10, 155:18-156:4.

Still, the FTC criticizes Dr. Hoffman for employing an "unreliable" methodology. Mot. at

12. The FTC's various arguments all fall short of the mark.

*First*, the FTC argues that Hoffman "creat[ing] her methodology for this specific matter"

poses an issue. But the case the FTC cites does not stand for that proposition. The proper inquiry

is "whether the experts are proposing to testify about matters growing naturally and directly out

of research they have conducted independent of the litigation, or whether they have developed

their opinions expressly for purposes of testifying." *Daubert v. Merrell Dow Pharms., Inc.*, 43

F.3d 1311, 1317 (9th Cir. 1995). As discussed above, Dr. Hoffman relies on marketing research,

academic literature, and her extensive experience as the basis for her opinions. *See, e.g.*, Dkt.

320-32 at 151:9-155:13. And the FTC's truncated quotations have no bearing here. As Dr.

DEFS.' OPP. TO FTC'S MOT. TO EXCLUDE
EXPERT TESTIMONY OF DR. HOFFMAN, PH.D.
(2:23-cv-0932-JHC) – 10

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Hoffman explains—in full—"different people are going to do different things, but people who are trained similarly, I am confident, would produce something that look[s] similar." *Id.* at 155:18-22.

*Second*, the FTC faults Dr. Hoffman for describing the visual elements of the Prime flows. In particular, the FTC fixates on Dr. Hoffman's use of "operationalize." But the word being unfamiliar does not render the process unreliable. As with her prior analysis, Dr. Hoffman reviewed the FTC's allegations, "strip[ped] away the subjective elements," and described what was left. *Id.* at 198:9-24. The FTC asserts that this description is insufficient but does not support that contention. Even if Dr. Hoffman had imposed some of her personal assessment on the analysis, "content analysis has a subjective element to it because it is a qualitative methodology[,] . . . [b]ut that does not undermine the admissibility of h[er] expert testimony." *Counts*, 606 F. Supp. 3d at 574. Any further arguments over which words should be considered "subjective" or "objective" go to weight, and not admissibility.

The same applies to the FTC's argument that Dr. Hoffman did not analyze every allegation. Any "failure to consider specific issues go to weight, not admissibility." *Krommenhock*, 334 F.R.D. at 580.

The FTC next criticizes Dr. Hoffman for consulting a survey conducted by Forbes Advisor that identified the most subscribed categories of paid digital membership/subscription programs. But Dr. Hoffman testified that "[t]he only purpose of … relying on that Forbes Advisor survey was to generate the list of categories," such as "streaming, delivery, music, cloud storage, gaming, and so on." Dkt. 320-32 at 161:2-25. As detailed in her report, she also "relied on quantitative data" to identify the list of programs she would be evaluating.[1] *Id.* at 161:22; Dkt. 318-43 ¶ 271. Even if Dr. Hoffman *had* relied solely on the Forbes Advisor survey, such reliance would not be problematic. *Cf. In re ConAgra Foods, Inc.*, 302 F.R.D. at 555 ("So long as the

---

[1] The FTC also criticizes Dr. Hoffman's choice to "review [categories] subscribed to by 'at least 10% of survey respondents,'" i.e., ~100 respondents. Mot at 5. The FTC claims that this choice "is notable given that Hoffman eliminated categories based on this 10 percent threshold she arbitrarily selected." *Id.* at 16. Once more, any alleged "failure to consider specific issues go to weight, not admissibility." *Krommenhock*, 334 F.R.D. at 580.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1  surveys are relevant and reliable, [expert] need not be an expert in survey methodology to

2  incorporate the results of surveys into his work.").

3      *Third*, Hoffman's comparative analysis establishes her conclusion that the prevalence of

4  "at-issue UI design elements" makes consumers likely familiar with the at-issue design elements

5  in the Prime enrollment and cancellation processes. To support this opinion, she reviewed 48

6  paid digital membership/subscription programs and 30 U.S. government websites to determine

7  the prevalence of the at-issue design elements. Those findings were then laid out in Exhibits 54,

8  55, 74, and 88 of Dr. Hoffman's Opening Report. *See* Dkt. 318-43. The FTC's assertion that Dr.

9  Hoffman "provide[d] no support" for her opinion is contradicted by her report and testimony.

10  Mot. at 16.

11      Moreover, the FTC mischaracterizes the comparative analysis. As she stated at her

12  deposition, Dr. Hoffman "did not study specifically that issue of whether familiarity on one

13  specific site or interaction on one site would transfer specifically to an interaction on a particular

14  page." Dkt. 320-32 at 267:10-19. Instead, her opinion was that "to the extent that these features

15  and these elements are common on these other websites, consumers will learn about these

16  elements, become familiar with them, and will likely not only be familiar, but that could likely

17  …impact their … understanding and their interaction behavior." *Id.* at 268:4-11. The FTC's

18  criticisms do not expose an "analytical gap," Mot. at 16; they paraphrase what Dr. Hoffman has

19  already explained.

20      In sum, the FTC's arguments are disagreements with Dr. Hoffman's conclusions, to be

21  addressed "by cross examination, contrary evidence, and attention to the burden of proof, not

22  exclusion." *Primiano*, 598 F.3d at 564.

23                    **V.    CONCLUSION**

24      For the above reasons, this Court should deny the FTC's motion to exclude.

25

26      DATED this 17th day of June, 2025.

27

DEFS.' OPP. TO FTC'S MOT. TO EXCLUDE
EXPERT TESTIMONY OF DR. HOFFMAN, PH.D.
(2:23-cv-0932-JHC) – 12

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    I certify that this memorandum contains 4,181 words, in compliance with the Local Civil

2  Rules.

3
                                   DAVIS WRIGHT TREMAINE LLP

4
                                   By s/ *Kenneth E. Payson*

5
                                     Kenneth E. Payson, WSBA #26369
                                     James Howard, WSBA #37259

6
                                     920 Fifth Avenue, Suite 3300
                                     Seattle, WA  98104-1610

7
                                     Telephone: (206) 622-3150
                                     Fax: (206) 757-7700

8
                                     E-mail: kenpayson@dwt.com
                                            jimhoward@dwt.com

9
                                   COVINGTON & BURLING LLP

10

11
                                   Stephen P. Anthony*
                                   Laura Flahive Wu*

12
                                   Laura M. Kim*
                                   John D. Graubert*

13
                                   850 Tenth Street, NW
                                   Washington, DC  20001

14
                                   Telephone: (206) 662-5105
                                   E-mail: santhony@cov.com

15
                                            lflahivewu@cov.com
                                          lkim@cov.com

16
                                            jgraubert@cov.com

17
                                   John E. Hall*
                                   415 Mission Street, Suite 5400

18
                                   San Francisco, CA  94105
                                   Telephone: (415) 591-6855

19
                                   E-mail: jhall@cov.com

20
                                   Megan L. Rodgers*
                                   3000 El Camino Real

21
                                   Palo Alto, CA  94306
                                   Telephone: (650) 632-4734

22
                                   E-mail: mrodgers@cov.com

23
                                   Anders Linderot*
                                   620 Eighth Avenue

24
                                   New York, NY 10018
                                   Telephone: (212) 841-1000

25
                                   Email: alinderot@cov.com

26

27

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

HUESTON HENNIGAN LLP

John C. Hueston*
Moez M. Kaba*
Joseph A. Reiter*
523 West 6th Street, Suite 400
Los Angeles, CA  90014
Telephone: (213) 788-4340
E-mail: jhueston@hueston.com
           mkaba@hueston.com
           jreiter@hueston.com


*admitted pro hac vice

Attorneys for Defendants AMAZON.COM, INC.,
NEIL LINDSAY, RUSSELL GRANDINETTI,
AND JAMIL GHANI

DEFS.' OPP. TO FTC'S MOT. TO EXCLUDE
EXPERT TESTIMONY OF DR. HOFFMAN, PH.D.
(2:23-cv-0932-JHC) – 14

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax