The Honorable John H. Chun

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>AMAZON.COM, INC., *et al.*,<br><br>　　　　　　Defendants. | No. 2:23-cv-0932-JHC<br><br>DEFENDANTS' OPPOSITION TO FTC'S MOTION TO EXCLUDE EXPERT TESTIMONY OF RONALD T. WILCOX, PH.D<br><br>NOTED ON MOTION CALENDAR: JUNE 24, 2025<br><br>ORAL ARGUMENT REQUESTED |

DEFS.' OPP. TO MOT. TO EXCLUDE
DR. WILCOX'S EXPERT TESTIMONY
(2:23-cv-0932-JHC)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................................1

II. LEGAL STANDARD............................................................................................................1

III. ARGUMENT.........................................................................................................................2

    A. The Cancellation Survey Is Admissible................................................................2

        1. The FTC's Criticisms Go to Weight, Not Admissibility ..........................3

        2. The FTC's Criticisms Are Unsubstantiated and Meritless .......................5

    B. The Free Trials Survey Is Admissible .................................................................10

IV. CONCLUSION....................................................................................................................12

DEFS.' OPP. TO MOT. TO EXCLUDE
DR. WILCOX'S EXPERT TESTIMONY
(2:23-cv-0932-JHC) - i

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

## I. INTRODUCTION

Dr. Ronald Wilcox is a leading survey expert and Professor of Business Administration at the Darden Graduate School, University of Virginia. Drawing on his extensive experience, he designed and conducted two consumer surveys that respond to and undermine the FTC's key allegations. The FTC now seeks to exclude both surveys in violation of controlling law.

First, Dr. Wilcox surveyed whether Prime members could locate and complete Prime's online cancellation flow. This cancellation survey is relevant to the FTC's claim that Prime cancellation is not "simple," and the FTC does not contend otherwise. The FTC's sole argument is that Dr. Wilcox purportedly used an "unrepresentative" sample even though he surveyed actual Prime members in the United States—the very population at issue. The FTC's arguments are speculation and without merit; indeed, the FTC's own experts have used the same vendors, demographic criteria, and other techniques as Dr. Wilcox. But the Court need not address those issues now, because Ninth Circuit law is clear that challenges to the representativeness of a survey sample "are precisely the sorts of technical considerations that affect only the weight, and not the admissibility of a survey." *PixArt Imaging, Inc. v. Avago Tech. Gen. IP (Singapore) Pte. Ltd.*, 2011 WL 5417090, at *5 (N.D. Cal. Oct. 27, 2011).

Second, Dr. Wilcox surveyed consumers' experiences with free trials that convert into paid memberships or subscriptions. The FTC argues that this survey is irrelevant. But it directly responds to the FTC's allegations and arguments, including those in its complaint, its motion for summary judgment, and its expert reports, that consumers are unaware of and do not understand Prime's auto-renewal feature. Contrary to those allegations, the free trials survey demonstrates that consumers have substantial experience with free trials similar to Prime and understand that the free trials automatically convert to paid memberships or subscriptions unless cancelled.

Because both of Dr. Wilcox's surveys are admissible, the FTC's Motion should be denied.

## II. LEGAL STANDARD

"Rule 702 should be applied with a 'liberal thrust' favoring admission." *Nat'l Prods. Inc. v. Innovative Intelligent Prods. LLC*, 2024 WL 3582366, at *2 (W.D. Wash. July 30, 2024)

DEFS.' OPP. TO MOT. TO EXCLUDE
DR. WILCOX'S EXPERT TESTIMONY
(2:23-cv-0932-JHC) - 1

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

(citation omitted). This policy favoring admission is particularly strong with respect to surveys. The Ninth Circuit has "long held that survey evidence should be admitted as long as it is conducted according to accepted principles and is relevant." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1036 (9th Cir. 2010) (cleaned up). All other issues, including the representativeness of a survey sample, the survey's methodology, and the reliability of its conclusions, "go to the weight of the survey rather than its admissibility." *Id.* (citation omitted).

### III.     ARGUMENT

#### A.     The Cancellation Survey Is Admissible

The FTC contends that "Amazon [] failed to provide simple mechanisms for cancelling Prime memberships." Dkt. 309 ("Mot.") at 3. To evaluate that assertion, Dr. Wilcox presented actual Prime members with a simulated portion of the Amazon.com website to measure whether they could locate and complete Prime's online cancellation flow using a computer. Dkt. 320-34 ¶¶ 19, 23. The results refute the FTC's assertions: 99.8% of the 530 survey respondents located the cancellation flow starting from the Prime Central webpage, and 96.4% paused or ended their Prime membership. *Id.* ¶¶ 15, 47. The respondents completed these tasks quickly, taking 47 seconds on average to locate the cancellation flow and, once inside the flow, taking 28 seconds on average to pause or end their memberships. *Id.* ¶¶ 15, 48-49.

The FTC does not dispute that Dr. Wilcox's Cancellation Survey is relevant. The FTC argues only that the sample of Prime members who participated is somehow not representative of the Prime population. Mot. at 12. That argument fails. First, challenges to the representativeness of a survey sample "goes to weight, as opposed to admissibility." *Microsoft Corp. v. Motorola, Inc.*, 904 F. Supp. 2d 1109, 1120 (W.D. Wash. 2012). Second, even if the FTC's arguments did bear on admissibility, its criticisms lack merit. Dr. Wilcox surveyed actual U.S. Prime members—the very population at issue in the FTC's allegations—using common techniques for recruiting and screening.

DEFS.' OPP. TO MOT. TO EXCLUDE
DR. WILCOX'S EXPERT TESTIMONY
(2:23-cv-0932-JHC) - 2

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

### 1. The FTC's Criticisms Go to Weight, Not Admissibility

The FTC asserts that Dr. "Wilcox's survey population was unrepresentative in four main respects": (1) he allegedly recruited "tech-savvy" Prime members; (2) used screener questions to eliminate inattentive participants; (3) did not screen for whether participants had previously cancelled a Prime membership; and (4) did not account for certain demographic criteria. Mot. at 4-5. According to the FTC, this alleged "unrepresentative" sample requires excluding the survey from evidence altogether. *Id.* at 15. Settled law holds otherwise.

"[T]he Ninth Circuit has repeatedly cautioned district courts against excluding (rather than appropriately weighing) even seriously flawed survey evidence." *Simpson Strong-Tie Co. v. MiTek Inc.*, 2023 WL 137478, at *3 (N.D. Cal. Jan. 9, 2023). Accordingly, where, as here, a party challenges the representativeness of a survey sample, those arguments go only to weight and not admissibility. *Microsoft Corp.*, 904 F. Supp. 2d at 1120 ("[A]ny argument as to underinclusiveness of the survey goes to weight, as opposed to admissibility."); *PixArt Imaging, Inc.*, 2011 WL 5417090, at *5 (arguments that a survey did not address the correct universe and failed to use a sample of a representative population affected only the weight and not the admissibility of the survey); *Blue Bottle Coffee, LLC v. Liao*, 2023 WL 9502073, at *9 (N.D. Cal. Nov. 30, 2023) ("[C]ourts within the Ninth Circuit are reluctant to exclude survey evidence on the basis of an overinclusive or underinclusive target population.").

Courts routinely reject arguments similar to the FTC's. For example, the FTC argues that screening questions excluded inattentive participants. But objections to screening questions that "produced an under-inclusive survey universe because they improperly selected for only one segment of the potential purchasing public" do not impact admissibility. *Simpson*, 2023 WL 137478, at *3. The FTC argues that the survey sample does not match certain demographics, but objections that "the survey sample did not precisely match the age distribution" of population does not merit exclusion. *Express, LLC v. Forever 21, Inc.*, 2010 WL 3489308, at *8 (C.D. Cal. Sept. 2, 2010). The FTC also argues that Dr. Wilcox did not screen for respondents who had canceled a Prime membership previously, but the inclusion of participants familiar with a survey

DEFS.' OPP. TO MOT. TO EXCLUDE
DR. WILCOX'S EXPERT TESTIMONY
(2:23-cv-0932-JHC) - 3

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

topic likewise goes to weight only. *See Calista Enters. Ltd. v. Tenza Trading Ltd*., 43 F. Supp. 3d 1099, 1113 (D. Or. 2014).

Recognizing the relief it seeks is unavailable, the FTC attempts to reframe its argument that Dr. Wilcox used a nonrepresentative sample into an argument that he did not follow "generally accepted survey principles." Mot. at 15. But these challenges are distinct. Whether a survey followed generally accepted principles depends on the survey's adherence to accepted social science techniques, including those discussed in the *Reference Guide on Survey Research* and the *Manual for Complex Litigation*.[1] The FTC's challenge is different and goes to weight only. *See Tokidoki, LLC v. Fortune Dynamic, Inc.*, 2008 WL 11338772, at *2 (C.D. Cal. Sept. 29, 2008) (rejecting argument that "survey was not conducted according to accepted principles" because the alleged deficiencies regarding sample and screening "go to weight" only).

The FTC does not cite a case supporting its position. Two of its cases have nothing to do with survey samples. *See M2 Software, Inc. v. Madacy Ent.*, 421 F.3d 1073, 1087 (9th Cir. 2005) (excluding survey where expert was not qualified); *Brighton Collectibles v. RK Tex. Leather Mfg*., 923 F. Supp. 2d 1245, 1257 (S.D. Cal. 2013) (study improperly suggested the correct answer). And the only sample-related cases the FTC cites are inapposite. *Hurt v. Commerce Energy, Inc.,* 2015 WL 410703, at *5 (N.D. Ohio Jan. 29, 2015) is an out-of-circuit minimum wage case where a survey was excluded because, among other reasons, "[n]o pretesting of the survey questions or the layout of the survey was done," no proper sampling method was undertaken, and the sample entirely omitted class members who were a significant part of the case. *Id*. None of those criticisms apply here. In *Kournikova v. Gen. Media Communications Inc*., 278 F. Supp. 2d 1111, 1125 (C.D. Cal. 2003), the court disregarded a survey at summary

---

[1] Dr. Wilcox followed these techniques, which the FTC does not challenge. Dkt. 320-34 ¶ 17 n.24; *see also Skinner v. Tuscan, Inc*., 2020 WL 5946897, at *5 (D. Ariz. Oct. 7, 2020) (survey met "criteria for survey trustworthiness detailed in the Federal Judicial Center's Manual for Complex Litigation'); *AirWair Int'l Ltd. v. Pull & Bear Espana SA*, 2021 WL 2914082, at *7 (N.D. Cal. July 12, 2021) (same). He also used two reputable survey and market research companies—GBK and Dynata—to obtain his sample and conduct his survey. *Id*. ¶¶ 21, 46; *Diamond Resorts U.S. Collection Dev., LLC v. Pandora Mktg., LLC*, 2023 WL 9659943, at *5-6 (C.D. Cal. July 26, 2023) (survey "was conducted in accordance with accepted principles" where it was conducted through an online panel); *Lopez v. Meyers' G.M. Enters., Inc.*, 2023 WL 5928274, at *4 (W.D. Wis. Sept. 12, 2023) (same).

DEFS.' OPP. TO MOT. TO EXCLUDE
DR. WILCOX'S EXPERT TESTIMONY
(2:23-cv-0932-JHC) - 4

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

judgment for multiple reasons, including that it "did not sample the correct group" at all. *Id*. Here, in contrast, Dr. Wilcox sampled actual Prime members. While the FTC may contend (incorrectly) that Dr. Wilcox's sample is overinclusive, underinclusive, or not closely representative, those challenges go to weight only—not admissibility. The Court's analysis can end here.

### 2. The FTC's Criticisms Are Unsubstantiated and Meritless

Even if challenges to a survey's representativeness provided a basis for excluding the survey—which they do not—the FTC's arguments lack merit.

**Screening Questions**: Dr. Wilcox worked with GBK Collective, a reputable survey research firm, to recruit participants using an online panel provided by Dynata. Dkt. 320-34 ¶ 46. The FTC wrongly speculates that Dynata's panel somehow skewed the sample towards "tech-savvy" participants. It did not.

*First*, the FTC attaches a declaration by FTC investigator Adam Rottner, claiming that creating a Dynata profile requires answering pages of questions and using two-factor authentication to redeem rewards. Mot. at 5; Dkt. 311 ¶¶ 3-14. But critically, participating in a Dynata survey does **not** require these actions. *See* Wilcox Decl. ¶¶ 5-12. Rottner's declaration is irrelevant.

*Second*, the FTC's focus on "tech-savvy" participants ignores the facts of this case. Amazon's customers and Prime members necessarily have experience navigating online interfaces. *See* Dkt. 336-43 ¶ 42 ("Many online shoppers subscribe to Amazon Prime"); *id.* ("[I]n 2023, 57% of U.S. consumers shopped online once a week or more, and only 6% reported they had never shopped online."). The steps described in Mr. Rottner's declaration are similar to the steps that many consumers follow to shop on Amazon.com and to become a Prime member, including signing onto Amazon, navigating a two-step verification process, inputting billing and address information, and clicking through multiple webpages. *See, e.g*., Dkt. 67-10, Att. J; Ex.

DEFS.' OPP. TO MOT. TO EXCLUDE
DR. WILCOX'S EXPERT TESTIMONY
(2:23-cv-0932-JHC) - 5

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

86.[2] The FTC's claim that Dynata survey panelists are more "tech savvy" than Prime members is pure speculation.

*Third*, expert surveys frequently rely upon online survey panels, and courts routinely admit surveys that use Dynata panels or online survey panels provided by other companies. *See, e.g.*, *SNMP Research, Inc., & SNMP Research Int'l, Inc. v. Extreme Networks, Inc.*, 2025 WL 1524475, at *4 (E.D. Tenn. May 28, 2025) (denying motion to exclude survey that used survey panels maintained by Dynata and Prodege); *Bimbo Bakeries USA, Inc. v. Sycamore*, 2017 WL 1377991, at *5 (D. Utah Mar. 2, 2017) (denying motion to exclude survey that used panel of respondents provided by third-party vendor). Indeed, **the FTC's own experts have used Dynata's online survey panels** in other cases. *See, e.g.*, Ex. 81, Excerpt of the Expert Report of Dr. Tulin Erdem, *FTC v. DirecTV*, 4:15-cv-01129-HSG (N.D. Cal. Sept. 14, 2016) (Dkt. 277-12), Appx. E.1 ¶ 9. ("For all four of my surveys, Research Now [d/b/a as Dynata] recruited respondents from its [online] panel via an email invitation.").[3]

**Attention Checks**: The FTC challenges Dr. Wilcox's use of "attention checks"— questions to ensure participants are paying attention and engaging in the survey. The FTC speculates, without any supporting data, that these questions ensured only "the most attentive" participants entered the stimulus. Mot. at 15. Not only is this baseless conjecture, the FTC's position ignores that attention checks are a best practice when it comes to survey design.

"Most online surveys [] include various measures to ensure or measure participant attention." Ex. 83 at p. 301. Here, Dr. Wilcox used attention checks that mirror questions approved by leading treatises. First, in a multiple-choice question, respondents were instructed to select the "Other, please specify" box and type the word "survey." Second, respondents were instructed to select the "Other, please specify" option and type the word "agree." *See* Ex. 88 at

---

[2] *See* www.amazon.com/gp/help/customer/display.html?nodeId=G3PWZPU52FKN7PW4. "Ex." or "Exs." refer to exhibits attached to the June 17, 2025 Omnibus Declaration of Joseph Reiter unless stated otherwise.

[3] Dynata operates under the business name Research Group Now. *See* Ex. 87, Research Now Group LLC, Bloomberg, https://www.bloomberg.com/profile/company/3431331Z:US ("Research Now Group LLC, doing business as Dynata, provides online market research services.").

DEFS.' OPP. TO MOT. TO EXCLUDE
DR. WILCOX'S EXPERT TESTIMONY
(2:23-cv-0932-JHC) - 6

Appendix F.1, pp. 6-7; *compare* Ex. 83 at p. 302 (containing sample attention checks). In addition, Dr. Wilcox included decoy answers in two questions to identify unqualified respondents who selected fake options thinking it would qualify them for the survey. Ex. 62 at 253:11-21 ("[S]ome people might come into the survey thinking, well, I'm only going to continue in the survey if I say that I'm going to do—did this or shop at this place and they'll pick things that don't even exist.").

That attention checks eliminate inattentive survey takers does not mean, as the FTC speculates, that they provide a sample of "the most attentive users." Attention checks serve to reduce noise or systematic bias created by inattentive participants. *See* Dkt. 320-34 ¶ 20 n.38 (citing Oppenheimer, D., T. Meyvis, and N. Davidenko, "Instructional Manipulation Checks: Detecting Satisficing to Increase Statistical Power," *Journal of Experimental Social Psychology*, vol. 45, 2009, pp. 867-72 ("When participants fail to follow instructions, this increases noise and decrease the validity of [the survey] data … [F]orcing … participants to read instructions more carefully will increase the signal-to-noise ratio, and in turn increase statistical power."). They are a best practice and accepted by courts. *See, e.g.*, *Blue Bottle Coffee, LLC*, 2023 WL 9502073, at *3 (survey included an "'attention check' question that tested whether users were paying attention."); *Alfwear Inc. v. IBKUL Corp.*, 2025 WL 1370694, at *4 (D. Utah May 12, 2025) ("The survey also had quality control items including…an attention check question to ensure participants were focused.").

The only source the FTC cites is a more-than-decade-old political science article. *See* Mot. at 13 n.7; Dkt. 320-38 at 257:9-11 ("[W]e've come a long way since 2013 on how we recruit participants."); Dkt 338-39 (attaching article). Further, while the article discusses what the authors believe to be the shortcomings of screeners and attention checks, it nonetheless acknowledges them as "important tools for applied researchers" that allow them to "obtain more reliable data." Dkt 338-39 at 750. The same article also advocates for the use of multiple attention checks. *Id*. ("[A] single Screener item is insufficient for measuring attention.").

DEFS.' OPP. TO MOT. TO EXCLUDE
DR. WILCOX'S EXPERT TESTIMONY
(2:23-cv-0932-JHC) - 7

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**Prior Prime Cancellations**: The FTC criticizes Dr. Wilcox for not screening for participants who previously cancelled a Prime membership. Mot. at 14. But the FTC's own data shows that nearly ▇ of Prime members as of June 21, 2023 had previously cancelled their Prime memberships. Dkt. 309 ¶ 6. To the extent the FTC contends that the survey sample included an even higher percentage of participants that had experience canceling a Prime membership, that contention is sheer speculation and unsupported by any data or evidence. Regardless, as discussed, "any argument as to underinclusiveness of the survey goes to weight, as opposed to admissibility." *Microsoft Corp.*, 904 F. Supp. 2d at 1120.

**Demographic Criteria**: Consistent with the FTC's allegations, Dr. Wilcox surveyed actual Prime members in the United States. Dkt. 320-34 ¶ 19. Respondents were presented with screening questions to identify a sample of individuals who were at least 18 years old, resided in the U.S., took the survey on a desktop or laptop, did not work or have a household member who worked in certain retail or marketing roles, shopped online in the past 12 months, and owned a Prime membership or shared a Prime membership with a household member. *Id.* ¶ 22. And GBK used click-balancing—a method of identifying qualified participants as they enter the survey based on whether they fit representation criteria—to obtain a sample representative of the U.S. population in terms of age, gender, and Census Region. *Id.* ¶ 21; *see also* Dkt. 320-37. Survey experts widely use this approach. *See, e.g., Vanzant v. Hill's Pet Nutrition Inc.*, 2023 WL 6976988, at *7 (N.D. Ill. Oct. 23, 2023) (expert drew respondents from a pool maintained by an independent third-party data collection services company and ensured that respondents were representative of the United States Census in terms of age, gender, and region); *TravelPass Grp., LLC v. Caesars Ent. Corp.*, 2021 WL 6334670, at *4 (E.D. Tex. Sept. 29, 2021) (demographics sampling was based on age, gender, and region).

The FTC does not dispute that U.S. Prime members are the correct target population. Instead, the FTC argues that the sample did not select for certain cherry-picked demographic criteria. But the FTC has no support for the selective criteria it seeks to impose and, in fact, its own experts in this case and other cases followed similar methods.

DEFS.' OPP. TO MOT. TO EXCLUDE
DR. WILCOX'S EXPERT TESTIMONY
(2:23-cv-0932-JHC) - 8

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*First*, the FTC criticizes Dr. Wilcox for not verifying the respondents' literacy. Mot. at 14. But the FTC presents no data suggesting a group of Prime members with low literacy exists that is not represented by the sample. And notably, the FTC's own expert in *FTC v. DirecTV*, another ROSCA case involving membership enrollment disclosures for DirecTV programs, gathered her survey sample based on the same age, gender, and Census region factors that Dr. Wilcox used, and made no reference to education or reading levels of the relevant population. Ex. 81 at Appx. E.1 ¶ 9 (gathering sample that was "representative of the U.S. adult population in terms of age, gender, and region").

*Second*, the FTC's argument that Dr. Wilcox did not screen for non-English speakers is similarly flawed. Mot. at 14. No portion of this case (and no ROSCA requirement) mandates that cancellation be made simple to non-English speakers. All allegations in the FTC's Amended Complaint pertain to English-language flows. *See, e.g.*, Dkt 67-17 Att. Q (desktop cancellation flow). In any event, Dr. Wilcox did not explicitly exclude non-English speakers in his sample, nor does the FTC offer any reliable statistics suggesting that non-English speakers make up a significant portion of Prime members who seek to cancel their membership.

*Third*, the FTC criticizes Dr. Wilcox for not tracking how many people over the age of 75—a number pulled out of thin air—participated. But Dr. Wilcox included a representative sample of participants over the age of 65, which sufficiently accounts for older adult consumers. *See* Ex. 85 (defining the U.S. older population as adults age 65 and over).[4] Nor does the exclusion of minors (which would have required additional parental consent for survey participation) render the survey inadmissible. The FTC's own expert, Marshini Chetty, also did not conduct tests on minors. *See* Ex. 63 at 91; *see also A & M Recs., Inc. v. Napster, Inc.*, 2000 WL 1170106, at **2, 4 (N.D. Cal. Aug. 10, 2000) (denying requested exclusion of study which only "surveyed college or university students without obtaining data on the extent of [streaming service] usage outside colleges and universities").

---

[4] *See* https://www.census.gov/library/stories/2023/05/2020-census-united-states-older-population-grew.html.

DEFS.' OPP. TO MOT. TO EXCLUDE
DR. WILCOX'S EXPERT TESTIMONY
(2:23-cv-0932-JHC) - 9

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Fourth*, the FTC's argument that Dr. Wilcox's study is non-representative because it excluded panelists who used mobile devices is irrelevant. *See* Mot. at 9. Dr. Wilcox expressly limits his opinion to the *desktop* cancellation flow. Ex. 62 at 66:6-10 (testifying he does not give an opinion on the mobile cancellation experience).

In sum, the FTC's arguments amount to nothing more than speculation and meritless assertions that are inconsistent with approaches used by its own experts. And, regardless, as a matter of law, the FTC's challenges provide no basis to exclude the survey from evidence.

### B. The Free Trials Survey Is Admissible

Dr. Wilcox's Free Trials Survey assessed whether consumers have experience with free trials, particularly those that automatically turned into paid memberships or subscriptions unless cancelled. Dkt. 320-34 ¶ 51. 92.5% of respondents reported that they currently pay for at least one membership or subscription. *Id.* ¶ 16. Among respondents who reported signing up for a free trial in the past 12 months, 85.0% understood that the free trial automatically turned into a paid membership or subscription at the end of the trial period if they did not cancel before then. *Id.*

Contrary to the FTC's arguments, the Free Trials Survey easily satisfies the low bar for relevancy.

*First*, the Free Trials Survey engages with one of the FTC's key allegations—that consumers are unaware of Prime's auto-renewal features. *See* Dkt. 67 ¶ 180 ("If customers … are unaware of auto-renew, they can go through multiple billing cycles without using benefits."). For example, the FTC's Motion for Partial Summary Judgment argues (incorrectly) that users presented with a free trial option are less likely to review the webpage and notice Prime's price or auto-renewal features. Dkt. 314 at 49. Moreover, in FTC expert Dr. Chetty's report, she opines that certain "sneaking" techniques could lead a user "in this context [to] not understand that the free trial will auto-renew and that they will be charged periodically once their trial period ends, until they cancel the subscription." Dkt. 327-10 ¶ 55(iv).

By finding that 85% survey respondents who enrolled in a free trial in the past 12 months understood that the trial would automatically turn into a paid membership, Dkt. 320-34 ¶ 16, the

DEFS.' OPP. TO MOT. TO EXCLUDE
DR. WILCOX'S EXPERT TESTIMONY
(2:23-cv-0932-JHC) - 10

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

survey provides probative evidence undermining the FTC's arguments that customers are confused about or unaware of auto-renewal features. Accordingly, unlike the cases the FTC cited, the Free Trials Survey engages with key legal issues in this case. *See, c.f.*, *Ngethpharat v. State Farm Fire & Cas. Co.*, 2021 WL 2823245, at *3 (W.D. Wash. July 7, 2021) (issues were narrowly confined to whether insurance claim files satisfied a specific safe harbor, and the survey thereto was excluded because it asked about only customer satisfaction); *Roar Spirits, LLC v. Sutter Home Winery, Inc.*, 2025 WL 523898, at *17 (N.D. Cal. Feb. 18, 2025) (survey was irrelevant where it tested likelihood of confusion of marks as they appeared in the marketplace, even though the legal issue was about likelihood of confusion in non-marketplace contexts).

*Second*, the FTC has repeatedly emphasized the importance of "context" when assessing whether a consumer will perceive and understand a disclosure. *See, e.g.*, Dkt. 314 at 48-49 ("When evaluating the conspicuousness of online disclosures, "the full context of the transaction is *critical*."), 49 (Amazon's disclosures "made it unlikely many ordinary consumers would … notice that … the Prime free trial automatically renewed as a paying subscription."). The Free Trials Survey provides relevant context—i.e., the familiarity consumers already have with subscriptions, free trials, and autorenewal features when they encounter an offer. That the FTC now wants to ignore this "context" is disingenuous and inappropriate.

*Third*, the FTC's argument that Amazon does not "connect[] the results from the free trial survey [sic] to a consumer's understanding of Prime's enrollment process" falls flat. *See* Mot. at 16. Amazon's marketing and online consumer behavior expert, Dr. Donna Hoffman, makes that precise connection. Dr. Hoffman relies on the Free Trials Survey in support of her opinion that "many, if not the majority, of consumers are familiar with free trials offered by online businesses when enrolling in paid digital subscription services." Dkt. 336-43 ¶ 44 (citing to the Free Trials Survey). As she opines, consumers' familiarity with free trials "suggest[s] that consumers are generally familiar, if not savvy, with the navigational processes for free trial enrollment and cancellation." *Id*. Dr. Hoffman further cites to the Free Trials Survey in support of her point that "many consumers who purchased products on Amazon website and received the 30-day free trial

DEFS.' OPP. TO MOT. TO EXCLUDE
DR. WILCOX'S EXPERT TESTIMONY
(2:23-cv-0932-JHC) - 11

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

offer were likely familiar with the concept of free trials and aware that, if they signed up for the free trial, some type of fee would be applicable at the end of the free trial period if they did not cancel before then." *Id*. ¶ 80.

Because the Free Trials Survey provides probative evidence directly responsive to the FTC's arguments in this case, it is relevant and admissible.

### IV.    CONCLUSION

The FTC's critiques of Dr. Wilcox's Cancellation Survey go to weight only and, in any event, are unsubstantiated. The Free Trials Survey is relevant for multiple reasons. Because both surveys are admissible, the FTC's Motion should be denied.

DATED this 17th day of June, 2025.

I certify that this memorandum contains 4,147 words, in compliance with the Local Civil Rules.

DAVIS WRIGHT TREMAINE LLP

By s/ *Kenneth E. Payson*
 Kenneth E. Payson, WSBA #26369
 James Howard, WSBA #37259
 920 Fifth Avenue, Suite 3300
 Seattle, WA  98104-1610
 Telephone: (206) 622-3150
 Fax: (206) 757-7700
 E-mail: kenpayson@dwt.com
     jimhoward@dwt.com

COVINGTON & BURLING LLP

 Stephen P. Anthony*
 Laura Flahive Wu*
 Laura M. Kim*
 John D. Graubert*
 850 Tenth Street, NW
 Washington, DC  20001
 Telephone: (206) 662-5105
 E-mail: santhony@cov.com
     lflahivewu@cov.com
     lkim@cov.com
     jgraubert@cov.com

DEFS.' OPP. TO MOT. TO EXCLUDE
DR. WILCOX'S EXPERT TESTIMONY
(2:23-cv-0932-JHC) - 12

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

| | |
|---|---|
| 1 | |
| 2 | John E. Hall* |
|   | 415 Mission Street, Suite 5400 |
| 3 | San Francisco, CA 94105 |
|   | Telephone: (415) 591-6855 |
|   | E-mail: jhall@cov.com |
| 4 | |
|   | Megan L. Rodgers* |
| 5 | 3000 El Camino Real |
|   | Palo Alto, CA 94306 |
| 6 | Telephone: (650) 632-4734 |
|   | E-mail: mrodgers@cov.com |

1  
2  John E. Hall*  
   415 Mission Street, Suite 5400  
3  San Francisco, CA 94105  
   Telephone: (415) 591-6855  
   E-mail: jhall@cov.com  
4  
   Megan L. Rodgers*  
5  3000 El Camino Real  
   Palo Alto, CA 94306  
6  Telephone: (650) 632-4734  
   E-mail: mrodgers@cov.com  

7  
   Anders Linderot*  
8  620 Eighth Avenue  
   New York, NY 10018  
   Telephone: (212) 841-1000  
9  Email: alinderot@cov.com  

10  HUESTON HENNIGAN LLP  

11  
   John C. Hueston*  
   Moez M. Kaba*  
12  Joseph A. Reiter*  
   523 West 6th Street, Suite 400  
13  Los Angeles, CA 90014  
   Telephone: (213) 788-4340  
14  E-mail: jhueston@hueston.com  
          mkaba@hueston.com  
15          jreiter@hueston.com  

16  *admitted pro hac vice  

17  Attorneys for Defendants AMAZON.COM, INC.,
   NEIL LINDSAY, RUSSELL GRANDINETTI,
18  AND JAMIL GHANI  

19  
20  
21  
22  
23  
24  
25  
26  
27  

DEFS.' OPP. TO MOT. TO EXCLUDE
DR. WILCOX'S EXPERT TESTIMONY
(2:23-cv-0932-JHC) - 13

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax