1

2

3

4

5

The Honorable John H. Chun

6

7

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

8

9    FEDERAL TRADE COMMISSION,

10          Plaintiff,

11       v.

12    AMAZON.COM, INC., *et al*.

13          Defendants.

Case No. 2:23-cv-0932-JHC

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE DR. MARSHINI CHETTY'S TESTIMONY**

NOTED ON MOTION CALENDAR:
June 17, 2025

14

15

16

17

18

19

20

21

22

23

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO EXCLUDE
DR. MARSHINI CHETTY'S TESTIMONY
Case No. 2:23-cv-0932-JHC

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320

1

2

3

# **TABLE OF CONTENTS**

4

BACKGROUND ................................................................................................... 2

    I.     Chetty's Cognitive Walkthrough ................................................................ 3

5

    II.    Chetty's Think-Aloud Study .................................................................... 4

6

LEGAL STANDARD ........................................................................................... 5

7

ARGUMENT ....................................................................................................... 6

    I.     Chetty's Walkthrough Is Admissible. ....................................................... 6

8

        a.    Chetty's Opinions Arising from her Walkthrough Are Relevant. ............. 6

9

        b.    Chetty's Cognitive Walkthrough Opinions Are Reliable. ......................... 7

    II.    Chetty's Opinions Arising From her Think-Aloud Study Are Admissible. ........... 9

10

        a.    Chetty's Think-Aloud Study Is Closely Tied to the Facts of the Case. ...... 9

11

        b.    Chetty's Think-Aloud Follows a Widely Accepted Methodology. .......... 11

    III.    Chetty Is an HCI Expert. ....................................................................... 14

12

13

14

15

16

17

18

19

20

21

22

23

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO EXCLUDE
DR. MARSHINI CHETTY'S TESTIMONY
Case No. 2:23-cv-0932-JHC - 1

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320

1      Defendants' motion to exclude the testimony of the FTC's only Human-Computer

2    Interaction ("HCI") expert, Dr. Marshini Chetty ("Chetty"), under Rule 702 (Dkt. 322) is both

3    factually and legally wrong because mere disagreement with her methods and conclusions is not

4    a basis to exclude an expert.  Specifically, Dr. Chetty undertook two user studies—a cognitive

5    walkthrough and a think-aloud study—to opine on whether the designs in Amazon's checkout

6    and Prime's cancellation flow confuse consumers, who may not understand they are enrolling in

7    Prime or how to cancel Prime.  These studies relate directly to the claims at issue and are

8    reliable, as Chetty used two methodologies that are widely accepted in HCI, and based her

9    opinions on sufficient facts and data.  In short, because Chetty's studies are both relevant and

10   reliable, the Court should deny Defendants' motion.

11                                            **BACKGROUND**

12        The FTC alleges that Defendants tricked, coerced, and manipulated consumers into

13   subscribing to Amazon Prime by failing to disclose the material terms of the subscription clearly

14   and conspicuously and by failing to obtain the consumers' informed consent before enrolling

15   them.  Am. Compl. (Dkt. 69) ¶2.  Amazon also failed to provide simple mechanisms for

16   cancelling Prime memberships.  *Id.* ¶7. These practices violated the FTC Act, 15 U.S.C. § 45(a),

17   and ROSCA, id. § 8403.

18        Chetty is an Associate Professor at the University of Chicago's Department of Cognitive

19   Science with twenty years of experience in Human-Computer Interaction ("HCI").  The FTC

20   asked Chetty to opine regarding whether 1) the design of Amazon's Prime enrollment in the

21   checkout flow confuses consumers, 2) the design of Amazon's Prime enrollment conveys

22   information on Prime's material terms (cost, end of free trial period, and renewal terms) that

23

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO EXCLUDE                                    Federal Trade Commission
DR. MARSHINI CHETTY'S TESTIMONY                                600 Pennsylvania Avenue NW
Case No. 2:23-cv-0932-JHC - 2                                   Washington, DC 20580
                                                                      (202) 326-3320

1    consumers can comprehend, and 3) the design of Iliad and Iliad 2.0 (cancellation processes)

2    confuses consumers.  Att. 207 at 1.[1]

3        To respond to these questions, Chetty conducted two user studies: 1) a cognitive

4    walkthrough of the Prime checkout and cancellation processes using foundational principles of

5    good design and a widely-recognized ontology of dark patterns, and 2) an empirical think-aloud

6    study where participants were recorded navigating the checkout and cancellation processes on a

7    fictional website that simulated aspects of Amazon's shopping site where they could enroll for

8    and cancel a fictional subscription.

9        Based on the studies' results and her experience as a HCI researcher, Chetty opined that

10    1) the design of Prime enrollment within checkout is confusing to some consumers who

11    unintentionally enroll in Prime while checking out and 2) the design of the cancellation processes

12    is confusing to some consumers, who cannot easily cancel.[2]  *See id.* at 1, ¶¶360-61.

13    **I.    Chetty's Cognitive Walkthrough**

14        A cognitive walkthrough ("walkthrough") is "an inspection method [] used to evaluate

15    how easy (or not) it is for a user to use [an interface] by simulating a user's problem-solving

16    process at each point in a set of interaction flows with the system."  Att. 207 ¶63.  A significant

17    amount of HCI literature confirms the reliability of walkthroughs, which are a foundational

18    technique in the field, as an inspection method.  *See, e.g.*, Att. 210 at 321-22; Dkt. 338-41 at 14-

19    15.[3]  Chetty performed a walkthrough of the checkout and the online cancellation to determine

20

21    [1] All "Attachment" cites starting from Attachment 152 reference attachments to the Declaration of Evan Mendelson, filed concurrently herewith.

22    [2] Chetty relied on both studies to opine; but she does not rely *only* on one study for any of her opinions.  *See, e.g.*, Att. 207 at 1, ¶360.

23    [3] Chetty cites these works in her Report. *See* Att. 207 at 106-07, 109.

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO EXCLUDE
DR. MARSHINI CHETTY'S TESTIMONY
Case No. 2:23-cv-0932-JHC - 3

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320

whether their design comported with foundational principles of good design.  Att. 207 at 1.
Specifically, Chetty sought to identify whether consumers could make selections on Amazon's
interfaces that reflected their intentions.  *Id.*¶¶65, 79-80.

## II.       Chetty's Think-Aloud Study

A think-aloud study is an empirical user study where the participants talk through what
they are doing on an interface as a researcher observes.  Att. 207 at ¶69.  This real-time
verbalization of participants' thinking allows the researcher to understand what factors affect
understanding of the interface and the choices users make.  *Id.*¶70.

For her think-aloud, Chetty created a fictional website called CandyForever that looked
and behaved liked a real-world business selling various candies.  *Id.*¶¶291-92.  Chetty also
created a fictional subscription program offered by CandyForever, "CandyForever Premium,"
which offered shipping benefits akin to Amazon Prime.  *Id.* ¶291. Chetty designed CandyForever
to "match the aesthetics of the Amazon website (including its checkout and cancellation
processes) as closely as possible," including the "same visual styles," based on the screenshots
and videos of the Amazon website—which were either produced by Amazon or captured by the
FTC.  *Id.* ¶292, 297-98.

Study participants were told that CandyForever had hired Chetty, a usability consultant,
to evaluate its website.  *Id.*¶¶304, 313.  Chetty instructed participants to complete two tasks.
*Id.*¶310 (Figure 25).  First, participants had to purchase a product through the CandyForever
checkout using a provided Visa gift card; they were told they would keep any remaining balance.
Afterwards, all participants were enrolled in Premium and instructed to cancel their subscription.
*Id.*¶319.

Chetty audio-recorded the entire session with each of the 33 participants,[4] recorded their
computer screens, and logged each "click" they made on the screen as they navigated Candy

---

[4] Of the 33 participants, 3 were part of the pilot study.  *See* Att. 207 at ¶331.

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO EXCLUDE
DR. MARSHINI CHETTY'S TESTIMONY
Case No. 2:23-cv-0932-JHC - 4

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320

1    Forever's checkout and cancellation processes.  *Id.*¶¶315, 329.  Chetty's research assistant

2    ("RA"), posing as a usability consultant, observed the participants in person and took brief notes.

3    *Id.*¶¶313, 329.  For each task, the RA asked participants to vocalize their thoughts as they

4    proceeded through each of the two tasks (purchasing a product on CandyForever then cancelling

5    a Premium subscription).  *Id.*¶320. At the end of each task, the RA reviewed the screen

6    recordings with the participants and asked them to vocalize their thoughts on their actions.

7    *Id.*¶¶321, 324.  Chetty and the RA then reviewed and coded the data for each participant.

     *Id.*¶¶339-346.

8                                      **LEGAL STANDARD**

9            An expert witness may offer opinion testimony if: "(a) the expert's scientific, technical,

10   or other specialized knowledge will help the trier of fact to understand the evidence or to

11   determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony

12   is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable

13   application of the principles and methods to the facts of the case."  Fed. R. Evid. 702.

14           An expert opinion "is relevant if it assists the trier of fact in understanding evidence or in

15   determining a fact in issue."  *Shafer v. C.R. Bard, Inc.*, 2021 WL 4305216, at *2 (W.D. Wash.

16   Sept. 22, 2021) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993)).  To

17   assess an opinion's reliability, the Court must consider whether (1) the reasoning or methodology

18   underlying the testimony is valid and (2) that reasoning or methodology properly can be applied

19   to the facts in issue.  *See Daubert*, 509 U.S. at 592-93.  Relevant factors in evaluating an expert's

20   methodology include, *inter alia*, whether the expert bases her opinion on appropriate facts or

21   data, acceptance of the expert's methodology in the profession, whether the expert adhered to

22   standards governing the methodology, and whether the expert considered contradictory

23   information.  *White v. Ethicon, Inc.*, 2021 WL 129818, at *3 (W.D. Wash. Jan. 14, 2021)

     (quotations omitted).

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO EXCLUDE
DR. MARSHINI CHETTY'S TESTIMONY
Case No. 2:23-cv-0932-JHC - 5

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320

**ARGUMENT**

I.      **Chetty's Walkthrough Is Admissible.**

   **a.  Chetty's Opinions Arising from her Walkthrough Are Relevant.**

Chetty's opinions arising from her walkthrough are relevant because they help the factfinder determine the questions at issue—consumer understanding of Prime enrollment and cancellation.

Defendants do not directly contest the relevance of Chetty's walkthrough opinions. Instead, relying on trademark infringement caselaw, they argue only that her walkthrough opinions are "unhelpful" because they rely solely on her "personal observations" and therefore "invade[] the province of the jury." Dkt. 322 at 56. This characterization is false. Chetty used a methodology—outlined in her Report, Att. 207¶¶ 58(i), 63-68—that is well-accepted in the HCI field to study the design of interfaces and identify design issues. *Id.* at 1 and ¶66; *see supra* at 3. A layperson cannot properly conduct a cognitive walkthrough to identify manipulative designs; only researchers (also called experts) can. Att. 207 ¶58(i); *see also* Dkt. 338-41 at 2 ("Inspection methods often involve a researcher, sometimes known as an expert, role-playing the users for whom the product is designed, analyzing aspects of an interface, and identifying potential usability problems.").

Moreover, the trademark infringement caselaw Defendants cite is easily distinguishable. Dkt. 322 at 6. First, unlike in trademark infringement cases, where parties must prove a likelihood of consumer confusion, a jury is not required to determine likelihood of consumer confusion to find a ROSCA violation. *See, e.g.*, *Lanard Toys Ltd. v. Anker Play Prods., LLC*, 2020 WL 6873647, at *6 (C.D. Cal. Nov. 12, 2020). Chetty's walkthrough opinions touching on consumer confusion therefore do not invade the jury's province here, unlike in trademark matters.

Second, the cases Defendants cited excluded expert opinions because they were based *solely* on the experts' personal observations, divorced from any methodology. *See Blue Bottle*

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO EXCLUDE
DR. MARSHINI CHETTY'S TESTIMONY
Case No. 2:23-cv-0932-JHC - 6

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320

*Coffee, LLC v. Liao*, 2023 WL 6850573, at *8 (N.D. Cal. Oct. 16, 2023) (excluding expert's opinion on likelihood of confusion because the expert's "determination is based on her personal observations of the marks"); *Lanard Toys Ltd.*, 2020 WL 6873647, at *6 ("All of [expert]'s conclusions stem from his personal observations of the products, which are within the province of the jury"); *JIPC Mgmt., Inc. v. Incredible Pizza Co.*, 2009 WL 8591607, at *3 (C.D. Cal. July 14, 2009) (expert's "testimony consists largely of personal observations and conclusions respecting factual issues within the province of the lay jury").  Unlike in a trademark infringement case, where the jury can compare the similarities and dissimilarities in marks, a lay jury cannot properly apply principles from HCI to evaluate whether an interface can cause users to perform acts that do not align with their intentions; and a cognitive walkthrough performed by an expert like Chetty is instead a well-accepted method to perform such an evaluation.

### b. Chetty's Cognitive Walkthrough Opinions Are Reliable.

Defendants do not dispute that a cognitive walkthrough is a *well-accepted* methodology in HCI and other fields, as their own experts confirmed.  *See* Att. 206 at 87:23-88:9; Att. 142 at 43:1-17; Att. 207 ¶¶58(i), 63-68, 79-30.  Instead, Defendants twist Chetty's deposition testimony, conflate aspects of her cognitive walkthrough, argue her opinions are inconsistent, and wrongfully claim she failed to take certain considerations into account to portray the walkthrough as unreliable. Dkt. 322 at 5-9.

**First**, Defendants claim Chetty's cognitive walkthrough is not replicable because she supposedly testified that other experts "could reach different conclusions using the same method." *Id.* at 7.  This is false; Chetty never said this, or anything similar.  Defendants are misleadingly paraphrasing Chetty's testimony that it is "highly unlikely, but possible" that another HCI expert "could go through the same kind of cognitive walkthrough [] but reach a different conclusion **about any particular design element** that's present or may not be present," not about whether the interface overall has problems.  Att. 209 at 66:17-25 (emphasis added); *see also id.* at 65:22-66:6, 285:22-286:23, 286:24-287:6.  Chetty even explained that a "different

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO EXCLUDE
DR. MARSHINI CHETTY'S TESTIMONY
Case No. 2:23-cv-0932-JHC - 7

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320

conclusion" could mean that another expert would identify "**additional** [] problematic issues," *id.* at 286:18-22 (emphasis added), because the purpose of the walkthrough method is to seek out such issues. *See also* Att. 207 ¶79 ("A single researcher can perform a [] cognitive walkthrough but may not uncover all problems in an interface").

      **Second**, the purpose of Chetty's cognitive walkthrough was ***not*** to identify every dark pattern in Amazon's checkout and cancellation processes, *see* Dkt. 322 at 7, but rather to analyze whether Amazon's interface has design elements likely to result in consumers making selections that do not reflect their intentions. *See* Att. 207 at 1, ¶ 80; *see also* Att. 209 at 195:5-18. Chetty used principles of good design and Gray's ontology of dark patterns[5] for her walkthrough. *See supra* 3-4. Defendants undermine these principles and the ontology as a "hodgepodge of 'heuristics,' 'taxonomies,' and 'ontologies.'" Dkt. 322 at 9. However, these principles, including those set forth by Norman, Shneiderman, and Dix—all of which Chetty cites in her report, *see* Att. 207 at 106, 108-109—constitute the very foundation of the HCI field, as Defendants' experts recognized. *See* Att. 142 at 38:24-40:3; Att. 206 at 102:20-25; Att. 207 at ¶¶33-35. Furthermore, Gray's Ontology on dark patterns "consolidates the ten most frequently cited taxonomies" on dark patterns, making it the most comprehensive ontology of dark patterns that HCI experts have put forth through 2024. *See* Att. 207 ¶18. Chetty did not create any "pejorative names" for "ill-defined web design elements"—she identified within Amazon's interface manipulative designs that other HCI experts have described and organized. *See id.* ¶¶36-55.

      **Third**, Defendants imply that Chetty's came to "opposing conclusions" because she determined the checkout flow contained too little information and the cancellation flow too much. Dkt. 322 at 7. However, Defendants ignore a key principle of cognitive walkthroughs: principles of good design are centered around the user's goal, as purpose matters. Consumers go

---

[5] As explained in her Report, "dark pattern" design choices "often violate the very basic HCI principles of good user experience and interface design." Att. 207 ¶36.

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO EXCLUDE
DR. MARSHINI CHETTY'S TESTIMONY
Case No. 2:23-cv-0932-JHC - 8

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

to the checkout flow to purchase a product and the cancellation flow to cancel; the appropriate amount of information depends on what the user needs to achieve their goal.  *See* Att. 208 at ¶¶ 14-15, 35.  Chetty therefore applied the appropriate methodology consistently.

  **Fourth**, Defendants argue Chetty's cognitive walkthrough is improper because (a) she did not consider whether the information on the Amazon interfaces is truthful, (b) there is no objective checklist for a business to follow "to avoid being labeled a violator," (c) she did not test her "opinions" with users, "request any user data about whether users were actually misled, or speak "to a single actual subscriber who told her that they unintentionally enrolled in Prime or about their experience seeking to cancel Prime," and (d) she did not analyze whether "dark patterns" are used in "offline marketing."  Dkt. 322 at 7-8.  None of these elements are required for—or even related to—a cognitive walkthrough, and Defendants do not provide any support for the idea these elements are required by this methodology.

## II. Chetty's Opinions Arising From her Think-Aloud Study Are Admissible.

### a. Chetty's Think-Aloud Study Is Closely Tied to the Facts of the Case.

  There is no question that Chetty's think-aloud is relevant to the FTC's allegations about Defendants' enrollment and cancellation processes for Prime.  Though Chetty created a fictional website with a subscription program, its checkout and subscription cancellation process are "so nearly the same" as the Amazon checkout and Prime cancellation flow (Iliad) "as to provide a fair comparison."[6] *U.S. v. Norris*, 217 F.3d 262, 270 (5th Cir. 2000);  *see* Att. 207 ¶¶287, 292, 297-98 (associating each constructed webpage to a specific Amazon webpage); *see also* Att. 212 (comparing CandyForever with checkout and Prime cancellation flows).

  Defendants argue the test website was "unfamiliar" to participants and only sold candy, as opposed to Amazon's "wide array of goods and services." Dkt. 322 at 10.  However, what is sold is irrelevant to determining what points of confusion, if any, consumers encounter when

---

[6] A participant remarked that Amazon would sue CandyForever for using its look. *See* Att. 158 at 18.

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO EXCLUDE
DR. MARSHINI CHETTY'S TESTIMONY
Case No. 2:23-cv-0932-JHC - 9

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320

navigating the checkout and cancellation processes.  *See* Att. 207 ¶289.  The purposes of the

study was **not** to observe whether participants wanted to purchase candy, or enroll in or cancel

Premium, but rather to observe whether participants knowingly enrolled, understood material

terms, and could easily cancel.  *Id.*  Using a deception technique—which favors not using

Amazon's website—avoids biasing participants as to the true purpose of the study.  Att. 207

¶303; *see also* Att. 211 at 479.

Defendants also claim the payment method renders the think-aloud too dissimilar to

Amazon Prime, claiming Chetty should have instead collected participants' credit-card numbers.

Dkt. 322 at 11.  Participants were provided a real-life gift card (a prepaid Visa) and were told

that they would keep the balance after the study.  Att. 207 ¶¶304, 313.  Participants therefore had

an incentive to not spend the gift card balance, just as consumers would when purchasing a

product with their own money on Amazon.  *Id.* ¶305.  Amazon offers no evidence to show, let

alone any reason to think, that results would have differed had participants disclosed their

personal credit card information (which would have created privacy issues) or accepted monthly

charges (which is not workable); it simply asserts its baseless conclusion.  *See* Dkt. 322 at 11.

Additionally, Amazon offers no support for their claim that compensating participants for their

participation—a standard element of human studies—meaningfully impacted outcomes,

especially given Chetty posed as a consultant to reduce potential sources of bias.  *Id.*; Att. 207

¶¶313, 327; Att. 211 at 462.  Amazon compensated study participants for their company internal

research.  *See* Att. 205 at 176:6-9. Wilcox (Amazon's only expert who conducted a study with

people) also compensated his online experiment participants.  *See* Dkt. 310 at 5-6.

Nor do participants' demographics render the think-aloud "sufficiently dissimilar" to real

life to be irrelevant.  Chetty recruited "participants from a range of age groups, income ranges,

and education levels to match the demographics of Amazon shoppers" and "aimed to get a range

of users with experiences online shopping matching the US population," as well as a "range of

users who were familiar and less familiar with shopping on Amazon."  Att. 207 ¶328.  The

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO EXCLUDE
DR. MARSHINI CHETTY'S TESTIMONY
Case No. 2:23-cv-0932-JHC - 10

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320

participants did not need to be "representative in terms of the percentage of people in particular age groups, income levels, education levels, [and] gender" because the think-aloud is observational, not experimental, and Chetty thus did not extrapolate any data from this study based on the users' demographics. *See id.* ¶¶75, 332; *infra* at 12-13.

### b. Chetty's Think-Aloud Follows a Widely Accepted Methodology.

Chetty's opinions based on her think-aloud study are reliable because 1) the study complied with HCI field standards, 2) it yielded valid data on which Chetty can rely for her opinions, and 3) Chetty analyzed the data using a valid, widely accepted methodology. *White*, 2021 WL 129818, at *3.

**First**, the think-aloud methodology is widely accepted in the HCI field. Att. 207 ¶¶58(ii), 60-62, 69-74 (outlining the think-aloud methodology), §VIII (describing the think-aloud study); *see also* Att. 210 at 343-47. Amazon even relied on this methodology for its business purposes to conduct qualitative research, including on consumer confusion in Prime enrollment and cancellation. *See, e.g.*, Att. 205 at 180:24-181:16. In particular, the post-task walkthrough is not a "memory test." Dkt. 322 at 13; instead, this method is standard in think-aloud studies, as "it is preferable to minimize non-task-related talk during direct observation in order to get as natural a performance as possible." Att. 210 at 347. The RA did just this by asking, immediately after each participant went through the CandyForever checkout flow *twice*, if they could recall 1) Premium's cost, 2) when and how often they would be charged for Premium, and 3) the fact that Premium was a subscription service.[7] Att. 207 ¶¶70 (noting that in think-alouds, "[r]esearchers are able to ask follow up questions,"), 321. This post-task walkthrough was necessary to

---

[7] Defendants cite *Brown v. Burlington N. Santa Fe Ry. Co.*, 765 F.3d 765, 773 (7th Cir. 2014) to argue that Chetty deviated from the methodology she described. The court in *Brown* excluded the expert's testimony because he "failed to follow a reliable method" and investigate the facts, including the methods described in his report. That is not the case here as Chetty conducted the think-aloud she described.

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO EXCLUDE
DR. MARSHINI CHETTY'S TESTIMONY
Case No. 2:23-cv-0932-JHC - 11

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320

determine whether participants knew the material terms of a subscription in which they had just enrolled. *Id.* ¶¶358-59.

**Second**, the think-aloud observational study generated valid qualitative data. *See, e.g., Stone v. Advance Am.*, 278 F.R.D. 562, 567 (S.D. Cal. 2011) (finding that "personal observational research is a valid and widely used scientific method to measure certain issues"); *Fahmy v. Jay Z*, 2015 WL 5680299, at \*3 (C.D. Cal. Sept. 24, 2015) (finding that an expert's qualitative approach was sufficiently reliable to be considered by the jury). Think aloud studies, which researchers can conduct on a small sample of participants, identify problems and points of confusion on an interface. Att. 207 ¶¶69-74; Att. 210 at 343. Think aloud studies are not experiments and are therefore not intended to "generate large quantitative effects or significant statistical measures because they are typically conducted on smaller sample sizes." *Id.* ¶75; *see* Att. 210 at 343. Rather, they can only "provide a sense of the prevalence of certain themes in the data, as opposed to statistically significant evidence." *Id.* Chetty selected 30 individuals for her study, precisely because those numbers are sufficient for this kind of study.[8] *See id.* ¶¶71, 310; Att. 211 at 459-60. Chetty does not opine on the number of consumers who were tricked, coerced, or manipulated into subscribing to Prime, or the number of Prime subscribers who were unable to cancel their subscription, because her study was not designed to produce such statistical evidence. She simply opines that the designs are likely to cause nonconsensual enrollment and produce difficulty cancelling—a relevant opinion based on recognized methodology. *See supra* at 11.

Because Chetty's study was designed to gather qualitative data, the caselaw on "experimental evidence" (on which Defendants heavily rely to criticize, among other things, the number of participants in Chetty's study) does not apply. *See* Dkt. 322 at 10-11 (citing cases

---

[8] Chetty's work serves to identify design problems that cause nonconsensual enrollment and difficulty cancelling, not to estimate how many consumers these design problems affected. Another FTC expert, Dr. Neale Mahoney, estimates the size of the effect.

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO EXCLUDE
DR. MARSHINI CHETTY'S TESTIMONY
Case No. 2:23-cv-0932-JHC - 12

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320

pertaining exclusively to experiments), 12-13; *see also* Att. 210 at 329-343 (discussing

experimental evaluations).  Moreover, in the two cases Defendants cite involving experiments

analyzing design defect claims, the sample size of experiment participants was not the sole basis

for excluding the expert.  *See Grodzitsky v. Am. Honda Motor Co.*, 957 F.3d 979, 985 (9th Cir.

2020) (excluding expert's opinions because, *inter alia*, the expert failed to conduct *any* testing

and to cite industry standards or peer-reviewed literature); *Sonneveldt v. Mazda Motor of Am.,

Inc.*, 2024 WL 5242611, at *2 (9th Cir. Dec. 30, 2024) (excluding expert's opinions because,

*inter alia*, the expert did not explain or support his methodology).  None of the issues cited in

*Grodzitsky* or *Sonneveldt* apply here, because Chetty's think-aloud did not require a large sample

size, she cited and carefully followed peer-reviewed literature and industry standards for think-

aloud studies, and she thoroughly explained and supported her methodology.[9]  *See* Att. 207 at

¶¶69-74, 84, 291-326; *supra* at 12.

Additionally, Defendants wrongly claim that Chetty "avoided or failed to report

anecdotal statements that might have undermined her conclusions." Dkt. 322 at 12-13.  Chetty

reviewed, considered, and produced every video- and audio-recording (and corresponding

transcript) of each of the 33 participants, including "statements by the [] participants who had no

trouble completing the cancellation process."  *Id.* at 12; *see also* Att. 207 ¶340; Att. 209 at

417:15-21.  The fact that Chetty's report did not quote every consumer statement in full in no

way means she failed to consider or report those statements.

**Third**, Chetty's coding methodology is well-accepted in the field of HCI.  Qualitative

data analysis is "a systematic way of labelling qualitative data and deriving themes from the data

in a principled manner."  Att. 207 ¶339.  Chetty applied the coding process laid out in her report,

which is well-supported in the field's literature.  *Id.* ¶¶341-46.  This process included developing

---

[9] Likewise, Defendants' reliance on *United States v. Chao Fan Xu*, 706 F.3d 965, 984 (9th Cir. 2013) and *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 528 (6th Cir. 2012) is wholly misplaced because those cases excluded experts who conducted no testing or analysis, instead relying only on their own anecdotal observations.

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO EXCLUDE
DR. MARSHINI CHETTY'S TESTIMONY
Case No. 2:23-cv-0932-JHC - 13

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320

a codebook after reviewing each participant's video recording showing onscreen cursor movements and audio-recording. Att. 210 at 344-47.  Chetty testified that "[g]enerally in qualitative data analysis, [HCI researchers] discuss points of disagreement and try to achieve consensus," which she and her RA did here.[10]  Att. 209 at 361:23-362:8; *see also* Att. 207 ¶¶60-62.  Defendants' unsupported claim that Chetty's coding process was "subjective" and "unstructured" is therefore incorrect.

### III.    Chetty Is an HCI Expert.

Defendants implicitly cast doubt on Chetty's qualifications as an HCI expert, arguing that Chetty has not conducted a walkthrough on an *online checkout or cancellation process* outside of this matter, lacks *marketing* expertise, and did not follow an appropriate methodology for a cognitive walkthrough or a think-aloud study.  *See* Dkt. 322 at 8, 12-13.  Chetty is a professor with a Ph.D. in Human Centered Interaction.  She has vast research and teaching experience in HCI, has run two highly regarded HCI labs, and has won multiple HCI awards.  *See* Att. 207¶¶1-20; Att. 157.  Chetty has *taught* students how to conduct cognitive walkthroughs and has herself conducted several on various online interfaces, including the Netflix subscription flow.  *See, e.g.*, Att. 209 at 48:5-13; 51:21-25, 58:18-59:4.  She also has experience conducting think-aloud studies.  *See* Att. 157.

### LOCAL RULE 7(e) CERTIFICATION

I certify this memorandum contains 4,200 words, in compliance with the Local Civil Rules.

Dated: June 17, 2025                              /s/ Olivia Jerjian

                                                  JONATHAN COHEN (DC Bar # 483454)
                                                  EVAN MENDELSON (DC Bar #996765)

---

[10] Amazon's marketing expert similarly resolved coding disagreements "by discussion with the coding team."  Dkt. 336-43 ¶22.

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO EXCLUDE                     Federal Trade Commission
DR. MARSHINI CHETTY'S TESTIMONY                   600 Pennsylvania Avenue NW
Case No. 2:23-cv-0932-JHC - 14                    Washington, DC 20580
                                                  (202) 326-3320

OLIVIA JERJIAN (DC Bar #1034299)
JONATHAN WARE (DC Bar #989414)
ANTHONY SAUNDERS (NJ Bar #008032001)
SANA CHAUDHRY (NY Bar #5284807)

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington DC 20580

(202) 326-2551 (Cohen); -3320 (Mendelson); -2726
(Ware); 2749 (Jerjian); -2917 (Saunders); -2679
(Chaudhry)

JCohen2@ftc.gov; EMendelson@ftc.gov;
JWare1@ftc.gov; OJerjian@ftc.gov;
ASaunders@ftc.gov; SChaudhry@ftc.gov

COLIN D. A. MACDONALD (WSBA # 55243)
Federal Trade Commission
915 Second Ave., Suite 2896
Seattle, WA 98174
(206) 220-4474; CMacdonald@ftc.gov

RACHEL F. SIFUENTES
(IL Bar #6304016; CA Bar #324403)
Federal Trade Commission
230 S. Dearborn St., Room 3030
Chicago, IL 60604
(312) 960-5617; RSifuentes@ftc.gov

JEFFREY TANG (CA Bar #308007)
Federal Trade Commission
10990 Wilshire Boulevard, Suite 400
Los Angeles, CA 90024
(310) 824-4303; JTang@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO EXCLUDE
DR. MARSHINI CHETTY'S TESTIMONY
Case No. 2:23-cv-0932-JHC - 15

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-3320