The Honorable John H. Chun

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC., *et al*.<br><br>Defendants. | Case No. 2:23-cv-0932-JHC<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' RULE 702 MOTION TO EXCLUDE DR. NEALE MAHONEY'S TESTIMONY**<br><br>NOTED ON MOTION CALENDAR: June 24, 2025<br><br>ORAL ARGUMENT REQUESTED |



Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2726

The FTC respectfully opposes Defendant's Rule 702 motion to exclude the FTC's sole expert on the amount of consumer harm for which Defendants are liable (Dkt. 323).

Defendants omit that in seeking restitution for consumers under ROSCA, as the FTC does here, the FTC need only present a ***reasonable approximation*** of ***aggregate*** consumer harm. Dr. Neale Mahoney did that. He calculated harm from Amazon: (1) unlawfully enrolling consumers into Prime, and (2) failing to provide simple mechanisms to cancel Prime. In ROSCA cases, courts often find defendants' *entire net revenue* during the time they violated ROSCA to reasonably approximate harm. Here, Dr. Mahoney reasonably approximated harm in a narrower manner, based on Amazon's internal data and documents, using standard and widely accepted economic methods, and making assumptions in Amazon's favor.

Defendants seek to exclude Dr. Mahoney based on their incorrect belief he must calculate harm on an individualized basis. The Ninth Circuit rejects that view—a reality Defendants omit. This Court, too, rejected a similar argument by Amazon for a higher burden in another FTC case. Defendants' issues with Dr. Mahoney go to the weight of his testimony, not its admissibility.

## BACKGROUND

Defendants do not challenge Dr. Mahoney's qualifications. He is a tenured Professor of Economics at Stanford University and a leading scholar in economics, consumer financial behavior, and related areas. Att. 215 (Mahoney Rpt.), App. A.[1] He has received significant academic and professional recognition and is published in top economics journals, including "on the difficulties consumers have cancelling subscription plans." *Id.*; Dkt. 323 at 5.

---

[1] All "Attachment" cites herein are to the Declaration of Evan Mendelson filed concurrently.



Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2726

## LEGAL STANDARD

An expert may testify if their knowledge "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Expert testimony must be based on sufficient facts or data, and the product of reliable principles and methods that reflect a reliable application to the case facts. *Id.* Courts ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Fair v. King Cnty.*, 2025 WL 1031274, at *2-3 (W.D. Wash. Apr. 7, 2025) (Chun, J.) (quoting *Hyer v. City & Cnty. of Honolulu*, 118 F.4th 1044, 1055 (9th Cir. 2024)). Courts enjoy broad discretion and "liberally construe Rule 702 in favor of admissibility." *Id.* (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993)). The proponent establishes admissibility by a preponderance of the evidence. *See* Fed. R. Evid. 702.

"The relevancy bar [for expert testimony] is low, demanding only that the evidence logically advances a material aspect of the proposing party's case." *Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014) (cleaned up). A court "not only has broad latitude in determining whether an expert's testimony is reliable, but also in deciding how to determine the testimony's reliability," an inquiry that "is fact-specific." *Fair*, 2025 WL 1031274, at *2-3 (cleaned up).

## ARGUMENT

### I. Defendants apply the wrong legal standard to determine harm under ROSCA.

The core of Defendants' Motion is that Dr. Mahoney did not conduct an individualized consumer-by-consumer analysis showing each individual is more likely than not harmed. *See* Dkt. 323 at 3-5, 9-13. Defendants cite no law for their standard, because it is not the law, which is an independent basis to deny their Motion. *See Abante Rooter & Plumbing, Inc. v. Alarm.com*



Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2726

*Inc.*, 2018 WL 3707283, at *8-9 (N.D. Cal. Aug. 3, 2018) (denying motion where movant incorrectly argued expert applied wrong legal standard). Surprisingly, Amazon's Motion lacks any ROSCA case law and includes only *one* FTC restitution case—a district court case that, as discussed below, it misapplies. Under the correct standard, the FTC need only prove an amount that ***reasonably approximates aggregate*** consumer harm. Dr. Mahoney did that.

**A. Under ROSCA, the FTC need only establish an amount that *reasonably approximates* total consumer harm.**

The starting point to understand how Dr. Mahoney's testimony "will help the trier of fact," Fed. R. Evid. 702, is the statute. The FTC sued Defendants for violating ROSCA, 15 U.S.C. § 8403. A ROSCA violation "shall be treated as a violation of a rule under Section 18 of the [FTC Act] (15 U.S.C. § 57a) regarding unfair or deceptive acts or practices." 15 U.S.C. § 8404(a). For violation of an FTC rule (or its equivalent, *e.g.,* ROSCA), Section 19 of the FTC Act empowers the Court to "grant such relief as the court finds necessary to redress injury to consumers . . . resulting from the rule violation or the unfair or deceptive act or practice," including by refunds. 15 U.S.C. § 57b(b).

In restitution cases, like this one, the Ninth Circuit applies a two-step burden-shifting framework: first, the FTC need only establish an amount that "***reasonably approximates*** the defendant's unjust gains," and second, "the burden then shifts to the defendant to show that the FTC's figures overstate the amount of the defendant's unjust gains." *FTC v. Commerce Planet, Inc.*, 815 F.3d 593, 603 (9th Cir. 2016) (emphasis added) (in pre-ROSCA negative option case, holding "[a] reasonable estimate, rather than an exact amount, is proper"), *abrogated on other grounds by, AMG Cap. Mgmt., LLC v. FTC,* 593 U.S. 67 (2021); *FTC v. Figgie Int'l, Inc.*, 994 F.2d 595, 605-06 (9th Cir. 1993) (applying burden shifting under Section 19 of the FTC Act, *i.e.*, the monetary relief basis here); *see also Consumer Fin. Prot. Bureau v. CashCall, Inc.*, 35 F.4th



Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2726

734, 751 (9th Cir. 2022) (affirming burden shifting, citing *Figgie, Commerce Planet*); *FTC v. Amazon.com, Inc*., 2016 WL 10654030, at *7–8 (W.D. Wash. July 22, 2016) (quoting *FTC v. Inc12.com Corp*, 475 F. App'x 106, 110 (9th Cir. 2012)). In step 1, the FTC's estimate must be "in the ballpark," and if defendants think it is off, "they should have produced their own figures," *FTC v. QT, Inc*., 512 F.3d 858, 864 (7th Cir. 2008), which Amazon has not done.

In applying ROSCA, courts have awarded refunds for consumers totaling defendants' total net revenues (far more than what the FTC seeks here) for the duration of ROSCA violations as a reasonable approximation of harm.[2] *See United States v. MyLife.com, Inc*., 567 F. Supp. 3d 1152, 1170-71 (C.D. Cal. 2021); *FTC v. Credit Bureau Ctr., LLC,* 81 F.4th 710, 717-18 (7th Cir. 2023). The same is true in other Section 19 cases. *See FTC v. Elegant Sols., Inc.,* 2020 WL 4390381, at *13 (C.D. Cal. July 6, 2020) (net revenues), *aff'd*, 2022 WL 2072735 (9th Cir. June 9, 2022).

**B. Restitution for consumers harmed by Amazon's ROSCA violations does not need to be established consumer-by-consumer.**

An approximation of total harm, as the Ninth Circuit requires, is, by definition, an aggregate measure, not consumer-by-consumer. While Dr. Mahoney shows harm for a subset of consumers exposed to Amazon's ROSCA violations, such exactitude exceeds the minimum necessary where a seller's deceptive or unfair practice "tainted the customers' purchasing decisions," thus entitling consumers to full refunds. *Figgie*, 994 F.2d at 606; *see also FTC v. QYK Brands LLC*, 2024 WL 1526741, at *2-3 (9th Cir. Apr. 9, 2024) (applying *Figgie*). In *Figgie*, what tainted customers' decisions was the seller's pre-sale unlawful conduct (there, fraud

[2] Because the FTC need only reasonably approximate or estimate total harm, *Commerce Planet*, 815 F.3d at 603, it has options on the methods it uses for what is reasonable for a case.



Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2726

by misrepresentations). 994 F.2d at 605. The Ninth Circuit held the FTC need not prove every individualized wrong but can rely on the presumption of actual wrong across consumers "once the Government proves that [defendants] made material misrepresentations, they were widely disseminated, and that consumers bought [defendants'] product." *Id.* In other words, once the FTC proves a deceptive or unfair practice occurred—and ROSCA violations are, by law, treated as such, *see* 15 U.S.C. § 8404(a)—then harm may be presumed to exist for *all* consumers . . . if the FTC shows the practice is widespread and consumers bought defendants' products. Amazon incorrectly asserts the opposite. Dkt. 323 at 9 (expert "cannot" "simply assume[] every consumer suffered harm").

Courts apply this presumption because the FTC Act "serves a public purpose by authorizing the Commission to seek redress on behalf of injured consumers" and ***"requiring proof of subjective reliance by each individual consumer would thwart effective prosecutions of large consumer redress actions and frustrate the statutory goals of the section***." *Figgie,* 994 F.2d at 605 (cleaned up; emphasis added); *see also QYK Brands LLC*, 2022 WL 3138761, at *8 *aff'd* 2024 WL 1526741; *FTC v. Bluehippo Funding, LLC,* 762 F.3d 238, 244-45 (2d Cir. 2014). Amazon's standard would immunize it from monetary liability.

Here, in these circumstances, Dr. Mahoney calculated harm in a more exacting and narrower fashion (Section II, *infra*) than what Ninth Circuit courts oft accept as a reasonable approximation (*i.e.,* net revenue). *See, e.g.,* Att. 215, ¶¶99-100 (showing total Prime subscriptions versus those harmed).

## II. Dr. Mahoney's opinions are relevant, reliable, and admissible as a reasonable approximation of consumer harm.

Applying the correct legal standard, Dr. Mahoney's testimony will help the factfinder determine (per Rule 702) consumer harm from Amazon's ROSCA violations. He thus passes the



Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2726

"low" bar for relevancy and "logically advances a material aspect" of the FTC's case. *See Messick*, 747 F.3d at 1196 (9th Cir. 2014). He applied reliable methods, detailed below, and his reliability is underscored by his experience with consumer subscription enrollment and cancellation practices. *See* Fed. R. Evid. 702 Advisory Comm. Note (2000) (factor of reliability is whether the field of claimed expertise is known to reach reliable results for the type of opinion the expert would give). Indeed, his work in the field is published in a leading peer-reviewed journal, demonstrating his field reaches reliable results on subscription practices. *See* Att. 215, App. A at A-5; Att. 195 (Mahoney Tr.) at 22:22-23:7.

**A. Dr. Mahoney's opinions reasonably approximate harm from enrollment and are admissible.**

Dr. Mahoney applied accepted economic methods to Amazon's data to reasonably approximate consumer harm from its unlawful enrollment practices, and Defendants fail to establish that he should be excluded.

**1. Dr. Mahoney reasonably approximated enrollment harm.**

Dr. Mahoney reasonably approximated that Amazon's enrollment practices harmed **30 million** consumers. *See* Dkt. 323 at 5. He began with data of Prime subscribers (a) who were enrolled in Prime in one of three ways the FTC alleges violated ROSCA and (b) who told Amazon, "I did not intend to sign up for Prime," in response to a survey *by Amazon* it sent to a random sample of cancelers. Att. 215 ¶¶14,15,52,93-98. Amazon uses those same responses in its ordinary course of business to learn why consumers cancel and to prevent cancellations, *id.*



Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2726

¶¶15,50-52, which is an accepted industry practice, *id.* ¶¶59-63.[3] Dr. Mahoney found the survey reliable in design, execution, and the data it produced. *Id.* ¶¶50-92.

Dr. Mahoney combined Amazon's survey data with other Amazon data on subscribers' activity to create a prediction model that would reasonably and reliably estimate the size of the harmed population of unintentional Prime subscriptions and the resulting additional fees paid by consumers. *Id.* ¶93. To do so, he used a linear regression, a standard economic tool. *See id.* ¶¶95-106. In his regression, he included a broad set of variables, including sign-up method, tenure, and behavior with Prime. *Id.* ¶¶95-98. Dr. Mahoney applied his model to a random sample of millions of Prime subscribers to predict an aggregate volume of harmed consumers among those who cancelled Prime after being enrolled in it by one of the three upsells at issue. Att. 215 ¶99; Dkt. 323 at 5. From that, he extrapolated to the larger population of Prime subscriptions and estimated 29.8 million unintended subscriptions and $844 million in associated harm through June 20, 2023. Att. 215 ¶99-100. Use of random sampling from defendants' data to extrapolate harm is an accepted method. *See FTC v. Braun*, 2024 WL 449288, at *8-9 (S.D.N.Y. Feb. 6, 2024).[4] Like Dr. Mahoney, but pre-litigation, Amazon, too, used responses to the cancellation survey to estimate how many consumers unintentionally signed up for Prime,

---

[3] In half a sentence, Amazon seems to argue its survey is unreliably biased. *See* Dkt. 323 at 12. It cites Dr. Mahoney who opines the opposite. Att. 215 ¶¶64-106; Doc. 327-56 (Mahoney Tr. 79:12-17, 101:22-103:22); *see also Schering Corp. v. Pfizer Inc.,* 189 F.3d 218, 238-39 (2d Cir. 1999) *as amended on reh'g* (Sept. 29, 1999) (Sotomayer, J.) (internal, non-litigation surveys admissible). Amazon does not develop these points, which are waived. *See Okorocha v. Duff*, 596 F. App'x 537, 539 (9th Cir. 2015).

[4] Any deficiencies in the data fall on Amazon, not consumers. *FTC v. Febre,* 128 F.3d 530, 535 (7th Cir. 1997) ("[T]he risk of uncertainty should fall on the wrongdoer whose illegal conduct created the uncertainty.")



Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2726

which included examining sign-up method, tenure, and shopping behavior. *See* Att. 172 at 2, 4, 7.

Dr. Mahoney's method is further reasonable in ways that favor Amazon. For example, his estimates do not include consumers who did not intend to subscribe to Prime ***and*** who also:

1. never realized Amazon enrolled them in Prime, Att. 215 ¶¶58,94;
2. wanted to cancel but couldn't find the cancellation process, *id.* ¶ 58;
3. cancelled Prime and told Amazon it was because "I did not intend to sign up" (or similar phrasing), but did not say so in response to question 3 or 4 of Amazon's survey, *id.* ¶73;
4. cancelled Prime and told Amazon it was for a reason other than "I did not intend to sign up," *id.* ¶¶152;
5. cancelled Prime by calling Amazon, *id.* ¶¶94,110; and
6. did not become aware they were subscribed during the analysis period, *id.* ¶¶94.

In addition, Dr. Mahoney used unintentional enrollment rates favorable to Amazon, *id.* ¶94; rounded his estimates down, *id.* ¶100; ran sensitivity checks and alternative methodologies that found *higher* estimates of harm that he did not use, *id.* ¶¶103-104; and found memory bias and self-selection bias likely favored Amazon, *id.* ¶¶149,154.

**2. Defendants fail to establish Dr. Mahoney should be excluded.**

From the start, Amazon wrongly claims Dr. Mahoney's enrollment analysis "is not based on any facts." Dkt. 323 at 6. That is wrong: among his factual bases are what Amazon admits five pages later is Amazon's own survey and consumer data. *Id.* 11. For example, consumers telling Amazon they cancelled Prime because, "**I did not intend to sign up for Prime**"—a simple, 9-word, relevant factual phrase appearing *nowhere* in Amazon's Motion (but 14 times in Dr. Mahoney's report). *See* Att. 215 ¶¶38-39,47-58,64-106.



Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2726

Amazon also argues there is "no basis" for Dr. Mahoney's assumption "*all* subscribers who answered [Amazon's cancellation survey by responding,] '[I] did not intend (DNI) [to enroll in Prime],'" in fact, did not intend to enroll in Prime. Dkt. 323 at 11. Common sense dictates even if it does not hold true for all survey participants, it is ***reasonable*** to assume someone was unintentionally enrolled where they cancel Prime and identify, "***I did not intend to sign up for Prime***," as a main reason for cancelling.

This Court's past analysis offers support. In assessing the FTC's estimate of harm where Amazon unfairly billed parents for in-app purchases by children without parents' consent, the Court held "it is reasonable to assume that of the group of users faced with a password prompt who ultimately failed to provide a password, many *were* children who, absent a password prompt, would have gone on to complete an in-app purchase," and thus reasonable to assume *all* were children. *Amazon.com,* 2016 WL 10654030 at *7-8. This met the FTC's step 1 burden under *Commerce Planet*, which really is the crux of Defendants' motion here. *See id.* at *11; No. 2:14-cv-01038-JCC at 3 (W.D. Wash. Nov. 10, 2016) (Dkt. 287) ("FTC meets its burden"). And unlike that case, Dr. Mahoney narrows the pool of harmed consumers by applying limitations in Amazon's favor. *See* Section II.A.1.

Defendants' core problem is their attempt to force the methodology Dr. Mahoney developed to reasonably approximate aggregate harm (as the law requires, *see* Section I), into Defendants' preferred, but legally inapplicable, framework of consumer-by-consumer assessments. *See* Dkt. 323 at 9-12; Att. 195 at 183:20-186:20 (detailing lengths Amazon went to cobble parts of Dr. Mahoney's analysis into a different whole). It's as if Dr. Mahoney



Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2726

constructed a 6-inch model bicycle to reasonably approximate how a bike works, and Amazon argues to exclude it because no one can ride it. Purpose matters.[5]

Additionally, courts have rejected Defendants' other argument about a possible consumer windfall without proof of injury. *See* Dkt. 323 at 9,13. Here, Amazon's premise is wrong—there is proof of injury. Dr. Mahoney's reasonable approximation establishes millions of consumers were harmed, as discussed above. Moreover, while the circumstances here could "pose an administrative hurdle when the FTC begins the process of distributing the monetary award to consumers," that is not a basis to bar the FTC from "rely[ing] on a ***reasonable approximation to determine the aggregate consumer harm*** that [the defendant]'s fraudulent conduct caused. To hold otherwise would make it incredibly difficult, if not effectively impossible, for the FTC to ever recover a monetary consumer redress award when there are hundreds of affected consumers." *Braun*, 2024 WL 449288, at *9 (emphasis added) (citing *BlueHippo*, 762 F.3d at 244).

Last, Defendants incorrectly apply *FTC v. Noland,* 2021 WL 5493443 (D. Ariz. Nov. 23, 2021) to support their windfall argument. (Dkt. 323 at 7, 10-12). That decision dealt with violations of the FTC's merchandise rule, which arose when a seller failed to ship 30 days *after* ordering, and where the FTC lacked testimony establishing harm. *See Noland*, 2021 WL 5493443, at *2-4. That's not the case here: Dr. Mahoney opines how harm occurred and the

---

[5] In a footnote, Defendants also argue Dr. Mahoney should have deducted the value of "the benefits" of Prime. Dkt. 323 at 10 n.2, 13. Ninth Circuit law is the contrary. *See Figgie,* 994 F.2d at 606 (upholding no offset for product value because "[t]he fraud is in the selling, not the value of the thing sold"); *see also FTC v. Kuykendall*, 371 F.3d 745, 766 (10th Cir. 2004).



Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2726

ROSCA claims here deal with Amazon's practices as they existed before and from the time of contract.[6]

**B. Dr. Mahoney reasonably approximated cancellation harm, and his opinion is admissible.**

Dr. Mahoney also applied accepted economic methods to Amazon's own data to reasonably approximate harm from Amazon's failure to have simple mechanisms to cancel Prime. Defendants repeat the same misplaced objection that he did not opine "that *any* particular subscriber was harmed." *See* Dkt. 363 at 12. In fact, he did as the law requires. *See* Section I.

Specifically, Dr. Mahoney relied on Amazon data to make reasonable assumptions about cancellation and made several reasonable approximations of harm. Att. 215 ¶¶123-135. Dr. Mahoney used Amazon data—on Prime benefit use and consumers' activities on Amazon.com, including the cancellation process—along with his expertise in consumer behavior, to estimate the share of consumers who tried to cancel Prime online and failed, but had the mistaken belief they succeeded. *Id.* ¶¶112-114,123-124. To do so, he identified subscribers who used zero Prime shipping benefits after trying to cancel Prime; he also used an economic regression to reasonably identify the share of subscribers who mistakenly believed they had cancelled. *Id.* ¶¶125-132.

---

[6] Furthermore, the Ninth Circuit subsequently upheld an award of net revenues in a different case, contrary to *Noland*, where a seller failed to ship timely. *See QYK Brands*, 2022 WL 3138761, at *8 (noting *Noland* did not discuss *Figgie's* presumption and dealt only with post-contract violations; windfall may be mitigated *post*-judgment) *aff'd* 2024 WL 1526741 at *2-3. In addition to these distinctions, it is hard to reconcile the *Noland* summary judgment decision with *Figgie's* presumption in FTC restitution cases.



Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2726

Defendants' hyperbole aside, Dr. Mahoney's analysis goes further to be reasonable by omitting types of unintentionally enrolled consumers who Amazon thwarted from cancelling, such as those who:

1. wanted to cancel but could not find how to start the process, Att. 215 ¶¶110,123,131;
2. were deterred or diverted from cancelling by Amazon's Iliad process, *id.* ¶¶110,123,131;
3. tried, but failed to cancel via other means (*e.g.* phone), *id.* ¶110;
4. were unsuccessful at cancelling via the Iliad 2.0 process, *id.* ¶111; and
5. thought they canceled and either (a) subsequently used some Prime shipping benefits, *id.* ¶124, or (b) exited the Iliad process by clicking "Remind Me Later" or "Keep My Membership" or "Keep My Benefits," *id.* ¶123 & fn.109.

Dr. Mahoney also excluded payments by consumers who entered the Iliad process a second time, *id.* ¶131, and used other exclusions, *e.g., id.* ¶¶121,126,127,129,131.[7] Altogether, his use of a defendant's data, random sampling, and extrapolating are reliable methods accepted in his field, and legally acceptable to reasonably approximate harm. *See Braun*, 2024 WL 449288, at *8-9; *Febre*, 128 F.3d at 535 ("uncertainty should fall on the wrongdoer"); *see also* Att. 172 at 4-11 (Amazon using similar economic methods as to enrollment).

Defendants then fault Dr. Mahoney for supposedly failing to "separate lawful from unlawful conduct." Dkt. 323 at 13. Yet they miss the boat because *all* Prime subscriptions

---

[7] Defendants put in a footnote their unsubstantiated attack on Dr. Mahoney's methodology. Dkt. 323 at 12 n.4. Dr. Mahoney testified that in his field, a parallel trends analysis, which Amazon suggests is a must, "is sometimes used in difference-in-differences analysis and sometimes not." Dkt. 327-56 (Mahoney Tr. at 236:22-237:2). Peer-reviewed publications have long published such analyses without the parallel trends Defendants assert is necessary. *See, e.g.,* Att. 219 (Ashenfelter & Hosken, "The Effect of Merger on Consumer Prices," 53 J.L & Econ. 417, 435-439 (2010)). Amazon did so, too. *See* Att. 172 at 8-10.



Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2726

involve unlawful conduct as Amazon never had ROSCA-compliant cancellation. Thus, all Prime subscribers *could* be entitled to refunds under the holding of *MyLife.com.* Nevertheless, in the circumstances here, *see supra* n.1, Dr. Mahoney reasonably approximated harm for a narrower set of consumers.

Defendants identify a few scenarios where a subscriber ***may*** have had other intentions. Dkt. 323 at 13. This argument fails just like it did for enrollment (Section II.B.2), and just as it did 9 years ago before this Court—because the touchstone is ***reasonableness***, not exactitude. It is reasonable to assume that many consumers believed they had cancelled Prime but had not (and thus continued to be charged) when they sought Amazon's hard-to-find online Prime cancellation pages; began the process to cancel; did not successfully cancel, accept an offer, or ask to be reminded; and did not subsequently use Prime benefits. *See Amazon*, 2016 WL 10654030, at *7-8; *Commerce Planet*, 878 F. Supp. 2d at 1089.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion should be denied.

* * *



Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2726

**LOCAL RULE 7(e) CERTIFICATION**

I certify that this memorandum contains 4,199 words, in compliance with the Local Civil Rules.

Dated: June 17, 2025

/s/ Jonathan W. Ware

JONATHAN COHEN (DC Bar #483454)
EVAN MENDELSON (DC Bar #996765)
JONATHAN W. WARE (DC Bar #989414)
SANA CHAUDHRY (NY Bar #5284807)
ANTHONY SAUNDERS (NJ Bar #008032001)
OLIVIA JERJIAN (DC Bar #1034299)
Federal Trade Commission
600 Pennsylvania Avenue NW
Washington DC 20580
(202) 326-2551; jcohen2@ftc.gov (Cohen)
(202) 326-3320; emendelson@ftc.gov (Mendelson)
(202) 326-2726; jware1@ftc.gov (Ware)
(202) 326-2679; schaudhry@ftc.gov (Chaudhry)
(202) 326-2917; asaunders@ftc.gov (Saunders)
(202) 326-2749; ojerjian@ftc.gov (Jerjian)

COLIN D. A. MACDONALD (WSBA # 55243)
Federal Trade Commission
915 Second Ave., Suite 2896
Seattle, WA 98174
(206) 220-4474; cmacdonald@ftc.gov (MacDonald)

RACHEL F. SIFUENTES
(IL Bar #6304016; CA Bar #324403)
Federal Trade Commission
230 S. Dearborn St., Room 3030
Chicago, IL 60604
(312) 960-5617; RSifuentes@ftc.gov

JEFFREY TANG (CA Bar #308007)
Federal Trade Commission
10990 Wilshire Boulevard, Suite 400
Los Angeles, CA 90024
(310) 824-4303; JTang@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION