1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FEDERAL TRADE COMMISSION,

Plaintiff,

v.

AMAZON.COM, INC; NEIL LINDSAY,
individually and as an officer of
Amazon.com, Inc.; RUSSELL
GRANDINETTI, individually and as an
officer of Amazon.com, Inc.; JAMIL GHANI,
individually and as an officer of
Amazon.com, Inc.,

Defendants.

CASE NO. 2:23-cv-00932-JHC

ORDER

This matter comes before the Court on Plaintiff Federal Trade Commission's Motion for

Sanctions due to Defendant Amazon.com, Inc.'s Systematic Abuse of Privilege Claims.  Dkt.

# 286.  The Court has considered the materials filed in support of and in opposition to the

motion, the rest of the file, and the governing law.[1]  The Court also has also considered the

---

[1] The Court did not consider the materials filed by the FTC after the briefing was completed.
Dkt. # 394 (sealed).

ORDER - 1

presentations of the parties at oral argument on July 2, 2025.  Being fully advised, for the reasons

below, the Court issues the following Order, which supplements the order at Dkt. # 371.

Previously, the Court granted the relief requested in the FTC's motion, without delay or

further explanation, as Amazon had primarily agreed to the relief requested (e.g., 90 additional

days for the FTC to conduct discovery) and time is of the essence as trial is in September.  Dkt.

## 302, 371.  The Court reserved on the issue of bad faith.  Dkt. # 371.

The FTC asks the Court to find that Amazon acted in bad faith in connection with the

discovery at issue.  Dkt. # 286 at 13.  "District courts have inherent power to control their

dockets. In the exercise of that power they may impose sanctions[.]"  *Thompson v. Hous. Auth.*

*of City of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986).  Under these inherent powers, a court

may impose sanctions "when a party has acted in bad faith, vexatiously, wantonly, or for

oppressive reasons."  *In re StubHub Refund Litig.*, No. 20-MD-02951-HSG (TSH), 2024 WL

2305604, at *5 (N.D. Cal. May 20, 2024) (quoting *In re Facebook, Inc. Consumer User Profile*

*Litig.*, 655 F. Supp. 3d 899, 924 (N.D. Cal. 2023)); *see also Fink v. Gomez*, 239 F.3d 989, 994

(9th Cir. 2001) ("Sanctions are available if the court specifically finds bad faith or conduct

tantamount to bad faith.").  A party "demonstrates bad faith by delaying or disrupting the

litigation or hampering enforcement of a court order."  *Leon v. IDX Sys. Corp.*, 464 F.3d 951,

961 (9th Cir. 2006) (quoting *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th

Cir. 1997)).  And conduct "tantamount to bad faith" includes "a variety of types of willful

actions, including recklessness when combined with an additional factor such as frivolousness,

harassment, or an improper purpose."  *Fink*, 239 F.3d at 994.

Although the Ninth Circuit has not addressed the standard of proof required for imposing

sanctions, the clear and convincing evidence standard suffices.  *See Lahiri v. Universal Music &*

*Video Distrib. Corp.*, 606 F.3d 1216, 1219 (9th Cir. 2010) (declining to address the standard of

proof issue because clear and convincing evidence supported the district court's bad faith

finding); *In re Lehtinen*, 564 F.3d 1052, 1061 n.4 (9th Cir. 2009) (same); *F.J. Hanshaw Enters.,*

*Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1143 n.11 (9th Cir. 2001) (same); *Fink*, 239

F.3d at 989 (same).  The attorney-client privilege "protects confidential communications

between attorneys and clients, which are made for the purpose of giving legal advice." *United*

*States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011).  When a communication has more than one

potential purpose, a court considers "whether the *primary purpose* of the communication is to

give or receive legal advice." *In re Grand Jury*, 23 F.4th 1088, 1091 (9th Cir. 2021) (emphasis

added); *see also TCL Commc'n Tech. Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson*, No.

No. SA CV 14–00341–JVS (DFMx), 2016 WL 6922075, at *2 (C.D. Cal. May 26, 2016)

("Courts generally agree that the privilege applies only if the primary or predominate purpose of

the communication is to seek legal advice or assistance.").  "A dual-purpose communication can

only have a single 'primary' purpose." *Greer v. Cnty. of San Diego*, 127 F.4th 1216, 1224 (9th

Cir. 2025) (quoting *In re Grand Jury*, 23 F.4th at 1091).  And privilege claims "must be made

and sustained on a question-by-question or document-by-document basis; a blanket claim of

privilege is unacceptable. The scope of the privilege should be 'strictly confined within the

narrowest possible limits.'" *United States v. Christensen*, 828 F.3d 763, 803 (9th Cir. 2015)

(quoting *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983)).

     The FTC began investigating Amazon in connection with this matter on March 16, 2021.

Dkt. ## 90-2 at 27; 53 at 2.  During the investigation, Amazon produced 29,998 documents.  Dkt.

## 90-2 at 29; 53 at 2.  In October 2022, one of Amazon's in-house attorneys certified under

penalty of perjury that Amazon's privilege logs "set[ ] forth the basis for withholding . . .

responsive information" from the FTC.  Dkt. # 288-18 at 2.  He added that the company's

responses were "complete and true and correct to the best of [his] knowledge, information, and belief." *Id.*

The FTC filed this action on June 21, 2023. Dkt. # 1. During discovery, Amazon produced documents in response to the FTC's requests and provided an updated privilege log for withheld documents. *See, e.g.*, Dkt. # 288-19. The FTC says that Amazon provided the agency with most of its privilege log entries on August 16, 2024. Dkt. ## 286 at 5; 288 at 4 ¶ 29. The agency states that it relied on this privilege log throughout discovery, including in preparation for and during depositions of key witnesses. Dkt. # 286 at 5.

In January and April 2024, the FTC requested that Amazon re-review its privilege logs given its concerns about some of Amazon's privilege assertions, including privilege claims involving Amazon's in-house counsel. Dkt. ## 288-3, 288-5. Amazon's outside counsel responded, "Amazon's thorough pre-production review led to the production of thousands of documents with potential indicia of privilege (including documents involving attorneys) . . . The fact that the FTC has these documents undercuts any assertion that there was any intent to hide them." Dkt. # 288-7 at 2. She added that the FTC's

> "concern[]" with Amazon's privilege log entries where an in-house attorney received a document but apparently did not respond, Jan. 26 Ltr. at 1, wholly misunderstands how Amazon's in-house attorneys — or frankly any other in-house attorneys —provide legal advice. Amazon's in-house attorneys routinely provide legal advice to the Amazon business in a variety of ways, including during meetings and on calls. The fact that a privilege log entry does not show an attorney's response to an email does not mean that the document is not privileged. It could be privileged for a number of reasons including, but not limited to: the fact that the attorney provided legal advice in an earlier email in the chain and that advice was reflected in or carried through to later emails in the chain; or the fact that the attorney provided the advice verbally during a call or meeting. Amazon's good faith privilege claims, as substantiated by our privilege logs, account for these factors.

*Id.* About a year later, Amazon re-reviewed its privilege logs and withdrew its privilege claims as to 91% of its log and produced 69,909 documents to the FTC. Dkt. ## 303 at 3 ¶¶ 8, 11; 334

ORDER - 4

at 2.  Amazon produced these documents to the FTC on a rolling basis from April 2025 until

May 22, 2025.  Dkt. ## 303 at 3 ¶ 9, 304 at 9.  Discovery closed on April 25, 2025.  Dkt. # 199.

Amazon served its amended privilege logs on May 8, 2025 and May 22, 2025.  Dkt. # 303 at 3

¶ 9.

The FTC provided the Court with some of the documents Amazon withheld as privileged

but then produced to the FTC on the eve of or after the discovery cutoff.  In one document, an

Amazon non-attorney employee told another non-attorney employee to mark "[a]nything

involving accidental/uninformed sign ups. . . customers settling without realizing it due to auto-

renew. . .is P&C."[2]  Dkt. # 288-11 at 4.  He said that the documents are "P&C because of the

subscription clarity issues." *Id.*  He also said that "P&Cing docs sucks" and described P&C as "a

lot of adding lawyers to threads, and creating multiple redacted versions of documents." *Id.*

This document does not concern the provision of legal advice.

In a previously withheld email, Defendant Jamil Ghani shared an article titled, "Amazon

faced questions from the FTC about whether it tricked customers into signing up for Prime.

Internal documents show that some employees felt it had" with Amazon employees.  Dkt. # 288-

23 at 2.  In that email, Ghani told them to be "diligent" about "marking docs and emails." *Id.*  In

its privilege log, Amazon logged this document as "[d]iscussing or relating to legal advice

regarding Amazon's company policies."  Dkt. # 288-19 at 2.  There is no discussion of legal

advice in the email.  Furthermore, during Ghani's deposition, the FTC asked if he had ever "told

anyone . . . to mark a document as privileged without regard to whether or not they were actually

seeking legal advice?"  Dkt. # 288-21 at 3.  Ghani stated that he had not.  *Id.*

---

[2] Presumably, "P&C" means "privileged and confidential."

Amazon also withheld an email chain with the subject line "Prime Customer Confusion." Dkt. # 288-8.  In one of the emails, a non-attorney Amazon employee added an in-house attorney to the email chain to "mak[e] it P&C."  *Id*. at 2.  There is no apparent legal advice, or request for it, anywhere in the email chain.  *Id.*

In another withheld email, an in-house attorney thanked Amazon employees for a "good meeting" about "unintentional Prime sign-ups."  Dkt. # 288-10 as 2.  In that email, she instructed employees to "delete the PowerPoint document that was distributed [during the meeting] because of its sensitive content and lack of Privileged & Confidential markings."  *Id.*  She told these employees to confirm via email that they deleted the document.  *Id.*  The document that she instructed employees to delete does not contain any legal advice.  Dkt. # 288-20.

Although Amazon asserts that it withheld these documents because distinguishing between business and legal advice is "especially difficult," the company does not share with the Court any information or explanation about the "complex" or close privilege calls it had to make. *See generally* Dkt. # 302.  The documents mentioned above do not contain any apparent legal advice or request for it.  And Amazon's privilege log entries for these documents unambiguously said that these documents reflect legal advice.  *See* Dkt. # 288-19.

Discovery makes trial "less a game of blind man's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Procter & Gamble Co.,* 356 U.S. 677, 682–683 (1958).  And "[t]he purposes underlying the federal rules are to avoid surprise and the possible miscarriage of justice and to eliminate the 'sporting theory of justice.'" *Brown Badgett, Inc. v. Jennings*, 842 F.2d 899, 902 (6th Cir. 1988) (citing *In re Halkin*, 598 F.2d 176, 192 at n.38 (D.C. Cir. 1979)).

Applying the clear and convincing standard, Amazon's withholding of almost 70,000 documents until the eve of, and after, the April 25, 2025 discovery cutoff—including the

ORDER - 6

documents identified above—was tantamount to bad faith.[3]  Some of these documents have been withheld from the FTC since 2022; at that time, an Amazon in-house attorney certified under penalty of perjury that the company's responses set forth the basis for why certain documents were being withheld from the FTC and he verified that the company's responses were "complete and true."  Dkt. # 288-18 at 2.  When the FTC raised concerns about Amazon's privilege log to the company's outside counsel in 2024, outside counsel informed the agency that Amazon had engaged in a "thorough pre-production review" and even asserted that the agency "misunderstood" how in-house counsel provides legal advice.  Dkt. # 288-7 at 2.

None of Amazon's proffered justifications explain why the company waited so long to amend its privilege logs and produce tens of thousands of non-privileged documents.  Instead, it appears that the desire to gain a tactical advantage led to such conduct.  This type of gamesmanship defies the Federal Rules of Civil Procedure, which require the parties to "to put all their 'cards' on the table before trial."  *Britz Fertilizers, Inc. v. Bayer Corp.*, 665 F. Supp. 2d 1142, 1170 (E.D. Cal. 2009); *Reyes-Santiago v. JetBlue Airways Corp.*, 932 F. Supp. 2d 291, 298 (D.P.R. 2013) (same).  And Amazon's unjustified decision to withhold these documents has necessitated an additional 90 days of discovery for the FTC, and has consumed a significant amount of this Court's time.  Amazon's behavior undermined the guiding principle that litigation must be streamlined to "secure the just, speedy, and inexpensive determination of every action and proceeding."  Fed. R. Civ. P. 1; *see also Nelson v. Adams USA, Inc.,* 529 U.S. 460, 465 (2000).

---

[3] Amazon's outside counsel stated that Amazon re-reviewed its "documents and, on May 8, 2025, served its amended privilege log and produced the corresponding downgraded documents. On May 22, 2025, Amazon supplemented the log and production with a small number of downgraded documents." Dkt. # 303 at 3 ¶ 9.

ORDER - 7

Since sanctions are rooted in equity, the Court looks at the totality of the circumstances to determine what sanctions are appropriate. *Younes v. 7-Eleven, Inc.*, 312 F.R.D. 692, 713 (D.N.J. 2015). "Appropriate or 'just' sanctions may be a warm friendly discussion on the record, a hard-nosed reprimand in open court, compulsory legal education, monetary sanctions, or other measures appropriate to the circumstances." *Id.* (citing *Langer v. Monarch Life Ins. Co.*, 966 F.2d 786, 811 (3d Cir. 1992) (quotations omitted)). The Court has already granted the FTC the relief it requested. *See* Dkt. ## 302, 371. Given the totality of circumstances, the Court finds that Amazon's behavior warrants no more relief except an admonition by this Court. Amazon and its counsel are admonished that their conduct during discovery was tantamount to bad faith. Similar conduct may lead to more serious sanctions.

Dated this 10th day of July, 2025.

John H. Chun
United States District Judge

ORDER - 8