UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC; NEIL LINDSAY, individually and as an officer of Amazon.com, Inc.; RUSSELL GRANDINETTI, individually and as an officer of Amazon.com, Inc.; JAMIL GHANI, individually and as an officer of Amazon.com, Inc.,<br><br>Defendants. | CASE NO. 2:23-cv-00932-JHC<br><br>ORDER DENYING MOTION IN LIMINE |

# I
## INTRODUCTION

This matter comes before the Court on Defendants' Standalone Motion in Limine Regarding Public FTC Statements. Dkt. # 291-1. The Court has considered the materials filed in support of and in opposition to the motion, the rest of the file, and the governing law. The Court finds oral argument unnecessary. Being fully advised, for the reasons below, the Court DENIES the motion.

ORDER DENYING MOTION IN LIMINE - 1

## II
### BACKGROUND

The FTC sued Amazon.com, Inc. and three of the company's executives, Neil Lindsay, Russell Grandinetti, and Jamil Ghani, alleging that they violated Section 5(a) of the Federal Trade Commission Act (FTC Act), 15 U.S.C. § 45(a), and Section 4 of the Restore Online Shoppers' Confidence Act (ROSCA), 15 U.S.C. § 8403. Dkt. # 67 at 1–2 ¶ 1. The FTC contends that Amazon tricked, coerced, and manipulated consumers into subscribing to Amazon Prime by failing to disclose the material terms of the subscription clearly and conspicuously and by failing to obtain the consumers' informed consent before enrolling them. *Id.* at 2 ¶ 2. It also alleges that Amazon did not provide simple mechanisms for subscribers to cancel their Prime memberships. *Id.* at 3 ¶ 7. The FTC is seeking, among other things, civil penalties for Defendants' alleged violations. *Id.* at 2 ¶ 1. Central to the motion, the FTC may seek civil penalties against any person or corporation who violated ROSCA "with *actual knowledge* or *knowledge fairly implied* on the basis of objective circumstances that such act is unfair or deceptive and is prohibited by such rule." 15 U.S.C. § 45(m)(1)(A) (emphasis added).

ROSCA prohibits the sale of goods or services on the Internet through a negative option feature without meeting certain requirements to protect consumers. 15 U.S.C. § 8403. A negative option feature is "in an offer or agreement to sell or provide any goods or services, a provision under which the customer's silence or failure to take an affirmative action to reject goods or services or to cancel the agreement is interpreted by the seller as acceptance of the offer." 16 C.F.R. § 310.2(w). A seller may use a negative option feature if the seller (1) "provides text that clearly and conspicuously discloses all material terms of the transaction before obtaining the consumer's billing information;" (2) "obtains a consumer's express informed consent before charging the consumer's credit card, debit card, bank account, or other

financial account for products or services through such transaction;" and (3) "provides simple mechanisms for a consumer to stop recurring charges from being placed on the consumer's credit card, debit card, bank account, or other financial account." 15 U.S.C. §§ 8403(1) – (3).

In 2019 and 2023, the FTC issued Notices related to rulemaking about negative option features. *See* 84 Fed. Reg. 52393; 88 Fed. Reg. 24716. In 2024, the FTC published the Final Negative Option Rule (Final Rule), 16 C.F.R. § 425 *et seq*. Defendants move in limine, requesting that the Court determine that the FTC's statements in the 2019 Advance Notice of Proposed Rulemaking, the 2023 Notice of Proposed Rulemaking, and the 2024 Final Rule are relevant to their knowledge defense concerning civil penalties. Dkt. # 291-1 at 7. They also seek to preclude the FTC from excluding the statements on relevance grounds. *Id.*

### III
### DISCUSSION

A.   Legal Standards

Motions in limine are "a procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009); *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (noting that while the Federal Rules of Evidence do not explicitly authorize motions in limine "the practice has developed pursuant to the district court's inherent authority to manage the course of trials"). They "are useful tools to resolve issues which would otherwise clutter up the trial." *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017) (quoting *Palmerin v. City of Riverside*, 794 F.2d 1409, 1413 (9th Cir. 1986)). Thus, a court's ruling on a motion in limine "is essentially a preliminary opinion that falls entirely within the discretion of the district court." *Id.*

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed.

R. Evid. 401.  "Irrelevant evidence is not admissible."  Fed. R. Evid. 402.  Courts may exclude relevant evidence if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  "The relevance standard is commonly recognized as one that is necessarily broad in scope in order 'to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'"  *Doherty v. Comenity Cap. Bank & Comenity Bank*, No. 16CV1321-H-BGS, 2017 WL 1885677, at *2 (S.D. Cal. May 9, 2017) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).  And "[t]he court has broad discretion in determining relevancy for discovery purposes."  *Doe v. Trump*, 329 F.R.D. 262, 270 (W.D. Wash. 2018) (citing *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005)).

B.       Relevance of the FTC's Statements During Negative Option Rulemaking

In summary, Defendants contend that the FTC's statements are relevant to whether Defendants had "actual knowledge or knowledge fairly implied" that the Prime enrollment and cancellation flows purportedly violated ROSCA.  Dkt. # 291-1 at 7.  They say that the FTC has "repeatedly admitted" that ROSCA is "unclear and provides the business community with insufficient guidance on how to comply" with the statute.  *Id.* at 3.

The FTC responds that Defendants mischaracterize what the agency said about ROSCA during the Negative Option rulemaking.  Dkt. # 390 at 8.  The FTC says that it has never "admitted" that ROSCA is "unclear" or that the business community is without "guidance" as to how to comply with the statute.  *Id.*  The agency also notes that the relevant question "is not whether ROSCA has—or could have—more detail; the question is whether Defendants had actual knowledge or knowledge fairly implied on the basis of objective circumstances that their cancellation flow" violated ROSCA.  *Id.* at 9.  The agency asserts that the issue is whether

ORDER DENYING MOTION IN LIMINE - 4

Defendants "had sufficient knowledge" such that civil penalties can be imposed for the alleged statutory violations. *Id.* at 10.

First, Defendants contend that (1) "[s]ince 2019, the FTC has made numerous official statements recognizing that [ROSCA] does not provide private parties with enough guidance to know how to comply with the statute"; (2) "the FTC repeatedly admitted that ROSCA is unclear and provides the business community with insufficient guidance"; (3) by "the FTC's own admission that ROSCA is unclear and does not provide guidance on how to comply" with the statute; (4) "the FTC publicly recognized in official documents that ROSCA's undefined terms do not clearly inform businesses of what they must do to comply with the statute"; (5) "the FTC's own admission that ROSCA is unclear and does not provide guidance corroborates Defendants' testimony that they had no reason to believe their conduct violated the law." *See* Dkt # 291-1 at 3–4. Contrary to Defendants' characterizations, the agency did not describe ROSCA in this manner. The record does not show that the agency "recognized" ROSCA as "unclear" or stated that private parties are without information as to how to comply with the statute. *See* 84 Fed. Reg. 52393; 88 Fed. Reg. 24716; 16 C.F.R. § 425 *et seq*.

Next, Defendants assert that the FTC's public statement that "the current framework does not provide clarity about how to avoid deceptive negative option disclosures and procedures" casts doubt on the FTC's contention that Defendants knew that the Prime enrollment and cancellations flows did not "clearly and conspicuously disclose material terms or obtain informed consent." Dkt. # 291-1 at 8 (quoting 84 Fed. Reg. 52393-01 at 52396). But as the paragraphs preceding this statement show, the "current framework" is not specifically related to ROSCA. Instead, it refers to an "existing patchwork of laws and regulations." *Id.* at 52394–96. This "existing patchwork" includes Section 5 of the FTC Act, ROSCA, the Telemarketing Sales

Rule, the Postal Reorganization Act, and the Electronic Fund Transfer Act. *Id.* The FTC's statement is not directed at ROSCA or its requirements.

And Defendants contend that because the FTC has noted that "ROSCA lacks specificity about cancellation procedures and . . . cancellation-related disclosures" that Defendants cannot "predict" what qualifies as a "simple mechanism" under ROSCA. Dkt. # 291-1 at 8 (citations omitted). They also say that because the FTC said "ROSCA . . . provides no details regarding steps marketers must follow" Defendants should not be expected to know how to comply with ROSCA. *Id.* at 9. (citations omitted). But the FTC's statements about ROSCA's "specificity" concerning cancellation procedures or "details" about "steps to follow" are not relevant to a defendant's knowledge (or lack thereof) about their compliance with the statute.[1] And FTC did not say that ROSCA is so unclear as to be unenforceable. The issue is not whether ROSCA could have provided additional, "specific" details. Instead, as it relates to civil penalties, the issues are whether Defendants knew that they were violating ROSCA's requirements to clearly and conspicuously disclose all material terms of the Prime subscription before obtaining consumers' billing information and obtaining customers express, informed consent to those material terms; and whether Defendants knew that the Prime cancellation flow failed to provide consumers with a "simple" cancellation mechanism to prevent recurring charges.[2] The FTC's

---

[1] Defendants do not contend that they relied on the FTC's statements or that the FTC's statements during the Negative Option rulemaking informed their "actual knowledge" of ROSCA's requirements. *See generally* Dkt. # 291-1.

[2] Oher district courts in this Circuit have been able to evaluate ROSCA's requirements and determine whether, based on the evidence, the defendants complied with the statute. *See United States v. MyLife.com, Inc.*, 567 F. Supp. 3d 1152, 1169 (C.D. Cal. 2021) (in resolving the Government's motion for summary judgment, the court determined that the defendant violated ROSCA and that, based on the evidence, the company "did not provide 'simple mechanisms' to stop recurring charges"); *F.T.C. v. Cardiff*, No. ED CV 18-2104-DMG (PLAX), 2020 WL 6540509, at *17 (C.D. Cal. Oct. 9, 2020) (granting the FTC's motion for summary judgment as to its ROSCA claim because no genuine issue of material fact existed as whether the defendants violated the statute); *F.T.C. v. Health Formulas, LLC*, No. 2:14-CV-01649-RFB, 2015 WL 2130504, at *16 (D. Nev. May 6, 2015) (in granting the FTC's motion for a preliminary injunction, the court determined that the FTC had shown a likelihood of success on the

ORDER DENYING MOTION IN LIMINE - 6

statements during the Negative Option Rulemaking do not contribute to resolving these questions. The parties do not dispute ROSCA's language; the issue is whether Defendants had sufficient knowledge for the imposition of civil penalties for their alleged violations of the statute.[3] *See United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 139 (4th Cir. 1996) (noting that a defendant violated a rule with actual knowledge or knowledge fairly implied when "a reasonable person under the circumstances would have known of the existence of the provision and that the action charged violated that provision").

Last, Defendants say that the FTC has identified its 2021 Enforcement Policy Statement Regarding Negative Option Marketing as a "starting point" for understanding its views about ROSCA. Dkt. # 291-1 at 9 (citations omitted). They contend that if the FTC can rely on its Enforcement Policy to support its claims, then Defendants should be allowed to use the agency's statements during the Negative Option Rulemaking to support their knowledge defense. *Id.* In response, the FTC says that it will not be using its Enforcement Policy to support any of its claims.[4] Thus, based on the FTC's representations, Defendants' argument is moot.[5]

---

merits on their ROSCA claim because it "provided evidence that [the] [d]efendants d[id] not provide simple mechanisms for consumers to stop recurring charges, as the mechanism is not stated on [the] [d]efendants' product order pages or in confirmation emails giving the details of each online transaction").

[3] Previously, Defendants described ROSCA as "facially clear." Dkt. # 165 at 41 (citing Dkt. # 131 at 29).

[4] The FTC explains that a deponent mentioned the Enforcement Policy during a Rule 30(b)(6) deposition. Dkt. # 390 at 13. The deponent identified the Enforcement Policy, among other documents, as a source of guidance about the FTC's views of ROSCA. *Id.* (citation omitted).

[5] The FTC contends that its statements during the Negative Option Rulemaking are also inadmissible under Federal Rule of Evidence 403 because the potential for unfair prejudice, confusion, and waste of time substantially outweighs any limited probative value. Dkt. # 390 at 14. The agency says that Defendants mischaracterize FTC's statements as an admission that ROSCA is so ambiguous as to be unenforceable. *Id.* It asserts that such insinuations would unfairly prejudice the jury against the FTC. *Id.* at 14–15. The agency also points out that these statements would also confuse the issues given that the Negative Option Rule is not at issue. *Id.* at 15–16. The agency notes that Defendants have "cherry picked" phrases and that "the Notices contain numerous parts, including summaries of comments from third parties, the then-current scope of the Negative Option Rule, considerations of whether to amend the Negative Option Rule, proposed language for amending the Negative Option Rule, and considerations of any negative impacts from amending the Rule." *Id.* at 16. The FTC says that allowing

ORDER DENYING MOTION IN LIMINE - 7

## IV

## CONCLUSION

Based on the above, the Court DENIES Defendants' motion.

Dated this 24th day of July, 2025.

*[signature: John H. Chun]*

John H. Chun
United States District Judge

---

these statements to be admitted would result in a "mini trial" into the meaning of statements the FTC made in promulgating the Negative Option Rule.  *Id.*  The Court agrees with the FTC.  The FTC's statements during the Negative Option Rulemaking would also be inadmissible under Rule 403.

ORDER DENYING MOTION IN LIMINE - 8