UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC; NEIL LINDSAY, individually and as an officer of Amazon.com, Inc.; RUSSELL GRANDINETTI, individually and as an officer of Amazon.com, Inc.; JAMIL GHANI, individually and as an officer of Amazon.com, Inc.,<br><br>Defendants. | CASE NO. 2:23-cv-00932-JHC<br><br>ORDER GRANTING MOTION TO EXCLUDE DEFENDANTS' EXPERT CRAIG ROSENBERG, PH.D. |

# I
### INTRODUCTION

This matter comes before the Court on Plaintiff FTC's Rule 702 Motion to Exclude Defendants' Expert Craig Rosenberg, Ph.D. Dkt. # 312. The Court has considered the materials filed in support of and in opposition to the motion, the rest of the file, and the governing law. The Court finds oral argument unnecessary. Being fully advised, for the reasons below, the Court GRANTS the motion.

ORDER GRANTING MOTION TO EXCLUDE
DEFENDANTS' EXPERT CRAIG ROSENBERG,
PH.D. - 1

## II

### BACKGROUND

The FTC sued Amazon.com, Inc. and three of the company's executives, Neil Lindsay, Russell Grandinetti, and Jamil Ghani, claiming that they violated Section 5(a) of the Federal Trade Commission Act (FTC Act), 15 U.S.C. § 45(a), and Section 4 of the Restore Online Shoppers' Confidence Act (ROSCA), 15 U.S.C. § 8403.  Dkt. # 67 at 1–2 ¶ 1.  The FTC alleges that Amazon tricked, coerced, and manipulated consumers into subscribing to Amazon Prime.  *Id*. at 2 ¶ 2.  According to the FTC, this was accomplished by failing to disclose the material terms of the subscription clearly and conspicuously and by failing to obtain the consumers' informed consent before enrolling them.  *Id*.  The FTC also alleges that Amazon did not provide simple mechanisms for subscribers to cancel their Prime memberships.  *Id*. at 3 ¶ 7.

Craig Rosenberg, Ph.D., is a consultant who provides advanced engineering services for a wide array of companies.  Dkt. # 336-49 at 7 ¶ 1.  He has a Master of Science and Ph.D. from the University of Washington in Human Factors, a multidisciplinary field that studies how people interact with machines, technology, and their environment.  *Id.* at 7 ¶ 1-2.  His opening report addresses the FTC's allegation that Amazon used deceptive practices known as "dark patterns" in user interface design to drive unintended Prime membership.  *Id.* at 5.  He also produced a report that assesses and responds to the opinions offered by Dr. Marshini Chetty.  Dkt. # 338-23.

To generate his opening report, he (1) reviewed the case materials; (2) reviewed the available academic literature, research, and publicly available resource that he cites in the report; and (3) "carefully considered the evidence and combined the evidence with [his] knowledge, skill, experience, training, education, and [his] work in the area of user interface design and software development over the last 30 years working for a wide range of different companies[.]"  Dkt. # 336-49 at 11.  He relied on his "education, experience, and knowledge in designing,

ORDER GRANTING MOTION TO EXCLUDE
DEFENDANTS' EXPERT CRAIG ROSENBERG,
PH.D. - 2

developing, deploying, and testing a wide range of software applications and graphical user interfaces" and the referenced documents and information to produce his rebuttal report. Dkt. # 338-23 at 6.

Rosenberg's opening report makes several findings. He states that there is ambiguity in the definition of the term "dark patterns," it is difficult to measure clarity in user experience design and subjective evaluations are insufficient to measure this clarity, Amazon's initiatives to enhance clarity demonstrate a commitment to data-driven user experience refinement, Amazon uses empirical evidence to inform design decisions, there are alternative (non-user experience design) explanations for declines in Prime membership subscriptions following clarity-centered changes, and the absence of objective standards for clarity risks penalizing legitimate business practices. Dkt. # 336-49 at 5–6. His rebuttal report also says that Dr. Chetty's "Cognitive Walkthrough" and related opinions are flawed because they are based on her subjective analysis of Amazon's design elements. Dkt. # 338-23 at 7. According to Rosenberg, Dr. Chetty's "Think Aloud User Study" is likewise flawed because it is subjective and is therefore neither predictive nor reflective of real-world consumer behavior. *Id.* at 7–8.

The FTC moves to exclude Rosenberg's testimony on three grounds. Dkt. # 312. First, it says his methods are unexplained and unreliable. *Id.* at 5–8. Second, it says he is not qualified to testify on the subject of his opinions. *Id.* at 9–12. And third, it says his testimony is irrelevant and confusing.

//

//

//

ORDER GRANTING MOTION TO EXCLUDE
DEFENDANTS' EXPERT CRAIG ROSENBERG,
PH.D. - 3

# III

## DISCUSSION

A.    Legal Standards

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Under Rule 702, a witness "who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise" provided:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.[1]

Courts must ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Hyer v. City & Cnty. of Honolulu*, 118 F.4th 1044, 1055 (9th Cir. 2024) (quoting *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1024 (9th Cir. 2022)). They have "broad discretion" in making such evidentiary rulings. *Id.* (citing *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1065 (9th Cir. 2017)).

Expert testimony is relevant if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert v. Merrell Dow Pharms., Inc.* ("*Daubert I*"), 509 U.S. 579, 589 (1993) (citing Fed. R. Evid. 702(a)). "The relevancy bar [for expert testimony] is low, demanding only that the evidence 'logically advances a material aspect of the proposing party's

---

[1] Rule 702 was amended in 2023. *See* Notes of Advisory Committee on 2023 Amendments to Rule 702. The Advisory Committee Notes to the 2023 amendment state that the changes were intended to "clarify and emphasize" the plain language of Rule 702. *Id.* And "[n]othing in the amendment imposes any new, specific procedures." *Id.* Thus, cases interpreting Rule 702 that predate the 2023 amendment still apply. *See Reflex Media, Inc. v. SuccessfulMatch.com*, 758 F. Supp. 3d 1046, 1049 (N.D. Cal. 2024).

case.'" *Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014) (quoting *Daubert v. Merrell Dow Pharm., Inc.* ("*Daubert II*"), 43 F.3d 1311, 1315 (9th Cir. 1995)). "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010).

Courts apply four factors in determining whether expert testimony is reliable. These include "1) whether a theory or technique can be tested; 2) whether it has been subjected to peer review and publication; 3) the known or potential error rate of the theory or technique; and 4) whether the theory or technique enjoys general acceptance within the relevant scientific community." *United States v. Hankey*, 203 F.3d 1160, 1167 (9th Cir. 2000) (citing *Daubert I*, 509 U.S. at 592–94). But this list of factors is neither exhaustive nor intended to be applied in every case. *Id.* (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)). A court "not only has broad latitude in determining whether an expert's testimony is reliable, but also in deciding how to determine the testimony's reliability." *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) (internal quotations omitted). And "[w]hile evidence that suffer[s] from serious methodological flaws . . . can be excluded, courts are not permitted to determine the veracity of the expert's conclusions at the admissibility stage." *Teradata Corp. v. SAP SE*, 124 F.4th 555, 566 (9th Cir. 2024) (internal quotations and citations omitted) (second alteration in original).

The proponent of the expert testimony bears the burden of establishing admissibility by a preponderance of the evidence. *See Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996); *see also Qualey v. Pierce Cnty.*, 2025 WL 254810, at *3 (W.D. Wash. Jan. 21, 2025). And courts liberally construe Rule 702 in favor of admissibility. *See Daubert I*, 509 U.S. at 588; *see also Chinn v. Whidbey Pub. Hosp. Dist.*, 2021 WL 5200171 (W.D. Wash. Nov. 9, 2021).

ORDER GRANTING MOTION TO EXCLUDE
DEFENDANTS' EXPERT CRAIG ROSENBERG,
PH.D. - 5

B.   Reliability of Rosenberg's Testimony

Rosenberg's opening report, rebuttal report, and deposition testimony all indicate the primary source of his expert opinions is his experience, training, and education as a human factors engineer. Dkt. ## 336-49 at 11; 338-23 at 6; and 338-29 at 108:4–8.

To be sure, "an expert's opinion may be based on the expert's experience and knowledge of the industry as a whole." *Wyatt B. v. Kate Brown*, 2022 WL 3445767, at *4 (D. Or. Aug. 17, 2022) (quoting *United States v. Laurienti*, 611 F.3d 530, 548 (9th Cir. 2010)). But courts are mindful that "reliability becomes more, not less, important when the 'experience-based' expert opinion is . . . not subject to routine testing, error rate, or peer review type analysis, like science-based expert testimony." *Porter v. Martinez*, 68 F.4th 429, 445 (9th Cir. 2023) (quoting *United States v. Valencia-Lopez*, 971 F.3d 891, 898 (9th Cir. 2020)). Also, "[e]xperts that rely primarily on experience must explain 'how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" *Moussouris v. Microsoft Corp.*, 311 F. Supp. 3d 1223, 1246 (W.D. Wash. 2018) (quoting Fed. R. Civ. P. 702, Advisory Committee Notes, 2000 Amendments). This means that the expert here cannot "rely on the mere fact of his experience with respect to [human factors engineering] matters to support his conclusion." *Id.* (cleaned up) (internal citation omitted).

Liberally construing Rule 702 in favor of admissibility, Rosenberg's opinion does not show how his experience informs his conclusions. He draws no methodological nexus between his conclusions and his experience, education, and training, other than to say his conclusions are based on his experience, education, and training. This circular reasoning is insufficiently reliable. For instance, Rosenberg engaged in this exchange at his deposition:

> Q: I want to know what was the methodology that was employed to take you from your experience and expertise and education in human factors and got you to the

ORDER GRANTING MOTION TO EXCLUDE
DEFENDANTS' EXPERT CRAIG ROSENBERG,
PH.D. - 6

> conclusion that, "No, thanks I don't want free delivery," isn't shaming and won't provoke feelings of regret.
>
> . . .
>
> A: I think I can only point you to what I've already said. I keep saying the same things. It's my education, experience, training, and work in the field of designing and evaluating user interfaces over the last 30 years.
>
> . . .
>
> Q: How did that experience enable you to conclude that the link language that we're discussing here wouldn't cause feelings of shame or regret? Or you just don't know?
>
> . . .
>
> A: **I can't articulate why – why it is**, nor would I think that any user interface engineer, unless they come with an article that says, "Oh, well, the basis is just this one article," but it's broader than that. The basis is all of my education and training and experience.

Dkt. # 338-29 at 265:3–266:14 (emphasis added); *see id.* at 100:13–15 (basis of his conclusion is education, training, and experience), 107:4–108:16 (same), 186:21–187:7 (same), 265:3–19 (same), 284:9–14 (same); *see also* Dkt. # 384-7 at 227:12–22 (same). Rosenberg's inability to articulate how his education, training, and experience have led him to his conclusions show these conclusions are not the product of a reliable method; therefore, his testimony is inadmissible.[2]

Amazon says Rosenberg's "references to the 'totality' of his experiences are not evasions, but acknowledgments that his expert conclusions stem from integrated professional judgment based on decades of interface design." Dkt. # 347 at 7. Even so, Rosenberg must explain how his decades of interface design inform his expert conclusions. By his own admission, he cannot do so.

---

[2] Given this conclusion, this Order does not address the other arguments raised by the FTC.

ORDER GRANTING MOTION TO EXCLUDE
DEFENDANTS' EXPERT CRAIG ROSENBERG,
PH.D. - 7

Amazon also says Rosenberg has engaged in "textbook experience-based expert analysis" under *Porter v. Martinez*. *Id*. That case dealt with the constitutionality of a California ordinance regulating automobile horns. 68 F.4th at 434–35. As part of its argument, California relied heavily on the experience-based expert testimony of a California Highway Patrol Sergeant, William Beck. *Id*. at 436. The district court concluded "that Sergeant Beck's opinions were relevant, reliably grounded in his training and experience, and helpful to the court." *Id*. at 445. The Ninth Circuit held that the district court did not abuse its discretion as it was infeasible to conduct scientific studies on the disputed issues, so it was appropriate to treat Sergeant Beck as an expert based on his decades of experience enforcing traffic safety. *Id*. And it noted "Sergeant Beck's decades of experience in highway patrol allowed him to elucidate 'the practical realities' of [the ordinance]'s relationship to traffic safety." *Id*. But the court did not grapple with the question of whether Sergeant Beck's conclusions were "reliably grounded in his training and experience"—the issue presented here. *Id*. Thus, *Porter* is distinguishable from this case and does not require that the Court find Rosenberg's testimony to be admissible.

## IV

### CONCLUSION

For the reasons above, the Court GRANTS the motion. Dkt. # 312.

Dated this 11th day of August, 2025.

*John H. Chun*
John H. Chun
United States District Judge

ORDER GRANTING MOTION TO EXCLUDE
DEFENDANTS' EXPERT CRAIG ROSENBERG,
PH.D. - 8