The Honorable John H. Chun

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FEDERAL TRADE COMMISSION,

      Plaintiff,

    v.

AMAZON.COM, INC., *et al.*,

      Defendants.

No. 2:23-cv-0932-JHC

DEFENDANTS' MOTIONS *IN LIMINE*

NOTED ON MOTION CALENDAR:
SEPTEMBER 2, 2025

ORAL ARGUMENT REQUESTED

DEFENDANTS' MOTIONS *IN LIMINE*
(2:23-cv-0932-JHC)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## TABLE OF CONTENTS

**Page**

MIL 1: Exclude Financial and Remedies Evidence Unrelated to Alleged Conduct.......................1

MIL 2: Exclude Evidence or Argument Concerning Discovery Disputes ....................................4

MIL 3: Preclude Argument That Counsel Involvement Implies Knowledge................................9

MIL 4: Exclude Consumer Witness Testimony and Complaints ..................................................11

    A.    Consumer Witnesses Should Be Excluded Under Rules 401, 402, and 403. ........11

    B.    Consumer Sentinel Complaints Are Inadmissible Under Rule 807......................15

MIL 5: Exclude Non-U.S. Evidence................................................................................................15

MIL 6: Exclude Evidence or Argument on Certain Surveys ........................................................18

    A.    The Surveys Are Fundamentally Unreliable as Empirical Evidence of
Non-Consensual Enrollment. .............................................................................19

    B.    The Surveys Should Be Excluded Under Federal Rules of Evidence 401,
402, and 403.........................................................................................................22

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Defendants move for an order excluding or limiting evidence at trial regarding the six topics below. Pursuant to LCR 7(d)(5), Defendants certify that, through their counsel, they conferred with Plaintiff's counsel in a good faith effort to reach agreement on these motions *in limine* but reached an impasse on the topics below. *See* August 11, 2025 Declaration of Joseph A. Reiter ¶¶ 3–9; Ex. 1.[1]

**MIL 1: Exclude Financial and Remedies Evidence Unrelated to Alleged Conduct**

The Court should exclude from the jury trial all financial and remedies evidence unrelated to the jury's liability determinations.[2] The jury will decide whether Amazon and three individuals violated ROSCA and the FTC Act. If it finds liability, the jury will also decide whether the FTC has met the prerequisites for civil penalties. But the amount of any penalties—and whether the FTC is entitled to restitution or injunctive relief—is solely for the Court.

Because financial and remedies evidence is relevant only to the Court's post-verdict role, the jury should not hear any evidence or argument on: (1) the compensation or wealth of Amazon's executives, including the Individual Defendants and their families; (2) Amazon's revenues or profits; (3) the remedies sought, such as restitution, civil penalties, or injunctive relief; and (4) quantifications of alleged "consumer harm" to support restitution. This evidence is irrelevant under Rules 401 and 402 and would pose a risk of unfair prejudice under Rule 403.

It is well established that liability and the availability of civil penalties are properly decided by the jury at trial, whereas remedial matters—the amount of any civil penalties, restitution, and injunctive relief, are for the Court to decide post-verdict. *See Tull v. United States*, 481 U.S. 412, 425, 427 (1987) (penalty amounts before the judge after jury verdict on liability); *see also United States v. Dish Network, L.L.C.*, 754 F. Supp. 2d 1002, 1003 (C.D. Ill. 2010) (liability for civil penalties to be decided by a jury, but the court determines the amount and any equitable relief); *FTC v. Com. Planet, Inc.*, 815 F.3d 593, 599 (9th Cir. 2016) (order to

---

[1] "Ex." or "Exs." refer to exhibits attached to the August 11, 2025 Declaration of Joseph A. Reiter.

[2] Subject to the Court's preferences, the Parties agree that evidence relevant only to "judge questions" may be submitted outside the presence of the jury, after the jury trial. *See* Ex. 1 at 13.

DEFENDANTS' MOTIONS *IN LIMINE*
(2:23-cv-0932-JHC) - 1

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1  pay restitution is part of the "court's inherent equitable power"), *abrogated on other grounds*,

2  593 U.S. 67 (2021). The FTC acknowledged as much in its Pretrial Statement, which recognizes

3  that the remedial issues will be resolved after the jury trial, "based on the evidence adduced at

4  trial and additional evidence presented solely to the Court." Ex. 2 at 7.

5      Nonetheless, Amazon anticipates that the FTC may reference or introduce such evidence

6  at trial. The Court should exclude it as irrelevant and, in any event, as unduly prejudicial under

7  Rule 403.

8      *First*, the FTC has included the Individual Defendants' compensation documents on its

9  list of trial exhibits. *See* Ex. 3 at Exs. 179, 576–80; *see also* Dkt. 295 at 2 ("Defendants have

10  provided the FTC with financial information about their compensation by Amazon. *See* Dkt. 261

11  at 16."). But in the course of denying the FTC additional discovery on the Individual

12  Defendants' financial position as "premature," this Court has already explained that the

13  Individual Defendants' financial information "has no bearing on the FTC's ability to prove the

14  merits of its underlying claims." Dkt. 295 at 2. The same goes for financial information about

15  other Amazon executives, including its founder. This financial evidence is therefore irrelevant.

16  *See* Fed. R. Evid. 401, 402.

17      Even if this evidence were relevant, it must be excluded under Rule 403, because the risk

18  of prejudicing the Defendants outweighs any minimal probative value. As courts have long

19  recognized, "the presentation of evidence of a defendant's net worth" and finances "creates the

20  potential that juries will use their verdicts to express biases against big businesses." *State Farm*

21  *Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417 (2003). Indeed, courts regularly exclude

22  executive compensation evidence on these grounds. *See, e.g.*, *Strategic Partners, Inc. v. FIGS,*

23  *Inc.*, 2022 WL 17348175, at *2 (C.D. Cal. Sept. 26, 2022) ("[A]ny mention of the net worth" of

24  a CEO should be excluded because "that information may prejudice [defendant's] case in the

25  eyes of the jury." (citing *In re Homestore.com, Inc.*, 2011 WL 291176, at *1 (C.D. Cal. Jan. 25,

26  2011) ("Evidence of a party's financial condition is generally not relevant and can be unduly

27  prejudicial, as it can distract the jury from the real issues in the case."))); *Collins v. Milliman,*

DEFENDANTS' MOTIONS *IN LIMINE*
(2:23-cv-0932-JHC) - 2

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Inc.*, 2023 WL 3891749, at *4 (W.D. Wash. June 8, 2023) (excluding evidence of the parties' financial conditions, which "do not make any fact related to [plaintiff's] claims more or less probable"); *Amboy Bancorporation v. Jenkens & Gilchrist*, 2008 WL 3833582, at *5 (D.N.J. Aug. 13, 2008) (the personal wealth of officers, directors, and shareholders "has no bearing on any issue or defense in this case"), *vacated in part on other grounds*, 432 Fed. App'x 102 (3rd Cir. 2011); *Sturm v. Davlyn Invs., Inc.*, 2013 WL 8604661, at *6 (C.D. Cal. Nov. 6, 2013) (granting motion *in limine* because "[d]efendants' financial condition is irrelevant" to liability and "would be unfairly prejudicial"); *Escobar v. Airbus Helicopters SAS*, 2016 WL 5897554, at *7 (D. Haw. Oct. 7, 2016) (similar); *Bryant v. OptumRX Pharmacy, Inc.*, 2017 WL 5714721, at *3 (C.D. Cal. May 10, 2017) (similar).

*Second,* and similarly, the market share, revenue, or profitability of Amazon has no tendency to prove or disprove whether Amazon violated ROSCA or the FTC Act. References to this information, or evidence about it, are therefore irrelevant and must be excluded. *See* Fed. R. Evid. 401, 402. And again, even if this evidence were relevant, it must be excluded because of the prejudicial effect of evidence about corporate earnings. *See, e.g.*, *State Farm*, 538 U.S. at 417.

*Third*, introducing evidence or argument about remedies at the liability stage would impermissibly invite the jury to consider punishment or compensation—matters that are for the Court alone to decide. Courts also regularly exclude this information from trial. *See, e.g.*, *Campbell v. Union Pac. R.R. Co.*, 2021 WL 1341037, at *6 (D. Idaho Apr. 9, 2021) (evidence on injunctive relief should be excluded, because "[i]njunctive relief is a question for the Court, not the jury, and any evidence related thereto is not relevant and would risk confusion of the issues"); *Grace v. Apple, Inc.*, 2020 WL 227404, at *4 n.3 (N.D. Cal. Jan. 15, 2020) (excluding evidence regarding equitable restitution because that was "for the Court to decide, not the jury"); *United States ex rel. Scultellaro v. Capitol Supply, Inc.*, 2017 WL 9889370, at *2 (D.D.C. Sept. 20, 2017) (granting motion *in limine* excluding references to civil penalties).

DEFENDANTS' MOTIONS *IN LIMINE*
(2:23-cv-0932-JHC) - 3

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Fourth*, and for the same reasons, the Court should exclude from the liability trial the FTC's expert evidence in support of its restitution demand. The FTC's expert, Dr. Neale Mahoney, claims to have quantified the harm to consumers from Amazon's enrollment and cancellation flows, in support of the FTC's demand for restitution. *See* Dkt. 325, Ex. 18 (Mahoney Report); Dkt. 323 at 1 (Defs.' Rule 702 Mot. to Exclude). But this Court, not the jury, will decide whether restitution is available and, if so, in what amount. *See Com. Planet, Inc.*, 815 F.3d at 599. So even if Dr. Mahoney's opinions about the presence of consumer harm are relevant and admissible at the liability phase, *but see* Dkt. 323 (seeking exclusion of Dr. Mahoney's report), his (deeply flawed) efforts to quantify that harm are not. In all events, any probative value those quantified estimates have at the liability phase is substantially outweighed by the risk of prejudicing Amazon by allowing the jury to hear Dr. Mahoney opine that Amazon owes nearly *a billion dollars* in restitution—a sum the sheer size of which could (wrongly) suggest that Amazon is liable. *See* Fed. R. Evid. 403; *United States v. Thompson*, 606 F. Supp. 3d 1058, 1065 (W.D. Wash. 2022) (recognizing that a "very large sum … alone may mislead and confuse the jury").

For all of these reasons, the FTC should be precluded from introducing any evidence or argument on financial and remedies evidence unrelated to liability.

## MIL 2: Exclude Evidence or Argument Concerning Discovery Disputes

Pursuant to Federal Rules of Evidence 401, 402, and 403, the Court should exclude all evidence or argument concerning the Parties' discovery disputes, including any claim that Amazon delayed the FTC's pre-suit investigation by "fail[ing] to timely produce the documents the CIDs require," Dkt. 69 ("Am. Compl.") ¶¶ 239–55; any allegation that Defendants mislabeled or over-designated documents as privileged, *id.* ¶¶ 235–38; Dkts. 286, 334; and any reference to orders sanctioning Amazon's "conduct during discovery." Dkt. 404 at 8; Dkt. 371.

Courts routinely preclude reference to discovery disputes—including disputes over privilege claims—because they are irrelevant, risk unfair prejudice, confuse the issues, and mislead the jury. *See, e.g.*, *Van v. Language Line Servs., Inc.*, 2016 WL 3566980, at *4 (N.D.

DEFENDANTS' MOTIONS *IN LIMINE*
(2:23-cv-0932-JHC) - 4

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Cal. June 30, 2016) (excluding "evidence regarding discovery disputes" and "claims of privilege" given "[t]he risk of unfair prejudice, confusing the issues, misleading the jury, and wasting time"); *Multimedia Pat. Tr. v. Apple Inc.*, 2012 WL 12868264, at *5 (S.D. Cal. Nov. 20, 2012) (precluding parties from "making any references to pretrial discovery disputes, discovery negotiations, and/or claims of privilege"); *Wyatt Tech. Corp. v. Malvern Instruments, Inc.*, 2010 WL 11505684, at *16 (C.D. Cal. Jan. 25, 2010) (to "bring the parties' discovery disputes into the courtroom" would "waste the jury's time and likely confuse the true issues in this case"); *Barnett v. Gamboa*, 2013 WL 174077, at *2 (E.D. Cal. Jan. 16, 2013) (excluding "[e]vidence of discovery disputes between the parties or reference to whether Defendants' production complied with the rules governing discovery"); *Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris, Inc.*, 2000 WL 1805359, at *2 (E.D.N.Y. Dec. 11, 2000) (granting motion *in limine* to exclude references to alleged discovery abuses).

This case is no different; the FTC's discovery allegations are irrelevant to the issues for the jury. Although the FTC previously argued that discovery conduct and privilege claims are relevant to whether the statute of limitations will be tolled, *see* Dkt. 351 at 43–56, and to the calculation of civil penalties, Ex. 4 at 6:2–12, the Parties now agree that these are "[d]eterminations to be made by the Court," not a jury.[3] Ex. 2 at 7. Because the FTC may submit evidence related to these issues "after trial if appropriate," Dkt. 295, such evidence is irrelevant and inadmissible at the jury trial. *See, e.g.*, *Phillips-Kerley v. City of Fresno*, 2025 WL 1825305, at *10 (E.D. Cal. July 2, 2025) ("Insofar as this evidence relates only to the Court's equitable obligations … , the jury will not decide these issues, and this evidence is not relevant or admissible at the trial.").[4]

---

[3] As noted *supra* at , note 1, subject to the Court's preferences, the Parties agree that evidence relevant only to "judge questions" may be submitted outside the presence of the jury, after the jury trial. *See* Ex. 1 at 1–3.

[4] As explained in Amazon's motion for summary judgment, the FTC's equitable estoppel argument also fails as a matter of law, including because the FTC failed to timely disclose it, and because the FTC blocked basic discovery into its elements. *See* Dkt. 378 at 18–20.

DEFENDANTS' MOTIONS *IN LIMINE*
(2:23-cv-0932-JHC) - 5

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    The FTC also asserts that Defendants' privilege markings "establish their consciousness

2  of guilt," and argues that this is relevant to prove "actual knowledge" of ROSCA violations. Dkt.

3  126 at 51. But this theory distorts the "actual knowledge" standard, which requires proof of

4  specific knowledge that the Prime flows were prohibited by ROSCA, *see* Dkt. 409 at 6–7, not

5  "bad faith" in connection with privilege designations.[5] The FTC's proffered argument also

6  confuses the individuals whose "knowledge" matters for civil penalties—Amazon's privilege

7  calls resulted from a process that involved outside counsel with no role in designing the Prime

8  flows, and who did not treat employees' "P&C" markings as dispositive. *See* Dkt. 303 (Rippey

9  Decl.) ¶¶ 5–7.

10    In arguing otherwise, the FTC attempts to draw an analogy to patent cases, in which

11  some courts have held that misconduct during discovery "may be" evidence of post-suit willful

12  infringement and deferred ruling on the admission of discovery disputes until trial. *E.g., Stone*

13  *Brewing Co., LLC v. Millercoors LLC*, 2021 WL 63139, at *6 (S.D. Cal. Jan. 7, 2021); *Corning*

14  *Optical Commc'ns Wireless Ltd. v. Solid, Inc.*, 2015 WL 5569095, at *2 (N.D. Cal. Sept. 22,

15  2015). But willfulness in the patent context is a different legal standard, which courts have

16  resolved by applying factors not relevant here, including "the infringer's behavior as a party to

17  the litigation." *IMX, Inc. v. Lendingtree, LLC*, 2006 WL 38918, at *1 (D. Del. Jan. 6, 2006). No

18  such factor applies here, and for good reason: actual knowledge is a jury question, and juries are

19  not well-positioned to evaluate whether a party's conduct in litigation suggests actual knowledge

20  of illegality.

21    Indeed, even if Amazon's discovery conduct were relevant (although it is not), it would

22  be properly excluded under Rule 403. If the FTC were allowed to allege discovery misconduct

23  before the jury, it would lead to a "mini-trial" over the Parties' interactions throughout four years

---

[5] The FTC's "consciousness of guilt" argument is also inconsistent with its prior characterizations of the "actual knowledge" standard. Previously, the FTC argued that "[o]nly information known to Defendants at the time of their violative conduct is potentially relevant to whether they had 'actual knowledge.'" Dkt. 220 at 16. Yet now, the FTC seeks to prove "actual knowledge" by introducing privilege calls that were not even made until years after the alleged violations occurred.

DEFENDANTS' MOTIONS *IN LIMINE*
(2:23-cv-0932-JHC) - 6

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    of pre- and post-suit litigation. This would include, among other things: (i) foundational

2    background regarding document and privilege reviews, the meet-and-confer process, and the

3    nature of the attorney-client privilege; (ii) testimony from Amazon's in-house and outside

4    litigation counsel; (iii) competing characterizations of what happened during the FTC's pre-suit

5    investigation and in post-suit discovery; and (iv) descriptions of the process underlying

6    Amazon's privilege calls and document productions.

7         The FTC's pretrial statement confirms how distracting and time-wasting this would be.

8    The FTC's witness list designates Amazon's in-house counsel to testify regarding the Court's

9    sanctions orders and "Amazon's 'privileged and confidential' marking practices," and also

10   includes an unspecified FTC witness to testify about the FTC's "[r]eceipt of … documents" in an

11   entirely different case: "the FTC/Amazon competition investigation and litigation." Ex. 5 at 6, 9.

12   The FTC's exhibit list includes: (1) numerous meet and confer communications from the pre-suit

13   investigation and this litigation; (2) a "Summary Regarding Defendants' Privilege Log"; (3) this

14   Court's orders denying Defendants' motions to compel and granting the FTC's motion for

15   sanctions; (4) one of Defendants' motions to compel; and (5) a declaration from in-house counsel

16   submitted in opposition to the FTC's motion to "desequester." Ex. 3 at lines 416, 575, 600, 763–

17   65, 769, 771–73, 775, 797, 802–03, 805, 810, 812. The FTC's deposition designations include

18   thousands of lines of testimony from a partner at Covington & Burling, including testimony

19   regarding her personal compensation. Ex. 6 at 19–23. And the FTC further intends to designate

20   Amazon attorneys' instructions at depositions not to respond to questions that invade privilege.

21   Ex. 7.

22        If the FTC were permitted to introduce this distracting evidence in support of its

23   misleading narrative, Defendants would be forced to respond. For example, any argument about

24   Amazon's privilege practices would open the door to testimony about the FTC's own broad and

25   improper assertions of privilege, including instructions to FTC witnesses not to identify "who at

26   the FTC, if anyone, reviewed documents that Amazon produced during the investigation," and

27   instructions not to disclose communications with third party witnesses. Ex. 8 at 29:9–15, 117:13–

DEFENDANTS' MOTIONS *IN LIMINE*
(2:23-cv-0932-JHC) - 7

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1   119:7, 268:15–21, 269:12–25, 271:24–273:6. Moreover, any argument about Amazon

2   supposedly delaying the FTC's investigation would open the door to evidence that the FTC's

3   sole investigator "didn't review any of the documents that Amazon produced," *id.* 30:2–5, and

4   that the only other FTC attorney on the case until April 2022 admitted that she "wouldn't have

5   the capacity to devote much time and attention to the matter," Dkt. 327-27; waited months to

6   open Amazon's productions, Dkt. 327-59; could not recall reviewing all of them, Dkt. 327-23;

7   and was removed because "the needs of this case were not compatible with her other

8   obligations." Dkt. 327-15.

9        Rule 403 exists precisely to avoid the kinds of distractions that the FTC is proposing, and

10  to ensure that trial remains focused on the issues and evidence that matter. *See Old Republic Ins.*

11  *Co. v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 2006 WL 3782994, at *13 (N.D. Ill.

12  Dec. 21, 2006) (precluding defendant from introducing plaintiff's "Erroneous Privilege Log,"

13  which would have caused "a 'trial within a trial'" in which the plaintiff would "be required to

14  call its previous counsel to testify as to the circumstances surrounding the mistake"); *Pellegrini*

15  *v. Gooder*, 2012 WL 12893745, at *1 (C.D. Cal. Dec. 6, 2012) (excluding, as irrelevant, "all

16  references to the sanction previously imposed on the Defendants with regard to discovery

17  disclosures"); *Richardson v. Union Oil Co. of Cal.*, 170 F.R.D. 333, 334 (D.D.C. 1996)

18  (following finding of defendant's bad faith, precluding plaintiff from "present[ing] evidence at

19  trial regarding the discovery misconduct" given its "potential for creating a distracting and

20  confusing side-issue which would only divert the jury from its main task").

21       Amazon's privilege assertions should also be excluded for a separate, independently

22  sufficient reason: they would cause significant unfair prejudice by encouraging the jury to

23  speculate that lawyers told Defendants that the conduct at issue violated the law. It is widely

24  recognized that, when jurors learn that a party has asserted privilege over an attorney-client

25  communication, they often assume that the communication was inculpatory. *See DataTreasury*

26  *Corp. v. Wells Fargo & Co.*, 2010 WL 11538713, at *17 n.6 (E.D. Tex. Feb. 26, 2010)

27  ("[E]vidence that Defendant obtained opinions of counsel but has declined to produce them

DEFENDANTS' MOTIONS *IN LIMINE*
(2:23-cv-0932-JHC) - 8

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1   would likely lead to an inference by the jury that such opinions of counsel were negative."

2   (citation omitted)); *McKesson Info. Sols., Inc. v. Bridge Med., Inc.*, 434 F. Supp. 2d 810, 812

3   (E.D. Cal. 2006) ("It is inescapable that the jury would likely conclude that Bridge received an

4   unfavorable [legal] opinion, otherwise Bridge would reveal it."). That inference would be

5   especially prejudicial in this case, where a jury determination on Defendants' knowledge could

6   trigger reputational harm to the Individual Defendants and—according to the FTC—expose them

7   to substantial civil penalties, potentially in the hundreds of millions of dollars. And there would

8   be no way for Defendants to rebut that improper inference without waiving privilege over their

9   communications with counsel.

10        The Court's orders on sanctions do not require admission of this information. To the

11  contrary, those orders recognize "that Amazon's behavior warrants no more relief" than the

12  significant sanctions already imposed. Dkt. 404 at 8. Allowing the FTC to re-litigate the same

13  underlying issues before the jury would amount to an improper and significant evidentiary

14  sanction, contrary to the Court's rulings. Because the Parties' discovery disputes are irrelevant,

15  highly prejudicial, and would confuse the issues and waste time, those disputes should be

16  excluded.

17  **MIL 3: Preclude Argument That Counsel Involvement Implies Knowledge**

18        The Court should preclude the FTC from arguing that the presence or involvement of

19  Amazon's in-house counsel in meetings or emails implies that Amazon or the Individual

20  Defendants knew, or should have known, that their conduct was unlawful. It is standard practice

21  at any company, especially one of Amazon's size and complexity, for employees to confer with

22  in-house counsel. Courts have recognized that such consultation is not only expected but

23  affirmatively "encourage[d]" as part of the attorney-client relationship. *Optronic Techs., Inc. v.*

24  *Ningbo Sunny Elec. Co.*, 2019 WL 428782, at *3 (N.D. Cal. Feb. 4, 2019). But the FTC's

25  Amended Complaint contorts this unremarkable fact to contend that such conferral results in

26  "actual knowledge or knowledge fairly implied on the basis of objective circumstances that their

27  actions are unfair or deceptive and are prohibited by ROSCA." Am. Compl. ¶¶ 259–60. The FTC

DEFENDANTS' MOTIONS *IN LIMINE*
(2:23-cv-0932-JHC) - 9

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

has also served written discovery designed to establish that in-house counsel was aware of various legal requirements.

The inference the FTC seeks to draw is not appropriate nor relevant. Defendants' conferral with legal counsel shows nothing beyond the mere fact that counsel was consulted for advice. *See, e.g.*, *Luck v. McMahon*, 2021 WL 4248887, at *14 (D. Conn. Sept. 17, 2021) (rejecting plaintiff's requested inference that defendants acted with a "dishonest purpose" based in part on the fact that defendants "sought the advice of their attorneys").

Further, "a primary purpose of the attorney-client privilege is to encourage parties to seek legal advice to guide them through the thickets of complex laws." *Optronic Techs.*, 2019 WL 428782, at *3. The FTC's argument turns this pillar on its head, urging the jury to infer that consultations with counsel are nefarious. This approach presents a serious risk of juror speculation and confusion. It also severely prejudices Defendants. To rebut the FTC's arguments, Defendants would need to waive privilege and disclose the substance of their attorney-client communications. A court in this District has excluded "argument[s], reference[s], or comment[s] on [a party's] meetings, communications, and advice from attorneys" under similar circumstances where, as here, such evidence may "intrude upon the attorney-client privilege" and create "a negative inference" that would require waiver of the privilege to rebut. *Qualey v. Pierce Cnty.*, 2025 WL 948511, at *7–8 (W.D. Wash. Mar. 28, 2025); *see also Parker v. Prudential Ins. Co. of Am.*, 900 F.2d 772, 775 (4th Cir. 1990) (noting that inferences about substance of attorney advice "would intrude upon the protected realm of the attorney-client privilege" and that to "protect that interest, a client asserting the privilege should not face a negative inference about the substance of the information sought").

The FTC should not be permitted to turn the mere involvement of counsel into a proxy for scienter or wrongdoing. Without Amazon's voluntary waiver of privilege and subsequent disclosure of legal advice, the FTC should not be permitted to argue that the mere presence or involvement of in-house counsel implies that Defendants knew their conduct violated ROSCA as the FTC understands it. *Cf. Abdo v. Fitzsimmons*, 2022 WL 2276898, at *1 (N.D. Cal. June 23,

DEFENDANTS' MOTIONS *IN LIMINE*
(2:23-cv-0932-JHC) - 10

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    2022) (noting that unless defendants show that they "(1) made a complete disclosure to the

2    professional; (2) requested the professional's advice as to the legality of the contemplated action;

3    (3) received advice that it was legal; and (4) relied in good faith on that advice," any mention

4    that lawyers were involved is "a Rule 403 problem [because] the references to attorneys may

5    confuse the jury and unfairly prejudice the [other party]"). The FTC must prove its case at trial; it

6    cannot use the existence of in-house counsel as a shortcut to establish knowledge of wrongdoing.

7    **MIL 4: Exclude Consumer Witness Testimony and Complaints**

8         The FTC concedes that the reasonable consumer standard governs its claims. Because

9    that "standard is an objective test, [] there is no need to look at individual circumstances."

10   *Orshan v. Apple Inc.*, 2024 WL 4353034, at *16 (N.D. Cal. Sept. 30, 2024). Despite this, the

11   FTC intends to elicit testimony from eight consumers that it has handpicked out of the hundreds

12   of millions of Prime members. Exs. 3, 6. The purported experiences of these select few

13   individuals is irrelevant to the jury's objective inquiry—not to mention anecdotal, demonstrably

14   unreliable, unrepresentative of the Prime userbase, and statistically insignificant. But even if an

15   individual consumer's testimony had some minimal probative value, it is greatly outweighed by

16   the confusion, prejudice, and waste of time that would result—including because Defendants

17   would be forced to waste considerable trial time litigating the particulars of each consumer's

18   experience and introduce competing consumer testimony.

19        The FTC also seeks to admit written complaints submitted by these same consumer

20   witnesses to the FTC and stored in its Consumer Sentinel database ("Consumer Sentinel

21   Complaints").[6] Such evidence is inadmissible for the same reasons, and because it is hearsay

22   without an exception.

23        **A.    Consumer Witnesses Should Be Excluded Under Rules 401, 402, and 403**

24        Section 5(a) of the FTC Act and ROSCA apply "an objective rather than subjective"

25   "reasonable consumer test." Dkt. 351 (FTC Opp. to Defs.' MSJ) at 14. The subjective,

26   _____

27   [6] The FTC has confirmed that it does not intend to introduce evidence of any consumer
     declarations for any purpose, nor any Consumer Sentinel Complaints by non-testifying
     witnesses. *See* Ex. 1 at 15.

DEFENDANTS' MOTIONS *IN LIMINE*
(2:23-cv-0932-JHC) - 11

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

individualized experiences of a handful of consumers are thus irrelevant and not helpful to the jury. *See id.* (conceding "an individual consumer cannot prevail by claiming they themselves did not actually see or understand the disclosures even if the disclosures were *objectively* conspicuous"); *Orshan*, 2024 WL 4353034 at *16; *Miller v. Fuhu Inc.*, 2015 WL 7776794, at *16 (C.D. Cal. Dec. 1, 2015) (stating that "individualized inquiries" not relevant under objective test of "reasonable consumer").

But even if some consumer testimony could theoretically have probative value, the testimony of these consumers chosen by the FTC is more prejudicial than probative.

*First*, their testimony is unreliable and confusing. Many of the FTC's potential consumer witnesses have admitted that their allegations are inaccurate:

- Ex. 9 at 190:16–191:7 ("[O]bviously I had, you know, some stuff in [the declaration] that wasn't accurate, which we found out today. It wasn't exactly correct."); *id.* at 141:3–22 (unsure if her declaration is accurate);
- Ex. 10 at 156:24–157:23 (admitting he appears to have been notified of his enrollment in Prime via email, despite declaring to the contrary);
- Ex. 11 at 132:1–4 (admitting her allegation was "not an accurate statement"); *id.* at 220:21–221:1 (same);
- Ex. 12 at 231:8–17 (signed up for Prime once in 2024, contrary to complaint that "Amazon keeps signing me up for Prime");
- Ex. 13 at 150:1–18 (admitting he did not unintentionally enroll the number of times he had alleged).

Other consumers admitted that they did not remember key events in their allegations:

- Ex. 18, Ex. B (Gorman Decl.) ¶ 4 ("I cannot fully recall the events of this case");
- *Id.*, Ex. A (Osborne Decl.) ("I am withdrawing my complaint and testimony with the FTC regarding Amazon because I don't recall the events the way I thought I did.")
- Ex. 14 at 104:6–17 (memory was not good enough to remember what the cancellation flow looked like);

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

- Ex. 12 at 214:8–215:3, 236:19–237:18 (unable to recall how or whether he cancelled);

- Ex. 13 at 124:7–126:23 (did not recall receiving welcome email on day of Prime sign-up);

- Ex. 15 at 115:3–18 (did not know what language in her FTC-drafted declaration refers to);

- Ex. 16 at 72:22–73:2 (did not "really recall specifically what happened that day [she] enrolled in Prime and cancelled [her] membership").

And still others have given implausible testimony that is inconsistent with the FTC's theories, such as Ann Everett's testimony that she was enrolled in Prime even though she is "very certain" she "never clicked anything other than 'No, Thanks,'" Ex. 9 at 108:5–9, 115:19–116:4, and Katherine Holmes's testimony that she was enrolled in Prime because the page had no decline option, even though no such page exists and she readily identified the decline option when presented with the enrollment flow. Ex. 16 at 65:4–13.

*Second*, these consumers are not representative of the "ordinary consumer." *Robie v. Trader Joe's Co.*, 2021 WL 2548960, at *4 (N.D. Cal. June 14, 2021); *cf. Groeneveld Transp. Efficiency, Inc. v. Lubecore Int'l, Inc.*, 730 F.3d 494, 509 (6th Cir. 2013) ("[T]he focus is on the typical buyer exercising ordinary caution, not the most obtuse consumer[.]" (cleaned up)). The fifteen consumers the FTC originally disclosed as potential witnesses were not randomly selected but were instead cherry picked by the FTC from a group of self-selecting individuals who had filed complaints with the FTC. *See* Ex. 19; *see also* Exs. 18, 20. Then, after discovery, the FTC further cherry-picked just eight of these consumers for its witness list. That the FTC's chosen eight witnesses are not representative of typical Amazon users is apparent from the consumers' own admissions at deposition. For instance, one of them does not own a smartphone, *see* Ex. 15 at 44:11; another conceded he was not the "average" online shopper because of his infrequency of use, *see* Ex. 17 at 240:23–241:1; another has fibromyalgia with memory impairment and age-related diminishing visual acuity, *see* Ex. 14 at 114:11–24, 120:14–22; one has dyslexia, which

DEFENDANTS' MOTIONS *IN LIMINE*
(2:23-cv-0932-JHC) - 13

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1  affects his reading comprehension, *see* Ex. 10 at 197:15–24; and another works in website design

2  and testified from a design perspective, *see* Ex. 12 at 14:9–13, 102:6–104:15.

3         These factors not only make the consumers' testimony unhelpful to the jury, they also

4  reflect the kinds of "mini-trials" that the Parties would engage in concerning each consumer's

5  experience. These "mini-trials" would include myriad other issues, such as the presentation of

6  internal Amazon data undermining the consumers' allegations, *see, e.g.*, Ex. 13 at 129:12–130:6

7  (data showed he was signed up for Prime via Prime Video, which his friend had access to); Ex.

8  15 at 114:12–17, 189:8–14 (data showed she opened the Prime welcome email twice, despite

9  testimony she did not recall ever seeing such an email); the same consumers' positive

10  experiences with Amazon and Prime, *see, e.g.*, Ex. 10 at 158:6–24 (agreeing the Prime online

11  cancellation process was "very straightforward and easy to accomplish"); Ex. 17 at 51:19–52:4,

12  63:23–64:14 (testifying he had never been enrolled in Prime unintentionally); Ex. 16 at 138:8–

13  139:21 (testifying she had not requested but still automatically received a refund of her

14  membership fee because she did not use benefits); and the consumers' potential biases, *see, e.g.*,

15  Ex. 17 at 107:12–17 (referred to "Amazon as an evil corporation in a Facebook post"); Ex. 13 at

16  157:13–159:8 (testifying that Amazon is "destroying some small businesses," expressing "hope"

17  that it would "collapse[]," and claiming that Amazon and "a lot of companies" "exploit either

18  their consumers or their workers"). *See Tennison v. Circus Circus Enters., Inc.*, 244 F.3d 684,

19  690 (9th Cir. 2001) (upholding exclusion of testimony where admission "might have resulted in

20  a 'mini trial,' considering that much of their testimony was disputed by Defendants").

21  Defendants would further be required to call their own consumer witnesses to report positive

22  experiences with the Prime enrollment and cancellation flows, consuming more trial time. And

23  since the FTC intends to call only eight of its original fifteen consumers, Defendants would be

24  entitled to call other former FTC consumer witnesses to contextualize the FTC's selected

25  witnesses.

26         In short, the limited probative value of any individual consumer's testimony is greatly

27  offset by the waste of time and confusion that will be generated it.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

B.    **Consumer Sentinel Complaints Are Inadmissible Under Rule 807**

The FTC has also indicated that it may introduce a testifying consumer's Consumer Sentinel Complaint pursuant to Federal Rules of Evidence 801(d)(1) and 807(a). *See* Ex. 1 at 15. Whether the FTC is able to satisfy the requirements of Rule 801(d)(1) must be deferred to trial. Rule 807, however, is no basis for admissibility, as the complaints lack sufficient "guarantees of trustworthiness" to qualify for admission under Rule 807. *See Wilson v. City of Los Angeles*, 2020 WL 7711836, at *9 (C.D. Cal. July 20, 2020) ("[T]he proponent of the evidence bears the burden of presenting sufficient indicia of trustworthiness to establish that the hearsay is admissible under the narrow residual hearsay exception."). These complaints are not just unverified and uncorroborated—they are demonstrably unreliable. *See id.* at *9, *21 ("faulty" memory and lack of corroboration for the consumers' complaints bear on trustworthiness); *ADT LLC v. Alarm Protection LLC*, 2017 WL 1952302, at *2 (S.D. Fla. May 11, 2017) (declining to admit declarations under Rule 807 because of inaccuracies). As shown above, depositions repeatedly revealed that the consumers' complaints contain prejudicial inaccuracies or were made with missing information. *See supra* MIL 4 § A; *see also* Ex. 9 at 161:3–16 (admitting she did not know the details of her Prime enrollment when she filed her complaint); Ex. 16 at 147:6–148:18 (admitting it was "more likely" she had actually cancelled successfully, contrary to her complaint). Given the lack of any "significant indicators of trustworthiness"—and indeed, evidence to the contrary—these consumer complaints cannot be admitted under Rule 807. *United States v. Bonds*, 608 F.3d 495, 501 (9th Cir. 2010).

**MIL 5: Exclude Non-U.S. Evidence**

The FTC has made clear that it intends to use evidence about Amazon flows and consumer experiences *outside* the United States to try to prove that the Defendants violated the law *within* the United States. Such evidence includes qualitative and quantitative data from country-specific studies Amazon conducted abroad with consumers in those countries. *See, e.g.*, Ex. 3 at line 83 (document with data concerning tests on "Prime Interstitial in [the] UK"); *id.* at lines 319–20 (emails concerning "UK Prime" and "deep dive[s]" conducted on the Prime UX in

DEFENDANTS' MOTIONS *IN LIMINE*
(2:23-cv-0932-JHC) - 15

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Japan); Ex. 22 at 80:5–86:10 (France Shopping Experience Study); Ex. 23 at 147:18–25

(consumer study in Germany); Ex. 24 at 112:24–113:16 (same); *id.* at 105:19-21 (consumer

research in Germany and "Mexico, Spain, France, et cetera"); Dkt. 255-11 ("JP Prime

Benchmarking Study – Q4 2019"); *id.* at 12 (survey data from Japan, the United Kingdom,

Germany, and Japan); Dkt. 314 (FTC's MSJ) at 22, 40 (highlighting experiences of Japanese

customers). This evidence should be excluded because it has minimal probative value and its

introduction is likely to "confus[e] the issues," "mislead[] the jury," and "waste time." Fed. R.

Evid. 403.

　　　This case is about Amazon's Prime enrollment and cancellation flows "throughout *the*

*United States.*" Am. Compl. ¶ 13 (emphasis added). Evidence about Prime's flows in other

countries—and about how non-U.S. consumers experience those non-U.S. flows—are of

minimal relevance or probative value in proving the FTC's claims.

　　　First and foremost, the FTC has not shown that the flows seen by the international

consumers are similar in all material respects to those at issue here. To the contrary, "lots of

elements of the business can vary from country to country," Ex. 25 at 174:6–10, including the

Prime flows. *See, e.g.*, *id.* at 96:14–25 (giving one example of a difference between the U.S. and

Germany); Ex. 26 at 41:7–43:7 (discussing differences between German and U.S. Prime upsells);

Ex. 27 at 162:7–23 (testifying that an element of the UPDP shown to him was unique to the

United Kingdom); Ex. 28 at 242:15–18 (testifying that "the launches of our products often are

staggered by locale because we need to make changes that are often unique to one country").

　　　Second, the consumers themselves vary from market to market in ways that significantly

affect their perception of online flows. *See Sugar Ass'n, Inc. v. McNeil-PPC, Inc.*, 2008 WL

4755611, at *2 (C.D. Cal. Jan. 7, 2008) (excluding evidence from outside the United States

where "[t]his case is brought under American law, based on the alleged perceptions of American

consumers" and "[r]espondents have not demonstrated that foreign laws or perceptions are

similar"). As one of the FTC's proffered experts testified, "different countries might have

different clarity standards, depending on cultural differences or understanding of certain online

DEFENDANTS' MOTIONS *IN LIMINE*
(2:23-cv-0932-JHC) - 16

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    retail experiences." Ex. 29 at 290:23–291:2; *see also* Ex. 30 at 260:21–261:8 (testifying that

2    whether consumers read "T&Cs on a page like" the UPDP varies, including by "cultural

3    background, country"). And consumers in other countries may be less familiar with Prime. The

4    non-U.S. data and studies the FTC seeks to introduce reflect these critical differences. For

5    example, the stated goals of the "France (FR) End-to-End Shopping Experience Study" were to

6    "uncover the unique needs of the French shopper and to understand whether competitors are

7    meeting those needs better than Amazon." Ex. 22 at 83:4–7 (quoting Hagen Dep. Ex. 3).

8    Whether Amazon's French store is meeting the "unique needs of the French shopper" has little,

9    if any, bearing on whether Amazon's U.S. Prime experience is clear and simple for U.S.

10   consumers. For the same reasons, it has no bearing on Defendants' knowledge of the alleged

11   ROSCA violations. The same goes for the other non-U.S. evidence the FTC will seek to

12   introduce.

13          Due to these differences in practices and perceptions, courts routinely exclude data and

14   surveys based on irrelevant markets or populations. *See Sugar Ass'n*, 2008 WL 4755611, at *2;

15   *Reinsdorf v. Skechers U.S.A.*, 922 F. Supp. 2d 866, 878 (C.D. Cal. 2013) (excluding survey

16   where "[t]here is no indication that the survey population had any relationship to the relevant

17   population of … consumers"); *see also Icon Enters. Int'l, Inc. v. Am. Prods. Co.*, 2004 WL

18   5644805, at *24 (C.D. Cal. Oct. 7, 2004) ("[A] survey that provides information about a wholly

19   irrelevant universe of respondents is itself irrelevant." (quoting Reference Manual on Scientific

20   Evidence, 241 (Federal Judicial Center 2000)).

21          Even if the evidence has some relevance, it must be excluded under Rule 403. When the

22   probative value of evidence is low, even "a small risk of misleading" or confusing the jury is

23   enough to require exclusion under that rule. *United States v. Espinoza-Baza*, 647 F.3d 1182,

24   1189 (9th Cir. 2011). And the risk that the non-U.S. evidence will mislead or confuse is high.

25   Allowing the FTC to present evidence that suggests French, German, Mexican, Spanish, or

26   Japanese consumers might have unintentionally signed up for Prime, or had difficulty cancelling,

27   when faced with the local Prime flows in those countries creates an obvious danger of the jury

DEFENDANTS' MOTIONS *IN LIMINE*
(2:23-cv-0932-JHC) - 17

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    mistakenly finding Amazon liable based on conduct that occurred elsewhere and in a very

2    different context.

3            Compounding the problems, to avoid this risk, Amazon would be forced to respond to the

4    FTC's non-U.S. evidence by (i) explaining to the jury the differences between the U.S. and non-

5    U.S. flows; (ii) discussing the unique features of U.S. versus non-U.S. consumers; and (iii)

6    otherwise contextualizing data and survey evidence from half-a-dozen countries. Amazon and

7    the FTC would "in essence" be forced to "conduct a mini-trial" on each non-U.S. report or

8    survey. *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 7803893, at *2 (N.D. Cal.

9    Nov. 15, 2016) (excluding evidence about foreign proceeding under Rule 403). This too is a

10   reason the non-U.S. evidence must be excluded under Rule 403. "One function of [that Rule] is

11   to avoid the introduction of 'large quantities of extrinsic evidence to create mini-trials regarding

12   tangentially related matters.'" *Id.*; *see also Est. of Cecil Elkins v. Pelayo*, 2022 WL 1625181, at

13   *6 (E.D. Cal. May 23, 2022) ("The greater the evidence involved and the trial time consumed,

14   the greater the danger jury confusion.").

15           For all of these reasons, the FTC should be precluded from introducing any evidence,

16   testimony, or references to the non-U.S. consumer data, surveys, and reports.

17   **MIL 6: Exclude Evidence or Argument on Certain Surveys**

18           Defendants move to exclude all evidence and argument regarding certain surveys

19   conducted by Amazon: (1) the "Search Sentiment Survey," a customer satisfaction survey that

20   elicited feedback on customers' shopping experiences and incidentally asked, "Are you an

21   Amazon Prime member?" Ex. 34 (Kivetz Opening Report) ¶¶ 396–98; (2) all versions of the

22   "Cancellation Survey," an optional customer-satisfaction "exit" survey that explored customers'

23   reasons for cancelling their Prime memberships and provided "I did not intend to sign up for

24   Prime" as an answer choice, *id.* ¶¶ 18–20; and (3) two "Benchmarking Surveys" used to compare

25   Japanese customer experiences against those of customers in other countries, including the

26   United States, which inquired about how customers enrolled and provided several, "I joined

27   Prime without realising," answer choices. Ex. 31 at -1350; Ex. 32 at -7885.

DEFENDANTS' MOTIONS *IN LIMINE*
(2:23-cv-0932-JHC) - 18

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

These surveys were intended as tools to gather anecdotal customer-experience insights. Yet the FTC intends to argue that answers to their leading and ambiguous questions establish that consumers enrolled in Prime non-consensually and that the surveys provide measurements of rates of non-consensual enrollment. *See* Dkt. 314 at 60–61 (relying on survey data as "empirical evidence" of "nonconsensual enrollment"); Dkt. 381 at 17 ("At trial, the FTC will use the [cancellation] survey to reasonably approximate consumer harm."). The surveys were not designed—and are manifestly unfit—for those purposes. They do not meet the admissibility standard for survey evidence and are independently excludable under Rules 401, 402, and 403 because they are not congruent with the issues in the case and their admission would result in delay and confusion and unduly prejudice Defendants.

A.    **The Surveys Are Fundamentally Unreliable as Empirical Evidence of Non-Consensual Enrollment**

The proponent of survey evidence must "show that the survey was conducted in accordance with generally accepted survey principles." *Monster Energy Co. v. Vital Pharms., Inc.*, 2025 WL 1111495, at *1 (9th Cir. Apr. 15, 2025); *Keith v. Volpe*, 858 F.2d 467, 480 (9th Cir. 1988). Although methodological "quibbles" go to weight rather than admissibility, "substantial deficiencies in the design or execution of a survey" warrant "complete exclusion." *Sec. Alarm Fin. Enters., L.P. v. Alder Holdings, LLC*, 2017 WL 5248181, at *1 (D. Alaska Feb. 21, 2017); *Casey v. Home Depot*, 2016 WL 7479347, at *20–21 (C.D. Cal. Sept. 15, 2016); *Obrey v. Johnson*, 400 F.3d 691, 696 (9th Cir. 2005) (confirming excludability of "statistical evidence [that] suffer[s] from serious methodological flaws").

Professor Kivetz, Amazon's expert, identified in the Cancellation and Search Sentiment Surveys fundamental flaws of the types that result in exclusion. *See generally* Ex. 34 ¶¶ 17–18; Ex. 35 ¶ 5. "When [the] flaws are combined … it becomes clear that [the] survey[s] w[ere] not conducted according to established and accepted principles." *Sec. Alarm*, 2017 WL 5248181, at *7. These flaws are unsurprising given the surveys' limited purposes and inherent limitations as

DEFENDANTS' MOTIONS *IN LIMINE*
(2:23-cv-0932-JHC) - 19

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    "internal customer satisfaction survey[s]." *See* Ex. 34 ¶¶ 46–47, 398; Ex. 35 ¶ 8. The most

2    serious flaws include:

3        *Unrepresentative population*. The Cancellation Survey's respondent population is grossly

4    unrepresentative of the Prime subscriber base because the survey was offered only to Prime

5    members who had decided to cancel their memberships (as opposed to all members) and its

6    response rate of only 2.1% indicates significant non-response, self-selection, and negativity

7    biases. Ex. 34 at 34–54; Ex. 35 at 123–24; Dkt. 361-3, Ex. 132 at 103:12–22; *see In re Autozone*,

8    *Inc.*, 2016 WL 4208200, at *17 (N.D. Cal. Aug. 10, 2016) (excluding survey with "woefully low

9    response rate … of 3.43%"); *Sec. Alarm*, 2017 WL 5248181, at *4 ("[C]ourts have excluded

10   surveys when the response rate falls below 10 percent"). If the survey is admitted, the jury is

11   likely to erroneously conclude that its results are representative of all Prime enrollees even

12   though negative responses are likely severely overrepresented. As for the Search Sentiment

13   Survey, there is "no documentation" at all of its sampling and response rate and thus "no basis"

14   to assume the population is representative. Ex. 35 at 32–35. The FTC's expert admittedly "did

15   not conduct any analysis to determine whether the results of either survey was biased by

16   nonresponse error." Dkt. 361-2, Ex. 106 at 78:24–79:21; *see Autozone*, 2016 WL 4208200, at

17   *17 (emphasizing failure to "account for the possibility of nonresponse bias").

18       *Leading questions*. Rather than ask the open-ended question "why are you cancelling,"

19   the Cancellation Survey repeatedly presents users with a closed-ended list of answer choices

20   including, "I did not intend to sign up for Prime." Ex. 34 ¶¶ 104, 110–11. Such leading questions

21   foster biases including demand effects, focalism, acquiescence, and order effects, *id.* at 54–72,

22   and are a frequent reason for exclusion. *See, e.g.*, *Procter & Gamble Pharms., Inc. v. Hoffman-*

23   *Laroche, Inc.*, 2006 WL 258802, at *21–24 (S.D.N.Y. Sept. 6, 2006); *Manual for Complex*

24   *Litigation* (2004), Federal Judicial Center, Fourth, Section 11.493, p. 103.

25       *Lack of control*. "Control" questions are "fundamental" features of consumer surveys

26   used to identify and account for the portions of survey measurements attributable to "noise"—

27   erroneous answers resulting from "guessing behavior, leading questions and answer choices,

DEFENDANTS' MOTIONS *IN LIMINE*
(2:23-cv-0932-JHC) - 20

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1   yea-saying, participants' prior knowledge and experiences, and/or any other flaws inherent in the

2   survey's methodology." Ex. 34 ¶ 156. Here, both surveys lack any control—a critical problem

3   given the Cancellation Survey's leading questions and Search Sentiment Survey data showing

4   similar rates of (i) consumers incorrectly reporting they *are* Prime members and (ii) consumers

5   incorrectly reporting they *are not* Prime members. Ex. 34 at 91–106, 231; Ex. 35 at 35–39. *See*

6   *Simon Prop. Grp. LP v. mySimon, Inc.*, 104 F. Supp. 2d 1033, 1047–48 (S.D. Ind. 2000) ("[T]he

7   absence of adequate controls to test for legally relevant confusion provides an[] independent

8   reason for exclu[sion]").

9          *Overbroad and ambiguous questions/answers.* The Cancellation Survey's "I did not

10  intend to sign up for Prime" answer is susceptible to several inconsistent interpretations,

11  including that a free-trial respondent did not intend to sign up for a *paid* subscription. Ex. 34 at

12  79–85. Similarly, the Search Sentiment Survey's membership-status answers do not distinguish

13  trials from paid memberships nor account for respondents who turned "auto-renew" off. Ex. 35

14  at 39–46.

15         The FTC has no meaningful rebuttal. Its experts merely sidestep the surveys' core flaws.

16  *Id.* at 34–35, 39–46, 51–52, 93–94, 122–37. Nor can the FTC draw "directional" conclusions

17  from Cancellation Survey response "trends," Dkt. 381 at 15: responses varied considerably by

18  survey instrument and consumer sample, demonstrating each survey version's unreliability on its

19  own and in conjunction with other evidence. Ex. 35 at 104–22.

20         The FTC's contention that it should be excused from its admissibility burden insofar as

21  Amazon "manifested a belief in [the surveys'] trustworthiness," Dkt. 351 at 20, is legally and

22  factually incorrect. Parties' pre-litigation surveys must pass the "accepted survey principles" test.

23  *Monster Energy*, 2025 WL 1111495, at *1. Regardless, since before this suit, Amazon

24  employees have highlighted the Cancellation Survey's limitations and warned against relying on

25  it as empirical evidence. *E.g.*, Dkt. 327, Ex. 12 at -677 (noting "data may not be taken at [] face

26  value due to biases in response[s] ... and other factors that influence survey responses"); Dkt.

27  364, Ex. 80 at 1 (recommending "not start[ing] with the survey"); Dkt. 364-2, Ex. 98 at 142:24–

DEFENDANTS' MOTIONS *IN LIMINE*
(2:23-cv-0932-JHC) - 21

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

143:2 ("cancellation survey isn't meant to be representative of … all customers that cancel"). And the FTC's assertion that an unidentified "Amazon economist relied on … the Search Sentiment Survey" to estimate unintentional "free-trial" sign-ups, Dkt. 351 at 20, is irrelevant and false: the cited document is a draft specifying the relied-upon sentence was "[d]eleted." Dkt. 360, Att. 193 at 7.

As for the Benchmarking Surveys, the sampling and response rate are unknown because the underlying data is unavailable. *See Monster Energy*, 2025 WL 1111495, at *2 (affirming exclusion of "summar[ies] [of] survey results" in absence of "survey results or data itself"). Those surveys also used closed-ended questions, *see* Ex. 31 at -1350, Ex. 32 at -7885 (requiring respondents to select from five answer choices to "best describe[] [their] experience" "join[ing] Prime," two of which refer to enrolling "without realising"), and no control group, Ex. 33 at 54:15–22. The FTC likely will cite testimony from an Amazon Benchmarking employee that the surveys complied with the Benchmarking team's survey practices, but "different methodologies" may or may not be suitable depending on survey purpose. *Id.* at 52:3–11; Ex. 34 ¶ 22 ("Because a company's surveys conducted in the ordinary course of business can serve different purposes and functions, the types of inferences and conclusions that can be drawn from a given survey depend heavily on the type of survey."), ¶ 41. The Benchmarking Surveys were designed to provide "customer feedback" "insights" for "business teams"—not empirical evidence appropriate for courtrooms. Ex. 33 at 53:22–54:7. Likely for this reason, the deponent had "[n]ever heard of the term control group or control question … with respect to survey[s]," *id.* at 51:24–52:11, yet such controls are known to be "fundamental" guardrails for surveys used in academic research and litigation. Ex. 34 ¶¶ 156–60.

### B. The Surveys Should Be Excluded Under Federal Rules of Evidence 401, 402, and 403

All surveys have negligible relevance given their lack of "congruen[ce] with the issues in the case," *McCarthy on Trademarks and Unfair Competition* § 32:170 (4th ed. 2008), and methodological limitations. The Search Sentiment Survey in particular is wholly irrelevant: Its

question, "Are you an Amazon Prime member?" is "simply … not probative" because whether or not an individual correctly reports their current membership status *when completing the survey* reveals nothing about that individual's mindset or awareness *when they enrolled*, often months or years earlier. Ex. 34 ¶ 399; *Roar Spirits, LLC v. Sutter Home Winery, Inc*., 2025 WL 523898, at *17–18 (N.D. Cal. Feb. 18, 2025); *Ngethpharat v. State Farm Fire & Cas. Co*., 2021 WL 2823245, at *2–3 (W.D. Wash. July 7, 2021). The Cancellation Survey has at most marginal relevance given its susceptibility to a host of survey biases and the ambiguity of the "I did not intend to sign up for Prime" answer choice. *See supra* MIL 6 § A.

Irrespective of the FTC's relevance proffers, however, the alleged probative value of any survey would be substantially outweighed by the risk the jury would interpret the results as scientific evidence and measurement of non-consensual enrollment—even though the survey cannot support such use. Such prejudice would be particularly unfair because the issue of whether the Prime flows elicit express informed consent is governed by an *objective* standard that requires the jury to focus on the flows rather than speculate about responses to closed-ended survey questions. Given the surveys' fundamental limitations, "the dangers of unfair prejudice … substantially outweigh any probative value." *Sugar Ass'n*, 2008 WL 4755611, at *3–4; *Sec. Alarm*, 2017 WL 5248181, at *7 (value of survey that "simply is not a consumer confusion survey" substantially outweighed by dangers of prejudice and confusion). Any probative value would also be far outweighed by the delay and confusion from inevitable mini-trials on each survey's context and reliability. *See City of New York v. Pullman Inc.*, 662 F.2d 910, 915 (2d Cir. 1981) (upholding exclusion where admission would "have been likely to protract an already prolonged trial with … inquir[ies] into collateral issues regarding the accuracy of the survey and the methods used").

DATED this 11th day of August, 2025.

DEFENDANTS' MOTIONS *IN LIMINE*
(2:23-cv-0932-JHC) - 23

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    I certify that this memorandum contains 8,425 words, in compliance with the Local Civil

2    Rules and the Court's order granting Defendants 8,500 words for their motions *in limine*.

3    Dkt. 419.

4                                         DAVIS WRIGHT TREMAINE LLP

5

6                                         By s/ *Kenneth E. Payson*
                                             Kenneth E. Payson, WSBA #26369
7                                            James Howard, WSBA #37259
                                             920 Fifth Avenue, Suite 3300
8                                            Seattle, WA 98104-1610
                                             Telephone: (206) 622-3150
9                                            Fax: (206) 757-7700
                                             E-mail: kenpayson@dwt.com
10                                                   jimhoward@dwt.com

11                                        COVINGTON & BURLING LLP

12
                                             Stephen P. Anthony*
13                                           Laura Flahive Wu*
                                             Laura M. Kim*
14                                           John D. Graubert*
                                             850 Tenth Street, NW
15                                           Washington, DC 20001
                                             Telephone: (206) 662-5105
16                                           E-mail: santhony@cov.com
17                                                   lflahivewu@cov.com
                                                     lkim@cov.com
18                                                   jgraubert@cov.com

19
                                             John E. Hall*
20                                           415 Mission Street, Suite 5400
                                             San Francisco, CA 94105
21                                           Telephone: (415) 591-6855
                                             E-mail: jhall@cov.com
22
                                             Megan L. Rodgers*
23                                           3000 El Camino Real
24                                           Palo Alto, CA 94306
                                             Telephone: (650) 632-4734
25                                           E-mail: mrodgers@cov.com

26

27

DEFENDANTS' MOTIONS *IN LIMINE*
(2:23-cv-0932-JHC) - 24

Anders Linderot*
620 Eighth Avenue
New York, NY 10018
Telephone: (212) 841-1000
Email: alinderot@cov.com

HUESTON HENNIGAN LLP

John C. Hueston*
Moez M. Kaba*
Joseph A. Reiter*
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone: (213) 788-4340
E-mail: jhueston@hueston.com
          mkaba@hueston.com
          jreiter@hueston.com

*admitted pro hac vice

Attorneys for Defendants AMAZON.COM, INC.,
NEIL LINDSAY, RUSSELL GRANDINETTI,
AND JAMIL GHANI

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax