The Honorable John H. Chun

1

2

3

4

5

6          **UNITED STATES DISTRICT COURT**
          **WESTERN DISTRICT OF WASHINGTON**
7                    **AT SEATTLE**

8

9    FEDERAL TRADE COMMISSION,                Case No. 2:23-cv-0932-JHC

10          Plaintiff,                        **FTC'S CONSOLIDATED MOTION**
                                              **IN LIMINE**
11       v.
                                              NOTE ON MOTION CALENDAR:
12   AMAZON.COM, INC., *et al.*               September 2, 2025

13          Defendants.

14

15       Pursuant to Local Civil Rule 7(d), the Plaintiff Federal Trade Commission ("FTC" or

16   "Commission") files its Consolidated Motion in Limine, consisting of the following motions:

17

18

19

20

21

22

23

FTC'S CONSOLIDATED
MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC                    1                    Federal Trade Commission
                                                                  600 Pennsylvania Avenue NW
                                                                  Washington, DC 20580
                                                                  (202) 326-2551

# TABLE OF CONTENTS

1.    Admit Court's Finding that Amazon's Actions Were "Tantamount to Bad Faith" 3

2.    Preclude Testimony or Argument Regarding Substance of or Reliance on Advice of Counsel ................................................................................................. 11

3.    Preclude Testimony or Argument Regarding the Diligence of the FTC's Investigation ........................................................................................... 16

4.    Exclude Defendants' Untimely Disclosed Fact Witnesses .................................. 19

5.    Preclude Opinion Testimony by Undisclosed "Expert" Witnesses ..................... 22

6.    Preclude Testimony or Argument Regarding the FTC's Website ....................... 24

7.    Preclude Testimony or Argument Regarding Other Businesses' Conduct........... 25

8.    Preclude Testimony or Argument Concerning Post-Enrollment Communications That Purportedly Disclosed Material Terms ........................................ 27

9.    Preclude Testimony or Argument Regarding Defendants' "Customer-centric" Culture............................................................................................... 29

10.   Preclude Testimony or Argument Regarding Benefits, Refund Policy, and Reputation Unrelated to Enrollment and Cancellation ........................................ 33

11.   Preclude Extrinsic Evidence of Reid Nelson's Character for Truthfulness.......... 34

12.   Preclude Opinion Testimony from Non-Experts .................................................. 35

13.   Preclude Testimony or Argument Contrary to Undisputed Material Facts and Conclusions of Law ............................................................................. 36

14.   Exclude Non-party Fact Witnesses from the Courtroom...................................... 36

FTC'S CONSOLIDATED
MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC                2

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

1

**1.  Admit Court's Finding that Amazon's Actions Were "Tantamount to Bad Faith"**

2

The FTC seeks to admit Dkt. #404, including the Court's prior ruling that Amazon

3

improperly withheld responsive documents and the supporting facts of that finding, and

4

additional evidence of similar nature.[1] On July 10, the Court admonished Amazon and its

5

counsel, finding "Amazon's withholding of almost 70,000 [responsive, non-privileged]

6

documents until the eve of, and after, the [ ] discovery cutoff . . . was tantamount to bad faith."

7

*Id.* at 6-8. The Court based its determination on various facts, including the two below.

8

First, Amazon purposely withheld documents from the FTC throughout the investigation

9

and litigation until the eve of the close of discovery. Indeed, on October 7, 2022, in-house

10

counsel Benjamin Langner certified "under penalty of perjury" that Amazon's privilege logs

11

produced during the investigation "'set[ ] forth the basis for withholding . . . responsive

12

information' from the FTC" and "the company's responses were 'complete and true and correct

13

to the best of [his] knowledge, information, and belief.'" Dkt. #403-04 (quoting Dkt. #288-18 at

14

2); *see also* Dkt. #335-2 at 6 (Amazon counsel stating that Langner is the "lead attorney or the

15

attorney responsible for supervising the review" of the investigation privilege logs). When the

16

FTC requested (twice) that Amazon "re-review its [investigation] privilege logs given its

17

concerns" about the accuracy of Amazon's privilege determinations, Amazon's outside counsel

18

refused, stating that "Amazon's thorough pre-production review led to the production of

19

thousands of documents with potential indicia of privilege" and the FTC "wholly misunderstands

20

how Amazon's in-house attorneys—or frankly any other in-house attorneys—provide legal

21

---

22

[1] Motions in limine can be used to "admit evidence in advance of trial." *United States v. Palm*, 2025 WL 348718, at *1 (W.D. Wash. Jan. 30, 2025) (citing Fed. R. Evid. 103; *United States v. Williams*, 939 F.2d 721, 723 (9th Cir. 1991)).

23

FTC'S CONSOLIDATED
MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC                    3                    Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

advice." Dkt. #404 at 4 (quoting Dkt. #288-7 at 2). A year later, at the FTC's renewed request, Amazon finally "re-reviewed its privilege logs and withdrew its privilege claims as to 91% of its log and produced 69,909 documents to the FTC" from April through May 2025. *Id.* at 4-5.

Second, Amazon instructed its employees to mark non-privileged documents relating to Prime clarity as "privileged and confidential" without regard to whether they were actually privileged. For instance, "Ghani told [employees] to be 'diligent' about 'marking docs and emails'" in an email relating to nonconsensual Prime signups. *Id.* at 5. In another example, a "non-attorney employee told another non-attorney employee to mark '[a]nything involving accidental/uninformed signups'" as P&C. *Id.* An Amazon in-house counsel even "instructed employees to 'delete the PowerPoint document'" regarding unintentional Prime sign-ups "because of its sensitive content and lack of Privileged & Confidential markings." *Id.* at 6. The Court found that none of those documents were close to privileged. *Id.*

The FTC should be permitted to present the Court's order and other similar facts to those examples the Court relied on to both the judge and the jury because they are highly probative of central questions in this matter, including some the jury will decide and some the judge will decide: (1) Amazon's liability for ROSCA violations, (2) its knowledge of the violations, (3) equitable estoppel, and (4) its liability for civil penalties.[2] *See* Fed. R. Evid. 401 ("Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence, and (b) the fact is of consequence in determining the action."). Moreover, the very

---

[2] The FTC is not requesting that the jury be instructed to make an adverse inference. Rather, it is requesting to present the finding of bad faith to the jury to allow jurors to make any inferences (or not) regarding consciousness of guilt they see fit.

1    substantial probative value of Amazon's tantamount-to-bad-faith conduct outweighs any unfair

2    prejudice this finding inflicts on Amazon under Fed. R. Evid. 403.

3        **A.    The Finding of Amazon's Conduct Tantamount to Bad Faith Is Relevant to**

4             **Amazon's Liability of Its ROSCA Violations.**

5        First, Amazon's wrongful withholding of documents during the investigation and

6    litigation, and longstanding practice of mislabeling those documents to conceal them, is highly

7    probative. Courts permit one party to inform the jury about the other's discovery misconduct

8    where it is relevant to the claims. *See, e.g.*, *Waymo LLC v. Uber Techs., Inc.*, 2018 WL 646701,

9    at *19 (N.D. Cal. Jan. 30, 2018) (a party may "adduce certain facts before the jury to show . . .

10   that [its opponent] sought to minimize its 'paper trail'," such as through wrongful privilege

11   assertions and withholdings); *Tom v. S.B., Inc.*, 280 F.R.D. 603, 619–20 (D.N.M. 2012) ("Tom

12   may inform the jury, prior to introducing [relevant evidence] . . . that the evidence was withheld

13   in violation of discovery rules") (citing other cases); *Patel v. Havana Bar, Rest. & Catering*,

14   2011 WL 6029983, at *10 (E.D. Pa. Dec. 5, 2011) (where a party spoliated evidence, "[w]e

15   believe the best way to sort out Plaintiff's discovery misconduct is to allow the jury to draw its

16   own conclusions as to the evidentiary value of how the evidence was handled"); *cf.* Fed. R. Civ.

17   P. 37(c)(1)(B) (the court "may inform the jury of the party's failure" to disclose evidence).

18       Concealing evidence can demonstrate consciousness of guilt, which is probative. *See,*

19   *e.g.*, *Clarity Sports Int'l LLC v. Redland Sports*, 2024 WL 3743680, at *14 (M.D. Pa. Aug. 9,

20   2024) ("the Court will permit Plaintiffs to present evidence of [defendants'] discovery defaults

21   and delays at trial in support of a claim that this alleged concealment constitutes evidence of

22   consciousness of guilt"); *Stone Brewing Co., LLC v. Millercoors LLC*, 2021 WL 63139, at *6

23   (S.D. Cal. Jan. 7, 2021) ("evidence of discovery disputes and misconduct may be probative of

FTC'S CONSOLIDATED
MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC                              5

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

1    willfulness, and as such, a broad limitation is unwarranted in a motion in limine") (quotations

2    omitted); *see also Clear-View Techs., Inc. v. Rasnick*, 2015 WL 3453529, at *2 (N.D. Cal. May

3    29, 2015) (denying a motion in limine to exclude evidence of spoliation because evidence that an

4    alleged co-conspirator "destroyed evidence regarding his conduct is undoubtedly probative of

5    [that co-conspirator]'s consciousness of guilt regarding the alleged conspiracy"); *Corning*

6    *Optical Commc'ns Wireless Ltd. v. Solid, Inc.*, 2015 WL 5569095, at *2 (N.D. Cal. Sept. 22,

7    2015) (denying a motion to exclude allegations of discovery misconduct where "[t]his evidence

8    may be probative of willfulness").

9          Here, the fact Amazon hid these documents in bad faith show its consciousness of guilt.

10   Indeed, Amazon repeatedly instructed employees to mark non-privileged "clarity" documents as

11   "privileged and confidential,"[3] seeking to keep them hidden. *See, e.g.*, *supra* at 4; Dkt. ##288-11

12   at 4, 288-19 at 2.

13         Moreover, the content of the initial set of approximately 70,000 wrongfully withheld

14   documents underscores that Amazon was fully conscious of its liability.  For example, ***after*** the

15   Court's bad faith finding, the FTC asked Amazon (again) to reconsider certain still-outstanding,

16   still-questionable privilege designations. Only then did Amazon disclose this remarkable

17   document, in which in-house counsel warned employees (**including expected witnesses in this**

18   **matter**) to:

19         *"keep communications about this [clarity] project privileged and confidential.  To*
          *that end, please keep either Praju [Tuladhar, in-house counsel] or me (or both)*
20        *in all meetings and emails about clarity of messaging and 'accidental' customer*

---

21

22   [3] The FTC also includes within in this type of evidence that should be admitted correspondence
     in which Amazon employees wrote they were "seeking legal counsel" or "legal guidance" when
     addressing "clarity"—even though they were not. Even if the Court's ruling regarding Amazon's
23   bad faith conduct and the associated evidence is excluded—and it should not be—it would still
     be proper for the FTC to use evidence of these false statements to impeach witnesses.

FTC'S CONSOLIDATED
MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC                                6

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

*sign-ups. Also, be sure to label email and written documents about the topic as privileged and confidential."*

Att. 1 at 2.

Amazon likewise withheld an email in which Amazon employee Nikki Baidwan wrote: "We know that sometimes, despite best intentions, content can be misleading and lead customers to sign up for Prime without being aware of this. This is an issue we need to solve programmatically." Att. 3 at 4. In another withheld email chain, Amazon employee Reid Nelson wrote: "In past discussions, the Prime team has defended their decision to [non-Amazon customers] . . . on the grounds that these segments are very large sources of Prime Sign Ups. However, if customers don't understand clearly what they're doing, and they see a yellow button 'Get free two day shipping,' it's not surprising that this would be a big source of sign ups." Att. 4 at 2-3. Another withheld email shows that Nelson had raised an issue with the gray shadow design of the signup Call-to-Action ("CTA"): "We should not be allowing customers to click a gray box underneath a yellow signup button, as this intrinsically feels like the opt-out if customers aren't reading closely . . . This is the third time we've escalated the shadow button design pattern in the last 2.5 years." Att. 5 at 2. It is therefore evident that Amazon's conduct tantamount to bad faith is relevant to the FTC's liability and knowledge claims.

**B.** **The Finding of Conduct Tantamount to Bad Faith Is Relevant to Amazon's Knowledge of its ROSCA Violations.**

Amazon's misconduct is also highly probative of Amazon's knowledge of its ROSCA violations. Amazon instructed its employees to mark non-privileged documents as "privileged" and purposefully withheld documents showing it knew its enrollment and cancellation practices were illegal to keep facts away from regulators such as the FTC. The January 2019 email from in-house counsel illustrates this perfectly, stating that "the numerous steps" to the Iliad Prime

1    Cancellation Flow "can get the attention of regulators" leaves no doubt of Amazon's knowledge.

2    Att. 2.

3    **C.  <u>The Finding of Conduct Tantamount to Bad Faith Is Relevant to Equitable</u>**

4    **<u>Estoppel.</u>**

5      Amazon's misconduct is undisputably relevant to determining whether equitable estoppel

6    tolls the statute of limitations. Claims for redress brought under Section 19 of the FTC Act—

7    such as the ROSCA claims the FTC has brought here—have a three-year statute of limitation, 15

8    U.S.C. § 57b(d); civil penalties have a five-year statute of limitation, 28 U.S.C. § 2462. Both are

9    subject to the doctrine of equitable tolling. *See, e.g.*, *Kwai Fun Wong v. Beebe*, 732 F.3d 1030,

10   1034-35 (9th Cir. 2013) (recognizing "rebuttable presumption" in favor of equitable tolling's

11   availability). As discussed further *infra* at 16-17, the three- and five-year statutes of limitation

12   should be tolled under the doctrine of equitable estoppel, which is "based on the principle that a

13   party should not be allowed to benefit from its own wrongdoing." *Est. of Amaro v. City of*

14   *Oakland*, 653 F.3d 808, 813 (9th Cir. 2011) (internal quotation marks and citation omitted).[4]

15     Notably, as noted *infra* at 16 (citing Dkt. #67), the relevant facts for equitable estoppel

16   were set out in the Amended Complaint. *See Cervantes v. City of San Diego*, 5 F.3d 1273, 1277

17   (9th Cir. 1993) (plaintiff need not specifically allege tolling claim so long as complaint provides

18   a factual basis to support that theory). The parties then engaged in extensive discovery regarding

19   the FTC's equitable estoppel claim, including Amazon's depositions of two FTC witnesses

20   concerning equitable estoppel, the FTC's deposition of one Amazon attorney relevant solely to

21   this claim, and significant questioning regarding the topic in Amazon's Rule 30(b)(6) deposition

22

23             _____

[4] Equitable estoppel is aptly known as "fraudulent concealment." *See id.*

FTC'S CONSOLIDATED
MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC      8       Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

1   of the FTC. *See* Dkt. #354 at 51-56 (discussing facts uncovered from oral discovery on

2   Amazon's delay of FTC investigation). Moreover, the parties contemplated this issue early in the

3   case, when they agreed that the FTC would raise an equitable estoppel claim only against the

4   corporate defendant, not the individuals. *See* Att. 6 at 2 (discussing agreement by FTC not to

5   pursue equitable tolling against individual defendants).

6       Amazon's bad faith in complying with its discovery obligations is highly relevant to

7   every element of equitable estoppel: (1) Amazon's knowledge of the true facts, (2) Amazon's

8   intent to induce the FTC's reliance (or actions giving rise to a belief in that intent), (3) the FTC's

9   ignorance of the true facts, and (4) the FTC's detrimental reliance on Amazon's

10  misrepresentations. *See Est. of Amaro v. City of Oakland*, 653 F.3d at 813. The Court's finding

11  of conduct tantamount to bad faith based on Amazon's misuse of privilege designations and

12  discovery misconduct is directly relevant to these questions, as it shows Amazon knew the truth

13  about its enrollment and cancellation processes, kept the FTC in the dark, intended the FTC to

14  rely on its false claims of privilege, and benefitted from withholding thousands of highly

15  probative documents from the investigation through the end of discovery.

16      **D.  The Finding of Conduct Tantamount to Bad Faith Is Relevant to Determining**

17          **Civil Penalties.**

18      "In determining the size of civil penalties, the Court must consider a number of factors

19  including: (1) the good or bad faith of the defendant; (2) the injury to the public; (3) the

20  defendant's ability to pay; (4) the desire to eliminate the benefits derived by a violation; and (5)

21  the necessity of vindicating the authority of the Federal Trade Commission." *United States v.*

22  *Reader's Dig. Ass'n, Inc.*, 494 F. Supp. 770, 772 (D. Del. 1980), *aff'd*, 662 F.2d 955 (3d Cir.

23  1981); *see also FEC v. Furgatch*, 869 F.2d 1256, 1258 (9th Cir. 1989). Here, the Court's finding

FTC'S CONSOLIDATED
MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC                9                Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

1    of Amazon's discovery misconduct, and the underlying facts, go to the first factor; indeed, the

2    Court has already found their conduct was "tantamount to bad faith." It also goes to the fourth

3    factor, given Langner's false statement under penalty of perjury regarding their productions in

4    response to the FTC's CID.

5        **E.  The Probative Value of the Finding Substantially Outweighs any Unfair**

6        **Prejudice or Confusion.**

7            Finally, Rule 403 provides no grounds to prevent the jury from considering the highly

8    probative evidence described above. In fact, far from any unfair prejudice substantially

9    outweighing the probative value, the opposite is true: the probative value is extensive, and the

10   danger of unfair prejudice limited. *See* Fed. R. Evid. 403. As explained *supra*, Amazon's conduct

11   is highly probative of multiple questions that the jury will decide, including Amazon's liability

12   under ROSCA and its knowledge. Any prejudice Amazon sustains would not be *unfair* because

13   it results from Amazon's *own* wrongful actions. *Id.* There is no reason to speculate, for instance,

14   that the jury will be so "angry" about Amazon's bad faith discovery misconduct that it will try to

15   "punish" Amazon's discovery violations as opposed to viewing the evidence—quite fairly—as

16   relevant to consciousness of guilt, *i.e.*, that Amazon knew its enrollment and cancellation

17   practices violated the law. Indeed, to the extent there is any risk that the jury will misunderstand

18   how to interpret the evidence of Amazon's bad faith conduct—and there is none—the Court

19   should address that risk through a limiting instruction rather than by excluding tremendously

20   probative evidence. *See, e.g.*, *United States v. Haig*, 365 F. Supp. 3d 1101, 1108 (D. Nev. 2019)

21   (citing *United States v. Norris*, 423 F. App'x 732, 734 (9th Cir. 2011)). Indeed, the FTC will

22   consent to an appropriate limiting instruction directing the jury to consider Amazon's bad faith

23   conduct only with respect to its consciousness of guilt.

FTC'S CONSOLIDATED
MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC                    10                    Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

Additionally, Amazon *requested* a jury trial to decide the claims at issue, including liability and knowledge. *See* Dkt. #174.[5] It was aware that it was wrongfully hiding documents when it requested a jury trial; it should not be heard to complain now—having been caught—that allowing a jury to consider these issues as relevant to its liability is unfair.[6]

## 2. Preclude Testimony or Argument Regarding Substance of or Reliance on Advice of Counsel

Defendants have not raised an advice-of-counsel defense. Instead, they asserted the attorney-client privilege to shield their communications with counsel regarding the enrollment and cancellation processes at issue. At the same time, Defendants have attempted to wield those undisclosed communications as a sword, eliciting and permitting deposition testimony that (1) Defendants consulted with attorneys, with the apparent goal of creating the impression that those attorneys blessed Defendants' unlawful conduct, and (2) Defendants did not believe they were violating any laws, even though the sole basis for that belief appears to be attorneys' presence in, or contributions to, decision-making processes. The FTC accordingly seeks a ruling that, having decided not to assert an advice-of-counsel defense or otherwise produce privileged communications, Defendants should not be permitted to offer evidence or argument stating or implying either that (1) attorneys blessed Defendants' conduct; or (2) Defendants did not believe

---

[5] In the alternative, should the Court find a danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence," it can provide a limiting instruction to "clearly identify the issues that the jury must resolve." *Haig*, 365 F. Supp. 3d at 1108 (D. Nev. 2019).

[6] Additionally, "Rule 403 has a limited role, if any, in a bench trial." *Cmty. Ass'n for Restoration of the Env't v. Cow Palace*, 80 F. Supp. 3d 1180, 1216 (E.D. Wash. 2015) (citing *E.E.O.C. v. Farmer Bros. Co.*, 31 F.3d 891, 898 (9th Cir.1994)).

FTC'S CONSOLIDATED
MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC                11                Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

1    they were breaking any laws based on counsel's advice regarding or awareness of the conduct at

2    issue.

3         First, a party "may not abuse the [attorney-client] privilege by asserting claims the

4    opposing party cannot adequately dispute unless it has access to the privileged materials."

5    *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003); *see also Chevron Corp. v. Pennzoil

6    Co.*, 974 F.2d 1156, 1162-63 (9th Cir. 1992) (party cannot withhold privilege communications

7    while at the same time "rais[ing] a claim which in fairness requires disclosure" of those

8    communications). As commonly phrased, the privilege "may not be used both as sword and a

9    shield." *Chevron*, 974 F.2d at 1162 (9th Cir. 1992) (citing *United States v. Bilzerian*, 926 F.2d

10   1285, 1292 (2d Cir. 1991)). Therefore, when defendants assert an advice-of-counsel defense,

11   privilege is implicitly waived and the party must produce the advice of counsel on which it

12   relied. *Id.* at 1162-63. For this reason, it is straightforward that Defendants cannot, having

13   asserted the attorney-client privilege throughout discovery, claim at trial that attorneys advised

14   them they were complying with laws governing Prime enrollment and cancellation.

15        More important here, Defendants cannot avoid the sword-and-shield doctrine by

16   declining to assert an advice-of-counsel defense, accordingly withholding privileged

17   communications, but nevertheless *implying* at trial that they relied on the undisclosed advice of

18   counsel. In an SEC enforcement action, for example, the court granted the SEC's motion to

19   exclude "any evidence or argument at trial regarding the advice, involvement, or presence of

20   counsel" because the defendants had refused to allow discovery as to communications with

21   counsel. *See SEC v. Frost*, 2022 WL 17327322, at *1 (C.D. Cal. Feb. 23, 2022) (citing *SEC v.

22   Lek Sec. Corp.*, 2019 WL 5703944, at *4 (S.D.N.Y. Nov. 5, 2019)). The court, explaining that

23   Defendants were essentially asserting a "back door" advice of counsel defense, "join[ed] the

FTC'S CONSOLIDATED
MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC                    12

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

roster of other courts to decline to permit such evidence." *Id.* It was improper for defendants, who refused to waive the privilege, to create the "the *intimation* that counsel has blessed a transaction or practice." *Id.* (emphasis added) (quoting *Lek*, 2019 WL 5703944, at *4).

Defendants have nevertheless indicated they will attempt to intimate counsel's advice exactly as *Frost* prohibits. At one deposition, for example, during questioning by Defense counsel, a witness stated "[m]y understanding is that . . . we were already meeting the legal requirement for the [Prime] upsells." Att. 7 at 217:19-218:7. When asked the basis for that testimony, Defense counsel allowed the witness to testify that "[t]here were a number of . . . meetings with various legal counterparts where we would show them our experience, may be review some proposed changes to that experience . . . ." *Id.* at 237:14-24. Yet, as soon as the witness started to say what the "feedback" actually was, Defense counsel instructed the witness that she "can't get into the specific conversations." *Id.* at 237:25-238:4. This is precisely the situation Defendants should not be able to create at trial. Having made the decision not to reveal counsel's "feedback," Defendants cannot, for example, offer testimony about attorneys' presence at various meetings in any way that implies that any legal advice was favorable.

Moreover, a defendant cannot testify as to his belief that he complied with the law when that belief is based only counsel's advice or presence. In *United States v. Bilzerian*, the defendant argued that he should have been permitted to testify "regarding his good faith attempt to comply with the securities laws" because doing so "would not have disclosed the content or even the existence of any privilege communications or asserted a reliance on counsel defense." 926 F.2d at 1292. The Second Circuit disagreed, in part because "courts cannot sanction the use of privilege to prevent cross-examination on matters reasonably related to those introduced in direct examination." *Id.* at 1293. The defendant's proposed testimony would have made his undisclosed

FTC'S CONSOLIDATED
MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC                          13

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

1  "conversations with counsel regarding the legality of his schemes . . . directly relevant in

2  determining the extent of his knowledge." *Id.* at 1292. Similarly, a court in this district warned a

3  defendant that its "failure to disclose privileged communications in discovery may seriously

4  impair its ability to present a good faith defense at trial." *Columbia Cmty. Credit Union v.*

5  *Chicago Title Ins. Co.*, 2009 WL 10688219, at *2–3 (W.D. Wash. Dec. 22, 2009).

6      Here, Defendants have attempted to offer testimony about their *belief* in their own legal

7  compliance when the sole basis for that belief is the advice or presence of counsel. Another

8  Amazon deposition witness, for example, testified, upon questioning from Defense counsel, that

9  he did not believe that Prime's enrollment or cancellation processes "broke the law." Att. 8 at

10  163:12-21. When asked by the FTC the basis for that belief, the witness—after being instructed

11  not to reveal attorney-client communications—testified, without objection, that "[w]e had

12  counsel at Amazon to guide decisions. So the—all changes in stuff that were made in the context

13  of the cancel flow were under review, a lot of review of different sources including legal sign

14  off. And so we never put anything out that we thought—that was deemed would not be [legal]."

15  *Id.* at 191:23-193:2. In other words, the FTC's questioning revealed that the only basis for the

16  witness's prior testimony regarding Defendants' legal compliance, in response to Defendants'

17  questioning, was the advice of counsel. Because Defendants did not permit the witness to reveal

18  that advice, the FTC could not probe the genuineness or reasonableness of the witness's "belief."

19  Defendants should not be able to use the same tactic at trial. Defendants must precede any

20  testimony about a witness's belief in their compliance by establishing a basis for that belief is

21  neither the advice nor presence of counsel.

22      Defendants' two likely counterarguments fail. Initially, they may argue that because the

23  FTC will claim Defendants abused the "privileged & confidential" label and indiscriminately

FTC'S CONSOLIDATED
MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC                    14

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

added attorneys to documents to shield them from production, Defendants must be able to respond. This argument, however, would permit Defendants to *gain an advantage* from their sanctioned conduct. The Court has already ruled that Defendants engaged in conduct "tantamount to bad faith" through their scheme to disguise business communications as legal ones. Dkt. #404 at 6-7. To allow Defendants to use that misconduct to do what would otherwise be disallowed—*i.e.*, assert or imply an advice-of-counsel defense without revealing privileged communications—would leave them in a *better* position than if they had acted in good faith. Defendants declined to assert an advice-of-counsel defense and instead embarked on a strategy to withhold other probative, non-privileged documents; that those misguided choices leave Defendants in a difficult position is not for the Court to rectify.

Defendants may also assert that because the FTC will argue that counsel's presence at various decision-making meetings and on email chains means the jury can infer Defendants knew the law (and therefore are liable for civil penalties), Defendants must be permitted to counter that assertion by urging the jury to infer that lawyers approved their conduct. That is wrong for two reasons. First, it is entirely different for the FTC to ask the jury to make an inference at the level of a privilege log, *i.e.*, that those communications addressed ROSCA, than it is for Defendants to imply the substance of the advice communicated. In other words, the FTC will merely argue that Defendants lawyers must have known about ROSCA's requirements and communicated about them (*i.e.*, what one could learn from a privilege log); the FTC will not argue what particular advice was given. Defendants should not be permitted to go beyond a general, privilege-log level and argue or imply that they received particular substantive advice (*i.e.*, that their conduct complied with ROSCA), especially having withheld all privileged communications (and thousands of nonprivileged ones).

FTC'S CONSOLIDATED
MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC                    15                    Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

Second, the unfairness of permitting Defendants to argue or imply the substance of the legal advice they received is severe because the danger in permitting such a disparity is heightened because the FTC has no access to privileged communications. The FTC cannot, for instance, cross-examine witnesses who imply the substance of the advice at issue with documents containing the actual advice. Accordingly, jurors are likely to credit Amazon's unfair implication..

### 3. Preclude Testimony or Argument Regarding the Diligence of the FTC's Investigation

The Court should preclude Amazon from offering evidence or eliciting testimony regarding the FTC's "diligence" in investigating this matter and its purported "constructive knowledge" of Amazon's violations. Defendants are likely to make such arguments in response to the FTC's claim that equitable estoppel should toll the statutes of limitations due to Amazon's conduct. *See* Dkt #67. ¶¶ 239-254; *supra* at 9 (elements of equitable estoppel). As this Court found, Amazon withheld documents from the FTC in conduct tantamount to bad faith, including up to and after the April 25, 2025 discovery cut-off. Dkt. #404 at 6-7. The FTC had been seeking those materials since March 16, 2021, when the Commission issued a CID to Amazon about Prime enrollment and cancellation, *see id.* at 3. Amazon withheld those materials through wrongful privilege designations despite its counsel (Langner) certifying under penalty of perjury multiple times, including during the FTC's pre-suit investigation, that Amazon's productions were "complete and true and correct…." *Id*. at 3-4. As explained in the FTC's Opposition to Defendants' summary judgment motions, the FTC detrimentally relied upon Amazon's false assurances of cooperation, unaware of Amazon's deception, which impeded the FTC's investigation and delayed this suit. *See* Dkt. #354 at 51-63. Amazon's deception during the

FTC'S CONSOLIDATED
MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC                    16                    Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

1    investigation stage was first began to be revealed to the FTC on March 14, 2022, when a

2    *Business Insider* article leaked insider information from Amazon revealing the company had not

3    made full disclosure to the FTC. *See* Dkt. #69 ¶ 245.

4        Equitable estoppel "focuses primarily on the *actions taken by the defendant* in preventing

5    a plaintiff from filing suit." *Amaro*, 653 F.3d at 813 (emphasis added). The only burden the FTC

6    carries with respect to its own conduct is to show ignorance of "a full understanding of the true

7    facts" and that it detrimentally relied on Amazon's representations. *See id.* The FTC lacked a full

8    understanding of the true facts that are key to this suit due to Amazon's false assurances that it

9    was fully cooperating, even while it withheld facts about the Amazon teams that worked on

10   nonconsensual Prime enrollment, Dkt. #354 at 59, key internal terms for intentionally

11   complicated Prime cancellation processes, *id.,* and, importantly, inculpatory evidence in tens of

12   thousands of non-privileged documents that Amazon withheld for years. Dkt. #404 at 5-7. That

13   the FTC's reliance on Amazon's repeated assurances was detrimental is evident and undisputed.

14   Dkt. #354 at 61. Moreover, it would be absurd for Amazon to argue that it was unreasonable for

15   the FTC to rely on its counsel's express representations that the documents withheld were

16   privileged and that its productions were complete. *Cf.* Wash. R. Prof. Conduct 3.4(a) (counsel

17   may not unlawfully obstruct access to or conceal documents with evidentiary value from

18   opponent).

19       Despite the foregoing, Defendants plan to introduce irrelevant evidence and make

20   baseless arguments against equitable tolling here. But "[i]rrelevant evidence is not admissible,"

21   Fed. R. Evid. 402, and Amazon's arguments must be excluded.

22       First, Amazon (incorrectly) argues equitable estoppel does not apply because the

23   Commission was purportedly not diligent in investigating the evidence that Amazon did disclose.

FTC'S CONSOLIDATED
MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC                    17

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

*See* Dkt. #319, at 30-31. However, the FTC need not establish diligence to assert equitable estoppel, and thus facts about how diligently it conducted its investigation into the disclosed materials is irrelevant.[7] *See* Dkt. #354 at 61-62 (explaining that diligence is not an element of equitable estoppel (citing *IQVIA Inc. v. MedImpact Healthcare Sys., Inc.*, 2022 WL 6258369, at *5-6 (S.D. Cal. Oct. 7, 2022); *Amaro*, 653 F.3d at 813)). Moreover, the FTC's diligence is doubly irrelevant because the limited material Amazon disclosed during the investigation did not disclose a "full understanding of the true facts" of this case, so it could not have enabled the FTC to gain that understanding regardless of the alacrity of the agency's review. Dkt. #354 at 60 (citing *Amaro*, 653 F.3d at 813.) What Amazon withheld in conduct tantamount to bad faith *would* have provided that understanding, as Amazon knew. Thus, Amazon intentionally induced the FTC to believe that it was fully cooperative when it was not; no facts about the FTC's conduct of its investigation can change that. *See id.* at 51-58.

Defendants also wrongly assert that the Commission could have suspected ROSCA violations from circumstances outside of the tolling period, making it purportedly constructively knowledgeable of its claims and therefore not entitled to equitable estoppel. *See* Dkt. #319, at 30-31. In support, Amazon points to the public nature of Prime's enrollment and cancellation flows, and consumer complaints about Prime made to the FTC. This evidence and argument are also irrelevant. "Where a plaintiff suspects the truth but investigates unsuccessfully, fraudulent

---

[7] Of course, the FTC *was* diligent in its review and will vigorously dispute Amazon's characterization of its investigation, should the company introduce irrelevant facts or argument about it. However, because the FTC is not asserting it is entitled to tolling due to some excusable delay, which requires proof of diligence, its diligence is irrelevant. Rather, it is relying on Amazon's wrongdoing and therefore must meet only the elements of estoppel. *See, e.g.*, *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1051 (9th Cir. 2008) (disavowing assertion of tolling due to excusable delay, under which diligence would be a pertinent inquiry).

concealment will toll the statute." *UA Local 343 v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465, 1475 (9th Cir. 1994). Indeed, the FTC *did* investigate Amazon's ROSCA violations based on its concerns about the company's flows and consumer complaints, but was "met with misleading assurances" from Amazon. *Id.*. Thus, evidence that the FTC suspected the truth, such as because of consumer complaints, is irrelevant to the estoppel issue, since the FTC was ultimately frustrated and delayed due to Amazon's concealment.

Amazon should not be rewarded for its wrongdoing by being allowed to raise irrelevant attacks on the Commission's investigation. Thus, the Court should preclude Amazon from offering irrelevant evidence or arguments related to the Commission's conduct during the investigation, during or outside of the tolling period.

### 4. Exclude Defendants' Untimely Disclosed Fact Witnesses

The FTC moves to exclude any testimony from Ben Angel, Jay Patrikios, and John Fulmer, who are Amazon employees disclosed for the first time on August 1, seven weeks before trial. Defendants' failure to disclose these individuals with discoverable information, and its apparent intent to rely on their testimony at trial, are neither justified nor harmless. Fed. R. Civ. P. 37(c)(1).

The parties first exchanged their Rule 26(a) initial disclosures on August 18, 2023. Dkt. #255-19. Defendant Amazon identified 10 of its current and former employees, not including Angel, Patrikios, or Fulmer. Amazon then provided three amended initial disclosures during the discovery period, which closed on April 25, 2025, naming additional individuals but again omitting Angel, Patrikios, and Fulmer each time. Dkts. ##199 (discovery closure); 255-20, 255-21; Att. 12 (additional disclosures). Finally, ten days ago, Defendants again amended their initial disclosures for the fourth time, only then naming Angel, Patrikios, and Fulmer as individuals

FTC'S CONSOLIDATED
MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC                    19

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

with discoverable information "that Amazon may use to support its defenses."[8] Att. 13 at 3-5. This "initial disclosure" of the three potential witness' identities occurred three months after the close of regular discovery[9] and seven weeks before trial.

"The purpose of [Rule 26(a)] disclosures is to identify those witnesses that a party intends to use at trial." *Barton v. Delfgauw*, 2022 WL 2905573, at *2 (W.D. Wash. July 22, 2022) (citations omitted). These disclosures must name "each individual likely to have discoverable information … that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a). Further, such disclosures must be supplemented "in a timely manner." *Id.* 26(e)(1)(A). This permits parties to "conduct discovery of what those witnesses would say on relevant issues, which in turn informs the party's judgment about which witnesses it may want to call at trial, either to controvert testimony or to put it in context." *Ollier v. Sweetwater Union High School Dist.*, 768 F.3d 843, 862 (9th Cir. 2014). Accordingly, if a party fails to timely identify a witness, it may not present that witness' testimony at trial unless it proves that "the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Defendants cannot show their late disclosure of Angel, Patrikios, and Fulmer was "harmless" or "substantially justified." Courts analyzing these questions must consider (1) prejudice or surprise to the opposing party; (2) ability of the opposing party to cure the prejudice;

---

[8] Defendants represented in conference with the FTC they may call Fulmer solely to authenticate one document. The FTC does not object if Defendants call him only for that purpose. Depending on the document at issue, the FTC may also be willing to stipulate to its authenticity.

[9] As the Court is aware, the FTC sought and obtained Court leave to take certain additional discovery after the cutoff date based on Defendants' wrongful withholding of thousands of documents throughout the investigation and litigation of this matter. Dkt. #404.

FTC'S CONSOLIDATED
MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC                    20                    Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

1    and (3) the likelihood of disruption of the trial.[10] *Liberty Ins. Co. v. Brodeur*, 41 F.4th 1185,

2    1192 (9th Cir. 2022). Here, disclosure months after the close of discovery, and only weeks

3    before trial, severely prejudices the FTC, which could have deposed these witnesses were they

4    properly disclosed. Nor can this prejudice be cured without reopening discovery, which would

5    severely disrupt the FTC's trial preparation. *Ollier*, 768 F.3d at 863 ("A party might be able to

6    scramble to make up for the delay, but last-minute discovery may disrupt other plans. … And it

7    impairs the ability of every trial court to manage its docket."). Indeed, given the limited time,

8    forcing the FTC to depose or otherwise take discovery concerning these late-disclosed witnesses

9    will hamper the FTC's ability to take other discovery that the Court authorized to sanction

10    Amazon for conduct tantamount to bad faith; the Court should not allow Amazon to interfere

11    with that sanction by further expanding the field. Furthermore, it was wholly unjustified for

12    Defendants to disclose their own employees, whose relevance was long since known to them, the

13    month before trial. *John v. Rogers*, 2015 WL 11233124, at *2-3 (W.D. Wash. Apr. 17, 2015)

14    (excluding witness disclosed 42 days before trial).

15        Nor would Defendants' failure to disclose be rendered harmless or justified, as

16    Defendants may argue, if Angel, Patrikios, or Fulmer were mentioned in some of the documents

17    Defendants produced during discovery (tens of thousands of which were themselves wrongfully

18

19    _____

20    [10] A fourth factor, whether the party who failed to disclose did so willfully or in bad faith, only
     applies "[w]hen a district court imposes a sanction that amounts to dismissal." *Brodeur*, 41 F.4th
21    at 1192; *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (bad
     faith finding not required because exclusion of defendant's sole damages expert, "although
22    onerous, was less than a dismissal"); *R&R Sails, Inc. v. Ins. Co. of the State of Pa.*, 673 F.3d
     1240, 1247 n.1 (9th Cir. 2012). Defendants raise no claims in this matter such that exclusion of
23    evidence could "amount to dismissal," nor does exclusion of the three witnesses prohibit them
     from introducing properly disclosed evidence or witnesses.

FTC'S CONSOLIDATED
MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC                    21                    Federal Trade Commission
                                                                  600 Pennsylvania Avenue NW
                                                                  Washington, DC 20580
                                                                  (202) 326-2551

withheld until discovery closed) or in other depositions.[11] *Ollier*, 768 F.3d at 862 (rejecting

argument that no prejudice resulted from failure to disclose because "other disclosed witnesses

had mentioned the contested witnesses at their depositions"); *see also Simmons v. Morgan*

*Stanley Smith Barney, LLC*, 2014 WL 769290, at *9 (S.D. Cal. Feb. 25, 2014) (excluding

undisclosed defense witnesses even where they "were identified in [p]laintiff's disclosures" and

discussed in depositions); Dkt. #404 at 6-7 (finding Defendants wrongfully withheld almost

70,000 documents until the eve of or after the close of discovery). Knowledge that a person

exists is "distinctly different from knowledge that the person will be relied upon as a fact

witness." *Aldrich v. Indus. Cooling Solutions*, 2016 WL 879675, at *3 (D. Colo. Mar. 7, 2016)

(citations and quotations omitted).

### 5. Preclude Opinion Testimony by Undisclosed "Expert" Witnesses

The FTC moves the Court to preclude Defendants from untimely designating four

witnesses as experts, *see* Fed. R. Civ. P. 26(a)(2); *see also* Dkt. #199 (the Court establishing Feb.

24, 2025, as the deadline to disclose expert testimony). In briefing regarding the FTC's timely

designation of non-retained experts, the Defendants sought to "counter-designate four non-

---

[11] Defendants' withholding of crucial documents throughout this matter underscores why the FTC's sole recent addition to its list of potential witnesses – Amazon employee Karen Ressmeyer – is differently situated to Defendants' recent additions. The FTC learned of Ressmeyer's relevance only after Defendants yet again withdrew a previously asserted, wrongful privilege claim and produced documents *last week* identifying Ressmeyer's role in Amazon's wrongful withholding of evidence. *See* Att. 1. The FTC could not know of this witness' role or relevance, which Amazon concealed until shortly before trial but knew about all along, until receiving this extremely belated production.

FTC'S CONSOLIDATED
MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC                    22

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

1    retained experts to offset the FTC's." Dkt. #372 at 1.[12] They provide no reason why the Court

2    should permit them to make this untimely designation.

3         As noted above, Fed. R. Civ. P. 26 mandates a party must timely disclose to the other

4    parties the identity of any witness, including experts, it may use at trial. *See* Fed. R. Civ. P.

5    26(a)(2)(A); 26(a)(2)(D). "Disclosure of a non-retained expert 'must state: (i) the subject matter

6    on which the witness is expected to present evidence ...; and (ii) a summary of the facts and

7    opinions to which the witness is expected to testify.'" *Caputo v. Amazon.com Services LLC*,

8    2025 WL 1042345, at *2 (E.D. Cal. Apr. 8, 2025) (citation omitted); Fed. R. Civ. P. 26(a)(2)(C).

9    Defendants' request violates Rule 26(a)(2) in two ways. First, it is untimely because expert

10    witness disclosures were due on February 24, 2025. Dkt. #199 at 1. Second, the Defendants

11    neither state the subject matters, nor provide summaries of the facts and opinions, to which the

12    witnesses are expected to testify—in other words, Defendants ***still*** have not properly disclosed

13    them.

14         For the same reasons described *supra* at 20, a party that fails to timely identify a witness

15    as required by Rule 26(a) or (e) may not use that witness to supply evidence at a trial, unless the

16    failure was substantially justified or is harmless. *See* Fed. R. Civ. P. 37(c)(1); *Yeti by Molly*, 259

17    F.3d at 1106. The same factors – prejudice to the opposing party, the ability to cure that

18

19

20

21

22

23

---

[12] Amazon requested the Court to allow it to counter-designate Jenny Blackburn, Ryan Ogburn, Danielle Paulet, and Katey Muus. Dkt. #372 at 1.

FTC'S CONSOLIDATED
MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC                    23

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

1    prejudice, and likelihood of trial disruption – apply to all late disclosures of witnesses under

2    Rules 26 and 37.[13]  Fed. R. Civ. P. 37(c)(1); *see also Brodeur*, 41 F.4th at 1192.

3        Defendants fail to offer a justification for their delay, citing only "the obvious prejudice

4    of having hybrid experts exclusively in the FTC's case in chief." Dkt. #372 at 2. This is no

5    justification at all; the Defendants had ample time to make all their expert designations,

6    including non-retained experts, and simply ask for a do-over after failing to do so. Moreover, the

7    Defendants' delay is incurably prejudicial to the FTC. With only weeks left before trial and amid

8    sanctions-related discovery (Court-ordered after discovery closed because of Defendants'

9    conduct), the FTC would be forced to take or re-take yet more depositions that could have been

10   taken during regular discovery. Thus, the FTC will suffer uncured prejudice if the Court allows

11   the counter-designations of the four previously undisclosed percipient witnesses as non-retained

12   experts for trial.

13   **6.   Preclude Testimony or Argument Regarding the FTC's Website**

14       Defendants should be precluded from introducing testimony or argument regarding the

15   content or formatting of the FTC's website, ftc.gov, because it is irrelevant and highly

16   prejudicial. Defendants have attempted to elicit testimony from multiple witnesses concerning a

17   survey on the FTC's website to argue that Amazon's use of supposedly similar features in its

18   commercial business renders Amazon's conduct lawful. Dkt. #320-133 at 27-28. This is absurd.

19   First, the FTC is a law enforcement agency and does not sell anything to consumers, let alone a

20   subscription service. Second, ROSCA does not even apply to non-commercial entities, so it

21

22   ───────────────

[13] As with late-disclosed fact witnesses, because prohibiting Amazon from untimely designating
     witnesses as non-retained experts would not act as a dismissal of any claim, the Court need not
23   find Amazon's failure was willful or in bad faith. *R&R Sails*, 673 F.3d at 1247, n.1; *see supra*
     n.14.

FTC'S CONSOLIDATED
MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC                    24                    Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

cannot possibly be relevant evidence of what ROSCA requires. 15 U.S.C. § 8402. Third, clicking the wrong thing on the FTC's website would result in starting a survey that users could quit, rather than the recurring financial harm created by clicking the wrong thing on Amazon's website. This evidence is therefore irrelevant to questions before the jury and the Court, Fed. R. Evid. 401, and thus inadmissible, Fed. R. Evid. 402.

Even if this evidence had some minimal relevance, it would be vastly outweighed by the risk of prejudice to the FTC. Its only purpose would be to imply that the FTC is hypocritical or that (supposedly) no one really follows ROSCA. Both points are unfairly prejudicial and irrelevant. In short, Congress wrote ROSCA only to apply to businesses, and arguments about the FTC's website are not only likely, but *intended* to confuse and distract the factfinders about whether Amazon's website complied with ROSCA.

### 7. Preclude Testimony or Argument Regarding Other Businesses' Conduct

Defendants should be precluded from introducing testimony or argument that states or implies that because other businesses engaged in particular conduct, Amazon was permitted to do so. The only evidence relevant to the FTC's claim that Defendants violated ROSCA is evidence about the Defendants' own actions. Non-party companies' practices are irrelevant to whether Defendants violate ROSCA. They have no "tendency to make a fact more or less probable" about Prime, nor any "consequence in determining" the claims or defenses in this case. *See* Fed. R. Evid. 401. Irrelevant evidence is inadmissible. Fed. R. Evid. 402. Nevertheless, Defendants appear poised to waste time and cause confusion by attempting to introduce evidence of numerous irrelevant non-parties, including their' flows.

First, Defendants appear likely to assert an "everybody does it" defense, arguing that Prime's flows are standard or customary, and therefore are neither deceptive nor unreasonably

FTC'S CONSOLIDATED
MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC                            25                            Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

1    complex. Such a defense has long been barred. *See Smith v. United States*, 188 F.2d 969, 970–71

2    (9th Cir. 1951) (custom cannot justify illegal conduct); *see also Gonnella v. SEC*, 954 F.3d 536,

3    549–50 (2d Cir. 2020) ("[The fact that behavior is common does not mean it is not fraud.");

4    *United States v. Pitt-Des Moines, Inc.*, 168 F.3d 976, 991 (7th Cir. 1999) (affirming exclusion of

5    evidence out of concern that the jury would defendant not guilty because "everybody does it");

6    *Newton v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 135 F.3d 266, 274 (3d Cir. 1998) (en

7    banc) ("Even a universal industry practice may still be fraudulent."). Only Defendants are on

8    trial in this case. Any evidence or argument that the Prime flows were simply the standard or

9    usual way of doing business, and therefore not illegal, is irrelevant; it would be confusing to the

10   jury and unfairly prejudicial to the FTC if Defendants were nevertheless permitted to introduce

11   such evidence. Fed. R. Civ. P. 403 (court may exclude even relevant evidence if its probative

12   value is substantially outweighed by, among other things, danger of unfair prejudice or

13   confusion).

14        Defendants also vaguely argue that because the Prime flows have purportedly "common"

15   elements with other non-parties' flows for supposedly popular subscriptions, memberships, or

16   programs, consumers are likely to understand how the Prime flows work by comparison. *See,*

17   *e.g.*, Dkt. #319, at 20 (arguing that because certain button placements in Prime's enrollment

18   flows are "common," that a "reasonable consumer" is "likely to understand" the implications of

19   clicking the button). This argument is wholly unsupported by any admissible evidence, instead

20   resting on their hired experts' presumptions, as discussed in the FTC's motions to exclude such

21   testimony. *See* Dkt. #321, at 16-17 (Defendants' expert Dr. Donna Hoffman offers no support for

22   her assertion that the prevalence of certain at-issue design elements on other websites makes

23   consumers familiar and knowledgeable with navigating Prime flows); Dkt. #310, at 16-17

FTC'S CONSOLIDATED
MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC                          26

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

(Defendants' expert Dr. Ronald Wilcox fails to connect the results of his survey about consumers who have had a free trial of non-parties' memberships or subscriptions, to any consumer's understanding of Prime).[14] Nor have Defendants indicated they will offer admissible evidence showing that consumers who encountered non-parties' flows gained any understanding of Prime through those encounters, or that this is a widespread phenomenon among consumers generally. Instead, Defendants propose to introduce the websites of "popular" companies like Netflix, and even government websites, and to make dubious comparisons to Amazon's flows. *See* Dkt. #321, at 6, 17. Evidence simply demonstrating the web design of such completely unrelated businesses that are not even in the same industry—or in the case of a government entity like the National Weather Service, not commercial websites at all—are completely irrelevant to whether Amazon and its Prime subscription service processes violated ROSCA. Accordingly, the Court should exclude evidence and arguments related to non-party companies' practices, as irrelevant, or, in the alternative, on Rule 403 grounds. Further, even if the Court finds these other websites were relevant to how consumers understood Amazon's website, the Court should only admit such evidence for that limited purpose, and not for Defendants' understanding of what was or was not lawful, or for any other purpose.

**8.  Preclude Testimony or Argument Concerning Post-Enrollment Communications That Purportedly Disclosed Material Terms**

---

[14] Although the Court found Dr. Wilcox's testimony met the low bar required for admissibility by Rule 702, Dkt. 416 at 5-6, it necessarily did so in the vacuum of the *Daubert* test. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). That Dr. Wilcox's "Free Trial Survey" is of sufficient reliability and relevance that a reasonable juror could find it supports that some number of consumers are likely aware of common features of free trial, that is not enough to reach the conclusion that any consumers understood that Amazon was using them or how. Moreover, that consumers might be on guard because they are used to unlawful behavior or because such behavior is commonplace does not mean that the law permits it. *Supra* at 25-26.

FTC'S CONSOLIDATED
MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC                    27

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

1    Defendants should be precluded from arguing that "welcome emails" or other post-

2    enrollment communications are relevant to whether the enrollment process violates ROSCA.

3    Because ROSCA requires disclosures before obtaining billing information and consent before

4    making charges, evidence of welcome emails for Prime subscriptions, or other post-enrollment

5    notifications, are of no "consequence in determining the action." *See* Fed. R. Evid. 401.

6    Therefore, such evidence is irrelevant and inadmissible. Fed. R. Evid. 402.

7    Defendants' theory seems to be that consumers who did not consent to Prime

8    subscriptions nevertheless knowingly enrolled in Prime because Amazon sent to them some post-

9    enrollment communication informing them of the subscription. This defies logic. The idea that

10   "a party can take an action, not agree to a contract regarding that action, and yet still be bound by

11   that contract solely on the basis that the other party later sends a note saying so" is contrary to

12   the "most basic tenets" of informed and express consent. *Snow v. Eventbrite, Inc*., 2020 WL

13   6135990, at *10 (N.D. Cal. Oct. 19, 2020) (quoting *Windsor Mills, Inc. v. Collins & Aikman

14   Corp*., 25 Cal. App. 3d 987, 992 (Ct. App. 1972)). Nor are the welcome emails relevant to

15   consumers' credibility or to Amazon's state of mind. Consumers have testified and will testified

16   they did not intentionally sign up for Prime; it does not contradict that testimony to protest that

17   Amazon told them about the signup *after* it occurred, even if any consumer saw, read, or acted

18   upon the welcome email after the fact. As to Amazon's state of mind, sending a notification *after*

19   enrolling consumers in Prime – in clear contravention of ROSCA's requirements to obtain their

20   consent *beforehand* – cannot excuse Amazon's straightforward law violations.

21   Here, consumers were signed up for Prime during a check-out process; thus, they had to

22   be made aware of the Prime subscription offer at the time of that transaction, not afterwards. An

23   email or text message that governs "an internet transaction that in her mind has already

FTC'S CONSOLIDATED
MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC                    28

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

occurred" is not an offer. *Quamina v. JustAnswer LLC*, 721 F. Supp. 3d 1026, 1039–40 (N.D. Cal. 2024) (quoting *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 482-83 (2021)), *aff'd sub nom. Godun v. JustAnswer LLC*, 135 F.4th 699 (9th Cir. 2025). Therefore, as many courts have held, welcome emails, text message notifications, and any other post-enrollment communications are irrelevant and should be excluded under Rule 402. *See Quamina* (welcome emails and text messages did not show consent to contract terms); *Snow*, 2020 WL 6135990, at *10 (similar); *Walker v. Uber Techs., Inc.*, 749 F. Supp. 3d 134, 148–49 (D.D.C. 2024) (similar); *see also O'Connell v. Celonis, Inc.*, 2022 WL 3591061, at *10–11 (N.D. Cal. Aug. 22, 2022) (disregarding alleged confirmation email that consumer denied having seen).

### 9. Preclude Testimony or Argument Regarding Defendants' "Customer-centric" Culture

Pursuant to Rules 401, 403 and 404, the Court should preclude Defendants from offering evidence on their supposed "customer-centric" or "customer obsessed" corporate culture, Defendants' alleged embrace of such culture, and related character evidence. Such evidence is irrelevant and is also inadmissible character evidence that would be unfairly prejudicial. *See* Fed. R. Evid. 401, 403, 404(a); *see also FTC. v. Amazon.com, Inc.*, 2016 WL 1221654, at *3 (W.D. Wash. Mar. 29, 2016) (excluding evidence of Amazon's corporate character and "reputation for customer service" as "not relevant . . . with respect to violations of the FTC Act"); *M-Edge Accessories LLC v. Amazon.com Inc.*, 2015 WL 403164, at *17 (D. Md. Jan. 29, 2015) (limiting evidence of Amazon's "customer-centric" culture as prejudicial).

Defendants have repeatedly sought to excuse their unlawful conduct based on irrelevant corporate culture claims and are likely to try to do so at trial. This includes, for example, statements that Amazon is supposedly "relentlessly committ[ing] itself to serving customers,"

FTC'S CONSOLIDATED
MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC                    29                    Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

1   follows a "customer-centric philosophy," the Individual Defendants are "customer-obsessed,"

2   and that Amazon's "customer-centric philosophy" has won Amazon "widespread acclaim and

3   consumer trust." *See* Dkt. ##171 at 2, 4-5; 83 at 8; 316 at 11.

4          Character evidence is never admissible under Rule 404 in a civil action to prove, as

5   Amazon will likely argue, that it acted in conformity with those traits. *See* Fed. R. Evid. 404

6   2006 Adv. Comm. Notes ("[I]n a civil case evidence of a person's character is ***never*** admissible

7   to prove that the person acted in conformity with the character trait.") (emphasis added); Fed. R.

8   Evid. 404 1972 Adv. Comm. Notes ("Character evidence is of slight probative value and may be

9   very prejudicial. It tends to distract the trier of fact from the main question of what actually

10  happened on the particular occasion.").

11         While Rule 404 speaks to a *person's* character or trait," courts "regularly appl[y]" it to

12  corporations. *Feighan v. Res. Sys. Grp. Inc.*, 2023 WL 4623123, at *8 (D.D.C. July 19, 2023)

13  (citing cases); *see also Hausman v. Holland Am. Line-USA*, 2015 WL 11234151, at *4 n.5 (W.D.

14  Wash. Aug. 4, 2015) (assuming, without deciding, that Rule 404 applies to corporations).

15  Exclusion "is consistent with the interests served by the general bar on admissibility of character

16  evidence," but even if it is not, it would be barred by Rule 403 due to its minimal probative

17  value, jury confusion, and undue prejudice. *Feighan,* 2023 WL 4263123 at *10. *See also* 1

18  U.S.C. § 1 (defining "person" to include corporations); *cf.* Adv. Comm. Note to Proposed Fed.

19  R. Evid. 603 (applying 1 U.S.C. § 1 to Fed. R. Evid.).

20         The types of character evidence Amazon is poised to use at trial, like mission statements,

21  slogans, corporate and executive character, and the like, are inadmissible character evidence

22  under Rule 404(a). *See* Fed. R. Evid. 404(a); *Equal Emp. Opportunity Comm'n v. St.*

23  *Joseph's/Candler Health Sys., Inc.*, 2022 WL 17978822, at *5 (S.D. Ga. Dec. 28, 2022)

FTC'S CONSOLIDATED
MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC                    30

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

("[Defendant] cannot rely on evidence of its general 'good' corporate character, including its 'mission statement, and the general manner in which its mission statement guides its hiring and employment decisions,' to show it acted in conformity with that character. . . ."); *Feighan*, 2023 WL 4623123, at *9 ("[U]sing opinion testimony of defendant's general 'good' corporate character to show that it acted in accordance with that trait . . . is improper under Rule 404(a). . . .").

Courts, including in this district, have excluded or limited ***Amazon's*** use of corporate character evidence. One court limited the exact turn of phrase Amazon uses repeatedly in this case—that "Amazon. . . seeks to be Earth's most customer-centric company." *Compare M-Edge*, 2015 WL 403164, at *17 (also limiting evidence of awards given to Amazon and its executives) *with, e.g.*, Dkt. ##171 at 2, 4-5; 83 at 8; 316 at 11. The *M-Edge* court found that such evidence created "a considerable degree of potential undue prejudice-and an effort to pander to a local jury." *M-Edge*, 2015 WL 403164, at *17. That prejudice is heightened here in the backyard of Amazon's global headquarters. In less prejudice-prone Maryland, where Amazon merely had a warehouse, the *M-Edge* court as a compromise allowed Amazon to proffer "background" evidence at least two days before presenting it, "and preferably prior to trial," for the court to make a particularized evaluation of its use. *Id.* (The case later settled.)

Likewise, Judge Coughenour previously excluded testimony by an Amazon expert on its corporate culture as "not relevant" to a principal question in this case: whether Amazon violated Section 5 of the FTC Act, *Amazon.com, Inc.*, 2016 WL 1221654, at *3-4, which is also Count I of the FTC's complaint here. Specifically, Judge Coughenour excluded the evidence on Amazon's "customer centric business design," its "customer satisfaction" approach, and its

FTC'S CONSOLIDATED
MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC                           31

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

1    "general reputation for customer service" in a case about whether Amazon's online practices

2    were unfair under the FTC Act. *Id.*

3           Just like these past cases, Amazon's "customer-centric" corporate and executive

4    character here is not relevant to the Defendants' FTC Act and ROSCA violations, or to the

5    Individual Defendants' liability for those violations. *See* 15 U.S.C. §§ 45(a), 8403. It also risks

6    confusing the jury with supposed "good character" evidence about Defendants that Rule 404

7    bans.

8           Should the FTC succeed at trial, Defendants' character evidence may be admissible when

9    the Court assesses the ***amount*** of civil penalties, a finding reserved for the court that must

10   necessarily come after the jury's verdict. *See* 15 U.S.C. § 45(m)(1)(C) ("In determining the

11   amount of such a civil penalty, the court shall take into account" enumerated factors); *cf. In re*

12   *Wright Med. Tech. Inc.*, 2015 WL 6690046, at *3 (N.D. Ga. Oct. 30, 2015) (finding corporate

13   character evidence is "not evidence that is generally admissible at trial" except in probative

14   issues around punitive damages). Further, defendants may present basic background evidence

15   about who they are, including information about their location, business nature, and size, insofar

16   as it helps a jury understand the facts at issue. *See In re Davol, Inc./C.R. Bard, Inc.,*

17   *Polypropylene Hernia Mesh Prods. Liab. Litig.*, 510 F. Supp. 3d 538, 546 (S.D. Ohio 2020);

18   *Acantha LLC v. DePuy Orthopaedics Inc.*, 2018 WL 2431852 (E.D. Wis. May 30, 2018). But

19   evidence about Amazon's "customer-centric" corporate character is irrelevant to the issues

20   before the jury and thus of no use in helping them understand the facts at issue, making it

21   prejudicial character evidence that is barred by Rule 404(a). *See* Fed. R. Evid. 404 2006 Adv.

22   Comm. Notes; *M-Edge*, 2015 WL 403164, at *17 n.14 (listing examples of acceptable

23   background evidence, such as Amazon's early business model and pivot away from just books).

FTC'S CONSOLIDATED
MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC                    32                    Federal Trade Commission
                                                                 600 Pennsylvania Avenue NW
                                                                 Washington, DC 20580
                                                                 (202) 326-2551

1    Accordingly, the Court should preclude all evidence relating to Defendants' corporate and

2    executive character and reputation.

3    **10. Preclude Testimony or Argument Regarding Benefits, Refund Policy, and**

4    **Reputation Unrelated to Enrollment and Cancellation**

5    The Court should preclude Defendants from introducing evidence pertaining to

6    customers' enjoyment of, or expectation of future use of, Amazon's services, like free shipping,

7    video and music streaming, and gaming. The Court likewise should exclude evidence of the

8    availability of refunds to Amazon customers who complain of nonconsensual enrollment or

9    cancellation challenges. Both types of evidence are irrelevant to any question at issue. *See* Fed.

10   R. Evid. 401. Moreover, even if such evidence had any marginal relevance, its probative value is

11   substantially outweighed by the danger of unfair prejudice and misleading the jury. Fed. R. Evid.

12   403.

13   Evidence pertaining to customers' enjoyment or appreciation of Amazon's services does

14   not bear on any issue involving the elements of the Restore Online Shoppers' Confidence Act,

15   ("ROSCA") violations, FTC Act violations, individual liability questions, or other issues raised

16   in this litigation. Dkt. #69 at 87-90. Nor does evidence that Amazon provided refunds to consumers

17   who complained of the company's ROSCA violations relate to these questions. *See, e.g., FTC v.*

18   *Pantron I Corp.*, 33 F.3d 1088, 1103 (9th Cir. 1994) (existence of money-back guarantee insufficient

19   to prevent monetary remedy under FTC Act because "[a]nything might then be advertised as long as

20   unsatisfied customers were returned their money.") (quotations omitted). Instead, the FTC

21   anticipates Amazon will seek to use evidence of consumers' prior enjoyment of Amazon

22   benefits, expectation of future use of Amazon services, or ability to request a refund to prejudice

23

FTC'S CONSOLIDATED
MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC                    33                    Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

the jury unfairly.[15] *See, e.g.*, Att. 10 at 47:19-48:3 (Amazon shipping is convenient); Att. 11 at 29:10-25 (Amazon offers convenience and selection). These types of evidence, beyond lacking any relevance, would tend to cause jurors to base their decision on feelings about Amazon and its services, rather than facts relevant to whether it violated ROSCA. *See U.S. v. Skillman*, 922 F.2d 1370, 1374 (9th Cir. 1990) (Rule 403 precludes evidence with tendency to suggest decision on emotional basis).

**11. Preclude Extrinsic Evidence of Reid Nelson's Character for Truthfulness**

Defendants should be precluded from introducing evidence or testimony concerning former Amazon employee Reid Nelson's character. The Rules of Evidence provide only limited grounds for impeachment use of either reputation evidence under Rule 608(a) or certain criminal convictions under Rule 609, but specific instances of Nelson's conduct that purportedly reflect on his character are inadmissible for purposes of impeachment. Fed. R. Evid. 608(b) ("[E]xtrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness."); *see also* Fed. R. Evid. 404 (strictly limiting use of character evidence and stating that rules 607, 608, and 609 govern impeachment of witnesses with character evidence). For example, Defendants should not be permitted to introduce evidence of Nelson speaking in a certain way. *See, e.g.*, Att. 9 at; 21:20-

---

[15] The FTC does not seek to prevent Defendants from introducing the simple fact that a given consumer did or did not use Prime benefits at a given time. However, Defendants should not be permitted to make arguments or introduce evidence that Prime benefits generally are of high value to consumers or that consumers enjoy them, as such evidence is irrelevant and likely to prejudice the jury. Likewise, the FTC does not seek to preclude Defendants from offering evidence of amounts paid in refunds as relevant to any computation of monetary relief; calculations of equitable monetary relief, however, are for the Court rather than the jury, and evidence regarding Amazon's refund policies is both irrelevant to any jury question and likely to prejudice the jury.

FTC'S CONSOLIDATED
MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC                    34

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

22:7 (Amazon questioning Nelson regarding whether purportedly "exaggerated" claims in a text message to a friend were "truthful"). Such snapshots are neither evidence of a "character for … untruthfulness" that may be permitted under Rule 608(a) nor are they qualifying criminal convictions under Rule 609. *See Houserman v. Comtech Telecomms. Corp.*, 519 F. Supp. 3d 863, 870 (testimony from lawyer who conducted investigation of witness and found her untruthful not admissible under Rule 608). Because such snippets regarding Nelson's character would ultimately be more prejudicial than probative, they should be precluded from introduction.

### 12. Preclude Opinion Testimony from Non-Experts

Defendants should not be permitted to elicit opinions from non-experts, such as asking individual consumers how they would have interacted with a website that those consumers have never seen before. For non-experts, opinion testimony is only admissible if it is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; *and* (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. In depositions, Defendants have repeatedly shown consumer witnesses flows that Defendants *represented* were screenshots of real Amazon webpages, but in several cases those consumers *denied* ever seeing the webpages depicted and Amazon laid no foundation to show otherwise. Lay opinion is not helpful if it merely makes observations the jury is capable of making itself. *United States v. Dorsey*, 122 F.4th 850, 853 (9th Cir. 2024). These hypotheticals are not in any way helpful, and improperly attempt to undermine expert opinion with lay opinion.[16]

---

[16] Nor are surveys a meaningful comparison. The surveys in this case involve either (1) consumers moving through a live flow, rather than viewing screenshots and giving hypothetical answers, (2) answering questions about their own experiences with the actual Amazon website, and/or (3) surveys conducted by experts held to a different standard under Fed. R. Evid. 702.

FTC'S CONSOLIDATED
MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC                    35

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

In their attempts to exclude FTC expert Dr. Marshini Chetty, Defendants alleged that her "opinions are nothing more than her own impressions of screenshots of Amazon's flows." Dkt. #322 at 3. They argue she would "provide her own subjective views and usurp jurors' own role of examining Amazon's flows and drawing their own conclusions." But as the Court held, Dr. Chetty's opinions "are based on, among other things, her 20 years of experience in HCI [Human Computer Interaction], peer-reviewed literature, and a well-known, widely used methodology in the HCI field." Dkt. #417 at 9. Defendants cannot now do exactly what they have complained of: introduce lay opinion to substitute for the jury. If Defendants can show that consumers interacted with a particular page or flow, then they can certainly ask about it; but anything else is beyond their personal knowledge.

## 13. Preclude Testimony or Argument Contrary to Undisputed Material Facts and Conclusions of Law

Matters resolved on summary judgment through a finding that no genuine dispute exists as to any material fact, as well as any conclusions of law, are not before the jury. Thus, any evidence contradicting such holdings is irrelevant under Fed. R. Evid. 401 and thus inadmissible under Fed. R. Evid. 402. It also has no probative value, but significant risk of confusing the jury, making it inadmissible under Fed. R. Evid. 403. The FTC does not oppose this order applying all parties.

## 14. Exclude Non-party Fact Witnesses from the Courtroom

All fact witnesses should be excluded from the courtroom until they are called to testify, pursuant to Fed. R. Evid. 615(a). This order need not apply to expert witnesses. Nor would it apply to individual defendants or to Amazon's designated representative. Fed. R. Evid. 615(a)(2). The FTC understands Defendants oppose this request as it relates to Amazon

FTC'S CONSOLIDATED
MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC                    36                    Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

1    employee Benjamin Langner, who the FTC intends to call at trial.[17] As discussed above, Langner

2    is the attorney whom Amazon identified as responsible for the wrongful privilege designations at

3    issue, and who signed the false sworn declaration confirming that role. *See supra* at 3. There is

4    no reason for Langner to be treated any differently, and Amazon could easily have any number

5    of other employees serve whatever non-testimonial purpose they have for him.

---

[17] The FTC also understands that Defendants object to the FTC calling Langner.

FTC'S CONSOLIDATED
MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC                    37

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

## LOCAL RULE 7(e) CERTIFICATION

I certify that this motion contains 10,871 words in compliance with the Local Civil Rules.

Dated: August 11, 2025

s/ Colin D. A. MacDonald
JONATHAN COHEN (DC Bar # 483454)
EVAN MENDELSON (DC Bar #996765)
OLIVIA JERJIAN (DC Bar #1034299)
JONATHAN WARE (DC Bar #989414)
ANTHONY SAUNDERS (NJ Bar #008032001)
SANA CHAUDHRY (NY Bar #5284807)

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington DC 20580

(202) 326-2551 (Cohen); -3320 (Mendelson); -2726
(Ware); -2749 (Jerjian); -2917 (Saunders); -2679
(Chaudhry)

JCohen2@ftc.gov; EMendelson@ftc.gov;
JWare1@ftc.gov; OJerjian@ftc.gov;
ASaunders@ftc.gov; SChaudhry@ftc.gov

COLIN D. A. MACDONALD (WSBA # 55243)
Federal Trade Commission
915 Second Ave., Suite 2896
Seattle, WA 98174
(206) 220-4474; CMacdonald@ftc.gov

RACHEL F. SIFUENTES
(IL Bar #6304016; CA Bar #324403)
Federal Trade Commission
230 S. Dearborn St., Room 3030
Chicago, IL 60604
(312) 960-5617; RSifuentes@ftc.gov

JEFFREY TANG (CA Bar #308007)
Federal Trade Commission
10990 Wilshire Boulevard, Suite 400
Los Angeles, CA 90024
(310) 824-4303; JTang@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

FTC'S CONSOLIDATED
MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC                    38                    Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551