UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC; NEIL LINDSAY, individually and as an officer of Amazon.com, Inc.; RUSSELL GRANDINETTI, individually and as an officer of Amazon.com, Inc.; JAMIL GHANI, individually and as an officer of Amazon.com, Inc.,<br><br>Defendants. | CASE NO. 2:23-cv-00932-JHC<br><br>ORDER DENYING MOTION TO EXCLUDE DEFENDANTS' EXPERT JAMES C. COOPER |

# I
## INTRODUCTION

This matter comes before the Court on Plaintiff FTC's Rule 702 Motion to Exclude Defendants' Expert James C. Cooper. Dkt. # 313. The Court has considered the materials filed in support of and in opposition to the motion, the rest of the file, and the governing law. The Court finds oral argument unnecessary. Being fully advised, for the reasons below, the Court DENIES the motion.

ORDER DENYING MOTION TO EXCLUDE
DEFENDANTS' EXPERT JAMES C. COOPER - 1

## II

### BACKGROUND

The FTC sued Amazon.com, Inc. and three of the company's executives, Neil Lindsay, Russell Grandinetti, and Jamil Ghani, claiming that they violated Section 5(a) of the Federal Trade Commission Act (FTC Act), 15 U.S.C. § 45(a), and Section 4 of the Restore Online Shoppers' Confidence Act (ROSCA), 15 U.S.C. § 8403. Dkt. # 67 at 1–2 ¶ 1. The FTC alleges that Defendants tricked, coerced, and manipulated consumers into subscribing to Amazon Prime. *Id*. at 2 ¶ 2. According to the FTC, this was accomplished by failing to disclose the material terms of the subscription clearly and conspicuously and by failing to obtain the consumers' informed consent before enrolling them. *Id*. The FTC also alleges that Amazon did not provide simple mechanisms for subscribers to cancel their Prime memberships. *Id*. at 3 ¶ 7.

James C. Cooper is a law professor at George Mason University's Antonin Scalia Law School (ASLS). Dkt. # 330-23 at 6 ¶ 1. He has a Ph.D. in economics from Emory University. *Id*. at 6 ¶ 2. At ASLS, he teaches courses on the digital economy and consumer protection law; the consumer protection law course covers, among other things, the FTC's authority to regulate deceptive conduct and FTC disclosure requirements. *Id.* at 6–7 ¶ 7–8. His expert report offers opinions on two issues: (1) "What a reasonable market participant would have expected, prior to March 2021, was required to comply with ROSCA"; and (2) "The extent to which the FTC's allegations in this case are consistent with such reasonable expectations predating March 2021." *Id.* at 9 ¶ 21.

To generate his opening report, Cooper reviewed complaints and judicial decisions from ROSCA enforcement actions initiated before March 2021, when Amazon received a Civil Investigative Demand from the FTC. *Id.* at 8–9 ¶ 18. He then coded these materials to determine the prevalence of certain allegations in ROSCA enforcement actions. *Id.* If an

ORDER DENYING MOTION TO EXCLUDE
DEFENDANTS' EXPERT JAMES C. COOPER - 2

element was included in the document, it was coded as a "1" but if an element was not included then it was coded as a "0." *Id.* at 9 ¶ 19. This method purportedly allowed him to calculate the relative frequency of certain allegations and understand the conduct a "reasonable market participant" would expect to violate ROSCA. *Id.* He also reviewed ROSCA's statutory text and the FTC's public statements about ROSCA, including the FTC's Enforcement Policy Statement Regarding Negative Option Marketing, 2023 Notice of Proposed Rulemaking, and FTC Business Blog.[1] *Id.* In addition, he assessed FTC guidance on "clear and conspicuous" disclosures to obtain "informed consent" from the FTC's Dot Com Disclosures guidance and FTC enforcement actions in which the commission alleged a failure to provide clear and conspicuous disclosures or failure to obtain express informed consent. *Id.* ¶ 20.

Cooper finds "[t]he FTC's allegations against Amazon in this case lay out a new ROSCA standard that represents an unpredictable departure from the standard prior to March 2021 in two ways." *Id.* at 10 ¶ 26. First, he says the allegations suggest a new standard to "balance" the options to accept or decline an offer to enroll in a subscription service. *Id.* Second, he says the FTC's complaint sets out more stringent standards for clear and conspicuous disclosure, express informed consent, and simple cancellation than a "reasonable market participant" would have expected ROSCA to require. *Id.* His report also finds that "a reasonable market participant would not have believed, prior to March 2021, that the enrollment and cancellation flows alleged in the Complaint violated ROSCA." *Id.* at 10 ¶ 27.

---

[1] The Court previously denied Defendants' motion in limine to determine the FTC's statements in the 2019 Advance Notice of Proposed Rulemaking, the 2023 Notice of Proposed Rulemaking, and the 2024 Final Rule are relevant to their knowledge defense concerning civil penalties. Dkt. # 409. But Cooper demonstrates that experts in the field of economics could reasonably rely on these sorts of statements, including the Enforcement Policy Statement, in forming an opinion, Dkt. # 330-23 at 19-25, so he can testify to opinions based on these materials. Fed. R. Evid. 703; *cf. United States v. Locascio*, 6 F.3d 924, 938 (2d Cir. 1993) ("[E]xpert witnesses can testify to opinions based on . . . inadmissible evidence if experts in the field reasonably rely on such evidence in forming their opinions.").

The FTC moves to exclude Cooper's testimony on three grounds. Dkt. # 313. First, it says his testimony is irrelevant to whether Defendants violated the FTC Act or ROSCA and the availability of civil penalties. *Id.* at 8–11. Second, it contends his methodology is unreliable because he applied his case coding technique inconsistently. *Id.* at 11–13. Third, it asserts that he offers legal conclusions that are inadmissible under Federal Rule of Evidence 702. *Id.* at 13–15.

### III

### DISCUSSION

A.     Legal Standards

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Under Rule 702, a witness "who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise" provided:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.[2]

Courts must ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Hyer v. City & Cnty. of Honolulu*, 118 F.4th 1044, 1055 (9th Cir.

---

[2] Rule 702 was amended in 2023. *See* Notes of Advisory Committee on 2023 Amendments to Rule 702. The Advisory Committee Notes to the 2023 amendment state that the changes were intended to "clarify and emphasize" the plain language of Rule 702. *Id.* And "[n]othing in the amendment imposes any new, specific procedures." *Id.* Thus, cases interpreting Rule 702 that predate the 2023 amendment still apply. *See Reflex Media, Inc. v. SuccessfulMatch.com*, 758 F. Supp. 3d 1046, 1049 (N.D. Cal. 2024).

ORDER DENYING MOTION TO EXCLUDE
DEFENDANTS' EXPERT JAMES C. COOPER - 4

2024) (quoting *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1024 (9th Cir. 2022)).  They have "broad discretion" in making such evidentiary rulings.  *Id.* (citing *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1065 (9th Cir. 2017)).

Expert testimony is relevant if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert v. Merrell Dow Pharms., Inc.* ("*Daubert I*"), 509 U.S. 579, 589 (1993) (citing Fed. R. Evid. 702(a)).  "The relevancy bar [for expert testimony] is low, demanding only that the evidence 'logically advances a material aspect of the proposing party's case.'" *Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014) (quoting *Daubert v. Merrell Dow Pharm., Inc.* ("*Daubert II*"), 43 F.3d 1311, 1315 (9th Cir. 1995)).  "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010).

Courts apply four factors in determining whether expert testimony is reliable.  These include "1) whether a theory or technique can be tested; 2) whether it has been subjected to peer review and publication; 3) the known or potential error rate of the theory or technique; and 4) whether the theory or technique enjoys general acceptance within the relevant scientific community." *United States v. Hankey*, 203 F.3d 1160, 1167 (9th Cir. 2000) (citing *Daubert I*, 509 U.S. at 592–94).  But this list of factors is neither exhaustive nor intended to be applied in every case.  *Id.* (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)).  A court "not only has broad latitude in determining whether an expert's testimony is reliable, but also in deciding how to determine the testimony's reliability." *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) (internal quotations omitted).  And "[w]hile evidence that suffer[s] from serious methodological flaws . . . can be excluded, courts are not permitted to determine the veracity of the expert's conclusions at the admissibility stage."

*Teradata Corp. v. SAP SE*, 124 F.4th 555, 566 (9th Cir. 2024) (internal quotations and citations omitted) (second alteration in original).

The proponent of the expert testimony bears the burden of establishing admissibility by a preponderance of the evidence. *See Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996); *see also Qualey v. Pierce Cnty.*, 2025 WL 254810, at *3 (W.D. Wash. Jan. 21, 2025). And courts liberally construe Rule 702 in favor of admissibility. *See Daubert I*, 509 U.S. at 588; *see also Chinn v. Whidbey Pub. Hosp. Dist.*, 2021 WL 5200171 (W.D. Wash. Nov. 9, 2021).

B.     Relevance of Cooper's Testimony

Defendants say that Cooper's opinions are relevant to the FTC's request for civil penalties. Dkt. # 338 at 6; *see* 15 U.S.C. § 45(m)(1)(A); Dkt. # 67 at 86 ¶ 260. But the FTC says that Cooper's opinions are irrelevant to this request because the understanding of a "reasonable market participant" is unrelated to any Defendant's actual knowledge, which is the relevant question in the civil penalty inquiry.[3] Dkt. # 313 at 9. It says that Cooper cannot offer an opinion on any Defendant's actual knowledge because he did not review any materials related to this subject or speak with any Defendants about their knowledge of ROSCA. *Id.* at 9–10. The FTC also says that "at best" his opinion bears on the issue of implied knowledge. *Id.* at 10. Even so, it says, his opinion is irrelevant because implied knowledge concerns what someone would have understood based on what the statute requires, not what a "reasonable market participant" might have thought ROSCA requires based on past enforcement actions. *Id.* And the FTC contends that Cooper's opinions are flawed because they were formed on the basis of

---

[3] The FTC also argues that Cooper's opinions are irrelevant as to "whether Defendants' conduct violates ROSCA" and "whether ordinary consumers easily noticed and understood Amazon Prime's material terms." Dkt. # 313 at 6–7. But Defendants do not say that the opinions are relevant to these issues, so this order does not address this argument. Dkt. # 348 at 4–6.

ORDER DENYING MOTION TO EXCLUDE
DEFENDANTS' EXPERT JAMES C. COOPER - 6

non-ROSCA guidance. *Id.* The FTC underscores that it alleges that Defendants violated ROSCA, not any other rule. *Id.* at 11.

Defendants respond that Cooper's testimony undercuts the FTC's knowledge theory—that Defendants knew or should have known their actions were unlawful. Dkt. # 348 at 6. They say that Cooper's conclusions are directly relevant to whether "*a reasonable person under the circumstances* would have known of the existence of the provision *and that the action charged violated that provision*." *Id.* (quoting Dkt. # 165 at 46). Defendants also argue that Cooper's consideration of non-ROSCA guidance is relevant because the FTC itself has said these sources "provide guidance to the industry" on ROSCA requirements. *Id.* at 7. In the alternative, Defendants say that even if Cooper's analysis is overinclusive, that impacts the weight, and not the admissibility, of his opinions. *Id.* at 8.

Cooper's opinions are relevant to the FTC's request for civil penalties. As the FTC acknowledges, Defendants face civil penalty liability if they "either knew that the act was unlawful or if they should have known the act was unlawful ('knowledge fairly implied')." Dkt. # 386 at 3 (cleaned up) (quoting *United States v. Dish Network, LLC*, 954 F.3d 970, 978 (7th Cir. 2020)). Cooper's report is relevant to this standard, particularly the question of Defendants' implied knowledge. This is because his report may help the trier of fact determine whether Defendants should have known their actions were unlawful. The FTC argues Cooper does not offer an opinion on this subject because the relevant implied knowledge inquiry for Amazon is whether "a sophisticated company with virtually unlimited resources and near-constant involvement of in-house and outside counsel should have known." *Id.* And it says, for the individual Defendants, whether "executives in charge of the largest subscription program in the United States, essentially unlimited legal resources, and constant involvement with in-house or outside counsel" should have known. *Id.* But these arguments that Cooper did not account for

ORDER DENYING MOTION TO EXCLUDE
DEFENDANTS' EXPERT JAMES C. COOPER - 7

the actual circumstances of this case go to weight—not admissibility—because they attack the factual basis of his opinions. *Hangarter*, 373 F.3d at 1017 n.14 (9th Cir. 2004) ("[T]he factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination.") (quoting *Children's Broad. Corp. v. Walt Disney Co.*, 357 F.3d 860, 865 (8th Cir. 2004)).

In addition, Cooper's reliance on non-ROSCA guidance for his opinions does not render them irrelevant. As the FTC's designated representative recognized in her deposition, non-ROSCA sources provide "guidance relating to clear and conspicuous online disclosures" that are the same as "clear and conspicuous disclosure[s] in the context of ROSCA." Dkt. # 364-1 at 765:3–766:3.

At bottom, the relevance issues that the FTC identifies are best resolved through the adversarial process, not exclusion. The FTC seeks civil penalties in this action and Cooper offers opinions that are relevant to the availability of this remedy.[4]

C.      Reliability of Cooper's Testimony

The FTC next argues that Cooper's opinions must be excluded because they are unreliable. It says Cooper fails to demonstrate how his experience informs his conclusions. Dkt. # 313 at 11. It also says Cooper's case coding methodology was applied inconsistently because he used a different method to code for "dark patterns" than he used to code for past FTC ROSCA enforcement actions. *Id.* at 11–12.

---

[4] For the first time on reply, the FTC also argues Cooper's testimony is irrelevant because it is intended to imply "a hypothetical 'reasonable' person would have thought Amazon's conduct complied with ROSCA, which suggests that this is the [legal] advice Defendants must have received." Dkt. # 386 at 5. But the Court does not consider arguments raised for the first time in a reply brief. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("[D]istrict court[s] need not consider arguments raised for the first time in a reply brief.") (internal citation omitted).

ORDER DENYING MOTION TO EXCLUDE
DEFENDANTS' EXPERT JAMES C. COOPER - 8

Defendants respond that Cooper's opinions are sufficiently reliable. Dkt. # 348 at 8. They assert that he thoroughly detailed his case coding methodology, this method is common in the field of law and economics, and he did not apply his case coding method inconsistently. *Id.* at 9–10. They also say that Cooper has significant expertise in ROSCA's requirements and FTC consumer protection cases. *Id.* at 9. As a result, they contend, his report is the product of reliable methods. *Id.*

The FTC's first two arguments, that Cooper lacks experience with ROSCA and he does not show how his experience informed his conclusions, do not persuade the Court. Even though the FTC says Cooper did not perform any work pertaining to ROSCA while working at the FTC and that he has not written substantively on ROSCA, these arguments merely go to the weight of his conclusions. *United States v. Garcia*, 7 F.3d 885, 890 (9th Cir. 1993) (expert's lack of particularized expertise goes to the weight accorded to their testimony, not the admissibility of their opinion). Cooper adds that the methodology he employed is common in the field of law and economics and he describes how he has used similar methods in his own academic work. Dkt. # 330-23 at 9 ¶ 19–20. His report also develops how he relied on his findings to inform his conclusions. *See, e.g., id.* at 28–29 ¶ 102–104 (summarizing data collection that led to conclusions on FTC's enforcement of ROSCA). Thus, he provides a methodological nexus between his experience and his conclusions. Dkt. # 330-23 at 9 ¶ 19–20; *contra* Dkt. # 313 at 11.

The FTC's other argument about reliability, that Cooper applied his coding method inconsistently, also does not persuade the Court. The FTC takes issue with Cooper's methodology because he reviewed and analyzed past FTC ROSCA complaints to code them, but then coded past FTC cases for "dark patterns" based on the explicit use of that term. Dkt. # 313 at 12–13. In other words, unlike his coding for "dark patterns," he did not look for specific

ORDER DENYING MOTION TO EXCLUDE
DEFENDANTS' EXPERT JAMES C. COOPER - 9

language when he coded FTC ROSCA complaints for sub-categories of alleged deficiencies; instead, he did this coding based on "whether his understanding of the allegation in the complaint demonstrate[d] that 'one of these characteristics' [was] present. *Id.* The FTC likewise contends that Cooper did not consider consent orders from past FTC ROSCA enforcement actions to code for sub-categories of alleged deficiencies, but he did review consent orders from past FTC ROSCA enforcement actions to code for allegations of fraud. *Id.* at 13.

Defendants explain in response that the FTC has not defined "dark patterns" clearly enough to allow coding by any means other than searching for this explicit term. Dkt. # 348 at 10. At his deposition, Cooper also explained that he did not consider some information, such as FTC consent orders, because he was coding for the presence of certain allegations made in each case. *Id.* at 11. He chose to discount FTC consent orders because "consent requirements set behavioral remedies above the floor of legality as a prophylactic measure to 'fence in' parties whom the FTC has already found a reason to believe is violating a law it enforces." Dkt. # 330-23 at 8 ¶ 17 n.5. So, in his opinion, these materials provide "limited information as to . . . what a reasonable market participant would believe they needed to do to comply with ROSCA." Dkt. # 348 at 11. Notwithstanding these asserted criticisms, the underlying data that Cooper used to form his conclusions are not "so lacking in probative force and reliability that no reasonable expert could base an opinion on them[.]" *See In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 748 (3d Cir. 1994). The criticisms would be better leveled through the adversarial process.

D.   Testimony on Legal Conclusions

The Ninth Circuit has repeatedly instructed that "an expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law." *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017) (quoting *Hangarter*, 373 F.3d at 1016). So "when an expert undertakes to tell the jury what result to reach, this does not *aid* the jury in making a

decision, but rather attempts to substitute the expert's judgment for the jury's." *Id.* (cleaned up) (internal citation omitted).  It is likewise "the distinct and exclusive province" of the Court to instruct the jury on the applicable law.  *Hangarter*, 373 F.3d at 1017 (internal citation omitted).

The FTC maintains that Cooper's report includes four impermissible legal conclusions: (1) that "the FTC's allegations against Amazon in this case lay out a new ROSCA standard"; (2) that "the first departure from prior guidance is the novel theory of liability grounded in the subjective concept of 'dark patterns'"; (3) that "the FTC employed much more stringent tests for 'clear & conspicuous disclosure,' 'express affirmative consent,' and 'simple cancellation' in this case than in its other ROSCA cases"; and (4) that "a reasonable market participant would not have believed, prior to March 2021, that the enrollment and cancellation flows alleged in the Complaint violated ROSCA."  Dkt. # 313 at 14 (cleaned up).

Yet Defendants say these are opinions on issues of fact, not law.  Dkt. # 348 at 11.  They contend this is because Cooper never reaches the ultimate issues: "what ROSCA requires and whether Amazon's flows violate ROSCA."  *Id.*  Defendants also say that Cooper does not attempt to establish the legal requirements of ROSCA, apply them to the facts of the case, or determine whether any conduct violated ROSCA.  *Id.* at 11–12.  Rather, they say, he compares the FTC's allegations in this case and the FTC's allegations in other cases.  *Id.* at 12.  He notes that some of the FTC's allegations in this case are novel or more stringent when compared to other FTC cases, but he does not say whether these allegations violate ROSCA—he simply observes their novelty.  *Id.*  As a result, Defendants say that Cooper's testimony is admissible.  *Id.* at 13.

Cooper's report stops short of offering conclusions on the ultimate issues of law.  The FTC does not identify any portion of his report that claims to interpret ROSCA.  Nor does the FTC identify any portion of his report that opines on whether Defendants had knowledge of

ORDER DENYING MOTION TO EXCLUDE
DEFENDANTS' EXPERT JAMES C. COOPER - 11

ROSCA or that Defendants knew or should have known that their actions violated ROSCA. Instead, as Defendants acknowledge, Cooper reviewed, interpreted, and analyzed the FTC's past ROSCA enforcement actions. *See* Dkt. # 386 at 8. He then noted where he believed the FTC departed from its prior guidance. *See* Dkt. # 330-23 at 60–61 ¶ 213–14. This is not an interpretation of ROSCA. He also concluded that a "reasonable market participant" would have expected to have complied with ROSCA under certain conditions, but he never says that Defendants did not violate ROSCA or that Defendants would not have expected to have complied with ROSCA under these conditions. *Id.* This is permissible testimony because an expert is allowed to "discuss industry conditions, standards, and practices" as well as "factual corporate norms." *See Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008) (affirming district court's inclusion of expert testimony on these topics).

## IV
### CONCLUSION

For the reasons above, the Court DENIES the motion. Dkt. # 313.

Dated this 15th day of August, 2025.

John H. Chun
United States District Judge