1

2

3

4

5

The Honorable John H. Chun

6

7

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

8

9

FEDERAL TRADE COMMISSION,

10

    Plaintiff,

11

    v.

12

AMAZON.COM, INC., *et al.*

13

    Defendants.

Case No. 2:23-cv-0932-JHC

**FTC'S CONSOLIDATED**
**OPPOSITION TO DEFENDANTS'**
**MOTIONS IN LIMINE**

NOTE ON MOTION CALENDAR:
September 2, 2025

14

15        Plaintiff Federal Trade Commission ("FTC") files its Opposition to Defendants' Motions

16 in Limine:

17        **MIL-1. Exclude Financial and Remedies Evidence Unrelated to Alleged Conduct**

18        Defendants seek a sweeping ruling excluding entire categories of evidence despite its

19 relevance to questions before the jury. Under the guise of distinguishing between jury questions

20 and judge questions – premises with which the FTC largely agrees – Defendants seek to keep

21

22

23

FTC'S CONSOLIDATED OPP'N
TO DEFS' MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC

1

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

from the jury whole categories of evidence with probative value on questions the jury must decide. The Court should not be fooled.

*First*, Defendants seek to exclude "any evidence or argument on . . . the compensation or wealth of Amazon's executives, ***including the Individual Defendants*** or their families[.]" Dkt. 421 (hereafter, "Mot.") at 3 (emphasis added).[1] But the FTC alleges that Defendants broke the law to make more money and must therefore be allowed to put on evidence of not just the fact but the scale of that moneymaking. A defendant's income, whether in the form of salaries, bonuses, or inflation in stock price, is relevant to their motives to be truthful in business dealings. *See, e.g.*, *Shenwick v. Twitter, Inc.*, 2021 WL 1232451, at *11 (N.D. Cal. March 31, 2021); *In re Homestore.com, Inc.*, 2011 WL 291176, at *11 (C.D. Cal. Jan. 25, 2011). A reasonable juror could certainly conclude that a person may be more willing to break the law for $10 million than for $10,000. Further, to the extent the Individual Defendants' compensation packages included equity in Amazon or performance incentives tied to business outcomes, those facts are clearly relevant to whether the Individual Defendants had reason to engage in practices they knew could violate ROSCA. Tellingly, Defendants' cited cases on this issue are inapposite, Mot. at 4-5, in three ways:

- Cases involving *non-party* executives' finances. *E.g., Strategic Partners, Inc. v. FIGS, Inc.*, 2022 WL 17348175, at *2 (C.D. Cal. Sept. 26, 2022) (addressing wealth of plaintiff's non-party CEO); *Amboy Bancorporation v. Jenkens & Gilchrist*, 2008 WL 3833582, at *5 ("In the current case, none of Amboy's officers or directors, nor the

---

[1] The FTC does not intend to introduce evidence of non-party executives' compensation or wealth for the purposes of proving liability, but reserves the right to inquire about the compensation of any Amazon-employee or former-employee witness who testifies, or of retained experts, for impeachment purposes.

FTC'S CONSOLIDATED OPP'N
TO DEFS' MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC                    2

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

1    Bank's officers and directors, are parties to this action."). These cases are not instructive

2    as to parties.

3    • Cases deferring questions on whether to impose punitive damages until after an initial

4    liability trial. *Sturm v. Davlyn Invs., Inc.*, 2013 WL 8604661, at *6 (C.D. Cal. Nov. 6,

5    2013) (bifurcated trial, noting that if defendants raised a defense that put their finances at

6    issue, "then evidence regarding Defendants' finances will be permitted in the first

7    stage"); *Escobar v. Airbus Helicopters SAS*, 2016 WL 5897554, at *7 (D. Haw. Oct. 7,

8    2016) (first trial would not consider punitive damages); *Bryant v. OptumRX Pharmacy,*

9    *Inc.*, 2017 WL 5714721, at *4 (C.D. Cal. May 10, 2017) (excluding such evidence if trial

10   were bifurcated). But as Defendants admit, the jury *is* being asked whether penalties are

11   appropriate, making evidence supporting imposition of penalties not just probative, but

12   essential. Mot. at 3 ("the availability of civil penalties are properly decided by the jury at

13   trial").

14   • A case in which defendants misstate the court's holding entirely. *Compare* Mot. at 5

15   ("excluding evidence of **the parties' financial conditions, which 'do not make any fact**

16   related to [plaintiff's] claims more or less probable'") (emphasis added) *with Collins v.*

17   *Milliman, Inc.*, 2023 WL 3891749, at *4 (W.D. Wash. June 8, 2023) ("The

18   Court GRANTS Milliman's motion **to the extent the parties' financial conditions do not**

19   **make any fact** related to Milliman's claims more or less probable") (emphasis added).

20   *Second*, Defendants seek to exclude "any evidence or argument on . . . Amazon's

21   revenues or profits[.]" Mot. at 3. As noted above, Amazon's revenues and profits from the

22   services at issue in this case are directly relevant to understanding Defendants' decisions that

23   form the basis of the complaint's allegations. Similarly, the size of Amazon Prime and Amazon's

FTC'S CONSOLIDATED OPP'N
TO DEFS' MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC                    3                    Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

1    retail business is relevant to its sophistication and capacity to notice, understand, and fix the

2    problems with its enrollment and cancellation flows, and thus to the likelihood that Amazon was

3    aware its failure to do so was illegal. *See United States v. Dish Network L.L.C.*, 954 F.3d 970,

4    978 (7th Cir. 2020) (corporate defendant's large size and access to sophisticated counsel

5    supported finding of knowledge of the law for purposes of 15 U.S.C. § 45(m)(1)(A)).

6    Defendants' only cited caselaw on this point, *State Farm Mut. Auto. Ins. Co. v. Campbell*, is not

7    about admissibility of evidence at all and is instead about the propriety of and guardrails on jury

8    decisions about the amount of punitive damages, 538 U.S. 408, 417 (2003). Where, as here, (1)

9    the evidence is relevant to how the Defendants conducted themselves during events at issue and

10   (2) the jury will not be responsible for deciding the amount of any civil penalty, the cited holding

11   is inapplicable, and the balance favors admissibility. *See* Fed. R. Evid. 403.

12        *Finally*, Defendants seek to exclude evidence or argument about remedies and consumer

13   harm. The FTC agrees that the jury need not decide the equitable remedies, including restitution,

14   in this matter. However, Defendants also seek to exclude "the FTC's expert evidence in support

15   of its restitution demand." Mot. at 6. Defendants ignore that evidence can be relevant to multiple

16   questions. For example, in addition to its relevance to restitution, FTC expert Dr. Neale

17   Mahoney's testimony on consumer harm will aid the jury in understanding the scale of

18   Defendants' wrongdoing – that the problems consumers encountered were not isolated

19   occurrences, but widely repeated patterns. Again, Defendants cite only one case, *United States v.*

20   *Thompson*, and selectively quote it. Mot. at 6. In *Thompson*, Judge Robert Lasnik granted the

21   prosecution's motion to exclude testimony from a criminal defendant about one of his corporate

22   victims' settlements with a class of their own consumers. 606 F.Supp.3d 1058, 1065 (W.D.

23   Wash. 2022) ("Second, the settlement is for a very large sum - $190 million – and ***this sum***

FTC'S CONSOLIDATED OPP'N
TO DEFS' MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC                    4                    Federal Trade Commission
                                                                 600 Pennsylvania Avenue NW
                                                                 Washington, DC 20580
                                                                 (202) 326-2551

1   ***alone may mislead and confuse the jury into believing that Capital One, not defendant, was at***

2   ***fault***.") (emphasis added). Obviously, where the sum is the alleged direct result of Defendants'

3   lawbreaking at issue in the case, *Thompson* does not apply.

4         The Court should not indulge Defendants overinclusive motion and misleading advocacy

5   by categorically excluding relevant evidence simply because it could also be used in improper

6   ways.

7         **MIL-2. Exclude Evidence or Argument Concerning Discovery Disputes**

8         Defendants' MIL #2 asks the Court to bar the FTC from presenting any evidence or

9   argument to the jury concerning the "Parties' discovery disputes, including any claim that

10  Amazon delayed the FTC's pre-suit investigation by 'fail[ing] to timely produce the documents

11  the CIDs require.'" Mot. at 6.[2] Though Amazon downplays conduct this Court already found was

12  tantamount to bad faith as mere "discovery disputes," Mot. at 6-7, the truth of the matter is that

13  Amazon purposefully concealed documents. It wrongfully withheld 69,909 responsive

14  documents (representing 91% of its privilege claims) in the investigation and litigation. *See* Dkt.

15  #404 at 4-5. It marked probative documents as "privileged" without regard to whether they were

16  actually privileged. *See id.* at 5-7; Dkt. #425 at 4-5. As explained below, Amazon's motion must

17  be denied because (1) this evidence is highly probative, (2) Amazon incorrectly cites the legal

18  standard for knowledge, (3) Amazon's claims of the likelihood of a mini-trial are exaggerated,

19  and (4) any prejudice to Defendants is minor, not unfair, and far outweighed by the probative

20  value of the evidence.

21  _____

22  [2] Amazon does not contest that evidence of its conduct or the Court's finding that it was
    tantamount to bad faith is relevant to tolling and the calculation of civil penalties, but these are

23  "[d]eterminations to be made by the Court." Mot. at 7.

FTC'S CONSOLIDATED OPP'N
TO DEFS' MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC          5          Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

First, Amazon's conduct in hiding documents bears significant relevance to Amazon's *liability* for its ROSCA violations. *See* Dkt. #425 at 5-8. Aside from the sheer number of documents Amazon attempted to conceal from the FTC throughout multiple years, the documents *themselves* reflect the extent of Amazon's consciousness of guilt. Indeed, multiple documents the Court relied on in finding Amazon's conduct was tantamount to bad faith illustrate this. *See* Dkt. #404 at 5-7 (referring to Dkts. ##288-11, 288-23, 288-21, 288-8, 288-10, 288-20).[3] The case law Defendants cite, Mot. at 6-7, is inapposite because, unlike in this case, the "discovery disputes" in those cases were not relevant to the claims, or the Court did not find any wrongdoing.[4] *See Van v. Language Line Servs., Inc.*, 2016 WL 3566980, at *4 (N.D. Cal. June 30, 2016) (granting motion to exclude discovery dispute evidence that did "not bear on the merits" of the claims); *Multimedia Pat. Tr. v. Apple Inc.*, 2012 WL 12868264, at *4–5 (S.D. Cal. Nov. 20, 2012) (granting motion to exclude discovery dispute evidence pertaining to a defendant no longer in the action); *Wyatt Tech. Corp. v. Malvern Instruments, Inc.*, 2010 WL 11505684, at *14-16 (C.D. Cal. Jan. 25, 2010) (granting motion to exclude discovery disputes because the Court did not find any wrongdoing); *Barnett v. Gamboa*, 2013 WL 174077, at *2 (E.D. Cal. Jan. 16, 2013) (granting motion to exclude because no finding of wrongdoing); *Blue Cross & Blue*

---

[3] There are other documents similar to those the Court relied on. *See, e.g.*, Dkts. ##426-1 at 5; 426-2 at 2. For the reasons stated herein, the FTC should be able to introduce such materials as well.

[4] Though Amazon argues that *Stone Brewing Co., LLC v. Millercoors LLC*, 2021 WL 63139, at *6 (S.D. Cal. Jan. 7, 2021) and *Corning Optical Commc'ns Wireless Ltd. v. Solid, Inc.*, 2015 WL 5569095, at *2 (N.D. Cal. Sept. 22, 2015) should be treated differently because they are patent cases and the "infringer's behavior as a party to the litigation" is a factor in patent infringement matters (Mot. at 8), the FTC relies on non-patent caselaw as well, such as *Clarity Sports Int'l LLC v. Redland Sports*, 2024 WL 3743680, at *14 (M.D. Pa. Aug. 9, 2024) and *Clear-View Techs., Inc. v. Rasnick*, 2015 WL 3453529, at *2 (N.D. Cal. May 29, 2015). *See* Dkt. #425 at 5-6.

FTC'S CONSOLIDATED OPP'N
TO DEFS' MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC                6

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

1    *Shield of New Jersey, Inc. v. Philip Morris, Inc.*, 2000 WL 1805359, at *2 (E.D.N.Y. Dec. 11,

2    2000) (providing no basis for granting motion to exclude references to *alleged* discovery abuses).

3        Second, Amazon's conduct in hiding documents is highly probative of Amazon's

4    *knowledge* of its ROSCA violations. Amazon misstates the knowledge standard to escape this

5    conclusion. Mot. at 8. The FTC need not show Amazon had ***actual*** knowledge that it was

6    violating ROSCA. It must only show "knowledge ***fairly implied on the basis of objective***

7    ***circumstances*** that such act is unfair or deceptive and is prohibited by such rule." 15 U.S.C. §

8    45(m)(1)(A) (emphasis added). Amazon's attempts to conceal documents strongly implies

9    knowledge that the documents are inculpatory because there is no reasonable alternative

10   explanation for what Amazon did (and, at bare minimum, the Court should permit the jury to

11   consider the most likely explanation, namely, Amazon's consciousness of guilt). Specifically,

12   Amazon would not have used specious privilege markings and false certifications of privilege

13   logs to conceal documents relating to accidental signups if Amazon did not know that this

14   conduct violated ROSCA. *See* Dkt. #425 at 6 (referring to Dkts. ##288-11 at 4; 288-19 at 2).

15   Amazon would also not have stated that "the numerous steps" to the Iliad Prime Cancellation

16   Flow "can get the attention of regulators." Dkt. #426-2 at 2. Nor would Amazon instruct its

17   employees to blanket mark documents relating to clarity as "privileged" or to add in-house

18   counsel to communications pertaining to that topic to create false privilege claims. Dkt. #426-1

19   at 5.

20       Third, introducing evidence of Amazon's conduct tantamount to bad faith would not lead

21   to a "'mini-trial' over the Parties' interactions throughout four years of pre- and post-suit

22   litigation" or any other inappropriate expansion of the evidence before the jury. Mot. at 8-9.

23   Indeed, Amazon spectacularly exaggerates the level of complexity that introducing evidence of

FTC'S CONSOLIDATED OPP'N
TO DEFS' MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC                    7                    Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

1    its conduct would create. *See id.* at 9. The evidence of Amazon's conduct is straightforward: the

2    Court orders at issue, limited testimony demonstrating what happened (indeed, all but two

3    witnesses expected to address the conduct at issue would be called for other reasons anyway),

4    and a small number of additional documents.[5] Of course, should the Court find at trial the FTC's

5    evidence on this point has become cumulative, it may so rule, but it is premature to rule the

6    FTC's evidence is "cumulative" before a single witness has been questioned or a single

7    document introduced.

8           Amazon also claims it "would be forced to respond," but the fact that a party might

9    respond to probative evidence against it is not a reason to exclude that evidence. More important,

10   any response Amazon makes – or proposes to make – must still be relevant and otherwise

11   admissible. For example, the FTC's own privilege assertions—which Amazon has never

12   challenged, and the Court has never addressed—are irrelevant to whether Amazon's decision to

13   hide documents through conduct "tantamount to bad faith" implies consciousness of guilt (as it

14   does). Likewise, the FTC's conduct during the investigation is irrelevant to any of Amazon's

15   defenses regarding its liability and knowledge of ROSCA violations.[6] In short, the Court is

16   unlikely to admit the voluminous and misleading evidence Amazon claims it would offer in

17

18

19   _____

20   [5] Out of an abundance of caution, the FTC's pretrial statement included *all* evidence and
     witnesses the FTC may use in the entire case for both jury and judge issues, as there has not been
21   a formal ruling on what issues go to which factfinder. Much of the material having to do with the
     parties' back-and-forth during the investigation is relevant only to the equitable tolling claim,
22   and therefore would not complicate issues before the jury.

23   [6] Amazon argues that the FTC's conduct is relevant to equitable estoppel, but that issue is not
     before the jury.

FTC'S CONSOLIDATED OPP'N
TO DEFS' MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC                    8                    Federal Trade Commission
                                                                 600 Pennsylvania Avenue NW
                                                                 Washington, DC 20580
                                                                 (202) 326-2551

1    response to the bad faith finding. A party's threat to waste time and confuse issues in response to

2    probative evidence is not a basis to exclude that evidence.

3          Fourth, the evidence at issue is so probative of Amazon's consciousness of guilt that the

4    risk of **unfair** prejudice to Amazon cannot substantially outweigh it. *See* Fed. R. Evid. 403. The

5    jury should be allowed to infer Amazon's knowledge wrongful withholding of nearly 70,000

6    documents and false privilege marking instructions to its employees. Amazon does not contest

7    this uncontestable and dispositive point. Instead, it attempts to distract from the real issue by

8    rehashing arguments covered in another MIL, namely that the FTC should be precluded from

9    asking the jury to draw inferences from genuine requests for advice from counsel. The FTC

10   responds more fully to that separate argument in its opposition to Amazon's MIL #3. For

11   purposes of the present motion, it is sufficient to note the materials the FTC seeks to introduce

12   regarding Amazon's hiding of documents and the Court's subsequent finding of conduct

13   tantamount to bad faith are not, in fact, privileged.[7] Dkts. ## 248; 404.  That sets this issue apart

14   from the cases Amazon cites, in which an opponent sought to introduce privileged material. *See*

15   Mot. at 10-11; *DataTreasury Corp. v. Wells Fargo & Co.*, 2010 WL 11538713, at *17 (E.D.

16   Tex. Feb. 26, 2010) (Plaintiff sought to present "evidence or argument that Defendants obtained

17   *an opinion of counsel* but [ ] declined to produce it") (emphasis added) and *McKesson Info. Sols.,*

18   *Inc. v. Bridge Med., Inc.*, 434 F. Supp. 2d 810, 812 (E.D. Cal. 2006) (Plaintiff sought to present

19   evidence that Defendant obtained *an opinion of counsel*).

---

[7] Amazon also argues that the Court's "orders on sanctions do not require admission of this information." This is precisely the reason for which the FTC has filed its MIL #1. *See* Dkt. #425 at 3-11.

FTC'S CONSOLIDATED OPP'N
TO DEFS' MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC                    9                    Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

At this point, the Court is familiar with the record: probative documents covered in false privilege markings coupled with an attempt, "tantamount to bad faith," to keep tens of thousands of such documents the FTC. Foreclosing the FTC from using this evidence would leave the jury with a fundamental misimpression about what transpired in this matter. Because the Court should not allow this, Amazon's motion should be denied.

**MIL-3 Preclude Argument That Counsel Involvement Implies Knowledge**

Defendants' MIL #3 asks the Court to bar the FTC from "arguing that the presence or involvement of Amazon's in-house counsel in meetings or emails implies that Amazon or the Individual Defendants knew, or should have known, that their conduct was unlawful." Mot. at 11-13. Defendants' request fails for two reasons. First, the statute at issue expressly authorizes proof through implied knowledge. In particular, 15 U.S.C. § 45(m)(1)(a) allows the FTC to prove actual knowledge **or** knowledge "fairly implied" based on Defendants' circumstances—which, in this case, involves the ubiquitous presence of attorneys. Second, Defendants could have, and perhaps should have, asserted an advice-of-counsel defense; this, would have permitted the defense Defendants now seek to make indirectly, but would also have made the advice at issue available to the FTC. Instead, Defendants want to "have their cake and eat it too": they have blocked the FTC from accessing the principal (if not the only) source of evidence about what Defendants actually knew concerning the law, yet **also** seek to prevent the FTC from implying that defendants in these circumstances would have received advice that their conduct risked ROSCA liability. Because this situation is egregiously unfair to the government and wholly contrary to the operative statute, the MIL should be denied.

First, 15 U.S.C. § 45(m)(1)(a) expressly contemplates implied knowledge. It is beyond serious question that the ubiquitous presence of attorneys coupled with other evidence

FTC'S CONSOLIDATED OPP'N
TO DEFS' MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC                    10

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

1    (including, for instance, privilege logs and testimony indicating those attorneys gave advice

2    about "legal and regulatory risks related to features of Amazon subscription enrollment or

3    cancellation flows," Dkt. #288-19) gives rise to a strong inference that Individual Defendants

4    would have known that their conduct violated the law.[8] Specifically: (i) the pervasive

5    involvement of Amazon's in-house counsel in Amazon's business decisions concerning Prime

6    enrollment and cancellation suggests Individual Defendants must have conferred with counsel

7    about ROSCA; and (ii) given Defendants' conduct, those attorneys would have informed

8    Individual Defendants their conduct risked ROSCA liability.[9] Put differently, the jury can fairly

9    imply that people in Individual Defendants' circumstances would have received such advice.

10   This is exactly the sort of proof that the statute contemplates. *See Dish Network*, 954 F.3d at 978

11   (relying on the defendant's status as a "large national corporation with the ability to hire

12   sophisticated counsel" as evidence of the defendant's knowledge of the law).

13       Notably, Defendants cite various cases suggesting that parties cannot imply what

14   attorneys must have told their clients, but none of these decisions involved a cause of action that

15   put the defendants' knowledge of the law directly and necessarily at issue. *See Luck v.*

16

17   _____

18   [8] To prove Amazon's knowledge—as opposed to the Individual Defendants' knowledge—of
     ROSCA, it is enough that Amazon's in-house counsel had actual knowledge or knowledge fairly

19   implied of the law. *See, e.g.*, *In re Linerboard Antitrust Litig.*, 237 F.R.D. 373, 380 (E.D. Pa.
     2006) (facts learned by in-house counsel "are inherently part of a corporation's knowledge,

20   because the knowledge of employees is imputed to the corporation"); *Lewis v. CoreCivic of
     Tennessee, LLC*, 2024 WL 4728897, at *6 (S.D. Cal. Nov. 8, 2024) (rejecting argument that

21   "knowledge within one part of a corporation . . . cannot be imputed to other agents within the
     corporation").

22   [9] The FTC need not seek inferences about the specifics of this advice, or any recommendations
     counsel made, as noted in its MIL #2. Dkt. #425 at 11-16. Instead, it is sufficient merely to ask

23   the jury to infer that counsel's advice was not favorable to the Defendants, *i.e.*, they must have
     communicated Amazon's actions were violative.

FTC'S CONSOLIDATED OPP'N
TO DEFS' MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC                    11

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

1   *McMahon*, 2021 WL 4248887 (D. Conn. Sept. 17, 2021) (wrongful termination action; no

2   knowledge element); *Qualey v. Pierce Cnty.*, 2025 WL 948511 (W.D. Wash. Mar. 28, 2025)

3   (excessive force case; knowledge not a required element); *Parker v. Prudential Ins. Co. of Am.*,

4   900 F.2d 772 (4th Cir. 1990) (insurance coverage dispute; no statute authorizing proof of any

5   element through implied knowledge). Thus, Defendants point to no authority preventing the FTC

6   from implying what a person in a defendant's position would have learned from counsel when

7   the statute permits proof of knowledge through knowledge "fairly implied based on objective

8   circumstances." 15 U.S.C. § 45(m)(1)(a).

9          Second, this is the only fair result because Defendants chose not to invoke an advice-of-

10  counsel defense. (Indeed, this choice – notwithstanding a statute that effectively makes the

11  absence of knowledge a defense – shaped much of this litigation.) Critically, an advice-of-

12  counsel defense (and the associated waiver) is not a two-way street that either side can travel.

13  Because Defendants chose not to invoke such a defense, they cannot now seek to imply that the

14  advice they received must have been favorable. *See* Dkt. #425 at 11-16. But the opposite is not

15  true: because the FTC could not force Amazon to waive its privilege, the same constraints do not

16  apply. Instead, the FTC can ask the factfinder to infer that, in a sophisticated corporation with

17  attorneys everywhere, the attorneys would have advised that the conduct violated ROSCA. *See*

18  *Dish Network*, 954 F.3d at 978. To allow Amazon to block discussion of the principal means

19  through which persons in Defendants' circumstances obtain actual knowledge of the law, *i.e.*,

20  from attorneys, ***and also prevent the FTC from implying that knowledge***, would read the

21  ***implied*** knowledge element out of the statute almost entirely. It cannot be that the FTC can

22

23

FTC'S CONSOLIDATED OPP'N
TO DEFS' MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC                12                Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

1    imply knowledge, yet not from the most logical source of that implication. Accordingly,

2    Defendants' MIL should be denied for this reason as well.[10]

3        **MIL-4. Exclude Consumer Witness Testimony and Complaints**

4        Defendants fail to establish that consumer victims' testimony or complaints should be

5    excluded from trial, and indeed cite no case in which such evidence was excluded. Courts

6    overwhelmingly find such testimony relevant, probative, and admissible, particularly in the

7    FTC's consumer protection cases. *Lerner & Rowe PC v. Brown Engstrand & Shely LLC*, 673 F.

8    Supp. 3d 1017, 1030 (D. Ariz. 2023) (consumer statements are "the most probative evidence"

9    (citing *FTC v. AMG Servs., Inc.*, 2014 WL 317781, at *15-16 (D. Nev. Jan. 28, 2014)),

10   *reconsidered on other grounds,* 684 F. Supp. 3d 953; *FTC v. Neovi, Inc.*, 2012 WL 2859987, at

11   *5–6 (S.D. Cal. July 11, 2012) (testimony from six consumers was relevant and "illustrate[d] the

12   type and severity of consumer harm" created by defendants); *FTC v. John Beck Amazing Profits,*

13   *LLC*, 865 F. Supp. 2d 1052, 1073–74 (C.D. Cal. 2012) (falsity of representations confirmed by

14   consumer witness testimony); *FTC v. Lucaslaw Ctr. "Incorporated,"* 2010 WL 11506885, at *3,

15   5 (C.D. Cal. June 3, 2010) (consumer declarations, testimony, and complaints met FTC's burden

16   _____

17   [10] To the extent that Defendants seek to prevent the FTC from drawing inferences about non-
     privileged facts, their motion is inappropriate for additional reasons as well. For instance, the fact
18   that Defendants consulted attorneys regarding their Prime enrollment and cancellation
     compliance obligations, including regarding ROSCA, is non-privileged. That is true because the
19   "general purpose of the work performed" by counsel is "usually not protected from disclosure."
     *Clarke v. Am. Com. Nat. Bank*, 874 F.2d 127, 129 (9th Cir. 1992). Likewise, the general subject
20   matter of Defendants' communications with counsel is both non-privileged and probative.
     Indeed, one version of Amazon's privilege log contains over 17,000 entries indicating that the
21   withheld materials "[d]iscuss[ed] or relat[ed] to legal and regulatory risks related to features of
     Amazon subscription enrollment or cancellation flows." Dkt. #288-19. Similarly, Defendants
22   have permitted current and former Amazon employees to testify that they consulted with counsel
     regarding legal requirements for Prime enrollment and cancellation. *See, e.g.*, Dkt. #343 at 774-
23   75; Dkt. #426-7 at 237:14-238:4; Dkt. #426-8 at 192:3-193:2. To the extent the MIL seeks to
     prevent the FTC from proving non-privileged facts such as these, it should also be denied.

1    to show a deceptive practice).

2         Against this overwhelming precedent, Defendants cite inapplicable case law about

3    individual consumer testimony not being ***required*** to certify a private class action. *See* Mot., at

4    13-14, citing *Orshan v. Apple Inc.,* 2024 WL 4353034, at *16 (N.D. Cal. Sept. 30, 2024)

5    (plaintiff could rely on experts and survey evidence for class certification) & *Miller v. Fuhu Inc.*,

6    2015 WL 7776794, at *16 (C.D. Cal. Dec. 1, 2015) (plaintiff need not show "each and every

7    class member would be deceived"). Such law offers no guidance to this Court. If it chose, the

8    FTC could prove its claims without consumer testimony. *See, e.g*., *Resort Car Rental Sys., Inc. v.*

9    *FTC*, 518 F.2d 962, 964 (9th Cir. 1975) (explaining in deceptive advertising case consumer

10   witness testimony is "helpful," but not "essential"). But that does not mean such testimony is

11   either inadmissible or lacks probative value where the FTC chooses to offer it.

12        Nor are Defendants' Rule 403 arguments persuasive. The consumers will testify—as

13   accurately and fully as any witness—about their experiences with Amazon, which will

14   demonstrate Defendants' ROSCA violations. To the extent Defendants contest their testimony

15   based on other testimony or alleged inconsistencies, they may do so through cross-examination.

16   Defendants have not shown that there is anything ***unfairly*** prejudicial about allowing relevant,

17   probative testimony from a percipient witness. *See* Fed. R. Evid. 403. Nor will ordinary cross-

18   examination of Defendants' consumer victims as appropriately controlled by this Court lead to

19   inefficient mini-trials, contrary to Defendants' contentions. Defendants' reliance on *Tennison v.*

20   *Circus Circus Enters., Inc*., 244 F.3d 684, 689-990 (9th Cir. 2001) is misplaced. *See* Mot. at 16.

21   That case held that excluding testimony of background evidence for fear that it may have

22   resulted in a "mini trial" was not an abuse of discretion; here, the consumer witnesses will testify

23   about facts directly relevant to liability in this trial, not "background" information.

FTC'S CONSOLIDATED OPP'N
TO DEFS' MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC                    14                    Federal Trade Commission
                                                                  600 Pennsylvania Avenue NW
                                                                  Washington, DC 20580
                                                                  (202) 326-2551

1    Defendants' (at best, uninformed) arguments that that the consumer witnesses are not

2    representative of an average consumer because of issues such as age-related visual impairment,

3    dyslexia, or even shopping "less" online than others, are a straw man for two reasons. First, there

4    is no requirement – and Defendants cite none – that each testifying consumer perfectly represent

5    an entire population of victims for their testimony to be relevant. Second, the general population

6    of consumers contains many individuals with visual impairments, dyslexia, and more such

7    challenges; thus, consumer victims with these issues ***are*** representative of the broader

8    population, and are just as protected by the law as consumers with no such issues. *FTC v.*

9    *Freecom Commc'ns, Inc*., 401 F.3d 1192, 1202 (10th Cir. 2005) (consumer protection laws "are

10   made to protect the trusting as well as the suspicious") (quoting *FTC v. Standard Educ. Soc'y*,

11   302 U.S. 112, 116 (1937)); *see also Bustamante v. First Fed. Sav. & Loan Ass'n*, 619 F.2d 360,

12   364 (5th Cir.1980) (applying "reasonable consumer" standard includes protection for the

13   "unsophisticated or uneducated consumer").[11] None of Defendants' inapplicable cases hold

14   otherwise. *See* Mot. at 15 (citing *Robie v. Trader Joe's Co*., 2021 WL 2548960, at *4 (N.D. Cal.

15   June 14, 2021) (in product labeling case, consumer need not be "versed in the art of inspecting

16   and judging a product" to be representative of a reasonable, ordinary consumer); *Groeneveld*

17   *Transp. Efficiency, Inc. v. Lubecore Int'l, Inc*., 730 F.3d 494, 509-10 (6th Cir. 2013) (purchasers

18   of "expensive industrial products" were likely "sophisticated people" who could be expected to

19   tell the difference between distinct product logos)).

20   Finally, courts have correctly held that consumers' complaints made to the FTC satisfy

21   the residual hearsay exception requirement in Rule 807. *FTC v. Figgie Int'l, Inc*., 994 F.2d 595,

22

23

---

[11] At best, the challenges individual witnesses experience are matters for cross-examination, not
grounds for exclusion of evidence.

FTC'S CONSOLIDATED OPP'N
TO DEFS' MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC                    15

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

608 (9th Cir. 1993) (complaint letters sent independently from unrelated members of the public

with "no motive to lie to the FTC" were trustworthy); *United States v. MyLife.com, Inc*., 567 F.

Supp. 3d 1152, 1163–64 (C.D. Cal. 2021) (similar); *FTC v. Zamani*, 2011 WL 2222065, at *1

(C.D. Cal. June 6, 2011) (similar), *as amended* (Sept. 28, 2011). Defendants' cases are not to the

contrary, nor are their arguments about purported inaccuracies supportive of exclusion; instead,

the cases they cite exclude for unrelated reasons entirely different types of evidence, such as a

co-conspirator's out of court declaration where other evidence established he was untrustworthy.

Mot. at 17, citing *United States v. Bonds*, 608 F.3d 495, 501-02 (9th Cir. 2010). They cite an

equally unhelpful case that merely held that a prosecutor's statements made decades after her

work on the case were excludable. *See id.*, citing *Wilson v. City of Los Angeles*, 2020 WL

7711836, at *21 (C.D. Cal. July 20, 2020). Indeed, one case Defendants cite discusses that it is

proper for the FTC and other agencies to offer consumer declarations into evidence, and instead

excluded the declarations because they came from "private, for-profit corporations," not ordinary

consumers. *See id.* (citing *ADT LLC v. Alarm Prot. LLC*, 2017 WL 1952302, at *2 (S.D. Fla.

May 11, 2017)).

### MIL-5. Exclude Non-U.S. Evidence

Amazon frequently used data from overseas studies to make business decisions affecting

American customers, but now Defendants seek to exclude this reliable and relevant evidence

because it is probative of their wrongdoing. Defendants once again rely on their own employees'

self-serving testimony to declare that the jury—like the Court and the FTC—should not be

trusted to believe their own eyes and ears. But this evidence, created by and obtained from

FTC'S CONSOLIDATED OPP'N
TO DEFS' MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC

16

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

Amazon itself, is clearly relevant to and highly probative of both (1) Defendants' violations of the law and (2) Defendants' actual knowledge or knowledge fairly implied about their conduct.

Defendants argue that "the FTC has not shown that the flows seen by the international consumers are similar in all material respects to those at issue here[,]" Mot. at 18, an absurdly high bar for which Defendants cite no authority. Two key issues illustrate the flaws with Defendants' approach:

*First*, Defendants' attempts to undermine non-U.S. evidence are belied by their own prior reliance on the same documents. Defendants made global decisions, affecting the enrollment and cancellation flows shown to American consumers, based on research from other countries, that overseas research is thus relevant not only to whether Defendants violated the law, but also to their knowledge and thus liability for civil penalties. The record in this matter is replete with examples of Amazon decisionmakers, including the Individual Defendants, making global business decisions based on the very overseas research Defendants now complain about. *E.g.* Dkt. #254-11 at 1 (memo sent to all Individual Defendants reviewing evidence of Japanese consumers who felt "tricked"); Dkt. #330-14 (email thread discussing global interface changes based on studies in Japan, Chile, and Colombia). Indeed, several of the examples Defendants cite make it clear that Amazon frequently applied insights from studies in one country to its global business. Mot. at 18 (citing Dkt. #255-11); Dkts. ##424-22 at 85:19-20 ("I see in this document that it says there were issues that had also been identified in other countries."); 422-23 at 147:18-25 (discussing applying findings from study in Germany to broader UX problems); 422-24 at 112:24-113:16 (discussing meetings with Individual Defendants about studies in Germany and

FTC'S CONSOLIDATED OPP'N
TO DEFS' MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC                    17                    Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

1    Austria informing understanding of "customer complaints about being tricked into signing up for

2    Prime.").

3           *Second*, the categories of evidence Defendants want to exclude wholesale include studies

4    Amazon specifically designed to determine whether consumers noticed disclosures and

5    understood that they were being enrolled in Prime. [12] Whether Amazon's Prime enrollment flows

6    made necessary disclosures clearly and conspicuously and/or enrolled consumers in Prime

7    without their knowledge or consent is a central question in Counts I-III. Dkt. #69 at 87-90.

8    Amazon offers no explanation for why a U.S. consumer would similar flows differently from a

9    non-U.S. consumer. The very deposition quotes Defendants cite show these surveys at issue were

10   created by Amazon employees to test these specific issues. Mot. at 18 (citing 422-22 (former

11   Amazon employee Linnea Hagen testifying about study in France); 422-23 (former Amazon

12   employee Reid Nelson testifying about study in Germany); 422-24 (former Amazon employee

13   David Edelstein testifying about studies in "Mexico, Spain, France, et cetera"); *cf. Clicks*

14   *Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1263 (9th Cir. 2001) (after Court resolves

15   whether survey was relevant and conducted according to accepted principles, "follow-on issues

16   of methodology, survey design, reliability, the experience and reputation of the expert, critique

17   of conclusions, and the like [. . .] are issues for a jury.") (internal citations omitted). As the Court

18   noted in resolving the parties' *Daubert* motions, concerns about inexact matches between survey

19   participants or test treatments go to the weight of the evidence, not admissibility. *See* Dkts. 416,

20   at 8 (quoting *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) ("This evidence 'is to be

21   _____

22   [12] The FTC does not argue that the jury should infer that Defendants must have violated U.S. law
     because foreign consumers were confused. Rather, the FTC argues that evidence a flow or
23   element was difficult to understand or confusing in one country is probative of whether a similar
     flow or element was difficult to understand or confusing in the U.S.

FTC'S CONSOLIDATED OPP'N
TO DEFS' MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC                    18                    Federal Trade Commission
                                                                  600 Pennsylvania Avenue NW
                                                                  Washington, DC 20580
                                                                  (202) 326-2551

1    attacked by cross examination, contrary evidence, and attention to the burden of proof, not

2    exclusion.'"); 417, at 12 n.1.; *cf. also Keith v. Volpe*, 858 F.2d 467, 480 (9th Cir. 1988))

3    ("Technical inadequacies in the survey, including the format of the questions or the manner in

4    which it was taken, bear on the weight of the evidence, not its admissibility.").

5         Defendants conjure their new favorite bogeymen—so-called "mini-trials"—to illustrate

6    the supposed effects of admitting non-U.S. evidence. But if asking a jury to weigh the probative

7    value of a particular piece of evidence or testimony is a "mini-trial," then one wonders how

8    many "mini-trials" Defendants plan with their hundreds of exhibits. *E.g.* Att. 5. Each exhibit

9    need not contain within it conclusive proof as to an entire count or even an entire element. Fed.

10   R. Evid. 401 (evidence is relevant if it has "any tendency to make a fact more or less probable"

11   that "is of consequence in determining the action"); *see also Bacon v. Dep't of Human Serv's*,

12   2023 WL 2755592, at *2 (9th Cir. 2023) ("Evidence need not … form the basis of an

13   independent claim to be admissible at trial."). The jury, which Defendants demanded, Dkt. #174,

14   is more than capable of assigning varying weight to different pieces of evidence to reach the

15   ultimate conclusions they are charged with. Just as one can reasonably identify a forest without

16   identifying the species of each individual tree, so too can the jury make reasonable findings

17   based on the totality of evidence that any one exhibit might not conclusively support alone.

18        Nor do the cases Defendants cite on this point resemble this one. The Court in *In re*

19   *Cathode Ray Tube (CRT) Antitrust Litig*. refused to admit **the decision** of a foreign tribunal

20   because it was "unclear what probative value it has," and would have required delving into both

21   the underlying facts and the foreign tribunal's procedures. 2016 WL 7803893, at *2 (N.D. Cal.

22   Nov. 5, 2016). In *Estate of Elkins v. Pelayo*, the Court refused to allow a "mini-trial" about a

23   prior incident to determine whether a defendant said something then that was not documented in

FTC'S CONSOLIDATED OPP'N
TO DEFS' MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC                    19

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

1    official records of the incident, 2022 WL 1625181, at \*4-6 (E.D. Cal. May 23, 2022). If and only

2    if the alleged statement was made, the Court would then have had to weigh whether to allow that

3    evidence under Rule 404(b)(2). *Id.* at \*6-7. There is no dispute here about whether the foreign

4    studies occurred or what their results were. Thus, there is no risk of the kind of multilayered

5    inquiry that makes up a "mini-trial."

6        **MIL-6. Exclude Evidence or Argument on Certain Surveys**

7        Two FTC experts have opined and will testify that Amazon's Cancellation Survey and

8    Search Sentiment Survey, respectively, followed accepted principles and generated reliable data.

9    Amazon, in these pre-litigation surveys, asked its own customers about their experiences with

10   Prime. Namely, the Cancellation Survey asked a random sample of millions of recently cancelled

11   Prime customers why they cancelled. The Search Sentiment Survey asked thousands of Amazon

12   website users, "Are you an Amazon Prime member?" Amazon, in its ordinary course of

13   business, and, separately, an FTC expert in this case, then matched those responses to

14   consumers' actual Prime subscription status. Together, these survey questions relate to an FTC

15   core allegation that Amazon enrolled consumers in Prime without their express informed

16   consent. Amazon repeatedly relied on the survey response data to draw conclusions about Prime

17   subscribers generally, and made business decisions for Amazon based on it. Amazon's out-of-

18   Circuit and inapposite cases cannot defeat the conclusion the two surveys are both relevant and

19   admissible; at most, Amazon's critiques go only to the weight that should be accorded them.[13]

20       **A.  FTC experts establish that Amazon's pre-litigation surveys meet accepted
            principles, are relevant, and should be admitted.**

21

22   _____

23   [13] Amazon also moves to exclude what it calls "Benchmarking Surveys." FTC experts have not
     opined on those and they are addressed separately at the end of this section.

FTC'S CONSOLIDATED OPP'N
TO DEFS' MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC                    20                     Federal Trade Commission
                                                                   600 Pennsylvania Avenue NW
                                                                   Washington, DC 20580
                                                                   (202) 326-2551

"Survey evidence should be admitted as long as it is conducted according to accepted principles and is relevant." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1036 (9th Cir. 2010) (cleaned up). "Treatment of surveys is a two-step process. First, is the survey admissible? That is, is there a proper foundation for admissibility, and is it relevant and conducted according to accepted principles?" *Clicks Billiards*, 251 F.3d at 1263. Once admitted, however, "follow-on issues of methodology, survey design, reliability, the experience and reputation of the expert, critique of conclusions, and the like go to the weight of the survey rather than its admissibility." *Id.; see also Stonebrae, L.P. v. Toll Bros., Inc.,* 2011 WL 1334444, at *4 (N.D. Cal. Apr. 7, 2011), *aff'd*, 521 Fed. Appx. 592 (9th Cir. 2013) ("so long as the data are reliable, methodological deficiencies" impact weight, not admissibility).[14]

Here, two FTC experts—Professor Neale Mahoney, Ph.D, and William Violette, Ph.D—opine that Amazon's surveys followed accepted principles based on their review of the surveys as well as data generated by and related to the surveys. First, Professor Mahoney found Amazon "followed standard survey practices" in carrying out its Cancellation Survey, the Survey was "appropriately designed," and the Survey data's reliability is corroborated by his analysis of it, Amazon customer data, and internal Amazon documents. Dkt. 330-72 at 9, 36-46. The Court recently held Dr. Mahoney's use of the Cancellation Survey to estimate unintentional enrollment

---

[14] While Amazon cites cases involving survey hearsay issues, it has not argued any of the three sets of surveys are hearsay. Courts regularly admit relevant pre-litigation surveys either as non-hearsay or as a business record. *See Prudential Ins. Co. of Am. V. Gibraltar Fin. Corp. of California*, 694 F.2d 1150, 1156 (9th Cir. 1982) ("Surveys are admissible, if relevant, either as nonhearsay or through a hearsay exception."); *Tevra Brands LLC v. Bayer Healthcare LLC*, 2024 WL 3463823, at *1-3 (N.D. Cal. July 17, 2024) (admitting survey under Rule 803(6) as party conducted it in the normal course of business); *Schering Corp. v. Pfizer Inc*., 189 F.3d 218, 238-39 (2d Cir. 1999), *as amended on reh'g* (Sept. 29, 1999) (Sotomayor, J.) (admitting surveys and internal analysis of them as party admissions under Rule 801(d)(2)). The surveys are thus admissible on these grounds.

FTC'S CONSOLIDATED OPP'N
TO DEFS' MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC                    21                    Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

1    in Prime "is both relevant and reliable." Dkt. 432 at 6-7. The Court thus rejected Amazon's

2    argument that "the root" problem with Dr. Mahoney's opinion "is his reliance on Amazon's

3    internal [Cancellation] [S]urvey" that Amazon called a "self-selected and non-representative

4    sample" of subscribers. Dkt. 323 at 11-12.

5            Amazon documents and testimony of Amazon employees bolster the Survey's reliability.

6    An Amazon manager with responsibility for the Cancellation Survey testified the survey

7    "collects valuable insights and trends on why members have decided to cancel Amazon Prime."

8    Att. 1[15] at 15:8-12, 23:5-12. He added that "the machine learning team within Amazon … used

9    … this data as inputs to their [machine learning] model" to calculate *other* Prime subscribers'

10   "propensity to leave" Prime and "to pinpoint the reasons why." *Id.* at 31:23-33:8. Amazon also

11   used it to launch new programs. *Id.* at 59:2-13. Moreover, speaking about Amazon's survey

12   practice generally, an Amazon employee testified the company does "a lot of surveys," trains its

13   employees on "best practices" for surveys, and from its survey data discerns and shares "advice"

14   and "insights . . . to business teams . . . [to] improve [Amazon's business]."  Dkt. #422 at 491-

15   495.

16           Documents that Amazon withheld in full or part from the FTC in conduct the Court

17   found to be "tantamount to bad faith," Dkts. ## 371, 404, confirm Amazon's out-of-court

18   reliance on the Cancellation Survey's reliability. For example, in 2020, an Amazon economist

19   used Cancellation Survey data both to identify the "Unintentional signup share" of U.S. Prime

20   subscribers and as an input to an Amazon machine learning model used "to predict subscription

21   awareness," i.e., to predict whether a signup was intentional or unintentional. *See* Dkt. #330-102

22   _____

23   [15] Citations to "Att. XX" refer to Attachments to the Declaration of Colin MacDonald in Support
     of FTC's Opposition to Defendants' Motions in Limine, filed concurrently.

FTC'S CONSOLIDATED OPP'N
TO DEFS' MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC                         22                         Federal Trade Commission
                                                                            600 Pennsylvania Avenue NW
                                                                            Washington, DC 20580
                                                                            (202) 326-2551

at 2-3; Att. 2 (response to RFA #123). In 2021, the Amazon economist used the Cancellation

Survey to calculate the number of U.S. consumers who signed up for Prime unintentionally and

the financial impact to Amazon of "customers frustrated by having unintentionally signed up for

Prime." Dkt. #330-135 at 3. The same document describes how Amazon "leverage[d] the Prime

Cancellation survey results for US … for a Difference-in-Difference analysis," i.e., the same

economic tool used by the FTC's expert, "to estimate the impact of unintentional Prime signups

on customer [spending]." Dkt. #359-21 (sealed); Dkt. #359-172 at 8-10; *see also* Dkt. #432 at 12

(Court finding Amazon's argument "disingenuous" to exclude Dr. Mahoney's analysis where

Amazon did "a similar" one).

Second, Amazon did not attempt to exclude the FTC's second expert, Dr. William

Violette, who reviewed the Search Sentiment Survey questions, data, and Amazon documents;

he found the Search Sentiment Survey to "meet relevant standards that are generally accepted in

the field of . . . surveys." *See* Att. 3 at 29. In particular, he found the survey design encouraged

valid responses, respondents understood the questions, and their responses likely accurately

reflected their beliefs. *See* Att. 3 at 20-29. Dr. Violette also combined the survey data and Prime

subscriber data from Amazon to disprove attacks by Amazon's expert (Dr. Kivetz) on memory

bias, guessing, noise, and free trial subscribers. Dkt. #330-74 at 3, 14-20. Dr. Violette also notes

Amazon employees said they "used the responses to the Prime status question" to inform the

clarity of the Prime "signup process and membership awareness." Att. 3 at 21.

The lead case Amazon cites, Mot. at 27, to exclude its own pre-litigation surveys is

unlike the facts here. There, a court excluded a survey where its proponent only had "a set of

slides summarizing the survey results—not the survey results or the data itself" and had no

testimony from the company that did the survey or from anyone else about the surveys'

FTC'S CONSOLIDATED OPP'N
TO DEFS' MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC                          23                      Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

1    principles, design, or methodology. *See Monster Energy Co. v. Vital Pharms., Inc.*, 2025 WL

2    1111495, at *1 (9th Cir. Apr. 15, 2025). Here, the FTC has the elements the *Monster* court found

3    lacking because the FTC's experts examined the survey questions, survey data, and Amazon

4    customer data related to the surveys, and the FTC also has testimony of Amazon survey staff

5    about the studies.

6         Moreover, that Amazon carried out the surveys at issue here in the regular course of

7    business and has not sought to introduce other surveys on unintentional enrollment further

8    bolsters their value. *See Epic Games, Inc. v. Apple Inc.*, 559 F. Supp. 3d 898, 959–60 (N.D. Cal.

9    2021), *aff'd in part, rev'd in part*, 67 F.4th 946 (9th Cir. 2023) (consumer survey evidence

10   prepared prior to litigation was "significant not only because it was not litigation driven, but

11   because [the opposing party] does not provide its own consumers surveys").[16]

12        **B.  Amazon fails to identify reasons under Ninth Circuit law that Amazon's pre-litigation surveys should be excluded.**

13        Amazon's omission of Ninth Circuit precedent and use of inapposite cases and

14   inconsistent positions provide no basis to exclude the surveys.[17] Each of its purported reasons to

15   exclude the surveys fail. And, as described above, both Professor Mahoney and Dr. Violette

16   explain how the surveys, respectively, meet accepted standards thus mooting Amazon's attacks.

17        **Amazon employee statements.** Amazon tries to attack the Cancellation Survey with

18   employee statements, but it omits key facts that invalidate its argument. First, it claims an

19

20   _____

21   [16] Amazon cites *Obrey v. Johnson*, 400 F.3d 691, 696 (9th Cir. 2005) for excluding "a survey,"
     Mot. at 21, but the decision involved a statistical report, not a survey. Amazon never develops its

22   argument on "statistical evidence" and thus it is waived. *See* Dkt. 432 at n.8 (citing *John-Charles v. California*, 646 F.3d 1243, 1247 (9th Cir. 2011)).

23   [17] Of note, Amazon's trial exhibit list includes websites summarizing surveys on other topics that
     Amazon found on the Internet and of which it has conducted no expert analysis. Att. 5.

FTC'S CONSOLIDATED OPP'N
TO DEFS' MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC                    24                        Federal Trade Commission
                                                                      600 Pennsylvania Avenue NW
                                                                      Washington, DC 20580
                                                                      (202) 326-2551

1    employee warned of survey "biases." Mot. at 23. Yet, under oath, the same employee admitted,

2    "I cannot design surveys," Att. 4 at 159:25-160:3, was only involved for 3 months while also

3    being onboarded into his job, *id.* at 155:15-156:3, and could not recall anyone having specific

4    concerns about the survey, *id.* 176:10-177:2. Second, Amazon says another employee

5    recommended to "not start with the survey," yet that statement is not about the survey's

6    reliability at all; instead, it was a recommendation against mentioning the survey in the first

7    paragraph of a five page memorandum on using "cancellation survey data … to predict a given

8    Prime member's likelihood of attrition in advance," a subject that itself manifests Amazon's

9    belief in the survey data's reliability. Mot. at 23; Dkt. 364-80 at 1. Third, Amazon quotes another

10   employee, not "before this suit," Mot. at 23, as Amazon says, but in this suit as its 30(b)(6)

11   deponent, who said, "***I am not a survey expert, but the*** cancellation survey isn't meant to be

12   representative of … all customers that cancel"—*id.,* Dkt. 364-98 at 142:24-143:2 (emphasis

13   added)—only Amazon's brief omitted the emphasized first 8 words.

14          **Representativeness.**  Amazon's supposed top flaw in the surveys regards

15   representativeness and response rate. Mot. at 22. The cases Amazon cites on this topic are

16   inapposite in part because the Court already found Professor Mahoney's use of the Cancellation

17   Survey to be reliable. *See id.* Even if Amazon's objections to the representativeness of surveys

18   were well-founded, they would go only to weight, and not admissibility. *See Rodman v. Safeway*

19   *Inc.*, 125 F. Supp. 3d 922, 936-37 (N.D. Cal. 2015), *aff'd*, 694 F. App'x 612 (9th Cir. 2017)

20   (criticisms of non-litigation surveys with response rates as low as <1% "go to the weight rather

21   than admissibility of the survey"); *Alcantar v. Hobart Serv.*, 2013 WL 15630, at *4 (C.D. Cal.

22   Jan. 15, 2013) ("any problems with the response rate affect the weight, and not the

23   admissibility"); *see also ThermoLife Int'l, LLC v. Gaspari Nutrition Inc.*, 648 F. App'x 609, 613-

FTC'S CONSOLIDATED OPP'N
TO DEFS' MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC                           25                           Federal Trade Commission
                                                                                  600 Pennsylvania Avenue NW
                                                                                  Washington, DC 20580
                                                                                  (202) 326-2551

1    14 (9th Cir. 2016). Amazon itself recognized this same point in a brief just 11 weeks ago, stating,

2    "challenges to the representativeness of a survey sample 'goes to weight, as opposed to

3    admissibility.'" Dkt. #352 at 4 (quoting *Microsoft Corp. v. Motorola, Inc*., 904 F. Supp. 2d 1109,

4    1120 (W.D. Wash. 2012)); *see also* Dkt. #416 at 4.[18]

5        **Format of the questions**. Amazon attacks the surveys both for "leading questions,"

6    citing a New York case, and as "[o]verbroad and ambiguous," citing no case. Mot. at 21-23.

7    The FTC's experts each opine the question formats are acceptable. *See* Dkt. 330-72 at 36; Att. 3

8    at 22-23. Legally, in the Ninth Circuit, however, such criticisms "go only to the weight, and not

9    the admissibility, of the survey." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1143

10   (9th Cir. 1997) ("leading questions—go only to the weight"); *see also Fortune Dynamic, Inc. v.*

11   *Victoria's Secret Stores Brand Mgmt., Inc*., 618 F.3d 1025, 1036-38 (9th Cir. 2010) (holding

12   problems with the "format of the questions" are "technical inadequacies" that go to weight and

13   reversing district court's exclusion of survey that had "highly suggestive questions"); Dkt. 416 at

14   *4.

15        **Control**. Amazon attacks the surveys for lacking a control, citing an Indiana case. Mot.

16   at 22-23. Courts in this Circuit, however, recognize that "the Ninth Circuit has no comparable

17   mandate" on controls. *Mitcheson v. El Antro LLC*, 2020 WL 7075239, at *4 (D. Ariz. Dec. 3,

18

19

20

---

[18] Two cases Amazon cites excluded surveys where experts had no explanation why a survey was valid, which is contrary to Professor Mahoney's and Dr. Violette's detailed findings on the reliability of the data. *See Sec. Alarm Fin. Enters., L.P. v. Alder Holdings*, LLC, 2017 WL 5248181, at *3-4 (D. Alaska Feb. 21, 2017) (expert "unable to explain why a sample of 19 was adequate" out of 661, and testified in ways "at odds" to his own report); *In re Autozone, Inc.*, 2016 WL 4208200, at *17-18 (N.D. Cal. Aug. 10, 2016) (expert could provide "no assurance" that his survey was reliable and did not provide response data to the opposing party).

FTC'S CONSOLIDATED OPP'N
TO DEFS' MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC       26       Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

2020) (admitting survey lacking proper control question or group); *see also* Dkt. 416 at *4

("issues with … how the survey was conducted—goes to the weight").

### C.  At Minimum, Experts Can Opine on Non-Admissible Evidence

Amazon seeks to exclude "all evidence and argument" about the surveys, Mot. at 20,

seemingly extending into expert reliance materials, as Dr. Mahoney and Dr. Violette rely on

consistent with experts in their field. *See* Dkt. #330-72 at 36; Att. 3 at 5, 29. Even if the Court

excluded the surveys standing alone – which it should not – the Court has already held such

reliance materials are valid considerations for experts regardless of their admissibility. Dkt. #429

at 3 n.1; *see also* Fed. R. Evid. 703; *United States v. W.R. Grace,* 504 F.3d 745, 760-61 (9th Cir.

2007) (expert testimony allowable on inadmissible study).

### D.  Amazon's Benchmarking Surveys are Admissible

Amazon also seeks to exclude a third set of surveys it calls the "Benchmarking Surveys."

Mot. at 24. The FTC does not intend to rely on the Benchmarking Surveys at trial as evidence of

a rate of nonconsensual enrollment in Prime, contrary to Amazon's assertion. *Id.* at 21. Instead, it

intends to use them in the manner Amazon states they were intended—as "anecdotal customer-

experience insights." *Id.* But they are still admissible as surveys. An Amazon employee on the

team that conducted them agreed "the surveys complied with [Amazon's] Benchmarking team's

survey practices." Mot. at 24. The objections Amazon raises in the one paragraph of argument it

puts forth, *id.*, are all concerns that go to weight not admissibility, as detailed above.

FTC'S CONSOLIDATED OPP'N
TO DEFS' MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC                    27                    Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580
(202) 326-2551

1

## <u>LOCAL RULE 7(e) CERTIFICATION</u>

2

     I certify that this motion contains 8,500 words in compliance with the Local Civil Rules.

3
  Dated:  September 2, 2025

4

5

6

                          <u>s/ Colin D. A. MacDonald</u>
                          JONATHAN COHEN (DC Bar # 483454)
                          EVAN MENDELSON (DC Bar #996765)
                          OLIVIA JERJIAN (DC Bar #1034299)
                          JONATHAN WARE (DC Bar #989414)
                          ANTHONY SAUNDERS (NJ Bar #008032001)
                          SANA CHAUDHRY (NY Bar #5284807)

7

8

                          Federal Trade Commission
                          600 Pennsylvania Avenue NW
                          Washington DC 20580

9

10

                          (202) 326-2551 (Cohen); -3320 (Mendelson); -2726 (Ware); -2749 (Jerjian); -2917 (Saunders); -2679 (Chaudhry)

11

12

                          JCohen2@ftc.gov; EMendelson@ftc.gov; JWare1@ftc.gov; OJerjian@ftc.gov; ASaunders@ftc.gov; SChaudhry@ftc.gov

13

14

15

                          COLIN D. A. MACDONALD (WSBA # 55243)
                          Federal Trade Commission
                          915 Second Ave., Suite 2896
                          Seattle, WA 98174
                          (206) 220-4474; CMacdonald@ftc.gov

16

17

18

                          RACHEL F. SIFUENTES
                          (IL Bar #6304016; CA Bar #324403)
                          Federal Trade Commission
                          230 S. Dearborn St., Room 3030
                          Chicago, IL 60604
                          (312) 960-5617; RSifuentes@ftc.gov

19

20

21

                          JEFFREY TANG (CA Bar #308007)
                          Federal Trade Commission
                          10990 Wilshire Boulevard, Suite 400
                          Los Angeles, CA 90024
                          (310) 824-4303; JTang@ftc.gov

22

23

                          Attorneys for Plaintiff
                          FEDERAL TRADE COMMISSION

FTC'S CONSOLIDATED OPP'N
TO DEFS' MOTION IN LIMINE
Case No. 2:23-cv-0932-JHC              28                        Federal Trade Commission
                                                     600 Pennsylvania Avenue NW
                                                      Washington, DC 20580
                                                         (202) 326-2551