The Honorable John H. Chun

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FEDERAL TRADE COMMISSION,

    Plaintiff,

v.

AMAZON.COM, INC., *et al.*,

    Defendants.

No. 2:23-cv-0932-JHC

NOTICE OF SUPPLEMENTAL AUTHORITY
RELATING TO DEFENDANTS' MOTIONS
FOR SUMMARY JUDGMENT

Pursuant to Local Civil Rule 7(n), Defendants provide this Notice of Supplemental Authority in support of their Motions for Summary Judgment. Dkts 316, 319.

Attached as Exhibit A is the Fourth Circuit's recent decision in *Austin v. Experian Information Solutions, Inc.*, No. 23-2301 (Aug. 1, 2025). In *Austin*, the Fourth Circuit reversed a district court holding that a webpage did not give consumers reasonably clear notice of the terms of use, and that consumers who clicked "Create Your Account" did not manifestly assent to those terms. *Id.* at 8-9. In doing so, the court rejected the argument that the "text" of the "create your account" button "distracted the purchaser from the service agreement by informing him that clicking served a particular purpose unrelated to the agreement." *Id.* at 18 (internal quotation marks omitted). The court explained that the enrollment page was clear, because it stated that "[b]y clicking 'Create Your Account': I accept and agree to your Terms of Use Agreement." *Id.* at 21. Further, the terms of use were "set off in blue text" "close to the portions of the form that a customer had to fill out in

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    click." *Id.* at 22. Relying on the same features of the webpage, the court held that a consumer

2    assented to those terms by creating his account. *Id.* at 24. The court also "decline[d] … to require

3    manifestations of assent in this context exclusively take the form of an 'I agree' or 'I accept' button

4    to be clicked." *Id.* at 18, 24-25.

5        *Austin* is relevant to Defendants' arguments on these points at Parts III.B and C of Amazon's

6    Motion for Summary Judgment, Dkt. 319, and at Parts II.B and C of Amazon's Reply, Dkt. 378.

7    *Austin* also bears on the FTC's argument that the Prime disclosures were not clear and that Amazon

8    failed to obtain express informed consent because consumers "likely do not understand" the Prime

9    enrollment button's importance. Dkt. 354 at 17.

10        DATED this 3rd day of September, 2025.

11

12                                    DAVIS WRIGHT TREMAINE LLP

13    By *s/ Kenneth E. Payson*
                                    Kenneth E. Payson, WSBA #26369
14                                    James Howard, WSBA #37259
                                    920 Fifth Avenue, Suite 3300
15                                    Seattle, WA 98104-1610
                                    Telephone: (206) 622-3150
16                                    Fax: (206) 757-7700
                                    E-mail:kenpayson@dwt.com
17                                         jimhoward@dwt.com

18                                    COVINGTON & BURLING LLP

19
                                    Stephen P. Anthony*
20                                    Laura Flahive Wu*
                                    Laura M. Kim*
21                                    John D. Graubert*
                                    850 Tenth Street, NW
22                                    Washington, DC 20001
                                    Telephone: (206) 662-5105
23                                    E-mail:santhony@cov.com
                                         lflahivewu@cov.com
24                                         lkim@cov.com
25                                         jgraubert@cov.com

26

27

NOTICE OF SUPPLEMENTAL AUTHORITY RELATING TO
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT
(2:23-cv-0932-JHC) - 2

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

John E. Hall*
415 Mission Street, Suite 5400
San Francisco, CA 94105
Telephone: (415) 591-6855
E-mail:jhall@cov.com

Megan L. Rodgers*
3000 El Camino Real
Palo Alto, CA 94306
Telephone: (650) 632-4734
E-mail: mrodgers@cov.com

Anders Linderot*
620 Eighth Avenue
New York, NY 10018
Telephone: (212) 841-1000
Email: alinderot@cov.com

HUESTON HENNIGAN LLP

John C. Hueston*
Moez M. Kaba*
Joseph A. Reiter*
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone: (213) 788-4340
E-mail:jhueston@hueston.com
        mkaba@hueston.com
        jreiter@hueston.com

*admitted pro hac vice

Attorneys for Defendants

NOTICE OF SUPPLEMENTAL AUTHORITY RELATING TO
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT
(2:23-cv-0932-JHC) - 3

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# EXHIBIT A

**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 23-2301**

───────────

DARRELL J. AUSTIN, JR.,

Plaintiff - Appellee,

v.

EXPERIAN INFORMATION SOLUTIONS, INC.,

Defendant - Appellant.

───────────

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond.  Robert E. Payne, Senior District Judge.  (3:22-cv-00707-REP)

───────────

Argued:  December 10, 2024                    Decided:  August 1, 2025

───────────

Before NIEMEYER and HEYTENS, Circuit Judges, and FLOYD, Senior Circuit Judge.

───────────

Reversed and remanded by published opinion.  Senior Judge Floyd wrote the opinion in which Judge Niemeyer and Judge Heytens joined.

───────────

**ARGUED:**  Jacob Moshe Roth, JONES DAY, Washington, D.C., for Appellant.  Jessica Garland, GUPTA WESSLER LLP, San Francisco, California, for Appellee.  **ON BRIEF:** Jeffrey R. Johnson, Brett J. Wierenga, William J. Strench, JONES DAY, Washington, D.C., for Appellant.  Leonard Anthony Bennett, Craig Carley Marchiando, Drew David Sarrett, CONSUMER LITIGATION ASSOCIATES, Newport News, Virginia; Matthew W.H. Wessler, GUPTA WESSLER LLP, Washington, D.C., for Appellee.

───────────

FLOYD, Senior Circuit Judge:

Parties sometimes agree to resolve disputes between them in private arbitration instead of litigating in state or federal court. The Federal Arbitration Act requires courts to honor such an agreement when a party seeks to enforce it, so long as a binding contract to arbitrate the dispute was formed. *See* 9 U.S.C. § 2. This appeal requires us to consider whether the district court erred when it denied Defendant-Appellant Experian's motion to compel arbitration and excluded evidence offered in support of its motion after Darrell Austin sued the company alleging violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq*. We agree with Experian that the district court so erred. Accordingly, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

## I.

## A.

About a decade ago, Austin voluntarily commenced proceedings under Chapter 13 of the United States Bankruptcy Code and agreed to the terms of a repayment plan for certain debts. In 2020, the trustee of Austin's bankruptcy estate reported that Austin had satisfied the plan's requirements, and the bankruptcy court in turn entered an order discharging Austin's debt obligations relating to credit cards, a line of credit, and an installment loan. Shortly thereafter, he applied for a new credit card at a sporting goods retailer offered by Synchrony Bank. This application was denied.

Austin then requested copies of his credit disclosures from several credit bureaus, including Experian, and enrolled in CreditWorks.  CreditWorks is a free online credit-monitoring service offered by an Experian affiliate, ConsumerInfo.com.  Austin hoped to better understand why his applications for new credit were being denied despite the prior discharge of much of his debt.  Austin alleged that the disclosures revealed that Experian was reporting "inaccurate and derogatory information" concerning his credit history.  J.A. 24.  And he alleged that Experian was improperly reporting several discharged debts as delinquent and erroneously describing the status of several debts not discharged in bankruptcy.

Seeking to remedy these purported deficiencies in Experian's credit disclosures, Austin sent a letter to the company disputing the allegedly inaccurate and derogatory contents of his credit reports.  Experian responded the next month with its reinvestigation results, but Austin stated that the company continued to provide inaccurate information about his credit history.  Austin mailed two more dispute letters to Experian in July 2021 and October 2021, but he did not receive responses.  However, Austin averred that by July 2022 Experian was no longer reporting inaccurate information with respect to his credit history.

In November 2022, Austin brought this action in the Eastern District of Virginia against Experian, alleging violations of the FCRA.  First, he alleged Experian was in violation of 15 U.S.C. § 1681e(b), which requires consumer reporting agencies to "follow reasonable procedures" to ensure the accuracy of credit history reporting.  Second, Austin alleged that Experian violated the statute by not conducting "reasonable reinvestigation"

3

into his credit history when he brought purported errors to the company's attention by sending dispute letters. *See id.* § 1681i(a)(1).

B.

Experian filed an answer to Austin's complaint and in February 2023 moved to compel arbitration of Austin's claims under the Federal Arbitration Act. *See* 9 U.S.C. § 2 (providing that agreements to settle disputes in arbitration shall be "valid, irrevocable, and enforceable"). In support of its motion, Experian pointed out that Austin enrolled in CreditWorks, its online credit monitoring service operated by affiliate ConsumerInfo.com, also known as Experian Consumer Services (ECS), in May 2020.[1]  Experian argued that by agreeing to CreditWorks's terms of use, Austin consented to arbitrate any dispute arising from or related to his relationship with CreditWorks or its affiliates — including disputes with Experian.

More specifically, Experian first contended that Austin agreed to the terms of use as part of the process of enrolling in CreditWorks.  It stated that upon visiting the ConsumerInfo.com website, Austin was presented with a web form which he filled out with personal information like his name, email address, and phone number.  To proceed beyond this personal information form, Austin needed to click a "Create Your Account" button. J.A. 125.  Set off in bold text above the Create Your Account button was language

---

[1] ECS and the named defendant in this matter, Experian Information Solutions, Inc., are affiliates operating under the same corporate umbrella.  For clarity, this opinion refers to the Defendant-Appellant as "Experian" unless context requires otherwise.

4

stating that by clicking the button, the user accepted and agreed to CreditWorks's terms of use. A user could view the terms of use by clicking a hyperlink set off in blue text adjacent to the notice that clicking Create Your Account manifested intent to accept those terms. The appearance of the enrollment page, as presented in Experian's motion to compel arbitration, is reproduced below:



J.A. 125.

Experian also submitted a copy of those terms of use with its motion to compel arbitration. Those terms provided that the user agreed to arbitrate claims "arising out of or relating to any aspect of the relationship between us arising out of any Service or Website." J.A. 129. The terms also defined "ECS" and "us" to include "parent entities, subsidiaries, affiliates, . . . [and] agents." *Id.* In sum, Experian argued that Austin agreed to arbitrate disputes, whether with ECS or a related entity — like Experian itself — by assenting to CreditWorks's terms of use. Accordingly, it contends, this dispute belongs before an arbitrator.

Lastly, Experian submitted a declaration by David Williams in support of these factual assertions. At the time relevant to this case, Williams worked as a Vice President of Business Governance for ECS, the entity directly overseeing CreditWorks. He averred that through this role he possessed personal knowledge of the "marketing, advertising and sales of CIC consumer credit products, including services that consumer enroll [sic] in at Experian websites, as well as the Terms of Use governing such services." J.A. 120. Williams's declaration described the appearance of the CreditWorks enrollment page, including its layout and the appearance of certain text and hyperlinks, similarly to the description contained in Experian's memorandum in support of its motion which is summarized just above. The declaration also averred that Austin enrolled in CreditWorks on May 3, 2020, and that the enrollment page and terms of use appeared as represented in exhibits accompanying the motion on that day.

After contentious discovery on the arbitration issue, Austin moved to exclude the Williams declaration. Relevant to this appeal, he argued that the declaration must be

excluded because Williams lacked personal knowledge and relied upon hearsay documents, including the depiction of the enrollment page and the terms of use in force at the time. *See* Fed. R. Civ. P. 56(c)(4) (declaration supporting motion "must be made on personal knowledge" and "set out facts that would be admissible in evidence"). As to personal knowledge, Austin argued it was insufficient under Rule 56 for Williams to simply state that he was familiar with the appearance of the website and its terms through his work and based upon review of unidentified documents. As to the supposed hearsay documents, Austin argued that Experian was required to authenticate the documents purportedly relied upon by Williams in making assertions such as the date of Austin's enrollment in CreditWorks; he contended those documents must be admissible as a business record, or else they constitute hearsay. And because of these alleged deficiencies, Austin contended, the declaration lacked foundation.

Austin also filed a brief in opposition to Experian's motion to compel arbitration. He made a two-pronged argument: first, that Experian had failed to meet its burden to prove the existence of an agreement to arbitrate; and second, that even if it had met that burden, CreditWorks's enrollment process did not bind Austin to the arbitration provision contained in the terms of use.

## C.

The district court granted Austin's motion to exclude the Williams declaration in a ruling from the bench in August 2023. Then, that December, it denied Experian's motion to compel arbitration in a written order.

7

The trial court explained its ruling on Austin's motion to exclude. It concluded that the accompanying description of Williams's job duties submitted by Experian failed to establish that his employment gave him familiarity with "the activity that lies at the heart of the issue involving the alleged agreement to arbitrate." J.A. 1680. The court also pointed out that Experian had not provided or even described the internal documents that Williams stated he had relied upon to obtain personal knowledge about Austin's CreditWorks enrollment. And it agreed with Austin that the documents that had been submitted in support of Williams's declaration — depicting the CreditWorks enrollment form and terms of use as they appeared when Experian alleged Austin signed up — were hearsay documents. Ultimately, the district court ruled that the Williams declaration did not satisfy Rule 56(c)(4)'s personal knowledge requirements and granted Austin's motion to exclude it. *See* Fed. R. Civ. P. 56(c)(4) (a "declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated").

The court subsequently issued a written order denying Experian's motion to compel arbitration in December. It reasoned that Experian had not provided sufficient factual support for its motion, given the exclusion of the Williams declaration. However, the court also concluded, even assuming the Williams declaration was admitted and considered by the court, the motion to compel should be denied. It found "[t]he Williams Affidavit establishes that the process that it used lured consumers to a sister company's website for the purpose of allegedly receiving a free credit report." J.A. 1817. It cited a Seventh

Circuit decision in which that court declined to enforce a purported arbitration agreement because it was not evident from the webpage that a purchaser was agreeing to arbitration; in other words, the information TransUnion provided failed to "ensure[] that the purchaser would see the critical language before signifying her agreement." *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1035 (7th Cir. 2016); *see* J.A. 1819 (citing *Sgouros*). At bottom, in this case, the district court concluded the CreditWorks website was "deceptive," so there was no mutual assent — and no arbitration agreement between the parties. J.A. 1819.

Experian timely noticed its appeal. *See Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 561–62 (4th Cir. 2015) (orders denying motion to compel arbitration are immediately appealable). It argues the district court erred in two primary respects. First, it contends the district court abused its discretion by excluding the Williams declaration. Second, it argues the court erred when it denied its motion to compel arbitration of Austin's claims. As we now explain, the district court erred on both fronts. We therefore reverse its judgment and remand for further proceedings.

## II.

### A.

We address the district court's exclusion of evidence first. Experian principally relied upon the declaration of its affiliate's employee, David Williams, to support its motion to compel arbitration of Austin's lawsuit against the company alleging violations of credit reporting laws. Because Experian is the party seeking to compel arbitration, it "bears the burden of establishing the existence of a binding contract to arbitrate." *Dhruva*

9

*v. CuriosityStream, Inc.*, 131 F.4th 146, 151 (4th Cir. 2025) (quoting *Marshall v. Georgetown Mem'l Hosp.*, 112 F.4th 211, 217 (4th Cir. 2024).  So, to that end, the Williams declaration was offered to support that Austin in fact enrolled in CreditWorks, how the enrollment page appeared when he purportedly did so, and the contemporary language of the arbitration provisions contained in the terms of use.

As previewed, the district court granted Austin's motion to exclude the declaration. It explained that the affidavit did not "establish personal knowledge" and did not "establish the admissibility of any documents," referring to the appearance of the enrollment page and the terms of use.  J.A. 1679.  It discussed Williams's job description as represented on his LinkedIn page, which described him as a Vice President of risk and legal operations. It concluded this description of Williams's role did not tend to show he was familiar in "day-to-day operations or in his job with the details" of any alleged agreement to arbitrate. J.A. 1680.  The court reasoned that Williams's "job description doesn't really support the conclusion that he can testify about what Austin did in this case.  And the jobs area of his responsibilities as marketing, advertising, and sales doesn't show . . . any foundation that would allow him to testify."  J.A. 1684.  The court characterized Williams's factual assertions regarding Austin's enrollment as "conclusory."  *Id.*

The court also determined that Exhibits 1, 2, and 3, which were submitted with Williams's affidavit in support of Experian's motion to compel, each constituted hearsay evidence.  Those exhibits, respectively, were: (1) a representation of the CreditWorks enrollment webform as it would have appeared when Austin purportedly enrolled; (2) the CreditWorks terms of use, containing an arbitration provision, as it would have appeared

on the date of Austin's purported enrollment; and (3) an updated version of the terms of use that had been revised and in force during Austin's later use of the service.[2]  The court ruled that these were inadmissible hearsay documents, and because Rule 56(c)(4) requires a declarant "set out facts that would be admissible in evidence," the court determined that this showing had not been made with respect to the three exhibits.  In short, the court granted Austin's motion to exclude the Williams declaration.  Experian challenges this ruling, and we now address its arguments.

We review the district court's decision to exclude evidence for an abuse of discretion.  *Robinson v. Equifax Info. Servs., Inc.*, 560 F.3d 235, 240 n.1 (4th Cir. 2009).  "A district court abuses its discretion if its conclusion is guided by erroneous legal principles or rests upon a clearly erroneous factual finding."  *Mountain Valley Pipeline, LLC v. 0.32 Acres of Land*, 127 F.4th 427, 432 (4th Cir. 2025) (quoting *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999)).  "At its immovable core, the abuse of discretion standard requires a reviewing court to show enough deference to a primary decision-maker's judgment that the court does not reverse merely because it would have come to a different result in the first instance."  *Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 322 (4th Cir. 2008).

---

[2] Experian submitted updated terms of use to support Austin's continued assent to those terms; the language at the time of his May 2023 CreditWorks enrollment provided that continued use of the program constitutes agreement to the terms of use.  In other words, Experian sought to show that Austin agreed to these revised terms which also contained an arbitration clause.

A party's burden to show the existence of an agreement to arbitrate is "akin to the burden on summary judgment." *Chorley Enters.*, 806 F.3d at 564. So, when it is determining whether parties agreed to arbitrate a given dispute, "the district court must employ the summary judgment standard as a gatekeeper." *Rowland v. Sandy Morris Fin. & Est. Plan. Servs., LLC*, 993 F.3d 253, 258 (4th Cir. 2021). "In applying that standard, the burden is on the defendant to 'establish[] the existence of a binding contract to arbitrate the dispute.'" *Id.* (quoting *Minnieland Priv. Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co.*, 867 F.3d 449, 456 (4th Cir. 2017).

Federal Rule of Civil Procedure 56 in turn governs the requirements for declarations and affidavits in summary judgment proceedings. A declaration "used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). *See also* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony.").

Under the Federal Rules of Evidence, hearsay is a statement that "the declarant does not make while testifying at the current trial or hearing" that is offered "to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). When the contents of a writing are in issue — say, the terms of a contract — Evidence Rule 1002 requires an original document. *See also* Fed. R. Evid. 1001(d) (defining "original" to include a printout of digital information "if it accurately reflects the information").

12

Also relevant to this case is the presumption we have recognized that "ordinarily, officers would have personal knowledge of the acts of their corporations." *Catawba Indian Tribe of S.C. v. South Carolina*, 978 F.2d 1334, 1342 (4th Cir. 1992) (en banc); *see also In re Apex Express Corp.*, 190 F.3d 624, 635 (4th Cir. 1999) (assuming officer competent to testify about acts of corporation in the absence of contrary evidence); *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 135 n.9 (4th Cir. 2002) (same).[3]

### B.

Experian argues the district court's exclusion of the Williams declaration was an abuse of discretion for several reasons.   It contends that Williams had adequately demonstrated personal knowledge with respect to certain aspects of Austin's CreditWorks enrollment.   And it in turn argues that the court imposed too high of a bar for the demonstration of personal knowledge, that it imposed requirements beyond those outlined in the law, and that it dismissed "clear indicia" of Williams's personal knowledge. Opening Br. 33.

Acknowledging the generally deferential stance we take when reviewing evidentiary rulings, we nonetheless agree that excluding the Williams declaration was an abuse of discretion.   The court held Williams, and therefore Experian, to too high a

---

[3] Each of these cases was decided when the current Rule 56(c)(4) provisions were found at 56(e), but the substance of the rule has not changed.   *See, e.g.*, *Fambrough v. Wal-Mart Stores, Inc.*, 611 F. App'x 322, 330 (6th Cir. 2015) (unpublished) (noting unchanged substance of rule following renumbering).

13

standard. The record before us demonstrates he possessed personal knowledge of the facts his declaration put forth.

First off, the district court concluded that documentary exhibits attached to the Williams affidavit purporting to show the terms of use and appearance of the CreditWorks enrollment page were hearsay. *See* J.A. 1688. This was incorrect. "Out-of-court statements constitute hearsay only when offered in evidence to prove the truth of the matter asserted." *Anderson v. United States*, 417 U.S. 211, 219 (1974); *see also* Fed. R. Evid. 801(c). But the significance of those documents to this case lies solely in the fact they were made or presented on a computer screen, and "no issue is raised as to the truth of anything asserted." *Stuart v. UNUM Life Ins. Co. of Am.*, 217 F.3d 1145, 1154 (9th Cir. 2000) (quoting Fed. R. Evid. 801(c) advisory committee's note). Therefore, those documents do not constitute hearsay. *See id.* To the extent the district court relied upon the conclusion that these documents were inadmissible hearsay to exclude the Williams declaration, that was error. *See* Fed. R. Evid. 1001(d) (permitting admission of electronically stored information by "printout" or "output readable by sight" that "accurately reflects the information").

Second, we disagree that Williams failed to demonstrate personal knowledge. The information Experian was required to demonstrate (and for which it submitted Williams's declaration) was the existence of a binding contract to submit disputes to arbitration. To do so, it needed to show that Austin agreed to the terms of use, i.e., that he enrolled in CreditWorks, and the content of those terms of use when he did so. So, the Williams

testimony was in turn offered to confirm that Austin had indeed enrolled and the appearance of the website.

Williams averred that in his role of "VP, Business Governance" of ECS — the Experian affiliate that operates CreditWorks — he is familiar with "marketing, advertising and sales of [ECS] consumer credit products, including services that consumer enroll [sic] in at Experian websites, as well as the Terms of Use governing such services." J.A. 120. Williams has been employed by ECS since 2001. He explained he had gained the personal knowledge asserted in his declaration through his day-to-day work responsibilities, and from the "review of pertinent documents maintained as business records by [ECS] in the course and scope of" its business. *Id.* Williams then, in further detail, describes the appearance of the CreditWorks enrollment page, what a user does on that page — such as entering their personal information and links that they click. He also averred that Austin had enrolled in CreditWorks on May 3, 2020.

On this record, Williams has "properly demonstrated his own knowledge." *Melo v. Zumper, Inc.*, 439 F. Supp. 3d 683, 694 (E.D. Va. 2020). Our read of the district court's order suggests that it would have required Williams to demonstrate that he possessed a more technical understanding of the software used by the company to record customer information. But Williams's declaration "does not include discussion of any hyper-technical aspects or functions" of the CreditWorks enrollment page "that would require significant technical expertise not normally possessed" by a Business Governance officer. *Id.* And perhaps our reasoning would differ if that were the case. It would be a stretch in logic to conclude that Williams has demonstrated personal knowledge of, say, the contents

15

of computer code developed to support the ECS website. But instead here, the operative finding is whether and when Austin enrolled in CreditWorks, and if so, what terms of use, if any, did he agree to. And nothing in the record before us suggests that Wiliams, VP of Business Governance at ECS, lacked personal knowledge of whether someone signed up for a free product offered by the company, the date that they did so, and the terms of use in effect at that time. *See* Fed. R. Evid. 602 ("Evidence to prove personal knowledge may consist of the witness's own testimony.").

Finally, our observations above are underlined by a presumption we have recognized that "*ordinarily*, officers would have personal knowledge of the acts of their corporations." *Catawba*, 978 F.2d at 1342 (emphasis added). In *Bryant*, we declined to exclude affidavits where they contained "sufficient information" to establish personal knowledge in the absence of evidence that the affiant was not competent to testify. *See* 288 F.3d at 135 n.9. And we have also noted the same regarding the president of a small business for 30 years with respect to billing practices of that business. *See In re Apex*, 190 F.3d at 635.

Here, a corporate officer overseeing Business Governance — which, based upon evidence in opposition submitted by Austin includes responsibility for "risk and regulatory management" as well as those duties described by Williams himself — would presumably be competent to testify regarding the registration of a user on a particular date and the terms of use in force at the time. J.A. 533. And against Williams's assertions of his own personal knowledge in his sworn statement, Austin does not offer evidence that shows he lacked that knowledge or was required to possess "hyper-technical" information regarding the

16

enrollment process.  *Melo*, 439 F. Supp. 3d at 694.  So although some showing of personal knowledge must be made in the admission of any testimony, "the proponent's burden is a minimal one."  1 McCormick on Evid. § 10 (9th ed. 2025).  In light of the straightforward factual showings Experian sought to make through the Williams declaration and the contents of the Williams declaration, we conclude that burden was met here.

* * * * *

The district court erred by excluding the Williams declaration on the basis that he had failed to demonstrate personal knowledge of Austin's enrollment in CreditWorks.  We therefore reverse its judgment granting Austin's motion to exclude the declaration and consider the declaration in examining the motion to compel arbitration.

III.

A.

Having concluded the district court erred by excluding the Williams declaration, we now assess Experian's arguments regarding the court's denial of its motion to compel arbitration.  The court first explained that the motion lacked factual support given the exclusion of Williams's declaration.  But the court also ruled that, even if it had considered Williams's testimony and the associated exhibits, Experian's motion failed as it had failed to demonstrate mutual assent to arbitrate.

The district court found that the Williams declaration "establishes that the process that [Experian] used lured consumers to a sister company's website for the purpose of allegedly receiving a free credit report."  J.A. 1817.  The court favorably cited the Seventh

17

Circuit's decision in *Sgouros v. TransUnion*, 817 F.3d 1029 (7th Cir. 2016), in which that court ruled TransUnion's website failed to put a reasonable user on notice that by signing up, they also agreed to submit any disputes to arbitration. *See id.* at 1035–36. In this case, the district court found that the circumstances were similar. For example, the court found here that the text surrounding the "create your account" button was "very much like the text that the Seventh Circuit found confusing in *Sgouros*, and as the Seventh Circuit explained, 'that text distracted the purchaser from the service agreement by informing him that clicking served a particular purpose unrelated to the agreement.'" J.A. 1819 (quoting *Sgouros*, 817 F.3d at 1036). Ultimately, the court deemed the CreditWorks enrollment page as "deceptive," and that this deception precluded a finding that there was mutual assent to an arbitration agreement. *Id.*

We review a district court's denial of a motion to compel arbitration de novo. *Dhruva*, 131 F.4th at 151. The Federal Arbitration Act instructs that, barring some exceptions not relevant to this matter, "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. As we recently stated, "a threshold question in every arbitration-related case is thus 'whether a valid arbitration agreement exists.'" *Dhruva*, 131 F.4th at 151 (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019)). And it is Experian who bears the

burden to establish the existence of such an agreement by a preponderance of the evidence.[4] *See id.*

The "fundamental principles of contract law continue to apply" despite the fact "that the digital age has changed the nature of contract formation." *Id.* (quoting *Marshall*, 112 F.4th at 218). "[T]he person asserting the contract's existence must demonstrate that the person alleged to be bound by the contract (1) had 'reasonable notice of an offer' to enter into the contract and (2) 'manifested' assent to it." *Naimoli v. Pro-Football, Inc.*, 120 F.4th 380, 389 (4th Cir. 2024) (quoting *Marshall*, 112 F.4th at 218). Austin and Experian unsurprisingly disagree whether Austin was on notice of an offer to contract and manifested assent to it. We conclude that Experian has demonstrated that the answer is "yes" on each point.

i.

First, notice. The parties dispute whether the CreditWorks enrollment page would have placed Austin on reasonable notice of an offer to enter a contract.[5] "In the internet context, the traditional notice inquiry focuses on the design and content of the relevant

---

[4] The parties do not dispute that North Carolina governs the law of contract formation in this dispute. Nor do they identify peculiarities in the law of that state departing from the fundamental requirements of "assent, mutuality, and definite terms." *Schlieper v. Johnson*, 195 S.E.2d 548, 553 (N.C. Ct. App. 2009) (citing *Horton v. Humble Oil. & Refining Co.*, 122 S.E.2d 716, 719 (N.C. 1961)).

[5] Austin does not appear to dispute that he enrolled in an Experian-affiliated credit monitoring service. *See* J.A. 585.

interface and asks whether it would put a reasonably prudent user on notice of a contract on offer and its terms." *Dhruva*, 131 F.4th at 152 (quoting *Marshall*, 112 F.4th at 218–19). We conclude that this standard is met here.

The CreditWorks enrollment page informed a user that "By clicking 'Create Your Account': I accept and agree to your Terms of Use Agreement, as well as acknowledge receipt of your Privacy Policy and Ad Targeting Policy." J.A. 125. This text was placed in a bold typeface, with "Terms of Use" set off as a blue hyperlink to those terms. *Id.* Below this text, also in bold, was language informing the user that it gave "ConsumerInfo.com, Inc., also referred to as Experian Consumer Services" permission to obtain and provide a credit report and to notify the user of available products and services. The webpage additionally provided that this authorization could be withdrawn at any time by contacting Experian. *Id.* Lastly, below that information, was the button reading "Create Your Account." *Id.* Clicking this button would finalize a user's enrollment.

We disagree with the district court's view that this case presents factual circumstances substantially like those before the Seventh Circuit in *Sgouros*, 817 F.3d at 1030–36. The *Sgouros* plaintiff purchased a credit report package from credit reporting agency TransUnion. *Id.* at 1030–31. Making this purchase was a three-step process; the first step required inputting personal information, such as name, address, and phone number. *Id.* In Step 2, the user provided a little bit more information to finalize their purchase, like a username, password, and payment information. *Id.* at 1032. Below spaces for entering that data was a small scroll box containing the "Service Agreement," which, when viewed in full, contained an arbitration provision at page 8 of 10. *Id.* at 1032–33. A

user would proceed to Step 3 by clicking a button reading "I Accept & Continue to Step 3." *Id.* at 1033.

The Seventh Circuit rejected TransUnion's argument that clicking this button sufficed to form an agreement to arbitrate disputes arising out of the credit report purchase. The text accompanying the "I Accept & Continue to Step 3" button indicated that by clicking the button one was "providing 'written instructions' . . . authorizing TransUnion Interactive, Inc. to obtain information from your personal credit profile . . . . You authorize TransUnion Interactive, Inc. to obtain such information solely to confirm your identity and display your credit data to you." *Id.* The court explained that TransUnion had not "ensured that the purchaser would see the critical language [of the arbitration clause] before signifying her agreement" and emphasized that there was "no clear statement" that the purchase "was subject to *any* terms and conditions of sale." *Id.* at 1035 (emphasis in original). Lastly, the court placed particular emphasis upon the fact that text accompanying the button specifically advised that clicking constituted authorization to obtain personal information but indicated "nothing about contractual terms." *Id.*

The CreditWorks enrollment page that a user like Austin would have seen is much different than TransUnion's, making this case readily distinguishable from *Sgouros*. Simply put, "the design and content of the website would have put a reasonably prudent user on notice of the terms of" CreditWorks's contractual offer. *Dhruva*, 131 F.4th at 153 (quoting *Marshall*, 112 F.4th at 218–19) (internal quotation marks removed). The CreditWorks enrollment page stated, in bold text, that "[b]y clicking 'Create Your Account': I accept and agree to your Terms of Use Agreement." J.A. 125. And as

21

previously indicated, the words "Terms of Use Agreement" were set off in blue text "on an uncluttered background," *Dhruva*, 131 F.4th at 152, close to the portions of the form that a customer had to fill out and click. We conclude here, as we did in *Dhruva*, that "[n]othing about the website design or layout obscure[d] the conspicuous location of the Terms of Use hyperlink." *Id.* Indeed, Austin "did not need to 'scroll[] down' or 'go exploring' to find out there were terms of use in the first place." *Id.* at 153 (quoting *Marshall*, 112 F.4th at 219–20). We conclude that Austin was on notice of the contract and its terms offered by CreditWorks, including the arbitration provision.

ii.

Now, mutual assent. In North Carolina, as in many other jurisdictions, contracting parties "must assent to the same thing in the same sense." *Boyce v. McMahan*, 208 S.E.2d 692, 695 (N.C. 1974). Austin contends that the appearance and substance of the CreditWorks enrollment page precludes any finding that he assented to CreditWorks's terms of use, including the arbitration provisions. We are not persuaded by Austin's arguments and conclude that the record demonstrates that he assented to the CreditWorks terms of use here.

Austin highlights decisions such as *Berman v. Freedom Financial Network LLC*, in which the Ninth Circuit acknowledged that some websites employ "'clickwrap' agreements," which "present[] users with specified contractual terms on a pop-up screen and users must check a box explicitly stating 'I agree' in order to proceed. 30 F.4th 849, 856 (9th Cir. 2022). That court stated that this sort of arrangement has been "routinely"

22

found enforceable, in light of the relatively straightforward determination of notice and assent.  *See id.*; *see also Foster v. Walmart, Inc.*, 15 F.4th 860, 863 (8th Cir. 2021) ("In these types of agreements, mutual assent is rarely an issue because the user sees the list of the terms and conditions before accepting them.").

Austin's characterization of clickwrap agreements like those we have just described as the "easiest method of ensuring that [contractual] terms are agreed to," makes sense. Response Br. 48 (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 238 (2d Cir. 2016)). Deploying that method provides certainty that the terms have been read (because they popped up on the screen) and that the user has indicated their assent (because they could not proceed without, say, checking a box indicating that assent).  However, just because that is the easiest method does not mean it is the only method a party may use to demonstrate another's assent to enter a contract.  *See, e.g.*, *Berman*, 30 F.4th at 856 (observing existence of other methods to "determine whether meaningful assent has been given"); *Foster*, 15 F.4th at 863–64 (noting different ways user can manifest assent).

Our Court, too, permits a party to demonstrate manifest assent without a "clickwrap" arrangement that presents a user with terms of use and requires their assent before continuing.  In *Dhruva*, we rejected the argument that a "website's design and wording provided insufficient guidance that completing the subscription process would constitute assent to the proposed contract."  131 F.4th at 153.  We reject a similar argument here, too.  When Austin registered with CreditWorks, he "accept[ed] and agree[d] to" its terms of use.  J.A. 125.  And "[c]ourts . . . generally find that when a website provides clear and reasonably conspicuous notice that there are contract terms available by scrolling down

or clicking a hyperlink, the user is on reasonable notice of those terms even if she never reads them." *Dhruva*, 131 F.4th at 153 (quoting *Marshall*, 112 F.4th at 220). Both the enrollment webpage, as well as the first paragraph of the linked terms of use, provided that enrollment in CreditWorks constituted acceptance of and agreement with the CreditWorks terms of use.

As we have explained, the layout of the CreditWorks enrollment page, with its conspicuous terms of use and language indicating that creating an account constituted agreement with those terms, provided Austin with notice that there was a contract on offer. And Austin, by enrolling in CreditWorks, assented to those terms of use.

Austin puts forth several last reasons why we should not deem his enrollment sufficient to enter a binding contract to arbitrate, none of which are convincing. He submits that the company "could have easily" asked users to click to "accept" the terms of use. Response Br. 51. We also rejected this argument in *Dhruva*. There, we noted that the click of a button can only be construed as an "unambiguous manifestation of assent" if "the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement." 131 F.4th 146, 155 (quoting *Berman*, 30 F.4th at 857). "But that does not mean the button must be labeled 'I accept' or 'I agree.'" *Id.* (quoting *Marshall*, 112 F.4th at 222). Instead, a "clear and conspicuous notice that a click . . . will be taken as assent can do the trick." *Id.* (quoting *Marshall*, 112 F.4th at 222). As the defendant did in *Dhruva*, CreditWorks expressly advised Austin that creating an account signified his assent to the terms of use. *See id.* We therefore decline, in line with our previous rulings, to

24

require manifestations of assent in this context exclusively take the form of an "I agree" or "I accept" button to be clicked.

Austin puts forth several other contentions that creating an account did not manifest his assent to the arbitration agreement. He points to the layout of the webform, noting the linked terms of Use were "spatially decoupl[ed]" from the account creation button, Response Br. 51, that the linked terms were distractingly placed alongside other information, and that the five sentences between the linked terms and the account creation button could be misidentified as the terms of use. Those arguments, though, speak to whether Austin was on notice that there was a contract on offer, and as we have concluded, Austin had conspicuous notice of the terms as well as the fact that creating an account with CreditWorks would constitute agreement with the terms.

* * * * *

The record in this matter demonstrates that (1) Austin "had reasonable notice of an offer to enter into the contract" and (2) that he "manifested assent to it." *Naimoli*, 120 F.4th at 389 (internal quotation marks removed). The Federal Arbitration Act compels courts to ensure parties make good on binding agreements to arbitrate, *see* 9 U.S.C. § 2, so we reverse the district court's denial of Experian's motion to compel arbitration.

IV.

For the foregoing reasons, we reverse the judgment of the district court excluding the Williams declaration. We also reverse its judgment denying Experian's motion to compel arbitration, and we remand for further proceedings consistent with this opinion.

*REVERSED AND REMANDED*