The Honorable John H. Chun

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FEDERAL TRADE COMMISSION,

Plaintiff,

v.

AMAZON.COM, INC., *et al.*

Defendants.

No. 2:23-cv-0932-JHC

DEFENDANTS' OPPOSITION TO
FTC'S MOTION TO ESTABLISH
THAT NO MATERIAL
DIFFERENCES EXIST BETWEEN
CERTAIN REPRESENTATIVE
FLOWS AND ESTABLISH
CERTAIN FACTS

NOTED ON MOTION CALENDAR:
September 18, 2025

DEFS.' OPP. TO RULE 56(G) MOT.
(2:23-cv-0932-JHC)

1

## TABLE OF CONTENTS

2
                                                                                    **Page**

3   I.      INTRODUCTION ................................................................................................ 1

4   II.     ARGUMENT ..................................................................................................... 2

5           A.      Rule 56 Does Not Permit the Factual Findings the FTC Seeks. ........................ 2

6           B.      The FTC Must Prove Whether Each Different Variation of Each Enrollment
7                   Channel Violates ROSCA ................................................................................. 4

8                   1.      Granting the FTC's Request Would Relieve the FTC of the Burden
                            to Prove Its Claims at Trial. ........................................................... 4
9
                    2.      There Are Material Differences in the Flows. ................................ 7
10
11          C.      The Court Should Deny the FTC's Request For an Order That an Unbounded
                    List of Terms Is "Material." ........................................................................... 12
12
            D.      The FTC's Request for a Finding that ROSCA Applies to Prime Is Moot. ....... 13
13
    III.    CONCLUSION ................................................................................................. 14
14

15
16
17
18
19
20
21
22
23
24
25
26
27

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# I.    INTRODUCTION

The FTC's motion is a transparent attempt to escape the burden of proving its case at trial. Over the eleven years at issue in this case, the Amazon Prime enrollment flows the FTC challenges evolved frequently and in ways that are material to the FTC's claims: the placement of information about Prime, such as the price, moved around on the page; the text on the enrollment buttons changed; and other core design elements shifted. In light of these differences, the FTC cannot meet its burden of proof at trial by showing the jury cherry-picked images of the flows and asserting that its conclusions about those images can be generalized across the universe of flows.

When it became clear that the Defendants would hold the FTC to its burden, the FTC filed this motion on the eve of trial, asking the Court for an order declaring that none of the three enrollment flow types at issue in this case—the UPDP, SOSP, or SPC—varied materially for over a decade. But the FTC has done none of the work that would be required to demonstrate this. It did not systematically analyze the flows in its motion for summary judgment, or even in this Motion. It did not ask Amazon percipient witnesses whether the flows varied materially. It did not hire an expert to opine that the numerous differences among the flows do not matter. There are obvious differences in the flows, and the parties genuinely dispute whether those differences matter. (Indeed, the FTC has alleged that some, but not all, of Amazon's Prime enrollment flows violate the law—a tacit acknowledgment that these sorts of differences matter to ROSCA compliance.) The issue of whether material differences in the flows exist is therefore improper for resolution in a Rule 56(g) motion. *See* Fed. R. Civ. P. 56(g) (permitting "an order stating any material fact ... that is not genuinely in dispute and treating the fact as established in the case").

Finally, the Court should deny the FTC's request for an order identifying material terms of Prime, because materiality is a disputed question of fact for the jury.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## II.    ARGUMENT

### A.    Rule 56 Does Not Permit the Factual Findings the FTC Seeks.

The FTC's Rule 56(g) motion should be denied first because it is procedurally improper. Rule 56(g) is not a standalone mechanism to establish new facts on the eve of trial. Rather, it is "ancillary" to summary judgment, and "does not authorize the parties to request … narrowing" of factual issues "independently of [a] summary judgment" motion. Wright & Miller, 10B Fed. Prac. & Proc. Civ. § 2737 (4th ed.); *accord Cactus Corner, LLC v. U.S. Dep't of Agric.*, 346 F. Supp. 2d 1075, 1093 (E.D. Cal. 2004), *aff'd*, 450 F.3d 428 (9th Cir. 2006). Accordingly, "courts throughout the country have held that Rule 56 does not authorize a motion which is solely intended to establish the truth of particular facts." *In re E. Palestine Train Derailment*, at *4 (N.D. Ohio Feb. 21, 2025) (quoting *Robertson v. F. Martin*, 2021 WL 545895, at *2 (C.D. Cal. Jan. 4, 2021)); *see also NCWC Inc. v. CarGuard Admin., Inc.*, 2022 WL 17620550, at *2 (D. Ariz. Dec. 13, 2022). It "merely serves to salvage some constructive result from the judicial effort expended in denying a proper summary judgment motion." *Roberts v. Chesapeake Operating, Inc.*, 426 F. Supp. 2d 1203, 1210 (D. Kan. 2006). Thus, "to the extent [the FTC] wished to obtain summary adjudication of certain facts as an alternative to its across-the-board request for summary judgment, it should have made a request to that effect in the dispositive motion it filed … (as opposed to waiting ... [and] filing a second Rule 56 motion)." *NCWC Inc.*, 2022 WL 17620550, at *2. Because the FTC failed to do so, its motion should be denied. *See, e.g.*, *id.*; *SEC v. Thrasher*, 152 F. Supp. 2d 291, 297 (S.D.N.Y. 2001) (doing the same, when Rule 56(g) was numbered Rule 56(d)).

The FTC maintains that cases like *NCWC* were wrongly decided. In its view, courts only bar Rule 56(g) motions brought without any preceding Rule 56(a) motion. *See* Dkt. 462 at 3–4 & n.3. But even if the FTC is right, its Rule 56(g) request here remains improper. That procedure is meant to be "ancillary" to a proper Rule 56(a) motion—not a license to request factual findings on unbriefed issues on the eve of trial. *See* Wright & Miller § 2737, *supra*. The FTC's motion here is no way "ancillary" to its Rule 56(a) briefing, because its summary judgment motion never

sought to establish what it now argues: that all versions of Amazon's Prime enrollment flows are materially the same. *See generally* Dkt. 381; *see also* Dkt. 462 at 6 (claiming FTC's summary judgment brief "demonstrated" this). Because the FTC never put this supposed fact (which *is* both material *and* disputed) in play at summary judgment, it cannot obtain a Rule 56(g) order establishing as much. *See* Fed. R. Civ. P. 56(g) (permitting an order "stating any material fact ... that is not genuinely in dispute and treating the fact as established in the case").

Amazon did not waive its ability to dispute the materiality of "variations between exemplars of the three challenged enrollment pages" in its summary judgment briefing. *Contra* Dkt. 462 at 6–8. Even if the FTC had explicitly contended that there were no material differences among the flows, Amazon would not have been required to respond to that contention to preserve the ability to contest it under Rule 56(g)—let alone at trial. As the Advisory Committee on Civil Rules explained when adopting the current version of Rule 56(g):

> A nonmovant … may feel confident that a genuine dispute as to one or a few facts will defeat the motion, and prefer to avoid the cost of detailed response to all facts stated by the movant. This position should be available without running the risk that the fact will be taken as established under subdivision (g) or otherwise found to have been accepted for other purposes.

Fed. R. Civ. P. 56(g), Advisory Committee's note to 2010 amendment; *see also* Steven S. Gensler & Lumen N. Mulligan, 2 Fed. Rules of Civ. Proc., Rules & Commentary, Rule 56. Summary Judgment (2023 ed.) ("Parties often elect not to contest certain facts for purposes of summary judgment only. In that event, an order establishing those facts would be inappropriate."). This principle applies with even greater force here, where the FTC did not expressly brief this issue. Rule 56(g) cannot be used to convert silence into an affirmative finding.

At bottom, the FTC's motion is not an effort to "salvage" undisputed issues from its summary judgment motion, *Roberts*, 426 F. Supp. 2d at 1210, but an attempt to relieve the FTC of its burden to prove its claims at trial. The Motion does not ask the Court to deem a discrete, supported fact undisputed; it asks the Court to make a substantive determination that differences among scores of enrollment flows are immaterial to liability. But as the FTC's motion concedes,

DEFS.' OPP. TO RULE 56(G) MOT.
(2:23-cv-0932-JHC) - 3

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1   this is a disputed factual determination. It is therefore a question for the jury, and one that the

2   FTC must prove to satisfy its burden to establish ROSCA liability. *See infra* Part I.B. A ruling

3   otherwise would be reversible error. *See, e.g.*, *SEC v. Commonwealth Equity Servs., LLC*, 133

4   F.4th 152, 170–71 (1st Cir. 2025) (reversing district court's grant of summary judgment to SEC

5   where SEC had not proven as a matter of law evidentiary sample its expert relied on was

6   "representative" of universe of relevant evidence).

        **B.**     **The FTC Must Prove Whether Each Different Variation of Each Enrollment Channel Violates ROSCA.**

7

8   Fatal procedural flaws aside, the Court must deny the FTC's request.

9

        **1.**     **Granting the FTC's Request Would Relieve the FTC of the Burden to Prove Its Claims at Trial.**

10

11      The FTC's position is that "a separate ROSCA violation occurs ... *whenever* Amazon

12   'charge[s] or attempt[s] to charge any consumer' for Prime without having clearly and

13   conspicuously disclosed Prime's material terms, obtained express informed consent, or provided

14   simple cancellation mechanisms." Dkt. 351 at 56 (quoting 15 U.S.C. § 8403) (emphasis added).

15   Those alleged "violation[s]" necessarily occurred under varying circumstances. Indeed, the very

16   premise of the Motion is that consumers saw multiple different versions of each enrollment

17   channel—the UPDP, SOSP, and SPC—throughout the eleven-year period covered by the

18   Amended Complaint. *See, e.g.*, Dkt. 490 at 5 (this Court's summary judgment order explaining

19   UPDP page has varied over time and was "personalized"). As a result of these differences over

20   time in the challenged enrollment flows, for the FTC to prevail on its theory of "discrete,

21   repeated violations of ROSCA," Dkt. 351 at 57, the FTC must identify the specific versions of

22   the enrollment flows that the FTC claims violate ROSCA and must satisfy its burden of proof on

23   each version.

24      Courts in this Circuit routinely rebuff the FTC's attempts to take the same shortcut it

25   seeks here. Consider *FTC v. DIRECTV, Inc.*, 2018 WL 3911196, *15–16 (N.D. Cal. Aug. 16,

26   2018). There, the FTC sought to prove at trial that a "universe of 40,000 or more advertisements"

27   was misleading based on "the detailed content of only three advertisements," plus expert

DEFS.' OPP. TO RULE 56(G) MOT.
(2:23-cv-0932-JHC) - 4

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    testimony opining without "persuasive explanation" that those advertisements were

2    "representative" of all the advertisements at issue. *Id.* But the "several years' worth of

3    advertisements accused by the FTC ... took different forms and depended on the specific offer in

4    place at the time." *Id.* at *15. As a result, the court required the FTC to "explain why conclusions

5    about a handful of advertisements" could be applied to all the ads at issue. *Id.* at *16. The FTC

6    "cannot meet this burden," the court told the Commission, "by characterizing the advertisements

7    at a high level of generality and asserting that conclusions regarding one advertisement apply

8    uniformly to tens of thousands of others." *Id.* at *16, 23 (entering final judgment for DIRECTV

9    on the relevant claims).

10          *DIRECTV* is no outlier. Another example is *FTC v. Johnson*, 96 F. Supp. 3d 1110, 1121

11   (D. Nev. 2015). There, the court refused even to consider granting the FTC summary judgment

12   on the full universe of websites it challenged, where the FTC's summary judgment motion

13   "use[d] selected examples ... picked from across the entire universe of the [Defendants'

14   websites], seemingly without a clear methodology" and attempted to "draw conclusions as to

15   every one of Defendants' sites." *Id.* Because "the websites" at issue "were not identical," the

16   FTC could not "pick[] examples ... from across its ... website exhibits to suit [its] arguments." *Id.*

17   Instead, the Commission needed to show that its "examples are representative of the ... website

18   experience as a whole." *Id.* The FTC had not done this, so the court was "compel[led] ... to limit

19   the body of website captures" it considered at summary judgment to the presented examples. *Id.*

20          Indeed, it would have been reversible error for the courts in *DIRECTV* or *Johnson* to

21   grant judgment for the FTC based on cherry-picked evidence that the FTC had not demonstrated

22   to a factfinder was representative of the universe of alleged violations. *See, e.g.*, *Commonwealth*

23   *Equity Servs.*, 133 F.4th at 170–71.

24

25

26

27

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1      Here, the FTC must prove that the flows it contends violates the law in fact do so.[1] The

2      FTC's complaint (at 5) that Amazon waited until the exchange of proposed verdict forms to

3      inform the FTC that it bears this burden is remarkable, and disingenuous. It is not Amazon's job

4      to tell the FTC what the law is, and the FTC already is aware of *DIRECTV* and *Johnson*. Nor is it

5      Amazon's job to provide notice that Amazon will hold the FTC to its burden. Regardless,

6      starting in discovery, Amazon made clear that its checkout flows varied—frequently and

7      materially—over time. That is why (as the FTC's motion details) the FTC asked Amazon "to

8      identify all routes a consumer could take through the checkout process, and the most frequently

9      displayed versions of those pages." Dkt. 462 at 5. That is why Amazon initially told the FTC that

10     it was unreasonable "to require [Amazon] to 'catalogue every possible permutation of the

11     checkout process' that consumers experienced." *Id.* (quoting Dkt. 330-2 at 7, 20, 30). And that is

12     why Amazon ultimately produced 33 examples showing the flows at different times. *Id.* But

13     Amazon did not intend, and has never said, that those 33 examples are "representative" for

14     purposes of the FTC's burden of proof at trial.

15         As the Plaintiff, it was the FTC's job to figure out how to prove its case. The FTC could

16     have sought an order from this Court that certain variants of the flows were representative and

17     that the case would be litigated on the basis of those flows. Parties do that routinely—early in the

18     case, not on the eve of trial. *See, e.g.*, *CRA Holdings US, Inc. v. United States*, 2017 WL

19     3404758, at *1 (W.D.N.Y. Aug. 9, 2017) (ordering the parties to litigate a tax refund case based

20     on a sample of the taxpayers' projects and resolving various disputes between the parties about

21     sampling). The FTC could have sought percipient testimony from Amazon witnesses that the

22     flows had no material differences. Or the FTC could have obtained expert testimony analyzing

---

[1] The FTC wrongly suggests that it need not satisfy its burden as to each different flow because all the flows were part of the same "widespread practice or 'unified scheme.'" Dkt. 462 at 10 (citing *SEC v. Sabrdaran*, 252 F. Supp. 3d 866, 884–86 (N.D. Cal. 2017) and *SEC v. Jasper*, 883 F. Supp. 2d 915, 924 (N.D. Cal. 2010), *aff'd*, 678 F.3d 1116). ROSCA—unlike the SEC regulations at issue in *Sabrdaran* and *Jasper*—outlaws discrete acts, not "scheme[s]." So, while the SEC could satisfy its burden in those cases by proving a single "device, *scheme*, or artifice to defraud," 17 C.F.R. § 240.10b-5 (emphasis added), the FTC cannot do the same here.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1   the flows and opining that certain variants were representative. Parties do that routinely too. *See,*

2   *e.g., Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.*, 2012 WL 6000885, at *1 (S.D.N.Y.

3   Dec. 3, 2012) (denying motion to exclude FHFA's expert report on sampling because objections

4   were more properly resolved by jury). Instead, the FTC sat on its hands, apparently expecting to

5   prove eleven years' worth of ROSCA violations based on whatever random selection of flow

6   images it chooses in the days leading up to trial. The Court should not excuse the FTC's failure

7   to develop the evidence it needs to prove its case.[2]

8                   **2.    There Are Material Differences in the Flows.**

9           As just discussed, the FTC asks for permission to show the jury cherry-picked images of

10  the evolving flows to prove liability for over a decade. The FTC still has not told Amazon or the

11  Court which images it will show. And the FTC has no expert (or other evidence) purporting to

12  demonstrate that the images the FTC plans to show are representative of the rest of the flows.

13  Nor does the FTC have an expert (or other evidence) purporting to demonstrate that the flows did

14  not materially vary over time.[3]

15          In lieu of actual evidence and testimony, the FTC says, "[t]he Court may simply examine

16  the 33 exemplars of the challenged flows Defendants identified as 'representative' to ascertain

17  that differences between versions of each page are not substantial enough to require the jury to

18  find liability separately on each." Dkt. 462 at 9 (citing *FTC v. AMG Cap. Mgmt. LLC*, 910 F.3d

19  417, 423-24 (9th Cir. 2018); *FTC v. Cyberspace.com LLC*, 453 F.3d 1196, 1200–01 (9th Cir.

20  2006)). But it is not appropriate for the Court to usurp this inquiry from the factfinder. *AMG*

21

22  _____

23  [2] Contrary to the FTC's argument (at 10), the Court's discretion over the verdict form does not
    allow the Court to absolve the FTC of its burden to prove a violation as to each distinct flow. *See*
    *Floyd v. Laws*, 929 F.2d 1390, 1395 (9th Cir. 1991) ("This discretion extends to determining the
24  form of the special verdict, *provided the questions asked are adequate to obtain a jury*
    *determination of the factual issues essential to judgment.*" (emphasis added)).

25

26  [3] The FTC says that it "will present evidence – including multiple variants of each page and
    expert testimony – that the variants of each page were minor, sharing unified design features that
27  tricked consumers into enrolling in Prime." Dkt. 462 at 10. But it cites no such evidence, and the
    Defendants are unaware of any.

DEFS.' OPP. TO RULE 56(G) MOT.
(2:23-cv-0932-JHC) - 7

1    *Capital* and *Cyberspace.com* are not to the contrary. In those cases, the materials alleged to

2    violate the law did not vary as a matter of law. *See AMG Cap.*, 910 F.3d at 423–24 (describing

3    the allegedly violative Loan Note); *Cyberspace.com LLC*, 453 F.3d at 1200–01 (describing the

4    allegedly violative solicitation).

5         Here, there are material differences in the flows, visible to anyone who "examine[s] the

6    33 exemplars." Dkt. 462 at 9; *see also* Declaration of Kenneth E. Payson, Ex. B at  88:5-7

7    (agreeing that "over time there have been many, many changes to [Amazon's enrollment]

8    flows"). Examples abound. For one, the FTC's express informed consent claim depends on the

9    theory that "Amazon does not tell consumers the consequences of clicking its 'enrollment'

10   buttons," because—according to the FTC—those buttons, especially on the UPDP flow, "fail[] to

11   tell users they consent" to enrolling in Prime. Dkt. 315 at 57. But the text on and around the

12   enrollment button on the UPDP flow changed over time, with some stating "Get FREE Prime

13   Delivery *with Prime*," while others referenced a "FREE Trial" or even a "Prime FREE Trial"—

14   as shown below.



December 2022 UPDP (AMZN_00148392) (Dkt. 464, Att. 37)



July 2020 UPDP Free Trial Desktop (AMZN_00046056) (Dkt. 464, Att. 15)

September 2019 UPDP Free Trial Desktop (AMZN_00046782) (Dkt 464., Att. 11):

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1

2

3

4    October 2018 UPDP Free Trial Desktop (AMZN_00047293) (Dkt. 464., Att. 9):

5         Consider another example (of many). The FTC maintains that Prime's price is a material

6    term that Amazon failed to clearly and conspicuously disclose. But the flows displayed Prime's

7    price differently at different times. Take the UPDP flow, which disclosed Prime's price in various

8    spots on the enrollment page, including in the page header or just above the enrollment button; at

9    other times, the price was disclosed in the terms and conditions at the bottom of the page. Some

10   examples:

11

12

13

14

15

16   July 2020 UPDP Free Trial Desktop (AMZN_00046056) (Dkt. 464, Att. 15).

17

18

19

20

21

22

23

24

25

26

27

DEFS.' OPP. TO RULE 56(G) MOT.
(2:23-cv-0932-JHC) - 9

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20



21
22
23
24
25  April 2024 UPDP Paid Trial Mobile (AMZN-PRM-FTC-000345890) (Dkt. 464., Att. 20).
26
27

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax



May 2022 UPDP Free Trial Desktop (AMZN_00037197) (Dkt. 464, Att. 7 at 7).

The Court cannot simply sort through these and all the other differences at the remedies phase. Dkt. 462 at 9–11. The FTC will seek to prove liability based not on the flows alone but based also on various pieces of extrinsic evidence, including internal Amazon data and customer anecdotes. Dkt. 477 at 6. But that extrinsic evidence is evidence of customer reactions to the specific flows they experienced at the time—not to other flows. To give just two examples:

- The cancellation survey the FTC will emphasize surveyed consumers who interacted with particular flows at particular times. But the FTC wants to generalize that data to cover all flows across the eleven-year period.

- The consumer witnesses on the FTC's witness list likewise interacted with particular flows at particular times. The FTC cannot be permitted to imply that these consumers' experiences with a single flow can apply to other flows that had different text, different placement of the material terms, etc.

To the extent the FTC seeks to use this data and other evidence to demonstrate liability, the FTC must present it in the proper context—either by showing the flows to which the data and evidence correspond, or by proving that the flows the jury has seen are representative of the flows to which the data and evidence correspond.

The problems go further for the Individual Defendants. Those Defendants are liable only to the extent they controlled or were directly involved in Prime at the time of the corporate

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1   violation and knew about the unlawful practice. *See* Dkt. 316 at 8–13; *see also* Dkt. 490 at 32.

2   But as the Court's summary judgment ruling confirms, the Individual Defendants had different

3   levels of involvement in Prime at different times, and none was involved throughout the entire

4   eleven-year period the FTC contends the enrollment flow has violated ROSCA. The Court has

5   already ruled that "liability starts for [Neil] Lindsay in 2017 and for [Jamil] Ghani in October

6   2019." Dkt. 490 at 32. And Russell Grandinetti maintains that he lacked the requisite knowledge

7   and control for any of the eleven-year period; at least, Grandinetti cannot be liable before he

8   began to oversee Prime in November 2021. *Cf. id.* at 33 (reviewing the parties' evidence about

9   Grandinetti). The FTC cannot possibly expect to prove liability for these Defendants without

10  regard to the differences in the flows in different years.

11  **C.    The Court Should Deny the FTC's Request For an Order That an Unbounded List of Terms Is "Material."**

12  The FTC's next request is the latest installment in its ongoing effort to improperly stretch

13  the scope of its disclosure claim. The FTC's Amended Complaint alleged only two "material

14  terms" of Prime that it purported were unclear and inconspicuous: "its price, and the fact that it

15  renews automatically unless the consumer affirmatively cancels." Am. Compl., Dkt. 67, ¶ 107.

16  Even though a party "may not amend her Complaint through briefing to insert allegations that do

17  not appear in her Complaint," *McGarity v. Sun-Maid Growers of Cal.*, 2024 WL 4370578, at *4

18  n.4 (S.D. Cal. Oct. 1, 2024), by the time summary judgment had arrived, the FTC's list had

19  grown to three material terms: "(1) that [customers] are enrolling in Prime, (2) that their Prime

20  membership automatically renews, and (3) Prime's monthly cost," Dkt. 315 at 48. During pre-

21  trial conferrals, Amazon agreed to stipulate to this list of three material terms, but the FTC

22  refused. *See* Dkt. 455 at 12. Now, the FTC seeks a judicial order declaring *four* material terms as

23  uncontested, *see* Dkt. 462, Proposed Order at 2 ¶ 4, and, apparently, license to expand the list

24  even further at trial if it wants, *see* Dkt. 462 at 13 (seeking the ability to "prov[e] that other,

25  essential insufficiently disclosed terms – *including* that consumers are even enrolling in Prime

26  and that a free trial converts to a paid subscription – are material" (emphasis added)).

27

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    But the FTC has made no effort to prove that the four terms (plus any others the FTC

2    later identifies) are material. And Amazon does not concede that every identified term is

3    material. Materiality therefore cannot be resolved by judicial order, and must be a factual issue

4    for the jury. *Hillsdale Assocs. v. E. Channel Corp., N.V.*, 1991 WL 174617, at *2 (9th Cir. Sept.

5    6, 1991) (unpublished) ("It is for the jury, not the court, to determine whether any facts that may

6    not have been disclosed were material."); *see also TSC Indus., Inc. v. Northway, Inc.*, 426 U.S.

7    438, 450 (1976).

8    The FTC is wrong that the "materiality" of its list of terms is already resolved as a legal

9    matter. *See* Dkt. 462 at 13. This Court did not already decide materiality at the motion to dismiss

10   stage, back when it was required to assume the truth of the FTC's allegations. *See FTC v.*

11   *Amazon.com, Inc.*, 71 F. Supp. 3d 1158, 1160 (W.D. Wash. 2014) (noting that facts on a 12(b)(6)

12   motion are "accepted as true"). Nor did *Cyberspace.com* purport to transform materiality into a

13   legal question, let alone resolve it as to the terms at issue here; that case merely reiterated the

14   *standard* for materiality. 453 F.3d at 1201. Indeed, if materiality were a legal issue, then it would

15   not be a "fact" appropriate for resolution through a Rule 56(g) order. Fed. R. Civ. P. 56(g).

16   In the end, materiality remains a central, factual element of the FTC's disclosure claim—

17   one it must prove at trial. *See* 15 U.S.C. § 8403(1). But consistent with its prior position in

18   conferrals, Amazon would not oppose an order identifying Prime's price, the frequency of

19   charges, and that the membership continues until cancelled as the *only* material terms of Prime at

20   issue. Here the FTC seeks much more. That request should be denied.

21   **D.    The FTC's Request for a Finding that ROSCA Applies to Prime Is Moot.**

22   Finally, the FTC's request "for a ruling under Rule 56(g) ... that ROSCA applies to

23   Prime," Dkt. 462 at 12, is moot, because the Court ruled in its summary judgment order that

24   Prime is sold through a negative option feature and that "Section 4 of ROSCA regulates Prime."

25   Dkt. 490 at 19.[4]

26

27   _____

[4] The Defendants maintain that Prime enrollment is not accomplished through a negative option
feature and reserve all reconsideration and appellate rights.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## III.    CONCLUSION

The Court should deny the FTC's Rule 56(g) Motion.


DATED this 18th of September, 2025.

I certify that this memorandum contains 4,167 words, in compliance with the Local Civil Rules.


DAVIS WRIGHT TREMAINE LLP


By s/ *Kenneth E. Payson*
　　Kenneth E. Payson, WSBA #26369
　　James Howard, WSBA #37259
　　920 Fifth Avenue, Suite 3300
　　Seattle, WA 98104-1610
　　Telephone: (206) 622-3150
　　Fax: (206) 757-7700
　　E-mail: kenpayson@dwt.com
　　　　　　jimhoward@dwt.com


COVINGTON & BURLING LLP

　　Stephen P. Anthony*
　　Laura Flahive Wu*
　　Laura M. Kim*
　　John D. Graubert*
　　850 Tenth Street, NW
　　Washington, DC 20001
　　Telephone: (202) 662-5105
　　E-mail: santhony@cov.com
　　　　　　lflahivewu@cov.com
　　　　　　lkim@cov.com
　　　　　　jgraubert@cov.com

　　John E. Hall*
　　415 Mission Street, Suite 5400
　　San Francisco, CA 94105
　　Telephone: (415) 591-6855
　　E-mail: jhall@cov.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Megan L. Rodgers*
3000 El Camino Real
Palo Alto, CA 94306
Telephone: (650) 632-4734
E-mail: mrodgers@cov.com

Anders Linderot*
620 Eighth Avenue
New York, NY 10018
Telephone: (212) 841-1163
Email: alinderot@cov.com

HUESTON HENNIGAN LLP

John C. Hueston*
Moez M. Kaba*
Joseph A. Reiter*
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone: (213) 788-4340
E-mail: jhueston@hueston.com
        mkaba@hueston.com
        jreiter@hueston.com

*admitted pro hac vice

Attorneys for Defendants AMAZON.COM, INC., NEIL LINDSAY, RUSSELL GRANDINETTI, AND JAMIL GHANI

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax