The Honorable John H. Chun

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

FEDERAL TRADE COMMISSION,

10                    Plaintiff,

11        v.

12   AMAZON.COM, INC., *et al.*,

13                    Defendants.

14

15

No. 2:23-cv-00932-JHC

DECLARATION OF LAURA
FLAHIVE WU IN SUPPORT OF
DEFENDANTS' MOTION IN
LIMINE TO EXCLUDE
EVIDENCE OBTAINED IN
CONTRAVENTION OF COURT
ORDER GRANTING LIMITED
DISCOVERY

16

17        I, Laura Flahive Wu, hereby state that I have personal knowledge of the facts set forth

18   below. If called as witness, I could and would testify as follows:

19        1.        I am a United States citizen and am over eighteen years of age. I am a partner in

20   the law firm of Covington & Burling LLP and one of Amazon.com, Inc.'s counsel. My office

21   address is 850 10th Street NW, Washington, DC 20001.

22        2.        I submit this declaration in support of Defendants' Motion in Limine to Exclude

23   Evidence Obtained in Contravention of Court Order Granting Limited Discovery ("Motion in

24   Limine") and in accordance with the Western District of Washington's Local Civil Rule 7(d)(5).

25   On September 21, 2025, counsel for Amazon informed counsel for the FTC by email that

26   Amazon intended to file the Motion in Limine on September 22, 2025 in light of the

27   commencement of trial, unless the parties could reach agreement on the issue. Counsel for the

FLAHIVE WU DECL. ISO DEFS.' MOT.  IN LIMINE TO EXCLUDE
TESTIMONY OBTAINED IN CONTRAVENTION OF COURT ORDER
(2:23-cv-00932-JHC) - 1

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

FTC did not respond to this outreach, and thus the parties were unable to resolve the disputes raised in Defendants' Motion in Limine.

3.    Attached as **Exhibit 1** to this declaration is a true and correct copy of an email chain from counsel for Amazon to counsel for the FTC regarding Defendants' intent to file the Motion in Limine, with the most recent email in the chain dated September 21, 2025.

4.    Attached as **Exhibit 2** to this declaration is a true and correct copy of the excerpted transcript of the September 11, 2025 deposition of Amazon corporate witness Subbu Palaniappan.

5.    Attached as **Exhibit 3** to this declaration is a true and correct copy of the excerpted transcript of the September 11, 2025 deposition of Russell Grandinetti.

6.    Attached as **Exhibit 4** to this declaration is a true and correct copy of a letter from counsel for Amazon to counsel for the FTC, dated August 19, 2025.

7.    Attached as **Exhibit 5** to this declaration is a true and correct copy of a letter from counsel for Amazon to counsel for the FTC, dated September 18, 2025.

8.    Attached as **Exhibit 6** to this declaration is a true and correct copy of an email chain between counsel for the FTC and counsel for Amazon, with the most recent email in the chain dated August 26, 2025.

9.    Attached as **Exhibit 7** to this declaration is a true and correct copy of the August 25, 2022 Response of Russell C. Grandinetti to FTC Civil Investigative Demand Issued on June 30, 2022.

10.    Attached as **Exhibit 8** to this declaration is a true and correct copy of the excerpted transcript of the January 12, 2023 investigational hearing of Amazon corporate witness Robert Stangler in FTC Matter No. 2123050.

11.    Attached as **Exhibit 9** to this declaration is a true and correct copy of the Index to Exhibits introduced in the September 11, 2025 deposition of Russell Grandinetti.

FLAHIVE WU DECL. ISO DEFS.' MOT.  IN LIMINE TO EXCLUDE
TESTIMONY OBTAINED IN CONTRAVENTION OF COURT ORDER
(2:23-cv-00932-JHC) - 2

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

12.      AMZN_00021584, introduced in the September 11, 2025 deposition of Amazon's corporate witness Benjamin Angel as Commission Exhibit 834, was produced by Amazon to the FTC during the FTC's pre-suit investigation in November 2021.

13.      AMZN_00049332, introduced in the September 11, 2025 deposition of Amazon's corporate witness Benjamin Angel as Commission Exhibit 1007, was produced by Amazon to the FTC during the FTC's pre-suit investigation in October 2022.

14.      AMZN_0004734, introduced in the September 11, 2025 deposition of Amazon's corporate witness Benjamin Angel as Commission Exhibit 661, was produced by Amazon to the FTC during the FTC's pre-suit investigation in October 2022.

15.      AMZN 00003616, introduced in the September 11, 2025 deposition of Russell Grandinetti as Commission Exhibit 461, was produced by Amazon to the FTC during the FTC's pre-suit investigation in May 2021.

16.      AMZN 00003627, introduced in the September 11, 2025 deposition of Russell Grandinetti as Commission Exhibit 462, was produced by Amazon to the FTC during the FTC's pre-suit investigation in May 2021.

17.      AMZN_00003624, introduced in the September 11, 2025 deposition of Russell Grandinetti as Commission Exhibit 96, was produced by Amazon to the FTC during the FTC's pre-suit investigation in May 2021.

18.      AMZN_00126586, introduced in the September 11, 2025 deposition of Russell Grandinetti as Commission Exhibit 1159, was produced by Amazon to the FTC during the FTC's pre-suit investigation in November 2022.

19.      AMZN-PRM-FTC-001367016, introduced in the September 11, 2025 deposition of Russell Grandinetti as Commission Exhibit 1176, was produced by Amazon to the FTC in this litigation in July 2024.

20.      The document introduced in the September 11, 2025 deposition of Amazon corporate witness Subbu Palaniappan as Commission Exhibit 1008 was produced to Amazon by third-party consumer declarant Michael Babcock on or around July 17, 2025.

FLAHIVE WU DECL. ISO DEFS.' MOT.  IN LIMINE TO EXCLUDE
TESTIMONY OBTAINED IN CONTRAVENTION OF COURT ORDER
(2:23-cv-00932-JHC) - 3

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

21.     The investigational hearing of Russell Grandinetti in FTC Matter No. 2123050 took place on December 2, 2022.

22.     The deposition of Russell Grandinetti in this litigation took place on November 13, 2024.

23.     The investigational hearing of Amazon.com, Inc. in FTC Matter No. 2123050 took place on January 12-13, 2023.

24.     The deposition of Amazon.com in this litigation took place on May 5-6, 2025.

25.     During the FTC's pre-suit investigation, Amazon collected materials from Russell Grandinetti's Wickr account on or around September 22, 2022.

26.     During this litigation, Amazon collected materials from Russell Grandinetti's Wickr account on or around October 30, 2023.

27.     At least 114 out of the 268 pages of Russell Grandinetti's September 11, 2025 deposition transcript reflect questioning and testimony without the introduction of any document Amazon produced in this matter after March 19, 2025.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on September 22, 2025 at Washington, D.C.


By *s/ Laura Flahive Wu*
Laura Flahive Wu

FLAHIVE WU DECL. ISO DEFS.' MOT. IN LIMINE TO EXCLUDE
TESTIMONY OBTAINED IN CONTRAVENTION OF COURT ORDER
(2:23-cv-00932-JHC) - 4

# Exhibit 1

| From: | Johnson, Haley |
|---|---|
| To: | "Jerjian, Olivia"; "Cohen, Jonathan"; "Ware, Jonathan"; "Mendelson, Evan"; "MacDonald, Colin"; "Tang, Jeffrey"; "Sifuentes, Rachel"; "Mejia-Portillo, Johana"; "Taylor, Phoebe CTR"; "Fingles, Jennifer"; "Shelton, Chamaree"; "Freedman, Eli" |
| Cc: | Anthony, Stephen; Capuano, Marc; "Karen Ding"; "Vicki Chou"; "Cassidy O'Sullivan"; "Joseph A. Reiter"; "Joseph Aronsohn"; "Amazon/FTC [INT]"; Flahive Wu, Laura; Kelly, Kevin; Kim, Laura; "Jim Howard"; "Kenneth Payson"; "Theo Lesczynski"; "Stephanie Colorado"; "Lisa Chen"; "Warren Chu" |
| Subject: | RE: FTC v Amazon - September 11, 2025 Supplemental 30(b)(6) Deposition |
| Date: | Sunday, September 21, 2025 2:06:19 PM |
| Attachments: | image001.png |

Counsel,

==The FTC exceeded the scope of the Court's order permitting supplemental discovery by questioning Mr. Grandinetti and Amazon's 30(b)(6) witnesses on documents and topics that did not arise out of Amazon's recent document productions.  *See* September 18, 2025 Amazon Letter to FTC.  Unless the FTC agrees not to introduce testimony or evidence from either reopened deposition that was obtained in contravention of the Court's order, Defendants intend to move the Court for an order excluding such evidence from trial.  Due to the imminent need to resolve this issue, Defendants intend to file their motion tomorrow, unless the parties can reach agreement on this issue.  Please let us know your availability today or tomorrow morning to meet and confer.==

Thanks,

Haley

**Haley Johnson**

Covington & Burling LLP
Salesforce Tower, 415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
T +1 415 591 7031 | hjohnson@cov.com
www.cov.com

# COVINGTON

---

**From:** Johnson, Haley
**Sent:** Thursday, September 18, 2025 12:47 PM
**To:** 'Jerjian, Olivia' <ojerjian@ftc.gov>; 'Cohen, Jonathan' <jcohen2@ftc.gov>; 'Ware, Jonathan' <jware1@ftc.gov>; 'Mendelson, Evan' <emendelson@ftc.gov>; 'MacDonald, Colin' <cmacdonald@ftc.gov>; 'Tang, Jeffrey' <jtang@ftc.gov>; 'Sifuentes, Rachel' <rsifuentes@ftc.gov>; 'Mejia-Portillo, Johana' <jmejiaportillo@ftc.gov>; 'Taylor, Phoebe CTR' <ptaylor3@ftc.gov>; 'Fingles, Jennifer' <jfingles@ftc.gov>; 'Shelton, Chamaree' <cshelton@ftc.gov>; Freedman, Eli <efreedman@ftc.gov>
**Cc:** Anthony, Stephen <santhony@cov.com>; Capuano, Marc <MCapuano@cov.com>; 'Karen Ding' <kding@hueston.com>; 'Vicki Chou' <vchou@hueston.com>; 'Cassidy O'Sullivan' <cosullivan@hueston.com>; 'Joseph A. Reiter' <jreiter@hueston.com>; 'Joseph Aronsohn' <jaronsohn@hueston.com>; 'Amazon/FTC [INT]' <amazon-ftc@hueston.com>; Flahive Wu, Laura <lflahivewu@cov.com>; Kelly, Kevin <Kkelly@cov.com>; Kim, Laura <LKim@cov.com>; 'Jim Howard' <jimhoward@dwt.com>; 'Kenneth Payson' <kennethpayson@dwt.com>; 'Theo Lesczynski'

<theolesczynski@dwt.com>; 'Stephanie Colorado' <scolorado@hueston.com>; 'Lisa Chen'
<lchen@hueston.com>; 'Warren Chu' <wchu@hueston.com>
**Subject:** FTC v Amazon - September 11, 2025 Supplemental 30(b)(6) Deposition

Counsel,

Please see the attached correspondence.

Thanks,

Haley

**Haley Johnson**

Covington & Burling LLP
Salesforce Tower, 415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
T +1 415 591 7031 | hjohnson@cov.com
www.cov.com

## COVINGTON

This message is from a law firm and may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply e-mail that this message has been inadvertently transmitted to you and delete this e-mail from your system. Thank you for your cooperation.

# Exhibit 2

**In the Matter Of:**

FTC vs AMAZON.COM

2:23-CV-0932-JHC

---

**SUBBU PALANIAPPAN**

*September 11, 2025*

---

*30b6*



800.211.DEPO (3376)
EsquireSolutions.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____

FEDERAL TRADE COMMISSION,              )
                                       )
                Plaintiff,             )
                                       )
          v.                           ) No. 2:23-CV-0932-JHC
                                       )
AMAZON.COM, INC., et al.,              )
                                       )
                Defendant.             )
_____

Videotaped Deposition Upon Oral Examination

of

AMAZON.COM, INC., 30(B)(6), SUBBU PALANIAPPAN

_____

Taken Remotely via Zoom

DATE:  Thursday, September 11, 2025

REPORTED BY:  Jamie Lynn, CVR-S, CCR 3281



```
 1                    A P P E A R A N C E S

 2

 3    For the FTC:

 4              OLIVIA JERJIAN
                FEDERAL TRADE COMMISSION
 5              600 Pennsylvania Avenue Northwest
                Washington, D.C. 20580
 6              202.326.2551
                ojerjian@ftc.gov
 7

 8

 9    For the Amazon:

10              VICKI CHOU
                HALEY JOHNSON
11              WARREN CHU
                LISA CHEN
12              HUESTON HENNIGAN
                523 West 6th St., Suite 400
13              Los Angeles, CA 90014
                vchou@hueston.com
14              213.788.4765

15

16

17

18    Also Present:  ANGELA LYONS, VIDEOGRAPHER
                      JOHANA MEJIA-PORTILLO, PARALEGAL, FTC
19

20

21

22

23

24

25
```



SUBBU PALANIAPPAN  30b6                          September 11, 2025
FTC vs AMAZON.COM                                              36

```
1   A.    Yes.  I see that.
2   Q.    Okay.  And, underneath that, there's a CTA button;
3         correct?
4   A.    It says "explore benefits."
5   Q.    Sure.  And that's clickable; correct?
6   A.    I can't tell from this printout whether it is.
7   Q.    As part of your preparation for today's deposition, did
8         you review Welcome to Prime emails from 2018?
9   A.    I -- I -- I reviewed the latest Welcome to Prime
10        email -- latest as in, like, you know, the most recent.
11        I can't recollect whether I saw one from 2018.
12              VICKI CHOU:  For the record, this topic was
13        very vague and did not specify any -- any timeframe for
14        the topic.
15              And, also for the record, this is another document
16        that does not arise out of the productions from --
17        which -- with which the Court's order is concerned.
18        And, since this doesn't have a Bates number, this
19        appears to be something that I think the FTC produced.
20              OLIVIA JERJIAN:  Yeah.  I'll represent that
21        this is on the Defendant's trial exhibit list.  I can
22        give you the exact number later, but --
23              VICKI CHOU:  Okay.  But these -- these
24        depositions are not intended to --
25              OLIVIA JERJIAN:  I don't want to argue on the
```



1          today's topic; correct?

2    A.    This type of emails that are in this bunch.

3    Q.    Sure.  And, aside from speaking with counsel and

4          Mr. Davidai, you did not speak with anyone else to

5          prepare for today's topic; correct?

6    A.    On this particular topic, no.

7                   VICKI CHOU:  Just for the record, this is a

8          2019 email.  And so, like Mr. Davidai, these other

9          individuals likely would have no recollection.

10                  And also, just for the record, we've been going

11         close to four half hours, and this is the first

12         document that arose out of one of the later

13         productions.  Everything else has been produced far

14         earlier and not within the scope of the Court's order.

15                  OLIVIA JERJIAN:  There isn't a question

16         pending so I don't know what you're objecting to right

17         now, but thank you for your note.

18                  VICKI CHOU:  I'm just making the record

19         clear.

20                  OLIVIA JERJIAN:  I think you've made your

21         record very clear.

22   BY OLIVIA JERJIAN:

23   Q.    All right.  Let's move on to Topic 36 which is --

24   A.    Ms. Jerjian.

25   Q.    Yes.



```
1                    C E R T I F I C A T E

2    STATE OF WASHINGTON  )
                          ) ss.
3    COUNTY OF MASON      )

4

5      I, the undersigned Washington Certified Court Reporter,
     pursuant to RCW 5.28.010, authorized to administer oaths and
6    affirmations in and for the State of Washington, do hereby
     certify:  That the foregoing deposition of the witness named
7    herein was taken stenographically before me and reduced to a
     typed format under my direction;
8
       That, according to CR 30(e), the witness was given the
9    opportunity to examine, read, and sign the deposition after
     same was transcribed, unless indicated in the record that
10   the review was waived;

11     That I am not a relative or employee of any attorney or
     counsel or participant and that I am not financially or
12   otherwise interested in the action or the outcome herein;

13     That the witness coming before me was duly sworn or did
     affirm to tell the truth;
14
       That the deposition as transcribed is a full, true and
15   correct transcript of the testimony, including questions and
     answers and all objections, motions, and examinations, and
16   said transcript was prepared pursuant to the Washington
     Administrative Code 308-14-135 preparation guidelines;
17
       That as a matter of firm policy, the stenographic notes of
18   this transcript will be destroyed three years from the date
     appearing on this transcript, unless notice is received
19   otherwise from any party or counsel on or before said date.

20   _____
                /s/ Jamie Lynn, RPR CCR
21              State of Washington CCR #3281

22              My CCR certification expires on 10/20/2026

23

24

25
```



# Exhibit 3

```
 1                      R. Grandinetti

 2             UNITED STATES DISTIRCT COURT

 3           WESTERN DISTRICT OF WASHINGTON

 4                      AT SEATTLE
     -------------------------------------------------------x
 5   FEDERAL TRADE COMMISSION,

 6             Plaintiff,              Case No.
                                       2:23-cv-0932-JHC
 7        vs.

 8   AMAZON.COM, et al.,

 9             Defendants.
     -------------------------------------------------------x
10

11

12

13

14

15             VIDEOTAPED DEPOSITION OF

16                RUSSELL GRANDINETTI

17                New York, New York

18                September 11, 2025

19

20

21

22

23   Reported by:

24   THOMAS A. FERNICOLA, RPR

25   JOB NO. J13335275
```



```
 1                    R. Grandinetti

 2

 3

 4

 5                    September 11, 2025

 6                         9:45 a.m.

 7

 8

 9        VIDEOTAPED DEPOSITION of RUSSELL GRANDINETTI,

10   at the Offices of the Federal Trade Commission, One

11   Bowling Green, New York, New York, before

12   Thomas A. Fernicola, a Registered Professional Reporter

13   and Notary Public of the State of New York.

14

15

16

17

18

19

20

21

22

23

24

25
```



```
 1                        R. Grandinetti
 2   A P P E A R A N C E S:
 3
 4            FEDERAL TRADE COMMISSION
 5            Attorneys for the Plaintiff(s)
 6                 600 Pennsylvania Avenue, N.W.
 7                 Washington, DC 20580
 8            BY:   JONATHAN WARE, ESQ.
 9
10
11            HUESTON HENNIGAN LLP
12            Attorneys for the Defendant(s)
13                 523 West 6th Street, Suite 400
14                 Los Angeles, California 90014
15            BY:   JOHN C. HUESTON, ESQ.
16                  KAREN L. DING, ESQ.
17                  STEPHANIE N. COLORADO, ESQ.
18
19
20
21
22
23
24
25
```



```
 1                     R. Grandinetti
 2   A P P E A R A N C E S:
 3
 4           WILEY REIN LLP
 5           Attorneys for the Witness
 6               2050 M Street NW
 7               Washington, D.C. 20036
 8           BY:  FRANK SCADUTO, ESQ.
 9                RALPH J. CACCIA, ESQ.
10
11
12
13
14
15
16
17
18
19
20
21   ALSO PRESENT:
22           CHARLIE BOWMAN, Videographer
23           LAURA CRAIG, ESQ., Amazon
24           ALEXIS COLLINS, ESQ., Amazon.
25           ELIZABETH BRENNAN, FTC.
```



RUSSELL GRANDINETTI                                September 11, 2025
FTC vs AMAZON.COM                                                 17

```
 1                    R. Grandinetti
 2      Q.    How many documents?
 3      A.    A couple dozen.  It's hard to
 4   know exactly how many.
 5      Q.    I'm handing you what we've
 6   marked as Exhibit 1177.
 7           (FTC's Exhibit 1177, Document,
 8       was marked for identification, as of
 9       this date.)
10   BY MR. WARE:
11      Q.    Do you recognize this document?
12      A.    I believe I saw this document
13   briefly from counsel.
14      Q.    You can set that aside.
15            Does Amazon have a code of
16   business conduct and ethics?
17      A.    Yes, I believe we do.
18      Q.    Are you familiar with it?
19      A.    We receive regular training at
20   the company.
21            I think a wide number of
22   employees, myself included, update our
23   understanding, I think annually.
24            I'm not certain about that, but
25   with some kind of cadence.
```



RUSSELL GRANDINETTI                                    September 11, 2025
FTC vs AMAZON.COM                                                     18

```
 1                    R. Grandinetti
 2        Q.    When was the last time you
 3   received training on the Amazon Code of
 4   Business Conduct and Ethics?
 5        A.    I don't recall when.
 6        Q.    What form does that training
 7   typically occur in?
 8        A.    As with many of our training
 9   modules, often it occurs online.
10        Q.    Do you recall whether the
11   Business Conduct and Ethics training
12   occurs online?
13        A.    I believe so.
14        Q.    Next, I'm going to hand you
15   what we've marked as Exhibit 1182.
16             (FTC's Exhibit 1182,
17             Amazon.com, Inc., Form 8-K for the
18             Period Ending July 20, 2006, was
19             marked for identification, as of this
20             date.)
21   BY MR. WARE:
22        Q.    It's an Amazon.com, Inc., Form
23   8-K for the period ending July 20, 2006.
24             Could you turn to page 6,
25   please?
```



RUSSELL GRANDINETTI                                September 11, 2025
FTC vs AMAZON.COM                                                    19

```
 1                    R. Grandinetti
 2              MR. HUESTON:  Counsel, I guess,
 3        I'm going to object.
 4              This deposition, as I
 5        understand, was supposed to be
 6        focused on any newly disclosed
 7        documents.
 8              Is this a newly disclosed
 9        document?
10              MR. WARE:  Your objection is
11        noted.
12              For the record, I do not think
13        that's what the Court's order
14        represented.
15              MR. HUESTON:  Your
16        understanding is the Court gives you
17        broad license to just replow all the
18        things you've covered already in the
19        prior two depositions?
20              Is that right?
21              MR. WARE:  I think the Court's
22        order speaks for itself.
23     BY MR. WARE:
24        Q.   Mr. Grandinetti, do you
25     recognize what's titled the "Code of
```



 1                    R. Grandinetti

 2    Business Conduct and Ethics" on page 6 of

 3    Exhibit 1182?

 4            MR. HUESTON:  While that

 5        question is pending, I'm going to

 6        object to this question and this

 7        document, because the Court's order

 8        said the questioning must arise out

 9        of the newly produced documents, and

10        clearly this does not, so I object.

11            THE WITNESS:  Could you repeat

12        the question, please?

13            (The Record was Read as

14        Follows:

15            "QUESTION:  Mr. Grandinetti, do

16        you recognize what's titled the Code

17        of Business Conduct and Ethics on

18        page 6 of Exhibit 1182?")

19            MR. HUESTON:  I'm going to

20        renew my objection.

21            This doesn't arise out of newly

22        produced documents.

23        A.    This is an SEC filing.  I don't

24    know that I've seen this particular

25    filing.



1                      R. Grandinetti

2        Q.    Apart from the filing, do you

3    recognize what begins on page 6 of

4    Exhibit 1182 as Amazon's Code of Business

5    Conduct and Ethics?

6              MR. HUESTON:  I'm going to make

7        the same objection.  It doesn't arise

8        out of newly produced documents.

9        A.    The language here seems

10   consistent with what I might have seen in

11   the training on this topic.

12             But whether or not I've seen

13   this particular language before, I'm not

14   sure.

15       Q.    If you can look at Section 1,

16   titled "Compliance with Laws, Rules, and

17   Regulations," it states, quote:

18             "Employees must follow

19        applicable laws, rules, and

20        regulations, at all times."

21             Do you see that?

22       A.    I do.

23       Q.    Did I read that right?

24             MR. HUESTON:  Objection.

25             The question doesn't arise from



```
 1                     R. Grandinetti
 2        newly produced documents.
 3        A.    I think you read it correctly.
 4        Q.    Is that still a requirement
 5   today?
 6        A.    Yes.
 7        Q.    In your time as senior vice
 8   president at Amazon, have you followed
 9   applicable laws, rules, and regulations
10   at all times as required by the Amazon
11   Code of Business Conduct and Ethics?
12             MR. HUESTON:  Objection.
13             The question does not arise out
14        of newly produced documents.
15        A.    Yes.
16        Q.    Is there any instance, in your
17   work for Amazon, when you have not
18   followed applicable laws, rules, and
19   regulations at all times?
20             MR. HUESTON:  Objection.
21             The question doesn't arise out
22        of newly produced documents.
23             THE WITNESS:  Could you read
24        the question back?
25        A.    There was kind of a negative
```



```
 1                    R. Grandinetti

 2    framing, so I want to make sure I'm

 3    answering it correctly.

 4                    (The Record was Read as

 5         Follows:

 6              "QUESTION:  Is there any

 7         instance in your work for Amazon when

 8         you have not followed applicable

 9         laws, rules, and regulations at all

10         times?")

11              MR. HUESTON:  Objection.

12              The question doesn't arise out

13         of newly produced documents.

14         A.    No.

15         Q.    Do you expect Amazon employees

16    that report to you to follow applicable

17    laws, rules, and regulations at all

18    times?

19              MR. HUESTON:  Objection.

20              The question doesn't arise out

21         of newly produced documents.

22         A.    I do.

23         Q.    What processes does Amazon have

24    in place for you to be informed about

25    what are the applicable laws, rules, and
```



1                    R. Grandinetti

2   regulations that you must be following at

3   all times?

4            MR. HUESTON:  Objection.

5            The question does not arise out

6       of newly produced documents.

7            And vague.

8       A.   I think awareness of applicable

9   regulations comes in a variety of forms.

10           We just mentioned the training

11  that I think employees do.  That might be

12  one form.

13           We certainly have partners and

14  in-house counsel on a variety of topics

15  that, when relevant, can advise me and my

16  colleagues on what regulations might be

17  relevant for a particular topic.

18      Q.   Are there any other processes

19  you can think of?

20           MR. HUESTON:  Objection.

21      Vague.

22           And the question does not arise

23      out of newly produced documents.

24      A.   There may be others.  I can't

25  think of more right now.



RUSSELL GRANDINETTI                    September 11, 2025
FTC vs AMAZON.COM                                        25

```
 1                    R. Grandinetti
 2      Q.    Does Amazon make available any
 3   type of toolkit for employees to be
 4   informed about applicable laws, rules,
 5   and regulations?
 6              MR. HUESTON:  Objection.
 7      Vague.
 8              And the question does not arise
 9      out of newly produced documents.
10      A.    I would consider the regular
11   training we do a form of that.  There may
12   be others, I'm not sure.
13      Q.    When you just said "training"
14   you do, were you referring to the annual
15   training on the Amazon Code of Conduct?
16              MR. HUESTON:  Objection.
17              The question does not arise out
18      of newly produced documents.
19      A.    Yes, I was.
20      Q.    Besides that, are there any
21   other Amazon processes you have
22   undertaken to be informed about what are
23   the applicable laws, rules, and
24   regulations that you must be following at
25   all times?
```



RUSSELL GRANDINETTI                    September 11, 2025
FTC vs AMAZON.COM                                        26

```
 1                    R. Grandinetti
 2              MR. HUESTON:  Objection.  Asked
 3         and answered.
 4              And the question arises out of
 5         newly produced documents.
 6         A.    Well, my prior answer was to
 7    both be advised by and occasionally seek
 8    the counsel of our in-house counsel on a
 9    wide variety of matters.
10              That covers an awful lot of
11    instruction and discussion.
12         Q.    I'm showing you what we've
13    marked as Exhibit 1183, which is a web
14    page from About Amazon.com titled "Code
15    of Business Conduct and Ethics."
16              (FTC's Exhibit 1183, About
17         Amazon.com Web Page Titled Code of
18         Business Conduct and Ethics, was
19         marked for identification, as of this
20         date.)
21    BY MR. WARE:
22         Q.    Do you recognize this as
23    Amazon's Code of Business Conduct and
24    Ethics?
25              MR. HUESTON:  Objection.
```



```
 1                    R. Grandinetti
 2              The question does not arise out
 3         of newly produced documents.
 4         A.    At least the beginning of this
 5    document looks similar to the document
 6    you showed me earlier.
 7         Q.    Does Exhibit 1183 look to you
 8    as Amazon's Code of Business Conduct and
 9    Ethics?
10              MR. HUESTON:   Objection.
11              The question does not arise out
12         of newly produced documents.
13         A.    It looks similar to language I
14    might have seen in my training on this
15    topic.
16              But it looks like, for example,
17    the scope of this is somewhat longer than
18    the scope of the prior document, so it
19    may be broken up in different places at
20    different times.
21         Q.    Do you own stock in Amazon.com,
22    Inc.?
23         A.    I do.
24         Q.    How much Amazon stock has the
25    company given you while you've been
```



RUSSELL GRANDINETTI                    September 11, 2025
FTC vs AMAZON.COM                                            28

```
 1                    R. Grandinetti

 2   employed there?

 3              MR. HUESTON:  I'm going to

 4        object.

 5              This is a topic, an area that,

 6        I believe, has been agreed to as not

 7        appropriate for a deposition.

 8              And we can take this topic up

 9        at a break if you want to explore it,

10        and that's what I recommend we do.

11              MR. WARE:  Okay.  We will talk

12        over a break.

13   BY MR. WARE:

14        Q.    Can you look at page 2 of 1186,

15   the section titled "Insider Trading

16   Policy"?

17              Do you see that?

18        A.    I see that.

19        Q.    And the first sentence states:

20              "Federal and state laws

21        prohibit trading in securities by

22        persons who have material

23        information that is not generally

24        known or available to the public."

25              Do you see that?
```



```
 1                        R. Grandinetti

 2              MR. HUESTON:  Objection.

 3              The question does not arise out

 4       of newly produced documents.

 5       A.    I see that sentence.

 6       Q.    The third paragraph, it states,

 7    quote:

 8              "The company has adopted

 9         guidelines designed to implement

10         this policy.

11              "All employees are expected to

12         review and follow the Amazon.com

13         Insider Trading Guidelines."

14              Did I read that right?

15              MR. HUESTON:  Objection.

16              The question does not arise out

17       of newly produced documents.

18       A.    I think you read it right.

19       Q.    Have you received that

20    training?

21              MR. HUESTON:  Objection.

22              The question does not arise out

23       of newly produced documents.

24       A.    I'm sorry, what training are

25    you referring to?
```



```
 1                      R. Grandinetti
 2        Q.    Let me rephrase that.  I think
 3   it was not a good question.
 4             Have you received training on
 5   the insider trading guidelines that are
 6   referenced on page 2 of Exhibit 1186?
 7             MR. HUESTON:  Objection.
 8             The question does not arise out
 9       of newly produced documents.
10        A.    My recollection is the
11   guidelines for this are communicated as a
12   policy regularly, particularly when the
13   trading window opens, in email.
14             And there are resources also on
15   the Internet for us to seek further
16   guidance should we need it.
17        Q.    Can you look at page 4 of
18   Exhibit 1186, Section 6 on price fixing?
19        A.    I'm sorry.
20             I see Section 6.
21        Q.    You see in line 3 where it
22   discusses employees should not enter
23   agreements that would be inconsistent
24   with applicable antitrust laws?
25             MR. HUESTON:  I'm going to
```



RUSSELL GRANDINETTI                    September 11, 2025
FTC vs AMAZON.COM                                        31

```
 1                    R. Grandinetti

 2        object.

 3             This question does not arise

 4        out of newly produced documents.

 5             And, Counsel, this doesn't even

 6        arise out of this case, and I think

 7        this is getting close to abuse of

 8        process.

 9             THE WITNESS:  Could you read

10        back the question, please.

11             (The Record was Read as

12        Follows:

13             "QUESTION:  You see in line 3

14        where it discusses employees should

15        not enter agreements that would be

16        inconsistent with applicable

17        antitrust laws?")

18             MR. HUESTON:  Objection.

19             The question does not arise out

20        of newly produced documents and

21        doesn't arise out of the case.

22        A.    I do see that line.

23        Q.    And has Amazon given you

24      training related to antitrust laws?

25             MR. HUESTON:  Objection.
```



RUSSELL GRANDINETTI                               September 11, 2025
FTC vs AMAZON.COM                                                    32

1                       R. Grandinetti

2               The question does not arise out

3       of newly produced documents.

4               And you can answer that "yes"

5       or "no."

6       A.    I believe so, yes.

7       Q.    Do you ever talk with

8    competitors of Amazon?

9               MR. HUESTON:  Objection.

10              The question does not arise out

11      of newly produced documents.

12              Otherwise, vague as to time and

13      terms.

14              MR. WARE:  Let me rephrase.

15   BY MR. WARE:

16      Q.    In your time as a senior vice

17   president at Amazon, have you engaged in

18   any conversations with competitors of

19   Amazon?

20              MR. HUESTON:  Objection.

21              The question does not arise out

22      of newly produced documents.

23              And vague.

24      A.    Well, there are some companies

25   with whom we both compete and cooperate,



1                      R. Grandinetti

2    so I think the answer would be yes.

3        Q.     The next section in

4    Exhibit 1186 is titled "Bribery, Payments

5    to Government Personnel."

6                 Do you still reside in London?

7        A.     Yes, I do reside in London.

8        Q.     And your responsibilities

9    include dealing in countries outside the

10   United States?

11                MR. HUESTON:   Objection.

12                The question does not arise out

13       of newly produced documents.

14                And vague.

15       A.     I just forgot the question, I'm

16   sorry.

17                THE WITNESS:   If you could read

18       it back, I'd appreciate it.

19                (The Record was Read as

20       Follows:

21                "QUESTION:   And your

22       responsibilities include dealing in

23       countries outside the

24       United States?")

25       A.     Yes.



RUSSELL GRANDINETTI                          September 11, 2025
FTC vs AMAZON.COM                                          34

```
 1                      R. Grandinetti
 2       Q.    In your time as a senior vice
 3   president at Amazon, have you
 4   communicated with foreign government
 5   officials?
 6              MR. HUESTON:  Objection.
 7              The question does not arise out
 8       of newly produced documents, nor is
 9       it even connected with the case.
10              And, again, I'm going to object
11       this is abuse of process.
12       A.    Yes.
13       Q.    In page 6 of Exhibit 1186, the
14   end of line 1 begins, quote:
15              "The U.S. Foreign Corrupt
16         Practices Act, and similar laws in
17         other countries, prohibit offering
18         or giving anything of value,
19         directly or indirectly, to
20         government officials in order to
21         obtain or retain business."
22              Did I read that right?
23              MR. HUESTON:  Objection.
24              The question does not arise out
25       of newly produced documents, nor is
```



RUSSELL GRANDINETTI                            September 11, 2025
FTC vs AMAZON.COM                                            35

```
 1                    R. Grandinetti

 2        it even connected to the case.

 3        A.    I think you did read it right.

 4        Q.    Has Amazon given you training

 5   on complying with the U.S. Foreign

 6   Corrupt Practices Act?

 7              MR. HUESTON:  Objection.

 8              The question does not arise out

 9        of newly produced documents.

10        A.    I don't recall a specific form

11   of training.

12        Q.    Do you recall generally

13   receiving training on the topic of

14   anti-bribery laws?

15              MR. HUESTON:  Objection.

16              The question does not arise out

17        of newly produced documents and is

18        not connected to the case.

19        A.    I recall some subject matter

20   about this within some larger legal

21   training at times.

22        Q.    What processes do you have in

23   place for the people who report to you to

24   ensure that they stay informed about

25   applicable laws, rules, and regulations
```



```
 1                      R. Grandinetti

 2   that effect Amazon?

 3             MR. HUESTON:  Objection.

 4             The question does not arise out

 5       of newly produced documents.

 6             Otherwise, vague as to terms

 7       and time.

 8       A.    Well, in the variety of

 9   different parts of the business that I

10   oversee, there is typically a person, or

11   team of inside counsel, that's assigned

12   to advise us about matters as relevant.

13             And I expect our team will seek

14   that counsel when useful.

15       Q.    Are there any processes you've

16   implemented, as a senior vice president

17   at Amazon, to ensure that people working

18   under you are informed about applicable

19   laws, rules, and regulations in the areas

20   that they are responsible for?

21             MR. HUESTON:  Objection.

22             The question does not arise out

23       of newly produced documents.

24             And vague.

25       A.    When relevant, at times,
```



```
 1               R. Grandinetti

 2   internal counsel might educate myself and

 3   my team on a wide variety of regulatory

 4   issues for our business around the world.

 5        Q.   I'm handing you what I've

 6   marked as Exhibit 461, Bates-numbered

 7   AMZN 00003616 titled "Worldwide Prime

 8   Sign-up Requirements."

 9             And the date at the bottom of

10   the document, the last page, is

11   August 14, 2020.

12             (FTC's Exhibit 461, Worldwide

13        Prime Sign-up Requirements, was

14        marked for identification, as of this

15        date.)

16   BY MR. WARE:

17        Q.   Have you seen this document

18   before?

19             MR. HUESTON:  Objection.

20             This is not a newly produced

21        document, and I object to the

22        question as not arising out of newly

23        produced documents.

24        A.   I don't believe I've seen this

25   particular document before.
```



```
 1                    R. Grandinetti

 2    document before.

 3        Q.    Have you ever given any

 4    guidance, as a senior vice president, to

 5    your direct reports on the type of issues

 6    that are to be brought to your attention?

 7              MR. HUESTON:   Objection.

 8              The question does not arise out

 9        of newly produced documents.

10              Otherwise, vague.

11        A.    Well, I try to have an open

12    door where my team can raise issues if

13    they want advice or feedback.

14              Occasionally, there are issues

15    that I've asked to be particularly

16    involved in; when and how varies very

17    widely.

18        Q.    I take it, you're meaning "open

19    door" colloquially.

20              How would employees who aren't

21    physically in your office avail

22    themselves of that view?

23              MR. HUESTON:   Objection.

24              Move to strike Counsel

25        commentary outside of question.
```



RUSSELL GRANDINETTI                                    September 11, 2025
FTC vs AMAZON.COM                                                      42

```
 1                        R. Grandinetti
 2               Otherwise, I object as the
 3         question does not arise out of newly
 4         produced documents and vague.
 5         A.    Especially today, I think many
 6    of us are familiar with not being in the
 7    same place, and yet having a variety of
 8    methods by which we can connect with each
 9    other; text message, phone call, video
10    conference.
11               And then, occasionally, we do
12    find ourselves in the same place.
13         Q.    What methods have your direct
14    reports used to raise issues to you as
15    senior vice president?
16               MR. HUESTON:  Objection.
17               The question doesn't arise out
18         of newly produced documents and
19         vague.
20         A.    All of those methods and
21    perhaps some I'm not thinking of.
22         Q.    What kind of issues have
23    typically been escalated to you as a
24    senior vice president?
25               MR. HUESTON:  Objection.
```



1                      R. Grandinetti

2              The question doesn't arise out

3        of newly produced documents and

4        vague.

5        A.    It's really very, very broad.

6              Obviously, there are so many

7    different dimensions to the work we do,

8    from managing teams and people, to

9    thinking about strategic issues, to

10   executing operationally.

11             Also, my team spans work in 25

12   or 30 different countries, so it's really

13   difficult to be precise, as it varies so

14   widely.

15       Q.    I'm handing you what we've

16   marked as Exhibit 1167, which is a

17   July 6, 2022, chat with

18   Russell Grandinetti.

19             (FTC's Exhibit 1167, July 6,

20       2022, Chat With Russell Grandinetti,

21       was marked for identification, as of

22       this date.)

23   BY MR. WARE:

24       Q.    Do you recognize this document?

25       A.    I do recognize this.



```
 1                  R. Grandinetti
 2        cancellation flow and DE2 button
 3        cancel last week."
 4             Did I read that right?
 5     A.    Yes.
 6     Q.    What are the cancellation flow
 7   and DE2 button cancel that are referenced
 8   there?
 9             MR. HUESTON:  Objection.
10             Compound.
11     A.    I recall the team having
12   informed me we were making some changes
13   to the cancellation process in Germany.
14     Q.    What changes were those?
15     A.    I'm not familiar with the
16   detail of the changes.
17     Q.    Did you talk to Mr. Ghani at
18   the time about the changes they were
19   making?
20     A.    My recollection is that it was
21   mentioned at a high level in some prior
22   general review of Prime, where they
23   talked about a number of initiatives they
24   were working on.
25     Q.    Were the changes made in or
```



RUSSELL GRANDINETTI                    September 11, 2025
FTC vs AMAZON.COM                                    50

```
 1                   R. Grandinetti
 2   about July 2022 to make the cancellation
 3   flow shorter?
 4            MR. HUESTON:  Objection.
 5            Vague, and the question does
 6        not arise out of newly produced
 7        documents.
 8        A.   I don't remember, specifically,
 9   if those changes made things shorter or
10   not.
11        Q.   Is it your recollection in 2022
12   that Amazon may have been changing its
13   cancellation flow to make it longer?
14            MR. HUESTON:  Objection.
15            The question does not arise out
16        of newly produced documents.
17        A.   I just don't remember length,
18   or number of clicks, or something being
19   part of the general update the team gave
20   me on this topic.
21        Q.   Do you think it's possible that
22   the team was making the Prime
23   cancellation flow longer in July 2022?
24            MR. HUESTON:  Objection.
25            Lacks foundation.  Vague.  And
```



```
 1                  R. Grandinetti
 2   by "operational problems"?
 3        Q.    Sure.
 4              Do you ever receive information
 5   about operational problems with the
 6   sign-up process for Amazon Prime?
 7              MR. HUESTON:  Objection.
 8        Vague.
 9        A.    Well, in the context of our
10   work, I might see details of everything
11   from an individual customer experience,
12   so, for example, a comment on social
13   media about a customer or an email from a
14   customer, all the way up to broad reviews
15   of Prime challenges, including
16   operational challenges, should they
17   happen.
18        Q.    Do you ever receive updates on
19   changes to laws that apply to the parts
20   of Amazon that you're responsible for?
21              MR. HUESTON:  Objection.
22              The question does not arise out
23        of newly produced documents.
24              And, otherwise, vague.
25        A.    I regularly receive advice and
```



```
 1                    R. Grandinetti

 2   instruction from counsel on a wide

 3   variety of legal and regulatory topics.

 4       Q.    When was the last time?

 5             MR. HUESTON:  Objection.

 6             Vague, and doesn't arise out of

 7       newly produced documents.

 8       A.    Again, it's regular, so I

 9   don't...

10             I mean, I'm sure it's quite

11   common.  I can't remember the last time,

12   specifically.

13       Q.    Were you at one time in charge

14   of Amazon's book business in North

15   America?

16             MR. HUESTON:  Objection.

17             The question does not arise out

18       of newly produced documents.

19       A.    Yes.

20       Q.    What did that role entail?

21             MR. HUESTON:  Objection.

22             The question does not arise out

23       of newly produced documents.

24       A.    At one stage, I was responsible

25   for what we today might call the physical
```



RUSSELL GRANDINETTI                          September 11, 2025
FTC vs AMAZON.COM                                          60

1                    R. Grandinetti

2    book business in North America, so that

3    would be sales to customers in the books

4    category from our U.S. or Canadian

5    websites.

6         Q.    When you say "physical books,"

7    does that mean a physical good being

8    shipped through the mail?

9              MR. HUESTON:  Objection.

10              The question does not arise out

11      of newly produced documents.

12      A.    Yes.

13              And I don't think I completed

14    my prior answer:

15              And then, subsequently, I led a

16    portion of Amazon's business in Kindle,

17    which is a digital book business.

18              At some point later, we

19    combined both the physical and digital

20    teams; I don't quite remember when.  And

21    then that was consolidated under a person

22    who still reports to me.

23              So, at some form, I've had

24    responsibility for the books business at

25    Amazon for some time.



RUSSELL GRANDINETTI                    September 11, 2025
FTC vs AMAZON.COM                                            61

```
 1                    R. Grandinetti
 2        Q.    Did your role in Kindle involve
 3    physical goods?
 4              MR. HUESTON:  Objection.
 5              The question does not arise out
 6        of newly produced documents.
 7        A.    Well, again, today, the
 8    combined team reports in to me.
 9              So, at some point, I just don't
10    remember exactly when, when we brought
11    the physical books and digital books
12    teams together, that would have been
13    true.
14        Q.    Do you recall litigation
15    involving the electronic book business?
16              MR. HUESTON:  Objection.
17              The question does not arise out
18        of newly produced documents.
19              I'm going to object.  This has
20        no connection to this case.
21        A.    I do.
22        Q.    What do you recall about that?
23              MR. HUESTON:  And I'm going to
24        object on two bases:
25              One, that doesn't arise out of
```



RUSSELL GRANDINETTI                                    September 11, 2025
FTC vs AMAZON.COM                                                      62

```
 1                  R. Grandinetti
 2        newly produced documents.
 3            And I'll instruct you that you
 4        may only answer this question to the
 5        extent you can do so without
 6        disclosing any attorney-client
 7        communications with respect to that
 8        litigation.
 9        A.    I think there was a lawsuit
10   with Apple, and also possibly with some
11   of the publishers I can't remember,
12   related to electronic books.
13        Q.    Were you ever deposed in that
14   case?
15        A.    I believe so.
16        Q.    I'm showing you what we've
17   marked as Exhibit 1183, which is a
18   videotaped deposition of
19   Russell Grandinetti, January 28, 2013.
20            Do you recognize that as a
21   deposition you gave in the U.S. vs. Apple
22   case?
23            MR. HUESTON:   Objection.
24            This set of questions and the
25        document doesn't arise out of newly
```



RUSSELL GRANDINETTI                    September 11, 2025
FTC vs AMAZON.COM                                        63

1                          R. Grandinetti

2        produced documents.

3        A.    I'm sorry, is there a

4    distinction between these two, or maybe

5    it is just two copies of the same thing?

6              MR. HUESTON:  I think it's just

7        two copies.

8              MR. WARE:  It's two copies.

9              MR. HUESTON:  Take your time to

10       review this.

11   BY MR. WARE:

12       Q.    Let me rephrase my question.

13             Having seen Exhibit 1183, do

14   you recall whether you were deposed in

15   the U.S. versus Apple case?

16             MR. HUESTON:  Objection.

17             First, that's asked and

18       answered.  His memory does not need

19       to be refreshed.

20             Secondly, this is not a newly

21       produced document, and I object to

22       any questions based on it.

23       A.    It was a long time ago, so I

24   don't remember the questions.

25             So it's hard to look at this



1                        R. Grandinetti

2    transcript and confirm that this was my

3    deposition.

4              But, as I said, I believe that

5    I had been deposed in this case.

6         Q.    Let me show you next what we've

7    marked as Exhibit 1184.

8              (FTC's Exhibit 1184, Document

9         Bates-Numbered

10        AMZN-PRM-FTC-002673494, was marked

11        for identification, as of this date.)

12   BY MR. WARE:

13        Q.    In Exhibit 1184, could you turn

14   to the last page, page 17?

15             MR. HUESTON:    I'm going to

16        object.

17             This document is not newly

18        produced, and, therefore, any

19        questions connected to it do not

20        arise out of newly produced

21        documents.

22        A.    I'm on page 17.

23        Q.    Is that your signature on

24   page 17?

25        A.    It looks like my signature.



RUSSELL GRANDINETTI                    September 11, 2025
FTC vs AMAZON.COM                                        65

```
 1                    R. Grandinetti
 2        Q.    Above your signature, it is
 3    stated:
 4                "I declare under penalty of
 5           perjury the foregoing is true and
 6           correct."
 7                Do you see that?
 8                MR. HUESTON:   Objection.
 9                This question does not arise
10        out of newly produced documents.
11        A.    I see that.
12        Q.    Was that true when you signed
13    this document?
14                MR. HUESTON:   Objection.
15                The question does not arise out
16        of newly produced documents.
17        A.    I believe so, yes.
18        Q.    You can set that aside.
19                (FTC's Exhibit 1105, Amazon
20        Announces Kindle Unlimited E-book
21        Subscriptions, dated July 18, 2014,
22        was marked for identification, as of
23        this date.)
24    BY MR. WARE:
25        Q.    I'm handing you what we've
```



RUSSELL GRANDINETTI                    September 11, 2025
FTC vs AMAZON.COM                                        66

```
 1                   R. Grandinetti
 2   marked as Exhibit 1105.
 3             It's an article titled "Amazon
 4   Announces Kindle Unlimited E-book
 5   Subscriptions," dated July 18, 2014.
 6             Do you recall the launch of
 7   Amazon's Kindle Unlimited e-book
 8   subscription service?
 9             MR. HUESTON:  Objection.
10             The question does not arise out
11       of newly produced documents.
12       A.   I do.
13       Q.   The first paragraph of the
14   article is quoting Russ Grandinetti,
15   senior vice president, Kindle.
16             Does that accurately reflect
17   your role in July 2014?
18             MR. HUESTON:  Objection.
19             The question does not arise out
20       of newly produced documents.
21       A.   Yes.
22       Q.   And you were involved with the
23   Amazon Kindle Unlimited e-book
24   subscription service as senior vice
25   president?
```



1                    R. Grandinetti

2              MR. HUESTON:  Objection.

3              The question does not arise out

4       of newly produced documents.

5              I'm also going to object that

6       this has not been disclosed at any

7       time prior to this deposition by the

8       FTC, nor is it on your exhibit list

9       for trial.

10             THE WITNESS:  Could you please

11      read back the question?

12             ⟨The Record was Read as

13      Follows:

14             "QUESTION:  And you were

15      involved with the Amazon Kindle

16      Unlimited e-book subscription service

17      as senior vice president?"⟩

18             MR. HUESTON:  Same objections.

19      A.    Yes.  My team built and

20   launched the service.

21      Q.    Were you still...

22             Strike that.

23             When did your involvement with

24   Kindle end?

25             MR. HUESTON:  Objection.



RUSSELL GRANDINETTI                         September 11, 2025
FTC vs AMAZON.COM                                          68

1                   R. Grandinetti

2           The question is not based on or

3    arising out of newly produced

4    documents.

5           In fact, it's clear this isn't

6    even a document that has been

7    produced at all by us, so we are way

8    out of bounds with the court order,

9    Counsel.

10          I'm going to object that this

11   is also now an abuse of process.

12          And we're going to move to

13   strike all questions and answers

14   where you have been funneling the

15   same intentional pattern of a

16   violation of the Court's order.

17          THE WITNESS:  I'm sorry, I am

18   going to have to ask you to read back

19   the question one more time, please.

20          (The Record was Read as

21   Follows:

22          "QUESTION:  When did your

23   involvement with Kindle end?")

24          MR. HUESTON:  Same objections.

25   A.     The team that runs the Kindle



1                        R. Grandinetti

2    business has continued to report to me

3    through today.

4         Q.    During your involvement in the

5    e-books litigation, did you receive

6    additional training from Amazon on the

7    antitrust matters that were at issue in

8    that suit?

9              MR. HUESTON:  Objection.

10              The question does not arise out

11         of newly produced documents by

12         Amazon.

13              Vague and abuse of process.

14              The question does not relate to

15         the suit whatsoever.

16         A.    I discussed the case with

17    counsel.

18              MR. HUESTON:  I'm going to

19         advise you not to disclose the nature

20         of those, or anything about those

21         discussions, with counsel.

22    BY MR. WARE:

23         Q.    Next, I will show you a

24    document we've marked as Exhibit 1185.

25



 1                    R. Grandinetti

 2                  (FTC's Exhibit 1185, FTC vs.

 3          Amazon.com, Inc., Docket Entry 1,

 4          July 10, 2014, was marked for

 5          identification, as of this date.)

 6   BY MR. WARE:

 7          Q.    It's Docket Entry 1, July 10,

 8   2014, in FTC versus Amazon.com, Inc.

 9                  Do you recognize this document?

10                  MR. HUESTON:  Objection.

11                  This is not a newly disclosed

12          document from Amazon.

13                  It is, in fact, not a document

14          in the record in this case.

15                  It's an abuse of process.

16                  And I object to any questions

17          relating to it.

18          A.    And the question is?

19                  I'm sorry.

20          Q.    Do you recall this document?

21          A.    I don't recall having seen this

22   document before.

23          Q.    Do you recall whether the FTC's

24   lawsuit against Amazon in 2014 involved

25   Amazon Kindle at all?



RUSSELL GRANDINETTI                          September 11, 2025
FTC vs AMAZON.COM                                          71

```
 1                    R. Grandinetti
 2              MR. HUESTON:  Objection.
 3              I'm going to object to the
 4        question.  It's not arising out of
 5        newly produced documents by Amazon.
 6              I'm also going to continue to
 7        object that this document has not
 8        been disclosed at any time by the
 9        FTC, nor on their exhibit list for
10        trial, nor produced by any party
11        during discovery, and nor have you
12        amended your production or exhibit
13        list through today.
14              THE WITNESS:  Could you repeat
15        the question, please?
16              (The Record was Read as
17        Follows:
18              "QUESTION:  Do you recall
19        whether the FTC's lawsuit against
20        Amazon in 2014 involved Amazon Kindle
21        at all?")
22        A.    Kindle was a name that included
23     things like the tablets we built and
24     other things.  What it applied to changed
25     over time.
```



RUSSELL GRANDINETTI                        September 11, 2025
FTC vs AMAZON.COM                                          72

```
 1                    R. Grandinetti

 2            I have not seen this document

 3    before.  Looking at it quickly, it

 4    doesn't look related to the books

 5    business, so I'm unsure.

 6        Q.    Could you turn to page 2 of the

 7    document, paragraph 6?

 8            In the middle of last line

 9    states:

10            "Amazon has advertised,

11        marketed, promoted, distributed,

12        offered for sale, or sold apps

13        that could be downloaded from

14        Amazon's Appstore and installed on

15        its Kindle Fire and Kindle Fire HD

16        devices."

17            Do you see that?

18            MR. HUESTON:  Objection.

19            This question does not arise

20        out of newly produced documents by

21        Amazon.

22            It is also connected to a

23        document that the FTC has failed to

24        produce prior to this deposition, nor

25        is it on a trial exhibit.
```



```
 1                    R. Grandinetti
 2              I'm also going to object on the
 3       grounds of foundation since the
 4       witness says he has never seen the
 5       document.
 6       A.    It sounded like you read what
 7   it says in paragraph 6.
 8       Q.    Did you have any
 9   responsibilities related to Kindle Fire
10   in 2014?
11              MR. HUESTON:  Objection.
12              The question does not arise out
13       of any newly produced documents by
14       Amazon.
15       A.    I know that my books team built
16   an app that ran on any number of app
17   stores, including Kindle Fire, which was
18   a tablet.
19       Q.    Were you ever informed that the
20   FTC had sued Amazon relating to the
21   Kindle Fire?
22              MR. HUESTON:  Objection on two
23       bases:
24              One, the question doesn't arise
25       out of newly produced documents.
```



```
 1                      R. Grandinetti

 2               Secondly, I'm going to instruct

 3        you not to unless you can answer

 4        without disclosing attorney-client

 5        privileged communications.

 6        A.    I just don't recall if I had

 7   heard about this at the time.

 8        Q.    In your role as senior vice

 9   president, would you expect to be

10   informed when the federal government sues

11   a part of the business that you are

12   responsible for?

13               MR. HUESTON:  Objection.

14               The question does not arise out

15        of newly produced documents.

16               Otherwise, vague and already

17        asked and answered.

18        A.    I don't believe I would

19   characterize what I can see here as a

20   business I was responsible for.

21               The building and manufacture of

22   tablets and the Appstore software were

23   part of a different organization.

24        Q.    So setting aside this document,

25   is it your expectation, as senior vice
```



1                      R. Grandinetti

2    president at Amazon, that you would be

3    informed when the U.S. Federal Government

4    sued a product line that you were

5    responsible for?

6              MR. HUESTON:  Objection.

7              The question does not arise out

8         of newly produced documents by Amazon

9         and, otherwise, vague.

10        A.    If relevant, I would expect to

11   hear about it.

12        Q.    Could you turn to page 11 of

13   Exhibit 1185?

14              Paragraph 33 states, quote:

15              "In numerous instances,

16         defendant has billed parents and

17         other Amazon account holders for

18         children's activities in apps that

19         are likely to be used by children

20         without having obtained the

21         account holders' express informed

22         consent."

23              Did I read that right?

24              MR. HUESTON:  Objection.

25              The question does not arise out



RUSSELL GRANDINETTI                    September 11, 2025
FTC vs AMAZON.COM                                        76

1                      R. Grandinetti

2          of documents newly produced by

3          Amazon.

4                 And, otherwise, there is no

5          foundation with this witness for this

6          document.

7          A.    I think you read that right.

8          Q.    Do you recall receiving any

9     training from Amazon about obtaining

10    users' express informed consent on any

11    products that you were responsible for in

12    2014?

13                MR. HUESTON:  Objection.

14                The question does not arise out

15         of newly produced documents by

16         Amazon.  And, otherwise, vague.

17         A.    I don't recall.

18         Q.    Next, I'll show you what we're

19    marking as Exhibit 1186.

20                (FTC's Exhibit 1186, Docket No.

21         274-36 in the 2014 FTC versus Amazon

22         Matter, dated July 22, 2016, was

23         marked for identification, as of this

24         date.)

25



RUSSELL GRANDINETTI                    September 11, 2025
FTC vs AMAZON.COM                                        77

```
 1                    R. Grandinetti
 2    BY MR. WARE:
 3        Q.    This is Docket No. 274-36 in
 4    the 2014 FTC versus Amazon matter, dated
 5    July 22, 2016.
 6               Have you seen this document
 7    before?
 8               MR. HUESTON:  I'm going to
 9         object.
10               This is not something that was
11         newly produced by Amazon.
12               It has not been produced by the
13         FTC prior to this deposition, nor is
14         it on an exhibit list, nor have we
15         received an amendment showing this on
16         a list.
17               So I object to any questions
18         connected to this document.
19        A.    I don't recall having seen this
20    document before.
21        Q.    Could you turn to page 23 of
22    Exhibit 1186?
23               Starting on line 5, it states,
24    quote:
25               "The Court determines that the
```



RUSSELL GRANDINETTI                          September 11, 2025
FTC vs AMAZON.COM                                          78

1                    R. Grandinetti

2          scope of Amazon's unfair billing

3          practices pertains to all in-app

4          charges made by account users

5          without express, informed

6          authorization."

7              Did I read that correctly?

8              MR. HUESTON:  I'm going to

9        object.

10             This question does not arise

11       from newly produced documents by

12       Amazon.

13             And, otherwise, there's no

14       foundation for this document with

15       this witness.

16       A.    I think you read it correctly.

17       Q.    Do you recall a Federal Court

18  judge ruling that Amazon had been

19  charging consumers without express,

20  informed consent in 2016?

21             MR. HUESTON:  Objection.

22             The question does not arise

23       from newly produced documents.  And,

24       otherwise, vague.

25       A.    I don't recall.



```
 1                    R. Grandinetti
 2      Q.    Do you recall receiving any
 3   training from Amazon in 2016 about
 4   express, informed authorization from
 5   consumers to charge consumers?
 6            MR. HUESTON:  Objection.
 7            The question does not arise
 8       from newly produced documents.  And,
 9       otherwise, vague.
10      A.    I don't recall.
11      Q.    I'll show you what we've marked
12   as Exhibit 1191, which is the Restore
13   Online Shoppers' Confidence Act.
14            (FTC's Exhibit 1191, Restore
15       Online Shoppers' Confidence Act, was
16       marked for identification, as of this
17       date.)
18   BY MR. WARE:
19      Q.    Have you seen this document
20   before?
21            MR. HUESTON:  Objection.
22            The question does not arise
23       from newly produced documents.
24            We've been going for over an
25       hour, so I'd like to take a break.
```



RUSSELL GRANDINETTI                           September 11, 2025
FTC vs AMAZON.COM                                             80

1                        R. Grandinetti

2              If you've got a pending

3      question, you can answer that.

4      A.    I don't recall having seen this

5   document before.

6              MR. HUESTON:  Let's take a

7      break at this time.

8              MR. WARE:  Two more questions.

9      Let me finish up with this line.

10  BY MR. WARE:

11      Q.    Do you recall seeing any

12  version of the Restore Online Shoppers'

13  Confidence Act?

14              MR. HUESTON:  Objection.

15      Vague.

16              And the question does not arise

17      from any newly produced documents by

18      Amazon.

19      A.    I don't recall having seen it.

20              MR. WARE:  Let's go off the

21      record.

22              THE VIDEOGRAPHER:  We're off

23      the record at 11:08 a.m.

24              (Recess taken from 11:08 a.m.

25      to 11:23 a.m.)



```
 1                  R. Grandinetti
 2           THE VIDEOGRAPHER:  We are on
 3      the record at 11:23 a.m.
 4           MR. HUESTON:  I'm going to make
 5      a statement.
 6           Most of this deposition has
 7      been devoted to asking questions
 8      about documents that not only have
 9      not been newly produced by Amazon,
10      but are actually either newly
11      produced by the FTC, or going over
12      grounds and issues that have no
13      connection to newly produced
14      documents.
15           So, Counsel, what I'm going to
16      state is, if you continue to do this,
17      we have no recourse but to adjourn
18      the deposition, because this is, in
19      our view, a gross violation of the
20      judge's order.
21           What I suggest is that, to the
22      extent you have any documents that
23      are actually newly produced, that you
24      prioritize and ask those questions
25      about them now.
```



```
 1                    R. Grandinetti
 2              Because if you continue to just
 3         move forward without discussing any
 4         newly produced documents, we will
 5         adjourn the deposition, and you may
 6         well lose any opportunity to ask
 7         anything else about newly disclosed
 8         documents.
 9              So that's how I suggest that
10         you proceed, because if you continue
11         in this way, we are going to adjourn
12         the deposition.
13              MR. WARE:  We disagree with
14         your interpretation of the Court's
15         order.
16              MR. HUESTON:  What's your
17         interpretation of the Court's order?
18   BY MR. WARE:
19         Q.    Mr. Grandinetti...
20              MR. HUESTON:  Hold on a second.
21              Are you refusing to engage in
22         colloquy as to how you read the
23         Court's order as justifying
24         discussion over documents that we
25         have not produced?
```



```
 1              R. Grandinetti
 2         What is your justification?
 3         MR. WARE:  Mr. Hueston, this is
 4  our deposition.
 5         If you'd like to talk about
 6  issues afterwards, we can, but I'm
 7  going to proceed with the
 8  examination.
 9         MR. HUESTON:  Well, no.  I'm
10  talking about issues that you forced
11  to the fore here by moving beyond
12  what the Court has ordered.
13         And if I'm mistaken about my
14  interpretation of the order, then
15  please correct me or make a statement
16  on the record.
17         MR. WARE:  We view these
18  questions are arising from the
19  sanctioned related material, the
20  70,000 documents that Amazon
21  wrongfully withheld from the FTC
22  through its systematic abuse of
23  privilege and withheld in conduct
24  that the Court found was tantamount
25  to bad faith by Amazon and its
```



1                    R. Grandinetti

2          counsel.

3                MR. HUESTON:  Well, how do you

4          connect documents that haven't been

5          produced at all by Amazon as

6          connected to the Court's order?

7                MR. WARE:  I'm going to

8          proceed.

9    BY MR. WARE:

10         Q.    Mr. Grandinetti, before you,

11   I've marked Exhibit 1112.

12              It is Bates-numbered

13   AMZN-PRM-FTC-001762014, an August 2,

14   2017, email from Russell Grandinetti.

15              (FTC's Exhibit 1112, August 2,

16         2017, Email from Russell Grandinetti,

17         was marked for identification, as of

18         this date.)

19   BY MR. WARE:

20         Q.    Do you recognize this document?

21         A.    I don't recall this email

22   specifically.

23         Q.    Is this an email from you?

24         A.    It does appear that it is.

25         Q.    The subject states:  "Mobile BD



RUSSELL GRANDINETTI                  September 11, 2025
FTC vs AMAZON.COM                                     164

```
 1                    R. Grandinetti
 2           At this time, I'm living in
 3  London, so the time overlap with teams in
 4  the U.S. can make it a little bit harder
 5  to make time than was true when I was in
 6  Seattle.
 7      Q.    Especially on the West Coast.
 8      A.    Yes.  It's a meaningful time
 9  difference.
10      Q.    After November 2021, did you
11  travel to Seattle for work?
12      A.    Yes.
13      Q.    How many times?
14      A.    I didn't have a regular
15  pattern.  My guess, it would have been a
16  couple of times a year.
17            But one, two, three, in any
18  particular year.  There was no rigorous
19  schedule.
20      Q.    So, from November 2021 until
21  today, approximately, you've been from
22  London to Seattle about three times a
23  year?
24      A.    Yes.  Maybe once or twice more
25  in one year, and once or twice less in
```



RUSSELL GRANDINETTI                September 11, 2025
FTC vs AMAZON.COM                                     165

```
 1                    R. Grandinetti
 2   another year, but something on that order
 3   sounds right to me.
 4        Q.    Do you still maintain an office
 5   in Seattle?
 6        A.    I do.
 7        Q.    In the same office you've had
 8   for a number of years?
 9        A.    When I moved into the job that
10   I have today, the international consumer
11   job, that was in 2016, I just moved my
12   stuff into the office of the person who
13   had it before me, and it's never changed.
14        Q.    Are there any in-house lawyers
15   that sit near that office?
16        A.    I think there's one lawyer
17   somewhere down the hall on that floor, at
18   least.  It's certainly possible.
19        Q.    Do you know who that individual
20   is?
21        A.    I think John Morgan was located
22   down the hall from me.
23        Q.    What role does he play within
24   Amazon?
25        A.    He is in-house counsel
```



RUSSELL GRANDINETTI                                September 11, 2025
FTC vs AMAZON.COM                                                   166

```
 1                    R. Grandinetti

 2   primarily covering Amazon's business in a

 3   number of foreign countries; so India,

 4   Japan, Brazil, that kind of thing.

 5       Q.    Did any of that involve Prime?

 6       A.    We have...

 7             Yes.

 8       Q.    Do you still have the same

 9   office in London that you did in

10   November 2024?

11       A.    I believe so, yes.  Yes.

12       Q.    Are there any Amazon in-house

13   lawyers that sit near you there?

14       A.    I'm not sure.  It's a big

15   floor, a lot of people.  So odds are

16   there's a lawyer or some number of them,

17   but I'm not sure.

18       Q.    Could you look back at

19   Exhibit 1163, the bottom of page 2?

20       A.    Sorry, the second page, you

21   said?

22       Q.    Sorry, the bottom of page 1 in

23   Exhibit 1163.

24       A.    Okay.

25       Q.    Again, this is Ms. Leung
```



RUSSELL GRANDINETTI                    September 11, 2025
FTC vs AMAZON.COM                                      180

```
 1                    R. Grandinetti
 2        Q.    Did you have any discussions
 3   after May 6, 2022, about that topic?
 4        A.    Not that I recall.
 5        Q.    I want to hand you a
 6   replacement version of Exhibit 1193 that
 7   we handed out to you a second ago.
 8              There was a printing error.
 9              (FTC's Exhibit 1193, Amazon's S
10        Team as of November 2024, was marked
11        for identification, as of this date.)
12        A.    This one said 1192.
13              You're replacing it with 1193.
14              Do I understand that?
15        Q.    Yes, sorry.
16              Exhibit 1193, do you recognize
17   that as a list of Amazon S team members
18   as of at least November 2024?
19        A.    It looks like a list of S team
20   members to me.
21        Q.    Are you aware of any S team
22   members who have been added since
23   November of 2024?
24        A.    I think it's possible one or
25   two have been added, but I'm not sure.
```



RUSSELL GRANDINETTI                                    September 11, 2025
FTC vs AMAZON.COM                                                     181

```
 1                       R. Grandinetti
 2         Q.     Is that you at number 25,
 3    "Russell Grandinetti"?
 4         A.     Yes.
 5         Q.     Do you know the rationale
 6    behind how this list is ordered?
 7         A.     I don't know.   It appears
 8    alphabetically by first name to me, but
 9    maybe there's something else that's
10    driving the order.
11         Q.     Of the S team members as of
12    November 2024, who on this list has been
13    at Amazon longer than you have?
14         A.     Andy Jassy.
15                I think that's it.
16         Q.     Did you have a chance to look
17    through the whole list?
18         A.     Let me just take one more look.
19                Yes, I think just Andy.
20         Q.     What's his role at Amazon?
21         A.     He's the CEO.
22         Q.     Approximately how much earlier
23    did he start at Amazon than you?
24         A.     Five or six months, I believe.
25         Q.     That was in the late 1990s?
```



RUSSELL GRANDINETTI                           September 11, 2025
FTC vs AMAZON.COM                                            182

```
 1                    R. Grandinetti

 2      A.    My recollection is that Andy

 3   started in May of '97, and I started in

 4   January of 1998.

 5      Q.    How are those dates memorable

 6   to you given they're so long ago?

 7      A.    Well, when I started, I

 8   remember when I moved from New York City.

 9   So just that time, for whatever reason,

10   just stuck in my mind.

11            And then the company was very

12   small back then.  And I remember Andy

13   telling me that he arrived shortly after

14   business school ended the prior year.  So

15   that's my guess at timing.

16      Q.    Approximately how many

17   employees were with the company when you

18   joined?

19      A.    A bit over 100.

20      Q.    Approximately how many people

21   does the company employ today?

22      A.    I think 1.5-, 1.6 million.

23      Q.    You can set 193 aside.

24

25
```



RUSSELL GRANDINETTI                    September 11, 2025
FTC vs AMAZON.COM                                    194

```
 1                    R. Grandinetti
 2    participate in some of that agenda, so
 3    there might be a lot of activity around
 4    that particular visit.
 5                Then weeks or months will go
 6    by, and Andy and I might not have any
 7    particular dialogue.
 8        Q.    Have you ever had electronic
 9    communications with him?
10        A.    Of course.
11        Q.    What methods do you use to
12    communicate with him electronically?
13        A.    Typically, email.  Perhaps
14    Chime.  We had a messaging app we use
15    internally called Wickr.  But, typically,
16    email.
17        Q.    What is Wickr?
18        A.    It a messaging app like Chime
19    or Slack.
20        Q.    When did you start using Wickr?
21        A.    I can't remember when the
22    company rolled it out.
23                There was a time where...
24                It might have been a company we
25    bought.  Although even that, I'm not
```



RUSSELL GRANDINETTI                    September 11, 2025
FTC vs AMAZON.COM                                       195

```
 1                    R. Grandinetti

 2   totally sure.

 3             But it was an internal

 4   messaging application that was launched

 5   at Amazon, at some point.

 6      Q.    Were you using the enterprise

 7   version of Wickr?

 8      A.    I know the app changed.  And I

 9   can remember reinstalling it once, but I

10   can't remember what the names of the

11   different instances were.

12             The distinction of which one is

13   enterprise or not, I'm sorry, it's just

14   not clear to me.

15      Q.    Let me try to rephrase.

16             Was the Wickr app that you used

17   something that you had individually

18   downloaded from a third party, or

19   something that you received or accessed

20   through some type of Amazon IT services?

21      A.    My recollection it was Amazon

22   IT services, I believe.

23      Q.    Did anyone ever request that

24   you communicate on Wickr?

25      A.    I mean, it was a method, I
```



RUSSELL GRANDINETTI                          September 11, 2025
FTC vs AMAZON.COM                                          196

```
1                    R. Grandinetti
2    think, available to people.
3              My common methods of
4    communication were typically Chime or
5    email.
6        Q.    Who did you communicate with
7    using Wickr?
8        A.    It wasn't something I used
9    commonly, and I'm not sure of the whole
10   list of people who might have used.
11              I know that Drew Herdener in
12   communications used it sometime.
13              I think HR, at times, might
14   message me on Wickr.
15              I mean, those are just some
16   things that came to mind, but I'm sure
17   there's more.
18       Q.    Did you ever communicate with
19   Andy Jassy on Wickr?
20       A.    Yes, I believe so.
21       Q.    Did you ever communicate with
22   Neil Lindsay on Wickr?
23       A.    I don't recall having
24   communicated with Neil via Wickr.
25       Q.    Did you ever communicate with
```



RUSSELL GRANDINETTI                              September 11, 2025
FTC vs AMAZON.COM                                                197

```
 1                   R. Grandinetti
 2    Jamil Ghani on Wickr?
 3        A.    Not that I recall.
 4        Q.    Do you recall the general time
 5    frame in which you were...
 6                Strike that.
 7                Do you recall the general time
 8    frame in which you started using Wickr
 9    for Amazon communications?
10        A.    I don't.
11        Q.    Did you ever use the
12    disappearing messages feature on Wickr?
13        A.    I don't recall going out of my
14    way to turn something on or off.
15                I don't know if there are
16    default modes for it, but I don't recall
17    going out of my way to use a feature like
18    that.
19        Q.    Do you recall messages
20    disappearing from Wickr that you didn't
21    actively delete?
22        A.    I didn't use it frequently
23    enough to have a clear recollection of
24    such a thing.
25        Q.    How frequently did you use it?
```



RUSSELL GRANDINETTI                          September 11, 2025
FTC vs AMAZON.COM                                          198

```
 1                    R. Grandinetti
 2        A.    Again, sporadically.   More
 3   often, I might receive a message from
 4   someone than send it.
 5        Q.    Have you ever manually deleted
 6   messages from Wickr?
 7        A.    Not that I can think of.
 8        Q.    Can you think of any messages
 9   you may have manually deleted from Wickr
10   related to Amazon Prime?
11        A.    No.
12        Q.    Were you ever instructed to
13   stop using Wickr?
14        A.    Not that I can recall.
15        Q.    Do you recall any instructions
16   from Amazon to not use the disappearing
17   messages feature on Wickr?
18             MR. HUESTON:   Objection.
19        Foundation.   Vague.
20        A.    I don't recall communication on
21   that topic.
22        Q.    Have you communicated with
23   anyone at Amazon using the messaging app
24   Signal?
25        A.    I did.   At some earlier period,
```



```
 1                      R. Grandinetti
 2    it was another messaging app that
 3    sometimes people used.
 4         Q.    What do you mean by "earlier
 5    period"?
 6         A.    It's hard to remember.  It
 7    feels like five-plus years ago, something
 8    on that order of time frame.
 9         Q.    Was that the last time you used
10    Signal to communicate with anyone at
11    Amazon?
12         A.    I haven't used Signal in, I
13    think, years.
14         Q.    When was the last time you used
15    Wickr to communicate with anyone at
16    Amazon?
17         A.    Maybe in the last couple of
18    months, but I'm not sure.  It's not a
19    common mode of communication.
20         Q.    Have you ever use a messaging
21    application called Telegram?
22         A.    I think I downloaded it on my
23    phone once just because I had heard about
24    it in the world, generally.
25              I'm not sure if there was any
```



RUSSELL GRANDINETTI                                September 11, 2025
FTC vs AMAZON.COM                                                  200

```
 1                      R. Grandinetti

 2   other motivation for why I did.

 3              I can remember it tried to

 4   absorb all my contacts or something, and

 5   I was unsure about how useful it would

 6   be.  And I don't think I used it further

 7   after that.

 8       Q.    Did you ever communicate with

 9   anyone at Amazon using Telegram?

10       A.    I don't believe I did.

11       Q.    When was that?

12       A.    Several years ago.

13              It's one of those, like, I

14   might have had an Italian friend outside

15   of Amazon that liked to use it or

16   something.  I seem to recall something

17   like that.

18              But it didn't seem like it was

19   anything for me, so it wasn't something I

20   used from that point.

21       Q.    Let's turn back to

22   Exhibit 1175.

23              And the document that's

24   attached to this email to you begins on

25   page ending 983.
```



R. Grandinetti

CERTIFICATE

STATE OF NEW YORK  )
                   :  ss
COUNTY OF NEW YORK )


          I, THOMAS A. FERNICOLA, a Registered

Professional Reporter and Notary Public within and for

the State of New York, do hereby certify:

          That RUSSELL GRANDINETTI, the witness whose

deposition is herein before set forth, was duly sworn by

me, and that such deposition is a true record of the

testimony given by such witness on September 11, 2025.

          I further certify that I am not related to any

of the parties to this action by blood or marriage, and

that I am in no way interested in the outcome of this

matter.

          IN WITNESS WHEREOF, I have hereunto set my

hand this 12th day of September 2025.


          _____

          THOMAS A. FERNICOLA, RPR

# Exhibit 4

**COVINGTON**

BEIJING  BOSTON  BRUSSELS  DUBAI  FRANKFURT

JOHANNESBURG  LONDON  LOS ANGELES  NEW YORK

PALO ALTO  SAN FRANCISCO  SEOUL  SHANGHAI  WASHINGTON

Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
T +1 202 662 6000

**Via Electronic Mail**                                       August 19, 2025

Evan Mendelson
Division of Enforcement
Federal Trade Commission
600 Pennsylvania Ave., N.W., Suite CC-9528
Washington, D.C. 20580
emendelson@ftc.gov

Re: *FTC v. Amazon.com, Inc.*, No. 2:23-cv-0932-JHC (W.D. Wash.)

Counsel:

We write in response to your August 18, 2025 Amended Second Notice of Rule 30(b)(6) Deposition to Amazon and in advance of our meet-and-confer on August 20.

We first note that the Court's June 30, 2025 Order permits the FTC to conduct additional discovery arising out of "Amazon's recent document production." *See* Dkt. 371 (the Court's Order"). As we explain in further detail below, many of the topics in the FTC's Second Notice do not reflect any clear connection to the March and April 2025 document production referenced in the Court's Order. Additionally, many of the topics seek testimony that is cumulative and duplicative of corporate and fact witness testimony the FTC has previously obtained, as well as information Amazon previously produced in response to the FTC's numerous discovery requests in this litigation and the multi-year investigation that preceded it.

Amazon raises the below objections for each topic and provides proposals to address these concerns while still permitting the FTC to obtain the discovery it seeks in a reasonable manner. Amazon's responses in this letter are intended to foster a productive conferral process. Amazon does not waive, and specifically reserves, any and all objections and rights.

**Topic 32 (Cancellation Data Excluding Cancellation Flow)**

Topic 32, seeking certain datapoints regarding Prime customer cancellations, bears no apparent connection to Amazon's recent document production referenced in the Court's Order. *See* Dkt. 371. The topic also appears to seek datapoints that the FTC already has or could reasonably determine from Amazon's voluminous data productions or Amazon's responses to the FTC's Interrogatory 10, which sought "the total number of instances in which Prime members terminated their membership or turned auto-renewal off" via various methods. *Compare* Interrogatory 10 with Proposed 30(b)(6) Topic 32(b), seeking "[t]he number of annual successful

**COVINGTON**

Evan Mendelson
August 19, 2025
Page 2

cancellations of Prime subscriptions by Amazon made directly as a result of the subscriber's request" to cancel a Prime subscription outside of the Prime cancel flow.

Similarly, Amazon has already produced the data called for in Topics 32(a) and (c) in its *CS Contacts*, *Chat Bot Contacts*, and *Self-Cancel Emails v2* datasets.  It is not clear what additional datapoints Amazon can provide beyond the data it has already produced.  Amazon is willing to meet and confer regarding this topic to understand what incremental datapoints the FTC seeks that cannot be discerned from the data productions and discovery responses Amazon has already served.

Additionally, Amazon is concerned that an oral deposition regarding data topics that are inherently complex and can easily be confused in oral communications is likely to impose a significant burden on all parties with no offsetting benefit.  For that reason, reserving all rights and without waiving any objections to this topic, Amazon proposes to respond to any 30(b)(6) topics seeking specific datapoints in writing, rather than preparing a witness to provide oral testimony, consistent with how the parties agreed to resolve the FTC's prior 30(b)(6) topics 1-8.

**Topic 33 ("Welcome to Prime" Emails)**

This topic bears no apparent connection to the Court's Order and appears to seek testimony on a topic that the FTC has been aware of since the beginning of the investigation that preceded this litigation. *See, e.g.*, May 24, 2021 Langner Letter to K. Johnson at 5-8 (describing the Prime post-sign-up confirmation communications Amazon provides to customers, stating that "Amazon also sends the customer a welcome email," and providing images of the Prime Confirmation Welcome Screen, the Prime Confirmation Mobile Notification, and the Prime welcome email).  The FTC could have noticed this as a deposition topic well before Amazon's document productions referenced in the Court's Order, but chose not to do so.  Please provide your basis for seeking oral testimony on this topic under the Court's Order.

The topic is also cumulative and duplicative of prior corporate and fact witness testimony and numerous documents Amazon has produced discussing Prime welcome emails and similar communications.  It is also vague and ambiguous in its use of "drafting," "implementation," and "notifications."  It is also unreasonably broad, including in its failure to provide any time period restriction on the topic.

Nevertheless, Amazon is likely willing to designate a witness for further oral testimony on this topic, provided that the FTC can reasonably narrow and revise the topic to identify the incremental testimony it seeks.

**Topic 34 (Time Spent in Cancellation Flow and on Amazon Website Post-Cancellation)**

Similar to Topic 32, Topic 34 bears no apparent connection to Amazon's March and April document productions and it is thus outside the scope of the Court's Order.  Moreover, it seeks datapoints that are already within the FTC's possession or are reasonably ascertainable through Amazon's data production.

**COVINGTON**

Evan Mendelson
August 19, 2025
Page 3

Topic 34(a) seeks "information" regarding the time it takes a customer who enters the Prime cancel flow to cancel or pause their Prime subscription. Without conceding that the time that passes between a customer entering the cancel flow and pausing or canceling their Prime subscription is indicative of the time the customer spent actively navigating the cancel flow or attempting to pause or cancel their membership, Amazon's *Cancel Flow Data* dataset already provides timestamps of various customer actions taken with respect to the Prime cancel flow, including entering the flow and pausing or canceling a subscription. Thus, the FTC can calculate the length of time for a variety of customer actions based on the voluminous data Amazon has already produced.

Moreover, it is not clear what information Topic 34(b) seeks beyond what is reflected in Amazon's *Cancel Flow Data, Amazon Site Visits, and Prime Central Visits datasets.* As Amazon has repeatedly explained, significant time and resources are required to scope, pull, and produce granular customer data, and Amazon does not keep many of the specific datapoints the FTC has inquired about in the ordinary course of business. It is not reasonable—and is potentially impossible—for Amazon to timely identify, scope, pull, and produce the data required to respond to Topic 34(b) as written, and the volume would be massive and unwieldy.

Amazon is willing to meet and confer to understand what information the FTC seeks in both subparts of Topic 34 that is not already in its possession, and regarding the scope of Topic 34(b). Reserving all rights and without waiving any objections to this topic, Amazon proposes to respond to any 30(b)(6) topics seeking specific datapoints in writing rather than preparing a witness to provide oral testimony.

### Topic 35 ("Prime Maximizer")

Amazon objects to this topic as untimely on the grounds that Amazon produced the document cited in the topic in full in July 2024. That production also included a copy of the child attachment with only one paragraph out of fifteen pages redacted. *See* AMZN-PRM-FTC-001604954. Amazon also produced additional materials referring to "Prime Maximizer" prior to the March and April 2025 document production referenced in the Court's Order. *See, e.g.*, AMZN-PRM-FTC-000207222 (produced in March 2024 reflecting email chain with subject line "Project Maximizer status report 6/13"). For that reason, the topic does not arise out of newly produced documents as required by the Court's Order and is thus improper. The FTC could have noticed this as a deposition topic well before Amazon's document productions referenced in the Court's Order, but chose not to do so.

Amazon also objects to this topic as vague, including in its use of the phrases "efforts," "any part," and "results," the meanings of which are ambiguous. Amazon also objects to the topic as duplicative of prior testimony, discovery responses, and other produced materials regarding Project Nostradamus.

Nevertheless, Amazon is likely willing to designate a witness for oral testimony on this topic, provided that the FTC can reasonably narrow and revise the topic to identify the incremental testimony it seeks.

**COVINGTON**

Evan Mendelson
August 19, 2025
Page 4

### Topic 36 ("UPDP Repeat Customers" Flow)

Topic 36 appears to seek the exact testimony the FTC previously sought and obtained through prior 30(b)(6) Testimonial Topic T, including in its citation of the exact same document it cited in Topic T. Moreover, that document is duplicative of information Amazon produced to the FTC during the investigation that preceded this litigation; Amazon produced a nearly identical depiction of the UPDP depicted in AMZN-PRM-FTC-002713961 in October 2022. *See* AMZN_00082665 at -2669. The FTC has already obtained corporate and fact witness testimony on this topic, and has already indicated it intends to question at least two additional fact witnesses in upcoming depositions on the topic. Further corporate testimony would be duplicative and unduly burdensome when the FTC already had the opportunity to depose Amazon's corporate designee on this topic.

Amazon is willing to designate Lisa Leung's prior deposition testimony on this topic. Alternatively, Amazon is likely willing to designate a witness for further oral testimony on this topic, provided that the FTC can reasonably narrow and revise the topic to identify the incremental testimony it seeks.

### Topic 37 (Grandinetti's Knowledge of the Cancellation Flow)

This topic is vague, unreasonably broad, and appears to seek testimony that is duplicative of substantial testimony the FTC has already obtained from Amazon and numerous fact witnesses, including from Mr. Grandinetti in both his investigational hearing and deposition. *See, e.g.*, Grandinetti IH Tr. (2022-12-02) at 70:18-19 (Q: You are familiar with the Iliad cancellation flow? A: No, not very.); Grandinetti Dep. Tr. (2024-11-13) at 30:14-24 (A: I don't recall being involved in any detailed work around Prime cancellation.). It is unclear what additional testimony the FTC seeks beyond what it has already obtained. The topic is unduly burdensome and unreasonably cumulative and duplicative on that basis.

The topic also exceeds the scope of Rule 30(b)(6), which authorizes discovery of matters within the *corporation's* knowledge. Topic 41, seeking testimony regarding an *individual's* knowledge, is outside the scope of 30(b)(6) and is thus improper.

Nevertheless, Amazon is willing to designate prior testimony to address this topic. Alternatively, Amazon is likely willing to designate a witness for further oral testimony on this topic, provided that the FTC can reasonably narrow and revise the topic to identify the incremental testimony it seeks.

### Topic 38 (Instructions regarding Privilege Markings and Destruction of Documents)

This topic is vague, ambiguous, and unduly burdensome. It is also improper, including to the extent that it seeks disclosure of information protected by attorney-client or work-product privilege. *See Utica Mut. Ins. Co. v. Lifequotes of America, Inc.*, 2011 WL 611667 at *4 (E.D. Wa. Feb. 10, 2011) (disallowing 30(b)(6) deposition topics that "will inevitably lead to attorney-client privileged" information). It is also improper to the extent it seeks testimony not relevant to any

**COVINGTON**

Evan Mendelson
August 19, 2025
Page 5

claims in this case. Nevertheless, Amazon is willing to provide a witness for further oral testimony on this topic.

### Topic 39 (Cancellation Surveys)

This topic is vague, including in its use of the phrase "the '*existing* cancellation survey,'" and unreasonably broad. (emphasis added). It is also largely duplicative of the FTC's prior Testimonial Topic A/10, which sought detailed testimony regarding various iterations of Amazon's cancellation survey—including Amazon's use of those surveys. *See* prior 30(b)(6) Testimonial Topic 10(f)-(g). The topic is also untimely, as Amazon produced documents as far back as the investigation that discussed the prospect of adding a question to the Prime cancellation survey regarding COVID-19. *See, e.g.*, AMZN_00022071. For that reason, the topic does not arise out of newly produced documents as required by the Court's Order. The FTC could have noticed this as a deposition topic well before Amazon's document productions referenced in the Court's Order, but chose not to do so.

Amazon is willing to designate prior testimony on this topic. Alternatively, Amazon is likely willing to designate a witness for oral testimony on this topic, provided that the FTC can reasonably narrow and revise the topic to identify the incremental testimony it seeks.

### Topic 40 (Responsibilities of In-House Counsel)

This topic is vague and ambiguous in its use of "Responsibilities." It is also identical to the text of the FTC's Interrogatory No. 20 to Amazon, served on July 19. This is abusive, unduly burdensome, and serves no purpose other than to manufacture duplicative discovery obligations for Amazon.

Nevertheless, Amazon is likely willing to designate a witness for further oral testimony on this topic, provided that the FTC can reasonably narrow and revise the topic to identify the incremental testimony it seeks from the deposition as compared to its Interrogatory No. 20 to Amazon.

### Topic 41 ("Abandoned Checkouts")

Amazon objects to this topic as overbroad, unduly burdensome, and vague and ambiguous, including in its use of the terms "revenue," "prevalence," "frequency," and "rationale." The topic is also untimely and seeks testimony that is cumulative and duplicative of substantial testimony the FTC has already obtained and discovery responses Amazon has previously served. Indeed, the FTC has questioned witnesses about so-called "abandoned checkouts" dating back to the investigation that preceded this litigation—including Amazon's corporate designee on enrollment topics. *See, e.g.*, Sibay IH Tr. (2022-11-29) at 201:2-202:3; Davidai IH Tr. (2022-11-30) at 138:13-141:15; Corp. IH Tr. (Leung – Enrollment) at 198:5-205:9.

Moreover, Amazon previously produced multiple documents that reflect portions of the email thread reflected in AMZN-PRM-FTC-002714280 well before the March and April 2025 document production referenced in the Court's Order. *See* AMZN-PRM-FTC-002329201 and AMZN-PRM-FTC-002192521 (both produced in July 2024). For these reasons, the topic does not

**COVINGTON**

Evan Mendelson
August 19, 2025
Page 6

<mark>arise out of newly produced documents as required by the Court's Order.</mark>  The FTC could have noticed this as a deposition topic well before Amazon's document productions referenced in the Court's Order, but chose not to do so.

Nevertheless, Amazon is likely willing to designate a witness for further oral testimony on this topic, provided that the FTC can reasonably narrow and revise the topic to identify the incremental testimony it seeks.

\*      \*      \*

We look forward to discussing our responses and proposals.  Amazon reserves all rights.

Sincerely,

*/s/ Laura Flahive Wu*
Laura Kim
John Graubert
John Hall
Laura Flahive Wu
Stephen Anthony
Megan Rodgers
Anders Linderot

# Exhibit 5

# COVINGTON

BEIJING  BOSTON  BRUSSELS  DUBAI  FRANKFURT
JOHANNESBURG  LONDON  LOS ANGELES  NEW YORK
PALO ALTO  SAN FRANCISCO  SEOUL  SHANGHAI  WASHINGTON

Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC  20001-4956
T  +1 202 662 6000

**Via Electronic Mail**                                     September 18, 2025

Evan Mendelson
Division of Enforcement
Federal Trade Commission
600 Pennsylvania Ave., N.W., Suite CC-9528
Washington, D.C. 20580
emendelson@ftc.gov

                Re:  *FTC v. Amazon.com, Inc.*, No. 2:23-cv-0932-JHC (W.D. Wash.)

Counsel:

        We write regarding the September 11, 2025 supplemental 30(b)(6) deposition of Amazon.
As explained below, Amazon will object to the FTC using certain testimony obtained during the
supplemental 30(b)(6) deposition at trial on the basis that the FTC exceeded the scope of the
Court's discovery order permitting the deposition.  *See* Dkt. 371 at 1.

        As you know, the Court permitted the FTC to conduct an additional 90 days of discovery
"arising out of Amazon's recent document production," *id.*, referring to the document productions
Amazon made "after March 19, 2025," as defined in the FTC's own motion for sanctions, *see* Dkt.
286 at 4.  Despite this specific restriction, the FTC proceeded to notice ten vague and overbroad
topics for testimony during Amazon's supplemental 30(b)(6) deposition—many of which bore no
apparent connection to Amazon's Spring 2025 document productions, and are topics on which
the FTC already did or could have obtained Amazon's corporate testimony in its prior 30(b)(6)
deposition or through other formal discovery requests.

        For example, as drafted, Topic 33 involves a topic—"Welcome to Prime" emails and related
communications—of which the FTC has been aware since the beginning of its pre-suit
investigation, and which the FTC could have easily noticed as a topic for testimony in Amazon's
first 30(b)(6) deposition taken on May 5-6, 2025.  *See* May 24, 2021 Letter from B. Langner to J.
Cohen (Amazon response to the FTC's March 16, 2021 Civil Investigative Demand, describing the
"Welcome to Prime" emails and mobile notifications sent to Prime subscribers upon enrollment
in Prime).  The FTC did not even attempt to cite any recently produced documents when noticing
this as a topic for corporate testimony in Amazon's supplemental 30(b)(6) deposition.  This topic
plainly exceeds the scope of the Court's order.

        By letter dated August 19, 2025 and during the parties' August 20 meet-and-confer,
Amazon objected to the proposed topics as vague, overbroad, and outside the scope of the Court's
order.  *See* Amazon August 19 Letter to FTC.  However, the FTC refused to revise the overbroad

**COVINGTON**

Evan Mendelson
September 18, 2025
Page 2

topics or otherwise provide any explanation of how they related to Amazon's recent document production, stating only by email that "the topics we have listed in our Second 30(b)(6) Notice are both sufficiently narrow and arising out of the sanctions-based discovery."  *See* August 26, 2025 Email from Olivia Jerjian.

The supplemental 30(b)(6) deposition record now confirms that the vast majority of that deposition was spent on topics that were *not* connected to the "sanctions-based discovery."  In the two hours it spent questioning Amazon's designee on Topic 32, Benjamin Angel, the FTC did not introduce *any* documents from Amazon's recent documents productions—or even from this litigation.  Indeed, the only exhibits the FTC introduced were documents Amazon produced during the pre-suit *investigation*, in 2021 and 2022; the FTC has had them for years.

It was not until the fifth hour of testimony, during the testimony of Amazon's second witness, Subbu Palaniappan, that the FTC introduced *any* document that was part of Amazon's Spring 2025 document productions.  *See* Commission Exhibits 69 and 1016 (color version of Exhibit 69), 582, and 1015.  Even then, of the three documents the FTC introduced as exhibits from Amazon's Spring 2025 document productions, the FTC had already obtained Amazon corporate testimony regarding one (introduced as Commission Exhibits 69 (black & white version) and 1016 (color version)), because the document had been cited in a testimonial topic noticed for Amazon's prior 30(b)(6) deposition in May 2025.  *Compare* prior 30(b)(6) Testimonial Topic T *with* supplemental 30(b)(6) Topic 36 (both citing AMZN-PRM-FTC-002713961).  Additionally, the FTC was in possession of the substance of Exhibit 582 as of July 2024 when Amazon produced it with one paragraph out of fifteen pages redacted.  *See* Amazon August 19 Letter to FTC.  The redactions were removed from the version of the document produced in Amazon's Spring 2025 document productions, but the FTC did not ask a single question in the deposition about the material that had been previously redacted.  In other words, the FTC questioned Mr. Palaniappan about portions of a document that had been in its possession for well over a year.  Finally, Amazon had produced multiple documents with portions of the email thread reflected in the Exhibit 1015 in July 2024, well before its Spring 2025 document productions referenced in the Order.  *See id.*

During Mr. Palaniappan's testimony, the FTC introduced eight Amazon-produced documents that were not part of Amazon's Spring 2025 document productions.  *See* Commission Exhibits 1, 110, 135, 1008, 1009, 1012, 1014, and 1018.  The FTC went as far as to introduce a document that the FTC itself had produced on behalf of a consumer declarant in this litigation.  *See* Commission Exhibit 1008.  When counsel for Amazon objected to the FTC-produced document as outside the scope of the Court's order, the FTC conceded that the FTC had produced the document and stated that "this is on the defendant's trial exhibit list"—acknowledging that the FTC was improperly using the supplemental 30(b)(6) deposition to prepare for trial on topics that had no connection to Amazon's recent document production.  *See* September 11, 2025 30(b)(6) Rough Tr. (Palaniappan) at 33:2-3.

The FTC exceeded the scope of the Court's order by spending a significant portion of its time on the record questioning Mr. Angel and Mr. Palaniappan about documents with no connection to Amazon's recent document productions.  Amazon intends to object to the FTC's use at trial of corporate testimony obtained from Mr. Angel and Mr. Palaniappan in the supplemental 30(b)(6) deposition of Amazon on that basis.  *See G.P.P., Inc. v. Guardian Prot. Prods.*, 2020 WL

**COVINGTON**

Evan Mendelson
September 18, 2025
Page 3

3868461, at *4 (E.D. Cal. July 9, 2020) (denying motion to compel where discovery request "exceed[ed] the scope of the reopened discovery.").

Please let us know your availability to meet and confer regarding this matter.

*     *     *

As always, Amazon remains willing to meet and confer regarding this and any other matter. Amazon reserves all rights.

Sincerely,

_/s/ Laura Flahive Wu_
Laura Kim
John Graubert
John Hall
Laura Flahive Wu
Stephen Anthony
Megan Rodgers
Anders Linderot

# Exhibit 6

| From: | Jerjian, Olivia |
|---|---|
| To: | Johnson, Haley; Capuano, Marc; Flahive Wu, Laura; Joseph A. Reiter; Kelly, Kevin; Kim, Laura; Graubert, John; Anthony, Stephen; Hall, John; Linderot, Anders; Rodgers, Megan; Cassidy O'Sullivan; Decena, Jeaneth; John C. Hueston; Moez M. Kaba; Amazon/FTC [INT]; Jim Howard; Kenneth Payson; Chan, Gina; jennifergreen@dwt.com; Theo Lesczynski; Karen Ding |
| Cc: | Cohen, Jonathan; Ware, Jonathan; Mendelson, Evan; Sifuentes, Rachel; Tang, Jeffrey; MacDonald, Colin; Mejia-Portillo, Johana; Taylor, Phoebe CTR; Shelton, Chamaree; Fingles, Jennifer; Freedman, Eli |
| Subject: | RE: FTC"s Second Notice of 30(b)(6) Deposition of Amazon |
| Date: | Tuesday, August 26, 2025 3:30:27 PM |
| Attachments: | image001.png |

==[EXTERNAL]==

Counsel,

==The topics we have listed in our Second 30(b)(6) Notice are both sufficiently narrow and arising out of the sanctions-based discovery.==

We are willing to make the following two adjustments:

- For Topic 34, we can accept a written response to the following question: does Amazon track the time a consumer spends within the Iliad Cancellation Flow? If you provide a certified response to this yes/no question no later than September 5, we will remove Topic 34.

- For Topic 32, you stated that "[t]he topic [ ] appears to seek datapoints that the FTC already has or could reasonably determine from Amazon's voluminous data productions or Amazon's responses to the FTC's Interrogatory 10, which sought 'the total number of instances in which Prime members terminated their membership or turned auto-renewal off' via various methods." Aug. 19, 2025 Letter from Amazon to FTC, at 1.  You also stated that "Amazon has already produced the data called for in Topics 32(a) and (c) in its CS Contacts, Chat Bot Contacts, and Self-Cancel Emails v2 datasets." *Id*. at 2. We will remove this topic if Amazon 1) supplements the referenced data to present and 2) provides a certified response that includes the numbers sought in Topics 32.a. through 32.c., no later than September 5.

Thanks,
Olivia

Olivia C. Jerjian
Federal Trade Commission
Bureau of Consumer Protection
Division of Enforcement
600 Pennsylvania Avenue, NW | Washington DC 20580
202.326.2749
ojerjian@ftc.gov

**From:** Johnson, Haley <HJohnson@cov.com>
**Sent:** Tuesday, August 19, 2025 11:07 PM
**To:** Jerjian, Olivia <ojerjian@ftc.gov>; Capuano, Marc <MCapuano@cov.com>; Flahive Wu, Laura <lflahivewu@cov.com>; Joseph A. Reiter <jreiter@hueston.com>; Kelly, Kevin <Kkelly@cov.com>; Kim, Laura <LKim@cov.com>; Graubert, John <jgraubert@cov.com>; Anthony, Stephen <santhony@cov.com>; Hall, John <jhall@cov.com>; Linderot, Anders <ALinderot@cov.com>; Rodgers, Megan <mrodgers@cov.com>; Cassidy O'Sullivan <cosullivan@hueston.com>; Decena, Jeaneth <JDecena@cov.com>; John C. Hueston <jhueston@hueston.com>; Moez M. Kaba <mkaba@hueston.com>; Amazon/FTC [INT] <amazon-ftc@hueston.com>; Jim Howard <jimhoward@dwt.com>; Kenneth Payson <kennethpayson@dwt.com>; Chan, Gina <ginachan@dwt.com>; jennifergreen@dwt.com; Theo Lesczynski <theolesczynski@dwt.com>; Karen Ding <kding@hueston.com>
**Cc:** Cohen, Jonathan <jcohen2@ftc.gov>; Ware, Jonathan <jware1@ftc.gov>; Mendelson, Evan <emendelson@ftc.gov>; Sifuentes, Rachel <rsifuentes@ftc.gov>; Tang, Jeffrey <jtang@ftc.gov>; MacDonald, Colin <cmacdonald@ftc.gov>; Mejia-Portillo, Johana <jmejiaportillo@ftc.gov>; Taylor, Phoebe CTR <ptaylor3@ftc.gov>; Shelton, Chamaree <cshelton@ftc.gov>; Fingles, Jennifer <jfingles@ftc.gov>; Freedman, Eli <efreedman@ftc.gov>
**Subject:** RE: FTC's Second Notice of 30(b)(6) Deposition of Amazon

Counsel,

In advance of tomorrow's meet-and-confer, please see the attached correspondence.

Thanks,

Haley

**Haley E. Johnson**

Covington & Burling LLP
Salesforce Tower, 415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Cell: (979) 204-4543 | Office: (415) 591-7031
hjohnson@cov.com
www.cov.com

---

**From:** Johnson, Haley
**Sent:** Monday, August 18, 2025 5:14 PM
**To:** 'Jerjian, Olivia' <ojerjian@ftc.gov>; Capuano, Marc <MCapuano@cov.com>; Flahive Wu, Laura <lflahivewu@cov.com>; Joseph A. Reiter <jreiter@hueston.com>; Kelly, Kevin <Kkelly@cov.com>; Kim, Laura <LKim@cov.com>; Graubert, John <jgraubert@cov.com>; Anthony, Stephen <santhony@cov.com>; Hall, John <jhall@cov.com>; Linderot, Anders <ALinderot@cov.com>; Rodgers, Megan <mrodgers@cov.com>; Cassidy O'Sullivan <cosullivan@hueston.com>; Decena,

Jeaneth <JDecena@cov.com>; John C. Hueston <jhueston@hueston.com>; Moez M. Kaba <mkaba@hueston.com>; Amazon/FTC [INT] <amazon-ftc@hueston.com>; Jim Howard <jimhoward@dwt.com>; Kenneth Payson <kennethpayson@dwt.com>; Chan, Gina <ginachan@dwt.com>; jennifergreen@dwt.com; Theo Lesczynski <theolesczynski@dwt.com>; Karen Ding <kding@hueston.com>
**Cc:** Cohen, Jonathan <jcohen2@ftc.gov>; Ware, Jonathan <jware1@ftc.gov>; Mendelson, Evan <emendelson@ftc.gov>; Sifuentes, Rachel <rsifuentes@ftc.gov>; Tang, Jeffrey <jtang@ftc.gov>; MacDonald, Colin <cmacdonald@ftc.gov>; Mejia-Portillo, Johana <jmejiaportillo@ftc.gov>; Taylor, Phoebe CTR <ptaylor3@ftc.gov>; Shelton, Chamaree <cshelton@ftc.gov>; Fingles, Jennifer <jfingles@ftc.gov>; Freedman, Eli <efreedman@ftc.gov>
**Subject:** RE: FTC's Second Notice of 30(b)(6) Deposition of Amazon

Hi Olivia,

We are available to meet and confer regarding the 30(b)(6) topics at 2pm ET on Wednesday.  We will send a Teams invite for that time shortly.

Thanks,

Haley

**Haley E. Johnson**

Covington & Burling LLP
Salesforce Tower, 415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Cell: (979) 204-4543 | Office: (415) 591-7031
hjohnson@cov.com
www.cov.com

---

**From:** Jerjian, Olivia <ojerjian@ftc.gov>
**Sent:** Monday, August 18, 2025 2:40 PM
**To:** Johnson, Haley <HJohnson@cov.com>; Capuano, Marc <MCapuano@cov.com>; Flahive Wu, Laura <lflahivewu@cov.com>; Joseph A. Reiter <jreiter@hueston.com>; Kelly, Kevin <Kkelly@cov.com>; Kim, Laura <LKim@cov.com>; Graubert, John <jgraubert@cov.com>; Anthony, Stephen <santhony@cov.com>; Hall, John <jhall@cov.com>; Linderot, Anders <ALinderot@cov.com>; Rodgers, Megan <mrodgers@cov.com>; Cassidy O'Sullivan <cosullivan@hueston.com>; Decena, Jeaneth <JDecena@cov.com>; John C. Hueston <jhueston@hueston.com>; Moez M. Kaba <mkaba@hueston.com>; Amazon/FTC [INT] <amazon-ftc@hueston.com>; Jim Howard <jimhoward@dwt.com>; Kenneth Payson <kennethpayson@dwt.com>; Chan, Gina <ginachan@dwt.com>; jennifergreen@dwt.com; Theo Lesczynski <theolesczynski@dwt.com>; Karen Ding <kding@hueston.com>
**Cc:** Cohen, Jonathan <jcohen2@ftc.gov>; Ware, Jonathan <jware1@ftc.gov>; Mendelson, Evan <emendelson@ftc.gov>; Sifuentes, Rachel <rsifuentes@ftc.gov>; Tang, Jeffrey <jtang@ftc.gov>; MacDonald, Colin <cmacdonald@ftc.gov>; Mejia-Portillo, Johana <jmejiaportillo@ftc.gov>; Taylor,

Phoebe CTR <ptaylor3@ftc.gov>; Shelton, Chamaree <cshelton@ftc.gov>; Fingles, Jennifer <jfingles@ftc.gov>; Freedman, Eli <efreedman@ftc.gov>
**Subject:** RE: FTC's Second Notice of 30(b)(6) Deposition of Amazon

<mark>[EXTERNAL]</mark>
Counsel,

Please find attached an Amended Second Notice for the 30(b)(6) deposition of Amazon.  Please note the change in date (September 11) and the addition of Topic 41.

Thanks,
Olivia

Olivia C. Jerjian
Federal Trade Commission
Bureau of Consumer Protection
Division of Enforcement
600 Pennsylvania Avenue, NW | Washington DC 20580
202.326.2749
ojerjian@ftc.gov

---

**From:** Jerjian, Olivia
**Sent:** Monday, August 18, 2025 1:51 PM
**To:** Johnson, Haley <HJohnson@cov.com>; Cohen, Jonathan <jcohen2@ftc.gov>; Ware, Jonathan <jware1@ftc.gov>; Saunders, Anthony R. <ASAUNDERS@ftc.gov>; Mendelson, Evan <emendelson@ftc.gov>; Sifuentes, Rachel <rsifuentes@ftc.gov>; Tang, Jeffrey <jtang@ftc.gov>; MacDonald, Colin <cmacdonald@ftc.gov>; Mejia-Portillo, Johana <jmejiaportillo@ftc.gov>; Taylor, Phoebe CTR <ptaylor3@ftc.gov>; Shelton, Chamaree <cshelton@ftc.gov>; Fingles, Jennifer <jfingles@ftc.gov>
**Cc:** Capuano, Marc <MCapuano@cov.com>; Flahive Wu, Laura <lflahivewu@cov.com>; Joseph A. Reiter <jreiter@hueston.com>; Kelly, Kevin <Kkelly@cov.com>; Kim, Laura <LKim@cov.com>; Graubert, John <jgraubert@cov.com>; Anthony, Stephen <santhony@cov.com>; Hall, John <jhall@cov.com>; Linderot, Anders <ALinderot@cov.com>; Rodgers, Megan <mrodgers@cov.com>; Cassidy O'Sullivan <cosullivan@hueston.com>; Decena, Jeaneth <JDecena@cov.com>; John C. Hueston <jhueston@hueston.com>; Moez M. Kaba <mkaba@hueston.com>; Amazon/FTC [INT] <amazon-ftc@hueston.com>; Jim Howard <jimhoward@dwt.com>; Kenneth Payson <kennethpayson@dwt.com>; Chan, Gina <ginachan@dwt.com>; jennifergreen@dwt.com; Theo Lesczynski <theolesczynski@dwt.com>; Karen Ding <kding@hueston.com>
**Subject:** RE: FTC's Second Notice of 30(b)(6) Deposition of Amazon

Counsel,

We maintain that the topics in our Second 30b6 Deposition Notice arise out of the wrongfully

withheld documents.  That being said, we are available to meet and confer tomorrow afternoon (ET) and Wednesday.

I also wanted to let you know that we will be issuing an Amended Notice to reschedule the deposition from Wednesday 9/10 to Thursday 9/11 in light of the current deposition schedule.

Thanks,
Olivia

Olivia C. Jerjian
Federal Trade Commission
Bureau of Consumer Protection
Division of Enforcement
600 Pennsylvania Avenue, NW | Washington DC 20580
202.326.2749
ojerjian@ftc.gov

---

**From:** Johnson, Haley <HJohnson@cov.com>
**Sent:** Thursday, August 14, 2025 6:17 PM
**To:** Jerjian, Olivia <ojerjian@ftc.gov>; Cohen, Jonathan <jcohen2@ftc.gov>; Ware, Jonathan <jware1@ftc.gov>; Saunders, Anthony R. <ASAUNDERS@ftc.gov>; Mendelson, Evan <emendelson@ftc.gov>; Sifuentes, Rachel <rsifuentes@ftc.gov>; Tang, Jeffrey <jtang@ftc.gov>; MacDonald, Colin <cmacdonald@ftc.gov>; Mejia-Portillo, Johana <jmejiaportillo@ftc.gov>; Taylor, Phoebe CTR <ptaylor3@ftc.gov>; Shelton, Chamaree <cshelton@ftc.gov>; Fingles, Jennifer <jfingles@ftc.gov>
**Cc:** Capuano, Marc <MCapuano@cov.com>; Flahive Wu, Laura <lflahivewu@cov.com>; Joseph A. Reiter <jreiter@hueston.com>; Kelly, Kevin <Kkelly@cov.com>; Kim, Laura <LKim@cov.com>; Graubert, John <jgraubert@cov.com>; Anthony, Stephen <santhony@cov.com>; Hall, John <jhall@cov.com>; Linderot, Anders <ALinderot@cov.com>; Rodgers, Megan <mrodgers@cov.com>; Cassidy O'Sullivan <cosullivan@hueston.com>; Decena, Jeaneth <JDecena@cov.com>; John C. Hueston <jhueston@hueston.com>; Moez M. Kaba <mkaba@hueston.com>; Amazon/FTC [INT] <amazon-ftc@hueston.com>; Jim Howard <jimhoward@dwt.com>; Kenneth Payson <kennethpayson@dwt.com>; Chan, Gina <ginachan@dwt.com>; jennifergreen@dwt.com; Theo Lesczynski <theolesczynski@dwt.com>; Karen Ding <kding@hueston.com>
**Subject:** RE: FTC's Second Notice of 30(b)(6) Deposition of Amazon

Counsel,

We are writing to request a meet-and-confer regarding the topics you proposed in the FTC's Second Notice of 30(b)(6) Deposition to Amazon, served on August 8.  Many of these topics appear to lack a connection to Amazon's recent document production referenced in the Court's June 23, 2025 Order (Dkt. 371).  Additionally, Topics 32-34 and 36-37 appear to seek testimony that is duplicative either of prior testimony the FTC has obtained, including from Amazon, or discovery responses Amazon has served.  *See, e.g.,* Topics 32 and 34, requesting datapoints that appear readily available to the FTC in Amazon's voluminous data productions

or otherwise duplicative of Amazon's responses to the FTC's Interrogatories 10-11; *also compare* Topic 36 (seeking testimony on the "'UPDP repeat customers' as depicted in AMZN-PRM-FTC-002713961...") *with* prior 30(b)(6) Testimonial Topic T (citing AMZN-PRM-FTC-002713961 in its request for testimony on "Amazon's use of 'specific messaging,' including a specific version of UPDP for customers who 'signed up for multiple US Prime plans . . . and cancelled their plans at least twice through customer service'").

Amazon remains fully committed to complying with its discovery obligations in this case, including those arising out of the Court's June 23 Order, but would appreciate clarification of how the proposed 30(b)(6) topics relate to Amazon's recent document production.  In the case of the topics noted above, we would also appreciate clarification regarding what incremental testimony the FTC seeks beyond what it has already obtained from prior deposition testimony and discovery responses.

Please let us know your availability to meet and confer on this issue.

Thanks,

Haley

**Haley E. Johnson**

Covington & Burling LLP
Salesforce Tower, 415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Cell: (979) 204-4543 | Office: (415) 591-7031
hjohnson@cov.com
www.cov.com

---

**From:** Jerjian, Olivia <ojerjian@ftc.gov>
**Sent:** Friday, August 8, 2025 6:22:11 PM
**To:** Capuano, Marc <MCapuano@cov.com>; Flahive Wu, Laura <lflahivewu@cov.com>; Joseph A. Reiter <jreiter@hueston.com>; Kelly, Kevin <Kkelly@cov.com>; Kim, Laura <LKim@cov.com>; Graubert, John <jgraubert@cov.com>; Anthony, Stephen <santhony@cov.com>; Hall, John <jhall@cov.com>; Linderot, Anders <ALinderot@cov.com>; Rodgers, Megan <mrodgers@cov.com>; Cassidy O'Sullivan <cosullivan@hueston.com>; Decena, Jeaneth <JDecena@cov.com>; John C. Hueston <jhueston@hueston.com>; Moez M. Kaba <mkaba@hueston.com>; Amazon/FTC [INT] <amazon-ftc@hueston.com>; JimHoward@dwt.com <JimHoward@dwt.com>; KennethPayson@dwt.com <KennethPayson@dwt.com>; GinaChan@dwt.com <GinaChan@dwt.com>; JenniferGreen@dwt.com <JenniferGreen@dwt.com>; TheoLesczynski@dwt.com <TheoLesczynski@dwt.com>; Karen Ding <kding@hueston.com>
**Cc:** Cohen, Jonathan <jcohen2@ftc.gov>; Ware, Jonathan <jware1@ftc.gov>; Saunders, Anthony R. <ASAUNDERS@ftc.gov>; Mendelson, Evan <emendelson@ftc.gov>; Sifuentes, Rachel <rsifuentes@ftc.gov>; Tang, Jeffrey <jtang@ftc.gov>; MacDonald, Colin <cmacdonald@ftc.gov>;

Mejia-Portillo, Johana <jmejiaportillo@ftc.gov>; Taylor, Phoebe CTR <ptaylor3@ftc.gov>; Shelton, Chamaree <cshelton@ftc.gov>; Fingles, Jennifer <jfingles@ftc.gov>
**Subject:** FTC's Second Notice of 30(b)(6) Deposition of Amazon

<mark>[EXTERNAL]</mark>
Counsel,

Please find attached a Second Notice of Deposition to Amazon.

Regards,
Olivia

Olivia C. Jerjian
Federal Trade Commission
Bureau of Consumer Protection
Division of Enforcement
600 Pennsylvania Avenue, NW | Washington DC 20580
202.326.2749
ojerjian@ftc.gov

# Exhibit 7

# COVINGTON

BEIJING  BRUSSELS  DUBAI  FRANKFURT  JOHANNESBURG
LONDON  LOS ANGELES  NEW YORK  PALO ALTO
SAN FRANCISCO  SEOUL  SHANGHAI  WASHINGTON

Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
T  +1 202 662 6000

**Via Electronic Mail**

August 25, 2022

**CONFIDENTIAL TREATMENT REQUESTED**

Jonathan Cohen
Division of Enforcement
Federal Trade Commission
600 Pennsylvania Ave., N.W., Suite CC-9528
Washington, D.C. 20580

Re:    FTC Matter No. 2123050

Dear Mr. Cohen:

We write in response to the Civil Investigative Demand ("CID"), dated June 30, 2022, that the Federal Trade Commission ("FTC") issued to Russell Grandinetti in FTC Matter No. 2123050.  Enclosed are Mr. Grandinetti's responses to Specifications A through C in the CID Schedule.

Mr. Grandinetti submits these responses without waiving any objections to the CID.  Mr. Grandinetti objects to the requests in the CID as overbroad and unduly burdensome, and to the extent they (1) seek the disclosure of information or production of documents or data subject to any applicable privilege or immunity; (2) seek information or documents beyond the scope of, or seek to impose obligations on Mr. Grandinetti beyond those authorized by, the Resolutions attached to the CID; (3) seek information or documents over which Mr. Grandinetti does not have possession, custody, or control; or (4) seek information that is publicly available or readily available to the FTC without imposing any additional burden on the agency.  The preceding general objections apply to each interrogatory and document request, and are incorporated by reference in each of the specific responses attached hereto and in any future responses, as though set forth therein.

Unless otherwise indicated in the attached, these general objections have not prevented Mr. Grandinetti from responding to the Specifications.  Mr. Grandinetti's responses reflect the information reasonably available to him as of the date of his response.  Mr. Grandinetti reserves the right to supplement or amend his responses as appropriate or necessary.

Sincerely,

/s/

John Graubert

## <u>Response of Russell C. Grandinetti to FTC CID Issued on June 30, 2022</u>

  I, Russell C. Grandinetti, hereby respond to the Civil Investigative Demand that the Federal Trade Commission issued to me on June 30, 2022, in FTC Matter No. 2123050. The responses below are based on the information reasonably available to me as of this date. I reserve the right to supplement or amend my answers as appropriate or necessary.

**Specification A. Investigational Hearing Testimony:** "Subjects for testimony will include any matter relating to the Subject of Investigation."

  *Response*: I am not aware of what "any matter" might encompass, but I will make myself available on a mutually agreed upon date and will answer the questions asked to the best of my knowledge and ability.

**Specification B. Interrogatories:**

1. "For any Communication Related To any position You have held as an employee or agent of the Amazon Parties: (a) identify every Personal Device You use, or have used; and (b) every Communications Platform You use, or have used."

  *Response*: Pursuant to the modification to this request in the FTC's August 4, 2022 letter, I am providing a response to this specification only as it relates to enrollment and cancellation for Prime, Audible, Amazon Music, Kindle Unlimited, Subscribe & Save, and Grubhub+. During the period from March 1, 2018 to the present, I have used two iPhones and two iPads for communications related to my work for Amazon. I have communicated using Microsoft Outlook and Amazon Chime.

2. "For every Personal Device or Communications Platform identified in the prior interrogatory, explain what search, if any, You, or others on your behalf, have conducted to identify or locate Documents Related to the Subject of the Investigation."

  *Response*: I have not personally searched for documents for purposes of this investigation.

3. "Explain, with respect to Communications Related To the Amazon Parties: (a) the Amazon Parties' policies concerning Ephemeral Messaging; (b) the rationale for the Amazon Parties' policies, or lack of policies, concerning Ephemeral Messaging; (c) whether You ever used Ephemeral Messaging; (d) what steps, if any, the Amazon Parties took to prevent You from using Ephemeral Messaging; and (e) what steps, if any, You took to preserve Ephemeral Messages (including when You took such steps)."

  *Response*: Pursuant to the modification to this request in the FTC's August 4, 2022 letter, I am providing a response to this specification only as it relates to enrollment and cancellation for Prime, Audible, Amazon Music, Kindle Unlimited, Subscribe & Save, and Grubhub+. I do not recall using any ephemeral messaging service during the period from March 1, 2018 to the present to discuss these topics. I recall reading various

Amazon communications policies at some point in the past, but I do not recall any policy in detail.

**4.**   "To the extent You used, or may have used, Ephemeral Messaging to Communicate Related to Enrollment and Cancellation Processes, Nonconsensual Enrollees, or Diverted Cancels, produce an Ephemeral Messaging Log and an image of the device used to send or receive Ephemeral Messages."

*Response*: Pursuant to the modification to this request in the FTC's August 4, 2022 letter, I am providing a response to this specification only as it relates to enrollment and cancellation for Prime, Audible, Amazon Music, Kindle Unlimited, Subscribe & Save, and Grubhub+.  As I do not recall using any ephemeral messaging service to discuss these topics during the period from March 1, 2018 to the present, I do not have anything to provide in response to this request.

**Specification C.  Document Requests 1-4:**

*Response*:  I do not have possession, custody, or control of official Amazon documents.  Amazon does.  I defer all questions related to official Amazon documents to Amazon.

\*        \*        \*

I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on        8/24/2022              .

DocuSigned by:

*Russell Grandinetti*

9QA9B0CB1790415...

Russell C. Grandinetti

# Exhibit 8

1                    FEDERAL TRADE COMMISSION

2

3    In the Matter of:           )
                                 ) No. 2123050
4    AMAZON.COM, INC.            )
                                 )
5                                )

6              2.7(h) Investigational Hearing

7                 AMAZON.COM, INCORPORATED

8                    ROBERT STANGLER

9

10               Federal Trade Commission

11          Henry M. Jackson Federal Building

12            915 Second Avenue, Suite 2896

13                  Seattle, Washington

14

15

16

17

18

19

20

21

22   DATE:  January 12, 2023

23   REPORTED BY:  Wade J. Johnson, RPR

24                 CCR No.:  2574

25

2

Stangler

Amazon.com, Inc.                                                1/12/2023

```
 1                 A P P E A R A N C E S
 2
 3    For the Federal Trade Commission:
 4          Thomas Maxwell Nardini, Esq.
            Jonathan Cohen, Esq.
 5          Olivia Jerjian, Esq.
            Federal Trade Commission
 6          Bureau of Consumer Protection
            Enforcement Division
 7          600 Pennsylvania Avenue Northwest
            Washington, D.C.   20580
 8          tnardini@ftc.gov
            jcohen2@ftc.gov
 9          ojerjian@ftc.gov
10
11    For the Witness:
12          John Hall
            Amber Charles
13          Meghan Rodgers
            Covington & Burling, LLP
14          850 Tenth Street Northwest
            Washington, DC 20001
15          jhall@cov.com
            acharles@cov.com
16          mrodgers@cov.com
17
18    Also Present:
19          Mike Macko
            Margaret Cole
20          Jake Frech (telephonic)
            Miranda Rutherford (telephonic)
21          Andrew Sigal (telephonic)
22
23                    --oOo--
24
25
```

For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

42

Stangler

Amazon.com, Inc.                                                  1/12/2023

1    ephemeral messaging platform for Mr. Bezos?

2        A.  Yes.

3        Q.  And which platforms?

4        A.  Wickr.

5        Q.  And what's Wickr?

6        A.  Wickr is an Amazon product that provides

7    similar end-to-end encryption features that Signal has,

8    with the added benefit for Amazon that we can place

9    back end legal holds on those messages.

10        Q.  And so was Wickr searched as a result of this

11    investigation?

12        A.  It was.

13        Q.  When did that occur?

14        A.  I have the dates in -- the collection dates --

15    in the binder.  I can turn to that if you'd like.

16        Q.  We'll come back to that in a second.  Thank

17    you for noting that.

18        A.  Sure.

19        Q.  Just to confirm, was Wickr searched for

20    Mr. Jassy, as well?

21        A.  I am going to turn --

22        Q.  I see you flipping through, and that's fine.

23        A.  Tab 18.

24        Q.  So we're looking at Tab 18 again in

25    Exhibit 25.

C E R T I F I C A T E

STATE OF WASHINGTON )
                    )   ss
COUNTY OF KING      )


          I, the undersigned Washington Certified Court
Reporter, pursuant to RCW 5.28.010, authorized to
administer oaths and affirmations in and for the State
of Washington, do hereby certify:  That the foregoing
Investigational Hearing of the witness named herein was
taken stenographically before me and reduced to a typed
format under my direction;

          That I am not a relative or employee of any
attorney or counsel or participant and that I am not
financially or otherwise interested in the action or
the outcome herein;

          That the Investigational Hearing, as
transcribed, is a full, true and correct transcript of
the testimony, including questions and answers and all
objections, motions and examinations and said
transcript was prepared pursuant to the Washington
Administrative Code 308-14-135 preparation guidelines.


_____
Wade J. Johnson, Certified Court
Reporter 2574 for the State of
Washington residing at Seattle,
Washington.
My CCR certification expires on
09/18/23.

# Exhibit 9

```
 1                     R. Grandinetti

 2            UNITED STATES DISTIRCT COURT

 3           WESTERN DISTRICT OF WASHINGTON

 4                     AT SEATTLE
    ----------------------------------------------------x
 5  FEDERAL TRADE COMMISSION,

 6               Plaintiff,            Case No.
                                       2:23-cv-0932-JHC
 7            vs.

 8  AMAZON.COM, et al.,

 9               Defendants.
    ----------------------------------------------------x
10

11

12

13

14

15            VIDEOTAPED DEPOSITION OF

16               RUSSELL GRANDINETTI

17                New York, New York

18               September 11, 2025

19

20

21

22

23  Reported by:

24  THOMAS A. FERNICOLA, RPR

25  JOB NO. J13335275
```



```
 1                      R. Grandinetti

 2

 3

 4

 5                   September 11, 2025

 6                      9:45 a.m.

 7

 8

 9          VIDEOTAPED DEPOSITION of RUSSELL GRANDINETTI,

10    at the Offices of the Federal Trade Commission, One

11    Bowling Green, New York, New York, before

12    Thomas A. Fernicola, a Registered Professional Reporter

13    and Notary Public of the State of New York.

14

15

16

17

18

19

20

21

22

23

24

25
```



```
 1                    R. Grandinetti
 2   A P P E A R A N C E S:
 3
 4           FEDERAL TRADE COMMISSION
 5           Attorneys for the Plaintiff(s)
 6                600 Pennsylvania Avenue, N.W.
 7                Washington, DC 20580
 8           BY:  JONATHAN WARE, ESQ.
 9
10
11           HUESTON HENNIGAN LLP
12           Attorneys for the Defendant(s)
13                523 West 6th Street, Suite 400
14                Los Angeles, California 90014
15           BY:  JOHN C. HUESTON, ESQ.
16                KAREN L. DING, ESQ.
17                STEPHANIE N. COLORADO, ESQ.
18
19
20
21
22
23
24
25
```



```
1                          R. Grandinetti

2    A P P E A R A N C E S:

3

4              WILEY REIN LLP

5              Attorneys for the Witness

6                  2050 M Street NW

7                  Washington, D.C. 20036

8          BY:   FRANK SCADUTO, ESQ.

9                  RALPH J. CACCIA, ESQ.

10

11

12

13

14

15

16

17

18

19

20

21   ALSO PRESENT:

22             CHARLIE BOWMAN, Videographer

23             LAURA CRAIG, ESQ., Amazon

24             ALEXIS COLLINS, ESQ., Amazon.

25             ELIZABETH BRENNAN, FTC.
```



R. Grandinetti

INDEX TO EXHIBITS

FTC'S                  DESCRIPTION                    PAGE

Exhibit 96 Automatic Renewal Sign-Up                   40
          Requirements, October 28, 2020

Exhibit 461 Worldwide Prime Sign-up Requirements       37

Exhibit 462 Self-Audit Toolkit for Subscription        39
           Services at Amazon

Exhibit 636 June 23, 2025, Court Order,                11
           Docket 371

Exhibit 637 July 20, 2025, Court Order at Docket       11
           No. 404

Exhibit 1105 Amazon Announces Kindle Unlimited         65
            E-book Subscriptions, dated July 18,
            2014

Exhibit 1112 August 2, 2017, Email from Russell        84
            Grandinetti

Exhibit 1134 December 4, 2019, Email from              99
            Russell Grandinetti

Exhibit 1159 March 8, 2022, Chat String               115

Exhibit 1163 May 6, 2022, Email from Russell          124
            Grandinetti

Exhibit 1167 July 6, 2022, Chat With Russell           43
            Grandinetti

Exhibit 1168 July 7, 2022, Email From                  51
            russ@amazon.com

Exhibit 1175 April 25, 2023, Email to Russell         183
            Grandinetti

Exhibit 1176 May 24, 2023, Chat string with           209
            document

Exhibit 1177 Document                                  17



R. Grandinetti

INDEX TO EXHIBITS (Cont'd)

FTC'S          DESCRIPTION                              PAGE

Exhibit 1182 Amazon.com, Inc., Form 8-K for the          18
             Period Ending July 20, 2006

Exhibit 1183 About Amazon.com Web Page Titled            26
             Code of Business Conduct and Ethics

Exhibit 1184 Document Bates-Numbered                     64
             AMZN-PRM-FTC-002673494

Exhibit 1185 FTC vs. Amazon.com, Inc., Docket            70
             Entry 1, July 10, 2014

Exhibit 1186 Docket No. 274-36 in the 2014 FTC           76
             versus Amazon Matter, dated July 22,
             2016

Exhibit 1187 Privilege and Confidential, Prime          232
             Account CX Satisfaction,
             Cancellation Changes for EC

Exhibit 1191 Restore Online Shoppers' Confidence         79
             Act

Exhibit 1192 Amazon's S Team                            156

Exhibit 1193 Amazon's S Team as of November 2024        180



R. Grandinetti

CERTIFICATE

STATE OF NEW YORK  )
                   :  ss
COUNTY OF NEW YORK )


        I, THOMAS A. FERNICOLA, a Registered
Professional Reporter and Notary Public within and for
the State of New York, do hereby certify:

        That RUSSELL GRANDINETTI, the witness whose
deposition is herein before set forth, was duly sworn by
me, and that such deposition is a true record of the
testimony given by such witness on September 11, 2025.

        I further certify that I am not related to any
of the parties to this action by blood or marriage, and
that I am in no way interested in the outcome of this
matter.

        IN WITNESS WHEREOF, I have hereunto set my
hand this 12th day of September 2025.



                    _____
                    THOMAS A. FERNICOLA, RPR